UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CF 135 FLAT LLC, CF 135 WEST MEMBER LLC,
and THE CHETRIT GROUP LLC,                                      Docket No. 1:15-cv-05345(AJN)

                          Plaintiffs,

                -against-

TRIADOU SPV S.A. and CITY OF ALMATY,
a foreign city,

                          Defendants.

-------------------------------------------------------------------X

**PLAINTIFFS CF 135 FLAT LLC'S, CF 135 WEST MEMBER LLC'S,
AND THE CHETRIT GROUP LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT TRIADOU SPV S.A'S
MOTION TO DISMISS**

SUKENIK SEGAL & GRAFF, P.C.
*Attorneys for Plaintiffs*
404 Fifth Avenue, 5th Floor
New York, New York 10018
(212) 725-9300

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... iii

PRELIMINARY STATEMENT…………………………………………………………...1

FACTS AND PROCEDURAL HISTORY.................................................................... 1

      A.     Triadou's Claims Against Plaintiffs………………………………………1

      B.     Plaintiffs Learn Of Almaty's Claims, And
Move To Dismiss State Actions 1 And 2
Based On The Non-Joinder of Almaty…………………………………..3

      C.     Plaintiffs Learn The Details of Almaty's Claims,
Commence An Interpleader Action In State Court,
And Move For A Stay Of The State Court Actions…………………… 5

ARGUMENT………………………………………………………………………....... 8

POINT I:   THE AMENDED COMPLAINT AS ALLEGED SETS FORTH
A PROPER AND SUFFICENT BASIS FOR PLAINTIFFS'
INTERPLEADER ACTION…………………………………………….... 9

      A.     The Amended Complaint Sets Forth A Real Possibility
That Plaintiffs May Be Subject To Unfair Double
Liability…………………………………………….................... 9

      B.     There Is No Legal Or Factual Basis Upon Which To
Dismiss Plaintiffs' Interpleader Action "In Equity"…………………12

POINT II:  THERE IS NO LEGAL OR FACTUAL BASIS FOR AN
ORDER COMPELLING PLANTIFFS TO DEPOSIT THE
$21 MILLION STAKE………………………………………………14

CONCLUSION..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**STATUTES AND RULES**

Fed. R. Civ. P. 22……………………………………….......................................... 8

Fed. R. Civ. P. 67……………………………………………………………………… 16

N.Y. Debtor and Credit Law §278………………………………………………… 9

N.Y. C.P.L.R. §3213………………………………………………………………… 2

**CASELAW**

*Aliuga v. Perera Co., Inc.*, 494 F. Supp. 18 (S.D.N.Y. 1979)…………………………… 15

*Am. Airlines, Inc. v. Block*, 905 F.2d 12 (2d Cir. 1990)…………………………………… 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………………………………… 7

*Blue Giant Equip. Corp. v. Tec-Ser, Inc.*,
92 A.D.2d 630, 459 N.Y.S.2d 948 (3rd Dep't 1983)…………………………………………… 10

*Citigroup Global Mkts., Inc. v. KLCC Invs., LLC*,
No. 06 Civ. 5466, 2007 WL 102128 (S.D.N.Y. Jan. 11, 2007)………………………………… 8

*Fidelity Brokerage Services, LLC v. Bank of China*,
192 F. Supp. 2d 173 (S.D.N.Y. 2002)……………………………………………………………… 8

*Gelfren v. Republic Nat'l Life Ins. Co.*,
680 F.2d 79 (9th Cir. 1962)………………………………………………………………………… 14

*Great Wall De Venezuela, C.A. v. Interaudi Bank*,
No. 14-CV-2505, 2015 WL 4507828 (S.D.N.Y 2015)…………………………………………… 10

*John v. Sotheby's, Inc.*, 141 F.R.D. 29 (S.D.N.Y 2012)…………………………………… 16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17 (2d Cir. 1997)……………… 12

*New York Life Ins. Co. v. Aleandre*,
No. 13-CV-2384, 2014 WL 30508 (S.D.N.Y. Jan. 2, 2014)………………………………………… 16

*Sotheby's, Inc. v. Garcia*,
802 F. Supp. 1058 (S.D.N.Y. 1992)409 F.3d 73(2d Cir.)............................................................... 8

*Truck-A-Tune, Inc. v. Re*, 23 F.3d 60 (2d Cir. 1994)……………………………………………… 13

*Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*,
985 F.2d 677 (2d Cir. 1993)………………………………………………..…………………… 8

