UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

CF 135 FLAT LLC, CF 135 WEST MEMBERS
LLC, and THE CHETRIT GROUP LLC,

               Plaintiffs,

   -against-

TRIADOU SPV S.A. and CITY OF ALMATY, a
foreign city,

               Defendants.

No. 15 Civ. 05345 (AJN) (SN)

---

**BTA BANK'S MEMORANDUM OF LAW IN SUPPORT
<u>OF ITS MOTION TO INTERVENE</u>**

Pursuant to Federal Rule of Civil Procedure 24, BTA Bank respectfully submits this memorandum of law in support of its motion to intervene in this action.

## BACKGROUND

BTA Bank ("BTA"), headquartered in the city of Almaty, is the third-largest bank in Kazakhstan.  In 2009, BTA was nationalized by the Republic of Kazakhstan, through its sovereign wealth fund Samruk-Kazyna, after it was discovered that BTA's former chairman, Mukhtar Ablyazov, was responsible for making billions of dollars in valueless loans, leaving BTA on the verge of catastrophic default.  Further investigation revealed that Ablyazov had dominated the bank's operations, directing billions of dollars of loans to worthless shell corporations he controlled, which in turn moved those funds to other Ablyazov-controlled offshore entities.  Through this global shell game, Ablyazov moved no less than $4 billion out of BTA during his chairmanship, leaving the bank insolvent and stumbling toward collapse.  Once his theft was discovered, Ablayzov fled Kazakhstan for the United Kingdom, claiming to be a victim of persecution while residing in a number of multi-million dollar residences.  Meanwhile, Ablyazov and his co-conspirators, including Viktor and Ilyas Khrapunov, laundered billions of dollars in stolen wealth through investments across the world.

Since its costly nationalization, BTA has worked diligently to recover the billions stolen by Ablyazov.  BTA has filed nearly a dozen actions against Ablyazov in the United Kingdom, securing a worldwide freezing order against Ablyazov's global empire of shell companies and offshore assets.  When BTA proved that Ablyazov had been deceiving the UK courts and moving his assets into new and undisclosed offshore accounts (thus violating the freezing order), the courts found Ablyazov guilty of contempt and ordered him to be imprisoned for 22 months.  On the eve of his incarceration, Ablyazov fled the UK and vanished.  In his absence, the UK

courts have found Ablyazov liable for his theft from BTA — hearing dozens of witnesses and viewing thousands of pages of evidence in the process — and have ordered Ablyazov to pay BTA no less than $4 billion in restitution, with interest continuing to accrue.  While these proceedings continued, BTA's investigators tracked Ablyazov to a villa in the south of France, where he was captured by French law enforcement.  At this time he remains in custody awaiting extradition.

After his flight from the UK and during his subsequent incarceration, Ablyazov has increasingly relied on his son-in-law, Ilyas Khrapunov, to laundering his assets and protect them from seizure.  Ilyas Khrapunov, whose own family has been charged with massive public corruption and theft from the City of Almaty ("Almaty"), controlled a series of investment vehicles in Switzerland, through which he and Ablyazov laundered their combined looted funds.  One of these vehicles was Defendant Triadou SPV S.A. ("Triadou"), which Ablyazov and Ilyas Khrapunov used to make investments in New York real estate.

The money that Triadou invested in New York real estate, including the development of the former Flatotel, was transferred by an entity called Telford International Limited.  Telford – despite purporting to be an energy services company based in Dubai – is owned by Ablyazov; funded with money stolen by Ablyazov (from BTA) and Viktor Khrapunov (from Almaty); and was controlled at all relevant times by Ilyas Khrapunov.  As a result, BTA Bank has an interest in both the Flatotel property and the $21 million interpleaded fund that represents the proceeds of money stolen from BTA Bank.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 24 provides:

> (a) Intervention of Right.  On timely motion, the court must permit anyone to intervene who:
>
> \* \* \*
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>
> (1) In General. On timely motion, the court may permit anyone to intervene who:
>
> \* \* \*
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

