UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CF 135 FLAT LLC, CF 135 WEST MEMBERS LLC, and THE CHETRIT GROUP, LLC,<br><br>                Interpleader Plaintiffs,<br><br>     - against -<br><br>TRIADOU SPV S.A. and CITY OF ALMATY, a foreign city,<br><br>                Interpleader Defendants.<br><br>CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>                Crossclaim Plaintiffs,<br><br>     - against -<br><br>MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,<br><br>                Crossclaim Defendants. | ECF Case<br><br>No. 15 CV 05345 (AJN) |

**REPLY MEMORANDUM IN SUPPORT OF CROSSCLAIM
DEFENDANT TRIADOU SPV S.A.'S MOTION TO DISMISS THE CROSSCLAIMS**


DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York  10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Interpleader Defendant and
Crossclaim Defendant Triadou SPV S.A.*

3393981

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    SWITZERLAND IS A SUBSTANTIALLY MORE CONVENIENT FORUM ................1

      *Almaty/BTA's Forum Choice Is Owed Little Deference* ........................................................1

      *Switzerland Is An Adequate Alternative Forum* ...................................................................4

      *The Private Interest Factors Strongly Favor Dismissal* ........................................................5

      *The Public Interest Factors Strongly Favor Dismissal* ........................................................8

II.   THE RICO CROSSCLAIMS FAIL AS AGAINST TRIADOU .......................................10

CONCLUSION.................................................................................................................10

3393981

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bigio v. Coca-Cola Co.*, 448 F.3d 176 (2d Cir. 2006) ..................................................................3

*BlackRock, Inc. v. Schroders PLC*, No. 07 Civ. 3183 (PKL),
  2007 WL 1573933 (S.D.N.Y. May 30, 2007) ............................................................................8

*Calgarth Invs. Ltd. v. Bank Saderat Iran*, No. 95 CIV. 5332 (MBM),
  1996 WL 204470 (S.D.N.Y. Apr. 26, 1996),
  *aff'd*, 108 F.3d 329 (2d Cir. 1997) ..........................................................................................8

*DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21 (2d Cir. 2002) .......................................................5

*Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010) .......................................10

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*,
  806 F. Supp. 2d 712 (S.D.N.Y. 2011) .......................................................................................4

*Firebird Republics Fund, Ltd. v. Moore Capital Mgmt. LLC*,
  No. 09 Civ. 303 (AKH), 2009 WL 2043885 (S.D.N.Y. July 14, 2009) ...................................6

*Grendene, S.A. v. Brazam Int'l Trading Corp.*, No. 83 Civ. 0782 (JMW),
  1986 WL 10709 (S.D.N.Y. Sept. 24, 1986) ..............................................................................3

*In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263 (S.D.N.Y. 2010) .........................................1, 4

*In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011) .................................................6

*In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298 (S.D.N.Y. 2012) .................................................6

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) ................................................2, 5, 6

*JW Oilfield Equip., LLC v. Commerzbank, AG*,
  764 F. Supp. 2d 587 (S.D.N.Y. 2011) .......................................................................................2

*Karvelis v. Constellation Lines SA*, 608 F. Supp. 966 (S.D.N.Y. 1985) ...................................... 7

*Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947) ...........................1

*Metito (Overseas) Ltd. v. General Elec. Co.*, No. 05 Civ. 9478 (GEL),
  2006 WL 3230301 (S.D.N.Y. Nov. 7, 2006) .............................................................................3

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ...........................1, 2

*R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164 (2d Cir. 1991) ..........................................7

3393981

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
   No. 11-CV-05801 (DLI) (VVP), 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012).....................6

*Republic of Colombia v. Diageo N. Am. Inc.*,
   531 F. Supp. 2d 365 (E.D.N.Y. 2007) .................................................................................9

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)................................................................10

*Skanga Energy & Marine Ltd. v. Arevenca S.A.*,
   875 F. Supp. 2d 264 (S.D.N.Y. 2012) *aff'd*, 522 F. App'x 88 (2d Cir. 2013)..........................3

*Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ 2084 (KMW)(AJP),
   2003 WL 230741 (S.D.N.Y. Feb. 3, 2003)................................................................8

