UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 18 2016

CF 135 Flat LLC *et al.*,

      Plaintiffs,

—v—

Triadou SPV S.A. *et al.*,

      Defendants.

15-CV-5345 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

  This interpleader action arises from Plaintiffs' purchase of an interest in a real estate holding company. Defendant City of Almaty ("Almaty") removed this action from New York state court on July 9, 2015. Dkt. No. 1. On August 31, 2015, Defendant Triadou SPV S.A. ("Triadou") moved to dismiss Plaintiffs' Amended Interpleader Complaint. Dkt. No. 29. For the reasons articulated below, Plaintiffs' motion is GRANTED.

I.  BACKGROUND

  In August 2014, Triadou assigned its interest in a real estate holding company to Plaintiffs. Dkt. No. 25 ("Amended Interpleader Complaint" or "AIC") ¶ 8; Dkt. No. 39 ("Plaintiffs Opp. Br.") at 1, 4. In exchange, Plaintiffs agreed to pay Triadou $21 million in four installment payments. AIC ¶ 8. Alleging that Plaintiffs had failed to make each of the required installment payments, Triadou initiated a series of New York state court lawsuits against Plaintiffs to recover the $21 million assignment purchase price. *Id.* ¶ 10. The state court has, thus far, awarded $10.5 million to Triadou in those actions. *See* Dkt. No. 93 Ex. A at 1-2.

  In June 2015, Plaintiffs became aware of Almaty's allegations that Triadou was funded by money stolen from Almaty and that its assignment of its interest in the real estate holding

1

company was a fraudulent conveyance "designed to frustrate [the] recovery of [] stolen funds." AIC ¶ 11-12. Plaintiffs allege that Almaty "made clear its intent to commence suit to undo Triadou's assignment and to recover from Plaintiffs." *Id.* ¶ 12. Shortly thereafter, on July 7, 2015, Plaintiffs initiated this interpleader action in New York Supreme Court. *Id.* ¶ 13-14. Almaty then removed the action to federal court. *Id.* ¶ 14. Plaintiffs allege that, after the case was removed to federal court, Almaty "showed Plaintiffs' attorneys a draft complaint setting forth the causes of action which Almaty will raise against Plaintiffs," which include causes of action "to undo Triadou's assignment . . . and to recover the value of the assigned interest from Plaintiffs." *Id.* ¶ 15.

In the Amended Interpleader Complaint, Plaintiffs admit that they owe $21 million to either Triadou or Almaty. *Id.* ¶ 17. However, they claim that, due to Almaty's allegations that Triadou illegally acquired its interest in the real estate holding company, the person to whom they owe that sum depends on the validity of Triadou's assignment. *Id.* ¶ 16. As a result, Plaintiffs allege that they "are or may be exposed to double liability" and are thus entitled to initiate an interpleader action. *Id.* ¶ 17.

On August 31, 2015, Triadou moved to dismiss the Amended Interpleader Complaint, arguing primarily that Plaintiffs "ha[ve] not and cannot allege a real and reasonable fear of double liability over the [$21 million interpleader] Fund[]." Dkt. No. 31 ("Triadou Br.") at 9. Plaintiffs and Almaty oppose Triadou's motion. Dkt. Nos. 34, 39.

## II. LEGAL STANDARD

"Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund." *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993). There are two

types of interpleader actions: statutory interpleader pursuant to 28 U.S.C. § 1335 and rule interpleader pursuant to Federal Rule of Civil Procedure 22. These "two types of interpleader serve the same purpose and perform the same function, and differ only in their requirements for subject matter jurisdiction, venue, and service of process." *Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 482 n.11 (S.D.N.Y. 2015) (Oetken, J.) (citing Moore's Federal Practice § 22.02[3] (3d ed. 2013)).

Plaintiffs' Amended Interpleader Complaint does not specify whether the action is brought pursuant to 28 U.S.C. § 1335 or Rule 22. *See* AIC ¶¶ 1,7. However, because Plaintiffs have not "deposited [the] money or property [in dispute] . . . into the registry of the court," *see* § 1335(a)(2), and rely on Rule 22 in their opposition to Triadou's motion to dismiss, *see* Plaintiffs Opp. Br. at 8, "the court will construe [their] pleadings as [invoking] a claim under Rule 22" rather than § 1335.[1] *Geler v. Nat'l Westminster Bank USA*, 763 F. Supp. 722, 727 (S.D.N.Y. 1991).

