# EXHIBIT D

IN THE HIGH COURT OF JUSTICE  
QUEEN'S BENCH DIVISION  
COMMERCIAL COURT  
Mr Justice Males  
Dated 17 July 2015  
B E T W E E N:

Claim no 2015 Folio

*SM*  
*17.7.15*

### JSC BTA BANK

**Claimant**

and

### MUKHTAR ABLYAZOV

**First Defendant**

### ILYAS KHRAPUNOV

**Second Defendant/Respondent**

---

## FREEZING ORDER

---

### PENAL NOTICE

If you, ILYAS KHRAPUNOV, disobey this order you may be held to be in contempt of court and may be imprisoned, fined or have your assets seized.

Any other person who knows of this order and does anything which helps or permits the Respondent to breach the terms of this order may also be held to be in contempt of court and may be imprisoned, fined or have their assets seized.

### THIS ORDER

1. This is a Freezing Injunction made against Ilyas Khrapunov ("the Respondent") on 17 July 2015 by Mr Justice Males on the application of JSC BTA Bank ("the Applicant"). The Judge read the Affidavits listed in Schedule A and accepted the undertakings set out in Schedule B at the end of this Order.

2. This order was made at a hearing without notice to the Respondent. The Respondent has a right to apply to the court to vary or discharge the order – see paragraph 11 below.

3. There will be a further hearing in respect of this order to be arranged by the Applicant, no later than 7 days after notification by the Applicant that service of this Order has been effected on the Respondent ("the return date").

### FREEZING INJUNCTION

4. Until the return date or further order of the court, the Respondent must not

    a. remove from England and Wales any of his assets or any of Mukhtar Ablyazov's ("Mr Ablyazov's") assets which are in England and Wales; or

1

    b. in any way dispose of, deal with or diminish the value of any of his assets or any of Mr Ablyazov's assets whether they are in or outside England and Wales.

5. Paragraph 4 applies to all the Respondent's assets and all of the assets of Mr Ablyazov whether or not they are in the Respondent's own name or in the name of Mr Ablyazov and whether they are solely or jointly owned and whether the Respondent or Mr Ablyazov is interested in them legally, beneficially or otherwise (which for the avoidance of doubt and without limitation includes assets held by the Respondent as nominee or trustee). For the purpose of this order the Respondent's assets and the assets of Mr Ablyazov include any asset which the Respondent or Mr Ablyazov has the power, directly or indirectly, to dispose of or deal with as if it were his own. The Respondent and Mr Ablyazov are to be regarded as having such power if a third party (which shall include any body corporate) holds, controls, deals with or administers the asset in accordance with the direct or indirect instructions of either of them.

6. This prohibition includes any direct or indirect interest of the Respondent or Mr Ablyazov in the following assets in particular-

    a. The shares in and assets of Swiss Development Group SA, SDG Capital SA, Harlem Securities Limited, Woodbridge Group Limited, HDP Hotel du Parc Holding Sarl, Hotel du Parc Mont-Perelin SA, SaaFee Hotels and Residence Development Group SA, Thermal Developments SA and Thermal Developments 2 SA;

    b. The shares in and assets of Green Life International SA, Wintop Services Limited and Fitcherly Holdings Limited;

    c. The shares in and assets of LLC Logopark Pyshma, including the property known as Logopark Pyshma, and the shares in and assets of the companies involved in the corporate structure holding the same (including CJSC Medion, ZAO Severnaya Zvezdna, ARB LLC, Dayen Environmental Limited and Nupto Limited);

    d. The shares in and assets of OOO Marine Gardens, including the property development known as the Oceanarium, and the shares in and assets of the companies involved in the corporate structure holding the same (including Legendcatch Services Limited, International Services & Trade Limited, Kingdom World Inc and Demetra LLC);

    e. The shares in and assets of OOO Paveletskaya, including the property development known as Paveletskaya Square, Moscow, and the shares in and assets of the companies involved in the corporate structure holding the same (including Simplecity Holdings Limited, Igrada LLC and LLC Bakaut); and

    f. The shares in and assets of OAO Gostinichniy Kompleks Cosmos, including the property known as the Cosmos Hotel, and the shares in and assets of the companies involved in the corporate structure holding the same (including

      Lemur Holdings Limited, Eminota Limited, Igrada LLC, LLC Kronos, LLC Matreshka Moll and LLC Batial); and

  g. The assets listed in the Schedules to the Freezing Order made against Mr Ablyazov on 23 November 2012 (as varied or amended).

**PROVISION OF INFORMATION**

7.

(1) Unless paragraph (2) applies, the Respondent must within 10 days of service of this Order, and to the best of his ability, inform the Applicant's solicitors of:

  (a) all his assets worldwide exceeding £10,000 in value whether in his own name or not and whether solely or jointly owned, and whether the Respondent is interested in the said assets legally, beneficially or otherwise, giving the value, location and details of all such assets;

  (b) all assets with a value exceeding £10,000 which have at any time since 1 January 2013 been administered by the Respondent for Mr Ablyazov or dealt with in accordance with Mr Ablyazov's direct or indirect instructions, giving the value, location and details of all such assets and the manner in which the Respondent has administered or dealt with the same; and

  (c) the current value, location and details of the assets identified in paragraph 6(a), above, and the nature of Mr Ablyazov's direct and/or indirect interests in the same at all times after 1 August 2009.

(2) If the provision of any of this information is likely to incriminate the Respondent in any jurisdiction, he may be entitled to refuse to provide it, but is recommended to take legal advice before refusing to provide the information. Wrongful refusal to provide the information is contempt of court and may render the Respondent liable to be imprisoned, fined or have his assets seized.

8. Within 5 days after providing information pursuant to paragraph 7, above, the Respondent must swear and serve on the Applicant's solicitors an affidavit confirming the truth of the information provided. The said affidavit shall be prepared to the best of the Respondent's ability and shall exhibit such documents confirming the said information as are available to him.

**EXCEPTIONS TO THIS ORDER**

9.

  (1) This order does not prohibit the Respondent from spending £10,000 a week towards his ordinary living expenses and also a reasonable sum on legal advice and representation. But before spending any money the Respondent must tell the Applicant's legal representatives where the money is to come from

3

(2) This order does not prohibit the Respondent from dealing with or disposing of any of his assets in the ordinary and proper course of business, but (in relation to any dealing or disposal or series of connected dealings or disposals with a value exceeding £50,000) before doing so the Respondent must give the Applicant's solicitors 2 clear days' written notice of the nature and value of the proposed transaction.

(3) The Respondent may agree with the Applicant's legal representatives that the above spending limits should be increased or that this order should be varied in any other respect, but any agreement must be in writing.

**COSTS**

10. The costs of this application are reserved to the judge hearing the application on the return date.

**VARIATION OR DISCHARGE OF THIS ORDER**

11. Anyone served with or notified of this order may apply to the court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Applicant's solicitors. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's solicitors in advance.

**INTERPRETATION OF THIS ORDER**

12. A Respondent who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

13. A Respondent which is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

**PARTIES OTHER THAN THE APPLICANT AND RESPONDENT**

16. **Effect of this order**

It is a contempt of court for any person notified of this order knowingly to assist in or permit a breach of this order. Any person doing so may be imprisoned, fined or have their assets seized.

17. **Set off by banks**

This injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the respondent before it was notified of this order.

18. **Withdrawals by the Respondent**

No bank need enquire as to the application or proposed application of any money withdrawn by the Respondent if the withdrawal appears to be permitted by this order.

19. **Persons outside England and Wales**

4

(1)   Except as provided in paragraph (2) below, the terms of this order do not affect or concern anyone outside the jurisdiction of this court.

(2)   The terms of this order will affect the following persons in a country or state outside the jurisdiction of this court -

    (a)   the Respondent or his officer or agent appointed by power of attorney;

    (b)   any person who-

        (i)   is subject to the jurisdiction of this court;

        (ii)  has been given written notice of this order at his residence or place of business within the jurisdiction of this court; and

        (iii) is able to prevent acts or omissions outside the jurisdiction of this court which constitute or assist in a breach of the terms of this order; and

    (c)   any other person, only to the extent that this order is declared enforceable by or is enforced by a court in that country or state.

### 20. Assets located outside England and Wales

Nothing in this order shall, in respect of assets located outside England and Wales, prevent any third party from complying with-

(1)   what it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the country or state in which those assets are situated or under the proper law of any contract between itself and the Respondent; and

(2)   any orders of the courts of that country or state, provided that reasonable notice of any application for such an order is given to the Applicant's solicitors.

### COMMUNICATIONS WITH THE COURT

All communications to the court about this order should be sent to the Admiralty and Commercial Court Listing Office, 7 Rolls Building, Fetter Lane, London, EC4A 1NL quoting the case number. The telephone number is 020 7947 6826. The offices are open between 10 a.m. and 4.30 p.m. Monday to Friday.

### SCHEDULE A: AFFIDAVITS

The Applicant relied on the first affidavit of Christopher George Hardman dated 13 July 2015.

### SCHEDULE B: UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT

(1)   If the court later finds that this order has caused loss to the Respondent or third parties for whom the Respondent holds and/or administers assets, and decides that the Respondent and/or the said third parties should be compensated for that loss, the Applicant will comply with any order the court may make.

(2) As soon as practicable the Applicant will issue and serve a claim form claiming the appropriate relief.

(3) The Applicant will, as soon as reasonably practicable, make arrangements through the appropriate channels for the service of a copy of this Order on the Respondent together with

    (i) copies of the affidavits and exhibits containing the evidence relied upon by the Applicant, and any other documents provided to the court on the making of the application;

    (ii) the claim form; and

    (iii) an application notice for continuation of the order.

(4) Anyone notified of this order will be given a copy of it by the Applicant's legal representatives.

(5) The Applicant will pay the reasonable costs of anyone other than the Respondent which have been incurred as a result of this order including the costs of finding out whether that person holds any of the Respondent's assets and if the court later finds that this order has caused such person loss, and decides that such person should be compensated for that loss, the Applicant will comply with any order the court may make.

(6) If this order ceases to have effect (for example, if the Respondent provides security) the Applicant will immediately take all reasonable steps to inform in writing anyone to whom he has given notice of this order, or who he has reasonable grounds for supposing may act upon this order, that it has ceased to have effect.

(7) The Applicant will not without the permission of the court use any information obtained as a result of this order for the purpose of any civil or criminal proceedings, either in England and Wales or in any other jurisdiction, other than this claim.

(8) The Applicant will notify the Court when service of this Order has been effected on the Respondent.

**NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES**

The Applicant's legal representatives are-

**Hogan Lovells International LLP**

Atlantic House

Holborn Viaduct

London EC1A 2FG

Tel: 020 7296 2000

Fax: 020 7296 2001

Ref: Chris Hardman and Iain Tucker