

Phone:   (212) 885-5148
Fax:      (917) 591-7897
Email:   dskakel@blankrome.com

<u>**CORRECTED VERSION**</u>

April 25, 2016

<u>**VIA ECF**</u>

The Honorable Alison J. Nathan
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2102
New York, New York  10007

Re:   ***CF 135 Flat LLC, CF 135 West Member LLC, and The Chetrit Group, LLC***
      ***v. Triadou SPV S.A. and City of Almaty*, Case No. 15-CV-5345 (AJN)**

Dear Judge Nathan:

        We represent Crossclaim Defendant Triadou SPV S.A. ("Triadou") and, on behalf of Triadou, Crossclaim Plaintiffs City of Almaty and BTA Bank JSC ("Almaty/BTA") and Plaintiffs CF 135 Flat LLC, CF 135 West Member LLC and the Chetrit Group LLC, submit this joint letter in response to Your Honor's Order dated April 22, 2016 (ECF Dkt. No. 115) in which the parties are to "clarify whether [they] are seeking an evidentiary hearing for the resolution of factual disputes or oral argument on the papers."  Because the parties do not agree on this issue, their respective positions are set forth below:

<u>**Triadou's Position**</u>

        Triadou seeks oral argument on the motion papers for five reasons:

        1.      Almaty/BTA's Notice of Motion Requesting Injunctive Relief dated April 1, 2016 (ECF Dkt. No. 106) does not even seek oral argument, let alone an evidentiary hearing.

        2.      My April 15th agreement with Matthew Schwartz was not to object to Your Honor's "expedited consideration" of Almaty/BTA's injunction motion – meaning the Court's consideration of the motion papers.  This is why I offered to file Triadou's opposition papers early – i.e., to facilitate an accelerated briefing schedule and thereby enable Your Honor to review and consider the motion papers and issue a ruling before May 4th (the known return date of Triadou's state court receiver application). And, while Mr. Schwartz inquired as to *my* availability in our April 15th conversation concerning our agreement, he never suggested that Triadou's availability was also a question, so I assumed (consistent with our agreement) that Mr.

The Chrysler Building 405 Lexington Avenue  New York, NY 10174-0208

www.BlankRome.com

Boca Raton  •  Cincinnati  •  Fort Lauderdale  •  Houston  •  Los Angeles  •  New York  •  Philadelphia  •  Pittsburgh  •  Princeton  •  San Francisco  •  Shanghai  •  Tampa  •  Washington  •  Wilmington
DSMDB-3409348 v1



The Honorable Alison J. Nathan
April 25, 2016
Page 2

Schwartz would seek a date for oral argument – not an evidentiary hearing.  Bottom line:  Mr. Schwartz's letter to the Court dated April 20, 2016 (ECF Dkt. No. 113) correctly states that Triadou agreed "not to oppose speedy consideration of the preliminary injunction motion," but is wrong in implying that Triadou agreed to an evidentiary hearing.

3.    Perhaps recognizing this, Almaty/BTA presumptuously references an evidentiary hearing in its Reply Memorandum of Law dated April 22, 2016 (ECF Dkt. No. 117 – e-filed at 10:24 p.m.) – e.g., Reply at 9 ("In accordance with the Court's April 21, 2016 Order [ECF No. 115], at an evidentiary hearing the Kazakh Entities will be prepared to submit further evidence on these questions. . . .  [T]he Kazakh Entities will be ready to present documentary and other evidence and the testimony of witnesses. . . .").  Once again, Triadou did not agree to an evidentiary hearing; more importantly, this Court did not order an evidentiary hearing.[1]

4.    Almaty/BTA knows full well that Triadou is based in Switzerland.  Proceeding with an evidentiary hearing on less than two days' notice would therefore be unreasonable, improper, and prejudicial to Triadou.

5.    Almaty/BTA's intended evidentiary hearing is a backdoor attempt to convert the injunction motion into a mini-trial on the Crossclaims against Triadou (which are the subject of the forum non conveniens dismissal motion pending in this Court) and the application for a receiver (which is returnable on May 4th before Judge Cohen in state court).  This Court should not countenance Almaty/BTA's stratagems – particularly when Almaty/BTA's stratagems seem to be coordinated with those of the Chetrits.[2]

---

[1]    Continuing their coordination with Almaty/BTA, the Chetrits rely on the "evidence in Federal court" that "Almaty/BTA will soon present" upon which basis they will argue that [Triadou's] existing judgments against [the Chetrits] should be vacated. . . ." to oppose Triadou's state court summary judgment in lieu of complaint motions.  See Attorney Affirmation of David Salhanick dated April 21, 2016 (a copy of which is attached) – one day prior to Almaty/BTA's reply papers in this Court.

[2]    Another example of this is as follows:  As part of my April 15th agreement with Mr. Schwartz, Almaty/BTA was to have written to Your Honor on Monday, April 18th, seeking expedited consideration of their motion.  Mr. Schwartz's letter was not e-filed until Wednesday, April 20th, purportedly because Mr. Schwartz could not speak with the Chetrits' attorney until that afternoon.  Yet David Segal, lead counsel for the Chetrits, had time to prepare and e-file his Declaration in support of Almaty/BTA's injunction motion on April 20th (ECF Dkt. No. 112) – three hours prior to Mr. Schwartz's e-filed April 20th letter.



The Honorable Alison J. Nathan
April 25, 2016
Page 3


For all of these reasons, Triadou respectfully requests that this Court hear oral argument on the preliminary injunction motion papers on April 27th at 10:00 a.m.

## Almaty/BTA's Position

The City of Almaty, Kazakhstan, and BTA Bank (the "Kazakh Entities") respectfully request an evidentiary hearing.

"On a motion for preliminary injunction, where essential facts are in dispute, there must be a hearing and appropriate findings of fact *must* be made." *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir. 1987) (internal quotation marks and alteration omitted; emphases supplied). *See also Forts v. Ward*, 566 F.2d 849, 851 (2d Cir. 1977) ("Because the briefs and affidavits present disputed issues of fact, we are compelled to reverse and remand the case to the district court for a prompt evidentiary hearing. It is well established that motions for preliminary injunctions should not be resolved on the basis of affidavits which evince disputed issues of fact."); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (citing Forts); *see generally* Fed. R. Civ. P. 52(a)(2) ("In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.").

As the parties' respective papers in support of and in opposition to a preliminary injunction make clear, to the extent that Triadou has put forward any evidence at all, there are contested issues of fact that are not capable of being decided on the papers. A hearing will also afford the Kazakh Entities the opportunity to put forward testimony and documents establishing the irreparable harm they would face if Triadou is permitted to enforce the judgments it holds. The Kazakh Entities will also establish other facts — facts either denied without evidentiary support or ignored by Triadou — that are critical to understanding what Triadou is and why it is necessary for Your Honor to preserve the status quo. For example, the Kazakh Entities will demonstrate that Triadou is a shell entity controlled by an extended family of international criminals, collectively referred to as the Ablyazov–Khrapunov Group. See Answer and Crossclaims, ECF No. 49, ¶¶ 89-92. At the same time, the Kazakh Entities will elicit testimony from representatives of the Chetrit Entities that will show that an injunction can be entered without any prejudice to Triadou's interests.

The witnesses that the Kazakh Entities presently expect to call and the anticipated duration of their direct examination are as follows. Of course, should it not be necessary to call each of these witnesses, the Kazakh Entities will endeavor to streamline the presentation of evidence; we provide this more complete list for notice purposes, however.



The Honorable Alison J. Nathan
April 25, 2016
Page 4

  Matthew Meltsner. Mr. Meltsner is employed by 135 West 52nd Street Owner LLC as project manager for the Flatotel development. Mr. Meltsner has personal knowledge and is competent to testify regarding: the current status of the Flatotel project; scheduled closings in the Flatotel project; current debt, if any, on the Flatotel project; the expected date of profitability of the Flatotel project; and the readiness of the Chetrit Entities to escrow profits from the Flatotel project as they accrue. The direct examination of Mr. Meltsner is expected to take approximately 45 minutes.

  Nicolas Bourg. From its formation until late 2014, Mr. Bourg was the sole director of Triadou SPV S.A. Mr. Bourg has personal knowledge and is competent to testify regarding: Triadou's investments with the Chetrit Entities; the sources of funding for Triadou's investments; the operation and management of Triadou and its parent, the Swiss Development Group ("SDG"); the purported sale of SDG to Phillippe Glatz; the roles of Ilyas Khrapunov and Mukhtar Ablyazov in the management and investments of Triadou and SDG; and the authentication of relevant evidence. The direct examination of Mr. Bourg is expected to take approximately 1 hour.[3]

  Jehoshua Graff. Mr. Graff is a member of Sukenick, Segal, & Graff, P.C., counsel for Joseph Chetrit and the Chetrit Entities.[4] Mr. Graff has personal knowledge and is competent to testify regarding: the funds transferred for the benefit of Triadou's investments with the Chetrit Entities; the readiness of the Chetrit Entities to escrow profits from the Flatotel project as they accrue; and the authentication of relevant documentary evidence. The direct examination of Mr. Graff is expected to take approximately 30 minutes.

  Lee Eichen. Mr. Eichen is a founding principal of Centerboard Group, where he co-leads the firm's advisory, private equity, and asset management businesses. Prior to founding

---

[3] We understand that Mr. Bourg is presently overseas, and may not be able to appear in person on Wednesday.  If that proves to be the case, the Kazakh Entities respectfully request that he be permitted to testify via videoconference, or to testify out of order later in the week, or both, as is necessary.  *See* Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").  Should that become necessary, the Kazakh Entities will promptly submit a technology order to Your Honor so that we may bring the appropriate equipment into the courtroom.

[4] To be clear, Mr. Graff is testifying as a witness to non-privileged facts.  Joseph Chetrit and the Chetrit Entities are not waiving any attorney-client privilege, and the Kazakh Entities do not intend to inquire into any matters protected by the privilege.



The Honorable Alison J. Nathan
April 25, 2016
Page 5


Centerboard, among other things, Mr. Eichen was at Banc of America where he served as Managing Director and Head of M&A for Real Estate, Gaming, Lodging, and Homebuilding. Mr. Eichen is a graduate of Harvard University and University of Pennsylvania Law School, and began his professional career at Simpson, Thacher & Bartlett LLC.  Mr. Eichen will testify as an expert in the field of real estate valuation, finance, and investment.  Mr. Eichen is qualified to provide his expert opinion regarding:  the expected value of the Flatotel project, and the consequences of any enforcement actions that Triadou may take to the Flatotel project, including the consequences of receivership.  The direct examination of Mr. Eichen is expected to take approximately 45 minutes.

Aicha Djouf.  Ms. Djouf is a paralegal at Boies, Schiller & Flexner LLP.  Ms. Djouf, or another paralegal, will introduce certain documentary and other evidence on behalf of the Kazakh Entities.  The direct examination of Ms. Djouf is expected to take approximately 15 minutes.

In sum, the Kazakh Entities anticipate that the total time on direct examination for the witnesses it intends to offer is approximately 3 hours.

## CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC

CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC have no objection to the relief requested in Almaty and BTA Bank's preliminary injunction motion, and have no objection to an evidentiary hearing.  CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC do not presently intend to call any witnesses, but reserve the right to cross-examine.

The undersigned attorneys are available should the Court have any questions or concerns. Thank you for your consideration.

Respectfully submitted,

/s/Deborah A. Skakel
Deborah A. Skakel
Robyn Michaelson
BLANK ROME LLP
405 Lexington Avenue
New York, NY  10174
*Attorneys for Triadou SPV S.A.*



The Honorable Alison J. Nathan
April 25, 2016
Page 6

/s/ Matthew L. Schwartz
Matthew L. Schwartz, Esq.
Randall W. Jackson, Esq.
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
*Attorneys for the City of Almaty Kazakhstan,*
*   and BTA Bank*

/s/ David C. Segal
David C. Segal, Esq.
SUKENICK, SEGAL & GRAFF, P.C.
450 Seventh Avenue
New York, New York 10123
*Attorneys for CF 135 Flat LLC, CF 135 West*
*   Member LLC, and the Chetrit Group LLC*

DSMDB-3409348 v1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x

TRIADOU SPV S.A.,                                    Index No. 154681/2015

                              Plaintiff,

                                                     **ATTORNEY AFFIRMATION IN
                                                     OPPOSITION TO PLAINTIFF'S**
              -against-                              **MOTION FOR SUMMARY
                                                     JUDGMENT**

CF 135 FLAT LLC, CF 135 WEST MEMBER LLC
and THE CHETRIT GROUP LLC,

                              Defendants.

--------------------------------------------------------------------x

        David Salhanick, Esq., an attorney admitted to practice in the courts of the State of New

York affirms the following under the penalty of perjury:

        1.      I am an associate of the firm of Sukenik, Segal & Graff, P.C., attorneys for

defendants herein ("Defendants"), and as such, am fully familiar with the facts of this action and

of the matters set forth herein. I submit this affirmation in opposition to the motion by plaintiff

Triadou SPV S.A. ("Plaintiff" or "Triadou") for an order granting Plaintiff summary judgment in

the herein action and in the related New York Supreme Court action *Triadou SPV S.A. v. CF 135

Flat LLC, CF 135 West Member LLC, and The Chetrit Group LLC* (Index No. 156907/2015)

(the "Related Action").

        2.      As detailed herein, Plaintiff's motion must be denied on both procedural and

substantive grounds.

                    **PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER
                              AND MUST BE DENIED**

        3.      As Plaintiff's moving affirmation correctly notes, in mid-2015, Plaintiff filed

separate motions for summary judgment in lieu of complaint pursuant to CPLR § 3213 in the

herein action and in the Related Action (the "Prior Motions"). The Prior Motions remain open

                                        1

and pending before the Hon. Donna M. Mills, who was the presiding Justice in Part 58 of the Supreme Court of New York, County of New York ("Part 58") through December 2015. In January 2016, Justice Mills was reassigned to Bronx County. At present, the presiding Justice in Part 58 is the Hon. David B. Cohen. Justice Cohen's law clerk, Saul Stern, Esq., has informed the parties that because the Prior Motions were submitted to Part 58 prior to Justice Mills' reassignment, those motions will be decided by Justice Mills. However, any and all "new" motions summited to Part 58 will be decided by Justice Cohen.

4.      Nonetheless, and in blatant disregard of basic procedural norms, Plaintiff has filed this "new" application in Part 58 seeking summary judgment in this action and the Related Action, which is the exact same relief sought in the pending Prior Motions. Presumably, the purpose of Plaintiff's new filing is to make Justice Mills aware that prior stays of this action and the Related Action were lifted by Justice Cohen by order dated March 16, 2016. However, as a matter of basic procedure, because the Prior Motions are still pending, if Plaintiff wanted to inform Justice Mills of the March 16 order to expedite her issuance of new judgments, it could and should have written Justice Mills a letter advising her of same and requesting that she decide the *existing* motions.

5.      Instead, inexplicably, Plaintiff has filed an entirely *new* motion asking the Court to grant that which it has already requested. This sort of unnecessarily duplicative motion practice is strongly disfavored by New York courts, *see, e.g., Public Serv. Mut. Ins. Co. v. Windsor Place Corp.*, 238 A.D.2d 142, 143, 655 N.Y.S.2d 947 (1st Dep't 1997) ("[M]ultiple summary judgment motions in the same action should be discouraged in the absence of newly discovered evidence or sufficient cause"), and may well be sanctionable, *see, e.g., Ofman v*

2

*Campos*, 12 A.D.3d 581, 788 N.Y.S.2d 115 (2d Dep't 2004) (upholding an award of sanctions where the appellant filed multiple motions in the lower court seeking essentially the same relief).

6.     Even more obviously, because this motion will be decided by Justice Cohen, Plaintiff's application is self-contradictory and cannot possibly be granted.  Plaintiff's motion specifically requests that Justice Mills – not Justice Cohen - grant it summary judgment in this action and in the Related Action.  However, as this motion is "new," it must be decided by Justice Cohen.  Accordingly, such relief is an impossibility.  Moreover, the fact that the Prior Motions will be decided by Justice Mills, and this motion by Justice Cohen, raises the possibility of inconsistent rulings should this motion be considered.

7.     Puzzlingly, Plaintiff tries to justify its filing of an entirely new application by citing to the Court's directive to the parties on March 16, 2016 that "The Plaintiffs (*sic*) can go ahead and enforce any judgment they have and go before Judge Mills to get those ruling on the remaining two judgments."  Of course, such directive clearly establishes the impropriety of this application.  First, the Court specifically directed that Plaintiffs contact Justice Mills, not Justice Cohen.  However, as the Court made clear, all new motions (including this one) will be submitted to Justice Cohen.  Second, the Court's reference to "those" rulings clearly refers to rulings on Plaintiff's *existing* applications, which are the Prior Motions.  The Court never authorized, nor would it have authorized, the filing of an entirely new application.

8.     Accordingly, Plaintiff's motion must be denied.

### PLAINTIFF'S MOTION MUST ALSO BE DENIED UNDER CPLR § 3212(f)

9.     Additionally, separate and apart from the procedural problems with Plaintiff's application, the relief Plaintiff here seeks – summary judgment in this action and in the Related Action – must also be denied on the merits.

3

10.     The basis of Plaintiff's argument for obtaining summary judgment is that the Court has already granted Plaintiff summary judgment on the first two of the four installment payments allegedly due it under an assignment agreement (the "Assignment") between Plaintiff and defendant CF 135 Flat LLC, the validity of which, Plaintiff contends, has already been established.  Therefore, Plaintiff argues, the Court must immediately grant Plaintiff summary judgment on the final two installment payments.

11.     However, in making this argument, Plaintiff blindly ignores important filings submitted in the related interpleader action in Federal court *subsequent to* this Court's award of summary judgment on the first two installments.  These Federal court filings put the validity of the Assignment squarely in issue and make it clear that awarding Plaintiff additional judgments would be highly premature.

12.     In mid-July 2015, Defendants, faced with the possibility of unfair multiple liability to both Plaintiffs and non-party claimants City of Almaty, Kazakhstan ("Almaty") arising out of the Assignment, commenced an interpleader action (the "Interpleader Action") in New York State Supreme Court under the caption *CF 135 Flat LLC, CF 135 West Member LLC, and The Chetrit Group LLC v. Triadou SPV S.A. and City of Almaty, a foreign city (*Index No. 156834/15).  Almaty subsequently removed the Interpleader Action to the United States District Court for the Southern District of New York, where it is being litigated under Docket No. 1:15-cv-5345(AJN).

13.     In October 2015, Almaty and cross-claim/counterclaim plaintiff BTA Bank ("BTA") interposed numerous cross-claims against Plaintiff in the Interpleader Action.  (*see* a copy of Almaty/BTA's "Answer, Counterclaims, and Crossclaims" appended hereto as "Exhibit 1")  Among the claims asserted by Almaty/BTA was a cause of action under CPLR § 5239 to set

4

aside Plaintiff's existing judgments against Defendants on the first two installment payments. (*see* Exhibit 1 at ¶207)

      14.    The central factual claim underlying Almaty/BTA's cause of action to vacate Plaintiff's judgments under CPLR § 5239 is that:

> The City of Almaty and BTA Bank are the rightful owners of Triadou's interest in the Flatotel and Cabrini Medical Center and/or any funds derived from the sale of that interest, as the interest was purchased with funds unlawfully converted by the Ablyazov-Khrapunov Group and laundered through SDG and Triadou. . . . The court should set aside any judgments in Triadou's favor in light of the City of Almaty's and BTA's superior interest in this illicitly-obtained property. (*see* Exhibit 1 at ¶¶208-211)

      15.    In support of this and other cross-claims, Almaty/BTA's October 2015 filing sets forth a detailed factual history of an international criminal enterprise based in Kazakhstan and Switzerland, referred to as the "Ablyazov-Khrapunov Group." Almaty/BTA alleges that the Ablyazov-Khrapunov Group stole hundreds of millions of dollars in Kazakhstan and used Triadou and various other shell companies in their control to launder the stolen funds. BTA has already secured judgments in excess of $4 billion relating to this global fraud, and obtained several global freezing and receivership orders from the courts of the United Kingdom against the principals of the Ablyazov-Khrapunov Group and the parent company of Triadou, SDG. *(see a copy of Almaty/BTA's memorandum of law submitted in support of their pending Federal court motion for a preliminary injunction, together with the judgments and orders referenced therein, appended hereto as "Exhibit 2")*

      16.    While Almaty/BTA have not yet obtained judgments against Plaintiff, Almaty/BTA's October 2015 filing extensively details the essential role Plaintiff played in the Ablyazov-Khrapunov Group's money laundering operation, describing step-by-step how the Ablyazov-Khrapunov Group utilized Plaintiff to purchase domestic real estate with stolen funds.

5

Because Triadou is a mere instrumentality of, and legally indistinguishable from, the Ablyazov-Khrapunov Group, Almaty/BTA's filing raises an "alter ego" cross-claim against Plaintiff to hold Plaintiff liable for judgments obtained against SDG and the Ablyazov-Khrapunov Group. (*see* Exhibit 1 at ¶186)

17.     On March 18, 2016, the Federal court dismissed the Interpleader Action, holding that although it is true that Defendants may be subject to inconsistent judgments at the hands of Plaintiffs and Almaty, the interpleader action was still improper because Plaintiffs and Almaty do not make claim to the identical property "*res*." (*see* a copy of the March 18, 2016 memorandum and order, appended hereto as "Exhibit 3")  Almaty/BTA has since filed a motion for reconsideration of that dismissal, arguing that while certain of its cross-claims seeks to recover the assigned membership interest rather than money, other of its claims seek the very same $21 million which Triadou wants to recover. (*see* a copy of Almaty/BTA's memorandum of law submitted in support of their motion for reconsideration, appended hereto as "Exhibit 4")

18.     Significantly, however, the Federal court did not dismiss any of Almaty/BTA's cross-claims, such as Almaty/BTA's claim under CPLR § 5239 to vacate Plaintiff's judgments and the "alter-ego" claim.  As the Federal court has independent federal jurisdiction over Almaty/BTA's cross-claims, the dismissal of Defendants' Interpleader Action did not effect a dismissal of Almaty/BTA's cross-claims. (*see* a copy of Almaty/BTA's October 21, 2015 letter to the Federal court, appended hereto as "Exhibit 5," citing extensive caselaw demonstrating that Almaty/BTA's counterclaims and cross-claims must survive dismissal of the underlying interpleader action)

19.     As Almaty/BTA's cross-claims remain viable, and as Almaty/BTA will soon present evidence in Federal court upon which basis they will argue that Plaintiff's existing

6

judgments against Defendants should be vacated, this Court cannot and should not award Plaintiff additional judgments on the final two installments until Defendants have had the opportunity to conduct discovery to obtain evidence establishing that the funds used by Triadou to purchase the assigned interest were unlawfully obtained. The central question raised by Almaty's cross-claims – what was the source of the money used by Triadou to purchase the assigned interest? – is necessarily a fact intensive one. Defendants must be given the opportunity to uncover those facts and present them to the Court.

20.     Indeed, CPLR § 3212, entitled "Motion for Summary Judgment," provides in subsection (f):

> (f) Facts unavailable to opposing party.
> Should it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion or may order a continuance to permit affidavits to be obtained or disclosure to be had and may make such other order as may be just.

21.     In the instant case, based on the allegations set forth by Almaty/BTA in Federal court and the foreign judgments, freezing orders, and receivership orders already obtained by BTA, it is clear that Almaty/BTA, Plaintiff, and persons and entities connected to Plaintiff possess, or at the very least *may* possess, facts and evidence sufficient to deny Plaintiff judgments on the final two installments. Therefore, under the standard set in CPLR § 3212(f), the Court must now deny Plaintiff's instant application (and the Prior Motions) to allow Defendants to conduct discovery from Almaty/BTA, Plaintiff, and relevant third-parties to obtain facts and evidence not presently in Defendants' possession.

22.     In view of the above, the mere fact that Plaintiff currently holds two judgments against Defendants is insufficient grounds in-and-of itself to award Plaintiff additional judgments

7

at this time. Plaintiff obtained summary judgment on the first installment on February 3, 2015.

Plaintiff obtained summary judgment on the second installment on April 15, 2015. Defendants

first learned that Almaty had claims related to the Assignment in late June, 2015, and

Almaty/BTA did not interpose their cross-claims until October 2015. It is well established that

collateral estoppel is inapplicable where newly discovered facts would have altered the outcome

of the initial judicial determination. *See Schwartz v. Public Adm'r of the County of Bronx*, 24

N.Y.2d 65, 72, 298 N.Y.S.2d 955, 961 (1969) (before applying collateral estoppel, court must

consider the availability of newly discovered evidence); *Sucher v. Kutscher's Country Club*, 113

A.D.2d 928, 931, 493 N.Y.S.2d 829 (2nd Dep't 1985) (collateral estoppel inapplicable where the

"record reveals new evidence, not available at the time of the prior proceeding, which would

certainly have changed the prior result"); *Khandhar v. Elfenbein*, 943 F. 2d 244, 249 (2nd Cir.

1991) (Under New York law, "If significant new evidence is uncovered subsequent to the

proceeding said to result in an estoppel . . . then it cannot be found that a party was afforded a

full and fair opportunity to present his case in the absence of that evidence.") Here, had

Defendants been aware of Almaty/BTA's claims and the foreign judgments and orders prior to

the Court's ruling on the first two installments, Defendants would have brought same to the

Court's attention and sought leave to conduct discovery, and those applications would certainly

have been denied under CPLR § 3212(f).

23.     Indeed, Plaintiff *itself* admits that, should Almaty/BTA ultimately present

evidence proving that Plaintiff acquired the assigned interest with stolen funds, the Assignment

will necessarily be deemed invalid, and Plaintiff will be unable to recover from Defendants. As

Plaintiff stated in a recent filing in Federal court:

> If Almaty/BTA prove their allegations in the Crossclaims that Triadou
> purchased the Flatotel Development Interest using embezzled funds, then

8

Triadou's assignment of that interest back to the Chetrit Plaintiffs would be unwound – that is, treated as if it did not occur – and Almaty/BTA would obtain the property interest Triadou originally purchased. Consequently, either Triadou would not receive the $21 million, or Triadou might be liable to the Chetrit Plaintiffs for return of those funds. (*see* a copy of Plaintiff's memorandum of law submitted in opposition to Almaty/BTA's motion for reconsideration, appended hereto as "Exhibit 6," at pp. 5-6)

24.     Accordingly, and as it clear that discoverable evidence may exist sufficient to justify the vacating of Plaintiff's existing judgments and the denial of additional judgments, Plaintiff's motion must be denied as premature under CPLR § 3212(f)

WHEREFORE, it is respectfully requested that the Court deny the herein application for summary judgment in this action and in the Related Action, and deny Plaintiff's Prior Motions.

Dated: New York, New York
        April 21, 2016

                                    /s/David Salhanick
                                    DAVID SALHANICK

9