UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CF 135 Flat LLC et al.,

            Plaintiffs,

–v–

Triadou SPV N.A. et al.,

            Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 03 2016

15-CV-5345 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

On April 1, 2016, Almaty and BTA Bank ("Movants") requested a preliminary injunction to prevent Triadou from enforcing its $10.5 million state court judgment against CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC ("the Chetrit Entities"). Dkt. No. 106. At the scheduling conference held on April 27, 2016, the Court set an evidentiary hearing for May 19, 2016 and indicated that it would treat Movants' papers as requesting a temporary restraining order ("TRO") in the interim. For the reasons articulated below, Movants' request for a TRO is denied.

I.     LEGAL STANDARD

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases). "The showing of irreparable harm is '[p]erhaps the single most important prerequisite'" for a preliminary injunction. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). Under this prong, the movant "must show that the injury it will suffer is likely and

1

imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *NAACP v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995). To satisfy this requirement in the TRO context, a movant must demonstrate "that he would suffer irreparable harm if the TRO does not issue." *Andino*, 555 F. Supp. 2d at 419.

## II.   DISCUSSION

Movants argue that Triadou's enforcement of its state court judgment would frustrate their claim under New York Civil Procedure Law and Rules ("CPLR") § 5239 and permit Triadou to transfer assets out of the jurisdiction. Br. at 5, 9. They also argue that any attachment procedure against the Flatotel project would "lead[] to additional regulatory review," *id.* at 8, which could in turn cause "current and prospective buyers of Flatotel condominiums [to] terminate their purchases, resulting in the failure of the entire Flatotel real estate condominium project." *Id.* at 8-9. In light of the recent stipulation between Triadou and the Chetrit Entities, Movants have not made the requisite showing that they "would suffer irreparable harm if the TRO does not issue." *Andino*, 555 F. Supp. 2d at 419.

On April 28, 2016, Triadou and the Chetrit Entities executed a stipulation clarifying the scope of Triadou's April 8, 2016 motion to appoint a receiver. Dkt. No. 127 Ex. 1. According to that stipulation, any "[a]ppointment of a receiver" would be "for the sole purpose of exercising the rights as managing member [*sic*] of [the] LLCs to collect all distributions, profits and any other funds to which [the Chetrit Entities] are entitled so as to satisfy Triadou's judgment." *Id.* ¶ 1.A. The receiver would "deposit all funds collected in an account in the Receiver's name." *Id.* ¶ 1.E. The stipulation clarifies that any receiver appointed would "allow the existing managers . . . to exercise complete control over the development and operations of the Flatotel Condominium." *Id.* ¶ 1.C. Finally, the stipulation provides that "any Receiver appointed . . .

shall be barred from making distributions until the pending motion for a preliminary injunction submitted in [this federal action] has been decided." *Id.* ¶ 2.

Almaty and BTA Bank make no showing that, without a TRO, their claims will be frustrated by Triadou moving assets out of the jurisdiction. Because any receiver appointed in state court to enforce Triadou's judgment would maintain possession of funds "until the pending motion for a preliminary injunction submitted in [this federal action] has been decided," Dkt. No. 127 Ex. 1 ¶ 2, there is no risk that the funds will leave the jurisdiction "if the TRO does not issue." *Andino*, 555 F. Supp. 2d at 419.

Movants also fail to show that the Flatotel project would be irreparably harmed if the Court does not issue a TRO. On the issue of additional regulatory review, an affidavit provided by Joseph Chetrit relays his attorney's advice that "if Plaintiff is permitted to seize Defendants' interest in the Flatotel, the condominium offering plan may have to be drafted and resubmitted to the New York Attorney General for review." Dkt. No. 108 Ex. H ¶ 16. Crucially, however, the stipulation between Triadou and the Chetrit Entities makes clear that appointing the requested receiver would not result in the seizure of any ownership interest in the Flatotel; instead, "[a]ppointment of a receiver" would be "for the sole purpose of . . . collect[ing] all distributions, profits and any other funds to which [the Chetrit Entities] are entitled" from the sales of condominium units. *Id.* ¶ 1.A. It is not apparent from the papers that the appointment a receiver of this limited nature would trigger an obligation to disclose it as a "lease[], mortgage[], lien[], encumbrance[], [or] title exception[] that will affect the [Flatotel project] after closings." Br. at 8 (quoting 13 N.Y.C.R.R. § 20.3(r)(4)).

Even if Almaty and BTA Bank could demonstrate that additional regulatory review was likely, their papers do not demonstrate that this would cause "buyers of Flatotel condominiums

3

[to] terminate their purchases" and damage the project. Br. at 8-9. Again, the affidavit of Joseph Chetrit supporting this proposition relays his attorney's advice that in a "competitive condominium market, the enforcement of judgments against [the Chetrit Entities] *may* create a cloud of uncertainty over the entire project which could deter prospective and future buyers." Dkt. No. 108 Ex. H ¶ 16 (emphasis added). This conclusion, provided without any additional support or exposition, is "speculative" and does not establish "likely and imminent" irreparable injury to Almaty and BTA Bank if a TRO does not issue. *NAACP*, 70 F.3d at 224.

### III. CONCLUSION

Because Almaty and BTA Bank have not adequately established that they "would suffer irreparable harm if the TRO does not issue," *Andino*, 555 F. Supp. 2d at 419, their application for a TRO is denied.

SO ORDERED.

Dated: May 3, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge