UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CF 135 FLAT LLC, CF 135 WEST MEMBER LLC and THE CHETRIT GROUP, LLC,<br><br>                Interpleader Plaintiffs,<br><br>-against-<br><br>TRIADOU SPV S.A., CITY OF ALMATY, a foreign city, and BTA BANK JSC,<br><br>                Interpleader Defendants. | 15 Civ. 5345 (AJN) (SN) |
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>                Crossclaim Plaintiffs,<br><br>-against-<br><br>MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,<br><br>                Crossclaim Defendants. | |

**AFFIDAVIT OF JEHOSHUA GRAFF**

STATE OF NEW YORK   )
                                ss.:
COUNTY OF NEW YORK )

Jehoshua Graff, being duly sworn, deposes and states under penalty of perjury:

1. I am a member of the law firm of Sukenik, Segal & Graff, P.C., attorneys for interpleader plaintiffs The Chetrit Group, LLC, CF 135 Flat LLC, and CF 135 West Member LLC (the "Chetrit Entities"). I practice in the area of real estate transactional law involving large, complex real estate projects, and have done so for the past 35 years.

1

2. In 2012, Triadou SPV S.A. ("Triadou") entered into agreements with certain of the Chetrit Entities to obtain a 37.5% indirect ownership interest in 135 West 52nd Street Owner, LLC (the "Fee Owner"), which was converting the former Flatotel, located at 135 West 52nd Street, NY, NY, into office and retail components and into condominium apartments. Triadou did so by acquiring a 50% interest in CF 135 West Member LLC, which in turn is the 75% owner of other LLCs in the corporate structure. The other 25% interest is held by entities controlled by David Bistricer. A chart depicting the current corporate structure of the Flatotel development is attached as Exhibit A.

3. At the time that Triadou acquired its interest in the Flatotel, the parties signed an operating agreement, which required Triadou to make equity payments and meet certain capital calls which would be used to fund the Flatotel's operations and conversion.

4. I "negotiated" the operating agreements with Triadou's counsel at the time, Arnie Herz. During the negotiations, I was told that Triadou was an entity formed in Switzerland. When it came time to close the deal in 2012 and we were responding to due diligence requests from AIG, the first mortgagee at the time, Mr. Herz informed me that Phillipe Glatz was the ultimate beneficial owner of Triadou. I passed that information on to AIG.

5. I believe that I only met Triadou's representative, Nicolas Bourg, once. My principal contact with Triadou after the closing was another of Triadou's attorneys, Diane Artal of Rosabianca & Associates, PLLC.

### *Sources of Funds for Triadou's Investments*

6. Over the course of my career in structuring complex real estate deals, including many for Joseph Chetrit and David Bistricer, I have become familiar with sending and receiving

money using international wires. In my experience, wire transfers take less than one day, sometimes two for overseas transactions.

7. In late 2012, Herz informed me that Triadou's equity requirements to be used to acquire Triadou's interest in the Flatotel project would be wired to an escrow account held by Sukenik, Segal & Graff, P.C. at Citibank, N.A.

8. In late 2012, and continuing through mid-2013, funds were wired to my firm's escrow account to meet Triadou's capital obligations relating to Triadou's business dealings with the Chetrit Entities. These funds were wired from an unknown foreign entity named Telford International Limited. Triadou did not tell me why they were sending money through this entity. Our firm's escrow account never received any money from Triadou, and to my knowledge, no funds were ever sent from Triadou to the Chetrit Entities.

9. Telford International sent several wires to my firm's escrow account to be used in connection with the Flatotel and other projects with the Chetrit Entities. In each case, Mr. Herz would tell me that a wire had been sent, but my firm did not receive it within the next day or two. In fact, the time between when Mr. Herz said that the wires had been sent and when funds were actually received took a week, and sometimes even longer.

10. I have personally observed Society for Worldwide Interbank Financial Telecommunication, or "SWIFT," messages confirming that these funds for the benefit of Triadou came from accounts in the name of Telford International Limited held at FBME Bank in Nicosa, Cyprus. Attached as Exhibit B are true and correct copies of emails I sent and received describing the details of the wire transfers sent to my firm's escrow account from Telford.

***Payment to SDG on Triadou's Assignment***

11. In mid-2014, Triadou executed an assignment transferring its interest in the Flatotel to CF 135 Flat LLC. As an initial payment for the assignment, CF 135 Flat LLC paid Triadou $1 million. This $1 million payment, along with $6 million in repayment of a loan previously made by Triadou to a Chetrit entity relating to a different property, were wired to Compagnie Privee do Conseils et d'Investissements S.A., for the benefit of SDG Capital S.A., and identified as a "loan on behalf of Triadou SPV S.A." The wire transfer is attached as Exhibit C.

***March 2015 Recordings***

12. I have listened to two recordings, represented to me as made on March 22 and March 23, 2015, and recognize one of the voices recorded as that of Joseph Chetrit. Copies of the recordings, designated here as Exhibits D and E, are provided electronically with this Declaration. Translated transcripts are attached as Exhibits F and G.

***A Receiver May Pose a "Special Risk" Under the Martin Act and Require Disclosure***

13. Based on my experience as a transactional lawyer in the real estate industry, I know that condominium conversions are subject to review by the New York State Attorney General. If a receiver is appointed herein, the sponsor of the condominium plan may be required to amend the offering plan already accepted by the Attorney General, leading to a new round of review, thereby delaying future closings. The Martin Act also requires disclosure of "special risks" to the project. 13 N.Y.C.R.R. § 20.3(c). If potential Flatotel condominium buyers need to be informed about any receivership because of the potential risks the receivership poses to the project, potential buyers may decline to purchase units and current buyers may seek to back out of their contracts.

4

14. Any review by the Attorney General could delay the project for several months or longer, pushing back scheduled closings. This delay could introduce additional uncertainty into the project and, with an extremely competitive market for high-end condominiums, threaten the project's viability.

_____
Jehoshua Graff, Esq.

Sworn to before me on this
3rd day of May, 2016

DAVID SALHANICK, ESQ.
Rockland County, NY
# 02SA6297163
Exp. 9/24/18