<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>

<a>
<b></b>
</a>



*Phone:*  *(212) 885-5148*
*Fax:*    *(917) 591-7897*
*Email:*  *dskakel@blankrome.com*

May 16, 2016

**VIA ECF**

The Honorable Alison J. Nathan
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2102
New York, New York  10007

      Re:    *CF 135 Flat LLC, CF 135 West Member LLC, and The Chetrit Group, LLC v. Triadou SPV S.A. and City of Almaty*, Case No. 15-CV-5345 (AJN)

Dear Judge Nathan:

    We represent Crossclaim Defendant Triadou SPV S.A. ("Triadou") and write to object to the "Supplemental Declaration of Lee Eichen" (the "Eichen Supp. Decl.") filed by counsel for Crossclaim Plaintiffs City of Almaty and BTA Bank JSC ("Almaty/BTA") on May 14, 2016 as a purported "reply affidavit."  Triadou respectfully requests that the Court strike the Eichen Supplemental Declaration as procedurally improper,[1] unduly speculative, and, most importantly, contrary to the actual facts concerning the effect of the Monitorship Order on the Flatotel project.  According to the May 12, 2016 status report the Chetrits' attorney submitted to the Monitor (a copy of which is attached as Exhibit A), the sale of a $5.4 million Flatotel condominium unit closed last Thursday, two other units with an aggregate purchase price of almost $14 million will close this week, and three more units (totaling over $10 million) will close next month.  These facts do not remotely reflect the speculative harm Mr. Eichen predicts in his Supplemental Declaration.

    Mr. Eichen's "Supplemental Declaration" also is unacceptably speculative.  Mr. Eichen does not profess to have expertise in the area of monitorships, conceding that "a monitorship is an unusual arrangement."  Eichen Supp. Decl. ¶ 8.  Despite the admittedly "unusual" nature of the monitorship, Mr. Eichen freely speculates as to what "the public generally," "the real estate market," and "most people" will do or believe.  *Id.*  Because Mr. Eichen's opinions are wholly speculative, and thus would not be useful to the factfinder, they should be excluded.  *See Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 412 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 62 (2d Cir. 2013) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996)) (excluding expert testimony that "neglects the factual underpinnings and reliable methodology that make opinion testimony useful to the [factfinder]").

---

[1]     As a threshold matter, an expert's reply opinion is limited to responding to matters raised in the testimony to which it replies.  Here, Triadou did not submit any direct testimony that bears upon Mr. Eichen's opinion, there is thus no predicate for his "supplemental" opinion.

The Chrysler Building  405 Lexington Avenue  New York, NY 10174-0208

www.BlankRome.com

Boca Raton • Cincinnati • Fort Lauderdale • Houston • Los Angeles • New York • Philadelphia • Pittsburgh • Princeton • San Francisco • Shanghai • Tampa • Washington • Wilmington

200663.00001/102269503v.1



The Honorable Alison J. Nathan
May 16, 2016
Page 2

      Even beyond this troubling speculation, Mr. Eichen's Supplemental Declaration is, on its face, wrong.  Contrary to Mr. Eichen's prediction that the Monitorship will have the same dire consequences to the Flatotel project as a receivership allegedly would have had, the sales are proceeding apace.  As the Chetrits' attorney, David Segal, informed the Monitor (retired State Court Justice Herman Cahn) in his May 12, 2016 letter, a closing occurred on May 12, two more are scheduled for this week, three more are slated for June, and the Chetrits authorized a $6 million wire to the Monitor's escrow account.  Ex. A at 1.  Because Mr. Eichen's "supplemental" opinions are flatly contradicted by the reality of the first week of the Monitor's work, the Court should strike the Eichen Supplemental Declaration.  *See Boucher*, 73 F.3d at 22 (expert opinion based on "unsupported assumption[s]" should have been excluded).

      Given that the reality of the Monitorship has not yet reflected *any* harm to the Flatotel project, even if the Court is unwilling to cancel the evidentiary hearing as Triadou requested last week (ECF Doc. No. 147), the entirety of Mr. Eichen's testimony should be struck because his declarations do not provide legally cognizable support for Almaty/BTA's purported Monitorship-sourced irreparable harm argument.[2]  Thus, Triadou respectfully submits that, at a minimum, this Court should eliminate any discussion of the Monitorship at the May 19, 2016 hearing so as to streamline the process.

      Respectfully submitted,

       s/Deborah A. Skakel
      Deborah A. Skakel

cc:    All Counsel of Record (*via* ECF)

---

[2]    Notwithstanding Almaty/BTA have offered the May 14 "reply affidavits" in further support of their recent motion for an attachment, Almaty/BTA are not entitled to an evidentiary hearing on that motion.

# EXHIBIT A

# SUKENIK, SEGAL & GRAFF, P.C.

ATTORNEYS AND COUNSELORS AT LAW

450 SEVENTH AVENUE, 42ND FLOOR
NEW YORK, N.Y. 10123

212-725-9300 PHONE
212-481-5520 FAX

May 12, 2016

By Hand

Hon. Herman Cahn
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue, 10th Floor
New York, NY 10016

Re:   Triadou SA v. CF 135 Flat LLC, et al.; Index no. 653462/2014

Dear Judge Cahn:

Rather than respond to Mr. Kravit's May 9, 2016 email and letter to you, I am delivering to you documents and information you will need as the Monitor and my client is authorizing a wire of $6 million to your firm as escrow agent. These funds represent the first distributions from the project to my client, which funds are subject to the monitorship order. Please send me wiring instructions. My client believes that these funds will be wired either tomorrow or at the beginning of next week.

The following is herein enclosed:

1)   A list of the 20 remaining unsold units with an aggregate offering price of $143,350,000. This list does not include six units which are in contract and which should close between today and June 30, 2016;

2)   A list of the six units which are in contract;

3)   A CD of six contracts for the six units referred to in paragraph 2 above; and

4)   A list of all units in the project, noting (i) which have been sold, (ii) which are in contract and (iii) which are not yet subject to a sales contract.

When we met, I told you that the project had approximately $13 million in its lawyer's account representing the proceeds of recent sales. Of this amount, approximately $5 million is being used to pay some of the project's payables.

The project has determined to now distribute $8 million to its members. Of this amount, $6 million will be wired to your firm as escrow agent representing the 75% of such disbursement which is to be paid to my clients. It is anticipated that additional disbursements will be made as the six units subject to sales contracts are closed.

Hon. Herman Cahn
May 12, 2016
Page 2

Please do not hesitate to contact me if you have any questions or comments.

Respectfully yours,

SUKENIK, SEGAL & GRAFF, P.C.

David C. Segal

Encl.

Cc:   Craig Kravit, Esq. (by hand)
      Ben Kaufman, Esq. (by email)

F:\WP\PAMELA\CHETRIT\Triadou\Cahn5'11'16.docx

**135 W52 Units In Contract**

5/5/2016

| Unit | Sale Price | Closing Costs 10% | Net Total | Closing Date |
|---|---|---|---|---|
| 29A | $ 5,400,000.00 | $ 540,000.00 | $ 4,860,000.00 | 5/18/2016 |
| 21B | $ 3,725,000.00 | $ 372,500.00 | $ 3,352,500.00 | 5/12/2016 |
| Retail | $ 8,500,000.00 | $ 850,000.00 | $ 7,650,000.00 | 5/16/2016 |
| Total | $ 17,625,000.00 | $ 1,762,500.00 | $ 15,862,500.00 | |

| Unit | Sale Price | Closing Costs 10% | Net Total | Closing Date |
|---|---|---|---|---|
| 8C | $ 1,632,000.00 | $ 163,200.00 | $ 1,468,800.00 | June |
| 28B | $ 5,100,000.00 | $ 510,000.00 | $ 4,590,000.00 | June |
| 32A | $ 3,575,000.00 | $ 357,500.00 | $ 3,217,500.00 | June |
| Total | $ 10,307,000.00 | $ 1,030,700.00 | $ 9,276,300.00 | |

| Total: | $ 27,932,000.00 | $ 2,793,200.00 | $ 25,138,800.00 |
|---|---|---|---|