# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

May 17, 2016

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

      Re:    *CF 135 Flat LLC et al. v. Triadou SPV S.A. et al.*,
               Case No. 15-CV-5345 (AJN)

Dear Judge Nathan:

      We represent the City of Almaty and BTA Bank (the "Kazakh Entities") and write in response to the May 16, 2016 letter from counsel for Defendant Triadou SPV S.A. ("Triadou") [ECF No. 149], seeking to the strike the Supplemental Declaration of Lee Eichen, which was served upon Triadou and the Court by e-mail on May 14, 2016 (the "Supplemental Declaration"). Triadou has not offered any legitimate grounds for striking the Supplemental Declaration, and its request should be denied.

      As the Court is aware, Mr. Eichen is being offered as an expert in the fields of real estate investment and management. Mr. Eichen's Supplemental Declaration responds to new facts that have arisen since the date of Mr. Eichen's initial declaration. Specifically, the primary purpose of the Supplemental Declaration is to opine on the expected impact of the state court monitorship order, which Triadou has repeatedly invoked to argue that the Kazakh Entities cannot show irreparable harm. [*See, e.g.*, ECF No. 132]. There is no question that the Supplemental Declaration was timely filed pursuant to the Court's April 27, 2016 Scheduling Order. [ECF No. 122]. In light of the fact that Triadou has given every indication that it intends to use the monitorship order to attack Mr. Eichen's conclusions, presenting Mr. Eichen's opinions on the monitorship in writing, rather than entirely through redirect testimony, preserves the Court's limited time, complies with the Court's prior instructions for the upcoming evidentiary hearing, and also provides clear notice to Triadou of his opinions. *See* April 27, 2016 Hr'g Tr. at 52:16-20 (MR. SCHWARTZ: "[W]ould you prefer that we do that live on redirect or would you prefer to get that in writing as a sort of supplemental declaration? I just want to be mindful of your time." THE COURT: "Why don't you do it in writing.").

      Triadou's suggestion that the Supplemental Declaration should be stricken because Mr. Eichen "does not profess to have an expertise in the area of monitorships," (May 16 Letter, at 1) misses the point. Mr. Eichen's opening declaration establishes his expertise in real estate investment and management, and that is exactly what his supplemental testimony opines on: the effects of the monitorship announcement on the market for units in the Flatotel. The fact that

monitorship may be "unusual" does not render his opinion speculative; to the contrary, that fact makes the testimony of an expert even more important, because the Court will need to consider the expected consequences to the market in unusual circumstances. Moreover, far from being speculative, Mr. Eichen's opinion is confirmed by the press reporting appended to the Supplemental Declaration.[1] Mr. Eichen does not need to be an expert on monitorships to offer such a market analysis, any more than he would need to be an entomologist to opine on how a bedbug infestation would impact the ability to sell an apartment. What is relevant, and what Mr. Eichen has opined on, is how the real estate market – buyers, lenders, brokers, and others – will perceive this new information.[2]

Finally, Triadou's claim that the Supplemental Declaration "is, on its face, wrong," (May 16 Letter, at 2) is plainly an attack on Mr. Eichen's conclusions and the evidence supporting them, rather than on his methodology. At this stage, however, the Court's inquiry "focus[es] not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology." *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009) (international quotation marks omitted). If Triadou believes that Mr. Eichen's opinions are flawed or contrary to evidence, then those topics may be grounds for cross-examination, but not for striking his testimony outright. *Id.* (denying motion to strike supplemental expert testimony regarding market analysis, and noting that questions as to the expert's conclusions should be asked on cross-examination).

Moreover, Triadou's argument that Mr. Eichen's testimony is "wrong" in light of the reported fact that the monitor has begun to escrow distributions is far too broad. The exhibits to Triadou's letter reflects that $6 million will be distributed to the monitor, representing 75% of an $8 million distribution to investors (recall that there is a 25% investor who is not involved in this controversy). As set forth in the exhibit, this $8 million represents the difference between $13 million in the condominium lawyer's escrow account and $5 million being used to pay project expenses. *See* Exhibit A to the 5/16/2016 Letter from D. Skakel to the Court. According to the exhibit, this $13 million has been in the condo lawyer's escrow since the date of the parties' meeting with the monitor, which was the day after the monitorship order was imposed. That is, the funds that have been released to the monitor *do not reflect any new sales or closings*.

As the letter to the monitor further explains, *id.*, there was one small unit closing on May 12, 2016. This does nothing to render Mr. Eichen's testimony "wrong." Mr. Eichen opined that receivership or monitorship may cause some buyers to back out of contracts, among other harms. The fact that a condominium unit that was already in contract at the time of the monitorship order subsequently closed only shows that not *every* buyer backed out – which of course was

---

[1] In contrast, Triadou's cited case law, *Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 413 (S.D.N.Y. 2012), concerned an expert report hypothesizing as to what a corporate board "would have done if certain hypothetical events took place." Unlike the unsupported expert report there, Mr. Eichen's opinion on the Flatotel's marketability is based in fact and supported by the press reporting attached to the Supplemental Declaration.

[2] In any event, Mr. Eichen is also qualified as an expert in the monitoring of sales in real estate developments, and indeed has experience managing assets that have been forfeited by the U.S. government or are under the supervision of a court-appointed trustee. *See* 5/2/16 Eichen Decl., at ¶ 4.

never Mr. Eichen's opinion.  Rather, Mr. Eichen opined that the imposition of any kind of monitor would be alarming to the real estate market and adversely affect the ability to market and sell units, create problems with lending, and potentially cause buyers to back out of sales – an opinion buttressed by the concerns expressed at the Flatotel's recent owners' meeting.  In short, if Triadou believes that Mr. Eichen's opinion is incorrect, it should demonstrate as much through cross-examination.  There is no basis on which to strike his supplemental declaration.

Thank you for your consideration.

                                        Respectfully submitted,

                                        /s/ Matthew L. Schwartz
                                        Matthew L. Schwartz
                                        Randall W. Jackson
                                        BOIES, SCHILLER & FLEXNER LLP
                                        575 Lexington Avenue
                                        New York, NY  10022

cc:      All attorneys of record (by ECF)