UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 21 2016

---

CF 135 Flat LLC et al.,

               Plaintiffs,

     —v—

Triadou SPV N.A. et al.,

               Defendants.

---

15-CV-5345 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

On April 1, 2016, Defendant Almaty moved for reconsideration of the Court's dismissal

of the Amended Interpleader Complaint ("AIC") in the above-captioned action.  Dkt. No. 104.

For the reasons articulated below, that motion is DENIED.

## I.     LEGAL STANDARD

In this district, "[m]otions for reconsideration are governed by Federal Rule of Civil

Procedure 59(e) and Local Rule 6.3." *Sullivan v. City of New York*, No. 14-CV-1334 (JMF),

2015 WL 5025296, at *3 (S.D.N.Y. Aug. 25, 2015).  "The standard for granting such a motion is

strict, and reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.,*

*Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Crucially here, a party moving for reconsideration "cannot

assert new arguments . . . which were not before the court on the original motion." *Koehler v.*

*Bank of Bermuda Ltd.*, No. M18-302 (CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005);

*see also Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115

(2d Cir. 1991) (the Local Rule governing motions for reconsideration "preclude[s] arguments

raised for the first time on a motion for reconsideration").  "The purpose of the rule is to ensure

the finality of decisions and to prevent the practice of a losing party examining a decision and

then plugging the gaps of a lost motion with additional matters." *Carolco Pictures, Inc. v.

Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988) (internal quotation marks omitted).

## II.     DISCUSSION

In a Memorandum and Order dated March 18, 2016, the Court dismissed the Chetrit

Plaintiffs' Amended Interpleader Complaint. Dkt. No. 103 ("Memo. & Order"). In doing so, the

Court held that "Plaintiffs have not discharged their burden of demonstrating that the claims in

question 'may expose [them] to double or multiple liability' against the 'same fund.'" *Id.* at 10

(first quoting Fed. R. Civ. P. 22(a)(1); then quoting *Washington Elec. Coop., Inc. v. Paterson,

Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993)). Defendant Almaty argues in its motion

for reconsideration that the Court overlooked several of their potential claims against the Chetrit

Plaintiffs that would expose the Chetrit Plaintiffs to fear of multiple liability against the same

funds.

Almaty specifically argues that the Chetrit Plaintiffs would be liable to it for the $21

million interpleaded fund on a conversion theory for having previously received embezzled

funds from Triadou. Essentially, Almaty argues that Triadou invested approximately $40 million

of funds embezzled from Kazakhstan in properties owned by the Chetrit Plaintiffs. Dkt. No. 116

at 2. At a later date, Triadou sought to liquidate its assets by selling its interest in the properties

back to the Chetrit Plaintiffs through the challenged 2014 assignment. *Id.* In its reconsideration

reply brief, Almaty explains that it was the victim of "two distinct frauds," the first being "theft

of funds from the Kazakh Entities, which . . . were then invested [with the Chetrit Plaintiffs] in

the Flatotel," and the second being "the fraudulent conveyance of the Flatotel interest from

Triadou *back* to the Chetrit Plaintiffs, at a below-market rate, and with the intent to hinder the

2

Kazakh Entitites' collection efforts." *Id.* Almaty argues that the first fraud gives rise to a

conversion claim against Plaintiffs for the recovery of the embezzled funds and "is not

contingent on the assignment." *Id.* at 8. Almaty further argues that because the Court

"overlooked [its] explicit and unambiguous claims [against the Chetrit Plaintiffs],

reconsideration is appropriate." *Id.* at 3.

      While Almaty now argues that the first distinct fraud (*i.e.* receipt of embezzled funds)

establishes the Chetrit Plaintiffs' liability to it for the interpleader fund, the Amended

Interpleader Complaint's allegations of multiple liability are expressly and exclusively premised

on the validity of the assignment. On this point, the Amended Interpleader Complaint alleges

that "Triadou and Almaty have competing and adverse claims against Plaintiffs arising from the

subject assignment." AIC ¶ 13. The Amended Interpleader Complaints goes on to explain:

> Plaintiffs cannot be liable to both [Triadou] and Almaty for the
> assignment. Either Triadou's assignment of its interest [to
> Plaintiffs] was valid or it was invalid. If the assignment was valid,
> Plaintiffs must pay Triadou $21,000,000.00, but owe Almaty
> nothing. If the assignment was improperly made, Plaintiffs may not
> owe Traidou [sic] anything, but may be liable to Almaty for the
> value of the improperly assigned interest.

*Id.* ¶ 16; *see also* Dkt. No. 39 at 11.

      Almaty also focused on the assignment in its opposition to Triadou's motion to dismiss.

Citing the Amended Interpleader Complaint, Almaty argued that the Chetrit Plaintiffs were

"subject to multiple claims both as to the Interest and as to the $21 million *owed under the*

*assignment agreement*" because "Triadou's transfer of the Interest to Chetrit was fraudulent."

Dkt. No. 34 at 3 (emphasis added). In describing how the allegedly fraudulent assignment would

give rise to the requisite liability, Almaty explained: "Triadou asserts a claim based on the

assignment agreement with Chetrit, while Almaty alleges that the assignment was

fraudulent. . . ." *Id.* at 5.  At no point did Almaty argue that a transaction other than the assignment could create the requisite fear of multiple liability for the Chetrit Plaintiffs.

Relying on the allegations in the Amended Interpleader Complaint and arguments in Almaty's opposition to the motion to dismiss the Amended Interpleader Complaint, the Court's March 18, 2016 Memorandum and Order focused on whether Almaty and Triadou had potential claims against Plaintiffs to the same fund arising from the assignment agreement. *See* Memo & Order at 8 ("[T]his case . . . undeniably involves potentially inconsistent obligations arising from Triadou's allegedly invalid assignment."). After evaluating claims that Almaty could bring against Plaintiffs *related to the assignment*, the Court concluded that "Plaintiffs are not liable to Almaty for [the interpleader *res*] on the facts alleged even if Almaty prevails on the merits of its claim that Triadou's assignment to Plaintiffs was invalid." *Id.* at 10.

Now Almaty asks the Court to evaluate multiple liability arising not from the assignment, but from an earlier transaction where Triadou allegedly purchased property from the Chetrit Plaintiffs with embezzled funds. Almaty argues that it previewed these claims for the Court in its initial opposition brief by "spell[ing] out the claim to the *res* in greater detail." Dkt. No. 105 at 9 n.2. Almaty cites one instance where it referenced the invalidity of the assignment agreement and another instance raising the possibility of a "future claim . . . against The Chetrit Group regarding . . . the interpleaded funds." *Id.* (citing Dkt. No. 34 at 6) (internal quotation marks omitted). Almaty's vague reference to a "future claim" does not "spell[] out [its] claim to the *res* in greater detail" and does not alter the Court's conclusion that Almaty's opposition brief did not discuss with any specificity the possibility of it bringing a claim *unrelated* to the assignment agreement.   As a result, these arguments are before the Court for the first time.

In making these arguments, Almaty relies heavily on its Answer and crossclaims, which were admittedly filed "after the motion to dismiss the interpleader complaint was fully briefed." Dkt. No. 105 at 9; *see also* Dkt. No. 116 at 3. Almaty cites *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 149 (2d Cir. 2016) for the proposition that the "[i]n considering a motion to dismiss an interpleader, the Court should review *all* the pleadings, even the subsequently filed ones." Dkt. No. 105 at 9. In that case, the Second Circuit cited the subsequent pleadings of the party seeking dismissal because its pleadings contradicted the arguments it advanced in support of dismissal. *Aktiengesellschaft*, 814 F.3d at 152 & n.16. Almaty asks the Court to do something different here. Although Plaintiffs' Amended Interpleader Complaint relies exclusively on "competing and adverse claims against Plaintiffs *arising from the subject assignment*" as the basis for interpleader, AIC ¶ 13 (emphasis added), Almaty asks the Court to construe its crossclaims as supplementing or amending Plaintiffs' interpleader allegations to include a fear of multiple liability from sources unrelated to the assignment. Almaty provides no authority for its proposition that an interpleader complaint may be amended by the crossclaims of another party. As a result, the Court concludes that allegations made in Almaty's crossclaims which were not raised by the parties in opposing the motion to dismiss and are inconsistent with the Amended Interpleader Complaint's focus on the assignment agreement are not properly considered in a motion for reconsideration.

The Court did not dismiss Plaintiffs' Amended Interpleader Complaint "because the claims confronting plaintiff have not been asserted," Dkt. No. 105 at 9 (quoting Wright & Miller 7 Fed. Prac. & Proc. Civ. § 1707 (3d ed.), nor did it "overlook. . . claims to the *res* that are independent on the assignment of the interest in the Flatotel." Dkt. No. 105 at 10. For example, the Court did not "overlook" Almaty's conversion claim. Dkt. No. 116 at 8. Almaty now argues

that it has a viable claim for "conversion of the $21 million itself," in addition to the conversion claim with respect to Plaintiffs' "property interest in the [Flatotel]." Dkt. No. 116 at 8. This argument was not raised in Almaty's initial opposition brief, Dkt. No. 34, and is not apparent from the text of its crossclaims. *See* Dkt. No. 49 ¶¶ 193-196. More importantly, however, Almaty observes that such a conversion claim "is not contingent on the assignment," *id.*, and is thus outside of the scope of the claims alleged in the Amended Interpleader Complaint.

The Court dismissed the interpleader action because the Amended Interpleader Complaint specifically alleged that "Triadou and Almaty have competing and adverse claims against Plaintiffs arising from the subject assignment agreement," AIC ¶ 13, but did not demonstrate that Plaintiffs would be "liable to Almaty for [the interpleader *res*] on the facts alleged even if Almaty prevailed on the merits of its claim that Triadou's assignment to Plaintiffs was invalid." Memo & Order at 10. Almaty's current arguments could have been, but were not, presented to the Court in Almaty's opposition to Triadou's motion to dismiss. In any event, those arguments contradict the allegation in the complaint that the Chetrit Plaintiffs' fear of multiple liability derived from "competing and adverse claims . . . arising from the subject assignment." AIC ¶ 13. Because a party moving for reconsideration "cannot assert new arguments . . . which were not before the court on the original motion," *Koehler*, 2005 WL 1119371, at *1, particularly if those arguments are inconsistent with allegations in the complaint, the Court finds that Almaty's arguments do no warrant reconsideration of the Court's March 18, 2016 Memorandum and Order. Even if the Court were to consider Almaty's new arguments despite their inconsistency with the Amended Interpleader Complaint, it is still not apparent that Almaty and Triadou could make any claims against the Chetrit Plaintiffs to the *same* fund that would potentially give rise to multiple liability.

6

## III.   CONCLUSION

For the foregoing reasons, Defendant Almaty's motion for reconsideration is DENIED.

This resolves Dkt. No. 104.


SO ORDERED.


Dated: June ___, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge

7