UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CF 135 Flat LLC *et al.*,

                  Plaintiffs,

     –v–

Triadou SPV S.A. *et al.*

                  Defendants.

---

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED: JUN 2 1 2016             │
└─────────────────────────────────────┘
```

15-CV-5345 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

       CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC ("the Chetrit

Entities") initiated this interpleader action in July 2015.  Dkt. No. 1 Ex. A.  On October 12, 2015,

the City of Almaty ("Almaty") and BTA Bank JSC ("BTA Bank") filed a number of

counterclaims, crossclaims, and third-party claims against the Chetrit Entities, Joseph Chetrit,

Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov, and Triadou SPV S.A. ("Triadou").

Dkt. No. 49.  Presently before the Court are Almaty and BTA Bank's motion for joinder related

to those claims and Triadou's motion to dismiss the crossclaims against it.  Dkt. Nos. 47, 84.  For

the reasons articulated below, the motion for joinder is granted and the motion to dismiss is

granted in part and denied in part.

## I.     BACKGROUND

       This sprawling litigation originated as an interpleader action filed by the Chetrit Entities

against Almaty and Triadou in July 2015.  In the interpleader complaint, the Chetrit Entities

claimed to face multiple liability under their 2014 assignment agreement with Triadou because

Triadou had allegedly acquired the assigned interest with funds stolen from Almaty.  Dkt. No. 25

¶¶ 11-17.  In its October 12, 2015 answer to the interpleader complaint, Almaty filed

counterclaims against the Chetrit Entities, crossclaims against Triadou, and third-party claims against Joseph Chetrit, Mukhtar Ablyazov, Viktor Khrapunov, and Ilyas Khrapunov. Dkt. No. 49. Almaty purported to join the Kazakhstan-based BTA Bank as a plaintiff in these claims. *Id.* Almaty and BTA Bank settled their claims against the Chetrit Entities and Joseph Chetrit in November 2015, Dkt. Nos. 69, 71, and the Court dismissed the underlying interpleader complaint in March 2016. Dkt. No. 103. However, the claims filed by Almaty and BTA Bank against Triadou, Ablyazov, and the Khrapunovs remain pending and are the subject of the current motions.

The basic allegations in support of these claims can be summarized as follows: Almaty, a city in Kazakhstan, claims that its former mayor Victor Khrapunov and his family embezzled more than $300 million from the city by appropriating various public assets for their personal use. Dkt. No. 49 ¶¶ 21, 69-76. BTA Bank, a banking institution in Kazakhstan, alleges that its former chairman Mukhtar Ablyazov embezzled significant sums of money from that bank through a series of fraudulent loans. *Id.* ¶¶ 20, 50-55. Almay and BTA Bank further allege that the Khrapunovs and Ablyazov, who were related by marriage, worked together to launder their stolen funds throughout the world through a series of shell corporations and seemingly legitimate investments. *Id.* ¶¶ 22-25, 77-79, 93-95. To do this, the Khrapunovs and Ablyazov allegedly sold their investment entity the Swiss Development Group ("SDG") to an associate, Philippe Glatz, in a sham sale to mask their continuing involvement with the company. *Id.* ¶¶ 89-92. Triadou, a Luxembourg-based wholly owned subsidiary of SDG, then purportedly worked in tandem with the Chetrit Entities to launder money stolen from Kazakhstan into at least two New York real estate projects, the Flatotel and the Cabrini Medical Center. *Id.* ¶ 25, 93-106.

Triadou challenges these claims on numerous grounds.  First, it argues that Almaty improperly joined Ablyazov and the Khrapunovs as defendants and BTA Bank as a plaintiff to the crossclaims against it.  Second, it argues that this case should be dismissed on *forum non conveniens* grounds.  Third, it argues that Almaty and BTA Bank fail to state a claim for a civil RICO violation.  Fourth, it argues that Almaty and BTA Bank fail to state a claim on their various state law theories.  Finally, Triadou argues that the RICO allegations against it are impermissibly extraterritorial.  The Court will address each argument in turn.

## II.    JOINDER

Almaty seeks to join BTA Bank as a plaintiff and Ablyazov and the Khrapunovs as defendants to its crossclaim against Triadou.  Dkt. No. 47.  Triadou argues that joinder of these parties should not be permitted.  Dkt. No. 68.  The Court finds that joinder is appropriate under the circumstances.

### A. Legal Standard

Federal Rules of Civil Procedure 19 and 20 "govern the addition of a person as a party to a counterclaim or crossclaim."  Fed. R. Civ. P. 13(h).  Rule 20 permits parties to be joined as plaintiffs if "they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  Similarly, defendants may be joined if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20(a)(2).

Even if these criteria are satisfied, "courts maintain broad discretion concerning whether to permit joinder." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 168 (S.D.N.Y. 2012) (internal quotation marks omitted). In exercising this discretion, the Court must evaluate whether joinder "will comport with the principles of fundamental fairness." *Shaw v. Munford*, 526 F. Supp. 1209, 1213 (S.D.N.Y. 1981) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). The Court should primarily consider whether joinder will "delay the proceedings or prejudice" the opposing party" but may also consider "the closeness of the relationship between the present parties and the parties to be joined." *Novak v. TRW, Inc.*, 822 F. Supp. 963, 973 (E.D.N.Y. 1993). However, "the impulse [of Rule 20] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

### B. Application

Almaty and BTA Bank allege that Ablyazov and the Khrapunovs laundered money stolen from them through shell corporations, including Triadou, and invested those funds in New York real estate. Dkt. No. 49 ¶¶ 22-25. Triadou does not argue, nor could it, that these allegations fail to meet the formal requirements of Rule 20. Instead, it argues that the Court should exercise its discretion not to join parties. Dkt. No. 68 at 4.

The Court will exercise its discretion to join BTA Bank as a plaintiff. Almaty sought to join BTA Bank as a plaintiff at the earliest possible opportunity, in its answer to the interpleader complaint raising the relevant claims. Dkt. No. 49. Both Almaty and BTA Bank allege that money stolen from them was laundered by Ablyazov and the Khrapunovs through Triadou into New York real estate projects. *Id.* ¶¶ 24-25. Although Almaty's claims stem from

embezzlement by the Khrapunovs while BTA Bank's claims stem from embezzlement by Ablyazov, both allege that Ablyazov and the Khrapunovs worked together to launder their combined stolen funds through Triadou. *Id.* ¶¶ 22, 24-25, 50-56, 70-79, 94-95. Based on the foregoing, the Court is confident that Almaty and BTA Bank's claims involve substantial "overlapping discovery" and common "witnesses and documentary proof" regarding Triadou's alleged money laundering activities such that interests of "judicial economy" are served by resolving the interrelated money laundering allegations against Triadou at the same time. *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 559 (S.D.N.Y. 2013). This conclusion is informed by the ongoing preliminary injunction proceedings, which would have proceeded in an identical fashion relying on identical evidence whether or not BTA Bank had participated. The Court also notes that, because discovery in this action has not yet commenced, joinder of BTA Bank as a plaintiff at this early stage will not "significantly . . . delay the resolution of this action." *Republic Nat. Bank v. Hales*, 75 F. Supp. 2d 300, 311 (S.D.N.Y. 1999), *aff'd sub nom. HSBC Bank USA v. Hales*, 4 F. App'x 15 (2d Cir. 2001) (collecting cases declining to permissively join parties when doing so would require re-opening discovery or additional motion practice in a "soon-to-be-resolved" dispute).

For similar reasons, the Court will exercise its discretion to join Ablyazov and the Khrapunovs as defendants. The money laundering allegations against Triadou are logically dependent on Ablyazov and the Khrapunovs' embezzlement; if those individuals did not embezzle money from Almaty or BTA Bank, Triadou could not have, as alleged, laundered their stolen funds into New York real estate investments with the Chetrit Entities. *See* Dkt. No. 49 ¶¶ 24-25, 98-99, 105, 112. Furthermore, Ablyazov and the Khrapunovs are alleged to have founded Triadou for the express purpose of laundering stolen funds. *Id.* ¶¶ 93-95. As a result,

evidence of Ablyazov and the Khrapunovs' wrongdoing will likely be presented whether or not they are parties to this action. For this reason, the Court rejects Triadou's arguments that joining them will "require substantial additional discovery[] and drastically increase the expense for the original parties," Dkt. No. 68 at 6, and finds that the interests of "judicial economy" are served by joining Ablyazov and Khrapunov alongside Triadou as defendants at this early stage. *Kalie*, 297 F.R.D. at 559; *see also Hales*, 75 F. Supp. 2d at 311.

In sum, the Court finds that the joinder of BTA Bank, Ablyazov, and the Khrapunovs will not meaningfully expand the scope of the case, delay discovery, or otherwise prejudice Triadou. As a result, the Court will permit joinder of these parties under Rule 20. The Court therefore need not consider joinder under other potentially applicable rules.

### III.   *FORUM NON CONVENIENS*

Almaty next argues that the entire action should be dismissed on *forum non conveniens* grounds because the case is more appropriately litigated in Switzerland. Dkt. No. 86 at 10. "The decision to dismiss a case" on this basis "lies wholly within the broad discretion of the district court. . . ." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (quoting *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996)). In exercising this discretion, the Court must consider three factors. First, it must evaluate the "degree of deference . . . owed a plaintiff's choice of forum." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003) (citing *Iragorri*, 274 F.3d at 73). Next, the Court must "determine whether an adequate alternative forum exists." *Id*. (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). If so, the court must "balance factors of private and public interest to decide, based on weighing the relative hardships involved, whether the case should be

adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the

defendant." *Id.* (citing *Gilbert*, 330 U.S. at 507-09).

### A. Almaty and BTA Bank's Choice of Forum Is Entitled to Substantial Deference

The Court must "give greater deference to a plaintiff's forum choice to the extent that it

was motivated by legitimate reasons . . . and diminishing deference to a plaintiff's forum choice

to the extent that it was motivated by tactical advantage." *Iragorri*, 274 F.3d at 73.  Put another

way, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to

the forum of choice and the more it appears that considerations of convenience favor the conduct

of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal

for *forum non conveniens*." *Id.* at 72 (footnote omitted).  "On the other hand, the more it appears

that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less

deference the plaintiff's choice commands. . . ." *Id.*  This analysis should consider the plaintiff's

choice to bring suit in a particular forum at "the time . . . the complaint was filed." *Frederiksson*

*v. HR Textron, Inc.*, 484 F. App'x 610, 612 (2d Cir. 2012).

Triadou argues that Almaty and BTA Bank's choice of forum is entitled to little

deference because the "core" allegations of the complaint have "only marginal links" to New

York and the American forum was chosen for tactical reasons to obtain treble damages under the

Racketeering Influenced Corrupt Organizations Act ("RICO").  Dkt. No. 86 at 12-13.  The Court

disagrees and finds that Almaty's choice of forum "was motivated by legitimate reasons."

*Iragorri*, 274 F.3d at 73.  Almaty and BTA Bank initiated their claims against Triadou in the

course of other litigation between the parties occurring in New York.  Dkt. Nos. 2, 49.  Triadou

first initiated litigation in New York State Supreme Court against the Chetrit Entities related to

the 2014 assignment agreement, Dkt. No. 25 ¶ 10, and the Chetrit Entities thereafter initiated the

interpleader action in this matter with Almaty and Triadou as defendants to adjudicate the parties' rights with respect to that agreement. *Id.* ¶¶ 11-17. Although Almaty and BTA Bank "did not initiate this lawsuit" and thus did not "choose" the forum in the ordinary sense of the word, "it was perfectly reasonable" for them to bring crossclaims against Triadou in this forum once the Chetrit Entities had brought the relevant parties together in a single lawsuit in the Southern District of New York. *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 599 (S.D.N.Y. 2011).

Furthermore, there is a "bona fide connection" between this lawsuit and the New York forum. *Iragorri*, 274 F.3d at 72. Almaty and BTA Bank allege that Triadou laundered embezzled funds stolen from Kazakhstan into New York real estate developments, including the Flatotel and Cabrini Medical Center projects. Dkt. No. 49 ¶¶ 25, 100-106, 112; *see also Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 273 (S.D.N.Y. 2012) (finding a bona fide connection between the forum and the lawsuit where the defendant had "transferred millions of dollars into bank accounts located in New York" although the underlying fraud occurred in South America). Based on these allegations, they seek recovery of the property interests themselves, which were allegedly acquired with embezzled funds, and any profits Triadou received from the sale of those interests.[1] Dkt. No. 49 ¶¶ 174, 180, 185. It is "legitimate" for them to seek such recovery where the properties and are located and where Triadou has initiated litigation to force the Chetrit Entities to pay what was owed under the 2014 assignment agreement. *Iragorri*, 274 F.3d at 73.

---

[1] These profits are currently subject to a New York state court Monitorship Order. Dkt. No. 132 Ex. A. Under the terms of that order, the profits shall remain in the Monitor's account and shall not be disbursed until this Court rules on the pending preliminary injunction motion. *Id.* ¶¶ C, H.

Although the interpleader action and all claims against the Chetrit Entities have been dismissed, *see* Dkt. Nos. 71, 103, the preexisting New York litigation and links between this action and New York real estate projects demonstrate that Almaty and BTA Bank's decision to sue here "was motivated by legitimate reasons," *Iragorri*, 274 F.3d at 73, at "the time . . . the complaint was filed." *Frederiksson*, 484 F. App'x at 612. Their choice of forum is entitled to substantial deference.

### B. Switzerland Is Not an Adequate Alternative Forum for All Claims

In order to dismiss an action on *forum non conveniens* grounds, the Court must find that there is an adequate alternative forum where the dispute may be heard. *Pollux*, 329 F.3d at 74. The party seeking dismissal bears "the burden to establish that an adequate alternative forum exists." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). This requirement is generally satisfied if "the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (quoting *Gilbert*, 330 U.S. at 507). If, however, "the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Id*.

Almaty and BTA Bank argue that Switzerland is an inadequate forum for two reasons. First, they argue that Triadou has not met its burden of demonstrating that Ablyazov is amenable to process there. Dkt. No. 88 at 11-12. Second, they argue that the statute of limitations in Switzerland may bar certain of their claims. *Id*. at 13-14.

### 1. Triadou has not shown that Ablyzaov is amenable to process in Switzerland

A party is amenable to process in a foreign jurisdiction if all parties "submit to the jurisdiction" of the foreign court. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005); *see also* 14D C. Wright, A. Miller, E. Cooper & R. Freer, Federal Practice &

Procedure § 3828.3, at 639 (4th ed. 2013) (an alternative forum is available "if the case and all of the parties come within th[e] alternative court's jurisdiction."). Triadou has consented to jurisdiction in Switzerland, Dkt. No. 91 at 4, and the Khrapunovs reside there. Dkt. No. 86 at 14. However, Triadou has not established that a Swiss court could exercise jurisdiction over Ablyazov, who is currently incarcerated in France. Dkt. No. 88 at 12.

To overcome this apparent deficiency, Triadou first argues that it need not demonstrate that Ablyazov is amenable to process in Switzerland because he has not yet been served in this matter. Dkt. No. 91 at 4. While that was true at the time Triadou's motion was filed, Ablyazov was served on April 28, 2016. Dkt. No. 123. When some defendants in a *forum non conveniens* case have been served but have not appeared, courts generally require the moving defendant to show that those individuals are at least as amenable to suit in the foreign jurisdiction as they are in the current forum. *See Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 386 n.6 (S.D.N.Y. 2009) (defendants who had not appeared would be subject to jurisdiction in the proposed alternative forum); *Zweig v. Nat'l Mortg. Bank of Greece*, No. 91-CV-5482 (CSH), 1993 WL 227663, at *8 (S.D.N.Y. June 17, 1993) (the defendant who had not appeared would be more amenable to process in Greece than New York). This requirement appears to be motivated by the availability of default judgment in the original forum against defendants who do not appear. Triadou has made no showing concerning Ablyazov's relative amenability to suit in New York and Switzerland, and thus has not demonstrated that he is at least as amenable to suit in Switzerland as he is here. As a result, Switzerland is not an adequate alternative forum for Almaty and BTA Bank's claims against Ablyazov.

Despite this failing, Triadou argues that the Court "can nevertheless sever [Ablyazov] and the claims against him to facilitate dismissal of the remaining Crossclaims on *forum non*

*conveniens* grounds." Dkt. No. 91 at 4. As discussed at some length below, Triadou's inability

to demonstrate that a Swiss court could exercise jurisdiction over Ablyazov is not the sole reason

that dismissal on *forum non conveniens* grounds is inappropriate. As a result, severing claims

against Ablyazov would not alter the outcome here. Furthermore, the only case Triadou cites for

the proposition that severance is appropriate to facilitate *forum non conveniens* dismissal

involved a U.S.-based party who was added to "engineer jurisdiction" over "essentially a foreign

dispute." *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 722 (S.D.N.Y.

2011). There is no allegation here that Ablyazov was joined specifically to "engineer

jurisdiction" or otherwise defeat a *forum non conveniens* motion. To the contrary, the Court has

found that joinder of the claims against him is proper and promotes judicial economy as

discussed above. As a result, the Court will not sever the claims against Ablyazov to dismiss

other claims on *forum non conveniens* grounds, which the Court notes would require Almaty and

BTA Bank to prosecute their claims in multiple jurisdictions.

### 2.  Triadou has not shown that Almaty and BTA's claims would not be barred by the statute of limitations in Switzerland

"[A]n adequate forum does not exist if a statute of limitations bars the bringing of the

case in that forum." *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*,

273 F.3d 241, 246 (2d Cir. 2001). Because the defendant has the burden of demonstrating the

existence of an adequate alternative forum, *see Wiwa*, 226 F.3d at 100, "[t]he burden is on the

moving party to show that there is no statute of limitations bar in the alternative forum."

*Crimson Semiconductor, Inc. v. Electronum*, 629 F. Supp. 903, 908 (S.D.N.Y. 1986). While

Triadou has agreed to "waive any statute of limitations-based defenses" in Switzerland, Dkt. No.

91 at 4, it has not (and cannot) make any such guarantee on behalf of the other defendants to this

action, namely the Khrapunovs and Ablyazov. *Id*. Almaty and BTA Bank have suggested that

statute of limitations in Switzerland for some of the claims alleged here, like unjust enrichment, may be as little as one year. Dkt. No. 88 at 13. Without any guarantee that Almaty's claims against the Khrapunovs and Ablyazov could proceed in Switzerland under the applicable statute of limitations, Triadou has not met its burden of demonstrating that Switzerland is an adequate alternative forum.

### C. The Balance of Hardships Do Not Justify Disturbing Almaty and BTA Bank's Chosen Forum

Even if Switzerland were an adequate alternative forum, the third step of the *forum non conveniens* analysis demonstrates that dismissal is not appropriate here. At this step, the court "must balance two sets of factors to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant." *Iragorri*, 274 F.3d at 73. The first set of factors, the "private interest factors," take into account the relative convenience of litigating in the forum chosen by the plaintiff and that proposed by the defendant. *Id*. at 73-74. The second set of factors, the "public interest factors," address the Court's interest in adjudicating the relevant dispute. *Id*. at 74. Dismissal is appropriate only "when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper*, 454 U.S. at 241 (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

#### 1. The private interest factors do not weigh in favor of dismissal

When weighing the private interest factors, the Court should consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy,

expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74. (quoting *Gilbert*, 330 U.S. at 508).

"[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the

stronger a showing of inconvenience the defendant must make to prevail in securing *forum non*

*conveniens* dismissal." *Id.* at 74. "[U]nless the balance [of private interests] is strongly in favor

of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at

508.

### a. Access to sources of proof

Evaluating relative access to sources of proof does not identify any one forum as clearly

superior to another. Almaty and BTA Bank claim that Triadou and the Chetrit Entities worked

together to launder money from Kazakhstan through Switzerland and ultimately into New York

real estate developments. Dkt. No. 49 ¶¶ 24-25. As these allegations might suggest, the

evidence on which the parties may rely spans the globe. Many relevant witnesses, including the

Khrapunovs and Triadou's employees, are located in Switzerland. Dkt. No. 86 at 18; Dkt. No.

88 at 19; Dkt. No. 91 at 7. Documentary evidence about Triadou's investment and banking

activities and corporate ownership are also located in Switzerland. Dkt. No. 86 at 18. Other

relevant witnesses, including those who negotiated the challenged real estate transactions with

Triadou on behalf of the Chetrit Entities, are located in New York, as are the documents related

to those real estate transactions. Dkt. No. 88 at 14-15, 18. Still other witnesses and documents

related to the underlying embezzlement are located in Kazakhstan. Dkt. No. 88 15, 18. Finally,

documentary evidence about certain financial transactions may need to be obtained from

additional jurisdictions including the United Arab Emirates, the United Kingdom, and Cyprus.

Dkt. No. 88 at 19. In light of the degree to which relevant evidence is spread throughout the

globe, it is difficult to say that this factor meaningfully differentiates the convenience of

13

litigating in this forum versus the proposed Swiss forum. *See Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 391 (S.D.N.Y. 2015) (this factor was not entitled to significant weight where "both parties will be required to call witnesses from a variety of jurisdictions") (citation omitted).

Resisting this conclusion, Triadou argues that only a "small proportion of evidence and witnesses" related to a "far removed" portion of Almaty and BTA Bank's claims are located in New York. Dkt. No. 86 at 19-20. This is not so. Just as witnesses and evidence affiliated with Triadou and SDG are largely located in Switzerland, Dkt. No. 86 at 18; Dkt. No. 91 at 7, all of the witnesses and evidence affiliated with the Chetrit Entities are located in New York. Dkt. No. 88 at 14-15, 18. And the Chetrit Entities' involvement in this dispute is far from minimal: More than eight pages of the crossclaims are dedicated to describing the Chetrit Entities' participation in Triadou's money laundering scheme and eleven out of fourteen alleged RICO predicate acts involve the Chetrit Entities. Dkt. No. 49 ¶¶ 97-114, 117-127, 140(d)-(e), (h)-(n). The extent to which the New York real estate money laundering allegations pervade the crossclaims demonstrates that the Chetrit Entities' activities undertaken in New York with Triadou constitute a central element of this case. As a result, the Court finds that the "sources of proof" available in Switzerland are roughly comparable in quantity and in relevance to the "sources of proof" available in New York. *Iragorri*, 274 F.3d at 73 (quoting *Gilbert*, 330 U.S. at 508). For this reason, this factor does not meaningfully distinguish between the forums.

### b. Attendance of witnesses

Similarly, the parties' relative ability to obtain attendance of witnesses in the two forums does not weigh strongly one way or another. Due to the settlement agreement between Almaty, BTA Bank, and the Chetrit Entities, *see* May 19, 2016 Tr. 35:3-36:3, the Court finds it likely that, as Triadou claims, "testimony from the Chetrit Entities can be obtained in connection with

14

Swiss proceedings without resort to letters rogatory." Dkt. No. 91 at 7. It also appears that letters rogatory are not necessary to compel at least some witnesses located in Switzerland to testify in New York. For example, the live testimony of Nicolas Bourg and Cesare Cerrito, both of whom reside in Switzerland, was obtained on short notice in connection with the preliminary injunction hearing without resort to the issuance of letters rogatory. *See* Tr. 49:4-8, 94:12-16. Even if letters rogatory must be used to obtain some witness testimony in New York, Triadou has not pointed to "a single potential witness who would be unable or unwilling to appear in New York," a showing that "is generally required for a *forum non conveniens* dismissal." *Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05-CV- 9478 (GEL), 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006) (Lynch, J.) (citation omitted). As a result, the Court finds that the availability to obtain live witness testimony does not weigh strongly one way or the other.

### c.  Other practical problems

Other practical problems are similarly inconclusive. Triadou argues that proceeding in New York would require a large number of documents to be translated from French, which would be avoided with litigation in Switzerland. Dkt. No. 86 at 19. Almaty responds that a significant number of documents currently in English would need to be translated if the proceedings were held in Switzerland. Dkt. No. 88 at 15. Triadou argues that discovery from Swiss banking institutions and certain other third parties may be easier to obtain in Switzerland. Dkt. No. 86 at 18-19. Almaty responds that third-party discovery would actually be "more onerous" in Switzerland due to the involvement of Cypriot and American banking institutions and American law firms. Dkt. No. 88 at 16-17 & n.6. Triadou argues that litigating in New York requires it to incur costs to transport witnesses from Switzerland and Kazakhstan. Dkt. No. 86 at 19. Litigating in Switzerland, on the other hand, would require Almaty to incur costs to

transport witnesses from the United States and Kazakhstan. Dkt. No. 88 at 18. These competing arguments demonstrate that litigation in Switzerland would simply present different, not fewer, "practical problems" than litigation in New York. *Iragorri*, 274 F.3d at 74 (quoting *Gilbert*, 330 U.S. at 508).

It is undeniably true that litigating in Switzerland would be, to some degree, more convenient *for Triadou*. For the purpose of *forum non conveniens*, however, the Court is interested in *net* convenience—whether litigating in the proposed alternative forum would, on the whole, be more convenient and save more resources than litigating in the plaintiff's chosen forum. *See Piper*, 454 U.S. at 241 (quoting *Koster*, 330 U.S. at 524) (the *forum non conveniens* inquiry evaluates whether "oppressiveness and vexation to a defendant" is "out of all proportion to plaintiff's convenience"). Whether this dispute is litigated in New York or Switzerland, the parties will have to obtain documents and witnesses from other jurisdictions. Similarly, whether this dispute is litigated in New York or Switzerland, the parties will have to translate a substantial number of documents. In sum, regardless of where this dispute is litigated, litigation will be inconvenient and there is little net convenience to be gained by sending this dispute to Switzerland.

The Court is mindful that "the greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal." *Iragorri*, 274 F.3d at 74. As noted above, "unless the balance [of private interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508. Because Almaty and BTA Bank's decision to sue here "was motivated by legitimate reasons," *Iragorri*, 274 F.3d at 73, that decision is entitled to substantial deference. As discussed above, witnesses and

16

documentary evidence relevant to this case are located in both New York and Switzerland, as well as several other jurisdictions including Kazakhstan. Dkt. No. 86 at 17-19; Dkt. No. 88 at 14-15, 18. Even if, as Triadou argues, there are slightly more witnesses or documents located in Switzerland than in New York, Triadou has not demonstrated that the net convenience of litigating in Switzerland is substantial enough to overcome the significant deference owed to Almaty and BTA Bank's choice of forum. As a result, the private interest factors do not justify dismissal for *forum non conveniens*.

### 2. The public interest factors do not weigh in favor of dismissal

When weighing the public interest factors, the Court should consider "(a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law." *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263, 275 (S.D.N.Y. 2010) (citing *Gilbert*, 330 U.S. at 508-09). An analysis of these factors further demonstrates that there is an insufficient basis to disturb Almaty and BTA Bank's choice of forum.

On the question of court congestion, Triadou concedes that Swiss courts, "like the Southern District of New York, suffer from congestion." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 31 (2d Cir. 2002); Dkt. No. 86 at 22. Because Triadou cannot argue that Swiss courts are less congested than New York courts, it argues instead that litigation in New York will be delayed due to "the need to collect documents from multiple overseas locations, the need to seek third-party discovery from foreign entities, the need for translation services to interpret documents and witnesses, and the difficulty of obtaining the presence of foreign witnesses who are unwilling to participate without compulsion." Dkt. No. 86 at 22-23. Insofar as these concerns are even relevant to the public interest, as opposed to private interest, inquiry, the Court

17

has already found that they would plague any litigation in Switzerland to a similar extent. As a result, this factor is neutral. *See Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 396 (S.D.N.Y. 2010) (citing *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 527 (S.D.N.Y. 2006) (finding this factor neutral, as Canadian courts are not less congested than courts in this district).

Triadou's argument on the jury duty factor merges with its arguments on the interest in settling local disputes locally. Essentially, Triadou argues that jury duty should not be imposed on U.S. citizens because Switzerland's interest in the dispute is much stronger than New York's because "the Khrapunovs and Ablyazov funneled their ill-gotten gains into Switzerland from Kazakhstan." Dkt. No. 86 at 21. The Court finds that both Switzerland and New York have legitimate interests in the dispute. The Court does not deny that Switzerland has a substantial interest in the allegations that the Khrapunovs and Ablyazov laundered money from Kazakhstan into Switzerland; indeed, this interest is demonstrated by the ongoing Swiss investigation of the Khrapunovs. *See id.* For similar reasons, however, New York has an interest in the allegations that Triadou subsequently conspired with a New York real estate group to launder embezzled funds into prominent New York real estate projects. *See* Dkt. No. 88 at 22-23 (describing recent federal, state, and city efforts to crack down on money laundering through New York real estate). Because both Switzerland and New York have legitimate interests in this dispute, as Triadou and the Chetrits allegedly laundered money through both jurisdictions, this factor does not weigh heavily one way or the other.

Finally, Triadou argues that the necessity of applying foreign law counsels in favor of dismissal for *forum non conveniens*. Dkt. No. 86 at 23. However, Triadou does not explain, and the Court does not see, how Swiss law is relevant to the resolution of this dispute. *Id.* Almaty brings claims under the RICO statute and various provisions of state law related to fraud. *See*

Dkt. No. 49.  As Almaty and BTA Bank explain, Kazakh law may be important to the extent that it determines whether or not Ablyazov and the Khrapunovs committed the alleged underlying frauds.  *See* Dkt. No. 88 at 25.  Whether any party violated Swiss law, however, is at best minimally relevant to Almaty and BTA Bank's claims that Triadou and the Chetrits' subsequent money laundering activities violated federal and New York law.  Because Swiss law has little, if any, apparent relevance to this dispute and Swiss courts are not better adept at applying Kazakh law than American courts, this factor does not weigh in favor of dismissal.

Thus, even if Switzerland were an adequate alternative forum, neither the private interest factors nor the public interest factors outweigh the deference the Court owes to Almaty and BTA Bank's legitimate choice of forum.  Because witnesses and documentary evidence are located in New York, Switzerland, Kazakhstan, and several other locations, it would not be meaningfully more convenient for the parties to litigate in Switzerland than in New York.  Additionally, New York has a significant interest in adjudicating this dispute, which involves allegations of laundering embezzled funds into real estate here and does not implicate Swiss law.

For these reasons, the Court will not dismiss this action on *forum non conveniens* grounds.[2]

## IV.   RICO CLAIMS

As an alternative basis for dismissal of this action, Triadou argues that Almaty and BTA Bank fail to state a claim for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and Federal Rule of Civil Procedure 9(b).  Dkt. No. 86

---

[2] Although the Court recognizes that the Central District of California reached a different conclusion in another case brought by Almaty involving the Khrapunovs alleged fraud, *see* Dkt. No. 85 Ex. 3 at 13, the case before that court differed from the case before this Court in material ways.  For example, those claims were not initiated during the course of preexisting litigation, the Chetrit Entities and Ablyazov were not parties, and the suit was not brought in the district where funds were allegedly laundered into real estate.  As a result, the fact that the Central District of California reached a different conclusion in a different action does not alter the Court's conclusion here.

at 24, 27. To state a claim for relief under the civil RICO provision, 18 U.S.C. § 1964, a plaintiff must allege a substantive violation of the RICO statute, "an injury to business or property," and "causation of the injury by the violation." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). Triadou does not challenge the sufficiency of the injury or causation allegations, so the only issue before the Court is whether Almaty and BTA Bank have adequately alleged a substantive RICO violation. Dkt. No. 86 at 27.

Under 18 U.S.C. § 1962, the substantive portion of RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Courts in this circuit have articulated the elements of this provision in a variety of different ways. *Compare Hinterberger v. Catholic Health Sys., Inc.*, 536 F. App'x 14, 16 (2d Cir. 2013) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 16–17 (2d Cir. 1983)) (breaking the statute into seven elements), *with Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994) (reciting only four elements). Despite slight differences in how courts break down the elements, however, the requirements of a § 1962 violation remain consistent: The defendant must participate in an enterprise affecting interstate or foreign commerce through a pattern of racketeering activity. *See Moss*, 719 F.2d at 17; *Azrielli*, 21 F.3d at 520.

Under Rule 9(b), allegations of "fraud or mistake" are subject to a heightened "particularity" pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."). To meet this threshold, a plaintiff must ordinarily "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d

Cir. 2012) (quoting *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004)).  In cases where no

specific statement is challenged as fraudulent, the plaintiff must set forth the "particulars" of the

alleged fraud, including "the time, place, particular individuals involved, and specific conduct at

issue." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198,

221 (S.D.N.Y. 2002) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).  Even when a

complaint raises fraud claims, however, every element of every claim need not necessarily meet

the Rule 9(b) standard.  With respect to RICO claims specifically, "a plaintiff must plead

predicate acts sounding in fraud or mistake according to the particularity requirement of Rule

9(b)." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014).  However, "for

other elements of a RICO claim—such as non-fraud predicate acts or . . . the existence of an

'enterprise'—a plaintiff's complaint need satisfy only the 'short and plain statement' standard of

Rule 8(a)." *Id.* (citing *McLaughlin v. Anderson,* 962 F.2d 187, 194 (2d Cir. 1992)); *see also*

*Hecht*, 897 F.2d at 26 n. 4).

In the relevant portion of its motion to dismiss, Triadou argues that particular factual

allegations fail to satisfy Rule 9(b).  Dkt. 86 at 25-27.  Specifically, Triadou challenges

allegations relating to: (1) Ablyazov and the Khrapunovs' underlying fraud; (2) the 2014

assignment agreement between Triadou and the Chetrit Entities; and (3) the sale of SDG to

Philippe Glatz.  *Id*. at 25-26.  The Court will consider the sufficiency of these factual allegations

in the context of the relevant § 1962 elements.

### A. Ablyazov and the Khrapunovs' Underlying Fraud

In two short parentheticals, Triadou argues that Almaty and BTA Bank have not alleged

with sufficient particularity the underlying frauds attributed to Ablyazov and Viktor Khrapunov.

*See* Dkt. No. 86 at 25-26. Triadou's theory, although not articulated, seems to be that if these underlying frauds are insufficiently alleged, Almaty and BTA Bank's allegations of Triadou's subsequent fraud and money laundering (predicate acts of racketeering) must fail. This argument is without merit, as Almaty and BTA Bank exhaustively detail the alleged frauds of Ablyazov and Viktor Khrapunov.[3]

With respect to Viktor Khrapunov, Almaty and BTA Bank allege three specific instances of "repeated[] and systematic[] use[ of] the powers of the office of the mayor to transfer public assets . . . to his family." Dkt. No. 49 ¶¶ 70, 72-75. For example, Almaty and BTA Bank claim that Viktor Khrapunov seized private land owned by Shadid Engineering LLP on August 25, 2003, sold that land to his wife's company one month later for approximately $105,000, and eventually had it sold to an unrelated third party for $2 million. *Id.* ¶ 75. The recitation of three specific instances of Viktor Khrapunov's fraud includes the necessary information about "the time, place, particular individuals involved, and specific conduct at issue" to satisfy Rule 9(b). *United Feature Syndicate*, 216 F. Supp. 2d at 221 (citing *Luce*, 802 F.2d at 54).

With respect to Ablyazov, Almaty and BTA Bank cite at length the findings of Justice Teare from a suit initiated against Ablyazov in the United Kingdom. Dkt. No. 49 ¶¶ 51-55. Relying on these findings, Almaty and BTA Bank allege that Ablyazov executed dozens of loans that allowed him to pocket over $2.4 billion of BTA Bank's funds. *Id.* Rather than merely describing these loans as "fraudulent," as Triadou claims, *see* Dkt. No. 86 at 25, Almaty and BTA Bank explain that Ablyazov caused large loans to be made to "companies owned or

---

[3] The Court also notes that Almaty and BTA Bank's money laundering allegations may not need to comply with Rule 9(b). *See Jus Punjabi, LLC v. Get Punjabi Inc.*, No. 1:14-CV-3318 (GHW), 2015 WL 2400182, at *7 (S.D.N.Y. May 20, 2015), *aff'd* 2016 WL 697401 (2d Cir. Feb. 22, 2016); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 510 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009); *Leung v. Law*, 387 F. Supp. 2d 105, 118 (E.D.N.Y. 2005). If so, RICO claims based on money laundering predicates could survive even if Almaty and BTA Bank failed to describe Ablyazov and the Khrapunovs' underlying frauds with quite the level of specificity required by Rule 9(b).

controlled" by him without disclosing his interest in those companies. Dkt. No. 49 ¶ 53. Because Almaty and BTA Bank allege that twenty such loans totaling $1,428,840,000 were made between March 2006 and August 2008, with even more loans totaling $1,031,263,000 made between November 4, 2008 and December 4, 2008, their complaint does not include the date and amount of each individual loan. *Id.* ¶¶ 53, 55. Triadou does not specifically challenge this aspect of Almaty and BTA Bank's allegations, *see* Dkt. No. 86 at 25-26, and the Court is not convinced that this information is necessary in light of the number of challenged loans and the specificity of other information about the loans. *See City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 545 (E.D.N.Y. 1987) ("To burden the complaint with specific allegations of hundreds of such instances would serve little purpose. . . ."). Nevertheless, Justice Teare's findings, cited by Almaty and BTA Bank, contain this additional information on some number of these individual loans. *See* Dkt. No. 118 Ex. 4 ¶¶ 77, 83. Because Almaty and BTA Bank's complaint "make[s] a clear, definite, and substantial reference to" those findings, they are deemed incorporated by reference in the complaint. *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). As a result, the Court is satisfied that Almaty and BTA Bank have adequately described when and where Ablyazov's alleged loan scheme took place, as well as its fraudulent character. *See Anschutz Corp.*, 690 F.3d at 108 (quoting *Rombach*, 355 F.3d at 170).

### B. The 2014 Assignment Agreement

In another parenthetical, Triadou argues that Almaty and BTA Bank have not adequately alleged the fraudulent nature of the 2014 assignment agreement between Triadou and the Chetrit Entities. Dkt. No. 86 at 26. This argument appears to target the "pattern of racketeering activity" element of civil RICO, as it concerns one of the predicate acts Almaty and BTA Bank

allege that Triadou committed. *See* Dkt. No. 49 ¶ 140(k). Again, this argument fails because

Almaty and BTA Bank's description of the fraudulent nature of the 2014 assignment agreement

is very detailed. Specifically, Almaty and BTA Bank allege that in response to a lawsuit filed in

California against members of the Ablyazov-Khrapunov Group, those individuals sought to

liquidate their U.S.-based assets "so that the funds could be removed from the United States and

hidden." Dkt. No. 49 ¶¶ 115-116. To that end, Triadou's director allegedly approached the

Chetrit Group and agreed to sell Triadou's interests in New York real estate for a "substantial

discount from the price originally paid" despite the fact that the interest had, in fact, appreciated

significantly. *See id.* ¶ 117. Almaty and BTA Bank further allege that the assignment agreement

was negotiated in May 2014 but executed in August 2014 for approximately $26 million. *Id.* ¶¶

119, 140(k). This thorough description of a below-market assignment motivated by a desire to

protect illicit assets from seizure sets forth "the time, place, particular individuals involved, and

specific conduct at issue" and thus satisfies Rule 9(b). *United Feature Syndicate*, 216 F. Supp.

2d at 221 (citing *Luce*, 802 F.2d at 54).

### C. The Sale of SDG to Philippe Glatz

Finally, Triadou argues that Almaty and BTA Bank's "allegations concerning the

purportedly fraudulent sale of SDG to Mr. Glatz are conclusory and vague." Dkt. No. 86 at 26.

This argument potentially implicates two elements of civil RICO: first, whether a pattern of

racketeering activity has been established; and second, whether Triadou has participated in the

relevant enterprise.

### 1. Pattern of Racketeering Activity

"[A] plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity' . . . .

[by] plead[ing] at least two predicate acts" of racketeering. *GICC Capital Corp. v. Tech. Fin.*

*Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995); *see also* 18 U.S.C. § 1961(5).  The "sham sale of SDG to Philippe Glatz" and related "fraudulent loan" are two of the relevant predicate acts described in the complaint.  Dkt. No. 49 ¶ 140(a), (b).  However, the complaint details twelve other predicate acts related to Triadou's investment of embezzled funds into New York real estate and subsequent sale of its property interests at below-market prices to remove its assets from the United States after the initiation of litigation in California.  *See id.* ¶¶ 93-119, 140(c)-(n).  Any deficiency in the sham sale allegations, then, do not prevent Almaty and BTA Bank from adequately pleading the requisite "pattern of racketeering activity" based on the other twelve predicate acts alleged in the complaint.  *See Madanes v. Madanes*, 981 F. Supp. 241, 253-54 (S.D.N.Y. 1997) (quoting *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995) (even if "numerous allegations fail[] to meet the requirement of Rule 9(b)," a RICO claim need to be dismissed if those allegations are not "essential to the sufficiency of the complaint" because there are other "adequate allegations").

### 2.  Participation

Because the alleged "sham sale" of SDG to Glatz is not a critical predicate act, the most salient aspect of the transaction is that it creates a "link between the Ablyazov/Khrapunov Group and the New York real estate investments."  Dkt. No. 88 at 29.  Triadou acknowledges as much in its motion, where it argues:

> [H]aving failed to properly plead that the sale of SDG to Mr. Glatz was fraudulent, or that Triadou is controlled by Ablyazov or the Khrapunovs, Almaty and BTA Bank cannot sufficiently plead that the post-sale investments made in New York fall under the umbrella of the purported schemes by Ablyazov and the Khrapunovs. *By failing to plead the predicate link between Triadou and the purported conspiracy* spearheaded by Ablyazov and the Khrapunovs with the requisite specificity, the RICO Crossclaims against Triadou should be dismissed.

Dkt. No. 86 at 27 (emphasis added).  In other words, the sale of SDG to Glatz and the

subsequent control of SDG and Triadou goes to Triadou's participation in the alleged scheme.

Dkt. No. 91 at 10.

   To "participate" in a RICO enterprise requires "*some* part in directing the enterprise's

affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Demonstrating participation is a

"relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *First Capital Asset*

*Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (citation omitted).  Because

Triadou's participation in the allegedly fraudulent scheme is not an element sounding in fraud,

allegations of participation need not comply with Rule 9(b).  *See D. Penguin Bros.*, 587 F. App'x

at 666 (citing *McLaughlin*, 962 F.2d at 194); *see also Hecht*, 897 F.2d at 26 n. 4.  As a result,

Almaty and BTA Bank need only "plead[] factual content that allows the court to draw the

reasonable inference" that Triadou participated in the alleged scheme even after the sale of SDG

to Glatz.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

   Viewed through this lens, the Court concludes that Almaty and BTA Bank have

adequately pleaded "the predicate link between Triadou and the purported conspiracy

spearheaded by Ablyazov and the Khrapunovs with the requisite specificity." Dkt. No. 86 at 27.

Almaty and BTA Bank have alleged that Ilyas Khrapunov, acting on behalf of Ablyazov and his

father, "continues to control SDG while holding himself out to mere a mere 'outside investor' to

the company." Dkt. No. 49 ¶ 92.  They further allege that Ilyas Khrapunov met with the Chetrit

Entities in 2012 on behalf of Triadou to negotiate its investments and "openly and repeatedly

discussed the criminal charges against the Ablyazov-Khrapunov Group and the efforts of the

governments of Switzerland and Kazakhstan to locate and seize the assets of the Ablyazov

Group." *Id.* ¶ 99.  Importantly, they allege that, in this meeting, "Ilyas Khrapunov acted on

behalf of SDG and Triadou, despite the Ablyazov-Khrapunov Group's purported sale of SDG a year prior." *Id.* These factual allegations about Ilyas Khrapunov's continued control over SDG and Triadou "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Triadou was a participant playing "*some* part in directing the enterprise's affairs" even after the sale of SDG to Glatz and with respect to the specific New York real estate transactions challenged here. *Reves*, 507 U.S. at 179.

Because Almaty and BTA Bank have adequately alleged that Triadou participated in the enterprise at issue here through the commission of at least two predicate acts of racketeering, the Court denies Triadou's motion to dismiss the RICO claims for failure to state a claim.

## V.     STATE CLAIMS

Next, Triadou argues that Almaty and BTA Bank's state claims should be dismissed on a variety of grounds. First, Triadou argues that all of Almaty and BTA Bank's state claims should be dismissed for failure to comply with Rule 9(b). Second, it argues that Almaty and BTA Bank's alter ego claim should be dismissed because New York law does not recognize such a claim. Third, Triadou argues that Almaty and BTA Bank's replevin claim should be dismissed because Triadou is not in possession of the relevant property. Finally, Triadou argues that Almaty and BTA Bank's constructive trust claim should be dismissed for failure to state a claim.

### A.  State Law Claims and Rule 9(b)

Triadou first argues that Almaty and BTA Bank's state law claims should be dismissed "because they are all premised on the . . . allegations that Triadou was fraudulently sold" to Glatz and those allegations "fail to satisfy Rule 9(b)'s heightened pleading standard." Dkt. No. 86 at 28. Contrary to Triadou's suggestion, none of the state law claims are directly premised on the allegedly fraudulent sale of SDG. For example, Almaty and BTA Bank's fraudulent transfer

allegations are based on "[t]he 2014 assignment of Triadou's interest in the Flatotel and Cabrini Medical Center" to the Chetrit Group, Dkt. No. 49 ¶ 171, while the unjust enrichment and conversion claims are based on Triadou's purchase of New York real estate with funds embezzled from Kazakhstan. *Id.* ¶¶ 181-185, 193-196. Insofar as Triadou has challenged the sufficiency of these factual allegations under Rule 9(b) in its arguments on the RICO claims, the Court has rejected those arguments.

As a result, the Court reads Triadou's argument about the sale of SDG in this context as referencing the link between Triadou and the Ablyazov-Khrapunov Group without which Triadou's conduct would not be fraudulent. In this sense, it is the Ablyazov-Khrapunov Group's continuing control over SDG and Triadou that is relevant, not the specific date that any sham sale may have occurred. The Court finds that Almaty and BTA Bank's detailed allegations of Ilyas Khrapunov's continued involvement in SDG and Triadou after the purported sale to Glatz, *see* Dkt. No. 49 ¶¶ 92-99, 116, are sufficient to allege, even under Rule 9(b), that Ablyazov and the Khrapunovs controlled Triadou during negotiations with the Chetrit Group throughout the relevant time period. As a result, Triadou's motion to dismiss Almaty and BTA Bank's state law claims for failure to comply with Rule 9(b) is denied.

### B. Alter Ego

Triadou first argues that there is no "alter ego" cause of action under New York law. Dkt. No. 86 at 28 n.21. New York courts have repeatedly held that "an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993); *see also Ferro Fabricators, Inc. v. 1807-1811 Park Ave. Dev. Corp.*, 11 N.Y.S.3d 548, 550 (1st Dep't 2015) ("[A]lter-ego liability is not an independent cause of action."). However,

28

"veil-piercing actions may be initiated as supplementary special proceedings under New York

Civil Practice Law and Rules (CPLR) § 5225(b), rather than as plenary actions." *Trust v.*

*Kummerfeld*, 153 F. App'x 761, 762-63 (2d Cir. 2005) (citing *Morris*, 623 N.E.2d at 1160).  An

alter ego claim may proceed in this posture if "the corporation has already been held liable and a

third party brings a[n] . . . action seeking to enforce the judgment against its owners." *Am.*

*Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 522 (S.D.N.Y. 2014).

Almaty and BTA Bank's alter ego claim against Triadou does not meet these requirements.

First, their complaint does not include any § 5225(b) claim to enforce a judgment.  Second, the

judgment they cite in support of their alter ego claim is a judgment against Ablyazov in his

individual capacity, not any corporation.  Dkt. No. 88 at 34 n.14.  As a result, there is no basis

under New York law for Almaty and BTA Bank to bring a veil-piecing action against Triadou

and that claim is dismissed.

### C. Replevin

"[A] cause of action sounding in replevin must establish that the defendant is in

possession of certain property of which the plaintiff claims to have a superior right." *Batsidis v.*

*Batsidis*, 9 A.D.3d 342, 343 (2d Dep't 2004).  Almaty and BTA Bank's replevin claim seeks the

return of interests in the Flatotel and Carbini Medical Center projects.  *See* Dkt. No. 49 ¶¶ 205-

206.  Almaty and BTA Bank allege in their complaint that Triadou has released its interest in the

Cabrini Medical Center and assigned its interest in the Flatotel project back to the Chetrit

Entities.  Dkt. No. 49 ¶¶ 119, 126.  As a result, Triadou is not in possession of the property

interests subject to the replevin claim.  *See Batsidis*, 9 A.D.3d at 343.  For this reason, Triadou

argues that this claim against it must be dismissed.  Dkt. No. 86 at 28 n.21.  Almaty and BTA

Bank do not dispute that Triadou is not in possession of the property, instead responding that

replevin is nevertheless appropriate because they "have attacked [the 2014] assignment as a fraudulent conveyance." Dkt. No. 88 at 34 n.14.

This argument, for which Almaty and BTA Bank provide no authority, fails because a replevin claim generally requires that the defendant be "currently in . . . possession" of the property. *Grosz v. Museum of Modern Art*, 403 F. App'x 575, 576 (2d Cir. 2010); *see also Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F. Supp. 2d 567, 607 (S.D.N.Y. 2002), aff'd in part, vacated in part on other grounds, 380 F.3d 624 (2d Cir. 2004) ("Plaintiff has not established . . . that [the items in question] are *currently* in defendants' possession.") (emphasis added). Almaty and BTA Bank have not identified, and the Court has not found, any case in which this requirement has been relaxed because a plaintiff challenged a transfer of property as a fraudulent conveyance. Because Almaty and BTA Bank's complaint alleges that Triadou is not currently in possession of the relevant interests, their replevin claim against Triadou must be dismissed.

### D. Constructive Trust

Triadou advances two arguments to challenge Almaty and BTA Bank's constructive trust claim. First, Triadou argues that a "constructive trust is a remedy, not a cause of action . . . ." Br. at 28 n.21 (citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010)). Numerous New York Appellate Division decisions have repeatedly referred to constructive trust as a claim or cause of action under New York law. *See Kohan v. Nehmadi*, 14 N.Y.S.3d 4, 5 (1st Dep't 2015) ("[P]laintiff's causes of action for an accounting and a constructive trust were not time-barred."); *Evans v. Winston & Strawn*, 757 N.Y.S.2d 532, 534 (1st Dep't 2003) ("Plaintiffs' claim for a constructive trust was properly dismissed. . . ."); *Matter of Sakow*, 631 N.Y.S.2d 637, 639 (1st Dep't 1995) ("[T]he statute of limitations had run on the

cause of action for constructive trust. . . ."). Other courts in this circuit have followed suit even while recognizing that constructive trust is also an "equitable remedy." *Alterseekers, Inc. v. BrandForce SF, LLC*, No. CV 12-5392 (GRB), 2015 WL 5719759, at *11-*12 (E.D.N.Y. Sept. 29, 2015); *Berman v. Rotterman*, No. 10-CV-1044A (RJA), 2011 WL 2149431, at *5 n.1 (W.D.N.Y. June 1, 2011); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 221-22 (S.D.N.Y. 2010). Whether a constructive trust is an "independent theory of liability" or "a request for a particular equitable remedy," the Court finds that it is properly put forward in the complaint and will not dismiss it on this basis alone.

Next, Triadou argues that the claim must be dismissed because the requisite fiduciary duty is lacking. Dkt. No. 86 at 28 n.21. Under New York law, four factors govern the imposition of a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (quoting *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)). However, "the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992). In fact, at least one court in this circuit has specifically acknowledged that "the victim of the theft . . . may be able to recover the property purchased with the stolen money . . . by virtue of a constructive trust imposed on the proceeds held by the thief or embezzler." *SEC v. Universal Express, Inc.*, No. 04-CV-2322 (GEL), 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008) (Lynch, J.) (internal quotations and alterations omitted) (collecting cases). As a result, the lack of a fiduciary duty between Almaty, BTA Bank, and Triadou standing alone does not require dismissal of Almaty and BTA Bank's constructive trust request and Triadou's motion to dismiss on that basis is

denied. *See Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978) (a constructive trust may be imposed "even in the absence of a confidential or fiduciary relation").

## VI.   EXTRATERRITORIALITY

Finally, Triadou argues that Almaty and BTA Bank's RICO claims are impermissibly extraterritorial. Dkt. No. 86 at 29. This argument rests solely on the claim that *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014) was wrongly decided. Dkt. No. 86 at 29-32 (conducting the extraterritoriality analysis relying on "pre-*RJR Nabisco* precedent in the Second Circuit"). On June 20, 2016, the Supreme Court reversed and remanded the Second's Circuit decision in *RJR Nabisco*. *See RJR Nabisco Inc., v. European Cmty.*, No. 15-138, slip. op. at 28 (U.S. June 20, 2016). In light of this development, the Court invites additional briefing as to whether and how the Supreme Court's decision in *RJR Nabisco* affects this action. Triadou's briefing, not to exceed 10 pages, shall be due on or before July 6, 2016. Almaty and BTA's responsive briefing, not to exceed 10 pages, shall be due on or before July 20, 2016. Triadou's reply briefing, not to exceed 5 pages, shall be due on or before July 27, 2016.

## VII.   CONCLUSION

For the foregoing reasons, Almaty and BTA Bank's motion for joinder is granted and BTA Bank, Mukhtar Ablyazov, Viktor Khrapunov, and Ilyas Khrapunov are joined in this action. Triadou's motion to dismiss is granted with respect to Almaty and BTA Bank's alter ego and replevin claims, but denied in all other respects.

The Court will schedule an initial pretrial conference by separate order.

This resolves Dkt. Nos. 47, 84.

SO ORDERED.

Dated: June _____, 2016
      New York, New York

ALISON J. NATHAN
United States District Judge