UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CF 135 FLAT LLC, CF 135 WEST MEMBERS
LLC, and THE CHETRIT GROUP, LLC,

        Interpleader Plaintiffs,

        -against-

TRIADOU SPV S.A.  and CITY OF ALMATY, a
foreign city,

        Interpleader Defendants.

No. 15-CV-05345(AJN)

CITY OF ALMATY, KAZAKHSTAN and BTA
BANK JSC,

        Crossclaim Plaintiffs,

        -against-

MUKHTAR ABLYAZOV, VIKTOR
KHRAPUNOV, ILYAS KHRAPUNOV, and
TRIADOU SPV S.A.,

        Crossclaim Defendants.

## MEMORANDUM IN SUPPORT OF CROSSCLAIM DEFENDANTS
## VIKTOR AND ILYAS KHRAPUNOVS' MOTION TO DISMISS

John J. Kenney
John P. Curley
Kathleen L. Lowden
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone:  212-689-8808

*Counsel for Crossclaim Defendants Viktor
Khrapunov and Ilyas Khrapunov*

## <u>TABLE OF CONTENTS</u>

<u>TABLE OF AUTHORITIES</u> ........................................................................................ iii

<u>PRELIMINARY STATEMENT</u> ..................................................................................... 1

<u>CROSSCLAIM ALLEGATIONS</u> ................................................................................. 3

<u>ARGUMENT</u> ............................................................................................................... 4

I.    THE KHRAPUNOVS ARE NOT SUBJECT TO PERSONAL
      JURISDICTION IN NEW YORK. ....................................................................... 4

      A.    Viktor Khrapunov Is Not Subject to Personal Jurisdiction in New York. .............. 4

            1.    There Is No Long-Arm Jurisdiction Over Viktor Khrapunov. ................... 4

            2.    There Is No Basis to Find Agency Jurisdiction Over Viktor Khrapunov.... 6

            3.    Subjecting Viktor Khrapunov to Jurisdiction Would Be
                  Inconsistent with Due Process. ................................................................ 8

                  a. Viktor Khrapunov Has Had No Contact with New York. ..................... 8

                  b. Jurisdiction Over Viktor Khrapunov Would Be Unreasonable. ............. 9

      B.    The Court Should Permit Ilyas Khrapunov to
            Renew a Jurisdiction Defense after Discovery .................................................. 11

II.   THE RICO CLAIMS SHOULD BE DISMISSED IN THEIR
      ENTIRETY OR, IN THE ALTERNATIVE,
      AS AGAINST VIKTOR KHRAPUNOV ............................................................. 12

      A.    BTA/Almaty Have Not Stated a Valid RICO Claim Against Viktor Khrapunov. 12

      B.    The RICO Conspiracy Claim Against Viktor Khrapunov Also Fails ................... 14

      C.    The RICO Claims Are Time-Barred as to Viktor Khrapunov. ............................. 15

III.  THE STATE AND COMMON LAW CLAIMS SHOULD BE DISMISSED ................ 15

      A.    The Alter Ego and Replevin Claims Were Previously Dismissed ........................ 15

      B.    The Conversion, Unjust Enrichment, and Constructive
            Trust Claims Are Time-Barred. ....................................................................... 16

            1.    Conversion. ........................................................................................... 16

            2.    Unjust Enrichment and Constructive Trust .............................................. 17

C.      BTA/Almaty's Allegations Do Not State Fraudulent
        Conveyance Claims Against the Khrapunovs.......................................................19

D.      The CPLR § 5239 Claim Does Not State a
        Cause of Action against the Khrapunovs.............................................................20

IV.     A *FORUM NON CONVENIENS* DISMISSAL IS
        APPROPRIATE HERE IN LIGHT OF ADDITIONAL FACTS THAT
        WERE NOT AVAILABLE TO THE COURT IN PRIOR BRIEFING. ...........................20

A.      The Deference Owed to BTA/Almaty's Choice of Forum
        Is Undermined By Their Pursuing Claims in Switzerland..................................20

B.      Switzerland Is a Suitable Alternative Forum. ......................................................21

C.      Additional Facts Tip the Balance of Private and
        Public Interest Factors in Favor of Dismissal. ....................................................21

V.      THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION IN THIS CASE. ......................................................................................23

CONCLUSION....................................................................................................................................25

# TABLE OF AUTHORITIES

*Alfadda v. Fenn*, 159 F.3d 41 (2d Cir. 1998) ........................................................................ 10, 22

*Allstate Life Ins. Co. v. Linter Group, Ltd.*, 994 F.2d 996 (2d Cir. 1993) ........................... 10, 22

*Alvaro v. Faracco*, 85 A.D.3d 1072, 927 N.Y.S.2d 366 (2d Dep't 2011) ................................ 19

*Apollon Waterproofing & Restoration, Inc. v. Bergassi,*
2003 WL 1397394 (S.D.N.Y. Mar. 20, 2003) ........................................................................ 14

*Arrow Fin. Servs., L.L.C. v. Massil,*
2009 WL 348553 (E.D.N.Y. Feb. 11, 2009) ........................................................................... 23

*Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102 (1987) ..................................... 9, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) .......... 5

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ....................................................... 5

*Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259 (1937) ................................................................ 17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................. 8

*CAMOFI Master LDC v. Riptide Worldwide, Inc.,*
2012 WL 6766767 (S.D.N.Y. Dec. 17, 2012) ........................................................................ 19

*Congregacion de la Mision Provincia de Venez. v. Curi,*
978 F. Supp. 435 (E.D.N.Y. 1997) ........................................................................................... 7

*De Weerth v. Baldinger*, 836 F.2d 103 (2d Cir. 1987) ............................................................ 16

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) .................................................................... 13

*Emerald Asset Advisors v. Schaffer*, 895 F. Supp. 2d 418 (E.D.N.Y. 2012) ....................... 6, 12

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.,*
400 F. App'x 611 (2d Cir. 2010) ............................................................................................. 17

*First Capital Asset Mgmt. v. Brickellbush, Inc.,*
218 F. Supp. 2d 369 (S.D.N.Y. 2002) ...................................................................................... 7

*First Capital Asset Mgmt. v. Brickellbush, Inc.,*
219 F. Supp. 2d 576 (S.D.N.Y. 2002) ...................................................................................... 7

*Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527 (S.D.N.Y. 2014) ............................. 22

*Flynn v. Nat'l Asset Mgmt. Agency/Nat'l Asset Mgmt. Ltd.,*
303 F.R.D. 448 (S.D.N.Y. 2014) ............................................................................................. 22

*Friedman v. Friedman*, 125 A.D.2d 539, 509 N.Y.S.2d 617 (2d Dep't 1986) .......................................... 19

*Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728 (S.D.N.Y. 1993) ..................................................... 19

*Gerstle v. Nat'l Credit Adjusters, L.L.C.*, 76 F. Supp. 3d 503 (S.D.N.Y. 2015) .................................... 7, 8

*Gold Sun Shipping Ltd. v. Ionian Transp. Inc.*,
245 A.D.2d 420, 666 N.Y.S.2d 677 (2d Dep't 1997) ...................................................................... 18

*Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180 (2d Cir. 2006) ............................................................... 19

*Graham v. Select Portfolio Servicing, Inc.*,
2016 WL 215237 (S.D.N.Y. Jan. 18, 2016) .................................................................................. 16

*Guardino v. Am. Sav. & Loan Asso.*, 593 F. Supp. 691 (E.D.N.Y. 1984) .............................................. 6

*Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000) .................................................... 22-23

*Hamilton v. Bd. of Educ. of the Jordan-Elbridge Cent. Sch. Dist.*,
2012 WL 2402884 (N.D.N.Y. June 25, 2012) .............................................................................. 23

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ................................................ 14

*Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826 (2002) ........................................ 23

*In re Arab Bank, Public Ltd. Co. Alien Tort Statute Litig.*,
808 F.3d 144 (2d Cir. 2015) ................................................................................................... 23

*In re Fischer*, 308 B.R. 631 (Bankr. E.D.N.Y. 2004) ...................................................................... 17

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945) .......................................................................... 4, 8

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) ....................................................... 20, 21

*Jordan Inv. Co. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682 (S.D.N.Y. 2001) ............................... 14

*Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426 (S.D.N.Y. 2009) .................................................. 17

*Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255 (2d Cir. 2006) ........................................... 24

*Koch v. Christie's Int'l Public Ltd.*, 699 F.3d 141 (2d Cir. 2012) .................................................... 14

*LaChapelle v. Torres*, 1 F. Supp. 3d 163 (S.D.N.Y. 2014) ...................................... 5, 6, 7, 8, 10

*Lawn Doctor, Inc. v. Branon*, 2008 WL 2064477 (D.N.J. May 14, 2008) ........................................... 10

*Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975) ..................................................... 8

*Lust v. Burke*, 876 F. Supp. 1474 (D. Md. 1994) ......................................................................... 7

iv

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.,*
693 F. Supp. 2d 387 (S.D.N.Y. 2010) ........................................................ 17, 18

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) .......................................................... 8, 9, 10, 11

*Miksic v. TD Ameritrade Holding Corp.,*
2013 WL 1803956 (S.D.N.Y. Mar. 7, 2013) ............................................ 24

*Minella v. Restifo*, 124 A.D.3d 486 (1st Dep't 2015) .............................. 5

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ................... 23

*Norris v. Grosvenor Mktg., Ltd.*, 803 F.2d 1281 (2d Cir. 1986) ............. 17

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries,*
2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) ......................................... 9

*Ocean Shelf Trading, Inc. v. Flota Mercante Grancolombiana S.A.,*
638 F. Supp. 249 (S.D.N.Y. 1986) ........................................................ 22

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.,*
2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ............................................ 11

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.,*
2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ...................................... 11-12

*Rattenni v. Cerreta*, 285 A.D.2d 636, 728 N.Y.S.2d 401 (2d Dep't 2001) ............. 18

*RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090 (2016) ..................... 12

*Salinas v. United States*, 522 U.S. 52 (1997) ....................................... 14

*Samuels v. Greenberg*, No. 14-CV-04401, 2015 WL 5657565 (E.D.N.Y. Sept. 23, 2015) ............. 17-18

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) ......................... 10, 22

*Sporn v. McA Records*, 58 N.Y.2d 482 (1983) ..................................... 16

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015) ......... 5

*Town of Mamakating, v. Lamm*, No. 15-3182-CV,
2016 WL 3188862 (2d Cir. June 8, 2016) ............................................. 14

*Valencia ex rel. Franco v. Sung M. Lee*, 316 F.3d 299 (2d Cir. 2003) ............. 23-24

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ........................................... 8

*Wallace Wood Props. v. Wood*, 117 F. Supp. 3d 493 (S.D.N.Y. 2015) ......... 16

*Wallace Wood Props. v. Wood*, 2015 WL 7779282 (S.D.N.Y. Dec. 2, 2015) ......... 16

*Weisman v. Rosenker*, 1985 WL 182 (S.D.N.Y. Jan. 10, 1985) ............................ 16

*Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227 (S.D.N.Y. 1999) ............................ 8-9, 11

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) ............................ 12, 13, 24

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................ 8

*Zahl v. Kosovsky*, No. 08 CIV. 8308, 2011 WL 779784 (S.D.N.Y. Mar. 3, 2011) ............................ 15

## **Statutes**

N.Y. C.P.L.R. 5239 ............................ 2, 19

N.Y. C.P.L.R. 302(a)(1) ............................ 5

N.Y. C.P.L.R. 302(a)(2) ............................ 5

N.Y. C.P.L.R. 302(a)(3) ............................ 5

N.Y. C.P.L.R. 302(a)(4) ............................ 6

N.Y. C.P.L.R. 302(a) ............................ 6

N.Y. C.P.L.R. 214(3) ............................ 16

18 U.S.C. § 1962(c) ............................ 12

Crossclaim Defendants Viktor and Ilyas Khrapunov (the "Khrapunovs") respectfully submit this memorandum of law in support of their motion to dismiss BTA Bank and the City of Almaty's (together, "BTA/Almaty") Crossclaims.

## PRELIMINARY STATEMENT

The Crossclaims against the Khrapunovs are Almaty's latest salvo in its global campaign against the Khrapunovs.  This case is in New York because it arises from an alleged money laundering scheme involving New York real estate.  There are very few allegations tying the New York scheme to the alleged Kazakhstan corruption that caused BTA's and Almaty's injuries.  Almaty claims it was injured when Viktor Khrapunov used his position as the Mayor of Almaty to sell off public property for his own gain.  The Khrapunovs dispute these assertions, but they move here to dismiss the Crossclaims because the allegations, even if true, do not state valid claims.  Viktor's mayoralty ended in 2004, but the U.S. money laundering scheme is not alleged to have begun until 2011 at the earliest.  There are no allegations in the Complaint that Viktor directed, controlled, played a part in, or even knew about the alleged conspiracy.

These shortcomings pervade BTA/Almaty's pleading and require dismissal on several grounds.  As a threshold issue, BTA/Almaty have not pled a basis for subjecting Viktor to personal jurisdiction in New York.  He is a Kazakh national living in Switzerland and he has no ties to New York at all.  BTA/Almaty apparently premise jurisdiction over Viktor on the alleged activities of his son, Ilyas Khrapunov, but their conclusory allegations regarding Viktor's role in a money laundering scheme fall far short of the  facts required to impute one defendant's conduct to another.  In addition, BTA/Almaty have not pled a plausible case that Viktor is liable for RICO and thus all of the RICO claims must be dismissed as to him.  (We do not repeat in this motion the arguments, set forth in the parties' earlier briefing, why BTA/Almaty's RICO claims should be dismissed in their entirety for failure to allege a domestic injury.)

These are not the only defects in the Crossclaims. BTA/Almaty's replevin and alter ego claims against the Khrapunovs should be dismissed for the same reasons they were dismissed against Triadou. The conversion claim is time-barred because it seeks damages for what Viktor allegedly did as Almaty's mayor more than ten years ago. The unjust enrichment and constructive trust claims should be dismissed because they are effectively the same time-barred conversion claim. The fraudulent conveyance claims, which seek to set aside the transfer of an interest in a real estate project, cannot survive against the Khrapunovs because these claims are properly brought only against the party who receives the fraudulent transfer—here, the Chetrit Group, not the Khrapunovs. Finally, the claim to set aside Triadou's state court judgments under C.P.L.R. § 5239 should be dismissed because the Khrapunovs are not parties to those judgments.

In addition, the Court should dismiss this case on *forum non conveniens* grounds in favor of adjudicating any remaining claims in Switzerland. We recognize that the Court previously denied Triadou's *forum non conveniens* motion, but there are additional facts that weigh heavily in favor a dismissal of the Khrapunovs—who were not parties to the case during the earlier briefing—that were not previously brought to the Court's attention.

*One*, Switzerland is a suitable alternative forum because, in addition to the reasons Triadou identified in its briefing on the subject, the Khrapunovs consent to having the case heard in Switzerland and, if the case is dismissed, they would waive any defenses based on statutes of limitations for the claims asserted here.

*Two*, the interest factor balancing tips toward dismissal because neither Viktor nor Ilyas Khrapunov can travel to the United States to defend himself in person in this case. Viktor has sought political asylum in Switzerland and has been required by the Swiss government to surrender his travel documents to the authorities. Ilyas's cross-border travel is also constrained

because of the potential for his arrest and possible extradition to Kazakhstan, where he would face a criminal justice system that has been criticized for corruption, human rights abuses, and a lack of due process in its judicial system.

*Three*, the interest balancing is tipped further toward dismissal in light of the scope and breadth of litigation ongoing in Switzerland. Almaty is pursuing civil claims against Viktor and Ilyas, among others, and as recently as this past weekend served notice on Ilyas's sister and brother-in-law in California that it will pursue claims against them in Switzerland as well. There are also complaints implicating Almaty—or more precisely, the Kazakhstan government—in Switzerland: several members of the Khrapunov family (including Viktor and Ilyas) have filed complaints with the Swiss criminal authorities related to surveillance and computer hacking that they suspect can be traced to private investigative firms retained by the Kazakhstan government.

Finally, the Court should decline supplemental jurisdiction should only state law claims remain.

## CROSSCLAIM ALLEGATIONS

BTA/Almaty allege, in relevant part, that Viktor Khrapunov used his position as the Mayor of Almaty, Kazakhstan to sell public assets through fraudulent means for his own profit. Crossclaims ¶ 21. Viktor served as mayor from 1997 through 2004, and the dates for some of the fraudulent sales are given as 2000, 2001, and 2003. *Id.* ¶¶ 72-75. At some point (no date is specified), Viktor transferred $300 million in laundered money to Switzerland. *Id.* ¶ 78. He left Kazakhstan for Switzerland in 2007. *Id.* ¶ 83.

BTA/Almaty claim that beginning four years later, in 2011 and 2012, the "Ablyazov-Khrapunov Group embarked on a scheme" to hide ill-gotten assets using United States real estate. Crossclaims ¶ 87. BTA/Almaty identify Ilyas Khrapunov as "orchestrat[ing]" the alleged scheme (*id.* ¶ 22) including through meetings with Joseph Chetrit, a New York real estate

3

developer, *e.g., id.* at ¶¶ 22, 97.   Although the "Ablyazov-Khrapunov Group" is defined as Triadou, Viktor and Ilyas Khrapunov, and Mukhtar Ablyazov (Crossclaims at 4), nowhere in the operative allegations do BTA/Almaty allege that Viktor directed, controlled, participated in, or was even aware of the supposed plan.

## ARGUMENT

## I.   THE KHRAPUNOVS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.

There is no suggestion that the Khrapunovs—Kazakh nationals living in Switzerland—are subject to general personal jurisdiction in New York, and BTA/Almaty rely instead on allegations that attempt to show the Khrapunovs are subject to specific jurisdiction.   *See* Crossclaims ¶ 49.     These allegations are unavailing as to Viktor Khrapunov because BTA/Almaty have not pled facts sufficient to invoke New York's long-arm statute, and even if they had, jurisdiction would not comport with due process—*i.e.*, it would be inconsistent with "traditional notions of fair play and substantial justice."   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).   Specific personal jurisdiction as to Ilyas Khrapunov is predicated on allegations that he was part of the illegal conspiracy involving New York real estate.   He denies these allegations and requests permission to address a jurisdiction defense after discovery.

### A.   Viktor Khrapunov Is Not Subject to Personal Jurisdiction in New York.

Viktor Khrapunov is not subject to jurisdiction under New York's long-arm statute because the Crossclaims contain no allegations that Viktor was involved in New York-related conduct.

### 1.   There Is No Long-Arm Jurisdiction Over Viktor Khrapunov.

BTA/Almaty's allegations do not satisfy any of the four ways a plaintiff can obtain jurisdiction under New York's long-arm statute:

**C.P.L.R. § 302(a)(1)**.  Viktor is not alleged to have transacted any business or contracted to supply goods or services here.  *E.g.*, *Minella v. Restifo*, 124 A.D.3d 486, 486, 3 N.Y.S.3d 322, 323 (1st Dep't 2015).

**C.P.L.R. § 302(a)(2)**.  Viktor is not alleged to have committed a tortious act within New York—indeed, Viktor is not alleged to have ever been present in New York.  *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014) (Nathan , J.) (noting that Section 302(a)(2) generally requires that the defendant be "physically within New York State" when he commits the tort).  Nor are BTA/Almaty's conclusory assertions that Viktor was involved in a New York money laundering scheme sufficient to establish jurisdiction over him because BTA/Almaty have not identified specific facts showing that Viktor had knowledge or control over the alleged New York transactions (*see* Part I.A.3, *infra*).

**C.P.L.R. § 302(a)(3)**.  Viktor is not alleged to have committed a tortious act outside the state that caused an injury in New York because any injury that he allegedly caused happened in Kazakhstan, not New York.  Courts applying this provision use a "situs-of-injury test" that locates the "original event which caused the injury."  *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 806 (S.D.N.Y. 2015); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999).  The case against Viktor arises from alleged corruption while he was the mayor of Almaty, and any injury necessarily happened there, not in New York.  Additionally, Viktor is not alleged to have derived substantial revenue from interstate or international commerce, which is a requirement for this prong of the long-arm statute.  *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012).

**C.P.L.R. § 302(a)(4)**. Viktor is not alleged to have owned, used, or possessed any real property in New York.  *Guardino v. Am. Sav. & Loan Ass'n of Florida*, 593 F. Supp. 691, 695 (E.D.N.Y. 1984).

### 2. There Is No Basis to Find Agency Jurisdiction Over Viktor.

In certain cases, jurisdiction under C.P.L.R. § 302(a) can extend to out-of-state individuals who, although not themselves physically present in New York, are deemed responsible for an injury in New York based on agency principles.  *See LaChapelle*, 1 F. Supp. 3d at 169.  This theory does not apply to Viktor Khrapunov, however, because BTA/Almaty have not alleged "specific facts warranting the inference" that Viktor was a member of an agreement or a conspiracy that directed activities toward New York.  *See LaChapelle*, 1 F. Supp. 3d at 170; *Emerald Asset Advisors*, 895 F. Supp. 2d at 431.   This requires allegations not just that a conspiracy existed, but also that the conspiracy would affect New York: a plaintiff must allege that "(1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  *LaChapelle*, 1 F. Supp. 3d at 170; *Emerald Asset Advisors*, 895 F. Supp. 2d at 432.  BTA/Almaty's allegations fall short of this showing.

BTA/Almaty have not alleged that Viktor had any role in the alleged scheme to launder money in New York real estate.   Their allegations as to Viktor are confined to activity in Kazakhstan through 2004 (Crossclaims ¶¶ 66-76), but as this conduct did not take place in New York, it cannot constitute the "primary tort" on which to base New York long-arm conspiracy jurisdiction.  *LaChapelle*, 1 F. Supp. 3d at 169 (agency jurisdiction requires tort committed in New York); *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015)

(agency jurisdiction requires showing that defendant exercised control over agent who engaged in New York conduct).

BTA/Almaty try to link Viktor to the claims in this case through his son, Ilyas, but family ties, without more, do not give rise to an inference that Viktor was involved in any New York activity. *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394 and 399 (S.D.N.Y. 2002), *on reconsideration*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002), *aff'd sub nom. First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) (conclusory allegations of domination and control insufficient to confer co-conspirator personal jurisdiction over mother and uncle of primary defendant); *see also* C*ongregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997) (declining to infer existence of RICO agreement based on family relationships or on fact that family members personally benefitted from scheme); *Lust v. Burke*, 876 F. Supp. 1474, 1482 (D. Md. 1994) (plaintiffs "must do more than merely rely on the familial relationship" to state RICO claim against defendant's wife and son).

BTA/Almaty allege that the money laundering scheme began, at the earliest, in 2011. There are no factual allegations as to Viktor after 2007. There are no claims whatsoever that Viktor directed or knew about the alleged New York activity, nor are there specific facts that plausibly show Viktor "had an awareness of the effects of the activity in New York," or that the New York activity was done at his behest, on his behalf, or under his control. Absent these, BTA/Almaty cannot establish jurisdiction over him. *LaChapelle*, 1 F. Supp. 3d at 170; *First Capital Asset Mgmt., Inc.*, 218 F. Supp. 2d at 395 (no conspiracy jurisdiction absent specific factual allegations regarding defendant's control or domination of in-state tortious acts); *Gerstle*, 76 F. Supp. 3d at 510 (plaintiffs must sufficiently detail each defendant's conduct so as to

persuade court that defendant was "primary actor" in specific matter in question); *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975) ("bland assertion of conspiracy or agency is insufficient to establish jurisdiction").

### 3. Subjecting Viktor to Jurisdiction Would Be Inconsistent with Due Process.

Even if Viktor fell within New York's long-arm statute, subjecting him to personal jurisdiction in this case would be inconsistent with due process, which requires both that (1) a defendant has "certain minimum contacts" with the relevant forum, and (2) the exercise of jurisdiction is reasonable under the circumstances. *LaChapelle*, 1 F. Supp. 3d at 178; *see also Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Neither requirement is satisfied here.

### a. Viktor Khrapunov Has Had No Contact with New York.

As discussed above, BTA/Almaty have not alleged that Viktor has had any contact with New York, much less have they alleged that Viktor has purposefully availed himself "of the privilege of conducting activities" here such that he ought to be haled into a New York court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Minimum contacts are required so "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (explaining that to satisfy due process, the defendant's "suit-related conduct must create a substantial connection with the forum State"); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Viktor's lack of New York contacts or activity makes it unreasonable for him to be subject to jurisdiction here. *See Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 234 (S.D.N.Y. 1999), *aff'd sub nom. Whitaker v. Am. Telecasting, Inc.*,

8

261 F.3d 196 (2d Cir. 2001) (complete absence of minimum contacts precludes court from exercising jurisdiction).

      **b.**      **Jurisdiction Over Viktor Khrapunov Would Be Unreasonable.**

Even if Viktor had any contacts with the forum, the exercise of personal jurisdiction here would be unreasonable because the burden of forcing Viktor—who is not permitted to travel here to defend himself in New York—outweighs any interest in adjudicating these claims here.  The import of the "reasonableness" inquiry varies inversely with the strength of the "minimum contacts" showing—a strong (or weak) showing by the plaintiff on "minimum contacts" reduces (or increases) the weight given to "reasonableness."  *Metro. Life Ins.*, 84 F.3d at 568–69 (citing *Burger King*, 471 U.S. at 477).  Where, as here, Viktor's contacts with New York are weak (at best), the reasonableness inquiry is especially meaningful.  *See id.*

On balance, the five factors courts use to consider whether jurisdiction would be reasonable weigh against jurisdiction in this case.  The first factor—the burden that the exercise of jurisdiction would impose on the defendant—weighs heavily against subjecting Viktor to jurisdiction because he cannot appear personally to defend himself in New York.  *See Metro. Life Ins.*, 84 F.3d at 568.  The Supreme Court has held that forcing a non-US defendant to travel thousands of miles and to submit its dispute to foreign nation's judicial system imposes a "severe burden."  *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987) (exercise of personal jurisdiction would be unreasonable); *see also Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03 CIV. 1681, 2004 WL 2199547, at *16 (S.D.N.Y. Sept. 29, 2004) (Peruvian bank would bear heavy burden if it was required to defend action in New York).  The burden in this case is especially severe:  Viktor has surrendered his passport to Swiss authorities in connection with his political asylum request and is thus not able to travel to defend the case.  Ilyas Khrapunov, his son and a chief witness for his defense, also

lives in Switzerland.  He, too, is unable to travel because to do so would risk arrest and possible extradition to Kazakhstan, where he would face a criminal justice system with a history of corruption and human rights abuses.  Exhibit A to the Declaration of John P. Curley ("Curley Decl."), U.S. Dep't of State, "Kazakhstan 2015 Human Rights Report," at 6 (updated May 18, 2016) ("Corruption was evident at every stage of the judicial process."); *id.* at 8 ("Human rights and international observers noted investigative and prosecutorial practices that emphasized a confession of guilt over collection of other evidence …. Courts generally ignored allegations by defendants that officials obtained confessions by torture or duress."); *cf. Lawn Doctor, Inc. v. Branon*, 2008 WL 2064477, at *9 (D.N.J. May 14, 2008) (finding jurisdiction because, among other reasons, no evidence that the defendant was unable to travel to the forum).

Courts recognize that live testimony is critical in fraud cases, and the Khrapunovs would be severely prejudiced if they could not participate directly in their defense.  *See generally Alfadda v. Fenn*, 159 F.3d 41, 48 (2d Cir. 1998) (where fraud is alleged, live testimony necessary in order to assess witnesses' demeanor);  *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993) (same); *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) (where  "crux" of case is whether  party is "swindler" lack of live testimony would be " very serious handicap").

The remaining reasonableness factors are either neutral or weigh slightly against jurisdiction.  In addition to the burden on the defendant, courts consider: the interests of the forum state in adjudicating the case; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the states in furthering substantive social policies. *LaChapelle*, 1 F. Supp. 3d at 179; *Metro. Life Ins.*, 84 F.3d at 568.  New York's interest in

adjudicating a case that principally arises from alleged wrongs committed by Kazakh defendants against Kazakh plaintiffs in Kazakhstan is outweighed by the burden on the Khrapunovs. *See Metro. Life Ins.*, 84 F.3d at 574 (fact that all parties were from out of state weighed heavily against reasonableness of exercise of personal jurisdiction).   The third and fourth factors, Almaty and BTA's interest in obtaining convenient and effective relief and the efficient administration of justice, tip against jurisdiction. Almaty and BTA are not New York residents, and most of the evidence and witnesses related to the underlying corruption allegations are located outside the U.S. *Id.* at 574.   Finally, no social policies of any state will be furthered by permitting the case against the Khrapunovs to be heard in New York because it involves the non-U.S. activities of non-U.S. parties. *Id.* at 575.

The burden that exercising jurisdiction over Viktor would impose should be given particular weight in this case.  "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115.  "[T]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.  This case is based on alleged injuries to Kazakh entities allegedly caused by the activities of Kazakh defendants in Kazakhstan.  The Court should not stretch long-arm jurisdiction to reach Viktor Khrapunov here.

### B.   The Court Should Permit Ilyas Khrapunov to Renew a Jurisdiction Defense after Discovery

We deny that Ilyas Khrapunov is subject to personal jurisdiction because he denies the substantive allegations against him in the Crossclaims—*i.e.*, that he was involved in an illegal conspiracy involving New York real estate—but we recognize that the Court may rely on BTA/Almaty's pleadings during the pre-discovery stage of litigation. *See Whitaker v. Fresno*

*Telsat, Inc.*, 87 F. Supp. 2d at 230.  Because jurisdictional discovery would overlap with discovery on the merits of the case, Ilyas should be permitted to pursue a personal jurisdiction defense after discovery has taken place.  *See, e.g.*, *Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42, 2011 WL 7053807, at *44 (E.D.N.Y. Jan. 4, 2011), *report and recommendation adopted*, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (where personal jurisdiction was based on alleged conspiracy,  foreign defendants could seek leave to move for summary judgment and the court could address any due process arguments after jurisdictional discovery had taken place); *see also Emerald Asset Advisors*, 895 F. Supp. 2d at 434.  ("[I]f the ultimate facts do not bear out jurisdiction by a preponderance of the evidence, the case will later be dismissed for lack of personal jurisdiction as well as on the merits.").  Ilyas seeks the Court's permission to address jurisdiction after discovery is complete.

## II.     THE RICO CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY OR, IN THE ALTERNATIVE, AS AGAINST VIKTOR KHRAPUNOV.

The RICO claims should be dismissed in their entirety because BTA/Almaty cannot show that they have suffered a "domestic injury," which is a requirement for a private RICO suit.  *See RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106-11 (2016). This argument is set forth in the parties' supplemental briefing and we do not repeat that discussion here.

Additionally, the RICO claims against Viktor must be dismissed because they fail to meet the plausibility standard required by F.R.C.P. 8(a) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and because they are time-barred.

### A.     BTA/Almaty Have Not Stated a Valid RICO Claim Against Viktor Khrapunov.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL 1298987, at *3 (S.D.N.Y. Mar.

12

31, 2016) (Nathan, J.) (citing *Iqbal*, 556 U.S at  678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.   Indeed, conclusory representations regarding a defendant's involvement are "not entitled to be assumed true," and are insufficient to "plausibly suggest an entitlement to relief." *Id*. at *5.

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce.  *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *Worldwide Directories*, 2016 WL 1298987, at *4.  Demonstrating a pattern of racketeering activity requires at least two "predicate acts." *Worldwide Directories*, 2016 WL 1298987, at *4.  Each element of a RICO violation, including a pattern of racketeering activity, must be plausibly alleged as to each defendant rather than simply to the enterprise as a whole. *DeFalco,* 244 F.3d at 306*; Worldwide Directories*, 2016 WL 1298987, at *4.  Allegations may not be directed toward defendants "as an undifferentiated group," but must identify the role of each defendant individually.  *Worldwide Directories*, 2016 WL 1298987, at *5.

BTA/Almaty accuse the Khrapunovs of participating in three alleged racketeering enterprises, but they do not offer any facts that would make their conclusory assertion plausible.  Two of the alleged enterprises, CF 135 West Member LLC and 227 East 19th Holder LLC, relate solely to the New York real estate aspect of the Crossclaims.  *See* Crossclaims ¶¶ 144-59.  As mentioned already, there are no allegations at all as to Viktor after 2007 and thus no plausible connection between him and the real estate transactions.   The third alleged enterprise—the Ablyazov-Khrapunov Group—is broader, but again there are no allegations that describe a role for Viktor within this alleged group vis-à-vis the alleged U.S. money laundering scheme.  That

13

scheme is alleged to have begun, at the earliest, in 2011, but there are no allegations as to Viktor's conduct after 2007, nor are there any particularized allegations that he "participate[ed] in the operation or management of the enterprise itself" or "play[ed] some part in directing the enterprise's affairs." *See Worldwide Directories*, 2016 WL 1298987, at *4-5.

Nor do BTA/Almaty plausibly allege that Viktor engaged in two predicate acts. The allegations against Viktor are confined to activity in Kazakhstan through 2004, where he purportedly breached his fiduciary duty to Almaty by converting its assets. Crossclaims ¶¶ 66-76. But breach of fiduciary duty and conversion are not predicate acts and so cannot support RICO liability against Viktor. *Apollon Waterproofing & Restoration, Inc. v. Bergassi*, No. 01 CIV. 8388, 2003 WL 1397394, at *4 (S.D.N.Y. Mar. 20, 2003), *aff'd*, 87 F. App'x 757 (2d Cir. 2004); *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 690 (S.D.N.Y. 2001) (collecting cases).

### B.  The RICO Conspiracy Claim Against Viktor Khrapunov Also Fails.

The Crossclaims also fail to plausibly allege that Viktor engaged in a RICO conspiracy. To establish a RICO conspiracy, a plaintiff must plead that each defendant "knew about and agreed to facilitate the scheme." *Salinas v. United States*, 522 U.S. 52, 66 (1997). Except for a conclusory recital that "Defendants unlawfully, willfully and knowingly did combine, conspire, confederate, and agree" to commit RICO violations (Crossclaims ¶167), the Crossclaims are devoid of allegations that Viktor either knew of or agreed to facilitate a scheme that violates RICO. Because "the core of a RICO civil conspiracy is an agreement," a complaint that merely makes conclusory allegations of a conspiracy, but does not allege specific facts demonstrating such an agreement, is not pled with sufficient particularity and must be dismissed. *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 25 (2d Cir. 1990).

**C.      The RICO Claims Are Time-Barred as to Viktor Khrapunov.**

Even if Viktor's acts did constitute predicate acts, the RICO claims against him would be  time-barred.  Civil RICO claims are subject to a four-year statute of limitations.  *Town of Mamakating, New York v. Lamm*, 2016 WL 3188862, at *1 (2d Cir. June 8, 2016) (summary order); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012).  "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury"—not when plaintiff discovers "the other elements of a RICO claim."  *Town of Mamakating*, 2016 WL 3188862, at *1.   The alleged occurrence of RICO predicate acts subsequent to plaintiff's discovery of his injuries does not affect the accrual of his RICO claims.  *Zahl v. Kosovsky*, No. 08 CIV. 8308, 2011 WL 779784, at *13(S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).

Viktor's alleged transfer of public assets ceased in either 2004, when he stopped being Almaty's mayor, or, at the latest, in 2007, when he "fled Kazakhstan for Switzerland." Crossclaims ¶¶ 67, 83.  Almaty discovered Viktor's conduct no later than May 2011, when it filed two criminal cases against him (Crossclaims ¶ 84), and likely much earlier.  Therefore, RICO claims filed on October 12, 2015 are time-barred by RICO's 4-year statute of limitations and must be dismissed.  *See Town of Mamakating*, 2016 WL 3188862, at *1 (affirming dismissal of time-barred RICO substantive and conspiracy claims).

## III.      THE STATE AND COMMON LAW CLAIMS SHOULD BE DISMISSED.

The Sixth through Thirteenth Causes of Action, which allege various common law and statutory causes of action, should all be dismissed.

**A.      The Alter Ego and Replevin Claims Were Previously Dismissed.**

The Court has dismissed BTA/Almaty's alter ego and replevin claims as against Triadou. Docket Entry 174, June 21, 2016 Mem. & Order at 28-29.  The allegations with respect to these

claims are the same as to the Khrapunovs as they were to Triadou, and the Court should dismiss the claims against the Khrapunovs for the same reasons discussed in the Court's June 21 Memorandum & Order.

### B.   The Conversion, Unjust Enrichment, and Constructive Trust Claims Are Time-Barred.

The conversion, unjust enrichment, and constructive trust claims are time-barred.

#### 1.   Conversion.

New York's statute of limitations for conversion is three years, but the Khrapunovs' alleged theft here—the purported embezzlement of public assets in Kazakhstan—ended when Viktor's mayoralty ended in 2004 or—at the latest—when Viktor left Kazakhstan for Switzerland in 2007.[1]  *See* Crossclaims ¶¶ 67, 83.  The conversion claim is thus "untimely on its face" and should be dismissed.   N.Y. C.P.L.R. § 214(3); *Wallace Wood Properties v. Wood*, 117 F. Supp. 3d 493, 498 (S.D.N.Y. 2015), *reconsideration denied*, 2015 WL 7779282 (S.D.N.Y. Dec. 2, 2015); N.Y. CPLR § 214(3); *see also Graham v. Select Portfolio Servicing, Inc.*, 2016 WL 215237, at *12 (S.D.N.Y. Jan. 18, 2016) (dismissing conversion claim on limitations grounds under Rule 12(b)(6)).

BTA/Almaty cannot save this claim by alleging that the Khrapunovs "bought and sold assets" with the allegedly converted funds.  *See* Crossclaims  ¶ 195.   A conversion claim does not accrue each time an alleged tortfeasor spends some of the converted proceeds; it occurs when a defendant "takes [plaintiff's property] and claims it as his own."  *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487 (1983).   Plaintiff's right to sue "accrues immediately, and he must sue

---

[1] Regardless of whether BTA/Almaty's common law might be subject to Kazakhstan's statutes of limitations under New York's borrowing statute, the borrowed limitations period would only apply if it is shorter than New York's.  *De Weerth v. Baldinger*, 836 F.2d 103, 106 (2d Cir. 1987).   Thus, where a claim is time-barred under New York law, it is untimely regardless of whether it accrued in New York or a foreign jurisdiction.  *Id.*

within the period of limitation measured from that date – or never." *Id.*; *see also Weisman v. Rosenker*, 1985 WL 182, at *2 (S.D.N.Y. Jan. 10, 1985) (conversion claim "accrues at the moment of conversion . . . and lapses three years thereafter").   The conversion claim is more than a decade old and must be dismissed.

### 2.   Unjust Enrichment and Constructive Trust.

BTA/Almaty's unjust enrichment and constructive trust claims are also time-barred because they are simply conversion claims by another name.   "In applying the Statute of Limitations, courts must look to the essence of the claim, and not to the form in which it is pleaded." *Kapernekas v. Brandhorst*, 638 F. Supp. 2d 426, 428 (S.D.N.Y. 2009); *see also Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 264 (1937) (courts applying the statute of limitations "look for the reality, and the essence of the action and not its mere name").   An equitable claim cannot proceed where "the plaintiff has had and let pass an adequate alternative remedy at law." *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986) (unjust enrichment claim fails where plaintiff let pass legal remedy for tortious interference).

Plaintiffs may not "attempt to plead around" the limitations for conversion with what are really duplicative claims.   *Kapernekas*, 638 F. Supp. 2d at 428.   Thus, where claims for unjust enrichment, constructive trust and breach of fiduciary "boil down to an allegation that defendant converted the [property] for his own benefit," plaintiff "cannot avoid the three-year statute of limitations by asserting other claims, based on the same facts, that really sound in conversion." *Id.* at 428-29; *see also Norris*, 803 F.2d at 1287 (unjust enrichment claim fails where plaintiff let pass legal remedy for tortious interference); *Fed. Treasury Enter. Sojuzplodoimporl v. Spirits Inl'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (summary order) (unjust enrichment clam cannot be used to evade statute of limitations for legal claim); *Marketxt Holdings Corp.*, 693 F. Supp. 2d at 394-98 (breach of fiduciary duty claim is subject to conversion statute of limitations

where "gravamen" of claims is that defendant "stole money," and "the theft itself" formed basis for all of plaintiff's claims); *In re Fischer*, 308 B.R. 631, 649-51 (Bankr. E.D.N.Y. 2004) (plaintiff barred from asserting constructive trust claim where legal remedy for conversion would have been adequate); *Samuels v. Greenberg*, 2015 WL 5657565, at *8 (E.D.N.Y. Sept. 23, 2015), *aff'd*, 2016 WL 1552338 (2d Cir. Apr. 18, 2016) (where gravamen of claim is conversion, breach of fiduciary duty claim is subject to three-year limitations period); *Rattenni v. Cerreta*, 285 A.D.2d 636, 636, 728 N.Y.S.2d 401 (2d Dep't 2001) (same); *Gold Sun Shipping Ltd. v. Ionian Transport Inc.*, 245 A.D.2d 420, 421, 666 N.Y.S.2d 677 (2d Dep't 1997) (where action "in reality sounded in conversion," additional claims for breach of fiduciary duty and constructive trust were barred by three-year statute of limitations).

Here, as in the cases discussed above, the gravamen of BTA/Almaty's claim is conversion. Almaty was injured when Viktor Khrapunov allegedly used his position to steal money and property. If there was conduct that breached a fiduciary duty so as to give rise to a constructive trust, that conduct was the alleged thefts, and it would be the proceeds of the thefts that would be the subject of the trust. And, if the Khrapunovs were unjustly enriched, they were unjustly enriched by the proceeds of the thefts. The essence of these causes of action is conversion, and Almaty and BTA may not "plead around" the conversion statute of limitations by recasting their claims as unjust enrichment and constructive trust.

Almaty and BTA allege two additional action types of conduct as grounds for their claim of constructive trust: 1) the alleged laundering of the proceeds resulting from the illicit transfers and 2) the alleged fraudulent transfer of Triadou's interest in Flatotel. Crossclaims ¶¶ 199, 201. This conduct is not relevant because the act that caused Almaty's and BTA's injuries was the alleged conversion itself—once the property was gone, it was gone—and nothing the

18

Khrapunovs allegedly did with the proceeds from that conversion caused further injury. *See Marketxt Holdings Corp.*, 693 F. Supp. 2d at 396-98 (fraud and breach of fiduciary duty did not cause damage separate from conversion).

### C. BTA/Almaty's Allegations Do Not State Fraudulent Conveyance Claims Against the Khrapunovs.

BTA/Almaty's fraudulent transfer claims seek to set aside the 2014 agreement by which Triadou assigned its interest in the Flatotel and Cabrini Medical Center to the Chetrit Entities (*see* Crossclaims ¶¶ 170-74, 176-80), but their allegations do not state a claim against the Khrapunovs because the Khrapunovs were not party to the assignment and are not in a position to return the transferred property. The remedy for a fraudulent transfer claim under New York's Debtor and Creditor Law is "to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor." *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 189 (2d Cir. 2006); *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 736–37 (S.D.N.Y.1993). In other words, fraudulent transfer claims are properly directed toward the transferee. *Alvaro v. Faracco*, 85 A.D.3d 1072, 1073, 927 N.Y.S.2d 366, 367 (2d Dep't 2011) ("In an action to set aside an alleged fraudulent conveyance, the transferee of the subject property is a necessary party."); *Friedman v. Friedman*, 125 A.D.2d 539, 541, 509 N.Y.S.2d 617 (2d Dept. 1986) (same); *CAMOFI Master LDC v. Riptide Worldwide, Inc.*, No. 10-cv-4020, 2012 WL 6766767, at *12 (S.D.N.Y. Dec. 17, 2012) (noting that transferor is not a proper defendant to a fraudulent conveyance claim). The Chetrits were the transferees of the 2014 assignment that is the subject of the fraudulent conveyance claims. BTA/Almaty has settled with the Chetrits and these claims should therefore be dismissed against the Khrapunovs.

**D.    The CPLR § 5239 Claim Does Not State a Cause of Action against the Khrapunovs.**

BTA/Almaty's claim under CPLR § 5239, which seeks to set aside judgments in Triadou's favor, is pled as "Against All Defendants" but is only directed at Triadou. Crossclaims ¶ 211.  This claim does not seek any relief against the Khrapunovs, nor does it allege any judgment in the Khrapunovs' favor that could be set aside, and it should be dismissed as to the Khrapunovs.

**IV.   A *FORUM NON CONVENIENS* DISMISSAL IS APPROPRIATE HERE IN LIGHT OF ADDITIONAL FACTS THAT WERE NOT AVAILABLE TO THE COURT IN PRIOR BRIEFING.**

The Court should dismiss this case on *forum non conveniens* grounds in favor of adjudicating these claims in Switzerland.  Although the Court has ruled once on this issue, there are additional facts relevant to the Khrapunovs and that weigh in favor of a dismissal that were not brought to the Court's attention during the earlier briefing at a time when these defendants were not yet in the case.

**A.    The Deference Owed to BTA/Almaty's Choice of Forum Is Undermined By Their Pursuing Claims in Switzerland.**

As an initial matter, the deference owed to BTA/Almaty's decision to assert the Crossclaims in New York is undermined by their pursuit of related claims against Mr. Ablyazov and the Khrapunovs in Switzerland.   In particular, Almaty had already initiated related proceedings in Switzerland before filing the Crossclaims and, as demonstrated by their recent initiation in Switzerland of claims against Ilyas's sister in California, it is comfortable with litigating in Swiss courts against both Swiss and non-Swiss residents alike.   BTA/Almaty would not be inconvenienced by having to litigate in Switzerland but, for reasons discussed below, the prejudice to the Khrapunovs is significant.  *See generally Iragorri v. United Techs. Corp.*, 274

F.3d 65, 72 (2d Cir. 2001)  (explaining that relative convenience is a consideration in evaluating degree of deference to chosen forum).

### B.  Switzerland Is a Suitable Alternative Forum.

Switzerland is a suitable alternative forum.  In its June 21 Memorandum & Order, the Court indicated that Switzerland may not be an acceptable alternative because Mr. Ablyazov may not be subject to jurisdiction there and because there was a question whether the statutes of limitations had expired for certain clams.    Mr. Ablyazov has since indicated that he would be amenable to jurisdiction there.  Docket No. 178 at 1-2.  The Khrapunovs also consent to having the case heard in Switzerland, and they would also agree to waive any statute of limitations defenses they might have in Switzerland as to the causes of action asserted in the Crossclaims if the Court were to dismiss this case.

### C.  Additional Facts Tip the Balance of Private and Public Interest Factors in Favor of Dismissal.

The balance of private and public interest factors weighs in favor of a *forum non conveniens* dismissal in light of several additional facts.  One, neither Khrapunov defendant will be able to travel to New York to defend himself personally against these accusations.  Viktor Khrapunov is currently seeking political asylum in Switzerland and is barred from traveling while his request is pending and, as required by Swiss law, he has surrendered his travel documents to the Swiss authorities.  Ilyas is also in Switzerland and his travel is also constrained because any cross-border movement could trigger his arrest and potential extradition to Kazakhstan, where he would face a court system that has been criticized as corrupt at every stage by the U.S. State Department and has a history of human rights abuses and due process failings. *See* Curley Decl. Ex. A, U.S. Dep't of State, "Kazakhstan 2015 Human Rights Report," at 6 (updated May 18, 2016) ("Corruption was evident at every stage of the judicial process."); *id.* at

21

8 ("Human rights and international observers noted investigative and prosecutorial practices that emphasized a confession of guilt over collection of other evidence …. Courts generally ignored allegations by defendants that officials obtained confessions by torture or duress.").

Live testimony is critical in fraud cases, and Viktor's and Ilyas's inability to defend themselves personally in New York would be highly prejudicial. *Alfadda*, 159 F.3d at 48 (where fraud alleged, live testimony necessary in order to assess witnesses' demeanor); *Allstate*, 994 F.2d at 1001 (same); *Schertenleib*, 589 F.2d at 1165 (where "crux" of case is whether party is "swindler" lack of live testimony would be " very serious handicap"); *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 538, n.54 (S.D.N.Y.), *reconsideration denied*, 303 F.R.D. 448 (S.D.N.Y. 2014) (strong preference for live testimony supports *forum non conveniens* dismissal).

The extent of ongoing litigation in Switzerland also favors dismissal. Almaty is pursuing Swiss civil claims against Viktor and Ilyas, among others, as well as Ilyas's sister and brother-in-law. And, as mentioned, the Khrapunovs have filed complaints with the Swiss authorities implicating the Kazakh government in illegal surveillance and hacking in Switzerland. The complaints also include allegations that an agent working for Kazakhstan attempted to use false pretenses to lure Viktor out of Switzerland into a jurisdiction where he could be arrested and returned to Kazakhstan. Certain of the Swiss-based proceedings have already resulted in substantial discovery, including Viktor Khrapunov's and his wife's voluntary participation in lengthy interviews. This is all to say that, given the breadth of Swiss litigation, these claims are much more developed in Switzerland and a forum non conveniens dismissal would help the parties avoid duplicating their litigation efforts. *See generally Ocean Shelf Trading, Inc. v. Flota Mercante Grancolombiana S.A.*, 638 F. Supp. 249, 253 (S.D.N.Y. 1986) (considering

pending litigation in alternative forum as a factor in forum non conveniens analysis); *cf. Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000) (declining to give litigation in alternative forum great weight where "the parties in the related action are completely different from the parties at bar" and there was no "likelihood of significant duplication of legal efforts…" (internal quotation marks omitted)).

## V.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION IN THIS CASE.

The Court should decline to exercise supplemental jurisdiction and dismiss this case. There is no diversity jurisdiction, because all of the parties are aliens. *See In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 160 (2d Cir. 2015), *as amended* (Dec. 17, 2015) ("Diversity is lacking ... where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens"). And, even if BTA/Almaty's RICO counter- and crossclaims could confer federal subject matter jurisdiction,[2] those claims should be dismissed (*see* Section II, *supra*) and thus there is no longer federal question jurisdiction in this case. Thus, the only basis for jurisdiction is supplemental jurisdiction flowing from the original interpleader complaint.

This case is at a relatively early stage (only Rule 26 initial discovery has been served, and no trial date has been set), and the Court should follow the general practice of declining supplemental jurisdiction where the claims have not yet been tried. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[A]s a general proposition . . . if [all] federal claims are dismissed before trial ... the state claims should be dismissed as well.") (citing *United Mine*

---

[2] There is some question whether counter- and crossclaims can confer federal subject matter jurisdiction. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (superseded by statute on other grounds); *Arrow Fin. Servs., LLC v. Massil*, No. 08–cv–437, 2009 WL 348553, at *2 (E.D.N.Y. Feb. 11, 2009); *Hamilton v. Bd. of Educ. of the Jordan-Elbridge Cent. Sch. Dist.*, No. 5:11-CV-00986, 2012 WL 2402884, at *3 (N.D.N.Y. June 25, 2012).

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (exercise of supplemental jurisdiction over state claims is abuse of discretion where federal claims have been dismissed at relatively early stage; collecting cases). In deciding whether to exercise jurisdiction over supplemental state law claims, district courts balance the values of judicial economy, convenience, fairness, and comity, and it is generally well settled that where the federal claims are eliminated in the early stages of litigation, "courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262-63 (2d Cir. 2006) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

Here, the balancing factors weigh against exercising supplemental jurisdiction. Should the federal claims be dismissed, it would be at an early stage prior to discovery, so there is no issue of judicial economy. The state claims were brought by Kazakh entities against Swiss and Kazakh defendants, and concern conduct that primarily occurred in Kazakhstan, so there is nothing particularly convenient about litigating in New York federal court. Nor are there any significant concerns of fairness to litigants or comity to New York State. The Court should decline supplemental jurisdiction here. *See, e.g.*, *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL 1298987, at *12-13 (S.D.N.Y. Mar. 31, 2016), (Nathan, J.) (dismissing RICO claims and declining supplemental jurisdiction over state law claims); *Miksic v. TD Ameritrade Holding Corp.*, 2013 WL 1803956, at *7 (S.D.N.Y. Mar. 7, 2013) (Nathan, J.) ("[W]hen all bases for federal jurisdiction have been eliminated, the federal court should ordinarily dismiss the state claims.").

**CONCLUSION**

For the foregoing reasons, Viktor and Ilyas Khrapunov respectfully request that the Court

dismiss the Crossclaims against them.

Dated: August 17, 2016
New York, New York

HOGUET NEWMAN REGAL & KENNEY, LLP

_____/s/ John J. Kenney___
John J. Kenney
John P. Curley
Kathleen L. Lowden
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone:  212-689-8808

*Counsel for Viktor Khrapunov and
Ilyas Khrapunov*