## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CF 135 FLAT LLC, CF 135 WEST MEMBERS LLC, and THE CHETRIT GROUP, LLC, | |
| Interpleader Plaintiffs, | |
| -against- | |
| TRIADOU SPV S.A., CITY OF ALMATY, a foreign city, and BTA Bank, | No. 15-cv-05345-AJN |
| Interpleader Defendants. | |
| | |
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK, | |
| Counterclaim and Crossclaim Plaintiffs, | |
| -against- | |
| MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A., | |
| Crossclaim Defendants. | |

## CROSSCLAIM DEFENDANT MUKHTAR ABLYAZOV'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE CROSSCLAIMS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF RELEVANT ALLEGATIONS..................................................................... 2

   I.     The Relevant Parties ............................................................................................... 2

   II.    The Alleged Money Laundering Scheme in the United States ............................. 3

   III.   The Limited Scope of Allegations Against Mr. Ablyazov.................................... 4

   IV.   Switzerland as a Venue for This Dispute .............................................................. 5

ARGUMENT ................................................................................................................................ 5

   I.     PLAINTIFFS' CIVIL RICO AND STATE LAW CAUSES OF ACTION ALL FAIL TO
        STATE A CLAIM BECAUSE THEY ARE DEVOID OF ANY ALLEGATIONS
        REGARDING MR. ABLYAZOV'S CONDUCT AFTER HIS ALLEGED
        EMBEZZLEMENT OF FUNDS IN KAZAKHSTAN AND SUFFER FROM OTHER FATAL
        DEFECTS.................................................................................................................. 5

      A.   Plaintiffs' RICO Claims Must be Dismissed ................................................. 6

         1.   Plaintiffs Fail to Allege That Mr. Ablyazov Participated in a RICO Enterprise Under
             18 U.S.C. § 1962(c) .......................................................................................... 6

             a.   Plaintiffs Fail to Allege that Mr. Ablyazov Committed a "Pattern" of At Least Two
                Racketeering Acts ....................................................................................... 7

             b.   Plaintiffs Fail to Plausibly Allege Mr. Ablyazov's Involvement In the "Conduct" of
                the RICO Enterprise .................................................................................... 8

         2.   Plaintiffs Fail to Allege That Mr. Ablyazov Invested the Proceeds of a RICO
             Enterprise under 18 U.S.C. § 1962(a)............................................................. 9

         3.   Plaintiffs Fail to Allege that Mr. Ablyazov was Part of a RICO Conspiracy under 18
             U.S.C. § 1962(d) ............................................................................................ 10

      B.   The Complaint Fails To State Any State Law Claims Against Mr. Ablyazov ............. 11

         1.   Conversion...................................................................................................... 11

         2.   Plaintiffs' Claims for Equitable Relief ......................................................... 12

             a.   Actual and Constructive Fraudulent Transfer.......................................... 13

             b.   Unjust Enrichment ..................................................................................... 13

             c.   Constructive Trust...................................................................................... 13

         3.   Plaintiffs' Claim Under CPLR Section 5239 ................................................ 14

         4.   Plaintiffs' Claims for Alter Ego And Replevin .......................................... 14

II.   THE COURT LACKS PERSONAL JURISDICTION OVER ABLYAZOV .................. 14

   A.   Legal Standard..................................................................................................... 14

   B.   Personal Jurisdiction Is Not Authorized By New York's Long Arm Statute ............... 15

      1.   General Jurisdiction (CPLR Section 301) .................................................... 16

      2.   Specific Jurisdiction (CPLR Section 302(a)) ........................................... 17

         a.   Section 302(a)(1): Mr. Ablyazov Did Not Transact Business Within New York .. 17

         b.   Section 302(a)(2): Mr. Ablyazov Did Not Commit Tortious Conduct Within New York.......................................................................................................................... 19

         c.   Section 302(a)(3): Mr. Ablyazov Did Not Commit Tortious Conduct Outside of New York Causing Injury Within New York ................................................................. 20

         d.   Section 302(a)(4): Mr. Ablyazov Did Not Own, Use, or Possess Real Property Within New York......................................................................................................... 21

   C.   The Exercise of Personal Jurisdiction Does Not Comport with Due Process................ 22

III.   INFORMATION NOT BEFORE THE COURT WHEN IT RENDERED ITS PREVIOUS OPINION INDICATES THAT THIS DISPUTE SHOULD BE LITIGATED IN SWISS COURT UNDER THE PRINCIPLES OF *FORUM NON CONVENIENS* .................. 22

   A.   Switzerland Is An Adequate Alternative Forum ........................................................... 23

   B.   The Balance of Hardships Favors Trying This Case in Switzerland ............................. 24

IV.   CONCLUSION ....................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*, No 13-cv-981(PGG), 2015 WL 1514539
   (S.D.N.Y. Mar. 31, 2015)....................................................................................... 22

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992)........................... 15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999)...... 19, 20

*Belda v. Doerfler*, No. 14-cv-941 (AJN), 2015 WL 5737320 (S.D.N.Y. Sept. 30, 2015) ........... 13

*Bernstein v. Misk*, 948 F. Supp. 228 (E.D.N.Y. 1997) ................................................................. 10

*Buchwald v. Renco Grp.*, 539 B.R. 31 (Bankr. S.D.N.Y. 2015)..................................................... 13

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768 (2d Cir. 2014) ........... 18

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, No. 1:12-cv-7307 (S.D.N.Y. Sept. 9, 2013)
   ................................................................................................................................ 19

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)......................................................... 6

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ............................................................................ 16

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ......................................................................... 6

*Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010) .................................. 10, 11

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ....................................................... 15

*Hamilton v. Willms*, No. 02-cv-6583, 2005 WL 3797562 (E.D. Cal. Oct. 28, 2005).................... 8

*Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682 (N.Y. App. Div. 1987) .................................. 20

*Hoatson v. N.Y. Archdiocese*, No. 05-cv-10467, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) ....... 7

*In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791 (Bankr. S.D.N.Y. 2005) ....................................... 13

*In re Adelphia Commc'ns Corp.*, No. 03-cv-04942, 2007 WL 2403553 (Bankr. S.D.N.Y. Aug.
   17, 2007)................................................................................................................... 9

*In re Andrew Velez Const., Inc.*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007)...................................... 13

In re Bridgestone/Firestone, Inc., 190 F. Supp. 2d 1125 (S.D. Ind. 2002) ................................... 25

*In re Sumitomo Copper Litig.*, 995 F. Supp. 451 (S.D.N.Y. 1998) ................................................ 6

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d. Cir. 2001) ..................................................... 24

*Jus Punjabi, LLC v. Get Punjabi, Inc.*, No. 1:14-cv-3318-GHW, 2015 WL 2400182 (S.D.N.Y.

   May 20, 2015) ......................................................................................................................... 10

*Karoon v. Credit Suisse Grp. AG*, No. 15-cv-4643 (JPO), 2016 WL 815278 (S.D.N.Y. Feb. 29,

   2016)..................................................................................................................... 16, 17, 22

*Kirschner v. Bennett*, 648 F. Supp. 2d 525 (S.D.N.Y. 2009)........................................................ 11

*Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y.

   1998)........................................................................................................................................ 15

*Laufer v. Ostrow*, 55 N.Y.2d 305 (1982) ....................................................................................... 16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ...................... 15

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance,*

   *Inc.*, 380 F.3d 624 (2d Cir. 2004)........................................................................................... 14

*Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990) .......................................................................... 20

*McKethan v. NYSDOCS*, No. 10-cv-3826(PAE), 2012 WL 2367033 (S.D.N.Y. June 21, 2012) 12

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ............................... 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-cv-2923,1994 WL 88129

   (S.D.N.Y. Mar. 15, 1994)........................................................................................................ 9

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991)........................................................... 7

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs., LLC*, No. 11-cv-1134, 2012

   WL 1142285 (S.D.N.Y. Mar. 23, 2012) ................................................................................ 7

*Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014) .................................................................. 16

*Reves v. Ernst & Young*, 507 U.S. 170 (U.S. 1993).................................................................... 8

*RJR Nabisco v. European Community*, 136 S. Ct. 2090 (2016) ...................................................... 11

*Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759 (N.D. Ill. 2005) .......................................... 10

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015)................................. 15, 19, 20

*Walden v. Fiore*, 134 S. Ct. 1115 (U.S. 2014) ............................................................................ 22

*Washington v. Crowley*, No. 13-cv-6630G, 2014 WL 4219585 (W.D.N.Y. Aug. 25, 2014)....... 12

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .................................................. 20

*Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544 (E.D.N.Y. 2005) ........................................................ 9

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486 (S.D.N.Y. 2007) .............. 7

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-cv-7349, 2016 WL 1298987

    (S.D.N.Y. Mar. 31, 2016)........................................................................................................ 6

**Statutes**

N.Y. C.P.L.R. § 203(a). ............................................................................................................ 12

N.Y. C.P.L.R. § 301 .................................................................................................................. 16

N.Y. C.P.L.R. § 302(a)(1).......................................................................................................... 17

N.Y. C.P.L.R. § 302(a)(2).......................................................................................................... 19

N.Y. C.P.L.R. § 302(a)(3).......................................................................................................... 20

N.Y. C.P.L.R. § 302(a)(4).......................................................................................................... 21

N.Y. D.C.L. §§ 273-75 .............................................................................................................. 13

**Other Authorities**

US DEPARTMENT OF STATE, *Country Reports on Human Rights Practices for 2014* (2014),

    http://www.state.gov/documents/organization/236852.pdf ....................................................... 1

Crossclaim Defendant Mukhtar Ablyazov respectfully submits the following in support of his Motion to Dismiss the crossclaims filed by BTA Bank ("BTA") and the City of Almaty, Kazakhstan (collectively, "Plaintiffs"), as set forth in the Crossclaim Plaintiffs' Answer, Counterclaims, and Crossclaims, dated October 12, 2015, ECF No. 49 (the "Crossclaims" or "Complaint").

## PRELIMINARY STATEMENT

The Crossclaims in this case represent the most recent front in a global dispute between the government of Kazakh President Nursultan Nazarbayev and Mr. Ablyazov, a leader of the Kazakh political opposition.  For the last several years, the Nazarbayev regime, including the now-nationalized BTA, has waged a worldwide legal, public relations, and diplomatic campaign against Mr. Ablyazov, his family and his political allies.  That campaign has now come to New York and this Court.[1]

In this case, Plaintiffs seek to hold Mr. Ablyazov liable under RICO and various state law causes of action for his alleged involvement in a scheme to "launder and conceal" embezzled assets through real estate investments in New York.  According to Plaintiffs, that scheme started in 2011 or 2012.  The Crossclaims, however, are devoid of any allegations concerning actions by Mr. Ablyazov over the past seven years.  In other words, the Crossclaims allege that Mr. Ablyazov embezzled money from BTA between 2005 and 2009 but that is, quite literally, where the allegations against him (as opposed to others) end.  Indeed, although Plaintiffs try to obscure their lack of any post-2009 allegations against Mr. Ablyazov by lumping him into a group of

---

[1]     The regime of President Nazarbayev, Kazakhstan's president since 1991, has been criticized for widespread corruption, nepotism, and human rights violations, including the torture, arbitrary arrest, and politically motivated prosecution of members of the opposition.  *See, e.g.*, US DEPARTMENT OF STATE, *Country Reports on Human Rights Practices for 2014* (2014), http://www.state.gov/documents/organization/236852.pdf.  In the event this matter proceeds past the initial motion stage, Mr. Ablyazov expects to contend in this Court that he and his family have been the victims of such misconduct, including, for example, his political prosecution by Kazakh authorities, their efforts through Interpol leading to the improper detention and deportation of his wife and six-year-old daughter, and their interference in Mr. Ablyazov's asylum and extradition proceedings.

defendants that they refer to collectively as the "Ablyazov-Khrapunov Group," Plaintiffs implicitly concede throughout their Crossclaims that Mr. Ablyazov was not, himself, involved in the alleged money laundering scheme.

The Crossclaims against Mr. Ablyazov fail for multiple reasons.

*First*, whether analyzed under the heightened pleading requirements of Rule 9(b) or under the more relaxed requirements of Rule 8, *Twombly* and *Iqbal,* Plaintiffs' RICO and state law claims must be dismissed for failing to allege any facts at all concerning Mr. Ablyazov's involvement in the alleged money laundering scheme.

*Second*, and in any event, the crossclaims must be dismissed because this Court lacks personal jurisdiction over Mr. Ablyazov, a Kazakh national currently detained in a French prison who has no business in or connections with New York and who, as noted above, is not alleged to himself have been involved in the alleged New York money laundering scheme.

*Third*, the claims should be dismissed on *forum non conveniens* grounds because Switzerland is an adequate forum and the balance of private and public interests weigh in favor of adjudicating the dispute in Switzerland.  While the Court previously denied Triadou's motion to dismiss on *forum non conveniens* grounds, the Court's decision was based on an incomplete record and without the benefit of material information from Mr. Ablyazov and the Khrapunovs.

## STATEMENT OF RELEVANT ALLEGATIONS[2]

### I.   The Relevant Parties

Almaty is Kazakhstan's largest city and a legal subdivision of the Republic of Kazakhstan.  Crossclaims ¶ 32.  BTA is a bank based in Almaty.  *Id.* ¶ 33.  Mr. Ablyazov was the Chairman of BTA from May 2005 until February 2009.   *Id.* ¶ 42.  According to the

---

[2]     The allegations found in the Crossclaims and summarized below are deemed true for purposes of this motion only.

Complaint, while Chairman of BTA, Mr. Ablyazov defrauded BTA of over $6 billion.  *Id.* ¶¶ 41,
50-57.   Viktor Khrapunov is the former mayor of Almaty and currently resides in Geneva,
Switzerland.  *Id.* ¶ 40.  He has surrendered his passport to Swiss authorities and cannot leave the
country.  *See* Letter to the Court from John J. Kenney dated June 29, 2016, ECF No. 179.

Ilyas Khrapunov is Viktor Khrapunov's son, and also resides in Geneva.  Crossclaims ¶
42.  Ilyas Khrapunov is the former president of SDG Capital S.A ("SDG").  *Id.* ¶ 42. According
to the Complaint, while serving as mayor, Viktor and Ilyas Khrapunov defrauded Almaty of
approximately $300 million.  *Id.* ¶¶ 69, 66-76.

Triadou SPV S.A. is a special purpose investment vehicle incorporated in Luxembourg
with a principal place of business in Geneva, Switzerland.  *Id.* ¶ 39.

Each of the crossclaim defendants, including Mr. Ablyazov, is a member of what
Plaintiffs call the "Ablyazov-Khrapunov Group."  *Id.* ¶¶ 19, 50.

## II.   The Alleged Money Laundering Scheme in the United States

According to Plaintiffs, in 2011 or 2012, the "Ablyazov-Khrapunov Group" began a
"scheme to secret the families' illicit wealth in real estate investments in the United States."  *Id.*
¶ 87.  Plaintiffs claim that this scheme unfolded as follows:

- First, SDG was transferred via a supposed sham sale to an ally of the group but, in reality,
  Ilyas Khrapunov "continue[d] to control SDG."  *Id.* ¶¶ 88-92.

- Second, Ilyas Khrapunov allegedly created, through SDG, a series of entities "on behalf
  of the Ablyazov-Khrapunov Group," including Triadou.  *Id.* ¶¶ 93-94. He also discussed
  investments with representatives of the Chetrit Group, including Joseph Chetrit.  *Id.* ¶¶
  96-97.

- Third, the "Ablyazov-Khrapunov Group" invested through Triadou in the Flatotel and the Cabrini Medical Center in New York.  *Id.* ¶¶ 99-103.

- Fourth, in 2014, Ilyas Khrapunov directed Triadou's director to liquidate its assets in New York to remove them from the country.  *Id.* ¶¶ 115-16.  Chetrit offered to pay a substantial discount for Triadou's interest in the Flatotel and proposed a bribe to Triadou's director.  *Id.* ¶¶ 117-18.  Chetrit paid a portion of the bribe, after which the Chetrit Group refused to pay Triadou.  *Id.* ¶¶ 118-19, 121-22, 125-26.

### III.    The Limited Scope of Allegations Against Mr. Ablyazov

Plaintiffs allege that Mr. Ablyazov embezzled billions of dollars from BTA from 2005 to 2009.  *Id.* ¶ 41.  Plaintiffs, however, do not make any allegations concerning his involvement in the alleged money laundering scheme that followed.  In fact, other than lumping him into a group of individuals and entities that they define for purposes of their claims as the "Ablyazov-Khrapunov Group," the only post-2009 allegations contained in the cross-claims against him are as follows:

- In 2012, Mr. Ablyazov "defied" a UK receivership order and did not appear at a subsequent court hearing.  *Id.* ¶¶ 59-60.

- In July 2013, Mr. Ablyazov was arrested in France.  *Id.* ¶ 64.

- In March 2015, at a meeting between Ilyas Khrapunov and various associates, the participants discussed Mr. Ablyazov's "legal troubles."  *Id.* ¶ 122.

Plaintiffs also allege that, after Mr. Ablyazov's arrest, Ilyas Khrapunov "assumed control of much of Mr. Ablyazov's money laundering operations and has continued the Ablyazov-Khrapunov Group's combined efforts to hide their wealth."  *Id.* ¶ 65.  Plaintiffs further allege

that Ilyas Khrapunov, who is "related by marriage to Ablyazov, orchestrated these efforts and steered the families' joint investments." *Id.* ¶¶ 22, 42.

IV.     **Switzerland as a Venue for This Dispute**

Switzerland has been a venue for various litigations in recent years involving BTA and Mr. Ablyazov. Declaration of Jonathan D. Cogan dated August 17, 2016 ("Cogan Declaration"), at 2. For example, BTA was involved in multiple civil proceedings in Switzerland against companies associated with Mr. Ablyazov, and there was a separate action to enforce the UK freezing order against Mr. Ablyazov in Switzerland. *Id.*

In opposing Russian and Ukrainian efforts to extradite Mr. Ablyazov from France, Mr. Ablyazov has translated a substantial number of relevant documents from Russian into French. *Id.* French documents are usable by Swiss courts without further processing or expense. *See* Mem. & Order, ECF No. 174, at 15.

<u>**ARGUMENT**</u>

I.     **PLAINTIFFS' CIVIL RICO AND STATE LAW CAUSES OF ACTION ALL FAIL TO STATE A CLAIM BECAUSE THEY ARE DEVOID OF ANY ALLEGATIONS REGARDING MR. ABLYAZOV'S CONDUCT AFTER HIS ALLEGED EMBEZZLEMENT OF FUNDS IN KAZAKHSTAN AND SUFFER FROM OTHER FATAL DEFECTS**

As this Court previously held, Plaintiffs adequately allege that Mr. Ablyazov stole money from BTA when he was its chairman from 2005 to 2009. But Plaintiffs, a Kazakh bank and city, have not come to a federal court in New York to sue Mr. Ablyazov, a Kazakh citizen, for conduct he allegedly committed in Kazakhstan a decade ago. Rather, they are suing in connection with an alleged scheme whereby money that was allegedly stolen in Kazakhstan long ago was laundered more recently through real estate investments in the United States. The problem for Plaintiffs, however, is that their Crossclaims are devoid of any allegations that Mr.

Ablyazov had any role in that alleged laundering scheme. Accordingly, and for other fatal defects described below, all of the RICO and state law claims must be dismissed.

### A.  Plaintiffs' RICO Claims Must be Dismissed

Plaintiffs assert five RICO claims against Mr. Ablyazov: three RICO claims under 18 U.S.C. § 1962(c) (Counts 1, 2 and 4); a RICO claim under 18 U.S.C. § 1962(a) (Count 3); and a RICO conspiracy claim under 18 U.S.C. § 1962(d) (Count 5).  The allegations in the crossclaims do not support a cause of action against Mr. Ablyazov under any of these three subsections.

### 1.  Plaintiffs Fail to Allege That Mr. Ablyazov Participated in a RICO Enterprise Under 18 U.S.C. § 1962(c)

"To establish a violation of § 1962(c) . . . a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted).  "Each element of a RICO violation . . . must be plausibly alleged as to each defendant rather than simply to the enterprise as a whole."  *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-cv-7349, 2016 WL 1298987, at *4 (S.D.N.Y. Mar. 31, 2016) (Nathan, J.) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).    In this case, Plaintiffs fail adequately to allege (i) that Mr. Ablyazov committed at least two predicate acts constituting a "pattern" of racketeering activity; and (ii) Mr. Ablyazov's involvement in the "conduct" of the alleged RICO enterprise.

RICO predicate acts sounding in fraud – including those alleged here by Plaintiffs – must be pled with particularity under Rule 9(b).  *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998) ("Rule 9(b) has great urgency in civil RICO actions.") (quotation marks and citations omitted).  But even where predicate acts do not sound in fraud, "particular care is required [in the RICO context] to balance the liberality of the Civil Rules with the necessity of

preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948

F.2d 41, 44 (1st Cir. 1991).

### a. *Plaintiffs Fail to Allege that Mr. Ablyazov Committed a "Pattern" of At Least Two Racketeering Acts*

To demonstrate a "pattern" of racketeering activity under section 1962(c), a plaintiff must

allege that "each defendant participated in the RICO enterprise by engaging in at least two

predicate acts." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496

(S.D.N.Y. 2007).  "In a RICO case with more than one defendant, it is necessary for a plaintiff to

particularize and prove each defendant's participation in the fraud and each defendant's

enactment of the two necessary predicate acts." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

*Archway Ins. Servs., LLC*, No. 11-cv-1134, 2012 WL 1142285, at *5 (S.D.N.Y. Mar. 23, 2012)

(quotation marks and citation omitted).  Courts dismiss claims where "[t]here is not even a

minimal attempt to allege which predicate acts were performed by which Defendants." *Hoatson*

*v. N.Y. Archdiocese*, No. 05-cv-10467, 2007 WL 431098, at *3 (S.D.N.Y. Feb. 8, 2007).

Here, Plaintiffs fail to allege that Mr. Ablyazov engaged in *any* predicate acts.  The

allegations against him in this case end abruptly in 2009, but the predicate acts listed in the

Crossclaims do not begin until 2012, three years later.  Crossclaims ¶¶ 139-140.  The predicate

acts that are alleged reference actions taken by numerous individuals and entities, including

Philippe Glatz, Nicolas Bourg, Eric Elkain, Joseph Chetrit, Meyer Chetrit, Ilyas Khrapunov,

Triadou, SDG, the Chetrit Group, Telford, and FBME Bank, among others, *see generally id.*, but

they do not contain a single particularized reference to Mr. Ablyazov.

Similarly, Plaintiffs describe that Mr. Ablyazov's "involvement, legal difficulties and

incarceration" were discussed in face-to-face meetings that were "secretly" recorded. *Id.* ¶¶ 27,

107.  But these alleged discussions were only *about* Mr. Ablyazov.  There is no allegation that he

took part in them or was even aware of them taking place.  *See id.*  Even if Plaintiffs alleged that Mr. Ablyazov was aware of these discussions, that would still fall far short of demonstrating that Mr. Ablyazov actively committed any of the predicate acts listed.  *See Hamilton v. Willms*, No. 02-cv-6583, 2005 WL 3797562, at *8 (E.D. Cal. Oct. 28, 2005) ("Evidence that a defendant knew of a scheme or even benefitted from the scheme is not enough to impose RICO liability.").  Accordingly, Plaintiffs have failed to demonstrate that Mr. Ablyazov engaged in a "pattern" of racketeering activity.

### b.  Plaintiffs Fail to Plausibly Allege Mr. Ablyazov's Involvement In the "Conduct" of the RICO Enterprise

A defendant can only be liable under section 1962(c) if he "participated in the operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  An individual's participation must be "in the conduct of the *'enterprise's* affairs,' not just [his] *own* affairs."  *Id.* at 185 (emphasis original).

Despite Mr. Ablyazov's supposed "central" role in the RICO enterprise, Plaintiffs allege no individual conduct by Mr. Ablyazov after 2009 that would contribute to the management or operation of the enterprise.  To take one example, the Complaint alleges in a sub-heading that "[t]he Khrapunovs and Ablyazov join[ed] together to launder their stolen money."  Crossclaims ¶¶ 77-81.  But the six paragraphs that comprise that section fail to mention any individual actions taken by Mr. Ablyazov.  *Id.* ¶¶ 77-82.

In fact, the allegations in the Crossclaims suggest the opposite conclusion.  Plaintiffs allege that, following Mr. Ablyazov's detention, Ilyas Khrapunov "*assumed control* of much of Ablyazov's money laundering operations and has continued the Ablyazov-Khrapunov Group's combined efforts to hide their wealth."  *Id.* ¶ 65.) (emphasis added).  On its own terms, this allegation describes only actions by Ilyas Khrapunov.  Mr. Ablyazov is not alleged to have

directed him to act or granted him control over the alleged money laundering operation.[3]

Accordingly, Plaintiffs have failed to state a RICO claim.  *See In re Adelphia Commc'ns Corp.*,
No. 03-cv-04942, 2007 WL 2403553, at *17 (Bankr. S.D.N.Y. Aug. 17, 2007) (finding that the
complaint alleged that a family "controlled, directed, managed and operated the alleged RICO
enterprises," but that "[t]he complaint does not allege that the Defendants exerted influence
over" that family and, therefore, the complaint does not allege that defendants satisfied RICO's
conduct prong).

### 2.   Plaintiffs Fail to Allege That Mr. Ablyazov Invested the Proceeds of a RICO Enterprise under 18 U.S.C. § 1962(a)

To state a claim for a violation of section 1962(a), a plaintiff "must allege that defendants
engaged in racketeering activity, derived income therefrom, invested that income in an
enterprise, and, as a result of that investment, caused injury to the plaintiffs."  *Wiltshire v.
Dhanraj*, 421 F. Supp. 2d 544, 548 (E.D.N.Y. 2005).

Here, in addition to failing to allege that Mr. Ablyazov himself engaged in racketeering
activity, Plaintiffs do not allege that Mr. Ablyazov derived or used any racketeering income.
Plaintiffs allege only that the "Count 3 defendants" received income from the racketeering acts
listed in their other counts, Crossclaims ¶ 153, but Plaintiffs fail to allege that Mr. Ablyazov
received any identifiable proceeds from those racketeering acts.  In fact, it defies common sense
to allege that an individual detained in a French prison with limited contact to the outside world
would have received and then reinvested funds related to a New York real estate transaction.  *Jus
Punjabi, LLC v. Get Punjabi, Inc.*, No.1:14-cv-3318-GHW, 2015 WL 2400182, at *4 (S.D.N.Y.

---

[3]      Any possible involvement in the enterprise by Mr. Ablyazov is implicated only indirectly through
conclusory assertions that, for example, the "Count 1 Defendants" have worked together to further the enterprise
"[f]rom in or about 1997, and continuing to the present."  Crossclaims ¶ 140.  But conclusory group pleading does
not plausibly allege Mr. Ablyazov's participation in the RICO enterprise.  *See Merrill Lynch, Pierce, Fenner &
Smith, Inc. v. Young*, No. 91-cv-2923,1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994) ("The allegations'
impermissible failure to distinguish between Defendants mandates dismissal under both Rule 9(b) and Rule 8(a).").

May 20, 2015) ("[P]laintiffs must properly allege that *the defendant* used income derived from a pattern of racketeering activity. . . .") (emphasis added and quotations and citation omitted ). Mere knowledge by Mr. Ablyazov of any reinvestment is insufficient, and Plaintiffs do not even allege that. *See Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 779 (N.D. Ill. 2005) (finding no sufficient "investment injury" alleged against defendant under section 1962(a) where plaintiff alleged reinvestment of racketeering proceeds "in a conclusory fashion [but plaintiff's] factual allegations indicate that [the defendant] was not involved in any of those transactions at any level other than knowledge that they were occurring"). Accordingly, Plaintiffs' claim under section 1962(a) must be dismissed for failure to state a claim.

### 3. Plaintiffs Fail to Allege that Mr. Ablyazov was Part of a RICO Conspiracy under 18 U.S.C. § 1962(d)

Because Plaintiffs' RICO claims under section 1962(c) fail, so too must their RICO conspiracy claims. *Bernstein v. Misk*, 948 F. Supp. 228, 241 n.4 (E.D.N.Y. 1997) ("[D]ismissal of the substantive RICO claims mandates dismissal of plaintiffs' RICO conspiracy claim as well.") (citation omitted). Even if that were not the case, Plaintiffs have set forth no facts showing that Mr. Ablyazov agreed to enter into a RICO conspiracy. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010) (holding that RICO conspiracy allegations "must set forth specific facts tending to show that each of the defendants entered into an agreement *to conduct the affairs of a particular, identified enterprise through a pattern of racketeering activity*") (emphasis in original).

As discussed above, Plaintiffs have at most merely stated without factual support that Mr. Ablyazov was a "central member" of the so-called "Ablyazov-Khrapunov Group." Crossclaims ¶ 50. But that conclusory allegation is not enough to properly allege that an agreement existed among the crossclaim defendants to conduct an enterprise through a pattern of racketeering

-10-

activity.  *See Elsevier Inc.,* 692 F. Supp. 2d 297 at 312 (dismissing claims that "contain[] nothing more than a conclusory allegation of an agreement among defendants").  Therefore, Plaintiffs have not stated a RICO conspiracy claim.[4]

### B.  The Complaint Fails To State Any State Law Claims Against Mr. Ablyazov

In addition to the RICO causes of action, Plaintiffs bring seven state law causes of action, one seeking damages (conversion) and six seeking equitable relief (actual fraudulent transfer, constructive fraudulent transfer, unjust enrichment, constructive trust, alter ego, replevin, and a claim under CPLR section 5239 to set aside various state court judgments).  Each is deficient and must be dismissed.

### 1.  Conversion

To withstand a motion to dismiss, a conversion claim must allege that the plaintiff had ownership, possession, or control of a specific identifiable thing or fund, over which the defendant "exercised an unauthorized dominion . . . to the alteration of its condition or to the exclusion of the plaintiff's rights."  *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (citation omitted).  Here, Plaintiffs' do not identify what thing or fund is the subject of the conversion claim.  Plaintiffs' simply state that "the Defendants" wrongfully converted "the assets wrongfully taken by the Ablyazov-Khrapunov Group."  Crossclaims ¶ 194.  Plaintiffs also allege, again without identifying any specifics or actions by any individual person, that "the Defendants knowingly bought and sold assets" with the stolen funds."  *Id.*  These allegations fall short of sufficiently identifying either the thing being converted or the individual doing the

---

[4]       In addition, as Triadou, the Khrapunovs, and Mr. Ablyazov have argued in pending briefing to the Court, Plaintiffs' civil RICO claims must be dismissed because they allege no domestic injury, as required by *RJR Nabisco v. European Community*, 136 S. Ct. 2090 (2016).

converting.  Neither Mr. Ablyazov nor the Court should be forced to guess what conduct fills in the gaps in Plaintiffs' Complaint.[5]

### 2.  Plaintiffs' Claims for Equitable Relief

Plaintiffs' claims for equitable relief fail because a judgment in Plaintiffs' favor would not cause Mr. Ablyazov to take any action and because the claims contain no allegations that he played any part in the allegedly inequitable conduct, all of which allegedly occurred when Mr. Ablyazov was in jail in France.  Plaintiffs ask, for example, that "the August 2014 assignment agreement . . . be set aside" (actual fraudulent transfer and constructive fraudulent transfer), *Id.* ¶¶ 174, 180, and request "imposition of a constructive trust to prevent any further transfers or encumbrances of" the "50% interest in CF 135 West Member LLC." (Constructive Trust) *Id.* ¶¶ 200-01.  But the Complaint does not allege any facts leading to a reasonable inference that Mr. Ablyazov can effectuate that relief.  If a claim makes no allegations against a defendant and executing a judgment would not need his involvement, then logic demands that those claims be dismissed against him.  *See, e.g.*, *Washington v. Crowley*, No. 13-cv-6630G, 2014 WL 4219585, at *5 (W.D.N.Y. Aug. 25, 2014) ("To bring a claim seeking equitable relief, [a] plaintiff must name a defendant who has sufficient ability to provide plaintiff the relief he is seeking.") (citing *McKethan v. NYSDOCS*, No. 10-cv-3826(PAE), 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012)).

Each individual claim for equitable relief also fails for the following reasons.

---

[5]     To the extent Plaintiffs' conversion cause of action seeks recovery of the funds Mr. Ablyazov allegedly embezzled while chairman of BTA, it is time-barred because (1) that embezzlement is alleged to have occurred from 2005 to 2009; and (2) the statute of limitations for conversion in New York is three years.  CPLR § 203(a).

### a. Actual and Constructive Fraudulent Transfer

A claim for actual or constructive fraudulent transfer must allege that a transfer was made by the defendant. *See In re Andrew Velez Const., Inc.*, 373 B.R. 262, 269 (Bankr. S.D.N.Y. 2007) (A claim for actual fraudulent transfer must "plead facts showing that the transfer *was made by the defendant* with the intent to hinder, delay or defraud present or future creditors of the transferor." (emphasis added); *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 802 (Bankr. S.D.N.Y. 2005) ("[A] conveyance *by a debtor* is deemed constructively fraudulent if it is made without 'fair consideration'. . . ." (citing New York DCL §§ 273-75 (emphasis added))).  Here, there is no allegation that Mr. Ablyazov himself made any transfers.  Accordingly, these claims fail.

### b. Unjust Enrichment

Plaintiffs' claim for unjust enrichment fails because it does not allege that Mr. Ablyazov played any part in the allegedly inequitable conduct.  Again, the only link between Mr. Ablyazov and the transaction is the generalized allegation that the "Ablyazov-Khrapunov Group, Triadou, and SDG have unjustly enriched themselves by investing funds wrongfully derived from the City of Almaty and BTA Bank."  Crossclaims ¶ 182.  But other than this vague reference to the so-called "Ablyazov-Khrapunov  Group," there is no claim that Mr. Ablyazov "received a direct benefit," as is required to state an unjust enrichment claim.  *Buchwald v. Renco Grp.*, 539 B.R. 31, 49-50 (Bankr. S.D.N.Y. 2015) ("[A] benefit is direct when it or its functional equivalent is in the defendant's possession to return.") (citation omitted).

### c. Constructive Trust

Plaintiffs' constructive trust claim fails because it is derivative of the failed unjust enrichment claim.  "The establishment of a constructive trust provides an equitable remedy in

instances of unjust enrichment." *Belda v. Doerfler*, No. 14-cv-941 (AJN), 2015 WL 5737320, at *4 (S.D.N.Y. Sept. 30, 2015) (Nathan, J.) (citing *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004)).  Without a viable unjust enrichment claim, the constructive trust claim must also fail.

### 3.  Plaintiffs' Claim Under CPLR Section 5239

Plaintiffs' claim under CPLR section 5239 must be dismissed because, on its face, it has nothing to do with Mr. Ablyazov.  Plaintiffs' 5239 claim asks the court to "set aside any judgments in Triadou's favor" related to the real property interests and "direct that Triadou's interest in the Flatotel and Cabrini Medical Center be transferred to the City of Almaty and BTA Bank."  Crossclaims ¶ 211.  A decision by this Court to set aside Triadou's state court judgments and transfer Triadou's property interest would pertain only to Triadou, not to Mr. Ablyazov.  It should be dismissed.

### 4.  Plaintiffs' Claims for Alter Ego And Replevin

Plaintiffs' claims for alter ego and replevin should be dismissed as to Mr. Ablyazov for the same reasons they were dismissed as against Triadou.[6]

## II.  THE COURT LACKS PERSONAL JURISDICTION OVER ABLYAZOV

The Crossclaims against Mr. Ablyazov should also be dismissed under Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over Mr. Ablyazov.

### A.  Legal Standard

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v.*

---

[6]    Even if the Court finds that any of the state law claims do state a claim, the Court lacks subject matter jurisdiction to adjudicate this dispute without the civil RICO claims.  Should the Court's ruling on this motion leave only state law claims remaining, Mr. Ablyazov would seek to be heard on the resulting lack of subject matter jurisdiction.

*Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citation omitted).  Although a court construes the pleadings in a light favorable to the plaintiff, a court does not draw "argumentative inferences" in the plaintiff's favor nor does it accept as true a legal conclusion couched as a factual allegation. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

"In analyzing a Fed. R. Civ. P. 12(b)(2) motion, courts in New York follow a two-step process." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (Nathan, J.) (internal quotations omitted).  "First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute." *Id.*; *see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998) ("Plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit") (citation omitted).  "Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *Thackurdeen*, 130 F. Supp. 3d at 798; *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (noting that New York "state statutory and federal constitutional standards are . . . not co-extensive, as they are in many other states").  In this case, personal jurisdiction over Mr. Ablyazov would not be proper under either step of the analysis.

### B.  Personal Jurisdiction Is Not Authorized By New York's Long Arm Statute

Under New York's long-arm statute, there are two types of personal jurisdiction that New York courts may exercise over non-residents: "general jurisdiction pursuant to N.Y. CPLR § 301" and "specific jurisdiction pursuant to N.Y. [CPLR] § 302." *Thackurdeen*, 130 F. Supp. 3d at 798.  General jurisdiction "permits a court to hear any and all claims against [a defendant]." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotations omitted).

"Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the [defendant's] contacts with the forum." *Id.* (citation and internal quotations omitted). Plaintiffs have failed to demonstrate that the Court possesses either form of personal jurisdiction over Mr. Ablyazov.

### 1.  General Jurisdiction (CPLR Section 301)

CPLR section 301 authorizes jurisdiction over a defendant who is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of [his] presence in this jurisdiction." *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10 (1982) (citations and internal quotations omitted). The Supreme Court has clarified that the appropriate inquiry in determining whether a defendant is subject to general jurisdiction is whether that defendant's in-forum contacts "are so continuous and systematic as to render [him] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotations omitted).[7] "Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) (discussing *Daimler*).

In this case, Plaintiffs do not allege that Mr. Ablyazov has any contact at all with New York, let alone "exceptional" contact that is "so continuous and systematic as to render [him] essentially at home" in this State. *Daimler*, 134 S. Ct. at 761 & n.19. All the allegations specific to Mr. Ablyazov relate to conduct outside the United States. Crossclaims ¶¶ 50-56, 61, 64. Plaintiffs do not allege that Mr. Ablyazov has ever done business in New York or that he has

---

[7]     Some courts have noted that section 301 may not be a viable basis for jurisdiction after *Daimler*. *See Karoon v. Credit Suisse Grp. AG*, No. 15-cv-4643 (JPO), 2016 WL 815278, at *2 (S.D.N.Y. Feb. 29, 2016) ("As this Court and others have noted, it is uncertain if New York's 'doing business' jurisdiction remains viable in light of *Daimler*") (internal quotations omitted).

even set foot in New York.  Accordingly, Plaintiffs have not established that general jurisdiction

over Mr. Ablyazov is appropriate under section 301.

### 2.  Specific Jurisdiction (CPLR Section 302(a))

CPLR section 302(a) empowers New York courts to exercise jurisdiction over a

defendant if the causes of action in the case "aris[e] from" one of four specific kinds of contact

with New York.  Jurisdiction is proper only if the defendant:

> [1]  transacts any business within the state or contracts anywhere to supply goods
> or services in the state; or
> [2] commits a tortious act within the state . . .; or
> [3]  commits a tortious act without the state causing injury to person or property
> within the state . . . if he (i) regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial revenue from goods used
> or consumed or services rendered, in the state, or (ii) expects or should reasonably
> expect the act to have consequences in the state and derives substantial revenue
> from interstate or international commerce; or
> [4] owns, uses or possesses any real property situated within the state.

*See* N.Y. C.P.L.R. 302(a)(1)-(4).

None of these four subsections provides a basis for personal jurisdiction here.

### a.  *Section 302(a)(1): Mr. Ablyazov Did Not Transact Business Within New York*

There is no basis for jurisdiction under section 302(a)(1) because Mr. Ablyazov did not

"transact[] any business within the state."  N.Y. C.P.L.R. § 302(a)(1).

Transacting business for the purpose of section 302(a)(1) requires a defendant to engage

in "volitional acts" by which the defendant purposefully "avails [himself] of the privilege of

conducting activities within the forum state."  *Karoon*, 2016 WL 815278, at *4 (internal

quotations omitted).  In assessing whether this has occurred, the Second Circuit examines the

following factors:

(i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014) (internal quotations omitted).  None of these factors weigh in favor of jurisdiction here:  there are no allegations that Mr. Ablyazov has ever entered a contract with a New York corporation; there are no allegations that he has ever negotiated or executed a contract in New York; there are no allegations that he has ever visited New York; there are no allegations that he is a party to any contract with a New York choice-of-law clause; and there are no allegations that he is subject to any type of supervision in New York.

Although the Crossclaims allege that other parties engaged in transactions related to New York, Plaintiffs have not pled sufficient facts to show that the other parties acted on Mr. Ablyazov's behalf.  To demonstrate that other parties acted on behalf of Mr. Ablyazov, New York law requires Plaintiffs to show that the other parties "engaged in purposeful activities in the State in relation to the transaction for the benefit of and with the knowledge and consent of" Mr. Ablyazov, and that he "exercised some control over" these parties.  *Id.* at 771.

In this case, Plaintiffs conclude that other parties were acting on Mr. Ablyazov's behalf without alleging any facts to support that conclusion.  Plaintiffs do not allege, for example, that Mr. Ablyazov was aware of any meetings or negotiations between Chetrit, SDG, or Triadou; they do not allege that Mr. Ablyazov had any knowledge of the Flatotel or Cabrini transactions; they do not allege that Mr. Ablyazov had any conversations with Ilyas Khrapunov or Nicolas

Bourg about those transactions; and they certainly do not allege that Ablyazov controlled those transactions.  In fact, the allegations suggest the opposite conclusion:  Plaintiffs allege that Mr. Ablyazov has been in hiding or incarcerated since at least February 2012 and that, in Mr. Ablyazov's absence, "Ilyas Khrapunov[] assumed control" of the alleged operations. Crossclaims ¶ 49, 65.

Because Plaintiffs have not alleged that Mr. Ablyazov transacted business within New York, section 302(a)(1) does not support personal jurisdiction over Mr. Ablyazov.  *See* Mem. & Order, *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, No. 1:12-cv-7307, at 12-14 (S.D.N.Y. Sept. 9, 2013)  (ECF No. 29) (Nathan, J.) (granting motion to dismiss defendant Equate for lack of personal jurisdiction because, among other things,  "Equate itself did not participate in discussions in New York" and "UCC's contacts . . . cannot be attributed to Equate").

### b.  *Section 302(a)(2): Mr. Ablyazov Did Not Commit Tortious Conduct Within New York*

There is no basis for jurisdiction under section 302(a)(2) because Mr. Ablyazov did not "commit[] a tortious act within the state."  N.Y. C.P.L.R. § 302(a)(2).  Section 302(a)(2) confers jurisdiction only if a defendant commits a tort while physically present in the State of New York. *See Thackurdeen*, 130 F. Supp. 3d at 804 (Nathan, J.) ("In light of controlling Second Circuit precedent, the Court is required to apply the majority rule requiring the defendant to physically commit the tortious act within New York."); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) ("[D]efendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2).") (citation omitted).  In this case, Plaintiffs do not allege that Mr. Ablyazov committed any tort while physically present in the State of New York.  In fact, the Crossclaims affirmatively allege that all of Mr. Ablyazov's conduct took place

outside of New York.  *See, e.g.*, Crossclaims ¶¶ 49, 50-55 (describing alleged conduct in Kazakhstan); *id.* ¶¶ 56, 61 (describing alleged conduct in London); *id.* ¶ 64 (describing alleged conduct in France).  Accordingly, section 302(a)(2) does not support personal jurisdiction over Mr. Ablyazov.

### c.  Section 302(a)(3): Mr. Ablyazov Did Not Commit Tortious Conduct Outside of New York Causing Injury Within New York

There is no basis for jurisdiction under section 302(a)(3) because Mr. Ablyazov did not "commit[] a tortious act without the state causing injury to person or property within the state." N.Y. C.P.L.R. section 302(a)(3).

The conferral of jurisdiction under section 302(a)(3) rests on five elements: "First, that defendant committed a tortious act outside the state; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." *Thackurdeen*, 130 F. Supp. 3d at 805 (Nathan, J.) (internal citations and quotations omitted).  In this case, neither the third nor fourth element has been met.

Plaintiffs have not alleged that Mr. Ablyazov's acts caused injury to a person or property within the State, as required by the third element of the test.  In "determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction [courts] must generally apply a situs-of-injury test." *Bank Brussels Lambert*, 171 F.3d at 791 (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (N.Y. App. Div. 1987).  That test deems the situs of the injury to be "the place where the underlying, original event occurred which caused the injury." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001); *see also Mareno v. Rowe*,

910 F.2d 1043, 1046 (2d Cir. 1990) ("[T]he situs of the injury is the location of the original event which caused the injury.").

The underlying, original event that caused Plaintiffs' injuries in this case was Mr. Ablyazov's alleged embezzlement.  *See* Mem. & Order, ECF No. 174, at 5 ("BTA Bank's claims stem from embezzlement by Ablyazov"); *id.* ("The money laundering allegations against Triadou are logically dependent on Ablyazov and the Khrapunovs' embezzlement").  That alleged embezzlement took place entirely in Kazakhstan: Mr. Ablyazov, a Kazakh national, allegedly stole assets from a Kazakh bank based in Almaty, Kazakhstan.  *See* Crossclaims ¶¶ 20, 33, 50-56; *see also id.* ¶ 23 (describing related proceedings against Mr. Ablyazov and Khrapunov as "arising from their theft of billions of dollars from entities and municipalities in the Republic of Kazakhstan").  Thus, the situs of injury was Kazakhstan, not New York.

Plaintiffs also have not met the fourth element of the section 302(a)(3) test because they have not alleged facts showing that Mr. Ablyazov expected or should reasonably have expected his alleged embezzlement in Kazakhstan to have consequences in the State of New York.

Because neither the third nor fourth element of the section 302(a)(3) test has been met, section 302(a)(3) does not support personal jurisdiction over Mr. Ablyazov.

### d.  *Section 302(a)(4): Mr. Ablyazov Did Not Own, Use, or Possess Real Property Within New York*

Finally, there is no basis for jurisdiction under section 302(a)(4) because Mr. Ablyazov did not "own[], use[] or possess[] any real property situated within the state."  N.Y. C.P.L.R. § 302(a)(4).  Although the Crossclaims contain allegations about Mr. Ablyazov and allegations about real property in New York, the Crossclaims fail to connect these two sets of allegations. There are no allegations, for example, that Mr. Ablyazov was a party to any of the real estate transactions, that he held a legal or financial interest in the Flatotel or Cabrini properties, or that

-21-

he was entitled to any proceeds from those investments.  In fact, according to the Crossclaims,

Mr. Ablyazov was incarcerated in France when most of the real estate transactions took place,

suggesting that he was not the one owning, using, or possessing the New York properties.

Crossclaims ¶ 64.  Accordingly, section 302(a)(4) does not support personal jurisdiction over

Mr. Ablyazov.

### C.  The Exercise of Personal Jurisdiction Does Not Comport with Due Process

Even if Plaintiffs could demonstrate that jurisdiction is proper under New York's long-

arm statute, the exercise of jurisdiction over Mr. Ablyazov would still be improper because it

does not comport with the basic requirements of due process.  "For a State to exercise

jurisdiction consistent with due process, the defendant's suit-related conduct must create a

substantial connection with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014); *see*

*also 7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*, No 13-cv-981(PGG), 2015 WL

1514539, at *10 (S.D.N.Y. Mar. 31, 2015) ("[D]ue process requires more for the exercise of

personal jurisdiction. The [defendants'] suit-related conduct must tie them to New York *itself*."

(emphasis in original)).  As discussed above, all of Mr. Ablyazov's "suit-related conduct" took

place outside the United States.   Crossclaims ¶¶ 50-56, 61, 64.   Accordingly, Plaintiffs'

allegations are "inadequate as a matter of due process."  *Karoon*, 2016 WL 815278, at *4.

### III.  INFORMATION NOT BEFORE THE COURT WHEN IT RENDERED ITS PREVIOUS OPINION INDICATES THAT THIS DISPUTE SHOULD BE LITIGATED IN SWISS COURT UNDER THE PRINCIPLES OF *FORUM NON CONVENIENS*

Although the Court has previously addressed the application of *forum non conveniens* to

this litigation, its decision was made without the benefit of material information from Mr.

Ablyazov and the Khrapunovs.  Based on additional information that is now available to the

Court, the Court should now dismiss the Crossclaims against Mr. Ablyazov because (1) Switzerland is an adequate forum; and (2) the balance of hardships favors having this case heard there.

### A.  Switzerland Is An Adequate Alternative Forum

"[T]o dismiss an action on *forum non conveniens* grounds, the Court must find that there is an adequate alternative forum where the dispute may be heard."  Mem. & Order, ECF No. 174, at 9.  An adequate alternative forum exists if, among various other factors, the defendants are amenable to service there and the statute of limitations does not bar the plaintiff's claims there. *Id.*

All crossclaim defendants – Triadou, the Khrapunovs, and Mr. Ablyazov – are amenable to service in Switzerland.  As the Court found, "Triadou has consented to jurisdiction in Switzerland . . . and the Khrapunovs reside there.  *Id.* at 10.  Lacking complete information, however, the Court previously found that "Triadou has not established that a Swiss court could exercise jurisdiction over Ablyazov," *id.* at 10, but Mr. Ablyazov hereby also consents to jurisdiction in Switzerland.

The applicable statute of limitations in Switzerland would not bar Plaintiffs' claims.  The Court found previously that "Triadou has agreed to waive any statute of limitations-based defenses in Switzerland."  *Id.* 11 (internal quotations omitted).  The Court found, however, that Triadou "has not (and cannot) make any such guarantee on behalf of the other defendants to this action, namely the Khrapunovs and Ablyazov."  *Id.* at 11.  But Mr. Ablyazov hereby also agrees to waive any defenses based on the statute of limitations in Switzerland in the event that the Court dismisses this case on *forum non conveniens* grounds.  Therefore, Switzerland is an adequate alternative forum for litigating this dispute.

## B.  The Balance of Hardships Favors Trying This Case in Switzerland

If the alternative forum is determined to be adequate, a court must then weigh the public and private interests to ascertain where the case should be adjudicated.  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d. Cir. 2001).  Private interests incorporate the relative convenience to the parties of litigating in the proposed forums, including whether any necessary witnesses will be unable or unwilling to appear in the plaintiffs' chosen forum and whether the expected costs of the litigation are disproportionately borne by a particular party.  *Id.*  Public interests include the burden on the Court and potential jurors of adjudicating the dispute.  *Id.* at 74.  Here, the Court found previously that "there is little net convenience to be gained by sending this dispute to Switzerland," relying substantially on the fact that "Triadou has not pointed to a single potential witness who would be unable or unwilling to appear in New York, a showing that is generally required for a *forum non conveniens* dismissal."  Mem. & Order, ECF No. 174, at 15, 16.

But the Court was again not provided a complete record for its decision.  Viktor Khrapunov – a crossclaim defendant and key witness in the proceedings – will apparently be unable to appear in New York, as he has surrendered his passport to Swiss authorities and cannot leave the country.  Because he lives in Switzerland, Viktor Khrapunov will be available as a witness there.  In light of Plaintiffs' inability to specify a single potential witness who would be unable to appear in Switzerland, the critical factor of live witness availability tips the balance of the factors in favor of litigating this dispute in Switzerland.

In addition, the Court's decision did not account for the expense already borne by Mr. Ablyazov in litigating the dispute that underlies this case.  As noted above, Mr. Ablyazov and BTA have engaged in multiple litigations in Switzerland in recent years.  Moreover, while it is

true that, as the Court found, "whether this dispute is litigated in New York or Switzerland, the parties will have to translate a substantial number of documents," *id.* at 16, a substantial number of relevant documents have already been translated from Russian into French by Mr. Ablyazov during the three years spent preparing his extradition defense in France.  Because the translated documents are in French, they are usable in Swiss courts without further expense.  And, importantly, Plaintiffs have pointed to no existing body of documentation in this case that has already been translated into English.  *See In re Bridgestone/Firestone, Inc.*, 190 F. Supp. 2d 1125, 1142 (S.D. Ind. 2002) ("[T]he best course is to weigh the amount of evidence that must be translated if the trial remains in the U.S. forum against the amount of evidence to be translated if the trial is held in a foreign forum.").

## IV.    CONCLUSION

For all of the foregoing reasons, Mr. Ablyazov respectfully requests that this Court enter an order dismissing the claims against him and granting such further relief as appropriate.

Dated: August 17, 2016

New York, New York                         Respectfully submitted,

KOBRE & KIM LLP

By:  /s/ Jonathan D. Cogan _____
     Jonathan D. Cogan
     (jonathan.cogan@kobrekim.com)
     KOBRE & KIM LLP
     800 Third Avenue
     New York, New York 10022
     Tel: +1 212 488 1200
     Fax: +1 212 488 1220

     *Attorney for Crossclaim Defendant*
     *Mukhtar Ablyazov*