UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

        Crossclaim Plaintiffs,

  -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

        Crossclaim Defendants.

15 Civ. 5345 (AJN) (SN)

**THE CITY OF ALMATY AND BTA BANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR JOINDER**

1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1
ARGUMENT ......................................................................................................................... 4
    I.    It Is Undisputed That Joinder of FBME Is Proper Under Rule 20 ............................ 4
    II.   The Evidentiary Benefits Of Joining FBME Outweigh Any Prejudice To Defendants ........... 4
    III.    Discovery from FBME As A Party Would Not Be Overly Broad Or Burdensome .............. 8
    IV.    Joinder Of FBME Would Not Cause Prejudice By Delaying This Action .......................... 9
    V.  The Court Should Reject The Defendants' Baseless Suggestion That The Kazakh Entities' Motion To Join FBME Was Brought In Bad Faith ..................................................... 11
CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Barr Rubber Prods. Co. v. Sun Rubber Co.*,
   425 F.2d 1114 (2d Cir. 1970) ...................................................................................... 10

*Briarpatch Ltd. L.P. v. Geisler Roderdeau, Inc.*,
   148 F. Supp. 2d 321 (S.D.N.Y. 2001) ........................................................................ 12

*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ............................................................................. 13, 14

*Deskovic v. City of Peekskill*,
   673 F. Supp. 2d 154 (S.D.N.Y. 2009) .......................................................................... 5

*Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*,
   112 F.R.D. 417 (S.D.N.Y. 1986) ............................................................................... 10

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
   105 F.R.D. 435 (S.D.N.Y. 1984) ............................................................................... 10

*Major Oldsmobile, Inc. v. Gen. Motors Corp.*,
   No. 93 Civ. 2189, 1994 WL 9774 (S.D.N.Y. Jan. 12, 1994) ...................................... 12

*Midlantic Commercial Co. v. Prime Sportswear Corp.*,
   No. 95 Civ. 10192 (SWK), 1996 WL 361539 (S.D.N.Y. June 27, 1996) .................. 10

*Nazario v. Deer & Co.*,
   295 F. Supp. 2d 360 (S.D.N.Y. 2003) ........................................................................ 12

*Republic National Bank v. Hales,*
   75 F. Supp. 2d 300 (S.D.N.Y. 1999) .......................................................................... 10

*Rodriguez v. Abbott Labs*,
   151 F.R.D. 529 (S.D.N.Y. 1993) ............................................................................... 12

*Schindler Elevator Corp. v. Otis Elevator Co.*,
   657 F. Supp. 2d 525 (D.N.J. 2009) .............................................................................. 9

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ...................................................................................... 13

**Statutes**
28 U.S.C § 1447 .................................................................................................................. 16

**Other Authorities**
International Trade and U.S. Antitrust Law § 8:10 (2d ed.) ............................................... 13

**Rules**
Fed. R. Civ. P. 11 ................................................................................................................ 15
Fed. R. Civ. P. 20 .................................................................................................................. 7

The City of Almaty and BTA Bank (together, the "Kazakh Entities") respectfully submit this reply memorandum of law in further support of their motion for joinder of FBME Bank, Ltd. ("FBME").[1]

## INTRODUCTION

There is no question about FBME's role in the existing defendants' scheme to launder money into the United States.[2] The funds that the defendants laundered into the United States were sent through FBME, after other banks refused to transfer them. FBME actively courted the corrupt business of Mukhtar Ablyazov and the other members of the Ablyazov-Khrapunov Group, just as the U.S. Treasury Department has found that FBME actively solicited the business of other criminals and money launderers. As a result, FBME is jointly responsible with the existing defendants. In opposing joinder, none of the defendants seriously contest any of these propositions, which is all that is required for joinder under Rule 20.

Instead, Triadou and the other defendants contend – without any support – that the Kazakh Entities have acted with some vexatious purpose by joining FBME in order to try to frustrate a *forum non conveniens* argument that this Court has already denied. The reality is far simpler: the Kazakh Entities have continued to diligently investigate their claims as this case has progressed, and their continued investigation has revealed more information about FBME's active involvement in

---

[1] This reply memorandum is submitted in response to Triadou's opposition [ECF No. 226], which was joined by Ablyazov [ECF No. 230], as well as the separate opposition filed by the Khrapunovs [ECF No. 234]. Rather than submitting separate replies to these filings (each of which would be up to ten pages in length pursuant to the Court's individual rules), the Kazakh Entities submit this single reply brief, which as a result is fifteen pages long. The Kazakh Entities notified the defendants that they intended to take this consolidated approach, and received no objections.

[2] Technically, the Kazakh Entities are crossclaim plaintiffs and Triadou, Ablyazov, and the Khrapunovs are crossclaim defendants. Because the crossclaims are the only ones that are still being litigated, however, we refer simply to plaintiffs and defendants for convenience.

the transactions at issue. Accordingly, the Kazakh Entities filed their motion for joinder within the time that the parties agreed upon, and the Court ordered.

The Kazakh Entities did not sit on their hands and wait for discovery to begin after filing their crossclaims, but instead moved for attachment of Triadou's assets in New York. The Kazakh Entities then worked diligently to gather evidence on the merits of their claims to put forward in support of that motion, which was ultimately granted. [ECF No. 175]. In the process of reconstructing the Ablyazov-Khrapunov Group's money laundering network, the Kazakh Entities developed further facts and evidence as to how funds were transferred and parties were involved, including further information on the expansive *active* role of FBME in the conspirators' network. While this reconstruction necessarily remains incomplete without formal discovery, the picture that has emerged shows FBME was an active participant in the conspiracy, not an unwitting or negligent bystander blindly processing wire transfers.

Even without the benefit of discovery, the Kazakh Entities have already been able to identify high-level contacts between FBME and the defendants' agents, as well as additional funds transfers through FBME in furtherance of their scheme. As the Kazakh Entities allege in their Amended Crossclaims:

> Telford's FBME accounts were managed by Eesh Aggarwal, Chairman of Azure Consultants DMCC, and a close financial advisor to Ablyazov. Aggarwal had connected Ablyazov and other members of the Ablyazov-Khrapunov Group to FBME through Aggarwal's contacts with high-level officers at FBME, and in time FBME became one of the Ablyazov-Khrapunov Group's primary banks.

ECF No. 219, ¶ 99. Some of this evidence was unearthed in preparation for the evidentiary hearing on the attachment motion, which required the Kazakh Entities to investigate Triadou's connections to its funding source, Telford International Limited ("Telford"), which maintained its accounts at FBME. Unsurprisingly, this investigation into Telford led to more information on the nature and scope of FBME's role, all of which supported joining FBME as a co-defendant.

In response, the defendants argue that the Kazakh Entities have sought to join FBME for an improper purpose, and that joinder will delay this action. But neither contention has merit. The Kazakh Entities have moved to join FBME – within the time set by the Court to do so – because further investigation has demonstrated that it is liable as an active participant in the other defendants' money laundering scheme. And far from delaying this action, joinder of FBME will at worst make no difference to the timing of this action, and at best will provide a more efficient avenue through which to obtain critical evidence.

The real reason why Triadou and the other defendants oppose joinder – and the reason why Triadou attempted to insist on conditions for a one-week extension of time [ECF No. 213], then moved to strike the Kazakh Entities' motion for joinder [ECF No. 223], and now oppose the same – is that they don't want evidence from FBME to be introduced into this case.

No evidence is good evidence for Triadou in this action. The Court has already found Triadou's version of the facts not credible, agreeing with the Kazakh Entities that Triadou was funded by Ablyazov via Telford, and that Triadou's parent was sold in a fraudulent attempt to disguise its continued ownership by Ilyas Khrapunov. Seeking to exclude evidence from FBME is the defendants' best hope of keeping out evidence likely to further demolish Triadou's already-discredited explanations for its funding from Telford. (The suggestion that discovery from Telford, an entity controlled by the defendants, is a more appropriate source of this information is implausible on its face, not least of all because its home jurisdiction has opted out of Hague Convention procedures for pretrial discovery).

If FBME is joined as party, the defendants have little hope of keeping FBME's records out of this case, and little hope of prevailing at trial. On the other hand, if FBME is not joined as a party, they can hold on to the hope that nonparty discovery will be stymied and that damning evidence from FBME will remain out of reach. In short, the defendants' opposition to joining

FBME has nothing to do with delay or prejudice, and everything to do with attempting to keep powerful and relevant evidence from coming before the Court.

## ARGUMENT

### I. It Is Undisputed That Joinder of FBME Is Proper Under Rule 20

Most importantly, none of the defendants have seriously contested that joinder is appropriate under the Federal Rules of Civil Procedure. Joinder of multiple defendants under Rule 20 is an appropriate exercise of the court's discretion where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The defendants cannot seriously claim that FBME is not related to the transactions or facts at issue in this action, seeing as shortly after the filing of the motion to join FBME, Triadou requested that the motion be struck because FBME was *too closely related* to the allegations against Triadou. [*See, e.g.,* ECF No. 225 at 2 ("FBME's alleged conduct relates mainly to Triadou's investment in real estate in the United States.")]. Having admitted that FBME's alleged conduct "relates mainly to Triadou's investment" at issue in this case, Triadou and the other defendants wisely avoid arguing that the Rule 20 standard has not been met. Instead, Triadou claims that joining FBME would prejudice the existing defendants by complicating or delaying this action, and that joinder was sought for an improper purpose. [ECF No. 226 at 3-4]. Those arguments are wrong.

### II. The Evidentiary Benefits Of Joining FBME Outweigh Any Prejudice To Defendants

As detailed in the Kazakh Entities' moving brief (and essentially admitted in Triadou's motion to strike), FBME was a key part of the alleged money laundering conspiracy, transferring millions of dollars from the accounts of the shell company Telford to fund Triadou's investments in the United States. The Court has preliminarily found that Telford's funds were traceable to

Ablyazov. [ECF No. 175 at 6 ("Telford is an Ablyazov investment entity used to move Ablyazov's funds")]. Triadou, of course, continues to dispute this finding. [ECF No. 226 at 5]. Logically, records from FBME related to Telford's accounts will be important evidence in confirming or disputing the Court's finding about Telford's funds. Among the evidence that FBME can be expected to possess will be transaction records demonstrating how Telford was funded and where its funds were sent; Know-Your-Customer information about the asserted beneficial ownership of Telford; payment instructions demonstrating who was instructing FBME on Telford's behalf; as well as information about Aggarwal and other individuals and accounts controlled by the Ablyazov-Khrapunov Group.[3]

In response, Triadou suggests that evidence from FBME is irrelevant, arguing that because the Kazakh Entities can already prove that Telford transferred the funds Triadou invested, the Kazakh Entities already have all of the evidence they could need from FBME. [ECF No. 226 at 5]. While it is true that Nicolas Bourg testified that the money in Telford's FBME accounts was traceable to Ablyazov, and also true that the Court credited this testimony [ECF No. 175 at 5, n.4], documentary evidence as to the *exact* sources of funds flowing into Telford's FBME accounts is indisputably relevant – which Triadou implicitly concedes by arguing that the Kazakh Entities may seek such evidence from Telford itself. [ECF No. 226 at 5]. As detailed above and in the Amended Crossclaims – which must be taken as true for purposes of this motion, *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) – FBME executed a range of wire transfers for the entities and parties at the core of this action. There is every reason to believe FBME maintains account records for Telford (and potentially for the entities or individuals that funded Telford) far

---

[3] Information in FBME's KYC files may well be incomplete or false, as Triadou argues. But evidence that the Ablyazov-Khrapunov Group provided false information to financial institutions in order to disguise their involvement in Telford – just as they did when they "sold" SDG in a sham transaction – is powerful evidence of their culpability.

more detailed than the simple SWIFT transfer records that have been offered so far. Indeed, if FBME lacks such basic records on these clients, that fact by itself would warrant serious scrutiny and raise questions as to FBME's relationship with these entities.[4]

The defendants' principal argument against joinder is premised on the assumption that it is "likely that FBME will dispute its inclusion in this matter," thus complicating this case and prejudicing Triadou. [ECF No. 226 at 4]. This argument, however, ignores the obvious: records from FBME will be important regardless of whether FBME is joined. Evidence from FBME will be important not only for the Kazakh Entities' claims, but also to prove or disprove Triadou's version of events. Indeed, certain of the defendants have already sought discovery from the Kazakh Entities of FBME records.

Through the testimony of its Director, Cesare Cerrito, Triadou has testified that the funds it invested in the United States were received through Telford's accounts at FBME from the Petelin family, rather than from Ablyazov. *See* 5/11/16 Aff. of C. Cerrito, at ¶ 9-10 [ECF No. 156]. Although the Court has already found this testimony not credible, [ECF No. 175 at 7, n.6], Triadou is likely to attempt to rehabilitate its version of events with further evidence regarding the sources of the funds in Telford's FBME accounts. The most likely source of such evidence will be records from FBME, and there is no reason to believe FBME would be more amenable to requests through

---

[4] Similarly unconvincing is Triadou's contention that because FBME did not conduct adequate diligence of its customers, the Court should "infer that FBME would have little or no information about those customers." [ECF No. 226 at 6]. The Amended Crossclaims allege that "Telford's FBME accounts were managed by Eesh Aggarwal, Chairman of Azure Consultants DMCC, and a close financial advisor to Ablyazov" and that "Aggarwal had connected Ablyazov and other members of the Ablyazov-Khrapunov Group to FBME through Aggarwal's contacts with high-level officers at FBME." ECF No. 219 ¶ 99. Even assuming FBME failed to keep due diligence records, its officers are likely to have records of communications with Aggarwal on behalf of his clients (including the defendants), and standard account and wire records.

the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention") than as a party under the Federal Rules of Civil Procedure.

Triadou seeks to paper over this obvious problem by suggesting that "[e]vidence regarding the provenance of Telford's money is best obtained from Telford." [ECF No. 226 at 5]. This argument is not serious. According to Triadou, Telford is a shell corporation owned by another shell corporation (a nominee shareholder trust) operated out of the Seychelles. *See* Exhibit 2 to the 5/11/16 Aff. of C. Cerrito [ECF No. 156-2]. Even putting aside the fact that Telford is controlled by Ablyazov – who has a demonstrated history of refusing to participate in court-ordered disclosures and lying about his assets, resulting in a UK judgment of criminal contempt – Telford and its parent are legal fictions existing solely on paper, structured for the very purpose of opacity, with no apparent employees or custodians to respond to legal process and organized in a country that is unlikely to cooperate with third-party document requests. Triadou's argument is particularly transparent, as Triadou is certainly aware that the Seychelles affirmatively opted out of the Hague Convention's application to pretrial discovery in common law countries such as this one, so third-party document discovery of Telford would be effectively impossible.[5] The reality is that the Kazakh Entities are more likely to obtain records on Telford from the Panama Papers than from these entities themselves.[6]

---

[5] Specifically, Article 23 of the Hague Convention permits a contracting state to declare that it "will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries," a provision which the Seychelles affirmatively adopted when it acceded to the Hague Convention in 2004. *See* Status Table, Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("[P]ursuant to article 23, first paragraph of the Convention, [] the Republic of Seychelles will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries."), *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=782&disp=resdn (last visited Sep. 30, 2016).

[6] A company named "Telford International Limited" and incorporated in the Seychelles – where Telford's administrator was based [ECF No. 156-2, at 7] – does in fact appear in the Panama

**III.  Discovery from FBME As A Party Would Not Be Overly Broad Or Burdensome**

Triadou argues that joinder of FBME is a "fishing expedition . . . likely to add substantial expense for Triadou, and unduly delay resolution of this action." [ECF No. 226 at 5]. Triadou's contention that discovery relating to FBME's role in the conspiracy alleged would be overly-broad or would open a "Pandora's Box," [*id.* at 5], misunderstands the evidence that will be relevant to this case. Red flags for money laundering go both ways: evidence that FBME failed to respond to obvious indicia of money laundering surrounding the Telford transfers is also evidence that tends to prove that Telford was actually laundering funds – a critical question in this action.  Put differently, regardless of whether it is joined as a defendant, the scope of discovery needed from FBME is not materially different.

For example, the Federal Financial Institutions Examination Council's Bank Secrecy Act/Anti-Money Laundering Examination Manual lists one such red flag for money laundering as "[f]unds transfer activity occur[ring] to or from a financial institution located in a higher risk jurisdiction distant from the customer's operations." *See* Appendix F: Money Laundering and Terrorist Financing "Red Flags," Federal Financial Institutions Examination Council, 2014, *available at* http://www.ffiec.gov/bsa_aml_infobase/pages_manual/olm_106.htm.[7]  Here, the evidence already found credible by the Court establishes that Telford was transferring tens of millions of dollars from its accounts in Cyprus, a high risk jurisdiction distant from Triadou's places

---

Papers database maintained by the International Consortium of Investigative Journalists. *See* "Telford International Limited," ICIJ Offshore Leaks Database, *available at* https://offshoreleaks.icij.org/nodes/10022342 (last visited Sep. 30, 2016). At this time, no further information on that "Telford International Limited" has become available.

[7]  The FFIEC Manual is relied upon by the Federal Reserve, Office of the Comptroller of the Currency, and other state and federal regulators and enforcement agencies in examining financial institutions for compliance with the Bank Secrecy Act and other U.S. anti-money laundering laws.

of business in the United States and Switzerland. Evidence regarding this obvious red flag – only one among many – will not only tend to prove that FBME was actively aiding the defendants' money laundering operation, but also that defendants were in fact dealing in laundered funds. For this reason, discovery from FBME as a party would not be significantly broader than as a non-party.

**IV.     Joinder Of FBME Would Not Cause Prejudice By Delaying This Action**

Triadou also argues that joinder of FBME at this time would "delay discovery of FBME through motions briefing, and potentially, another round of amendments by Almaty/BTA." [ECF No. 226 at 4]. This argument makes little sense in light of the Court's instructions that discovery proceed in parallel with motion practice, and in fact, discovery is underway *right now* among the current parties, even as motions to dismiss on numerous grounds remain pending. There is no reason that discovery from FBME would be any different. While Triadou argues that adding "yet another foreign entity from a different jurisdiction" would delay this case, [ECF No. 226 at 4], the practical realties of international litigation suggest otherwise. Hague Convention requests are notoriously slow, so unless the Court credits Triadou's argument that FBME's evidence is completely irrelevant, this action would not reach trial any faster by seeking evidence from FBME as a non-party, and in fact, would likely move much slower. *See Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 530 (D.N.J. 2009) ("It has been the experience of this and many other courts that utilization of Hague procedures are slow and cumbersome and usually take far longer than discovery procedures under the Federal Rules.").

Neither do the Kazakh Entities expect that service on FBME will substantially delay this action. The Kazakh Entities have already begun the process of translating and serving the Amended Crossclaims and motion for joinder, and unlike Switzerland, Cyprus permits service by mail. *See* "Legal Considerations: Republic of Cyprus," U.S. Dep't of State, *available at* https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/cyprus.html (last

visited Sept. 30, 2016) ("Cyprus did not formally object to service under Article 10 of the Hague Service Convention and permits service via postal channels."). Discovery is currently underway between the parties and scheduled to continue until April of 2017, leaving more than sufficient time to resolve any service concerns raised by FBME.[8]

Triadou also protests that because it "is without access to the millions of dollars attached by the Court until this case is resolved, FBME's joinder is incredibly prejudicial," [ECF No. 226 at 5], but even assuming that joiner of FBME would prolong this case – a proposition that is wrong for the reasons given above – this Court's attachment order hardly constitutes *unfair* prejudice to Triadou. *See Midlantic Commercial Co. v. Prime Sportswear Corp.*, No. 95 Civ. 10192 (SWK), 1996 WL 361539, at *5 (S.D.N.Y. June 27, 1996) (on a Rule 20 motion, a court must "weigh any considerations relevant to efficient adjudication such as the potential for delay and *unfair prejudice*" (emphasis added)). Triadou cannot be unjustly prejudiced by the inability to spend funds that do not belong to it. More importantly, Triadou again fails to explain how discovery from FBME as a party (who would be a co-defendant aligned with Triadou) would be more expensive or burdensome than discovery from FBME as a non-party. To the contrary, party discovery is almost uniformly more cost-effective than the Hague process. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 105

---

[8] In support of its argument that the joinder of FBME should be rejected because of a potential delay in the litigation, Triadou relies exclusively on cases that rejected attempted joinder at *extremely* late stages of litigation, not within the time initially set by the Court for joinder. In *Barr Rubber Prods. Co. v. Sun Rubber Co.*, the Second Circuit found it was not an abuse of discretion for the trial judge to deny joinder when the motion was made "after four and one half years and six thousand pages of deposition testimony." 425 F.2d 1114, 1127 (2d Cir. 1970). Joinder of a totally unrelated party was rejected in *Republic National Bank v. Hales* after "voluminous" discovery. 75 F. Supp. 2d 300, 304, 310-11 (S.D.N.Y. 1999). Finally, the court in *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.* went into great detail about the length of the case. 112 F.R.D. 417, 419-20 (S.D.N.Y. 1986). Here, Ablyazov and the Khrapunovs only recently appeared and filed their motions to dismiss (which remain pending), and discovery has only recently begun. Most importantly, the Kazakh Entities' motion for joinder was made within the original time agreed upon by the parties and ordered by the Court for joinder of additional parties. It was therefore expressly contemplated that joinder would not be untimely if sought within that time.

F.R.D. 435, 450 (S.D.N.Y. 1984) (noting "Hague Convention machinery is quite slow and costly"); International Trade and U.S. Antitrust Law § 8:10 (2d ed.) ("The costs of proceeding under the Hague Convention may be prohibitive in terms of obtaining peripheral evidence from third parties . . . .").

Finally, Triadou's Hail-Mary argument that "joining FBME may raise thorny questions of sovereign immunity and international comity," [ECF No. 226 at 6], is offered without any citation, and the Kazakh Entities are aware of no authority stating that a bank becomes "sovereign" when placed under administration. That fact certainly has not stopped FBME from litigating as a private entity against the Financial Crimes Enforcement Network of the U.S. Treasury Department, nor has "international comity" halted those proceedings. *See generally FBME Bank Inc. v. Lew*, 15-cv-1270 (D.D.C. Aug. 7, 2015).

## V. The Court Should Reject The Defendants' Baseless Suggestion That The Kazakh Entities' Motion To Join FBME Was Brought In Bad Faith

The Khrapunovs' sole argument opposing joinder, echoed by Triadou in its opposition, accuses the Kazakh Entities of having joined FBME solely to defeat Ablyazov's and the Khrapunovs' renewed motions to dismiss this action on *forum non conveniens* grounds. [ECF No. 226 at 6-7]. While the Kazakh Entities will respond to those motions to dismiss in due course, this conspiracy theory lacks credit on its face.

In the first place, there is precisely zero evidence provided by the defendants that FBME was joined for an improper purpose; their accusations of bad faith are supported by nothing more than speculation and innuendo. Further, Triadou's argument that "[i]f Almaty/BTA believed that FBME possessed 'a good deal of relevant evidence,' they would have named FBME as a party when they filed the Original Crossclaims" is perplexing. [ECF No. 226 at 4]. Triadou is certainly aware that the decision to join a party is based on an assessment of that party's possible liability

11

after a thorough inquiry, not a guess as to how much relevant evidence that party might possess. Triadou's suggestion that the Kazakh Entities should have joined FBME as a party earlier, solely as a means to facilitate the recovery of evidence, before conducting sufficient investigation about FBME's potential liability, would have invited sanctions. *See generally* Fed. R. Civ. P. 11(b).

Instead, the joinder of FBME follows the Kazakh Entities' continued investigation of their case, including evidence unearthed during the attachment proceedings and evidentiary hearing. The Kazakh Entities have made new and detailed allegations regarding FBME's active involvement in the defendants' scheme, based on facts unearthed after diligent investigation. This is hardly the case where a tangential party is hastily joined merely for tactical reasons.

Tellingly, Neither the Khrapunovs nor Triadou cites any cases involving *forum non conveniens* to support their novel "improper motive" theory. The Khrapunovs' opposition relies on cases in which joinder would have destroyed complete diversity and deprived the district court of subject matter jurisdiction over the lawsuit. *See Nazario v. Deer & Co.*, 295 F. Supp. 2d 360, 363-64 (S.D.N.Y. 2003) ("[Defendant] argues that plaintiff's primary intent is not to try the two cases as one, but rather to force [defendant] to litigate in a state court venue notoriously inhospitable to target defendants . . . We are compelled to agree."); *Briarpatch Ltd. L.P. v. Geisler Roderdeau, Inc.*, 148 F. Supp. 2d 321, 330 (S.D.N.Y. 2001) (noting that proposed new defendant "is a non-diverse defendant whose addition could well deprive this Court of jurisdiction"). Triadou likewise only cites cases in which a litigant attempted to improperly join a new party in a transparent attempt to defeat diversity jurisdiction in order to force remand to a favored state court forum. *See Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 93 Civ. 2189, 1994 WL 9774, at *1-2 (S.D.N.Y. Jan. 12, 1994) ("There are no substantive allegations of wrongdoing asserted against [the party to be joined]."); *Rodriguez v. Abbott Labs*, 151 F.R.D. 529, 532 (S.D.N.Y. 1993) (rejecting joinder because "plaintiff can no longer assert 'a right to relief' against" party to be joined).

The defendants provide no explanation for why these diversity jurisdiction cases support their claim that motions for joinder should be given particular scrutiny where joinder might impact a *forum non conveniens* motion, and *Rodriguez* specifies that heightened scrutiny is needed "where joinder will defeat diversity jurisdiction and mandate the court to remand the action to state court." 151 F.R.D. at 533. This approach is in line with federal courts' concern with protecting the appropriate limits of subject matter jurisdiction in diversity cases, not with protecting the interests of convenient foreign tribunals. Analogizing diversity jurisdiction cases to *forum non conveniens* in the joinder context is particular inappropriate, as denying joinder to protect diversity is grounded in statute: 28 U.S.C § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder." The defendants have identified no corresponding statutory language or Congressional purpose with respect to a *forum non conveniens* motion, because none exists.

In a fairly recent case, the Ninth Circuit reversed a trial court's dismissal of an action on the ground of *forum non conveniens* where a domestic plaintiff was joined to a class of foreign plaintiffs several months after the original complaint was filed. *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011). The defendants had argued that the domestic plaintiff was illegitimate and should have been dismissed and had its interests in litigating in California ignored for purposes of *forum non conveniens*. *Id.* at 1228. The Court rejected this argument and found the district court had afforded the joined American party insufficient deference on its choice of forum. The court explained that "[a] party's intent in joining a lawsuit is relevant to

the balancing of the *forum non conveniens* factors only to the extent that it adds to an overall picture of an effort to take unfair advantage of an inappropriate forum." *Id.*[9]

The Ninth Circuit's guidance in *Carijano* is instructive here. FBME's joinder should be considered "only to the extent that it adds to an overall picture of an effort to take unfair advantage of an inappropriate forum" – a picture that does not exist in this case. While *Carijano* involved joinder of a new plaintiff and the Kazakh Entities seek to join FBME as a defendant, FBME's involvement in this case is the same as the joined plaintiff in *Carijano*. As alleged, FBME has been involved in the conduct underlying this litigation from the very beginning of Triadou's investment in New York real estate, and likely even earlier than that. This is not a case of fraudulent joinder of a meaningless party for the sole purpose of defeating *forum non conveniens* dismissal. Rather, FBME Bank has been inextricably linked to the conduct of its co-defendants for the better part of a decade.

If there was any question about whether the Kazakh Entities' were seeking to "take unfair advantage of an inappropriate forum," that question has already been answered. The Court has already rejected Triadou's attempt to dismiss this action on *forum non conveniens* grounds, finding that the Kazakh Entities' "choice of forum [was] entitled to substantial deference." [ECF No. 174, at 7]. The new "facts" offered by the individual defendants in their motions to dismiss concern the suitability of Switzerland as a forum or convenience to the litigants, and do nothing to disturb this Court's finding as to the deference owed to the Kazakh Entities' choice of forum or that this district is an appropriate forum. The joinder of FBME is absolutely irrelevant to that question, which is

---

[9] The court distinguished an earlier case that had afforded a joined American plaintiff's choice of forum little deference on the ground that the newly-joined plaintiff had acquired its connection to the matter after the *forum non conveniens* motion had been filed by the defendant. *Id.* at 1229 (discussing *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009)). In *Carijano*, the joined American plaintiff had been involved in the litigation for years before the filing of the action, let alone the filing of the motion to dismiss on the ground of *forum non conveniens*. *Id.*

14

dispositive of the *forum non conveniens* inquiry. The defendants do not seriously contest that the allegations against FBME are tightly linked to those against the existing defendants, making a combined case in an already-accepted forum even more appropriate. As the Ninth Circuit recognized in *Carijano,* to the extent that joining a party such as FBME otherwise tips the scales in favor of a trial in the chosen forum, that is merely more proof that joinder is appropriate and would conserve judicial resources.

## **CONCLUSION**

The Court should grant the Kazakh Entities' motion to join FBME.

Dated: October 3, 2016

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz
Randall W. Jackson
Daniel G. Boyle

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: 212-446-2300
Facsimile: 212-446-2350
