

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

March 17, 2017

**BY ECF AND ELECTRONIC MAIL**

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

    Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
          **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

      We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities") in the above-referenced case, which was recently referred to Your Honor by Judge Nathan for general pretrial supervision. We write in response to the March 15, 2017 letter (ECF No. 286) sent by counsel for defendants Viktor and Ilyas Khrapunov on behalf of non-parties Gennady Petelin, Elena Petelin, and Svetlana Chepurnaya (collectively, the "Petelins"), seeking to quash a third-party subpoena served by the Kazakh Entities on Wells Fargo Bank N.A. (the "March 15 Letter"). Contrary to the arguments set out in the March 15 Letter, it is the defendants who have made the Petelins central to this action. In sworn testimony before Judge Nathan, defendant Triadou SPV S.A. claimed that the funds it used to acquire the key property in this case came not from theft by its co-defendants, but from the Petelins. The Petelins' finances are therefore critical to Triadou's defense and indisputably relevant here.

## Relevant Background

      In this action, the Kazakh Entities contend – as courts and prosecutors elsewhere have already found – that defendants Viktor Khrapunov and Mukhtar Ablyazov, the former mayor of Almaty and former Chairman of BTA Bank, respectively, embezzled billions of dollars from the Kazakh Entities and laundered some of those stolen funds into New York real estate through Triadou, a shell company. *See* ECF No. 219 ¶¶ 28-44, 45-61, 85-97 (Amended Crossclaims).

      As part of attachment proceedings in this action, the Kazakh Entities offered evidence that Triadou's U.S. investments were funded by approximately $70 million of the defendants' stolen funds. Judge Nathan agreed, finding a likelihood that the Kazakh Entities would prevail on the merits of their claims, and granted attachment of Triadou's assets. *See* ECF No. 175.

      The Petelins' finances were first put at issue by the defendants while seeking to avoid attachment. On May 11, 2016, Triadou's director, Cesare Cerrito, submitted an affidavit that served as his direct testimony in the attachment hearing, in which he claimed that Triadou's investments were not funded by defendant Ablyazov, but rather with funds from Gennady Petelin, via a shell company named Telford International Limited. ECF No. 156. Specifically, Cerrito testified that:



> [i]n October 2012, Ilyas Khrapunov and Mr. Petelin agreed that Mr. Petelin would provide debt financing to Triadou to invest in U.S. real estate projects. . . . I reviewed documents demonstrating several transactions engaged in by companies owned by Mr. Petelin, one of which was an investment in a significant oil-and-gas asset from which Mr. Petelin netted several hundred million USD. . . Finally, I reviewed documents on the entity that would provide the funding to Triadou, known as Telford International Limited ("Telford"). These documents showed that Telford was 100% owned by Telford Trust, which in turn belonged to Mr. Petelin's wife, Elena Petelina.

*Id*. ¶ 9-10.

Judge Nathan expressly found Cerrito's testimony not to be credible on this point. *See* ECF No. 175, at 7, n.6 (Court "did not find the testimony of Cerrito credible" and "his description of his 'due diligence' of Telford is not credible"); *id.* at 6 (finding that "Telford is an Ablyazov investment entity used to move Ablyazov's funds."). Nonetheless, in a recent deposition, Cerrito repeated these claims as to the Petelins' role. In light of Triadou's testimony, the Kazakh Entities are obligated to seek evidence as to the Petelins' finances, sources of wealth, and purported ability to make such generous loans. For this reason, on February 24, 2017, the Kazakh Entities served a subpoena for documents on Wells Fargo ("the Subpoena") seeking, among other things, account records for two accounts at Wells Fargo identified as belonging to the Petelins and wire transfer and due diligence records related to the Petelins.[1]

### The Subpoena Seeks Critical Evidence and Should Not Be Quashed

As the Petelins acknowledge, "[w]hen a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion into the affected individual's privacy interests." March 15 Letter, at 2 (quotation marks omitted); *see also Conopco, Inc. v. Wein,* No. 05 Civ. 9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("[E]ven the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims *and defenses* in a federal court action." (emphasis added)). Considering the defenses raised by Triadou, the relevance of documents relating to the Petelins' finances cannot seriously be questioned, and significantly outweighs any privacy concerns.

Relevant evidence is defined as evidence having "any tendency to make the existence of any fact" that is of consequence "more probable or less probable" than it would be otherwise. Fed. R. Evid. 401. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense*. . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). The core of Triadou's defense in this action is the factual assertion that it was funded by the Petelins, not by the other defendants. As such, whether or not the Petelins could or did provide such financing is not only a material fact, but potentially dispositive.

While the Petelins recite the standard at length, their sole relevance argument is an assertion that the Wells Fargo accounts were only opened in 2014. *See* March 15 Letter, at 2. As

---

[1] A copy of the Subpoena is attached hereto as Exhibit 1, in redacted form to obscure the Petelins' account information. Pursuant to Your Honor's Individual Practice 1.a, an unredacted copy of this letter and Exhibit 1 will be e-mailed to chambers.



an initial matter, this argument ignores the fact that the Subpoena also seeks a range of documents related to Wells Fargo's due diligence of the Petelins and wire transfer records connected to the Petelins, which are relevant under any test. Moreover, even if it is true that the Wells Fargo accounts were opened in 2014, these account records remain highly relevant. The relevant Telford transactions occurred between November 2012 and May 2013, *see* ECF No. 142-5 (Telford wire records), not long before the Petelins claim these accounts were opened. If Telford is truly a vehicle used by the Petelins (as Triadou claims), the presence or absence of transfers between Telford and the Petelins' accounts would tend to prove the accuracy of Triadou's assertion. Similarly, the identity of entities moving funds into the Petelins' accounts would tend to prove or disprove Triadou's claims as to the Petelins' purported sources of wealth. Finally, these records will shed light on the general state of the Petelins' finances, tending to prove whether they would have been capable of providing nearly $70 million in loans in 2012-13 – none of which have been repaid, despite coming due more than two years ago.[2]

Moreover, because the Petelins are not within the subpoena power of the Court, the account records may be the only way for the Kazakh Entities to discover information about other accounts utilized by the Petelins, including at the time of the Telford-to-Triadou transfers. Indeed, third party discovery of the Petelins' finances is likely to be the only source of evidence on *any* of these questions, as the Petelins are nonparties located abroad.[3]

Notwithstanding the plain relevance of the Petelins' financial information, during a meet-and-confer, the Kazakh Entities offered a compromise: they would forgo discovery from the Petelins if the Petelins provided sworn testimony disclaiming any funding of Triadou's U.S. investments. If the Petelins' finances are truly irrelevant, they can remove themselves from this action quickly by giving testimonial evidence to that effect. What the Petelins cannot do is act as a front for Triadou's investments while hiding behind privacy claims and jurisdictional defenses when that story is challenged.

For the above reasons, the Petelins' motion to quash the Subpoena should be denied. To the extent valid, the Petelins' privacy concerns can be ameliorated through use of the protective order in this action (ECF No. 253), and any account records may be designated confidential and protected from disclosure. *See Conopco,* 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("[T]o the extent that the financial information Plaintiff seeks is relevant, it must be produced. Its confidentiality can be protected by a variety of means, most notably the Confidentiality Order entered in this action.").

                                              Respectfully,

                                               /s/  Matthew L. Schwartz
                                               Matthew L. Schwartz

---

[2] The case law cited by the Petelins is plainly inapposite. As is obvious from their letter, their cited cases concern subpoenas for irrelevant information, not relevant evidence outweighed by privacy concerns. *See, e.g.,* March 15 Letter, at 2 ("In *Arias*, the court granted the defendant's motion to quash subpoenas issued to two banks, on relevance grounds, because the subpoenas targeted information regarding matters that had been stricken from the case.").

[3] The Petelins' letter explicitly reserves any jurisdictional defenses (March 15 Letter, at 1, n.1), suggesting that they have no intention of participating in discovery.