

*Phone:* (212) 885-5148
*Fax:* (917) 591-7897
*Email:* dskakel@blankrome.com

April 25, 2017

> APPLICATION GRANTED. Chambers will deliver copies of the documents emailed to chambers on April 21, 2017 to be filed under seal with the Clerk of Court. The Clerk of Court shall maintain these documents under seal. Almaty and BTA are directed to file a redacted version of the documents on ECF.
>
> **APPLICATION GRANTED**
>
> Dated: 4/26/2017
>
> *Katharine H. Parker*
> **Hon. Katharine H. Parker, U.S.M.J.**

<u>VIA ECF</u>

The Honorable Katherine H. Parker
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

  Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
     Case No. 15-CV-5345 (AJN) (KHP)

Dear Judge Parker:

  We represent Triadou SPV S.A. ("Triadou") and write in response to the April 21, 2017 letter from Almaty and BTA (together, "Almaty/BTA") regarding the sealing of several documents attached as exhibits to their letter motion to compel the depositions of Marc Gillieron and Petr Krasnov, which letter was emailed to Your Honor on April 21 at 7:24 pm. For the reasons set forth below, Triadou respectfully requests that the Court permit Almaty/BTA to file their letter motion and the accompanying exhibits under seal, and to publicly file a version of the letter motion containing the redactions proposed by Almaty/BTA.

  Rule III.e of this Court's Individual Practices in Civil Cases requires parties seeking the sealing of documents to explain the reasons for doing so in light of the Second Circuit's decisions in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) and *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132 (2d Cir. 2016).[1] Those cases focus on the right

---

[1] It does not appear that counsel for Almaty/BTA complied with Rule III.e of this Court's Individual Practices in Civil Cases, which requires that "counsel for the Parties will discuss, in good faith, the need to file Confidential Materials under seal," and that "[i]f a request for redactions is based on another party's designation of information as Confidential, the parties shall confer and jointly submit the request for redactions." Counsel for Almaty/BTA requested a response from Triadou, not a discussion or conference, and afforded Triadou less than six hours to confer with its client to determine whether it could accommodate the confidentiality waiver request as to the documents and testimony in question. Further, counsel for Almaty/BTA did not respond to Triadou's request to hold a meet and confer.

The Chrysler Building 405 Lexington Avenue New York, NY 10174-0208

www.BlankRome.com

Boca Raton • Cincinnati • Fort Lauderdale • Houston • Los Angeles • New York • Philadelphia • Pittsburgh • Princeton • San Francisco • Shanghai • Tampa • Washington • Wilmington



The Honorable Katherine H. Parker
April 25, 2017
Page 2

of public access to "judicial documents" and the weight of the presumption of access afforded under particular circumstances. Because of the nature of the judicial documents at issue in those cases, those documents were subject to a strong presumption of access. *See Lugosch*, 435 F.3d at 123 (strong presumption of access attaches to exhibits to summary judgment motion); *Bernstein*, 814 F.3d at 140 (complaint is "cornerstone of every case" and therefore strong presumption of access attaches).

Here, in contrast, the documents and testimony cited by Almaty/BTA and as to which Triadou requests sealing, are being used for discovery purposes – whether certain individuals should be subject to deposition under Rule 30 or through non-party practice – and therefore are entitled to only a weak presumption of access. *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-6608, 2014 WL 4346174, at *1-2 (S.D.N.Y. Sept. 2, 2014) (weight of presumption of access to documents submitted in support of motion to compel "is not particularly great"); *Stern v. Cosby*, 529 F. Supp. 2d 417, 421-22 (S.D.N.Y. 2007) (noting presumption attaching to evidence submitted for motion to compel "would be low"). Where the presumption of access is weak, it can be overcome by showing the documents contain confidential business information. *See Alexander Interactive,* 2014 WL 4346174, at *2. Triadou designated the documents and testimony in question as "Confidential" under the Parties' Stipulated Protective Order, as they contain business information that has not been otherwise disclosed. The Stipulated Protective Order entered by the Court in this case contemplates such sealing. (ECF No. 252-1, ¶ 9).

Triadou also submits that sealing is appropriate in the absence of any objection at this stage, given that Almaty/BTA "take no position as to the confidentiality of the materials."

Finally, and most concerning, the Court should order the sealing of these documents based on information Triadou's counsel recently obtained. Specifically, counsel learned last Friday (April 21) that on March 27, 2017, the mother of Petr Krasnov – one of the individuals whose deposition Almaty/BTA seeks to compel – received a phone call from a number in the United Kingdom. The summary of the call is set forth in a statement prepared and signed by Krasnov's mother,[2] but the relevant portions are as follows:

- The caller identified himself as working for an investigation agency that is employed by a foreign state pursuing a group of criminals in several countries including Switzerland;

---

[2] Mrs. Krasnova's statement, attached hereto as Exhibit A, was attached to a criminal complaint she filed with Swiss authorities. Krasnov filed a similar complaint with Swiss authorities as well, also attaching Mrs. Krasnova's statement.



The Honorable Katherine H. Parker
April 25, 2017
Page 3

- The caller's employer recently became aware of Krasnov from documents and testimony from a U.S. legal proceeding;[3] and

- The caller sought to convince Krasnov's mother that Krasnov should travel to London to provide evidence to the investigator, otherwise "who knows what harm and suffering might come to Petr and his family." (Ex. A).

Based on these allegations, it is quite likely that the caller is connected with Almaty/BTA and that the information the caller referenced came from this proceeding. In light of the allegedly threatening nature of this interaction, the Court should not permit documentation pertaining to Krasnov to be made publicly available in connection with a motion to compel his deposition, particularly given that Krasnov is not a party here.

Accordingly, Triadou respectfully requests that the Court permit Almaty/BTA to file under seal its un-redacted letter motion and the accompanying exhibits, and to allow Almaty/BTA to publicly file the redacted version of its letter motion submitted to the Court via email on April 21, 2017. For the same reasons, Triadou also respectfully requests permission to file under seal documents and testimony it files in support of its letter opposing Almaty/BTA's letter motion to compel to the extent such documents and testimony were produced by Triadou and designated as Confidential under the Stipulated Protective Order. Under Rule III.e of the Court's Individual Practices, Triadou will make a specific request contemporaneous with its filing detailing any proposed redaction to its opposition letter and identifying specific documents.

Thank you for your consideration.

                                              Respectfully submitted,

                                                s/ Deborah A. Skakel
                                              Deborah A. Skakel

cc:      All Counsel of Record (*via* ECF)

---

[3] To the best of counsel's knowledge, neither Fiscus nor Krasnov is involved in any other litigation in the United States.

# Exhibit A



## Statement of Maria Krasnova regarding a telephone call on 27 Mar 2017

In the evening of 27 March 2017, I received a call on my home landline (022 776 01 66), which is listed in the White Pages. The call originated from a number in the United Kingdom (+44 20 8068 3921). The caller was a man who spoke with a British accent. The caller later introduced himself as Roger HUTCHINS, and I will refer to him as Mr. Hutchins going forward.

At first, Mr. Hutchins asked to speak with Mikhail Krasnov (my husband). I replied that Mikhail was currently away on a business trip to Moscow. Mr. Hutchins then asked me for Mikhail's Moscow mobile phone number. I replied that I do not give out contact details of my husband and asked him what he wished to speak to my husband about. Mr. Hutchins replied that he was calling to speak about our son, Petr Krasnov, and that he believed it would be in my husband's interests to hear him out. I repeated that I do not plan to give him my husband's mobile number, however I could give him my personal email address where he could send his message and I would forward it to my husband. Mr. Hutchins replied that he did not wish to put anything in writing, but that since I was Petr's mother, he would be willing to talk to me about the matter in question if I were interested. I agreed.

Mr. Hutchins informed me that he was working for an investigation agency, although he did not specify its name. He then explained that his employer has been pursuing a group of international criminals for many years. He clarified that until recently his employer was not aware of Petr's existence or involvement. However, according to Mr. Hutchins, his employer had recently become aware of Petr's supposed involvement from documents and testimony, which his employer obtained in a court case in the United States. According to Mr. Hutchins, his employer believes that Petr is *not* knowingly helping these supposed criminals, but that Petr is apparently a witness to their crimes and therefore possesses important information. Mr. Hutchins's employer would like Petr to share with them in exchange for immunity from prosecution.

At this point I asked Mr. Hutchins why he was calling Petr's parents instead of discussing this matter directly with Petr himself. He replied that "Petr is still a young chap and still has his whole life in front of him". I informed Mr. Hutchins that Petr is 33 years old, and is certainly capable of having a conversation on any topic himself. Mr. Hutchins insisted that Petr was nevertheless much younger than his parents and "did not have their wisdom and life experience about what problems can arise in life". He then suggested that my husband and I should convince Petr to come to London to meet with Mr. Hutchins's investigation agency and give testimony. Mr. Hutchins then said that if Petr failed to comply, "who knows what kind of *harm* and *suffering* might come to him and his family". (These were the exact words he used)

I took this statement from Mr. Hutchins as a threat. I informed him that I was a Swiss citizen, that he was calling me from abroad on my Swiss home number, and threatening my family and me. I told him that I would be contacting the Swiss authorities with a complaint about this call. To this, Mr. Hutchins replied that his employer was a sovereign state, which is pursuing the criminal group in several countries, including in Switzerland. Mr. Hutchins added that in Switzerland they (he said "we" presumably referring to his investigation agency) were working in close cooperation with Swiss authorities. I replied that I would

request a confirmation from Swiss authorities that they sanctioned his call. To this he replied, "sure, sure, go ahead. They are aware".

Mr. Hutchins then again repeated that we should strongly encourage Petr to travel to London to give testimony to his employer. He added that we should tell Petr to think long and hard about all the possible negative consequences that can befall him and his family members if he refuses to cooperate with Mr. Hutchins's employer. I asked Mr. Hutchins if this was a threat, to which he replied "no, just a warning".

I asked Mr. Hutchins to spell his name for me and provide me with a phone number where my husband could reach him, if he wanted to. Mr. Hutchins provided the call back number in the UK: +44 20 8068 3921. I then informed Mr. Hutchins that I had nothing further to discuss with him and hung up the phone.

*[signature]*

Case 1:15-cv-05345-AJN-KHP Document 331-1 Filed 04/28/17 Page 6 of 6