```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/5/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC, | |
| Plaintiffs, | ORDER |
| -against- | 1:15-CV-05345 (KHP) (AJN) |
| MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS, and TRIADOU SPV S.A., | |
| Defendants. | |

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

Non-parties Gennady Petelin, Elena Peteline, and Svetlana Chepurnaya (the "Movants") have moved to quash a third-party subpoena served by Plaintiffs, the City of Almaty, Kazakhstan, and BTA Bank (the "Kazakh Entities") on Wells Fargo Bank, N.A. (the "Subpoena"). Wells Fargo, N.A, has not objected to the Subpoena or filed any papers with this Court concerning it.

The Subpoena seeks various bank records concerning the Movants and their bank accounts. (Doc. Nos. 286, 299.) The Movants argue that the Subpoena infringes on their privacy rights and is overbroad. (*Id*.) In response, the Kazakh Entities argue that the Movants' finances are directly relevant to defenses in this case and outweigh any privacy concerns. (Doc. Nos. 288, 301.) For the reasons that follow, the motion to quash is denied in part and granted in part as set forth below.

## BACKGROUND

The Court assumes the readers' knowledge of this case and sets forth only those facts relevant to this motion. In this action, the Kazakh Entities contend that Defendants Viktor

1

Khrapunov and Mukhtar Ablyazov, the former mayor of Almaty and former Chairman of BTA Bank, respectively, embezzled billions of dollars from the Kazakh Entities and laundered some of those stolen funds into New York real estate through a company named Triadou. (*See* Doc. No. 219 ¶¶ 28-44, 45-61, 85-97 (Amended Crossclaims).) In connection with attachment proceedings in this action, the Kazakh Entities have asserted that Triadou's U.S. investments were funded by approximately $70 million of funds stolen from the Kazakh Entities. (*See* Doc. No. 175.) Triadou, on the other hand, has maintained that its investments were not funded by stolen funds, but rather via loans from a shell company named Telford International Limited, which is owned and funded by the Petelins. (Doc. No. 156.) In light of this assertion by Triadou, the Kazakh Entities served the Subpoena on Wells Fargo, where the Movants maintain bank accounts, seeking evidence concerning the source of Triadou's funding for the New York real estate investments. The Subpoena seeks account, wire transfer, and due diligence records related to the Petelins, Triadou, Telford, and other entities. The Subpoena contains fourteen demands for documents seeking, *inter alia*, all documents concerning the Petelins, the identified bank accounts, any transfer of funds into and out of the bank accounts, and any associated credit cards, debit cards, check books. The documents are sought from the period of January 1, 2007 to present. (*See* Doc. No 288-1.)

     Movants object to the Subpoena on several grounds. First, they object to the production of their private bank records and contend that their privacy interests outweigh the relevance of the subpoenaed information. Movants also contend that the Subpoena is overbroad insofar as it seeks information that post-dates the 2013 real estate transaction at issue and that it seeks irrelevant information because the Petelins did not open the Wells Fargo accounts until after

2

the real estate transaction took place and, thus, they assert, the accounts could not possibly contain relevant information. (*See* Doc. No 299-3, Tr. 31:24-32:9.)

The Kazakh Entities argue that they are entitled to learn when exactly the Wells Fargo accounts were opened and to determine, based on official bank records, whether there are any transactions between the Petelins, Telford, and Telford's parent company. (*See* Doc. No 299-3, Tr. 21:9-21:12; 25:22-26:6.). The Kazakh Entities also have proffered that "the United Kingdom has entered a global asset freezing order related to [Defendant] Ablyazov's assets that lists as frozen entities literally thousands of shells through which [Defendants] have . . . laundered [their] funds." (*See* Doc. No 299-3, Tr. 26:6-10.) Accordingly, the Subpoena also seeks information about transactions, if any, between the Petelins and the entities that are subject to the global asset freezing order. The Kazakh Entities argue that this information is relevant because, "if it turns out that money flowed through the Petelins from one entity that's [Defendant] Ablyazov-connected . . . to another entity that's Ablyazov-connected . . . [then the Petelins are] also . . . part of this chain" of money laundering. (*See* Doc. No 299-3, Tr. 28:9-16.) Finally, with respect to the temporal scope of the Subpoena, they contend it is appropriate because they expect to see information about the source of the funds initially placed in the accounts and that some relevant monetary transactions, including loan and interest payments, occurred in 2014 to the present (after the initial loan that funded the real estate transaction at issue).

## DISCUSSION

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to

3

the needs of the case." FED. R. CIV. P. 26(B)(1). Federal Rule of Civil Procedure 45 sets forth the standards and procedures for obtaining information from non-parties. In general, the relevance standard that applies when seeking discovery from a party also applies to non-parties. *Malibu Media, LLC v. Doe*, No. 15-cv-3147 (AJN), 2016 U.S. Dist. LEXIS 134478, at *3-4 (S.D.N.Y. Sept. 29, 2016) ("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1), which provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense) (citations omitted); *Wullz v. Bank of China Lid.*, 32 F. Supp. 3d 486, 494 (S.D.N.Y. 2014). However, Rule 45 requires the party serving a subpoena to take "reasonable steps to avoid imposing undue burden or expense on [the] person subject to the subpoena." FED. R. CIV. P. 45(D)(1). Thus the entity or person subject to a subpoena may move to quash or modify the subpoena pursuant to Rule 45(d)(3) based on, among other reasons, undue burden.

Courts have recognized that "individuals whose banking records are subpoenaed have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Id*. But "even the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action." *Conopco, Inc. v. Wein*, No. 05-cv-9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007).

Here, the Kazakh Entities have demonstrated that the Movants' finances are directly relevant to the Defendants' defenses. Specifically, Defendants argue that the Petelins are the source of money for Triadou's investments rather than stolen funds, and that the Petelin's wealth does not come from any of the stolen funds. This argument provides a defense to the

claims asserted in this case. Thus, the Kazakh Entities are entitled to discovery to evaluate evidence that may support or disprove that defense. *See* FED. R. CIV. P. 26(b)(1). Further, even if the Wells Fargo accounts were opened in 2014, after the purchase of real estate, Wells Fargo's due diligence records may shed light on the Petelins' source of wealth, which addresses whether the Petelins were financially able to fund Triadou's investments and/or whether their source of wealth came from the stolen funds. Further, as the Kazakh Entities argue, if the Defendants' assertions are true, one might expect to find transfers between Telford, Triadou, and the Petelins' accounts. The Kazakh Entities also have demonstrated that discovery on the Movants' finances is proportional to the claims and defenses in this case because production of the bank records "would streamline discovery while likely eliminating need for broader discovery into the Petelins' finances." (Doc. No. 301 at 3.)

The subpoena as it stands, however, must be narrowed to minimize the intrusion on Movants' privacy and target only relevant information. The Kazakh Entities' April 14, 2017 letter states that the Subpoena seeks the following information:

1. The source of the Petelins' money;

2. Due diligence Wells Fargo conducted into the Petelins;

3. Wire transfers relating to the Petelins and other individuals and entities;

4. Account activity for specifically identified accounts;

5. Profits and capital and/or repayment of loan principal and interest, if any, returning to the Petelins from Telford-related investments; and

6. The absence of any account activity relating to Telfords' or Triadou's investments.

(Doc. No. 301 at 1-2.) To the extent possible, Wells Fargo should redact banking transactions unrelated to the claims and defenses in this action. Production of information in response to Request numbers 1, 3, 4, and 6 above should be limited to transactions between the Petelins' accounts, on the one hand, and, on the other hand, Telford, Triadou and the named entities whose accounts have been frozen by the U.K. Courts, as mentioned during the April 11, 2017 discovery conference. (*See* Doc. No 299-3, Tr. 26:6-10.) The Kazakh Entites are directed to provide a list of the entities whose accounts have been frozen by the U.K. Courts to Wells Fargo, and to the extent the Subpoena requests account transaction information, it is modified to require only the production of transaction information between the Petelins and Telford, Triadou, and the other entities identified by the Kazakh Entities pursuant to this order. If Wells Fargo cannot easily segregate the transactions described above from other account activity, however, Wells Fargo shall produce all account activity. To further protect Movants' privacy concerns, information produced shall be labeled confidential and shall be subject to the terms of the Stipulation and Order of Confidentiality (doc. no. 253).

      The Clerk is respectfully directed to terminate the motion pending at document number 299.

SO ORDERED.

Dated:   May 5, 2017
           New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge