UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/16/2017
```

CITY OF ALMATY, KAZAKHSTAN, and BTA
BANK JSC,

                              Plaintiffs,

                 -agajnst-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV,
ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

                              Defendants.

**MEMORANDUM AND ORDER**

1:15-cv-05345 (KHP) (AJN)

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

        The City of Almaty, Kazakhstan, and BTA Bank, a nationalized bank in Kazakhstan, (the

"Kazakh Entities"), move for an order compelling defendant Ilyas Khrapunov, a citizen of

Kazakhstan and resident of Switzerland, to sit for a deposition pursuant to Federal Rule of Civil

Procedure 30 at an agreed upon location outside of Switzerland, where Hague Convention

procedures need not be followed. (Doc. No. 303.) Khrapunov, who is the subject of an

INTERPOL Red Notice and risks arrest and extradition to Kazakhstan if he leaves Switzerland,

objects to his deposition being taken anywhere but Switzerland and argues that Hague

Convention procedures should apply to his deposition.

        The Kazakh Entities also move for an order requiring defendant Triadou SPV S.A.

("Triadou") to produce two individuals, Marc Gillieron and Peter Krasnov, both residents of

Switzerland, for deposition in the United States. (Doc. No. 317.) The Kazakh Entities contend

that Gillieron and Krasnov are "managing agents" of Triadou and, therefore, can be compelled

to appear for deposition in the United States and deposed pursuant to Rule 30 of the Federal

Rules of Civil Procedure. Defendant Triadou asserts that these two individual non-parties are

not officers, directors, or managing agents of Triadou and that it does not have control over them. Thus, it states that it cannot produce them in the United States or elsewhere for deposition. Instead, to the extent Plaintiffs seek Gillieron's and Krasnov's depositions, Triadou argues that Plaintiffs must follow Hague Convention or other applicable treaty procedures to obtain the testimony they seek.

For the reasons that follow, the Kazakh Entities' motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case involves an ongoing international drama involving the government of Kazakhstan, its largest city and national bank on the one hand and self-proclaimed political opponents of the current president of Kazakhstan on the other hand. The Kazakh Entities allege that Defendants embezzled billions of dollars from Kazakhstan and fled to other jurisdictions when their crimes were discovered. Defendant Viktor Khrapunov, the former mayor of Almaty and father of the proposed deponent Ilyas Khrapunov, lives in Switzerland. He has turned over his passport to Swiss authorities and his assets have been frozen pursuant to an order by a court in the United Kingdom. Defendant Mukhtar Ablyazov, the former Chairman of BTA Bank and father-in-law of proposed deponent Ilyas Khrapunov, is currently incarcerated in a French prison. The Kazakh Entities assert that Ilyas Khrapunov assisted his father and father-in-law by funneling some of the money they stole into real estate investments, including two investments in New York. There is no dispute that Ilyas Khrapunov funded the New York real estate investments (the Flatotel and a new condominium complex being built at the site of the former Cabrini Medical Center) through defendant Triadou, an entity formed under the laws of

Luxembourg with its principal place of business in Switzerland. The dispute concerns the source of the funds.  Plaintiffs contend the money came from stolen funds. Defendants contend that the funding for the New York real estate investments came from the Petelin family, who are related to Victor Khrapunov's daughter by marriage, and not from any stolen funds.

This action commenced in New York State court when Plaintiffs CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC ("the Chetrit Entities") filed an interpleader complaint in July of 2015 against Triadou and the City of Almaty. The Chetrit Entities, who had entered into an assignment agreement with Triadou whereby they would assign interest in the New York real estate investment to Triadou, claimed they were exposed to suits from both Triadou and the City of Almaty because Triadou had allegedly acquired its assigned interest with funds stolen from Almaty. The interpleader action was then removed to this Court (doc. no. 1), at which time the City of Almaty and other Kazakh Entities asserted a number of crossclaims against Defendants including under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law. The Honorable Alison J. Nathan granted Triadou's motion to dismiss the RICO claims as well as alter ego and replevin claims but denied Triadou's motion to dismiss the remaining state law claims for fraudulent transfer, unjust enrichment, conversion, constructive trust, and fraud. (Doc. Nos. 174, 257.) She also denied Triadou's motion to dismiss on forum non conveniens grounds. (Doc. Nos. 174.) Finally, Judge Nathan issued an order of attachment to preserve the New York-based assets at issue during the pendency of this litigation. (Doc. No. 175.)

Since then, the individual defendants have filed motions to dismiss for failure to state a claim, lack of personal jurisdiction, forum non conveniens, and statute of limitations grounds.

Additionally, Triadou has filed a motion to dismiss for lack of subject matter jurisdiction because no federal statutory claims remain in this action. These motions are pending before Judge Nathan. (Doc. Nos. 231, 227, 268.) Fact and expert discovery are currently set to end by July 14, 2017 and September 8, 2017, respectively. (Doc. No. 293.)

The parties have vigorously litigated this action. They have exchanged documents, served subpoenas and taken some depositions, though not of any of the individual defendants. In March of 2017, the Kazakh Entities took the Rule 30(b)(6) deposition of Triadou's Director, Cesare Cerrito, in New York, pursuant to an order by Judge Nathan. The Kazakh Entities argue that Cerrito was unable to answer critical questions "plainly within the corporate knowledge of Triadou." (Doc. No. 317 at 1.) Unsatisfied with Cerrito's deposition, the Kazakh Entities then noticed the depositions of Krasnov and Gillieron pursuant to Rule 30(b)(6) on the theory that they are managing agents of Triadou. Both individuals helped prepare Cerrito for his deposition. Gillieron was a director of Triadou during the relevant period in this action, and is now employed by Triadou's affiliate company, SDG Capital S.A. ("SDG"), also based in Switzerland. Krasnov is employed by Fiscus S.A., based in Switzerland, and provides consultancy services to Triadou on United States investments. Notwithstanding Gillieron's and Krasnov's apparently voluntary roles in preparing Cerrito for his deposition, Triadou objects to the deposition notices and states that it does not in fact have any power to force either individual to attend a deposition in New York.

Because Ilyas Khrapunov is most knowledgeable about the source of the funding for the New York real estate investments, Plaintiffs also wish to depose him. Khrapunov does not

dispute that he has relevant information, but contends that he should be deposed in Switzerland under the Hague Convention rules.

## DISCUSSION

### I.   Motion To Compel Khrapunov Deposition Outside of Switzerland

The Kazakh Entities move for an order requiring Khrapunov to sit for a deposition under the Federal Rules at a mutually-agreeable location outside of Switzerland because conducting the deposition in Switzerland under the Hague Convention will present serious impediments to collecting evidence. In response, Khrapunov argues that evidence adduced under the Hague Convention will be sufficient and that forcing him to leave Switzerland will subject him to detention and extradition.

#### A.   Legal Standards

Federal Rules of Civil Procedure 30 and 28 govern the procedures for taking oral depositions of party witnesses. Rule 30 specifies that reasonable written notice must be given to every other party and "must state the time and place of the deposition." Fed. R. Civ. P. 30(b)(1). Rule 28 specifies the persons before whom depositions may be taken within the United States and in a foreign country. Fed. R. Civ. P. 28. The Federal Rules do not, however, specify where a deposition is to take place. Courts are accordingly given broad discretion to manage discovery and determine where depositions shall take place. *See* Fed. R. Civ. P. 26(c)(1) (courts may for good cause issue an order "specifying terms, including time and place . . . for the disclosure or discovery"); *Botkin v. Donegal Mut. Ins. Co.*, No. 5:10-cv-00077 (MFU), 2011 WL 2447939 at *8 (W.D.Va. June 15, 2011) ("Courts have broad discretion to determine the appropriate location for a deposition.") (citations omitted); *Mill-Run Tours, Inc. v. Khashoggi*,

124 F.R.D. 547, 550 (S.D.N.Y. 1989) (holding that "courts retain substantial discretion to designate the site of a deposition").

Ordinarily, a plaintiff's deposition will be held in the forum district, as plaintiff selected the forum and thus has consented to participating in proceedings there. *Botkin*, 2011 WL 2447939, at *8; Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2112 (3d ed.). In contrast, "a non-resident defendant ordinarily has no say in selecting a forum," and thus "an individual defendant's preference for a situs for his or her deposition near his or her place of residence—as opposed to the judicial district in which the action is being litigated—is typically respected." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010); *see also* Wright & Miller, *supra*, § 2112 ("[C]ourts are more willing to protect defendant from having to come to the forum for the taking of his or her deposition than they are in the case of plaintiffs."). Hence, there is an initial presumption that a defendant should be deposed in the district of his residence or principal place of business. *Mill-Run Tours*, 124 F.R.D. at 550.

To overcome this presumption, circumstances must exist "distinguishing the case from the ordinary run of civil cases." *In re Outsidewall Tire Litig.*, 267 F.R.D. at 472 (citations omitted). "[T]he plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the Court to suspend the general rule" of holding depositions where defendants are located. *Sloniger v. Deja*, No. 09-cv-858S (HBS), 2010 WL 5343184, at *4 (W.D.N.Y. Dec. 20, 2010) (citation omitted). Factors considered by courts in determining the location of a defendant's deposition include: the location of counsel for the parties, the number of corporate representatives to be deposed, the likelihood of significant discovery disputes and the Court's ability to resolve those disputes, whether the persons to be deposed often travel for business

purposes, a balancing of the equities, issues of comity/Federal Rule of Civil Procedure 28(b), the

relative costs of the depositions, and criminal liability. *See S.E.C. v. Banc de Binary*, No. 2:13-cv-

993 (RCJ) (VCF), 2014 WL 1030862, at *3 (D. Nev. Mar. 14, 2014); *Cadent Ltd. v. 3M Unitek*

*Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005) (citing *Armsey v. Medshares Mgmt. Servs.*, 184 F.R.D.

569, 571 (W.D. Va. 1998); *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125,

127 (N.D. Tex. 1992); *Mill-Run Tours, Inc.*, 124 F.R.D. at 550-52. Courts in the Second Circuit also

have considered the hardship of compliance on the party or witness from whom discovery is

sought and the good faith of the party resisting discovery. *Laydon v. Mizuho Bank, Ltd.*, 183 F.

Supp. 3d 409, 420 (S.D.N.Y. 2016).

In addition to the presumption that a defendant's deposition will be taken where the

defendant resides, there is a presumption that the Federal Rules, not the Hague Convention or

other applicable treaty, will govern depositions taking place both overseas and abroad. The

Hague Convention sets forth procedures by which a judicial authority in one contracting state

may request evidence located in another contracting state. *Societe Nationale Industrielle*

*Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). When discovery is

sought from a foreign party, there is no rule of "first resort" that compels the discovering party

to attempt to utilize the Hague Convention's procedures before resorting to the Federal Rules.

*See In re Auto. Refinishing Paint Antitrust Litig*., 358 F.3d 288, 300 (3d Cir. 2004). The Federal

Rules remain the "normal method[ ] for federal litigation involving foreign national parties"

unless the facts of a given case indicate "the 'optional' or 'supplemental' Convention

procedures prove to be conducive to discovery." *Id*. at 300 (quoting S*ociete Nationale*, 482 U.S.

at 536). In order to compel application of the Hague Convention over the Federal Rules, the

party seeking to apply the Convention procedures bears the burden to show that the "particular facts, sovereign interests, and likelihood [of resorting to Hague procedures] will prove effective." *Id.* at 300, 305. In circumstances where a defendant seeks to be deposed where he resides but that country precludes application of the Federal Rules, there is an inherent tension between the presumption that a deposition will occur where defendant resides and the presumption that the Federal Rules shall govern the deposition. Thus determining the deposition location of a foreign defendant in this situation is a fact intensive inquiry that must be guided by the above-mentioned factors and principles.

### B. Application of Legal Standards

First turning to where Khrapunov's deposition shall take place, there is a presumption that Khrapunov will be deposed in Switzerland, where he resides, because he is a defendant in this case and did not choose this forum for litigation. Indeed, the Kazakh Entities removed the original state court interpleader action to this Court and brought crossclaims against Khrapunov and others. Therefore, the Kazakh Entities have the affirmative burden to demonstrate "peculiar circumstances which compel the court to order the deposition to be held in an alternate location." *Dagen v. CFC Grp. Holdings Ltd.*, No. 00-cv-5682 (CBM), 2003 WL 21910861, at *2 (S.D.N.Y. Aug. 11, 2003). It appears that counsel for all parties who have entered notices of appearance are located in New York and at least one deposition of Triadou's corporate representative has taken place in New York. All of the defendants in this case, however, reside in Switzerland or within Europe, and depositions of other individual defendants may too have to take place in Europe. Further, although taking Khrapunov's deposition in New York would be most cost efficient, the Kazakh Entities have stated that they are willing to conduct the

deposition in Europe, but outside of Switzerland, where the Federal Rules can govern. Thus, the parties will incur substantial travel costs whether the deposition is held in Switzerland or another European country.

This Court is sensitive to the fact that obtaining Khrapunov's testimony in Switzerland will likely be time consuming and cumbersome because of the Swiss rules governing discovery, as further discussed below, but finds this does not outweigh the hardship that Khrapunov may face if he is forced to travel outside of Switzerland. Khrapunov argues that he faces a serious risk of detention and extradition if he is forced to leave Switzerland because he is subject to an INTERPOL Red Notice. In response, the Kazakh Entities argue that there is no risk that Khrapunov will be detained and extradited if he is forced to leave Switzerland because a Red Notice is not an arrest warrant but rather a notification that a person is wanted by a third country and that this country is seeking international police cooperation. The Kazakh Entities provide no support for this argument besides stating that Khrapunov was added to the INTERPOL list of wanted persons in 2012 and he has since freely traveled internationally. According to Khrapunov, however, a Red Notice is a request for any country to identify or locate an individual with a view to their provisional arrest and extradition in accordance with the country's national laws. Thus, an individual who is subject to a Red Notice is subject to arrest by the local authorities in any member country, including the UK and Spain. Khrapunov further submitted a declaration from a London attorney outlining the effects of being the subject of an INTERPOL Red Notice, explaining the potential for Khrapunov's extradition, and confirming that Khrapunov's view that he is safe from extradition in Switzerland is justified. Khrapunov also submitted evidence demonstrating that he was added to the INTERPOL wanted

persons list in 2014 and has not since traveled outside of Switzerland due to fear of extradition. Thus, the Court finds that Khrapunov has submitted sufficient evidence to demonstrate a credible risk of detention and extradition should he be forced to leave Switzerland.

The Kazakh Entities argue that even if Khrapunov's fear of arrest and extradition is credible, there is still no justification for avoiding deposition under federal law because a party may not avoid a deposition to evade an outstanding warrant, avoid being arrested, or maintain fugitive status. The Kazakh Entities cite several cases in support of their argument that fear of arrest is not a justification for avoiding a deposition. Those cases are inapplicable, however, because they involve either plaintiffs seeking to avoid a deposition or parties seeking to avoid arrest on pending domestic charges, and this Court is unaware of any pending United States criminal charges against Khrapunov. In *Restis v. Am. Coal. Against Nuclear Iran, Inc*., cited by the Kazakh Entities, the plaintiff sought to avoid a U.S. deposition for fear that he would be arrested if he left Greece. In that case, plaintiff's counsel's unsworn statements regarding plaintiff's fear were not enough to overcome the general rule that a non-resident plaintiff must make himself available for examination in the judicial district he selected as the forum in which to bring suit. *Restis v. Am. Coal. Against Nuclear Iran, Inc*., No. 13-cv-5032 (ER) (KNF), 2014 WL 1870368, at *3 (S.D.N.Y. Apr. 25, 2014). Here, Khrapunov is a defendant, not the plaintiff, and has no counterclaims against the Kazakh Entities. Khrapunov did not select this forum, and his arguments are supported by a sworn statement from UK counsel. In sum, the relevant factors militate in favor of conducting Khrapunov's deposition in Switzerland.

Next, the Court turns to whether the Federal Rules should apply to Khrapunov's deposition. As stated above, the Federal Rules are the presumptive method for obtaining

discovery in federal litigation involving foreign national parties. *See Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 524. But because Khrapunov resides in and seeks to be deposed in Switzerland, there are special considerations. The Swiss penal code precludes utilization of discovery methods prescribed by the Federal Rules and makes it a crime for an attorney to conduct a private deposition. *See Schindler Elevator Corp. v. Otis Elevator Co*, 657 F. Supp. 2d 525, 531 (D.N.J. 2009) (finding that the Swiss Hague procedure would not comport with the general procedures and practices of a deposition recognized by the Federal Rules); *see also* U.S. Department of State, *Legal Considerations*,

https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/switzerland.html, last visited June 1, 2017 ("The Swiss penal code provides that attorneys attempting to take a deposition or serve process in Switzerland outside of these authorized methods are subject to arrest on criminal charges."). For this reason, Khrapunov seeks to be deposed under the Hague Convention and Swiss procedures.

Khrapunov bears the burden of proving that Hague procedures will be effective in collecting evidence in this case. *See Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 544. The Kazakh Entities argue that Khrapunov cannot meet his burden because depositions under the Hague Convention are conducted by a Swiss commissioner who provides only a summary of the testimony, not a transcript, and deposition questions must be submitted before the deposition without a chance for cross examination. Because of these issues, they seek to depose Khrapunov outside of Switzerland under the Federal Rules.

In response and in support of his argument that he should be deposed in Switzerland, Khrapunov argues that the Hague Convention provides an adequate means of obtaining

deposition testimony in Switzerland. Khrapunov submitted a memorandum from Swiss counsel outlining two ways to take evidence in Switzerland under the Hague Convention. Under the first option, the Kazakh Entities can prepare written questions and submit them to a Geneva judge. The judge will then call the party whose deposition has been requested to a hearing in the Geneva Tribunal, read the written questions to him, and summarize the witness' answers to the clerk of court. The clerk of court creates official minutes containing the judge's summary and presents the minutes to the deponent who must sign the minutes and confirm that the summary is accurate. Lawyers for the parties may request additional information be added to the minutes before the deponent signs the minutes. Under the second option, an appointed diplomatic officer, consular agent of the U.S., or an appointed commissioner may aid the parties in obtaining oral evidence. Under this option, the Swiss Federal Office of Justice would allow a verbatim deposition transcript be created. Under both options cross-examination, albeit limited, would be possible. While the Court acknowledges that the procedures for taking depositions under Swiss law and the Hague Convention are more cumbersome than the Federal Rules, Khrapunov has sufficiently demonstrated that the Kazakh Entities will likely be able to obtain Khrapunov's transcribed testimony with an opportunity for at least some cross-examination.

The Kazakh Entities argue that Judge Nathan has "already recognized that Switzerland is not an acceptable location because of the restrictions imposed on testimony under Swiss law." (Doc. No. 303 at 2.) Judge Nathan's ruling did not go that far, however. While she acknowledged the procedures for obtaining testimony under the Hague Convention are often cumbersome, expensive, and unpredictable, she also stated that the depositions of certain

12

individual defendants with travel restrictions may have to take place in Switzerland or some other Hague-Convention jurisdiction "out of sheer necessity." (Doc No. 284.)

After carefully weighing the facts of this case and the arguments of the parties, the Court finds that Khrapunov has met his burden to show that taking his deposition under the Hague Convention will likely prove effective, while the Kazakh Entities have failed to rebut the presumption that Khrapunov's deposition should take place outside of his country of residence. In light of the risk of detention and extradition that Khrapunov faces, as well as the availability of the Hague process to obtain Khrapunov's testimony, the Court denies the Kazakh Entities' request for an order requiring Khrapunov to sit for a deposition outside of Switzerland. The Court directs Khrapunov to fully cooperate with the Kazakh Entities in coordinating his deposition so that it may be taken as expeditiously as possible. Additionally, in light of the materiality of Khrapunov's testimony to this action, should the Hague procedures ultimately prove ineffective, the Kazakh Entities may apply for permission to seek additional testimony from Khrapunov outside of Switzerland.

## II.    *Motion To Compel Gillieron And Krasnov*

The Kazakh Entities next request that the Court deem Gillieron and Krasnov managing agents of Triadou and compel Triadou to produce them for depositions pursuant to Federal Rule 30. In response, Triadou argues that although Gillieron was once a director of Triadou, he

no longer holds that title, and Krasnov is merely an independent contractor who cannot be classified as a managing agent of Triadou.

### A. Legal Standards For Determining Managing Agent Status

Under Rule 30(b)(6), a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition. A corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. *See, e.g., United States v. Afram Lines (USA), Ltd.,* 159 F.R.D. 408, 413 (S.D.N.Y. 1994); *Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 169 (S.D.N.Y. 1985). Such an employee is treated as any other non-party witness, and generally must be subpoenaed pursuant to Federal Rule 45. If the witness is overseas though, the procedures of the Hague Convention or other applicable treaty must be utilized because foreigners located outside the United States are beyond the subpoena power of our courts. *Relational, LLC v. Hodges,* 627 F.3d 668, 673 (7th Cir. 2010); *United States v. Drogoul,* 1 F.3d 1546, 1553 (11th Cir. 1993); *Afram Lines,* 159 F.R.D. at 413.

The test for determining whether an individual is a managing agent is not formulaic but rather a fact-specific inquiry. *See Boss Mfg. Co. v. Hugo Boss AG,* No. 97-cv-8495(SHS) (MHD), 1999 WL 20828, at *3 (S.D.N.Y. Jan. 13, 1999); *Afram Lines,* 159 F.R.D. at 413 ("Because of the vast variety of factual circumstances to which the concept must be applied, the standard . . . remains a functional one to be determined largely on a case-by-case basis.") (quotations and citation omitted); *see also* Wright & Miller, *supra*, § 2103. "Whether a proposed deponent falls into a particular category of employees or agents is therefore less relevant than the individual's specific functions and authority." *Afram Lines,* 159 F.R.D. at 413; *see also United States Fid. &*

14

*Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-cv-6124 (JGK) (THK), 2001 WL 43607 at *3 (S.D.N.Y. Jan. 17, 2001). Whether a person is a party's "managing agent," and subject to deposition on notice, has been said to depend on five factors:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.

*Sugarhill Records*, 105 F.R.D. at 170 (internal quotations and citations omitted). Further considerations arise when the officer or agent is not currently employed. Although typically a corporation cannot be required to produce a former officer or agent for deposition, *see, e.g., Boss Mfg.,* 1999 WL 20828, at *2 (stating that the rationale for this is that the corporation lacks control over the former agent), this rule is not strictly applied. Courts have adopted a "practical" approach for depositions of former officers and agents "that focuses not only on the formal connection between the witness and the party at the time of the deposition, but also on their functional relationships." *See Afram Lines,* 159 F.R.D. at 414.

Finally, the examining party bears the burden of establishing the status of the witness as a managing agent.  This burden is "modest," *Boss Mfg.,* 1999 WL 20828, at *4, and all doubts

are to be resolved in favor of the examining party. *Dubai Islamic Bank v. Citibank, N.A.*, No. 99-cv-1930 (RMB) (TH), 2002 WL 1159699, at *4 (S.D.N.Y. May 31, 2002). The examining party satisfies its burden when it produces "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." *Afram Lines,* 159 F.R.D. at 413. This approach permits discovery to proceed, while deferring until trial the ultimate question of whether the witness's testimony is binding on the corporation. *See id.* at 413-14; *see also* Wright & Miller, *supra*, § 2103 ("The determination of whether a particular person is a 'managing agent' will be made by the trial court when the deposition is sought to be introduced . . .").

### B.  *Application Of Legal Standards*

With the above legal principles in mind, the Court now addresses whether Gillieron and Krasnov should be deemed managing agents.

### i.  *Marc Gillieron*

Triadou argues that it lacks control over Gillieron because he is now an officer of SDG, and has not been a director of Triadou since 2013. In response, the Kazakh Entities contend that Gillieron is in fact a managing agent of Triadou because the distinction between Triadou and SDG is illusory and Triadou functions as an alter ego of SDG. Triadou disputes that the two companies are alter egos and points to the fact that there are currently no alter-ego claims against SDG, SDG is not a party to this action, and SDG has not been Triadou's parent since 2015.

Although Gillieron is not currently a director of Triadou, the Court finds that the Kazakh Entities have provided sufficient evidence to show that Triadou and SDG are alter egos for the

purposes of this motion. Under New York law, an entity is the alter ego of another where, among other factors, there is an overlap in ownership, funds are intermingled, the subservient entity is kept inadequately capitalized, and dealings between the entities are not at arm's length. *See MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (citations omitted). The Kazakh Entities argue that Triadou was intentionally kept insolvent and point to several examples where money owed to Triadou was instead directed to SDG by SDG, despite the fact that Triadou had debts it needed to pay off. (*See* Doc. No. 317 Ex. E, H.) Further, as the Kazakh Entities point out, Cerrito, SDG's CFO, has testified in this litigation that any funds Triadou receives from the Flatotel investment will be sent to SDG to fund SDG's investments. ECF No. 156, ¶ 18 ("[W]hen that money is recovered, SDG intends to invest it . . ."). And, though the parties dispute whether SDG is currently Triadou's parent company,[1] it is clear that the two entities are still affiliated and closely tied, that Gillieron was a director of Triadou during the relevant period, has voluntarily assisted with discovery in this matter, and still is affiliated with SDG. To permit Triadou to avoid producing Gillieron pursuant to the Federal Rules under these circumstances could encourage corporate entities to make changes in personnel to avoid discovery. Accordingly, the Court grants the Kazakh Entities motion to compel Gillieron's deposition in New York under Federal Rule 30(b)(6).

### ii.  Petr Krasnov

In contrast to Gillieron, the Kazakh Entities have failed to establish that Krasnov is an agent of Triadou. Turning to the first of the five relevant factors mentioned above for

---

[1] Though Judge Nathan dismissed the alter ego claims, she did so because she found the claims to be premature. She did not decide whether SDG and Triadou are alter egos. (Doc. No. 174.)

determining managing agent status, (*see supra* p. 15), although it appears that Krasnov had significant involvement in Triadou's corporate matters, the evidence does not suggest that Krasnov was invested with the power to exercise judgment and discretion. For example, Exhibits H and I to the Kazakh Entities' letter motion show Krasnov instructing Nicolas Bourg, Triadou's then director, to sign a loan agreement directing funds owed from Chetrit to Triadou to be paid to SDG instead. In response, Bourg explains that Triadou needs the funds to pay its debts and asks Krasnov "can you please approve this principle . . . ." (Doc. No. 317 Exs. G, H, I.) Although the Kazakh Entities argue this demonstrates that Krasnov exercised discretion, it seems that Krasnov did not direct Bourg to redirect payment on Krasnov's own accord but was merely following Philippe Glatz' (SDG's owner) orders. (*See* Doc. No 317 Ex. K; Doc. No. 319 Ex. 3.) Similarly, although in response to Cerrito's question asking who was in charge of Triadou, Gillieron stated that Krasnov was "in charge of Triadou," Cerrito explained during sworn testimony that when he asked who was in charge, he meant "who is in charge to get information." (Doc. No. 319 Ex. 1 at 285:8-288:21.) Further, none of the Kazakh Entities' remaining exhibits suggest that Krasnov had the authority to exercise discretion on behalf of Triadou. Thus, the first factor does not favor managing agent status.

As to the second factor, it does not appear that Krasnov can be relied on to give testimony at Triadou's request. Although Krasnov traveled to New York to prepare Cerrito for the 30(b)(6) deposition, Krasnov has nonetheless twice refused Triadou's request to sit for deposition, and there is no evidence suggesting Krasnov has provided sworn testimony at Triadou's behalf. *See Afram Lines*, 159 F.R.D. at 415 (holding that although an agent's history of cooperating with a party in discovery may be probative of the party's ability to rely on the agent

to testify, that agent cannot be relied upon to provide testimony if "there has been no showing that they ever provided sworn testimony at" the party's request.).

Looking to the third factor, there are individuals employed by Triadou in positions of higher authority than Krasnov. Indeed Cerrito has already testified as Triadou's 30(b)(6) designee. (Doc. No. 317 at 1; Doc. No. 319 at 1.) Next, the fourth and fifth factors favor the Kazakh Entities because the email exhibits submitted by the Kazakh Entities between Krasnov, Cerrito, Bourg, and others show that Krasnov clearly had significant involvement and responsibilities regarding the New York real estate investments. Further, Krasnov can be expected to identify with the interests of Triadou, as he was hired as a consultant for Triadou's benefit and there is no evidence suggesting his interests would be adverse to Triadou's interests. *See Schindler Elevator Corp.*, 2007 WL 1771509, at *7 (finding this factor in favor of party seeking discovery because the independent contractor at issue operated under a consultancy agreement, had regular communications with employees, and there was no evidence that he had adverse interests to the company for which he worked).

After weighing these factors, it cannot be said that Krasnov is a managing agent of Triadou. While two of the five factors favor the Kazakh Entities and the movant is generally entitled to resolution of doubts in its favor on such motions, the rationale for doing so is "less strong . . . where the proposed deponent is not an employee of the opponent and may, in fact, be beyond its control," as is the case with Krasnov. *Afram Lines*, 159 F.R.D. at 414. Further, the Kazakh Entities may obtain testimony from Krasnov through the Hague Convention procedures. Accordingly, the Court denies the Kazakh Entities' motion to compel Krasnov's deposition.

19

**CONCLUSION**

For the reasons stated above, the Kazakh Entities' motion to compel Ilyas Khrapunov's deposition outside of Switzerland is DENIED, the motion to compel the deposition of Marc Gillieron is GRANTED, and the motion to compel the deposition of Petr Krasnov is DENIED. The Clerk is respectfully directed to terminate the motions pending at document numbers 303 and 317.

SO ORDERED.

Dated:    June 7, 2017
          New York, New York

_____
            KATHARINE H. PARKER
         United States Magistrate Judge

20