

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

May 10, 2017

**BY E-MAIL**

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *City of Almaty, et ano. v. Ablyazov, et al.*, No. 15 Civ. 5345 (AJN) (KHP)

Dear Judge Parker:

      We represent the City of Almaty and BTA Bank (the "Kazakh Entities"). We write in response to the May 5, 2017 letter motion filed by defendant Triadou SPV S.A., seeking a pre-motion conference in anticipation of a motion to compel "Arcanum" to produce documents and sit for a Rule 30(b)(6) deposition. Such a motion should be denied.

      Arcanum is an investigations firm, retained by counsel for the Kazakh Entities, which has been engaged in assisting counsel to prosecute the Kazakh Entities' global asset recovery efforts. As such, it is a classic "consulting expert" whose work is both covered by the attorney-client privilege and the work product doctrine. Triadou's attempts to uncover the Kazakh Entities' global judgment-enforcement and litigation strategy should be denied.

## RELEVANT BACKGROUND

      On or about March 15, 2017, Triadou attempted to serve "Arcanum Global" with a subpoena calling for documents and a deposition. In fact, as Triadou acknowledges, there are several entities under the Arcanum brand. Assuming, without conceding, that service was proper on each of the Arcanum entities identified in Triadou's letter, its subpoena is still improper.

      As counsel for the Kazakh Entities have explained to Triadou on numerous occasions, and as the testimony thus far has confirmed, Arcanum was retained through law firms acting on behalf of the Kazakh Entities to develop evidence and intelligence about Mukhtar Ablyzov, Viktor Khrapunov, their associates, and the disposition of money they stole. Both BTA Bank's and the City of Almaty's corporate representatives testified during their respective Rule 30(b)(6) depositions that neither of the Kazakh Entities communicate directly with Arcanum.

## THE SUBPOENA SHOULD BE QUASHED

      It is no secret that the Kazakh Entities and the defendants in this case have been involved in an international cat-and-mouse game for most of the past decade. The defendants looted Kazakhstan of billions of dollars, and each time the Kazakh Entities get close to recovering some of it, the defendants launder it to a new location. Judge Nathan already found, based on the evidence introduced during attachment proceedings last year, that the defendants, via Triadou, liquidated their investments in New York precisely because they learned that the Kazakh Entities were closing in on other U.S. real estate traceable to the stolen funds. [ECF No. 175, at 20-21]

      Trying to stay ahead of the law, the defendants in this case have concerned themselves with learning as much as possible about the Kazakh Entities' investigative plans, almost to the exclusion of actually defending this lawsuit. For example, in the transcript of last week's



deposition of BTA's representative, the word "Arcanum" appears approximately 86 times – a count that understates the actual amount of time spent questioning about Arcanum's scope of work, its sources and methods, and its future plans (let alone about other investigators and consultants). In contrast, the defendants asked precisely one question about the actual fraud against BTA, as an afterthought in the last few moments of the day. BTA Dep. at 268-69 (Q: "This morning . . . you repeatedly suggested that Mr. Ablyazov stole money from BTA. . . .  Can you describe the basis for that belief in the 15 minutes we have remaining?").[1]

Consistent with their strategy of focusing discovery on trying to pierce the Kazakh Entities' larger asset recovery efforts, the defendants – especially the individual defendants – have essentially opted out of providing discovery themselves. Whereas the Kazakh Entities have produced well over 200,000 pages of responsive documents, Ablyazov has produced *none* and the Khrapunovs have together produced a total of 645 pages – almost none of which are actually from their own files, and the bulk of which are internal emails among Kazakh officials and/or their lawyers, which are known to have been obtained by hackers. While Triadou has produced some documents (still, fewer than 10,000 pages), its corporate representative was not able to testify about basic facts, such as how many payments were made in connection with the Flatotel investment, and Triadou has refused to produce witnesses whom the Kazakh Entities expect would be more knowledgeable – which is the subject of other motion practice before the Court. [ECF No. 319].

As the next step in their efforts, the defendants now seek evidence directly from those involved in formulating the Kazakh Entities' asset-recovery strategy – its lawyers and consultants. But there are at least two simple reasons why Triadou's subpoena is improper.

*First*, the subpoena is far too broad. Efforts to uncover the Kazakh Entities' global asset recovery strategy are simply not relevant to any "claim or defense" in *this* action. Fed. R. Civ. P. 26(b)(1). It is true, so far is it goes, that "facts are not privileged," but any relevant facts have already been disclosed. To the extent that the Kazakh Entities' investigators may have identified relevant witnesses, those witnesses have already been disclosed to the defendants. To the extent the investigators have obtained documentary evidence that may be used at trial, that evidence has already been produced or will be shortly (the Kazakh Entities' production is rolling in response to the defendants' continued document requests). Anything else is not relevant.

*Second*, even if it were relevant, the work of investigators is privileged, and black-letter law clearly forbids Triadou from invading the attorney-client relationship in the way it seeks to. The Supreme Court has explicitly held that the attorney-client privilege and the work product doctrine not only protect the work of attorneys, but also that of "investigators." *See United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (explaining that "[o]ne of those realities is that attorneys often must rely on the assistance of investigators . . . It is therefore necessary that the doctrine protect material prepared by agents for the attorney."); s*ee also Costabile v. Westchester, N.Y.,* 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (fact interviews by investigators conducted at direction of counsel constitute work product). The Second Circuit has unambiguously stated that the work product protection applies to documents "prepared *or obtained* because of the prospect of litigation," *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis added) – which is exactly what Triadou is now seeking to pry into. *See* May 5 Letter, at 2 (seeking to compel "the production of fact documents obtained by Arcanum.").

---

[1]     A final transcript of that deposition has not yet been received by counsel. For the purpose of this letter response, the Kazakh Entities are relying on the unedited, rough transcript.

**BSF**

Factual documents obtained by Arcanum in the course of its attorney-directed investigation constitute work product, and Triadou has made no effort to show a "substantial need of the materials and an inability, without undue hardship, to obtain their substantial equivalent elsewhere." *Adlman*, 134 F.3d at 1197; *see also* Fed. R. Civ. P. 26(b)(3). Triadou is at least as capable of learning facts as the Kazakh Entities' investigators, particularly when any documents about Ablyazov and Khrapunov's hidden assets could easily be obtained from Triadou's co-defendants: Ablyazov and Khrapunov themselves. *See ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*, No. 96 Civ. 6033 (BSJ) (HBP), 1998 WL 614478, at *16 (S.D.N.Y. Jun. 4, 1998) (while facts are not privileged, party "seeking those facts may obtain them through other means of discovery" rather than by piercing work product protection).

Finally, the noticed deposition of an Arcanum representative is not appropriate. The topics noticed by Triadou make clear its intention to violate the privilege and learn about the Kazakh Entities' litigation strategy. They impermissibly wish to question on topics such as "the scope and nature" of Arcanum's engagement, and the "work [Arcanum] performed for Almaty and/or BTA," along with "all information" concerning several dozen individuals and entities. *See S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (quashing Rule 30(b)(6) deposition where it "constitute[ed] an impermissible attempt by defendant to inquire into [attorney] mental processes and strategies . .  [and was] intended to ascertain how the SEC intend[ed] to marshall the facts, documents and testimony in its possession"). It is simply not clear what relevant, non-privileged questions Triadou intends to or possibly could ask of Arcanum's witness. Thus, in addition to being on far-too-broad topics and prying into privileged matters, such a deposition would be unduly burdensome and not reasonably calculated to result in discoverable evidence. Fed. R. Civ. P. 26(b)(1).[2]

Triadou accuses the Kazakh Entities of "wielding [] the attorney-client privilege and the work product doctrine as both a shield and a sword," an oft-used claim that does not fit here. The fact that the Kazakh Entities may use at trial evidence obtained with Arcanum's assistance does not mean that the privilege is being used as a "sword," because such information has been or will be disclosed in the ordinary course of discovery. It bears repeating: to the extent that Arcanum may have identified relevant witnesses, those witnesses have been disclosed, and to the extent it may have obtained documentary evidence, that evidence has been or will timely be produced. Triadou is entitled to that much. But what they are not entitled to do is examine Arcanum's sources and methods, nor its plans and strategies. The Kazakh Entities are thus using the privilege the right way, as a shield to protect core work product and privileged materials.

Accordingly, the Kazakh Entities respectfully request that the Court deny Triadou's motion or, in the alternative, hold a pre-motion conference in advance of more robust briefing on this critical issue.  Thank you for your consideration.

Respectfully,

 /s/  Matthew L. Schwartz
Matthew L. Schwartz

---

[2]     Triadou asserts that Arcanum may be deposed as a "managing agent," but this conflates agency principles with the concept of a "managing agent." There is no doubt that Arcanum, like Boies Schiller Flexner, is an "agent" of the Kazakh Entities, but that is not nearly sufficient to subject them to deposition, especially in light of the privilege issues discussed above.