USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/26/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,

Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

Defendants.

**MEMORANDUM AND ORDER**

1:15-cv-05345 (KHP) (AJN)

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

Defendant Triadou SPV S.A. ("Triadou") moves for an order to compel the production of documents and information uncovered by Arcanum Asia Limited (together with its affiliates, "Arcanum"), an investigation firm retained by counsel for the City of Almaty, Kazakhstan, and BTA Bank (the "Kazakh Entities") to assist in prosecuting their "global asset recovery efforts." (Doc. No. 332.) Triadou requested this information in document requests served on the Kazakh Entities and in a third-party subpoena served on Arcanum. The Kazakh Entities oppose the motion, arguing that the document requests on them and the third-party subpoena on Arcanum are overly broad, seek irrelevant information, and seek information protected by the attorney work product doctrine. (Doc. No. 333.) For the reasons that follow, Triadou's motion is DENIED.

**BACKGROUND**

The Court assumes the reader's knowledge of this case and sets forth only those facts relevant to this motion. The reader is referred to the Court's Memoranda and Order dated June 7, 2017. (Doc. No. 330). In this action, the Kazakh Entities contend that Defendants Viktor Khrapunov and Mukhtar Ablyazov, the former mayor of Almaty and former Chairman of BTA

Bank, respectively, embezzled billions of dollars from the Kazakh Entities and laundered some of those stolen funds throughout the world and into New York real estate through Triadou and with the help of CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC ("the Chetrit Entities"), who assigned interests in the New York real estate to Triadou. Defendants, on the other hand, contend that the funding for the New York real estate investments came from the Petelin family, who are related to Defendant Victor Khrapunov's daughter by marriage, and not from any stolen funds.

In an effort to recover the alleged stolen funds, the Kazakh Entities have filed lawsuits against Defendants in several jurisdictions around the world where the stolen money has been invested, including a California federal court and a court in the United Kingdom ("UK"). Counsel for the Kazakh Entities have retained Arcanum "to develop evidence and intelligence about [Defendants] Mukhtar Ablyazov, Viktor Khrapunov, their associates, and the disposition of money they [allegedly] stole." (Doc. No. 333 at 1.) The Kazakh Entities state that they have no direct communication with Arcanum and all communication is between their counsel and Arcanum. In connection with Arcanum's investigation, the Kazakh Entities and Arcanum entered into an agreement (the "Release Agreement") with Nicolas Bourg, Triadou's former director and one of the Kazakh Entities' main witnesses. Under the terms of the Release Agreement, the Kazakh Entities released Bourg from claims against him in exchange for his cooperation in providing information to Arcanum relevant to its investigation. The Release Agreement states that "Arcanum Asia Limited and/or its affiliate entities have been engaged directly and/or through legal counsel or consultants" by the Kazakh Entities. (Doc. No. 332 Ex. 2.) Bourg also agreed to maintain the confidentiality of the Release Agreement.

In August of 2016 and March of 2017, Triadou served document requests pursuant to Federal Rules of Civil Procedure 26 and 34 on the Kazakh Entities seeking, *inter alia*, documents regarding (i) the Release Agreement, (ii) meetings between the Kazakh Entities, Bourg, and Arcanum, as well as (iii) documents concerning Arcanum generally. Triadou also served a third-party subpoena on Arcanum pursuant to Federal Rules 26, 30 and 45 seeking, *inter alia*, documents concerning (i) 70 individuals and companies, whose relevance to this case is neither apparent from the face of the subpoena nor explained in Triadou's motion to compel, (ii) meetings and communications between and among Arcanum, the Kazakh Entities, Bourg, and others, (iii) documents regarding the nature and scope of Arcanum's engagement with the Kazakh Entities, and (iv) documents obtained or created in connection with Arcanum's investigation. The subpoena also sought testimony from an Arcanum representative covering the same subjects covered by the document requests.

The Kazakh Entities have provided the Release Agreement to Triadou. Additionally, notwithstanding various objections to the document requests, the Kazakh Entities also agreed to produce other non-privileged documents responsive to Triadou's requests relating to the allegations in this case and have, in fact, produced 200,000 pages of responsive documents. They also represent that to the extent Arcanum or other investigators may have identified witnesses and documentary evidence relevant to the claims and defenses in this action (which is focused on the New York real estate transactions), the witnesses have been disclosed and the documents have been or shortly will be produced. The Kazakh Entities have acknowledged that any and all documents they seek to use at trial must be produced. Finally, the Kazakh Entities point out that Triadou "is at least as capable of learning facts as the Kazakh Entities'

investigators" given that documents about "hidden assets" could be obtained from its co-defendants Ablyazov and Khrapunov. (Doc. No. 333 at 3.)

What the Kazakh Entities object to is production of information about their investigators' broader investigation insofar as it would reveal their "global asset recovery strategy" and encroach on legal strategy and work product relevant not just to this action, but also to legal proceedings in other jurisdictions. They argue that the deposition of an Arcanum representative is inappropriate because there are no relevant non-privileged questions Triadou could possibly ask. They therefore request that the third-party subpoena be quashed and the motion to compel production of additional documents beyond what they are already producing be denied.

Triadou argues that documents and underlying facts Arcanum obtained through its investigation, interviews, or meetings with non-parties are discoverable and the Kazakh Entities cannot claim work product protection over documents their authorized agent did not create.

**DISCUSSION**

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(B)(1). In general, the relevance standard that applies when seeking discovery from a party also applies to non-parties. *Malibu Media, LLC v. Doe*, No. 15-cv-3147 (AJN), 2016 U.S. Dist. LEXIS 134478, at *3-4 (S.D.N.Y. Sept. 29, 2016)

("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)") (internal quotations omitted). The party seeking the discovery bears the burden of proving the discovery is relevant, and the party withholding discovery on burden, expense, privilege, or work product grounds bears the burden of proving the discovery is in fact privileged or work product. *ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*, No. 96-cv-6033 (BSJ) (HBP), 1998 U.S. Dist. LEXIS 8808, at *31 (S.D.N.Y. June 4, 1998) (citation omitted); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery.").

Pursuant to Federal Rule 37(a), a party seeking discovery may move for an order to compel if opposing parties fail to answer interrogatories propounded under Rule 33, or fail to produce or permit inspection of documents requested under Rule 34. To the extent a party seeks work product from an adversary, it must make a showing of "substantial need of the materials and an inability, without undue hardship, to obtain their substantial equivalent elsewhere." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998); Fed. R. Civ. P. 26(b)(3).

In determining this motion, the Court also is mindful that it "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Here, because Triadou brings this motion, it bears the burden of proving that the information and documents it seeks are relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b); *Fireman's Fund Insurance Co.*, 284 F.R.D. at 135. Triadou has failed to meet its initial burden. The Kazakh Entities represent that they have hired Arcanum to assist in their

"global asset recovery efforts." (Doc. No. 333 at 1.) But the crux of this action is whether Defendants stole money from the Kazakh Entities and invested (and then liquidated) that money in real estate located in New York. Indeed, the Kazakh Entities have brought separate actions in the United States and elsewhere to recover the funds that were laundered in other jurisdictions.

As the Kazakh Entities point out, Triadou has failed to specify why all documents and facts uncovered from Arcanum's global investigation regarding where Defendants have disposed of the stolen assets are relevant to this specific case. The key information needed in this case is information concerning the allegedly stolen funds that were used for the New York real estate investments. The Kazakh Entities represent that they have or soon will disclose facts, documents, and witnesses identified by Arcanum that are relevant to this case as well as any documents they intend to use at trial. The Court notes that in their responses and objections to Triadou's document requests, the Kazakh Entities also agreed to produce some information that arguably is not relevant to this action, such as non-privileged documents reflecting communications between or among Plaintiff the City of Almaty and defendants in the California court actions concerning those actions and non-privileged documents Plaintiff BTA Bank produced, served, or filed in connection with the legal actions in the UK. Triadou fails to explain why it is entitled to facts uncovered by Arcanum concerning matters unrelated to the New York real estate transactions and claims in this specific case. It has not identified specific documents it believes exist or should exist and that are being withheld. Triadou also has failed to articulate why a deposition of an Arcanum representative is needed when relevant witnesses and underlying factual and documentary evidence relevant to this case have been or are being

disclosed. In sum, Triadou has not demonstrated that the information it seeks is relevant or proportional to the needs of this case.

With respect to privilege and work product, the Khazakh Entities have represented that their counsel retained Arcanum after the commencement of litigation and directed Arcanum's activities. They assert they have had no direct communications with Arcanum. The work product doctrine protects the mental processes of a party's attorney. The United States Supreme Court has recognized that the doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system." *United States v. Nobles*, 422 U.S. 225, 238 (1975). In this regard, it has found that the doctrine protects material prepared by agents for the attorney, including investigators, if the material can fairly be said to have been prepared because of the prospect of litigation. *Id.* at 238-239. Work product protection also can apply to documents obtained by a lawyer or his/her agent because of the prospect of litigation. *Adlman*, 134 F.3d at 1202. The privilege is not absolute. It may be waived and, if a party demonstrates a substantial need and an inability without undue hardship to obtain the information elsewhere, subject to a disclosure order. *Id.* at 1202-03.

To the extent Arcanum was acting as an agent of counsel for the Kazakh Entities to prepare and obtain material because of the prospect of litigation, the work product doctrine may apply. The Court notes that the Release Agreement creates some ambiguity as to Arcanum's terms of engagement. In particular, it suggests Arcanum may have been engaged through a consultant to, as opposed to through legal counsel for, the Kazakh Entities. It also suggests it may have been engaged directly by the Kazakh Entities. Thus, it is unclear whether the work product doctrine applies to material prepared and obtained by Arcanum. The Court

need not resolve this issue now, however, because the Kazakh Entities have represented that they have disclosed witnesses and factual information obtained or learned by Arcanum that are relevant to this action, and Triadou has not met its burden of demonstrating the relevance of additional information concerning the Kazakh Entities' "global asset recovery strategy."

The Court further finds that a deposition of Arcanum is not appropriate at this point. Triadou is directed to depose witnesses disclosed by the Kazakh Entities. These witnesses, not an Arcanum representative, will have personal knowledge of the key facts pertinent to this matter. Triadou has not explained what relevant information it would obtain from an Arcanum representative that it cannot obtain from actual fact witnesses.

The Court understands that the Kazakh Entities have claimed that documents sought by Triadou from them and Arcanum are protected by the work product doctrine, but this Court is unable to assess privilege with respect to particular documents at this time because it lacks a privilege log and other information concerning the engagement of Arcanum by the Khazak Entities. If Triadou disputes applicability of privilege with respect to particular documents on the privilege logs produced and to be produced by the Kazakh Entities, it is directed to meet and confer with the Khazak Entities about the same. To the extent the dispute cannot be resolved after a meet and confer, Triadou may apply to this Court to resolve the issue(s). The privilege log, the engagement agreement with Arcanum, and the disputed documents from the log shall be submitted to this Court for in camera review in connection with any such motion.

Accordingly, Triadou's motion to compel the deposition of an Arcanum representative is denied without prejudice to renew upon a showing of relevance and need.

**CONCLUSION**

For the reasons stated above, Triadou's motion to compel production of documents is DENIED. Triadou's motion to compel the deposition of an Arcanum representative is DENIED without prejudice. The Clerk is respectfully directed to terminate the motion pending at document number 332.

SO ORDERED.

Dated: June 16, 2017
New York, New York

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge