

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 21, 2017

**BY ELECTRONIC MAIL**

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
> Case No. 15 Civ. 5345 (AJN) (KHP)

Dear Judge Parker:

We represent the City of Almaty, Kazakhstan and BTA Bank ("the Kazakh Entities") and write in opposition to Triadou SPV S.A.'s June 16, 2017 letter motion for an order removing the confidential designation from the settlement agreement between the Kazakh Entities and the Chetrit Entities (the "Letter"). The Kazakh Entities properly applied the protective order when marking the settlement agreement confidential, and it should remain confidential in light of both ongoing confidential business discussions and the Kazakh Entities' other asset recovery efforts. Triadou's motion should therefore be denied. In the alternative, the Kazakh Entities respectfully request a pre-motion conference to obtain the Court's guidance on the proper application of the protective order, as Triadou is abusing the order by marking virtually every document confidential while attempting to limit the Kazakh Entities to the Order's narrowest interpretation.

**A.    The Kazakh Entities Have Properly Applied the Protective Order**

The protective order provides for the following relevant bases to designate a document confidential: "previously nondisclosed financial information"; "previously nondisclosed material relating to ownership or control of any non-public company"; and "any other sensitive non-public information." Order ¶ 3(a), (b), (e) (ECF No. 253). Triadou concedes that the settlement agreement contains such information but seeks de-designation because "the existence of the agreement has been disclosed." Letter at 3. The existence of the agreement is beside the point. What matters is whether the agreement's terms have been publicly disclosed. They have not.

The public information about the settlement agreement is limited to the fact of a settlement resulting in the Kazakh Entities' recovery of an asset and the Chetrit Entities' agreement to cooperate. The details of nearly every term in the agreement (Letter Ex. C) have not been publicly disclosed, including: ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████ the terms of the Chetrit Entities' agreement to cooperate with the Kazakh Entities (¶ 8) (other than "being available for testimony" (Hearing at 36:1-3 (ECF No. 163)); ████████████████████████████████████████████████████████████



Triadou is wrong to suggest that "there is nothing particularly 'sensitive' about the agreements' contents" or that "Almaty/BTA did not articulate or hint at *any* harm." Letter at 3. To the contrary, the Kazakh Entities repeatedly explained to Triadou the basis for the original Attorneys' Eyes Only designation (which we voluntarily dropped) and the continued basis for confidentiality: namely, the Kazakh Entities and the Chetrit Entities have kept confidential the details of their agreements with respect to their ownership and other rights to protect their interests *vis a vis* other stakeholders in the real estate development projects as well as their business interests generally. Indeed, a primary reason to keep the terms of any settlement confidential is that it is difficult to anticipate how others might attempt to use the terms of that agreement against you in the future. *See Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ)(DF), 2012 WL 1449186, at *9 (S.D.N.Y. Apr. 13, 2012) (maintaining confidentiality of settlement agreement "based on the legitimate business interests of both [the party and non-party] in protecting the contents of their private settlement from public disclosure.").[1]

Given the sweeping nature of the enterprise and the Kazakh Entities' collection efforts outside this particular case, the Kazakh Entities also have a compelling interest in keeping confidential the specific terms of its settlement with the Chetrit Entities. As the Court has previously noted, the Kazakh Entities are engaged in enforcement efforts throughout the country and the world. To our knowledge, none of those cases has previously been settled. The confidentiality of the settlement agreement therefore protects the Kazakh Entities' by preventing this agreement from becoming a ceiling for future recoveries or a floor with respect to concessions made by the Kazakh Entities.

The Kazakh Entities harbor a deep, well-founded suspicion of Triadou's and the other defendants' true intentions. As the U.K. Court of Appeals noted when upholding contempt orders against defendant Ablyazov, it was "difficult to imagine a party to commercial litigation who has acted with more cynicism, opportunism and deviousness towards court orders than Mr. Ablyazov." It is unclear how Triadou intends to use these confidential documents, and the Kazakh Entities should not have to find out. They properly designated the settlement agreement confidential, and it should remain confidential outside of these proceedings.

## B.     Triadou Has Abused the Protective Order

In the event that the Court believes that the settlement agreement may not be maintained in confidence, the Kazakh Entities respectfully request the Court's guidance with respect to the application of the protective order generally. The parties have taken disparate approaches to discovery generally and the application of the protective order specifically, to put it mildly. To date, Triadou has produced a grand total of 2,897 documents and has marked 2,876 of those documents confidential — all but 23, or 99.3% of their production. The Kazakh Entities, in contrast, have produced 37,104 documents so far, marking 2,075 confidential — just 5.6%.

---

[1]     Triadou suggests that because the settlement agreement ███████████████████████

████████████████████████████████████████████████████████



Examples of Triadou's overbroad application of the confidentiality designation are abundant:

- TRIA0004808 (Exhibit A): The fraudulent assignment agreement that is the basis for the state court actions between Triadou and the Chetrit Entities, which was publicly filed in state court in 2015, and then again publicly filed in this case in connection with the attachment proceedings, where it was also the subject of discussion in open court (*see* ECF No. 161-1; Hearing Tr. 21-22, ECF No. 163);

- TRIA0004960 (Exhibit B): Affidavits from the Chetrit Entities that were publicly filed in the state court actions (*see Triadou SPV S.A. v. CF 135 Flat LLC, et al.*, N.Y. Supreme Court, N.Y. County, Index No. 653462/2014, Doc. Nos. 27, 31);

- TRIA0007302 (Exhibit C): A 2013 SDG Intermediary Report designed for broad circulation;

- TRIA0000213 (Exhibit D): A publicly available article on the website Curbed.

Triadou has thus shifted the burden to the Kazakh Entities of identifying (and challenging) which documents are confidential, when it should be Triadou first deciding whether there is a good faith basis for confidentiality. This kind of abuse of a protective order is precisely the concern many courts have noted when entering such orders. *See, e.g., Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1123 n.17 (3d Cir. 1986) ("The judge must require that counsel not mark documents as protected under the order unless they are at least arguably subject to protection.") (citations omitted)); *Decarlo v. Archie Comic Publ'ns, Inc.*, No. 00 Civ. 2344 (LAK), 2000 WL 781863, at *1 (S.D.N.Y. June 20, 2000) ("if either party abuses the privilege afforded by such an order, the Court retains the power to vacate or modify it.").

Triadou's approach further reflects a conscious litigation strategy. During negotiations on the protective order, Triadou insisted on a term (section 2) that prevents the parties from using "confidential" material in other litigation or sharing it with counsel in other cases — the very same provision Triadou now seeks to circumvent. Triadou then designated nearly all of its produced material confidential. To address this broad strategy, the Kazakh Entities sought a broad solution: that the parties jointly ask the Court to amend the protective order to remove the restriction limiting the parties' ability to use confidential documents in other cases, or that Triadou revisit its overbroad designations. Triadou flatly rejected these suggestions.

For the reasons stated above, the Kazakh Entities respectfully request that the Court deny Triadou's request to de-designate the settlement agreement. In the alternative, the Kazakh Entities request a pre-motion conference regarding this and the other issues the Kazakh Entities have raised in this letter concerning Triadou's abuse of the protective order.

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz