

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

July 5, 2017

**BY E-MAIL**

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Suite 1950
New York, New York 10007

    Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
           Case No. 15 Civ. 5345 (AJN) (KHP)

Dear Judge Parker:

    We represent the City of Almaty, Kazakhstan and BTA Bank ("the Kazakh Entities" or "Plaintiffs"). We write in opposition to Ilyas and Viktor Khrapunov's letter motion seeking an order reopening the deposition of Nurlan Nurgabylov so that they may examine Mr. Nurgabylov using documents stolen from Kazakh government officials by computer hackers at the direction of Ilyas Khrapunov. We also write to seek a protective order pursuant to Rule 26 prohibiting the use of these stolen documents in this litigation.[1]

## Background

    At about 1:20 PM on the day before the scheduled deposition of Mr. Nurgabylov – who by agreement of the parties appeared both as BTA Bank's Rule 30(b)(6) designee and in his individual capacity – the Khrapunovs produced more than 400 pages of documents, which upon even a cursory review were obviously wrongfully obtained (the "Hacked Documents"). These documents included e-mails of various officials in the Republic of Kazakhstan, including members of the General Prosecutors Office and the Ministry of Justice ("MOJ").

[REDACTED] Public filings confirm that Kazakhstan was the victim of a massive cyberattack, which included the theft of communications belonging to the Minister of Justice and Mr. Nurgabylov himself, including from his time as an MOJ lawyer. *See* Exs. 3 (3/10/15 Declaration of Marat Beketayev) and 4 (3/12/15 Declaration of Jacques Semmelman).

    At the deposition the following morning, the Khrapunovs' counsel attempted to examine Mr. Nurgabylov using the Hacked Documents. Plaintiffs' counsel stated that the Hacked

---

[1] To avoid redundant filings, the Kazakh Entities have incorporated their cross-motion for a protective order into their opposition to the Khrapunov's letter motion, and accordingly, have exceeded the Court's usual three-page limit on letters. If the Court prefers, the Kazakh Entities can file separate letters in opposition to the Khrapunovs' motion to reopen the deposition, and in support of a protective order.



▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ he obtained them. The Khrapunovs' counsel had no explanation other than to say the documents came from "the Kazaword production." Ex. 5, Tr. 43:16-45:7. Kazaword is a now-defunct website – akin to a Kazakh exile version of Wikileaks – that was a place for computer hackers to dump stolen material that could then be used to attack public figures. Plaintiffs' counsel pointed out that Kazaword had stopped hosting stolen documents more than a year ago following a court order, and that Mr. Nurgabylov would not be authenticating documents that appeared to be stolen without guidance from the Court.[2] Ex. 5, Tr. 44:20-45:7 (MR. CURLEY: "When we go back on the record – MR. SCHWARTZ: We are on the record now. I intend to show this to Judge Nathan so you should think carefully about the answer to the question, where did you get these documents? MR. KENNEY: Let's take a break."); Ex. 5, Tr. 45:19-45:25 (MR. SCHWARTZ: "You did not pull them down off the internet because they have been down for some time, correct?"). The deposition then proceeded for a full seven hours, without the Khrapunovs' counsel making any effort to contact the Court.

On May 31, 2017, the Khrapunovs requested to meet-and-confer, indicating that they wished to reopen Mr. Nurgabylov's deposition to use the Hacked Documents. During that meeting, Plaintiffs again asked how the Khrapunovs obtained the Hacked Documents, and counsel changed their story, explaining that they had not obtained the Hacked Documents from Kazaword directly, but instead, had gotten them from someone else – whom they refused to name – who apparently attributed them to Kazaword. *See* Ex. 6 (7/5/17 Decl. of Dan Boyle). When Plaintiffs' counsel asked for some verification that the Hacked Documents actually came from Kazaword, and not from the hackers themselves, none was provided.

The Khrapunovs' letter omits this course of events, perhaps because it illuminates exactly why their request should be denied: a litigant has no right to use stolen materials to its benefit, and the Hacked Documents are plainly the products of crime. The Khrapunovs have offered no proof that the Hacked Documents were ever hosted on Kazaword or otherwise publicly-available and record evidence indicates that it was Ilyas Khrapunov himself that was responsible for the theft of these documents. To the extent that the documents were ever publicly available, the Republic of Kazakhstan took prompt and immediate action to assert their confidentiality and obtained an order that the documents were obtained through criminal computer hacking in violation of U.S. law, *see* 18 U.S.C. § 1030, and that any further dissemination would result in irreparable harm. *See* Ex. 7 (Order Granting Plaintiff's Motion For A Preliminary Injunction, *Republic of Kazakhstan v. Does 1-100*, No. 15 Civ. 1900 (ER) (S.D.N.Y. Mar. 20, 2015)).[3]

Moreover, it simply cannot be the case that all of the Hacked Documents were publicly available on the Kazaword site. Some of the Hacked Documents produced by the Khrapunovs –

---

[2]    The Khrapunovs' claim that they produced the Hacked Documents "as a courtesy" is ridiculous. Besides being responsive to Plaintiffs' document requests, the Khrapunovs knew that if the Hacked Documents had been produced with reasonable notice – and not less than 24 hours before the deposition of a senior executive who had already flown across the world to be deposed – the Kazakh Entities would have had time to bring this issue before the Court.

[3]    The Khrapunovs fault the Kazakh Entities for failing to assert privilege over the Hacked Documents, but the Hacked Documents principally implicate the privileged relationship between



▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ a full year after the Preliminary Injunction and the subsequent shuttering of the Kazaword site. As a result – and because they failed to make an appropriate record at the deposition – the Khrapunovs have no right to use the Hacked Documents to their advantage here.

### The Court Should Issue a Protective Order Barring the Khrapunovs from Using Stolen Materials

The Kazakh Entities respectfully request that the Court enter a protective order prohibiting the Khrapunovs from using the Hacked Documents in this action. A protective order is appropriate where a movant has shown good cause. Fed. R. Civ. P. 26(c)(1). Courts in this district have consistently prohibited parties from using stolen materials to their advantage in litigation. *See Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 325–26 (S.D.N.Y. 1997) (pursuant to "inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained," court may preclude the use of stolen evidence in litigation, even if it could otherwise have been discoverable); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568–69, 571 (S.D.N.Y. 2008) ("In the end, the one thing that should remain unsullied is the integrity of the judicial process. In this Court's view, that integrity is threatened by admitting evidence wrongfully, if not unlawfully, secured.").

Ethical rules similarly bar counsel from using stolen documents, even if counsel had no involvement in the theft. *See* New York City Bar, Professional Ethics Committee, Formal Opinion 1989-1 (Mar. 13, 1989) ("[I]irrespective of whether the lawyer was himself a party to this act of wrongdoing, he should not help his client take advantage of such wrongdoing by embracing it and using it to promote the client's cause." (internal quotation marks omitted)).

The Khrapunovs attempt to sidestep this law by claiming, without any evidentiary support or explanation, that "the documents at issue were from a collection of material sometimes referred to as the 'Kazaword' documents." Ltr. at 1. As noted above, however, the Khrapunovs' counsel affirmatively stated that they did *not* retrieve the Hacked Documents from Kazaword, but rather from a third party they now refuse to identify. Moreover, certain of the Hacked Documents could not conceivably come from Kazaword because they post-date the takedown of that site. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Needless to say, neither the Court nor the Kazakh Entities have been given any way of verifying how this mysterious third party obtained the Hacked Documents, whether this third party was involved in the underlying theft, or whether any of the Hacked Documents were actually obtained from Kazaword. But given Ilyas Khrapunov's involvement in the hacking and the fact that the Hacked Documents include materials that could not have been obtained from Kazaword, it would be entirely inequitable to allow the Khrapunovs to use them.

The Khrapunovs point to a case they claim allows "anyone other than those directly involved in the alleged theft" to use documents posted on Kazaword (Ltr. at 2), but that holding cannot apply to Ilyas Khrapunov. As the Khrapunovs admit, Ilyas Khrapunov has been named in a lawsuit over his involvement in the theft (Ltr. at 2),[4] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[4] A copy of the Amended Complaint in that action, *Republic of Kazakhstan v. Muratbek* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ mployee "with an axe to grind" (Ltr. at 2), but Judge Nathan has already found him to be credible. [ECF No. 175, at 5, n.4]. Even if the Hacked Documents were publicly available on Kazaword, an individual implicated in the original theft has no right to use them. *Cf. In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 396 (E.D.N.Y. 2007) ("Affirmatively inducing the stealing of documents is treated differently from passively accepting stolen documents of public importance for dissemination.").

Simply put, Ilyas Khrapunov is a named defendant in a case concerning the hacking; there is record evidence of at least two witnesses who have linked him to the hacking; there is no actual evidence that any of the Hacked Documents came from the Kazaword site; certain of the Hacked Documents could not possibly have come from the Kazaword site; and counsel for Ilyas Khrapunov has declined to provide any evidence or representation as to where the Hacked Documents actually came from. Because the Khrapunovs have not even tried to establish that the Hacked Documents were ever publicly available, and because the evidence indicates Ilyas was responsible for their theft, they have no right to use these stolen documents.

### The Khrapunovs Have No Basis for Reopening the Deposition

Separate and apart from whether the use of the Hacked Documents should be barred by a protective order, these documents certainly provide no grounds for the relief now requested. Following the dispute over the Hacked Documents, the Khrapunovs, along with defendant Triadou SPV S.A., conducted a full seven hours of examination of Mr. Nurgabylov. Where a witness has sat for a full seven hours, a movant must show good cause to reopen and extend the deposition. *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 CIV. 1514 PAC, 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008) ("The 2000 amendments to Rule 30(d)(2) established a presumptive time limit of seven hours for depositions, with the proviso that this period can be extended for good cause shown. The determination of whether good cause exists is fact specific."). The Khrapunovs have failed to do so here.

The only purpose the Khrapunov state for reopening and extending the deposition is to use the Hacked Documents, but as explained above, they have no right to do so.

But even if the Court finds that the Khrapunovs may use the Hacked Documents for some purposes, reopening Mr. Nurgabylov's deposition is not an appropriate remedy. The Khrapunovs were not prevented from asking any questions *informed* by the Hacked Documents, a point that Plaintiffs' counsel made clear on the record. *See* Ex. 5, Tr. 42:3-42:21 (designating deposition transcript as confidential because the information obtained from hacking "to the extent it is authentic, [is] all plainly confidential [and] informs your questions whether or not you question based on those documents"). Nor do the Khrapunovs accurately point to any instances in which Mr. Nurgabylov's testimony was at odds with the Hacked Documents, and therefore in which counsel may have justifiably confronted him with those documents – and even then, they could have done so without authenticating the documents by, for example, using the Hacked Documents to refresh the witness's recollection.[5]

---

[5] The single example the Khrapunovs offer is misguided. The Khrapunovs state that Mr. Nurgabylov "denied that BTA takes instructions from the government," and claim that one of the Hacked Documents contradicts this testimony (Ltr. at 2). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



The only thing that Plaintiffs' counsel objected to was having the witness *authenticate* the documents. Ex. 5, Tr. 43:16-19 (MR. SCHWARTZ: "I understand you want to authenticate the stolen emails through this witness and that is not something we are going to permit."). Indeed, there was precisely one question during the seven hour deposition that the witness was instructed not to answer concerning the Hacked Documents. That question, referring to one of those documents, was: "Do you recognize Exhibit 3?" Ex. 5, Tr. 54:18-54:20. In fact, counsel for Triadou questioned Mr. Nurgabylov ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ under an explicit agreement between counsel that the witness would not be asked to authenticate the Hacked Documents. Ex. 5, Tr. 223:11-20 (MS. MICHAELSON: "I will state for the record that counsel discussed this and what will be Triadou's next exhibit, off the record, and came to an agreement that the witness would be permitted to answer questions about this, these two exhibits, but would not be able to authenticate the document. . .").

In the event that the Court agrees with the Khrapunovs, the Hacked Documents – to the extent that they may in fact be authentic – can easily and efficiently be authenticated by stipulation, interrogatory, or request for admission. There is no good cause for requiring a high-ranking bank executive who lives in Kazakhstan to return to the United States simply to authenticate documents.

For the above reasons, the Khrapunovs' request to re-open the deposition of Mr. Nurgabylov should be denied, and the Khrapunovs should be precluded from using the Hacked Documents in this litigation.

Respectfully,

/s/  Matthew L. Schwartz
Matthew L. Schwartz



The Khrapunovs certainly do not need stolen documents to verify what the witness has already discussed in detail, and such a request is unnecessarily cumulative. *See Dash v. Seagate Tech. (US) Holdings, Inc.*, No. CV 13-6329 LDW, 2015 WL 4257329, at *6 (E.D.N.Y. July 14, 2015) (denying request to reopen deposition where questioning would be "unnecessarily cumulative" and counsel already had the opportunity to probe the topics identified). In any event, if counsel believed that information in the Hacked Documents contradicted the witness's testimony, there was nothing stopping them from using