USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/28/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN, AND BTA BANK JSC,

    Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

    Defendants.

**MEMORANDUM AND ORDER**

1:15-CV-05345 (AJN) (KHP)

KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

    Presently before the Court is Defendants Viktor and Ilyas Khrapunov's (the "Khrapunovs") motion to compel the continued deposition of Nurlan Nurgabylov, at Plaintiffs' expense, on matters as to which he was directed not to answer. (Doc. No. 354.) Nurgabylov testified as the designated representative of Plaintiff BTA Bank pursuant to a Rule 30(b)(6) deposition notice and in his individual capacity. During the deposition, the Khrapunovs sought to question Nurgabylov on certain documents that were hacked or leaked from the Republic of Kazakhstan and published on a website called kazaword.wordpress.com ("Kazaword").

    Plaintiffs the City of Almaty, Kazakhstan and BTA Bank JSC ("BTA" and together with the City of Almaty, Kazakhstan, the "Kazakh Entities" or "Plaintiffs") oppose the motion to continue Nurgabylov's deposition and have cross-moved for a protective order prohibiting the use of documents stolen from the Republic of Kazakhstan in this matter.

    The parties appeared before this Court on July 13, 2017 for a discovery conference to discuss this and other discovery motions. For the reasons set forth below, and subject to the

1

directions below, the Khrapunovs' motion is DENIED and the Kazakh Entities' motion is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

**1. The Purportedly Stolen Documents**

Before discussing the facts surrounding the deposition of Nurgabylov, some description of the hacking of documents from Kazakhstan is necessary. According to a complaint filed by Kazakhstan's counsel, Curtis, Mallet-Prevost, Colt & Mosle, LLP ("Curtis Mallet") in the Northern District of California captioned *The Republic of Kazakhstan v. Muratbek Ketebaev and Ilyas Khrapunov*, 5:17-cv-00246 ("Amended Compl."), on or about January 21, 2015 the government of Kazakhstan learned of unauthorized public postings of certain of its confidential documents that apparently had been hacked. *See* Amended Compl. ¶ 10. The documents came from Gmail and Hotmail accounts and computers used by officials of Kazakhstan to conduct government business. *Id*. The hacked documents included sensitive, proprietary, and highly confidential and privileged governmental communications. *Id*. at ¶ 13.

Upon further review, Kazakhstan learned that sometime in late 2014, thousands of its governmental communications and documents had been hacked and uploaded onto a website maintained by Mega Limited, a provider of cloud-based services based in New Zealand. *Id*. at ¶ 24. It also learned that the Kazaword website was created on or about August 8, 2014, and that whoever was responsible for that website placed hyperlinks on it that enabled a user to access the hacked documents on the Mega Limited website as they were added to that site. *Id*. at ¶¶ 31-32. Some of the hacked documents also were posted on other websites, including the Facebook page of a Kazakh newspaper called Respublika. *Id*. at ¶ 35. The Amended Complaint

asserts that Ilyas Khrapunov and another person by the name of Ketebaev were responsible for the hacking and posting of the documents.

On March 12, 2015, the government of Kazakhstan filed a lawsuit in this district seeking a temporary restraining order and injunction against various John Does and Respublika captioned *The Republic of Kazakhstan v. Does 1-100, Inclusive*, 1:15-cv-1900. The Honorable Edgardo Ramos issued a temporary restraining order prohibiting the use, dissemination, and publication of the hacked documents. Kazakhstan notified Respublika of the temporary injunction, after which Respublika removed posts and links concerning the hacked documents from its Facebook page. All links to the hacked documents on the Kazaword site also were disabled. *See* transcript from July 13, 2017 conference before this Court.

Judge Ramos later clarified the injunction, holding that Respublika, a news organization, was not prohibited from republishing the hacked documents because there was no evidence it had stolen or hacked the documents. *Republic of Kazakhstan v. Does 1-100*, No. 15-cv-1900 (ER), 2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015). In pertinent part, Judge Ramos' decision recognized that "[t]he First Amendment grants persons a near absolute right to publish truthful information about matters of public interest that they lawfully acquire." *Id.* at *2 (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979)). Judge Ramos held that "[t]he Supreme Court affirmed that the *Daily Mail* rule applies even if a re-publisher of information that is of public concern knew that its source had obtained the information illegally." *Id*. (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001)). Thus, he found that the *Daily Mail* rule protects the publication of the Kazaword documents by anyone other than those directly involved in their purported theft. *Republic of Kazakhstan v. Does 1-100*, 2015 WL 6473016, at *2. Since there

was no evidence that Respublika had stolen the documents, and because the injunction would constitute a prior restraint on speech, Judge Ramos clarified that the injunction against use and disclosure of dissemination of the hacked documents did not apply to Respublika. *Id.*

Notwithstanding the clarification of the injunction, there is no dispute that the hacked documents are no longer readily available on the internet through the Kazaword or Respublika websites. Counsel for the Plaintiffs informed this Court that they do not have a complete set of the documents that were uploaded to the Mega Limited website or that were available through the Kazaword website. Thus, they are unable to determine whether documents that purport to have been obtained from the website were in fact posted and are in fact identical to those that were posted on the website.

**2. The Deposition in this Case**

Nurgabylov is the Deputy Chairman of the Manage0ment Board of BTA Bank, which is based in Kazakhstan. Nurgabylov flew to New York for his deposition on May 3, 2017, which lasted seven hours. The day prior to his deposition, the Khrapunovs produced approximately 400 pages of documents that they intended to use at Nurgabylov's deposition, all of which they contend came from the Kazaword website and which they admit were either leaked or hacked from the government of Kazakhstan. The Khrapunovs contend that the documents were not responsive to any specific document request made by Plaintiffs, and the parties had no agreement concerning the timing of the production of documents to be used at Nurgabylov's deposition. Many of the documents are partially or completely in Russian, though some are in English. According to Plaintiffs (and undisputed by the Khrapunovs), some of the documents constitute attorney-client communications between the Republic of Kazakhstan Ministry of

4

Justice and its outside counsel. For example, one document was an email from a partner at the law firm Reed Smith to Kazakhstan's Minister of Justice. Other emails in the production include attorney-client communications between the Ministry of Justice and the law firm Curtis Mallet.

The Kazakh Entities objected to use of the documents at the deposition and, in particular, explicitly stated that Nurgabylov would not authenticate the documents. They also expressed concern about the lack of time they had to review the documents in advance of the deposition and the use of documents that constituted stolen and/or privileged communications. They did not object to questions informed by the documents, but did not permit the hacked documents to be used as exhibits in the deposition and directed Nurgabylov not to answer questions on the documents themselves.

The Khrapunovs elected to continue the deposition and ultimately took seven hours of testimony. They contend, however, that they wish to confront Nurgabylov with specific documents which they say contradict his deposition testimony.

In connection with their motion for a protective order, Plaintiffs contend that Ilyas Khrapunov was responsible for hacking the documents and facilitating their posting on the Internet. Therefore, they argue that their directions not to answer were proper and that the Khrapunovs should not be permitted to use the documents at all in this litigation.

## DISCUSSION

Several rules are relevant to the resolution of the instant motions. First, under Federal Rule 30, counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2); *Severstal Wheeling Inc. v. WPN Corp.*, No. 10-cv-954 (LTS)

(GWG), 2012 WL 1982132, at *1-2 (S.D.N.Y. May 30, 2012). In all other circumstances, counsel must note objections to the examination on the record, "*but the examination still proceeds*; the testimony is taken subject to any objection." Fed R. Civ. P. 30(c)(2) (emphasis added). The party resisting discovery bears the burden of supporting its position. *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994). Where a deponent is directed not to answer for some reason other than those set forth under Rule 30, the deposition must resume with the witness compelled by court order to answer questions regarding the non-privileged matter at issue and the court may impose reasonable expenses and attorneys' fees. *See Weinrib v. Winthrop-Univ. Hosp.,* No. 14-cv-953 (JFB) (AKT), 2016 WL 1122033, at *8 (E.D.N.Y. Mar. 22, 2016)*; Namoury v. Tibbetts*, No. 3:04-cv-599 (WWE), 2007 WL 638436, at *3 (D. Conn. Feb. 27, 2007).

Second, Federal Rule 30(d)(1) states that depositions generally should not exceed seven hours. Where a witness has sat for a full seven hours, a movant must show good cause to reopen and extend the deposition. *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-cv-1514 (PAC) (HBP), 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008). The determination of whether good cause exists is fact specific. *Id*.

Here, had Plaintiffs known that the Khrapunovs intended to use the hacked documents at the deposition, they may have sought a protective order in advance of the deposition. However, in light of the production of the documents on the eve of the deposition, Plaintiffs did not have a chance to seek a protective order in time to obtain a ruling in advance of the deposition for which the witness had traveled a long way.[1] Nevertheless, there is a preliminary

---

[1] It is disputed whether the documents themselves are responsive to a specific discovery request. However, there was no agreement concerning the timing of production, and the Khrapunovs contend that obtaining translations took time. The Court does not fault the Khrapunovs for the timing of the production in deciding this motion. In an

6

injunction against use, dissemination, and publication of the hacked documents by individuals who were responsible for hacking them. *Republic of Kazakhstan v. Does 1-100*, No. 15-cv-1900 (ER), 2015 WL 6473016, at *1-2 (S.D.N.Y. Oct. 27, 2015). Additionally, there is a pending lawsuit against Ilyas Khrapunov contending that he was responsible for the hacking. *See* First Amended Complaint ¶¶ 63-65, *Republic of Kazakhstan v. Ketebaev and Khrapunov*, No. 5:17-cv-00246 (LHK), (N.D. Cal. Jan. 20, 2017) ECF No. 8. Importantly, in bringing the California action, counsel for Kazakhstan had to certify, as officers of the Court, that the lawsuit was brought in good faith. *See* Fed. R. Civ. P. 11. The pendency of that lawsuit is a sufficient basis for Plaintiffs to suspect Ilyas Khrapunov was involved in the hacking. Thus, Plaintiffs' counsel's direction not to answer questions about the hacked documents cannot be construed as improper.

While this Court recognizes that Khrapunov vigorously disputes involvement in the hacking, that issue ultimately will be decided by the Northern District of California, not by this Court. Additionally, to the extent some of the documents constitute privileged communications that were indisputably hacked by someone, this Court also finds that it was not improper for Plaintiffs to object to the use of those privileged documents.

That the documents were publicly available for some time on the Internet does not mean, as the Khrapunovs urge, that they can use the documents as they see fit in this litigation, particularly while the case concerning Ilyas Khrapunov's involvement in the hacking is pending. Thus, the Khrapunovs' citation to the clarification by Judge Ramos of the injunction's non-

---

ideal world adversaries would provide documents to be used at depositions sufficiently in advance of a deposition so that the witness can be prepared to answer questions and so that time is used efficiently. The vicissitudes and pace of litigation nearly always prevent such an ideal scenario. The parties are directed to produce documents they intend to use at depositions at least five days in advance of the deposition to the extent practicable and to the extent the documents are responsive to discovery requests or documents that the party intends to identify in a supplemental Rule 26 disclosure.

applicability to Respublika is unavailing. Likewise, their citation to a decision by a New Zealand court stating that Kazakhstan does not know who undertook the hacking, is not dispositive. *Republic of Kazakhstan. v. Mega Ltd.*, 2015 Civ. 404-2909, Judgment of J Moore dated May 12, 2016, at ¶ 5 (NZHC 963). The Court in the Northern District of California will determine whether Kazakhstan is correct in its assertion that Ilyas Khrapunov was responsible for the hacking.

In sum, this Court finds that the directions not to answer were not improper under Rule 30. Therefore, the Khrapunovs will not be permitted to reopen and continue the deposition because of the directions not to answer.

The next issue to address is whether the Khrapunovs have demonstrated good cause to continue Nurgabylov's deposition beyond seven hours. Good cause can be shown based on a variety of reasons and is case and fact specific. For example, in some cases, the sheer volume of relevant information possessed by a single witness may warrant an extension of a deposition beyond seven hours. In other cases, obstructionist conduct by an adversary or witnesses may warrant an extension of the deposition. Having already determined that the directions not to answer were not obstructionist, this Court will evaluate the necessity of additional questions to the facts of this case. The Court must balance the burden and costs of continuing the deposition of a high ranking corporate representative who must fly from Kazakhstan to New York to be deposed against other methods available to obtain the needed information.

The Khrapunovs contend additional time is needed because, in several instances, the documents contradict Nurgabylov's testimony, particularly with respect to BTA's relationship with the Kazakhstan government. They go on to explain that ties between BTA and the Kazakh government are significant because they support the Khrapunovs' defense that this case, and

others like it in California, Switzerland, Kazakhstan, and the UK, are retribution for the Khrapunovs' and Mr. Ablyazov's political opposition to Kazakhstan's authoritarian regime. While the Court appreciates the purported relevance of information about the relationship of BTA and the Kazakhstan government, there are other less costly and burdensome methods for the Khrapunovs to seek additional information from Nurgabylov. For example, contention interrogatories and requests to admit are available. These methods are far less costly and burdensome than having Nurgabylov fly back to New York for a few hours of questions. Accordingly, this Court finds that the Khrapunovs have not demonstrated sufficient good cause to continue the deposition.

      The Court next addresses Plaintiffs' request for a protective order precluding use of the hacked documents in this litigation. A protective order is appropriate where a movant has shown good cause. Fed. R. Civ. P. 26(c)(1). Courts in this district have consistently prohibited parties from using stolen materials to their advantage in litigation. *See Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 571 (S.D.N.Y. 2008) ("In the end, the one thing that should remain unsullied is the integrity of the judicial process. In this Court's view, that integrity is threatened by admitting evidence wrongfully, if not unlawfully, secured."); *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 325 (S.D.N.Y. 1997) (pursuant to "inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained," courts may preclude the use of stolen evidence in litigation, even if it could otherwise have been discoverable). The problem Plaintiffs have is that they have not yet proven that Ilyas Khrapunov is responsible for the hacking. Thus, the motion for a protective order precluding use of the documents for any purpose in this litigation is premature. At the same

time, Plaintiffs have a good faith belief that Khrapunov was involved in the hacking based on the Complaint pending in the Northern District of California. For this reason, this Court finds that for now, pending the outcome of the case in the Northern District of California, the Khrapunovs may only (i) ask questions in depositions informed by the hacked documents and (ii) use the documents to refresh a witness's recollection, so long as the documents are not ones that constitute communications between Kazakhstan and its outside counsel or are otherwise plainly subject to a privilege. At this juncture, the documents may not be introduced as deposition exhibits and a witness shall not be required to authenticate a hacked document during a deposition while the California case is pending.

To the extent certain hacked documents are needed in this action as trial exhibits or exhibits to a dispositive motion and the California suit has not been resolved, the Khrapunovs shall write to this Court or Judge Nathan, as appropriate, to seek further direction. To the extent the California action is resolved in their favor, the Khrapunovs may move for relief from this Order. To the extent the California action is resolved in the Plaintiffs' favor and Ilyas Khrapunov is deemed to have been involved in the hacking of the hacked documents, the Injunction issued by Judge Ramos shall govern.

## CONCLUSION

For the reasons set forth above, the motion to reopen and continue the deposition of Nurgabylov at Plaintiffs' expense is DENIED, and the motion for a protective order is GRANTED IN PART and DENIED IN PART in accordance with the above. The Court is respectfully directed to terminate the motions pending at document numbers 354 and 355.

SO ORDERED.

Dated:   July 19, 2017
         New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge