UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>        Crossclaim Plaintiffs,<br><br>        -against-<br><br>MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,<br><br>        Crossclaim Defendants. | No. 15-CV-05345(AJN)(KHP) |

**KHRAPUNOV DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION
OF THE COURT'S JULY 19, 2017 ORDER GRANTING IN PART
<u>PLAINTIFFS' REQUEST FOR A PROTECTIVE ORDER</u>**

HOGUET NEWMAN REGAL &
  KENNEY, LLP
10 East 40th Street
New York, NY 10016
(212) 689-8808

*Attorneys for Crossclaim Defendants
Viktor and Ilyas Khrapunov*

**PRELIMINARY STATEMENT**

Crossclaim Defendants Viktor Khrapunov and Ilyas Khrapunov (the "Khrapunovs") respectfully move this Court for partial reconsideration of its July 19, 2017 Order (ECF No. 369, or the "Order") granting the City of Almaty and BTA Bank's ("BTA/Almaty") cross-motion for a protective order. In its July 19 decision, the Court ruled, among other things, that the Khrapunovs may not use documents obtained from the Kazaword website during discovery in this case (except to refresh a witness's recollection) and that they may not introduce them as exhibits to any deposition. The Khrapunovs seek reconsideration of this ruling insofar as it precludes them from introducing Kazaword documents as deposition exhibits.

The grounds for this motion are that the Court's July 19 ruling is contrary to controlling precedent and is effectively a sanction based on the Court's inherent powers, which requires both (a) evidence of wrongdoing by the Khrapunovs and (b) a finding of bad faith, neither or which is present here in light of the Court's ruling that such a finding would be premature. We ask that the Court reconsider its decision so that it may correct a clear error and prevent manifest injustice.

**Factual Background Supporting Reconsideration**

On July 5, 2017, BTA/Almaty moved for a protective order barring the Khrapunovs from using documents obtained from the "Kazaword" website in this litigation. (ECF No. 356 at 3). The Kazaword website was created in 2014 and hosted documents hacked or leaked from email accounts belonging to Kazakh government officials. (Order at 2). BTA/Almaty contend that these documents were obtained without authorization by computers hackers, and they further allege that Ilyas Khrapunov was involved in hacking the documents and posting them online. (Order at 2-3). The Khrapunovs opposed the motion on July 12, 2017, arguing that a protective

1

order cannot be imposed because there is no credible evidence that the Khrapunovs played any role in the alleged theft of the documents at issue. (ECF No. 358).

As the Court acknowledged, BTA/Almaty have not shown that Ilyas Khrapunov was responsible for any hacking (Order at 9), but rather their argument for a protective order is premised on a mere allegation unsupported by evidence. Kazakhstan instituted an action in California claiming that Ilyas Khrapunov bears responsibility for the taking and dissemination of government documents, signifying to the Court that BTA/Almaty in good faith "suspect Ilyas Khrapunov was involved in the hacking." (Order at 7). Yet to this point their suspicion is backed up only by the inadmissible testimony of Nurlan Nurgabylov, an individual lacking personal knowledge. (ECF No. 356 at 3-4; ECF No. 358 at 2). BTA/Almaty's claim that a particular document at issue, dated March 2016, could not have been retrieved from a public source—and therefore evidences wrongdoing—has been debunked. (ECF No. 358 at 2). No findings have been made in the California action.

The Court considered the above facts in concluding that BTA/Almaty's motion for a protective order is premature (Order at 9), though the Court nevertheless prohibited the Khrapunovs from introducing any such documents at deposition (Order at 10). The Khrapunovs must wait for the California action to be resolved in their favor, and only then may they move for relief from this Order to use these documents as they otherwise would be entitled to do. (Order at 10). In the meantime depositions will continue and, in all likelihood, be completed.

## ARGUMENT

Although used sparingly, a Court's power to reconsider an earlier order is appropriate where the movant can show that the Court overlooked controlling law or material facts that might reasonably be expected to alter its decision. *Anwar v. Fairfield Greenwich Ltd.*, 745 F.

2

Supp. 2d 379, 382 (S.D.N.Y. 2010); S.D.N.Y. Local R. 6.3.  Put another way, for a court to grant reconsideration, the moving party typically must demonstrate "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (internal quotations and citations omitted).  Here, the Court overlooked controlling law and should reconsider its decision in order to correct a clear error and prevent manifest injustice.

### A. The Court Lacks Authority to Grant the Protective Order.

The Court's decision to issue a protective order prohibiting the Khrapunovs from introducing Kazaword documents at deposition was error because this ruling amounts to a sanction pursuant to the Court's inherent power without a finding of bad faith.

Sanctions against a party's use of documents obtained outside discovery may only be granted pursuant to the court's inherent equitable powers, not pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.  *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983).  Each case the Court cites in support of the protective order recognizes this to be the source of the Court's authority.  *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 323-24 (S.D.N.Y. 1997); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008).  As Judge Koeltl explains:

> In this situation, the sanctions available under the Federal Rules of Civil Procedure are not directly applicable, since [the taking of documents] occurred prior to the filing of the litigation and outside the normal discovery process, and did not violate any court orders. *See Fayemi v. Hambrecht and Quist, Inc.,* 174 F.R.D. 319, 325 (S.D.N.Y.1997) (concluding that the Federal Rules of Civil Procedure did "not provide the authority for regulating the use of information obtained by a party independent of the discovery process"). Nonetheless, as the court in *Fayemi* found, pursuant to "its inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained," the court may preclude the use of stolen evidence in litigation, notwithstanding the fact that it would have been otherwise discoverable.

3

*Pure Power*, 587 F. Supp. 2d at 568.

Here, the Court quotes the same language from *Fayemi* regarding the "inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained," (Order at 9), but it overlooks the significance of that language. Limiting a party's use of documents based on the court's inherent powers requires evidence of that party's wrongdoing and a finding of bad faith. *See Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 947 (2d Cir. 1983) (overturning protective order where "no evidence was presented as to any culpability [by party] in the acquisition of the information") (discussed in *Fayemi*, 174 F.R.D. at 324); *see also Pure Power*, 587 F. Supp. 2d at 568 ("The Second Circuit has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine.") (quotations and citations omitted). Indeed, the Second Circuit "has always required a particularized showing of bad faith to justify the use of the court's inherent power." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991).

The Court cites no evidence of wrongdoing and finds no bad faith by the Khrapunovs in obtaining the documents at issue, instead asserting that Plaintiffs *have not proven* that Ilyas Khrapunov was involved in any hacking of documents. (Order at 9). In granting the protective order, the Court relies only on allegations against Ilyas in a California court (Order at 9-10), and it is well settled that allegations "are not evidence" and cannot be used affirmatively in another case. *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 622 (S.D.N.Y. 2014). Thus, the Court lacks authority to grant the protective order and prohibit the Khrapunovs from introducing the documents at deposition. *See, e.g.*, *Bridge*, 710 F.2d 947.

The error in the Court's ruling is also evident from its inconsistency. The Court identifies Rule 26(c) as the source of its authority for precluding the use of "hacked" documents, but then cites only cases stating that Rule 26(c) is inapplicable. (Order at 9). As in *Fayemi*, "reliance on Rule 26(c) of the Federal Rules of Civil Procedure is misplaced" because it fails to "provide a court with a basis for limiting the use of evidence obtained outside of discovery." 174 F.R.D. at 323.

Moreover, the Court explicitly states that the motion for a protective order is premature based on the lack of a finding of wrongdoing by the Khrapunovs in obtaining the documents (Order at 9), but then grants in part the motion for a protective order (Order at 10). These two contrary positions cannot be reconciled. BTA/Almaty's "good faith belief" that Ilyas Khrapunov was involved in hacking documents (Order at 9-10) cannot overcome a lack of authority for granting a protective order and enable the Court to grant the remedy in part as a sort of compromise solution.

### B. Reconsideration is Necessary to Prevent Manifest Injustice.

Even if the Court is authorized to restrict the Khrapunovs' use of the non-privileged documents at issue, it should refrain from doing so in the interests of justice. Unlike this case, in both *Fayemi* and *Pure Power* the court established that a party stole documents, yet in neither instance did the court prohibit the introduction of the documents as exhibits. The *Fayemi* court allowed the documents to be used for all purposes, and in *Pure Power* the documents could be introduced for the purpose of impeachment. *Fayemi*, 174 F.R.D. at 327; *Pure Power*, 587 F. Supp. 2d at 571. Alleged misconduct should not be punished more severely than established misconduct.

5

Furthermore, requiring resolution of the California litigation in the Khrapunovs' favor before allowing them to seek relief from the protective order improperly shifts the burden of proof onto the defendants, creating a situation in which the Khrapunovs are guilty until proven innocent.  In the event that the California litigation remains undecided throughout the duration of discovery, the Khrapunovs are left without recourse to use favorable documents they possess in their defense, regardless of their lack of involvement in the alleged wrongdoing.

The Court has left the door open to potentially allow the use of these documents at trial after precluding them at deposition, but this is inconsistent with common practice and offers little consolation to the Khrapunovs.  Discovery is designed to be broad in order to flesh out theories and evidence, such that its scope encompasses items that are plainly inadmissible at trial but rather reasonably calculated to lead to admissible evidence.  Fed. R. Civ. P. 26; *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 622 (S.D.N.Y. 2014).  Disallowing the use of documents at deposition deprives a party of the opportunity to effectively prepare for trial.  It is far more logical and equitable to enlarge the scope of discovery and then narrow the issues for trial than it is to narrow discovery and then enlarge the scope of trial.

Here, there is little or no harm in allowing use of the documents during discovery.  If the Court allows use of the Kazaword documents at deposition and then the California litigation is resolved against Ilyas Khrapunov, at trial the Court can rule those documents and testimony related thereto inadmissible.  Motions *in limine* to preclude evidence at trial are customary.  If the Court disallows use of the Kazaword documents and then the California litigation is resolved in favor of Ilyas Khrapunov, however, there is no easy remedy absent repeating the depositions to allow full use of the documents.

The Court has already cautioned against bringing a witness back for a second deposition in this case due to the "costly and burdensome" nature of international travel for "a few hours of questions." (Order at 8-9). Even if the Khrapunovs prevail in the California litigation, they likely will have lost their opportunity to confront witnesses at depositions with the relevant documents in their possession. Either a substantial administrative burden will be undertaken to bring all the witnesses back, or that burden will be deemed too great to justify the effort. The avoidance of unnecessary administrative burden is in itself a compelling reason for reconsideration. *Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 379, 383–84 (S.D.N.Y. 2010).

## Conclusion

For the foregoing reasons, the Khrapunovs respectfully request that this Court reconsider its Order and permit the Khrapunovs to mark Kazaword documents as deposition exhibits.

Dated: August 2, 2017  
       New York, New York

Respectfully submitted,

HOGUET NEWMAN REGAL  
  & KENNEY, LLP

By: _____  
    John J. Kenney  
    John P. Curley  
    Jeffrey A. Miller  
10 East 40th Street  
New York, NY 10016  
(212) 689-8808

*Attorneys for Crossclaim Defendants*  
*Viktor and Ilyas Khrapunov*