UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>　　　　Crossclaim Plaintiffs,<br><br>　- against -<br><br>MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,<br><br>　　　　Crossclaim Defendants. | ECF Case<br><br>No. 15 CV 05345 (AJN) |

**TRIADOU'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO RECONSIDER THE COURT'S JUNE 7, 2017 ORDER
COMPELLING TRIADOU TO PRODUCE MARC GILLIERON FOR DEPOSITION**

　

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Attorneys for Crossclaim Defendant
Triadou SPV S.A.*

Dated: July 17, 2017

## **TABLE OF CONTENTS**

                                                                                              **Page**

I.     The Order Grants Relief That Almaty/BTA Did Not Seek And To Which They Are Not Entitled ............................................................................ 1

II.    Gillieron's Resignation Constitutes New Evidence ................................................ 4

III.   It Would Be Manifestly Unjust To Compel Triadou to Produce Gillieron Under An Alter Ego Theory ...................................................................... 6

        A.     Triadou Lacked the Opportunity to Oppose a Finding of Alter Ego ........ 6

        B.     Compelling Gillieron's Deposition Under Either Rules 30(b)(6) or 30(a)(1) Would Result in Manifest Injustice ............................................. 8

CONCLUSION ................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*,
  308 F.R.D. 113 (S.D.N.Y. 2015) ..................................................................................................8

*Bennett v. Saint-Gobain Corp.*,
  507 F.3d 23 (1st Cir. 2007) ..........................................................................................................5

*C.D.S., Inc. v. Bradley Zetler, CDS, LLC*,
  213 F. Supp. 3d 620 (S.D.N.Y. 2016).........................................................................................5

*Coulter v. Daniels*, No. 3:07 CV 00166 DJS,
  2009 WL 1099006 (D. Conn. Apr. 23, 2009).........................................................................2, 8

*Credit Lyonnais, S.A. v. SGC International, Inc.*,
  160 F.3d 428 (8th Cir. 1998) .......................................................................................................9

*Eid v. KLM*,
  310 F.R.D. 226 (S.D.N.Y. 2015) .................................................................................................3

*Exp.-Imp. Bank of Republic of China v. Grenada*, No. 06-cv-2469,
  2010 WL 5463876 (S.D.N.Y. Dec. 29, 2010) ............................................................................2

*Flaks v. Koegel*,
  504 F.2d 702 (2d Cir. 1974).........................................................................................................8

*Independent Products Corp. v. Loew's Inc.*,
  24 F.R.D. 19 (S.D.N.Y. 1959) .....................................................................................................9

*Jackson v. Goord*,
  664 F. Supp. 2d 307 (S.D.N.Y. 2009).........................................................................................5

*MAG Portfolio Consultant GMBH v. Merlin Biomed Group LLC*,
  268 F.3d 58 (2d Cir. 2001)...........................................................................................................7

*Questrom v. Federated Dep't Stores, Inc.*,
  192 F.R.D. 128 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 81 (2d Cir. 2001) ....................................4

*Rossi v. Goord*, No. 9:00 CV 1521(LEK/DEP),
  2007 WL 952051 (N.D.N.Y. Mar. 29, 2007) .............................................................................1

*S A F La Sala Corp. v. S & H 88th St. Assocs.*,
  138 A.D.2d 241, 525 N.Y.S.2d 206 (1st Dep't 1988) ...............................................................1

*Snall v. City of New York*, No. 97-cv-5204(ILG),
   2000 WL 307371 (E.D.N.Y. Jan. 31, 2000) ...................................................................4

*United States v. Afram Lines (USA), Ltd.*,
   159 F.R.D. 408 (S.D.N.Y. 1994) ..................................................................................10

*United States v. Finkielstain*, No. 08 Crim. 009 (LAK),
   2007 WL 4191761, at *1 (S.D.N.Y. Nov. 28, 2007), *aff'd*, 293 F. App'x 62
   (2d Cir. 2008) .................................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30 ............................................................................................................. *passim*

Triadou respectfully submits this reply memorandum in response to Almaty/BTA's opposition ("Opp.") to Triadou's motion for reconsideration of the Court's June 7, 2017 Order compelling Triadou to produce Marc Gillieron for deposition pursuant to Fed. R. Civ. P. 30(b)(6). (ECF No. 330).[1] The Court should reconsider this ruling because it grants relief that Almaty/BTA did not seek, to which Almaty/BTA is not entitled, and from which manifest injustice would result.

**I.  The Order Grants Relief That Almaty/BTA Did Not Seek And To Which They Are Not Entitled**

In its Order, the Court erroneously found that Almaty/BTA noticed Marc Gillieron's deposition under Rule 30(b)(6), (ECF No. 330 at 4, 14); but Almaty/BTA sought to depose Gillieron pursuant to Rule 30(a)(1), (ECF No. 317-2). Almaty/BTA effectively admit this, arguing the Court had the "power to fashion the relief it deemed appropriate . . . including ordering that the deposition be modified or proceed under certain conditions." (Opp. at 15). But Almaty/BTA did not ask the Court for this specialized deposition; nor did Triadou have the opportunity to oppose a request for a supplemental 30(b)(6) deponent. Thus, by ordering Triadou to produce Gillieron for a Rule 30(b)(6) deposition, the Court committed clear error. *See Rossi v. Goord*, No. 9:00 CV 1521(LEK/DEP), 2007 WL 952051, at *3 (N.D.N.Y. Mar. 29, 2007) (reconsideration "is required in order to rectify a clear error, and avoid manifest injustice" where earlier order granted relief that was not sought ); *S A F La Sala Corp. v. S & H 88th St. Assocs.*, 138 A.D.2d 241, 241-42, 525 N.Y.S.2d 206, 207 (1st Dep't 1988) ("It was error and a clear abuse of discretion" to grant relief not sought in the motion and for which notice had not been provided).

The Court also committed clear error by ordering a deposition under Rule 30(b)(6) because, while Rule 30(a)(1) permits the selection of a particular deponent, Rule 30(b)(6) does not. *See*

---

[1] Triadou uses the same abbreviations and defined terms found in its Opening Memorandum.

1

*Coulter v. Daniels*, No. 3:07 CV 00166 DJS, 2009 WL 1099006, at *3 (D. Conn. Apr. 23, 2009) ("Rule 30(b)(6) does not allow for the opposing party to make the selection. Rule 30(a)(1) does."). Thus, even in the sole case on which Almaty/BTA rely for the proposition that courts order production of supplemental 30(b)(6) deponents, the court did not specify production of a particular witness. *See Exp.-Imp. Bank of Republic of China v. Grenada*, No. 06-cv-2469, 2010 WL 5463876, at *5 (S.D.N.Y. Dec. 29, 2010) (ordering a supplemental 30(b)(6) witness, but not identifying a particular person).[2]

In any event, Almaty/BTA's position is based on the faulty premise that the Court "found Triadou's proffered Rule 30(b)(6) witness to be inadequate." (Opp. at 1). The Order contains no such finding. Instead, it simply reiterates that Almaty/BTA's position is that Cerrito's testimony was insufficient. (ECF No. 330 at 4).[3] Further, Almaty/BTA mistakenly equate Triadou's statement that Cerrito was unable "to answer certain questions," (Opp. at 16 n.10), as an admission that Cerrito was unprepared. This is a leap in logic unsupported by the facts. Cerrito explained at his deposition ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The issue is one of common sense: a corporate witness cannot be prepared to testify regarding information the corporation does not know or have. That lack of information will not change even if Triadou

---

[2] *Grenada* also is inapposite because the court there ordered the supplemental 30(b)(6) witness because the original witness "was ***not prepared*** to answer all questions." *Grenada*, 2010 WL 5463876, at *1 (emphasis added). Here, Cerrito's inability to answer certain questions was not due to a lack of preparation, but rather due to gaps in Triadou's corporate knowledge caused by the failures of its prior director, Nicolas Bourg.

[3] There is no basis in the record on this motion for the Court to find that the testimony of Triadou's 30(b)(6) witness was insufficient. Almaty/BTA's sole support was a four-line snippet from a 300-page transcript, (ECF No. 317 at 1), which Triadou rebutted, (ECF No. 319 at 1 & n.1).

could produce Gillieron for deposition.[4]  Where information is unavailable to Triadou, it continues to be unavailable regardless of which corporate representative Almaty/BTA seek.

The Court also should grant reconsideration because forcing Triadou to provide Gillieron as a 30(b)(6) witness would result in manifest injustice.  Depositions conducted under Rules 30(a)(1) and 30(b)(6) are not casually interchangeable.  (*See* Opp. at 15).  One critical difference is that depositions noticed under Rule 30(b)(6) carry a duty to "'prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.'" *Eid v. KLM*, 310 F.R.D. 226, 229 (S.D.N.Y. 2015) (quoting *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, No. 10 Civ. 1391(LGS)(JCF), 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28, 2013)).  Thus, forcing Triadou to produce Gillieron as a 30(b)(6) witness would not benefit Triadou as Almaty/BTA absurdly suggest.  (Opp. at 16).  Rather, it would result in manifest injustice in light of the substantial burden involved, a burden that is exacerbated given Gillieron's limited personal knowledge, and it would be patently unreasonable given that Gillieron's education would be hampered by the same gaps in information (due to Bourg's conduct) that hampered Cerrito.  More importantly, compelling Triadou to produce Gillieron as a 30(b)(6) witness would be manifestly unjust where the Court has not found (and could not find) that Triadou's original 30(b)(6) witness was unprepared.

---

[4] If Almaty/BTA wish to learn more about Triadou's activities before Cerrito assumed the directorship, they may find it more fruitful to produce Bourg for deposition.  Bourg testified that he was Triadou's "sole director . . . from its formation in 2011 until my termination in late 2014." (ECF No. 142, ¶ 2; *see also* ECF No. 142-6 at 5 ("The Director of Triadou and of its affiliates is: Mr. Nicolas Bourg, sole director")).  While Almaty/BTA claim they do not have control over Bourg, they produced four witness statements from him, he came to New York at their request for the attachment hearing in May 2016, they paid for his travel, and he is contractually obligated to assist in Almaty/BTA's "investigative and asset recovery efforts," (ECF No. 332-2).

## II.        Gillieron's Resignation Constitutes New Evidence

Gillieron's resignation is new evidence that was not previously available to Triadou or its counsel, and Almaty/BTA's arguments to the contrary are rank speculation and baseless accusation. The parties completed briefing on Almaty/BTA's letter-motion to compel Gillieron's deposition on April 26, 2017. Gillieron resigned more than a month later on May 30, 2017. Almaty/BTA's contention that Cerrito "must have become aware of this resignation by May 30th at the latest" has no basis in fact. (Opp. at 6). Counsel for Triadou understands that Gillieron resigned in person before Mr. Glatz on May 30, 2017, and that Cerrito first learned of the resignation on June 14, 2017.[5] In any event, Triadou informed the Court of Gillieron's resignation three weeks after it first occurred, a week after Triadou's representative first learned of the fact, and, as counsel for Almaty/BTA acknowledge, only two days after counsel for Triadou learned of the evidence.[6] This timing does not reflect any lack of diligence. Because Triadou was diligent in providing this evidence to the Court, it is properly considered as new evidence. *Cf. Snall v. City of New York*, No. 97-cv-5204(ILG), 2000 WL 307371, at *2 (E.D.N.Y. Jan. 31, 2000) (identifying evidence as "new" where it was available within ten days of decision, but denying motion where party delayed months before seeking reconsideration).[7]

---

[5] The absence of these facts from Cerrito's short declaration does not support Almaty/BTA's accusatory conjecture. It is unreasonable to expect that such a declaration would include every potential counterpoint Almaty/BTA might raise.

[6] Almaty/BTA further imply that Gillieron's resignation sparked Triadou to move for reconsideration, (Opp. at 4), although Triadou's motion was well under way at the time counsel learned of Gillieron's resignation. Triadou had no obligation to share its planned motion with counsel for Almaty/BTA prior to its filing – and no obligation to file it before the due date.

[7] In contrast, Almaty/BTA's cited cases – reflecting denials of reconsideration motions where the parties either delayed for months before bringing the evidence to the court's attention or otherwise had the information when the pertinent motions were filed – are inapposite. *See United States v. Finkielstain*, No. 08 Crim. 009 (LAK), 2007 WL 4191761, at *1 (S.D.N.Y. Nov. 28, 2007), *aff'd*, 293 F. App'x 62 (2d Cir. 2008) (denying reconsideration where the movant chose not to file the affidavit during the five months in which the motion was pending); *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 131-32 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 81 (2d Cir. 2001) (movant waited more than six months to follow up on arguments made at a hearing on relevant motion);

To avoid the impact of this new evidence, Almaty/BTA again seek to discredit Triadou's corporate representative (Cerrito) by arguing that he is attempting to "hinder discovery." (Opp. at 9). This position has no basis in fact, and reflects only Almaty/BTA's groundless speculation about how Gillieron's resignation occurred. Nor is there anything sinister about Cerrito refraining from informing Gillieron of the deposition, which Cerrito did on the advice of counsel, and which is wholly consistent with Triadou's longstanding position that it does not control Gillieron.[8]

Almaty/BTA's mud-slinging next targets the deletion of Ilyas Khrapunov's emails – an argument that grossly misstates the facts. (Opp. at 10). Contrary to Almaty/BTA's assertion, Triadou did not "reluctantly reveal[] that it had destroyed all of Mr. Khrapunov's documents." (*See id.*). Rather, Triadou voluntarily informed the Court of the deletion in response to Almaty/BTA's separate motion involving another party (Ilyas Khrapunov's deposition) in an effort to correct the misrepresentations Almaty/BTA made in that earlier motion. (*See* ECF No. 308). The files were deleted as part of the routine server maintenance of a non-party, SDG, prior to the commencement of litigation, at a time when Ilyas Khrapunov had no control over SDG's management and his tenure as an outside advisor to SDG was drawing to a close. (*See id.*).[9]

---

*C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, 213 F. Supp. 3d 620, 627 (S.D.N.Y. 2016) (denying reconsideration motion where "new" French pleadings merely reiterated same arguments the court addressed in original motion); *Jackson v. Goord*, 664 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) ("the information they present was available at the time of the filing of the original motion"); *see also Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 29, 34 (1st Cir. 2007) (movant submitted affidavits containing evidence that was excluded as hearsay in connection with the underlying motion).

[8] Nor is there any basis for the Court to find Cerrito's short declaration incredible based on Judge Nathan's preliminary determination of his credibility after a short cross examination made on an incomplete discovery record. Such findings are neither conclusive nor determinative, (ECF No. 175 at 3 ("'These findings are not conclusive, and may be altered after a trial on the merits'")), and the discovery record to this point has only bolstered Cerrito's credibility.

[9] Almaty/BTA are simply wrong that Triadou "continued to delete Mr. Khrapunov's e-mails as they were sent." (Opp. at 10 n.5). At the time maintenance was performed on SDG's email server, Mr. Khrapunov's e-mail account was placed in POP3 mode, which simply meant his e-mail messages were transmitted to his device and not saved to SDG's server. (Ex. C, at 5-6).

5

### III. It Would Be Manifestly Unjust To Compel Triadou To Produce Gillieron Under An Alter Ego Theory

Compelling Triadou to produce Gillieron under an alter ego ruling effects manifest injustice because Triadou lacked the opportunity to properly respond and the requisite particularized analysis of Gillieron's ties to Triadou was not undertaken.

#### A. Triadou Lacked the Opportunity to Oppose a Finding of Alter Ego

One of the material statements that the Court overlooked was Triadou's representation that it lacked space in its three-page letter-opposition to respond to each of the documents that Almaty/BTA mischaracterized in its letter-motion, and which did not bear on Gillieron's involvement with Triadou. (ECF No. 319 at 2 n.4). This should be no surprise, given Almaty/BTA's erroneous characterization of Gillieron as an officer of SDG (which he was not) and thus a managing agent of Triadou, through which they implied Gillieron had access to the same information as Triadou's director. (*See* ECF No. 317 at 3 ("The flow of capital and information between SDG and Triadou is simply indistinguishable, even to SDG's own officers. Gillieron as an officer of SDG, is thus a managing agent of Triadou, and should be produced.")). Instead, Triadou's Opening Memorandum noted that the impact of the Court's finding would result in manifest injustice, a fact that is evident in Almaty/BTA's effort to expand the Court's limited ruling to other aspects of discovery. (*Compare* ECF No. 330 at 16-17, *with* Opp. 19-20 n.11 & Opp. Ex. 7).[10] Triadou further noted that if it is given the opportunity – which it should in light of the significance of the alter ego finding – it would refute Almaty/BTA's evidence. Almaty/BTA

---

[10] SDG is not a party, though Almaty/BTA had ample opportunity to seek to name the company. They chose not to do so despite knowing of SDG's alleged involvement since filing their original crossclaims. (*See, e.g.*, ECF No. 49, ¶¶ 79, 88-95). Almaty/BTA likely declined to do so because adding SDG would weaken their opposition to dismissal on *forum non conveniens* grounds in favor of Switzerland, which is where most of the witnesses that have been the subject of discovery disputes are located.

6

now criticize Triadou for not responding to the Order's alter ego finding or refuting Almaty/BTA's arguments, (Opp. at 12 & n.7), although they are well aware that Triadou is not permitted on reconsideration to have done so, (Opp. at 4). If Triadou had made such argument, Almaty/BTA undoubtedly would have objected.

Nevertheless, as Triadou forecast in its three-page letter opposition, Almaty/BTA's cited evidence does not reflect that Triadou and SDG were (or are) alter egos using the factors set forth in *MAG Portfolio Consultant GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In sum, this evidence does not satisfy the alter ego factors.[11]

---

[11] Cerrito's testimony regarding Triadou's plan to provide its recovery from the state court actions to SDG does not reflect that Triadou and SDG are alter egos. Triadou's Assignment Agreement marked the beginning of its exit from U.S. investments, and there is no evidence that the loan would not have been provided to SDG on fair terms. In any event, Cerrito's testimony was a rebuttal to Almaty/BTA's claim that Triadou intended to hide its recovery overseas, and also notably was consistent with its position that the case should be dismissed on *forum non conveniens* grounds to Switzerland (a motion pending at the time Cerrito testified).

7

    **B.**    **Compelling Gillieron's Deposition Under Either Rules 30(b)(6) or 30(a)(1) Would Result on Manifest Injustice**

Even if the parties had properly litigated the alter ego question (they have not), such a finding would not permit Almaty/BTA to depose Gillieron under Rule 30(b)(6). Rather, as shown above, Almaty/BTA would be allowed to notice SDG's deposition under Rule 30(b)(6), which would then enable SDG to identify its own corporate representative. *Coulter*, 2009 WL 1099006, at *3. The Order deprives SDG of that ability, and therefore results in manifest injustice.

Nor would the Order have been correct, even assuming the Court had proceeded under Rule 30(a)(1). Because the Court overlooked Triadou's material representation that it was not afforded sufficient opportunity to address alter-ego, Almaty/BTA is not entitled to depose Gillieron under Rule 30(a)(1) without establishing that he is a managing agent of Triadou. But Almaty/BTA's purported managing agent analysis sidesteps the "fact-specific inquiry" that focuses on "the individual's specific functions and authority." (ECF No. 330 at 14-15). Even the cases on which Almaty/BTA rely to argue that courts impose sanctions where alter egos fail to appear for deposition implicitly confirm that the role of the specific individual sought for deposition is of major significance. *See Flaks v. Koegel*, 504 F.2d 702, 710 n.6 (2d Cir. 1974) (sanctioning individual defendant for failing to appear at the noticed deposition of his company, where he and his wife were the officers, directors, and sole stockholders of the company); *In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*, 308 F.R.D. 113, 120 (S.D.N.Y. 2015) (sanctioning a married couple who acted in bad faith to avoid discovery where the plaintiff-wife's claims were based entirely on the conduct of her non-party husband). Conversely, Almaty/BTA do not cite a single case in which an alter ego involving a foreign, non-party company subjected all of that company's external directors (regardless of involvement) to deposition.

Here, undertaking such an analysis with respect to Gillieron confirms the Order would result in manifest injustice. For example, Bourg testified that he was Triadou's sole director from the time of Triadou's formation through his termination. (*See* ECF No. 142, ¶ 2; ECF No. 142-6 at 3). While Bourg's statement is incorrect to the extent that Gillieron was nominally a director of Triadou for a few months, it does confirm Gillieron's lack of involvement. Further, as this Court recently noted, "the crux of this" is the alleged theft of money from Almaty/BTA that was "invested (and then liquidated)" in New York real estate, (ECF No. 337 at 6), but Almaty/BTA have offered no evidence that Gillieron was involved in those investments or liquidation, and the Order does not so find.

Instead, Almaty/BTA point to Cerrito's testimony from the May 2016 hearing, as they often do, out of context. For instance, Almaty/BTA assert that Gillieron was the chairman of SDG's board for a time, and thus had a "big influence," (Opp. at 19 (citing ECF 163 at 106:11-13)); they ignore Cerrito's further testimony that Gillieron was an external board member, "was not involved in day-to-day operation" of SDG, and was mainly involved in "drafting contracts," (ECF No. 163 at 107:1-22).[12] Cerrito's discussion regarding "weekly status calls," (*see* Opp. at 8 (citing ECF No. 163 at 136:8-16)), related to testimony regarding Mr. Glatz's management of SDG during the several months a year he lived in Brazil, and Ilyas Khrapunov's lack of involvement

---

[12] Almaty/BTA also wrongly state that Gillieron was the chairman of SDG at the time his deposition was noticed, (Opp. at 2); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Likewise, contrary to Almaty/BTA's argument, (Opp. at 20), the May 2015 transfer of Triadou to Greencos is relevant given the Court's concerns that the transfer was motivated by a desire to avoid discovery, (ECF No. 330 at 17). Here, the timing confirms that the "corporate reshuffling" was wholly unrelated to the instant litigation. Similarly, given the facts of Gillieron's resignation, Almaty/BTA's cited cases are irrelevant. In *Independent Products Corp. v. Loew's Inc.*, the former officers resigned ***because of*** the anticipated litigation and in accordance with advice of counsel. 24 F.R.D. 19, 21-22 (S.D.N.Y. 1959). In *Credit Lyonnais, S.A. v. SGC International, Inc.*, the deponent was the sole officer, director, shareholder, and decision-maker, had been noticed in his personal and corporate capacities, and had refused to respond to written discovery. 160 F.3d 428, 430 (8th Cir. 1998). None of these facts are present here.

9

therein, (ECF No. 163 at 136). The testimony did *not* relate to Triadou's governance or U.S. investments. In short, Cerrito's testimony explaining Gillieron's role on SDG's board of directors (not its day-to-day operation) does not substantiate that Gillieron is a managing agent of Triadou, but does confirm that compelling Triadou to produce him would result in manifest injustice.[13]

Almaty/BTA's effort to summarily dismiss Mr. Glatz (Triadou's ultimate owner) as unable to "supplement Mr. Cerrito's Rule 30(b)(6) testimony as to the facts at issue in this litigation," ring hollow. (Opp. at 19). Almaty/BTA fail to show that Gillieron is "a witness who was involved in . . . the investments at issue," regardless of whether Gillieron was at SDG while Triadou made those investments. *Id.* Almaty/BTA cite no evidence that Gillieron possesses more information than Mr. Glatz, and Cerrito's testimony that Mr. Glatz "didn't quite understand what was going on in the U.S. because of a lack of information" merely echoes what Triadou has repeatedly told the Court about the effect of Bourg's failures as a director. (*See* ECF No. 163 at 150:22-25).

As this Court has held, the "rationale for [resolving doubts in movant's favor] is 'less strong . . . where the proposed deponent is not an employee of the opponent and may, in fact, be beyond its control,'" and Almaty/BTA have failed to provide evidence to the contrary. (ECF No. 330 at 19 (quoting *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 414 (S.D.N.Y. 1994)). It would be manifestly unjust to compel Triadou to provide Gillieron for any type of deposition.[14]

---

[13] Almaty/BTA effectively admit they have failed to produce evidence of Gillieron's involvement, but seek to blame Triadou for that failure. (*See* Opp. at 19 n.11). This argument is a red herring. If Gillieron had been as involved in Triadou's affairs as Almaty/BTA claim, the production of Triadou's electronic files (which has been done) would have so demonstrated. Electronic mail is sent and received, and the lack of documents sent to Gillieron, or received by Cerrito from Gillieron, confirm Triadou's position here. Likewise, Almaty/BTA produced more than 2,000 documents provided to them by Bourg, many of which are from his time as Triadou's director, and Almaty/BTA did not cite any of those documents as reflecting Gillieron's involvement.

[14] Bizarrely, Almaty/BTA seem to believe that Gillieron's status affects whether Krasnov is a managing agent of Triadou under the *Afram Lines* analysis. (Opp. at 6 n.3). Triadou objects to this belated reservation of rights, though it is unclear what rights Almaty/BTA purport to reserve, given their time to move for reconsideration has lapsed.

## **CONCLUSION**

The Court should grant Triadou's motion for reconsideration of the June 7, 2017 Order and deny Almaty/BTA's motion to compel the deposition of Marc Gillieron.

Dated: New York, New York
       July 17, 2017

Respectfully submitted,

BLANK ROME LLP

By:    s/Deborah A. Skakel
      Deborah A. Skakel
      Alex E. Hassid
      Robyn L. Michaelson
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
dskakel@blankrome.com
ahassid@blankrome.com
rmichaelson@blankrome.com

*Counsel for Crossclaim Defendant Triadou SPV S.A.*