**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |
|---|---|
| | ) |
| CITY OF ALMATY, KAZAKHSTAN, | ) |
| and BTA BANK JSC | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No. 15-cv-05345 (AJN) (KHP) |
| | ) |
| MUKHTAR ABLYAZOV, ILYAS | ) |
| KHRAPUNOV, VICTOR KHRAPUNOV, | ) |
| and TRIADOU SPV S.A., | ) |
| | ) |
| Defendants. | ) |

_____

### THE CITY OF ALMATY, KAZAKHSTAN AND BTA BANK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ILYAS & VIKTOR KHRAPUNOVS' <u>MOTION TO RECONSIDER THE COURT'S JULY 19, 2017 ORDER</u>

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile:  (212) 446-2350

_Attorneys for the City of Almaty, Kazakhstan_
_and BTA Bank_

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND .................................................................................................. 3

ARGUMENT ..................................................................................................... 4

   I.   The Motion Mischaracterizes The Court's Order, And Then Seeks Reconsideration Of That Straw Man Order ................................................................. 5

II.  The Motion Does Not Meet The Demanding Test For Reconsideration ..................... 9

   A.  The Khrapunovs' Argument Concerning the Scope of the Court's Power Under Rule 26(c) Is New and Wrong ................................................................. 9

   B.  The Reconsideration Motion Improperly Reargues the Weight of the Evidence .. 12

   C.  There is No Manifest Injustice in Denying Reconsideration ................................... 16

III.   The Khrapunovs Seek Relief That Goes Beyond Reconsideration And Is Not Practically Administrable ........................................................................ 19

CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.*,
   710 F.2d 940 (2d Cir. 1983)......................................................................... 8

*Davidson v. Scully*,
   172 F. Supp. 2d 458 (S.D.N.Y.2001),............................................................ 11

*Holman v. ICN Pharm., Inc.,*
   1999 WL 1267459 (S.D.N.Y. Dec. 29, 1999) ...................................................... 14

*Koehler v. Bank of Bermuda Ltd.*,
   2005 WL 1119371 (S.D.N.Y. May 10, 2005) ..................................................... 11

*Pfizer, Inc. v. Stryker Corp.*,
   2005 WL 44383 (S.D.N.Y. Jan. 10, 2005). ....................................................... 13

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
   587 F. Supp. 2d 548 (S.D.N.Y. 2008)................................................................7

*Republic of Kazakhstan v. Does 1-100*,
   2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015) ..................................................... 10

*Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*,
   559 F.3d 888 (8th Cir. 2009) ........................................................................ 14

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*,
   593 F. App'x 32 (2d Cir. 2014) .................................................................... 12

*United States v. International Bhd. of Teamsters*,
   948 F.2d 1338 (2d Cir. 1991).......................................................................... 9

**Rules**

Fed. R. Civ. P. 26............................................................................... 7, 8, 10, 12

The City of Almaty and BTA Bank (together, the "Kazakh Entities" or "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion for reconsideration filed by crossclaim defendants Ilyas and Viktor Khrapunov (the "Khrapunovs") (ECF No. 390) (the "Motion" or "Mot."), seeking reconsideration of the Court's Memorandum and Order dated July 19, 2017 (ECF No. 369) (the "Order").

## PRELIMINARY STATEMENT

The Motion fails to identify any legitimate grounds for reconsideration, let alone for a different result than the one the Court reached in its well-reasoned Order.  Instead, the Motion mischaracterizes the Order as "amounting to" a sanction, and then argues that the Court failed to make detailed findings of bad faith, "overlooking" the very case law cited in the Order. Moreover, the Motion goes beyond reconsideration, seeking additional and unwarranted relief.

*First*, the Khrapunovs do not identify any newly discovered evidence that could reasonably be expected to alter the Court's decision. The Court found that the documents in question (the "Hacked Documents") were stolen from the government of Kazakhstan, that the Kazakh Entities could not verify how the Khrapunovs obtained these documents, and that there was a good faith basis to believe the Ilyas Khrapunov was involved in the hacking.  The Motion misstates this factual record and is premised on a non-existent finding that the Hacked Documents were all publicly available.

*Second*, the Motion does not identify a change in law that could alter the Court's decision. It argues instead that the Court "overlooked controlling law."  Mot. at 3. But the Court did not overlook anything—the Court moved methodically through the motions before it, considering first whether the Kazakh Entities' instruction not to answer certain questions was proper and whether the Khrapunovs showed good cause to reopen the deposition, Order at 5–8, then whether the Khrapunovs showed good cause to continue the deposition in light of less

1

burdensome alternatives, *id.* at 8–9, and finally, whether the Kazakh Entities made the necessary showing to justify a protective order under Rule 26, *id.* at 9-10.  At each stage, the Court identified the correct standards.  Instead, the Khrapunovs argue the Court "overlooked controlling law" based on what the Order "amounts to" rather than what it actually is, Mot. at 3, arguing that the Court improperly sanctioned them using its equitable powers.  But in reality the Court fashioned an order and relief that is explicitly permitted by Rule 26 and the case law cited in the Motion.

*Third*, the Khrapunovs revisit arguments that were raised and rejected (such as the admissibility of the evidence demonstrating the Khrapunovs' unclean hands) or that were not made in the first instance (that Rule 26 did not provide the Court with the power to issue the protective order).  Neither is grounds for reconsideration.

*Fourth*, the Khrapunovs have failed to articulate any manifest injustice resulting from the Court's Order. The record before the Court contains nothing to suggest the Khrapunovs are at an unfair disadvantage, particularly when balanced against the harms to Plaintiffs and their witnesses. The Khrapunovs may still rely on the information contained within the Hacked Documents and may use them to refresh a witness's recollection; they also have the ability to seek relief from the Order as appropriate, and may request to use documents in connection with later motions and trial.

*Fifth,* and finally, the Khrapunovs improperly seek an order on reconsideration that exceeds the scope of the original cross-motions.  On reconsideration, the Khrapunovs ask the Court to "permit the Khrapunovs to mark Kazaword documents as deposition exhibits."  Mot. at 7.  Yet the Khrapunovs have failed to establish what documents were ever posted to Kazaword. This open-ended request would permit the Khrapunovs to use any documents for any purpose, so

long as they claim they are part of the Kazaword collection.

The Court should deny the Khrapunovs' Motion.

## BACKGROUND

On July 5, 2017, the Kazakh Entities cross-moved for a protective order barring the Khrapunovs from using the Hacked Documents, which included approximately 400 pages of documents they produced less than 24 hours before the deposition of BTA Bank's corporate representative, Nurlan Nurgabylov. These documents were on their face wrongfully obtained, and many contained private or facially privileged communications. *See* ECF No. 356, at 1 ("At about 1:20 PM on the day before the scheduled deposition of Mr. Nurgabylov . . .  the Khrapunovs produced more than 400 pages of documents, which upon even a cursory review were obviously wrongfully obtained"); *id.*, at 3 ("The Kazakh Entities respectfully request that the Court enter a protective order prohibiting the Khrapunovs from using the Hacked Documents in this action.").[1] The Kazakh Entities' motion for a protective order was in response to the Khrapunovs' motion to reopen the deposition of Mr. Nurgabylov, for the explicit purpose of using the Hacked Documents to question him.

The Khrapunovs opposed the motion for a protective order on July 12, 2017 [ECF No. 358], and the Court heard argument on the motion on July 13, 2017.  Following that argument, the Kazakh Entitles and the Khrapunovs each submitted brief reply letters, responding in part to inquiries raised by the Court. [ECF No. 359-360].

On July 19, 2017, the Court issued an order denying the Khrapunovs' motion to reopen Mr. Nurgabylov's deposition, and granting in part the motion for a protective order. [ECF No. 369]. Specifically, the Court noted that Judge Ramos had previously entered "an injunction

---

[1]      These documents were produced by the Khrapunovs bates numbered KHRAPUNOV0000238 - KHRAPUNOV0000645.

3

against use, dissemination, and publication of the hacked documented by individuals who were responsible for hacking them."  Order, at 7 (citing *Republic of Kazakhstan v. Does 1-100*, No. 15-cv-1900 (ER), 2015 WL 6472016, at *1-2 (S.D.N.Y. Oct. 27, 2015)).  Further, the Court explained that:

> [T]here is a pending lawsuit against Ilyas Khrapunov contending that he was responsible for the hacking. *See* First Amended Complaint ¶¶ 63-65, *Republic of Kazakhstan v. Ketebaev and Khrapunov*, No. 5:17-cv-00246 (LHK), (N.D. Cal. Jan. 20, 2017) ECF No. 8. Importantly, in bringing the California action, counsel for Kazakhstan had to certify, as officers of the Court, that the lawsuit was brought in good faith. See Fed. R. Civ. P. 11. The pendency of that lawsuit is a sufficient basis for Plaintiffs to suspect Ilyas Khrapunov was involved in the hacking. Thus, Plaintiffs' counsel's direction not to answer questions about the hacked documents cannot be construed as improper.

Order, at 7. The Court determined that granting the protective order in full would be premature considering the pendency of the California litigation, but that while that action remained pending, the Khrapunovs' use of the Hacked Documents would be limited in accordance with the Court's finding that "Plaintiffs' counsel's direction not to answer questions about the hacked documents cannot be construed as improper."  *Id.*

On August 2, 2017, the Khrapunovs filed the present Motion for Reconsideration.

## ARGUMENT

The Motion fails to establish any ground for reconsideration.  Under the strict standards for reconsideration, the Khrapunovs must identify "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *City of Almaty v. Ablyazov*, No. 15 Civ. 05345 (KHP) (AJN) (order dated Aug. 7, 2017, to be docketed) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)). The Khrapunovs do not identify new facts or precedent.  Instead, in an effort to meet the clear error standard, they misconstrue the Order and either rehash old

arguments or raise new ones for the first time.

## I.   The Motion Mischaracterizes The Court's Order, And Then Seeks Reconsideration Of That Straw Man Order

The Khrapunovs' Motion fundamentally misconstrues the Order. Factually, the Motion assumes that the Hacked Documents came from the Kazaword website. This was never established, and to the contrary, the Kazakh Entities presented compelling evidence that at least some of the Hacked Documents could not possibly have been available on the Kazaword site. Legally, the Khrapunovs mischaracterize the Order as a sanction. Properly (*i.e.*, literally) read, however, the Court issued an appropriate order under Rule 26 that flowed naturally from its determination that the Kazakh Entities acted in good faith when resisting the Khrapunovs' efforts to use the Hacked Documents, and then created a framework for discovery to advance while a threshold question was resolved in other proceedings.

The Motion is incorrect from the very first sentence of its purported "factual background." The Khrapunovs begin their Motion by incorrectly stating that "[o]n July 5, 2017, BTA/Almaty moved for a protective order barring the Khrapunovs from using documents obtained from the 'Kazaword' website in this litigation." Mot. at 1.  But the Kazakh Entities never conceded that the Khrapunovs obtained the documents from Kazaword, and the Court never determined that the Hacked Documents were obtained from the Kazaword website. In fact, the Khrapunovs' repeated inability to prove this foundational point was emphasized by each letter to the Court in the initial briefing on this motion, and the Khrapunovs strategically chose not to rectify this easily-addressed evidentiary concern. As the Court noted in its factual findings, the Kazakh Entities were "unable to determine whether documents that purport to have been obtained from the website were in fact posted and are in fact identical to those that were posted on the website." Order, at 4. The Khrapunovs' motion for reconsideration is therefore premised

5

on a finding the Court did not make.

The Motion mischaracterizes the Court's Order legally, as well.  The Khrapunovs' core argument for reconsideration is their claim that the Court's decision to issue a limited protective order pursuant to Rule 26 "amounts to a sanction pursuant to the Court's inherent power without a finding of bad faith." Mot. at 3.  But the Court's order is not a sanction.  What the Order does is align the Court's finding that the Kazakh Entities were justified in instructing BTA's witness not to answer certain questions about the Hacked Documents – a finding that the Khrapunovs do not challenge in their Motion – and fashion guidance and a structure for future depositions in this case.  If the Court had simply stopped after stating that the Kazakh Entities' motion for a blanket protective order entirely barring the Hacked Documents from being used for "any purpose in this litigation is premature," Order at 9, the parties would relive the same dispute at each deposition: the Khrapunovs would attempt to introduce or otherwise use Hacked Documents, and the Kazakh Entities would rely on the same good-faith basis to instruct the witness not to answer, and motion practice would follow.  The Order gets in front of these disputes by providing a framework for the parties to conduct discovery in the most efficient manner possible. This fits comfortably within the broad discretion courts have under the federal rules to manage discovery.

Indeed, the Court's Order was plainly issued under (and explicitly cited) Rule 26(c)(1), which as the Court noted is appropriate on a showing of good cause.  Order, at 9.  As even the cases cited by the Khrapunovs agree, a court may rely upon Rule 26 to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1) & (A).  As Judge Francis explained in *Fayemi v. Hambrecht & Quist, Inc.*, for example, an order under Rule 26(c) may be granted "[u]pon motion by a party or by the person

from whom discovery is sought," and therefore grants District Courts the power to "limit or foreclose discovery or regulate the disclosure of information obtained in discovery."  174 F.R.D. 319, 323 (S.D.N.Y. 1997).  *See also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568–69 (S.D.N.Y. 2008).

In the Order, the Court found that the Kazakh Entities had made a showing of good cause for a limited order protecting the Kazakh Entities from being asked to authenticate the Hacked Documents or otherwise from having to answer any questions that rely upon the introduction of the Hacked Documents as a deposition exhibit.  Order at 10.

The Khrapunovs' Motion entirely sidesteps this holding, instead seizing on the Court's citation to two cases that drew a distinction between orders governing discovery (which are proper under Rule 26) and orders sanctioning a party pursuant to the court's inherent power for conduct outside of discovery.  Misunderstanding the Court's use of the "see" signal before those citations, the Khrapunovs argue that because they obtained the Hacked Documents "outside of discovery," the Court cannot fashion any limitation on their use *in discovery* absent a finding of bad faith and the imposition of sanctions.  But this argument has it entirely backward: the Court's power to control the course of discovery is broad, whereas a Court may be more limited in directing how parties use documents *outside* of discovery.

The Order is undisputedly the result of a motion brought by "[a] party or any person from whom discovery is sought" – and thus properly within the scope of Rule 26.  Indeed, the Court's order protected the Kazakh Entities from having to answer questions about or authenticate the Hacked Documents *in depositions*.  A witness's answers in depositions are obviously "information obtained in discovery," and the Court has authority under Rule 26(c) and the cases cited by the Khrapunovs to "limit or foreclose discovery or regulate the disclosure of information

obtained in discovery." *Fayemi*, 174 F.R.D. at 323.  That is just what the Order does; it does not

purport to limit the Khrapunovs' ability to make use of the Hacked Documents outside of this

litigation.  *See, e.g., id.* at 325 (distinguishing *Bridge C.A.T. Scan Assocs. v. Technicare Corp*.,

710 F.2d 940, 945–46 (2d Cir. 1983), because that case "implicated First Amendment concerns.

There, the protective order initially obtained by the defendant precluded disclosure outside the

litigation of information that had been obtained independent of discovery, and it therefore

threatened to infringe the plaintiff's free speech rights."); *see also* ECF No. 359, at 1 (Kazakh

Entities' reply) (noting that "the Kazakh Entities are not seeking to enjoin publication of the

Hacked Documents or to limit the defendants' ability to discuss these materials, only to exclude

them from this action").  However the Khrapunovs may have obtained the Hacked Documents,

the Order only and properly limits their ability to use those documents in connection with

attempting to obtain new information through the discovery process – a limit well within the

ambit of Rule 26 – and does not dictate how they use these materials outside of discovery.

Moreover, the cases cited by the Khrapunovs recognize the Court's "inherent equitable

power over their own process 'to prevent abuses, oppression and injustices.'"  *Fayemi*, 174

F.R.D. at 324 (quoting *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888).  Although the use of this

authority is sometimes referred to as a "sanction," *id.*, there is no requirement that the Court find

bad faith or fault on the part of any party and none of the cases cited by the Khrapunovs suggest

otherwise.  At most, the court in *Fayemi* distinguished a case in which "the party seeking the

protective order had presented *no evidence* that its adversary had obtained the information

wrongfully."  174 F.R.D. at 324 (distinguishing *Bridge*, 710 F.2d at 946–47).[2]  Here, however,

---

[2]      The Khrapunovs quote *United States v. International Bhd. of Teamsters*, 948 F.2d 1338,
1345 (2d Cir. 1991), for the proposition that "the Second Circuit 'has always required a
particularized showing of bad faith to justify the use of the court's inherent power.'" Mot. at 4.

the Kazakh Entities have presented at least the basis for "a good faith belief that Khrapunov was involved in the hacking."  Order, at 10.

Simply put, the Motion fundamentally mischaracterizes the legal and factual basis for the Court's Order.  For that reason alone, the Motion should be denied.

## II.    The Motion Does Not Meet The Demanding Test For Reconsideration

The standard for reconsideration is high, and the Khrapunovs come nowhere close to meeting it.  As discussed above, the Khrapunovs misconstrue facts rather than identify new ones and misconstrue the nature of the Court's holding to argue against a straw man order.  Even if the Khrapunovs' arguments had merit, they cannot present them for the first time on reconsideration.  Separately, the Khrapunovs' arguments concerning the evidentiary basis for the Court's ruling are also inappropriate for reconsideration, as they are simply rearguing the weight of the evidence.  Finally, the Khrapunovs fail to demonstrate any manifest injustice caused by the Order.

### A.    The Khrapunovs' Argument Concerning the Scope of the Court's Power Under Rule 26(c) Is New and Wrong

In both the Kazakh Entities' original motion for a protective order and in their reply

---

That case, however, did not involve the use of documents in discovery but rather arose from a motion for monetary sanctions.  The Second Circuit explained:

> One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  Sanctions imposed under a court's inherent power—commonly known as the bad faith exception to the "American Rule" against fee shifting—depend not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation.

948 F.2d at 1345 (internal quotation marks and citations omitted).  It was in that specific context of awarding costs and fees as a sanction – not applicable here – that the Court remarked that a showing of bad faith was necessary.

papers, Rule 26 was identified as the basis for the requested relief. *See* ECF No. 356, at 3; ECF No. 359, at 1. Nowhere in either the Khrapunovs' original opposition to that motion or in their sur-reply in further opposition did they argue that the Court lacked the power under Rule 26 to grant the protective order requested, and nowhere did they cite the law they now claim to be controlling. *See* Mot. at 4 (*citing Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 947 (2d Cir. 1983)).

Indeed, the Khrapunovs cited a grand total of one decision in their opposition and sur-reply: Judge Ramos's decision in *Republic of Kazakhstan v. Does 1-100*, 2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015). The *Republic of Kazakhstan* decision was addressed in the initial round of briefing and its holding – that anyone other than those involved in the alleged theft can use the Kazaword documents, *id.* at *2 – does not support the Khrapunovs' argument. Rather, as the Court properly held, the injunction issued by Judge Ramos in *Republic of Kazakhstan*, among other things, provided a good faith basis for the Kazakh Entities to resist the Khrapunovs' attempts to use the Hacked Documents. Order at 6-7.[3] The Khrapunovs are now faulting the Court for 'overlooking' law they failed to bring to the Court's attention.

It is settled law that a "motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court," *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y.2001), and "[i]t is implicit in this language [of Local Civil Rule 6.3] that a motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been *considered*." *Koehler v. Bank of Bermuda Ltd.*, No. M18-302 (CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (emphasis in original). If the Khrapunovs believed that the Court was required to hold an

---

[3]   The Khrapunovs also cited the judgment of the New Zealand court in *Republic of Kazakhstan v. Mega Ltd.*, and properly concluded that it was not controlling. Order at 8.

evidentiary hearing or make particularized findings of bad faith before limiting their use of the Hacked Documents, the time to make that argument was in their opposition or sur-reply. They cannot ask the Court to *re*consider arguments they never put forward for the Court's consideration in the first instance.

But even if this argument were appropriate for reconsideration, it is unpersuasive for the reasons given above. The Khrapunovs are incorrect in their suggestion that the Order "amounts to a sanction" prohibiting them from using the Hacked Documents. The Court specifically noted that it could not rule on the threshold question of Ilyas Khrapunov's conduct, *see* Order at 9, nor would it be appropriate to do so while the California action is pending. While that question remained open, however, the Court recognized that the Kazakh Entities had a "good faith belief that Khrapunov was involved in the hacking" and could thereby resist discovery based on the fruits of that crime. *Id.* at 8–10. To reconcile these two holdings, the Court granted the motion for a protective order only in part, and crafted specific limitations on *how* (but not whether) the Khrapunovs' could use the Hacked Documents. The Khrapunovs are allowed to use the Hacked Documents to inform and formulate questioning during depositions and to refresh witnesses' recollections, while their ability to use those documents for other purposes is limited. *Id.* at 10. The Court did not "sanction" the Khrapunovs as they now protest, but rather used its power to manage discovery pursuant to Rule 26 to craft an interim solution while the ultimate question remained open.

As the Kazakh Entities noted in the initial round of briefing (ECF no. 359, at 1), under Rule 26 a Court has the power to grant a protective order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," and more generally, may craft limitations on discovery in order to "protect a party or person from annoyance,

embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1)(D). The Second Circuit

had similarly held that Federal Rule 26 "confers broad discretion on the trial court to decide

when a protective order is appropriate and what degree of protection is required." *U.S.*

*Commodity Futures Trading Comm'n v. Parnon Energy Inc*., 593 F. App'x 32, 36 (2d Cir. 2014)

(quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  A limitation on how a party

uses a specific subset of documents during depositions falls comfortably within this broad power,

and does not turn on a finding of bad faith or entail sanctions upon any party. The Khrapunovs

are not barred from using the Hacked Documents to shape their case or formulate questions for

witnesses, but deponents will be spared the "annoyance, embarrassment, [and] oppression" of

having private documents stolen from them by hackers thrust at them by the party alleged in

good faith to have stolen them. The Court was well within its authority to order such relief.

### B.  The Reconsideration Motion Improperly Reargues the Weight of the Evidence

A motion for reconsideration is also inappropriate where the moving party is simply

rearguing the same points previously decided by the Court, and that is exactly what the

Khrapunovs are doing here. The Motion attacks the evidence presented in the initial round of

briefing as "inadmissible" hearsay (Mot. at 2), but the Khrapunovs made the very same

arguments in in both their opposition and sur-reply. *See* ECF No. 358, at 2, ECF No. 360, at 1.

This is nothing more than a repeat of their previous arguments attacking the weight of the

evidence implicating Ilyas Khrapunov in the theft of the Hacked Documents, which is not

sufficient to warrant reconsideration. *See Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613 (LAK),

2005 WL 44383, at *1 (S.D.N.Y. Jan. 10, 2005). ("A motion for reconsideration may not rehash

arguments already made or advance arguments not previously presented.").

 Even if reconsideration were the appropriate venue for relitigating the weight of

evidence, the Khrapunovs' motion should still be denied because they still have put nothing on their side of the ledger. The Khrapunovs have offered no evidence *whatsoever* proving that the Hacked Documents were obtained from any public source, and the Court noted the Kazakh Entities' inability to verify their unsupported (and shifting) claim. Order at 4. It is telling that the Khrapunovs never offered an affidavit from Ilyas Khrapunov, his counsel, or both stating how they had obtained the Hacked Documents.  This would have been trivially easy to do, and Khrapunov was given numerous opportunities to do it – the Kazakh Entities noted the lack of evidence on this point in every submission to the Court and at the July 13 hearing.  Still, the Khrapunovs strategically chose not to introduce any evidence on this point, instead asserting in unsworn argument that counsel was "advised that the documents in question were all obtained from the Kazaword website."  [ECF No. 360, at 2].

The closest the Khrapunovs came to offering evidence regarding the Hacked Documents were affidavits from a Swiss bailiff stating that the bailiff observed Ilyas Khrapunov downloading some unknown universe of documents from the Kazaword website (ECF No. 358-03, at 2 ("I note that my principal, Mr. Iliyas KHRAPUNOV, copies internet files from the site: kazaword.wordpress.com onto a 16 GB USB stick."), insinuating that it was Ilyas Khrapunov himself who provided the Hacked Documents to his counsel to use here. Not only does this argument directly contradict counsel's representation that the Hacked Document were obtained shortly before Mr. Nurgabylov's deposition from an undisclosed third party, ECF No. 356-06, ¶ 5), but it still does not connect the specific Hacked Documents themselves to a public source.

Of course, the Khrapunovs could have produced the original zip files identified in the Swiss bailiff's affidavit, but the Khrapunovs chose not to do so. Instead, the Khrapunovs suggested that they had withheld any such documents as work product. 7/13/15 Hr'g Tr., at

13

29:12-30:4. The Khrapunovs cannot have it both ways. They put these zip files at issue by suggesting (without proving) that they were the source of the Hacked Documents, but then chose to withhold the same original zip files as work product. In any event, the Khrapunovs made their decision not to produce these documents to support their arguments when this issue was originally briefed, and now must live with the consequences.

With literally nothing on the Khrapunovs' side of the scale, the burden on the Kazakh Entities was slight, and more than met. While the Khrapunovs offered no evidence at all establishing how they obtained the Hacked Documents, BTA Bank's corporate representative identified two witnesses who tied Ilyas Khrapunov to the hacking that resulted in these materials. ECF No. 356, at 3-4. The Khrapunovs accuse the Court of relying on hearsay, *see* Mot. at 2, but even where sanctions are truly at issue and due process interests are at their highest, hearsay is perfectly admissible. *See Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 901 (8th Cir. 2009) ("While the Federal Rules of Evidence do not necessarily apply in the context of a motion for sanctions, evidence relied upon must, at a minimum, bear indicia of reliability."). Hearsay is also admissible at preliminary injunction hearings, *see Mullins v city of New York*, 626 F.3d 47, 52 (2d Cir. 2010), in evidentiary hearings even in criminal cases, such as on a motion to suppress evidence, *see US v. Mastrangelo*, 693 F.2d 269, 273 (2d Cir. 1982), and for fact finding at criminal sentencing. *See US v Fatico*, 579 F.2d 707, 713 (2d Cir. 1978). Moreover, the Kazakh Entities pointed out that at least some of the Hacked Documents postdate the time when the Kazaword site was operative. [ECF No. 357, at 2-3]. And the Court also noted that the California Action was filed only after Kazakhstan's counsel certified, "as officers of the Court, that the lawsuit was brought in good faith." Order at 7.

The Khrapunovs' attacks on the weight of the evidence are particularly unpersuasive given their own disregard for their discovery obligations. The Khrapunovs have produced less than one hundred documents between them (many of which were the Hacked Documents themselves), and neither of the Khrapunovs has sat for a deposition. Ilyas Khrapunov's pending deposition is particularly crucial, as he has already invoked his privilege against self-incrimination once (specifically citing the Kazakh Entities' claims against him in this action) [ECF No. 143-12], and such an invocation of privilege may be held against a party in civil litigation. Should he continue to invoke his Fifth Amendment protections during his deposition, the Khrapunovs would certainly have no basis for attempting to use the Hacked Documents.

Finally, even if the Court were to accept all of the Khrapunovs' arguments – setting aside their failure to raise them in the first instance – there is still no justification for permitting the Khrapunovs unfettered use of the Hacked Documents at this time. Taking the Khrapunovs' arguments at face value, the Court would be obligated to hold an evidentiary hearing to determine whether Ilyas Khrapunov was involved in the theft of the Hacked Documents. Such a hearing plainly could not occur until Ilyas Khrapunov both has been deposed and made a credible effort to comply with his document discovery obligations, neither of which has happened at the date of this filing.[4] Without such a hearing or the evidence required, it would be inequitable to allow the Khrapunovs to use the Hacked Documents freely – and the Khrapunovs' arguments for reconsideration are based in equity. In effect, depositions in this action would be

---

[4]       At this time, Ilyas and Viktor Khrapunov have produced a combined total of 92 documents in discovery – one of which was immediately clawed back.  Even this meager number actually overstates the Khrapunovs' efforts: of the 91 remaining documents, 32 are simply filings or court orders from their litigation with BTA Bank in the United Kingdom, and 25 are the Hacked Documents themselves. Of the roughly 34 remaining documents, a total of three are e-mails, and only one is an email to or from Ilyas Khrapunov; curiously, from an account Triadou claims has been deleted and Ilyas Khrapunov claims to lack access to.

on hold until the Court had obtained sufficient evidence to make a finding on Ilyas Khrapunov's conduct. Considering the Khrapunovs' flagrant disregard for their discovery obligations so far, this action might drag on into eternity – which may be what the Khrapunovs would prefer.

### C.   There is No Manifest Injustice in Denying Reconsideration.

On reconsideration, the Khrapunovs are bound by the record they created below. While the Khrapunovs repeatedly claim that they will be prejudiced by limitations on their ability to use the Hacked Documents, the record they created does not support this argument.

The Order does not require the return or destruction of the Hacked Documents, nor does it forbid the Khrapunovs from using them.  To the contrary, the Order explicitly permits the Khrapunovs to use the Hacked Documents to formulate their case, inform their questioning, and refresh witnesses' recollections.  Order at 10.  And it leaves open the question of whether the Hacked Documents may be admissible at trial or at the dispositive motion stage.  *Id.*

The Khrapunovs do not offer any explanation as to how they are prejudiced by the Order's relatively slight limitations. They vaguely assert that "[d]isallowing the use of documents at deposition deprives a party of the opportunity to effectively prepare for trial" (Mot. at 6), but the Order does not "disallow[]" the use of the Hacked Documents, it places restrictions on how they may be used.  While the Khrapunovs will not be able to mark the Hacked Documents as exhibits or try to confront witnesses on the spot with these documents, the Order leaves open the possibility of using them at summary judgment or trial for that very same purpose.  *See* Order at 10 ("To the extent certain hacked documents are needed in this action as trial exhibits or exhibits to a dispositive motion and the California suit has not been resolved, the Khrapunovs shall write to this Court or Judge Nathan, as appropriate, to seek further direction.").  Thus, the Order does not foreclose the possibility that the Khrapunovs may try to controvert an otherwise undisputed fact at summary judgment with a Hacked Document.  Nor does it prohibit

the Khrapunovs from locking in a witness's testimony on the subject of a Hacked Document, so that there is an appropriate record at trial to confront that witness, should the Court allow it.

An example proves the point.  Suppose one of the Hacked Documents is an e-mail from John Smith saying "at noon on August 9, 2017, the sky in New York City was blue."  At his deposition, the Khrapunovs can ask John Smith the question, "What color was the sky in New York City at noon on August 9, 2017?" or even "The sky in New York City at noon on August 9, 2017, was blue, wasn't it?"  If Smith agrees that the sky was blue, he has confirmed the substance of the Hacked Document, giving the Khrapunovs the testimony they want.  If Smith denies that the sky was blue and claims that it was green, the Khrapunovs have locked in that testimony and are not foreclosed by the Order from using the Hacked Document at trial to prove up the discrepancy.  Order at 10.  And if Smith testifies at deposition that he can't recall what color the sky is, the Khrapunovs are explicitly allowed to refresh his recollection by showing him the Hacked Document in which he wrote that the sky was blue, *id.*, and then putting the question to him again.  Thus it is far from clear how the Khrapunovs' able trial counsel suffer any prejudice – let alone "manifest injustice" – in their trial preparation from the Court's entirely appropriate order.

Indeed, considering the high standard for reconsideration, the Khrapunovs completely fail to detail the so-called manifest injustice they claim to suffer.[5]  The Khrapunovs claim that they

---

[5]     The single example the Khrapunovs provided in the initial briefing to support their claimed need to use the Hacked Documents was a selectively-quoted portion of Mr. Nurgabylov's deposition transcript, and a suggestion that "the documents contradict Mr. Nurgabylov's testimony" (ECF No. 354, at 2) while describing how one of these documents purports to impeach the witness's testimony. The Kazakh Entities submitted the relevant transcript showing full back-and-forth on this question and explained how Mr. Nurgabylov's answers were not contradictory in any way (ECF No. 356, at 4 n.5), but more importantly, *the Khrapunovs never put this unidentified document in the record.* Counsel's description of a document they did not put before the Court is not evidence.

will be prejudiced by the Court's Order if the California litigation does not resolve before trial, but this is simply an attempt to shift any burden from the alleged perpetrator of a crime onto the victims.  The Khrapunovs have not even been able to offer a coherent explanation as to how they obtained the Hacked Documents, yet they are seeking free reign to use these materials to their advantage against witnesses that were the victims of these intrusions.

While the Khrapunovs suggest that there is "little to no harm" in allowing them to use the stolen documents (Mot. at 6), this unsupported assertion contradicts both law and logic. If the Court allows the Khrapunovs to use wrongfully-obtained documents, it opens the floodgates for harassment and inevitable future motion practice. Even assuming that the Khrapunovs did obtain the Hacked Document from the Kazaword website (although they have yet to offer any proof of that), it would mean that they have thousands of private and privileged documents, the vast majority of which they are withholding as work product, and any of which they could use to embarrass, harass, or intimidate witnesses in future depositions. This potential for abuse would certainly not be limited to party witnesses: while the Khrapunovs refuse to produce the purported source of these documents, the documents of non-parties are obviously among those stolen, and witnesses – many of whom are located overseas and so may be asked to testify voluntarily – are substantially less likely to provide testimony when an opposing party apparently has the ability to rummage through years of private emails to dredge up embarrassing details or grill them on unrelated financial affairs or personal matters. Such conduct would inevitably lead to depositions being stopped repeatedly pursuant to Rule 30(d)(3) and ensuing motion practice, bogging down an already long-lending action.

The Khrapunovs similarly ignore the prejudice the use of the Hacked Documents would impose on non-parties, and in particular, the victims of the hacking. The Republic of Kazakhstan is not a party here, but the Khrapunovs are unabashedly seeking to use facially-privileged documents to harass or embarrass the Kazakhstan government or its officials in a proceeding where the Republic of Kazakhstan is not able to defend either itself or its attorney-client privilege. Permitting the Khrapunovs to sidestep a non-party's attorney-client privilege by claiming that they obtained privileged document from some other source would simply invite further disputes – a point the Court recognized in the July 19 Order. *Id.* at 7 ("[T]o the extent some of the documents constitute privileged communications that were indisputably hacked by someone, this Court also finds that it was not improper for Plaintiffs to object to the use of those privileged documents.").

### III.     The Khrapunovs Seek Relief That Goes Beyond Reconsideration And Is Not Practically Administrable

Finally, the Khrapunovs are not truly seeking reconsideration here. Rather, they are seeking a much broader ruling. Throughout the briefing on this issue the Khrapunovs' actual positions have been vague, but they now ask the Court to permit them to "mark the Kazaword documents as deposition exhibits." Mot. at 7. But nowhere do the Khrapunovs' define the so-called "Kazaword documents," and the Kazakh Entities have already made clear that they have no independent ability to verify whether a particular Hacked Document was ever available on Kazaword. Order at 4. At no point did the Khrapunovs prove or did the Court find that the Hacked Documents that were the subject of briefing in the first instance here were obtained from Kazaword. Nonetheless, the Khrapunovs are seeking an order on reconsideration that would explicitly allow them to use an undefined universe of stolen materials – which they refuse to produce in advance, claiming work product – in depositions. This "Kazaword" universe of

documents certainly appears extraordinarily broad. *See* ECF No. 358-2 at 3 (describing downloading "very large files"); ECF No. 358-3 at 8 (describing copying "7.35 GB" of files).

In effect, the Khrapunovs are asking for permission to use any document they claim to have obtained from the Kazaword website (whether or not they can prove that claim) for any purpose in a deposition—a far broader question than was originally presented. The Khrapunovs claim to seek reconsideration of the partial granting of the protective order, but actually seek to overturn both that ruling and the denial of their motion based on counsel's proper instruction not to answer certain deposition questions. At the same time, the Khrapunovs seek to foreclose similar instructions in the future. If the Khrapunovs wanted an order explicitly permitting them to use any documents they attribute to the Kazaword website, the time to ask for such an order has passed – and is certainly not appropriate on reconsideration of a far narrower Order.

## CONCLUSION

For the above reasons, and those stated in the Kazakh Entities' motion to for a protective

order [ECF Nos. 356, 359], the Khrapunovs' Motion for Reconsideration should be denied.


Dated:   August 9, 2017
       New York, New York                   Respectfully submitted,

                                           /s/ Matthew L. Schwartz
                                        Matthew L. Schwartz
                                        Peter M. Skinner

                                        BOIES SCHILLER FLEXNER LLP
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-2300
                                        Facsimile:  (212) 446-2350
                                        E-mail: mlschwartz@bsfllp.com

21