

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

December 12, 2017

**BY ECF AND ELECTRONIC MAIL**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
            **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

      We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities").  We write to renew our September 21, 2017 motion to compel the production of the documents of Triadou SPV S.A.'s former director, Marc Gillieron.  In addition, we respectfully request expedited consideration of this motion, in light of a critical deposition scheduled for next week.[1]

## BACKGROUND

      On April 21, 2017, the Kazakh Entities moved to compel the deposition of Gillieron, Triadou's former director and the then-Chairman of the Board of Triadou's parent, SDG. The Court granted the Kazakh Entities' motion, finding that Triadou and SDG were alter egos for discovery purposes [ECF No. 330, at 16-17], but Triadou sought reconsideration, revealing that Gillieron had suddenly resigned some weeks earlier (but after his deposition was noticed), and was now refusing to sit for a deposition. The Court denied reconsideration, and remarked that it was "troubled by the timing of Gillieron's resignation," and found Triadou's explanation for Gillieron's sudden resignation "implausible" and "incredible." [ECF No. 398, at 6-7].

      Following the Court's order compelling Triadou to produce Gillieron, the Kazakh Entities served document requests on Triadou seeking his documents, to be used at his deposition. *See* ECF Nos. 419, at 1; 419-01. Triadou refused to produce any of Gillieron's documents, arguing that, notwithstanding the Court' prior orders, it did not control Gillieron and he had refused to disclose any documents based on a professional duty of secrecy under Swiss law. *See* ECF No. 424, at 2, n.4.

      On October 3, 2017, pursuant to the Court's order, but without having produced any of his documents, Triadou produced Gillieron for his deposition. Following the deposition, the Court directed the parties to consider whether Gillieron's testimony resolved any of the Kazakh Entities' pending document requests. *See* 10/4/17 Hr'g Tr. at 30:9-17.  The Kazakh Entities did so and, on October 17, 2017, served revised requests for the production of Gillieron's documents on both

---

[1]    The Kazakh Entities bring this motion on an emergency basis, in light of to Your Honor's July 28, 2017 Order [ECF No. 369, at 6 n.1], requiring that all documents to be used at depositions be produced at least five days in advance. Gillieron testified that he ████████████ ████████████████████████████████████████████████████████████████ and Ms. Petelina is scheduled to be deposed on December 18-19, 2017.

Triadou and the Khrapunovs, *see* Ex. 2, which were limited to documents relating to Gillieron's "atypical" (*i.e.* non-privileged) work for the defendants. On November 2, 2017, Triadou again refused to produce Gillieron's records. On December 11, 2017, after the Kazakh Entities made clear that they were moving to compel, the Khrapunovs' counsel finally indicated that they hoped to produce some of Gillieron's "KYC files" prior to Ms. Petelina's deposition. Because – as detailed below – the Kazakh Entities' requests are not limited to KYC files and the deposition is scheduled for next week, the Kazakh Entities now move to compel the production of all of the records sought in their October 17, 2017 demands so that they can be used at Ms. Petelina's deposition.

## THE DEMAND LETTER

In its Order compelling Triadou to produce Gillieron for a deposition, the Court expressed concerns with entities "mak[ing] changes in personnel to avoid discovery." [ECF No. 330 at 17]. The Court's concerns appear to have been well-founded: new evidence has emerged indicating that Gillieron possesses documents that thoroughly undermine Triadou's defenses in this case, and that his resignation was merely a pretense to keep that evidence out of this action.

On or about November 21, 2017 – well after Gillieron's deposition – the Kazakh Entities received a production of documents from a former SDG employee. Among those documents was an October 30, 2013 letter ███████████████, a longtime business partner of the defendants, which is addressed and was apparently sent to Gillieron and Luigi Rosabianca, Triadou's U.S. counsel who is presently incarcerated and not able to produce documents. *See* Ex. 3 (the "Demand Letter"). In late 2013, a dispute arose between ████ and the defendants, leading ████ to withhold roughly $44 million in proceeds from the sale of one of Triadou's U.S. investments ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The statements in the Demand Letter – written two years before this litigation began and at the very time that Triadou was invested in the Flatotel and other U.S. properties – directly corroborate the testimony of Nicolas Bourg, Triadou's former director, ██████████████ ████████████████████████████████████████████████████████████████████ Similarly, the Demand Letter indisputably supports Judge Nathans' preliminary findings both that ████████████████ █████████████████████████ The Demand Letter also makes clear that SDG's Chairman was put on explicit notice of that fact. Conversely, the Demand Letter ████████████████ thoroughly discredits Triadou's claims that it was funded not by Ablyazov, but by the Petelin family.

In short, the Demand letter is not only facially responsive to the Kazakh Entities' document requests, but it is amongst the most important documents uncovered in discovery so far – and it appears that the defendants have gone to great lengths to avoid producing it and related documents.[2]

---

[2] The Kazakh Entities obviously could not question Gillieron about the Demand Letter at his deposition, as they did not have it at that time. In his deposition, ████████████████████

## ARGUMENT

Triadou has spent months refusing to produce Gillieron's documents. When the plaintiffs noticed his deposition, he inexplicably resigned, and when the plaintiffs demanded his documents, Triadou raised a host of objections and produced nothing. Now we know why: Gillieron appears to be sitting on damning evidence, including documents putting Triadou (and its parent SDG) on plain notice about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Even if ▓▓▓▓▓ statements were unverifiable (and they are not), the Demand Letter certainly put SDG and Triadou on notice about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and must have triggered an internal investigation. More than a year into discovery, however, Triadou has disclosed nothing about the Demand Letter or any related investigation, disclosure, or discussions.

While Triadou has raised innumerable objections to producing Gillieron's documents, none are valid. The Court has already found that Triadou and SDG are alter egos [ECF No. 330, at 16-17] and that Gillieron is within Triadou's control, ordering Triadou to produce him for a deposition (*id*.) – which it did. The Court has similarly indicated that its Order compelling Triadou to produce Gillieron would apply equally to documents. *See* 7/13/17 Hr'g Tr. at 48:10-15 ("THE COURT: I don't know that I would find differently, just from a document request, as opposed to a deposition. There's an open allegation regarding the alter ego. And at least for discovery purposes it seems to me that there's no reasonable basis for a distinction."). There is no support for Triadou's position that it was able produce Gillieron, but not his documents.

While Triadou has suggested that Swiss law prevents Gillieron from disclosing documents, he testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Gillieron acknowledged that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Triadou has not submitted any foreign law declaration or identified any Swiss law to the contrary. *See S.E.C. v. Euro Sec. Fund*, No. 98 CIV. 7347, 1999 WL 182598, at *3 (S.D.N.Y. Apr. 2, 1999) (ordering production of documents in Switzerland where defendants "provided no proof of Swiss law"). Even if Triadou had done so, Swiss secrecy law is certainly not dispositive here. *See Fundacion Museo de Arte Contemporaneo de Caracas - Sofio Imber v. CBI-TDB Union Bancaire Privee*, No. 93 Civ. 6870, 1996 WL 243431, at *3 (S.D.N.Y. Feb. 9, 1996).

Under the Federal Rules, Triadou can (and must) consent to the production of all relevant SDG and Triadou-related documents, and Ilyas Khrapunov can (and must) consent to the production of "atypical" records related to his companies, such as those identified in the Demand Letter. Indeed, the Khrapunovs have already represented that they may produce a limited subset of documents from Gillieron in the days to come. There is simply no reason why the defendants should be allowed to selectively produce Gillieron's records to their benefit, particularly when it appears they have been hiding damning evidence like the Demand Letter behind frivolous objections.

---

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Kazakh Entities reserve the right to recall Gillieron.

For the above reasons, the Court should order the defendants to produce all documents identified in the Kazakh Entities' October 17, 2017 requests, prior to Ms. Petelina's deposition.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022