UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

        Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

        Defendants.

---

No. 15-CV-05345(AJN)

# THE KHRAPUNOVS' PROPOSED FINDING OF FACTS IN SUPPORT OF THEIR POST-HEARING BRIEF

Viktor and Ilyas Khrapunov (together, the "Khrapunovs") respectfully submit these proposed findings of fact in support of their pending motion for to lift the confidentiality designation as to the Rakishev Deposition Transcript and in opposition to BTA/Almaty's motion for sanctions.

1. On June 15, 2017 the Khrapunovs noticed the deposition of Kenges Rakishev, the Chairman of BTA Bank's Board of Directors. Among other reasons for the deposition, BTA's 30(b)(6) witness, Nurlan Nurgabylov, testified that Mr. Rakishev would have information relevant to the claims and defenses in this case. *See* Exhibit B, Nurgabylov Tr., 107:10-108:9; 192:14-194:11.

2. Mr. Rakishev's deposition was held on October 11, 2017. Counsel for BTA/Almaty unilaterally designated the entire deposition transcript confidential under the Confidentiality Order. *See* Exhibit C, Rakishev Tr. at 4:15-19.

3. John Curley of Hoguet Newman Regal and Kenney, LLP, forwarded a rough copy of the Rakishev deposition Transcript to Ilyas Khrapunov on October 12, 2017. [ECF No. 482-20, HNRK Privilege Log].

4. On October 17, 2017, John Curley emailed the counsel group inquiring as to whether BTA intended to maintain confidential treatment over certain portions of Mr. Rakishev's testimony. *See* ECF No. 471, Schwartz Decl., ¶ 5; 11/17/17 Hr'g Tr. at 55:2-9.

5. On October 19, 2017, the parties participated in a meet and confer call to discuss, among other things, whether BTA would consent to the Khrapunovs' request regarding de-designation of the Transcript.

6. On October 26, 2017, the Khrapunovs moved by letter motion to lift the confidentiality designations as to certain portions of the Transcript so that the Khrapunovs

might use that testimony in proceedings occurring between Ilyas Khrapunov and BTA Bank in the United Kingdom [ECF No. 452]. A footnote to the letter motion advised the Court that the Transcript had been posted online at a Russian language news site called URA Inform. *Id.* at 2, n. 1.

7. To date, neither BTA nor their counsel has ever disputed the allegations contained in the Khrapunovs' October 26, 2017 letter motion or made any attempt to explain the inconsistencies between BTA's statements in the UK and US Courts.

8. The URA Inform article, titled "Судебный процесс об отмывании якобы похищенных в Казахстане денег принял неожиданный поворот," translated from Russian-to-English as "Trial on Laundering of Money Allegedly Stolen in Kazakhstan Takes Unexpected Turn," states that the author "obtained this confidential document from a person representing a BTA Bank employee" who decided to leak the Transcript because "he considers Rakishev guilty of destroying a bank that was flourishing at the time of 'nationalization.'" [ECF No. 487-4]. The article further states that Rakishev's management of the Bank "caused many BTA Bank employees to lose their jobs and livelihoods," which "also contributed to [the] interlocutor's decision to pass the Rakishev deposition transcript along to reporters." *Id.*

9. The language of the URA Inform Article suggests that its author had been following the status of this litigation ("We learned that the New York trial would continue in an unexpected direction in early October.") and, in connection with same, had been reading Khrapunovs' Facebook posts about the case ("But to all appearances, the respondent's counsel counted on Rakishev not to appear in court."). [ECF No. 487-4].

10. The URA Inform Article also makes reference to statements that appear in the Khrapunovs' September 15, 2017 Facebook post (the Khrapunovs "urged those interested in the

3

progress of the trial to stock up on popcorn") but also contains the author's assessment of developments in the case ("Essentially, the respondent's side should have regarded this decision by the judge as a great victory;" "the respondents' attorneys in the case had probably prepared numerous interesting questions for Rakishev.")  [ECF No. 487-4].

11. On November 1, 2017, BTA/Almaty filed a letter motion requesting a conference and evidentiary hearing regarding the Transcript Leak and in opposition to the Khrapunovs' motion to de-designate the confidential testimony of Mr. Rakishev. [ECF No. No. 453].

12. On November 2, 2017, the undersigned filed a letter opposing BTA/Almaty's request, noting that the accusations against Ilyas Khrapunov were "baseless" and "designed to obfuscate the larger issue: BTA is resisting efforts to use Mr. Rakishev's testimony to correct BTA's incorrect statements in the UK proceeding." [ECF No. 456].  Attached to the November 2, 2017 letter motion was a signed declaration of Ilyas Khrapunov, which stated in no uncertain terms that he has not provided anyone with any copy of the Transcript (rough or final), he did not send any version of the Transcript (rough or final) to anyone at the website ura.inform.com, and that he does not know how the website obtained the Transcript. [ECF No. 456-1].

13. By Order dated November 6, 2017, Judge Parker granted BTA/Almaty's request for an evidentiary hearing and directed the parties who wish to present witnesses by telephone to file the appropriate applications by November 8, 2017.  [ECF No. 458].

14. Because the Khrapunovs cannot travel outside of Switzerland, the undersigned filed an application for Viktor and Ilyas Khrapunov to appear at the evidentiary hearing by telephone.  [ECF No. 459].  The application was filed before the undersigned had an opportunity to speak with the Khrapunovs' Swiss counsel.

15. On November 14, 2017, the Khrapunovs' Swiss counsel advised the undersigned that participation by the Khrapunovs in the evidentiary hearing, including by phone or videoconference, without prior authorization from the Federal Office of Justice in Switzerland, would constitute a violation of Swiss law. The undersigned advised the Court and the parties of same. [ECF No. 463].

16. Following the evidentiary hearing, the undersigned firm retained Swiss Forensic Technology Solutions ("Swiss FTS") an international consulting firm that specializes in IT forensics, electronic discovery and information governance, to cull, collect, ingest and analyze electronically stored information from multiple email accounts and electronic devices belonging to Ilyas Khrapunov. See Exhibit A, Decl. of Mattias Aggeler.

17. The Swiss FTS forensic review produced no evidence that Ilyas Khrapunov sent or transmitted the Transcript to anyone else. See Exhibit A, Decl. of Mattias Aggeler.