

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

December 18, 2017

**BY ECF AND ELECTRONIC MAIL**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

   Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
     **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

  We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities").  We offer this reply to the December 15 letters from defendants Triadou SPV S.A. [ECF No. 500] and Ilyas & Viktor Khrapunov [ECF No. 501], and in further support of the Kazakh Entities' renewed motion to compel the production of documents from Marc Gillieron. [ECF No. 494]. In particular, we address the Khrapunovs' recent production of a limited number of Gillieron's files, which they incorrectly suggest moots this motion, as well as new foreign law arguments raised by the defendants.

**A.** **The Khrapunovs' Limited Production Does Not Moot the Kazakh Entities' Motion**

  Late last week, the Khrapunovs produced 83 documents from Gillieron's files. These documents consisted primarily of nominee directorship agreements and corporate formation documents, and did not include any communications or transaction records reflecting these entities' activities. Based on this limited production, the Khrapunovs now argue that the Kazakh Entities' motion should be considered moot. [ECF No. 501, at 2]. The Khrapunovs are incorrect.

  In his deposition, Gillieron testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The Notes were not among the documents produced by the Khrapunovs from Gillieron's files, despite the fact that they were specifically identified in the Kazakh Entities' motion to compel [ECF 494, at 1 n.1], and are certainly relevant for questioning Ms. Petelina.[1]

  Public reporting since the Kazakh Entities filed their motion has made the production of the Notes particularly important: on December 13, 2017, Buzzfeed News began publishing a series of

---

[1] Ms. Petelina has opted to be deposed in Russian, and as such, her deposition will run for two days, on December 18 and 19, 2017.

investigative reports on FBME Bank's facilitation of money laundering. *See* Ex. 2, T. Warren & A. Campbell, "The Secrets of One of the World's Dirtiest Banks and Its Powerful Western Protectors," *Buzzfeed News*, Dec. 13, 2017, *available at* http://bzfd.it/2zgt3bl. Citing and quoting from FBME's own investigators' reports – which have been posted online in redacted form – the article revealed that Khachatryan and others at FBME forged due diligence files for FBME's customers. *Id*. at 3. In response to this reporting, Khachatryan stated on the record that the "[m]aximum what I can be accused of is claiming that a fake document is real" – a truly astounding admission for a chief of compliance. *Id*. at 25. The Notes may be the best evidence establishing whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was similarly forged.

The Khrapunovs acknowledge that the Kazakh Entities' October 17, 2017 document requests are not limited to the selection of documents they have produced, but attach a letter from Gillieron vaguely stating that he cannot disclose "data, documents, or information . . . gathered for the purpose of our regulatory obligations." [ECF No. 501-1]. Gillieron's letter, which is dated after the Kazakh Entities threatened to move to compel, cites no law other than a general reference to "Swiss AMLA." *Id*.[2] Indeed, it is far from clear that Gillieron's unsworn claim that he "cannot" disclose "internal, and proprietary" documents is based on any purported legal prohibition, let alone one that would overcome compulsory process such as a Rule 34 document request. At his deposition, Gillieron testified at length about information he obtained to satisfy his purported AML obligations, including about the meeting that is recorded in the Notes. *See* Ex. 1, at 93:13-97:9.[3]

The defendants' position seems to be that they can offer favorable testimony about documents, while refusing to produce the documents themselves. If "Swiss AMLA" did not prevent Gillieron from testifying about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, then the defendants should not be allowed to withhold the accompanying documents.[4]

---

[2]   The Khrapunovs should not be allowed raise generalized foreign law objections for the first time in an unsworn statement opposing a motion to compel. Gillieron's failure to identify the laws or provisions he claims to be restricted by should lead the Court's to disregard his letter outright, and by failing to specify what foreign law they claim to be relying on, the Khrapunovs have failed to carry their burden. *See S.E.C. v. Euro Sec. Fund*, No. 98 CIV. 7347, 1999 WL 182598, at *3 (S.D.N.Y. Apr. 2, 1999). The Khrapunovs still have not served objections to the October 17, 2017 requests, and certainly never indicated that they would be making a selective production based on unspecified foreign law, and thus also fail to meet the notice requirements of Fed. R. Civ. P. 44.1.

[3]   Gillieron appears to be generally referencing the Swiss Federal Act on Combating Money Laundering, which the Kazakh Entities attach here as Exhibit 3. Nothing in the plain text of this statute supports Gillieron's statements. *See Wright & Miller*, 9A Fed. Prac. & Proc. Civ. § 2444 "Proof of Foreign Law" (3d ed.) ("Statutes . . . can be established most easily by introducing a copy of the applicable provisions."); *In re CPW Acquisition Corp*., No. 08-14623 (AJG), 2011 WL 830556, at *7 n.11 (Bankr. S.D.N.Y. Mar. 3, 2011)("Courts have considered the plain text of applicable foreign law in making rulings regarding foreign law"). Curiously, the only provision which requires records to be kept confidential refers to instances where an intermediary has filed a suspicion of money laundering report with the Swiss authorities. *See* Ex.3, at Art. 34 (referencing "duty to report" under Article 9).

[4]   Alternately, Gillieron's testimony regarding the Notes and the documents he claims to have observed at FBME must be stricken as violating the best evidence rule. *See W. Coast Branch, Dist.*

### B. The Khrapunovs' Selective Production Proves that Gillieron's Documents are Available to the Defendants

While the Khrapunovs argue that they have produced everything they are obligated to, Triadou argues that it simply can't produce anything at all from Gillieron. The recent production of Gillieron's documents (although woefully incomplete and selective) should finally put the lie to Triadou's repeated arguments that it isn't able to produce anything from Gillieron. At this point, the only question is whether the defendants should be able to make productions selectively, while withholding evidence as critical as the Demand Letter. *See* ECF No. 494-03.

Triadou tries to sidestep this reality by arguing that responsibility of Gillieron's files lies with the Khrapunovs. Ltr. at 1. Triadou and the Khrapunovs are bouncing responsibility for Gillieron between them, effectively frustrating discovery of a witness who appears to be sitting on critical evidence, and this exactly why the Kazakh Entities' October 17, 2017 document requests were aimed at *both* the Khrapunovs and Triadou. *See* ECF No. 494-02. Triadou can (and must) consent to the production of all relevant SDG- and Triadou-related documents, just at Ilyas Khrapunov has consented to the (selective) production of records related to his companies. Gillieron indisputably possesses documents created on behalf of both defendants, and *both* defendants must instruct him to disclose them.

Triadou's other new excuse for failing to produce Gillieron's documents is that his records actually belong to his law firm, Chabrier Avocats. Ltr. at 2. This is more misdirection. Gillieron is a partner at Chabrier, and even if he were not, a defendant cannot hide their communications behind third parties by having their agents use third-party communications systems.[5] When Gillieron used Charbier's systems to conduct Triadou and SDG's business, he – and through him, Chabrier – rendered documents in Chabrier's systems discoverable in the instant action. *See Waymo LLC v. Uber Technologies, Inc.*, No. 17-cv-00939, 2017 WL 2972896 at *2 (N.D. Cal. Jul. 12, 2017). Triadou misconstrues this argument as being about whether Triadou has "control" over Chabrier's documents, but that is the wrong standard. The Court has already found that Triadou and SDG were alter egos,[6] and therefore Gillieron – as a director of SDG – must produce his non-privileged documents, wherever they may be stored.

Perhaps most tellingly is what is not said in Triadou's opposition: while Triadou argues that "[t]he record thus suggests that Triadou never received the letter," Ltr. at 3, it does not include any

---

*No. 1, Nat. Marine Engineers Beneficial Ass'n*, No. 67 CIV. 2441, 1969 WL 11132, at *9 (S.D.N.Y. Feb. 4, 1969).

[5] Triadou appears to be arguing that a law firm's client has no right to the law firm's files created on their behalf, an unsupportable position. *Cf. In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 346 (S.D.N.Y. 2011) ("[A] client has 'presumptive access to the attorney's entire file on the represented matter, subject to narrow exceptions'" (quoting *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30 (1997))). Triadou has offered no foreign law otherwise.

[6] Triadou continues to resist this finding, but the Court has already concluded that Gillieron himself could be compelled to sit for a deposition as a party, because he was the director of SDG, which in turn was Triadou's alter ego. As the Court has remarked, 7/13/17 Hr'g Tr. at 48:10-15, there is no legal basis for treating document discovery different than deposition testimony, and in any event, the same factual record that supported the Court's prior alter ego finding compels the same result here.

sworn statement from Gillieron – a particularly telling omission when the Khrapunovs were able to obtain a letter on short notice from Gillieron justifying their selective production. The Demand Letter is signed, ███████████████, and was received from a former SDG employee's files. This certainly creates a presumption that it reached SDG. Triadou argues that there is no "evidence" the Demand Letter was received by Gillieron himself – but that evidence is exactly what the Kazakh Entities are seeking here. Triadou's position is akin to a party refusing to produce documents, and then pointing to the absence of their documents from the record as proof they have no documents to produce.

Finally, while Triadou attacks the substance of the Demand Letter at length, these attacks miss the point. Even setting aside the truth of the Demand Letter's allegations, the statements in the Demand letter would unquestionably have put Gillieron and SDG on notice of ███████████ ███████ and – if SDG were a legitimate company, rather than simply a vehicle for the defendants to launder money, as Judge Nathan has already found, *see* ECF No. 175, at 5-6 – triggered an internal investigation. Gillieron testified that . Under those same Swiss AML laws, he was obligated to re-investigate this information "[i]f doubt arises in the course of the business relationship as to the identity of the customer or of the beneficial owner." Ex. 3, at Art. 5. ███████████████ ███████████████████████████████, and under Swiss law, Gillieron must have taken steps to investigation these claims – all of which must be documented in his files and kept for 10 years. *Id.*, at Art. 7.3. The only logical reason Gillieron would not have conducted an investigation would be if he already knew the statements in the Demand Letter were true.[7] Even if the Demand Letter was nothing but puffery and bare-knuckle negotiation tactics (and Mr. Bourg's testimony surely indicates that it is not), there is every reason to believe Gillieron continues to possess documents reflecting his investigation of the allegations therein.

At base, it is clear that Gillieron continues to withhold relevant documents that, by his own testimony, are not protected by any claim of privilege or otherwise beyond the scope of permissible discovery.  The Khrapunovs and Triadou cannot avoid producing this information simply because it

---

[7]    Triadou ends its opposition on what can only be described as conspiracy theory, claiming that – despite its own failure to produce the Demand Letter – the real issue is the Kazakh Entities' "cooperation with two individuals subject to subpoenas issued by Triadou." Ltr. at 3. To be clear, the Kazakh Entities always attempt to work cooperatively with non-parties to obtain documents with as little burden as possible, as they are explicitly obligated to do under Rule 45.

For example, the Kazakh Entities received less than three-dozen documents from Mr. Meyer, obtained by providing his counsel with a small number of discrete search terms to limit the burden of any production. In contrast, the Kazakh Entities understand that Triadou demanded multiple entire mailboxes from Mr. Meyer, presumably including thousands of documents, and then refused to reimburse any costs or fees for this enormous and burdensome demand. It is not surprising that Triadou has had difficulty collecting documents from third-parties if this is indeed how they have approached non-party discovery. Rather than attacking the Kazakh Entities, Triadou might be better served by re-acquainting itself with Rule 45. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense.").

is held by Gillieron, who was both an agent of the Khrapunovs and a party-affiliate of Triadou.  For the above reasons, the Kazakh Entities respectfully request that the Court order the defendants to immediately produce the Notes, so that they may be used tomorrow at Ms. Petelina's continuing deposition, and promptly produce all remaining documents identified in the Kazakh Entities' October 17, 2017 requests.

    Respectfully,

    /s/ Matthew L. Schwartz
    Matthew L. Schwartz
    BOIES SCHILLER FLEXNER LLP
    575 Lexington Avenue
    New York, New York 10022