

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

February 15, 2018

**BY ECF AND ELECTRONIC MAIL**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
Case No. 15 Civ. 5345 (AJN) (KHP)

Dear Judge Parker:

We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities"). We write seeking an order compelling the production of documents related to Gennady Petelin.

First, the Kazakh Entities respectfully request an order compelling Wells Fargo Bank, N.A., to produce unredacted bank records for Petelin and his wife, Elena Petelina. The Court has already found that the Petelins' "finances are directly relevant to the Defendants' defenses," that "the Kazakh Entities are entitled to discovery to evaluate evidence that may support or disprove that defense" [ECF No. 325 at 4–5.], and has ordered Wells Fargo to produce partially redacted records. *Id.* Subsequent discovery has demonstrated the need for the complete and unredacted account records. Second, the Kazakh Entities respectfully request an order compelling Petelin to produce records in response to a subpoena served upon him. He has thus far refused to produce any records, or even to confirm whether such records exist.

As the Court will recall, as recently as at this week's oral argument, the defendants pressed their claim that Petelin financed all the investments at issue in this lawsuit. This is false, and the defendants have been doing everything possible to prevent the Kazakh Entities from proving as much. The Court's assistance is now needed, yet again, to level the playing field.[1]

## Background

### A. The Unsupported Defense Theory

At the May 2016 evidentiary hearing before Judge Nathan, the defendants first articulated what has become their theory of this case, arguing that all of the funding for Triadou's investments came not from funds stolen and laundered by the defendants, but instead from Petelin. [ECF No. 156 ¶¶ 9–10.] The defendants claim that Petelin made a billion-dollar fortune in the Russian oil and gas sector, and then entrusted fully half of this net worth to Ilyas Khrapunov, the twentysomething-year-old brother of Petelin's daughter-in-law, to be administered through FBME Bank, an institution widely linked to money laundering and criminal activity.

While the defendants have stuck to this story tenaciously, discovery has not uncovered any credible evidence to support it. For example, Triadou's director, Cesare Cerrito, testified that he

---

[1] In light of the fact that this letter presents two separate applications, and the centrality of the Petelins' finances to this case, the Kazakh Entities respectfully request relief from the Court's individual rules limiting discovery motions to three-page letters.

conducted "know-your-customer diligence on Mr. Petelin," "reviewed documents demonstrating several transactions engaged in by companies owned by Mr. Petelin," and that he "independently verified" and "reviewed documents" concerning Petelin's finances. *Id.* None of these documents exist. Indeed, the actual only document Cerrito could point to was a trust agreement showing that Petelin's wife, Elena, was identified as the beneficiary of a company similarly-named to Telford. *Id.* Judge Nathan did not find Cerrito's testimony to be credible, [*see* ECF No. 175, at 7, n.6,] and explicitly found that "Telford is an Ablyazov investment entity used to move Ablyazov's funds" – not Petelin's. *Id.* at 6. Undeterred, Cerrito repeated this rejected narrative when testifying at his deposition, while failing, again, to produce the documents he claimed to have reviewed.

Every defense witness since has given the same, unsupported story: yes, Petelin is the source of the money; no, they have no written records reflecting his investment, involvement, or oversight.[2] For example, Philippe Glatz, whom Judge Nathan found to be the sham purchaser of Triadou's parent company [ECF No. 175 at 7], testified that ████████████████████ ████████████████████████████████████████████████████████████████████████ Marc Gillieron (outside counsel to and sometimes-director of Triadou, SDG, and other related entities) testified that ████ ████████████████████████████████████████████████████████████████████████[3]. Each and every defense witness has pointed to Petelin to explain the source of money in this case, while admitting that they have no written proof of it.

The paper trail always begins and ends with Ilyas. Every document the defendants have produced in discovery bearing Petelin's name originally came from Ilyas personally, and there is not a single record reflecting a contemporaneous communication to or from Petelin – ████ ████████████████████████████████████████████████████████████████████████

**B.     The Defendants Have Frustrated All Attempts to Take Discovery of the Petelins**

The defendants do not offer any credible evidence connecting Petelin to the money in question. Instead, they have continuously tried to thwart any discovery of Petelin. For example, the Kazakh Entities recently learned that the Petelins live in California. Triadou's initial disclosures listed an address for the Petelins in Moscow, *see* Ex. 4, ████████████████ ████████████████████████████████████████████████████ The Khrapunovs simply wrote "Address unknown" in their Rule 26 disclosures, which they have never amended.

---

[2]    Other than the trust agreement, the only other document the defendants have produced purporting to show Petelin's involvement is a one-paragraph letter ████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

The truth is that these documents (the trust agreement and the letter) are part of the paper trail fabricated to hide the real source of funding – Ablyazov's and Viktor Khrapunov's crimes.

[3]    Gillieron also stated that ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

Ex. 6. ███████████████████████████████████████
████████████████████████████████████████ There is simply no reason for the defendants to have hidden the fact that their supposed-benefactor was located in the United States, other than to keep the Petelins from being subpoenaed.

When the plaintiffs served a third-party subpoena for the Petelins' bank records, the Khrapunovs' lawyers stepped in to represent them so they might appear in this case to quash that subpoena. But at the time, counsel refused to disclose the Petelins' location when asked directly to do so. *See* Ex. 7. In fact, after Elena Petelina evaded service, the Khrapunovs' counsel claimed not to represent her any longer and stated that they were not permitted to accept service on her behalf. *See id.* But as soon as she was served, the Khrapunovs' counsel reported that they had once again been retained to represent her, and defended her deposition. *See* Ex. 8.[4]

When the Kazakh Entities were finally able to depose Elena Petelina, ███████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████. There is simply no way to view this pattern of conduct other than as a systematic effort by the Defendants to prevent the plaintiffs from testing the truth of the Petelin cover story.

## Argument

Petelin's importance cannot be understated – he *is* the defendants' case. But when the plaintiffs finally located him and served him with a subpoena after months of dogged investigation, he refused to produce a single document – indeed, he has refused to admit whether he even has any responsive documents. It has become clear that (yet again) the plaintiffs will have to do things the hard way because the defendants and their co-conspirators, including Petelins, will never produce anything of substance until forced to so. The Court should order Wells Fargo to produce the Petelins' unredacted bank records and Petelin to produce whatever responsive documents he may have, or confirm that he has none.

### A. Wells Fargo Should Produce the Petelins' Records Without Redactions

The Kazakh Entities sought the Petelins' bank records *a year ago* through a February 24, 2017 subpoena to Wells Fargo. The Petelins – through the Khrapunovs' counsel – moved to quash. After a hearing [ECF Nos. 286, 288-89, 299, 301], the Court ordered Wells Fargo to produce the bank records in redacted form and to disclose all transactions with "Telford, Triadou and the named entities whose accounts have been frozen by the U.K. Courts," and instructed plaintiffs to provide "a list of entities whose accounts have been frozen by the U.K. Courts to Wells Fargo." [ECF No. 325 at 6.]. The Court should now order Wells Fargo to produce the Petelins' unredacted bank records because subsequent discovery has shown that the original redaction list was woefully incomplete, and because the defendants have put the Petelins' entire net worth at issue.

Since the Court entered its first Wells Fargo compulsion order, discovery has revealed that

---

[4] Opposing counsel is blameless here. It is clear that their instructions come through Ilyas (who claims to act as an interpreter both for his father and the Petelins), and Ilyas is strategically keeping information from his attorneys to obstruct discovery.

any account list limited to Telford, Triadou, and the entities frozen by the U.K. courts is incomplete. ███ None of those entities were captured in the Court's initial order, because none of those entities had accounts frozen by the U.K. courts.

As just one example, ███ Soho 3310, LLC, an entity in Elvira's name that was not on the U.K. freezing order and that the Khrapunovs used to purchase one of three Trump Soho condominiums from the Bayrock/Sapir Organization LLC.[5] ███ Exs. 11, 12. ███[6]

As is now clear, the universe of shell companies used by the defendants in their money laundering activities is still being uncovered. Limiting the Wells Fargo records to known entities – even an expanded list of known entities – virtually guarantees that the Kazakh Entities will be denied relevant evidence. The solution is not to expand the list of entities not subject to redaction each time the plaintiffs unearth a new entity used in defendants' money laundering schemes, but to compel Wells Fargo to produce the Petelins' unredacted bank records.

To be clear, Wells Fargo has never objected to the relief requested, which imposes no burden upon it. Wells Fargo has already collected responsive documents and can easily produce them without redactions. It was the Petelins, *via* the Khrapunovs' lawyers, who came into this Court to assert a privacy interest in those documents. But at the same time, they have not produced a single document in discovery, and Petelin (now represented by new counsel) will not even say whether he possesses any responsive documents at all. The Petelins are not participating in discovery and cannot be trusted to produce relevant bank records on their own. Accordingly, the Court should order the production of their unredacted bank records.

The need for such an order is further supported by the fact that the defendants have made Gennady Petelin's net worth an issue in this lawsuit. ███

---

[5] Bayrock/Sapir is an organization co-owned by Felix Sater, ███

[6] To give another (very important) example, ███

████████████████████████████████████████████████████ The plaintiffs simply are never going to get reliable and complete evidence by questioning the Petelins – plaintiffs need documentary evidence to get answers.

Given the centrality of the Petelins to the defense in this case ████████ ████████████████████████████████ any privacy interest they may have in those records has vanished.[7] Without obtaining documentary evidence concerning Petelin's wealth and financial dealings, Petelin will be able to simply echo the uncorroborated testimony of Ilyas – and the Kazakh Entities will have no effective way of testing the truth of this defense.

**B.  Petelin Should Be Ordered to Produce Responsive Documents**

The Court should also compel Petelin to respond to the document subpoena the Kazakh Entities served on him on December 27, 2017, a copy of which is attached as Exhibit 13.

The subpoena is narrowly tailored. Each individual named in the subpoena (save two) is either a defendant in this case or an agent who conducted transactions with funds traceable to ████ The other two individuals are agents of FBME Bank who conducted transactions for purported Petelin-related entities. Likewise, every entity (save two) identified in the subpoena is either a direct recipient of funds traceable to ████ or helped facilitate those transactions, the bulk of which the Petelins allegedly own. The other two entities are oil and gas concerns in the former Soviet Union directly relevant to the defendants' claims that Petelin made hundreds of millions of dollars by selling his interest in a Russian oil and gas company. And the subpoena's final request is aimed squarely at the defendants' defense, seeking documents that substantiate the claim that Petelin netted hundreds of millions of dollars from the sale of Gazprom assets and then gave that money to Ilyas to invest on his behalf.

Petelin has refused to comply with the subpoena in any way. On January 19, 2018 – after the 14 days required under Rule 45(d)(2)(B) – Petelin provided boilerplate objections to the entire subpoena. The Kazakh Entities tried to confer with Petelin's lawyer, but Petelin has refused to explain any burden he faces in complying with the subpoena or why the documents demanded are in fact irrelevant. He also raised an objection that the information sought could be used for political retaliation – an objection that has no basis in law and, in any event, is undermined by his failure to raise it in connection with the Wells Fargo subpoena for his bank records.

On January 12 and 21, the Kazakh Entities provided an overview to Petelin's lawyer of the relevance of the requested records along with Triadou's affidavit explaining the defendants' version of Petelin's role. The Kazakh Entities further reiterated that they would forego discovery

---

[7]  Indeed, the Court anticipated that any thin privacy interest the Petelins may have might be overridden by practical concerns. The Court's Order therefore provided that "If Wells Fargo cannot easily segregate the transactions described above from other account activity, however, Wells Fargo shall produce all account activity." [ECF No. 325 at 6.] Given that it took seven months to obtain the redacted records, even if the Court would otherwise be inclined to limit the Wells Fargo records to the new known entities, practical concerns dictate that it be ordered to produce an unredacted set of records.

from Petelin if he provided sworn testimony usable at trial disclaiming any funding of Triadou's investments. The Kazakh Entities explained to Petelin's lawyer that they must otherwise investigate (*i.e.*, disprove) the defendants' claims that Petelin is a billionaire who single-handedly funded Triadou. Petelin did not respond in any way – by producing documents, stating that he does not have responsive documents, or accepting the Kazakh Entities offer to swear that he did not fund Triadou's investments.

Counsel conferred again on January 23. Still, Petelin's lawyer refused to state whether Petelin was withholding any responsive documents. On January 24, Petelin's counsel wrote a letter, again reiterating his general objections and concerns regarding political retribution (piggy-backing off the exact same arguments the Khrapunovs have made persistently). Ex. 14. Again, Petelin failed to explain what burden he faces, why the requested information is not relevant, and what the basis is to believe that he faces political retribution. Nor has he explained why the protective order in this case does not address his fears of retribution, regardless of their validity. In total, the Kazakh Entities have asked eight times whether or not Petelin has responsive documents, most recently on February 6, and received no response.

Petelin's objections are meritless. If he has no responsive documents, he should say so. Otherwise, he is obligated to produce what he has. As of February 15, he has not produced a single document and "has not yet decided to answer any questions about documents he may or may not have" at his deposition. His complete refusal to engage in any meaningful discussion about the scope and nature of the subpoena renders any negotiation impossible. Absent an order from the Court, this game will continue indefinitely.[8]

\* \* \*

The Kazakh Entities respectfully request that the Court issue an order directing Wells Fargo to reproduce the Petelin account records without redactions and an order directing Petelin to produce responsive documents or to confirm that he possesses no responsive documents.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz

cc: Counsel to Wells Fargo, Kenneth Rudd (*via email, publicly filed version*)
Counsel to Gennady Petelin, Eugene Illovsky (*via email*)

---

[8] Because he has appeared in this case and submitted sworn testimony [ECF No. 299-1], Petelin cannot argue that a motion to compel his personal compliance must first be brought in California under Rule 45. Petelin consented to appear before this Court when he challenged discovery into his finances on the Wells Fargo subpoena. He cannot appear only when it suits him. *See, e.g., Mirra v. Jordan*, CV 13-5519(AT), 2014 WL 2511020 (S.D.N.Y. May 28, 2014) (resolving motions to quash even though not originally brought in enforcing courts); *Jalayer v. Stigliano*, No. CV 10-2285(LDH)(AKT), 2016 WL 5477600 (E.D.N.Y. Sept. 29, 2016) (resolving motion to compel even though not originally brought in enforcing court); *cf.* Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."). Petelin also waived any objection to the subpoena by failing to object within 14 days after being served. *See* Rule 45(d)(2)(B); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996).