ILLOVSKY LAW OFFICE

1611 TELEGRAPH AVENUE
SUITE 806
OAKLAND, CALIFORNIA 94612

t  510.394.5885
m 925.699.2826

eugene@illovskylaw.com
www.illovskylaw.com

February 21, 2018

**VIA ECF**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007
Parker_NYSDChambers@nysd.uscourts.gov

> Re: City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.
> Case No. 15-Civ. 5345 KHP

Dear Judge Parker:

I seek leave to represent non-parties Gennady Petelin and Elena Petelina for the purpose of opposing the motions by BTA Bank and the City of Almaty to: (1) have Wells Fargo undo all redactions the Court had previously ordered from bank records pertaining to the Petelins; and (2) to compel compliance with a non-party subpoena duces tecum served on Mr. Petelin. (ECF No. 546). I am not admitted to practice before the Court, but I have filed a motion with the Court today for admission *pro hac vice*, which is pending.[1]

The Court should deny the motion to lift all the redactions from the Wells Fargo bank records. The Court's prior Order on the Wells Fargo subpoena carefully resolved the issue and there is no need to revisit it. Moreover, the motion does not support the broad relief it seeks and is, thus, too invasive of the Petelins' profound privacy interests.

The Court should deny the motion to compel production of documents under the subpoena. The motion violates Rule 45, which requires that such a motion be brought in the Central District of California. That is where "compliance is required" by the subpoena, Rule 45(d)(2)(B)(i), and where Mr. Petelin resides. That rule is so well-settled

---

[1] Neither Mr. Petelin's filing of an opposition nor his attorney's motion for admission should in any way be considered as consent to this venue for the motion purporting to enforce the subpoena directed to him.

ILLOVSKY LAW OFFICE

Hon. Katharine H. Parker
February 21, 2018
Page 2 of 5

that having to defend this very motion has subjected Mr. Petelin to undue burden and expense.[2]

I.      Factual Background

A non-party cannot quickly grasp all the facts of this complex case, but the Court is aware that Kazakhstan's largest city, Almaty, and one of its largest banks, BTA Bank (the "Kazakh Entities") assert common law and state law claims against BTA Bank's former chairman, Almaty's former mayor, and others arising from alleged theft "from entities and municipalities in the Republic of Kazakhstan" through corrupt acts that occurred there. The action's purported aim is to return the money "for the benefit of the people of Almaty." Answer, Counterclaims and Crossclaims (ECF No. 49), ¶¶ 21, 23.

Mr. Petelin, a Russian national living in Southern California, is not a party. He is a former high-level official of the Russian government, having led the secretariat for Victor Chernomyrdin, the country's Prime Minister from 1992-1998. He is now held in disfavor by the current regime, led by Vladimir Putin, that controls the Russian Federation. His privacy interests are weighty.

The Kazakh Entities have served him with an extremely broad and intrusive subpoena, seeking "[a]ll documents" that are "relating to" various topics. All told, including subparts, there are at least 35 such broad requests. (ECF No. 546, Kazakh Entities' Letter, Exhibit 13A). Mr. Petelin served responses and objections to the various requests, noting their overbreadth, among other things. The Kazakh Entities did not narrow their requests but, instead, let it be known to Mr. Petelin that, even though he is a non-party, they would drill down into his personal finances, sources of income, and his taxes. (Id.).

Mr. Petelin expressed his grave worry that Kazakhstan is cooperating with Russia, and that any information he provided to it would be used by the Russian regime to target him for retaliation. Such retaliation could be against him personally or against family and former associates still in Russia. He pointed to the report from France that its Council of State annulled an extradition order for Mukhtar Ablyazov (the former BTA Bank official and political opponent of the Kazakhstan regime) partly because of improper cooperation "and repeated exchanges between the Russian and Kazakh authorities." (ECF No. 546, Kazakh Entities' Letter, Exhibit 14 (citing the French Council of State decision). He also expressed his concern about how a United States

---

[2] If the Court grants the Kazakh Entities relief from its 3-page limit, Mr. Petelin respectfully asks for the same relief.

ILLOVSKY LAW OFFICE

Hon. Katharine H. Parker
February 21, 2018
Page 3 of 5

Court could police violations of its protective order by a foreign sovereign. (Id.). As Mr. Petelin noted, Kazakhstan was not just any sovereign, but one whose record, according to Human Rights Watch, featured persecution of political dissidents and forced detention of government critics, among other troubling things. (Id.)

II.   Motion to Remove Redactions from Wells Fargo Bank Records

The Court previously narrowed the Kazakh Entities' document subpoena to "minimize the intrusion on [the Petelins'] privacy and target only relevant information." Order filed May 5, 2017 (ECF No. 325). Wells Fargo was directed to "redact banking transactions unrelated to the claims and defenses in this action." The Court ordered Wells Fargo to produce, to the extent segregable, "only the production of transaction information between the Petelins and Telford, Triadou, and the other entities identified by the Kazakh Entities" on a list they were directed to provide. (Id.)

The Kazakh Entities now seek to modify the Court's prior Order and further encroach on what the Court has already recognized as the *Petelins'* legitimate privacy interests because they claim "[t]he Defendants Have Frustrated All Attempts to Take Discovery of the Petelins." (ECF No. 546, Kazakh Entities' Letter, p.2). This assertion is contested by the defendants, but it is in any event not clear why the Petelins should suffer as a result.

Even were the Court to find the Petelins' privacy interests are overridden by the need to lift certain redactions, that lifting should not be wholesale. There is no reason to abandon the targeted approach of the Court's May 5, 2017 Order: the Kazakh Entities can identify additional names they contend are so relevant to the case as to overcome the Petelins' privacy interests. The parties can argue relevance, the Court can rule accordingly, and the bank can be directed to lift redactions as to any additional names. This targeted approach continues to respect the privacy of, and avoid undue burden on, non-parties while providing relevant information to the Kazakh Entities.

III.   Kazakh Entities' Motion to Compel Production Against Mr. Petelin

The Subpoena directed to Mr. Petelin identifies his address as "18 Dauphine, Newport Coast, CA 92657" and commands production at "401 Wilshire Boulevard, Suite 850, Santa Monica, CA, 90401." (ECF No. 546, Kazakh Entities' Letter, Exhibit 13). As Rule 45(c)(2)(A) requires, Santa Monica is "a place within 100 miles of where [Mr. Petelin] resides." Its judicial district is the Central District of California.

ILLOVSKY LAW OFFICE

Hon. Katharine H. Parker
February 21, 2018
Page 4 of 5

Rule 45(d) is serious about protecting non-parties like Mr. Petelin who are subject to a document subpoena. It directs that the issuing party "must take reasonable steps to avoid imposing undue burden or expense" on the non-party. Rule 45(d)(1). Therefore, among other things, when taking action to enforce the subpoena, the serving party is directed to "move the court for the district where compliance is required for an order compelling production or inspection." Rule 45(d)(2)(B)(i).[3]

The Kazakh Entities contend that *Mirra v. Jordan*, CV 13-5519(AT), 2014 U.S. Dist LEXIS 77065, 2014 WL 2511020 (S.D.N.Y. 2014) supports requiring a non-party to defend against subpoena enforcement in a district other than where compliance is required. (ECF No. 546, Kazakh Entities' Letter, p.6, fn 8). That is because, they say, the Court there "resolv[ed] motions to quash even though not originally brought in [the] enforcing courts." (Id.) But *Mirra v. Jordan* did not involve subpoena enforcement against a non-party. In that case, the defendant had "issued 121 subpoenas to non-parties . . . without serving notice on Plaintiff" as Rule 45(a)(4) requires. 2014 U.S. Dist LEXIS 77065 at *3. The Plaintiff thus moved to quash all the noncompliant subpoenas the defendant had served because, in part, defendant's non-noticed subpoenas were "calculated to further her defense" in a murder case where she had limited discovery. 2014 U.S. Dist. LEXIS 77065 at *4. The target of Plaintiff's motion, then, and the one to respond to it, was the defendant and not a non-party. That case does not help the Kazakh Entities avoid the plain and clear text of Rule 45(d)(2)(B)(i).

The Kazakh Entities also rely in that same footnote on *Jalayer v. Stigliano*, CV-10-2285(LDH), 2016 U.S. Dist LEXIS 135288, 2016 WL 5477600 (E.D.N.Y. 2016), in which a motion to compel a non-party's deposition appears to have been resolved in the Eastern District of New York although the subpoena on its face required the deposition to take place in the District of New Jersey. 2016 U.S. Dist LEXIS 135288 at *11. The Court notes that the non-party contacted issuing counsel about the "date and location of the deposition" but the opinion does not indicate if the location was changed. In any event, the subpoenaed non-party did not raise an objection under Rule 45(d)(2)(B)(i), so the court there did not address the issue. If he did wish to object, the non-party there would have cited *JMC Rest. Holdings, LLC v. Pevida*, CV-14-6157(WFK), 2015 U.S. Dist LEXIS 62374, 2015 WL 2240492 (E.D.N.Y. 2015). Plaintiff JMC served a document subpoena on a non-party that was issued by the Eastern District and required production in the Southern District. 2015 U.S. Dist LEXIS 62374 at *2. Because Rule 45(d)(2)(B)(i) protects the interests of non-parties, the Court denied the motion to

---

[3] The Kazakh Entities asked if Mr. Petelin would consent to having a motion to compel heard in the Southern District of New York and he declined. (ECF No. 546, Kazakh Entities' Letter, Exhibit 14).

ILLOVSKY LAW OFFICE

Hon. Katharine H. Parker
February 21, 2018
Page 5 of 5

compel, making clear that since Manhattan was "the place of compliance," the Southern and not the Eastern District was "the correct venue" to bring the motion. 2015 U.S. Dist LEXIS 62374 at *9. That is the rule in the Eastern District as it is elsewhere.

Finally, the Kazakh Entities correctly cite Rule 45(f)'s provision that "the court where compliance is required" can transfer a motion to compel, once properly filed there, "to the issuing court." But that rule is inapposite here.[4]

Respectfully Submitted,

*Eugene Illovsky*
Eugene Illovsky

cc: Matthew L. Schwartz, Esq. (Counsel for the Kazakh Entities)
John J. Kenney, Esq. (Counsel for Viktor Khrapunov and
    Ilyas Khrapunov)
Deborah A. Skakel, Esq, (Counsel for Triadou SPV S.A.)

---

[4] Mr. Petelin's counsel informed the Kazakh Entities that if they filed a proper motion in the Central District of California, he would "be happy to consider what circumstances" they see as "exceptional" if they would "share them before moving to transfer."