UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,<br><br>Plaintiffs,<br><br>-against-<br><br>MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,<br><br>Defendants. | No. 15-CV-05345(AJN) |

**VIKTOR AND ILYAS KHRAPUNOV'S MEMORANDUM IN OPPOSITION TO BTA/ALMATY'S MOTION FOR RELIEF FROM THE COURT'S DECEMBER 23, 2016 ORDER DISMISSING THEIR <u>RICO CLAIMS IN LIGHT OF NEW CONTROLLING AUTHORITY</u>**

John J. Kenney
John P. Curley
Kathleen L. Lowden
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street, 35th Floor
New York, NY 10016
Phone: 212-689-8808

*Counsel for Defendants Viktor Khrapunov and Ilyas Khrapunov*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .............................................................................................................................1

I.  *BASCUÑÁN II* CONFIRMS THAT BTA/ALMATY'S RICO CLAIMS WERE PROPERLY DISMISSED ............................................................................................3

    A.  In *Bascuñán II*, Alleged Post-Theft Laundering Did Not Transform a Foreign Injury into a Domestic One ...........................................................3

    B.  The RICO Order is Consistent with *Bascuñán II*'s Approach to Domestic Injury ...........................................................................................5

II. *BASCUÑÁN II* FORECLOSES BTA/ALMATY'S ARGUMENT THAT ALLEGED POST-THEFT ACTIVITY CAUSED A DOMESTIC RICO INJURY .............................7

    A.  BTA/Almaty's Theory Is Inconsistent with the Outcome in *Bascuñán II* ...............7

    B.  This Court Properly Found that BTA/Almaty Has Not Alleged a Distinct, United States Injury ...........................................................................................8

    C.  BTA/Almaty's Post-Theft Conversion and Constructive Trust Claims Are Not Separate Racketeering Injuries ...............................................................10

III. INTERNATIONAL COMITY COUNSELS IN FAVOR OF DISMISSING THE RICO CLAIMS ..................................................................................................................13

IV. BTA/ALMATY FAIL TO STATE PLAUSIBLE AND TIMELY RICO CLAIMS AGAINST VIKTOR KHRAPUNOV ..............................................................................14

CONCLUSION .........................................................................................................................14

i

# **TABLE OF AUTHORITIES**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012)..................................................................................................1

*Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp.*,
   965 F. Supp. 2d 402 (S.D.N.Y. 2013)..................................................................................6

*Arthur Glick Truck Sales, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   577 F. App'x 11 (2d Cir. 2014) ...........................................................................................6

*Bank Leumi USA v. Ehrlich*,
   No. 12 CIV. 4423), 2014 WL 12661620 (S.D.N.Y. Feb. 18, 2014)..................................12

*Bascuñán v. Elsaca*,
   874 F.3d 806 (2d Cir. 2017)....................................................................................... passim

*Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*,
   948 F.2d 111 (2d Cir. 1991)................................................................................................2

*CF 135 Flat LLC v. Triadou SPV N.A.*,
   No. 15-CV-5345 , 2016 WL 3481061 (S.D.N.Y. June 21, 2016) ....................................1, 2

*Farmer v. United States*,
   No. 12-CR-758, 2017 WL 3448014 (S.D.N.Y. Aug. 10, 2017)........................................1, 2

*Fragin v. Mezei*,
   No. 09 CIV. 1028, 2012 WL 6628021 (S.D.N.Y. Dec. 20, 2012).....................................1, 2

*Franzone v. City of New York*,
   No. 13-CV-5282 NG, 2015 WL 2139121 (E.D.N.Y. May 4, 2015) .................................12

*Greer v. Mehiel*,
   No. 15-CV-6119, 2017 WL 128520 (S.D.N.Y. Jan. 12, 2017) ...........................................2

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990)................................................................................................12

*In re Harbinger Capital Partners Funds Inv'r Litig.*,
   No. 12 CIV. 1244, 2014 WL 3694991 (S.D.N.Y. July 7, 2014) .........................................6

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013)..................................................................................................2

*Maiz v. Virani*,
   253 F.3d 641 (11th Cir. 2001) .......................................................................................9, 10

*Moog, Inc. v. United States*,
    No. MISC. CIV-90-215E, 1991 WL 255371 (W.D.N.Y. Nov. 21, 1991) .................................6

*RJR Nabisco, Inc. v. European Community*,
    136 S. Ct. 2090 (2016)..............................................................................................................4, 8

*Tlapanco v. Elges*,
    No. 15-CV-2852, 2017 WL 4329789 (S.D.N.Y. Sept. 14, 2017)...............................................2

*TufAmerica, Inc. v. Diamo*nd,
    No. 12-CV-3529, 2016 WL 3866578 (S.D.N.Y. July 12, 2016)............................................1, 2

*United States v. Brimberry*
    779 F.2d 1339 (8th Cir. 1985) ...............................................................................................10, 11

*Terrell v. Eisner*
    104 F. App'x 210 (2d Cir. 2004) ..............................................................................................12

Defendants Viktor and Ilyas Khrapunov (the "Khrapunovs") respectfully submit this memorandum of law in opposition to the motion of the City of Almaty and BTA Bank ("BTA/Almaty") for relief from the Court's December 23, 2016 order dismissing their RICO claims.

## PRELIMINARY STATEMENT

BTA/Almaty's motion to revisit this Court's decision dismissing the RICO claims should be denied because the *Bascuñán* case held that the United States-based laundering of money stolen from a foreign plaintiff with no ties to this country does not transform a foreign injury into a domestic one. *Bascuñán v. Elsaca*, 874 F.3d 806, 810 (2d Cir. 2017) ("*Bascuñán II*"). BTA/Almaty asks the Court to look again at what it claims were injuries suffered to property interests in New York, but the Court already considered and rejected these arguments and nothing in the *Bascuñán* decision calls the Court's analysis into question. In other words, the Court's decision is consistent with *Bascuñán* and should not be disturbed. *See generally* December 23, 2016 Memorandum & Order, ECF No. 257 (the "RICO Order").[1] Alternatively, should it find that BTA/Almaty have plausibly alleged a domestic injury, the Court should decline to reinstate the RICO claims against Viktor Khrapunov for the reasons argued in our motion to dismiss the amended crossclaims.

## ARGUMENT

The standard for granting a motion for reconsideration "is strict," because "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Farmer v. United States*, No.

---

[1] The RICO Order is reported as *City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016).

12-CR-758, 2017 WL 3448014, at *1-2 (S.D.N.Y. Aug. 10, 2017) (Nathan, J.) (citing *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *accord Fragin v. Mezei*, No. 09 CIV. 1028, 2012 WL 6628021, at *1 (S.D.N.Y. Dec. 20, 2012) (Nathan, J.); *CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-CV-5345 , 2016 WL 3481061, at *1 (S.D.N.Y. June 21, 2016). "The purpose of the rule is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *CF 135 Flat LLC,* 2016 WL 3481061, at *1; *TufAmerica, Inc. v. Diamo*nd, No. 12-CV-3529, 2016 WL 3866578, at *1 (S.D.N.Y. July 12, 2016) (Nathan, J.).  A motion for reconsideration "is not designed to allow wasteful repetition of arguments already briefed, considered and decided." *Fragin*,  2012 WL 6628021, at *1.

Nor may a motion "be used to advance new facts, issues or arguments not previously presented to the Court, [or] as a vehicle for re-litigating issues already decided by the Court." *TufAmerica,* 2016 WL 3866578, at *1.  Therefore, a party moving for reconsideration "cannot assert new arguments . . . which were not before the court on the original motion." *CF 135 Flat LLC,* 2016 WL 3481061, at *1 (citing *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991)); *Greer v. Mehiel*, No. 15-CV-6119, 2017 WL 128520, at *5 (S.D.N.Y. Jan. 12, 2017) (Nathan, J.); *see also Tlapanco v. Elges*, No. 15-CV-2852, 2017 WL 4329789, at *3 (S.D.N.Y. Sept. 14, 2017) (Nathan, J.) (court may "deem untimely an argument—even a significant argument—if a party fail[ed] to raise it prior to a motion for reconsideration").

A motion for reconsideration should be granted only when the party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Farmer,* 2017 WL 3448014, at *1–2 (citing *Kolel Beth*

2

*Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013));

*TufAmerica, Inc*, 2016 WL 3866578, at *1.

## I. *BASCUÑÁN II* CONFIRMS THAT BTA/ALMATY'S RICO CLAIMS WERE PROPERLY DISMISSED.

BTA/Almaty ask the Court to revisit its RICO Order in light of what they say was an intervening change in controlling law. But *Bascuñán II* is consistent with the Court's rationale and conclusion that the "post-theft investment of embezzled Kazakh funds in U.S.-based real estate projects do not, without more, constitute plausible allegations of 'domestic' injury…." *See* Order Denying Leave to take Interlocutory Appeal, ECF No. 304 at 4.

### A. In *Bascuñán II*, Alleged Post-Theft Laundering Did Not Transform a Foreign Injury into a Domestic One.

In *Bascuñán v. Elsaca*, the Second Circuit applied the following rule: "Where the injury is to tangible property . . . the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." 874 F.3d 806, 820-21 (2d Cir. 2017). In adopting this standard, the Second Circuit rejected the *Bascuñán* district court's "residency-based test" which focused on where the foreign plaintiff felt the impact of the economic injury, that is, where the plaintiff "bec[a]me poorer." *Bascuñán II*, 874 F.3d at 814.

In *Bascuñán II*, the foreign plaintiff alleged that defendants misappropriated both property that was located in a foreign location and property that was located in New York:

- In the "Anacapri Scheme" the defendants created an investment fund in Chile that took in money from three foreign entities belonging to the plaintiff. After misappropriating assets from the Chilean fund, the defendant laundered them in New York and elsewhere. 874 F.3d at 812.

- In the "Dividend Scheme" the defendants stole dividend payments held in an account in Chile and diverted some of them to his personal investment accounts in New York. 874 F.3d at 811.

3

- In the "New York Trust Account Scheme," the defendants stole the plaintiff's funds that were held in a trust account in a New York bank.  874 F.3d at 811.

- In the "BCI Scheme," the defendant stole bearer shares that were stored in a safety deposit box in New York.  874 F.3d at 812.

The Circuit analyzed these four schemes separately and determined that the two schemes whereby the defendants allegedly misappropriated property that was "physically located" in the U.S. resulted in a domestic injury but that the two schemes in which the defendants misappropriated property physically locate elsewhere—the Anacapri and Dividend schemes—did not result in a domestic injury, even though the stolen funds were laundered in or diverted to New York.  *Id*. at 819-22.

The plaintiff in *Bascuñán II* alleged that after misappropriating assets held in foreign locations, the defendants laundered those assets through bank accounts in the U.S.  The Circuit rejected the idea that this resulted in a domestic injury.  874 F.3d at 812.  It held that where the only domestic element alleged is that defendants transferred stolen foreign funds to New York, or laundered stolen money in the United States,  "[t]hat is not enough to allege a domestic injury . . . [even] under a straightforward application of *RJR Nabisco*,[2] as allegations similar to [these] were levied in *RJR Nabisco* itself."  874 F.3d at 818.  The Circuit held that "An injury to tangible property is generally a domestic injury *only* if the property was *physically located in the United States*, and that a defendant's use of the U.S. financial system to *conceal or effectuate his tort* does not, on its own, turn an otherwise foreign injury into a domestic one."  *Id*. at 819 (emphasis added).  To hold otherwise, the court admonished, "would subvert the intended effect of the 'domestic injury' requirement articulated by the *RJR Nabisco* Court."  *Id*.

---

[2] *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016).

B.     **The RICO Order is Consistent with *Bascuñán II*'s Approach to Domestic Injury.**

The *Bascuñán II* approach is consistent with how this Court analyzed BTA/Almaty's RICO claims. The Court did not adopt a pure "residency test." Although it found that a residency-based approach was "consistent with the Supreme Court's focus in assessing the extraterritoriality of Section 1964(c) on injuries 'suffered overseas,'" it explicitly did *not* endorse a rule that would "categorically preclude foreign corporations with business operations or property interests maintained in the U.S. from bringing RICO actions to recover for injuries to those assets." 226 F. Supp. 3d at 284 (citing *RJR Nabisco*, 136 S. Ct. at 2109). Thus the Court's analysis anticipated the approach used in *Bascuñán II*, where the Second Circuit rejected a residency-based test that would "mean that foreign plaintiffs may not sue under RICO," and adopted a rule that "does not discriminate against foreigners who own property in the United States [but] ensures that both foreign and domestic plaintiffs can obtain civil RICO's remedy for damage to their property, *but only if their property was located within the territorial jurisdiction of the United States*." *Bascuñán II*, 874 F.3d at 821 (emphasis added).

This Court, having recognized that foreign plaintiffs may bring RICO claims for injuries to "business operations or property interests maintained in the U.S.," 226 F. Supp. 3d at 284, nevertheless found that BTA/Almaty's claims do not fall within that description. BTA/Almaty "are undisputedly both aliens that are not alleged to hold assets or to maintain any operations, instrumentalities, or other presence in the United States" and they were not "'working, traveling, or doing business' in the U.S. when they incurred their alleged injuries." *Id*. BTA/Almaty clearly "got poorer" in Kazakhstan, not because they resided there, but because the alleged misappropriations giving rise to this action "occurred within Kazakhstan and targeted only assets held overseas." *Id*. The Court pointed out that BTA/Almaty's own characterizations of their

5

crossclaims underscore that they seek to redress grievances whose economic impact has been suffered abroad. *Id.* (citing FAC ¶¶ 2–3).

The Court also considered and rejected the argument that the alleged investment of stolen funds in New York real estate presented the sort of "'extremely rare'" circumstances under which injuries allegedly suffered by foreign plaintiffs could be deemed domestic. *Id*. at 285. Noting that BTA/Almaty did not allege that "some 'discrete financial base ... established away from home" suffered the brunt of the losses, the Court explained that "a plaintiff's mere 'financial connection to New York'—whether it be in the form of branch offices, investment activity, or bank accounts—is an insufficient basis to find that a foreign entity suffered injury in New York." 226 F. Supp. 3d at 285. The Court concluded that "the after-the-fact concealment in the U.S. of funds stolen entirely abroad does not constitute a basis for concluding that [BTA/Almaty] have alleged injury suffered in the U.S." *Id*. This is consistent with *Bascuñán II*, which found that funds that were stolen from Chile and laundered in New York were not a domestic injury. 874 F.3d at 819.

Because this Court's Order is consistent with the reasoning of the Second Circuit in *Bascuñán II*, that case does not provide grounds for a motion for reconsideration. *See In re Harbinger Capital Partners Funds Inv'r Litig.*, No. 12 CIV. 1244, 2014 WL 3694991, at *4 (S.D.N.Y. July 7, 2014) (Nathan, J.) (motion for reconsideration denied where intervening Second Circuit opinion "confirms the correctness" of court's earlier decision); *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp*., 965 F. Supp. 2d 402, 404–05 (S.D.N.Y. 2013), *aff'd sub nom. Arthur Glick Truck Sales, Inc. v. Travelers Cas. & Sur. Co. of Am*., 577 F. App'x 11 (2d Cir. 2014) (reconsideration is appropriate only where there is an intervening change of controlling law, "that might reasonably be expected to alter the conclusion reached by the

6

court"); *Moog, Inc. v. United States*, No. MISC. CIV-90-215E, 1991 WL 255371, at *1 (W.D.N.Y. Nov. 21, 1991) (denying motion for reconsideration where respondent has not pointed to any change in controlling law "which would mandate a different result").

## II. *BASCUÑÁN II* FORECLOSES BTA/ALMATY'S ARGUMENT THAT ALLEGED POST-THEFT ACTIVITY CAUSED A DOMESTIC RICO INJURY.

BTA/Almaty try to drive a wedge between *Bascuñán II* and the RICO Order by arguing that the Court must disaggregate the embezzled Kazakhstan funds from the funds that were invested in New York. *See* BTA/Almaty Br. 9. They claim they had "enforceable property interests in the United States" from the "moment the defendants invested [BTA/Almaty's] stolen money" in the real estate. BTA/Almaty Br. 7. By framing the issue this way, BTA/Almaty claim that they suffered a domestic racketeering injury distinct from the Kazakhstan theft itself. *Bascuñán II* does not support this theory.

### A. BTA/Almaty's Theory Is Inconsistent with the Outcome in *Bascuñán II*.

BTA/Almaty's theory is at odds with *Bascuñán II*'s conclusion that post-theft laundering activity in the United States does not transform a foreign injury into a domestic one. In *Bascuñán II*'s Anacapri Scheme, the defendants, after misappropriating assets from a foreign fund, "laundered those assets through bank accounts in New York and elsewhere." 874 F.3d at 812. In the Dividend Scheme, the defendants allegedly diverted a portion of the funds stolen from the Chilean account "to his personal investment accounts at Morgan Stanley in New York." *Id*. Following BTA/Almaty's logic, the *Bascuñán II* plaintiff had enforceable property interests in these New York funds. *See* BTA/Almaty Br. 7. The Circuit explained, though, that "the fact that [defendants] transferred . . . stolen funds to (or through) the United States fails to transform an otherwise foreign injury into a domestic one." 874 F.3d at 810.

7

At bottom, the allegations in this case are no different from what the Circuit rejected in *Bascuñán II*. The Individual Defendants allegedly channeled a portion of embezzled money from Kazakhstan into New York real estate to hide and launder those funds. BTA/Almaty Br. 11. If this were enough to state a domestic RICO injury, then the result in *Bascuñán II* would have been different. *See Bascuñán II* 974 F.3d at 818-19 (transferring and laundering funds in the U.S. "is not enough to allege a domestic injury"). Indeed, the court in *Bascuñán II* took pains to note that, like here, "the only domestic connections alleged here were acts of *the defendant*." 874 F.3d at 819. "Bascuñán and his relevant property always remained abroad, and *these injuries did not arise from any preexisting connection between Bascuñán and the United States*." *Id.* (emphasis added). Accepting BTA/Almaty's theory would mean that any time proceeds from a foreign theft were laundered through U.S. entities, even if the only domestic connections were the acts of the defendants, there would be a domestic RICO injury. Such a result would, as the Second Circuit put it, "subvert the intended effect of the 'domestic injury' requirement articulated by the *RJR Nabisco* Court." *Bascuñán II*, 874 F.3d at 819.

      **B.**     **This Court Properly Found that BTA/Almaty Has Not Alleged a Distinct, United States Injury.**

*Bascuñán II* does not disturb the Court's finding that BTA/Almaty have not alleged a distinct, United States-based injury. 226 F. Supp. 3d at 286. The Court held that the alleged thefts in Kazakhstan cannot be deemed domestic injuries "purely because they may have been proximately caused, in part, by after-the-fact money laundering in the United States" and that "there is no dispute that the purported misappropriations were complete—and the embezzled funds removed from Kazakhstan—well before the Crossclaim Defendants' alleged transactions in the United States." *Id*. Thus, "at most they 'may have concealed, but did not cause' the losses in Kazakhstan." *Id*. The Court specifically addressed BTA/Almaty's contention that the

8

"below-market assignment of [Triadou's] investment in the Flatotel back to the Chetrit Entities diminished the value of their property" and found no basis to infer that the Flatotel assignment injured any property owned by BTA/Almaty. *Id*. at 286-87. The Court also held that the transfer of stolen funds from Triadou to other participants in the alleged RICO enterprises "cannot plausibly be alleged to have somehow diminished the value of the funds themselves or to have impaired [BTA/Almaty's] purported right of recovery." *Id*. Thus the Court concluded that BTA/Almaty had not "plausibly alleged any injury to their property occurring within the United States." *Id*.

*Bascuñán II* does not revive BTA/Almaty's argument. BTA/Almaty argue that the injury caused by the alleged Kazakhstan embezzlements should be disaggregated from injuries it suffered to property in the United States, *see* BTA/Almaty Br. 9, but this is a misreading of *Bascuñán II*. There, the Circuit was confronted with four different alleged schemes relating to four separate categories of stolen property. The court explained that each injury—*i.e.*, the loss of property in each of the four categories—must be analyzed separately to determine whether any of them were "domestic." 874 F.3d at 818. This aspect of *Bascuñán II* does not affect the outcome of this case because, as this Court has already correctly recognized, the only category of property that was alleged harmed here was the money allegedly taken from Kazakhstan. 226 F. Supp. 3d at 286.

BTA/Almaty focus on the Eleventh Circuit's decision in *Maiz v. Virani*, 253 F.3d 641, 674 (11th Cir. 2001), but that case provides no reason for this Court to reconsider its RICO Order. *Maiz* does not hold, as BTA/Almaty claim, that defendants' "domestic acts of money laundering caused [BTA/Almaty] 'domestic injury,'" BTA/Almaty Br. 12, because the domestic injury requirement was not even discussed in *Maiz*. *Maiz* stands for the principle that

9

laundering profits derived from a U.S. fraud "in order to *conceal* the existence of those profits [and] *induce* [plaintiffs to make] further contributions," causes a RICO injury where plaintiffs would likely "have discovered the fraud and withdrawn their funds *were it not for the money laundering* and post-investment offenses." 253 F.3d at 674 (emphasis added). Thus, as this Court correctly found in the RICO Order, *Maiz* is a case in which "the *concealment* of stolen funds was *so critical to facilitating an ongoing theft in the first place* that money laundering may be recognized as having proximately caused some portion of the original injury." 226 F. Supp. 3d at 285 (emphasis added). In the instant case, there is no allegation that concealment of the stolen funds in the U.S. was critical to facilitating the theft of the funds in Kazakhstan, which took place years before.

### C. BTA/Almaty's Post-Theft Conversion and Constructive Trust Claims Are Not Separate Racketeering Injuries.

Even assuming that the post-theft conduct could, in this case, stand apart from the alleged Kazakhstan embezzlement, BTA/Almaty have not stated an independent racketeering injury by alleging either an impairment of their right to seek a constructive trust or conversion.

BTA/Almaty's principal argument on this point is that the Court misapplied a 1985 case from the Eight Circuit when it ruled that the Defendants' alleged below-market assignments in real estate investments did not plausibly injure BTA/Almaty's property. BTA/Almaty Br. 17; 226 F. Supp. 3d at 287. Noting that it was "unclear that [BTA/Almaty] had a cognizable property or business interest in the Flatotel itself," 226 F.Supp.3d at 287, the Court cited *United States v. Brimberry*, 779 F.2d 1339, 1348 (8th Cir. 1985), for the principle that "[w]hen an embezzler purchases property with stolen funds, the property may be subjected to a constructive construct in favor of the victim" but "[u]ntil a court grants the victim such a constructive trust

10

remedy," the victim "merely has a right to seek" it and the "existence of such a right does not establish an interest in the specific property." 226 F. Supp. 3d at 287.

BTA/Almaty argue that the Court erred in this analysis because *Brimberry* also stated that "A right to seek a constructive trust over specific property is a property interest in itself," 779 F.2d at 1348. BTA/Almaty claim that the Court "omit[ted]" this language in the RICO Order and that the phrase is "absolutely critical" to their case. BTA/Almaty Br. 17. This argument is unavailing because the Court gave BTA/Almaty the benefit of the doubt on this point. It assumed for argument's sake that BTA/Almaty had a property interest in the Flatotel project but nevertheless found that they "do not plausibly allege that the assignment itself in any way decreased the intrinsic value of the Flatotel project," and that "the transfer of stolen funds (effected by the assignment) from Triadou to other participants in the alleged RICO enterprises cannot plausibly be alleged to have somehow diminished the value of the funds themselves or to have impaired [BTA/Almaty's] purported right of recovery." 226 F. Supp. 3d at 287. Nothing in *Brinberry* or *Bascuñán II* changes this analysis.[3]

Moreover, in their Amended Crossclaims, BTA/Almaty described the alleged below-market assignment of Triadou's interest in the Flatotel project to the Chetrit Group, and included this in a list of the myriad alleged RICO predicate acts. *See, e.g.*, ECF No. 219 at ¶¶ 118, 133(k). But nowhere do BTA/Almaty allege that the assignment itself decreased the intrinsic value of the Flatotel project, or that the transfer of stolen funds from Triadou to other participants in the alleged RICO enterprises diminished the value of the funds themselves or impaired their

---

[3]*Brimberry* is not a RICO case, and does not involve whether a foreign plaintiff suffered a domestic injury; in *Brimberry*, the issue was whether the criminal defendant was guilty of bankruptcy fraud for concealing assets belonging to a corporation in violation of the Securities Investor Protection Act.

purported right of recovery. Rather, these theories are raised for the first time as arguments in BTA/Almaty's Supplemental Brief in Response to Defendants' Motion to Dismiss the RICO Claims, ECF No. 195, at 10, with no citations to BTA/Almaty's pleading.[4]

In any event, this aspect of BTA/Almaty's argument is effectively an untimely motion to reconsider the RICO Order based on *Brimberry*, not *Bascuñán II*. Although BTA/Almaty say in a footnote that the Court "had no reason to identify the location of" their property because it used "principally the residency-based test," BTA/Almaty Br. 7 n.5, the Court plainly did consider whether a supposed impairment of their right to seek a constructive trust over the real estate investments was a domestic injury. 226 F.Supp.3d at 285-87. BTA/Almaty's attempt to use a 1985 case to re-litigate that issue is both substantively flawed (for reasons discussed already) and untimely. *See Bank Leumi USA v. Ehrlich*, No. 12 CIV. 4423, 2014 WL 12661620, at *1–2 (S.D.N.Y. Feb. 18, 2014) (Nathan, J.).

BTA/Almaty also argue that they suffered a domestic racketeering injury because they were allegedly victims of conversion in the United States when the Defendants interfered with the proceeds of the alleged thefts by disposing of it and/or transferring it among shell entities. BTA/Almaty Br. 7-8. Their conversion theory has at least two fatal flaws.

*First*, to be a RICO injury, the harm must be caused by racketeering activity, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990), and conversion is not a racketeering predicate. *Franzone v. City of New York*, No. 13-CV-5282 NG, 2015 WL 2139121, at *9 (E.D.N.Y. May 4, 2015) (citing *Terrell v. Eisner*, 104 Fed. App'x 210, 212 (2d Cir.2004)).

---

[4] Relatedly, BTA/Almaty's motion is founded in part on facts presented to the Court at the May 2016 attachment hearing. *See* BTA/Almaty Br. 18 (citing the Court's order on the attachment motion, ECF No. 175). The Khrapunovs were not parties to the case at that time and could not appear to contest those facts.

*Second*, BTA/Almaty's conversion theory, which as relevant here is premised on post-theft transfers or dispositions of funds allegedly traceable to the Kazakhstan embezzlement, is not analytically different than the type of downstream activity that *Bascuñán II* held is not enough to cause a domestic injury. *Bascuñán II*, 874 F.3d at 819. BTA/Almaty acknowledge that certain United States-based conduct, such as the use of a correspondent bank to effectuate a dollar-denominated fraud, is insufficient under Bascuñán II, BTA/Almaty Br. 13 n. 7, but the *Bascuñán II* rationale is not limited to fleeting correspondent bank transfers. *Bascuñán II* held that the use of New York bank accounts to launder stolen funds did not cause a domestic injury. 874 F.3d 806, 818. That too was a conversion in the sense that the *Bascuñán II* defendants' alleged laundering constituted an interference or conversion of the plaintiff's property in the United States, and there is no meaningful basis to distinguish that conduct from the post-theft conduct alleged in this case, which is similarly attenuated. This is particularly true because, like *Bascuñán II*, none of BTA/Almaty's claimed injuries arose "from any preexisting connection" between BTA/Almaty and the United States. *Bascuñán II*, 874 F.3d at 819.

### III.   INTERNATIONAL COMITY COUNSELS IN FAVOR OF DISMISSING THE RICO CLAIMS.

As the Second Circuit held, the rule it adopted in *Bascuñán II*, which ensures that both foreign and domestic plaintiffs can obtain civil RICO's remedy for damage to their property located within the United States, furthers the goals of international comity by "protect[ing] the interest each sovereign has in regulating the private property situated in its own territory without extending the reach of American law or discriminating against foreign plaintiffs," and therefore "reduces the possibility of international discord." 874 F.3d at 821-22.

In its Order, this Court found that the interests of comity were served by its holding that BTA/Almaty suffered no domestic injury cognizable by RICO, regardless of any post-theft

13

money-laundering. 226 F. Supp. 3d at 287. Analyzing the facts of this case under the *Bascuñán II* test also results in a conclusion that there was no domestic injury here. Therefore, the interests of comity are equally well-served no matter which analysis is used.

### IV. BTA/ALMATY FAIL TO STATE PLAUSIBLE AND TIMELY RICO CLAIMS AGAINST VIKTOR KHRAPUNOV.

Alternatively, should the Court find that BTA/Almaty have plausibly alleged a domestic injury, it should nevertheless decline to reinstate the RICO claims against Viktor Khrapunov for the reasons stated in our motion to dismiss the Amended Crossclaims. *See* ECF No. 232 at 13-17. Because it had already dismissed the RICO claims by the time it ruled on the Khrapunovs' motion to dismiss, the Court did rule on those arguments. *See* ECF No. 426 at 19.

### CONCLUSION

For all of the above reasons, defendants Viktor and Ilyas Khrapunov respectfully request that the Court deny BTA/Almaty's motion for relief from the December 23, 2016 Order.

Dated: February 23, 2018
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　HOGUET NEWMAN REGAL & KENNEY, LLP


　　　　　　　　　　　　　　　　　　　　　/s/ John P. Curley
　　　　　　　　　　　　　　　　　　　John J. Kenney
　　　　　　　　　　　　　　　　　　　John P. Curley
　　　　　　　　　　　　　　　　　　　Kathleen L. Lowden
　　　　　　　　　　　　　　　　　　　Hoguet Newman Regal & Kenney, LLP
　　　　　　　　　　　　　　　　　　　10 East 40th Street, 35th Floor
　　　　　　　　　　　　　　　　　　　New York, NY 10016
　　　　　　　　　　　　　　　　　　　Phone: 212-689-8808

　　　　　　　　　　　　　　　　　　　*Counsel for Viktor Khrapunov and Ilyas Khrapunov*