

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

March 19, 2018

**BY ECF**

Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Suite 1950
New York, New York 10007

Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
**Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

We represent the City of Almaty, Kazakhstan and BTA Bank ("the Kazakh Entities"), and write in opposition to the March 16, 2018 letter motion of Ilyas and Victor Khrapunov [ECF No. 573] seeking reconsideration of the Court's factual finding in its March 5, 2018 Order [ECF No. 564] that "Ilyas Khrapunov has played games with this Court in the past, and his violation of the Confidentiality Order here is simply another example of this behavior," and providing, as merely one "example" of Khrapunov's history of game-playing, his offer and last-second refusal to testify remotely at the sanctions hearing. For the reasons that follow, the Court's decision was manifestly correct, and the Khrapunovs' motion for reconsideration should be denied.

## Legal Standard

Reconsideration is only appropriate where the moving party identifies an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014).

## Discussion

There is simply no basis for reconsideration here. The Khrapunovs certainly have not offered either controlling law or overlooked evidence justifying reconsideration: they cite no law whatsoever – never mind law the Court purportedly overlooked – and they have not identified any evidence at all supporting reconsideration – let alone "new" evidence not previously available to them. They certainly cannot claim that the Court's factual findings are manifestly unjust when considered against the Court's *unchallenged* finding that they violated Judge Nathan's protective order by leaking the confidential transcript of Mr. Rakishev's deposition.

    A.    **The Court Correctly Found That Ilyas Khrapunov "Has Played Games With This Court In The Past," Regardless Of The Specific Example He Challenges**

As an initial matter, the Court's finding that Ilyas Khrapunov has "played games with this Court in the past" is one-hundred-percent accurate, even putting aside his false offer to testify remotely, which the Court cited as merely one "example" of his past behavior. Among other things, the Khrapunovs have ambushed Plaintiffs' witnesses with hacked and privileged documents, announced their intention to harass and intimidate witnesses on Facebook, noticed



the deposition of a high-ranking Kazakh government official for no reason other than to write a Facebook post about it, refused to produce (or even to collect) responsive documents, pretended not to remember or have access to the "hundreds" of e-mail accounts used by Ilyas Khrapunov, destroyed the e-mail server for one of the few accounts he does remember, lied in their depositions, failed to disclose the location of the Petelins in the United States notwithstanding their claim that the Petelins will exonerate them, stage-managed the litigation strategy of third parties, attempted to dispose of key assets during the pendency of this action, and leaked the confidential deposition transcript of Mr. Rakishev.

As but one more example of this game-playing, the Khrapunovs attempted to insert brand-new evidence into the record on the Kazakh Entities' sanctions motion, resulting in the Court granting a motion to strike. The Khrapunovs' motion for reconsideration is simply another example of them attempting to produce evidence and make arguments that were fully available to them earlier, but which they chose to forego. But "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . Crucially here, a party moving for reconsideration cannot assert new arguments which were not before the court on the original motion." *CF 135 Flat LLC v. Triadou SPV S.A.*, No. 15-cv-5345 (AJN) (KHP), 2016 WL 3481061, at *1 (S.D.N.Y. June 21, 2016) (internal quotation marks, citations, and alterations omitted).

### B. The Khrapunovs Utterly Fail To Point To Overlooked Law, New Evidence, Or Manifest Injustice – The Standard For Reconsideration

The gist of the Khrapunovs' reconsideration motion is that they were blameless in the false offer to testify remotely, and that their counsel offered them up to testify without ever conferring with them. This argument was not presented earlier and, with all respect to counsel, it is not plausible – nor is it supported by any actual evidence.

#### 1. All of the Khrapunovs' Arguments on Reconsideration Could Have Been, But Were Not, Made Earlier

First, the Khrapunovs could have, but failed to, present evidence or argument that they were personally unaware of the offer to testify remotely during the sanctions hearing itself or at their deposition. There is no question that the Kazakh Entities put this issue directly before the Court, offering both evidence and extensive argument about it. [*See* ECF No. 490, at 14-15]. The Khrapunovs, however, offered no evidence on this point, and in their post-hearing brief devoted a total of two sentences to the issue:

> BTA/Almaty cite the Khrapunovs' inability to appear at the evidentiary hearing as evidence of their deceptive conduct but—tellingly—they do not dispute that Swiss law prohibits the Khrapunovs from providing telephonic testimony from Switzerland. See Br. 14-15. The Khrapunovs should not be penalized for upholding the laws of the country in which they reside.

[ECF No. 502 at 13 (Br. at 9)]. Nowhere did the Khrapunovs argue that they were unaware that their counsel had offered them to testify by phone, or that their counsel filed the motion to appear without conferring with them.[1] The Khrapunovs are simply attempting to re-write the record to

---

[1] In their proposed findings of fact, the Khrapunovs asserted that their U.S. counsel had not spoken with the Khrapunovs' Swiss counsel. *See* ECF No. 503, ¶ 14 ("The application was filed



avoid the consequences of their dishonest behavior. This is the exact same conduct that led the Court to sanction them and strike portions of their post-hearing briefing. [ECF No. 564, at 7-8]. The Khrapunovs are not entitled to offer new arguments and theories on reconsideration that they failed to raise when they had the chance. *See Richard Feiner & Co., Inc. v. BMG Music Spain*, No. 01 Civ. 0937 (JSR), 2003 WL 21496812, at *1 (S.D.N.Y. June 27, 2003) ("[P]laintiff is advancing new arguments without excuse as to why these arguments were not raised previously, and these arguments are therefore not cognizable on a motion for reconsideration.").

    **2.**    **The Khrapunovs' Story Is Not Plausible, And Does Not Undermine The Court's Findings In Any Event**

Second, the Khrapunovs' arguments are not plausible and are not supported by any evidence. On November 2, 2017, the Khrapunovs filed their letter opposing the Kazakh Entities' request for an evidentiary hearing. In that letter, the Khrapunovs both (1) offered to appear by phone, and (2) submitted an affidavit from Ilyas Khrapunov denying that he leaked the transcript. *Compare* ECF No. 456-1 (I. Khrapunov Aff.) *with* ECF No. 456, at 2 ("[W]e ask that Mr. Khrapunov be permitted to testify by phone at any evidentiary hearing."). Khrapunov's affidavit made clear that he understood the substance of the Kazakh Entities' sanctions motion, and it is obvious from a review of the affidavit that it benefited from the work of U.S. counsel. Hence, it is beyond question that Ilyas Khrapunov was personally aware of the Kazakh Entities' sanctions motion at the time that of his offer to testify remotely. Yet the Khrapunovs are asking the Court to believe that this offer was made without his knowledge, and that Khrapunov did not review the filing in opposition to the Kazakh Entities' sanctions motion before it was filed.

Even if that were possible, on November 6, 2017, the Court issued an *order* setting an evidentiary hearing on the Kazakh Entities' sanctions motion, and requiring any party who wished to testify remotely to make an appropriate application within two days. [ECF No. 458]. In response, on November 8, 2017, the Khrapunovs submitted a letter motion to the Court, the sole purpose of which was to ask to testify telephonically. [ECF No. 459]. Thus, the Khrapunovs are asking this Court to believe that Ilyas Khrapunov was also not provided notice of the Court's order setting the sanctions hearing, or of his specific motion to appear telephonically before it was filed. This makes no sense.

Moreover, the Khrapunovs also ask the Court to believe that none of the November 2 letter asking to appear telephonically, the Court's November 6 Order, the Khrapunovs' November 8 letter motion requesting to appear telephonically, *or* the Court's November 9 memo-endorsement granting that request [ECF No. 461] were forwarded to Ilyas Khrapunov *after* they were filed, and he thus remained ignorant for two weeks, until November 14, 2017 – after preparation for his testimony would have begun, and logistical arrangements would have

---

before the undersigned had an opportunity to speak with the Khrapunovs' Swiss counsel."). But there are at least two problems with this assertion. *First*, it was – and remains – unsupported by any record evidence. *Second*, and more importantly, it says nothing about when counsel spoke with the Khrapunovs themselves about this issue. As discussed below, the record is clear that Ilyas Khrapunov was in touch with his U.S. counsel regarding the sanctions motion at the point at which they offered his testimony, and of course it was Khrapunov himself, and not his U.S. or Swiss counsel, whom the Court correctly criticized. If the Khrapunovs themselves wanted to claim ignorance, the time to do so was long ago.


been made – at which time the Khrapunovs informed the Court that they would not to testify and requested to postpone the hearing. [ECF No. 463].[2]

It is not in dispute that that Ilyas Khrapunov himself was well aware of the Swiss law he would eventually raise to avoid testifying – having invoked it in precisely the same circumstances, at the last moment, to scuttle an evidentiary hearing in the United Kingdom – so even if counsel truly did offer for their clients to testify by phone without prior consultation, the Khrapunovs themselves were obligated to promptly correct that error once they learned of it. At *best*, therefore, the Khrapunovs allowed their counsel to make an argument and assert a position that they full well knew to be wrong, with the inevitable consequence of disrupting the sanctions hearing. Even on this charitable view of the facts, drawing every conceivable (yet implausible) inference in the Khrapunovs' favor, the Court would still be correct to criticize Ilyas Khrapunov for yet again "play[ing] games with this Court."

### 3. The Khrapunovs' Arguments Are Not Supported By *Any* Evidence

The Khrapunovs' explanations for their misconduct are – like their testimony itself – not credible, and notably not supported by any *actual evidence*. The Khrapunovs never testified to any of the purported facts they now offer on reconsideration, such as their lack of knowledge about the offer or motion to testify by phone, or the Court's orders. The Khrapunovs could certainly have offered sworn statements to this effect before the evidentiary hearing, or offered testimony about the same during their depositions; as set forth above, the Kazakh Entities had put their conduct with respect to testifying remotely at issue. But they did neither, and they must now live with that record, rather than once again trying to insert evidence after-the-fact that is not subject to cross-examination. Instead, their letter merely puts forward counsel's "understanding of the relevant facts." Ltr., at 1. The Khrapunovs have already been found by this Court to be untrustworthy, and they should not be allowed to trade on their counsel's good name to make statements of fact unsupported by any evidence. *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1059 (2d Cir. 1990) ("[A]ttorney's arguments [are] not evidence.").[3]

---

[2] The Khrapunovs' November 14 letter further reveals their gamesmanship, as they believed (incorrectly) they were sending the letter on the day before the hearing. [ECF No. 463 (Khrapunovs' letter dated November 14, informing the Court that they would not testify "at the November 15, 2017 evidentiary hearing")]. In fact, the hearing was always scheduled for November 17.

[3] To the extent the Court is given any pause by the Khrapunovs' motion for reconsideration, the Khrapunovs should be forced to provide <u>actual evidence</u> that could be confronted. Among other things, counsel should be forced to prove this point by producing all of their communications with their clients and Swiss counsel (and between their clients and Swiss counsel alone) from the date the Kazakh Entities requested the hearing (October 30, 2017) to the date the Khrapunovs finally informed the Court that they would not appear (November 14, 2017). Having put the lawyer-client communications on this point at issue to defend their conduct, the Khrapunovs can no longer claim these to be privileged. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (privilege normally protecting attorney-client communications would implicitly be waived where defendant sought to use absence of advice from counsel as a defense, while also claiming that his conversations with counsel were privileged.).



### Conclusion

Nowhere in the Khrapunovs' letter do they challenge the Court's ultimate finding that they leaked the Rakishev Transcript, or that Ilyas Khrapunov's testimony on this point was not credible. Nonetheless, they are forcing the Kazakh Entities to incur yet more expense on an issue where the Court has already sanctioned the Khrapunovs and awarded the Plaintiffs attorneys' fees. The fact that the Khrapunovs are seeking only limited reconsideration of a small portion of the Court's Order, just one business day before their time to object under Rule 72(b)(2) would otherwise expire, suggests that their motion for reconsideration is nothing more than a play for time to try and draw out this motion sequence. The Kazakh Entities respectfully request an expedited ruling on this meritless reconsideration motion.

Moreover, the Kazakh Entities should be entitled to recover fees from the Khrapunovs related to this new round of briefing on the Khrapunovs' already-established violations of the protective order. The Khrapunovs have willfully breached multiple court orders, and if they wish to further draw out briefing on this subject – especially because they do not take issue with the Court's ultimate finding of contempt – it should be at their own expense.[4]

For the above reasons, the Khrapunovs' request for reconsideration should be denied on an expedited basis, and they should be ordered to pay fees in connection with this motion. The Kazakh Entities can supplement their fee application within two business days of any order.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz

---

[4] Up to this point, the Kazakh Entities have worked under the assumption that counsel to the Khrapunovs has been unaware of their clients' sanctionable behavior. But while counsel was presumably unaware that their clients leaked the Rakishev transcript, they are now abetting the Khrapunovs' sanctionable conduct by submitting a frivolous motion that does not even try to meet the standard for reconsideration, and points to no overlooked law, facts (indeed, it points to no facts grounded in actual evidence at all), or manifest injustice. Rule 37(b)(2)(C) addresses failure to comply with discovery orders, and explicitly contemplates an award of attorneys' fees against "the disobedient party, the attorney advising that party, or both." While the Kazakh Entities are not seeking to collect fees from counsel at this time, they reserve the right to do so if the Khrapunovs themselves refuse to pay the sanctions against them.