UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CITY OF ALMATY, KAZAHKSTAN, and
BTA BANK JSC,

                                        Plaintiffs,

                    -against-

MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV,
VIKTOR KHRAPUNOV, and TRIADOU SPV S.A.,

                                        Defendants.

------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4-30-2018

**ORDER**

**15-CV-05345 (AJN) (KHP)**

On March 5, 2018, this Court granted a Motion for Sanctions (Order, Doc. No. 564) filed by Plaintiffs, the City of Almaty, Kazakhstan and BTA Bank JSC (the "Kazakh Entities") against Defendants Viktor and Ilyas Khrapunov (the "Khrapunovs"). The Court now considers Plaintiffs' application for fees and costs (Declaration of Matthew L. Schwartz ("Schwartz Decl."), Doc. No. 574) in connection with their successful Motion for Sanctions.

## BACKGROUND

The Kazakh Entities' Motion for Sanctions arose out of an alleged violation of the protective order issued in this case. Specifically, the Kazakh Entities asserted that the Khrapunovs had leaked the confidential deposition transcript of the Chairman of BTA Bank, Kenges Rakishev. (Doc. No. 453.) This Court conducted an evidentiary hearing on November 17, 2017 and February 13, 2018.[1] After briefing and oral argument, this Court found that the

---

[1] The purpose for the continuation of the hearing was to allow for questioning of the Khrapunovs at their depositions in Switzerland and possible admission of deposition testimony in connection with the Motion for Sanctions.

Khrapunovs had violated the protective order and granted Plaintiffs' Motion for Sanctions. (Order, pp. 8, 14-15.)  Familiarity with the facts as set forth in that Order is assumed, and for that reason those facts are not repeated here.

Plaintiffs seek a total of $278,009 in fees and $3,060.30 in costs.  Mr. Schwartz, lead counsel for Plaintiffs, has submitted a declaration affirming that these amounts were actually billed to Plaintiffs and providing a detailed accounting of the hours worked by each lawyer and paralegal on his team in connection with the Motion for Sanctions.  (Schwartz Decl.)  Plaintiffs' legal team is from the law firm Boies Schiller Flexner LLP ("Boies Schiller Flexner").  In Mr. Schwartz's declaration, time is broken down in tenths of an hour with detailed descriptions of work performed.  (*Id.* ¶¶ 15-24.)  Hourly rates for each lawyer and paralegal, as well as background and experience of each litigation team member, have been provided.  (*Id.* ¶¶ 5-10.)

The Khrapunovs do not challenge the costs sought by Plaintiffs but argue that the fees sought are excessive and should be reduced to $61,749.  (Memorandum of Law in Partial Opposition to BTA/Almaty's Application for Fees ("Def. Opp."), Doc. No. 600.)

## LEGAL STANDARD

A district court exercises "considerable discretion" in awarding attorneys' fees.  *See Millea v. Metro-North R. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable."  *TufAmerica Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016), *reconsideration granted in part*, No. 12-cv-3529 (AJN), 2016 WL 3866578 (S.D.N.Y. July 12, 2016), *and on reconsideration in part*, No. 12-cv-3529 (AJN), 2018 WL

401510 (S.D.N.Y. Jan. 12, 2018) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  Attorneys'

fees are awarded by determining a presumptively reasonable fee, or a "lodestar," reached by

multiplying a reasonable hourly rate by the number of hours reasonably expended.  *TufAmerica*

*Inc.*, 2016 WL 1029553, at *3 (citing *Millea*, 658 F.3d at 166); *see also Bergerson v. N.Y. State*

*Office of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011).  When

evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to

pay, given that such a party wishes to spend the minimum necessary to litigate the case

effectively."  *Bergerson,* 652 F.3d at 289 (internal citations and quotation marks omitted).  The

Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the

district in which the reviewing court sits in calculating the presumptively reasonable fee."  *Id.* at

289 (internal citation and quotation marks omitted); *see also TufAmerica Inc.*, 2016 WL

1029553, at *5 (rate must be "in line with those rates prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation").  Courts in this

district also have recognized that an "attorney's customary billing rate for fee-paying clients is

ordinarily the best evidence of" a reasonable hourly rate.  *In re Stock Exchanges Options*

*Trading Antitrust Litig.*, No. 99-cv-0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006).

Finally, the Court may adjust base hourly rates to account for case-specific variables.  *Arbor Hill*

*Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 183-184.

When evaluating hours expended, the Court must make "a conscientious and detailed

inquiry into the validity of the representations that a certain number of hours were usefully and

reasonably expended."  *Haley v.* Pataki, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City*

*of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).  In determining whether hours are excessive, "the

critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Samms v. Abrams*, 198 F.Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017); *TufAmerica Inc.*, 2016 WL 1029553, at *3.

The Court also looks at the nature of the legal matter and reason for the fee award in considering what is a reasonable rate and reasonable time spent on a matter.  Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to prosecute a case effectively. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 187.  Likewise, the Court may consider the purpose of the award; that is, a different presumptively reasonable fee may be warranted if the fee is being awarded as a sanction for misconduct than if the fee is being awarded in connection with a successful outcome in a statutory fee-shifting case.  For example, in *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd*., the Second Circuit recently upheld a trial court's imposition of more than $2.5 million in discovery sanctions in a case with only $20,000 in controversy, recognizing that "courts routinely award [discovery] sanctions without any discussion of the ultimate merits recovery."  880 F.3d 620, 633-34 (2d Cir. 2018).  The Court stated that "[d]iscovery sanctions are different" than fee awards in civil rights cases, reasoning,

4

"a party that disregards its obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never have been incurred. . . . In that situation, the offended adversary's counsel is not being rewarded for its success in the litigation; rather, the adversary is simply being compensated for costs it should not have had to bear." *Id*. at 364.

## DISCUSSION

Plaintiffs' fee application seeks fees in connection with seven categories of work (the "Categories"): (1) obtaining a protective order in advance of the Rakishev deposition (14.6 hours of attorney[2] time for a total of $8,662); (2) preparing for and defending the Rakishev deposition (37.7 hours of attorney time for a total of $31,009); (3) investigating the suspected breach of the protective order and preparing the Motion for Sanctions (48.9 hours of attorney time for a total of $30,741); (4) collecting evidence, preparing for, and conducting the evidentiary hearing on the leak of the Rakishev transcript (145.2 hours of attorney time for a total of $108,058); (5) drafting post-hearing briefs (48.9 hours of attorney time for a total of $37,713); (6) drafting a motion to strike certain evidence the Khrapunovs sought to use after the close of the hearing (35.2 hours of attorney time for a total of $24,871); and (7) preparing for and arguing the Motion for Sanctions (47.4 hours of attorney time for a total of $36,955). (Schwartz Decl., ¶¶ 15-24.)  The work was performed by two partners, Matthew Schwartz and Peter Skinner; three associates, Craig Wenner, Daniel Boyle, and Elise Milne; and one paralegal, Sophie Roytblat.  (*Id.* at 3-5.)  The hourly rates charged to Plaintiffs for the work in connection with the sanctions motion were as follows:

---

[2] The Court includes paralegal time in these counts.

- Mr. Schwartz:  $1180
- Mr. Skinner:   $1150
- Mr. Werner:   $700
- Mr. Boyle:     $660
- Ms. Milne:     $540
- Ms. Roytblat: $280

There is no doubt that all of the individuals who performed work are highly competent.  Mr.

Schwartz received his J.D. from Columbia Law School and graduated as a Harlan Fiske Stone

scholar.  After law school, he clerked for the Hon. Shira A. Scheindlin in this District, as well as

for the Hon. Thomas J. Meskill in the Second Circuit Court of Appeals.  He also served for ten

years as an Assistant United States Attorney for the Southern District of New York, where he

gained substantial experience investigating and litigating matters involving fraud, money

laundering, and violations of the Bank Secrecy Act (*id.* at 3) – all experience highly relevant to

the representation of Plaintiffs.  Mr. Skinner received his J.D. from Boston College Law School,

where he graduated *magna cum laude*.  He served for nine years as an Assistant United States

Attorney for the Southern District of New York, where he was a senior prosecutor in the

Terrorism and International Narcotics and Organized Crime Units.  He also served in the Civil

Division of the United States Attorney's Office, where he advised the intelligence community on

litigation affecting national security and handled complex civil matters.  (*Id.* at 3-4.)  He too has

experience highly relevant to the representation of Plaintiffs.  Mr. Werner, the senior associate

on the litigation, is a 2011 graduate of New York University School of Law.  He served as a law

clerk for the Hon. Harold Baer, Jr. in this District and as a post-graduate fellow in the Frank J.

Guarini Center on Environmental and Land Use Law at his alma mater.  (*Id.* at 4.)  Mr. Boyle

graduated from Columbia Law School in 2013, after which he joined Boies Schiller Flexner.  As a

mid-level associate, he has gained experience in a variety of complex commercial disputes.  (*Id.*)

Ms. Milne, who served as the junior attorney on the matter, received her J.D. from Vermont

Law School in 2016, after which she joined Boies Schiller Flexner.  She recently left the firm to

clerk for the Hon. Peter W. Hall of the Second Circuit.  (*Id.* at 4-5.)  Finally, Ms. Roytblat received

her B.A. *cum laude* with departmental honors from New York University in 2017.  She is fluent

in Russian and provided important support in this litigation, translating numerous documents

from Russian to English and researching Russian-language documents and public sources.  (*Id.*

at 5.)

The Court first turns to the Categories of work for which it will not award attorneys'

fees.  As the Khrapunovs correctly point out, the Court did not order the Khrapunovs to pay

attorneys' fees and costs for obtaining the protective order in advance of, or for preparing and

defending the deposition of, Mr. Rakishev.  (Order, pp. 14-15; Def. Opp. pp. 2-3.)  The

Khrapunovs noticed the deposition of Rakishev, and Plaintiffs did not object to the deposition.

Plaintiffs also conceded during oral argument before this Court that at least some of the

Rakishev deposition was relevant to this matter.  While it is true that Plaintiffs moved to limit

the scope of questions in advance of the deposition, they did not move for sanctions in

connection with the questions posed to Rakishev.  They did not provide the Court with specific

improper questions or seek rulings on them.  Rather, the impetus for the Motion for Sanctions

was the leaking of the Rakishev transcript.  (Order pp. 13-15.)  This Court's Order granting the

Motion for Sanctions was therefore based on the leaking of the transcript and violation of

Judge Nathan's protective order governing all of discovery.[3]  To the extent the Court considered the pre-deposition conduct of the Khrapunovs, it did so because the conduct was relevant to weighing the credibility of the Khrapunovs concerning the leak of the deposition transcript. Additionally, regardless of the outcome on the Motion for Sanctions, Plaintiffs still would have incurred the costs of preparing for and defending the deposition of Rakishev.  For these reasons, it is not appropriate to award fees in connection with the first two Categories of work described by Plaintiffs' counsel.  *See Au New Haven, LLC v. YKK Corp.*, No. 15-cv-03411 (GHW) (SN), 2018 WL 333828, at *8 (S.D.N.Y. Jan. 5, 2018) (court refused to grant fees for review of documents that were produced late because movants "still would have incurred the expense of reviewing" the documents had they been produced earlier); *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15-cv-7428 (PAE), 2017 WL 6551198, at *5 (S.D.N.Y. Dec. 22, 2017) (fees awarded only for efforts to bring about compliance with injunction; pre-injunction efforts not compensable); *Uretsky v. Acme Am. Repairs,* No. cv-07-4688 (DLI), 2011 WL 1131326, at *2-3 (E.D.N.Y. Mar. 28, 2011) (on sanctions motion, court will not award fees for legal research that will "prove to be of value as [the] case proceeds").  This brings the total potential fees awardable to $238,338.

The Court next turns to the hourly rates sought by Plaintiffs' counsel.  Plaintiffs bear the burden of demonstrating that their counsel's rates are reasonable.  *Blum*, 465 U.S. at 895 n.11; *see also Reiter v. Metro. Transp. Auth. of State of New York*, No. 01-cv-2762 (GWG), 2007 WL 2775144, at *4 (S.D.N.Y. Sept. 25, 2007).  Plaintiffs' counsel has submitted a declaration stating

---

[3] The Court, of course, does not excuse the violation of any order, but has insufficient information to evaluate the extent to which the deposition questions would constitute a violation of the order restricting the scope of the deposition.

that the rates sought are the firm's regular rates and the rates actually charged to Plaintiffs. This is strong evidence that the rates requested are reasonable.  *In re Stock Exchanges Options Trading Antitrust Litig.*, 2006 WL 3498590, at *9 ; *see also Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For lawyers engaged in customary private practice, who at least in part charge their clients on an hourly basis regardless of the outcome, the marketplace has set that value.") (internal citation and quotation marks omitted).

In their reply, (Kazakh Entities' Reply In Further Support of Their Application For Fees ("Pl. Reply"), Doc. No. 608) Plaintiffs also point to *In re Relativity Fashion, LLC*, a 2017 bankruptcy case in this District in which the Court found partner rates above $1000 reasonable. 565 B.R. 50, 68-72 (Bankr. S.D.N.Y. 2017) (citing cases approving similarly high hourly rates). Plaintiffs also cite to other cases recognizing that "'partner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation [in the Southern District of New York].'"  *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Markets*, No. 12-cv-9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (quoting *Themis Capital v. Democratic Republic of Congo*, No. 09-cv-1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014)).  Plaintiffs argue that courts in this District also approve associate billing rates between $540 and $700 in complex commercial matters.  (Pl. Reply p. 5 (citing *Themis Capital*, 2014 WL 4379100, at *7 n.5 (approving associate rates "from approximately $380 to $682" for associates in case involving "difficult questions of law and fact").)

The Khrapunovs point to other cases, mostly ones involving fee-shifting statutes or a contingency fee arrangement, where courts in this District have approved much lower prevailing rates for partners than those charged by Boies Schiller Flexner.  (Def. Opp. pp. 4-5

9

(citing *Alicea,* 272 F. Supp. 3d at 609-10 (holding that rates of $625 for a partner with 35 years of experience and $500 for a lawyer with 14 years of experience were "at the outer limits of what is reasonable"); *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, No. 17-cv-2105 (VSB) (GWG), 2018 WL 1305186, at *5 (S.D.N.Y. Mar. 12, 2018) (approving rate of $575 for partners with 40 to 43 years of experience); *Euro Pac. Capital, Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-cv-4410 (VM) (JLC), 2018 WL 1229842, at *8 (S.D.N.Y. Mar. 9, 2018) (approving rate of $375 for attorneys with 30 to 40 years of experience as within the reasonable range of rates and collecting cases); *Au New Haven*, 2018 WL 333828, at *7 (approving partner rates of $530 to $650); *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research,* 286 F. Supp.3d 585, 588 (S.D.N.Y. 2018) (approving partner rate of $765); *Benihana, Inc.*, 2017 WL 6551198, at *4 (approving rate of $495 to $550 for partner with 18 years of experience, and $350 to $450 for partner with 12 years of experience); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. S. Coal Corp.*, No. 17-cv-1329 (PAC), 2017 WL 6507123, at *1 (S.D.N.Y. Dec. 19, 2017) (finding $425 rate for partner reasonable); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-cv-8414, 2017 WL 1294557, at *10 (S.D.N.Y. Apr. 4, 2017) (in "complex" case, partner rate of $600 is reasonable); *Long v. HSBC USA INC.*, No. 14-cv-6233 (HBP), 2016 WL 4764939, at *10 (S.D.N.Y. Sept. 13, 2016) (reasonable rates for partners with 15 to 19 years of experience ranged from $425 to $550); *TufAmerica*, 2016 WL 1029553, at *6 (partner rates ranging from $572 to $715 were reasonable).)  The Khrapunovs also point to cases where courts in the District have found much lower prevailing rates for associates.  (Def. Opp. pp. 5-6 (citing *Au New Haven*, 2018 WL 333828, at *7 (approving associate rates between $250 and $350); *Errant Gene Therapeutic,* 286 F. Supp.3d at 588-89 (approving associate rates between

$325 and $450); *Benihana*, 2017 WL 6551198, at *4 (approving rate of $375 for sixth-year

associate); *Alicea,* 272 F. Supp. 3d at 611 (finding that a reasonable rate for sixth-year associate

is $300); *Gulino*, 2017 WL 1294557, at *10 (approving rates between $250 and $350 for

associates); *Long,* 2016 WL 4764939, at *11 (reasonable rates for associates range from $270 to

$360); *TufAmerica*, 2016 WL 1029553, at *6 (reasonable rate for senior associates was $476 to

$560 and for junior associates it was $375 to $425).)

  For reasons cited by the Second Circuit in *Klipsch Grp., Inc.,* and in recognition of the

fees awarded in this District in complex cases and in sanctions motions, *see, e.g., In re Relativity

Fashion, LLC supra,* this Court finds that most of the cases cited by the Khrapunovs concerning

attorney rates are dissimilar to this case for purposes of determining appropriate rates and a

presumptively appropriate fee award in connection with the sanctions ordered in this action.

*See* 880 F.3d at 634; *but see Benihana, Inc.*, 2017 WL 6551198, at *2, 4-5 (in a case involving

sanctions related to enforcement of an injunction against restaurant licensee, court approved

rates of $450 for partner and $350 for associate); *Errant Gene Therapeutic, LLC*, 286 F.Supp. at

588 (S.D.N.Y. Jan. 2, 2018) (in commercial litigation, court approved hourly rates for partners of

$765 and for associates of up to $450).  The cases cited by Plaintiffs, which involve complex civil

litigation and paying clients, are more on point.  Moreover, this case involves special

circumstances that warrant higher rates, as Plaintiffs required a firm with expertise in civil

discovery procedures in other countries and global money laundering investigations.  In

addition, Plaintiffs required a firm with sufficient staff to dedicate to a time-intensive case

involving the tracing of money allegedly stolen from the City of Almaty, Kazakhstan, funneled

through various foreign entities and ultimately used to purchase the New York real estate at

issue in this case.  It is not uncommon for partners at large firms in New York City who litigate

complex matters, particularly matters like this involving navigation of the Hague Convention

and the Federal Rules of Civil Procedure, coordination with other related pending domestic and

international litigations, and fact-intensive forensic investigation, to charge over $1,000 per

hour.  Similarly, mid-level and senior associate rates of $650 to $700 per hour are common in

large firms in this District, not only because of the need to attract and pay for the highest

quality lawyers, but also because of the significant overhead of operating a firm in Manhattan.

Further, Plaintiffs have agreed to the rates charged by their attorneys, meaning that the rates

reflect what the market will bear and are presumptively reasonable.  *See Blum*, 465 U.S. at 895

n.11; *In re Relativity Fashion, LLC,* 565 B.R. at 69.  Thus, the Court finds that the hourly rates of

$1,180 for Mr. Schwartz, $1,150 for Mr. Skinner, $700 for Mr. Werner, and $660 for Mr. Boyle

are reasonable.  A rate of $540 per hour, however, is quite high for Ms. Milne, a lawyer with

only one year of experience, even in this District, and is not supported by the cases cited by

Plaintiffs.  *See TufAmerica*, 2016 WL 1029553, at *6 (noting that average hourly rate for an

associate in this district is $531).  The Court believes that a rate of $300 per hour is more

appropriate in this matter for a newly admitted attorney and in light of the work actually

performed by Ms. Milne in this case.

Finally, Plaintiffs do not provide citations supporting a $280 hourly rate for their

paralegal.  The Khrapunovs point to cases in which courts have reduced paralegal rates to

between $75 and $175 per hour and argue that Ms. Roytblat's rate should be reduced to $150

per hour.  (Def. Opp. p 6 (citing *Hollander*, 2018 WL 1305186, at *5 (reducing paralegal rate to

$75); *Euro Pac. Capital, Inc.*, 2018 WL 1229842, at *9 (reducing paralegal rate to $150); *Gulino*,

2017 WL 1294557, at *5 (approving rate of $150 for paralegals); *Long*, 2016 WL 4764939, at

*11 (finding that rates of $100 to $150 for paralegals are reasonable); *TufAmerica,* 2016 WL

1029553, at *6 (reducing the requested rate for paralegals to $150-$175).)  This Court is

persuaded that the paralegal rates charged are excessive.  While it is true that Ms. Roytblat's

Russian-speaking skills were certainly helpful, counsel could have obtained a translator at much

lower rates.  Moreover, Ms. Roytblat is only one year out of college, with little paralegal

experience.  Therefore, the Court agrees with the Khrapunovs that Plaintiffs' paralegal rates

should be reduced to $150 per hour, a rate far more in line with paralegal rates approved in this

District – especially for junior paralegals. *See TufAmerica*, 2016 WL 1029553, at *6 (reducing

hourly rate for junior paralegals to $150).[4]

As a cross-check, the Court also analyzed the effective hourly rates for each category of

work by dividing the total fees by all hours worked to ascertain how individuals with different

experiences are being utilized and leveraged in the matter.  The effective hourly rates for each

compensable category of work are:

- Category 3: $628.65 for investigating the suspected breach of the protective order and drafting the motion for sanctions.
- Category 4: $744.20 for collecting and preparing evidence and conducting the evidentiary hearing.
- Category 5: $771 for drafting the post-hearing brief.
- Category 6: $706.56 for drafting the motion to strike.
- Category 7: $779.64 for arguing the motion for sanctions.

---

[4] The Court also has relied on its own experience and knowledge of prevailing rates in this District for complex matters by comparable attorneys of comparable skill and standing and at comparable firms.  *In re Relativity Fashion LLC,* 565 B.R. at 70 (recognizing that Courts may rely on their own experience and knowledge of prevailing rates in determining fee awards).

This analysis shows that attorney and paralegal time combined resulted in an hourly rate for most Categories of work that exceeded the rate charged for senior associates.  Said another way, on average, Plaintiffs' counsel charged partner-level or near-partner-level rates for all hours worked in connection with three of the five Categories, senior associate rates for all hours worked in connection with one category and mid-level associate rates for all hours worked in connection with one category.  This effective hourly rate provides an indication of how work was allocated among lawyers and paralegals on the team, and whether the work was efficiently staffed in keeping with the assumption that "a party wishes to spend the minimum necessary to litigate the case effectively."  *See Bergerson,* 652 F.3d at 289-90 (internal citation and quotation marks omitted).  With regard to Categories 3, 5, and 6, the Court is of the view that the average rate should be $660 or less per hour, the rate charged by Plaintiffs' counsel for a mid-level associate, given the nature of the work in these Categories (which entailed investigating and drafting motions).  With regard to Categories 4 and 7, the Court recognizes that the nature of the work called for more experienced lawyers, and therefore agrees that the average, or effective, rates are reasonable insofar as they reflect that a larger percentage of work was performed by more senior lawyers and partners.

Lastly, the Court addresses the hours billed.  The Khrapunovs complain that Plaintiffs' counsel "block billed."  (Def. Opp. pp. 8-9.)  Block billing occurs when attorneys do not sufficiently disaggregate their time descriptions to analyze whether the hours spent on individual tasks were reasonable.  In *Benihana, Inc.,* the court stated that block billing, "although disfavored, does not automatically preclude recovery for the hours billed."  2017 WL 6551198, at *3.  Instead, "courts make reductions to block-billed hours in circumstances when

14

(1) there is reason to believe that the hours billed were independently unreasonable; (2) the block billing involved aggregating tasks that were not all compensable; or (3) the number of hours block billed together was so high (such as five hours or more) so as to create an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks." *Id.*

Having carefully reviewed the time records, this Court does not agree that Plaintiffs' counsel engaged in inappropriate block billing pursuant to the above-referenced standard.  Less than half of the entries identified by the Khrapunovs are for five or more hours.  (Def. Opp. pp. 9-10.)  The few entries exceeding five hours are not independently unreasonable, nor do the tasks listed constitute non-compensable tasks.  As mentioned above, the tasks listed are clearly described and all relate to the Motion for Sanctions or preparation for the evidentiary hearing.

The Khrapunovs also complain that the time spent was excessive.  (*Id.* at 7-8.)  They point out that six people spent over 144 hours preparing for the evidentiary hearing, at a claimed cost of $108,058, which they argue is more hours than are spent litigating entire cases. (*Id.* (citing *Bond v. Welpak Corp.,* No. 15-cv-2403 (JBW) (SMG), 2017 WL 4325819, at *6 (E.D.N.Y. Sept. 26, 2017) (141 hours for taking FLSA case through jury trial); *Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*, No. 14-cv-09581 (SN), 2017 WL2169302, at *3 (S.D.N.Y. May 17, 2017) (111 hours for litigating ERISA case through summary judgment).)  The cases they cite for this proposition are far less complex than this case.  For example, a simple ERISA case involves little discovery and few, if any, hearings.  The documents are contained in the administrative record.  Wage and hour cases also involve few discovery issues, and the evidence consists largely of payroll records and job descriptions.  This case is far more involved

15

and procedurally complex, involves parties in foreign jurisdictions and real estate investments in New York of over 20 million dollars and, therefore, necessarily will cost well over a million dollars to litigate.  As Plaintiffs' counsel points out and this Court also recognizes, the Motion for Sanctions and evidentiary hearing in this matter required significant time preparing for the cross-examination of the Khrapunovs, including collecting evidence, obtaining translations, and preparing cross-examination outlines and exhibits.  (Pl. Reply p. 8.)  Further, because the Khrapunovs were to be examined telephonically, these materials had to be prepared well in advance of the evidentiary hearing so they could be put in front of the Khrapunovs while they testified remotely from Switzerland.  (*Id.*)  Counsel also collected numerous declarations for submission to the Court, thereby removing alternative potential sources for the leak from consideration.  Therefore, the Court does not find the hours expended to be excessive. Moreover, the hours were incurred solely to undertake corrective discovery – *i.e.,* a motion to correct the violation of and ensure that the Khrapunovs abide by the protective order in this case going forward.  See *Klipsch Grp. Inc.,* 880 F.3d at 623 ("discovery sanctions should be commensurate with the costs unnecessarily created by sanctionable behavior").  But, as noted above, the allocation of hours among the lawyers and paralegals was not as efficient as it could have been, based on the effective hourly rate.  In other words, the Court finds that a reasonable attorney would have adjusted the allocation of work among the team in a slightly more efficient manner.

In light of the above, the Court has recalculated the fees for Categories 3-7 by adjusting the rates for Mses. Milne and Roytblat.  As a cross-check, the Court then re-calculated the

effective hourly rate.   Based on this recalculation, the Court believes the following fee reductions are warranted:

- Category 3:  The total fees are reduced from $30,741 to $28,931.
- Category 4:  The total fees are reduced from $108,058 to $102,350.
- Category 5:  The total fees are reduced from $37,713 to $32,274.
- Category 6:  The total fees are reduced from $24,871 to $23,232.
- Category 7:  The total fees are reduced from $36,955 to $35,161.

These calculations accept the rates charged by Messrs. Schwartz, Skinner, Boyle and Wenner, but reduce the rates for Mses. Milne and Roytblat as set forth above; they also accept the hours expended by each lawyer as reflected in the Schwartz Declaration.  Finally, the calculations also take into account the allocation of tasks among the lawyers and paralegal on the team and, in the case of Categories 5 and 6, led to a slightly greater reduction than if the Court had simply multiplied the approved rates for each attorney and paralegal by the hours expended in each category of work.[5]  In light of the fact that Plaintiffs' counsel was careful in the fee application and did not include a number of categories of time, including time spent communicating with their clients about the leak, reviewing, digesting, and summarizing the Khrapunovs' deposition transcripts, preparing counsel and staff for possible cross-examination at the hearing, summarizing, organizing and analyzing evidence collected in relation to the Motion for Sanctions, addressing the Motion for Sanctions in internal strategy sessions, and clerical and administrative work (Schwartz Decl. ¶¶ 28-33), the Court finds that no further reductions to the fees are warranted.

---

[5] The adjustments result in an average hourly, or effective, rate of $660 for these Categories.  No adjustment was required for Category 3 because the effective hourly rate computed to $592, which this Court finds reflects an appropriate allocation of work among lawyers of varying experience for the tasks performed.

**<u>CONCLUSION</u>**

Accordingly, the Court awards Plaintiffs attorneys' fees in the amount of $221,953 and

costs in the amount of $3,060.30.  The Khrapunovs shall pay this amount to Plaintiffs as a

sanction for violating the protective order in this case.

**SO ORDERED.**

Dated: April 30, 2018
        New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge