**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )  No. 15-cv-05345 (AJN) (KHP)<br>) |
| MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV, VIKTOR KHRAPUNOV and TRIADOU SPV S.A., | )<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' OPPOSITION TO MOTION TO WITHDRAW**

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Crossclaim Plaintiffs City of Almaty, Kazakhstan and BTA Bank*

1

The City of Almaty and BTA Bank (together, the "Kazakh Entities" or "Plaintiffs")
respectfully submit this memorandum of law in partial opposition to the Motion to Withdraw as
Counsel to Defendants Ilyas and Viktor Khrapunov filed by Hoguet, Regal, Newman & Kenney,
LLP ("HNRK"). [ECF No. 619].

## PRELIMINARY STATEMENT

The Kazakh Entities have no desire to keep HNRK in this lawsuit when it is not being
paid for its services.  Given their clients' past shenanigans, however, the Court must ensure that
this is a legitimate request, rather than a tactical maneuver by the Khrapunovs to delay this
litigation now that it has become clear they cannot abuse discovery here to gain an advantage in
litigation overseas.  On the present record, there is simply not enough information to do that.

HNRK does not disclose any of the basics about their clients' inability to pay, such as the
date of the Khrapunovs' last payment, the outstanding balance, the Khrapunovs' current financial
resources, how much the Khrapunovs have paid in the past, whether the Khrapunovs have made
late payments on outstanding balances in the past, the Khrapunovs' position with respect to the
outstanding balance, or whether the Khrapunovs have represented that they cannot make
payment on the unpaid balance.  Instead, the sum total of HNRK's evidentiary support for its
motion is a statement that the firm has "not been paid for [its] work in many months" and that
while "HNRK has received some of its fees, there is a significant unpaid balance." (Kenney
Decl. at ¶¶ 2 and 4 [ECF No 620].)

The Khrapunovs' present showing is not enough to support a motion to withdraw in the
ordinary case.  But this is not an ordinary case and, more to the point, the Khrapunovs are not
ordinary litigants.  Their motion to withdraw comes just after the Khrapunovs were sanctioned
for violating one court order and ordered to meet-and-confer in connection with their apparent

1

violation of another court order.  And while HNRK may not have been paid recently, it is a matter of public record that Ilyas and/or Viktor Khrapunov are currently paying for counsel in numerous other lawsuits in the United States, the United Kingdom, Switzerland, and elsewhere.

Even if there were sufficient information to evaluate HNRK's motion, it is an inopportune moment to release the firm from its representation.  Without U.S.-based counsel, it is virtually certain that fact discovery will be further delayed.  And HNRK should not be permitted to withdraw until a mechanism of service on the Khrapunovs — whether through substitute counsel or otherwise — is established.

In short, while the Kazakh Entities are sympathetic to HNRK's situation, their clients are too untrustworthy for HNRK to be permitted to withdraw immediately.

## BACKGROUND

On April 20, 2018, HNRK moved to withdraw as attorneys of record for defendants Ilyas and Viktor Khrapunov. [ECF No. 619].  In a declaration supporting that motion (the "Kenney Decl."), HNRK represented that it "has not been paid for [its] work in many months," Kenney Decl. at ¶ 2, and that while "HNRK has received some of its fees, there is a significant unpaid balance." *Id*. at ¶4 [ECF No 620].  In a footnote, HNRK claimed that they have not provided further information on the financial details of their request to withdraw in order to "preserve confidentiality." *Id*. at 2, n.1.

HNRK does not explain the Khrapunovs' position on the unpaid fees or whether the Khrapunovs intend to retain replacement counsel. Neither does HNRK indicate whether the Khrapunovs are currently in communication with HNRK regarding the litigation generally, whether the Khrapunovs are financially able to make payment on the "unpaid balance," or how HNRK has received payment in the past.

2

HNRK's motion to withdraw was filed two days after the Kazakh Entities moved to compel disclosures from the Khrapunovs based on misrepresentations regarding the so-called "Kazaword" stolen documents [ECF No. 616], and one day after HRNK had filed a response admitting that they had made representations regarding the Kazaword documents that were incorrect or inadequate, and acknowledging that their clients had not fully produced a set of documents that the Court had ordered produced. [ECF No. 618].

Fact discovery is coming to an end.  While the Plaintiffs have moved to extend the fact discovery period, principally to accommodate the depositions of remaining key witnesses — in particular Gennady Petelin, Mukhtar Ablyazov, Leila Khrapunova, and a confidential witnesses recently identified by the Kazakh Entities — and any discovery arising from the same [ECF No. 636], the burden of completing discovery will be modest.

## ARGUMENT

HNRK's motion to withdraw should be denied without prejudice to renewal with proper evidentiary support.  Assuming HNRK is able to make such a showing, in order to permit this litigation to move forward, HNRK should not be permitted to withdraw until (1) fact discovery closes and (2) a reliable method of service on the Khrapunovs is established.

### A.    Legal Standard

"The Court has considerable discretion in deciding a motion for withdrawal of counsel." *Spadola v. N.Y. City Transit Auth.*, No. 00–3262, 2002 WL 59423, at *1 (S.D.N.Y. Jan. 16 2002).  Among other factors, district courts typically "consider whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel.'"  *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 Civ. 6469 (DAB) (JCF), 2011 WL 672245, at *2 (S.D.N.Y. Feb. 17, 2011) (quoting *Whiting v. Lacara*, 187 F.3d 317, 320–21 (2d Cir.1999)).  In addition, a court

may consider "the protracted history of the litigation" and any prior motions for withdrawal having been granted to prior counsel when deciding when or if to permit an attorney to withdraw. *See Mario Valente Collezioni, Ltd. v. Semeraro*, No. 02–196, 2004 WL 1057790 (S.D.N.Y. May 10, 2004).

### B.      HNRK's Motion to Withdraw Should be Denied Without Prejudice

Nonpayment of fees is sometimes a basis for a lawyer to withdraw from a representation. However, "courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel." *United States v. Parker*, 439 F.3d 81, 104 (2d Cir.2006) (quoting *In re Albert*, 277 B.R. 38, 50 (Bankr. S.D.N.Y. 2002)).  "[I]n the absence of proof that an attorney's client is truly unable to fulfill the payment obligations in question, courts have found non-payment of attorney's fees alone not to be a sufficient basis for withdrawal."  *S.E.C. v. Gibraltar Glob. Sec., Inc.*, No. 13 CIV. 2575 GBD JCF, 2015 WL 2258173, at *2 (S.D.N.Y. May 8, 2015).

Here, there is no proof that the Khrapunovs are truly unable to pay HNRK's fees, and every reason to believe that their non-payment is strategic. *See Ellis v. Jean*, No. 10 CIV. 8837 AJN KNF, 2013 WL 662454, at *1 (S.D.N.Y. Feb. 20, 2013) (denying motion to withdraw where no affidavit "showing [client's] financial resources and demonstrating his inability to pay for legal services was submitted to the Court").  Nor is there evidence of the amount that remains outstanding or the length of time the Khrapunovs have been delinquent.  *See id.* (denying motion to withdraw where "neither the exact amount of the fees and disbursements or the length of time [client] has been delinquent in paying them is reported by [counsel]").  In short, HNRK's barebones assertion that they have an unpaid balance is simply not enough for the Court to grant

HNRK's motion to withdraw at this time.[1]

This is particularly the case where, as here, the allegedly derelict client has already been sanctioned for, among other things, trying to deceive the Court.  The Court should give particularly close scrutiny to any evidence supporting HNRK's application, for at least five reasons:

First, Ilyas Khrapunov "has played games with this Court in the past."  [ECF No. 564 at 12].  HNRK's motion to withdraw cannot be considered in a vacuum; it must be considered in the context of these past "games."  To ensure that the Khrapunovs are not using HNRK as a pawn in its broader effort to delay or undermine this litigation now that it has turned against the Khrapunovs, the Court must require a robust evidentiary disclosure with respect to the Khrapunovs' nonpayment of fees.

Second, Ilyas Khrapunov recently stated under oath that ███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████  This raises serious questions as to whether Ilyas Khrapunov is "truly unable" to pay HNRK, or whether the Khrapunov family has simply chosen to move and disguise their assets yet again.

Third, the Khrapunovs continue to litigate, with counsel, at least two other cases in the

---

[1]      *See Rophaiel v. Alken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 306457, at *1–2 (S.D.N.Y. June 7, 1996) (requiring financial statements from corporate client and tax returns from individual clients demonstrating inability to pay before considering withdrawal motion); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2017 WL 5067432, at *7 (S.D.N.Y. May 9, 2017) (conditioning withdrawal on production of communications between counsel and client concerning payment and retainer agreements); *see also Gibraltar Glob. Sec.*, 2015 WL 2258173, at *2 (motion to withdraw insufficient where "firm has not specified how much [clients] currently owe in fees, submitted affidavits accounting for the clients' current assets, or provided any evidence of the clients' future inability to pay other than Mr. Davis' one-page affidavit, which is devoid of any detail").

United States and in neither case does it appear that the Khrapunovs are unable to pay their

attorneys from Boersch Shapiro LLP.  *See Republic of Kazakhstan v. Ketebaev*, No. 17-cv-00246

(N.D. Cal.);[2] *City of Almaty v. Khrapunov*, No. 15-cv-02628-FMO-CW (ECF No. 32) (C.D.

Cal.).[3]  In addition, Ilyas Khrapunov continues to be represented in Swiss proceedings and in the

United Kingdom courts – as the Court may recall, he originally sought to de-designate Kenges

Rakishev's confidential deposition testimony so that he could use it in his U.K. litigation.

Fourth, HNRK has represented a number of other Khrapunov-adjacent parties in this and

related litigation.  Those parties include — that we know of — Elvira Khrapunova (sister of Ilyas

and daughter of Viktor Khrapunov), entities controlled by the Khrapunov family, non-party

Arnie Herz and his law firm, and most notably, Gennady and Elena Petelin — the purported

funders of the investments at the center of this case. *See* 11/17/17 Hr'g Tr., at 36:14-19, 49:21-

50:23. HNRK has not revealed whether any of the Khrapunovs' unpaid fees are related to those

other clients, whether those other clients have alternative sources of funding, or how any failure

by the Khrapunovs to pay for HNRK's work for those other clients has affected HNRK's ability

to continue representing the Khrapunovs in this case. The Kazakh Entities note that Petelin's

new counsel in this action, Eugene Illovsky, is identified as "affiliated Counsel" with Boersch

Shapiro LLP, the Khrapunovs' counsel in the pending actions in California. *See*

https://boerschshapiro.com/attorneys/ (last accessed May 5, 2018). This suggests that the

---

[2]     Only Ilyas Khrapunov is a defendant in *Republic of Kazakhstan*.

[3]     The Khrapunovs' previous counsel in the *City of Almaty* case moved to withdraw due to
nonpayment of fees in August 2015 and were replaced more than two years after moving to
withdraw by Boersch Shapiro.  Notice of Motion and Motion for Leave to Withdraw as Counsel
at 1, *City of Almaty v. Khrapunov*, No. 15-cv-02628-FMO-CW (ECF No. 32) (C.D. Cal. Aug.
31, 2015); Request for Approval of Substitution or Withdrawal of Counsel, *City of Almaty v.
Khrapunov*, No. 14-cv-03650-FMO-FFM (ECF No. 151) (C.D. Cal. Sept. 6, 2017).

Khrapunovs are not only capable of paying their own legal fees, but that they may be paying Mr. Petelin's legal fees as well – so the Khrapunovs may well be paying for a non-party to litigate in this very case, even as their counsel seeks to withdraw for nonpayment.

Fifth, the Khrapunovs have been sanctioned $225,013.30 for their earlier flouting of the Court's orders.  [ECF No. 628, at 18].  Without more evidence, there is no way of knowing whether the Khrapunovs in fact cannot pay their lawyers, or whether they are now declining to transfer money into the United States to pay their lawyers because they do not want to set a precedent that could be used against them when the Kazakh Entities seek to collect this award. Allowing HNRK to withdraw without any disclosure about how and from where they have been paid would reward the Khrapunovs for their continued bad behavior.[4]

For all of these reasons, HNRK's motion to withdraw should be denied without prejudice to renewal when supported by evidence detailing the circumstances of the Khrapunovs' non-payment of fees.

### C.   HNRK Should Not Be Permitted to Withdraw Before the Close of Fact Discovery and the Establishment of a Mechanism to Serve the Khrapunovs

Even if HNRK is able at some point in the future to supply sufficient evidence to support their motion to withdraw, they should not be permitted to withdraw before fact discovery closes and a mechanism is established for service on the Khrapunovs.  Otherwise, HNRK's withdrawal will simply delay this case to the prejudice of everyone else involved.

#### 1.   *Counsel's Unconditional Withdrawal Would Delay this Action*

HNRK's unconditional withdrawal would seriously delay the progress of this case. HNRK claims their withdrawal will not disrupt this case because, "[a]lthough fact discovery is

---

[4] HNRK has recently suggested that Ilyas Khrapunov is only willing to pay these sanctions if he can do so in quarterly installments, raising even more questions about the Khrapunovs' ability to make pay their counsel here.

nearly complete, a trial date has not yet been set." Kenney Decl., ¶ 9.  "[W]here discovery has not yet closed and trial is months away, the impact of withdrawal is typically not substantial enough to counsel against it." *Gibraltar Glob. Sec., Inc*., 2015 WL 2258173, at *3.  But that is not the case where, as here, a party *has been responsible* for past delays in discovery, and thus cannot be trusted to move the case along expediently once counsel has withdrawn. *See id.* at *4 (stating "[i]t would be inappropriate to reward these dilatory tactics and Mr. Davis' disregard for the court's authority by granting a withdrawal motion at this time" and collecting cases denying withdraw motions for parties that disobeyed discovery orders).

It is not clear whether the Khrapunovs intend to retain new counsel, or even whether they will continue to defend themselves.  If the Khrapunovs have chosen to no longer participate in this action, HNRK should state as much and remain as counsel until a judgment is entered.  *See Worldvision Enterprises, Inc. v. Ricklis Broad. Corp*., No. 95 Civ. 10253 (HWB) (NRB), 1996 WL 148340, at *1 (S.D.N.Y. Apr. 2, 1996) (noting if defendant opted not to retain new counsel to defend it, "a default judgment may be entered against it"); *Mario Valente Collezioni*, 2004 WL 1057790, at *1 (considering "protracted history of this litigation" and apparent unwillingness of defendant to participate in discovery, "this Court is unwilling to relieve counsel without ensuring that defendants are represented during the procedures for entry of a judgment").

If the Khrapunovs intend to continue defending this case without counsel, the likelihood of delay is obvious and virtually incontestable.  Without HNRK, the parties will be left to rely on the Khrapunovs to complete their own document discovery, but the record proves they cannot be trusted to do that.  Nearly all of the Khrapunovs' document discovery to date was produced under the threat of a motion to compel – often after such motions have been filed, and the Khrapunovs' productions have been proven to be incomplete.  More than a year into discovery,

HNRK was forced to admit that it had not even collected documents from its clients, because they had been relying on the Khrapunovs to do so. *See* 2/12/2018 Hr'g Tr., at 62:6-12 ("THE COURT:  Why didn't these 3,000 or so hits from your email search  . . .  why didn't that happen six months ago? MR. KENNEY:  We didn't do a search six months ago. **We relied on Ilyas to do it.**" (emphasis added)).  The Khrapunovs still have critical document discovery outstanding; most prominently, despite repeatedly claiming that he acted as an agent for Gennady Petelin when moving hundreds of millions of dollars, Ilyas Khrapunov has not produced communications between himself and Petelin.  Allowing HNRK to withdraw before those document production issues are resolved will simply reward the Khrapunovs for hiding evidence.

Moreover, while HNRK is correct that fact discovery will likely be completed in the coming months, key depositions remain, including the depositions of Ablyazov and Petelin — the key witness to the Khrapunovs' defense (whom HNRK previously represented as well). HNRK also must provide Leila Khrapunova for a deposition, as their clients have offered to do, subject to agreed-upon Swiss law procedures.  Given the lengthy and costly proceedings to date, the parties should not be forced to conduct these important depositions without counsel for the Khrapunovs.  Indeed, the Khrapunovs can elect not to send HNRK to the depositions if they do not want to pay lawyers to attend them, but all of the parties to this case need a U.S.-based legal contact for the Khrapunovs to facilitate deposition logistics.

Finally, the Court's recent finding that the Khrapunovs violated the protective order by leaking confidential discovery material [ECF No. 564] all but ensures that certain discovery going forward will need to occur on an Attorney-Eyes Only basis. Permitting fact discovery to proceed while the Khrapunovs litigate without counsel would eliminate this safeguard and greatly increase the likelihood that the protective order in this case will be violated again. While

7

HNRK can be trusted to respect this Court's orders, the Khrapunovs plainly cannot.

If the Court needs an example of how this case may unfold absent HNRK, it need only examine the conduct of defendant Ablyazov, who has represented himself *pro se* since his own counsel withdrew, also for nonpayment of fees. Ablyazov has appeared for court conferences intermittently and unreliably, has flatly ignored his meet-and-confer obligations, has violated court orders, has refused to produce a single document, has taken months to respond to simple discovery requests, and has taken to sending discovery correspondence directly to the Court instead of to the parties [*see, e.g.,* ECF No. 510], all while doing nothing whatsoever to facilitate his own outstanding deposition.  In short, Ablyazov has done everything possible to frustrate this case since his lawyers were permitted to withdraw.  To prevent his co-conspirators from delaying this case in the same manner, the Court should require HNRK to remain in the case until fact discovery is completed. *See Skyline Steel, LLC v. PilePro, LLC,* No. 13 Civ. 8171 (JMF), 2015 WL 1000145, at *2 (S.D.N.Y. Mar. 5, 2015) (denying counsel's withdrawal for nonpayment of fees until after the close of fact discovery); *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co*., No. 91 CIV. 3644(CES), 1993 WL 147560, at *2 (S.D.N.Y. Apr. 30, 1993) (withdrawal conditioned on appearance of new counsel so discovery could proceed); *Commercial Agropequaria Menichetti Fuente, S.A.C.I. v. Heather Trading Corp*., No. 85 CIV. 3240 (RWS), 1986 WL 10715, at *1 (S.D.N.Y. Sept. 18, 1986) (conditioning withdrawal on completion of discovery within 90 days).

While completing discovery in this action may impose a burden on HNRK, this was a risk the firm must have foreseen when it accepted this engagement.  The Khrapunovs' have a public history of refusing to pay their lawyers.  For example, they refused to pay their initial counsel in the California action between the Khrapunovs and the City of Almaty, leading their

counsel there to withdraw, eventually to be replaced by the firm that continues to represent the Khrapunovs. *See* Notice of Motion and Motion for Leave to Withdraw as Counsel at 1, *City of Almaty v. Khrapunov*, No. 15-cv-02628-FMO-CW (ECF No. 32) (C.D. Cal. Aug. 31, 2015). HNRK was plainly following this litigation, as it referenced it in earlier filings in this case.  [*See, e.g.*, ECF No. 208 ("Almaty is pursuing civil claims against Viktor and Ilyas, among others, and as recently as this past weekend served notice on Ilyas's sister and brother-in-law in California that it will pursue claims against them in Switzerland as well.")].  HNRK knew or should have known what they were in for when they agreed to represent the Khrapunovs, and it is HNRK, not the other parties to this action, that should bear the burden of their clients' conduct.  *See S.E.C. v. Great Am. Techs., Inc.,* No. 07 CIV. 10694 (DC), 2009 WL 4885153, at *5 (S.D.N.Y. Dec. 15, 2009) ("[W]hen Hopp signed on to represent GAT, it knew that GAT's prior counsel had withdrawn. It knew also that GAT had not complied with its discovery obligations. Hopp entered the engagement with eyes wide open.").

For all of these reasons, HNRK should not be permitted to withdraw prior to the close of fact discovery.  *See Beshansky v. First Nat. Entm't Corp*., 140 F.R.D. 272, 274 (S.D.N.Y. 1990) ("Plaintiffs have expressed an understandable interest in moving this case toward completion in a timely fashion. Thus the Court finds it necessary to impose restrictions on defendants' counsel before his withdrawal can be considered complete.").

### 2. *Any Withdrawal Should be Conditioned on Establishing a Means of Service on the Khrapunovs*

HNRK's withdrawal should also be conditioned on the establishment of an efficient means of service on the Khrapunovs, pending appearance by substitute counsel. *See Century Jets Aviation, LLC v. Alchemist Jet Air, LLC,* No. 08 Civ. 9892 (PKL)(KNF), 2009 WL 4035642, at *3 (S.D.N.Y. Nov. 23, 2009) (conditioning withdrawal on defendant's acceptance of service at a

specific address until new counsel appeared). As the Court recognized when counsel for Ablyazov moved to withdraw [ECF No. 393], the Court may permit HNRK's withdrawal on the condition that HNRK serve as an agent for service of process on the Khrapunovs until new counsel appears. *See Marfia v. T.C. Ziraat Bankasi*, 874 F. Supp. 560, 563 (S.D.N.Y. 1994) ("Leave to withdraw, however, is conditioned on White & Case remaining Ozman's agent solely for the purpose of receiving papers in connection with this lawsuit."), *overruled on other grounds*, 100 F.3d 243 (2d Cir. 1996). The Court should require HNRK to remain in the case until a means of effecting service on the Khrapunovs is established — and the Khrapunovs have confirmed their agreement to the same in writing.[5]

## CONCLUSION

The Court should deny HNRK's motion to withdraw without prejudice to renewal with evidentiary support detailing the circumstances of the Khrapunovs' non-payment of fees. The Court should further condition HNRK's withdrawal on the completion of fact discovery and the establishment of a means of service on the Khrapunovs.

Dated:　New York, New York
　　　　May 10, 2018

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz
Peter M. Skinner

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

---

[5]　Assuming that HNRK remains in the case at least as an agent for service of court papers, HNRK also should remain counsel of record in the Court's ECF system, so that its lawyers will continue to get real-time ECF notices.