**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   No. 15-cv-05345 (AJN) (KHP) |
| MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV, VIKTOR KHRAPUNOV and TRIADOU SPV S.A., | ) ) ) ) ) |
| Defendants. | ) ) |

**THE KAZAKH ENTITIES' OPPOSITION TO TRIADOU SPV S.A.'S MOTION FOR**
**PARTIAL JUDGMENT ON THE PLEADINGS**

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Crossclaim Plaintiffs City of
Almaty, Kazakhstan and BTA Bank*

1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

    I.     THE MOTION SHOULD BE DENIED AS PROCEDURALLY IMPROPER .. 2

    II.    TRIADOU'S MOTION SHOULD BE DENIED ON THE MERITS .................. 7

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Adamson v. Armco Inc.*,
  No. 92 CIV 114, 1995 WL 271632 (D. Minn. Feb. 16, 2003) ............................................... 10

*Adar Bays, LLC v. Aim Expl., Inc.*,
  285 F. Supp. 3d 698 (S.D.N.Y. 2018) ....................................................................................... 4

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*,
  No. 11-cv-3238 (ALC) (GWG), 2015 WL 545565 (S.D.N.Y. Feb. 9, 2015) ........................ 14

*Fed. Leasing, Inc. v. Xyram Corp.*,
  No. 87 CIV. 5414 (MJL), 1989 WL 37674 (S.D.N.Y. Apr. 11, 1989) .................................... 7

*Gioconda Law Grp. PLLC v. Kenzie*,
  941 F. Supp. 2d 424 (S.D.N.Y. 2013) ....................................................................................... 4

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) ........................................................................................................ 6

*Hecklerco, LLC v. YuuZoo Corp. Ltd.*,
  258 F. Supp. 3d 350 (S.D.N.Y. 2017) ....................................................................................... 3

*In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*,
  865 F. Supp. 2d 469 (S.D.N.Y. 2012) ....................................................................................... 6

*In re Campbell*,
  539 B.R. 66 (S.D.N.Y. 2015) ..................................................................................................... 3

*In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig.*,
  208 F.R.D. 493 (S.D.N.Y. 2002) ............................................................................................... 5

*In re Yerushalmi*,
  2009 WL 2982964 (Bankr. E.D.N.Y. Sept. 14, 2009) ....................................................... 8, 11

*JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Svcs., Inc.*,
  295 F. Supp. 2d 366 (S.D.N.Y. 2003) ..................................................................................... 11

*Kertesz v. Gen. Video Corp.*,
  No. 09-CV-1648 (GBD), 2010 WL 11506390 (S.D.N.Y. Mar. 31, 2010) ............................... 4

*Kessler v. Colvin*,
  48 F. Supp. 3d 578 (S.D.N.Y. 2014) ......................................................................................... 4

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
  570 F.3d 471 (2d Cir. 2009) ...................................................................................................... 6

*LiveIntent, Inc. v. Naples*,
  293 F. Supp. 3d 433 (S.D.N.Y. 2018) ....................................................................................... 5

*Norwood Group, Inc. v. Phillips*,

828 A.2d 300 (N.H. 2003) ................................................................................ 11, 12

*Odom v. Sielaff*,
 No. 90 CIV. 7659 (PKL), 1993 WL 17441 (S.D.N.Y. Jan. 21, 1993) ...................................... 3

*Sellers v. M.C. Floor Crafters, Inc.*,
 842 F.2d 639 (2d Cir. 1988) ........................................................................... 4

*Teitelbaum v. Lay Siok Lin*,
 423 F. App'x 106 (2d Cir. 2011) ..................................................................... 7

*Telenor Mobile Commc'ns AS v. Storm LLC*,
 351 F. App'x 467 (2d Cir. 2009) ..................................................................... 7

*U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
 152 F. Supp. 2d 443 (S.D.N.Y. 2001) .............................................................. 5

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
 608 F. Supp. 1261 (S.D.N.Y. 1985) ........................................................ 8, 9, 10

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
 933 F.2d 131 (2d Cir. 1991) .......................................................... 8, 9, 13, 14

The City of Almaty and BTA Bank (together, the "Kazakh Entities") respectfully submit this memorandum of law in opposition to the Motion for Partial Judgment on the Pleadings filed by defendant Triadou SPV S.A. seeking dismissal of the Kazakh Entities' Unjust Enrichment, Conversion, and Constructive Trust claims against Triadou (the "Common Law Claims"). [ECF Nos. 666-667].

## PRELIMINARY STATEMENT

Triadou's motion – which is effectively a motion to reconsider the Court's prior order denying the very same relief – is procedurally and substantively defective. The motion is premised on alter ego allegations Triadou itself disputes, ignoring a mountain of precedent making clear that motions for judgment on the pleadings must be based on undisputed facts. Triadou's motion also rests on legal conclusions that the Court cannot accept at this stage, and must construe against Triadou and in the Kazakh Entities' favor. Even if Triadou's motion were procedurally proper, Triadou's substantive arguments are based on a complete misreading of just three cases. In fact, applying the precedent Triadou has cited leads to only one conclusion: the Court should broadly read the Second Amended Crossclaims to foster enforcement of the Kazakh Entities' judgments – including by reinstating their previously-dismissed alter ego claim.

The reality is that Triadou is desperate. It has now tried five separate times to dismiss the Kazakh Entities' claims on legal grounds, while producing virtually no evidence in its favor in discovery. The facts are certainly against Triadou: this Court has already found that the Kazakh Entities are "unquestionably" likely to succeed on at least some of the Common Law Claims; Triadou's sole director has already been found by this Count not to be credible; and its former controlling owner, Ilyas Khrapunov, was recently found not to be credible and was sanctioned by Judge Parker. [ECF No. 564]. Put another way, things look grim for Triadou. Instead, Triadou

1

has recommitted itself to its original strategy of moving the funds in controversy overseas so that any judgment against it will be effectively unenforceable. If the Motion is granted, Triadou is certain to immediately launch motion practice to vacate this Court's attachment of its assets (including approximately $23 million held by a state court-appointed monitor) and lay claim to the undertaking Plaintiffs posted upon attachment, and then move these funds overseas as quickly as possibly – rendering Triadou judgment-proof before trial begins. The Court should reject yet another scheme by Triadou to remove the funds in controversy from this jurisdiction.

## **BACKGROUND**

On October 12, 2015, the Kazakh Entities filed Crossclaims against Triadou, as well as Mukhtar Ablyazov, Ilyas Khrapunov, and Viktor Khrapunov. [ECF No. 49]. Triadou moved to dismiss the Crossclaims on December 18, 2015 [ECF No. 84], and the Court granted Triadou's motion to dismiss in part on June 21, 2016, dismissing the Kazakh Entities' Alter Ego and Replevin claims [ECF No. 174], while also granting the Kazakh Entities' motion to attach Triadou's assets in New York. [ECF No. 175].

Almost immediately afterwards, the Individual Defendants appeared in the action – even though they had been served months prior and certain of them were in default – and sought to move to dismiss the Crossclaims. In response to the motions to dismiss filed by the Individual Defendants, on August 25, 2016, the Kazakh Entities gave notice to the Court that they intended to amend their Crossclaims, in accordance to the Court's Individual Practice 3.F. [ECF No. 213]. Triadou opposed the Kazakh Entities' amendment of the Crossclaims, arguing that the Kazakh Entities should not be allowed to amend or add any allegations relating to Triadou, on the grounds that Triadou had already moved to dismiss once, and had a motion to dismiss pending on RICO domestic injury grounds, faulting the Kazakh Entities for not having amended the

Crossclaims earlier. [ECF No. 213-01].

The Court granted Triadou's request on August 26, 2016, and limited the Kazakh Entities' amendment of the Crossclaims solely to the Individual Defendants [ECF No. 214] – effectively closing the pleadings as to Triadou at that time. The Kazakh Entities then filed their First Amended Crossclaims ("FAC") on September 7, 2016. [ECF No. 219]. Triadou promptly moved to strike a series of allegations in the FAC based on the Court's granting of its request to limit any amendment of the Crossclaims. [ECF No. 223]. In particular, Triadou sought to strike the allegation in the FAC that

> Triadou is the alter ego of the Ablyazov-Khrapunov Group, and is thus liable for all current and future obligations against the Ablyazov-Khrapunov Group. Maintaining the separateness of Triadou and its alter ego, the Ablyazov-Khrapunov Group, would allow the Ablyazov-Khrapunov Group to avoid otherwise enforceable obligations and would be highly inequitable to the people of the city of Almaty and BTA Bank.

[ECF No. 219, ¶ 199]. Triadou admitted that this allegation "closely track[ed] the allegations in the original Crossclaims advancing Almaty/BTA's now-dismissed Alter Ego claim" [ECF No. 223, at 2], but nonetheless argued that paragraph 199 was "an end-run around the August 26 Order limiting the scope of Almaty/BTA's amendments" and that "the allegation attempts to revive Almaty/BTA's dismissed Alter Ego claim." *Id*., at 2-3.

The Individual Defendants moved to dismiss the FAC on a range of grounds, including the statute of limitations. On September 26, 2017, the Court granted in part and denied in part the Individual Defendants' motions to dismiss, and ordered further briefing on the statute of limitations question. [ECF No. 426]. At the same time, the Court granted Triadou's motion to strike paragraph 199 of the FAC, which alleged that Triadou was an alter ego of the Ablyazov-Khrapunov Group. [ECF No. 426, at 41].

On March 27, 2018, the Court granted the Individual Defendants' motions to dismiss the Kazakh Entities' unjust enrichment, conversion, and constructive trust claims based on the statute of limitations. [ECF No. 592]. Triadou promptly sought "clarification" of the Court's March 27 Order on April 2, 2018, arguing that the Common Law Claims against Triadou must also be dismissed because "the reasoning underlying the Court's holding appears to apply to all defendants" and "to interpret the dismissal as applying to all defendants is consistent with the Court's prior dismissal of other claims, including Almaty/BTA's alter ego and replevin claims." [ECF No. 602]. The Court denied Triadou's "clarification" motion on April 5, 2018, confirming that its dismissal order applied to the Individual Defendants and not to Triadou. [ECF No. 607].

On May 11, 2018 Triadou moved for reconsideration – styled as a motion for judgment on the pleadings – seeking again to "dismiss Almaty/BTA's claims for unjust enrichment, conversion, and constructive trust against Triadou." [ECF No. 666].

## ARGUMENT

Triadou's motion should be denied for any one of three independent procedural defects, as well as on its merits.  Procedurally: (1) Triadou's motion amounts to reconsideration of its previous efforts to "clarify" the Court's order dismissing the Common Law Claims against the Individual Defendants on statute of limitations grounds, and thus advances new arguments and theories that should be rejected as improper bases for reconsideration [ECF No. 602]; (2) Triadou's motion is premised on facts Triadou itself has disputed, and motions for judgment on the pleadings are only appropriately based on undisputed facts; and (3) Triadou's motion takes as true legal conclusions in the Second Amended Crossclaims ("SAC"), which cannot be the basis for judgment on the pleadings.

Substantively, Triadou badly misunderstands the few cases it cites in support of its

4

motion. Triadou selectively pulls quotes from three cases to conclude that claims must always accrue against all alter egos at the same time, but consciously fails to grasp the actual holdings of these cases – all of which actually support the Kazakh Entities' efforts to enforce their judgments here. Triadou's reading of these cases is incorrect, because none of its cited case law articulates a rule supporting's Triadou's position, while all of these cases concern standalone alter ego claims – which have already been dismissed here. More importantly, all three cases involved an effort by a plaintiff to bring a judgment-enforcement action against a corporate alter ego, and in the cases Triadou cites, the court permitted the plaintiff to proceed by applying the twenty-year statute of limitations, over the defendants' suggestions to apply shorter limitations periods. In other words, these cases stand for the proposition that courts should construe the statutes of limitations favorably in support of a plaintiff seeking to enforce a judgment, as the Kazakh Entities are attempting to do in this case.

## I.   THE MOTION SHOULD BE DENIED AS PROCEDURALLY IMPROPER

### A.   Triadou is Seeking Reconsideration and Must Be Held to The Higher Standard for Reconsideration

This Motion is Triadou's second attempt to latch onto the dismissal of the Common Law Claims as against the Individual Defendants, and as such, should be held to the higher standard applied in this District to motions for reconsideration.

After affirmatively moving to and successfully closing the pleadings as to itself and striking certain of the Kazakh Entities' allegations regarding Triadou's status as an alter ego, [ECF No. 223], Triadou sat back and watched the Individual Defendants' motion to dismiss – making a tactical decision not to join those motions to dismiss on statute of limitations grounds. When those motions were granted, however, Triadou immediately sought dismissal of the Common Law Claims as against itself, framing this effort as a motion for "clarification." This

so-called clarification motion, however, sought the very same relief Triadou is seeking now –

dismissal of the Common Law Claims, on the grounds that Triadou is an alleged alter ego of the

Individual Defendants. *See Odom v. Sielaff*, No. 90 CIV. 7659 (PKL), 1993 WL 17441, at *1

(S.D.N.Y. Jan. 21, 1993) (construing request "as a motion for reargument or reconsideration in

light of denial of a previous application for the same relief.")

      Even accepting that Triadou was somehow baffled as to whether the claims against it

were dismissed where it had not moved to dismiss them, Triadou had no excuse for failing to

bring its current alter ego arguments at that time. In fact, Triadou has had every opportunity to

make its alter ego arguments at any point in the nearly two years since it successfully closed the

pleadings against it. Instead it chose to try and chip away at the Kazakh Entities' claims with

motions to dismiss on jurisdictional and domestic injury grounds, while lying in wait to see how

the Court would rule on the Individual Defendants' statute of limitations arguments.

      In this District, reconsideration is governed under Local Rule 6.3. Reconsideration is "not

a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing

on the merits, or otherwise taking a second bite at the apple...." *Hecklerco, LLC v. YuuZoo Corp.

Ltd.*, 258 F. Supp. 3d 350, 356 (S.D.N.Y. 2017) (citing *Analytical Surveys, Inc. v. Tonga

Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). A party cannot "advance new facts or

arguments" on reconsideration, and "the standard for granting motions to reargue is strict." *In re

Campbell*, 539 B.R. 66, 76 (S.D.N.Y. 2015).

      Triadou chose to test the waters by initially seeking dismissal of the Common Law

Claims framed as a motion for clarification, and as a result, got a sneak preview of the Kazakh

Entities' response – not to mention a clear ruling from the Court. [ECF No. 605]. But the Federal

Rules do not allow parties to move in half-steps. Triadou has had ample time and opportunity to

3

move to dismiss the Common Law Claims on alter ego grounds, and has chosen not to do so in any of its four prior motions to dismiss [ECF Nos. 84; 188; 268; 604]. It cannot present new arguments now.

### B.    Triadou's Motion Must Fail Because it is Premised on Disputed Facts

"Judgment on the pleadings is appropriate *where material facts are undisputed* and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639, 642 (2d Cir. 1988) (emphasis added); *see also Adar Bays, LLC v. Aim Expl., Inc*., 285 F. Supp. 3d 698, 701 (S.D.N.Y. 2018) ("Disposition of a litigation on the pleadings is appropriate where material facts are undisputed" (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04-cv-10014, 2005 WL 1950116, at *3 (S.D.N.Y. Aug. 12, 2005));  *Kertesz v. Gen. Video Corp*., No. 09-CV-1648 (GBD), 2010 WL 11506390, at *2 (S.D.N.Y. Mar. 31, 2010) ("A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is designed to provide a means of disposing of cases when the material facts are not in dispute"); *Kessler v. Colvin*, 48 F. Supp. 3d 578, 589 (S.D.N.Y. 2014) ("Under Rule 12(c), judgment on the pleadings is appropriate when the material facts are undisputed"). "The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013) (quoting Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed. 1998)).

Here, the very same allegations Triadou relies on for its motion are those Triadou itself denied in its answer, making them plainly disputed.[1] *Compare* Mot. at 4 (citing paragraph 85 of

---

[1]      On a motion for judgment on the pleadings, a court considers the pleadings as a whole, including the defendant's answer. *See LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 441

FAC), *with* ECF No. 445 at ¶ 85 (denying same allegation); Mot. at 6 (citing paragraph 58 of FAC), *with* ECF No. 445 at ¶ 58 (denying same allegation); Mot. at 11 (citing paragraphs 86-87 of SAC), *with* ECF No. 445 at ¶ 86-87 (denying same allegation). Triadou has denied the very same allegations it now seeks to base its motion on – so these allegations cannot plausibly be considered "undisputed." As such, they cannot be the basis for judgment on the pleadings.

While Triadou argues that the Court should "accept[] all of the non-movant's factual allegations as true" (Mot. at 7), it ignores the fact that Courts in this circuit are obliged to do so only where such facts are not in dispute. *See In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig*., 208 F.R.D. 493, 500 (S.D.N.Y. 2002) ("On a motion for judgment on the pleadings, all matters plead in the complaint *that are not in dispute* must be accepted as true" (emphasis added)); *Gioconda Law Grp*., 941 F. Supp. at, 426–27 ("[A] party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved").

This is because courts will not grant a motion for judgment on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp*., 152 F. Supp. 2d 443, 448 (S.D.N.Y. 2001).  Here, it is entirely possible that the finder of fact might hold that Triadou is not an alter ego of Ablyazov, while still finding Triadou liable for conversion, constructive trust, or unjust enrichment. Indeed, this is squarely in line with the Court's decision granting attachment of Triadou's assets, finding that "[t]he evidence submitted

---

(S.D.N.Y. 2018) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011))).

by [the Kazakh Entities] unquestionably demonstrates that it is probable that [they] will succeed on the merits of their unjust enrichment claim" [ECF No. 175, at 22 (internal quotation marks omitted)], without reaching the question of Triadou's alter ego status at all.  As the Court's attachment order demonstrates, there is certainly a "set of facts . . . that would entitle the plaintiff to relief" – whether or not Triadou is an alter ego of Ablyazov – so Triadou's Motion must be denied.

That being said, if Triadou is willing to stipulate for all purposes that it is an alter ego of the Individual Defendants, the Kazakh Entities would consider dismissing the Common Law Claims against it.  Of course, such a stipulation would immediately make Triadou liable on BTA Bank's multi-billion dollar judgments against Ablyazov – something that it is presumably not willing to do.  Instead, Triadou is trying to have it both ways, by both relying upon and simultaneously disputing the Kazakh Entities' alter ego allegations.  But that is precisely why judgment on the pleadings is only granted on undisputed facts.

## C.   The Court Does Not Take Legal Conclusions as True for Purposes of a Motion for Judgment on the Pleadings

On a motion for judgment on the pleadings, a court "must accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor," but a court "need not accord legal conclusions . . . a presumption of truthfulness." *In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 865 F. Supp. 2d 469, 471–72 (S.D.N.Y. 2012); *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009) ("On a motion to dismiss or for judgment on the pleadings we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. . . We are not bound to accept as true legal conclusions." (internal citations omitted)); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the

6

allegations contained in a complaint, that tenet is inapplicable to legal conclusions"(internal quotation marks omitted)).

Here, Triadou is asking the Court to draw inferences *against* the non-movants (the Kazakh Entities) by accepting as true allegations that Triadou is an alter ego of Ablyazov, even as it otherwise disputes that conclusion. While the question of alter ego is a fact-laden inquiry, it is ultimately a legal conclusion for the Court to make. *See Teitelbaum v. Lay Siok Lin*, 423 F. App'x 106 (2d Cir. 2011) (Summary Order) ("The district court's legal conclusion that Platinum Too was the alter ego of Teitelbaum is reviewed de novo."); *Telenor Mobile Commc'ns AS v. Storm LLC*, 351 F. App'x 467, 469 (2d Cir. 2009) ("We review a district court's legal conclusions in finding alter ego status de novo, and examine its related findings of fact for clear error."); *Fed. Leasing, Inc. v. Xyram Corp.*, No. 87 CIV. 5414 (MJL), 1989 WL 37674, at *1 (S.D.N.Y. Apr. 11, 1989) (Plaintiff's claim that defendants' officer "is the president, principle in fact, and alter ego of Xyram Corporation . . . is a legal conclusion").

The Court is obligated to draw all inferences against Triadou, the movant, and in favor of the Kazakh Entities. *LaFaro*, 570 F.3d at 475. The core of Triadou's motion, however, asks the Court to accept a legal conclusion as true, to the non-movant's detriment, when the Court has no obligation to do so and the law of the Circuit cautions against doing as much. Plaintiffs are entitled to plead in the alternative, but Triadou is asking the Court to pick and choose among those legal conclusions and interpretations in the SAC to harm of the non-movants.

## II.   TRIADOU'S MOTION SHOULD BE DENIED ON THE MERITS

### A.   The Cases Triadou Cites Do Not Apply to Determine When the Claims Against Triadou Accrued

Triadou is desperate to find a way to extend the Individual Defendants' statute of limitations arguments to itself, so that it might lift the Court's attachment order and move its

7

assets overseas before its inevitable loss at trial. In doing so, Triadou badly misreads and mis-cites the few cases it relies upon.

Triadou's entire motion ultimately relies on a grand total of three cases:  the District Court's decision, and the Second's Circuit's subsequent partial affirmance, in *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 608 F. Supp. 1261 (S.D.N.Y. 1985) ("*Passalacqua I*"), *aff'd in part and rev'd in part*, 933 F.2d 131 (2d Cir. 1991); a bankruptcy court decision that relies upon but does not add to *Passalacqua*, *see In re Yerushalmi*, 2009 WL 2982964 (Bankr. E.D.N.Y. Sept. 14, 2009); and a 25-year old District of Minnesota decision.

None of these cases concern common-law claims, such as those Triadou is seeking to dismiss here. Instead, all three specifically relate to standalone alter ego claims in aid of judgment enforcement. This case law plainly provides no support for Triadou's motion, as the Kazakh Entities' alter ego claims have been dismissed, and what remain are specific Common Law Claims that render Triadou liable for its own actions. Further, the cases Triadou cites resulted in the court choosing to apply a *longer* statute of limitations. Finally, Triadou's position would lead to the truly absurd conclusion that alter egos can be created immune from suit, even if they come into existence and take actions that injure plaintiffs within the statute of limitations, as happened here.

### 1.   The Cases Triadou Cites Do Not Apply Where There Are Independent Allegations That Make an Alter Ego Liable

In *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131 (2d Cir. 1991) ("*Passalacqua II*"), the plaintiffs obtained an arbitration award in Florida based on the defendants' breach of contract. The plaintiffs then went around the country trying to enforce the arbitration award (all parties and the underlying conduct was domestic). This eventually led the plaintiffs to file an action for equitable relief to pierce the corporate veil in the Southern District

of New York. Most of the record of the Southern District of New York case and the Second
Circuit appeal are irrelevant to Triadou's motion, but both courts did face a statute of limitations
issue: the alter ego judgment-enforcement action was filed more than six years after the
underlying breach of contract. *Id*. at 142. If the six-year statute of limitations for breach of
contract actions applied to the alleged alter ego, the suit to enforce the judgment against the alter
egos would have been barred – as Triadou suggests. *Id.* But that was not the result the Court
reached.

Instead, the district court concluded that the twenty-year statute of limitations for actions
to enforce a judgment should apply, even though the alter egos were not named in the judgment
to be enforced. The court reasoned that a plaintiff seeking to enforce a judgment may use the
theory of piercing the corporate veil to enforce a judgment against controlling entities of the
named defendants. *Passalacqua I*, 608 F. Supp. at 1264. Therefore, if the plaintiffs were able to
show that the defendants in the judgment-enforcement action were alter egos of the entities that
were obligated to pay the arbitration award, the plaintiffs were not required to re-prove their
breach of contract allegations, so the twenty-year statute of limitations applied. *Id*. This is the
holding the Second Circuit affirmed, noting that if the defendants could be proven to be alter
egos, "the previous judgment is then being enforced against entities who were, in essence, parties
to the underlying dispute." *Passalacqua II*, 933 F.2d at 143. Notably, the Second Circuit opinion
says nothing about claim accrual; the opinion only notes that the more favorable twenty-year
statute of limitations applies to actions to enforce a judgment against an alter ego.[2]

---

[2]      The same result was reached in *In re Yerushalmi*, Bankr. No. 07-72816-478, 2009 WL
2982964, at *6 (Bankr. E.D.N.Y. Sept. 14, 2009). The court there construed "confusing"
arguments favorably for the party seeking to enforce a judgment, finding that the claims were
"based on a creditor's judgment" and so the twenty-year statute of limitations applied.

*Passalacqua II* does not govern this case because the Kazakh Entities do not have a veil piercing or alter ego claim remaining against Triadou – because Triadou successfully had that claim dismissed. Instead, the Kazakh Entities' remaining Common Law Claims against Triadou stand on their own evidence. That is unlike the facts in *Passalacqua I* and *II*, where the only claim the plaintiffs pressed was an equitable veil-piercing claim. *Passalacqua I*, 608 F. Supp. at 1264. The alter ego's liability there was entirely dependent upon the liability of the entities subject to the arbitration award the plaintiffs were attempting to enforce. The SAC, by contrast, contains allegations of actions taken *by Triadou* that render it independently liable for unjust enrichment, conversion, and constructive trust. *See, e.g.,* ECF No. 433 at ¶¶ 11, 97, 104, 111–113, 116, 118, 125.

*Passalacqua I* specifically distinguished its facts from a case in which a "cause of action was established against" a defendant in some capacity other than "as the *alter ego* or instrumentality of the corporation," and noted that scenario would present a "significant difference." *Passalacqua I*, 608 F. Supp. at 1264. Whether or not Triadou is an alter ego of the other defendants is simply beside the point for purposes of Triadou's motion for judgment on the pleadings seeking dismissal of the Common Law Claims.

Put differently, the cases Triadou cites merely stand for the proposition that the twenty year statute of limitation applies for judgment enforcement actions, whether brought against the judgment debtor or an alter ego of the judgment debtor.[3]  That holding has no relevance here. In

---

[3]     Triadou cites only one case that found an alter ego claim was time barred because of when it accrued, but on the basis of a statute of limitations specific to ERISA claims. *Adamson v. Armco Inc.*, No. 92 CIV 114, 1995 WL 271632, at *3 (D. Minn. Feb. 16, 2003). This out-of-circuit, district court opinion applied solely to the alter ego claim, not any common law claims. Moreover, the claims in *Adamson* were again brought solely on an alter ego theory, and failed to allege any independent conduct on the part of the defendant. *See id.* at *5 ("The alter ego claims

this case, where the alter ego engaged in actions that render it liable in its own right, normal rules of claim accrual apply. The claims against Triadou accrued no earlier than November 9, 2012, when Triadou first received illicit funds through the first wire transfer made into New York for its benefit. *See* ECF No. 219, ¶ 133(i). As such, the statute of limitations with respect to Triadou would not run until November 9, 2015 at the earliest – which is one month *after* the original crossclaims were filed. *See* ECF No. 49 (Answer, Cross- and Counterclaims, filed October 12, 2015); *see also* ECF No. 592 at 5–7 (noting that conversion, constructive trust, and unjust enrichment claims accrue upon the occurrence of the wrongful conduct).

### 2. Triadou's Cited Cases Extended the Statute of Limitations and None Concluded that Otherwise Timely Claims Are Barred

As discussed above, the cases Triadou cites concern the issue of what statute of limitations to apply, rather than claim accrual. In these cases the court determined that the longer of the two statutes of limitations applied. As already noted above, the district court in *Passalacqua I* decided that the twenty-year statute of limitations for actions to enforce a judgment applied, rather than the six-year statute of limitations for fraud. *Passalacqua I*, 608 F. Supp. at 1264. The Bankruptcy Court in *In re Yerushalmi* reached the same decision. 2009 WL 2982964, at *6. Later decisions have endorsed this outcome. *See JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. & Trade Svcs., Inc.*, 295 F. Supp. 2d 366, 376 (S.D.N.Y. 2003) (discussing *Passalacqua*); *Norwood Group, Inc. v. Phillips*, 828 A.2d 300, 303 (N.H. 2003) (concluding twenty-year statute of limitations should apply in action to pierce the corporate veil to avoid permitting a defendant to "use the corporate entity as a cloak for fraud" (internal quotation marks omitted)).

---

allege no actionable conduct on the part of Armco other than that of Reserve.").

None of Triadou's cases concluded that a cause of action that would otherwise have been timely was barred because of specific alter-ego claim-accrual rules. In fact, Triadou's cases support the logical principle that the corporate form cannot be abused to avoid liability on statute of limitations grounds.

### 3.   Triadou's theory leads to absurd results.

Triadou's argument that claims against alter egos always accrue at the same time for all purposes leads to absurd results both here and in other cases. In this case, it would render Triadou immune from suit on statute of limitations grounds at the very moment of its creation, if enough time had elapsed from the time of the initial wrongdoing and Triadou's formation.[4] This would be absurd in this case, where, after its formation, Triadou took its own actions that render it liable under the Kazakh Entities' Common Law Claims, as explained above.

Under Triadou's reasoning, Ablyazov could create new shell companies today, use those companies to move and launder funds he has been found to have stolen from BTA Bank, and yet those entities would be immune from suit from the moment he created them, because the original wrongdoing occurred years ago. Triadou would have shell companies like itself enjoy all the protections and benefits of the corporate form (for example, litigating this and other actions in the New York state courts in its own name, rather then Ablyazov's), but none of the legal liability. The law is not so absurd. *See Norwood*, 149 N.H. at 725 (finding that applying shorter statute of limitation period to alter ego "would effectively have permitted the defendants to use the corporate entity as a cloak for fraud.").

---

[4]     In other contexts, courts have noted the relevance of when different alter egos come into existence. *See Court Degraw Theatre, Inc. v. Loew's Inc*, 172 F. Supp. 198, 200 (E.D.N.Y. 1959) (holding that statute of limitations not tolled against a corporate alter ego that "was not even in existence" until after the events that tolled the statute of limitations).

**B.      Applying *Passalacqua I* and *II* Would Actually Lead the Court To Reinstate the Kazakh Entities' Alter Ego Claim Against Triadou by Construing it as a Judgment-Enforcement Claim**

Though *Passalacqua I* and *II* do not determine when the Kazakh Entities' claims against Triadou accrued, the Kazakh Entities agree that the Second Circuit's ruling in *Passalacqua* is binding on this Court – just not in the way Triadou has suggested. Triadou has opened the door and raised this binding precedent, and all parties and the Court must follow it where it leads.

On June 21, 2016 this Court dismissed the Kazakh Entities' alter ego claim against Triadou. [ECF No. 174]. The Court concluded that alter ego was not an independent cause of action in New York and that the Kazakh Entities had not included a claim for a special proceeding under New York C.P.L.R. 5225(b) to enforce a judgment, and could not do so because the judgments against Ablyazov were against him personally, rather than against a corporation he was affiliated with. This holding, however, is contradicted by the authority Triadou has put before the Court in *Passalacqua I* and *II*.

As noted above, the litigation history in *Passalacqua I* is similar to this case: the plaintiff obtained a foreign arbitration award (in that case, from Florida) and tried to enforce it in the Southern District of New York by suing entities related to the arbitration award debtor on an alter ego theory. The district court and the Second Circuit both concluded that the twenty-year statute of limitations for judgment-enforcement actions should apply. The district court noted that the defendants "mischaracteriz[ed]" the plaintiffs' claims and that the proper read of the plaintiffs' alter ego claims was that they were, in reality, judgment-enforcement claims applying a veil-piercing theory. *Passalacqua I*, 608 F. Supp. at 1264. The Second Circuit affirmed this approach. *Passalacqua II*, 933 F.2d at 143.

By bringing these cases to the Court now, Triadou has called attention to this authority, in particular the Second Circuit's decision in *Passalacqua II*. These cases should cause the Court to

13

revisit the decision dismissing the alter ego claim. Whether or not the Kazakh Entities initially

pled a C.P.L.R. 5225 recognition-of-judgment claim, *Passalacqua II* stands for the proposition

that the Kazakh Entities' alter ego claim should have been construed as a standalone judgment-

recognition claim against Triadou on the theory that, as an alter ego of Ablyazov, Triadou is

liable for Ablyazov's judgment debt.[5] The Court is certainly entitled to revisit its past decisions

upon the discovery of new binding precedent – especially precedent called to the Court's

attention by the party against whom the precedent should be applied. *See Chartis Seguros*

*Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11-cv-3238 (ALC) (GWG), 2015 WL

545565, at *2 (S.D.N.Y. Feb. 9, 2015).

    *Passalacqua II* held that alter ego claims that seek to enforce a judgment against a

---

[5]    The Court's other concern with the Kazakh Entities' alter ego claim, that the judgments
against Ablyazov were against him only in his personal capacity, must be considered in light of
*Passalacqua II's* liberal approach to judgment enforcement absent alter egos. Aside from § 5225,
New York courts have long recognized reverse veil piercing to enforce judgments against
individuals to companies they dominate. *See JSC Foreign Econ. Ass'n.*, 295 F. Supp. 2d at 379
("[I]n a reverse veil-piercing claim, the plaintiff must allege (1) that the owner exercised
complete domination over the corporation with respect to the transaction at issue; and (2) that
such domination was used to commit a fraud or wrong that injured the party seeking to pierce the
veil."). Triadou's Motion highlights the very allegations in the SAC that meet this standard. *See*
Mot. at 3 (citing Plaintiffs' allegations "Triadou was allegedly a mere 'investment vehicle that
was wholly owned and controlled by SDG, which was itself a front for the Ablyazov-Khrapunov
Group,' and was operated 'at the direction of the Ablyazov-Khrapunov Group'"); Mot. at 4
(citing Plaintiffs' allegations that Ilyas Khrapunov "founded Triadou on behalf of the Individual
Defendants in approximately 2011 specifically in order 'to mask the Ablyazov Khrapunov
Group's efforts to invest in real estate opportunities in the U.S.'"); Mot. at 6 (citing Plaintiffs'
allegations that "'[b]etween 2008 and 2012, the Ablyazov-Khrapunov  Group and sham
companies they controlled funneled at least $115 million into SDG derived from  the Ablyazov-
Khrapunov Group's self-dealing and fraud."). Triadou's own Motion makes it abundantly clear
that Plaintiffs have adequately pleaded a reverse veil-piercing claim against it, and under
*Passalacqua II* the Court is obligated to construe the pleadings liberally in favor of judgment
enforcement.
    In any event, the Kazakh Entities were obligated to present judgments against companies
associated with Ablyazov, they have done so. The "Ablyazov Judgments" incorporated by
reference into the Second Amended Crossclaims [ECF No. 433, ¶¶ 41, 194-198] were entered
against Ablyazov and no less than 14 corporate entities Ablyazov controlled. *See, e.g.,* Exhibit A.

corporate parent should be liberally construed as judgment-recognition claims. *Passalacqua II*, 933 F.2d at 142–43. This Court erred by not so construing the Kazakh Entities' alter ego claim against Triadou and that claim should be reinstated.

## **CONCLUSION**

Triadou's motion for judgment on the pleadings should be denied, and the Kazakh Entities' alter ego claim should be reinstated as a judgment-recognition claim against Triadou.


Dated:   New York, New York
         May 25, 2018

                                        Respectfully,

                                         /s/ Matthew L. Schwartz
                                        Matthew L. Schwartz
                                        Peter M. Skinner

                                        BOIES SCHILLER FLEXNER LLP
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-2300
                                        Facsimile: (212) 446-2350
                                        E-mail: mlschwartz@bsfllp.com