

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 1, 2018

**BY ECF**

Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Suite 1950
New York, New York 10007

      Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
              **Case No. 15 Civ. 5345 (AJN) (KHP)**

             *City of Almaty, et ano. v. Gennady Petelin*,
              **Case No. 18 Misc. 227 (AJN) (KHP)**

Dear Judge Parker:

      We represent the City of Almaty, Kazakhstan and BTA Bank ("the Kazakh Entities"), and write to alert the Court to new evidence relevant to the motion pending before Your Honor to compel Gennady Petelin to comply with a document subpoena, which was recently transferred to this Court from California. [ECF No. 655][1]. This evidence was only recently produced by Ilyas Khrapunov – yet again, only under threat of a motion to compel – and was not available when the motion to compel Petelin was filed. This new evidence shows that Petelin's arguments in opposition to the motion to compel are untrue, and establish that he has waived any objections. In addition, we also write to update the Court regarding Plaintiffs' subpoena of Wells Fargo bank for records relating to Petelin.

      **I.**    **New Evidence Establishes that Petelin's Objections Have Been Waived**

<div align="center">__Background__</div>

      On December 21, 2017, the Kazakh Entities sent a document subpoena to then-counsel for Petelin (the "Subpoena"), who "accept[ed] service of the subpoenas served on [Petelin] by BTA/Almaty on December 21, 2017." [ECF No. 554, at 1].[2] On or about January 10, 2018, Petelin's then-counsel (who also represented the Khrapunovs) indicated that Petelin would be retaining new counsel due to a vaguely-described conflict between Petelin and the Khrapunovs, purportedly relating to Petelin's anticipated testimony. Petelin finally objected to the Subpoena on January 19, 2018, refusing to produce any documents or even admit whether he had responsive documents.

---

[1]     This letter is being filed in both the main action and the miscellaneous subpoena-enforcement action transferred from California. Unless otherwise noted, citations to docket entries refer to the main action.

[2]     Despite the unambiguous statement made by Petelin's former counsel that they accepted service on him on December 21st, Petelin's new counsel has taken the position that Petelin only accepted service on December 27th, when his former counsel confirmed service. Regardless of which date is chosen, Petelin failed to object within the 14 days required by Rule 45(d)(2)(B).

The Kazakh Entities moved this Court to compel Petelin to comply with the Subpoena. [ECF No. 546]. Among other reasons, the Kazakh Entities identified Petelin's boilerplate objections, his outright refusal to state whether he had any responsive documents, and his failure to serve his objections within 14 days – as required by Rule 45(c)(2)(B) – thus waiving any objection. Petelin appeared through his new counsel, arguing that the motion should first be heard in the Central District of California. The Court agreed, and ordered the Kazakh Entities to move to compel in California. [ECF No. 560]. The Kazakh Entities complied, and began the lengthy pre-filing process for a miscellaneous action to compel in California, which included extensive joint statements of fact and relevant issues.

On April 4, 2018, the Kazakh Entities' counsel received an email from Petelin's counsel with final comments on the joint statement. Shortly thereafter, the Kazakh Entities' counsel received an e-mail from "Yodamaster@Cryptoheaven.com," replying to the earlier e-mail by Petelin's counsel. Ex.1. As the Court previously found when imposing sanctions on him, "Yodamaster" is Ilyas Khrapunov. [ECF No. 564, at 6-7].[3] Petelin's counsel had apparently blind-carbon copied Ilyas on his communications with the Kazakh Entities, and Ilyas had unwittingly replied all, thus revealing that he had been shadowing these communications.

The Kazakh Entities immediately became concerned: Petelin had represented repeatedly that he was entirely separate from the defendants – and in particular the Khrapunovs – going so far as to say that he was "not a party to the case and [did] not wish to be dragged into the parties' discovery disputes." Ex. 2. Yet his counsel was forwarding sealed filings to Ilyas, who was not a party to the miscellaneous action in California, and thus should not have had access to filings under seal.

The Kazakh Entities then served a letter on the Khrapunovs, demanding that they reveal whether they had been withholding communications between Ilyas and Petelin or his agents, including Petelin's counsel. Ex. 3. In response, on the final day of the last discovery period, the Khrapunovs' counsel stated that they would be making a production of documents in response to the Kazakh Entities' demand. Ex. 4. Counsel did not explain why these plainly-responsive documents had not been produced earlier.

## The New Evidence

On May 16, 2018, in one of their last acts before being substituted out, the Khrapunovs' prior counsel made a production of 431 documents (the "New Evidence"). While there was not a single communication between Ilyas and Petelin, there were hundreds of e-mails between Ilyas and Petelin's counsel, running from the date counsel was engaged to the date of production.[4] These communications revealed that:

---

[3] As the Court will recall, the Kazakh Entities' motion for sanctions requested a special master to oversee the Khrapunovs' conduct in discovery, including the "Yodamaster" account. The Court acknowledged the Kazakh Entities' concerns, but rejected that request as not sufficiently tied to the discrete sanctions motion. [ECF No. 564, at 15, n.2].

[4] Ilyas' recently-engaged counsel has not confirmed whether this production is complete, or whether Ilyas' production will be updated before any deposition of Petelin.


- It was Ilyas who had arranged and overseen the retention of new counsel for Petelin, selecting an attorney "affiliated" with Ilyas' own counsel in two California lawsuits. *See* Ex.5; *see also* https://boerschshapiro.com/attorneys/ (identifying Petelin's counsel as "affiliated counsel" to the firm representing Ilyas).

- Ilyas briefed Petelin's new counsel on the facts and details of this action. *See* Ex. 6.

- Petelin's counsel offered to engage a Russian-speaking lawyer who could communicate directly with Petelin, but Ilyas ignored this suggestion (which would have prevented him from controlling the flow of information to and from Petelin). *See* Ex. 7.

- Ilyas gave instructions and directions to Petelin's counsel without Petelin's input or before purporting to confer with Petelin. *See, e.g.,* Exs. 8, 9.

- Ilyas directed Petelin's counsel to object to discovery even where Petelin's counsel believed objections would have little merit. *See* Ex.10 (Ilyas: "Do you think we can oppose to the list of entities that Bois [*sic*] sent to Wells Fargo for unredacted production"; Counsel: "I don't think there is a basis to oppose the list"). Ilyas nonetheless prevailed, and as discussed below (*see* Section II, *infra*), Petelin's objections remain unresolved.

- Ilyas directed Petelin's counsel to stand on boilerplate objections even where Petelin's counsel acknowledged that Petelin's finances were relevant. Ex. 11. (Counsel: "[T]he Court will say that Judge Parker already found that his finances are relevant to the case").

- Petelin's counsel asked Ilyas to disclose whether "Petelin" had responsive documents, explaining that "I will not be able to say anything in his defense if he does not wish to say if he has documents that are responsive to the requests [and] The Court will find him uncooperative" – but no such disclosure was made in the miscellaneous proceeding. *See, e.g.,* Exs. 12, 13, 14, 15, 16, 17.

- Even when Petelin's counsel communicated with Petelin directly through a neutral interpreter, he made sure to inform Ilyas of any strategy decisions. *See* Ex.18.

Perhaps the most troubling revelation in the New Evidence, however, is what is not there: while Petelin's counsel repeatedly sent documents to Ilyas to be sent to Petelin, there is no proof at all that Ilyas ever forwarded a single document to Petelin. In fact, there is not one communication between Ilyas and Petelin directly – every document produced shows Ilyas alone directing Petelin's counsel, without copying Petelin himself or any other agent. The notion that Petelin, whom the defendants claim to be a billionaire industrialist, does not have a single employee or agent involved in this serious matter defies credulity. In this lawsuit, as in the transaction at issue, Petelin is nothing more than a front used by Ilyas to obstruct any visibility into the true state of affairs.

<u>**The New Evidence Establishes That Petelin's Objections Are Waived**</u>

There can be no doubt that Ilyas has been deeply involved in Petelin's efforts to delay this litigation, acting as a gatekeeper between Petelin and his counsel. Until now, however, this involvement has been hidden from the Court and the Kazakh Entities. Indeed, Petelin has repeatedly represented that he had little understanding of this case, and knows nothing about the Khrapunovs' misconduct. *See, e.g.,* ECF No. 553, at 2 ("A non-party cannot quickly grasp all the facts of this complex case"); Ex. 2 ("[T[he claim by the Kazakh Entities . . . that the 'defendants



obstructed any discovery' is irrelevant to Mr. Petelin. He is not a party to the case and does not wish to be dragged into the parties' discovery disputes"); Misc. Action (18-mc-227) ECF No. 14-31, at 17 ("Mr. Petelin is not a party to the New York Action and does not know the extent to which the Kazakh Entities have fairly characterized the history of [the case]").

Petelin's proclaimed ignorance is simply untrue – his counsel was fully briefed and regularly updated on this matter by Ilyas, who continues to work hand-in-glove with Petelin's counsel. It is troubling for a litigant to claim ignorance, while secretly working side-by-side with a defendant who plainly has intimate knowledge of the subject matter. The Kazakh Entities have argued again and again that Ilyas was working through Petelin to delay discovery here, and the New Evidence proves that to be true.

As the Kazakh Entities argued in their pending motion to compel, Petelin (or more likely, Ilyas) made a tactical choice to change counsel to create the appearance of separation between Petelin and the Khrapunovs, going so far as to claim that there was a conflict between them. *See* Misc. Action ECF No. 14-31, at 22. But this tactical choice does not excuse a party from the federal rules. *Id*. Under Rule 45(d)(2)(B), Petelin's objections were due 14 days after the subpoena was served, on January 4, 2018. Petelin did not respond until January 19.[5] His objections have thus been waived. [*See* ECF No. 555 (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("failure to serve written objections to a subpoena within the time specified by [Rule 45] typically constitutes a waiver of such objections."))].

Petelin admits that he failed to comply with Rule 45, but claims that his failure should be excused. *See* Misc. Action ECF No. 14-31, at 28. Specifically, Petelin argues that his failure should be excused, because he "communicated with the Kazakh Entities and acted in good faith during the transition to new counsel" *Id*. at 29. This is simply false: Petelin never revealed that he was still working in lockstep with Ilyas, never admitted that Ilyas continued to control his defense, and Petelin's proffered reason for changing counsel – an undefined "conflict" – is now demonstrably false. Far from being conflicted, Ilyas continued to act as gatekeeper of Petelin's actions in this litigation, arranging for him to be represented by a lawyer "affiliated" with Ilyas' California counsel, communicating freely with Petelin's new counsel, and directing him to file frivolous delaying objections. There is every reason to believe that Ilyas is not acting as an intermediary, but rather, is working to obstruct discovery from a witness who would thoroughly disprove his lies.

The New Evidence makes clear that Petelin was not "acting in good faith," and thus, has no excuse for not filing his objection in a timely manner.[6] Petelin (and Ilyas) made a tactical choice to delay, and now must accept the consequences of that decision. Petelin's excuses cannot seriously be credited at this point.

---

[5] Even accepting Petelin's claim that he only accepted service on December 27, his objections were still due on January 10, or more than a week before he objected.

[6] This significance of this tactical decision cannot be overstated: Ilyas' role as gatekeeper is apparently so important that he and Petelin chose to waive Petelin's attorney-client privilege by routing all communications through Khrapunov.



## II.     The Parties Are Continuing to Negotiate Over the Wells Fargo Subpoena

Setting aside the above concerns about who is actually controlling Petelin's counsel in this litigation, Plaintiffs are continuing to follow the Court's direction to negotiate in good faith with Petelin's counsel regarding Plaintiffs' subpoena of Wells Fargo Bank for Petelin's bank records.

Counsel to the Kazakh Entities and Petelin conferred on June 1, 2018 regarding the final name in dispute between the parties, and Plaintiffs maintained their request for bank records reflecting transactions with this individual greater than $10,000. Petelin's counsel has indicated that by Monday June 4, 2018 Petelin will decide whether he will withdraw his objection to this final name in dispute between the parties. As such, the Kazakh Entities respectfully request that the Court continue to reserve decision on Petelin's objection to the production of unredacted Wells Fargo records. With the Court's permission, the Kazakh Entities will provide another update to the Court on the last remaining name in dispute by June 8, 2018.

## Conclusion

For the above reasons, and those stated in the Motion to Compel, [ECF No. 655], the Kazakh Entities respectfully request the Court find that Petelin waived any objections to the Subpoena, and produce all responsive documents within seven days.

Respectfully,

  /s/  Matthew L. Schwartz
Matthew L. Schwartz