UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
)
CITY OF ALMATY, KAZAKHSTAN, and BTA )
BANK JSC, )
                                            ) No. 15-cv-05345(AJN)(KHP)
         Plaintiffs, )
)
             v. )
)
MUKHTAR ABLYAZOV, ILYAS )
KHRAPUNOV, VIKTOR KHRAPUNOV and )
TRIRDOU SPV S.A., )
)
         Defendants. )
-------------------------------------------------------------

# DEFENDANT VIKTOR KHRAPUNOV'S MEMORANDUM
# OF LAW IN SUPPORT OF RENEWED MOTION TO
# DISMISS UNDER FRCP 12(b)(2)

SOLOMON & CRAMER LLP
*Attorneys for Defendants Ilyas Khrapunov
and Viktor Khrapunov*
1441 Broadway, Suite 6026
New York, New York 10018
(t) (212) 884-9102
(f) (516) 368-389

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF THE CASE............................................................................................ 1

RENEWAL OF MOTION ................................................................................................... 7

POINT I:   THE COURT HAS ALREADY HELD THAT PLAINTIFFS FAIL TO MAKE A
PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER VIKTOR
KHRAPUNOV UNDER NEW YORK LAW, AND JURISDICTIONAL
DISCOVERY HAS FAILED TO ALTER THAT HOLDING................................... 8

POINT II:  EXERCISING PERSONAL JURISDICTION OVER VIKTOR
KHRAPUNOV WOULD VIOLATE THE DUE PROCESS CLAUSE.................... 11

CONCLUSION.................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
   902 F.2d 194 (2d Cir. 1990)..................................................................................3, 8

*Beach v. Citigroup Alt. Invs. LLC*,
   2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014) .................................................9

*Bensusan Restaurant Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997)..............................................................................................9

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)..........................................................................................14

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016)..........................................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)............................................................................................13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)......................................................................................................12

*Daventree Ltd. v. Republic of Azer.*,
   349 F. Supp. 2d 736 (S.D.N.Y. 2004)............................................................................9

*Emerald Asset Advisors, LLC v. Schaeffer*,
   895 F. Supp. 2d 418 (E.D.N.Y. 2012) .......................................................................2, 9

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002)........................................................................2, 7

*Friedman v. Bloomberg L.P.*,
   884 F.3d 83 (2d Cir. 2017)..............................................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)......................................................................................................11

*In re LIBOR-Based Fin. Instrs. Antitrust Litig.*,
   No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225 (S.D.N.Y. Aug. 4, 2015) ..............10

*In re N. Sea Brent Crude Oil Futures Litig.*,
   No. 13-md-02475 (ALC), 2017 U.S. Dist. LEXIS 88316 (S.D.N.Y. June 8, 2017) ............10, 12

*In re Platinum & Palladium Antitrust Litig.*,
   No. 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624 (S.D.N.Y. Mar. 28, 2017).................12

*In re Satyam Comput. Servs. Sec. Litig.*,
  915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013) .................................................................. 10-11

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*,
  456 U.S. 694 (1982) ..............................................................................................................7

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ............................................................................................................14

*Kalin v. Xanboo, Inc.*,
  No 04 Civ. 5931 (RJS), 2009 U.S. Dist. LEXIS 34954 (S.D.N.Y. Mar. 30, 2009) .....................8

*Lehigh Valley Indus. v. Birenbaum*,
  527 F.2d 87 (2d Cir. 1975) ..................................................................................................14

*Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ....................................................................................................7

*Local 875 Int'l Bhd. of Teamsters Pension Fund v. Pollack*,
  992 F. Supp. 545 (E.D.N.Y. 1998) ........................................................................................9

*McConnell v. Transatlantic Capital Corp.*,
  92 Civ. 5451 (MBM), 1993 U.S. Dist. LEXIS 12083 (S.D.N.Y. Aug. 31, 1993) ......................9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ....................................................................................................3

*Ronar, Inc. v. Wallace*,
  649 F. Supp. 310 (S.D.N.Y. 1986) ........................................................................................2

*Strojmaterialintorg v. Russian Am. Commercial Corp.*,
  815 F. Supp. 103 (E.D.N.Y. 1993) ........................................................................................8

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ....................................................................................................7

*Thackurdeen v. Duke Univ.*,
  130 F. Supp. 3d 792 (S.D.N.Y. 2015) ...................................................................................9

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
  560 F. App'x 52 (2d Cir. 2014) .............................................................................................3

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ........................................................................................................12

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016) ................................................................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..................................................................................................11

**Statutes**

CPLR 302(a) ..........................................................................................1, 7, 8, 9, 11

Fed. R. Civ. P. 4(k)(1)(A)..................................................................................7, 11

Fed. R. Civ. P. 12(b)(2).........................................................................................1,

Defendant Viktor Khrapunov, through his counsel Solomon & Cramer LLP, respectfully submits this memorandum of law in support of his motion to renew his motion to dismiss the Second Amended Crossclaims (Dkt. No. 433) of BTA Bank and the City of Almaty ("BTA/Almaty"), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The thread that ties Viktor Khrapunov to this case must now be cut. The Court has already found that BTA/Almaty failed to adequately allege personal jurisdiction over him under the so-called "conspiracy theory." In the eight months since the Court's order (on top of all the time before it), BTA/Almaty have failed to uncover any facts that change the jurisdictional calculus. As such, on renewal of Viktor Khrapunov's motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court should dismiss all remaining claims against him.

## STATEMENT OF THE CASE

On September 24, 2016, Viktor Khrapunov moved to dismiss BTA/Almaty's amended crossclaims (Dkt. No. 231) on various grounds, including that the Court lacked personal jurisdiction over him. Dkt. No. 232 at pp. 5-12.

In opposing the motion, BTA/Almaty could not point to any jurisdictionally significant acts of Viktor Khrapunov in New York. Instead, BTA/Almaty urged the Court to find "agency jurisdiction" under the so-called "conspiracy theory." As the Court explained in its Memorandum and Order deciding the motion (Dkt. No. 426), to plead and prove "agency jurisdiction" under the "conspiracy theory" a plaintiff must overcome two barriers. The first relates to the conspiracy itself, which requires facts showing:

> 1. a corrupt agreement between two or more parties; 2. an overt act in furtherance of the agreement; 3. the parties['] intentional participation in the furtherance of the plan or purpose; and 4. the resulting damage or injury.

Dkt. No. 426 at p. 47 (*quoting Emerald Asset Advisors, LLC v. Schaeffer*, 895 F. Supp. 2d 418, 432 (E.D.N.Y. 2012)).

The second turns on the connection between the defendant's act and the jurisdiction. Here, a court must consider whether:

> (1) the out-of-state coconspirator had an awareness of the effects of the activity in New York, (2) the New York coconspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the coconspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.

*Id.* at p. 48 (*quoting Emerald Asset,* 895 F. Supp 2d at 431 and *citing Maersk, Inc. v. Neewra, Inc.,* 554 F. Supp. 2d 424, 442-443 (S.D.N.Y. 2008)).

BTA/Almaty failed the second test. The Court found that BTA/Almaty had not alleged "a single paragraph expressly connect[ing] Viktor Khrapunov to the New York activities of the 'Ablyazov-Khrapunov Group.'" Dkt. No. 426 at p. 49. Their pleading, the Court added, contained neither an allegation of "Viktor Khrapunov's 'awareness of the effects of the activity in New York,' nor that the coconspirators in New York 'acted at the behest of or on behalf of, or under the control of' Viktor Khrapunov." *Id.* (citing *Emerald Asset*, 895 F. Supp. 2d at 431).[1]

But the Court did not dismiss, even though Plaintiffs had not alleged a *prima facie* case for asserting personal jurisdiction. Instead, BTA/Almaty received a lifeline—jurisdictional discovery to try "to secure and present evidence relevant to the existence of jurisdiction." *Id.* at

---

[1] The Court noted that Viktor's status as father of Ilyas was insufficient to infer that Viktor was involved in any New York activity, or that he directed, knew about, or had control over such activities. *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394-95, 399 (S.D.N.Y. 2002) (finding conclusory allegations of domination and control by out-of-state mother and uncle insufficient to confer personal jurisdiction on a conspiracy theory), *on reconsideration*, 219 F. Supp. 2d 576, *aff'd sub nom First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004); *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986)(finding conclusory allegations that an out-of-state father exercised control over his in-state son's actions insufficient for agency jurisdiction).

2

p. 50.² Were BTA/Almaty to find that Viktor had "knowledge of and control of the conspiracy's activities in New York," the Court hypothesized, "they might be able to sustain their jurisdictional burden." *Id.* Accordingly, although the Court denied Viktor's motion to dismiss on personal jurisdiction grounds, it did so "without prejudice to renew his claims following jurisdictional discovery," after the case was referred to Magistrate Parker. *Id.* at p. 53.

In the many months since the Court's decision, the parties have conducted extensive written, document and depositional discovery. This process has unearthed no new evidence to bolster BTA/Almaty's jurisdictional allegations.

To be sure, neither plaintiff possesses evidence connecting Viktor Khrapunov to New York. Their own 30(b)(6) witnesses admit this.

BTA's 30(b)(6) witness, Nurlan Nurgabylov, gave the following answer:



[Objection]

NN 5/3/17 at 279:6-11.³

Almaty's 30(b)(6) witness, Baourzhan Darmanbekov, gave the following answers:

---

² To obtain limited "jurisdictional discovery," a plaintiff must "'plead legally sufficient allegations of jurisdiction' and may do so 'through [his] own affidavits and supporting materials[,] containing an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant.'" *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56 (2d Cir. 2014) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). Viktor Khrapunov does not agree that BTA/Almaty met even this threshold standard, but his reservation is academic because the discovery that has taken place does not fix the omissions in BTA/Almaty's pleadings. Moreover, the standard of review is now enhanced. Post discovery, "where the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held—'the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an *averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.*'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990)) (emphasis added).

³ Deposition transcript excerpts are attached as exhibits to the accompanying Declaration of Andrew T. Solomon dated June 20, 2018. (Solomon Decl.). Citation to the deposition transcripts in this case are in the form: "XX (deponent's initials) MM/DD/YY (date of deposition) at pp:ll (page:line number)."

3

**Q.** ███████████████████████████

[Objection]

**A.** ████████

DB 5/10/17 at 46:12-16.

…

**Q.** ███████████████████████████████████████████

**A.** █████████████

*Id.* at 62:21-25.

Similarly, Plaintiffs' cooperating witness, *Nicolas Bourg*, added nothing to bolster the jurisdictional case over Viktor. When asked about his allegation that Viktor's funds "were used to create SDG," he conceded that it was based on speculation "because he was very close to Ilyas … -- it was a good supposition, I have no documentary evidence." NB 9/11/17 at 144:23-145:8.[4] Bourg had met Viktor a few times socially and admitted that he had no evidence of Viktor investing in either SDG Capital or Triadou or Telford.[5] *Id.* at 151:10-152:9. He further confessed to lacking any personal knowledge about the truth of the allegation in this lawsuit against Viktor. *Id.* at 153:21-154:12.

Joseph Chetrit—the principal of the transferee in this fraudulent transfer action—did not know Viktor Khrapunov (JC 5/25/17 44:17-18), never met him (*id.* at 58:14-15), and denied having any "first hand knowledge of the allegations against Mr. Viktor Khrapunov" (*id.* at 46:24-47:2).

---

[4] According to Plaintiffs, SDG Capital S.A., of which Ilyas Khrapunov was once President, owns Triadou SPV S.A. Dkt. No. 433 at ¶¶ 17, 20; Dkt. No. 426 at p. 3. Triadou acquired the New York City properties, including the Flatotel and the Cabrini Medical Center, with the "Chetrit Entities" Dkt. No. 426 at p. 3.

[5] Telford International Limited ("Telford") allegedly funded the New York City real estate investments of Triadou. Dkt. No. 426 at p. 3.

4

BTA/Almaty itself took numerous depositions. None yielded evidence supporting jurisdiction over Viktor. For example, *Luigi Rosabianca*—a disbarred New York real estate attorney who is currently incarcerated, and who previously represented Triadou in connection with its U.S. real estate transactions, including in New York—testified that he neither met Viktor nor ever heard of him (LR 01/17/8 at 33:5-13). *Elena Petelina*—who is married to Gennady Petelin, and her son is married to Ilyas Khrapunov's sister, Elivra Kudryshova—testified that she met Viktor in Geneva and Monaco in connection with the children's wedding (*id.* at 36:10-21) and, afterwards, at a meal in Moscow about seven years ago (*id* at 36:23-37:5). Counsel asked about her husband's business dealings with Ilyas but did not even ask about Viktor (*id.* at 56:15-57:3). *Phillipe Glatz*—who purportedly acquired SDG Capital S.A. in a "sham transaction" (Dkt. No. 433 at ¶ 79)—was questioned over two days and was never asked once about Viktor. *Marc Gillieron*—a lawyer in Geneva and partner in Patrick Chabrier (allegedly the "Swiss counsel for the Khrapunov family and SDG" (Dkt. No. 433 at ¶ 70)—met Viktor in 2006 (MG 10/03/17 at 47:13-20) but provided no substantive testimony about him; Viktor's name appears a few times in the transcript (mostly by way of identification), not once on a matter of consequence. Plaintiffs' lawyers also questioned Cesar Cerrito, Triadou's 30(b)(6) witness, but asked no questions about Viktor.

Plaintiffs also deposed *Viktor* and *Ilyas*. Neither testified that Viktor had any involvement in or knowledge of the alleged activities in New York that could form a basis for conferring personal jurisdiction over Viktor. Over two days of examination, Ilyas was barely questioned about his father's involvement in the U.S. ventures. He was asked (by Triadou's counsel) whether Viktor had a management role in Swiss Development Group and SDG Capital, and responded "no." IK 2/2/18 at 21:22-22:2.

Viktor testified that he visited the United States twice in his life and New York only once, in 2001 (VK 1/31/18 at 159:15-165:20). That visit was "official," as part of a delegation from the City of Almaty. After that visit, he never returned to New York or to the U.S. *Id.* at 165:20. He has had no businesses, bank accounts, or real estate, including homes, in New York. *Id.* at 166:2-15.

Viktor "never tried to get involved in Ilyas' business" nor did he "[exercise] any influence on it." *Id.* at 51:18-21. He never obtained an interest in or interfered with his son's business; never got involved in his business activities; and described his son as an independent, autonomous person. *Id.* at 52:7-14.

Viktor also had no relevant involvement with the other key players or entities. He never worked with Gannady Petelin, never invested money with him, never worked with him on an investment, and Mr. Petelin never assisted him in making an investment or potentially making an investment. In short, the relationship between them was "purely social and familial." *Id.* at 57:20-23. Viktor never heard of Triadou. *Id.* at 130:16-131:13. He never heard of Flatotel. *Id* at 131:14-18. He never heard of Cabrini Medical Center, Triadou County Mall, or the Syracuse Center either. *Id* at 131:19-25.

In addition to depositions, the parties exchanged thousands of documents. None (to our knowledge) revealed any evidence of Viktor's supposed participation in the New York activities that are alleged by BTA/Almaty.

In short, discovery has unearthed no new facts that would be relevant to establishing personal jurisdiction over Viktor in this Court.

**RENEWAL OF MOTION**

To establish personal jurisdiction over Viktor Khrapunov, Plaintiffs must clear three hurdles: *first*, that their service of process was procedurally proper; *second*, that they have a "statutory basis for personal jurisdiction that renders service of process effective"; and, *third*, that the exercise of personal jurisdiction "comport[s] with constitutional due process principles." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). Here, Viktor challenges the second and third elements, framed as the following issues:

- whether BTA/Almaty has established statutory jurisdiction pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. 302(a)(2); and

- if statutory authorization is satisfied, whether the due process requirements are met.

These jurisdictional requirements must be satisfied specifically as to Viktor Khrapunov and for each claim against him. This is because personal jurisdiction is a matter of individual liberty, *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982), meaning that BTA/Almaty must "secure personal jurisdiction over each defendant." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017). And because jurisdiction would be "specific," not "general," Plaintiffs must establish it with respect to each claim asserted. *See Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 24 (2d Cir. 2004*); First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002).

Accordingly, the inquiry turns on Viktor's role in the events underlying the two remaining claims against him: the sixth and seventh causes of action for actual and constructive fraudulent transfers. Both arise out of "[t]he 2014 assignment of Triadou's interest in the

Flatotel and Cabrini Medical Center," which BTA/Almaty claim was made "not for adequate consideration" (Dkt. No. 433 at ¶ 164) and to "hinder, delay, and defraud current and future judgment creditors, specifically the City of Almaty and BTA Bank" (*id.* at ¶ 165). Viktor is not alleged to be a "transferor" or "transferee" of the alleged fraudulent transfer, so he can only be liable if Almaty/BTA carries the "heavy burden" of piercing the "corporate veil." Dkt. No. 426 at pp. 32-33. Presumably the veil to be pierced here would be that of the alleged transferor, Triadou, which Plaintiffs claim sold the New York properties for less than fair value in order to spirit the proceeds out of the jurisdiction.[6]

The Court already found that the Amended Cross Claims do not allege a sufficient basis for statutory jurisdiction. The question on renewal is whether jurisdictional discovery has changed anything. The answer: it has not.

# POINT I

# THE COURT HAS ALREADY HELD THAT PLAINTIFFS FAIL TO MAKE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER VIKTOR KHRAPUNOV UNDER NEW YORK LAW, AND JURISDICTIONAL DISCOVERY HAS FAILED TO ALTER THAT HOLDING

The burden to establish personal jurisdiction is on BTA/Almaty. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). To meet this burden, Plaintiffs rely on N.Y. C.P.L.R. 302(a)(2), which permits the exercise of specific personal jurisdiction over "any non-domiciliary … who in person or *through an agent*: … commits a tortious act within the state…."

---

[6] In addition to dismissing the case against Viktor on personal jurisdictional grounds, the Court could easily grant judgment on the pleadings in his favor under Rule 12(c) of the Federal Rules of Civil Procedure. The Second Amended Crossclaims contain no factual allegation as to Viktor that, if true, would establish a basis for piercing the corporate veil as to him. *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (dismissing alter ego claim that is plead with conclusory allegations); *Kalin v. Xanboo, Inc.*, No 04 Civ. 5931 (RJS), 2009 U.S. Dist. LEXIS 34954, at *31 (S.D.N.Y. Mar. 30, 2009) ("cursory or conclusory allegations are insufficient to state a prima facie claim of alter ego liability").

8

Under section 302(a)(2), the phrase "within the state" is taken literally and requires a defendant to have been "physically present in New York when he performed the wrongful act." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803-04 (S.D.N.Y. 2015). But the word "agency" is not read so restrictively, and New York courts have held that a formal agency is not required; jurisdiction can be established through the acts of "co-conspirators." *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 759 (S.D.N.Y. 2004) (citing, *inter alia, Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). This devised judicial extension is known as the "conspiracy theory." *Beach v. Citigroup Alt. Invs. LLC*, 2014 U.S. Dist. LEXIS 30032, at *33 (S.D.N.Y. Mar. 7, 2014); *Local 875 Int'l Bhd. of Teamsters Pension Fund v. Pollack*, 992 F. Supp. 545, 561 (E.D.N.Y. 1998). To establish personal jurisdiction under section 302(a)(2) through the "conspiracy theory," a plaintiff must satisfy three levels of pleading requirements: (1) the underlying tort; (2) the conspiracy; and (3) the nondomiciliary defendant's awareness, benefit from and direction/control over the New York activity. *Daventree Ltd.* 349 F. Supp. 2d at 759.

Having no evidence of Viktor committing a tortious act "in person" within the state, BTA/Almaty relies on the "conspiracy theory," which means that they must allege specific facts that establish that Viktor was aware of the New York activity, benefited from it, and that he, himself, participated in the New York activity or controlled others who did. Dkt. No. 426 at 48-9 (citing *Emerald Asset Advisors,* 895 F. Supp. 2d at 431; *Maersk, Inc.,* 554 F. Supp. 2d at 442-43); *see also McConnell v. Transatlantic Capital Corp.*, 92 Civ. 5451 (MBM), 1993 U.S. Dist. LEXIS 12083, at *5-6 (S.D.N.Y. Aug. 31, 1993). Unfortunately for Plaintiffs, they are in no better a position now to establish this theory than when they filed their initial claims.

Jurisdictional discovery has uncovered no evidence supporting personal jurisdiction over Viktor under the "conspiracy theory." BTA/Almay's own 30(b)(6) witnesses have admitted that they possess no evidence tying Viktor to a "conspiracy" to commit a tort (namely, the fraudulent transfers) in New York. Viktor, for his part, denies any such involvement. His testimony, which is unrebutted, establishes: that Viktor was not involved in Ilyas' business or in exercising any influence on it (VK 1/31/18 at 50:18-21); that Viktor never interfered in his son's business and that his son was an "independent autonomous person" (*id.* at 52:7-14); that Viktor did not act as a director for any of his son's companies (*id.* at 136:22-22); and that Viktor did not even know that his son Ilyas did business in the U.S. until he learned about it in a newspaper article at the time of President Trump's inauguration in January or February 2017 (*id.* at 126:22-129:13). Furthermore, no other witness has identified any act by Viktor in connection with the two New York real estate transactions.

Because no evidence demonstrates that Viktor was aware of the transactions underlying the fraudulent transfer, that he benefited from them, or that he participated in or controlled the transactions, dismissal is required. *See, e.g., In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-md-02475 (ALC), 2017 U.S. Dist. LEXIS 88316, at *30 (S.D.N.Y. June 8, 2017) (finding no agency or conspiracy jurisdiction because plaintiffs failed to allege facts showing that foreign defendant controlled, had knowledge of, or purposefully engaged in activities in the jurisdiction); *In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225, at *161 (S.D.N.Y. Aug. 4, 2015) ("plaintiffs have failed to plausibly allege a conspiracy to manipulate USD LIBOR for traders' benefit or to suppress LIBOR during the financial crisis"); *In re Satyam Comput. Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 485 (S.D.N.Y.

2013) (finding no personal jurisdiction where plaintiff alleged "no facts … which connect any of the … Defendants with transactions occurring in the United States").

The Second Amended Crossclaims against Viktor must be dismissed based on the absence of a statutory basis for asserting personal jurisdiction over him.

POINT II

**EXERCISING PERSONAL JURISDICTION OVER VIKTOR KHRAPUNOV WOULD VIOLATE THE DUE PROCESS CLAUSE**

Even if BTA/Almaty could establish a statutory basis for personal jurisdiction over Viktor, pursuant to Federal Rule of Civil Procedure 4(k) and CPLR 302(a), the Court would still be required to dismiss because exercising personal jurisdiction over Viktor would violate federal due process limits.

The exercise of personal jurisdiction over a defendant is informed and limited by the Constitution's guarantee of due process under the Fifth and Fourteenth Amendments,[7] which requires that any jurisdictional exercise be consistent with "traditional notions of fair play and substantial justice." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). The inquiry examines two factors: "minimum contacts" and "reasonableness." *Waldman v. PLO,* 835 F.3d 317, 331 (2d Cir. 2016). Where claims are based on state law, the tests are based on contacts with the forum state, not the United States as a whole. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290-92 (1980). Finally, as noted above, personal jurisdiction must be established for each defendant and each claim.

---

[7] The analysis under the Fifth and Fourteenth Amendments is the same. *Waldman v. PLO*, 835 F.3d 317, 330 (2d Cir. 2016)

Plaintiffs do not contend that Viktor is subject to general jurisdiction in New York; their chips are on "specific jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014), that is, whether the suit "arises out of or relate[s] to the defendant's contacts with the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011) (quoting, *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984)). In assessing these contacts, two fundamental principles are at play: *one*, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985)); *two*, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122.

In assessing specific jurisdiction, the importance of the Supreme Court's recent decision in *Walden* cannot be overstated. It makes clear that personal jurisdiction does not exist unless the defendant himself has the requisite contacts: the exercise of jurisdiction over an "out-of-state intentional tortfeasor must be based on *intentional conduct by the defendant that creates the necessary contacts with the forum.*" *Walden*, 134 S. Ct. at 1123 (emphasis added). In fact, post-*Walden* courts have questioned the continued viability of the "conspiracy theory," *see, e.g., In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-md-02475 (ALC), 2017 U.S. Dist. LEXIS 88316, at *31 (S.D.N.Y. June 8, 2017), and the theory has come under persistent criticism and is narrowly construed. *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624, at *149 (S.D.N.Y. Mar. 28, 2017)

Even if the "conspiracy theory" survives *Walden,* Plaintiffs obtain no succor. As the Second Circuit recently explained, to establish personal jurisdiction under the "conspiracy theory,"

> The plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's *overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state.*

*Charles Schwab Corp. v. Bank of Am. Corp.,* 883 F.3d 68, 87 (2d Cir. 2018) (Lynch, J.) (*citing Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013)) (emphasis added). The third element is critical to the Supreme Court's "minimum contacts" jurisprudence, because "to allow jurisdiction absent a showing that a co-conspirator's minimum contacts were in furtherance of the conspiracy would be inconsistent with the 'purposeful availment' requirement." *Id.*

Here, BTA/Almaty have not alleged, and cannot show, any "overt acts" by Viktor "in furtherance of the conspiracy" that had contact with New York. To be sure, nothing in the pleading goes to this requirement. The Sixth Cause of Action alleges that Triadou assigned its interest in the Flatotel and Cabrini Medical Center to the Chetrit Group for less than fair value in order to "liquidate a fixed asset to frustrate a future creditor." Dkt. No. 433 at ¶ 163-165. The Seventh Cause of Action is based on the same transfer but relies on New York's constructive fraudulent transfer statute. *Id.* at ¶¶ 168-173. Both claims are pleaded against "Defendants" as a group, and neither contains an allegation that Viktor committed any act, much less one that constitutes an "overt act," much less one that had a New York nexus.

Even BTA/Almaty's best spin falls far short of carrying the third-prong of the "conspiracy theory" test. According to Plaintiffs,

> The Amended Crossclaims contain many specific allegations regarding Viktor Khrapunov's involvement in the conspiracy. Viktor Khrapunov was a founding member of the conspiracy, which arose in part to help launder funds he had stolen from Almaty. Id. ¶ 56-60. Since Ablyazov's detention, the day-to-day operations of the Ablyazov-Khrapunov Group's money laundering operations have been run by Ilyas Khrapunov, in concert with Ablyazov and Viktor Khrapunov. Id. ¶ 43. As recently as 2013, Viktor Khrapunov was actively involved in discussions concerning

> the investment of the conspiracy's stolen funds, including in
> Russian oil and energy assets through Gennady Petelin – an
> identified front man for the conspirators' operations. Id. ¶ 72.

Dkt. No. 241 at p. 32.

The Court was not persuaded. In finding no jurisdiction under New York law, the Court found that although BTA/Almaty may have alleged that "Viktor Khrapunov was a member of a conspiracy to launder money generally, and to launder money using entities in Switzerland …," they have not connected him to the "New York activities of the 'Ablyazov-Khrapunov Group.'" Dkt. No. 426 at pp. 47-48. The same observation applies in the due process analysis with equal effect; minimum contacts between Viktor and New York do not exist.

Finally, the Court should not delay dismissing the claims against Viktor pending the remaining discovery that Judge Parker's recent order authorized. In seeking that extension, BTA/Almaty did not justify the request based on the need to conduct more "jurisdictional discovery." Dkt. No. 639. Moreover, BTA/Almaty have already had an adequate opportunity to conduct jurisdictional discovery and have taken the depositions that are significant with respect to Viktor's involvement. Consistent with the requirements of due process, and the important individual liberty interests at stake, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011), the Court should not permit further protraction of these proceedings against Viktor because the case for personal jurisdiction is simply non-existent. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (*citing Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998); *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975)).

## **CONCLUSION**

For the foregoing reasons, in light of the absence of any facts supporting the exercise of personal jurisdiction over Viktor Khrapunov under any viable theory of law, Viktor Khrapunov respectfully requests the Court to dismiss the Second Amended Crossclaims against him.

Dated: New York, New York
June 20, 2018

                                        SOLOMON & CRAMER LLP
*Counsel for Defendants Viktor Khrapunov and Ilyas Khrapunov*

By: /s/Andrew T. Solomon
     Andrew Todd Solomon
1441 Broadway, Suite 6026
New York, New York 10018
t: (212) 884-9102
f: (516) 368-3896
asolomon@solomoncramer.com