UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



City of Almaty, Kazakhstan and BTA
Bank JSC,

        Crossclaim Plaintiffs,

—v—

Mukhtar Ablyazov, Viktor Khrapunov, Ilyas
Khrapunov, and Triadou SPV S.A.,

        Crossclaim Defendants.

15-CV-5345 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This complex litigation concerns an alleged conspiracy by which prominent citizens of Kazakhstan purportedly looted billions of dollars from the City of Almaty, Kazakhstan and BTA Bank JSC (collectively, the "Kazakh Entities" or "Plaintiffs"), a formerly state-owned banking institution based in Kazakhstan, and then laundered the stolen funds around the world, including ultimately by investing in New York City real estate projects. On December 23, 2016, the Court dismissed the Kazakh Entities' federal racketeering claims as impermissibly extraterritorial. *See City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016) [hereafter "Original Op."]. Subsequently, on October 30, 2017, the Second Circuit Court of Appeals decided *Bascuñán v. Elsaca*, in which they interpreted the "domestic injury" requirement of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1961 *et seq*.

Now before the Court is the Kazakh Entities' motion for relief from the Court's December 23, 2016 Memorandum & Order pursuant to Federal Rules of Civil Procedure 54 and

1

60. The Kazakh Entities move the Court to reinstate their RICO claims. For the following reasons, the Court DENIES the Plaintiffs' motion.

**I. Background**

The Court has summarized the complex background of this case in several prior substantive decisions. *See* Original Op.; *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776 (S.D.N.Y. 2017). For present purposes, the following summary will suffice.

On June 21, 2016, the Court granted in part and denied in part the motion of Triadou SPV S.A. ("Triadou") to dismiss various crossclaims asserted by the Kazakh Entities. *See CF 135 Flat LLC v. Triadou SPV S.A.*, No. 15-CV-5345 (AJN), 2016 WL 5945933 (S.D.N.Y.). However, in light of the then-recent decision by the Supreme Court in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), the Court declined to rule on Triadou's argument that the Kazakh Entities' RICO claims are impermissibly extraterritorial, and invited additional briefing instead. *Id.* at *13. After receiving additional briefing, on December 23, 2016, the Court dismissed the Kazakh Entities' RICO claims. Original Op. at 288. The Kazakh Entities then moved for an order certifying the December 23 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which the Court denied on April 20, 2017. *See City of Almaty v. Ablyazov*, No. 15-CV-5345 (AJN), 2017 WL 1424326 (S.D.N.Y.) [hereafter, "Interlocutory Op."].

On October 30, 2017, the Court of Appeals decided *Bascuñán v. Elsaca*, which reversed in part and vacated in part a lower court decision that the Court had cited repeatedly in its December 23 Order. *See, e.g.*, Original Op. at 285 (citing *Bascuñán v. Elsaca*, 15-CV-2009 (GBD), 2016 WL 5475998, at *4 (S.D.N.Y. Sept. 28, 2016) [hereafter, *Bascuñán I*]). The Second Circuit issued its mandate in *Bascuñán* on December 5, 2017, and the Kazakh Entities

filed the present motion on January 4, 2018. Dkt. No. 517. The motion was fully submitted on March 2, 2018.

### A. Summary of Original Opinion

In the Court's original December 23, 2016 opinion dismissing the Kazakh Entities' RICO claims, the Court considered the Supreme Court's ruling in *RJR Nabisco*, which held that a plaintiff bringing a claim under RICO's private right of action, 18 U.S.C. § 1964(c), must allege and prove "a *domestic* injury to its business or property." 136 S. Ct. at 2106. The Supreme Court noted that RICO's provision of a private civil remedy for foreign conduct created a potential for international friction, illustrating its concerns with "[a]llowing recovery for foreign injuries in a civil RICO action," by noting that it could result in injured citizens of foreign countries choosing to "bypass" their home jurisdictions' remedial schemes in order to bring suit in the U.S. *Id.* at 2106-07. The Supreme Court observed that "disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic,'" but declined to offer further guidance. *Id.* at 2111.

In briefing this issue the first time, the parties presented differing interpretations of whether the Kazakh Entities' alleged injuries are "domestic" or "foreign" within the meaning of *RJR Nabisco*. In short, Triadou argued that "the only injury alleged here is the looting of Kazakhstan-based assets held by the Kazakh Entities, occurring within the geographical boundaries of Kazakhstan." Original Op. at 280. Triadou further argued that while several alleged RICO predicates occurred within the United States, they did not convert the injury into a domestic one because those acts, namely the concealment of stolen funds in New York real estate, "occurred only *after* the misappropriation of the assets at issue was complete, and, as such, they cannot be said to have proximately caused any loss." *Id.* The Kazakh Entities responded by arguing that they "allege domestic predicate acts with a sufficient causal nexus to

3

the economic losses that they have suffered," and that a RICO plaintiff's harm can have "more than one proximate cause." *Id.* at 281 (internal quotation marks omitted).

The Court held that the existence of a domestic injury cannot turn entirely on whether it was caused by conduct occurring in the U.S. *Id.* at 281-82. Instead, the Court held that the "appropriate subject of the inquiry" is not the location of the injurious conduct but "the location where the injury itself arose." *Id.* at 282. Citing *Bascuñán I*, the Court noted that in cases involving economic harm, the place of injury is *normally* the state of plaintiff's residence, but recognized that exceptions apply where the financial loss is felt at another location, such as where a plaintiff maintains a separate financial base. *Id.* (citing *Bascuñán I* at *4-6 and *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, 10-CV-5999, 2012 WL 488257, at *4 (S.D.N.Y. Feb. 14, 2012)). However, the Court unequivocally refused "to broadly endorse an absolutist version of the rule that would, for example, categorically preclude foreign corporations with business operations or property interests maintained in the U.S. from bringing Rico actions to recover for injuries to those assets." *Id.* at 284.

Applying the facts to this standard, the Court rejected the Kazakh Entities' arguments about their domestic injury. Among other factors the Court considered were:

- "The Kazakh Entities are undisputedly both aliens that are not alleged to hold assets or to maintain any operations, instrumentalities, or other presence in the United States. They were not working, traveling, or doing business in the U.S. when they incurred their alleged injuries." *Id.* (citation omitted).
- "The purported misappropriations giving rise to this action occurred within Kazakhstan and targeted only assets held overseas." *Id.*
- The RICO claims' connection to the U.S. were limited to the alleged investment of stolen funds in New York real estate projects for *after-the-fact* concealment. *Id.* at 285.

The Kazakh Entities also attempted to identify domestic injuries independent of the original misappropriations in Kazakhstan, such as that the Crossclaim Defendants were able to

4

"maintain control" of property belonging to the Kazakh Entities or that the Crossclaim Defendants had made a below-market assignment of its investment in one property, but the Court rejected the argument that these allegations were sufficient to have "plausibly alleged any injury to their property occurring within the United States." *Id.* at 285-87.

### B. Summary of *Bascuñán v. Elsaca*

In *Bascuñán v. Elsaca*, the Second Circuit considered – for the first time in this or any other Circuit – what constitutes "a domestic injury" after the Supreme Court's decision in *RJR Nabisco*. 874 F.3d 806 (2017) [hereafter, *Bascuñán II*]. The plaintiff inherited a substantial fortune from his parents, and appointed his cousin, one of the defendants, as a financial manager to oversee the estate. *Id.* at 810-11. The defendants "allegedly engaged in a number of fraudulent financial schemes ... illegally transferring about $64 million from the Estate to entities and accounts under their own control." *Id.* at 811. The Court of Appeals discussed the particular facts of the four schemes, which had varied connections to New York, *see id.* at 811-13, and held that "where a civil RICO plaintiff alleges separate schemes that harmed materially distinct interests to property or business, each harm – that is to say, each 'injury' – should be analyzed separately for purposes of this inquiry. *Id.* at 814. Additionally, the Court of Appeals concluded "that an injury to tangible property is generally a domestic injury only if the property was physically located in the United States, and that a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Id.* at 819. In articulating this standard, the Court of Appeals distinguished its more property-focused approach from the district court's residency-based test. *Id.* at 821.

Applying these standards to the four schemes alleged, the Court of Appeals found that two failed to allege a domestic injury, but that two others did. The so-called "New York Trust

5

Account Scheme" focused on the defendant's misappropriation of funds held in a New York bank account. While recognizing that money is fungible, because "the money allegedly stolen as a result of these scheme was situated in a specific geographic location at the time of injury," the Court of Appeals concluded that "we can treat it as tangible property for purposes of this inquiry." *Id.* at 820. Similarly, the so-called "BCI Share Theft" focused on the misappropriation of bearer shares, located in a safety deposit box in New York. The Court of Appeals again determined that this constituted "the misappropriation of *tangible* property," *id.* at 824 (emphasis in original), and noted that the plaintiff did not allege that defendant's activity caused a drop in the economic value of the shares, but that they were physically stolen, defrauding the plaintiff out of his interest. *Id.* By contrast, the two schemes that did not allege a domestic injury involved the fraudulent transfer or diversion of funds held outside of the United States, and only the laundering of assets or deposit of assets in New York-based accounts. *Id.* at 812-13.

## II. Legal Standard

The Court retains jurisdiction over interlocutory orders and can modify them at any time. *See* Fed. R. Civ. P. 54(b) & 60. Nonetheless, reconsideration of a previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citations and quotation marks omitted). Although courts do not and should not revisit their prior rulings lightly, in situations in which there has been "an intervening change in controlling law," reconsideration may be justified. *See DiLauria v. Power Auth. of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992); *see also* Local Rule 6.3. The Second Circuit has stated that courts "will not depart from [the law of the case] absent cogent or compelling reasons." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (internal quotation marks

and citation omitted). There must be more than "mere doubt" regarding the effect of the purported change in controlling to law to open the matter for reconsideration. *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981). Local Rule 6.3 should be "narrowly construed and strictly applied" to avoid repetitive arguments already submitted to the Court. *In re Gen. Elec. Co. Secs. Litig.*, 856 F. Supp. 2d 645, 652 (S.D.N.Y. 2012).

### III. Discussion

This Court's analysis in its December 23 Order is consistent with the Court of Appeals' analysis in *Bascuñán II*. Accordingly, the Court finds both that *Bascuñán II* does not pronounce an approach sufficiently different from the Court's such that reconsideration is warranted, and that, assuming *arguendo* that reconsideration were appropriate, the RICO claims must still be dismissed under *Bascuñán II*.

#### A. *Bascuñán II* Is Not an Intervening Change in the Law

As the Court recognized both in its original opinion and in its denial of the Kazakh Entities' motion to certify for interlocutory appeal, before *Bascuñán II*, there were variations in the approaches that courts took to assess what constitutes a domestic injury. Original Op. at 282-85 (summarizing different approaches); Interlocutory Op. at *2 (citing *Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 786 (S.D.N.Y. 2016) and *Union Comm. Servs., Ltd. v. FCA Int'l Ops. LLC*, 16-CV-10925, 2016 WL 6650399, at *4-5 (E.D. Mich. Nov. 10, 2016)). While the Court expressed its support for the *Bascuñán I* rule's consistency with the Supreme Court's focus on injuries "suffered overseas," Original Op. at 284 (quoting *RJR Nabisco*, 136 S. Ct. at 2109), the Court also proclaimed its hesitation "to broadly endorse an absolutist version of the rule that would, for example, categorically preclude foreign corporations with business operations *or property interests maintained in the U.S.* from bringing RICO actions to recover for injuries to

7

those assets." *Id.* (emphasis added). The Court continued on to conduct a "highly fact-specific" analysis, Interlocutory Op. at *3, that noted, among other things, that the Kazakh Entities "are not alleged to hold assets ... in the United States," and that "[t]he purported misappropriations giving rise to this action ... targeted only assets held overseas." Original Op. at 284. Put simply, the Court did not apply a strict residency-based test in its original decision. Thus, *Bascuñán II*, while providing new, binding precedent on this Court, does not constitute a sufficient change in the law such that the Court should depart from the law of the case.

The Kazakh Entities also press the *Bascuñán II* holding that each RICO scheme and alleged injury must be analyzed separately, but the Court already did so in the original opinion. *See* Memorandum of Law in Support of the City of Almaty and BTA Bank's Motion for Relief ("Br."), Dkt. No. 518, at 6, 9-10. In Section II.B.5.b of the original opinion, the Court considered the misappropriations occurring within Kazakhstan. Original Op. at 284-85. In Section II.B.5.c, the Court considered the Kazakh Entities' arguments about alleged injuries "to property in the United States that are entirely independent of the original misappropriations in Kazakhstan," including their contention that the "below-market assignment" of Triadou's investment in the Flatotel was a domestic injury. *Id.* at 285-87. The Court assumed *arguendo* that such allegations would be sufficient to plead domestic injury under *RJR Nabisco*, but still found the Kazakh Entities' attempts "unavailing." *Id.* at 285. Tellingly, in briefing this motion the Kazakh Entities do not highlight any particular injury or scheme that the Court failed to analyze separately, instead largely re-litigating the idea that the alleged money laundering in New York is a separately cognizable RICO injury here, rather than the continuation of a single economic loss, and that the 2014 below-market assignment is a discrete injury occurring in the United States. *See generally* Br. at 11-18.

In sum, and as further explicated below, while the Court did repeatedly cite *Bascuñán I* in its original decision, the analysis it undertook and its largely fact-specific and ecumenical approach are not inconsistent with *Bascuñán II* and, thus, need not be reconsidered. *See Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp.*, 965 F. Supp. 2d 402, 404-05 (S.D.N.Y. 2013), *aff'd sub nom. Arthur Gluck Truck Sales, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 577 F. App'x 11 (2d Cir. 2014) (stating that reconsideration is appropriate only where there is an intervening change of controlling law "that might reasonably be expected to alter the conclusion reached by the court").

### B. Even under *Bascuñán II*, the Kazakh Entities Have Not Plausibly Alleged a Domestic Injury

Even if the Court were to consider *Bascuñán II* an intervening change in the law, the Kazakh Entities have nonetheless failed to allege a domestic injury to any property interest they possessed.

Put simply, *Bascuñán II* supports the Court's prior decision. The Court of Appeals distinguished two alleged schemes, for which it affirmed dismissal, from the two it held to have plausibly alleged a domestic injury. For the two dismissed schemes, the only domestic elements were that the defendant "transferred these foreign funds to his own accounts in New York," or "launder[ed] stolen money using bank accounts in the United States and elsewhere." 874 F.3d at 818. As Triadou notes in its opposition, the Second Circuit "found it important that 'the only domestic connections alleged here were acts of *the defendant.*'" Triadou's Memorandum of Law in Opposition ("Triadou Opp."), Dkt. No. 557, at 7 (quoting *id.* at 819). By contrast, the two schemes with a domestic injury involved funds and bearer shares, respectively, held by the *plaintiff* in a New York bank and misappropriated *from* New York. The Kazakh Entities attempt to twist this distinction by discussing all of the many actions the Defendants are alleged to have

9

taken with the money deposited in a domestic bank account, *see* Reply Memorandum of Law ("Reply"), Dkt. No. 561, at 6, but these actions are still utilizing a bank account first opened by the Defendants, not the Kazakh Entities, which has different implications for the extraterritoriality concerns expressed by the Supreme Court in *RJR Nabisco*.

As discussed in the Court's original opinion, the schemes alleged here are all based on the same alleged misappropriations that occurred in Kazakhstan. The Kazakh Entities artfully attempt to link the Defendants' money laundering activities to the supposed domestic injuries of concealing the Kazakh Entities' property, "depriving them of its use, and causing them to devote substantial time and resources ... in an attempt to trace and recover their property." Br. at 11-12. However, as this Court already found, the facts here do not present the type of rare case in which the post-theft money laundering proximately caused some portion of the original injury. Original Op. at 285-86. All of the property that the Kazakh Entities point to in New York was acquired by the Defendants, without any involvement from the Kazakh Entities, thus warranting the admonition of the *Bascuñán II* court "that a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." 874 F.3d at 819. The Kazakh Entities offer no support for the idea that each transfer of property within the United States constitutes a separate act of conversion and a separate domestic injury.

Finally, the Kazakh Entities attempt to allege a domestic injury related to their conversion and constructive trust claims. The first attempt relates to the Kazakh Entities' interest in CF West 135 Member LLC, which was allegedly assigned by Triadou to the Chetrit Entities for a fraction of its fair market value. The Kazakh Entities argue that by selling this domestic asset, the defendants injured the Kazakh Entities' domestic property. Br. at 16. Essentially the harm –

if any – would be to the Kazakh Entities' right to recovery through its constructive trust claim. However, litigation rights are not tangible property. *See Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094-95 (7th Cir. 2018) (discussing *Bascuñán II* and concluding that injuries to plaintiff's litigation rights did not constitute domestic injuries for purposes of civil RICO). But even assuming *arguendo* that their pending, unproven claim, that is, their right to *seek* a constructive trust, is itself a property interest, they "do not plausibly allege that the assignment itself in any way decreased the intrinsic value of the Flatotel project." Original Op. at 287; *see also* Triadou Opp. at 21 (noting that "the Amended Crossclaims are devoid of any allegation asserting harm to those legal claims").

The second attempt essentially relates to the Kazakh Entities' conversion claims. *See* Br. at 11-14. The Kazakh Entities are careful to note in their reply that they do not allege that "conversion is, standing alone, a racketeering predicate act." Reply at 8, n.2. Instead, the Kazakh Entities insist that conversion is one of the "means by which the defendants committed money laundering, wire fraud, and other predicate crimes." *Id.* Given that representation, the Kazakh Entities are simply re-litigating the idea that the domestic acts of money laundering were "so critical to facilitating an ongoing theft" that they "may be recognized as having proximately caused some portion of the *original* injury." Original Op. at 286. The Kazakh Entities again rely on the Eleventh Circuit's decision in *Maiz v. Virani, see* Br. at 12 (citing 253 F.3d 641, 674 (2001)), but nothing in *Bascuñán II* alters the Court's original conclusion that "the types of circumstances under which post-theft money laundering may proximately cause theft-related loss are not alleged here." Original Op. at 286 (distinguishing *Maiz v. Virani*). Accordingly, for the reasons stated above and in the Court's original opinion, these conversion-based arguments are unavailing.

In sum, given another bite at the apple, the Kazakh Entities' arguments are mostly duplicative of their arguments when the issue was first briefed. Application to this case of *Bascuñán II*'s admonition "that a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one," and the Court of Appeals' analysis of the four schemes in that case, compel the Court to deny the motion for relief.

## IV. Conclusion

For the foregoing reasons, the Kazakh Entities' motion for relief is DENIED and the Court declines to reinstate the RICO claims.

This resolves Dkt. No. 517.

SO ORDERED.

Dated: July ___, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge