RECEIVED
SDNY DOCKET UNIT

2018 AUG 14   AM 11: 20

The Honorable Katharine h. Parker
United States Magistrate Judge
United States District Court – S.D.N.Y.
500 Pearl Street, Room 750
New York, New York 10007

13 August, 2018

**Re: City of Almaty, Kazakhstan, et ano. V. Mukhtar Ablyazov, et al., Case No. 15 Civ. 5345 (AJN) (KHP)**

**Decision dated 8 August 2018**

Dear Judge Parker

I have become aware of your decision and the motion that City of Almaty and BTA Bank made on Friday the 10 August of 2018.

I have recently been successfully hacked and was under surveillance and so was forced to change my location a few times and had to get new modes of communication. My eldest daughter and wife of Iliyas Khrapunov, sometime visits me in France. She visited me on 29 July 2018 and we were supposed to drive in her car for a short trip but during a routine inspection of the car we found a suspicious device placed under the engine (attached to this letter), which was attached by a magnate. The police were called and the bomb squad removed the device for it to be inspected. The same day, my wife and I were followed in a car for several hours until we managed to get away. Few days afterwards, on 4 August the same car of my daughter at her home was entered with a window broken (attached to this letter).

My lawyer was not aware and sent me information to where I no longer access. That is why I was not able to answer to the motion.

I would like to respectfully ask to reconsider the motion.

I am in the process of obtaining a political asylum in France and can't leave the territory of France. This was explained in detail in a letter from Peter Sahlas to the court on 5 September 2017 (attached to this letter). As I am not able to travel outside of France at all, I believe an order to force me to do to so would be unfair.

My French lawyer, Bruno Rebstock before he left on vacation, has not received any convocation or any other information from the Tribunal de Grande Instance. He is still absent for another 2 weeks on vacation. In any case I was told that Tribunal is on vacation all of August as well.
I would therefore, ask to give me time to speak with my lawyer once he is back from vacation to ask him to write to the Tribunal.


Sincerely,


Mukhtar Ablyazov







September 5, 2017

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

**Re:**     **City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,**
          **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker,

Following upon my letter of September 1, 2017, I write again on behalf of Mr. Mukhtar Ablyazov regarding the above-referenced matter.

Mr. Ablyazov is still unrepresented by any attorney in this matter, and he faces the additional challenge of a language barrier because he is not fluent in English.  In these circumstances I have agreed to relay the following information to you on his behalf:

**1.  Voluntary Agreement to be Deposed Under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters**

Mr. Ablyazov declares that he voluntary agrees to be deposed in France pursuant to a request for international judicial assistance under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  He understands that he cannot be subjected to any coercive measures, that he cannot be forced to participate or to appear, and that he has the right to invoke any exemption or prohibition to give evidence provided by the laws of France or of the United States of America.[1]

**2.  Response to Crossclaim-Plaintiffs' First Set of Interrogatories to Defendant Mukhtar Ablyazov**

Please find attached Mr. Ablyazov's response to the Crossclaim Plaintiffs' First Interrogatories of Mukhtar Ablyazov, served on counsel of record for Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov and Triadou SPV S.A., on June 29, 2017.[2]

**3.  Factual Error in Motion Filed by Boies Schiller Flexner on August 29, 2017**

The Boies Schiller Flexner motion of August 29, 2017 states at page 3 that the French Interior Ministry's "Guide for Asylum Seekers in France" at Section 7.5, describes, in Boies Schiller Flexner's words, "how stateless asylum seekers holding a temporary residence permit may obtain temporary travel documents, so long as they do not travel to their country of origin".

---

[1] Exhibit 1.
[2] Exhibit 2.

Peter J. Sahlas
10, place Vendôme
75001 Paris



Mr. Ablyazov insists that this is incorrect.  Section 7 of that document is entitled:  "The rights of beneficiaries of protection".  This clearly means that Section 7.5, "Travelling abroad", applies not to asylum *seekers*, as stated by Boies Schiller Flexner, but rather to individuals *who have been granted protection* in France under the United Nations Convention Relating to the Status of Refugees (either asylum or subsidiary protection).  The French authorities must approve Mr. Ablyazov's application for the recognition of his right to such protection in France, and the permanent residency permit associated with it, before he can avail himself of the possibility to travel abroad.

As stated in my letter of August 28, 2017 to Boies Schiller Flexner (Exhibit 5 of the Boies Schiller Flexner motion of August 29, 2017), pursuant to France's *Code de l'entrée et du séjour des étrangers et du droit d'asile*, Mr. Ablyazov was required to surrender any travel documents in his possession at the outset of his application to reside in France as a refugee.  The temporary residency permit that has been issued to him is not a travel document that he could use to leave the country or return.  The restriction on travel outside France includes Spain, which is a part of the Schengen Area, and all other Schengen Area countries, irrespective of the fact that there are no systematic border controls between France and those countries.

### 4.  Confidentiality of Asylum Matters

As also stated in my letter of August 28, 2017 to Boies Schiller Flexner (Exhibit 5 of the Boies Schiller Flexner motion of August 29, 2017), Mr. Ablyazov has demonstrated that the Republic of Kazakhstan is the persecuting state from which he seeks France's protection pursuant to the United Nations Convention Relating to the Status of Refugees.[3]

---

[3] Most recently, on July 10, 2017, following an application from Mr. Ablyazov, INTERPOL cancelled Red Notices that had been issued against Mr. Ablyazov at the request of Kazakhstan, Ukraine and Russia based upon allegations of harm to BTA Bank.  The basis for cancellation of these Red Notices was non-compliance with INTERPOL's rules on *political abuses* of the organization.

Previously, on December 9, 2016, France's supreme administrative court – the *Conseil d'État* – halted Mr. Ablyazov's extradition to Russia after almost three and a half years of extradition proceedings, during which Mr. Ablyazov had remained in detention.  The decision of December 9, 2016, which is final and not subject to appeal, stated the following regarding the BTA Bank-related allegations that were the basis of the extradition case:

> …Whereas, **by virtue of a fundamental principle recognised by the laws of the Republic, the State shall refuse the extradition of a foreigner when it is requested for a political purpose**; whereas, according to Article 3 (§2) of the European Convention on Extradition, **extradition shall not be granted "*if the requested Party has substantial grounds for believing that a request for extradition for an ordinary criminal offence has been made for the purpose of prosecuting or punishing a person on account of his* race, religion, nationality or *political opinion, or that that person's position may be prejudiced for any of these reasons*"**…

> …**the evidence brought forth shows that the Kazakh authorities, who had previously pressured the Ukrainian authorities to request the extradition of Mr Ablyazov sought to pressure Russia to initiate criminal prosecution against Mr Ablyazov and pressure the Russian authorities to request the applicant's extradition to Russia**; that it is also clear from the evidence brought forth that the extradition procedure was monitored by the Kazakh authorities and was the subject of repeated exchanges between the Russian and Kazakh authorities during the investigation; **whereas all circumstances in this case show clearly that Mr Ablyazov's extradition to Russia was sought for a political purpose; therefore, such extradition could not be lawfully granted**… [Emphasis added]

Mr. Ablyazov's case was considered by a fifteen-judge panel of a chamber of France's supreme administrative court that is reserved for cases deemed to be of extraordinary importance.  In proceedings that ran for over a year (from November 2015 to December 2016), France's supreme administrative court therefore concluded that Kazakhstan, Ukraine and Russia had acted in concert seeking to prosecute Mr. Ablyazov for a *political purpose*.  See Exhibit 3:  English translation and French original of the *Conseil d'État* decision of December 9, 2016.



Mr. Ablyazov's rights under international laws of political asylum grant him protections from the persecuting state, of which the so-called "Kazakh Entities" (Crossclaim Plaintiffs City of Almaty, Kazakhstan and BTA Bank JSC), are very arguably an organ and instrumentality.

Asylum-related applications are confidential processes between an applicant and the country where the applicant is seeking refuge.  There are serious reasons to be cautious about the porousness of the lines between the "Kazakh Entities" and the Republic of Kazakhstan itself.

Before providing additional details about his status in France, Mr. Ablyazov posits that it is therefore important for the parties and/or the Court to determine how Boies Schiller Flexner and the "Kazakh Entities" are to deal with information that Mr. Ablyazov may be entitled to have withheld from the persecuting state, namely the Republic of Kazakhstan, specifically related to Mr. Ablyazov's status in France.

## 5.  Possible Ulterior Purposes of Crossclaim Defendants

Mr. Ablyazov respectfully wishes to underline that he is making every effort to participate meaningfully in these proceedings, in what are very challenging circumstances.

Further to his argument, accepted among others by France's supreme administrative court and by INTERPOL, that the Republic of Kazakhstan is using BTA Bank-related claims against him as a pretext for predominantly political purposes, he wishes to underline to this Court that he is suspicious of the Crossclaim Defendants' choices of Spain and the United Kingdom as possible venues for a deposition.  Mr. Ablyazov argues that the Crossclaim Defendants must know that both Spain and the United Kingdom are countries with which the Republic of Kazakhstan either has concluded or has been working on concluding bilateral extradition agreements, and that if Mr. Ablyazov visits either country for a deposition, there is a serious risk that he will be detained for extradition pursuant to a request from the Republic of Kazakhstan, irrespective of the cancellation by INTERPOL of the Red Notices against him.  The serious risk that Mr. Ablyazov could spend several more years in detention, repeating the process that he just went through in France, must be balanced against the Crossclaim Defendants' purposes in deposing Mr. Ablyazov in either of those two countries, even if he was able to travel outside France.

Mr. Ablyazov therefore submits that the Crossclaim Defendants are themselves not following Your Honor's guidance that the parties be practical and work in tandem on discovery.

I reiterate that I am serving as an intermediary as a courtesy to the parties and the Court, and I do not represent Mr. Ablyazov in the above-referenced lawsuit.

Respectfully,

P. Sll.

Peter J. Sahlas
Attorney & Counselor at Law (New York)

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

        Crossclaim Plaintiffs,

        -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV,
ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

        Crossclaim Defendants.

No. 15-CV-05345 (AJN) (KHP)

---

### DECLARATION OF MUKHTAR ABLYAZOV

I, Mukhtar Ablyazov, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I submit this declaration in connection with the request by the plaintiffs for international judicial assistance in the above-captioned case under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

2. I voluntarily agree to be deposed under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters in connection with the above-captioned case, and know that I cannot be subjected to any coercive measures, that I cannot be forced to participate or to appear, and that I have the right to invoke any exemption or prohibition to give evidence provided for by the laws of France or of the United States of America.

3. This declaration was translated to me in its entirety in the Russian language and I thereafter authorized the insertion of my scanned signature below.

Dated: September 4, 2017

_____
Mukhtar Ablyazov

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC, <br><br> Crossclaim Plaintiffs, <br><br> -against- <br><br> MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A., <br><br> Crossclaim Defendants. | No. 15-CV-05345 (AJN) (KHP) |

**DEFENDANT MUKHTAR ABLYAZOV'S RESPONSE TO**
**CROSSCLAIM-PLAINTIFFS' FIRST SET OF INTERROGATORIES**

I, Mukhtar Ablyazov, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

**Response to Interrogatory No. 1**

I do not have, and have never had, any kind of legal, financial, advisory, consultancy or business relationship, whether formal or informal, with Mr. Peter Sztyk. No documents exist that would reflect any such relationship.

**Response to Interrogatory No. 2**

Botagoz Dzhardemali worked at BTA Bank in the role of Managing Director between 2005 and 2009. Following the illegal nationalization of BTA Bank, she provided assistance from time to time to my legal team on a *pro bono* basis. This was done without any contract or agreement, and pertained mostly to political issues in Kazakhstan, matters of extradition, asylum applications, the cancellation of INTERPOL Red Notices, and human rights issues in

general.  Ms. Dzhardemali continues to this day to do such work on a *pro bono* basis.  I have no documents reflecting this informal relationship.

This document was translated to me in its entirety in the Russian language and I thereafter authorized the insertion of my scanned signature below.

Dated: September 4, 2017

_____
Mukhtar Ablyazov

2

**EXHIBIT 3**

Official Translation
Certified True Copy

# THE FRENCH *CONSEIL D'ETAT* (COUNCIL OF STATE)
in a final decision

N° 394399, 400239

Mr ABLYAZOV

Mr Clement Malverti
Rapporteur

Ms Beatrice Bourgeois-Machureau
Public rapporteur

Session of December 9, 2016

Reading on December 9, 2016

**FRENCH REPUBLIC**

**IN THE NAME OF THE PEOPLE**

The *Conseil d'Etat* in a final decision
(Claims Department)

On the report of the 2nd Chamber
of the Claims Department

Considering the following procedures:

1° Under ref. N°394399, Mr. Ablyazov filed a summary application, a supplementary brief, a reply brief and three new briefs on November 4, 2015, February 4, May 10, July 5, July 7 and October 21, 2016, requesting that the *Conseil d'Etat* annul a September 17, 2015 decree granting his extradition to the Russian authorities, on the grounds of *ultra vires*.

It sustains that

- the contested decree is vitiated for want of form in that the ampliation which is given to it is not signed by the Prime Minister or by the Minister of Justice, and it has not been established that the original act was signed.

- the contested decree is lacking in comprehension of the specialty principle and the favorable opinion of the examining chamber of the Court of Appeal of Lyon on October 24, 2014;

- the contested decree is vitiated by an error of law and an error of legal qualification when extradition is request for a political aim, in misunderstanding the stipulations of paragraph 2 of Article 3 of the European Extradition Convention of December 13, 1957;

- the contested decree was taken in the misunderstanding of Article 6 of the European Convention for the protection of the fundamental human rights and freedom of December 13, 1957 and the 7° of Article 696-4 of the French Code of Criminal Procedure, in that there are substantial ground to fear that he will not benefit from a fair trial once extradited to Russia;

- the contested decree was taken in the misunderstanding of Articles 2 and 3 of the European Convention for the protection of the fundamental human rights and freedom, of Article 3 of the Convention against torture and other penalties of cruel, inhuman or degrading treatment and Article 3 and 15 of the European Extradition Convention, in that, on the one hand, there are substantial reasons to think that, once extradited to Russia, he will be subject to treatment banned by these texts and, on the other hand, that the guarantees given by the Russian authorities in the matter are insufficient;

Official Translation
Certified True Copy

- the contested decree was taken in the misunderstanding of Article 3 of the European Convention for the protection of the fundamental human rights and freedom, of Article 3 of the Convention against torture and other penalties of cruel, inhuman or degrading treatment, of Article 18 and 19 of the Chart for fundamental rights of the European Union and Article 33 of the Geneva Convention relative to the status of refugees, in that there are substantial grounds of refoulement to Kazakhstan, the country in which he could be subject to torture and other degrading treatment; that, to rule on these grounds, the *Conseil d'Etat* shall refer to the European Union's Court of Justice a prejudicial question relative to the respective scope of protection from which a refugee or an asylum seeker may benefit in a member State and the protection conferred by Article 3 of the European Convention for the protection of the fundamental human rights and freedom;

- the contested decree is vitiated by an error of law and a violation of the principle of the separation of powers in that it provides that the Russian authorities shall not extradite him to third State without the authorization of the competent French legal authorities, even though in the matter of extradition, the executive is solely competent to take a decision relative to the execution of the specialty principle;

- the contested decree was taken in the misunderstanding of the principle of the ban on inhuman or degrading penalties or treatment taking into account the insufficient character of the guarantee given by Russia that no unconsented work penalty would to given and executed against him;

- the contested decree was taken in the misunderstanding of the second paragraph of Article 1 of the reserves issued by France and Article 8 of the European Convention for the protection of the fundamental human rights and freedom in that his extradition would have the effect of infringing disproportionately on the rights in respect to his private and family life;

- the contested decree was taken on the grounds of a request which does not meet the requirements of Article 12 of the European Extradition Convention and Article 696-8 of the French Code of Criminal Procedure, in the translation of the documents of the procedure present numerous imperfections;

- the contested decree was taken in the misunderstanding of Article 10 of the European Extradition Convention and the 5° of Article 696-4 of the French Code of Criminal Procedure in that certain facts for which extradition was granted are prescribed.


In four defense briefs registered on April 8, June 8, July 29 and November 18, 2016, the Minister of Justice filed a rejection of the petition. He sustained that the grounds raised by the applicant were unfounded.



2° Under ref. N°400239, Mr Ablyazov filed an application, a supplementary brief and a new brief on May 30, July 7 and October 21, 2016, requesting that the *Conseil d'Etat*:


1°) annul the Prime Minister's implied refusal to withdraw the decree of September 17, 2015, granting his extradition to the Russian authorities on the grounds of *ultra vires*;

Official Translation
Certified True Copy

2°) order the State to pay the sum of 5,000 Euros pursuant to Article L. 761-1 of the French Code of Administrative Justice

It is sustained that:

- the decision refusing to withdraw the decree of September 17, 2015 granting his extradition to the Russian authorities misunderstands Article 6 of the European Convention for the protection of the fundamental human rights and freedom, the reserves issued by France at the signing of the European Extradition Convention of December 13, 1957 and the 7° of Article 696-4 of the French Code of Criminal Procedure, in that, taking into account the conversion of the order by the Constitutional Court of the Russian Federation on July 14, 2015 and the constitutional revision of December 14, 2015, there is substantial cause to fear that he shall not benefit from a fair trial once extradited to Russia;

- the contested decision misunderstands Article 2 and 3 of the European Convention for the protection of the fundamental human rights and freedom and Article 3 of the Convention against torture and other penalties of cruel, inhuman or degrading treatment, in that, on the one hand, there are substantial reasons to think that, once extradited to Russia, he will be subject to treatment banned by these texts and, on the other hand, that the guarantees given by the Russian authorities in the matter are insufficient;

- the contested decision misunderstands the stipulations of paragraph 2 of Article 3 of the European Extradition Convention of December 13, 1957, in that there are substantial reasons to fear that his situation risks to be worsened with the consideration of political opinions.

In two defense briefs registered on, July 29 and November 18, 2016, the Minister of Justice filed a rejection of the petition. He sustained that the grounds raised by the applicant were unfounded.

Given the other supporting documents provided:

Considering :

- The Constitution, including its Preamble;

- The European Convention for the Protection of Human Rights and Fundamental Freedoms;

- The European Convention on Extradition of December 13, 1957;

- The Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment of December 10, 1984;

- The Criminal Code;

- The Code of Criminal Procedure;

- The Code of Administrative Justice;

After hearing in open session:

Official Translation
Certified True Copy

- A report by Mr. Clément Malverti , "auditeur".

- Conclusions by Ms Béatrice Bourgeois-Machureau, public rapporteur;

and counsel for Mr Ablyazov from the Waquet, Farge, Hazan, law firm who spoke before and after the conclusions.

1. Whereas, by decree of September 17, 2015, the Prime Minister granted to the Russian authorities the extradition of Mr. Ablyazov., a Kazakh national, on the basis of an order dated October 7, 2010 by a judge of the Tver District Court demanding his detention in connection with an investigation for acts of fraud and breach of trust on a large scale in an organized group, laundering on a large scale in an organized group, with prior agreement, attempted *ultra vires* by a person in a management position in a trading company with serious consequences and large-scale subtraction by fraud and breach of trust, falsification of official documents with intention to grant a right or release from an obligation in order to conceal another crime; that the applications filed by Mr. Ablyazov request the annulment for excess of power of such decree and implicit refusal to withdraw it; whereas it is necessary to combine those two applications in order to render a single decision;

2. Whereas, by virtue of a fundamental principle recognized by the laws of the Republic, the State shall refuse the extradition of a foreigner when it is requested for a political purpose; whereas, according to Article 3 (§2) of the European Convention on Extradition, extradition shall not be granted "*if the requested Party has substantial grounds for believing that a request for extradition for an ordinary criminal offence has been made for the purpose of prosecuting or punishing a person on account of his race, religion, nationality or political opinion, or that that person's position may be prejudiced for any of these reasons*" ;

3. Whereas it appears from the documents brought before this Court that Mr Ablyazov is an opponent of the political regime in Kazakhstan and that he has been recognized as a political refugee by the British authorities to protect him against the risks he would incur in his homeland ; that the evidence brought forth shows that the Kazakh authorities, who had previously pressured the Ukrainian authorities to request the extradition of Mr Ablyazov sought to pressure Russia to initiate criminal prosecution against Mr Ablyazov and pressure the Russian authorities to request the applicant's extradition to Russia; that it is also clear from the evidence brought forth that the extradition procedure was monitored by the Kazakh authorities and was the subject of repeated exchanges between the Russian and Kazakh authorities during the investigation; whereas all circumstances in this case show clearly that Mr Ablyazov's extradition to Russia was sought for a political purpose; therefore, such extradition could not be lawfully granted; whereas, without need to further examine the other pleas in the applications, Mr Ablyazov is justified in seeking the annulment, on the grounds of *ultra vires*, of the decree of September 17, 2015 by which the Prime Minister granted his extradition to the Russian authorities and of the PM's implied refusal to withdraw it.

Official Translation
Certified True Copy

4. Whereas there is cause, in the circumstances of the present case, to order the State to pay the sum of € 3,000 to Mr Ablyazov under the provisions of Article L. 761- 1 of the Code of Administrative Justice;

## THE COURT RENDERS THE FOLLOWING DECISION:

------------------------------------

Article 1: The decree of September 17, 2015 granting the extradition of Mr Mukhtar Ablyazov to the Russian authorities and the implied refusal to withdraw it are annulled.

Article 2: The State shall pay Mr Ablyazov a sum of € 3,000 under Article L. 761-1 of the Code of Administrative Justice.

Article 3: This decision shall be notified to Mr Mukhtar Ablyazov and to the French Minister of Justice.

Deliberated after the session of December 9, 2016 with the following present: Mr Bernard Stirn, President of the Claims Department, presiding; Mr Edmond Honorat, Mr Alain Ménéménis, Mr Rémy Schwartz, deputy Presidents of the Claims Department; Mr Didier Chauvaux, Mr Jacques-Henri Stahl, Mr Jean Courtial, Ms Pascale Fombeur, Mr Denis Piveteau, Mr Guillaume Goulard, Mr Mattias Guyomar, Presidents of Chambers, Ms Célia Vérot, Counselor of State and Mr Clément Malverti, auditeur-rapporteur.

Read at the hearing on December 9, 2016.

Signed by the President: Mr Bernard Stirn

Signed by the rapporteur: Mr Clément Malverti

Signed by the secretary: Ms Nabila Ammar-Khodja

The Republic commands and orders the Minister of Justice, where it concerns him or all bailiffs on this requirement, concerning the rights of common law, to put the present decision to execution.

True certified copy,

Signed by the secretary of the Claims Department, by delegation

**CONSEIL D'ETAT**
statuant
au contentieux

DP

**Nos 394399, 400239**

_____

M. ABLYAZOV

_____

M. Clément Malverti
Rapporteur

_____

Mme Béatrice Bourgeois-Machureau
Rapporteur public

_____

Séance du 9 décembre 2016
Lecture du 9 décembre 2016

_____

**REPUBLIQUE FRANÇAISE**

**AU NOM DU PEUPLE FRANÇAIS**

Le Conseil d'Etat statuant au contentieux
(Section du contentieux)

Sur le rapport de la 2ème chambre
de la section du contentieux

Vu les procédures suivantes :

1° Sous le n° 394399, par une requête sommaire, un mémoire complémentaire, un mémoire en réplique et trois nouveaux mémoires, enregistrés les 4 novembre 2015, 4 février, 10 mai, 5 juillet, 7 juillet et 21 octobre 2016, M. Mukhtar Ablyazov demande au Conseil d'Etat d'annuler pour excès de pouvoir le décret du 17 septembre 2015 accordant son extradition aux autorités russes.

Il soutient que :
- le décret attaqué est entaché d'un vice de forme dans la mesure où l'ampliation qui lui a été remise n'est pas revêtue de la signature du Premier ministre et de celle de la garde des sceaux, ministre de la justice et qu'il n'est pas établi que l'original de l'acte le soit ;

- le décret attaqué a été pris en méconnaissance du principe de spécialité et de l'avis favorable de la chambre de l'instruction de la cour d'appel de Lyon du 24 octobre 2014 ;

- le décret attaqué est entaché d'erreur de droit et d'erreur de qualification juridique dès lors que l'extradition a été demandée dans un but politique, en méconnaissance des stipulations du paragraphe 2 de l'article 3 de la convention européenne d'extradition du 13 décembre 1957 ;

- le décret attaqué a été pris en méconnaissance de l'article 6 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, des réserves émises par la France lors de la ratification de la convention européenne d'extradition du 13 décembre 1957 et du 7° de l'article 696-4 du code de procédure pénale, dans la mesure où il existe des motifs sérieux de craindre qu'il ne bénéficiera pas, une fois extradé en Russie, d'un procès équitable ;

- le décret attaqué a été pris en méconnaissance des articles 2 et 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, de l'article 3 de la convention contre la torture et autres peines ou traitement cruels, inhumains ou

dégradants et des articles 3 et 15 de la convention européenne d'extradition, dès lors, d'une part, qu'il existe des raisons sérieuses de penser qu'il sera soumis, une fois extradé en Russie, à des traitements prohibés par ces textes et, d'autre part, que les garanties fournies par les autorités russes en la matière sont insuffisantes ;

- le décret attaqué a été pris en méconnaissance de l'article 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, de l'article 3 de la convention contre la torture et autres peines ou traitements cruels, inhumains ou dégradants, des articles 18 et 19 de la Charte des droits fondamentaux de l'Union européenne et de l'article 33 de la convention de Genève relative au statut des réfugiés en ce qu'il existe des motifs sérieux de refoulement vers le Kazakhstan, pays dans lequel il risque d'être soumis à la torture et à d'autres traitements dégradants ; que le Conseil d'Etat doit, pour se prononcer sur ce moyen, renvoyer à la Cour de justice de l'Union européenne une question préjudicielle relative aux portées respectives de la protection dont bénéficie un réfugié ou un demandeur d'asile dans un Etat membre et de la protection conférée par l'article 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales ;

- le décret attaqué est entaché d'une erreur de droit et d'une violation du principe de la séparation des pouvoirs en ce qu'il prévoit que les autorités russes ne l'extraderont pas vers un Etat tiers sans l'autorisation des autorités judiciaires françaises compétentes, alors même qu'en matière d'extradition, l'exécutif est seul compétent pour prendre une décision relative à l'exécution du principe de spécialité ;

- le décret attaqué a été pris en méconnaissance du principe d'interdiction des peines ou traitements inhumains ou dégradants eu égard au caractère insuffisant de la garantie donnée par la Russie qu'aucune peine de travail non consenti ne sera prononcée et exécutée à son encontre ;

- le décret attaqué a été pris en méconnaissance du second alinéa de l'article 1$^{er}$ des réserves émises par la France et de l'article 8 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales en ce que son extradition aurait pour effet de porter une atteinte disproportionnée au droit au respect de sa vie privée et familiale ;

- le décret attaqué a été pris sur la base d'une demande qui ne satisfait pas aux exigences des articles 12 de la convention européenne d'extradition et de l'article 696-8 du code de procédure pénale, dès lors que la traduction des pièces de la procédure présente de nombreuses imperfections ;

- le décret attaqué a été pris en méconnaissance de l'article 10 de la convention européenne d'extradition et du 5° de l'article 696-4 du code de procédure pénale dès lors que certains faits pour lesquels sont extradition a été accordée sont prescrits.

Par quatre mémoires en défense, enregistrés les 8 avril, 8 juin, 29 juillet et 18 novembre 2016, le garde des sceaux, ministre de la justice, conclut au rejet de la requête. Il soutient que les moyens soulevés par le requérant ne sont pas fondés.

2° Sous le n° 400239, par une requête, un mémoire complémentaire et un nouveau mémoire, enregistrés les 30 mai, 7 juillet et 21 octobre 2016, M. Ablyazov demande au Conseil d'Etat :

1°) d'annuler pour excès de pouvoir le refus implicite du Premier ministre de retirer le décret du 17 septembre 2015 accordant son extradition aux autorités russes ;

2°) de mettre à la charge de l'Etat la somme de 5 000 euros au titre de l'article L. 761-1 du code de justice administrative.

Il soutient que :

- la décision refusant de retirer le décret du 17 septembre 2015 accordant son extradition aux autorités russes méconnaît l'article 6 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, les réserves émises par la France lors de la ratification de la convention européenne d'extradition du 13 décembre 1957 et le 7° de l'article 696-4 du code de procédure pénale, dans la mesure où, compte tenu de la novation résultant d'un arrêt de la Cour constitutionnelle de la Fédération de Russie du 14 juillet 2015 et de la révision constitutionnelle du 14 décembre 2015, il existe des motifs sérieux de craindre qu'il ne bénéficiera pas, une fois extradé en Russie, d'un procès équitable ;

- la décision attaquée méconnaît les articles 2 et 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales et l'article 3 de la convention contre la torture et autres peines ou traitement cruels, inhumains ou dégradants dès lors, d'une part, qu'il existe des raisons sérieuses de penser qu'il sera soumis, une fois extradé en Russie, à des traitements prohibés par ces textes et, d'autre part, que les garanties fournies par les autorités russes en la matière sont insuffisantes ;

- la décision attaquée méconnaît les stipulations du paragraphe 2 de l'article 3 de la convention européenne d'extradition du 13 décembre 1957 dès lors qu'il existe des raisons sérieuses de craindre que sa situation risque d'être aggravée pour des considérations d'opinions politiques.

Par deux mémoires en défense, enregistré les 29 juillet et 18 novembre 2016, le garde des sceaux, ministre de la justice, conclut au rejet de la requête. Il soutient que les moyens soulevés par le requérant ne sont pas fondés.

Vu les autres pièces des dossiers ;

Vu :

- la Constitution, notamment son Préambule ;

- la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales ;

- la convention européenne d'extradition du 13 décembre 1957 ;

- la convention contre la torture et autres peines ou traitements cruels, inhumains ou dégradants du 10 décembre 1984 ;

- le code pénal ;

- le code de procédure pénale ;

- le code de justice administrative ;

Après avoir entendu en séance publique :

- le rapport de M. Clément Malverti, auditeur,

- les conclusions de Mme Béatrice Bourgeois-Machureau, rapporteur public ;

La parole ayant été donnée, avant et après les conclusions, à la SCP Waquet, Farge, Hazan, avocat de M. Ablyazov ;

1. Considérant que, par décret du 17 septembre 2015, le Premier ministre a accordé aux autorités russes l'extradition de M. Mukhtar Ablyazov, ressortissant kazakh, sur le fondement d'une ordonnance du 7 octobre 2010 d'un juge du tribunal de district de Tver le plaçant en détention dans le cadre d'une enquête pour des faits qualifiés d'escroquerie à vaste échelle par fraude et abus de confiance en groupe organisé, de blanchiment à vaste échelle en groupe organisé, avec entente préalable, de tentative d'abus de pouvoir commise par une personne exerçant la gestion dans une société commerciale ayant entraîné des conséquences graves et soustraction à vaste échelle par fraude et abus de confiance, falsification de documents officiels destinés à accorder un droit ou à libérer d'une obligation en vue de dissimuler un autre crime ; que les requêtes de M. Ablyazov tendent à l'annulation pour excès de pouvoir de ce décret et de la décision implicite refusant de le retirer ; qu'il y a lieu de joindre ces deux requêtes pour statuer par une seule décision ;

2. Considérant qu'en vertu d'un principe fondamental reconnu par les lois de la République, l'Etat doit refuser l'extradition d'un étranger lorsqu'elle est demandée dans un but politique ; que, selon le paragraphe 2 de l'article 3 de la convention européenne d'extradition, l'extradition n'est pas accordée « *si la Partie requise a des raisons sérieuses de croire que la demande d'extradition motivée par une infraction de droit commun a été présentée aux fins de poursuivre ou de punir un individu pour des considérations de race, de religion, de nationalité ou d'opinions politiques ou que la situation de cet individu risque d'être aggravée pour l'une ou l'autre de ces raisons* » ;

3. Considérant qu'il ressort des pièces du dossier que M. Ablyazov est un opposant au régime politique du Kazakhstan et s'est vu reconnaître, en raison des risques qu'il encourt à ce titre, la qualité de réfugié politique à l'égard de ce pays par les autorités britanniques ; que les éléments versés au dossier font apparaître que les autorités kazakhes, qui avaient précédemment fait pression sur les autorités ukrainiennes pour qu'elles demandent l'extradition de M. Ablyazov, ont cherché à exercer une influence sur l'engagement en Russie de poursuites pénales contre M. Ablyazov et sur la présentation, par les autorités russes, de la demande d'extradition de l'intéressé vers la Russie ; qu'il ressort également des éléments versés au dossier que la procédure d'extradition a été suivie par les autorités kazakhes et a fait l'objet d'une concertation réitérée entre les autorités russes et kazakhes au cours de son instruction ; qu'il résulte de l'ensemble des circonstances de l'affaire que l'extradition vers la Russie de M. Ablyazov a été demandée dans un but politique ; qu'ainsi cette extradition ne pouvait être légalement accordée ; que, dès lors, sans qu'il soit besoin d'examiner les autres moyens des requêtes, M. Ablyazov est fondé à demander l'annulation pour excès de pouvoir du décret du 17 septembre 2015 par lequel le Premier ministre a accordé son extradition aux autorités russes et de la décision implicite refusant de le rapporter ;

N° 394399                                                                      - 5 -

        4. Considérant qu'il y a lieu, dans les circonstances de l'espèce, de mettre à la charge de l'Etat la somme de 3 000 euros à verser à M. Ablyazov, au titre des dispositions de l'article L. 761-1 du code de justice administrative ;

D E C I D E :

---------------

Article 1<sup>er</sup> : Le décret du 17 septembre 2015 accordant l'extradition de M. Mukhtar Ablyazov aux autorités russes et la décision implicite refusant de le rapporter sont annulés.

Article 2 : L'Etat versera à M. Ablyazov une somme de 3 000 euros au titre de l'article L. 761-1 du code de justice administrative.

Article 3 : La présente décision sera notifiée à M. Mukhtar Ablyazov et au garde des sceaux, ministre de la justice.

        Délibéré à l'issue de la séance du 9 décembre 2016 où siégeaient : M. Bernard Stirn, président de la section du contentieux, présidant ; M. Edmond Honorat, M. Alain Ménéménis, M. Rémy Schwartz, présidents-adjoints de la section du contentieux ; M. Didier Chauvaux, M. Jacques-Henri Stahl, M. Jean Courtial, Mme Pascale Fombeur, M. Denis Piveteau, M. Guillaume Goulard, M. Mattias Guyomar, présidents de chambre, Mme Célia Vérot, conseiller d'Etat et M. Clément Malverti, auditeur-rapporteur.

        Lu en séance publique le 9 décembre 2016.

Le Président :
Signé : M. Bernard Stirn

Le rapporteur :
Signé : M. Clément Malverti

Le secrétaire :
Signé : Mme Nabila Ammar-Khodja

        La République mande et ordonne au garde des sceaux, ministre de la justice, en ce qui le concerne ou à tous huissiers de justice à ce requis en ce qui concerne les voies de droit commun contre les parties privées, de pourvoir à l'exécution de la présente décision.

        Pour expédition conforme,

        Pour le secrétaire du contentieux, par délégation :

USM₅ₙ
SDNY

Pro Se Intake Unit

Daniel Patrick Moynihan U.S. Court

500 Pearl Street, Room 200

New York, NY 10007

New York NY, 10018

Broadway, Suite 6026

of Gamge LLP

RECEIVED
SDNY PRO SE
2018 AUG 14  AM 11:20