UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
CITY OF ALMATY, KAZAKHSTAN, and BTA
BANK JSC,

               Plaintiffs,

               v.

MUKHTAR ABLYAZOV, ILYAS
KHRAPUNOV, VIKTOR KHRAPUNOV and
TRIADOU SPV S.A.,

               Defendants.
-----------------------------------------------------------

No. 15-cv-05345(AJN)(KHP)

## DEFENDANT VIKTOR KHRAPUNOV'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS UNDER FRCP 12(b)(2) AND, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c)

SOLOMON & CRAMER LLP
*Attorneys for Defendants Ilyas Khrapunov
and Viktor Khrapunov*
1441 Broadway, Suite 6026
New York, New York 10018
(t) (212) 884-9102
(f) (516) 368-3891

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF THE CASE........................................................................................... 2

RENEWAL OF MOTION.................................................................................................. 7

POINT I   THE COURT HAS ALREADY HELD THAT PLAINTIFFS FAILED TO MAKE A
          PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER VIKTOR
          KHRAPUNOV UNDER NEW YORK LAW, AND JURISDICTIONAL
          DISCOVERY HAS FAILED TO ALTER THAT HOLDING................................... 9

POINT II  EXERCISING PERSONAL JURISDICTION OVER VIKTOR
          KHRAPUNOV WOULD VIOLATE THE DUE PROCESS CLAUSE.................. 11

POINT III VIKTOR IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE
          PLAINTIFFS HAVE NOT ALLEGED A CLAIM FOR FRAUDULENT
          CONVEYANCE AGAINST HIM ........................................................................ 15

CONCLUSION................................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
  902 F.2d 194 (2d Cir. 1990)................................................................................3, 9

*Beach v. Citigroup Alt. Invs. LLC,*
  2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014) ...........................................9

*Bensusan Restaurant Corp. v. King,*
  126 F.3d 25 (2d Cir. 1997)........................................................................................9

*Best Van Lines, Inc. v. Walker,*
  490 F.3d 239 (2d Cir. 2007)....................................................................................14

*Brown v. Lockheed Martin Corp.,*
  814 F.3d 619 (2d Cir. 2016)....................................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.,*
  883 F.3d 68 (2d Cir. 2018)......................................................................................13

*Cadle Co. v. Newhouse,*
  20 F. App'x 69 (2d Cir. 2001) .................................................................................16

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014).................................................................................................12

*Daventree Ltd. v. Republic of Azer.,*
  349 F. Supp. 2d 736 (S.D.N.Y. 2004).......................................................................9

*Emerald Asset Advisors, LLC v. Schaeffer,*
  895 F. Supp. 2d 418 (E.D.N.Y. 2012) ...........................................................2, 3, 10

*Fed. Deposit Ins. Corp. v. Porco,*
  75 N.Y.2d 840, 552 N.Y.S.2d 910 (1990) .........................................................15, 16

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,*
  218 F. Supp. 2d 369 (S.D.N.Y. 2002).....................................................................3, 8

*Friedman v. Bloomberg L.P.,*
  884 F.3d 83 (2d Cir. 2017)........................................................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011).................................................................................................12

*Hearn 45 St. Corp. v. Jano,*
  283 N.Y. 139 (1940) ................................................................................................15

*In re LIBOR-Based Fin. Instrs. Antitrust Litig.*,
    No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225 (S.D.N.Y. Aug. 4, 2015) .............11

*In re N. Sea Brent Crude Oil Futures Litig.*,
    No. 13-md-02475 (ALC), 2017 U.S. Dist. LEXIS 88316 (S.D.N.Y. June 8, 2017) ...... 10-11, 12

*In re Platinum & Palladium Antitrust Litig.*,
    No. 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624 (S.D.N.Y. Mar. 28, 2017).......... 12-13

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*,
    456 U.S. 694 (1982).........................................................................................................8

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)......................................................................................................14

*Kalin v. Xanboo, Inc.*,
    No 04 Civ. 5931 (RJS), 2009 U.S. Dist. LEXIS 34954 (S.D.N.Y. Mar. 30, 2009) .................17

*Lehigh Valley Indus. v. Birenbaum*,
    527 F.2d 87 (2d Cir. 1975)...........................................................................................14

*Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)..............................................................................................7

*Local 875 Int'l Bhd. of Teamsters Pension Fund v. Pollack*,
    992 F. Supp. 545 (E.D.N.Y. 1998) ..................................................................................9

*Marine Midland Bank v. Murkoff*,
    120 A.D.2d 122, 508 N.Y.S.2d 17 (App. Div. 1986) ........................................................15, 16

*McConnell v. Transatlantic Capital Corp.*,
    92 Civ. 5451 (MBM), 1993 U.S. Dist. LEXIS 12083 (S.D.N.Y. Aug. 31, 1993).....................10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..............................................................................................3

*O'Leary v. Indotronix Int'l Corp. (In re Chandre Corp.)*,
    Nos. 03-35669 (CGM), 05-9009 (CGM),
    2005 Bankr. LEXIS 3466 (Bankr. S.D.N.Y. Oct. 28, 2005) ....................................................15

*Ronar, Inc. v. Wallace*,
    649 F. Supp. 310 (S.D.N.Y. 1986) ...................................................................................3

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993)...........................................................................................16

*Strojmaterialintorg v. Russian Am. Commercial Corp.*,
    815 F. Supp. 103 (E.D.N.Y. 1993) ...................................................................................17

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ............................................................................................8

*Thackurdeen v. Duke Univ.*,
  130 F. Supp. 3d 792 (S.D.N.Y. 2015) ...........................................................................9

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
  216 F. Supp. 2d 198 (S.D.N.Y. 2002) ..........................................................................15

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
  560 F. App'x 52 (2d Cir. 2014) .....................................................................................3

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
  No. 16-cv-08507 (AJN), 2017 U.S. Dist. LEXIS 127283 (S.D.N.Y. July 26, 2017) ................15

*Walden v. Fiore*,
  571 U.S. 277 (2014) ..............................................................................................12, 13

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016) ....................................................................................11, 12

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ..................................................................................................12

**Statutes**

CPLR 302(a) .................................................................................................1, 7, 9, 11

Fed. R. Civ. P. 4(k)(1)(A) .............................................................................................7, 11

Fed. R. Civ. P. 12(b)(2) ..................................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................................15

Fed. R. Civ. P. 12(c) ..................................................................................................1, 15

New York Debtor and Creditor Law § 278 ...................................................................15

New York Debtor and Creditor Law § 279 ...................................................................15

Defendant Viktor Khrapunov, through his counsel Solomon & Cramer LLP, respectfully submits this memorandum of law in support of his motion to renew his motion to dismiss the Second Amended Crossclaims (Dkt. No. 433) of BTA Bank and the City of Almaty ("BTA/Almaty"), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and, alternatively, for judgment on the pleadings, pursuant to Rule 12(c).

## PRELIMINARY STATEMENT

The thread that ties Viktor Khrapunov to this case must now be cut. The Court has already found that BTA/Almaty failed to adequately allege personal jurisdiction over him under the so-called "conspiracy theory." In the year since the Court's order (on top of all the 2+ years before it), BTA/Almaty have failed to uncover any facts that change the jurisdictional calculus. As such, on renewal of Viktor Khrapunov's motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court should dismiss all remaining claims against him.

In the alternative, Viktor moves the Court for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure because it appears beyond doubt that BTA/Almaty can prove no set of facts that would establish liability against Viktor under New York's fraudulent conveyance law, which are the only claims remaining in the case against him. Viktor was neither a transferee nor a beneficiary of the alleged fraudulent conveyance of the interests in the two New York properties at issue, and Plaintiffs have alleged no basis upon which to hold Viktor liable under the extraordinary doctrines of "veil piercing" or "alter ego" liability.

# STATEMENT OF THE CASE[1]

On September 24, 2016, Viktor Khrapunov moved to dismiss BTA/Almaty's amended crossclaims (Dkt. No. 231) on various grounds, including that the Court lacked personal jurisdiction over him.  Dkt. No. 232 at pp. 5-12.

In opposing the motion, BTA/Almaty could not point to any jurisdictionally significant acts of Viktor Khrapunov in New York.  Instead, BTA/Almaty urged the Court to find "agency jurisdiction" under the so-called "conspiracy theory."  As the Court explained in its Memorandum and Order deciding the motion (Dkt. No. 426), to plead and prove "agency jurisdiction" under the "conspiracy theory" a plaintiff must overcome two barriers.  The first relates to the conspiracy itself, which requires facts showing:

> 1. a corrupt agreement between two or more parties; 2. an overt act in furtherance of the agreement; 3. the parties['] intentional participation in the furtherance of the plan or purpose; and 4. the resulting damage or injury.

Dkt. No. 426 at p. 47 (*quoting Emerald Asset Advisors, LLC v. Schaeffer*, 895 F. Supp. 2d 418, 432 (E.D.N.Y. 2012)).

The second turns on the connection between the defendant's act and the jurisdiction.  Here, a court must consider whether:

> (1) the out-of-state coconspirator had an awareness of the effects of the activity in New York, (2) the New York coconspirators' activity was for the benefit of the out-of-state conspirators, and (3)

---

[1] The motion is ripe.  Plaintiffs moved for a fifth extension of the discovery schedule, which the Court granted in part by extending fact discovery to August 31, 2018, with exceptions for the depositions of Mukhtar Ablyazov and Leila Khrapunov, until October 31, 2018.  Dkt. 649.  There has been no extension for jurisdictional discovery.  On June 20, 2018, Viktor renewed his motion to dismiss on personal jurisdictional grounds.  Dkts. 736-38.  Plaintiff cross-moved (without actually filing a notice of cross motion) for additional jurisdictional discovery from Viktor Khrapunov, a privilege log, and claiming that the motion was premature because the depositions of Gennady Petelin and Felix Sater had not taken place.  Dkts. 768-69.  Judge Parker granted the motion in part (Dkt. 800) and, as a result, the Court denied Viktor's motion without prejudice to renewal after the close of jurisdictional discovery.  Dkt. 807.  Viktor fulfilled all of the requirements of Judge Parker's order.  Dkt. 827.  While Judge Parker's order did not find that jurisdictional discovery included the completion of Petelin's and Sater's depositions, Petelin was deposed on August 21 and 22, 2018, while Sater is scheduled for September 13, meaning that his deposition will be completed before Plaintiffs' response to this motion is due.

that the coconspirators in New York acted at the behest of or on
behalf of, or under the control of the out-of-state conspirators.

*Id.* at p. 48 (*quoting Emerald Asset,* 895 F. Supp 2d at 431 and *citing Maersk, Inc. v. Neewra,*
*Inc.,* 554 F. Supp. 2d 424, 442-443 (S.D.N.Y. 2008)).

BTA/Almaty failed the second test.  The Court found that BTA/Almaty had not alleged
"a single paragraph expressly connect[ing] Viktor Khrapunov to the New York activities of the
'Ablyazov-Khrapunov Group.'"  Dkt. No. 426 at p. 49.  Their pleading, the Court added,
contained neither an allegation of "Viktor Khrapunov's 'awareness of the effects of the activity
in New York,' nor that the coconspirators in New York 'acted at the behest of or on behalf of, or
under the control of' Viktor Khrapunov."  *Id.* (citing *Emerald Asset*, 895 F. Supp. 2d at 431).[2]

But the Court did not dismiss, even though Plaintiffs had not alleged a *prima facie* case
for asserting personal jurisdiction.  Instead, BTA/Almaty received a lifeline—jurisdictional
discovery to try "to secure and present evidence relevant to the existence of jurisdiction."  *Id.* at
50.[3]  Were BTA/Almaty to find that Viktor had "knowledge of and control of the conspiracy's
activities in New York," the Court hypothesized, "they might be able to sustain their

---

[2] The Court noted that Viktor's status as father of Ilyas was insufficient to infer that Viktor was involved in any New
York activity, or that he directed, knew about, or had control over such activities.  *See First Capital Asset Mgmt.,*
*Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394-95, 399 (S.D.N.Y. 2002) (finding conclusory allegations of
domination and control by out-of-state mother and uncle insufficient to confer personal jurisdiction on a conspiracy
theory), *on reconsideration*, 219 F. Supp. 2d 576, *aff'd sub nom First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004); *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986)(finding conclusory
allegations that an out-of-state father exercised control over his in-state son's actions insufficient for agency
jurisdiction).
[3] To obtain limited "jurisdictional discovery," a plaintiff must "'plead legally sufficient allegations of jurisdiction'
and may do so 'through [his] own affidavits and supporting materials[,] containing an averment of facts that, if
credited . . ., would suffice to establish jurisdiction over the defendant.'"  *Universal Trading & Inv. Co. v. Credit*
*Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56 (2d Cir. 2014) (*quoting Whitaker v. Am. Telecasting, Inc.*, 261 F.3d
196, 208 (2d Cir. 2001)).  Viktor Khrapunov does not agree that BTA/Almaty met even this threshold standard, but
his reservation is academic because the discovery that has taken place does not fix the omissions in BTA/Almaty's
pleadings.  Moreover, the standard of review is now enhanced.  Post discovery, "where the parties have conducted
extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been
held—'the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an
*averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the*
*defendant.*'"  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (*quoting Ball v.*
*Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990)) (emphasis
added).

jurisdictional burden." *Id.*  Accordingly, although the Court denied Viktor's motion to dismiss on personal jurisdiction grounds, it did so "without prejudice to renew his claims following jurisdictional discovery." *Id.* at 53.

In the many months since the Court's decision, the parties have conducted extensive written, document and depositional discovery.  This process has unearthed no new evidence to bolster BTA/Almaty's jurisdictional allegations.

To be sure, neither plaintiff possesses evidence connecting Viktor Khrapunov to New York.  Their own 30(b)(6) witnesses admit this.

BTA's 30(b)(6) witness, Nurlan Nurgabylov, gave the following answer:



[Objection]

NN 5/3/17 at 279:6-279:11.[4]

Almaty's 30(b)(6) witness, Baourzhan Darmanbekov, gave the following answers:



[Objection]

DB 5/10/17 at 46:12-16.

…



---

[4] Deposition transcript excerpts are attached as exhibits to the previously filed Declaration of Andrew T. Solomon dated June 18, 2018. (Dkt. 738; the "Solomon Decl.").  Citation to the deposition transcripts in this case are in the form: "XX (deponent's initials) MM/DD/YY (date of deposition) at page : line number."

A. ████████████████

*Id.* at 62:21-25.

Similarly, Plaintiffs' cooperating witness, *Nicolas Bourg*, added nothing to bolster the jurisdictional case over Viktor.  When asked about his allegation that Viktor's funds "were used to create SDG," he conceded that it was based on speculation "because he was very close to Ilyas … -- it was a good supposition, I have no documentary evidence."  NB 9/11/17 at 144:23-145:8.[5] Bourg had met Viktor a few times socially and admitted that he had no evidence of Viktor investing in either SDG Capital or Triadou or Telford.[6]  *Id.* at 151:10-152:9.  He further confessed to lacking any personal knowledge about the truth of the allegations in this lawsuit against Viktor.  *Id.* at 153:21-154:12.

*Joseph Chetrit*—the principal of the transferee in this fraudulent transfer action—did not know Viktor Khrapunov (JC 5/25/17 44:17-18), never met him (*id.* at 58:14-15), and denied having any "first hand knowledge of the allegations against Mr. Viktor Khrapunov" (*id.* at 46:24-47-2).

BTA/Almaty itself took numerous depositions.  None yielded evidence supporting jurisdiction over Viktor.  For example, *Luigi Rosabianca*—a disbarred New York real estate attorney who is currently incarcerated, and who previously represented Triadou in connection with its U.S. real estate transactions, including in New York—testified that he neither met Viktor nor ever heard of him (LR 01/17/18 at 33:5-13).  *Elena Petelina*—who is married to Gennady Petelin, and her son is married to Ilyas Khrapunov's sister, Elivra Kudryshova—testified that she met Viktor in Geneva and Monaco in connection with the children's wedding (*id.* at 36:10-21)

---

[5] According to Plaintiffs, SDG Capital S.A., of which Ilyas Khrapunov was once President, owns Triadou SPV S.A. Dkt. No. 433 at ¶¶ 17, 20; Dkt. No. 426 at p. 3.  Triadou acquired the New York City properties, including the Flatotel and the Cabrini Medical Center, with the "Chetrit Entities."  Dkt. No. 426 at p. 3.
[6] Telford International Limited ("Telford") allegedly funded the New York City real estate investments of Triadou. Dkt. No. 426 at p. 3.

and, afterwards, at a meal in Moscow about seven years ago (*id* at 36:23-37:5).  Counsel asked

about her husband's business dealings with Ilyas but did not even ask about Viktor (*id.* at 56:15-

57:3).  *Phillipe Glatz*—who purportedly acquired SDG Capital S.A. in a "sham transaction"

(Dkt. No. 433 at ¶ 79)—was questioned over two days and was never asked once about Viktor.

*Marc Gillieron*—a lawyer in Geneva and partner in Chabrier Avocats (allegedly the "Swiss

counsel for the Khrapunov family and SDG" (Dkt. No. 433 at ¶ 70)—met Viktor in 2006 (MG

10/03/17 at 47:13-20) but provided no substantive testimony about him; Viktor's name appears a

few times in the transcript (mostly by way of identification), not once on a matter of

consequence.  Plaintiffs' lawyers also questioned *Cesar Cerrito*, Triadou's 30(b)(6) witness, but

asked no questions about Viktor.

Plaintiffs also deposed *Viktor* and *Ilyas*.  Neither testified that Viktor had any

involvement in or knowledge of the alleged activities in New York that could form a basis for

conferring personal jurisdiction over him.  Over two days of examination, Ilyas was barely

questioned about his father's involvement in the U.S. ventures.  He was asked (by Triadou's

counsel) whether Viktor had a management role in Swiss Development Group and SDG Capital,

and responded "no."  IK 2/2/18 at 21:22-22:2.

Viktor testified that he visited the United States twice in his life and New York only

once, in 2001 (VK 1/31/18 at 159:15-165:20).  That visit was "official," as part of a delegation

from the City of Almaty.  After that visit, he never returned to New York or to the U.S.  *Id.* at

165:20.  He has had no businesses, bank accounts, or real estate, including homes, in New York.

*Id.* at 166:2-15.

Viktor "never tried to get involved in Ilyas's business" nor did he "[exercise] any

influence on it."  *Id.* at 51:18-21.  He never obtained an interest in or interfered with his son's

business; never got involved in his business activities; and described his son as an independent, autonomous person. *Id.* at 52:7-14.

Viktor also had no relevant involvement with the other key players or entities. He never worked with Gennady Petelin, never invested money with him, never worked with him on an investment, and Mr. Petelin never assisted him in making an investment or potentially making an investment. In short, the relationship between them was "purely social and familial." *Id.* at 57:20-23. Viktor never heard of Triadou. *Id.* at 130:16-131:13. He never heard of Flatotel. *Id* at 131:14-18. He never heard of Cabrini Medical Center, Triadou County Mall, or the Syracuse Center either. *Id* at 131:19-25.

In addition to depositions, the parties exchanged thousands of documents. None (to our knowledge) revealed any evidence of Viktor's supposed participation in the New York activities that are alleged by BTA/Almaty.

In short, discovery has revealed no new facts that would be relevant to establishing personal jurisdiction over Viktor in this Court.

## RENEWAL OF MOTION

To establish personal jurisdiction over Viktor Khrapunov, Plaintiffs must clear three hurdles: *first*, that their service of process was procedurally proper; *second*, that they have a "statutory basis for personal jurisdiction that renders service of process effective"; and, *third*, that the exercise of personal jurisdiction "comport[s] with constitutional due process principles." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). Here, Viktor challenges the second and third elements, framed as the following issues:

- whether BTA/Almaty has established statutory jurisdiction pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. 302(a)(2); and

- if statutory authorization is satisfied, whether the due process requirements are met.

These jurisdictional requirements must be satisfied specifically as to Viktor Khrapunov and for each claim against him.  This is because personal jurisdiction is a matter of individual liberty, *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982), meaning that BTA/Almaty must "secure personal jurisdiction over each defendant."  *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).  And because jurisdiction would be "specific," not "general," Plaintiffs must establish it with respect to each claim asserted.  *See Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 24 (2d Cir. 2004*); First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002).

Accordingly, the inquiry turns on Viktor's role (if any) in the events underlying the two remaining claims against him: the Sixth and Seventh causes of action for actual and constructive fraudulent transfers.  Both arise out of "[t]he 2014 assignment of Triadou's interest in the Flatotel and Cabrini Medical Center," which BTA/Almaty claim was made "not for adequate consideration" (Dkt. No. 433 at ¶ 164) and to "hinder, delay, and defraud current and future judgment creditors, specifically the City of Almaty and BTA Bank."  *Id.* at ¶ 165.  Viktor is not alleged to be a "transferor" or "transferee" of the alleged fraudulent transfer, so he can only be liable if Almaty/BTA carries the "heavy burden" of piercing the "corporate veil."  Dkt. No. 426 at pp. 32-33.

The Court already found that the Second Amended Crossclaims do not allege a sufficient basis for statutory jurisdiction.  The question on renewal is whether jurisdictional discovery has changed anything.  The answer is, it has not.

## POINT I

## THE COURT HAS ALREADY HELD THAT PLAINTIFFS FAILED TO MAKE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER VIKTOR KHRAPUNOV UNDER NEW YORK LAW, AND JURISDICTIONAL DISCOVERY HAS FAILED TO ALTER THAT HOLDING

The burden to establish personal jurisdiction is on *BTA/Almaty.  See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  To meet this burden, Plaintiffs rely on N.Y. C.P.L.R. 302(a)(2), which permits the exercise of specific personal jurisdiction over "any non-domiciliary … who in person or *through an agent*: … commits a tortious act within the state…."

Under section 302(a)(2), the phrase "within the state" is taken literally and requires a defendant to have been "physically present in New York when he performed the wrongful act." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803-04 (S.D.N.Y. 2015).  But the word "agency" is not read so restrictively, and New York courts have held that a formal agency is not required; jurisdiction can be established through the acts of "co-conspirators."  *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 759 (S.D.N.Y. 2004) (citing, *inter alia, Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).  This devised judicial extension is known as the "conspiracy theory."  *Beach v. Citigroup Alt. Invs. LLC*, 2014 U.S. Dist. LEXIS 30032, at *33 (S.D.N.Y. Mar. 7, 2014); *Local 875 Int'l Bhd. of Teamsters Pension Fund v. Pollack*, 992 F. Supp. 545, 561 (E.D.N.Y. 1998).  To establish personal jurisdiction under section 302(a)(2) through the "conspiracy theory," a plaintiff must satisfy three levels of pleading requirements: (1) the underlying tort; (2) the conspiracy; and (3) the nondomiciliary defendant's awareness, benefit from and direction/control over the New York activity.  *Daventree Ltd.* 349 F. Supp. 2d at 759.

Having no evidence of Viktor committing a tortious act "in person" within the state, BTA/Almaty relies on the "conspiracy theory," which means that they must allege specific facts establishing that Viktor was aware of the New York activity, benefited from it, and that he, himself, participated in the New York activity or controlled others who did.  Dkt. No. 426 at 48-9 (citing *Emerald Asset Advisors,* 895 F. Supp. 2d 431; *Maersk, Inc.,* 554 F. Supp. 2d at 442-43); *see also McConnell v. Transatlantic Capital Corp.*, 92 Civ. 5451 (MBM), 1993 U.S. Dist. LEXIS 12083, at *5-6 (S.D.N.Y. Aug. 31, 1993).  Unfortunately for Plaintiffs, they are in no better a position now to establish this theory than when they filed their initial claims.

Jurisdictional discovery has uncovered no evidence supporting personal jurisdiction over Viktor under the "conspiracy theory."  BTA/Almay's own 30(b)(6) witnesses have admitted that they possess no evidence tying Viktor to a "conspiracy" to commit a tort (namely, the fraudulent transfers) in New York.  Viktor, for his part, denies any such involvement.  His testimony, which is unrebutted, establishes: that Viktor was not involved in Ilyas' business or in exercising any influence on it (VK 1/31/18 at 50:18-21); that Viktor never interfered in his son's business and that his son was an "independent autonomous person" (*id.* at 52:7-14); that Viktor did not act as a director for any of his son's companies. (*id.* at 136:22-22); and that Viktor did not even know that his son Ilyas did business in the U.S. until he learned about it in a newspaper article at the time of President Trump's inauguration in January or February 2017 (*id.* at 126:22-129:13).  Furthermore, no other witness has identified any act by Viktor in connection with the two New York real estate transactions.

Because no evidence demonstrates that Viktor was aware of the transactions underlying the fraudulent transfer, that he benefited from them, or that he participated in or controlled the transactions, dismissal is required.  *See, e.g., In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-

10

md-02475 (ALC), 2017 U.S. Dist. LEXIS 88316, at *30 (S.D.N.Y. June 8, 2017) (finding no agency or conspiracy jurisdiction because plaintiffs failed to allege facts showing that foreign defendant controlled, had knowledge of, or purposefully engaged in activities in the jurisdiction); *In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 107225, at *161 (S.D.N.Y. Aug. 4, 2015) ("plaintiffs have failed to plausibly allege a conspiracy to manipulate USD LIBOR for traders' benefit or to suppress LIBOR during the financial crisis"); *In re Satyam Comput. Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013) (finding no personal jurisdiction where plaintiff alleged "no facts … which connect any of the … Defendants with transactions occurring in the United States").

The Second Amended Crossclaims against Viktor must be dismissed based on the absence of a statutory basis for asserting personal jurisdiction over him.

## POINT II

### EXERCISING PERSONAL JURISDICTION OVER VIKTOR KHRAPUNOV WOULD VIOLATE THE DUE PROCESS CLAUSE

Even if BTA/Almaty could establish a statutory basis for personal jurisdiction over Viktor, pursuant to Federal Rule of Civil Procedure 4(k) and CPLR 302(a), the Court would still be required to dismiss because exercising personal jurisdiction over Viktor would violate federal due process limits.

The exercise of personal jurisdiction over a defendant is informed and limited by the Constitution's guarantee of due process under the Fifth and Fourteenth Amendments,[7] which requires that any jurisdictional exercise be consistent with "traditional notions of fair play and substantial justice." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks

---

[7] The analysis under the Fifth and Fourteenth Amendments is the same. *Waldman v. PLO*, 835 F.3d 317, 330 (2d Cir. 2016)

omitted)).  The inquiry examines two factors: "minimum contacts" and "reasonableness."

*Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016).  Where claims are based on state law, the

tests are based on contacts with the forum state, not the United States as a whole.  *See World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290-92 (1980).  Finally, as noted above,

personal jurisdiction must be established for each defendant and each claim.

Plaintiffs do not contend that Viktor is subject to general jurisdiction in New York; their

chips are on "specific jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014), that is,

whether the suit "arises out of or relate[s] to the defendant's contacts with the forum."  *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011) (quoting, *Helicopteros*

*Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984)).  In assessing these contacts, two

fundamental principles are at play:  *one*, "the relationship must arise out of contacts that the

'defendant *himself*' creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014)

(quoting *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985)); *two*, the "analysis looks to

the defendant's contacts with the forum State itself, not the defendant's contacts with persons

who reside there."  *Walden*, 571 U.S. at 285.

In assessing specific jurisdiction, the importance of the Supreme Court's recent decision

in *Walden* cannot be overstated.  It makes clear that personal jurisdiction does not exist unless

the defendant himself has the requisite contacts: the exercise of jurisdiction over an  "out-of-state

intentional tortfeasor must be based on *intentional conduct by the defendant that creates the*

*necessary contacts with the forum.*"  *Walden*, 571 U.S. at 286 (emphasis added).  In fact, post-

*Walden* courts have questioned the continued viability of the "conspiracy theory," *see, e.g., In re*

*N. Sea Brent Crude Oil Futures Litig.,* No. 13-md-02475 (ALC), 2017 U.S. Dist. LEXIS 88316,

at *31 (S.D.N.Y. June 8, 2017), and the theory has come under persistent criticism and is

narrowly construed. *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017

U.S. Dist. LEXIS 46624, at *149 (S.D.N.Y. Mar. 28, 2017)

Even if the "conspiracy theory" survives *Walden,* Plaintiffs obtain no succor. As the

Second Circuit recently explained, to establish personal jurisdiction under the "conspiracy

theory,"

> The plaintiff must allege that (1) a conspiracy existed; (2) the
> defendant participated in the conspiracy; and (3) a co-conspirator's
> *overt acts in furtherance of the conspiracy had sufficient contacts*
> *with a state to subject that co-conspirator to jurisdiction in that*
> *state.*

*Charles Schwab Corp. v. Bank of Am. Corp.,* 883 F.3d 68, 87 (2d Cir. 2018) (Lynch, J.) (*citing*

*Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013)) (emphasis added). The third

element is critical to the Supreme Court's "minimum contacts" jurisprudence because "to allow

jurisdiction absent a showing that a co-conspirator's minimum contacts were in furtherance of

the conspiracy would be inconsistent with the 'purposeful availment' requirement." *Id.*

Here, BTA/Almaty have not alleged, and cannot show, any "overt acts" by Viktor "in

furtherance of the conspiracy" that had contact with New York. To be sure, nothing in the

pleading goes to this requirement. The Sixth Cause of Action alleges that Triadou assigned its

interest in the Flatotel and Cabrini Medical Center to the Chetrit Group for less than fair value in

order to "liquidate a fixed asset to frustrate a future creditor." Dkt. No. 433 at ¶ 163-165. The

Seventh Cause of Action is based on the same transfer but relies on New York's constructive

fraudulent transfer statute. *Id.* at ¶¶ 168-173. Both claims are pleaded against "Defendants" as a

group, and neither contains an allegation that Viktor committed any act, much less one that

constitutes an "overt act," much less one that had a New York nexus.

Even BTA/Almaty's best spin falls far short of carrying the third-prong of the

"conspiracy theory" test. According to Plaintiffs,

> The Amended Crossclaims contain many specific allegations regarding Viktor Khrapunov's involvement in the conspiracy. Viktor Khrapunov was a founding member of the conspiracy, which arose in part to help launder funds he had stolen from Almaty. Id. ¶ 56-60.  Since Ablyazov's detention, the day-to-day operations of the Ablyazov-Khrapunov Group's money laundering operations have been run by Ilyas Khrapunov, in concert with Ablyazov and Viktor Khrapunov. Id. ¶ 43.  As recently as 2013, Viktor Khrapunov was actively involved in discussions concerning the investment of the conspiracy's stolen funds, including in Russian oil and energy assets through Gennady Petelin – an identified front man for the conspirators' operations. Id. ¶ 72.

Dkt. No. 241 at p. 32.

The Court was not persuaded.  In finding no jurisdiction under New York law, the Court found that although BTA/Almaty may have alleged that "Viktor Khrapunov was a member of a conspiracy to launder money generally, and to launder money using entities in Switzerland …," they have not connected him to the "New York activities of the 'Ablyazov-Khrapunov Group.'" Dkt. No. 426 at pp. 47-48.  The same observation applies in the due process analysis with equal effect; minimum contacts between Viktor and New York do not exist.

Consistent with the requirements of due process, and the important individual liberty interests at stake, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011), the Court should not permit further protraction of these proceedings against Viktor because the case for personal jurisdiction is simply non-existent.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (*citing Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998); *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975)).

# POINT III

## VIKTOR IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE PLAINTIFFS HAVE NOT ALLEGED A CLAIM FOR FRAUDULENT CONVEYANCE AGAINST HIM

In addition to dismissing the case against Viktor on personal jurisdictional grounds, the Court should, in the alternative, grant judgment on the pleadings in his favor under Rule 12(c)[8] of the Federal Rules of Civil Procedure because the Second Amended Crossclaims contain no factual allegations that, if proven, could establish Viktor's personal liability under New York's Debtor and Creditor Law ("DCL"), which are the only claims remaining against him.[9]

Under the DCL, a "creditor's remedy for the transfer of its debtor's assets, where undertaken prior to a judgment on the debt, is … to obtain a nullification of the conveyance (*see*, § 279) and, where undertaken after judgment, additionally to secure the assets in satisfaction of the debt (*see*, § 278)." *Fed. Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842, 552 N.Y.S.2d 910, 911 (1990). It is a remedial statute. Punishment is not the aim "[n]o matter how scandalous the conduct" (*Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 131, 508 N.Y.S.2d 17, 24 (App. Div. 1986)); the sole purpose "is to enable a creditor to obtain his due despite efforts on the part of a debtor to elude payment," *Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139, 142 (1940). As such, the DCL does not "create a creditor's remedy for money damages against parties who, … were neither transferees of the assets nor beneficiaries of the conveyance." *Porco*, 75 N.Y.2d at 842,

---

[8] The standards under Rule 12(c) are the same as under 12(b)(6). *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC,* No. 16-cv-08507 (AJN), 2017 U.S. Dist. LEXIS 127283, at *12 (S.D.N.Y. July 26, 2017). Though Plaintiffs' fraudulent conveyance claims fail under even notice pleading requirements, because the overall allegations sound in fraud, Rule 9(b) also applies. *See, generally, United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F. Supp. 2d 198, 222-23 (S.D.N.Y. 2002); *O'Leary v. Indotronix Int'l Corp. (In re Chandre Corp.),* Nos. 03-35669 (CGM), 05-9009 (CGM), 2005 Bankr. LEXIS 3466, at *24-25 (Bankr. S.D.N.Y. Oct. 28, 2005).

[9] The Sixth Cause of Action is for "Actual Fraudulent Transfer" arising out of "the 2014 assignment of Triadou's interest in the Flatotel and Cabrini Medical Center" for less than adequate consideration. (SAC ¶ 164). The purpose was to "remove an asset from the jurisdiction of the United States." (SAC ¶ 166). (BTA/Almaty do not allege that assets were actually removed.) The Seventh Cause of Action is for "Constructive Fraudulent Transfer," and is based on the same transaction. (SAC ¶ 173).

552 N.Y.S.2d at 911.  The remedy "is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance."  *Marine Midland*, 120 A.D.2d at 133.  In other words, the statute seeks to restore the status quo, but not to otherwise enhance a creditor's rights.  *Cadle Co. v. Newhouse*, 20 F. App'x 69, 73-74 (2d Cir. 2001).

With these principles in mind, it is plain that BTA/Almaty's claims under the DCL against Viktor are not plausible.  The basic rule is that the "New York Debtor and Creditor Law provide[s] a creditor's remedy for money damages against parties who [i] participate in the fraudulent transfer of a debtor's property and [ii] are transferees of the assets and beneficiaries of the conveyance."  *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993).  Neither element exists.  BTA/Almaty do not allege that Viktor participated in the transfer of the New York properties.  They also do not allege that Viktor was a "transferee" or "beneficiary."  The transferee and beneficiary could only be the Chetrit Group, which purchased Triadou's interest in the New York properties.  If the assignment of those interests was for less than fair consideration, Viktor did not and could not benefit directly (he was not a beneficiary or transferee).  In the words of the statute, as to Viktor, there is no "conveyance" to "set aside" and no property to "attach or levy execution on."

It is true that, in exceptional cases, that fraudulent conveyance liability can be expanded under the related doctrines of "veil piercing" and "alter ego."  But no such allegation is made against Viktor in the Second Amended Crossclaims[10], nor is it plausible that he could be liable on either ground.  Plaintiffs' remedy is against the Chetrit Group to restore the status quo; *i.e.*, to enable that which Plaintiffs would have recovered from Triadou (if anything) but for the

---

[10] In the Court's decision on the motion to dismiss, the Court identified certain allegations pertaining to Ilyas Khrapunov that might give rise to a basis for alter ego liability.  Dkt. 426 at pp. 33-34.  The Court made no similar observations about Viktor.  Moreover, even as to Ilyas, the "alter ego" type allegations, even if true, would not suffice to create liability against Ilyas for fraudulent conveyance as they pertain to the transferor, Triadou, not the transferee, the Chetrit Group.

conveyances.  Viktor simply had nothing to do with the Chetrit Group.  If Plaintiffs wanted to make the case that the Chetrit Group's veil could be pierced as to Viktor or that Viktor was an alter ego, they were required to plead those theories with factual particularity.

*Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (dismissing alter ego claim that is pleaded with conclusory allegations); *Kalin v. Xanboo, Inc.,* No 04 Civ. 5931 (RJS), 2009 U.S. Dist. LEXIS 34954, at *31 S.D.N.Y. Mar. 30, 2009) ("cursory or conclusory allegations are insufficient to state a prima facie claim of alter ego liability"). They did not.

Because the Second Amended Crossclaims do not allege that Viktor was a transferee, a beneficiary or the alter ego of a transferee or beneficiary of the New York property transfers at issue in the fraudulent conveyance claims, judgment on the pleadings in Viktor's favor is required.

## **CONCLUSION**

For the foregoing reasons, in light of the absence of any facts supporting the exercise of personal jurisdiction over Viktor Khrapunov under any viable theory of law, Viktor Khrapunov respectfully requests the Court to dismiss the Amended Crossclaims against him or grant him judgment on the pleadings.  If dismissal is not granted on personal jurisdiction grounds, judgment on the pleadings is warranted because BTA/Almaty have failed to allege a viable theory of recovery against Viktor under New York Debtor And Creditor Law.

Dated:  New York, New York
          September 8, 2018

SOLOMON & CRAMER LLP
*Counsel for Defendants Viktor Khrapunov*
*and Ilyas Khrapunov*

By: /s/Andrew T. Solomon
      Andrew Todd Solomon
1441 Broadway, Suite 6026
New York, New York 10018
t: (212) 884-9102
f: (516) 368-3896
asolomon@solomoncramer.com