**Solomon & Cramer LLP**
1441 Broadway, Suite 6026
New York, New York 10018
(t) 212-884-9102
(f) 516-368-3896
----------
Andrew T. Solomon
Jennifer G. Cramer

September 20, 2018

**Via ECF**

Hon. Katherine H. Parker, U.S.M.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 906
New York, NY 10007

      Re: *City of Almaty v Ablyazov,* 1:15-CV-5345 (AJN) (KHP)

Dear Judge Parker:

This firm represents defendants Viktor Khrapunov and Ilyas Khrapunov.

The Khrapunovs demand broad discovery from BTA/Almaty relating to their transactions and interactions with three key fact witnesses: Frank Monstrey, Felix Sater, and Nicolas Bourg. This discovery is warranted on three grounds: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬ (ii) to uncover evidence of bias, and (iii) as to Sater, to determine whether he has violated various confidentiality obligations to which he is subject.

***The Anti-Gratuity Statute.*** Under 18 U.S.C. § 201(c)(2), it is a crime whenever someone "directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, … or any … officer authorized by the laws of the United States to hear evidence or take testimony …." There is a carve out: it is permissible to reimburse a witness for out-of-pocket expenses and for time lost preparing and testifying for court proceedings. 18 U.S.C. § 201(d); *Prasad v. MML Investor Services, Inc.*, 2004 U.S. Dist. LEXIS 9289, 2004 WL 1151735, at *5-*6 (S.D.N.Y. 1996). But it is illegal to shower a potential fact witness with financial payments (through settlement, consulting, or indemnification agreements), to overcome hostility and to procure cooperation and testimony. *New York v. Solvent Chemical Co., Inc.*, 166 F.R.D. 284 (W.D.N.Y. 1996); *cf. In re Ballard*, 238 B.R. 610, 656 (Bankr. M.D. La. 1999) ("We recognize that a (transparent) facade could be placed upon such a giving of value, that being the settlement and compromise of the debtor's claim to an interest in the lawsuit …. We should not pass the debtor a slice of the property under the guise of a 'compromise' of the debtor's claims").

It is also illegal to pay conditional compensation (*i.e.,* a bounty) to a potential fact witness because doing so provides an incentive to commit perjury or, if not outright perjury, to tailor testimony in order to obtain compensation and foster the relationship created. 18 U.S.C. § 201(c)(2); *In re Telcar Grp., Inc.*, 363 B.R. 345, 353-55 (Bankr. E.D.N.Y. 2007). These arrangements are not permitted even if the witness is encouraged to tell the truth: "The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true." *In re Robinson*, 151 A.D. 589, 136 N.Y.S. 548 (App. Div. 1912).

███████████████████████████████████████████████████████████████████████████████.

***Frank Monstrey***. ███████████████████████████████████████
███████████████████████████████████████████ On May 7, 2018, BSF asked the Court to extend fact discovery so they could depose a "confidential witness," ███████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███ The Court noted the "apparent gamesmanship" with respect to Monstrey, but authorized his deposition, subject to Plaintiffs' timely production of Monstrey-related documents. Dkt 773.

Despite the Court's orders, the deposition of Monstrey—recognized by the Court as "Plaintiff's witness" and subject to a "cooperation agreement" (Dkt. 787)—was an unfunny circus. Documents were produced late (or not at all) and some ostensibly with AEO designations (which the Court quickly eliminated, Dkt. 787). ████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████



*Felix Sater*. Felix Sater, a twice convicted felon—once for assault and once for stock fraud[5]—claims to have been involved in all of the U.S. real estate transactions at issue in this case. His participation ended with a dispute following the Tri-County Mall deal, the proceeds of which were approximately $42 million.[6] In a profanity-laced deposition, Sater claims that, in late 2013, Ilyas Khrapunov denied him his share of the profits. But it was Sater who controlled the Tri-County Mall proceeds, and he moved them to other banks to hide them from their owner (Triadou's affiliate company).[7] He then sent millions of dollars in wire transfers to entities he controlled (including the notorious Trump-linked Bayrock[8]); made five and six-figure payments from company accounts to his personal AMEX card; and made more than a dozen cash ATM withdrawals, usually for $1,003, from an ATM. He even paid his lawyers from company funds.

---

[1] BTA eventually did produce the statement, so apparently there is an avenue available when it serves BTA's needs.
[2] http://www.morningstar.co.uk/uk/news/AN_1490015231853472200/extra-nostrum-oil-chairman-monstrey-hit-by-uk-high-court-injunction.aspx and https://uk.webfg.com/news/news-and-announcements/high-court-prevents-nostrum-oil-gas-chairman-dealing-with-his-assets--2581766.html
[3] On February 1, 2018, BTA and Nostrum announced their settlement. http://www.morningstar.co.uk/uk/news/AN_1517479433243756900/nostrum-oil--gas-agrees-with-bta-bank-to-drop-all-claims.aspx
[4] http://www.prnewswire.co.uk/news-releases/bta-bank-and-claremont-settle-nostrum-dispute-and-bta-bank-acquires-nostrum-shares-628102853.html#
[5] *See Tri-County Mall Investors LLC v. Sater*, Index No. 654361/2013 (Dkt. No. 9).
[6] *See Tri-County Mall Investors LLC v. Sater*, Index No. 654361/2013 (Dkt. No. 1).
[7] *Id.*
[8] https://www.bloomberg.com/view/articles/2017-06-21/trump-russia-and-those-shadowy-sater-deals-at-bayrock

Hon. Katherine H. Parker, U.S.M.J.
September 20, 2018
Page 4



At his deposition, Sater was able to vividly and colorfully recount pre-2013 conversations with the Khrapunov family, yet he could not explain the millions of dollars that he took prior to the settlement.  We would have enjoyed questioning Sater about

*Nicolas Bourg.*

---

[9] *See, e.g., Patel v. 7-Eleven, Inc.*, No. CV 14-00519 PSG (DTBx), 2015 U.S. Dist. LEXIS 92696, 13-14 (C.D. Cal. Apr. 14, 2015) (                                                                                                                                     )



If they are to get a fair trial, the Khrapunovs must receive complete disclosure from BTA/Almaty of their dealings with these three witnesses. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ If privilege is claimed, a log must be provided. BTA/Almaty (and possibly their investigators) will have to be deposed to examine ████████████████████████████████ Separately, as to Sater, the Khrapunovs are also entitled to know exactly what information he provided and under what circumstances, because Plaintiffs' use of these materials may be restricted due to the potential breach of confidentiality. *See, generally, City of Almaty v. Ablyazov*, 1:15-CV-05345 (AJN)(KHP) (Docket No. 418).

Beyond the private interests, ████████████████████████████████████████████:

> The payment of a sum of money to a witness to testify in a particular way; the payment of money to prevent a witness' attendance at a trial; the payment of money to a witness to make him "sympathetic" with the party expecting to call him; these are all payments which are absolutely indefensible and which are really included in the general definition of subornation of perjury. The payment of a sum of money to a witness to "tell the truth" is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true.

*In re Robinson*, 151 A.D. at 600, 136 N.Y.S. at 556. ████████████████████████████ but it will take broad disclosure to uncover the true nature and impact of Plaintiffs' actions.

---

[10] It is unethical for a lawyer to pay witnesses consideration beyond expenses, *see generally* Restat 3d of the Law Governing Lawyers, § 117 (3rd 2000). But to be clear, we are *not* accusing BSF of any ethical or legal violations. The evidence shows potentially illegal and improper activities of their clients, BTA/Almaty.

Hon. Katherine H. Parker, U.S.M.J.
September 20, 2018
Page 6

Respectfully submitted,

/s/Andrew T. Solomon

Andrew T. Solomon
(m) 917-664-5575
asolomon@solomoncramer.com

Hon. Katherine H. Parker, U.S.M.J.
September 20, 2018
Page 7

**Addenda**

| Ex | Date | Description | Seal |
|---|---|---|---|
| 1 | 2/8/2012 | Sater Ex 4: ▮ | Y |
| 2 | 12/23/2013 | Sater Ex. 14: ▮ | Y |
| 3 | 4/13/2017 | Bourg Ex 2: ▮ | Y |
| 4 | 6/1/2017 | FM Ex. 2: ▮ | Y |
| 5 | 9/11/2017 | Bourg Day 1 Deposition Excerpts | N |
| 6 | 9/12/2017 | Bourg Day 2 Deposition Excerpts | N |
| 7 | 5/10/2018 | Dkt. 649-Order Extending Discovery | N |
| 8 | 5/24/2018 | BSF Letter to Judge Parker re depositions | Y |
| 9 | 5/24/2018 | BSF Letter, Ex. 1: ▮ | Y |
| 10 | 6/28/2018 | Dkt. 750 Monstrey Deposition Order | N |
| 11 | 7/17/2018 | Monstrey Deposition Excerpts | Y |
| 12 | 9/13/18 | Sater Deposition Excerpts | Y |