# Exhibit 10

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6-28-2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CITY OF ALMATY, KAZAHKSTAN, and
BTA BANK JSC,

                                         Plaintiffs,           **DISCOVERY ORDER**

       -against-                                     15-CV-05345 (AJN) (KHP)

MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV,
VIKTOR KHRAPUNOV, and TRIADOU SPV S.A.,

                                       Defendants.

------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      This Court recently granted Plaintiffs' request for an extension of the discovery schedule. (Doc. No. 649). The Court granted Plaintiffs permission to take certain depositions but stated it had insufficient information to rule on the appropriateness of three additional depositions (of Frank Monstrey, Aleksandr Udovenko, and Jody Hudson) that would be in excess of the 10-deposition limitation set forth in the Federal Rule of Civil Procedure 30(a) ("Rule 30(a)"). Presently before the Court is Plaintiffs' motion for permission to take these three additional depositions (Doc. No. 693) which provides detailed information about the relevance of the information sought from the witnesses and argues that the additional discovery is proportional to the needs of the case. For the reasons set forth below, Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART.**

### Legal Standard

      Although the Federal Rules of Civil Procedure impose a presumptive limit of 10 depositions by each side in a litigation, Rule 30(a)(2) requires the court to grant leave for a

1

party to exceed ten depositions if the party's application is "consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2).  Rule 26(b)(1) restricts discovery to information that is both relevant to the claims and defenses in the case and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2)(C) imposes further limits, directing that courts **must** limit discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, or when the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.  Fed. R. Civ. P. 26(b)(2)(C); *see also Atkinson v. Goord*, No. 01-cv-0761 (LAK) (HBP), 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009).  Under this standard, Plaintiffs bear the initial burden of demonstrating relevance and proportionality.  Additionally, to the extent the discovery is alleged to run afoul of the limits of Rule 26(b)(2)(C), Plaintiffs must rebut those arguments.

   The limitations in Rule 26 (which are incorporated into Rule 30 as well) are "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-10067 (KPF) (SN), 2017 WL 3610511, at *6 (S.D.N.Y. Aug. 21, 2017) (citations and internal quotation marks omitted).

**Discussion**

**Plaintiff's Statements Regarding Relevance of Depositions**

The Court presumes knowledge of the factual background of this case (contained in numerous prior orders) and does not repeat it here. Plaintiffs' explanation of the information sought from the three witnesses is summarized as follows:

1. ***Frank Monstrey*[1]**

Mr. Monstrey, a Belgium resident, is the former C.E.O. of Nostrum Oil & Gas PLC ("Nostrum"), an energy company operating in Kazakhstan. According to Plaintiffs, Monstrey was "behind" a series of wire transfers from Sartfield Limited to Northern Seas Waterage accounts at FBME Bank. As discussed in this Court's Order dated June 21, 2018 concerning a document subpoena on Gennedy Petelin (the "June 21 Order," Doc. No. 749), Northern Seas Waterage is owned by Gennedy Petelin. According to Plaintiffs, Northern Seas Waterage "funneled" more than $450 million of funds allegedly stolen from Plaintiffs by Defendants Mukhtar Ablyazov and Viktor Khrapunov through accounts at FBME Bank, $70 million of which was transferred through a series of intermediary companies to Defendant Triadou SPV S.A. ("Triadou").[2] Plaintiffs believe that Monstrey will testify "that the wires he directed to Northern Seas Waterage were made on account of a debt purportedly owed to Ablyazov" and help them prove that the funds deposited into Northern Seas Waterage are traceable to

---

[1] Plaintiffs previously refused to disclose the name of Monstrey but have since disclosed his name to Defendants, thereby alleviating this Court's grave concerns about Plaintiffs' non-compliance with Federal Rule of Civil Procedure 26(a)(1).
[2] The Court identified the intermediary companies it deems relevant to this action in its June 21 Order. To the extent this Court refers to those intermediary companies herein, it is referencing the same companies identified as relevant in the June 21 Order.

Ablyazov. Plaintiffs contend that they did not know until March 2018 that Monstrey could be tied to Northern Seas Waterage and therefore waited until recently to seek his deposition.

### 2. Aleksandr Udovenko

Udovenko was an associate of Ablyazov when Ablyazov was chairman of BTA Bank. Udovenko also was Monstrey's primary point of contact with Ablyazov and thus may be able to corroborate Monstrey's testimony concerning money deposited into Northern Seas Waterage. Udovenko also may have knowledge or information about whether Ablyazov-controlled funds transferred from Northern Seas Waterage through intermediary companies to Triadou were transferred at the direction of, and for the benefit of Ablyazov. Udovenko is located in the United States and should be available to provide testimony within the discovery schedule.

### 3. Jody Hudson

Hudson, Chief Human Capital Officer for the U.S. Department of Energy, dates and lives with Ablyazov's sister in Virginia. According to Plaintiffs, Hudson recently produced documents indicating that he acted as an intermediary for Ablyazov in connection with various transactions and facilitated his evasion of law enforcement in Europe. He purportedly has knowledge about funds paid from a company called San Vito to property brokers in France who helped locate a residence for Ablyzov in France. Other testimony in the case has suggested that Petelin controls San Vito. Plaintiffs believe Hudson can provide clarity on this discrepancy and whether Petelin was acting as a "front-man" for Ablyazov. This evidence would enable Plaintiffs to attack the credibility of Petelin's testimony that he was the source of money loaned to Triadou for its U.S. real estate investments.

**Defendants' Opposition to Depositions**

The Khrapunovs and Triadou submitted letters (Doc. Nos. 709 and 719) in opposition to Plaintiffs' motion for permission to take the three depositions. All contend that Plaintiffs have known about Monstrey for a long time and should have noticed his deposition sooner, not in the last few months of discovery, that any testimony he gives is unreliable, and that the costs of deposing Monstrey in Belgium would be excessive in light of the limited utility of his anticipated testimony.

Triadou provides some interesting facts in support of its contention that Monstrey's testimony would be unreliable and that Plaintiffs' counsel has misrepresented when they first learned of Monstrey's supposed knowledge about this case. It states that Plaintiff BTA Bank has known of Monstrey since March 2017 when it sought a freezing order in the United Kingdom against Monstrey's company, Nostrum. In its application for the freezing order, BTA Bank represented that Monstrey also controlled an entity named Claremont Holdings Limited ("Claremont") that transferred funds to Northern Seas Waterage, Inc. Three months after filing the motion for a freezing order, BTA acquired a stake in Claremont and Nostrum – Mr. Monstrey's companies — as a settlement of the UK matter. Thus, Triadou contends that Plaintiffs' counsel has misrepresented the timeline as to when they knew about Monstrey's purported relevance to this action. Triadou also argues that Plaintiffs offer no basis to support their contention that Monstrey would testify that companies in which he had an interest made transfers of money to Northern Seas Waterage on account of a debt owed to Ablyazov, and they further question Monstrey's credibility on such anticipated testimony given his settlement agreement with Plaintiffs in which they own an interest in Monstrey's companies. Triadou also

5

contends that Monstrey's testimony will be redundant of Ablyazov's and Petelin's testimony. Finally, Triadou states that it requires certain documents to effectively cross examine Monstrey if the Court permits his deposition, including the Claremont settlement agreement, documents sufficient to show BTA's interest in Claremont and Nostrum, and documents sufficient to show financial payments to Monstrey from Plaintiffs and the scope of any agreement to cooperate between Mr. Monstrey and BTA, and documents produced by Monstrey to BTA upon which BTA may rely in this action.

      Defendants also state that Plaintiffs have known about Udovenko and Hudson for some time and could have conducted their depositions sooner.  In fact, Plaintiffs filed claims against Udovenko in the UK in 2009.  Triadou also questions the relevance of the information Udovenko has concerning the source of Triadou's money given that there is no dispute Udovenko has not been involved with Ablyazov since 2009 — well before the relevant loan to Triadou used to make the U.S. real estate investments at issue in this case.  Triadou also points out that Udovenko would have only second-hand information concerning Monstrey's activity and that his testimony would be duplicative of Monstrey's testimony (if permitted) and Ablyazov's testimony (which has been noticed).

      Triadou also disputes the relevance of the documents produced by Hudson, stating that they consist of a compilation of emails to Ablyazov forwarding news articles or concerning French vacation rentals, Wikileaks print-outs concerning Kazakhstan, and two publicly-available corporate documents — nothing related to the source of Triadou's funds.

**Analysis**

As noted above, Plaintiffs must "demonstrate[] that each and every one of the proposed deponents would provide sufficiently unique information, not cumulative or duplicative of others, to justify the additional burden on the defendants of defending" the depositions of Messrs. Monstrey, Udovenko, and Hudson. *In re Weatherford Int'l Sec. Litig.*, No. 11-cv-1646 (LAK) (JCF), 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013) (granting leave to depose only the uncontested number of additional depositions).

Plaintiffs have failed to do this with respect to Udovenko and Hudson. The critical issue in this case is whether the funds used by Triadou to invest in U.S. real estate are traceable to Ablyazov. Udovenko had no dealings with Ablyazov after 2009. The loan to Triadou from Telford occurred years later. Besides supposedly being able to corroborate Monstrey's testimony that he spoke to Ablyazov through Udovenko more than 10 years ago, it appears highly unlikely that Udovenko can assist in tracing money from Monstrey's companies through the intermediary companies to Triadou. Monstrey and Petelin will be the best sources of this information. Likewise, San Vito is not identified as one of the intermediary companies through which Ablyazov-tainted money allegedly flowed to Triadou. Further, the fact that one of the individual defendants in this case speculated that Petelin had an interest in San Vito, while Plaintiffs believe that Ablyazov instead had an interest, is irrelevant when no funds from San Vito are pertinent to the source of Triadou's funds. Moreover, this Court has already granted Plaintiffs the ability to uncover other evidence of Petelin's ties to Ablyazov through its prior Orders granting discovery of certain financial information and bank records from Petelin and

Petelin's companies.  Any information from Hudson on this point is duplicative and most likely less reliable than the financial records Plaintiffs already will be receiving.

Plaintiffs have sufficiently demonstrated the relevance of Monstrey's deposition – he apparently has information as to the source of money initially deposited into Northern Seas Waterage — the beginning of the chain of money transfers that Plaintiffs contend ultimately flowed to Triadou.  Plaintiffs also have demonstrated that this one additional deposition will be proportional to the needs of the case considering Plaintiffs' relative access to relevant information and the importance of the discovery in resolving the source of Triadou's funds.  The Court is satisfied that Monstrey's deposition is not unreasonably cumulative or duplicative, and, given the international nature of this case and that multiple depositions have been taken in Europe, this Court does not view the fact that the deposition will take place in Belgium as unduly burdensome.  Further, because Monstrey has volunteered to make himself available in July, his deposition will not extend the discovery schedule.

The Court is troubled, however, by Plaintiffs' apparent gamesmanship in discovery with respect to identification of Monstrey and notice of his deposition.  To ensure that Defendants have sufficient information to prepare for Monstrey's deposition, **by no later than 5 days in advance of Monstrey's deposition**, Plaintiffs shall produce the Claremont settlement agreement, documents sufficient to show BTA's interest in Claremont and Nostrum, documents sufficient to show financial payments to Monstrey from Plaintiffs, any agreement to cooperate between Mr. Monstrey and BTA, and documents produced by Monstrey to BTA upon which BTA may rely, or that relate to Defendants' defenses in this action.  Additionally, Plaintiffs' counsel's questions to Monstrey shall be restricted to questions pertaining to whether monies

deposited into the accounts of Northern Seas Waterage were repayment of a debt to Ablyazov, and/or Monstrey's knowledge as to whether any of the debt repayment funds were earmarked or transferred to, or intended to be transferred to, Triadou through any of the relevant intermediary companies identified in this Court's prior Order (Docket No. 749).

## Conclusion

For the reasons set forth above, Plaintiffs' request to take the depositions of Udovenko and Hudson is DENIED, but their request to take the deposition of Monstrey is GRANTED.

**SO ORDERED.**

Dated: June 28, 2018
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge