**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 15-cv-05345 (AJN) (KHP) |
| MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV, VIKTOR KHRAPUNOV and TRIADOU SPV S.A., | ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' OPPOSITION TO VIKTOR KHRAPUNOV'S
RENEWED MOTION TO DISMISS AND
MOTION FOR JUDGMENT ON THE PLEADINGS**

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Crossclaim Plaintiffs City of
Almaty, Kazakhstan and BTA Bank*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................ 1

**BACKGROUND** ...................................................................................................... 1

**ARGUMENT** ........................................................................................................... 4

    A.     Viktor Khrapunov's Motion to Dismiss Remains Premature ................................. 4

    B.     This Court Has Personal Jurisdiction Over Viktor Khrapunov ............................. 7

    C.     Exercising Jurisdiction Over Viktor Does Not Violate the Due Process Clause.... 9

    D.     Plaintiffs Have Alleged a Claim for Fraudulent Conveyance Against Viktor Khrapunov ........................................................................................................... 12

# TABLE OF CONTENTS

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) ............................ 12

*Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633 (S.D.N.Y. 2013) ................................. 12

*Charles Schwab Corporation v. Bank of Am. Corporation*, 883 F.3d 68 (2d Cir. 2018) ....... 11, 12

*Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418 (E.D.N.Y. 2012) ....................... 8

*Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 258 F. Supp. 3d 350 (S.D.N.Y. 2017) ........................... 12

*Heller v. Consolidated Rail Corp.*, 331 F. App'x 76 (2d Cir. 2009) ........................................... 13

*In re Satyam Comput. Servs. Sec. Litig.*, 915 F. Supp. 2d 450 (S.D.N.Y. 2013) .......................... 7

*Johnson v. Holder*, 564 F.3d 95 (2d Cir. 2009) ....................................................................... 10

*United States v. Quintieri*, 306 F.2d 1217 (2d Cir. 2002) ......................................................... 10

*Walden v. Fiore*, 571 U.S. 277 (2014) ..................................................................................... 10

The City of Almaty and BTA Bank (together, the "Kazakh Entities" or "Plaintiffs") respectfully submit this memorandum of law in opposition to defendant Viktor Khrapunov's renewed motion to dismiss or, alternatively for judgment on the pleadings. [ECF No. 829].

## PRELIMINARY STATEMENT

This renewed motion to dismiss, like Victor Khrapunov's last renewed, is premature. He has not yet fully complied with his own discovery obligations, and there is important fact discovery remaining from other parties and third parties. The Court and the parties should have the benefit of that evidence before resolving Viktor's motion.

But even if the Court were to turn to Viktor's motion at this time, there is ample evidence from which this Court should jurisdiction. Put simply, there is witness testimony that he knew about and benefited from his son's investments in the New York real estate projects at issue in this suit. Viktor's due process and judgment on the pleadings arguments further fail because they have already been considered and rejected by the Court.

In short, Viktor continues to play games with this Court. Rather than participating in discovery, allowing for the record to be developed, and facing any evidence that might contradict his uncorroborated claims of ignorance, he wants to force a premature consideration his motion. He is again rushing this Court because he is afraid of what that discovery will reveal. The Court should not oblige him.

## BACKGROUND

On October 12, 2015, Plaintiffs filed their Crossclaims against Viktor Khrapunov, as well as Triadou SPV S.A., Mukhtar Ablyazov, and Ilyas Khrapunov. [ECF No. 49]. On June 29, 2016 the Court granted attachment of Triadou's assets [ECF No. 175], and shortly thereafter, the Khrapunovs appeared in this action and indicated that they would move to dismiss. [ECF No.

179]. The Khrapunovs filed their motion to dismiss on August 17, 2016. [ECF No. 207]. In response to that motion, on August 25, 2016, the Kazakh Entities gave notice to the Court that they intended to amend the Crossclaims, in accordance to the Court's Individual Practice 3.F. [ECF No. 213].

The Kazakh Entities filed their First Amended Crossclaims ("FAC") on September 7, 2016. [ECF No. 219]. Viktor Khrapunov (pleading as part of a collective group with his son Ilyas Khrapunov) re-filed his motion to dismiss on September 26, 2016, on a range of grounds, including personal jurisdiction. [ECF No. 231].

On September 26, 2017, the Court granted in part and denied in part Viktor Khrapunov's motion to dismiss, and ordered further briefing on a discrete statute of limitations question (the "September 26 Order"). [ECF No. 426]. With respect to Viktor Khrapunov's personal jurisdictional arguments, the Court held that, while the FAC had not sufficiently alleged personal jurisdiction over Viktor Khrapunov on its face, jurisdictional discovery was warranted. *See id.* at 50-52. On October 5, 2017, the Kazakh Entities filed their Second Amended Crossclaims (the "SAC"). [ECF No. 433].

Viktor Khrapunov renewed his motion to dismiss on June 20, 2018. [ECF No. 736]. On July 5, 2018, the Kazakh Entities opposed that motion as untimely because the Court had permitted jurisdictional discovery against Viktor and that discovery had not been completed. [ECF No. 768]. In that same opposition, the Kazakh Entities cross-moved to compel Viktor to produce documents verifying that he had searched for certain documents that the Kazakh Entities had requested.

On July 23, 2018, Magistrate Judge Parker granted in the Kazakh Entities' cross-motion to compel. [ECF No. 800]. Among other things, Judge Parker ordered:

> By August 31, 2018, [Viktor] Khrapunov must search for and provide to his counsel via secure electronic means (such as a secure FTP site) his own emails, text messages, Facebook messages and What's App communications with his son, Petelin and Ablyazov for the period 2010 to the present concerning (1) the creation of Triadou SPV S.A. ("Triadou"); (2)any money invested in or loaned to SDG Capital S.A. ("SDG") or Triadou for purposes of investing in real estate in the United States, (3) the creation of, transfer or loan of money to any of the following entities: Claremont, Sartfield, Northern Seas Waterage, Fairlean, Alkune, Crownway, Speville, Darwin, and Triadou; (4) the Chetrit Group or Felix Satir; (5) any of the U.S. properties in which Triadou invested; and (6) other communications reflecting a knowledge of, or participation in the conspiracy alleged in the Complaint in this action.

[*Id.* at 3]. Magistrate Judge Parker further required that Viktor, by September 14, 2018, "produce an affidavit that identifies the specific email, phone and social media accounts searched (which shall include those identified in his deposition); disclose the search terms or parameters used to search; and identify the number of document hits resulting from the search(es)." [*Id.* at 4].

On July 25, 2018, this Court denied Viktor's renewed motion to dismiss "without prejudice to his ability to file a new motion to dismiss after the close of jurisdictional discovery." [ECF No. 807].

On September 6, 2018, Viktor filed a declaration that purported to "certify" his compliance with Magistrate Judge Parker's July 23, 2018 Order. [ECF No. 827]. That declaration revealed that, yet again, Viktor searched for responsive documents himself, rather than relying on his attorneys or another third party. [*Id.* ¶¶ 4, 6]. The declaration further revealed that Viktor used search terms that were too narrow to comply with Magistrate Parker's July 23, 2018 Order. The Kazakh Entities will thus need to move, again, to compel Viktor's compliance with their discovery requests and Magistrate Judge Parker's orders.

Barely pausing for breath, Viktor on September 8, 2018 filed this motion, renewing yet again his motion to dismiss. [ECF No. 828]. As with his earlier renewed motion to dismiss, this motion was filed with no notice or prior conferral with counsel for the Kazakh Entities.

On September 13, 2018, counsel for Triadou, Ilyas and Viktor Khrapunov, and the Kazakh Entities deposed Felix Sater. That deposition is not closed.

On September 14, 2018, the parties appeared for a status conference before Magistrate Judge Parker. At that conference, the parties addressed outstanding discovery matters, including the continued depositions of Felix Sater and Frank Monstrey and the not-yet-commenced depositions of Mukhtar Ablyazov and Leila Khrapunova (Viktor Khrapunov's wife). [Exhibit 3 to Declaration of Peter M. Skinner, Tr. of Sept. 14, 2018 Status Conf.].

On September 24, 2018, the Kazakh Entities asked Viktor Khrapunov to agree to extend the Kazakh Entities' time to oppose his renewed motion to dismiss until after the remaining fact discovery is completed. Viktor refused.

**ARGUMENT**

**A. Viktor Khrapunov's Motion to Dismiss Remains Premature**

As explained at length in the Kazakh Entities' opposition to Viktor's first renewed motion to dismiss, Viktor simply cannot be trusted. [*See* ECF No. 768at 7-14]. His claims must therefore be tested against other evidence, including documents and testimony. The Kazakh Entities have not yet completed the process of gathering that evidence or had the opportunity to challenge Viktor's claims at a hearing. Accordingly, Viktor's motion is premature.

First, Viktor has not fully complied with Magistrate Judge Parker's July 23 Order to search for and produce relevant documents. For instance, Magistrate Judge Parker required Viktor to search for documents concerning "any of the U.S. properties in which Triadou invested," but Viktor failed to include all of those properties in his search terms, omitting "Syracuse Center" and "Tri-County Mall." [*See* ECF No. 827 ¶ 4]. Viktor also conspicuously excluded obvious search terms, like "New York," that are relevant to the question of personal jurisdiction and might "reflect[] a knowledge of, or participation in the conspiracy alleged in the

Complaint in this action." [*See* ECF No. 800 at 3]. And he claimed, with no further explanation, that he could not access the contents of one of the email accounts that he was required to search. [*See* ECF 827 ¶ 7.b]. The Kazakh Entities did not have an opportunity to digest Viktor's September 6, 2018 declaration, much less challenge it, before he filed this motion. The Court should not resolve the motion to dismiss before they have the opportunity to do so.[1]

Second, there is important discovery yet to be completed that may be relevant to the personal jurisdiction issue. Felix Sater's deposition remains open. Mukhtar Ablyazov will be deposed in the near future. [*See* Exhibit 3 at 23:15-19 (Sater deposition to continue "in late October"); ECF No. 835 at 2 (setting date for Ablyazov's deposition)].[2] Again, the Court should not resolve the pending motion to dismiss until these important sources of jurisdictional evidence are exhausted.

Third, once discovery is completed, the Court should have a hearing to determine whether to credit Viktor's self-serving claim that ████████████████████████████ ████████████████████████████. [*See* Exhibit 1 to Declaration of Peter M. Skinner, Tr. of Deposition of Viktor Khrapunov (Jan. 30, 2018) at 126:22-127:14 ("VK Dep. Tr., Day 1")]. As explained in the Kazakh entities' previous opposition to Viktor's renewed motion,

---

[1] In addition to moving to compel Viktor's compliance with the July 23, 2018 Order, the Kazakh Entities also intend to renew their application for a third party vendor to conduct the search and certify the methods used to so. [*See* ECF 768 at 14, 20]. Neither the Court nor the parties should have to rely on Viktor to find relevant documents, particularly where he has a motive to hide them and a history of discovery abuses.

[2] The Kazakh Entities did not identify Ablyazov's deposition in their opposition to Viktor's earlier renewed motion to dismiss for the simple reason that it had not yet been scheduled and it was not clear at that time if it ever would be. In the meantime, the Kazakh Entities' efforts to compel Ablyazov's deposition have borne fruit, and he will be deposed in France between October 12, 2018 and October 31, 2018. [ECF No. 835 at 2]. If Ablyazov is not deposed in France by October 31, 2018, Judge Parker has ordered that he be deposed in the United States or the United Kingdom by November 16, 2018. [*Id.*]

his testimony is contradictory and facially incredible. [*See* ECF No. 768 at 7-14]. And since that opposition was filed in July, still more of Viktor's misstatements have been exposed.

For instance, Viktor testified that ███████████████████████████ ████████████████████████████████████████████ ████. Ex. 1, VK Dep. Tr., Day 1 at 125:4-127:14. Sater contradicted all of those claims in his deposition.

Felix Sater is a businessperson who has known the Khrapunov family—Viktor, Leila, and Ilyas—for roughly fifteen years. [*See* Exhibit 2 to Declaration of Peter M. Skinner, Tr. Deposition of Felix Sater (Sept. 13, 2018) at 45:11-49:9 ("Sater Tr.")]. Sater testified that he had met Viktor "dozens" of times. [*Id.* at 287:17-18.] These meetings served both "social and business" purposes. [*Id.* at 287:19-20.] Sater said he met Viktor "in many different places from Geneva to Kazakhstan." [*Id.* at 287:5-6.] In Kazakhstan, Sater said he met Viktor "at his house, restaurant, at the governor's mansion when he was governor [and at] Leila's office." [*Id.* at 288:10-13.] Sater also said he met Viktor "on various aircraft," "was with Viktor on a helicopter a few times," and "may have been on a plane with him." [*Id.* at 288:21-289:7.] These were just the meeting locations Sater could remember; he also said he was "sure" he met Viktor at other places, "but I can't remember every single place." [*Id.* at 288:13-15.]

Sater also testified that he was "involved in an oil drilling deal and then a coal mining transaction" directly with Viktor. [*Id.* at 291:8-10; *see also id.* at 46:8-13, 54:5-10]. He further explained that one of the companies in these transactions, Kazbay, was jointly owned by his company, Bayrock, and "some of Viktor's entities." [*Id.* at 292:22-23.]

Sater further explained that he viewed the Khrapunov family — Viktor, Leila and Ilyas — as one joint business entity. [*Id.* at 46:8-13; *see also id.* at 70:9-17]. He testified that he had

had "multiple conversations" "over the course of years with all three Khrapunovs about Mukhtar Ablyazov and allegations that Ablyazov had stolen money from BTA Bank. [*Id.* at 56:3—58:16]. And Sater added that he "assumed" he was "in New York" for a meeting that he had with Ilyas. [*Id.* at 62:11—63:7]. The Court has already concluded that the Kazakh Entities have sufficiently alleged that Ilyas "personally directed the New York activities." [September 26 Order, ECF No. 426 at 49].Given these direct contradictions to Viktor's (false) claim that he and his family did not deal closely with Sater, a hearing is warranted to determine the veracity of Viktor's (also false) claim that he did not know about or participate in the New York-based investments at issue in this lawsuit.

Lastly, as the Kazakh Entities previously explained [*See* ECF No. 768 at 17-19], Viktor will not be prejudiced by waiting until the close of fact discovery to resolve his motion to dismiss because the Court retains jurisdiction over him until he pays the sanctions ordered against him, which he has not yet done. And in any event, discovery is nearly finished.

### B. This Court Has Personal Jurisdiction Over Viktor Khrapunov

If the Court were to resolve Viktor's motion on the existing (incomplete) record, evidence gathered since the last renewed motion was denied would be enough to establish that Viktor is subject to personal jurisdiction under New York's long-arm statute — though the Court need not and should not reach the issue at this time, as there is additional discovery outstanding.

As the Court held previously, New York's "'conspiracy theory' of personal jurisdiction . . . allows 'the acts of a co-conspirator [to] be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant.'" [September 26 Order, ECF No. 426 at 47 (alteration in original) (quoting *In re Satyam Comput. Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013)]. Proving personal jurisdiction under the conspiracy theory thus requires a plaintiff to "'make a *prima facie* showing of a conspiracy and allege specific facts warranting the

inference that the defendants were members of the conspiracy.'" [*Id.* (quoting *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 431 (E.D.N.Y. 2012))].

Here, the Court has already found that the Kazakh Entities sufficiently alleged "a conspiracy to launder money generally, and to launder money using entities in Switzerland." [*Id.*] But the Court was not persuaded that the Kazakh Entities had adequately alleged "whether Viktor Khrapunov was a member of a conspiracy 'to launder money into and through New York.'" [*Id.* (quoting SAC)]. To do so, the Court held that the Kazakh Entities must allege that Viktor was aware of the conspiracy's New York actions, that the New York actions were made for his benefit, and that the New York actions were made at Viktor's behest or on his behalf. The Court further permitted "jurisdictional discovery" to determine Viktor's "knowledge of and control of the conspiracy's activities in New York." *Id.* at 50.

Felix Sater explained in his deposition that the Khrapunovs operate a close-knit, family business, and that they are all familiar with all aspects of that business. He testified that he believed any transaction he entered into with any of the Khrapunovs "involved all three" of Ilyas, Leila, and Viktor. [Exhibit 2, Sater Tr. at 296: 12-19]. He further explained that "with all three, it was evident to me that they were well-versed in the transactions and what we were discussing." [*Id.* at 297:3-6].

Sater understood that Viktor and Leila "were involved in the transactions that I did with Ilyas." [*Id.* at 297:9-21]. Sater explained that he met with Ilyas "over half a dozen" and possibly "over a dozen" times in New York, Switzerland and London to discuss the "New York investments," *id.* at 301:14-23, which were the real estate projects at issue in this case, *id.* at 300:16-301:7. Although Sater testified that he did not recall discussing the New York investments with Viktor, *id.* at 312:25-21, he believed Viktor discussed them with Ilyas because

Viktor "would know about the investments when I spoke to him," *id.* at 312:4-14; *see also id.* at 311:10-12 (denying discussing New York investments with Viktor). Sater further explained that he discussed with Viktor and Leila the investments he made with Ilyas, *id.* at 315:10-16; that he believe he discussed "all of the investments," which would include the Flatotel and Cabrini, *id.* at 316:4-13; but that he did not recall the specific investments that he discussed with Viktor, *id.* at 315:17-22. From all of this testimony, a reasonable inference can be made that Ilyas told Viktor about the New York investments.

This is precisely the type of evidence the Court previously explained would be sufficient to establish personal jurisdiction over Viktor:

> [W]ere the Kazakh Entities to uncover evidence of communications between Ilyas Khrapunov and his father Viktor about Ilyas's dealings with the Chetrit Group, it would then stand to reason that Viktor was not only aware of the effects of the conspiracy's activities in New York, but also that the activities were partly conducted at his behest, given that it was the money Viktor allegedly embezzled from the City of Almaty that gave the conspiracy its purpose.

[September 26 Order, ECF No. 426 at 50-51]. Accordingly, even were the Court to indulge Viktor's rush to resolve the jurisdictional issue prematurely, it should hold that it has personal jurisdiction over Viktor.

### C. Exercising Jurisdiction Over Viktor Does Not Violate the Due Process Clause

As the Court held, "if jurisdictional discovery yields information sufficient to grant this Court personal jurisdiction pursuant to New York's long arm statute over Viktor Khrapunov, due process requirements will not be a barrier to its exercise." [September 26 Order, ECF No. 426 at 52]. The Court has therefore already considered and rejected Viktor's argument that exercising personal jurisdiction over him would violate the due process clause.

"[W]hen a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages in the same case" absent "cogent and compelling reasons . . . ." *United*

*States v. Quintieri*, 306 F.2d 1217, 1225 (2d Cir. 2002). "Cogent and compelling reasons" include "intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting *Quintieri*, 306 F.3d at 1230). None of those extraordinary circumstances are present here.

Viktor already raised the same due process argument in his original motion to dismiss. [*See* ECF No. 232 at 8-12]. He has identified no new evidence. He does not even acknowledge the Court's previous ruling on the due process issue, much less identify "clear error" no the Court's reasoning. And there have been no intervening changes in the law.

*Walden v. Fiore*, 571 U.S. 277 (2014), the importance of which Viktor claims "cannot be overstated," [ECF No. 829 at 12], *pre-dates* his previous motion and, in any event, concerns the very different scenario where a *plaintiff's* actions formed the basis for the defendant's contacts with the forum. In *Walden*, a law-enforcement officer seized cash belonging to the plaintiffs in Georgia while the plaintiffs were waiting to board a flight to their home in Nevada. *See* 571 U.S. at 280. The officer later falsified an affidavit justifying the improper seizure of the cash, *id.* at 281, and the plaintiffs sued the officer in Nevada. The Court concluded that jurisdiction in Nevada was not proper because the officer's only contact with Nevada was the plaintiffs' residence. *Id.* at 289-90. The Court held that it is improper for "a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. Here, the Kazakh Entities' basis for asserting jurisdiction over Viktor is not their contacts with New York, but rather *Viktor's co-conspirators'* contacts with New York.[3]

---

[3] As one of Viktor's own cases establishes, the constitutional logic of conspiracy jurisdiction is unaffected by *Walden*, because conspiracy jurisdiction is fundamentally based on an agency theory. *See In re N. Sea Brent Crude Oil Future Litig.*, No. 13-MD-02475 (ALC),

Nor does the Second Circuit's opinion in *Charles Schwab Corporation v. Bank of Am. Corporation*, 883 F.3d 68 (2d Cir. 2018) — which unlike *Walden* was at least decided after the Court's previous rejection of Viktor's due process argument — change the law or the result here. Indeed, *Charles Schwab* merely clarified the three allegations needed to support conspiracy jurisdiction: "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Id.* at 87.

Viktor argues that the Court cannot exercise personal jurisdiction over him because the Kazakh Entities "have not alleged, and cannot show, any 'overt acts' by Viktor 'in furtherance of the conspiracy' that had contact with New York." [ECF No. 829 at 13]. This misreads *Charles Schwab*. The second requirement is that the *defendant* participated in the conspiracy. The third requirement is that *a co-conspirator* must have committed overt acts in support of the conspiracy that would subject *that co-conspirator* to jurisdiction in the forum state. *Charles Schwab* does not require that the defendant himself commit overt acts that would subject him to jurisdiction in the forum state. *See id.* (finding insufficient allegations that some defendants' were involved in conspiracy to permit "imput[ing] the California contacts to the co-conspirators"). Indeed, such a rule would eliminate conspiracy jurisdiction in the Second Circuit because the theory would become coterminous with specific jurisdiction.

---

2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017) ("The Court need not decide whether *Walden* eliminated the availability of personal jurisdiction based on a conspiracy theory because the conspiracy theory of personal jurisdiction is merely a variation on the agency theory."). Here, the Kazakh Entities have alleged that Viktor's co-conspirators with New York contacts were acting as Viktor's agents. Viktor's agent's contacts with New York satisfy the rule that "the defendant . . . must create contacts with the forum State." *Walden*, 571 U.S. at 291.

In this case, the three *Charles Schwab* requirements are met. The Court has already found that there was a conspiracy and that Viktor participated in that conspiracy. [*See* September 26 Order, ECF No. 426 at 48]. And there is no doubt that Viktor's co-conspirators —Ilyas and Triadou, among others — committed acts in furtherance of that conspiracy that have sufficient New York contacts to subject them to jurisdiction here. *See, e.g., id.* at 49 ("Ilyas *is* alleged to have personally directed the New York activities . . . ."). Exercising jurisdiction over Viktor thus comports with due process. And Viktor's arguments to the contrary amount to nothing more than an improper request for reconsideration. *See Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 258 F. Supp. 3d 350, 356 (S.D.N.Y. 2017) (*citing Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) (stating reargument "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple").

### D. Plaintiffs Have Alleged a Claim for Fraudulent Conveyance Against Viktor Khrapunov

Viktor's motion for judgment on the pleadings with respect to the fraudulent conveyance claim fails for the same reason: the Court previously considered and rejected this very argument.

In the September 26 Order, the Court found that "the Kazakh Entities have pled sufficient facts on this front for their fraudulent conveyance claims as to the Individual Defendants to survive a motion to dismiss on a veil-piercing theory." [September 26 Order, ECF No. 426 at 33]. Viktor cannot attempt to seek reconsideration of the September 26 Order by bringing the same argument and facts under a motion for judgment on the pleadings. *See Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633, 638 (S.D.N.Y. 2013) ("A court must narrowly construe and strictly apply [Local] Rule 6.3 [on reconsideration] so as to avoid duplicative rulings on previously considered issues . . . ."); *Cf. Heller v. Consolidated Rail Corp.*, 331 F. App'x 766,

767-78 (2d Cir. 2009) (noting same standard applies to motion to dismiss and motion for judgment on the pleadings).

The Court suggested that "discovery may yield a different result" on the fraudulent conveyance claim brought against Viktor. [September 26 Order, ECF No. 426 at 33]. It has not. But even if it had, Viktor could not make such an argument on a motion on the pleadings, he would have to identify undisputed facts and move for summary judgment.

Viktor argues instead that there are no allegations of veil piercing made against him that could subject him to the fraudulent conveyance claim. [ECF No. 829 at 16]. But this is just wrong. The Kazakh Entities made the following allegations:

- "Ilyas Khrapunov . . . founded Triadou on behalf of the Individual Defendants in approximately 2011 specifically in order 'to mask the Ablyazov-Khrapunov Group's efforts to invest in real estate opportunities in the U.S.'" [*Id.* at 33 (quoting First Amended Crossclaims); *see* ECF No. 433 ¶ 85 (same allegation in Second Amended Crossclaims)].

- "Triadou was, from its inception, 'wholly owned and controlled by SDG, which was itself a front of the Ablyazov-Khrapunov Group's Activities . . . .'" [September 26 Order, ECF No. 426 at 33. (quoting First Amended Crossclaims); *see* ECF No. 433 ¶ 86 (same allegation in Second Amended Crossclaims)].

- "Ilyas Khrapunov, again acting on behalf of the Individual Defendants, conceived of and directly negotiated and otherwise facilitated Triadou's investments into the Flatotel and Cabrini Medical Center . . . and that those investments were funded not by Triadou's monies but rather by Individual Defendant-directed transfers from Telford's accounts with FBME, which consisted of Ablyazov's ill-gotten

gains and were controlled by Ablyazov and Ilyas Khrapunov." [September 26 Order, ECF No. 426 at 33-34; *see* ECF No. 433 ¶¶ 98-105, 111-113 (same allegations in Second Amended Crossclaims)].

- "Ilyas Khrapunov personally directed Triadou to liquidate its holdings in the Flatotel and Cabrini Medical Center 'as quickly as possible' in order to remove the Individual Defendants' purportedly ill-gotten gains from the United States, and that Triadou accordingly executed the assignments cited in the fraudulent conveyance claims on roundly unfavorable, below-market terms." [September 26 Order, ECF No. 426 at 34 (quoting First Amended Crossclaims); *see* ECF No. 433 ¶¶ 114-122 (same allegations in Second Amended Crossclaims)].

And the Court has already found these allegations sufficient to survive a motion to dismiss. [*See* September 26 Order, ECF No. 426 at 33-34 (describing the "sufficient facts" pled by the Kazakh Entities "for their fraudulent conveyance claims as to the Individual Defendants")].

Accordingly, Viktor's motion for judgment on the pleadings should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Viktor Khrapunov's motion to dismiss and motion for judgment on the pleadings should be denied.

Dated:    New York, New York
          September 24, 2018

Respectfully,

 /s/ Peter M. Skinner
Peter M. Skinner
Matthew L. Schwartz

BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
E-mail: pskinner@bsfllp.com