

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

November 13, 2018

**BY ECF**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
      **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities") and write to respectfully request that the Court adopt a briefing schedule regarding the Kazakh Entities' anticipated motion for sanctions against the defendants for their spoliation of evidence and other discovery misconduct. In a range of ways, each of the defendants has purposefully obstructed discovery, failed to make proper disclosures, and/or destroyed key documents despite clear obligations to preserve records. As a result, the defendants have prejudiced the Kazakh Entities by increasing the costs of litigating this case, depriving the Kazakh Entities of relevant evidence, and frustrating the purposes of the rules of civil procedure – which are intended to provide for fair and orderly discovery.

### *Overview of the Defendants' Discovery Misconduct*

The Kazakh Entities' anticipated motions for sanctions will detail for the Court the defendants' numerous failures to meet their production and disclosure obligations, including their deletion of relevant e-mail accounts and outright refusal to engage in discovery, as well as the appropriate standards for each identified violation, and the Kazakh Entities' requested relief. The grounds for this motion, and an overview of some of these instances of misconduct, are described in brief below:

***Mukhtar Ablyazov.*** Ablyazov has not produced a single document in this action despite testifying to the existence of numerous categories of relevant documents in his control. Through his former counsel and again at his recent deposition, he has asserted that he has no responsive documents, even as multiple witnesses – including both Khrapunov defendants – have admitted that they remain in contact with Ablyazov through electronic means or interlocutors (all of which would be discoverable evidence), and third-parties have produced documents about the funds at issue with Ablyazov's signature on them. Instead, Ablyazov has responded to interrogatories and requests for admission with blanket denials, often only after the Kazakh Entities were forced to move to compel. [*See* ECF No. 399]. Simply to schedule his deposition, which the Kazakh Entities noticed on December 30, 2016, the Kazakh Entities were forced to bring repeated motions and seek the direct oversight of the Court. Ablyazov was finally deposed on October 30-31, and he confirmed what the Kazakh Entities believed all along, that he could but refuses to produce responsive documents and information. This includes ██████████████████████



The Kazakh Entities previously raised Ablyazov's non-compliance at a hearing before the Court on July 23, 2018. *See* 7/23/17 Hr'g Tr. at 38:14-25. At the direction of the Court, on August 1, 2018, the Kazakh Entities moved to compel Ablyazov to produce various categories of communications and documents, including his correspondence regarding his deposition. [*See* ECF No. 811 at 3]. Ablyazov did not respond, and on August 10, 2018, the Court ordered Ablyazov to produce documents responsive the Kazakh Entities' document requests – but he has produced nothing. [*See* ECF No. 813]. Ablyazov's conduct here –

– cannot be described as anything other than obstructive.

*Ilyas & Viktor Khrapunov.* The instances of the Khrapunovs' discovery misconduct are too numerous to list comprehensively here. As the Court is aware, the Kazakh Entities were awarded sanctions when the Khrapunovs leaked a confidential deposition transcript in order to further their extra-judicial political objectives. The Court held an evidentiary hearing and did "not find Ilyas Khrapunov's testimony or affidavit credible," noting that he "has played games with this Court in the past, and his violation of the Confidentiality Order here is simply another example of this behavior." [ECF Nos. 564 at 12]. The Khrapunovs' discovery misconduct neither started with nor stopped at leaking documents.

Among the specific issues that the Kazakh Entities intend to raise in their motion are Ilyas's refusal to produce (or even to collect) documents from key e-mail accounts, and his spoliation of other records after he was under a duty to preserve. Shortly after he was named as a RICO defendant by the City of Almaty in California federal court, Ilyas and Triadou failed to preserve his company e-mail accounts, and then Ilyas switched to using pseudonymous encrypted accounts, which he then claimed to have lost access to or forgotten. Ilyas even failed to produce communications from accounts he used *during the pendency of this action* while trying to alienate Triadou's assets. While the Kazakh Entities were able to obtain a limited number of Ilyas's purportedly-lost or destroyed e-mails from third parties – more than enough to demonstrate that the destroyed e-mails were relevant and favorable to the Kazakh Entities – these communications simply demonstrate the importance of these accounts and the prejudice the Kazakh Entities have suffered by their destruction or non-production.

The Kazakh Entities first raised Ilyas' destruction and non-production of documents in connection with motion practice relating to his deposition. [*See* ECF No. 303 at 1.] The Kazakh Entities then moved to compel Ilyas's production of some of the same accounts that are still at issue. [*See* ECF Nos. 419 and 431]. The Court directed Ilyas to provide sworn statements regarding his efforts to collect his documents. [*See* 10/04/17 Hr'g Tr. at 15:8-10, 17:5-6.] As the Kazakh Entities will show in their motion, discovery has shown that Khrapunov's excuses are false, and once again, his self-serving denials should not be credited.

Viktor Khrapunov too has failed to comply with his discovery obligations. Like Ablyazov, he has not produced a single communication from accounts he admits to using. Like Ablyazov and Ilyas, Viktor admitted that even years into this case, he had taken no steps to preserve or even discuss with his counsel what relevant documents he might possess. Viktor's

discovery abuses have already been the subject of significant motion practice. [*See, e.g.,* 7/23/18 Hr'g Tr. at 24:22-24 ("the Court is concerned about Mr. Viktor Khrapunov's actual attempts to search for documents and the thoroughness of his search"); ECF No. 768 at 14, 20 (Kazakh Entities requesting an order requiring a third party vendor to search Viktor's records)]. In their motion, the Kazakh Entities will demonstrate that Viktor remains non-compliant with both his discovery obligations and the Court's prior orders by, among other things, purposefully omitting key terms from his document searches and claiming to be unable to access the contents of e-mail accounts that he was ordered to search.[1]

*Triadou.* Overlapping with their motion against Ilyas, the Kazakh Entities will move for sanctions against Triadou for the spoliation of electronic records under Rule 37. Triadou has admitted that it deleted a number of relevant e-mail accounts, certain of which contained Ilyas's e-mails about the investments at issue in this case. [*See* ECF No. 395-3, at 5-6]. Triadou did so months *after* Ilyas had been named publicly in a RICO lawsuit by the City of Almaty, at a point in time at which Judge Nathan has already found Triadou was anticipating litigation and/or asset seizures by the Kazakh Entities. [*See* ECF No. 175 at 9, n.8 (considering the assignment of Triadou's New York investments and finding that "the close temporal proximity between these events and the implausibility of Triadou's explanation demonstrates persuasively that the assignment was motivated by the threat of litigation")]. Furthermore, after deleting Ilyas's e-mail archives, Triadou then set the server to automatically delete new e-mails to and from Ilyas's accounts going forward, while leaving the accounts themselves operative – allowing Ilyas to send and receive e-mails without leaving a trace. Triadou did so during a time when the Kazakh Entities were actively litigating against Ilyas, and while Triadou itself was actively litigating against the Chetrit Entities over the investments at issue in this case.

### *Proposed Briefing Schedule*

In light of the above, the Kazakh Entities respectfully request that the Court so order the following proposed briefing schedule:

- By November 28, 2018, the Kazakh Entities shall file their brief seeking sanctions, not to exceed 35 pages;

- By December 14, 2018, the Defendants shall file their individual oppositions, not to exceed 25 pages each;

- By December 21, 2018, the Kazakh Entities shall file their reply brief, not to exceed 15 pages.

The Kazakh Entities raised their anticipated motions and proposed briefing schedule with the

---

[1]      The Kazakh Entities also intend to move for sanctions against the Khrapunovs under Rule 26 for serving false initial disclosures (which have never been amended) in which they claimed not to know where Gennady Petelin lived or how he could be contacted. As the Kazakh Entities will show, the Khrapunov's claimed ignorance was demonstrably false and was a successful attempt at delaying and frustrating the Kazakh Entities' efforts in discovery.  As the Court is aware, the Kazakh Entities had to discover for themselves – at significant time, expense, and litigation prejudice – that the Petelins were actually living in California, which the Khrapunovs both admitted that they had known all along.

defendants on October 22, on October 31, and on November 8. On November 9, 2018, Triadou provided its position and requested that we convey it to the Court:

> While we appreciate your effort to propose a briefing schedule, we believe it makes more sense to discuss after the parties' conference with the Court next week.  To be clear, Triadou does not object to a briefing schedule in principle—we just think the parties would be better served discussing with the Court first.  Further, we maintain our position that an omnibus motion is not advisable here, and so would object to that approach.

In view of Triadou's position that the Court should wait until after Wednesday's conference to so-order a briefing schedule, the Kazakh Entities will be prepared to discuss their anticipated motions then.  Thank you for your consideration.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz