

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

November 13, 2018

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

    Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
            **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Nathan:

    We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities"). On August 21, 2018, the Hon. Judge Waksman of the High Court of Judgment, Business and Property Courts of England and Wales, handed down judgment in favor of BTA Bank against Ilyas Khrapunov (a defendant here) in the amount of $424,110,000, and $76,000,000 of pre-judgment interest, dated June 21, 2018 (the "U.K. Judgment"). A copy of this judgement and the accompanying order are attached as Exhibits A & B. We write pursuant to Your Honor's Individual Practices in Civil Cases 1.C and 3.A to request a pre-motion conference on a contemplated motion for leave to amend the Second Amended Crossclaims to add a claim pursuant to N.Y. CPLR § 5303 against Ilyas Khrapunov for recognition and enforcement of this foreign judgment. Although this case is obviously advanced, permitting the addition of this single judgment enforcement claim will not cause any delay or require additional discovery, and in fact has the potential to simplify these proceedings. A copy of the Kazakh Entities' proposed Third Amended Crossclaims accompany this letter as Exhibit C, along with a comparison identifying the proposed changes as Exhibit D.

## Background

    In July of 2015, as part of its long-running litigation against former BTA Bank chairman Mukhtar Ablyazov (also a defendant here), BTA brought claims in the U.K. High Court of Justice against Ilyas Khrapunov, alleging that Khrapunov had conspired with his father-in-law, Ablyazov, to violate receivership and freezing orders against Ablyazov in those courts.[1] Specifically, Khrapunov did so by directing funds controlled by Ablayzov to accounts under his control at FBME Bank, which were then laundered through other offshore companies. *See* Ex. A, ¶ 2-4. Khrapunov challenged the U.K. courts' jurisdiction over him up to the Supreme Court of the United Kingdom, where he ultimately lost. *See* Ex. E, *JSC BTA Bank v Khrapunov*, [2018] UKSC 19 (Hilary Term), Mar 21, 2018, ¶ 41.

    While Khrapunov's jurisdictional appeals worked their way up to the U.K.'s highest court, he repeatedly refused to appear to be examined on his compliance with asset disclosure orders

---

[1] The freezing order and receivership orders are described in the Second Amended Crossclaims [ECF No. 433, ¶¶ 35-36 66-67].



entered against him or his written representations regarding the same. Although first ordered to appear for cross-examination in 2016, Khrapunov resorted to a variety of procedural maneuvers and meritless appeals to avoid doing so, leading the U.K. Court of Appeals to find his maneuvering "totally without merit" and that he was "playing games with the court," ECF No. 482-29 – an assessment which Judge Parker has agreed with in this action. [*See* ECF No. 564, at 12 (noting that Khrpaunov "has played games with this Court in the past, and his violation of the Confidentiality Order here is simply another example of this behavior.")].

On June 21, 2018, Khrapunov's game-playing in the U.K. courts finally caught up with him, when his failure to attend a court-ordered examination triggered an "unless order" which struck out his defenses. *See* Ex. A, at ¶ 15-17; *see also* Ex. B. Khrapunov failed to appear despite having "the means and ability to come [to the U.K.], if he wished, to object to this judgment in default or indeed to put submission in writing as to why it should not be made." Ex. A, ¶ 24. Judge Waksman also detailed how Khrapunov's claimed reasons for refusing to travel to the U.K. – that he might be subjected to extradition to Kazakhstan – was not credible and had been rejected by the U.K. courts. *Id*. at ¶¶ 8-14. Based upon the evidentiary showing made by BTA Bank, Judge Waksman thus entered judgment against Khrapunov for $424,110,000, plus interest of $76,000,000, holding that Khrapunov "effected the transfer of . . . assets of Mr Ablyazov" knowing "perfectly well what he was doing which was to assist Mr Ablyazov to evade the court orders." *Id*., ¶ 4.[2]

This judgement was formally handed down in late August, and the Kazakh Entities subsequently met and conferred with Khrapunov's counsel to obtain his consent to add a CPLR § 5303 recognition and enforcement claim to this action.  (There is already a CPLR § 5303 claim in respect to multi-billion dollar judgments obtained by BTA Bank against Ablyazov).  Through his counsel, Khrapunov declined to consent.

### The Court Should Permit the Kazakh Entities to Add a Judgment Enforcement Claim

The Kazakh Entities respectfully request that the Court permit them to add a judgment enforcement claim against Khrapunov or, in the alternative, hold a pre-motion conference and/or order full briefing on the issue.  As set forth below, however, the addition of such a claim is straightforward and will serve the interests of judicial economy such that no further briefing or argument is likely to be necessary.

The standard for allowing an amendment of the pleadings at this stage is "when justice so requires." *See* Fed. R. Civ. P 15(a)(2) (prior to trial "the court should freely give leave when justice so requires."). This standard is easily met here: no party would be seriously prejudiced by an amendment adding a simple judgment recognition claim at this stage.  In fact, the alternative – requiring the Kazakh Entities to file a plenary judgment enforcement action – would create additional burden on the courts and create the risk of inconsistent judgments.

---

[2]    Judge Waksman's holding is in accord with this Court's preliminary finding that the investments at issue here were funded with Ablyazov's money, as the funds in question came from the same source and were administered by the same consultant for Khrapunov, Eesh Aggarwal. [*See* ECF No. 175, at 6]. While the Court is not bound by these findings, it is entitled to consider them as a matter of comity. *See Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178–79 (S.D.N.Y. 1995) ("It is well-established that United States courts are not obliged to recognize judgments rendered by a foreign state, but may choose to give res judicata effect to foreign judgments on the basis of comity.").



Judgement recognition is typically resolved on summary judgment with need for little or no discovery. *See* CPLR § 5303 (stating that recognition may be brought by motion for summary judgment in lieu of complaint). Based on the most recent discovery schedules exchanged by the parties, summary judgment briefing is not expected until March of next year at the earliest. Khrapunov will thus have ample time to prepare to brief this issue, and because this is largely a question of law, there should be no need to alter the current discovery schedule. BTA also has not been dilatory in raising this issue. As described above, the judgment was handed down in late August of this year, the Kazakh Entities sought Khrapunov's consent to amend within a month, and met and conferred with the remaining defendants on this issue in late October.

Amendment would be in the interests of justice here. While the Kazakh Entities could certainly bring a separate recognition and enforcement action, granting leave to amend would promote judicial economy. *See Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002). It makes little sense to burden the courts with a new action when this Court is intimately familiar with the facts, will already be considering one judgment recognition claim (against Ablyazov) arising out of related underlying U.K. litigation, and Khrapunov is already represented by able counsel here. If anything, litigating two separate actions would be a greater burden on Khrapunov.

Amendment at this time also would not be futile. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). The judgment on its face meets all requirements for recognition and enforcement under CPLR § 5303, and none of the non-recognition conditions under CPLR § 5304 apply. *See John Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 81 (2010) (once the absence of grounds for non-recognition has been established, "the foreign judgment should be enforced in New York under well-settled comity principles without microscopic analysis of the underlying proceeding"). The U.K. courts are widely respected and considered fair. *See Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 746 (S.D.N.Y. 2010) ("[T]he judicial system in England has long been recognized as providing 'impartial tribunals' and 'procedures compatible with the requirements of due process of law.'"). Similarly, the Supreme Court of the United Kingdom specifically found jurisdiction over Khrapunov based on his conduct in the U.K., after he litigated the issue up to the U.K.'s court of last resort. *See* Ex. E, at ¶ 41.

Amendment would also eliminate the need for the time-consuming and burdensome Hague Convention service process, as there is no question that Khrapunov is on notice of the judgment against him. Indeed, the Kazakh Entities' counsel conferred with counsel for Khrapunov and requested that Ilyas Khrapunov consent to add a judgment enforcement claim. Counsel stated that they would address the issue with Ilyas personally, responding one week later that "Ilyas will not consent to adding a judgment enforcement claim to this case." The judgment was also the subject of reporting in the media. *See e.g.,* Christina Maza, "Kazakh Who Allegedly Laundered Money Through Trump Tower Ordered to Pay Bank Back," Newsweek, Aug. 23, 2018, *available at* https://bit.ly/2Nw8QTy; Max Walters, High Court: 'No Merit' to Kazakh's Extradition Fears in £4.6bn Fraud Hearing," The Law Society Gazette, Aug. 29, 2018, *available at* https://bit.ly/2NLN3H9.

Finally, none of the other defendants would be prejudiced by amendment here. The new claim would be against Ilyas Khrapunov alone, and in accordance with this Court's order of August 26, 2016 [ECF No. 214], any amendment would not reference defendant Triadou. *See* Ex. C, at ¶ 199-208. No change to the current discovery schedule would be required, nor is any additional discovery anticipated to resolve what should be a simple question of law.



**<u>Conclusion</u>**

  For the foregoing reasons, the Kazakh Entities respectfully request that the Court grant them leave to add a claim for recognition and enforcement of a foreign judgment against Ilyas Khrapunov, or hold a pre-motion conference in advance of full briefing on the same.

            Respectfully,

            <u>/s/ Matthew L. Schwartz</u>
            Matthew L. Schwartz
            BOIES SCHILLER FLEXNER LLP
            575 Lexington Avenue
            New York, New York 10022