

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

November 20, 2018

**BY ECF**

The Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

      Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
               **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

      We represent the City of Almaty, Kazakhstan and BTA Bank (the "Kazakh Entities") and write in response to the November 18, 2018 letter of Ilyas and Viktor Khrapunov [ECF No. 887].

      The defendants' pending motions to compel [ECF Nos. 837, 844] have been a consistently moving target. They opened by demanding "broad discovery from BTA/Almaty relating to their transactions and interactions with three key fact witnesses." [ECF No. 837, at 1.] This amorphous demand has shifted with each new filing or argument, and in the Khrapunovs' recent letter is reformulated yet again to include "the facts (time, place, participants, and substance) concerning BTA's acquisition of [the Khrapunovs'] confidential information and its knowledge of Mr. Sater's confidentiality obligations." [ECF No. 887, at 2.] This new iteration further confirms what was obvious at the recent discovery conference: neither the Court nor the Kazakh Entities have anything approaching clarity on what defendants are seeking. With the benefit of the Court's guidance at the discovery conference, however, we believe there is a path forward to resolve the pending motions in a definitive manner.

      First, the defendants should get access to the so-called Litco agreement. The Kazakh Entities remain willing to disclose it by way of a Rule 502(d) order. Alternatively, as the Kazakh Entities explained at the conference, the Court could also find that the defendants' need for the agreement overcomes any work product protections that may apply. Any such order would have the benefit of preventing a broad subject-matter waiver while eliminating any restrictions on the defendants' ability to use the document in this case. Moreover, the Court can enter such an order without deciding whether or not the document itself is protected. Either way, the Court could quickly break this logjam by entering an order under Rule 502 or otherwise that will permit the Kazakh Entities to disclose the Litco agreement without waiving any applicable privileges.

      Second, the Kazakh Entities propose that the defendants be required to propound discovery requests — confined to the Litco issue — to which the Kazakh Entities will respond.[1]

---

[1] The Kazakh Entities will not argue that such requests are untimely, though they reserve their rights with respect to demands that expand beyond Litco. Nor will the Kazakh Entities argue that any amended subpoena to Felix Sater or to Litco itself (which to our knowledge was

Because the defendants jumped right to a motion to compel, they sidestepped the requirements of Rule 26(b)(1). Without requests that conform to the Federal Rules, however, the Kazakh Entities are left with broad, ill-defined demands for communications, notes of meetings, and other categories of documents with no specificity as to what defendants' actually want. [*See also, e.g.*, ECF No. 870, at 2 (demanding voluminous information for the vague purposes of determining "the true nature of the payments" to cooperating witnesses).] To cabin the issues and provide a mechanism for an orderly response, the Court should require defendants to comply with the rules. Should the Court do so, the Kazakh Entities will expedite their responses so that any disputes can be brought promptly to the Court's attention.

Third, the Kazakh Entities will prepare and serve upon the defendants an itemized, rather than categorical, privilege log for items relating to communications with Litco's counsel or with Sater himself. Though the Kazakh Entities believe that the impeachment value of such communications would be cumulative of evidence defendants already have or shortly will have, the Kazakh Entities will itemize their privilege and work product claims in this category to permit the defendants and the Court to better assess any challenges to the claims of privilege and/or work product that may remain.[2]

Fourth, as explained at the recent conference, the Kazakh Entities have no objection to the defendants asking Sater or Monstrey at their forthcoming depositions about Litco, payments, meetings with the Kazakh Entities' investigators, and confidentiality restrictions. So long as the defendants do not attempt to delve into the Kazakh Entities' core litigation strategy or broader asset recovery efforts, we do not expect to interpose objections (other than, of course, objections to form, foundation, and the like). Indeed, by itself this proposal should resolve the Khrapunovs' recent request for "the facts (time, place, participants, and substance)" regarding Mr. Sater's possession of confidential information.

The Court "'must balance efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial.'" [ECF No. 649 at 2 (quoting Manual for Complex Litigation (Fourth) § 11.422.).] Thus, while defendants may seek to gather evidence about Felix Sater, they cannot do so with no regard for the proportionality requirements of the Federal Rules of Civil Procedure. The Kazakh Entities respectfully submit that the steps outlined above will provide an orderly means of guiding discovery into these ancillary issues and request that the Court enter an Order addressing the Litco agreement and requiring the defendants to propound discovery requests for any further Litco information they still seek.

                                  Respectfully,

                                  /s/ Matthew L. Schwartz
                                Matthew L. Schwartz

---

never the recipient of a subpoena) is untimely, or that any efforts to enforce the existing Triadou subpoena against Sater are untimely.

[2] At the conference, I remarked that with respect to the Litco agreement, the issue was only work product protection and not attorney-client privilege. To be clear, however, that remark pertained solely to the Litco agreement itself. As the Kazakh Entities' current privilege log makes clear, communications with Litco's counsel are in many cases covered by attorney-client privilege pursuant to the common interest doctrine, as may be other documents related to Litco.