**Solomon & Cramer LLP**
1441 Broadway, Suite 6026
New York, NY 10018
(t)(212) 884-9102
(f)(516) 368-3896
-------------------
Andrew T. Solomon
Jennifer G. Cramer

March 15, 2019

Hon. Katharine H. Parker, U.S.M.J.
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re.:    *City of Almaty, Kazakhstan v. Ablyazov,* 1:15-cv-05345-AJN-KHP

Dear Judge Parker:

This letter is submitted on behalf of the Khrapunovs in response to the Court's March 1, 2019 Order (Doc. 978).

In both of their fraudulent conveyance claims, Plaintiffs ask the Court to "set aside" the August 2014 assignment, whereby Triadou SPV S.A. ("Triadou") sold back its interests in the Flatotel to the Chetrit Group. (Doc. 433 at ¶¶ 167, 173). Those claims, however, became non-justiciable when Plaintiffs settled with the Chetrit Group. This is so because through the settlement Plaintiffs received all that they had demanded in their pleading and the maximum remedy that the law would ever permit. Not only that, but in dismissing with prejudice and releasing the only defendant against whom they had even a theoretical claim (*i.e.*, the transferee), Plaintiffs rendered their own claims moot.

## I.     Ripeness, Mootness and Standing

The Article III requirement of justiciability embodies the concepts of ripeness, mootness, and standing. Standing focuses on whether the plaintiff suffered an injury-in-fact, whereas "[r]ipeness and mootness focus more on the questions of whether the injury has yet become mature, or has vanished in the past." 13A Federal Practice and Procedure § 3531. Redressability is also a necessary element, and it means that the injury-in-fact must be likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Objections to justiciability, as it bears on subject matter jurisdiction, can be raised at any time (even on appeal), by motion, or merely "by suggestion," *see Clissuras v. City Univ. of NY*, 359 F.3d 79, 81 n.3 (2d Cir. 2004), or *sua sponte*, *see Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884); Fed. R. Civ. P. 12(h)(3).[1]

---

[1] Standing is also a problem. To bring a fraudulent conveyance claim, a plaintiff (Almaty and BTA) must be a creditor of the transferor (Triadou). The Second Amended Complaint ("SAC") (Doc. 433 at ¶¶ 169, 175) alleges

## II.     The Fraudulent Conveyance Claims

The remaining claims against the Kharpunovs are the 6th and 7th causes of action for actual and constructive fraudulent transfer.  In both, Plaintiffs allege that the Khrapunovs "held an interest in the illicit funds" described as "the unlawful profits of embezzlement, fraud, and the corruption of the public office of the mayor of Almaty."  (Doc. 433 at ¶¶ 163, 169).  Plaintiffs further allege that Triadou's August 4, 2014 assignment of its interest in the Flatotel and Cabrini Medical Center (the "2014 Assignment," **Ex A**) was "not for adequate consideration," with the plan being to liquidate quickly (Doc. 433 at ¶ 165) so that the assets could be moved offshore (*id. at* ¶ 164).  In their constructive fraudulent conveyance claim, Plaintiffs further allege that Triadou was insolvent in its own right and by virtue of it being an "alter ego" of the Ablyazov Group (*id. at* ¶¶ 170-172).  The relief requested for both claims is identical:  "As a result of the foregoing … the August 2014 assignment agreement should be *set aside*."  (*id. at* ¶¶ 167, 173, emphasis added).

Plaintiffs settled with the Chetrit Group under a November 2015 Settlement Agreement (the "2015 Settlement", **Ex. B**), pursuant to which the Chetrtit Group assigned to the Kazakh Entities the "Flatotel Interest" (*id.* at ¶ 4) and promised to indemnify the Chetrit Entities against Triadou's claims for the $21 million (*id.* at ¶ 1).  The "Flatotel Interest" is defined as Triadou's 50% interest in CF 135 West Member LLC, which Triadou had assigned to another Chetrit Group entity, CF 135 Flat LLC, pursuant to the 2014 Assignment.  Plaintiffs and the Chetrit Group exchanged mutual general releases and agreed to discontinue all pending claims with prejudice (*id.* at ¶ 7), which the Court approved on November 12, 2015.  (Doc. 71).

In the 2015 Settlement, Plaintiffs also abandoned their claim relating to the Cabrini investment.  The Kazakh Entities had alleged that Triadou released the Cabrini obligation for less than fair value.  In the 2015 Settlement, however, the Kazakh Entities acknowledged that the Cabrini promissory note had been fully paid by the Chetrit Group and "that they had no interest in the Cabrini Hospital Property."  (2015 Settlement at ¶4(a)).

By settling with the Chetrit Group, Plaintiffs achieved, through self-help, the only remedy demanded in the SAC: setting aside the transfer.  The Chetrit Group conveyed the Flatotel Interest to the alleged creditors (*i.e.,* the Kazakh Entities) and was relieved of its obligation to pay for it (by virtue of the indemnity).

## III.     The Chetrit Settlement Mooted The Fraudulent Conveyance Claims

The fraudulent conveyance law's purpose is to provide a "mechanism" by which "a creditor … may recover the assets necessary to satisfy this claim."  *MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs.*, 91 Civ. 3451 (SWK), 1994 U.S. Dist. LEXIS 18633, at *15-16 (S.D.N.Y. Dec. 30, 1994).  The remedy is to nullify the transfer and return the property to the transferor; in other words, to restore the *status quo ante* as if there had "been no conveyance at all."  *Paradigm BioDevices, Inc. v. Viscogliosi Bros.*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012).  A "creditor does not gain new rights in property by means of a fraudulent conveyance action," *Travelers Ins. v. 633 Third Assocs.*, 973 F.2d 82, 87 (2d Cir. 1992), and can do no better than to recover the assets that were fraudulently transferred.  *See Marine Midland Bank v. Murkoff,* 508

---

creditor status based on alleged losses from Viktor's activities as the mayor of Almaty.  That predicate liability has been extinguished by the Court's decision dismissing the common law claims as time barred.  (Doc. 592).

N.Y.S.2d 17, 24 (2d Dep't 1986); *Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.*, 641 N.Y.S.2d 947, 948 (4th Dep't 1996); *Perceptron, Inc. v. Silicon Video, Inc.*, No. 06 Civ. 0412 (GTS/DEP), 2011 U.S. Dist. LEXIS 112523, at *52-53 (N.D.N.Y. Sep. 30, 2011). The limited scope of the remedy has been recognized by this Court already (Doc. 103): "[A]s a matter of New York law, 'the relief to which a defrauded creditor is entitled in an action to set aside a fraudulent conveyance is limited to setting aside the conveyance of the property….'" (*quoting Joslin v. Lopez,* 765 N.Y.S.2d 895, 898 (2d Dep't 2003)).

The nature of the remedy dictates *who is* and *who is not* potentially liable. The "who is" column includes the recipient of the transfer (*i.e.*, the "transferee"), which is a necessary party, *Lyman Commerce Sols., Inc. v. Lung*, No. 12-cv-4398, 2013 U.S. Dist. LEXIS 124689, at *21-22 (S.D.N.Y. Aug. 30, 2013); *Alvaro v. Faracco*, 927 N.Y.S.2d 366, 367 (App. Div. 2011); *Nastro v. D'Onofrio,* 263 F. Supp. 2d 446, 450 (D. Conn. 2003) ("The transferee of the assets at issue is a necessary party to the lawsuit because the action to set aside the allegedly fraudulent transfer necessarily impacts the transferee's interest in the property the transferee received"); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (JG)(SMG), 2010 U.S. Dist. LEXIS 7405, at *18-19 (E.D.N.Y. Jan. 29, 2010), and any beneficiaries of the transfer, *D'Mel & Assocs. v. Athco, Inc.*, 963 N.Y.S.2d 65, 67 (1st Dep't 2013).

The "who is not" column excludes from liability persons who may have participated in the transaction, but neither received the transfer nor personally benefitted from it.[2] *Geo-Group Communs., Inc. v. Chopra*, No. 15 Civ. 1756 (KPF), 2018 U.S. Dist. LEXIS 126940, at *39 (S.D.N.Y. July 30, 2018)("these [fraudulent conveyance] statutes do not provide a remedy against the transferor or against one who orchestrates fraudulent transfers without being either a beneficiary or transferee thereof"); *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 737 (S.D.N.Y. 1993); *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012)("a fraudulent conveyance claim is actionable only against the transferee"); *Cleo Realty Assocs., L.P. v. Uptown Birds, LLC*, 23 N.Y.S.3d 181, 182 (1st Dep't 2016); *FDIC v. Porco*, 552 N.Y.S.2d 910, 911 (1990); *Blakeslee v. Rabinor*, 582 N.Y.S.2d 132, 134 (1st Dep't 1992). As such, "there is no cause of action for aiding and abetting a fraudulent conveyance." *BBCN Bank v. 12th Ave. Rest. Grp. Inc.*, 55 N.Y.S.3d 225, 226 (1st Dep't 2017).

Based on these principles, it is plain that Plaintiffs' fraudulent conveyance claim no longer presents (if it ever did) a justiciable case or controversy.

For one thing, the case is moot. Through self-help, Plaintiffs obtained the very relief they demanded in the SAC (the return of the Flatotel Interest) and achieved the maximum relief available under the fraudulent conveyance law. When a transferee returns fraudulently conveyed property to the transferor-debtor, the claim is moot. *See, e.g., Underwood v. Krotman*, 84 N.Y.S.2d 431 (Sup. Ct. 1948) (reconveyance of property to debtor mooted claim for receiver); *Colombo v. Caiti*, 516 N.Y.S.2d 476, 533 (2d Dep't 1987) (reconveyance of allegedly fraudulently conveyed property to debtor mooted claim because "title in the subject property

---

[2] The only remedy against a transferor is for attorneys' fees under NY DCL § 276-a. Plaintiffs have not pleaded a claim for relief under this provision. In any event, it cannot stand alone, as it is ancillary to the DCL § 276 claim, *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 245 n.1 (2d Cir. 1987); *BBCN*, 55 N.Y.S.3d at 226, and is otherwise insufficient to establish and Article III "case or controversy." *Excelsior Capital, LLC v. Allen*, 536 F. App'x 58, 61-62 (2d Cir. 2013).

[was] restored to [the debtor]"); *TLC Merc. Bankers, Inc. v. Brauser*, No. 01 Civ. 3044 (GEL), 2003 U.S. Dist. LEXIS 3564 (S.D.N.Y. Mar. 11, 2003) (discussed *infra*).[3] Here, Plaintiffs did even better. The Flatotel Interest did not go back to the debtor (which would expose it to other creditor claims), but directly to the Kazakh Entities.

Even if the claims were not moot, the Court no longer has the ability to grant to Plaintiffs the remedy they demand. The 2015 Settlement eliminated the only party that is absolutely necessary to set aside the 2014 Assignment, that is, the transferee. *Lyman Commerce Sols., Inc. v. Lung*, No. 12-cv-4398, 2013 U.S. Dist. LEXIS 124689, at *21-22 (S.D.N.Y. Aug. 30, 2013); *Alvaro v. Faracco*, 927 N.Y.S.2d 366, 367 (App. Div. 2011); *Nastro v. D'Onofrio,* 263 F. Supp. 2d 446, 450 (D. Conn. 2003) ("The transferee of the assets at issue is a necessary party … because the action to set aside the allegedly fraudulent transfer necessarily impacts the transferee's interest in the property the transferee received"); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (JG)(SMG), 2010 U.S. Dist. LEXIS 7405, at *18-19 (E.D.N.Y. Jan. 29, 2010). With the Chetrit Group dismissed with prejudice and released, the Court could not possibly render an order setting aside the 2014 Assignment (*read*, no redressability) because it would impact the rights of a party to that assignment who has been eliminated from the case due to Plaintiffs' actions.

Nor is there any other party from whom the relief could be obtained. Neither Ilyas nor Viktor could be liable. Even the most liberal reading of the SAC would fail to uncover any allegation—express or by inference—that Ilyas or Viktor was the "transferee" of the 2014 Triadou Assignment. The SAC also fails to allege a "personal benefit" that could now be undone. Accepting Plaintiffs' allegations as true, the supposed plan was to complete the assignment to the Chetrit Group and then whisk the proceeds overseas. If that were the plan, it failed. A monitor was appointed (Doc. 132-1) and the funds remain in the U.S. None of the value in Triadou's transfer of the Flatotel Interest to the Chetrit Group ever made it into the hands of the Khrapunovs, directly or indirectly.

Examples of case law illustrating these points are legion. *Marine Midland v. Murkoff,* is a seminal case and establishes that the creditor's remedy is limited to restoration of the *status quo ante*. There, a husband facing a potential judgment transferred a home they owned as tenants by the entirety to his wife. The creditor bank prevailed on the fraudulent conveyance claim and received a lien on the husband's 50% interest, but still subject to (and protected by) the tenancy by the entirety. Dissatisfied with this remedy, the bank asked the Appellate Court to convert the tenancy to a tenancy in common (so that it could collect rents and profits) or to grant a money judgment against the wife. The Appellate Division rejected both suggestions. The lien on the husband's interest was all that the bank could have obtained had no transfer occurred, so a return to "status quo ante" was the only remedy. 508 N.Y.S.2d at 24. And damages were not available because the transferee did not dispose of the transferred interest. *Id.* at 24-25. Here, Plaintiffs, having restored the *status quo ante,* can receive nothing further.

---

[3] At the last conference, Plaintiffs asked the Court to consider *MFS/Sun Life Tr. High-Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913 (S.D.N.Y. 1995). The case is inapposite. There, the court found that a settlement with the debtor for less than the full value of the debt did not bar claims by the creditor for fraudulent conveyance against third-party transferees of the debtor. *Id.* at 931-32. That makes sense, a creditor can agree to settle with the debtor for part of the debt and then seek to recover from fraudulent transferees (who functionally hold assets of the debtor) to satisfy the rest of the debt. But it does not work the other way. The fraudulent conveyance law is only relevant when transferees hold assets that should be with the transferor-debtor.

Another seminal case is *FDIC v. Porco*, 552 N.Y.S.2d 910 (1990), which involved claims by a creditor against two bank officers who assisted a bank director, who was then being sued for millions of dollars, in moving his assets overseas. Citing the limitations of the remedies, which are noted above, the Court affirmed the dismissal of the claims against the two officers because they were neither transferees nor beneficiaries. *Id.* at 911.

*TLC Merc*, *supra*, is instructive on mootness. There, then District Judge Lynch held that a transferee's return of fraudulently transferred shares to the transferor, which then paid the shares over to one creditor (not plaintiff), mooted the fraudulent conveyance claim of another creditor (the plaintiff) against the transferee. 2003 U.S. Dist. LEXIS 3564, at *12. The point being that once the transferee returns the fraudulently conveyed asset to the debtor, no further remedy is available, and the case is moot, even if the debtor uses it to satisfy another creditor.

That Plaintiffs' dismissal of the transferee is fatal to their claim for damages against other non-transferees is demonstrated by *C.P. Sys. v. Recovery Corp. of Am.*, 97 Civ. 7025 (JSR), 1998 U.S. Dist. LEXIS 12797 (S.D.N.Y. Aug. 18, 1998). There, Judge Rakoff explained:

> With respect to the fraudulent conveyance claim, plaintiff seeks to excuse its failure to join the alleged transferee of the conveyance by arguing that it no longer seeks to set aside the conveyance but now only seeks monetary damages. But the latter claim can only be brought against someone who is either a beneficiary of the alleged fraudulent conveyance or a transferee of the assets so conveyed. (Citation Omitted). Since none of the defendants who remain in the case is alleged to be such a beneficiary or transferee, the fraudulent conveyance claim … must be dismissed.

*Id.* at *6-7.

Finally, some cases involving fraudulent conveyances refer to non-transferees being liable on a veil-piercing theory. *See, e.g., D'Mel, supra.* Veil-piercing is not a cause of action itself, but a means by which to impose a corporate obligation on a shareholder. *Morris v. State Dep't of Taxation & Fin.*, 603 N.Y.S.2d 807 (1993). Here, as shown above, the only entities that could be primarily liable are the transferee entities, *i.e.*, the members of the Chetrit Group. Plaintiffs have not alleged and cannot allege that Viktor or Ilyas ever dominated or controlled those entities. As such, the theory of veil piercing is of no consequence here.

## IV. Other Relief/Conclusion

As shown above, there is not now—nor has there been—a viable cause of action against either Ilyas or Viktor (who also has a personal jurisdiction defense) under New York's fraudulent conveyance law. If these two remaining claims against the Khrapunovs are dismissed, as they should be, the case is over as to them.

Very truly yours,

/s/Andrew T. Solomon

Andrew T. Solomon
asolomon@solomoncramer.com
(m) 917-664-5575

All counsel (By ECF)