UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| City of Almaty, Kazakhstan and BTA Bank JSC, | |
| Plaintiffs, | 15-CV-5345 (AJN) |
| –v– | OPINION & ORDER |
| Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov, and Triadou SPV S.A., | |
| Defendants. | |

ALISON J. NATHAN, District Judge:

This litigation concerns an alleged conspiracy by which prominent citizens of Kazakhstan purportedly expropriated funds belonging to the City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA" and, together with Almaty, the "Kazakh Entities"), a formerly state-owned banking institution based in Kazakhstan, and laundered the stolen funds into New York City real estate investments. Now before the Court is crossclaim Defendant Triadou SPV S.A.'s ("Triadou") motion for partial judgment on the pleadings seeking dismissal of the Kazakh Entities' crossclaims for unjust enrichment, conversion, and constructive trust. For the reasons set forth below, Triadou's motion to dismiss is GRANTED in part and DENIED in part.

I.  **Background**

The Court assumes the parties' familiarity with the factually and procedurally complex background of this case, which the Court has recounted in several prior substantive decisions. It elaborates here only those details necessary for this motion.

## A. Factual Allegations

The Kazakh Entities filed their original crossclaims in this matter on October 12, 2015, and amended those crossclaims twice, on September 7, 2016 and October 5, 2017. Dkt. Nos. 49, 219, 433. For purposes of the Rule 12(c) motion presently before the Court, the Court accepts the allegations in the crossclaims as true.

In brief, Almaty alleges that its former mayor Viktor Khrapunov and several of his associates and family members embezzled approximately $300 million from the city between approximately 1997 and 2004. Dkt. No. 426 at 2; Dkt. No. 433 ¶¶ 3, 45–55. For its part, BTA claims that its former chairman Mukhtar Ablyazov siphoned more than $6 billion out of BTA between 2005 and 2009. Dkt. No. 426 at 2; Dkt. No. 433 ¶¶ 2, 28–35. And the Kazakh Entities allege that Mukhtar Ablyazov, Viktor Khrapunov, and Ilyas Khrapunov (together, the "Individual Defendants") joined together to launder both pools of stolen funds through a series of shell companies, sham transactions, and outwardly-legitimate investments. Dkt. No. 426 at 3; *see also, e.g.*, Dkt. No. 433 ¶¶ 56–59, 68–72, 77–97. In one such effort, the Individual Defendants allegedly created and funneled proceeds into a Switzerland-based real estate investment vehicle called SDG Capital, S.A. ("SDG"), then engaged in a sham sale of SDG to conceal their control. Dkt. No. 426 at 3; Dkt. No. 433 ¶¶ 58, 77–84. They then facilitated the creation of entities under Luxembourg law for the purpose of investing their stolen funds into United States-based real estate projects—including Triadou. Dkt. No. 426 at 3; Dkt. No. 433 ¶¶ 85–87. According to the Kazakh Entities, Triadou was "wholly owned and controlled by SDG, which itself was a front for" the Individual Defendants. Dkt. No. 426 at 3; Dkt. No. 433 ¶ 86. And Triadou's director operated "at the direction of" the Individual Defendants. Dkt. No. 433 ¶ 87.

In 2012 and 2013, purportedly at the direction of the Individual Defendants, Triadou allegedly proceeded to invest funds embezzled from the Kazakh Entities into New York City real estate projects. Dkt. No. 426 at 3; Dkt. No. 433 ¶¶ 88–97; 111–13. At the direction of the Individual Defendants, Triadou then allegedly sold these assets at below-market value to attempt to prevent the Kazakh Entities from accessing the funds. Dkt. No. 433 ¶¶ 114–25.

**B.     Procedural Background**

On October 15, 2015, the Kazakh Entities filed their initial crossclaims against Triadou and the Individual Defendants. Dkt. No. 49. Triadou moved to dismiss the crossclaims, and the Court granted in part Triadou's motion to dismiss on June 21, 2016, dismissing the Kazakh Entities' alter ego and replevin claims. Dkt. Nos. 84, 174. The Individual Defendants then appeared in this action and moved to dismiss the crossclaims. The Court granted the Kazakh Entities permission to amend their crossclaims in response, but limited that amendment to claims against the Individual Defendants. Dkt. No. 214. The Court later struck one of the amended crossclaims—that Triadou was the Individual Defendants' alter ego and was therefore liable for all of their current and future obligations—on the grounds that it conflicted with this limitation. *See* Dkt. No. 426 at 41; Dkt. No. 219 ¶ 199.

The Individual Defendants then moved to dismiss the Kazakh Entities' amended crossclaims on a variety of grounds. Dkt. Nos. 227, 231–33. As relevant here, they argued that the Kazakh Entities' unjust enrichment, conversion, and constructive trust claims were time-barred by the applicable statute of limitations. Dkt. No. 228 at 15–18; Dkt. No. 232 at 17–21. After requesting additional briefing, *see* Dkt. No. 426 at 41–45, the Court ultimately agreed, Dkt. No. 592.

Immediately following the Court's dismissal Order, Triadou filed a letter seeking "clarification" whether the Order applied to it as well. Dkt. No. 602. The Court explained that its Order concerned only those Defendants whose motions its Order disposed of. Dkt. No. 607. Triadou then filed the instant motion. Dkt. No. 666. The Kazakh Entities opposed Triadou's motion on May 25, 2018, and Triadou filed its reply on June 1, 2018. Dkt Nos. 696, 702.

**II.     Legal Standard**

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed." Courts evaluate Rule 12(c) motions employing the familiar 12(b)(6) standard, "accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences in [the] plaintiffs' favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam) (alterations omitted)). Accordingly, to survive a motion for judgment on the pleadings, a crossclaim complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Johnson*, 569 F.3d at 43–44 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**III.    Discussion**

Triadou contends that it should be awarded judgment on the pleadings on the Kazakh Entities' unjust enrichment, conversion, and constructive trust claims for the same reason the Court granted the Individual Defendants' motion to dismiss those claims. Because the Kazakh Entities allege that Triadou is the Individual Defendants' alter ego, Triadou argues, claims that are time-barred as to the Individual Defendant are time-barred as to Triadou as well.

The Kazakh Entities raise three primary counterarguments: (a) Triadou's motion should be evaluated under the reconsideration standard, which it does not meet; (b) Triadou's motion is

4

predicated on the wrong legal standard; and (c) Triadou's motion fails on the merits. The Court addresses these arguments in turn.

### A. Triadou's Motion Is Not a Motion for Reconsideration and Is Timely Under Rule 12(c)

As an initial matter, the Court declines the Kazakh Entities' invitation to treat Triadou's motion as a motion for reconsideration. The Kazakh Entities argue that this treatment would be appropriate because they contend that this is the second time Triadou has sought the contemplated relief. Specifically, after the Court granted the Individual Defendants' motion to dismiss the unjust enrichment, conversion, and constructive trust claims, *see* Dkt. No. 592, Triadou filed a letter with the Court "seek[ing] clarification" whether the Court's March 2018 Order dismissed claims as to the Individual Defendants or as to all Defendants. Dkt. No. 602. As part of that letter, Triadou "recognize[d]" that the Court's Order was issued in response to the Individual Defendants' motion to dismiss, but noted that the reasoning underlying the Court's holding appeared to apply to all defendants, including itself. *Id.* In response to Triadou's letter, the Kazakh Entities responded that construing the Order to dismiss claims against Triadou would not be appropriate when it had not joined the Individual Defendants' motions, and was in any case not warranted on the merits. Dkt. No. 605. The Court resolved the matter by confirming that its March 2018 Order addressed only those defendants whose motions it ruled on, and accordingly dismissed claims against the Individual Defendants only. Dkt. No. 607.

The Court disagrees with the Kazakh Entities that Triadou's previous letter warrants treating the present motion as a motion for reconsideration. Triadou's prior letter did not affirmatively seek dismissal, and the Court's response did not construe the letter as seeking such relief. The proper vehicle for Triadou's argument for dismissal is the present one.

5

As part of the same argument, the Kazakh Entities also suggest that the present motion is untimely, pointing to the fact that Triadou had "ample time and opportunity" to join the Individual Defendants' motion or otherwise to bring this request at an earlier phase of litigation. Dkt. No. 696 at 3. But the Kazakh Entities identify no authority precluding Triadou from raising these issues now. To the contrary, a motion for judgment on the pleadings need only be filed "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). That a party "could have raised [an] argument years earlier than it did" or that a party "focus[ed] on a different set of arguments at the motion-to-dismiss stage" does not amount to waiver or forfeiture of issues later raised in a Rule 12(c) motion. *Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280 (JPO), 2017 WL 3142067, at *3 (S.D.N.Y. July 24, 2017); *cf Adamou v. Doyle*, 707 F. App'x 745, 746 (2d Cir. 2018) (summary order) (reviewing successively filed Rule 12(b)(6) and Rule 12(c) motions); *Marsh v. Kitchen*, 480 F.2d 1270, 1272 (2d Cir. 1973) (discussing motion for judgment on the pleadings filed "after . . . certain discovery was completed"). When, as here, the Rule 12(c) motion has no effect on the trial schedule, it need not be barred as untimely. *See Vail v. City of New York*, 68 F. Supp. 3d 412, 421–22 (S.D.N.Y. 2014) (collecting cases).

**B.     Triadou's Motion Applies the Correct Rule 12(c) Standard**

The Kazakh Entities next contend that the existence of disputed facts precludes judgment on the pleadings. The Court rejects this argument as premised on the wrong Rule 12(c) standard.

According to the Kazakh Entities, a motion for judgment on the pleadings should not be granted if material facts remain disputed after considering both the crossclaims and the answer. Dkt. No. 696 at 4. Because Triadou disputes whether it constitutes an alter ego of the Individual Defendants, the allegations on which Triadou relies for its motion remain disputed and that motion should be denied. *Id* at 4–6.

This is not the correct framework in the context of a *defendant's* motion for judgment on the pleadings. The question before the Court on such a motion is whether, after accepting all of the allegations in the crossclaims as true and drawing all inferences in the plaintiff's favor, the crossclaims states a claim for relief that is plausible on its face. *Johnson*, 569 F.3d at 43–44. In bringing a motion for judgment on the pleadings, the movant "impliedly admits the truth of its adversary's allegations and the falsity of its own allegations that have been denied by that adversary." *Giaconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013) (quoting 5C Charles A. Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1370 (3d ed.)). Accordingly, when the movant is a defendant, the "plaintiff's allegations must be accepted despite the answer's denial of their veracity." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990). Whether material disputes of fact remain thus depends on what can be accepted as true or inferred from the complaint, not what is denied in the answer.

The Kazakh Entities argue otherwise primarily by citing language addressing Rule 12(c) motions brought by plaintiffs. In such cases, courts instruct that "all matters plead in the complaint that are not in dispute must be accepted as true," *In re Risk Mgmt. Alternatives, Inc. Fair Debt Collection Practices Litig.*, 208 F.R.D. 493, 500 (S.D.N.Y. 2002), because while a plaintiff moving for judgment on the pleadings impliedly admits the falsity of allegations the answer challenges, it is entitled to maintain the truth of those allegations the answer does not contradict. Similarly, even if a "motion for judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided," *Giaconda Law*, 941 F. Supp. 2d at 427 (quoting Wright & Miller § 1367), a defendant moving for judgment on the pleadings cannot controvert the plaintiff's well-pleaded allegations—because it is deemed to have admitted them. *See id.*

7

Accordingly, because this is Defendant's motion for judgment on the pleadings, the Court applies the ordinary Rule 12(c) standard, taking as true all well-pleaded allegations in the crossclaims—that is to say, the non-moving party's allegations—without regard to whether they were controverted by the moving party's answer.

### C. Judgment on the Pleadings Is Warranted as to the Kazakh Entities' Alter Ego Theory

Having disposed of the Kazakh Entities' procedural objections to Triadou's motion, the Court turns to the merits.[1] Triadou's motion hinges on the simple question whether the argument the Court relied on in dismissing the Kazakh Entities' unjust enrichment, conversion, and constructive trust claims against the Individual Defendants warrants dismissal of the same claims against Triadou.

Triadou contends that it must. According to Triadou, the Kazakh Entities have alleged that Triadou is an alter ego of the Individual Defendants and claims accrue against alter egos and their principals at the same time. If the common law claims are barred as to the Individual Defendants, they are barred as to Triadou. The Kazakh Entities disagree. They dispute whether the Court must find that Triadou is an alter ego of the Individual Defendants at this juncture, and they level multiple counterarguments to Triadou's claim accrual rule. The Court agrees with each party in part. The Kazakh Entities are correct that they are entitled to plead in the alternative a theory of individual liability against Triadou. But Triadou is correct that the Kazakh Entities' theory of alter ego liability is barred by the statute of limitations.

---

[1] Remaining arguments the Kazakh Entities label "procedural" are addressed in this merits section.

8

1. **The Kazakh Entities Plead Theories of Individual and Alter Ego Liability in the Alternative**

Triadou argues that the Kazakh Entities' second amended crossclaims allege that Triadou is liable as an alter ego under each of its unjust enrichment, conversion, and constructive trust claims, while the Kazakh Entities maintain that they are entitled to plead that Triadou is individually liable as an alternative theory. The Court agrees with both parties.

   a. **The Kazakh Entities State a Plausible Claim for Alter Ego Liability**

"Alter ego liability exists" under New York law "when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded[ ] that it primarily transacted the dominator's business rather than its own." *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 195 (2d Cir. 2010) (internal quotation marks and citation omitted). In this analysis, courts look to such factors as intermingling of corporate and shareholder funds; undercapitalization; failure to observe corporate formalities; failure to pay dividends; insolvency at the time of a transaction; siphoning off of funds by the dominant shareholder; and the inactivity of other officers and directors. *Id.* At the same time, "[c]ourts must be extremely reluctant to disregard corporate form, . . . and should do so only when the corporation *primarily* transacts the business of the dominating interest rather than its own." *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000).

Triadou contends that the Kazakh Entities' allegations meet this standard. The Kazakh Entities allege that Triadou is a special investment vehicle created by the Individual Defendants to hide the true ownership of their assets as they attempted to funnel those assets into New York real estate. Dkt. No. 433 ¶¶ 86, 89–92. While holding Triadou out as a separate entity, the Individual Defendants controlled it in two separate ways: its sole director operated at their

9

direction, and its sole shareholder, SDG, was fully controlled by the Individual Defendants and itself a front for their activities. *Id.* ¶ 86–87. For example, Ilyas Khrapunov "acted on behalf of SDG and Triadou" to arrange investments for the Individual Defendants with New York real estate opportunities "through Triadou." *Id.* ¶¶ 89–92. These investments were funded with money from other Individual-Defendant-controlled entities. *Id.* ¶ 98; *see also id.* ¶ 112 (noting that funds diminished as scrutiny on the Individual Defendants grew). And when the Kazakh Entities first filed suit against members of the Individual Defendants in the United States, Ilyas Khrapunov directed Triadou's director to begin liquidating its New York assets. *Id.* ¶ 115.

The Court agrees with Triadou that these allegations, taken as true, plausibly allege that Triadou is liable as an alter ego for the alleged tortious conduct of the Individual Defendants. Although not all of the alter ego factors are present in this account, many are, including failure to observe any corporate formalities, siphoning off of funds, and employment of a director himself directed by the Individual Defendants. Consistent with this account, the Kazakh Entities pleaded each of the three common law claims at issue against the Individual Defendant and Triadou without differentiation. *See id.* ¶¶ 174–86.

Based on the foregoing, the Kazakh Entities have plausibly alleged that Triadou is liable for the Individual Defendants' conversion, unjust enrichment, and constructive trust torts, as to which the Court previously found the Kazakh Entities stated a plausible claim. *See* Dkt. No. 426 at 34–38.

### b. The Kazakh Entities May Have Stated a Plausible Claim for Triadou's Individual Liability

The Kazakh Entities' response appears to be that they have pleaded a theory of individual liability in the alternative. Although the Kazakh Entities do not spell the argument out in detail, a two-part argument to this effect can be inferred from their briefing. First, the Kazakh Entities'

10

note that their alter ego allegations are legal conclusions not entitled to the presumption of truth on a Rule 12(c) motion. Taking only their well-pleaded factual allegations as true and drawing reasonable inferences therefrom, the Kazakh Entities contend they have plausibly stated a claim that Triadou is individually liable for the common law torts at issue here. In response, Triadou points out that the Second Amended Crossclaims do not reflect pleading in the alternative, since the Kazakh Entities pleaded their allegations collectively against the Individual Defendant and Triadou without differentiation. And they argue that the Court need not treat any legal conclusions as true in order to find that Triadou is an alter ego of the Individual Defendants; it would require *unreasonable* inferences from their factual allegations to find otherwise.

Triadou's first response misses the mark. Rule 8(d)(2) makes "lenient provisions for alternative pleading." *Washington v. Kellwood Co.*, No. 05-CV-10034 (DAB), 2009 WL 855652, at *10 (S.D.N.Y. Mar. 24, 2009). In the Second Circuit, there is no requirement that the alternative pleadings be made in a technical form. *Compare Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (finding no obligation to denominate pleadings "in the alternative") *with Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (approving more explicit formulations). As the Kazakh Entities suggest they have done here, Rule 8(d)(2) permits parties to plead in the alternative within a single count or defense. *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994). And it permits pleadings that posit two inconsistent legal relationships between the parties. *See, e.g., Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 308 (S.D.N.Y. 2010) (permitting third-party plaintiff to plead both that he had no relationship to the responding party; and, in the alternative, that that party was obligated to indemnify him).

Accordingly, in evaluating the Kazakh Entities' purported alternative pleading, the Court will consider the Kazakh Entities' well-pleaded factual allegations and reasonable inferences in

11

favor of this alternative theory of liability. Triadou, however, has made no argument that the Kazakh Entities' allegations are insufficient to state a plausible claim that Triadou is individually liable for unjust enrichment, conversion, or constructive trust. It has therefore failed to carry its burden as to those claims, and its motion to dismiss them is denied.

### 2. The Statute of Limitations Bars Unjust Enrichment, Conversion, and Constructive Trust Alter Ego Claims Against Triadou

Having concluded that the Kazakh Entities state a plausible claim that Triadou is liable as an alter ego for unjust enrichment, conversion, and constructive trust, the Court turns next to Triadou's argument that such claims are barred by the statute of limitations. Triadou's argument is based on case law suggesting that claims accrue against alter egos and principals at the same time and the Court's prior conclusions that the Kazakh Entities' claims against the Individual Defendants are time-barred. The Court summarizes Triadou's position before turning to the Kazakh Entities' counterarguments.

#### a. Triadou Contends that Claims Accrue Against Alter Egos and Principals at the Same Time

In the judgment enforcement context, several courts have held that claims accrue as to alter egos and their principals at the same time. In *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.* ("*Passalacqua I*"), the plaintiff alleged that the judgment debtor was an alter ego and sought to enforce the judgment against its principal under N.Y. C.P.L.R. § 5525(b). 608 F. Supp. 1261, 1264 (S.D.N.Y. 1985), *aff'd in part* 933 F.2d 131 (2d Cir. 1991). The district court reasoned that, under an alter ego theory, "the corporation and those who have controlled the corporation are treated as but one entity." *Id.* Because "[t]he cause of action accrues at the same time for the corporation and alter egos for all types of actions," the claim accrued as to both when the judgment was entered. *Id.* at 1264 & n.1. Accordingly, the claim was brought against the principal within the statute of limitations. *Id.* at 1264. On appeal, the Second Circuit

12

affirmed the district court's finding on the statute of limitations question, remarking that if the principals were in fact alter egos of the corporation, the plaintiff sought to enforce the previous judgment "against entities who were, in essence, parties to the underlying dispute." *William Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991) ("*Passalacqua II*"). New York courts have subsequently embraced this interpretation of the New York judgment enforcement statute. *See Solow v. Domestic Stone Erectors, Inc.*, 645 N.Y.S.2d 17, 17 (N.Y. App. Div. 1996) ("As the action is one to enforce a judgment against defendants who, if plaintiff prevails on the piercing question, will be treated as a single personality, it is governed by the 20-year Statute of Limitations [for judgment enforcement under New York law] with respect to all of the defendants, and was timely commenced."); *see also Norwood Grp. v. Phillips*, 828 A.2d 300, 303 (N.H. 2003) (finding, in a parallel judgment enforcement context, "that because under the alter ego theory[ ] the corporation and those that controlled it are treated as a single entity, the statute of limitations applicable to the corporation should apply to the corporation's alter egos"). And at least one district court has extended this principle beyond judgment enforcement. *See Adamson v. Armco, Inc.*, No. 5-92-CV-114, 1995 WL 271632, at *5 (D. Minn. Feb. 16, 1993) (noting that "when a plaintiff alleges that one company is the alter ego of another that plaintiff is essentially arguing that the two companies are the same legal entity" and applying that finding to an ERISA case).

Relying on these cases, Triadou argues that the fact that the Kazakh Entities' claims against the Individual Defendants are time-barred bars those claims against it as well. As Triadou notes, the Court's March 2018 Order held that all three common law claims were time-barred. Conversion and constructive trust claims accrue, respectively, when the alleged conversion took place and upon the occurrence of the wrongful act giving rise to a duty of

restitution. Dkt. No. 592 at 5–7. In its March 2018 Order, the Court found that these claims accrued in Kazakhstan no later than 2007 as to Victor Khrapunov and no later than 2009 as to Ablyazov—and were therefore barred by the three-year statute of limitations. *Id.* at 7. The Court also found that the Kazakh Entities' unjust enrichment claims were time-barred. *Id.* at 7–9. Those claims accrued in Kazakhstan when the first alleged embezzlement occurred. Notwithstanding the Kazakh Entities' allegations of additional post-embezzlement conduct, unjust enrichment claims accrue upon the occurrence of the wrongful act giving rise to a duty of restitution. *Id.* at 8. In this case, the wrongful acts at issue were the acts of embezzlement that occurred in 2009 and 2007, not the later transfer of those embezzled funds for investment in the United States. Accordingly, the same three-year statute of limitations applied to bar the Kazakh Entities' unjust enrichment claim as to Viktor Khrapunov and Ablyazov. The Court also found all three claims time-barred as to Ilyas Khrapunov. Although the Individual Defendants had not moved to dismiss the claims as to Ilyas Khrapunov, the Court declined to "sanction an illogical discrepancy," noting that the Kazakh Entities had pleaded the claims against the Individual Defendants as a collective unit. *Id.* at 9. After noting that the unjust enrichment claim accrued against Ilyas "at some time in 2008 when his entity, SDG, received the allegedly illicit funds," the Court found all three claims time-barred. *Id.* at 10.

Triadou maintains that *Passalacqua I* and *II* establish that the Kazakh Entities' claims accrued against it when they accrued against the Individual Defendants, which could be no later than 2009. Accordingly, it argues that they are time barred as to it as well.

b.  **The Kazakh Entities' Counterarguments Fail**

The Kazakh Entities dispute Triadou's conclusion, arguing that *Passalacqua* and its progeny are limited to the judgment enforcement context. First, they argue that their claims

14

against Triadou accrued at a later date than their claims against the Individual Defendants because there are "independent allegations" that make Triadou liable. Second, they argue that claims cannot accrue against an alter ego prior to its creation. The Court disagrees.

### 1. *Passalacqua* Applies in this Context

According to the Kazakh Entities, the *Passalacqua* opinions concern the narrow question of whether a plaintiff may enforce a judgment against the principal of an alter ego entity. As they point out, the Second Circuit opinion does not address claim accrual in its partial affirmance. And in this case the Kazakh Entities contend that they have pleaded conduct that renders Triadou independently liable for its conduct, rather than relying only on an equitable veil-piercing claim.

In the Court's view, this objection begs the question whether the alter ego and its controlling principals are to be treated as the same entity or not. If—as Triadou argues—alter ego allegations require the Court to disregard the corporate form as a fiction, it is nonresponsive that Triadou engaged in "independent" putatively tortious conduct, because all conduct in the alter ego context would be imputed to the Individual defendants as well. Accordingly, the Court begins with the threshold matter of what liability results from an entity's well-pleaded alter ego status.

On this point, the Court concludes that Triadou has the better argument. The logic adopted by the district court in *Passalacqua I*—that causes of action accrue against alter egos and their principals at the same time for all types of actions, 608 F. Supp. at 1264 n.1—is the logical extension of the notion that an application to disregard the corporate form is an argument that the alter egos and the corporation should be "treated as one entity," *Passalacqua II*, 933 F.2d at 143; *see also In re Yerushalmi*, No. 07-72816-478 (DE), 2009 WL 2982964, at *6 (Bankr.

E.D.N.Y. Sept. 14, 2009) (holding that for claims that "do[ ] not rely on a judgment, the applicable statute of limitations . . . accrues at the same time, regardless of whether it is a claim against the alter ego or a corporation"). This logic is consistent with courts' treatment of alter egos in other contexts. For example, in *Fisser v. International Bank*, the Second Circuit held that an alter ego corporation was required to submit to arbitration because as an alter ego it had the same contractual obligations as the individuals who had created it. 282 F.2d 231, 234 (2d Cir. 1960). And in *Hennessey's Tavern, Inc. v. American Air Filter Co.*, the California Court of Appeal held that an alter ego could not assert a defense of failure to serve process because the purpose of a service of process statute was to preclude the assertion of stale claims—an issue not implicated when the claims at issue were the *same claim* asserted against an individual and its "other self" alter ego. 251 Cal. Rptr. 859, 863 (Cal. Ct. App. 1988). As Triadou points out, this Court has itself embraced the single entity logic in concluding that claims accrued as to Ilyas Khrapunov when they accrued against SDG. *See* Dkt. No. 592 at 10.

Despite insisting that the *Passalacqua* line of cases do not comment on claim accrual, the Kazakh Entities provide no countervailing authority for the notion that "normal rules of claim accrual" would render claims against Triadou timely. Dkt. No. 696 at 11. It is true that in some instances courts do not apply identical procedural rules to alter egos and their principals. For example, in *Court Degraw Theatre, Inc. v. Loew's Inc.*, the magistrate judge found that the statute of limitations did not toll as to a corporate alter ego that had not been in existence during the events that tolled the statute of limitations. 172 F. Supp. 198, 200 (E.D.N.Y. 1959); *see also Balk v. N.Y. Inst. of Tech.*, No. CV 11-509 (JFB)(AKT), 2014 WL 1236562, at *13–15 (E.D.N.Y. Mar. 24, 2014) (finding claim accrued against principal at the same time it accrued against its alter ego, but declining to permit amendment adding alter ego defendant who had not

16

received sufficient notice of the claim). But these opinions can generally be explained by specific procedural rules, including general principles of tolling, and do not defeat the general logic at issue here—namely, that an alter ego and its principal are "treated as one entity" for purposes of claim accrual. *Passalacqua II*, 933 F.2d at 143.

Accordingly, if Triadou is in fact the Individual Defendants' alter ego, its conduct cannot be "independent"—it is simply a part of a course of conduct taken by each Individual Defendant and Triadou as a single entity.

### 2. Claims May Accrue Against Alter Egos Before the Alter Ego Comes into Existence

The Kazakh Entities' next argument is facially appealing: Triadou did not exist when the claims accrued against the Individual Defendants; consequently, the claims could not have accrued against it at those times. "The New York Court of Appeals has instructed that . . . the word 'accrued'" is used "in the same sense" throughout Article 2 of the N.Y. C.P.L.R., "namely, to describe 'the time when, and the place where, the plaintiff first had the right to bring the cause of action.'" *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 375 (S.D.N.Y. 2003) (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E. 2d 482, 484 (N.Y. 1999)). The argument might be that the plaintiff did not have the right to bring the cause of action against Triadou until it existed.

This argument, however, has fatal implications. If a claim accrues against an alter ego only after it has been created, an alter ego cannot be held liable for conduct prior to its creation, regardless of whether any conduct occurred outside the statute of limitations. That cannot be the Court of Appeals' meaning. Alternatively, if the Kazakh Entities posit that liability somehow may accrue before a claim does, their theory would work an end run around the statute of limitations entirely. It would permit plaintiffs to bring a suit premised on the corporation's alter

ego liability for its principals' time-barred conduct, secure a judgment, and then under *Passalacqua I* and *II* use a reverse veil-piercing action to enforce that judgment against the very principals the plaintiffs could not otherwise sue. Even if the Kazakh Entities hold firm to the notion that neither liability nor a claim may accrue before the alter ego is created, a similar situation results: they can bring a claim against Triadou for its own and the Individual Defendants' conduct after the alter ego was created, notwithstanding the fact that the Court has already concluded that the Individual Defendants' conduct could not be independently challenged because it is time-barred. Again, this claim would defeat the statute of limitations, as the Kazakh Entities could attempt to enforce against the Individual Defendants the judgment they had obtained against Triadou—contravening the Court's prior rulings. These implications underscore the Court's finding above that the Kazakh Entities do not persuasively distinguish either the judgment enforcement context from the common law claims context or claim accrual rules from the question of which statute of limitations applies.

This analysis disposes of the Kazakh Entities' further policy argument that the Court's reasoning accomplishes the "absurd" result of permitting the Individual Defendants to create shell companies to further launder the same stolen funds without facing liability. Dkt. No. 696 at 12. The absurd result would be to find that the statute of limitations does not apply when a principal executes its ongoing tortious conduct through shell entities that are not entitled to the benefits of the corporate form. Because the corporate form should be disregarded in such cases, it is the principal, not the corporation, who is being unjustly enriched, converting funds, or liable for constructive trust. Similarly, the Court's conclusion does not "effectively [ ] permit the defendants to use the corporate entity as a cloak for fraud," *Norwood*, 828 A.2d at 303, because what precludes the Kazakh Entities' claims against both Triadou and the Individual Defendants

18

is the statute of limitations, not the creation of the corporate entity. In any event, both the Individual Defendants and their alter ego continue to face liability for those claims that are not time barred.

### D. The Court Will Not Revisit the Kazakh Entities' Alter Ego Claim

As a final matter, the Kazakh Entities ask this Court to resurrect their alter ego claim against Triadou. Dkt. No. 696 at at 13–15. The Court dismissed that claim more than two years ago in its opinion on Triadou's motion to dismiss the Kazah Entities' initial crossclaims. *See* Dkt. No. 174 at 28–29. Now, the Kazakh Entities contend that the Court erred in dismissing that claim for two reasons: first, because *Passalacqua II* purportedly stands for the proposition that alter ego claims should be construed as standalone judgment-recognition claims under N.Y. C.P.L.R. § 5525(b); and second, because it contends that the Court failed to apply case law permitting reverse veil-piercing claims under New York law. Dkt. No. 696 at 14 & n.5. The Kazakh Entities make no showing of cause for their failure to raise either argument in their briefing on Triadou's motion to dismiss the counterclaims or at any other point in the previous two years.

Regardless of the merits of the Kazakh Entities' arguments, the Court is not inclined to reopen its past opinions in this longstanding litigation without a showing of good cause. As the Kazakh Entities themselves argue, "[r]econsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple . . . ." Dkt. No. 696 at 6 (quoting *Hecklerco, LLC v. YuuZoo Corp.*, 258 F. Supp. 3d 350, 356 (S.D.N.Y. 2017)). Yet the Kazakh Entities attempt to do just this here, adopting a new theory predicated on longstanding precedent and never previously presented in this litigation, without any explanation for their failure to do so before now.

Accordingly, the Kazakh Entities' request for the Court to reinstate their alter ego claim as a judgment-recognition claim is denied.

## IV. Conclusion

For the foregoing reasons, Triadou's motion for partial judgment on the pleadings is GRANTED in part and DENIED in part.

The Kazakh Entities' crossclaims that Triadou is liable as an alter ego for unjust enrichment (Count Eight), conversion (Count Nine) and constructive trust (Count Ten) are DISMISSED as time-barred. However, the motion for partial judgment on the pleadings is denied as to the Kazakh Entities' crossclaims that Triadou is individually liable for the same claims.

This resolves Dkt. No. 666.

SO ORDERED.

Dated: March 29, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge