UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

  Crossclaim Plaintiffs,

- against -

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

  Crossclaim Defendants.

ECF Case

No. 1:15-cv-05345 (AJN) (KHP)

# TRIADOU SPV S.A.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL AND FOR DISCOVERY SANCTIONS

Dated: April 8, 2019

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Counsel for Crossclaim Defendant Triadou SPV S.A.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

I. No Tenable Legal Theory Protects Almaty/BTA's Communications With Litco ............. 1

II. Almaty/BTA Waived Privilege By Affirmatively Using Withheld Evidence..................... 4

III. Almaty/BTA Acted In Bad Faith By ███████████████████████████ ......... 5

IV. Triadou's Requested Sanctions Are Appropriate Given Almaty/BTA's Conduct ............. 9

V. Almaty/BTA's Belatedly Disclosed Witnesses Should Be Precluded .............................. 10

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
  No. 08-cv-7508 (SAS), 2011 WL 4716334 (S.D.N.Y. Oct. 3, 2011) ........................................ 4

*Ambac Assur. Corp. v. Countrywide Home Loans*,
  27 N.Y.3d 616 (2016) ............................................................................................................. 2

*Bank of Am., N.A. v. Terra Nova Ins. Co.*,
  212 F.R.D. 166 (S.D.N.Y. 2002) ......................................................................................... 2, 4

*Costabile v. Westchester, N.Y.*,
  254 F.R.D. 160 (S.D.N.Y. 2008) ............................................................................................ 4

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ................................................................................................. 12

*DLC Mgmt. Corp. v. Town of Hyde Park*,
  163 F.3d 124 (2d Cir. 1998) ................................................................................................... 9

*Downey v. Adloox Inc.*,
  No. 16-cv-1689 (JMF), 2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) ..................................... 12

*Falise v. American Tobacco Co.*,
  193 F.R.D. 73 (E.D.N.Y. 2000) ............................................................................................. 4

*Fendi Adele v. Filene's Basement, Inc.*,
  No. 06-cv-244 (RMB) (MHD), 2009 WL 855955 (S.D.N.Y. Mar. 24, 2009) ................. 10, 11

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
  No. 10-cv-142 MHD, 2013 WL 9948284 (S.D.N.Y. May 29, 2013) ...................................... 9

*In re Grand Jury Proceedings*,
  219 F.3d 175 (2d Cir. 2000) ................................................................................................... 4

*In re Grand Jury Subpoena Duces Tecum*,
  112 F.3d 910 (8th Cir. 1997) .................................................................................................. 3

*Imperial Fin. Corp. v. Fin. Factors, Ltd.*,
  490 P.2d 662 (Haw. 1971) ...................................................................................................... 8

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
  295 F.R.D. 28 (E.D.N.Y. 2013) .......................................................................................... 1, 3

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) ..................................................................................10

*Meyer v. Kalanick*,
    212 F. Supp. 3d 437 (S.D.N.Y. 2016).............................................................................8

*Pal v. N.Y. Univ.*,
    No. 06-cv-5892 (PAC)(FM), 2008 WL 2627614 (S.D.N.Y. June 30, 2008) ............11, 13

*Regeneron Pharm., Inc. v. Merus B.V.*,
    144 F. Supp. 3d 530 (S.D.N.Y. 2015),
    *aff'd sub nom.* 864 F.3d 1343 (Fed. Cir. 2017) .............................................................8

*S.E.C. v. Smith*,
    798 F. Supp. 2d 412 (N.D.N.Y. 2011)............................................................................9

*Schaeffler v. United States*,
    806 F.3d 34 (2d Cir. 2015)..............................................................................................3

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)..........................................................................................4

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)............................................................................................4

*United States v. Sawyer*,
    878 F. Supp. 295 (D. Mass. 1995) ..................................................................................3

**Other Authorities**

Fed. R. Civ. P. 37(c)(1)...............................................................................................10, 12

Fed. R. Civ. P. 45(e)(2)(B) ...............................................................................................10

N.Y. Rules of Prof. Conduct § 5.3......................................................................................8

Defendant Triadou SPV S.A. ("Triadou") respectfully submits this reply memorandum in support of its motion to compel, for discovery sanctions, and to preclude witnesses belatedly disclosed by the City of Almaty and BTA Bank (together, "Almaty/BTA"). (ECF 967).

**PRELIMINARY STATEMENT**

The best defense Almaty/BTA can muster for their discovery misconduct is that Triadou has not shown the misconduct was egregious *enough*. Yet the evidence, such as cloak-and-dagger agreements that make no sense absent some improper purpose and the testimony of a witness to whom ███████████████████████████, presents the requisite clear and convincing proof of their misconduct. Where this Court's prior admonitions and concerns have gone unheeded, only sanctions will deter further misconduct by Almaty/BTA.[1]

**I.     No Tenable Legal Theory Protects Almaty/BTA's Communications With Litco**

Almaty/BTA's communications with Litco are not protected under any of their posited theories. Despite earlier claims that their Litco communications were protected by common interest and attorney client privileges, (ECF 888 at 2 n.2), Almaty/BTA now focus on a work product argument, (ECF 993 at 39). But Almaty/BTA have failed to meet "the heavy burden of establishing" that doctrine's applicability here. *See, e.g.*, *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013). Their barebones assertion that the Litco documents were created while litigation was ongoing is insufficient because the "'mere relation of documents to litigation does not automatically endow those documents with privileged status.'" *Id.* (quoting *Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 362 (E.D.N.Y. 2009)).

---

[1] The abbreviations and defined terms used herein have the same meaning as in Triadou's opening brief. (ECF 968). References to "Exhibit" or "Ex." are either to those attached to the original Skakel Declaration, (ECF 969), or to the April 8, 2019 Declaration of Deborah A. Skakel filed with this reply.

1

Equally insufficient is Almaty/BTA's contention that their disclosure of work product to Litco is not a waiver, where they admit that disclosure results in a waiver if it "'substantially increases the opportunity for potential adversaries to obtain the information.'" (*See* ECF 993 at 38 (citation omitted)). This occurs where the materials are "either given to an adversary or used in such a way that they may end up in the hands of an adversary." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002). In either scenario, Almaty/BTA have waived work product. First, Almaty/BTA did share work product with an adversary. They admit Felix Sater has been their adversary ███████████████████████████████████████, (*see* ECF 993 at 11 (Sater "went from witness to target" when █████████████████████ ████████████)), and the record confirms that Sater and Litco are one— ███████████████ ██████████████████████████████████████████████████████████████████████████████████. Second, if Almaty/BTA truly did not know who owned Litco, then they could not have reasonably believed that work product disclosed to Litco would not "end up in the hands of an adversary" (which it did), resulting in a waiver. *Bank of Am.*, 212 F.R.D. at 170.[2]

Nor can Almaty/BTA save these communications by claiming a common interest with Litco that does not exist. New York recognizes a narrow common interest doctrine that applies only to "codefendants, coplaintiffs or persons who reasonably anticipate that they will become colitigants." *Ambac Assur. Corp. v. Countrywide Home Loans*, 27 N.Y.3d 616, 628 (2016). Almaty/BTA and Litco are not co-litigants, and Almaty/BTA do not even try to address *Ambac*.

---

[2] Also misplaced is Almaty/BTA's claim that Triadou seeks "additional discovery," (ECF 993 at 40); Triadou seeks documents that Almaty/BTA have already identified as relevant and responsive to Triadou's demands. And there are many legitimate purposes for this discovery beyond impeaching Sater, including impeaching other witnesses Litco provided; identifying financial inducements to other witnesses (potential or actual); identifying inconsistencies in information provided by witnesses; revealing troubling arrangements like those with Litco; and revealing improper evidence gathering techniques. Triadou cannot obtain this information elsewhere, and has a substantial need for it.

And Almaty/BTA cannot show a common interest with Litco where they admit that Litco's ▇▇▇▇▇▇ is their adversary. (ECF 993 at 11). Even if Almaty/BTA mistakenly believed there to be such an interest, that belief does not create or preserve privilege. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) ("we know of no authority… holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one"); *United States v. Sawyer*, 878 F. Supp. 295, 297 n.1 (D. Mass. 1995) ("one party's mistaken belief about the existence of a joint defense does not, and cannot, give rise to a joint defense privilege.") (citation omitted).

Almaty/BTA also lack the requisite common *legal* interest with Litco. They misconstrue the Second Circuit's opinion in *Schaeffler v. United States*, 806 F.3d 34 (2d Cir. 2015), (*see* ECF 993 at 42), which found that the party and non-party "could avoid [] mutual financial disaster" by "cooperating in securing a particular tax treatment of a refinancing and restructuring," *Schaeffler*, 806 F.3d at 41-42. But that tax treatment was a decidedly legal issue, and the alternative involved ***affirmative loss*** to the non-party. Here, Almaty/BTA and Litco were not cooperating to avoid a "mutual financial disaster," ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Likewise, *Schaeffler*'s analogy comparing the non-party's role there to an insurer—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Compare* 806 F.3d at 42, *with* ECF 993 at 40-41).[3]

---

[3] Also concocted was Almaty/BTA's labeling ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. While Almaty/BTA withdrew this claim of privilege, (ECF 993 at 43), their abuse of the discovery process to shield non-privileged communications ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and is an independent reason to grant Triadou's motion to compel as to Monstrey-related documents. Nor are those documents protected work product where Almaty/BTA proffer no competent evidence to support their claim, *see, e.g.*, *Koumoulis*, 295 F.R.D. at 39; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3

Finally, Almaty/BTA's attempt to compare Litco to investigators fails where Litco did not investigate anything. (*See* ECF 993 at 42). There is no evidence that Litco interviewed witnesses, *cf. Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008), or explored potential new leads. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4]

## II. Almaty/BTA Waived Privilege By Affirmatively Using Withheld Evidence

Even if Almaty/BTA's and Arcanum's communications with Litco were privileged (they are not), Almaty/BTA waived any privilege by relying on the Litco documents to oppose sanctions. Privilege "cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991), as "[f]airness considerations may also come into play where the party asserting the privilege makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents," *Falise v. American Tobacco Co.*, 193 F.R.D. 73, 84 (E.D.N.Y. 2000) (citations omitted); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000) (finding this doctrine applies to waiver of work product protection). By relying on the contents of withheld emails, (ECF 993 at 4), Almaty/BTA cannot

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Because Almaty/BTA cannot show that work product disclosed to Monstrey's counsel was not given to an adversary or more likely to end up in the hands of their adversary, *Bank of Am.*, 212 F.R.D. at 170, any protection over those communications has been waived. Almaty/BTA's Rule 502(d) Order stratagem is also untenable because the documents it would cover are not privileged and would be disclosed, (ECF 901 at 15).

[4] The *Kovel* rule does not apply here, as it does not touch on the common interest doctrine; it merely extends the attorney-client privilege to non-lawyers who are "necessary" to translate information for counsel. *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08-cv-7508 (SAS), 2011 WL 4716334, at *3 (S.D.N.Y. Oct. 3, 2011) (necessity "means more than just useful and convenient"; it requires the third-party's involvement to "be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications") (citations and internal quotation marks omitted). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

prevent Triadou from testing the emails' truthfulness, especially given the facially contradictory descriptions of the contents Almaty/BTA provide, (*compare id.* at 4 (███████████ ███████████████), *with id.* at 34 ("Bourg approached the Kazakh Entities through his attorney, Robert Wolf")). Almaty/BTA cannot use concocted privilege claims as both a sword and a shield, and they certainly cannot use them to rewrite history.

**III.     Almaty/BTA Acted In Bad Faith By** ███████████████████████████████

Triadou has met, not ignored, its burden to present clear and convincing proof that Almaty/BTA have acted in bad faith by engaging with Litco—owned ███████████████ by non-party fact witness Felix Sater—and then failing to disclose that information to Triadou. ███

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███.

***Sater's testimony confirms that Arcanum knew he owned Litco***.  To escape the strong evidence that Arcanum knew Sater owned Litco, ███████████████████████████
███████████████████████████████████████████████.  But their arguments are based "on a handful of curated" excerpts from Sater's deposition "presented apart from their context or the full record." (*See id.* at 21). A close look at Sater's testimony explains any alleged incongruities, and confirms Arcanum's knowledge. In his first deposition, Sater was asked

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

5

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ ████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ ██████████████████████████████

█████████████████████████████████████

██████████████████

████████ ██████████████████████████████████████████

███████████████████████████████████████████████████

██████████ ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████. The five lines of testimony on which Almaty/BTA rely, (ECF 993 at 24), ignore Sater's more fulsome explanation for the claimed inconsistency █

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████████

████████████████ ██████████ ███████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████[5] ██████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████████.

***Almaty/BTA turned a blind eye to Sater's ownership of Litco***. Almaty/BTA cannot evade knowledge by pointing to ████████████████████ ████████████ ████████████████████████████████████████ ████████████████████████████████████████████. But that deniability is implausible where, purportedly without knowledge of Litco's owner, Almaty/BTA agreed to pay Litco $100,000 per month and 16% of their worldwide recoveries just two months after Litco was formed (in late March 2015)████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████.

---

[5] ██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████. Almaty/BTA's failure to investigate these links further evidences their conscious disregard for their discovery obligations and willful blindness to the truth.

7

██████████████████████████████

██████████████████████████████

██████████████████████████████

███████████████████,⁶ ████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████,⁷ ██████████

██████████████████████████████

████████████.

---
⁶ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

⁷ In a footnote, Almaty/BTA argue that Arcanum's knowledge that Sater owned Litco cannot be imputed to them based on an exception in the Restatement (Third) of Agency Law. (ECF 993, at 25 n.19). But that exception (where an agent has a duty to maintain confidentiality to another) "is intended to protect those who exercise good faith, and not as a shield for unfair dealings." *Imperial Fin. Corp. v. Fin. Factors, Ltd.*, 490 P.2d 662, 664 (Haw. 1971) (citation omitted). Applying the exception here would shield unfair dealings; ████████████████████████████████████████████████████████████████████████████. Neither result is consistent with the spirit of the exception.

Viewed as a whole, Triadou has presented "clear evidence" that Almaty/BTA acted in "conscious disregard of their discovery obligations." *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (confirming such disregard "amount[ed] to the bad faith required to impose sanctions," and affirming imposition of same). That conclusion is unchanged by Triadou's reliance on circumstantial evidence from which an "inference" must be drawn. (*See* ECF 993 at 25).[8] In *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 426-27 (N.D.N.Y. 2011), on which Almaty/BTA rely, the Court acknowledged that deliberate fraud "can fairly be inferred" from information that the party to be sanctioned "should have known." While the record there did "not support this inference," the court's analysis implies that where sufficient evidence supports such an inference (as it does here), sanctions may be imposed. *See id.* In any event, Triadou's argument was not merely that Almaty/BTA "should have known" Sater owned Litco, (*see* ECF 993 at 25), but that Almaty/BTA "turned a blind eye" to that knowledge, (*see, e.g.*, ECF 968 at 2, 15).

### IV. Triadou's Requested Sanctions Are Appropriate Given Almaty/BTA's Conduct

Sanctions are appropriate here, (ECF 968 at 21-22), and Almaty/BTA's erroneous arguments do not alter the result. For example, Almaty/BTA's claim that precluding Sater is less severe than imposing monetary sanctions is wrong as a matter of law. *Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10-cv-142 MHD, 2013 WL 9948284, at *8 (S.D.N.Y. May 29, 2013) (ranking severity of sanctions). It is also inconsistent with their argument that the Court should not preclude their late-disclosed witnesses. (*See* ECF 993 at 49). By affirmatively seeking to preclude Sater and evidence of their misconduct, Almaty/BTA confirm that such a result would be a gift, not a sanction. The Court should not reward Almaty/BTA's behavior by granting their desired outcome.

---

[8] As Almaty/BTA have previously argued to this Court, "[c]riminal defendants can be and frequently are convicted solely on the basis of circumstantial evidence, despite the exacting 'beyond a reasonable doubt' standard of proof." (ECF 490 at 20 (citing cases)).

9

Triadou also seeks only a narrow subset of the costs it incurred due to Almaty/BTA's actions. Had Almaty/BTA timely produced the Litco documents, Triadou could have streamlined its examination of Sater without the need to explore basic information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[9] That Almaty/BTA would have sought a second day of Sater's deposition is irrelevant. (ECF 993 at 31). Triadou's requested sanctions are reasonable and narrowly targeted to remedy the misconduct at issue, and proper in light of the prejudice Triadou has suffered. *Fendi Adele v. Filene's Basement, Inc.*, No. 06-cv-244 (RMB) (MHD), 2009 WL 855955, at *5 (S.D.N.Y. Mar. 24, 2009) (obtaining the discovery to which a party is entitled does not preclude awarding other relief).[10]

## V. **Almaty/BTA's Belatedly Disclosed Witnesses Should Be Precluded**

Pursuant to Federal Rule of Civil Procedure 37(c)(1) and the four-factor test used in this jurisdiction to assess whether preclusion is warranted, the four witnesses Almaty/BTA belatedly

---

[9] In arguing that Triadou delayed in seeking discovery regarding Litco, (ECF 993 at 30-31), Almaty/BTA ignore that Federal Rule of Civil Procedure 45(e)(2)(B) embargoed the information in the Litco Email (which revealed Litco's existence to Triadou) when it was clawed back. Triadou could seek such information only after the Court compelled production of the Litco Email in July 2018, (ECF 798), at which time the scope of fact discovery already had been limited, (ECF 649 at 8). Triadou thus needed leave of Court to seek such discovery; Almaty/BTA's "offer" was therefore meaningless, and rendered more so where it came after fact discovery closed and the Litco-related misconduct had been discovered, (ECF 888 at 1-2 n.1)—all of which Triadou's counsel sought to explain at the February 26 conference, (Ex. 36 at 16:1-6). Triadou also has already addressed Almaty/BTA's spurious argument concerning one reference to "Litgo" in Bourg's September 2017, foreign-language deposition. (ECF 864 at 2).

[10] Almaty/BTA's complaints regarding their history of non-compliance are misguided as a matter of fact and law. *Metropolitan Opera* does not hold that the "history of non-compliance must be unrelated to the misconduct at issue in this motion," (*compare* ECF 993 at 26, *with Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 227 (S.D.N.Y. 2003), *adhered to on reconsideration*, No. 00-cv-3613 (LAP), 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004)). Moreover, Triadou's citation in its opening brief to certain significant examples of Almaty/BTA's sustained discovery misconduct does not operate to eliminate other examples of their discovery misconduct. (*See, e.g.*, ECF 409 at 2 (the Court "warned" Almaty/BTA after three cancellations of Bourg's deposition that another "will not be viewed favorably"); ECF 773 at 3 n.1 (noting Court's prior "grave concerns about Plaintiffs' non-compliance" with Rule 26 until Monstrey's identity was disclosed); ECF 787 at 2-3 (Almaty/BTA's behavior in producing Monstrey-related documents was "not consistent with the spirit of Rule 1's requirement that the parties cooperate with all court orders")).

added to their Rule 26(a)(1) disclosures—two in response to Triadou's sanctions motion—should be precluded. (*See* ECF 968 at 23-25). Almaty/BTA offer no credible justification for their failure to timely disclose these witnesses, which failure was not harmless.

First, Almaty/BTA's "explanations" for belatedly disclosing these witnesses are based on inconsistent positions. While they now assert that "fact discovery had not ended in October 2018" when they belatedly disclosed these witnesses, (ECF 993 at 45-46),[11] Almaty/BTA argued three months ago that fact discovery here "ended for virtually all purposes on May 9, 2018," (ECF 910 at 1; *see also id.* at 2 ("General fact discovery in this action closed on May 9, 2018")). Second, in that same briefing three months ago, Almaty/BTA also tried to defend their belated disclosures by arguing that they were "obligated" to make them under the Rules, (ECF 925 at 2 (citing Rule 26(e)'s continuing obligations and admitting they disclosed the witnesses "exactly as they were obligated to do")); but now they claim that they "were not required to amend their initial disclosures" under the Federal Rules, (ECF 993 at 46). These inconsistent positions weigh in favor of, not against, preclusion of Almaty/BTA's late-disclosed witnesses, particularly where this Court has already held that fact discovery closed on August 31, 2018, (ECF 649 at 8; ECF 901 at 1; ECF 929 at 1), and where neither excuse justifies their late disclosures.

Likewise, Triadou has already shown that Almaty/BTA's identification of Dzhunusova and Duysenbina in an interrogatory response at the outset of discovery was insufficient as a matter of law to "satisfy [Almaty/BTA's] Rule 26(a)(1)(A) disclosure obligation"; confirmation that a witness may be called at trial is required. (ECF 968 at 24 (citing *Downey v. Adloox Inc.*, No. 16-cv-1689 (JMF), 2018 WL 794592, at *1-2 (S.D.N.Y. Feb. 8, 2018); *see also Pal v. N.Y. Univ.*, No.

---

[11] Almaty/BTA's attempt to tie these witnesses to Ablyazov's deposition fails, (ECF 993 at 44), where the witnesses were added to their Rule 26 disclosures weeks before the deposition, and where Almaty/BTA did not discuss these witnesses at the deposition.

11

06-cv-5892 (PAC)(FM), 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008) (holding same)). Almaty/BTA do not address *Downey* or this legal proposition because they have no explanation why the law does not apply to them. And Almaty/BTA's early identification of these witnesses simply confirms that they knew of these witnesses well before discovery closed and failed to timely add them to their Rule 26 disclosures.

Nor should the Court subject Triadou to the higher evidentiary bar of requiring a showing of bad faith or "callous disregard" before imposing preclusion, as Almaty/BTA suggest, (*see* ECF 993 at 49 (citing *Martinez v. Port Auth. of N.Y. & N.J.*, No. 01-cv-721 (PKC), 2005 WL 2143333, at *14 (S.D.N.Y. Sept. 2, 2005)), as the Second Circuit has declined to read that requirement into Rule 37(c)(1), *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). Even if such a showing were required, Almaty/BTA's conduct reflects such a callous disregard. Not only do they take inconsistent positions to suit their needs and ignore legal authority, but when faced with a motion to preclude their late-disclosed witnesses, they have doubled down by trying to swap ***one*** of their late-additions for ***two*** new ones who also were not included on their Rule 26(a) disclosures. (ECF 993 at 46-47). Almaty/BTA cannot reasonably assert that tardily adding two new witnesses does not "materially" change their already improper disclosures, (*see id.* at 46), particularly where their new proposal adds three (not two) new witnesses whom Triadou must prepare to depose and examine at trial. Almaty/BTA's conduct is designed to tax the defendants' resources, which not coincidentally, also shows the prejudice to Triadou.

Finally, the "relevance" and the "potential for continuance" factors support preclusion here as well. As to relevance, Almaty/BTA proffer remarkably little evidence despite the Court's interest in that subject at the February 26 conference. That these witnesses can discuss "general knowledge of the fraud at BTA" is of no moment where Almaty/BTA admit they have already

12

disclosed six other witnesses to do the same. (ECF 933 at 44-45). ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

Further, Almaty/BTA's failure to begin coordinating with these witnesses until after the February 26 conference, (ECF 993 at 45), many months after fact discovery closed, supports preclusion under the "possibility of continuance factor." *Pal*, 2008 WL 2627614, at *6 (factor supports preclusion where non-movant "made no showing" that it tried "at an appropriately early date" to obtain information from witnesses). In sum, all four factors support preclusion of Almaty/BTA's original late-disclosed witnesses, and the two new witnesses disclosed in their opposition.[12]

## CONCLUSION

For the reasons set forth above and in its opening brief, Triadou respectfully requests that the Court compel the production of Almaty/BTA's communications with Litco and Monstrey, impose monetary sanctions for Almaty/BTA's conduct in connection with Litco-related discovery, and preclude the (now) three witnesses Almaty/BTA belatedly disclosed.

---

[12] To avoid complete preclusion, Almaty/BTA suggest that the witnesses should be allowed to authenticate documents and lay foundation, (ECF 993 at 47 n.28), but their Rule 26 disclosures already identify a witness for authentication purposes, (*see* Ex. 17 at 7). And allowing these witnesses to lay foundation would be an end-run around preclusion; unsurprisingly, neither case Almaty/BTA cite even addresses laying foundation. (*See* ECF 993 at 47 n.28 (citing *E.E.O.C. v. New Breed Logistics*, No. 10-2696-STA-tmp, 2013 WL 1404926, at *1 n.2 (W.D. Tenn. Apr. 5, 2013) & *Mendez v. Deutsche Bank Nat'l Trust Co.*, No. 17-cv-563, 2017 WL 2992450, at *4 (S.D. Tex. June 1, 2017)).

Dated: New York, New York
April 8, 2019

Respectfully submitted,

**BLANK ROME LLP**

By:    */s/ Deborah A. Skakel*
      Deborah A. Skakel
      Alex E. Hassid
      Robyn L. Michaelson
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
dskakel@blankrome.com
ahassid@blankrome.com
rmichaelson@blankrome.com

*Counsel for Crossclaim Defendant Triadou SPV S.A.*