# BLANKROME

The Chrysler Building
405 Lexington Avenue │ New York, NY 10174-0208
blankrome.com

*Phone:*  (212) 885-5148
*Fax:*    (917) 591-7897
*Email:*  dskakel@blankrome.com

April 17, 2019

**VIA ECF**

The Honorable Alison J. Nathan
United States District Judge
United States District Court – S.D.N.Y.
40 Foley Square, Room 2102
New York, New York 10007

Re:  *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
     No. 15-CV-5345 (AJN)(KHP)

Dear Judge Nathan:

We represent Triadou SPV S.A. ("Triadou"), and respectfully submit this short letter in response to the April 16, 2019 "supplemental" submission of the City of Almaty, Kazakhstan and BTA Bank JSC (together, "Almaty/BTA"). (ECF 1025). Almaty/BTA's claim that Triadou misrepresented Almaty/BTA's counsel's involvement in the development of the Monitorship Order is simply wrong, and unfortunately, is accompanied by several other misstatements that require correction. Triadou therefore respectfully requests that the Court accept this letter in response.

*First*, Triadou did not "walk back" its description of the involvement of Almaty/BTA's counsel in preparing the Monitorship Order. (ECF 1025 at 1 (citing ECF 136-2 at 2-3)). Triadou's letter at the time affirmatively disagreed with Almaty/BTA's claim that their attorney did not participate, (ECF 136 at 2 n.2); and the Declaration attached to that letter stated that Triadou's state court counsel "observed" counsel for Almaty/BTA discussing the terms of the Monitorship Order, as well as the Chetrit Entities' counsel "openly soliciting" approval from Almaty/BTA's counsel regarding the same, (ECF 136-2 ¶ 5).[1]

*Second*, Triadou did not communicate with the Monitor through a "backchannel." (ECF 1025 at 2 n.2). Rather, Triadou's communication was direct and open, and it copied counsel for the Chetrit Entities. Triadou quite obviously understood its communication would end up in the hands of Almaty/BTA's counsel, exactly as it did. And Almaty/BTA's ready access to that communication

---

[1] It is unclear why Almaty/BTA's counsel's seniority is relevant at all to whether they participated in development of the Monitorship Order. (*See* ECF 1025 at 1 n.1). And Almaty/BTA's attempt to imply that their attorney could not have demanded that the Monitorship Order include a confidentiality provision because there is no such provision in the Monitorship Order, (*id.* at 1), is a non-sequitur, given that Triadou's state court counsel refused to agree to that demand.

BLANKROME

April 17, 2019
Page 2

only confirms they are not being forthright with the Court about their involvement in the Chetrit Entities' actions in the state court proceedings.

*Third*, Almaty/BTA bafflingly seek to revive a two-year old discovery dispute that the Court has already resolved by distorting a very simple, and plainly inadvertent, communication. It has been known for some time that Mr. Krasnov interfaces with Triadou's counsel, but that fact does not transform him into a "managing agent" for purposes of Federal Rule of Civil Procedure 30. Indeed, that was the basis on which Magistrate Judge Parker denied Almaty/BTA's motion to compel Mr. Krasnov's deposition. (ECF 330 at 13-14, 17-19). Almaty/BTA's effort to paint Triadou as a bad actor by pointing to this irrelevant issue is merely deflection.

*Fourth*, Exhibit 1 to Almaty/BTA's "supplemental" letter confirms that Almaty/BTA are downplaying, if not outright obfuscating, their connection to the state court proceeding. That connection, based on their contractual obligations to the Chetrit Entities, is described in the email Triadou provided to the Monitor. (ECF 1025-1, ¶ 2 (describing the connection in the second subparagraph of Paragraph 2). This contractual relationship explains not only why Almaty/BTA are pulling the strings, but also why, despite the state court's order that the Chetrit Entities are to bear the costs of the Monitorship Agreement, (ECF 1005-4 at 4) (ordering that the Chetrit Entities "will bear the costs of the Monitor, in addition to the amounts due Triadou under any outstanding judgments")), Almaty/BTA now argue that "the Chetrit Entities (and/or Triadou)," should bear those costs, (ECF 1004 at 16).

Respectfully submitted,

   *s/ Deborah A. Skakel*
Deborah A. Skakel