USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,

    Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

    Defendants.

**OPINION & ORDER**

1:15-CV-05345 (AJN) (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

    Plaintiffs, the City of Almaty, Kazakhstan and BTA Bank JSC (the "Kazakh Entities" or "Plaintiffs"), have moved for leave to file an amended complaint to assert an additional claim against Defendant Ilyas Khrapunov. (ECF No. 914.) For the reasons set forth below, the Motion is GRANTED.

**BACKGROUND**

    The Court assumes the reader's familiarity with the background of this case discussed in numerous prior opinions and orders. *See City of Almaty, Kazakhstan v. Ablyazov*, 15-cv-5345(AJN), 2018 WL 3579100 (S.D.N.Y. July 25, 2018); *City of Almaty, Kazakhstan v. Ablyazov*, 278 F. Supp. 3d 776 (S.D.N.Y. 2017); *City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016). For this reason, the Court sets forth only those facts needed for context in this decision.

    The Kazakh Entities allege that Defendants embezzled billions of dollars from Almaty, Kazakhstan and BTA Bank. Defendant Viktor Khrapunov is the former mayor of Almaty and father of Defendant Ilyas Khrapunov. Defendant Mukhtar Ablyazov is the former Chairman of

BTA Bank and father-in-law of Ilyas Khrapunov. The elder Khrapunov and Ablyazov are accused of embezzling money from Plaintiffs. The Kazakh Entities assert that Ilyas Khrapunov assisted his father and father-in-law by funneling some of the money they stole through Defendant Triadou SPV, S.A. ("Triadou") into real estate investments, including two investments in New York City (the Flatotel and a new condominium complex being built at the site of the former Cabrini Medical Center). Plaintiffs have filed suit in jurisdictions across the globe on a quest to recover the stolen money. The Individual Defendants fled Kazakhstan. The Khrapunovs currently reside in Geneva, Switzerland, and Ablyazov is in hiding in France.

On November 12, 2009, the High Court of Justice of the United Kingdom entered a worldwide freezing order over Ablyazov's assets. That order required Ablyazov to disclose his assets and refrain from alienating them during the pendency of the U.K. proceedings. (*See* Doc. No. 143-9; *see also* Doc. No. 143-8, 4 (U.K. Supreme Court judgment in *JSC BTA Bank v. Ablyazov*, analyzing "terms of a freezing order which was made by Teare J on 12 November 2009 and was subsequently amended.").) The November 2009 freezing order was followed by a worldwide receivership order entered on July 16, 2010, which designated court-ordered receivers to administer certain of Ablyazov's assets and ensure that his assets were not dissipated. The freezing and receivership orders were subsequently amended on multiple occasions. (*See* Doc. No. 143-10; *see also* ECF No. 433, ¶¶ 35-36, 66-67 (describing the freezing and receivership orders).) Ablyazov did not comply with the UK Court's orders and was therefore held in criminal contempt. *See* JSC BTA Bank v. Ablyazov [2012] EWHC 237 (Comm).

This international drama finds itself in this District through what started as a New York state court interpleader complaint brought by the Chetrit Group LLC and related entities (collectively, the "Chetrit Group") against the City of Almaty and Defendant Triadou in connection with the Flatotel investment. In 2014, Triadou assigned its interest in the Flatotel to the Chetrit Group for $21,000,000 to be paid in four installments. After learning about the assignment, the City of Almaty claimed that it should be paid the $21,000,000 because Triadou used funds stolen from the City of Almaty and/or BTA Bank to purchase its interest in the Flatotel.[1] Caught in between Triadou and the City of Almaty, the Chetrit Group brought an interpleader action in state court to determine who is entitled to the $21,000,000 and to be discharged from further liability associated with the payment. Then, in July 2015, the City of Almaty removed the state action to this Court. The Hon. Alison J. Nathan ultimately issued an order of attachment over the funds. (Doc. No. 192.) Currently, the funds are under the care of a monitor appointed by the New York state court, but being held on behalf of the United States Marshall for this District pursuant to Judge Nathan's attachment order.

Also in July of 2015, BTA Bank brought claims in the U.K. High Court of Justice against Ilyas Khrapunov, alleging that he met with Ablyazov in London and conspired with him to violate the freezing and receivership orders by dissipating Ablyazov's assets. (*See* Doc. No. 916-1, ¶¶ 1-5.) On August 21, 2018, the Hon. Judge Waksman of the High Court of Judgment, Business and Property Courts of England and Wales, handed down a judgment in favor of BTA Bank. (*Id*. ¶¶ 14-19.) The judgment was in the amount of $424,110,000, plus interest of

---

[1] The Chetrit Group also made an upfront payment of $6 million as repayment of a loan on the Cabrini Medical Center project and a $1 million down payment on the Chetrit Group's re-acquisition of Triadou's interest in the Flatotel.

$75,851,783.01, running at a rate of 5%. (*Id*. ¶¶ 27-29; *see also* Doc. No. 916-4, ¶ 1(a)-(b) (collectively, the judgment and accompanying order are referred to herein as the "Khrapunov Judgment").)

The Kazakh Entities now seek to amend the Second Amended Crossclaims ("SAC") solely to add a recognition and enforcement claim under the New York Civil Practice Law and Rules (C.P.L.R.) § 5303. (Doc. No. 916-5 (proposed Third Amended Crossclaims).)

## DISCUSSION

**I. LEGAL STANDARD TO AMEND A PLEADING**

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks and citation omitted). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility . . . ." *Monahan v. New York City Dep't of Corrs*., 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted).

Where, as here, there is a scheduling order in place that establishes a deadline for seeking leave to amend, "the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the judge's consent"). The determination of whether "good cause" exists under Rule 16(b) largely turns on the diligence of the moving party. *Holmes*, 568 F.3d at 335 (citation omitted); *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (to show good cause, moving party must demonstrate that "despite its having exercised diligence, the applicable deadline could not have been reasonably met" (internal quotation marks and citation omitted)).

## II. APPLICATION TO PLAINTIFFS' MOTION TO AMEND

The Court finds that the Motion should be granted under the standards of Rules 15 and 16. To start, the Kazakh Entities have shown the necessary diligence required under Rule 16. Plaintiffs requested permission to amend less than three months after receiving the Khrapunov Judgment. Any delay in seeking the amendment is attributable to Plaintiffs' attempt to meet and confer with Ilyas Khrapunov to obtain his consent to the amendment. Further, courts in this District have found that a time period of less than three months satisfies the diligence standard under Rule 16. *See, e.g., Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 398–99 (S.D.N.Y. 2017) (motion to amend "within a few months" was a reasonable exercise of diligence); *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148–49 (S.D.N.Y.

5

2012) (finding diligence and allowing amendment sought two months after facts were allegedly learned during discovery); *Permatex, Inc. v. Loctite Corp.*, No. 03 Civ. 943 (LAK) (GWG), 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (plaintiff exhibited diligence by moving to amend two months after deposition brought new information to light).

Second, Ilyas Khrapunov will not suffer undue prejudice if the amendment is permitted. "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (internal quotation marks and citation omitted). Here, the addition of the new claim will not cause additional burden. There already has been substantial discovery regarding the disputed assets in this District and the new claim does not require additional discovery. Indeed, Defendants do not describe any specific additional discovery that would be required that is distinct from discovery that is ongoing.[2] The new claim most likely will be resolved on a motion for summary judgment, and the parties are still completing expert discovery and summary judgment briefing has not yet begun. In any event, that some additional discovery may be needed does not alone constitute undue prejudice. See *United States ex rel. Mar. Admin. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989).

---

[2] Triadou's claim that additional discovery would be required on whether it is an alter ego of its parent company, Swiss Development Group ("SDG"), is without merit. There has already been full discovery on the relationships between SDG, Triadou, and the other Defendants in this case, as well as with other alleged sham entities created by the Individual Defendants to launder money.

While Triadou has submitted a brief opposing the amendment on the ground that it would be prejudiced by the amendment, the new proposed claim is not against Triadou. To the extent Triadou has expressed concern about additional liability, such a concern does not constitute prejudice for purposes of deciding a motion to amend. *See Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 678 (S.D.N.Y. 1996) ("[A]n increase in defendants' exposure is not grounds for denying leave to amend."); *Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 561 (S.D.N.Y. 1976) ("A party may hardly resist an amendment curing a defectively stated claim on the ground that it will expose him to a possible liability; he may no more successfully oppose the amendment of an *ad damnum* clause on the ground that it will place him at peril of an increased liability."). Further, any arguments regarding alter ego liability are not appropriate to evaluate on a motion to amend. This issue is presently before Judge Nathan on Triadou's Motion for Judgment on the Pleadings.[3] (Doc. No. 666.)

Third, there is no basis for finding that the Kazakh Entities have acted in bad faith in connection with seeking the instant amendment. Khrapunov has known about the UK court action for some time and cannot claim surprise at learning that Plaintiffs wish to enforce that court's judgment against him. Courts typically allow amendments to pleadings "when the opponent could not claim surprise, but effectively should have recognized that the new matter included in the amendment would be at issue." *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1487 (3d ed.).

---

[3] The Court does not address Triadou's request that Plaintiffs be prohibited from enforcing the Khrapunov Judgment against it because this argument is premature. Triadou can raise this argument at the merits and/or damages stage of this case.

Fourth, permitting the amendment will serve judicial economy. While it is true that Plaintiffs could bring a stand-alone enforcement action in New York state court, this Court is already intimately familiar with the facts of this case. There is no need to burden a sister court with a new action when this Court can determine the merits of the claims together.

Khrapunov objects to the amendment on futility grounds, claiming this Court lacks subject matter jurisdiction. However, Judge Nathan already determined that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1330 and 1441(d), and there already is a claim under New York CPLR § 5303 against Ablyazov in this action. (Doc. Nos. 423 and 426.) This Court will not entertain Khrapunov's backdoor attempt to re-examine what is settled law of the case. *See Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 646 (S.D.N.Y. 2015) (Nathan, J.) ("The law of the case doctrine stands for the simple proposition that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" (*quoting Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964))). The instant Motion concerns a proposed amendment under Rules 15 and 16, nothing more. To the extent Khrapunov argues that subject matter jurisdiction no longer exists and the case should be dismissed on that basis, that argument must be made before Judge Nathan.

To the extent Khrapunov argues that the proposed new claim does not arise out of the same case or controversy and therefore does not satisfy the test for supplemental jurisdiction under 28 U.S.C. § 1367(a), he is mistaken. *See generally, City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 165 (1997) ("[O]nce the case was removed, the District Court had original jurisdiction over ICS's claims arising under federal law, and thus could exercise

supplemental jurisdiction over the accompanying state law claims so long as those claims constitute 'other claims that . . . form part of the same case or controversy.'" (quoting § 1367(a)); *Freeman v. Burlington Broads., Inc.*, 204 F.3d 311, 319 (2d Cir. 2000). § 1367(a) contains two elements: (1) the court must have original jurisdiction and (2) the supplemental claim must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Judge Nathan has already found that the first element has been met. The United States Supreme Court decision in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966), sets forth the test for the exercise of pendent jurisdiction. *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (applying *Gibbs* under § 1367); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

The "*Gibbs* Test" contains three elements: (1) the state claim and the federal claim must arise from a "common nucleus of operative facts"; (2) the federal claim must have "substance sufficient to confer subject matter jurisdiction on the court"; and (3) the federal and state claims must be of a nature that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Here, the first element of the test is met because the Khrapunov Judgment concerns Ilyas Khrapunov's actions to launder money embezzled by his father and father-in-law through alleged sham entities, including Triadou, into real estate investments in the United States and violate the UK freezing order concerning the embezzled funds. That is more than enough to satisfy the broad "case or controversy" requirement, as Judge Nathan necessarily found in allowing the judgment recognition claim against Ablyazov to proceed. (*See* Doc. No. 423, 40-41 (denying motion to dismiss C.P.L.R. § 5303 claim with

9

respect to U.K. judgements against Ablyazov).) Khrapunov does not contest the second element of the *Gibbs* Test. As to the third element, and as noted above, it makes sense to resolve the § 5303 claims against Ablyazov and Khrapunov in the same proceeding because the two defendants are accused of conspiring together and laundering the same funds, a portion of which are subject to Judge Nathan's attachment order. *See Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (§ 1367's case or controversy requirement is met where the "presentation of the federal claim necessarily would bring the facts underlying the state claim before the court." (*citing Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445–48 (2d Cir. 1998))).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Amend is Granted.

SO ORDERED.

Dated: May 29, 2019
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

10