# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA
BANK JSC,

       Crossclaim Plaintiffs,

    - against -

MUKHTAR ABLYAZOV, VIKTOR
KHRAPUNOV, ILYAS KHRAPUNOV, and
TRIADOU SPV S.A.,

       Crossclaim Defendants.

ECF Case
No. 1:15-cv-05345 (AJN) (KHP)

**DEFENDANT TRIADOU SPV S.A.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO PRECLUDE THE SMP DOCUMENTS**

Dated: June 18, 2019

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Counsel for Crossclaim Defendant
Triadou SPV S.A.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ........................................................................................... 3

I.      Frank Monstrey and SMP Partners .................................................................... 3

II.     Almaty/BTA Fail To Pursue the SMP Documents ............................................. 5

III.    ██████████████████████████████████ ............... 7

IV.     The Parties' Meet-and-Confer ........................................................................... 8

ARGUMENT .................................................................................................................... 9

I.      Preclusion of the SMP Documents Is Warranted Under Rule 37(c)(1) ........................... 10

    A.  Almaty/BTA Offer No Credible Explanation for Their Delay ..................................... 11

    B.  The Importance of the SMP Documents Supports Preclusion ...................................... 14

    C.  The Substantial Prejudice to Triadou Strongly Favors Preclusion ............................... 16

    D.  The Court Should Not Entertain the Possibility of a Continuance ............................... 18

    E.  ██████████████████████████████████ 19

II.     The SMP Documents Should Be Precluded Under the Court's Inherent Authority ......... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Stock Exchange, LLC v. Mopex, Inc.*,
  215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................10

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  11-cv-01846, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ..................................23

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........................................................24

*Brannan v. Great Lakes Dredge & Dock Co.*,
  No. 96 Civ. 4142 (DC), 1998 WL 229521 (S.D.N.Y. May 7, 1998) ........................25

*Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*,
  No. 16 Civ. 1267 (AT) (SN), 2018 WL 3407709 (S.D.N.Y. Jan. 12, 2018) ...........18, 23

*Downey v. Adloox Inc.*,
  No. 16-cv-1689 (JMF), 2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) ........................10

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
  No. 10 Civ. 142 (MHD), 2013 WL 9948284 (S.D.N.Y. May 29, 2013) .....................25

*In re Gen. Motors LLC Ignition Switch Litig.*,
  No. 14-MD-2543 (JMF), 2017 WL 2880882 (S.D.N.Y. July 5, 2017) ................... *passim*

*Hikel v. Abousy*,
  41 F.R.D. 152 (D. Md. 1966) ................................................................25

*M.L.C., Inc. v. N. Am. Philips Corp.*,
  109 F.R.D. 134 (S.D.N.Y. 1986) .........................................................22, 23

*Quiles v. City of N.Y.*,
  No. 11 Civ. 5613, 2014 WL 1918635 (FM), (E.D.N.Y. May 8, 2014) .....................17

*Rabello v. Bell Helicopter Textron, Inc.*,
  200 F.R.D. 484 (S.D. Fla. 2001) ...........................................................16

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002) ..................................................................24

*Velez v. Novartis Pharma. Corp.*,
  No. 04 Civ. 9194 (CM), 2010 WL 11043081 (S.D.N.Y. Feb. 25, 2010) ..................25

## Other Authorities

Fᴇᴅ. R. Cɪᴠ. P. 1 ..............................................................................................................................19

Fᴇᴅ. R. Cɪᴠ. P. 26 ............................................................................................................................10

Fᴇᴅ. R. Cɪᴠ. P. 37 ......................................................................................................................10, 23

Triadou SPV S.A. ("Triadou") respectfully submits this memorandum of law in support of its motion to preclude documents produced seven months after the close of fact discovery by the City of Almaty, Kazakhstan and BTA Bank JSC (together, "Almaty/BTA").

## PRELIMINARY STATEMENT

For the last two years, Almaty/BTA have known that SMP Partners, an international corporate services provider, possessed potentially relevant documents. Triadou requested that Almaty/BTA obtain and produce a subset of these documents almost a year ago, but rather than timely pursue this discovery, Almaty/BTA did nothing. They did not suggest compulsory process. They did not seek leave of Court to take additional discovery. They did not even respond to Triadou's request. Then, five months after the close of fact discovery, counsel for Almaty/BTA asked the defendants to consent to a Hague request to SMP Partners. What Almaty/BTA did not reveal to defendants at that time or for nearly two months thereafter, ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ with more than 22,000 documents from SMP Partners (the "SMP Documents").

████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Only then, on April 2, 2019, seven months after the close of fact discovery, did Almaty/BTA dump these 22,000 documents on defendants—without a hint of warning. Even after blindsiding defendants with this late production, Almaty/BTA have continued to hide how they came to learn of the documents or how the documents would be used. Indeed, contrary to their representation that

1

there was no urgency to resolving Triadou's objections to these documents, Almaty/BTA provided them to at least one of their experts, who then incorporated some of the documents into his report.

This conduct is yet another example of Almaty/BTA's pattern of gamesmanship and sandbagging. Worse, they are using the ROK as both a sword and a shield in discovery: ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████  ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████. When juxtaposed with Almaty/BTA's "efforts" to obtain from the ROK signed interrogation minutes for Nicolas Bourg and Laurent Foucher at Triadou's request (an issue previously briefed to this Court, (*see* ECF 492)), Almaty/BTA's self-serving approach is obvious.

At bottom, Almaty/BTA's failure to timely seek the SMP Documents, and their belated, backdoor production of the same, are neither substantially justified nor harmless. The prejudice defendants will suffer if the SMP Documents are not precluded is clear and significant—not just because of the practical effects (substantially delaying resolution of this matter and adding exorbitant costs)—but also because of the unreliability of the documents and the entity who produced them. The SMP Documents should be precluded pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Court's inherent authority, including as to Almaty/BTA's experts.

## RELEVANT BACKGROUND

### I.     Frank Monstrey and SMP Partners

Almaty/BTA have known since the middle of 2017 that SMP Partners possessed potentially relevant documents.  On March 20, 2017, Claremont Holdings, a company wholly owned by Frank Monstrey, announced that it had received notice of a freezing order from a U.K. court in connection with BTA's proceedings against Mukhtar Ablyazov. (Ex. 1; Ex. 2).[1] Subsequently, Monstrey submitted evidence to defend against BTA's allegations, ███████ █████████. (Ex. 3).

██████████████████████████████████████████████████

████████████  ████████  ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████.[3]

BTA and Monstrey—along with entities Monstrey owned or controlled, ███████ ████████████████████████—settled their dispute on ████████

---

[1] All exhibits referenced herein are exhibits to the Declaration of Deborah A. Skakel, dated June 18, 2019.

[2] ████████████████████████████████████████████████████ ███████████████████.

[3] ████████████████████. He was not deposed here (or, to Triadou's knowledge, anywhere) regarding his signing of these allegedly backdated documents.

████, which resulted in a lifting of the freezing order.  (*See* Ex. 8; *see also* Ex. 9).  ████████

██████████████████████████████████████████████████

████████████████████████  ████████████████  ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████  .

████████████████████████████████  , Almaty/BTA claimed to this Court in May 2018 that they had "recently become aware of another witness who they believe has critical evidence relevant to this case, but who has expressed a well-founded fear of retaliation should he or she give evidence in this action."  (ECF 639 at 2).  Neither claim was true.  As shown above, BTA was well aware of Monstrey as of June 2017 (almost a year earlier), ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████.  While the Court was "troubled … by Plaintiffs' apparent gamesmanship in discovery with respect to identification of Monstrey and notice of his deposition," it permitted Monstrey's

deposition to proceed, (ECF 773 at 8)—███████████████████████████

████████████████████. The Court ordered Almaty/BTA to produce certain related documents

no later than five days before the deposition, (*id.*), but plaintiffs failed to comply, (ECF 787 at 2).

The Court again noted their "behavior is not consistent with the spirit of Rule 1's requirement that

the parties cooperate with all court orders" and granted defendants leave to seek additional

deposition time if needed. (*Id.*). One of the documents included in Almaty/BTA's untimely

production was Monstrey's second witness statement, discussed above.

At his deposition on July 17, 2018, Monstrey ████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████     ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

## II.  <u>Almaty/BTA Fail To Pursue the SMP Documents</u>

In light of the abbreviated nature of Monstrey's deposition—which was cut short due to

his late arrival and interruption by a phone call from BTA's UK counsel requesting Monstrey's

cooperation in another matter—and Almaty/BTA's late production of documents, the Court

granted Triadou more time to depose Monstrey and instructed the parties to meet and confer about

obtaining additional documents. (Ex. 11 at 17:3-10, 21:9-17). The Court also granted the

Khrapunovs' request for the original versions of certain documents Monstrey had provided. (*Id.*

at 21:17-19). At the same conference, Almaty/BTA asked the Court to order Petelin to sit for

deposition and raised their concern that Petelin was undertaking an "effort behind the scenes to

adjust their [referring to Petelin's and Ilyas Khrapunov's] narrative to account for Frank

Monstrey's testimony." *(Id.* at 33:15-25).

The parties then conferred on July 30, 2018 regarding Monstrey's second deposition and document requests; and on August 11, 2018, Triadou sent a written request to Almaty/BTA's counsel identifying several categories of documents to obtain from Monstrey █████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ ███████ █ ████████████ ███████ █ █████ ██████.

Almaty/BTA apparently took no steps, and undisputedly took no formal steps, to obtain these documents before the close of fact discovery on August 31, 2018. (ECF 929 at 1). In fact, counsel for Triadou and counsel for the Khrapunovs separately requested updates regarding the status of Monstrey's second deposition and the collection of the requested documents in mid-October 2018, having heard almost nothing during the two months after Triadou's request.

In the interim, Petelin made a document production to Almaty/BTA on August 10, 2018, and was deposed on August 21-22, 2018. ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ ████████████████████

██████████████████████████████████████. Even after this examination, however, Almaty/BTA *still* did not raise with defendants the prospect of seeking formal discovery from SMP Partners.

At the November 14, 2018 case management conference, Almaty/BTA finally offered dates for Monstrey's second deposition. (Ex. 18 at 5:19-23). Two days later, Almaty/BTA's

counsel sent an email to defendants' counsel stating that they had no further information regarding the Monstrey-related documents Triadou had requested, except that they (Almaty/BTA's counsel) had relayed the request to Monstrey's counsel. (Ex. 19). The parties ultimately settled on a date to depose Monstrey (in mid-December 2018), and in advance of that deposition, Almaty/BTA made two small productions of documents compiled by Monstrey. Those productions did not include any documents from SMP Partners.

What Triadou did learn from those productions, however, ███████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████ ██████████ ████████████████████████
████████████████████████████████████████████████████████
████████████ ████████████████████████████. The document confirms that Almaty/BTA effectively took no steps until November 16, 2018 to satisfy Triadou's August 11, 2018 request for SMP-related documents.[4] It was not until months later—on February 5, 2019—that Almaty/BTA first asked the defendants to consent to a Hague request to SMP Partners. Triadou refused to consent because fact discovery had closed five months earlier.

**III.** ██████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████.

██████████ ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ ██████ ███████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ ██████████████

████████████████████ ██████████████████████████████████████████

███████████████████████████████████

      ███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████ ███████████ ██████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████—Almaty/BTA's

counsel transmitted more than 22,000 documents (comprising 140,000 pages), marking the first

time they informed defendants of the existence of these documents. (*Id.*).

## IV.   **The Parties' Meet-and-Confer**

On April 11, 2019, Triadou requested a meet-and-confer to discuss the untimely production

of the SMP documents, and on April 15, the parties telephonically conferred. (Ex. 23 at 3-4).

█████████████████████████████████████████████████████████████████

---

[5] ████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████ █████████████████████████████████
████████████████████████████████████.

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████. And when Triadou's counsel asked for this information to be provided within 48 hours, counsel for Almaty/BTA questioned the urgency and suggested that Triadou's objections were not pressing because the SMP Documents would not be at issue until summary judgment. That was clearly untrue. On April 17, Almaty/BTA filed their letter-request for a pre-motion conference in Petelin's miscellaneous action, (*id.*), and then directed Triadou to the contents of that letter for the answers Triadou sought, (Ex. 23 at 2). Unsurprisingly, the letter did not include the information Triadou sought. (*See* Ex. 24).[6] Almaty/BTA's counsel also never indicated during the conference that they had conferred with Petelin's counsel four days prior (April 11) about a motion using the SMP Documents, (ECF 1051 at 2 n.3); nor did Almaty/BTA inform defendants that they had shared the documents with their experts for use in their expert reports.

On April 19, 2019, Triadou filed its letter-request for a pre-motion conference, and the parties and Court discussed a briefing schedule at the June 4, 2019 conference.

## ARGUMENT

The SMP Documents should be precluded pursuant to Federal Rule of Civil Procedure 37(c)(1), or under the Court's inherent authority. That Almaty/BTA failed to timely seek those documents in this action—before the close of fact discovery, or really, at all—demonstrates that the late production was not substantially justified. Likewise, the severe prejudice that Triadou would suffer if the SMP Documents are permitted into the case, by way of reopening fact discovery

---

[6] During the same conference, when counsel for Triadou asked why Almaty/BTA had failed to inform the Court or ████████████████████████████████████████████████████████████████████████████████, counsel for Almaty/BTA claimed it was because they did not know if the documents would become available and argued that they had no obligation to tell defendants about the documents.

to conduct further international depositions and delaying resolution of this matter, also shows that

the late production is not harmless. Compounding these issues, and further supporting preclusion,

is how ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████.

## I. Preclusion of the SMP Documents Is Warranted Under Rule 37(c)(1)

Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide

information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . .

to supply evidence . . . unless the failure was substantially justified or is harmless." Rule 26(e), in

turn, imposes a duty to supplement a party's response to discovery demands in a timely fashion.

FED. R. CIV. P. 26(e)(1)(A); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF),

2017 WL 2880882, at *2 (S.D.N.Y. July 5, 2017). Where a litigant fails to comply with these

rules, preclusion can be "automatic, absent a determination of either substantial justification or

harmlessness," although whether to impose sanctions remains within the trial court's discretion.

*See Am. Stock Exchange, LLC v. Mopex, Inc.,* 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Courts consider four factors to assess whether preclusion is warranted: "'(1) the party's

explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the

[new evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to

meet the new [evidence]; and (4) the possibility of a continuance.'" *Downey v. Adloox Inc.*, No.

16-cv-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (quoting *Patterson v.

Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *In re Gen. Motors Ignition Switch Litig.*, 2017 WL

2880882, at *2 (applying the four factors to preclude late-produced documents and information).

Here, each of the *Patterson* factors favors preclusion. Almaty/BTA have no legitimate

explanation for their failure to timely pursue the SMP documents during fact discovery; the

importance of the documents is at best questionable, and at worst insufficient to cut against preclusion; the prejudice to Triadou (and the other defendants) is undeniable and severe; and a continuance to reopen fact discovery would not be appropriate or useful.

A.    *Almaty/BTA Offer No Credible Explanation for Their Delay*

Almaty/BTA offer no credible explanation for failing to pursue the SMP Documents before the close of fact discovery, particularly in light of Triadou's August 11, 2018 request for a subset of those documents. Rather, the story they tell is that "it was not until Gennady Petelin produced forged versions of the same documents and lied about SMP Partners at his August 2018 deposition . . . that the Kazakh Entities were put on notice" of the need to obtain documents from SMP Partners. (ECF 1051 at 2). That supposed explanation is unadulterated nonsense.

*First*, it ignores that BTA knew by June 2017 that SMP Partners likely possessed relevant documents concerning ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████     █████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████. *Fourth*, and most importantly, after Monstrey's deposition, the Court ordered Almaty/BTA to bring him back for a second sitting, and directed Almaty/BTA to work to obtain additional documents that Triadou intended to request. (Ex. 11 at 17:3-10, 21:9-17). On August 11, 2018, Triadou's counsel provided the list of documents it requested, which included ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ ████████ ███ ████ ████ ████ ████
███████████████████████████████████████████
██████████████████████ ██████. Each of these events, occurring

between July 2017 and August 2018, confirms that Almaty/BTA was aware of the documents SMP

Partners likely possessed before—in some cases, well before—Petelin's deposition. Nevertheless,

Almaty/BTA made almost no effort to obtain those documents informally, and absolutely no

formal effort to obtain those documents at that time or in the several months leading up to

Monstrey's second deposition in December 2018.[7]

In sum, Almaty/BTA knew that SMP Partners possessed potentially relevant documents

for years, and even predicted the reason for their newly-professed interest in obtaining these

documents to cross-examine Petelin, but *still* failed to timely seek these documents during fact

discovery, or even to ask defendants' consent (or the Court's approval) to issue a Hague request

during that time. This failure, and Almaty/BTA's pretextual and disingenuous explanation, cut in

favor of preclusion. *In re General Motors Ignition Switch Litig.*, 2017 WL 2880882 at *3 (noting

failure to offer an explanation "for why he waited until months after fact discovery had closed …

to seek the evidence at issue" supported preclusion).[8]

---

[7] Almaty/BTA claim that their interest in obtaining the documents arose only after Petelin was deposed, (ECF 1051 at 1-2), but that too ignores that Almaty/BTA's counsel raised in open court *a month before Petelin's deposition* their concern that Petelin might produce forged documents. (*See* Ex. 11 at 33:15-34:3). It also ignores that Petelin made a production on August 10, 2018, (Ex. 25), eleven days before his deposition, ███████████████████ ███.

[8] The Court's decision in *In re General Motors Ignition Switch Litigation* is instructive. There, the defendant (New GM) sought to preclude "'evidence, testimony, and argument'" that the plaintiff (Ward) obtained from the city of Tucson relating to the condition of the pavement at the site of an accident in which Ward was involved. 2017 WL 2880882 at *2. Ward obtained these documents without a subpoena, four months after the close of fact discovery, and his counsel then used that information (without disclosing it) in depositions. *Id.* Ward later received more information from Tucson, and began disclosing it in drips and drabs. *See id.* Upon learning of the new information, New GM's counsel contacted Tucson's attorney to learn about Ward's "investigative efforts." *Id.* Ward then slowly disclosed the data to New GM, which resulted in a motion to preclude under Rule 37(c)(1). Ultimately, Judge Furman found that all four *Patterson* factors supported preclusion as the "appropriate sanction." *Id.*

Almaty/BTA's other excuses also fall flat.  For example, Almaty/BTA try to shift blame for their lack of diligence to defendants for declining to consent to a Hague request to SMP Partners, (*see* ECF 1051 at 2); but Almaty/BTA did not make this suggestion until February 5, 2019, five months after fact discovery closed.  Had Almaty/BTA sought leave of Court for a Hague request at that time, Triadou would have been on "firm ground" to move to quash.  *See In re Gen. Motors Ignition Switch Litig.*, 2017 WL 2880882 at *3 (noting defendant would have been "on firm ground" moving to quash a subpoena issued months after the close of fact discovery).[9]

Nor can Almaty/BTA cure their lack of diligence by claiming ███████████ ████████████████████████████████████████████████████████ ██ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ ██████████████.  This was improper, as "[a] party is not excused from

---
[9] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████.

making its disclosures because it has not fully investigated the case." *See In re General Motors Ignition Switch Litig.*, 2017 WL 2880882 at *2 (quoting FED. R. CIV. P. 26(a)(1)(E)).

## B. *The Importance of the SMP Documents Supports Preclusion*

Despite the fact that at least some of the SMP Documents appear to be relevant, the "importance" factor still supports preclusion here. Initially, if the SMP Documents were truly as important as Almaty/BTA now claim, why did Almaty/BTA fail to pursue them during fact discovery or seek leave of Court to pursue them after? Rather than pursue a formal Hague request to SMP Partners, Almaty/BTA opted for informal requests to defendants and non-party witnesses.[10] Confronted with similar circumstances in *In re General Motors Ignition Switch Litigation*, Judge Furman held a similar view: "'if the records were so important,' surely [the plaintiff] 'would have made sure that [he] had them during the discovery period.'" 2017 WL 2880882, at *3. But here, Almaty/BTA appear to have been comfortable proceeding to summary judgment and trial without ever formally seeking the SMP Documents. There are only two ways to square this inconsistency: ███████████████████████████████████████████████

████████████████████████████, or the SMP Documents are not as important as Almaty/BTA now claim. Either way, preclusion is appropriate, particularly where Almaty/BTA have other ways to obtain similar evidence, including from Monstrey's testimony and documents, and through depositions that have already been taken. *See id.* at *3 (plaintiff had other means to adduce evidence on the issues covered in the precluded materials).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[10] Almaty/BTA also seek to forgive their lack of diligence by claiming they requested the documents from Ablyazov and Petelin. This contention too can be soundly rejected. Where Almaty/BTA have spent this entire action complaining of both individuals' intransigence in discovery, informal requests to those individuals to obtain documents from SMP Partners cannot be viewed as a credible effort to obtain the documents.



. In a sea of 22,000 documents, Triadou has no way to determine if documents were added, removed, or altered. This lack of information is especially concerning given that the ROK has well known-issues with corruption and politically motivated prosecution, but had sole custody of the SMP Documents that were produced here.[11]

---

[11] *See, e.g.*, Ex. 28 at 1 ("The government selectively prosecuted officials who committed abuses, especially in high-profile corruption cases; corruption remained widespread, and impunity existed for those in positions of authority as well as for those connected to government or law enforcement officials."); *id.* at 8 ("The executive branch sharply limited judicial independence. Prosecutors enjoyed a quasi-judicial role and have the authority to suspend court decisions. Corruption was evident at every stage of the judicial process."); Ex. 29 at 5-6 ("The judiciary is effectively subservient to the executive branch," with the president appointing judges based on recommendations from a council that he also appointed, and noting that prosecutors wield power that judges ordinarily should be expected to wield).

C. _The Substantial Prejudice to Triadou Strongly Favors Preclusion_

The third factor—the prejudice suffered by Triadou "as a result of having to prepare to meet the new evidence"—strongly supports preclusion of the SMP Documents. First, Triadou is prejudiced just by having 22,000 documents (and more than 140,000 pages) dumped on it seven months after the close of fact discovery. _See, e.g._, _Rabello v. Bell Helicopter Textron, Inc._, 200 F.R.D. 484, 488 (S.D. Fla. 2001) (defendant's "actions have prejudiced the Plaintiffs by inundating them with thousand[s] of pages of documents" after close of discovery). That prejudice is not ameliorated by Almaty/BTA's "trust us" claim that they "presently intend to use at trial" only "an extremely small subset" of these documents, (ECF 1051 at 3); Triadou cannot discount the possibility that useful evidence exists among the remaining SMP Documents.

The belated disclosure of the SMP Documents also supports preclusion because it "deprived [Triadou] of the opportunities to conduct an investigation into how the data was collected," "to depose the person or persons responsible for the data," and "to cross-examine percipient witnesses (including [SMP Partners])." _In re Gen. Motors Ignition Switch Litig._, 2017 WL 2880882, at *4. Triadou had no opportunity to depose anyone from SMP Partners, and thus, no chance to test the documents' provenance or authenticity. That prejudice is exacerbated by the fact that one of SMP Partners' former principals ███████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████. Even assuming the Court allowed the issuance of a Hague request to SMP Partners, this case has shown how long that might take to resolve and that it is possible that no deposition will result.[12]

---

[12] It is notable that the only Hague request issued to the U.K.—for documents from, and a deposition of, Eesh Aggarwal—was initially rejected, (ECF 327), and Aggarwal was ultimately not deposed in this action.

Likewise, Triadou did not have the SMP Documents available to examine several witnesses including Ilyas Khrapunov, Mukhtar Ablyazov, Frank Monstrey, and Gennady Petelin. Each would need to be deposed again, and Ilyas, Ablyazov, and Monstrey would require international travel. Ilyas and Ablyazov also would require Hague process, which itself is likely to cause tremendous delay. Almaty/BTA's Hague requests for Ilyas's and Ablyazov's depositions were issued on July 25, 2017, (ECF 364), but it took six months to obtain Ilyas's deposition (February 1, 2018), and fifteen months to obtain Ablyazov's deposition (October 30, 2018). And while Monstrey did not require Hague process, it still took Almaty/BTA five months to schedule his second deposition (from mid-July 2018 to mid-December 2018). Most troubling is that the parties would suffer these delays without a guarantee of obtaining the discovery needed (which does not even account for the substantial costs associated with more international depositions). Courts have found this factor supported preclusion in similar circumstances, where late produced documents would require substantial review, deposing or re-deposing witnesses, and where added discovery "would engender further cost and delay" in a years-old case. *See Quiles v. City of N.Y.*, No. 11 Civ. 5613, 2014 WL 1918635 (FM), at *5-6 (E.D.N.Y. May 8, 2014) (precluding documents).[13]

Even if the Court permitted Hague requests to issue immediately after ruling on Triadou's motion, fact discovery would need to be reopened and extended into 2020 and beyond, just as the parties are on the verge of completing expert discovery and then preparing for summary judgment. Further fact witness depositions also might necessitate another round of expert reports and

---

[13] All of this jumps over a threshold issue: that Triadou did not have the SMP Documents or, indeed, Monstrey's entire story—███████████████████████████████████████████████, etc.—during fact discovery. BTA, on the other hand, had the information in June 2017 but did not leak it out until after it had firmly secured a fifth extension to complete the discovery that *it* wanted based on that information. Triadou did not have this information to frame its discovery requests or depositions. It could have, for example, pursued discovery from third-party witnesses in IOM ██████████████████████████████████████████.

depositions, and may well impact summary judgment. All of these activities would substantially delay resolution of this case by months or years, and add to its already significant costs.

And even if the Court were to find that the SMP Documents' importance weighs against preclusion, that factor is "inversely correlated" to the third factor (the prejudice to the movant). *In re General Motors LLC Ignition Switch Litig.*, 2017 WL 2880882, at *4. "[T]he more critical the evidence at issue is to [the] case, the more prejudice [the moving party] would suffer if the Court were to allow the [non-movant] to use it, and, by extension, the more the third factor would favor preclusion." *Id.* (citing *Simon v. City of N.Y.*, No. 14-CV-8391 (JMF), 2017 WL 57860, at *6 (S.D.N.Y. Jan. 15, 2017)). In any event, preclusion is proper even where documents are "essential" to a plaintiff's case if the three remaining factors support preclusion. *Id.* (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296-97 (2d Cir. 2006) (holding that preclusion was "appropriate" where all factors but relevance supported it, and even where the evidence was supposedly "essential" to the plaintiff's ability to prove lost profits)).

The late disclosure of the SMP Documents is therefore not harmless, and this factor supports preclusion. *See, e.g.*, *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16 Civ. 1267 (AT) (SN), 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018) (striking "highly probative evidence produced eight months after the close of fact discovery," which deprived the defendant "of the ability to investigate or rebut that evidence").

D.    *The Court Should Not Entertain the Possibility of a Continuance*

While this action is not on the eve of trial, the circumstances here weigh against a continuance and in favor of preclusion. The Court extended fact discovery five times, from April 3, 2017 through August 31, 2018, (*see* ECF 293, 329, 443, 535, 649), and even then, the parties needed five additional months to complete fact witness depositions (in part because Almaty/BTA hid and then sandbagged defendants with evidence related to Litco, like they have done here).

18

Expert discovery is now well underway; the parties have exchanged five affirmative reports, and at least three rebuttal reports will be served in ten days. Almaty/BTA also are pressing to begin briefing summary judgment soon. To not preclude the 22,000-plus SMP Documents would require reopening fact discovery, thereby undoing the parties' progress and further stalling resolution of this action. That result is inconsistent with Rule 1's mandate that the Federal Rules should be "*construed, administered, and employed* by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1 (emphasis added).

Reopening discovery would also reward Almaty/BTA for their calculated lack of diligence in pursuing the SMP Documents during fact discovery (or seeking leave of Court to pursue them after fact discovery). This lack of concern for the Court's deadlines implies they do not matter, but, "'[p]ut simply, deadlines matter—and they matter especially strongly in litigation of this size and complexity.'" *In re Gen. Motors Ignition Switch Litig.*, 2017 WL 2880882, at *3 (quoting *In re Gen. Motors LLC*, No. 14-MC-2543 (JMF), 2016 WL 2766654, at *2 (S.D.N.Y. May 12, 2016)). To allow Almaty/BTA to use evidence they did not even begin to seek "until [five] months after fact discovery closed . . . 'would suggest to the parties in this litigation that the Court's deadlines are merely hortatory or aspirational and not real deadlines.'" *Id.* (quoting *In re General Motors LLC*, 2016 WL 2766654, at *2). The Court should not "risk that possibility." *Id.*

E. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████



. Put simply, if Almaty/BTA believed the documents were harmful—something they had to fear given defendants' request for the documents—they would not have been produced.

The timeline is just one reason to be skeptical of the supposed separation between the ROK and Almaty/BTA—a separation that Almaty/BTA trot out when it suits their needs. Another reason is that the record confirms that the ROK and Almaty/BTA are pursuing the same investigation and asset recovery efforts. For example, the ROK signed several agreements relevant to this action, including to the releases granted to Almaty/BTA's primary witness, Nicolas Bourg, and his business partner Laurent Foucher, (ECF 400-1 at 4-5; ECF 578-7 at 5).

All ▮▮ agreements confirm that the ROK is pursuing the same investigative and asset recovery efforts as Almaty/BTA, and given the ROK's power structure, there is every reason to believe the ROK is spearheading those efforts.[14]

---

[14] *See, e.g.*, Ex. 29 at 3 ("Government policies are determined by the executive branch, which is not freely elected. . . . Nazarbayev wields ultimate power with regard to policy and other decisions."); *id.* ("Corruption is widespread at all

The ROK has also been directly involved in discovery, as two of its agencies have provided more than 700 documents produced by Almaty/BTA. The most notable example—which the Court is familiar with—involves Almaty/BTA's last-minute production of over 100 files from the ROK Financial Police concerning Bourg just a few days before his deposition. The production included hundreds of pages of unsigned minutes of the ROK's interrogations of Bourg. (*See* ECF 492 at 1). Bourg confirmed that these interrogations occurred and were videotaped, and that he had signed final versions of the minutes; but he would not confirm the substance of the minutes shown to him because versions produced were unsigned. (ECF 492-3 at 118:10-19, 120:11-14, 145:17-146:2; ECF 492-4 at 40:12-24, 106:15-107:10). Triadou also learned at the deposition that ROK had similarly interrogated Foucher. (ECF 492 at 1). Triadou thus requested production of the signed minutes and video-recordings of Bourg's and Foucher's interrogations, (ECF 492-3 at 120:21-121:5; ECF 492-6 at 1-2), and Almaty/BTA opposed, claiming that the signed versions were not in their possession, custody, or control, (ECF 492-7 at 5-6).

Triadou moved to compel the production of those documents, (ECF 492), which the Court denied on January 10, 2018, instead ordering that Almaty/BTA "immediately invoke their rights as crime victims under Kazakh law" to request the documents, (ECF 525 at 2). The Court also instructed Almaty/BTA to provide updates concerning their efforts to obtain these documents. (*Id.*). Almaty/BTA provided several written updates between February and July 2018, a verbal update at the parties' case management conference on September 14, 2018, and an email update

<hr />

levels of government. Corruption cases are often prosecuted at the local and regional levels, but charges against high-ranking political and business elites are rare, typically emerging only after an individual has fallen out of favor with the leadership. Journalists, activists, and opposition figures are often prosecuted for supposed financial crimes."); *id.* at 5-6 ("The judiciary is effectively subservient to the executive branch," with the president appointing judges based on recommendations from a counsel which he also appointed); Ex. 28 at 1, 26 ("Kazakhstan's government system and constitution concentrate power in the presidency"; the president "appoints and dismisses most high-level government officials," and while legislative confirmation is needed, "Parliament has never failed to confirm a presidential nomination").

in November 2018.  (ECF 542; ECF 565; ECF 652; ECF 786; Ex. 31 at 28:8-29:3; Ex. 19 at 1-2).

Nearly a year after the Court issued its order, in January 2019, Almaty/BTA informed Triadou that

the ROK was refusing to produce the signed minutes and video-recordings.  (Ex. 22).[15]

The ROK's handling of the SMP Documents presents a tellingly disparate scenario and

confirms that Almaty/BTA are using the government as a sword and shield.  ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████.

Nor should Almaty/BTA be allowed to use the ROK in this manner and then pretend to

lack control over documents in the ROK's possession.  "Control includes the legal right of the

producing party to obtain documents from another source upon demand," even if the party has no

copy and "the documents are beyond the jurisdiction of the court."  *M.L.C., Inc. v. N. Am. Philips*

*Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986). Almaty/BTA's "ability to easily obtain [the

[15] ██████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████.

discovery] when it was in their interest to do so" demonstrates their control over documents within the ROK's possession, *id.* at 138, ███████████████████. Moreover, Almaty/BTA "have shown no reason why similar efforts could not have been made" either by the ROK or Almaty/BTA to obtain these documents when Triadou first requested them, or even when Petelin produced documents in August 2018. *Id.*

████████████████████████████████████████

████████████████████████████████████████

████████████████████         ████████████████

████████████████████████████████. These tactics go beyond gamesmanship—they lack candor, which is wholly improper, and sufficient reason on its own to preclude the SMP Documents.[16]

*  *  *  *

All four *Patterson* factors support preclusion of the SMP Documents. As a result, the belated production of the SMP Documents was not substantially justified and is not harmless, and those documents should be precluded. *See Codename Enters., Inc.*, 2018 WL 3407709, at *3 (precluding late disclosed evidence where all four factors supported it and refusing to consider such evidence on summary judgment); *In re Gen. Motors Ignition Switch Litig.*, 2017 WL 2880882, at *5 (precluding material despite harshness of sanction as "warranted, if not necessary"). Further, such preclusion should extend to Almaty/BTA's experts. *See Apple, Inc. v. Samsung Elecs. Co., Ltd*., 11-cv-01846, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (upholding Rule 37 order striking portions of expert report that relied on evidence not produced during fact discovery, holding that "[a]lthough expert discovery had not yet concluded, the experts

---

[16] Even if this was not bad faith, such a finding is not required to order preclusion under Rule 37(c)(1). *Codename Enters., Inc.*, 2018 WL 3407709, at *3 (citing *Design Strategy, Inc.*, 469 F.3d at 296).

were in effect locked-in to the factual record as of the time fact discovery closed"). The portions of Almaty/BTA's experts' reports relying on the SMP Documents should thus be stricken.

## II.    The SMP Documents Should Be Precluded Under the Court's Inherent Authority

The Court also can and should preclude the SMP Documents under its inherent authority to manage discovery. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). In deciding the severity and scope of discovery sanctions, courts consider "(a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party.'" *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)).

All of these factors support preclusion here. As shown above, Almaty/BTA's use of the ROK reflects both willfulness and bad faith by Almaty/BTA, (*see supra* Argument Section I.E); Triadou's recent sanctions motion detailed Almaty/BTA's history of discovery misconduct in this case, (*see generally* ECF 967; ECF 1010); lesser sanctions would not be effective given the substantial prejudice to Triadou and the sizeable delay that would result from not precluding the SMP Documents, (*see supra* Argument Section I.C); the Court has taken note before of Almaty/BTA's gamesmanship in discovery, (*see, e.g.*, ECF 773 at 8; ECF 787 at 2-3); and, BTA's failure to identify Monstrey nearly two years ago, despite having contractual access to him and his witness statements, (*see* Argument Section I.A), is a major cause of these delays. It is also telling that, despite knowing of defendants' objections to the belated SMP production, and suggesting that there was no urgency to address defendants' objections until summary judgment, Almaty/BTA had already provided the SMP Documents to their experts for use during expert discovery. This effort to present the Court and defendants with a *fait accompli* is another example of

Almaty/BTA's disregard for the orderly process of discovery and the Court's deadlines.[17]

The Court has "broad discretion to determine an appropriate sanction for discovery violations based on the particulars of a case," *Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10 Civ. 142 (MHD), 2013 WL 9948284, at *9 (S.D.N.Y. May 29, 2013), including for a party's "sustained uncooperative conduct during discovery, even if no single act in the uncooperative party's course of conduct would, on its own, warrant sanctions," *id.* at *8 (citing *Residential Funding Corp.*, 306 F.3d at 112, 113). The late production of the SMP Documents is part of Almaty/BTA's "sustained uncooperative conduct during discovery" that has prejudiced Triadou and which, in this instance, can be remedied only through preclusion.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Triadou's motion to preclude the SMP Documents, and award Triadou its costs for this motion.

---

[17] After arguing that the SMP Documents go to a central issue here—the true owner of the funds from Northern Seas Waterage, (Ex. 24 at 1-2)—they have pivoted to arguing that the SMP Documents are impeachment materials they had no obligation to share, (ECF 1051 at 3). Their new argument is wrong, and their cited cases do not support their argument. Rather, those cases address *defendants'* efforts to impeach plaintiffs' claims and involve evidence *created* for impeachment purposes. (*See* ECF 1051 at 3). For example, in *Brannan v. Great Lakes Dredge & Dock Co.*, the court evaluated surveillance tapes of the plaintiff that the defendant made—after discovery closed—based on concerns that the plaintiff was exaggerating his injury. No. 96 Civ. 4142 (DC), 1998 WL 229521, at *1-2 (S.D.N.Y. May 7, 1998); *see also Hikel v. Abousy*, 41 F.R.D. 152, 154 n.1 (D. Md. 1966) (denying request for "motion pictures" of the injured plaintiffs that may have been taken after the accident); *see Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 9194 (CM), 2010 WL 11043081, at *1 (S.D.N.Y. Feb. 25, 2010) (denying plaintiffs' motion to preclude where they refused to provide the evidence they sought to preclude, even for *in camera* review). Here, even if the SMP Documents are genuine, they were not created as impeachment material. Almaty/BTA's position—that the documents support their story rather than Petelin's story—confirms this. Almaty/BTA cannot claim such affirmative evidence is impeachment material where they bear the burden of proof.

Dated: New York, New York
      June 18, 2019

Respectfully submitted,

**BLANK ROME LLP**

By: _____*s/ Deborah A. Skakel*_____
      Deborah A. Skakel
      Alex E. Hassid
      Robyn L. Michaelson
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
dskakel@blankrome.com
ahassid@blankrome.com
rmichaelson@blankrome.com

*Counsel for Crossclaim Defendant*
*Triadou SPV S.A.*