UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,<br><br>Plaintiffs,<br><br>v.<br><br>MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV, VIKTOR KHRAPUNOV and TRIADOU SPV S.A.,<br><br>Defendants. | ) | No. 15-cv-05345(AJN)(KHP) |

**THE KHRAPUNOV DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OBJECTION TO MAGISTRATE JUDGE'S ORDER GRANTING LEAVE TO AMEND CROSSCLAIMS**

Dated: July 1, 2019

SOLOMON & CRAMER LLP
*Attorneys for Defendants Viktor Khrapunov and Ilyas Khrapunov*
1441 Broadway, Suite 6026
New York, New York 10018
(t) (212) 884-9102
(f) (516) 368-3896

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Court Must Apply A Rigorous Analysis To The Question Of Subject Matter Jurisdiction Regardless Of Prior Interlocutory Rulings ..... 2

II. The Court Lacks Original Jurisdiction Over The Proposed Claims ..... 3

III. Supplemental Jurisdiction Is Not Available ..... 5

IV. The Court Should Decline To Exercise Jurisdiction In Its Discretion ..... 9

V. If The Court Lacks Subject Matter Jurisdiction, It Cannot Order Ilyas To Accept Service ..... 10

CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)....................2

*Castiglione v. Papa*,
423 F.App'x 10 (2d Cir. 2011) ....................10

*City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) .................... 6-7

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
629 F.2d 786 (2d Cir. 1980)....................4

*Gonzalez v. Thaler*,
565 U.S. 134 (2012)....................3

*Gerffert Co. v. Dean,*
No. 09-CV-266 (PKC), 2014 U.S. Dist. LEXIS 80303 (E.D.N.Y. June 12, 2014)....................9

*Hernandez v. Conriv Realty Assocs.*,
182 F.3d 121 (2d Cir. 1999)....................10

*In re Standard & Poor's Rating Agency Litig.*,
23 F. Supp. 3d 378 (S.D.N.Y. 2014)....................2

*In re. Surinam Airways Holding Co.*,
974 F.2d 1255 (11th Cir. 1992) ....................5

*IIT v. Vencap, Ltd.*,
519 F.2d 1001 (2d Cir. 1975)....................4

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*,
211 F.3d 697 (2d Cir. 2000)....................8, 9

*Owen Equip. & Erection Co. v. Kroger*,
437 U.S. 365 (1978).................... 4-5

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013)....................10

*Powell v. Gardner*,
891 F.2d 1039 (2d Cir. 1989)....................10

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83, 118 S. Ct. 1003 (1998)....................10

*Thomas v. Eony LLC*,
No. 13-CV-8512 (JPO), 2015 U.S. Dist. LEXIS 52290 (S.D.N.Y. Apr. 21, 2015) ....................9

*Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983) .....4

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966). .....6, 7, 10

**Rules and Statutes**

28 U.S.C. § 1330(a) .....1, 3

28 U.S.C. § 1367 .....6, 8, 9

28 U.S.C. § 1441(d) .....1, 3, 5, 6

U.S. Constitution, Article I .....4

U.S. Constitution, Article III .....4

Fed. R. Civ. P. 12(h) .....3

Viktor Khrapunov and Ilyas Khrapunov ("Ilyas"), through their counsel, Solomon & Cramer LLP, submit this reply memorandum of law in further support of their objection ("Obj."; Doc. No. 1069) to the Opinion and Order of Magistrate Judge Katharine H. Parker granting Plaintiffs' motion for leave to file a "Third Amended Crossclaims" (the "Order"; Doc. 1058), and in response to the Kazakh Entities' brief in opposition ("Opp."; Doc. No. 1086).

**INTRODUCTION**

BTA agrees, as it must, that if the Court lacks subject matter jurisdiction over BTA's new claim to recognize a foreign country money judgment against Ilyas under Article 53 of the CPLR (the "Proposed Claim"), then the order granting leave to amend (Doc. No. 1058) should be vacated on futility grounds. BTA tries to argue, however, that subject matter jurisdiction exists either as a matter of original jurisdiction (28 U.S.C. §§ 1441(d) and 1330(a)) or in the context of supplemental jurisdiction (28 U.S.C. § 1367). Its argument fails on both counts.

The Court may have found original jurisdiction for the removed claim—which at the time was the interpleader claim by the Chetrit Group against the City of Almaty ("Almaty")—under the jurisdictional provisions of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub.L. No. 94-583, 90 Stat. 2891. But the FSIA assuredly does not provide subject matter jurisdiction over a claim by BTA—which is not a Foreign State—against a foreign individual to recognize a foreign judgment. To be sure, neither § 1330(a) nor § 1441(d) offers textual support for such an expansive assertion of jurisdiction and, as a matter of legislative intent, the FSIA is utterly unconcerned with such a claim. In any event, even if the statutes could be read so broadly, Article III of the U.S. Constitution would prevent its application in this manner.

The Court also does not have supplemental jurisdiction over BTA's judgment enforcement claim. BTA would have to show that the Proposed Claim and the jurisdiction-invoking claim share a "common nucleus of operative facts." It cannot. The operative fact for the

proposed judgment enforcement claim is the judgment itself, not the underlying conduct. For the claims in this case, the opposite is true; the underlying conduct is at issue.

Even if this Court had the power under the supplemental jurisdiction statute to exercise jurisdiction, should it do so as a matter of discretion? The answer is no. "In the usual case" courts generally decline jurisdiction over state law claims, if the federal claims have been dismissed. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (emphasis added). But it is one thing to retain jurisdiction over state law claims already in the case; it is quite another to extend supplemental jurisdiction over a *new* state law claims that could just as easily be tried—and presumptively should be tried—in state court. Even if there were some efficiencies to be had by permitting this claim to proceed here, that alone would not justify an expansion of jurisdiction beyond the limits placed by Congress and the Constitution. *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 413-14 (S.D.N.Y. 2014). Moreover, BTA clearly has the resources to file its judgment enforcement claim in state court. If the issue is as clear-cut and simple as it claims, the loss of efficiency should be minimal.

## ARGUMENT

### I. The Court Must Apply A Rigorous Analysis To The Question Of Subject Matter Jurisdiction Regardless Of Prior Interlocutory Rulings

BTA's first gambit to preserve Judge Parker's subject matter jurisdiction ruling is to convince the Court not to consider it. Thus, BTA attempts to limit this Court's review based on its prior finding of jurisdiction over the similar judgment enforcement claim against Ablyazov[1]—never mind that Ablyazov never advanced these arguments.[2]

[1] In characterizing the Court's prior ruling, BTA wrote: "This Court's decision to exercise *supplemental jurisdiction* over the claim against Ablyazov applies with equal force to the judgment recognition claim against Mukhtar Ablyazov." (Opp. at 1, emphasis added). In so doing, BTA rewrites history. In fact, the Court explicitly decided that it "need not and does not address the question of its original jurisdiction based on complete diversity or of *supplemental jurisdiction*." (Doc. No. 423 at p 13, emphasis added).

[2] *See* Obj. at 12, n. 7.

Leaving aside the correctness of the Court's prior ruling as to Ablyazov, nothing restricts Ilyas from raising the issue on his own behalf. Indeed, as the Supreme Court has explained, subject matter jurisdiction is always fair game:

> Subject-matter jurisdiction can never be waived or forfeited. *The objections may be resurrected at any point in the litigation*, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety.

*Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (emphasis added). Similarly, it makes no sense to review Judge Parker's subject matter jurisdiction rulings for clear error when the same can be raised on a Rule 12(h)(3) motion, or by the Court *sua sponte*. Moreover, Judge Parker all but invited us to raise these issues with this Court. Doc 1058 at 8 ("To the extent Khrapunov argues that subject matter jurisdiction no longer exists and the case should be dismissed on that basis, that argument must be made before Judge Nathan").

## II. The Court Lacks Original Jurisdiction Over The Proposed Claims

Turning to the merits, BTA seems to argue that 28 U.S.C. § 1441(d) and § 1330(a) supplies original jurisdiction not only for the removed interpleader claim (against Almaty), but for the proposed state law judgment-enforcement claim (by BTA). Referring to the Court's prior ruling, the decision of September 25, 2017 (Doc. 423), BTA goes so far as to say:

> The Khrapunovs admit what matters here: this Court already held that removal jurisdiction incorporates and provides *original jurisdiction* for subsequently-added [sic] claims including for recognition and enforcement of a nearly identical U.K. judgment against Ablyazov.

Opp. at 7 (emphasis added). To be sure, the Khrapunovs *do not* admit this interpretation. Indeed, the Khrapunovs doubt that the Court could properly exercise *removal* jurisdiction over claims that were not *removed*, but subsequently added post-removal. But the point here is not to upend

prior rulings.[3] The narrow question is whether subject matter jurisdiction exists for the Proposed Claim by BTA against Ilyas.

BTA does not dispute that the claim itself—between aliens, neither sovereign, under state law—could not be brought in federal court as a matter of original jurisdiction. *See, e.g., IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980), *cert. denied*, 449 U.S. 1080 (1981). This is so both as a matter of statutory power and constitutional limitation, Article III, § 2, Clause 1:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States,--between Citizens of the same State claiming Lands under Grants of different States, and *between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.*[4]

Nor do the jurisdictional provisions of the FSIA supply a statutory basis, assuming the Constitution would allow it. No sovereign is even a party to the proposed judgment enforcement claim, which is brought not by Almaty, but by BTA alone. Yet, even if the FSIA's jurisdictional provisions could be read to confer subject matter jurisdiction over a state law claim asserted by a non-sovereign defendant, the statute should not be construed so broadly. The Supreme Court has made clear that "[i]n determining whether jurisdiction over a nonfederal claim exists, the context in which the nonfederal claim is asserted is crucial." *Owen Equip. & Erection Co. v. Kroger*, 437

[3] The Court can decide on its own, *sua sponte,* whether subject matter jurisdiction exists over claims against other parties.

[4] The emphasized portion shows that, for Article III diversity purposes, the alien party cannot be on both sides of the dispute. In *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983), however, the Supreme Court found that a federal court could exercise subject matter jurisdiction over a claim by an alien against a Foreign State based on Congress's Article I power to establish a "broad statutory framework governing assertions of foreign sovereign immunity." But that rationale would not apply here where the claim does not involve a claim against (or by) a sovereign entity.

U.S. 365, 375-76 (1978). Context is what drove the 11th Circuit's decision in *In re Surinam Airways Holding Co.*, 974 F.2d 1255 (11th Cir. 1992), on which the Court substantially relied in its prior ruling. In *Surinam*, plaintiffs brought two wrongful death suits against a flight crew and several Florida-based corporations in state court. The defendants impleaded Surinam Airways, which qualified as foreign sovereign, and it removed the cases under 28 U.S.C. § 1441(d). The 11th Circuit held that Surinam Airways' removal covered not only the claim against it, but the "entire case," including the "main claims," *i.e.*, plaintiffs' state law claims against the primary defendants. The court's rationale was that the liability of the sovereign, as an impleaded third-party defendant, depended on the outcome of the main case, making the main claims and third-party claims legally and factually interdependent. In that *context*, the 11th Circuit found that Congress's interest in providing a federal forum to sovereign defendants would be served by allowing removal of the entire case, which included the primary claims and the dependent third-party claims.

The context here could not be more different. Although BTA and Almaty misleadingly characterize the Proposed Claim as belonging to the "Kazakh Entities" (Opp. at 5), in truth, Almaty has no interest in the claim or the U.K. judgment. Nor would the claims by Almaty in this suit be affected by the Court's decision on recognition. Thus, neither the text of the statute nor the underlying Congressional intent supports extending § 1441(d) to provide a jurisdictional basis for BTA's judgment enforcement claim.

**III. Supplemental Jurisdiction Is Not Available**

Although BTA argues that the proposed claim comes within the Court's original jurisdiction, it implicitly concedes that supplemental jurisdiction is required, and tries to

shoehorn its proposed claim into this case using the *Gibbs* test.[5] Opp. at 7. In objecting to Judge Parker's decision, the Khrapunovs argued that the *Gibbs* test cannot be met because the original interpleader claim and the proposed judgment enforcement claim involve different parties (Almaty is not involved), different facts, and distinct time periods. Obj. at 11-12. In sum, the proposed claim is not part of the same constitutional case as the claim within the Court's original jurisdiction.

Not wanting the Court to scrutinize the elements of the *Gibbs* test, BTA claims that the Court has already determined that the "entire civil action, including the Kazakh Entities' crossclaims," is part of the same "case or controversy" as the original interpleader claim. Opp. at 7 (quoting Doc. 423 at 12). Indeed, BTA accuses the Khrapunovs of "completely disregard[ing] the Court's September 25th Order." What BTA fails to mention, however, is that the Court's prior decision contains *no* mention of *Gibbs*, "case or controversy," *or* the "common nucleus" test. In fact, the Court expressly declined to consider "supplemental jurisdiction," which is the predicate for applying *Gibbs.* Doc. 423 at 13.

After trying to endrun the *Gibbs* test by mis-citing the Court's prior ruling, BTA misapplies it. Even though § 1367 clearly requires the Court to compare the proposed claim only to "claims in the action within such original jurisdiction," BTA recruits all claims in the action as the basis for comparison, including the common law claims that were added post-removal. Opp. at 7-8. This mode of analysis effectively bootstraps state law claims on to state law claims, which would violate the plain meaning of § 1367(a), principles of federalism, and the Supreme Court's holding on the subject. *See, e.g., City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) ("This Court has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over

[5] *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'") (quoting *Gibbs*).

The correct comparison under *Gibbs* looks for a common nucleus of *operative* facts—not relational or background facts—between the state law claim and the jurisdiction-invoking federal cause of action. Under this test, BTA's argument that the alleged money laundering scheme supplies the "common nucleus of operative facts" fails completely. Opp. at 9. In fact, the alleged scheme, though perhaps minimally relevant to the interpleader claim, is utterly irrelevant to the judgment recognition claim. In seeking recognition, BTA is not retrying the alleged money laundering scheme (in fact, BTA informed Judge Parker that it did not even require discovery). Its burden is to establish the elements for recognition under New York law, which are fundamentally procedural and jurisdictional issues. Meanwhile, the outcome of the judgment enforcement would have no effect on BTA's contention that Triadou used laundered funds to invest in the New York properties. Opp. at 10.

BTA also invites a judicial estoppel problem when it argues that

> the judgment against Ilyas in the U.K for laundering the N Project money, on the one hand, and the interpleader asking who the rightful owner of some of the proceeds of the N Project is, on the other hand, part of the same case or controversy.

Opp. at 10. In the U.K. Courts, BTA pointedly took the opposite position (and succeeded). *See* Obj. at 11 n. 6. There, BTA told the court that "the claims in New York and those [BTA] seeks to add by way of amendments in these proceedings are of a very different nature." *Id.* at ¶ 38. And, to the extent that overlap might possibly exist, BTA assured that "[it] accepts that if (and to the extent that) it makes recovery in the New York proceedings which means that it has not suffered the loss of the whole of the U.S.$71 million, it will give credit in these proceedings for

the net amount recovered as appropriate." *Id.* at ¶ 38. U.K. counsel then concluded: "As is clear from the above, the causes of action brought against Mr. Khrapunov in the New York proceeding are *very different* from the Bank's cause of action against Mr. Khrapunov in these proceedings …." *Id.* at ¶ 40 (emphasis added). What was then "very different," is now, to an unprincipled BTA, a "common nucleus of operative facts."

It is hardly a surprise that BTA finds no case to support its overblown conception of the phrase, "common nucleus of operative facts." In fact, the main case cited by BTA, *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000), utterly devastates its position. Opp. at 9. The plaintiff bank in *Lyndonville* sued its former president, who had been convicted of bank fraud, in federal court. For federal jurisdiction, the bank sought to enforce a criminal restitution order in the same manner as a civil judgment, and brought state law claims, including breach of fiduciary duty and fraudulent conveyance. The District Court held a 4-day bench trial and awarded the bank over $8 million on its state law claims and reserved decision on the federal restitution claim. 211 F.3d at 700. Defendant, in a post-trial motion, challenged the verdict on subject matter jurisdiction grounds. *Id.* The District Court denied the motion, citing 28 U.S.C. § 1367(a). *Id.* The Second Circuit vacated, finding that the plaintiff bank had no private right of action to enforce the restitution order, but that the federal claim had enough substance to support supplemental jurisdiction. *Id.* at 704. However, supplemental jurisdiction did not extend to the bank's common law claims because the federal claim to modify the criminal restitution order was a legal matter, which did not turn on underlying facts of the conviction; whereas the underlying facts were central to the common law claims. *Id.* at 705. The only operative fact for the federal restitution claim, the court added, "was the existence of a prior valid order." *Id.*

*Lyndonville* is indeed instructive. The operative facts for BTA's judgment recognition claim—like the federal restitution claim in *Lyndonville*—are the judgment itself and perhaps questions about the jurisdiction and court that issued it. By comparison, the operative facts for the interpleader claim and the other state law claims here—like the common law claims in *Lyndonville*—depend on the underlying conduct. Clearly, the federal and state claims have a common background; just as clearly, the operative facts are distinct.

Decisions following *Lyndonville* have drawn similar lines between "operative" facts, which go to the elements of proof, and "background" facts, which merely provide context. *See, e.g., Gerffert Co. v. Dean,* No. 09-CV-266 (PKC), 2014 U.S. Dist. LEXIS 80303, at *15 (E.D.N.Y. June 12, 2014) ("While the factual allegation of distributorship agreements … might provide context for the federal Lanham Act claim, it is not necessary for establishing any element of that claim); *Thomas v. Eony LLC*, No. 13-CV-8512 (JPO), 2015 U.S. Dist. LEXIS 52290, at *19 (S.D.N.Y. Apr. 21, 2015) ("the facts underlying the wage and hour claims are essentially unrelated—except for the employment relationship—to the facts underlying the remaining claims. Thus, the federal FLSA claim will not "necessarily br[ing] the facts underlying the [nonfederal] claim[s] before the court") (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)). Here, the facts common to the U.K. judgement and the state law claims go to background and context; none is operative.

Because none of the operative facts in the case are common to those of the Proposed Claim, supplemental jurisdiction cannot support the proposed judgment enforcement claim.

## IV. The Court Should Decline To Exercise Jurisdiction In Its Discretion

Even if the Court had the power to hear BTA's judgment enforcement claim, it should decline to do so in its discretion. Ilyas argued that all four factors favored dismissal. BTA

contests certain of them but cannot dispute that the third factor is met: "the district court has dismissed all claims over which it has original jurisdiction." This factor alone is enough to decline jurisdiction. *See Gibbs,* 383 U.S. at 726-27; *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 726-27 (2d Cir. 2013); *Castiglione v. Papa*, 423 F.App'x 10, 13 (2d Cir. 2011); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989).

It is also significant to the Court's discretion that Ilyas has a pending motion before the Court on mootness, which, if granted, would eliminate the only remaining cause of action against him. If that motion is granted, the case for efficiency would disintegrate.

### V. If The Court Lacks Subject Matter Jurisdiction, It Cannot Order Ilyas To Accept Service

If the Court lacks subject matter jurisdiction, it cannot proceed with the claim. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)). And absent such jurisdiction, the Court is without power to issue orders and can only dismiss the claim without prejudice. *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 122 (2d Cir. 1999). Thus, the Court cannot assist BTA in its effort to circumvent the protections of the Hague Convention, even if it were so inclined.

## CONCLUSION

For the reasons explained above and in their moving papers, the Khrapunovs respectfully request that the Court set aside the Magistrate Judge's order granting the Kazakh Entities leave to amend.

Dated: New York, New York
July 1, 2019

SOLOMON & CRAMER LLP
*Counsel for Defendants Viktor Khrapunov and Ilyas Khrapunov*

By: /s/Andrew T. Solomon

Andrew T. Solomon
1441 Broadway, Suite 6026
New York, New York 10018
t: (212) 884-9102
f: (516) 368-3896
asolomon@solomoncramer.com