USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/03/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN, and BTA
BANK JSC,

                                   Plaintiffs,

              -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV,
ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

                                   Defendants.

---

**OPINION & ORDER & REPORT &
RECOMMENDATION**

1:15-CV-05345 (AJN) (KHP)

**TO:**       **HON. ALISON J. NATHAN, UNITED STATES DISTRICT JUDGE**
**FROM:**     **KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs, the City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA Bank")

(collectively, the "Kazakh Entities") have moved pursuant to Federal Rule of Civil Procedure 37

("Rule 37") for sanctions against Defendants Mukhtar Ablyazov, Viktor and Ilyas Khrapunov, and

against Triadou SPV S.A. ("Triadou") for failure to comply with discovery obligations and

spoliation of evidence.  Triadou and the Khrapunovs have cross-moved for sanctions against

Plaintiffs for alleged abuses of the discovery process.  (Doc. Nos. 918, 967, and 971.)  This

Opinion addresses the various motions in part.  Part One of the Discussion addresses Plaintiffs'

Motion, to the extent it seeks sanctions against Ablyazov for his failure to produce documents

in this matter or otherwise respond to document requests.  (Doc. No. 918.)  Part Two of the

Discussion addresses Triadou's Motion to preclude Plaintiffs from calling witnesses added to

Plaintiffs' Rule 26 disclosures after the close of discovery.  (Doc. No. 967.)  The Court will

address other aspects of the parties' motions in a separate opinion.

**BACKGROUND FACTS**

### 1. General Background

The Court assumes the reader's familiarity with the background of this case discussed in numerous prior opinions and orders and sets forth only those facts pertinent to this Opinion.[1] Plaintiffs allege that Viktor Khrapunov, former Mayor of Almaty, and Mukhtar Ablyazov, former Chairman of BTA Bank, embezzled billions of dollars from Plaintiffs. They claim that Ilyas Khrapunov, who is Viktor's son and Ablyazov's son-in-law, assisted both men by helping them launder the stolen money through various shell corporations all over the world. They say some of the money flowed to Triadou, a company formed by Ilyas, into real estate investments in the United States, including two investments at issue in this case—the Flatotel and a new condominium complex being built at the site of the former Cabrini Medical Center, both of which are located in New York City.

Plaintiffs have sued the Individual Defendants in various places around the world including the United Kingdom (the "U.K. Proceedings"), California, and New York in an attempt to recover their stolen assets. On November 12, 2009, the High Court of Justice of the United Kingdom entered a worldwide order freezing Ablyazov's assets (the "Freezing Order"). That Order required Ablyazov to disclose his assets and refrain from alienating them during the pendency of the U.K. Proceedings. (*See* Doc. No. 143-9 (amending the Freezing Order by adding assets); *see also* Doc. No. 143-8, 2 (U.K. Supreme Court judgment in *JSC BTA Bank v. Ablyazov*,

---

[1] *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345 (AJN), 2018 WL 3579100 (S.D.N.Y. July 25, 2018); *City of Almaty, Kazakhstan v. Ablyazov*, 278 F. Supp. 3d 776 (S.D.N.Y. 2017); *City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016).

analyzing "terms of a freezing order which was made by Teare J on 12 November 2009 and was subsequently amended . . . ." ).)  The Freezing Order was followed by a worldwide receivership order entered on July 16, 2010, which designated court-ordered receivers to administer certain of Ablyazov's assets and ensure that his assets were not dissipated (the "Receivership Order"). The Freezing and Receivership Orders were subsequently amended on multiple occasions.  (*See* Doc. No. 143-10; *see also* Doc. No. 1094 ¶¶ 35-36, 66-67 (describing the Freezing and Receivership orders).)  Ablyazov did not comply with the U.K. court's orders and was, therefore, held in criminal contempt.  *See* JSC BTA Bank v. Ablyazov [2012] EWHC 237 (Comm).

In July of 2015, BTA Bank brought claims in the U.K. High Court of Justice against Ilyas Khrapunov, alleging that he met with Ablyazov in London and conspired with him to violate the Freezing and Receivership Orders by dissipating Ablyazov's assets.  (*See* Doc. No. 916-1 ¶¶ 1-6.) On or about August 21, 2018, the Honorable Judge Waksman of the High Court of Judgment, Business and Property Courts of England and Wales, handed down a judgment in BTA Bank's favor.  (*Id*. ¶¶ 14-19.)  The judgment was in the amount of $424,110,000, plus interest of $75,851,783.01, with post-judgment interest running at a rate of five percent per year.  (*Id*. ¶¶ 27-29; *see also* Doc. No. 916-4 ¶ 1(a)-(b) (collectively, the judgment and accompanying order are referred to herein as the "Khrapunov Judgment" ).)

### 2. *Ablyazov's Alleged Discovery Misconduct*

Ablyazov, who initially was represented by counsel but is now proceeding pro se, failed to produce documents in this action.  Additionally, Plaintiffs were forced to make multiple applications to this Court to force Ablyazov to appear for his deposition, which took place in France, where Ablyazov is currently residing.  (Doc. Nos. 399 and 811; *see also* Doc. No. 922,

15.)  At his deposition, Ablyazov admitted that various documents relevant to this matter were produced in the U.K. and other foreign proceedings, including: emails; Telegram secure messages; the names of nominees holding assets on his behalf; corporate registers; minutes of a meeting with President Vladimir Putin of Russia; and a loan agreement between him and a non-party witness in this case, Gennady Petelin.  (Doc. No. 919-10.)  Ablyazov also maintains a website on which he posts documents concerning his disputes with BTA Bank.  (*Id*. at 52:20-25; Doc. No. 922, 16.)  Although Plaintiffs obtained a copy of a witness statement disclosed in the various U.K. Proceedings for use at Ablyazov's deposition from the website, Ablyazov testified that he did not have any copies of the documents he submitted in the U.K. Proceedings in his possession.  (Doc. No. 919-10, 19:03-21:10.)  Ablyazov also refused to consent to having his U.K. counsel provide documents to Plaintiffs' counsel in this action, purportedly because he did not want to incur attorneys' fees.  (*Id*. at 140:11-14.)

As the transcript shows, in addition to refusing to produce documents, Ablyazov was less than forthcoming at his deposition.  While admitting that his net worth was, at one point, $20 billion, and that he used trusted persons to mask the ownership of his businesses through nominees, Ablyazov claimed that he could not remember the names of any of these trusted persons or whether he used the services of accountants or other financial professionals to manage his wealth.  (*Id*. at 67:04-70:15, 156:20-24, 166:22-167:01.)

Now, Plaintiffs request that the Court enter a default judgment against Ablyazov or, in the alternative, preclude his defenses.  They also request their attorneys' fees and costs associated with this Sanctions Motion.

### 3. *Plaintiffs' Late Designation of Witnesses*

Fact discovery in this matter closed on August 31, 2018, except for certain discrete areas for which this Court permitted additional time. (Doc. No. 929). On October 5, 2018, Plaintiffs served their Third Amended Rule 26 Disclosures, which identified two new fact witnesses, Zaure Dzhunusova and Gaini Duysenbina, as likely having discoverable information and whom Plaintiffs contemplated relying on at trial. (Doc. No. 969-17, 2, 6.) Triadou's counsel objected to the belated disclosures.  Then, after identifying these witnesses, in response to Triadou's Sanctions Motion (Doc. No. 967), Plaintiffs alerted the Court that Duysenbina will not be available for deposition and trial and that they wish to substitute Akzhan Moldakhmet and Kairat Sadikov as witnesses for the same purpose.  (Doc. No. 993, 45.)

Plaintiffs contend that all of the new witnesses were identified in their October 6, 2016 responses to the Khrapunovs' interrogatories (in which Plaintiffs listed 94 names).  (Doc. No. 969-17, 3-7.) Plaintiffs also state they did not recognize the relevance of these witnesses until they answered Triadou's August 2018 contention interrogatories, through which Triadou sought information supporting Plaintiffs' claim that certain monies that were loaned to a non-party witness named Frank Monstrey, and given to a company owned by Gennady Petelin, originated from the funds stolen by the Individual Defendants.  (*See* Doc. No. 993, 44-45.) Triadou questions the latter excuse insofar as the source of Petelin's money has been at issue for a long time in this case and the loan in question was known to Plaintiffs since mid-2017.

Triadou requests that these witnesses be barred from testifying as a sanction.  Plaintiffs counter that a bar is not appropriate and that, in any event, one of the two individuals, Duysenbina, cannot testify, and that they may need to call Moldakhment and Sadikov (who also

were on the list of 94 individuals) to authenticate certain documents and lay foundation.

Triadou objects to Plaintiffs adding Moldakhment and Sadikov as witnesses at this point for the

same reasons they originally objected to Plaintiffs adding two new witnesses.

### DISCUSSION

### 1. *Legal Standard for Sanctions*

Federal Rule of Civil Procedure 37 ("Rule 37") governs a party's failure to make

disclosures or cooperate in discovery and permits a party to move to compel disclosures and

request appropriate sanctions.  Fed. R. Civ. P. 37(a)-(b).  Subsection (c) of the Rule specifies that

when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e),

the party is not allowed to use that information or witness to supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

37(c)(1).

Rule 37 also permits the requesting party to move for an order: (1) requiring the

payment of reasonable attorneys' fees and costs caused by the failure to disclose information;

(2) permitting the court to inform the jury of another party's failure to disclose information;

and (3) imposing other appropriate sanctions. *Id.* Other appropriate sanctions may include: (1)

directing that matters addressed in the order be taken as established by the prevailing party;

(2) prohibiting the sanctioned party from supporting or opposing claims or defenses or from

introducing evidence; (3) striking pleadings in whole or in part; (4) staying further proceedings

until the order is obeyed; (5) dismissing the action in whole or in part; (6) entering judgment

against the disobedient party; and (7) requiring the disobedient party or her attorney to pay the

reasonable expenses caused by the failure. Fed. R. Civ. P. 37(b)(2)(A).  Subsection (d) of the

Rule, likewise, provides for the same types of sanctions when a party fails to answer interrogatories and fails to respond to a request for documents.  Fed. R. Civ. P. 37(d)(1)-(3). Under Subsection (d), a failure to respond to interrogatories and document requests "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

Discovery sanctions serve several purposes: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general. *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (citations omitted); *see also Southern New England Tel. Co. v. Global NAPs Inc*., 624 F.3d 123, 147–49 (2d Cir. 2010) (district court did not err by imposing default judgment on defendants who willfully deleted and refused to produce relevant documents); *Update Art, Inc. v. Modiin Publ'g, Ltd*., 843 F.2d 67, 70–71 (2d Cir. 1988) (granting summary judgment to plaintiff was an appropriate sanction where defendant engaged in extreme dilatory tactics).

When determining whether sanctions should be imposed under Rule 37, courts in the Second Circuit weigh the following non-exhaustive factors: "'(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'"  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (alteration in original) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).  Prejudice to the party seeking sanctions may also be a significant consideration, though not an absolute prerequisite in all

circumstances. *See Southern New England Tel. Co.*, 624 F.3d at 148–49 (movant suffered prejudice where it was deprived of evidence); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296–97 (2d Cir. 2006) (although new evidence presented was essential to plaintiff's damages claim, exclusion was appropriate where discovery was closed and defendants would have been prejudiced if required to prepare for additional evidence).   No single factor, alone, is dispositive.  *World Wide Polymers*, 694 F.3d at 159 (noting that "'these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion.'" (quoting *Southern New England Tel. Co.*, 624 F.3d at 144)).

Harsh sanctions, such as dismissal or default, are reserved for extreme situations, such as those involving "willfulness, bad faith, or any fault" on the part of a "non-compliant litigant." *See Agiwal*, 555 F.3d at 302 (internal quotation marks and citation omitted) (sanctions against pro se litigant appropriate where he refused to follow any of the orders issued by the presiding magistrate judge over a six-month period); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (noting that "the severity of sanction must be commensurate with the non-compliance").

The imposition of sanctions lies within the sound discretion of the court.  *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994) (citation omitted); *see also Doe v. Delta Airlines Inc.*, No. 15-3561-cv, 2016 WL 6989793, at *2 (2d Cir. Nov. 29, 2016). Indeed, "[w]hen faced with a breach of a discovery obligation that is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction."  *Doe v. Delta Airlines Inc.*, 672 F. App'x 48, 50 (2d Cir. 2016) (internal quotation marks, alterations, and citation omitted).

However, when considering whether to impose discovery sanctions, the Court's discretion is limited to the imposition of sanctions that are both "just" and "commensurate" in severity with the non-compliance.  *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318(GBD)(BCM), 2017 WL 3671036, at *21 (S.D.N.Y. July 18, 2017), *adopted by* No. 16-CV-1318(GBD)(BCM), 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017) (quoting *Shcherbakovskiy, Ltd.*, 490 F.3d at 140.  Although courts "should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future," courts are "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 3671036, at *21 (internal quotation marks and citations omitted); *see also Urbont v. Sony Music Entm't*, No. 11 CIV. 4516(NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) ("'deliberate and persistent noncompliance will render lesser sanctions inappropriate'" (quoting *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (alterations omitted))).

Finally, while pro se litigants are generally "entitled to special solicitude before district courts," imposing harsh sanctions against a pro se litigant, including  "[d]ismissal . . . may be appropriate so long as a warning has been given that non-compliance can result in dismissal." *Agiwal*, 555 F.3d at 302 (internal quotation marks and citations omitted); *see also S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011) ("Even the most severe Rule 37 sanctions 'may be imposed even against a plaintiff who is proceeding *pro se,* so long as a warning has been given that noncompliance can result' in a sanction." (quoting *Valentine,* 29 F.3d at 50).

### 2. *Plaintiffs' Request for Sanctions Against Ablyazov*

Defendant Ablyazov has produced no documents in this action.  This is so even for the period when he was represented by counsel (who withdrew in August of 2017). The types of documents Plaintiffs sought from Ablyazov concerned his finances and companies, and were designed to identify the source of his wealth and investments, separate from compensation paid by his former employer, Plaintiff BTA Bank.  Plaintiffs' first request for documents, served in August 2016, requested documents concerning, among other things: Ablyazov's ownership and position as Chairman of BTA Bank; documents produced in the U.K. Proceedings regarding his assets; documents pertaining to his and his business's interactions with FBME Bank, which facilitated relevant wire transfers; and documents pertaining to a purported loan to Gennady Petelin.  (Doc. No. 921-4; *see also* Doc. No. 919-10,182:04-183:05.)  Ablyazov ignored these requests.

Plaintiffs ultimately moved to compel Ablyazov to produce documents in August 2018. (Doc. No. 811.)  Ablyazov failed to timely respond to the Motion and this Court ordered him to produce responsive documents.  (Doc. No. 813.)  However, instead of producing documents in compliance with this Court's Order, Ablyazov moved for reconsideration.  (Doc. No. 814.) Although that Motion was denied, Ablyazov still failed to produce any documents.  (Doc. No. 816.)

Ablyazov, likewise, failed to respond to interrogatories, forcing Plaintiffs to move to compel his responses.  (Doc. No. 399.)  Ablyazov ultimately provided general denials in response to Plaintiffs' interrogatories before this Court ruled on Plaintiffs' Motion.  However,

Plaintiffs learned through subsequent discovery that Ablyazov's answers to the interrogatories were incomplete and misleading.  (Doc. No. 922, 15-16, 15n.15.)

Furthermore, Ablyazov  initially refused to appear for his deposition.  Plaintiffs made numerous attempts to reach Ablyazov to arrange for his deposition and many applications to this Court for orders requiring Ablyazov's deposition.  Finally, after several orders from this Court, and after this Court had to order Ablyazov to appear telephonically for discovery conferences in this case, Plaintiffs were able to take Ablyazov's deposition in France.  (Doc. No. 991-15, 38:14-25; *see also* Doc. Nos. 469, 811, 826, 832, 835, 841, and 852.)  Unfortunately, the deposition did not yield all of the information Plaintiffs hoped because Ablyazov could not remember information that one would expect him to remember.  For example, he admitted that he uses trusted persons to mask the ownership of his businesses through nominees.  (Doc. No. 991-10, 69:16-70:15, 150:24-151:03.) But despite stating that his net worth was almost $20 billion at one point, Ablyazov stated he could not remember a single "trusted person" that he had granted nominal ownership to.  (*Id*. at 156:06-157:14.) Ablyazov also stated, incredibly, that he could not remember whether he had employed the service of any accountants or financial professionals since 2009.  (*Id*. at 166:22-167:01.) Indeed, at one point, he claimed to not remember his own phone number.  (*Id*. at 49:22-50:14.)

With respect to the documents sought by Plaintiffs, Ablyazov testified at his deposition that he (or his attorneys), in fact, has numerous documents responsive to Plaintiffs' requests and this Court's orders, but simply refused to produce them.  He, likewise, declined to consent to having his attorneys in the U.K. produce the documents in this action on his behalf.  (Doc. No. 919-10, 19:13-21:10, 110:22-112:04, 140:07-18.)  Similarly, he testified that he has

documents supporting his defenses, including "a lot of evidence" proving that BTA Bank is "owned by President Nazarbayev through nominees." (*Id*. at 103:01-05, 19-23 (referring to "emails and letters that prove that they were acting on behalf of the bank").) Ablyazov also admitted that he submitted some of this evidence to French courts in connection with other proceedings.  (*Id*. at 103:06-09; *see also id.* at 110:22-111:05.) He further described documentary evidence of a conspiracy involving Russian President Vladimir Putin, claiming that he has "minutes of meetings that were held by President Putin," which state "quite clearly that the FSB is to control the process to make sure that the decisions by the Russian courts would go towards helping the . . . the Kazakh side." (*Id.* at 104:1-05.) Ablyazov produced none of that evidence in this case and provided no credible justification for his failure to produce relevant documents.  He also refused to identify email accounts and messaging applications from which he sent and received communications relevant to this action.  (*Id*. at 44:12-47:22, 49:22-50:14.)

Rule 37 provides that "the court must" require a party who has failed to provide information in discovery to "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(b)(2)(C).  Due to Ablyazov's flagrant disregard for his discovery obligations and this Court's orders, this sanction is appropriate here.  Accordingly, the Court directs Plaintiffs to file a motion setting forth the attorneys' fees and costs associated with the various applications they have made to the Court over the course of discovery for orders compelling Ablyazov to respond to document requests and interrogatories and to cooperate in the scheduling of his deposition, as well as the fees and costs associated with preparing and pursuing the instant Sanctions Motion against Ablyazov.

Such motion shall be filed by no later than **August 30, 2019** and shall be supported with appropriate affidavits, time and expense records, and a memorandum of law.  Ablyazov may file responding papers, limited to addressing the amount of fees and costs to be awarded, by no later than **September 27, 2019.** There shall be no reply.

Attorneys' fees and costs alone, however, are insufficient sanctions for Ablyazov's conduct in this action.  Additional sanctions are appropriate due to Ablyazov's willful disregard of his discovery obligations, the likelihood that lesser sanctions will be insufficient to prevent further inappropriate conduct, and the fact that he has failed to produce a single document despite being a party to this action for over three years.  *See World Wide Polymers, Inc.*, 694 F.3d at 159; *see also Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 3671036, at *21 (sanctions should be "just" and "commensurate" in severity with the non-compliance).

Plaintiffs argue that a default judgment should be entered against Ablyazov or, alternatively, that he should be precluded from offering defenses for which he produced no documents.  When considering whether preclusion should be imposed on a party that failed to produce documents, courts consider among the following non-exhaustive factors: "(1) the party's explanation for the failure to comply with the discovery rules; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance.*" Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13 CV 5390 (ILG)(CLP), 2018 WL 4782340, at *2 (E.D.N.Y. Sept. 4, 2018), *adopted by* No. 13 CV 5390(ILG)(CLP), 2018 WL 4783957 (E.D.N.Y. Oct. 2, 2018) (internal quotation marks and citation omitted) (precluding the plaintiff from relying on documents that it failed to produce in discovery); *see also Patterson v. Balsamico*, 440 F.3d 104,

117 (2006) (precluding testimony of defense witnesses identified shortly before trial); *Design Strategy, Inc.*, 469 F.3d at 296 (precluding plaintiff from presenting evidence in support of its claim for lost profits where it failed to disclose the computation of those profits).

Here, Ablyazov declined to provide any explanation whatsoever for why he failed to produce any of the documents that, he claims, support his defenses.  Ablyazov's recalcitrance is particularly troubling given that the missing evidence goes to the heart of his defenses and Plaintiffs have been unable to confront Ablyazov with any of those documents.  Clearly, Plaintiffs will be prejudiced if Ablyazov is permitted to produce the missing documents at a later date.  Additionally, because Ablyazov has refused to produce those documents after three years of litigation, despite having access to those documents either personally or through his counsel, this Court concludes that it is unlikely that Ablyazov will produce any documents in this action.

Considering all of these facts together, this Court finds that Ablyazov should be precluded from offering any of the documents he claims support his defenses in opposition to summary judgment or at trial.  This sanction is consistent with Rule 37(c)(1) and is needed to ensure that Ablyazov will not benefit from his failure to participate in discovery and to deter his further noncompliance with his discovery obligations.  Accordingly, I recommend that the Court sanction Ablyazov by precluding his use of any of these documents.  *Excellent Home Care Servs., LLC*, 2018 WL 4782340, at *4; *see also Mantel v. Microsoft Corp.*, No. 16-CV-5277 (AJN), 2018 WL 1602863, at *4 (S.D.N.Y. Mar. 29, 2018), *reconsideration denied*, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y. Jan. 30, 2019).

Whether a default judgment should be entered against Ablyazov is a closer call.  *See*
*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) (affirming default
judgment where defendant failed to comply with his discovery obligations and his
"intransigence spanned months, and . . . less serious sanctions would have been futile"); *see*
*also World Wide Polymers, Inc.*, 694 F.3d at 159. This Court is mindful that Ablyazov is now
representing himself pro se and was not previously warned by this Court that a default
judgment would be entered against him for his conduct in discovery.  Yet, at the same time,
Ablyazov is no ordinary litigant.  He is a sophisticated actor who has faced multiple litigations
around the world, been found in contempt by other tribunals for failing to comply with court
orders, and who has fled from legal authorities and is now currently in hiding in France.  As to
the efficacy of lesser sanctions, Ablyazov's conduct weighs in favor of a sanction harsher than a
fee award, but against entry of a default judgment.

On balance, I recommend that, in addition to not being permitted to rely on or
reference any documents that have not been produced in discovery in support of his defenses,
that the Court draw an adverse inference against Ablyazov for purposes of determining liability.
Despite Ablyazov's pro se status, this sanction is appropriate in light of, among other things,
the fact that he was represented by counsel during at least part of the time that discovery was
pending, has substantial experience litigating civil suits, and was well-aware that Plaintiffs
would file a sanctions motion against him if he failed to comply with his discovery obligations.
*See Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001), *adopted by* No. 97 CIV. 0202(VM),
2001 WL 1568426 (S.D.N.Y. Dec. 5, 2001) (although pro se plaintiff was not warned that his
complaint could be dismissed for failure to comply with his discovery obligations, dismissal was,

nonetheless, appropriate); *see also World Wide Polymers*, 694 F.3d at 159 (when determining appropriate sanctions, no single factor considered by the court is dispositive); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995) ("[D]iscovery orders are meant to be followed. A party who flouts such orders does so at his peril."(internal quotation marks and citations omitted)).

Courts in this district weigh among the following factors to determine whether the imposition of an adverse inference of finding a fact established is appropriate: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Joint Stock Co. Channel One Russia Worldwide*, 2018 WL 4760345, at *6–7 (internal quotation marks and citations omitted); *see also Guggenheim Capital, LLC*, 722 F.3d at 451; *Ramgoolie v. Ramgoolie*, No. 16-CV-3345 (VEC)(SN), 2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018) (permissive adverse inference for failure to participate in discovery); *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-CV-3533(CM)(BCM), 2017 WL 2840279, at *11 (S.D.N.Y. June 27, 2017) (where "discovery misconduct has deprived the opposing party of key evidence needed to litigate a contested issue, an order prohibiting the disobedient party from contesting that issue – or simply directing that the matter be taken as established – is also appropriate" (citations omitted)).

Here, as explained at length above, Ablyazov had sufficient control over the documents he failed to produce, such failure to produce was intentional, the documents he failed to produce are relevant to this action, and Ablyazov's conduct has clearly prejudiced Plaintiffs.

Indeed, Ablyazov's admission that he has relevant documents and his refusal to consent to have his U.K. attorneys produce those documents for him show that his conduct has been willful. Moreover, Ablyazov has admitted to having custody and control over relevant documents that may have assisted Plaintiffs in tracing the stolen funds to the Triadou investments at issue in this case. Such documents include communications with banks, Frank Monstrey, and Ilyas Khrapunov, among others. Yet, rather than producing relevant documents in his or his attorneys' possession, Ablyazov has forced Plaintiffs to bear the costs of hiring private investigators to travel around the globe to gather the same information that may be contained in those documents. The duration of Ablyazov's non-compliance, at least with respect to responses to document requests, has lasted for the entirety of discovery, despite this Court's orders directing him to participate in discovery. There are absolutely no facts justifying Ablyazov's failure to produce documents in response to Plaintiffs' requests and this Court's orders. At the same time, Ablyazov did not completely absent himself from this litigation — he did ultimately appear for his deposition and has complied with this Court's orders to appear at status conferences by telephone. Thus, in light of the above, I respectfully recommend the imposition of an adverse inference sanction for purposes of determining liability against Ablyazov.

### 3. Triadou's Request That the Court Preclude Plaintiffs' Late-Identified Witnesses

Federal Rule of Civil Procedure 26(a)(1)(A) requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims and defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). Under Rule 37(c)(1), a party who fails to disclose the identity of a

witness in its Rule 26(a) disclosures "is not allowed to use that . . . witness to supply evidence on the motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  This rule is designed to prevent the "sandbagging" of an opponent.  *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (citation omitted) (summary order).

In this case, the late disclosure of the additional witnesses after the close of discovery is tantamount to seeking to reopen discovery.  Thus, Plaintiffs bear the burden of establishing good cause for their late identification of witnesses.  *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).  Courts apply the following six-part test to analyze a request to reopen discovery: "(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence."  *Id*. (citations omitted). Additionally, the Second Circuit has held that preclusion is a discretionary remedy if the trial court finds there is "no substantial justification" for the failure to disclose and the failure "is not harmless."  *See Design Strategy, Inc.*, 469 F.3d at 297; *but see  Southern New England Tel. Co.*, 624 F.3d at 148 (rejecting the "no harm, no foul" standard for evaluating discovery sanctions).

Plaintiffs served their amended disclosures in October 2018 and argue that their amendment of the Rule 26 disclosures was not late because discovery had not ended as of the date they served the amended disclosures.  While it is true that the Court extended fact discovery through October 31, 2018, it only extended discovery for the limited purpose of

completing certain depositions.  (Doc. Nos. 649 and 901.) For this reason, the Court finds that

the amended disclosures were, in fact, late.

Now, the Court must determine whether there is good cause to allow the amendment

under the factors summarized above, as applicable to this case.  First, trial is not imminent.  The

parties are completing expert discovery and dispositive motions are pending.  Second, although

Triadou opposes the amendment and argues that it will be prejudiced, this Court does not

agree that there is prejudice.  To start, the witnesses were identified in Plaintiffs' responses to

the Khrapunovs' interrogatories in October of 2016.  Thus, the names are not unknown to

Triadou.  Triadou complains that 94 individuals were identified in the same responses, that

Plaintiffs did not provide "other identifying information" concerning the proposed new

witnesses, and that it is unreasonable to expect them to have determined who each of the 94

individuals were.  (Doc. No. 968, 9-10; *see also* Doc. Nos. 969-18, 969-19, and 969-20.)  This

Court disagrees.  Triadou propounded a third set of interrogatories for the very purpose of

obtaining the identity of persons with knowledge about the claims and defenses in this action.

(*See* Doc. No. 969-20.)  When Plaintiffs provided a complete list in response to that

interrogatory, Triadou could have, and should have, determined who each person was.

Additionally, the witnesses appear on some of the relevant documents produced in this matter.

(Doc. No. 993, 47-78; *see also* Doc. Nos. 992-22 and 992-23.)  While mere identification of

witnesses in interrogatory responses is insufficient for Rule 26(a)(1)(A) disclosure purposes,

*Downey v. Adloox Inc.*, No. 16-cv-1689 (JMF), 2018 WL 794592, at *1–2 (S.D.N.Y. Feb. 8, 2018),

the prior identification of the witnesses undermines Triadou's prejudice argument.

Triadou complains that it is prejudiced by the late disclosure because Plaintiffs have not specified the precise information these witnesses possess and it has been unable to depose these witnesses. Furthermore, because the individuals are not located within the United States, expensive, lengthy, and cumbersome Hague procedures will be needed to depose these individuals. However, the Court can address the issue of prejudice by granting Triadou leave to depose these witnesses in light of the fact that trial is not imminent.

As to the fourth and fifth factors—diligence and foreseeability—Plaintiffs state that they did not realize the importance of the witnesses (and that they would be needed at trial) until it became clear that they would be needed to testify about specific bank records relating to the tracing of specific assets when responding to another interrogatory from Triadou in 2018. Triadou counters that Plaintiffs knew about these witnesses from the beginning and knew that someone would have to testify about asset transfers and, thus, should have listed these witnesses sooner. Having closely supervised this case for over two years, this Court is familiar with the complex investigation by Plaintiffs to locate assets and trace those assets through multiple shell corporations across the globe back to BTA Bank and the City of Almaty. The Court is also familiar with, and has commented on, Plaintiffs' diligence in pursuing discovery. Thus, the Court credits Plaintiffs' explanation as to why they only first realized that these witnesses would be needed in late 2018—that it took years to identify the exact transactions related to tracing Triadou's assets back to BTA Bank and the City of Almaty and the fact that turnover of employees at BTA Bank is not entirely within Plaintiffs' control.

To the extent Triadou seeks the sanction of preclusion, this Court rejects Triadou's request. Preclusion is a drastic sanction that is not required or appropriate in the

circumstances of this case.  *See Design Strategy, Inc.*, 469 F.3d at 298 (holding that preclusion is

not mandatory because "the plain text of . . . [R]ule [37] provides that if an appropriate motion

is made and a hearing has been held, the court does have discretion to impose other, less

drastic, sanctions").  Plaintiffs have not acted in bad faith.  Rather, they amended their Rule 26

disclosures as soon as they realized the witnesses would be needed and in accordance with

Rule 26's supplementation requirement.  Fed. R. Civ. P. 26(e).  The Court also appreciates that,

because some of the witnesses are now former employees of Plaintiff BTA Bank, Plaintiffs'

counsel have had to identify alternative witnesses who can testify about the same bank

transactions due to their lack of control over these witnesses and their future availability.

Triadou cites no cases with facts analogous to the instant action where preclusion was deemed

appropriate.  For these reasons, the Court will permit Plaintiffs to serve a forth amended Rule

26(a) disclosure identifying  Zaure Dzhunusova, Akzhan Moldakhmet, and Kairat Sadikov as

witnesses for trial and will not preclude them from testifying.

## CONCLUSION AND RECOMMENDATION
## FOR ADVERSE INFERENCE AS AGAINST ABLYAZOV

For the reasons discussed above, Plaintiffs' motion for sanctions (Doc. No. 918) is

GRANTED insofar as Plaintiffs seek sanctions against Defendant Ablyazov for failing to

participate in discovery.  Ablyazov shall, as a sanction, pay Plaintiffs' attorneys' fees and costs

associated with the various motions to compel discovery responses from Ablyazov and his

appearance at a deposition, as well as the fees and costs associated with their Motion for

Sanctions.  Plaintiffs are directed to file a motion setting forth the attorneys' fees and costs

associated with the various applications they have made to the Court over the course of

discovery for orders compelling Ablyazov to respond to document requests and interrogatories

and to cooperate in the scheduling of his deposition, as well as the fees and costs associated with preparing and pursuing the instant Sanctions Motion against Ablyazov. Such motion shall be filed by **August 30, 2019** and shall be supported with appropriate affidavits, time and expense records, and a memorandum of law. Ablyazov may file responding papers, limited to the amount of fees and costs to be awarded, by no later than **September 27, 2019**. There shall be no reply.

Additionally, I respectfully recommend that, consistent with Rule 37(c)(1), Ablyazov be precluded from offering or referring to any documents that he did not produce in discovery in opposition to any dispositive motion or at trial. This sanction is needed to ensure that Ablyazov will not be advantaged from his failure to participate in discovery and to deter noncompliance with discovery obligations. I also recommend that the Court draw an adverse inference against Ablyazov for purposes of determining liability as a sanction for his failure to produce relevant documents over which he has custody and control and his failure to provide full and credible responses to deposition questions and interrogatories concerning his financial assets and financial advisors and money managers.

Triadou's Motion (Doc. No. 967) is DENIED insofar as it seeks the sanction of preclusion of Zaure Dzhunusova, Akzhan Moldakhmet, and Kairat Sadikov as witnesses at trial. To mitigate prejudice, the Court will permit Triadou to depose these individuals. Triadou shall have until **September 30, 2019** to depose these witnesses. Plaintiffs shall make every effort to facilitate their depositions as soon as possible and, in no event, later than **September 30, 2019**.

**SO ORDERED AND RESPECTFULLY SUBMITTED.**

Dated: July 3, 2019
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

**<u>NOTICE</u>**

**Ablyazov shall have seventeen days from the service of this Report and Recommendation to file written objections to this Court's recommendation concerning the sanctions of preclusion and adverse inference pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.** *See also* **Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Plaintiffs shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.**

**If Ablyazov files written objections to this Report and Recommendation, Respondent may respond to Ablyazov's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Plaintiffs file written objections, Ablyazov may respond to such objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2);** *see also* **Fed. R. Civ. P. 6(a), (d).**

**Any objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.** *See* **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.** *See* **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b);** *Thomas v. Arn*, **474 U.S. 140 (1985).**