UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

    Crossclaim Plaintiffs,

- against -

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

    Crossclaim Defendants.

ECF Case

No. 1:15-cv-05345 (AJN) (KHP)

**DEFENDANT TRIADOU SPV S.A.'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO PRECLUDE THE SMP DOCUMENTS**

Dated: July 25, 2019

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Counsel for Crossclaim Defendant
Triadou SPV S.A.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

I.     BTA Failed To Diligently Pursue Evidence From Monstrey And SMP Partners .............. 1

II.    Almaty/BTA Have Previously Acknowledged That Preclusion Under Rule 37(c)(1) Is Proper Where A Party Obtains Documents After The Close Of Fact Discovery .......................... 4

III.   Triadou Has Not Had A Full And Fair Opportunity To Take Discovery On The SMP Documents Or Almaty/BTA's New, Unpled Factual Theory Of The Case .................................. 6

IV.   ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ............................................. 7

V.    Almaty/BTA Have Not Offered The SMP Documents "Solely" For Impeachment Purposes And Their Experts Should Not Be Allowed To Rely On Precluded Material .............. 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bakalar v. Vavra*,
　851 F. Supp. 2d 489 (S.D.N.Y. 2011)...................................................................................4

*DLC Mgmt. Corp. v. Town of Hyde Park*,
　163 F.3d 124 (2d Cir. 1998)..................................................................................................7

*Sealed Plaintiff No. 1 v. Sealed Defendant No. 1*,
　221 F.R.D. 367 (N.D.N.Y. 2004) .....................................................................................3, 4

**Other Authorities**

Fed. R. Civ. P. 26(a) ......................................................................................................................10

Fed. R. Civ. P. 37..........................................................................................................1, 4, 5, 7, 10

Triadou SPV S.A. ("Triadou") respectfully submits this reply memorandum in further support of its motion to preclude the belatedly produced SMP Documents. (ECF 1078).[1]

**PRELIMINARY STATEMENT**

Calling the SMP Documents "critically relevant to what has become the central issue in this case," Almaty/BTA ask the Court to permit their production of more than 22,000 documents seven months after the close of fact discovery. The Court should deny their request and preclude the documents, as Almaty/BTA have refused to play by the rules of discovery or abide by this Court's scheduling order. Trying to escape the sanction of preclusion, Almaty/BTA rewrite history to excuse their failure to timely pursue discovery from SMP Partners; mischaracterize the terms of their settlement agreement with Monstrey; ignore the substantial prejudice to Triadou resulting from the need for discovery regarding the SMP Documents and Almaty/BTA's new, unpled theory of the case; ▮. The Court should thus preclude Almaty/BTA—and their experts—from relying on the SMP Documents pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Court's inherent authority.

**I.  BTA Failed To Diligently Pursue Evidence From Monstrey And SMP Partners**

Almaty/BTA seek to defend their belated production by contending that "the Kazakh Entities had not heard of SMP Partners until March 2018," and that BTA could not have learned about SMP Partners' relevance before that time. (ECF 1118 at 2, 14-16). Both contentions are patently false. Initially, Almaty/BTA's attempt to cabin their knowledge depends on blurring the line between them and their U.S. counsel ("BSF"). (*Compare* ECF 1118 at 2-3 (discussing what "BTA" knew "for purposes of this action"), *with* ECF 1117, ¶¶ 6-9 (describing information not in the possession of BSF)). The proper focus is BTA's—not BSF's—knowledge.

---

[1] Triadou uses the same defined terms and abbreviations used in its Opening Brief. (*See* ECF 1079).

BTA had access to Monstrey—the source of the link to SMP Partners—who has been obligated since he signed a settlement agreement with BTA ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

To deflect, Almaty/BTA point to the U.K. "confidentiality club," although it is BSF (not BTA) who declares its "understanding" (without support) that the "club" effectively imposes an "attorneys['] eyes only" limitation on Monstrey's witness statements. (*See* ECF 1117, ¶ 6).[2] ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.[3]

---

[2] As Triadou has noted previously, Almaty/BTA cannot escape their discovery obligations by strategically withholding information from BSF.

[3] The "confidentiality club" Almaty/BTA cite was discussed in relation to protecting disclosures required of Ilyas Khrapunov regarding his assets. (ECF 1118 at 10 (citing ECF 1117-24, ¶ 31)). It does not speak to restrictions covering Monstrey's evidence. ████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████.

2

Other evidence confirms that the U.K. confidentiality restrictions do not affect Monstrey's obligation to share information. BSF twice declares that it was *Monstrey*—not the U.K. courts—who allowed BSF to review the witness statements and to produce them here. (ECF 1117, ¶¶ 8-9).

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████.

That BTA had access to Monstrey's witness statements ███████████ is critical here, ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████, which directly contradicts their new version of events, (ECF 1118 at 3). Where they produced documents that allegedly connect Northern Seas Waterage, Claremont, and Sartfield "several years ago," (*see* ECF 1118 at 2), ███████
███████████████████████████████████████████████████████████
███████████████, it is clear that Almaty/BTA did not exercise appropriate diligence by failing to timely seek any discovery from Monstrey and SMP Partners.

Citing *Sealed Plaintiff No. 1 v. Sealed Defendant No. 1*, 221 F.R.D. 367, 368 (N.D.N.Y. 2004), Almaty/BTA argue that their "actions are aligned with those of litigants where courts have been satisfied that the producing parties acted diligently," (ECF 1118 at 17). But that case is

distinguishable, as it involved a request for an extension to disclose an additional expert, the need for which became known only after a late-taken deposition. *Sealed Plaintiff No. 1*, 221 F.R.D. at 368. Here, whether Petelin or Ablyazov provided the funds that Triadou invested has been a focus of this action since at least April 2017. (*See* ECF 301 at 1 (Almaty/BTA letter identifying whether Petelin was the source of funds as a "core issue")). *Sealed Plaintiff No. 1* also rested largely on the idea that courts should be reluctant to exclude expert testimony. *See* 221 F.R.D. at 368 ("[e]ven in the face of missed deadlines, excluding expert testimony can frustrate" the objectives of the Federal Rules) (internal quotation marks and citations omitted). Here, in contrast, the parties' dispute relates to belatedly produced fact evidence that Almaty/BTA acknowledge relates to a defense about which they have known (who provided the funds Triadou invested) since at least April 2017. In the end, Almaty/BTA failed to exercise diligence, ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████.

Because Almaty/BTA knew of the dispute regarding the source of the funds Triadou invested, ████████████████████████████████████████, the Court should deny Almaty/BTA's effort to reopen discovery (or to allow the SMP Documents to be used). *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493-94 (S.D.N.Y. 2011) (denying motion to reopen discovery where movant knew of defense and documents were available "before fact discovery closed").

## II. Almaty/BTA Have Previously Acknowledged That Preclusion Under Rule 37(c)(1) Is Proper Where A Party Obtains Documents After The Close Of Fact Discovery

The Court should also reject Almaty/BTA's argument that Rule 37(c)(1) cannot be used to preclude the SMP Documents because those documents were not in Almaty/BTA's possession, custody, or control until after the close of fact discovery. (ECF 1118 at 11-14). As shown in Triadou's opening brief, and again below, ████████████████████

4

████████████████████████████████████████████████████████. In any event, Almaty/BTA have already taken a position contrary to their argument when they sought to preclude, through Rule 37(c)(1), expert materials that Triadou subpoenaed after the close of fact discovery. There, Almaty/BTA argued that "evidence that a party did not produce during fact discovery cannot be relied upon by that party's expert during a subsequent phase of the case," (ECF 910 at 2 (citing *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 11-cv-01846, 2012 WL 3155574, *5 (N.D. Cal. Aug. 2, 2012)), and that "it was incumbent on Triadou" to seek those materials "at the appropriate time," (*id.* at 3). While the Court found that Triadou did not violate Rule 37(c)(1) because it immediately sought to supplement its production by issuing the subpoenas, (ECF 929 at 4)—which Almaty/BTA did *not* do here—the Court acknowledged that Rule 37(c)(1) *could have* precluded the documents if Triadou's failure to seek them during fact discovery was not "substantially justified and harmless," (*id.*). In contrast, as shown in Triadou's opening brief, Almaty/BTA's failure was not "substantially justified or harmless."

Rule 37(c)(1) thus can properly be used to preclude the SMP Documents (as can the Court's inherent authority), given Almaty/BTA's continued refusal to play by the rules. Unlike Triadou, which openly noticed its subpoenas, ███████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

██████████████████████████████
██████████████████████████████
██████████████████
████████████████████ .

### III. Triadou Has Not Had A Full And Fair Opportunity To Take Discovery On The SMP Documents Or Almaty/BTA's New, Unpled Factual Theory Of The Case

From the time that Almaty/BTA obtained a discovery extension to depose Monstrey, their factual theory of this case has changed. Triadou (and the other defendants) have not had a full or fair opportunity to take discovery on this new theory; instead, they were forced to play catch-up, as Almaty/BTA serially sought to introduce new evidence at the last minute.[4]

Regarding the SMP Documents specifically, Almaty/BTA's assertion that Triadou needs only the deposition of a document custodian is absurd. (*See* ECF 1118 at 20). As Triadou previously noted, the SMP Documents' reliability is very much in question given their prior back-dating and ties to Monstrey, (*see* ECF 1079 at 14-15); a document custodian supplied ██████ ██ BTA simply could not answer any relevant questions about the maintenance or substance of the SMP Documents. Nor would Triadou's examination of SMP Partners be limited to authentication, as Almaty/BTA suggest; rather, it would, at a minimum, entail examination regarding SMP Partners' communications with Monstrey, Ablyazov, and/or Petelin, including their back-dating of documents; SMP Partners' internal communications; and the relationships between and among

---

[4] The Crossclaims' allegations confirm that Monstrey's evidence has changed Almaty/BTA's theory of the case. For example, while the Crossclaims allege that Ablyazov's misconduct occurred between 2005 and 2009 when he was chairman of BTA, (*see, e.g.*, ECF 49, ¶¶ 20, 50-55; ECF 1094, ¶¶ 28-33), ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Triadou reserves the right to seek summary judgment of Almaty/BTA's unpled, new theory of the case, but offers this preview now for illustrative purposes regarding the discovery Triadou has been denied, and the prejudice to Triadou of not precluding the SMP Documents.

6

SMP Partners, Monstrey, the various entities in question, Ablyazov, and/or Petelin. ███

███

███.[5]

The adverse consequences of Almaty/BTA's misconduct, if unsanctioned, will be evident in the pre-trial order, where dozens (if not hundreds) of SMP Documents will appear on a trial exhibit list without the defendants having had any opportunity to show any of them to a witness. This is the very definition of prejudice, and unquestionably is trial by ambush.[6]

**IV.** ███

███

███ *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (noting test for imposing sanctions under court's inherent power). Foremost, the evidence reflects that Almaty/BTA and the ROK are not separate:

- Documents show that BTA, the ROK, and Arcanum work together in connection with BTA's asset recovery efforts; in particular, Marat Beketayev (the ROK's former Executive

---

[5] The other Rule 37(c)(1) factors continue to support preclusion. (*See* ECF 1079 at 11-19). Almaty/BTA's explanation for failing to timely seek discovery from SMP Partners is not legitimate (as shown above). And while the SMP Documents may be relevant, they are nowhere near as critical as Almaty/BTA claim, given that Almaty/BTA were ready and willing to go to summary judgment and trial without the documents, and never ███ sought to formally obtain the documents. Lastly, a continuance would be inappropriate given the progressed status of this action, and the fact that the case has been pending for more than four years. (*See* ECF 1079 at 18-19).

[6] While Almaty/BTA contend that the "defendants" created their own prejudice, (ECF 1118 at 21), that argument fails as to Triadou. There is simply no evidence that Triadou ███.

Secretary to the Ministry of Justice and present Minister of Justice) signed Bourg's release agreement, (ECF 400-8 at 3), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, on behalf of the ROK.

- Beketayev appears in email correspondence discussing payments from the ROK to Arcanum with Peder Garske (including how payments would go through intermediaries), some of which also include Nurlan Nurgabylov, BTA's 30(b)(6) deponent here. (*See, e.g.*, Ex. 34 at 1; Ex. 35 (discussing contractual arrangements involving Arcanum and various foreign contractors to the ROK). It is not coincidental that Nurgabylov previously served as "Adviser of the Executive Secretary of the Ministry of Justice" of the ROK (i.e., Beketayev's adviser) before joining BTA. (*See, e.g.*, Ex. 36 at 5).

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

---

[7] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████.[8]

Almaty/BTA try to explain away the ROK's glaringly inconsistent treatment of the Bourg/Foucher interrogation minutes ███████████████████ by suggesting that "finalized witness statements" should be subject to greater protection. (ECF 1118 at 23). But that argument fails, where the ROK have already produced the drafts, which would presumably be of greater interest to protect. There is simply no reason for the ROK to refuse to provide finalized witness statements signed by the witnesses where those statements could be protected under this Court's confidentiality order—***unless*** they are harmful to Almaty/BTA's position.[9]

Lastly, Almaty/BTA ludicrously suggest that there is no reason to treat the ROK differently from the U.S. government. (ECF 1118 at 23). The U.S. government and human rights watchdogs have found that the ROK is run almost exclusively by the president and is rife with corruption.

---

[8] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████. Almaty/BTA also admit that relations with Monstrey have continued to deteriorate, (ECF 1118 at 7 n.5), but fail to share that ███████████████████████████████████████████████
██████████████████████████████████████████.

[9] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████.

(*See, e.g.*, ECF 1080-28; 1080-29). ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████.

V.  **Almaty/BTA Have Not Offered The SMP Documents "Solely" For Impeachment Purposes And Their Experts Should Not Be Allowed To Rely On Precluded Material**

The SMP Documents are not, and cannot be considered, impeachment evidence, (ECF 1079 at 25 n. 17), as Almaty/BTA's own argument—seeking to use the SMP Documents as impeachment material *and* for their affirmative experts, (ECF 1118 at 24-25)—confirms. Rules 26(a)(1)(A)(ii) and 26(a)(3)(A) shields from disclosure only evidence that may be used at trial "solely for impeachment." Having already provided the SMP Documents to their experts for use in affirmative reports, Almaty/BTA should not be heard to argue that those documents will be used "solely for impeachment."[10] And while experts generally may rely on *inadmissible* evidence, Almaty/BTA ask the Court to allow their experts to rely on *precluded* evidence in circumvention of a sanction for their own misconduct. But that is improper; where the Court precludes evidence under Rule 37 or its inherent authority, such preclusion can and should extend to the target party's experts. (*See, e.g.*, ECF 1079 at 23 (citing *Apple, Inc.*, 2012 WL 3155574, at *5; ECF 910 at 2 (citing same)). To hold otherwise would reward Almaty/BTA for their discovery misconduct.

Finally, while Triadou has carried its burden to preclude the SMP Documents, it does not object to an evidentiary hearing. If the Court so orders, Triadou respectfully requests that the Court require BTA to produce Nurgabylov as a witness, ███████████████████████████████.

## CONCLUSION

For the reasons set forth above and in Triadou's opening motion, the Court should preclude the SMP Documents and award Triadou its costs for this motion.

---

[10] Triadou has not argued that impeachment evidence is limited only to evidence that a party creates for impeachment purposes. (*See* ECF 1118 at 25). Rather, Triadou merely explained that Almaty/BTA's cited cases do not support the claim that the SMP Documents are properly considered impeachment materials, (*see* ECF 1079 at 25 n.17).

Dated: New York, New York
       July 25, 2019

Respectfully submitted,

**BLANK ROME LLP**

By:   *s/ Deborah A. Skakel*
         Deborah A. Skakel
         Alex E. Hassid
         Robyn L. Michaelson
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
dskakel@blankrome.com
ahassid@blankrome.com
rmichaelson@blankrome.com

*Counsel for Crossclaim Defendant Triadou SPV S.A.*