## PRELIMINARY STATEMENT

Plaintiffs CF 135 Flat LLC ("CF 135"), CF 135 West Member LLC ("CF"), and The Chetrit Group LLC ("Chetrit") (collectively, "Plaintiffs") submit this memorandum of law in opposition to defendant Triadou SPV S.A.'s ("Triadou") motion (i) for an order, pursuant to Rule 12(b)(6), dismissing Plaintiffs' amended interpleader complaint (the "Amended Complaint"), or alternatively, (ii) for an order compelling Plaintiffs to deposit the entire $21 million stake at issue in this interpleader action with the Court. Triadou's motion should be denied in its entirety, because as detailed herein, the Amended Complaint as alleged sets forth a proper and sufficient basis for Plaintiffs' interpleader action, and there is no legal or factual basis for an order compelling Plaintiffs to deposit the stake with the Court.

## FACTS AND PROCEDURAL HISTORY

### A.    Triadou's Claims Against Plaintiffs

To date, Triadou has commenced four actions against Plaintiffs in the Supreme Court of New York, County of New York (collectively, the "State Court Actions."). Each such action seeks to recover one of four $5,250,000.00 installment payments allegedly due Triadou under an assignment agreement (the "Agreement"), dated August 4, 2014, between Triadou and CF 135, and a guaranty (the "Guaranty"), dated August 4, 2014, executed by CF and Chetrit. Under the terms of the Agreement, Triadou assigned its 50% membership interest[1] in CF to CF 135 in exchange for CF 135's agreement to pay $21 million, in four installments. Under the terms of the Guaranty, CF and Chetrit are answerable for certain of CF 135's obligations to Triadou under the Agreement. Amended Complaint, ¶¶8–9.

---

[1] The Amended Complaint misstates the assigned interest percentage as a 37.5% interest. In fact, a 50% interest was assigned.

Triadou commenced each of the State Court Actions as a motion for summary judgment in lieu of complaint (*see* N.Y. C.P.L.R. §3213).  The captions and dates of commencement of the State Court Actions are as follows:

- *Triadou SPV S.A. v. CF 135 Flat LLC, et al.* (N.Y. Cty., Index No. 653462/14), commenced on November 10, 2014. (hereinafter, "State Action 1")

- *Triadou SPV S.A. v. CF 135 Flat LLC, et al.* (N.Y. Cty., Index No. 650239/15), commenced on January 26, 2015. (hereinafter, "State Action 2")

- *Triadou SPV S.A. v. CF 135 Flat LLC, et al.* (N.Y. Cty., Index No. 154681/15), commenced on May 11, 2015. (hereinafter, "State Action 3")

- *Triadou SPV S.A. v. CF 135 Flat LLC, et al.* (N.Y. Cty., Index No. 156907/15), commenced on July 9, 2015. (hereinafter, "State Action 4")

Plaintiffs opposed first Triadou's motion for summary judgment in lieu of complaint in State Action 1, arguing, *inter alia*, that there was a triable issue of fact regarding Triadou's standing to maintain such action, as documentary evidence suggested that the debt allegedly owed to Triadou should instead be paid to a third-party.  However, in an order dated February 3, 2015, the state court rejected Plaintiffs' arguments and granted summary judgment to Triadou in State Action 1. (a copy of the state court's February 3, 2015 order is appended to Triadou's moving declaration (the "Skakel Decl.") as Exhibit 3).[2]

---

[2]   Notably, the February 3, 2015 order did not directly address the issue of Triadou's standing.
On March 24, 2015, a few weeks after the order was issued, Plaintiffs received a letter from counsel for Nicolas Bourg ("Bourg"), Triadou's former director.  Bourg's letter (a copy of the letter, NYSCEF Doc. No. 48 in State Action 1, is appended to the accompanying opposition declaration of David Salhanick, Esq. (the "Salhanick Decl.") as Exhibit A) stated that Bourg has certain claims against Triadou and requested that Plaintiffs not make payments to Triadou, as any such payments would likely be unlawfully concealed or absconded to prevent Bourg's recovery. The letter further warned that if Plaintiffs ignored the letter and made payments, Plaintiffs would be liable to Bourg for same.  Based on Bourg's letter and on other newly discovered evidence indicating that payments made to

Subsequently, on April 15, 2015, the state court granted Triadou's motion for summary judgment in lieu of complaint in State Action 2. *See* the Skakel Decl., Exhibit 4.  On April 28, 2015, the New York County Clerk entered a judgment in favor of Triadou and against Plaintiffs in State Action 1.

To date, the state court has yet to rule on Traidou's motions for summary judgment in lieu of complaint in State Actions 3 and 4.

**B.    Plaintiffs Learn Of Almaty's Claims, And Move To Dismiss State Actions 1 And 2 Based On The Non-Joinder of Almaty**

On April 30, 2015, two days after the entry of judgment in State Action 1, Plaintiffs received a letter from the California office of the law firm of Latham & Watkins, LLP ("Latham") sent on behalf of Latham's client, defendant City of Almaty ("Almaty").  The letter (a copy of the "Latham Letter," NYSCEF Doc. No. 70 in State Action 1, is appended to the Salhanick Decl. as Exhibit B[3]) informed Plaintiffs that Almaty had commenced a lawsuit in the United State District Court for the Central District of California, entitled *City of Almaty v. Victor Krapunov, et al*., and attached a copy of the complaint therein (*see* the "California Complaint," included in Exhibit B to the Salhanick Decl.)  The California Complaint alleges that Victor Khrapunov ("Khrapunov"), a Kazakh national who once served as mayor of Almaty, and other members of the Khrapunov family stole at least $300 million from the city of Almaty and funneled those stolen funds into a series of shell entities and holding companies which they own and/or control.  According to the California Complaint, the Khrapunovs utilized this intricate web of sham entitles to conceal the stolen funds and to discretely purchase valuable real estate

---

Triadou would be stolen, on March 30, 2015 Plaintiffs moved by order to show cause to stay State Action 1. However, following oral argument on such motion, it was denied.

[3]  Triadou's moving memorandum of law states at footnote 3 that "the Court may take judicial notice of the filings in the State Court."  Plaintiffs, in citing herein to the State Court filings, request the same.

throughout the world. *See* the California Complaint, ¶¶1–6, 16–30.  The California Complaint alleges that one of the entities in the Khrapunovs's criminal enterprise is Triadou, which owned 50% of CF.  *Id.*, ¶¶64–66.  CF, in turn, owns 75% of a Delaware entity named 135 West 52nd St Holder LLC ("Holder").   Holder, though its subsidiaries, owns the property located at 135 West 52nd St, New York, New York.  *See id*.  As previously noted, under the terms of the Agreement, Triadou assigned its 50% interest in CF to CF 135 in return for CF 135's promised payment of $21 million.

The Latham Letter stated that because Triadou was funded with money stolen from Almaty, Almaty has claims to the interest assigned to CF 135 and/or the money due Triadou under the Agreement.  The Latham Letter warned Plaintiffs not to take any action which might adversely affect Almaty's interests until Almaty's claims are resolved.[4]  *See* the Latham Letter.

Prior to receiving the Latham Letter, Plaintiffs had no knowledge of the California Action or of Almaty's claims.  And even after receiving the Latham Letter, the specifics of Almaty's claims remained unclear, as the Latham Letter did not set forth Almaty's claims in detail.  However, what the Latham Letter *did* make clear is that Almaty is a necessary party to the State Court Actions, as any judgments issued or enforced in Triadou's favor in the State Court Actions could adversely affect Almaty's claims to the assigned interest and/or the $21 million.

Accordingly, on May 26, 2015, Plaintiffs moved in State Actions 1 and 2 by order to show cause to vacate the existing judgments and orders in those actions and to dismiss those actions for the non-joinder of Almaty. (copies of Plaintiffs' May 26, 2015 order to show cause

---

[4]    Neither Plaintiffs nor Triadou were named as defendants in the California Action, which is unsurprising.  CF and CF 135 are Delaware entities which conduct business in Delaware and New York.  Chetrit is a New York entity which conducts business in New York.  Triadou is a Luxembourg entity whose only apparent business contracts in the United States are in New York.  It is unlikely that Plaintiffs or Triadou have the minimum contacts in California required for personal jurisdiction there, especially as regards Triadou's assignment of its 50% interest in CF.

and moving affirmation in State Action 1, NYSCEF Doc. Nos. 62 and 64, are appended (w/out exhibits) to the Salhanick Decl. as Exhibit C)  To date, the state court has yet to rule on those motions.

**C.    Plaintiffs Learn The Details of Almaty's Claims, Commence An Interpleader Action In State Court, And Move For A Stay Of The State Court Actions**

On June 25, 2015, Plaintiffs' undersigned attorneys and Almaty's New York attorneys, Boies, Schiller & Flexner, LLP ("Boies, Schiller") met to discuss the specifics of Almaty's claims.  At that meeting, Almaty's attorneys stated that Almaty believes (i) that the Agreement's $21 million purchase price for the assignment was far below market value, (ii) that Triadou assigned its interest in CF for a subpar price to frustrate Almaty's recovery of such interest, (iii) that any funds paid to Triadou under the Agreement will be immediately transferred abroad by Triadou and removed from Almaty's reach, and (iv) that Almaty intends to commence a fraudulent conveyance action against Triadou and Plaintiffs to undo the assignment and to recover the assigned interest or its value from Plaintiffs.  *See* the Amended Complaint, ¶11. Almaty's attorneys also stated that Almaty will bring a fraudulent conveyance claim even if Plaintiffs have already paid Triadou for the assignment.

As set forth in the Interpleader Complaint, Almaty's stated intention to sue Triadou and Plaintiffs to void the assignment as fraudulent puts Plaintiffs in danger of multiple and adverse liability to Triadou and Almaty.   Amended Complaint, ¶17.   If Triadou's and Almaty's respective claims against Plaintiffs are litigated separately and each succeeds, Plaintiffs could wind up paying $21 million to both Triadou and Almaty.  That would be proudly unfair to Plaintiffs because the assignment is either valid or invalid – it cannot be both.  If the assignment is valid, Plaintiffs owe $21 million to Triadou, but owe nothing to Almaty.  If the assignment

was improperly made, under New York Debtor and Credit Law Plaintiffs may be forced to pay Almaty for the value of the assigned interest – $21 million or more – but would not have to pay Triadou.  *See* the Amended Complaint, ¶16.  What is clear is that Plaintiffs should not be made to pay both Triadou and Almaty for the same interest.  Yet, that is precisely what may happen if Triadou obtains and enforces judgments against Plaintiffs in the State Court Actions and Almaty then sues successfully to undo the assignment.

Under both New York State and Federal rules, when faced with the risk of adverse and conflicting liability at the hands of separate claimants, a stakeholder may commence an "offensive" interpleader action naming the claimants as defendants.  On July 7, 2015, Plaintiffs did just that, filing the herein interpleader action in the Supreme Court of New York, County of New York, under the caption *CF 135 Flat LLC, CF 135 West Member LLC, and The Chetrit Group LLC v. Triadou SPV SA and City of Almaty, a foreign city* (Index No. 156834/15).  On July 9, 2015, Almaty filed a notice of removal removing the state interpleader action to this Court.  Notably, in paragraphs 7–8 of the Notice of Removal, Almaty expressly alleges that Triadou's assignment was a voidable fraudulent conveyance and that Almaty has given Plaintiffs notice of its claims against them. (a copy of the Notice of Removal is appended to the Salhanick Decl. as Exhibit D)

On July 7, 2015, in an effort to prevent Triadou from obtaining and enforcing judgments in state court before this interpleader action can be adjudicated, Plaintiffs moved in State Actions 1 and 2 by order to show cause to stay such actions pending further order of the court, and for emergency interim stays pending the court's hearing of such motions. (copies of Plaintiffs' July 7, 2015 order to show cause and moving affirmation in State Action 1, NYSCEF Doc. Nos. 77 and 78, are appended (w/out exhibits) to the Salhanick Decl. as Exhibit E)   On July 13, 2015,

the state court issued interim stays of State Actions 1 and 2.  *See* the Skakel Decl., Exhibits 8, 9. At the July 23, 2015 oral argument held on Plaintiffs' underlying motions, the state court stated that an indefinite stay of the state actions appeared warranted in view of the potential double liability faced by Plaintiffs due to Traidou's and Almaty's competing claims.  The state court repeatedly urged Triadou's counsel to agree to voluntary stay the State Court Actions during the pendency of the interpleader action.  However, Triadou's counsel refused to do so.[5]  Ultimately, Plaintiffs' motions were submitted to the court for a formal ruling. To date, the state court has yet to decide those motions.[6]

At a second meeting between Plaintiffs' and Almaty's counsel on July 23, 2015, Almaty's attorneys showed Plaintiffs' attorneys a draft complaint setting forth the causes of action which Almaty will raise against Triadou and Plaintiffs.  One such cause of action seeks to undo Triadou's assignment as a fraudulent conveyance under New York Debtor and Creditor Law and to recover the value of the assigned interest from Plaintiffs. *See* the Amended Complaint, ¶15.  The draft complaint further confirmed what Plaintiffs already knew from their prior conversations with Almaty's attorneys – Almaty will seek to void the Assignment as a fraudulent conveyance and to recover from Plaintiffs.  For that reason, absent an interpleader action, Plaintiffs are at risk of double liability to Triadou and Almaty.

---

[5]    The July 23, 2015 oral argument was conducted "off-the record," and no transcript of the proceedings is available.

[6]   While the interim stays of State Actions 1 and 2 were in effect, the New York County Clerk, who was unaware that such actions had been stayed, mistakenly entered judgment in Triadou's favor in State Action 2.  On July 21, 2015, Plaintiffs' counsel wrote to the state court advising it of the Clerk's error and asking that such judgment be vacated.  (a copy of the July 21, 2015 letter,  NYSCEF Doc. No. 92 in State Action 2, is appended to the Salhanick Decl. as Exhibit F).  At the July 23, 2015 oral argument on Plaintiffs' underlying motions, the state court indicated that it would order that such judgment be vacated.   The court has not yet issued that order.

  Additionally, at the state court's direction, and for the same reasons underlying Plaintiffs' motions to stay State Actions 1 and 2, on July 23, 2015 Plaintiffs' counsel moved by letter motion to stay State Actions 3 and 4.  (a copy of the letter motion in State Action 4, NYSCEF Doc. No. 14, is appended to the Salhanick Decl. as Exhibit G.) Those motions are also pending.

## ARGUMENT

### Point 1

**THE AMENDED COMPLAINT AS ALLEGED SETS FORTH A PROPER AND SUFFICENT BASIS FOR PLAINTIFFS' INTERPLEADER ACTION**

Rule 22 of the Federal Rules of Civil Procedure allows a stakeholder to interplead multiple defendants "when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Fed. R. Civ. P. 22(1). The stakeholder is not required to assess the legal validity of the competing claims against it; interpleader is proper so long as the party requesting it has "real or reasonable fear of double liability or vexatious, conflicting claims." *Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) (internal quotation omitted). All that is required is the stakeholder's "good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992).

As such, the court "need not analyze the merits of the claims because the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim." *Fidelity Brokerage Services, LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (internal quotations and citations omitted). So long as there is a "possibility" that the stakeholder might be subject to adverse claims, interpleader is appropriate. *See id.* ("Further, the language of both Rule 22 and 28 U.S.C. § 1335 allow for the invocation of interpleader for the *possibility* of prospective claims.") (emphasis in original) (internal quotations and citations omitted)

Moreover, the applicability of interpleader as an available remedy is to be liberally constructed. *See, e.g, Citigroup Global Mkts., Inc. v. KLCC Invs., LLC*, No. 06 Civ. 5466, 2007 WL 102128, at *7 (S.D.N.Y. Jan. 11, 2007) (citing the Supreme Court's decision in *State Farm*

*Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967), in stating that "interpleader is an equitable remedy that should be applied liberally"). This liberal standard is especially pertinent in the context of a Rule 12(b)(6) motion to dismiss, as it is well settled that to survive a motion to dismiss, the complaint need only "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and all reasonable inferences must be drawn in favor of the non-moving party. *Id*. at 679.

A. **The Amended Complaint Sets Forth A Real Possibility That Plaintiffs May Be Subject To Unfair Double Liability**

In the instant case, the allegations in the Amended Complaint clearly demonstrate that there is a real possibility that Plaintiffs may be subject to unfair multiple liability at the hands of Triadou and Almaty, and as such, an interpleader action is proper.

As set forth in the Amended Complaint and further detailed herein, Triadou has asserted claims against Plaintiffs totaling $21 million to recover installment payments allegedly due it as payment for the assignment. At the same time, Almaty has told Plaintiffs that it will sue to void the assignment as a fraudulent conveyance and to recover the value of the assigned interest from Plaintiffs. If Triadou's and Alamty's claims are litigated separately, Plaintiffs may be forced to pay $21 million to both Triadou and Almaty. This is precisely the sort of "real or reasonable fear of double liability or vexatious, conflicting claims," *Washington Electric, supra*, for which interpleader is designed.

Triadou's memorandum of law argues (pp. 6–7) that even if Almaty succeeds on its fraudulent conveyance claim, only Triadou, not Plaintiffs, would be liable to Almaty, and under no scenario would Plaintiffs be forced to make duplicative payments to Almaty. That is clearly incorrect. Under New York Debtor and Credit Law §278, a creditor with matured claims who

successfully invalidates a transfer as a fraudulent conveyance may "[d]isregard the conveyance and attach or levy execution upon the property conveyed." N.Y. Debtor and Creditor Law §278(1)(b).  Such provision permits the creditor to bypass its debtor and recover directly from the transferee. *See, e.g., Blue Giant Equip. Corp. v. Tec-Ser, Inc*., 92 A.D.2d 630, 459 N.Y.S.2d 948 (3rd Dep't 1983) (stating that under Debtor and Creditor Law §278, the judgment creditor may, after establishing a property transfer as fraudulent, levy directly on the transferee without resort to the debtor).  This is exactly what Almaty is claiming.  As such, should Almaty succeed on its fraudulent conveyance claim, it may recover directly from Plaintiffs.  Alternatively, if successful on its fraudulent conveyance claim Almaty could elect to have the fraudulent conveyance "set aside or obligation annulled to the extent necessary to satisfy [its] claim." N.Y. Debtor & Creditor Law §278(1)(a).  In such case, the assignment would be deemed a legal nullity, and Plaintiffs would lose the assigned interest or its value to Almaty   Under either scenario, Plaintiffs would incur double liability.

Triadou cites to a single case, *Great Wall De Venezuela, C.A. v. Interaudi Bank*, No. 14-CV-2505, 2015 WL 4507828 (S.D.N.Y 2015), in support of its assertion that Plaintiffs are not at risk of multiple liability.  However, *Great Wall* is easily distinguishable.   In *Great Wall*, the beneficiary of a letter of credit sough to compel the issuer bank to honor the credit, while at the same time, the letter of credit's "applicant" (the entity which purchased the letter of credit) advised the issuer bank not to honor the credit due to the beneficiary's alleged fraud.  *See id*. at *4.  When the issuer bank sought to interplead the beneficiary and the applicant in a single action to determine whether the letter of credit should be paid or not, the *Great Wall* court held that impleader did not lie.  The court's holding was based on the "independence principle" which is specifically applicable to letters of credit.  *See id*. at *10.  Under such principle, because "a letter

10

of credit transaction involves three separate, independent contracts and three corresponding obligations . . . liability on the part of the bank on one of these contracts is not inconsistent with liability on another." *Id*.  The court reasoned that because the bank's contractual liability to the beneficiary under the letter of credit could logically coexist with its separate contractual liability to the applicant, disputes over letters of credit are "not the kind of 'multiple liability' contemplated by Rule 22." *Id*.

By contrast, the instant dispute concerns the validity of a single contractual arrangement – the assignment.  Triadou claims that the assignment was valid, and that therefore, it should recover from Plaintiffs.  Almaty claims that the assignment was invalid, and that therefore, it should recover from Plaintiffs.  The assignment cannot be simultaneously valid and invalid; depending on its validity, Plaintiffs should pay either Triadou or Almaty, but not both.  Here, an interpleader action is clearly warranted in order to definitively determine the validity of the assignment and the singular nature of Plaintiffs' obligation.[7]

Furthermore, the *Great Wall* court makes it abundantly clear that its holding should be limited to letters of credit – not simply because such holding is based on the "independence principal" which is unique to letters of credit, but also because such holding is based in part on the need to maintain the "reliability" and "fluidity" of letters of credit in international trade.  The *Great Wall* court stated at *12:

> The Court's conclusion is consistent with, and warranted by, the unique nature of letters of credit and the need for letters of credit to be reliable and fluid to maintain their key function in international trade. See Voest-Alpine Int'l Corp., 707 F.2d at 682 ("When analyzing [the law applied to commercial letters of credit,] the unique characteristics of a letter of credit must be kept firmly in mind. Otherwise, a court may unknowingly paint

---

[7]   The fact that Plaintiffs' liability to Almaty is contingent on Triadou's debt to Almaty does not lessen the risk of logically inconsistent liability to both Triadou and Almaty.

> broadly over the letter of credit's salient features and compromise its reliability and fluidity."). Were an issuing bank permitted to interplead the applicant and the beneficiary of a letter of credit whenever a beneficiary complained of fraud in the underlying transaction, letters of credit would be deprived of "their chief virtue of predictable reliability as a payment mechanism." Id.

Accordingly, Triadou's suggestion that the holding in *Great Wall* be applied to the instant action must be rejected.

**B.      There Is No Legal Or Factual Basis Upon Which To Dismiss Plaintiffs' Interpleader Action "In Equity"**

Triadou next argues that this Court should summarily dismiss this interpleader action "in equity." This argument is based on Triadou's blind assertions that Plaintiffs acted in a "dilatory" fashion in state court, that Plaintiffs' interpleader action was undertaken to delay payment of Plaintiffs' "unquestionable" obligation to Triadou, and that Plaintiffs "would not be subject to potentially duplicative liability." Apart from the fact that these assertions either squarely contradict or broadly deviate from Plaintiffs' allegations in the Amended Complaint, and therefore should not be considered on a motion to dismiss, they are each plainly wrong.

First, Plaintiffs' conduct in acting to protect their rights by raising various legal defenses in state court actions was not dilatory. At the onset of the state court litigation, when Plaintiffs were still unaware of Almaty's claims, Plaintiffs justifiably raised legal defenses to Triadou's initial motion for summary judgment in lieu of complaint. When Plaintiffs learned that Almaty was an interested party in the state court litigation, they justifiably moved to dismiss the state court actions for non-joinder. When Plaintiffs learned the details of Almaty's claims, they justifiably commenced an interpleader action in state court, and they moved for and *obtained* interim stays of the state court proceedings. Based on the state court's statements at oral argument, Plaintiffs' underlying stay motions appear likely to be granted. Triadou's insinuation,

that Plaintiffs' desire to have this dispute definitively resolved in a single interpleader action is somehow frivolous, is disingenuous.

Second, at present, Plaintiff's liability to Triadou is anything but unquestionable. Due to Almaty's claims, such liability is squarely in doubt. That Plaintiffs do not know which claimant to pay is set forth expressly in the Amended Complaint. *See id.* at ¶17 ("Plaintiffs admit that the sum of $21,000,000.00 is due and owing either to Triadou or to Almaty. However, Plaintiffs are unable to determine to whom such sum should be paid and which of the defendants is entitled thereto. As a result of such adverse claims, Plaintiffs are or may be exposed to double liability.")

Moreover, even if Plaintiffs were guilty of undue delay in bringing their interpleader action (which they are certainly not), there is no authority suggesting that a federal court may abstain from hearing an interpleader action which meets the requirements of Rule 22 on such basis. Triadou's cited cases are completely inapposite. Such cases either permit a court to abstain from hearing a matrimonial-related dispute in federal court in view of the state court's far greater familiarity with that subject matter, *see Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that the lower court had discretion to abstain from hearing a matrimonial interpleader action to allow the interpleader action to be brought in state court; "even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field"), or to abstain where the controversy is between a single claimant and the stakeholder and involves contempt of a state court order, *see Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 63 (2d Cir. 1994) (discretionary abstention proper to allow the remaining dispute between the stakeholder and a single claimant over contempt of a state court order to be resolved in state court; "we are confident that the New York courts can fairly adjudicate whatever remains of this controversy"),

or to abstain where there is an existing state court action involving all the claimants which directly addresses the controversy raised in the interpleader. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 23 (2d Cir. 1997) ("Here, the district court considered the nature of the . . . state court action, and whether that action would satisfactorily adjudicate the issue of coverage disputed by [the claimants]").  There is no authority authorizing a federal court to summarily dismiss a Rule 22 interpleader action simply because the stakeholder is guilty of delay.

<u>Point II</u>

**THERE IS NO LEGAL OR FACTUAL BASIS FOR AN ORDER COMPELLING PLANTIFFS TO DEPOSIT THE $21 MILLION STAKE**

Triadou argues in the alternative that even if Plaintiffs' interpleader action is proper, Plaintiffs should nonetheless be ordered, on its (Triadou's) motion, to deposit the $21 million stake with the court.  Triadou acknowledges that Plaintiffs' interpleader action may properly proceed under Rule 22 of the Federal Rules of Civil Procedure, which rule does not require that the stakeholder make any deposit into the court.  *See* Fed. R. Civ. P. 22; *Gelfren v. Republic Nat'l Life Ins. Co.,* 680 F.2d 79, 82 (9th Cir. 1962) (noting that unlike statutory interpleader, rule interpleader does not require any deposit by the stakeholder into the court).  Nevertheless, Triadou argues that "equity" requires that the Court order that the stake be deposited because Plaintiffs failed to "admit" in the State Court Actions that they owe Triadou a debt.

This bizarre argument should be quickly disregarded.  Contrary to Triadou's suggestion, Plaintiffs cannot be punished simply for challenging their liability to Triadou – it was, and remains, Triadou's burden to *prove* that it is owed a debt, and Plaintiffs were within their rights to continue challenging Triadou's claims as new facts and evidence became known.  The fact

14

that the state court rejected certain of Plaintiffs' defenses does not mean that they should not have been raised.  And once again, it is simply untrue that Plaintiffs "admit" that they are liable to Triadou – they certainly do not.

Additionally, as Plaintiffs made clear in their state court filings and in the Amended Complaint, Plaintiffs' willingness to voluntarily deposit the stake with this Court <u>is only as a condition of discharge from this action and from further liability to either defendant</u>.  *See* Plaintiffs' Reply Affirmation in Further Support of their July 13, 2015 Order to Show Cause ("Plaintiffs' State Court Reply," Exhibit 15 to the Skakel Decl., at ¶7) ("[T]he allegation in their interpleader complaint that Defendants are amenable to depositing the entire $21,000,000.00 stake into the court is relevant because in the future, Defendants will likely *voluntarily* seek leave to deposit the entire stake in order to be discharged from the action.") (emphasis in original); Amended Complaint, ¶18 "(As a condition of being discharged from this action and from further liability to either defendant, Plaintiffs are ready, willing, and able to pay the sum of $21,000,000.00  . . . into court"); *Aliuga v. Perera Co., Inc.,* 494 F. Supp. 18, 20 (S.D.N.Y. 1979) (the stakeholder in a Rule 22 interpleader may elect to discharge itself from the action and from further liability to the claimants by depositing the stake with the court and demonstrating that it has no claim to such sum).

As part of Plaintiffs' July 7, 2015 order to show cause in State Action 1, Plaintiffs stated that that they would, *if (and only if) required by the state court <u>as a condition of obtaining a stay</u>,* deposit an amount equal to the judgment sum in that action ($5,250,000.00) into *state* court, where such judgment issued and is docketed.  *See* the Salhanick Decl., Exhibit E.  Plaintiffs made this same conditional offer in State Action 2.  Because Plaintiffs' stay motions have not yet been decided, it remains to be seen whether or not the state court will require that any deposit be

made to it.  If the state court ultimately requires that a deposit must be made, then Plaintiffs will make the required deposit into state court.  If the state court decides that such deposits are unnecessary, there is no reason that this Court should require that a deposit be made.

Nor can Plaintiffs be compelled to deposit the $21 million stake under Rule 67 of the Federal Rules of Civil Procedure.  Rule 67 permits the *stakeholder* to voluntarily move for leave of the Court to deposit the stake for safekeeping; it does not authorize a claimant to move to compel the stakeholder's deposit. *See* Fed. R. Civ. P. 67 (stating that "in an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, *a party*, *upon notice to every other party, and by leave of court, may deposit with the court all or any part of the sum or thing*. . . .") (emphasis added); *New York Life Ins. Co. v. Aleandre,* No. 13-CV-2384, 2014 WL 30508,  at *4 (S.D.N.Y. Jan. 2, 2014) ("Unlike statutory interpleader . . . deposit of the asset is not a jurisdictional prerequisite for rule interpleader. The Court, though, has discretion to *permit* such a deposit under Rule 67.") (emphasis added, internal citations omitted).  Indeed, in the only Rule 67 case Triadou cites, *John v. Sotheby's, Inc*., 141 F.R.D. 29 (S.D.N.Y 2012), it was the stakeholder which sought and obtained leave under Rule 67 to deposit the stake. *See id*. at 32–33 ("Sotheby's has moved to interplead [a claimant], and has also asserted a counterclaim which seeks to institute an interpleader action pursuant to Rule 22"), and at 34 ("Sotheby's seeks this Court's permission, pursuant to Rule 67, to deposit the painting with the clerk of the court.") Rule 67 does not authorize the relief which Triadou seeks.

## <u>CONCLUSION</u>

For the reasons stated herein and in the accompanying declaration, the Court should deny

Triadou's motion in its entirety.

Dated:   September 24, 2015
           New York, New York

                              SUKENIK, SEGAL & GRAFF, P.C.

                              By:   /s/ David Salhanick__
                                     David Salhanick, Esq.
                              *Attorneys for Plaintiffs*
                              404 Fifth Avenue, 5th Floor
                              New York, New York 10018
                              (212) 725-9300