Rule 24 therefore identifies at least two circumstances (one mandatory and one permissive) in which a party is a proper intervenor.  BTA Bank is entitled to, or should be allowed to, intervene in the above-captioned adversary proceeding under both of those tests.[1]

**ARGUMENT**

**A.     BTA is Entitled to Intervention as of Right Under Fed. R. Civ. P. 24(a)**

BTA Bank is entitled to intervene as a matter of right, because it intends to, among other things, assert a claim to the interpleaded fund.  Because allowing this action to proceed without adjudicating the rights of all claimants to the limited fund will impair BTA's rights, BTA Bank must be allowed to intervene.

The Second Circuit has held that where a party seeks to intervene as a matter of right under Rule 24(a)(2), it must: (i) file a timely motion to intervene; (ii) show an interest in the

---

[1]     Additionally, under Rule 22(a) "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead," even where "the claims of the several claimants . . . lack a common origin." Fed. R. Civ. P. 22.  Rule 22 thus provides a separate and independent basis for BTA's participation in this action.

3

litigation; (iii) show that its interest may be impaired by the disposition of the action; and (iv) show that its interest is not adequately protected by the parties to the action. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001); *see also AB ex rel. CD v. Rhinebeck Central School District*, 224 F.R.D. 144, 155 (S.D.N.Y. 2004) (citing *Wash. Elec. Cooperative, Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990)). BTA Bank satisfies each of these requirements.[2]

### 1. BTA Bank's Intervention is Timely

BTA's motion to intervene is timely, having been made before any party has answered the amended interpleader complaint or formally asserted a claim to the interpleaded funds. Although there is no hard and fast rule defining timeliness in this context, courts typically focus on the totality of the circumstances, putting the most emphasis on whether the other parties will be prejudiced by the timing of the intervention. *See Miller v. Silberman*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993); *see generally United States v. Pitney Bowes Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (relevant circumstances include (i) the length of time the applicant knew or should have known of its interest in the pending litigation before making a motion to intervene; (ii) prejudice to existing parties resulting from the applicant's delay; (iii) prejudice to the applicant if the motion is denied; and (iv) the presence of unusual circumstances that militate for or against a finding of timeliness); Wright & Miller 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.) ("In exercising its discretion, the court necessarily will consider the time element itself but this should not be

---

[2] Additionally, under Rule 24(c), a motion to intervene must be accompanied by a pleading that sets out the claim or defense for which intervention is sought. To avoid cluttering the docket with duplicative pleadings, BTA joins Almaty's Answer and Counter- and Crossclaims in full, rather than filing a separate, but identical, pleading.

judged in a vacuum. The timeliness requirement is not intended as a punishment for the dilatory and the mere lapse of time by itself does not make an application untimely.").

Here, BTA has not delayed in seeking intervention, and none of the current parties will suffer any prejudice based on BTA's intervention at this time. This action remains at the pleadings stage, no decisions on the merits have yet been made, and discovery has yet to begin. Only one substantive motion has been filed, in the form of Triadou's motion to dismiss the Amended Interpleader Complaint, and that motion has yet to be ruled on.[3] No document discovery is underway, and no depositions have been taken. BTA and Almaty are even represented by the same counsel, limiting any logistical burden on opposing counsel. By contrast, denial of BTA's motion to intervene would severely prejudice BTA, denying it an opportunity to promptly enforce the judgments it currently holds against a pool of assets Ablyazov cannot obscure or hide offshore.

Finally, the unusual circumstances here favor granting intervention. BTA's delay in intervening until now is primarily the result of an effort to avoid adding procedural complexity to an already-complicated case while the parties sought an amicable resolution. Those efforts were not successful, but BTA acted in good faith, seeking a resolution which would have preserved judicial resources. *See Miller*, 832 F. Supp. at 669 (motion to intervene timely where movant failed to intervene while settlement negotiations were underway).

### 2.    BTA Has A Substantial Interest To Protect in This Litigation

BTA has a substantial interest to protect in this action. First, BTA has a property interest in the interpleaded funds. These funds represent, at least in part, the proceeds of Ablyazov's

---

[3]    While BTA Bank joins fully in the City of Almaty's opposition, if permitted to intervene, BTA Bank does not intend to submit any additional briefing with respect to the motion to dismiss.

fraud and are the result of the money laundering scheme engaged in by Ablyazov, the Khrapunovs, and Joseph Chetrit.  BTA has valid judgments from the courts of the United Kingdom entitling it to recover those funds from Ablayzov wherever he may be hiding his ill-gotten wealth.  Second, BTA has numerous meritorious claims it seeks to assert (alongside Almaty) against Ablyazov and his co-conspirators, as set forth in the accompanying counter- and crossclaims.  Each of these interests certainly qualifies as the sort of "direct, substantial, and legally protectable" interest required for intervention under Rule 24.  *United States v. Peoples Benefit Life Ins. Co*., 271 F.3d 411, 415 (2d Cir. 2001).

### 3. BTA's Interest May Be Impaired Absent its Intervention

To satisfy the third requirement for mandatory intervention under Rule 24, the proposed intervenor must show that its interest might be impaired by the disposition of the action, which can be satisfied by asserting that "as a practical matter," an adverse decision may "compromise[]" the party's claims.  *Hartford Fire Ins. Co. v. Mitlof,* 193 F.R.D. 154, 161–62 (S.D.N.Y. 2000) (citing *N.Y. Pub. Interest Research Grp., Inc. v. Regents of the Univ. of N.Y.*, 516 F.2d 350 (2d Cir.1975)).  Should this litigation proceed absent BTA's intervention, BTA's interest may be substantially impaired.

First, BTA's property interest in the interpleaded funds would be effectively extinguished, as a judgment awarding the funds to any other claimant would effectively, if not legally, extinguish BTA Bank's claims.  In particular, any judgment awarding the funds to Triadou will surely result in those funds being removed from the United States to another jurisdiction where it would be more difficult for BTA to collect on its valid judgments.  *See Brooks v. Sussex Cnty. State Bank*, 167 F.R.D. 347, 351 (N.D.N.Y. 1996) (ex-wife entitled to

intervention in suit between ex-husband and bank over disputed funds, where ex-wife held valid judgments against former husband and feared funds would be dissipated).

Second, BTA would be prejudiced in its ability to prosecute its other claims against Ablyazov and his co-conspirators absent intervention. If BTA Bank is not permitted to intervene, Almaty will pursue the RICO, money laundering conspiracy, and other claims set forth in its counter- and crossclaims. But it will do so without the benefit of being able to enforce BTA Bank's judgment against Ablyazov, and potentially without complete access to all of the sources of evidence available to BTA. Although BTA would not be bound by *res judicata* resulting from any unfavorable judgment, it would certainly "find itself waging an uphill battle" to prosecute its claims if this Court rejects the RICO conspiracy and other theories alleged in the accompanying counter- and crossclaims. *Hartford Fire Ins. Co.,* 193 F.R.D. at 162.

### 4. BTA's Interest May Not Be Adequately Represented

Nor can BTA assume that its interest will be adequately protected by the current parties. Under Rule 24(a)(2), an intervenor' s interest must be at risk of inadequate representation, but the Supreme Court has stated that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Tribovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972). The Second Circuit has stated that the appropriate test is "whether the [party's] interests were so similar to those of [the applicant] that adequacy of representation is *assured*." *Brennan v. N.Y.C. Bd. of Ed*., 260 F. 3d 123, 132-133 (2d Cir. 2001) (emphasis supplied).

Due to the conspiratorial alliance between the Ablyazov and Khrapunov families, BTA and Almaty have worked together at times in an effort to recover their looted assets, and their interests are certainly aligned – but they are not identical. Moreover, BTA Bank has important

claims and legal theories that are available uniquely to it. Most importantly, BTA alone has the ability to enforce its $4 billion judgment. Thus, one reason that Almaty may not be able to adequately represent BTA Bank's interests is because it cannot enforce that powerful judgment.

## B.     BTA Bank Should Be Permitted To Intervene Under Rule 24(b).

Separate and apart from its entitlement to intervene under Rule 24(a), BTA Bank satisfies the prerequisites for permissive intervention under Rule 24(b). Permissive intervention may be granted when (i) the intervenor makes a timely application, (ii) the proposed claims or defenses and the main action have a question of law or fact in common, and (iii) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties to the action. "The principal consideration set forth in the Rule is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Rodriguez v. Pataki*, 211 F.R.D. 215, 219 (S.D.N.Y. 2002).  Permissive intervention is within the court's discretion, and intervention under Rule 24(b)(2) is to be liberally construed. *See Degrafinreid v. Ricks*, 417 F.Supp.2d 403, 407 (S.D.N.Y. 2006).

Here, for the reasons given above, BTA Bank's proposed intervention is timely, and will not delay or prejudice the adjudication of the rights of the original parties to the action. Of the original parties, Almaty explicitly consents to intervention, and Triadou has not yet asserted any claim to the interpleaded funds. Plaintiffs' interests would also be affirmatively promoted by intervention; since their goal in filing this interpleader was to free themselves from multiple claims to the interpleaded funds, it is in their interest that all such claims and asserted and decided in this action.

Second, BTA Bank's claims and defenses share common questions of law and fact with the "main action." As detailed in the accompanying counter- and crossclaims, BTA's claims

largely mirror those of Almaty, and in fact Almaty and BTA Bank assert their claims as co-plaintiffs. Ablyazov and the Khrapunovs joined forces in exile and pooled their ill-gotten resources as they seek to hide their funds from law enforcement; they then laundered those assets through investments with Chetrit in the New York real estate market, among other places. BTA's claims implicate the same RICO schemes that Almaty is currently pursuing, and BTA is largely pursuing the same counter- and crossclaim Defendants as Almaty. BTA already holds valid judgments regarding Ablyazov's liability from the UK courts, which contain detailed findings of fact on the fraud committed by Ablyazov. The primary question for BTA here will be the extent to which the funds in controversy can be attributed to Ablyazov's theft. This same question would be examined regardless of whether BTA intervened, however, as Almaty has alleged the involvement of Ablyazov and his stolen funds in the same RICO conspiracy alleged in the accompanying crossclaims. Indeed, BTA Bank's claims and defenses do not just have "a question of law or fact in common" with the main action; virtually *every* question of law or fact will necessarily be adjudicated in the main action regardless of whether BTA Bank is permitted to intervene. As a result, there is no prejudice to intervention, which this Court should permit in its discretion.

Rather than complicate this proceeding, BTA's intervention will permit a more complete examination of the conspiracy alleged. BTA has spent nearly seven years pursuing Ablyazov and the assets he stole. This effort has included nearly a dozen actions in the United Kingdom, litigation in Russia, extended extradition proceedings in France, and asset tracing efforts across the globe. As a result, BTA is highly knowledgeable about the details of Ablyazov and the Khrapunovs' money laundering efforts, including with Chetrit in the New York real estate market. BTA's intervention will result in far greater information for the Court and parties on the

money laundering schemes alleged and the global efforts of the crossclaim defendants to hide their stolen funds.

## CONCLUSION

For the reasons given above, and those stated in the accompanying Answer and Counter- and Crossclaims and Motion for Joinder, BTA Bank respectfully requests the Court issue an order permitting its intervention in this action.

Dated:   New York, New York
         October 12, 2015

                                         Respectfully Submitted,

                                         BOIES, SCHILLER & FLEXNER LLP

                                         By:      /s/ Matthew L. Schwartz
                                                           Matthew L. Schwartz

Randall W. Jackson
Daniel G. Boyle
Craig Wenner

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: 212-446-2300
Facsimile: 212-446-2350