*Wechsler v. Four Seasons Hotels Ltd.*, No. 13 Civ. 8971 (RJS),
   2014 WL 2604109 (S.D.N.Y. June 10, 2014) ............................................................6

**STATUTES**

18 U.S.C. § 1962(d) ......................................................................................................10

Swiss Civil Procedure Code Article 9 ..............................................................................4

Swiss Civil Procedure Code Article 12 ............................................................................4

**OTHER AUTHORITIES**

Wright & Miller, 14 D Fed. Prac. & Proc. Juris. § 3828 (4th ed.)...................................3

3393981

Almaty/BTA's Crossclaims – which focus on alleged malfeasance of Kazakh nationals in Kazakhstan and their alleged money laundering in Switzerland – belong in Switzerland, where Almaty has not only been participating in the Swiss authorities' lengthy investigation of the same conduct, but has initiated additional proceedings concerning that same malfeasance and further money laundering in Switzerland and abroad (including the United States).   Almaty/BTA's allegations (and actions) confirm that Switzerland is not only an adequate alternative forum to New York, but is also substantially more convenient for this litigation.   Almaty/BTA's efforts to show otherwise are based on a tortured view of the Crossclaims, which should be readily rejected after a thorough evaluation of that pleading's allegations.

## I.     SWITZERLAND IS A SUBSTANTIALLY MORE CONVENIENT FORUM

*Almaty/BTA's Forum Choice Is Owed Little Deference*.   Almaty/BTA's choice of forum deserves less deference for three reasons.   First, the black-letter law of this jurisdiction (which Almaty/BTA ignore) holds that a foreign litigant's choice to sue in the United States "is entitled to less deference because one may not easily presume that choice is convenient." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003).[1]   Second, the deference owed to Almaty/BTA's choice is diminished "where the core operative facts upon which the litigation is brought bear little connection to the chosen forum." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 269 (S.D.N.Y. 2010).   The Crossclaims' core operative facts involve the conduct of Kazakh individuals that occurred almost entirely in Kazakhstan and Switzerland, and have, at best, only marginal ties to New York.   *See* Triadou Moving Mem., 2-6 (Dec. 18, 2015) (ECF No. 86) ("Mem.") (citing Crossclaims ¶¶ 32-86).   Third, because Almaty/BTA's forum choice appears to

---

[1] Almaty/BTA's citation to *Koster v. (American) Lumbermens Mutual Casualty Co.*, which implies only limited circumstances are appropriate for dismissal on *forum non conveniens* grounds, is misleading.   Opp. 7 (quoting *Koster*, 330 U.S. 518, 524 (1947)).   The *Koster* Court's analysis applied to a two-party dispute in which the plaintiff chose to sue in its *home forum*, *Koster*, 330 U.S. at 524, facts not present here.

3393981

be motivated by forum shopping reasons, *see* Mem. 13, their choice is due even less deference, *see Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc).[2]

Trying to avoid this diminished deference, Almaty/BTA speciously argue that Triadou selected New York as a forum. Opp. 8. Triadou's exposure to New York courts was extremely limited; it simply sought to enforce the same Assignment Agreement and Guaranty (breached by the Chetrits four times), by means of a straight-shot summary judgment in lieu of complaint motion.[3] *See, e.g.*, Opp. Ex. 6, ¶¶ 4-7. In contrast, despite knowing of their purported claims for years, and despite numerous investigations and lawsuits pending in Kazakhstan, Switzerland, the U.K., and California, Almaty/BTA chose to file yet another suit on the same allegations here.

Equally unavailing is Almaty/BTA's assertion that their forum choice is owed deference because "it is the home forum of several of the litigants." Opp. 8. Because litigants "rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy." *Pollux Holding*, 329 F.3d at 74. Thus, a plaintiff's choice merits heightened deference only if "the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum." *Id.* While the Chetrits reside in New York, Almaty/BTA admit that the Chetrits are not parties to the Crossclaims, Opp. 18 n.8; and, shortly after filing the Crossclaims, Almaty/BTA settled with the Chetrits (following months of negotiations that did not include Triadou), resulting in dismissal of

---

[2] Even Almaty/BTA's Opposition supports the forum shopping inference. Almaty/BTA will bear the "cost of producing and translating any materials as required in discovery," and will bear the costs of bringing their own documents and witnesses to the United States, Opp. 15, despite the fact that Switzerland is half the distance away and they are already involved in multiple Swiss proceedings.

[3] Almaty/BTA's reliance on *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 598-99 (S.D.N.Y. 2011), is misplaced, as that case involved enforcement in the U.S. of a judgment that already had been obtained in an action brought in the U.S., by a U.S. entity – again, facts not present here.

3393981

the Counterclaims (which are identical to the Crossclaims) against the Chetrits, and the Chetrits' agreement to cooperate in the prosecution of the Crossclaims.[4]  This leads to a reasonable (and strong) inference that Almaty/BTA chose to sue in New York to obtain a tactical advantage.[5]

 None of Almaty/BTA's other reasons for suing in New York are legitimate:

- The Flatotel and Cabrini Medical Center are not "the two key properties relevant" here. Opp. 9.  Viktor Khrapunov allegedly engaged in approximately *80 real estate transactions in Kazakhstan* that caused roughly $300 million in damages to Almaty, money that was moved to Switzerland, Crossclaims ¶¶ 66-82, compared to the small fraction of that money allegedly invested in two properties in New York, *id.* ¶ 119.[6]

- While the California Actions "did not include Triadou, BTA, or Ablyazov," Opp. 10, Triadou was directly referenced, and the underlying allegations against Viktor Khrapunov are largely the same as those advanced here.  *See* 2014 Cal. Action Compl. ¶¶ 37, 38, 69. By including Ablyazov (whose operations are allegedly run by Swiss resident Ilyas Khrapunov), and Triadou (whose principal place of business is in Switzerland), Almaty/BTA have only increased the Crossclaims' Swiss links.[7]

- Almaty/BTA fail to offer any evidence that the U.K. judgments against Ablyazov (some of which appear to be default judgments) have been recognized in the U.S.; nor do they offer any legal authority that those judgments will have preclusive effect against other parties; and they identify only a freezing order against Ilyas Khrapunov, which is akin to a preliminary injunction, not a judgment. *See* Opp. Ex. 1.

---

[4] While Almaty/BTA assert that the question of deference should be evaluated as of the time the suit was filed, Opp. 9, the doctrine of *forum non conveniens* is "flexib[le] based on the facts and circumstances of a particular case." *Metito (Overseas) Ltd. v. General Elec. Co.*, No. 05 Civ. 9478 (GEL), 2006 WL 3230301, at *2 (S.D.N.Y. Nov. 7, 2006) (citation omitted)).  Given the Court's broad discretion, it should take note of the changed circumstances arising from the Chetrits' settlement with Almaty/BTA. *Cf. Grendene, S.A. v. Brazam Int'l Trading Corp.*, No. 83 Civ. 0782 (JMW), 1986 WL 10709, at *1-4 (S.D.N.Y. Sept. 24, 1986) (reevaluating denial of *forum non conveniens* dismissal based on changed circumstances).

[5] Almaty/BTA's selective quotation of *Bigio v. Coca-Cola Co.* in arguing that choosing the defendant's home forum garners heightened deference, *see* Opp. 8-9, omits the important fact that the plaintiffs there filed in the U.S. only after their "efforts to seek relief from the Egyptian authorities proved abortive."  *Bigio*, 448 F.3d 176, 179 (2d Cir. 2006).  That fact is not present here.

[6] Unlike the present case, *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264 (S.D.N.Y. 2012) *aff'd*, 522 F. App'x 88 (2d Cir. 2013), involved only two transactions between the parties, the proceeds of which were transferred into New York at the defendant's request to facilitate defendants' U.S.-based operations. *Id.* at 267-68.  Here, the vast majority of damages claimed arise out of alleged conduct in Kazakhstan and funds transferred to Switzerland.

[7] Almaty/BTA's citation to Wright & Miller, Opp. 11, misleadingly omits the authors' acknowledgment that even courts engaging in a two-step analysis (i.e., such as Judge Olguin) necessarily evaluate the deference owed to the plaintiff's forum choice, and that regardless of the test used, "all courts agree" that the level of deference owed is specific to a case's facts. Wright & Miller, 14 D Fed. Prac. & Proc. Juris. § 3828 (4th ed.).  Judge Olguin's opinion implicitly confirms this, as he gave little deference to Almaty's choice of forum (as the Court should here).

3393981

***Switzerland Is An Adequate Alternative Forum.*** Almaty/BTA do not dispute that several courts have found that Switzerland is an adequate alternative forum, including for claims sounding in money laundering. Mem. 14-15. Instead, they complain that Triadou has not consented to jurisdiction or waived statute of limitations-based defenses for a suit in Switzerland; and Triadou has not shown Ablyazov is subject to jurisdiction there. Opp. 11-14. Neither concern is valid.

First, Triadou consents to the jurisdiction of the Swiss courts in Geneva, where it maintains its principal place of business, and agrees to waive any statute of limitations-based defenses if Almaty/BTA bring suit there.[8] Where a defendant consents to the jurisdiction of the proposed alternative forum and waives statute-of-limitations-based defenses, it has carried its burden. *See In re Alcon*, 719 F. Supp. 2d at 279; *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 726 (S.D.N.Y. 2011).

Second, Almaty/BTA's argument as to Ablyazov ignores that he has not yet been joined here. Opp. 11-12. Triadou thus bears no burden to show that Ablyazov is subject to process in Switzerland.[9] Given its broad discretion, the Court also should note that, to date, Almaty/BTA have failed to serve Ablyazov (or the Khrapunovs); Ablyazov's amenability to service *in New York* is still in question. Even if the Court considers Ablyazov to be joined, it can nevertheless sever him and the claims against him to facilitate dismissal of the remaining Crossclaims on *forum non conveniens* grounds, thereby mooting the need for Ablyazov's consent to jurisdiction. *See Erausquin*, 806 F. Supp. 2d at 723 (noting the Second Circuit has approved severance of

---

[8] Triadou reserves all other defenses, legal and factual, to any claims Almaty/BTA may assert against it in Switzerland; and its consent to jurisdiction and waiver of limitations-based defenses is limited to only those claims brought based on the allegations set forth in the Crossclaims.

[9] The allegations that the Khrapunovs reside in Switzerland are sufficient to find that both individuals would be subject to the jurisdiction of Swiss courts. Article 9 of the Swiss Civil Procedure Code ("SCPC") provides that the courts at a person's domicile have jurisdiction over that person. *See* Ex. 6. Initially, Triadou did not affirmatively consent to jurisdiction because it understood it would be subject to jurisdiction under SCPC Article 12. *See* Ex. 6.

3393981

claims to facilitate venue transfers, finding severance will "avoid the substantial impracticalities associated with litigating in a forum where most of the documents and witnesses do not reside," and dismissing to Switzerland on *forum non conveniens* grounds).   Doing so would not be prejudicial, as Almaty already has pursued claims against the Khrapunovs in California based on largely similar allegations, but admit that those actions did not include Ablyazov.  Opp. 10.

*The Private Interest Factors Strongly Favor Dismissal*.  Almaty/BTA acknowledge that the private interest factors assess "the convenience of the litigants," Opp. 14, but at every turn assert that Triadou's convenience (and that of the other Crossclaim Defendants) is immaterial. However, "[i]n considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as a result of dismissal and the obligation to bring suit in another country." *Iragorri*, 274 F.3d at 74.  Triadou's burden and cost of litigating in New York is thus central to the inquiry.

While Almaty/BTA assert that the majority of relevant evidence needed for the Crossclaims will be documents held by the parties, Opp. 14-15, they ignore the Second Circuit's preference for live testimony, which is "especially important in a fraud action where the factfinder's evaluation of witnesses' credibility is central to the resolution of the issues." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).[10]  Here, three of the Crossclaim Defendants reside in Switzerland, and the fact that Almaty/BTA have not yet served the Khrapunovs underscores the substantial inconvenience of obtaining their presence in New York.

Almaty/BTA's effort to downplay the amount of evidence located in Switzerland, *see* Opp. 16, is belied by their own allegations.  The proper focus in evaluating the private interest

---

[10] *DiRienzo*'s finding that the production of foreign evidence in the defendants' control was neither "oppressive" nor "vexatious" was based on the fact that the majority of that evidence was in Canada, just a 90-minute flight from the court, not across the Atlantic.  *See* 294 F.3d at 30.

3393981

factors is "on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Iragorri*, 274 F.3d at 74.  As set forth in Triadou's Moving Memorandum, the Crossclaims focus on the Khrapunovs' and Ablyazov's alleged conduct in Kazakhstan, and the transfer of the alleged gains from that conduct into Switzerland.  *See* Crossclaims ¶¶ 50-82.

As to documents, Almaty/BTA overstate the law in arguing that Triadou's burden for producing evidence in its own control is "accorded little weight."  Opp. 15 (citing *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 258 (S.D.N.Y. 2011)).[11]  Courts routinely acknowledge and credit the burden of defendants in assessing *forum non conveniens*.  *See, e.g.*, *Wechsler v. Four Seasons Hotels Ltd.*, No. 13 Civ. 8971 (RJS), 2014 WL 2604109, at \*3 (S.D.N.Y. June 10, 2014) (finding Nevis "substantially more convenient" than New York where defendant would need to transport all of their documents and witnesses); *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 (DLI) (VVP), 2012 WL 3746220, at \*6-8 (E.D.N.Y. Aug. 27, 2012) (although technology eases the burden of document transport, where "the majority of relevant evidence is located abroad, the burden imposed on the parties is still significant and favors dismissal"); *Firebird Republics Fund, Ltd. v. Moore Capital Mgmt. LLC*, No. 09 Civ. 303 (AKH), 2009 WL 2043885, at \*3 (S.D.N.Y. July 14, 2009) (finding private factors favor dismissal because most witnesses and documents relating to alleged fraud reside with foreign defendants and entities).[12]

Almaty/BTA also assert that the burden on Triadou and the other Crossclaim Defendants

---

[11] Almaty/BTA's incomplete and incorrect citation to *In re Optimal* omits the court's later decision in the same case dismissing for *forum non conveniens*, part of which included the court's change of view on relevant considerations. *See In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 307 (S.D.N.Y. 2012) ("while in my prior opinion I noted that letters rogatory are an appropriate mechanism for securing testimony and that technological advances make international document production less burdensome, it is now clear that the location abroad of the vast bulk of the evidence weighs against according significant deference to plaintiffs' choice of forum").

[12] In addition, documents relating to the U.S. investments, like the Assignment Agreement, are of only marginal importance here, as there are no questions about the construction of the Assignment Agreement.

3393981

to produce their own witnesses and employees "carries little weight in this analysis," but the case on which they rely does not support that proposition. Opp. 19 (citing *Karvelis v. Constellation Lines SA*, 608 F. Supp. 966, 972 (S.D.N.Y. 1985)). In *Karvelis*, the court found that, because the defendants' witnesses were seamen who stopped in U.S. ports as frequently as in Greek ports, the factor was "inconclusive." *Id.* at 972. But Almaty/BTA have not been able to serve either of the Khrapunovs; nor do any of Triadou's (or SDG's) employees regularly frequent the United States.[13] While the Opposition mentions only the Khrapunovs, their employees, and Triadou as located in Switzerland, Opp. 19, the Crossclaims also reference SDG (a Swiss company) and Mr. Glatz, and imply that the Khrapunovs moved $300 million into Switzerland (implicating the need for discovery from Swiss financial institutions). Crossclaims ¶¶ 78-79, 82, 89-90; *see also* Dec. ¶¶ 6(d), 6(e) & Ex. 2 (identifying several individuals and entities residing in Switzerland from whom discovery would likely be needed here).[14]

In contrast, Almaty/BTA admit that the majority of evidence they need from the Chetrits is documentary, Opp. 14-15, and the Crossclaims identify only three potential witnesses associated with the Chetrits, Crossclaims ¶¶ 96-99.[15] Given that BTA, Almaty, and the Chetrits have reached an agreement regarding cooperation, it is likely that testimony from Chetrit witnesses can be obtained in connection with Swiss proceedings without resort to letters rogatory – unlike witnesses in Switzerland for this action. Thus, the need for discovery from Swiss sources, including witnesses, far outstrips the limited need for evidence and witnesses from New York, and it will be substantially easier to obtain the presence of those witnesses by litigating

---

[13] The New York address Almaty/BTA identify for Triadou, Opp. 13, is its former lawyer's address. *See* Ex. 5.

[14] Nor does *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 168-69 (2d Cir. 1991), support Almaty/BTA's position on letters rogatory; in that case, only a small portion of discovery needed would be left to that device. Triadou already has demonstrated that is not the case here. *See* Mem. 18-19.

[15] Because it is the finances related to the New York properties, not the physical properties themselves, that are relevant here, Opp. 20, the balance of the factor relating to the location of the premises is neutral.

3393981

these claims in Switzerland.[16]

Finally, Almaty/BTA claim that Triadou has conceded that the Interpleader Claims must be litigated in New York, Opp. 17, while acknowledging that Triadou has argued the opposite, Mem. 24 and n.20.  Triadou is not attempting to "splinter" this litigation, Opp. 26, and instead seeks its complete dismissal, including the Interpleader Claims.  If the Court is concerned about "splintering," it need look no further than to Almaty/BTA's litigious conduct in bringing suit in Kazakhstan, seeking the initiation of investigations in Switzerland, filing suits in the U.K., filing multiple actions in California, and now, asserting largely the same claims in New York.[17]

***The Public Interest Factors Strongly Favor Dismissal***.  Almaty/BTA's unfounded arguments as to the public interest factors can be dispensed with quickly.  Almaty/BTA do not dispute that the fact that Almaty, BTA, Triadou, the Khrapunovs, and Ablyazov all reside overseas is likely to create "pretrial and trial inefficiencies" if this litigation is conducted in New York. *See Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ 2084 (KMW)(AJP), 2003 WL 230741, at *32 (S.D.N.Y. Feb. 3, 2003). Almaty/BTA's position as to court congestion is based on the continued misunderstanding that Triadou seeks to split the Crossclaims from the claims in the Interpleader Complaint, which it does not. Opp. 21. Likewise, Almaty/BTA's "consolidation" argument falls flat, *id.*, given that Almaty/BTA are currently litigating in the U.K., appealing the

---

[16] Contrary to Almaty/BTA's assertions, the alleged conspiracy's global nature actually supports *forum non conveniens* dismissal, as most of the evidence not found in Switzerland is still located overseas, Opp. 19, thus making discovery more convenient in Switzerland. *See BlackRock, Inc. v. Schroders PLC*, No. 07 Civ. 3183 (PKL), 2007 WL 1573933, at *9 (S.D.N.Y. May 30, 2007) ("With a trial in Germany, transport of English witnesses would be considerably less costly, in terms of time and money"); *Calgarth Invs. Ltd. v. Bank Saderat Iran*, No. 95 CIV. 5332 (MBM), 1996 WL 204470, at *6 (S.D.N.Y. Apr. 26, 1996), *aff'd*, 108 F.3d 329 (2d Cir. 1997) (proposed alternate forum "almost certainly would require less travel, less expense, and less waste of time than trial in a jurisdiction separated by an ocean from the parties and witnesses").

[17] Indeed, Almaty has begun a new effort to bring claims in Switzerland by serving Swiss "payment orders" on individuals associated with SDG, based on SDG's alleged connection to Viktor Khrapunov. *See* Dec. ¶¶ 6(f), 8, 14; Dec. Exs. 1-4. The allegations in the letter to Swiss counsel related to the payment order and the order itself make clear that Almaty seeks the same damages for the same conduct at issue in the Crossclaims. *Compare* Dec. ¶¶ 6(a)-(d), 13; Exs. 1-4 *with* Crossclaims ¶¶ 8, 21, 70-76, 139-40. Further, the letter indicates that Almaty is investigating alleged reinvestment of purportedly ill-gotten gains in Switzerland and abroad, *including the U.S.*, underscoring the inappropriateness of duplicative litigation of the Crossclaims here. *See* Dec. ¶ 6(g).

3393981

dismissal of their California Actions, beginning legal process in Switzerland, and heavily involved in the lengthy investigation by the Swiss authorities – all centered on the same Kazakh misconduct.[18]

The bulk of Almaty/BTA's remaining argument on the public interest factors is that the U.S. and New York, not Switzerland, have the paramount interests in this dispute aimed at controlling illicit activities in their borders. Opp. 21-25. But those interests, as set forth in both sources Almaty/BTA cite, are in addressing issues where they concern U.S. entities. *See, e.g.*, *Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 410-11 (E.D.N.Y. 2007) (noting U.S. interest is in determining whether "United States corporations are engaged in the laundering of proceeds"). Here, the Chetrits (the only U.S. entities involved) are not parties to the Crossclaims and have already settled. Opp. 18 n.8. What is left are claims asserted by foreign entities Almaty/BTA against individuals and entities who reside mainly in Switzerland, regarding the alleged embezzlement of money from Kazakhstan and transferred to Switzerland. In short, Almaty/BTA have failed to demonstrate any public interest by the U.S. or New York that is relevant to such foreign actors. Conversely, Switzerland's interest in these claims is apparent, as it continues to investigate the Khrapunovs and the source of Almaty's recent spate of "payment orders."

That is why, on largely similar facts, Judge Olguin found that "it is clear that California has relatively little interest in a suit initiated by a city in Kazakhstan against Kazakh citizens, most of whom live in Switzerland, based primarily on conduct alleged to have occurred in Kazakhstan and Switzerland." 2014 Cal. Action Order 9. The few contacts with New York, like those in the California Actions, "do[] not significantly change the analysis when weighed against

---

[18] Almaty/BTA's pop psychology positing that jurors would be interested in participating in a case of this nature (among foreign litigants based on foreign conduct) is of no moment. Opp. 21-22.

3393981

the extent of the wrongdoing alleged to have occurred in Kazakhstan and Switzerland." *Id.* at 10.

## II.    THE RICO CROSSCLAIMS FAIL AS AGAINST TRIADOU

The RICO Crossclaims against Triadou (as opposed to "the Ablyazov-Khrapunov Group") fail because the allegations regarding the allegedly fraudulent sale of SDG to Mr. Glatz are insufficiently particularized.  Almaty/BTA never allege which individual(s) made the alleged "fraudulent loan"[19] or "sham" sale or when, where, or how the transactions were completed; nor do they allege any other basis to find that Ilyas Khrapunov continued to control SDG (and Triadou) after its sale, beyond conclusory statements.  Mem. 24-28.  Almaty/BTA assert that the "alleged facts in their totality" overcome these failings, but highlight only peripheral or conclusory allegations that do not confirm the alleged preceding fraudulent sale.  Opp. 29-31.

Almaty/BTA's insufficient pleading as to its fraud allegations renders the general features of their RICO Crossclaims likewise insufficient as to Triadou, including the elements of participation[20] and agreement to conspire.[21]  Those claims disintegrate because Almaty/BTA failed to sufficiently plead that Triadou knowingly or intentionally played a role in the alleged scheme of "the Ablyazov-Khrapunov Group."

### CONCLUSION

For the reasons set forth above and in Triadou's Moving Memorandum, Triadou respectfully requests that the Court dismiss Almaty's and BTA's Crossclaims in their entirety.

---

[19] Although Almaty/BTA now claim the loan "would not necessarily be required to be fraudulent," their own pleadings allege the "fraudulent loan" as the method of carrying out the "sham" sale.  Opp. 32 n.13.

[20] The participation element requires that the defendant play "some part in directing those affairs," *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), and "demonstrate some degree of control over the enterprise," *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) ("it is not enough to allege that a defendant provided services that were helpful to an enterprise") – all absent here.

[21] Almaty/BTA unsuccessfully attempt to rely on "the Ablyazov-Khrapunov Group" controlling Triadou as a substitute for "allegations of some factual basis for a finding of a conscious agreement among the defendants." *Elsevier Inc.*, 692 F. Supp. 2d at 313 (citation and internal quotation marks omitted); *see also* 18 U.S.C. § 1962(d).

10

3393981

Dated:  New York, New York
         February 5, 2016                    Respectfully submitted,

                                             DICKSTEIN SHAPIRO LLP

                                             By:     s/Deborah A. Skakel
                                                     Deborah A. Skakel
                                             1633 Broadway
                                             New York, New York  10019-6708
                                             Telephone: (212) 277-6500
                                             Facsimile: (212) 277-6501
                                             skakeld@dicksteinshapiro.com

                                             *Counsel for Interpleader Defendant and Crossclaim
                                             Defendant Triadou SPV S.A.*

3393981