Pursuant to Rule 22, "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead" even if such "claims . . . lack a common origin." Fed. R. Civ. P. 22(a)(1)(A). Such a person, known as the interpleader plaintiff, is a "neutral stakeholder" in the disputed funds or property, *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1061 (S.D.N.Y. 1992), and may bring suit if he or she "legitimately fears multiple vexation directed against a single fund." 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure ("7 Wright & Miller") § 1704, at 542 (3d ed. 2001)); *see*

---

[1] Unlike statutory interpleader, rule interpleader requires a plaintiff to establish "subject matter jurisdiction based either upon a general federal question or diversity of citizenship." *6247 Atlas Corp. v. Marine Ins. Co., No. 2A/C*, 155 F.R.D. 454, 461 (S.D.N.Y. 1994); *see also* 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure ("7 Wright & Miller") § 1710, at 580-81 (3d ed. 2001). Here, the Amended Interpleader Complaint satisfies the diversity jurisdiction requirements of 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and there is more than $75,000 in controversy. *See* AIC ¶¶ 1-6.

3

*also John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) ("An interpleader action is appropriate when a stakeholder legitimately fears multiple [liability] directed against a single fund, regardless of the merits of the competing claims.") (citation and internal quotation marks omitted); *United States v. Pre-Columbian Artifacts*, 845 F. Supp. 544, 546 (N.D. Ill. 1993) (an interpleader action involves "conflicting claims with respect to an interpleader *res*"). This structure "is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) (citing *Washington Elec. Co-op.*, 985 F.2d at 679). As the Second Circuit has explained, "[t]he stakeholder should not be obliged at its peril to determine which of two claimants has the better claim." *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 953 (2d Cir. 1953); *see also 6247 Atlas Corp. v. Marine Ins. Co., No. 2A/C*, 155 F.R.D. 454, 462 (S.D.N.Y. 1994) (in an interpleader action, "the stakeholder is relieved from the obligation of determining which litigant has a superior claim").

"The burden is on the party seeking interpleader to demonstrate that [its] requirements are satisfied." 7 Wright & Miller § 1714, at 626. The fundamental requirement for a Rule 22 interpleader action is demonstrating that the claims in question "may expose [the party seeking interpleader] to double or multiple liability." Fed. R. Civ. P. 22(a)(1). As suggested above, such liability must be with respect to the same funds or property, called the interpleader res. *See* 7 Wright & Miller § 1704, at 542 (the alleged multiple liability must be "directed against a single fund"); *Washington Elec. Co-op.*, 985 F.2d at 679 (interpleader involves "multiple claims to the same fund"); *Pre-Columbian Artifacts*, 845 F. Supp. at 546 (interpleader involves "conflicting claims with respect to an interpleader *res*"). Importantly, the propriety of an interpleader action

4

does not depend upon "the merits of the competing claims," *John*, 141 F.R.D. at 33, and "fear of multiple liability need not be supported by an existing legal action." *Great Wall*, 117 F. Supp. 3d at 483. Instead, the interpleader plaintiff "need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others." *Bank of N.Y. v. First Millennium, Inc.*, No. 06-CV-13388 (CSH), 2008 WL 953619, at *6 (S.D.N.Y. Apr. 8, 2008) (quoting *Garcia*, 802 F. Supp. at 1065). However, "plainly frivolous claim[s]" do not qualify for interpleader relief. *Krishna v. Colgate Palmolive Co.*, No. 90-CV-4116 (CSH), 1991 WL 125186, at *2 (S.D.N.Y. July 2, 1991). Although interpleader is an equitable remedy intended to be "liberally construed," "it cannot be used to solve all the vexing problems of multiparty litigation" and was never intended "to be an all-purpose bill of peace." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533, 535 (1967).

## III. DISCUSSION

Triadou, who has moved to dismiss the Amended Interpleader Complaint, argues that Plaintiffs have not met their burden of establishing a legitimate fear of double liability with respect to the interpleader *res*. *See* Triadou Br. at 1 ("Plaintiffs' allegations that they fear multiple liability as to the Funds . . . are [] meritless."); Reply Br. at 2 ("[W]ere [Plaintiffs] to pay the Funds to Triadou . . . Plaintiffs would not be 'exposed to multiple liability' as to the Funds."). In their opposition, Plaintiffs describe the propriety of interpleader as follows:

> Triadou claims that the assignment was valid, and that therefore, it should recover from Plaintiffs. Almaty claims that the assignment was invalid, and that therefore, it should recover from Plaintiffs. The assignment cannot be simultaneously valid and invalid; depending on its validity, Plaintiffs should pay either Triadou or Almaty, but not both.

Plaintiffs Opp. Br. at 11. Almaty, who agrees with Plaintiffs on the propriety of interpleader, similarly asserts that the dispute over the validity of the assignment means that Plaintiffs are

"subject to multiple claims both as to the Interest and as to the $21 million owed under the assignment agreement." Dkt. No. 34 ("Almaty Opp. Br.") at 3.

As Plaintiffs point out, there is undeniably a common *dispute* here: Triadou claims the assignment in question was valid, and Almaty claims the assignment was invalid. However, interpleader does not merely require a common dispute. Instead, as Almaty recognizes in its brief, interpleader is available if "two parties have laid claim to the *same asset* in the hands of a third party." Almaty Opp. Br. at 3 (emphasis added); *see also Washington Elec. Co-op.*, 985 F.2d at 679 (interpleader requires "multiple claims to the same fund"); 7 Wright & Miller § 1704, at 542 (alleged multiple liability in interpleader must be "directed against a single fund"). Thus, there are three relevant questions in evaluating whether interpleader is appropriate in this case. First, do Almaty and Triadou both have potential claims against Plaintiffs such that Plaintiffs risk "double or multiple liability"? Fed. R. Civ. P. 22(a)(1). Second, are those claims directed against the same asset or fund? *See Washington Elec. Co-op.*, 985 F.2d at 679. Third, is that asset or fund the interpleader res in this action? *See Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957). The Court will address each of these questions in turn.

### A.     Claims against Plaintiffs

Triadou first argues that while Almaty may have a claim against *it* for fraudulent conveyance, Almaty has no such claim against Plaintiffs. Triadou Br. at 9. This argument is without merit. Under New York's Debtor and Creditor Law § 278, a creditor who has been the victim of a fraudulent conveyance may bring a claim "against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase" to "[h]ave the conveyance set aside" or "[d]isregard the conveyance and attach or levy execution upon the property conveyed." N.Y. Debt. & Cred. Law § 278(1). If, as Almaty alleges, Plaintiffs were

complicit in Triadou's fraud, *see* Dkt. No. 49 ¶¶ 169-174, 183, Almaty has a potential claim against Plaintiffs for fraudulent conveyance under New York law.[2]

### B.     Claims for the Same Asset

It is not enough, however, for Plaintiffs to show that Almaty could bring some claim against them. Triadou further argues that interpleader is not appropriate because Plaintiffs do not allege any fear of multiple liability "as to the Funds" in dispute. Triadou Br. at 1; Reply Br. at 2. Interpleader is not proper if "the claims are not asserted *against the same fund*." 7 Wright & Miller § 1705, at 550 (emphasis added); *see also Washington Elec. Co-op.*, 985 F.2d at 679 (interpleader requires "multiple claims to the same fund"); *New York Life Ins. Co. v. Aleandre*, No. 13-CV-2384 (RWS), 2014 WL 30508, at *1-*2 (S.D.N.Y. Jan. 2, 2014) (disputing ownership of proceeds of an insurance policy); *John*, 141 F.R.D. at 33 (disputing ownership of a painting). For this reason, courts have declined to permit interpleader if the defendants' claims against the interpleader plaintiff implicate different assets. *See, e.g., Great Wall*, 117 F. Supp. 3d at 484, 86-87 (Oetken, J.) (interpleader was not appropriate where the interpleader plaintiff "face[d] no real fear of liability to the [other defendant] *for those same funds*") (emphasis added).

The Seventh Circuit has addressed this situation in perhaps the most detail. In *Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 488 (7th Cir. 1984), a professional football team brought an interpleader action to resolve its conflicting obligations. The team had signed a 20-year lease in Indianapolis, but the state of Maryland sought to acquire

---

[2] Fraudulent conveyance is the only source of liability to Almaty discussed in Plaintiffs' Amended Interpleader Complaint and opposition. For the sake of completeness, the Court notes that Almaty could possibly bring a conversion claim against Plaintiffs and that such a claim is viable against even good-faith purchasers. *See Wallace Wood Properties v. Wood*, 117 F. Supp. 3d 493, 497 (S.D.N.Y. 2015).

the team by eminent domain. *Id.* at 486. The interpleader plaintiff argued that it faced inconsistent liability justifying interpleader because it could not honor its contractual obligations in Indianapolis if it was subject to eminent domain in Maryland. *Id.* The Seventh Circuit rejected this reasoning, finding interpleader inappropriate because the interpleader defendants did not lay claim to the same asset: While Maryland asserted a right to ownership of the team itself, Indianapolis alleged contractual rights in a lease. *Id.* at 488. As the Court pointed out: "If the [team's] owner breaks the lease, [the Indianapolis defendant] may be able to get damages for breach of contract; it will not be able to take over the football team." *Id.*

The Seventh Circuit's analysis in *Indianapolis Colts* illustrates an important principle: Even if an interpleader plaintiff faces potentially inconsistent obligations, interpleader is only proper if both defendants lay claim to the same *thing* (i.e. the same fund or property).[3] This distinction is crucial in this case, which undeniably involves potentially inconsistent obligations arising from Triadou's allegedly invalid assignment. On one side of this dispute, Triadou has laid claim to the $21 million dollars to which it is entitled under the assignment contract. AIC ¶ 10. Almaty argues the assignment contract was invalid. *Id.* ¶ 11. If Almaty could potentially bring a suit against Plaintiffs for the same $21 million claimed by Triadou, interpleader would be appropriate here.

As a matter of New York law, "the relief to which a defrauded creditor is entitled in an action to set aside a fraudulent conveyance is limited to setting aside the conveyance of the property . . . ." *Joslin v. Lopez*, 765 N.Y.S.2d 895, 898 (App. Div. 2003). A money judgment may only be granted in lieu of setting aside the conveyance if "the transferee has disposed of the

---

[3] The parties recognize this principle in their briefs although they do not cite *Indianapolis Colts* for the proposition. *See* Triadou Br. at 8 (quoting *Great Wall*, 117 F. Supp. 3d at 484) (arguing the requisite fear of liability must be "for [the] same funds"); Almaty Opp. Br. at 3 (recognizing that interpleader is available if "two parties have laid claim to the *same asset* in the hands of a third party") (emphasis added).

wrongfully conveyed property in some manner which makes it impossible to return."[4] *Id.* There is no indication that Plaintiffs have disposed of their interest in the real estate holding company; in fact, the Amended Interpleader Complaint and subsequent filings strongly suggest that Plaintiffs are still in possession. *See* AIC ¶¶ 15; Dkt. No. 49 ¶ 205-206; *see also* 7 Wright & Miller § 1714, at 626 ("The burden is on the party seeking interpleader to demonstrate that [its] requirements are satisfied."). As a result, there is no authority under New York law for Almaty to sue Plaintiffs for $21 million even if Triadou's assignment was invalid.

This conclusion is strengthened by Plaintiffs and Almaty's actions in this case. In the Amended Interpleader Complaint, Plaintiffs allege that Almaty "inten[ds] to commence suit to undo Triadou's assignment," AIC ¶ 12, while Almaty has represented that it "certainly" will "seek[] to unwind the assignment." Almaty Opp. Br. at 4. Furthermore, in Almaty's counterclaims against Plaintiffs, Almaty raised fraudulent conveyance claims seeking to set aside the assignment agreement. *See* Dkt. No. 49 ¶¶ 174, 180. Admittedly, the "fear of multiple liability [necessary to support interpleader] need not be supported by an existing legal action." *Great Wall*, 117 F. Supp. 3d at 473. However, the fact that Almaty initiated suit against Plaintiffs for fraudulent conveyance but did not seek to recover $21 million in lieu of the interest itself reinforces the Court's conclusion that Almaty cannot, as a matter of law, bring a claim against Plaintiffs for the $21 million purchase price of the assignment claimed by Triadou.[5]

---

[4] Similarly, in the conversion context, the ordinary remedy is return of the property; money damages are not available unless "the assets transferred no longer exist." *RTC Mortg. Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001).

[5] The Court notes that Almaty subsequently filed a notice of voluntary dismissal with prejudice of its counterclaims against Plaintiffs pursuant to a settlement agreement. *See* Dkt. Nos. 69, 71. Despite having dismissed these claims with prejudice, Almaty maintains that it still "intend[s] to pursue [its] claims to the interpleaded fund." Dkt. No. 69. Because the Court has not seen the settlement agreement in question and disposes of this case on other grounds, the Court does not opine on the extent to which Almaty retains a claim to the interpleader funds after dismissing its claims against Plaintiffs with prejudice.

It is well-settled that the propriety of interpleader does not depend upon "the merits of the competing claims." *John*, 141 F.R.D. at 33; *see also* 7 Wright & Miller § 1704, at 543 ("[A] determination of the respective merits of the adverse claims is inappropriate at [this] stage."). Properly understood, however, Triadou's argument is not that Almaty lacks a meritorious claim that the challenged assignment was invalid; instead, Triadou argues that such a claim, whatever its merits, implicates something other than the interpleader *res*. In this analysis, the Court expresses no opinion on the validity of Triadou's assignment. Instead, the Court merely concludes that, as a matter of law, Plaintiffs are not liable to Almaty for $21 million on the facts alleged even if Almaty prevails on the merits of its claim that Triadou's assignment to Plaintiffs was invalid. *See Great Wall*, 117 F. Supp. 3d at 489 (Oetken, J.) (finding the interpleader plaintiff would not be liable to the defendant as a matter of law "even if [the defendant was] correct that [the other defendant] engaged in fraud").

### C.   Claim to Interpleader Res

"[T]here must be in every interpleader a real fight over the res." *Bierman*, 246 F.2d at 202. The interpleader res in this case is $21 million, not the ownership interest in the real estate holding company. *See* AIC ¶ 17. Because New York law does not permit Almaty to bring a lawsuit against Plaintiffs to recover the $21 million interpleader res regardless of the merits of its assignment invalidity argument, the Court concludes that Plaintiffs have not discharged their burden of demonstrating that the claims in question "may expose [them] to double or multiple liability" against the "same fund." Fed. R. Civ. P. 22(a)(1); *Washington Elec. Co-op., Inc.*, 985 F.2d at 679; 7 Wright & Miller § 1705, at 550.

***

Interpleader "cannot be used to solve all the vexing problems of multiparty litigation." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967). As a result, "[i]t is not . . . for [the Court] to redesign the interpleader [rule] in order for it to accommodate this unusual lawsuit." *Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 58 (10th Cir. 1977). Triadou seeks from Plaintiffs the $21 million purchase price of its assignment, while Almaty could only seek to set aside the assignment and recover its interest in the real estate holding company. Because Plaintiffs here do not face "multiple claims to the same fund," *Washington Elec. Co-op.*, 985 F.2d at 679, interpleader is not appropriate in this case.

## IV. CONCLUSION

For the foregoing reasons, Triadou's motion to dismiss the interpleader complaint is GRANTED. Because the Court is dismissing the interpleader complaint, BTA Bank's motion to intervene in the interpleader action is denied as moot. The Court will separately consider Almaty's motion for joinder and Triadou's motion to dismiss Almaty's crossclaims.

This resolves Dkt. Nos. 18, 29, 45.

SO ORDERED.

Dated: March 18, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge