UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN,
and BTA BANK JSC,

     Plaintiffs,

     v.

MUKHTAR ABLYAZOV, ILYAS
KHRAPUNOV, VIKTOR KHRAPUNOV, and
TRIADOU SPV S.A.,

     Defendants.

No. 15 Civ. 5345 (AJN) (KHP)

## MUKHTAR ABLYAZOV'S OBJECTIONS TO HONOURABLE JUDGE PARKER'S OPINION & ORDER & REPORT & RECOMMENDATION DATED JULY 3, 2019, AND TO OPINION ADDRESSING MOTION FOR RECONSIDERATION OF REPORT & RECOMMENDATION DATED JULY 15, 2019



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8-1-19

MUKHTAR ABLYAZOV
As Pro Se Defendant
France

I, the undersigned, defendant Mukhtar Ablyazov ("Ablyazov"), as a Pro Se defendant, submit these objections to the July 3rd Opinion & Order & Report & Recommendation of Magistrate Judge Katharine H. Parker granting Plaintiffs' motion for sanctions against me ("July 3 Opinion"), and against the July 15th Opinion of Magistrate Judge Katharine H. Parker rejecting my motion for Reconsideration ("July 15 Opinion")(jointly the "Opinions").

## INTRODUCTION

Plaintiffs, the City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA Bank") (collectively, the "Kazakh Entities") have moved pursuant to Federal Rule of Civil Procedure 37 ("Rule 37") for sanctions against me for failure to comply with discovery obligations. On 28th January 2019 I filed my Memorandum of Law in Opposition to the Kazakh Entities' Motion for Sanctions ("Opposition")(ECF 949). On July 3rd, 2019 Judge Parker issued her July 3 Opinion, in which she accepted all allegations made by the Plaintiffs without reading my Opposition at all. I then submitted a letter for reconsideration of the July 3 Opinion on the basis that Judge Parker had overlooked my Opposition (ECF 1104). Judge Parker then issued her July 15 Opinion, in which she corrected several sentences from the July 3 Opinion that were objectively erroneous, but otherwise left her findings and recommendations unchanged.

I respectfully submit to this Court that Judge Parker has made several substantial errors of both fact and law in her Opinions. Judge Parker has taken as true many conclusory statements made by the Plaintiffs, which are deliberately misleading and factually incorrect. Judge Parker has also either misunderstood or overlooked several major factual elements in my Opposition. When viewed fully and fairly, the record shows that I have not failed in my obligation to participate in the discovery process or to comply with the Court's orders. Therefore, Judge Parker has erred in her conclusions in the Opinions and has erred in ordering harsh sanctions against me.

## LEGAL STANDARD

I understand that since pro se parties are considered at a disadvantage when facing a party represented by counsel, various state and federal rules advocate treating self-represented litigants with greater accommodation than parties with professional representation. I feel that I have not been afforded such treatment by Magistrate Judge Parker, who has expected of me the same level of legal research and reference to case law as would be expected from a law firm. I hope that this Court will accommodate any mistakes I may make in the structure or formatting of my objections, and will allow me to cure any deficiencies, if it finds them.

I further understand that the district judge can set aside a magistrate judge's order if it is "clearly erroneous or is contrary to law." I respectfully submit that this is the case here.

## ARGUMENT

1. **Ablyazov did not resist deposition in France. Delays caused entirely by Kazakh Entities**

In her 3 July Opinion, Judge Parker considers my alleged resistance to be deposed in France as a major factor for awarding monetary sanctions against me. In the July 15 Opinion Judge Parker finds that:

> Ablyazov argues that he did not try to resist his deposition in France. The argument is specious, as evidenced by the fact that his deposition was noticed in December of 2016, around the time he was released from prison (Doc. No. 949,1), and that, as of August of 2017, he had not consented to comply with the request. This necessitated motion practice to compel his attendance at a deposition.

This assessment is clearly erroneous because it ignores facts on the record, ignores contrary admissions by the Plaintiffs, ignores orders made by Judge Parker herself and ignores information in my brief in opposition to the Plaintiffs' sanctions motion (ECF 949).

Plaintiffs themselves admit that they first noticed my deposition on my then-counsel on 30 December 2016. Plaintiffs do not contest that my then-counsel responded in a timely manner that I could not travel for a deposition in New York, and that Plaintiffs would need to depose me in France pursuant to the Hague Convention (ECF 399). Notably, Plaintiffs took no steps to challenge these objections, thereby consenting that France was the proper venue for the deposition. In fact, Judge Parker herself agreed, stating that "while this Court previously declined to order Ablyazov to travel to the U.S. for his deposition, the Court did so because Ablyazov consented to sitting for a deposition in France [and] there appears to be no impediment to Plaintiffs proceeding with a deposition in France" (ECF No. 420, at 2).

However, Plaintiffs did not allow facts to deter them from making substantial misrepresentations in their sanctions motion. For example, Plaintiffs argued that the delay in scheduling my deposition in France was caused by my refusal to consent (ECF 399, page 3). This is patently untrue. The delay was in fact caused by the inaction of the Plaintiffs themselves. For months after receipt of my objection to their 30 Dec 2016 notice, the Plaintiffs took no action whatsoever to schedule my deposition in France via the Hague Convention. In fact, the Plaintiffs only sent the Hague deposition request for signature by this Court on 25th July 2017.

Just a week later, on 1st August 2017, my then-counsel Kobre & Kim informed the Plaintiffs that "Mr. Ablyazov has informed us that while he expects to consent to a deposition in France through The Hague Convention, he would like to confer with new counsel (once retained) before he formally consents to do so" (See ECF 386). On 8th August 2017, Judge Parker made an Order to grant Kobre & Kim's motion to withdraw as my counsel (See ECF 386-1). However, this order set no deadline for when I had to confirm my consent to be deposed in France. Given that the Plaintiffs had taken a voluntary half-year hiatus in scheduling my deposition, I interpreted Judge Parker's order as allowing me at least a month to answer fully once I could consult with my new counsel. It should be noted, that the Plaintiffs never challenged Judge Parker's order or asked her to set a deadline.

In the course of August 2017, counsel for the Plaintiffs sent several letters address to me and I responded through my lawyer Peter Sahlas (attached as exhibits 1-5). These letters clearly demonstrated two things. First, that I was actively participating in a reasonable discussion about the scheduling of my deposition. Second, that there were objective reasons why I could not sit for a deposition anywhere outside France because I have filed an application for political asylum in France and surrendered all my travel documents, making it impossible to legally

leave the country. Crucially, in none of these letters did I ever refuse to sit for a deposition in France.

The Plaintiffs disregarded this correspondence and filed a letter motion with Judge Parker to compel my deposition in New York, London or Spain by no later than 13th October 2017. If that application failed, the Court was asked to compel me to formally consent to be deposed in France. In making that motion, the Plaintiffs argue that I have refused so far to such a consent (See ECF 399). That statement was intentionally misleading, as I have conveyed through Kobre & Kim on the August 1st, 2017 (i.e. the same month) that I expected to consent to be deposed in France. I received a copy of Plaintiffs' letter motion on the 31st of August. I immediately proceeded to prepare and send to the Court a response letter through Peter Sahlas. This letter was sent on the 1st of September and in it I asked until 5th of September to answer the letter motion (See Exhibit 6). On the 5th of September, I did answer the Plaintiffs First Interrogatories and gave my formal consent to be deposed in France under Hague Convention (See Exhibit 7).

The above quoted passage from the 15 July Opinion strongly suggests that Judge Parker based her finding that I had resisted my deposition in France *solely* on the mistaken understanding that over 8 months had passed from when the Plaintiffs noticed my deposition to be held in New York (30 Dec 2016) and when I consented to my deposition to be held in France under the Hague Convention (5 Sept 2017). In reality, barely 6 weeks passed from when the Plaintiffs sent a Hague deposition request for signature by this Court on 25th July 2017, and when I consented to sit for the deposition in France on 5th September 2017. I am sure that this Court will agree that a 6-week delay in consenting to a Hague deposition does not warrant sanctions, especially when the Plaintiffs took no action in sending the Hague request for the previous 7 months.[1]

## 2. Ablyazov did not resist or delay his attendance at the deposition in France

In their sanctions motion the Plaintiffs alleged that I resisted or delayed the organisation of my Hague deposition *after* consenting to it on 5th September 2017 and *after* the Hague deposition notice had been signed and sent by this Court. In her 3 July Opinion, Judge Parker appears to accept these allegations, without overtly explaining what evidence she has relied on and without considering my opposition (ECF 949). These conclusions by Judge Parker were clearly erroneous and should be set aside.

When this Court sent the Hague deposition request to France, it did not order me to take any action to advance the service of the Request or the organisation of my deposition. The obligation to take steps to check on the status of the Request and take steps to advance it were on the Plaintiffs. However, just as before, they took no action and have now convinced Judge Parker to sanction me for their own delay.

In December 2017 Plaintiffs asked me for an address in France to which the French authorities can send the Summons. I responded promptly by giving the only constant address that I used, my attorney's in France (See ECF 811-1).

---

[1] All the more so, since this was happening as my US counsel was withdrawing.

On 1st August 2018 the Plaintiffs made a letter motion to Judge Parker (ECF 811). In the letter, the Plaintiffs allege (without any proof) that I have been withholding information about having received a Summons by the Tribunal in France. Neither I, nor my French attorney, had received any such Summons at the time (see ECF 826). In the Order of Judge Parker dated 10th August 2018, I was for the first time asked to take certain steps to advance the deposition in France (See ECF 813). On 13th August 2018, I wrote a letter to the Court indicating that my attorney was on vacation and I asked two weeks' time until he returns to ask him to contact the French Court and to speed up the deposition. It was middle of August and it was customary that the judges and attorneys are on vacation during that time (See ECF 814). On 29th August I wrote to the Court, attaching a letter from my French attorney to me dated 27th August. In the letter, my French attorney confirms that he has contacted the French Court in relation to my Summonst and the Court has not yet received anything at that time. He also said that it did not conform with French law or practice to contact the French Tribunal regarding the advancement of a Hague Request. I also attached a letter that I have finally received from the Tribunal de Grande Instance the Summons to deposed on the 20th September 2018. I asked Judge Parker to confirm that having the deposition on the 20th of September instead of the deadline of the 17th September imposed by her will not be a violation. On 31st of August Judge Parker granted my request (See ECF 826).

As shown above, until 10 August 2018 I had no obligation to take steps to advance the scheduling of my Hague deposition with the French authorities. In fact, doing so would have not conformed with French law. However, as soon as I had been ordered by Judge Parker to take steps to assist, I immediately took all such possible steps, even though it was mid-August and my attorney was away on vacation and so was the French Court. There is absolutely no basis for Judge Parker to have considered that I tried to resist or delay my deposition in France. Whatever motion practice the Plaintiffs engaged in was, in the end, completely unnecessary and the scheduling of the deposition would have proceeded at the same pace (set by French authorities) without this briefing. It is wholly inequitable to sanction me for the procedures and pace of French authorities and French Courts. Especially when I took all necessary steps, even those beyond the requirements of the Hague Convention process.


### 3. Plaintiffs never required Ablyazov's consent for access to the documents from the UK proceedings

In the July 15 Opinion Judge Parker finds that:

> Ablyazov also refused to provide his consent to allow Plaintiffs' attorneys in the United Kingdom ("U.K.") to share documents he filed in the U.K. legal proceedings with Plaintiffs' counsel in the United States.

With respect, Judge Parker's finding is clearly erroneous because it is premised on the assumption that the Plaintiffs required my consent for access to these documents, or that I could obtain these documents myself. Judge Parker accepted (without proof or verification) the conclusory statements made to this effect by Plaintiffs in their sanctions motion. As I have outlined in my opposition brief (see ECF 949), these statements are completely false. The Plaintiffs never required my consent or cooperation to obtain any and all documents which they had an interest in from the UK proceedings.

First of all, BTA's UK counsel has access to absolutely all documents filed or produced in the course of the UK proceedings of BTA against me. BTA's UK counsel even managed to have access to some privileged correspondence between me and my UK lawyers. BTA have always been permitted to show any of these documents to their US counsel. The only restriction is that BSF would not be allowed to use any such documents in the present action without seeking permission from the UK Court.

Second, and crucial, BTA's counsel could have easily made an application to the UK Courts and requested the use of some or all of the UK documents in the present case. As I explained to Judge Parker in my opposition brief (ECF 949, page 4), BTA have already done this in another case in the US. On 5th of August 2016 BTA applied to the UK Court asking documents that are part of the UK proceedings to be used in the Virginia case against my sister. Without my consent and with opposition from a third party the Judge granted their order just 10 days later or 15th August 2016 (see Exhibit 8 and 9). Both the Application and Order confirm the fact that such a restriction as I mentioned does exist and the Judges authorization is required.[2]

Third, I could not make an application to the UK Court to release documents from UK proceedings for use in the present matter. I am in default of a "costs order" issued against me by the UK courts in May 2013. Upon my release from prison, I had no funds to either pay this costs order or hire UK counsel to make the application to the Court for release of the documents, because all of my assets were frozen, and a receivership was put over them. In such circumstances, the UK Court would not accept any request from me.

In her 3 July Opinion, Judge Parker points out that "prejudice to the party seeking sanctions may also be a significant consideration" *See Southern New England Tel. Co.*, 624 F.3d at 148–49 (movant suffered prejudice where it was deprived of evidence). In addition to everything stated above, this factor weighs heavily against imposing sanctions on me. As the application for the use of documents in the Virginia case clearly show, the Plaintiffs could have easily obtained any documents from the UK proceedings for use in the present case. The fact that the Plaintiffs made no effort during the 2+ years of discovery in this matter to request any of the documents from the UK proceedings proves that they saw no need for these documents in the present matter. Consequently, Plaintiffs cannot claim to have suffered any prejudice from the absence of these documents in the present matter.

In the end, Judge Parker erred in sanctioning me for failing to produce documents to which the Plaintiffs had easy access. Judge Parker also failed to consider that the Plaintiffs had clearly attempted to mislead her in claiming that they required my consent to obtain documents from the UK, while being perfectly aware (from their own actions in 2016) that they could obtain these documents without my consent. The Court should not countenance such obvious gamesmanship.

### 4. Ablyazov did not fail to produce documents ordered by the Court

In the July 3 Opinion Judge Parker finds that:

---

[2] It appears that Judge Parker did not take this important information into account when making her 15 July Opinion.

Plaintiffs' first request for documents, served in August 2016, requested documents concerning, among other things: Ablyazov's ownership and position as Chairman of BTA Bank; documents produced in the U.K. Proceedings regarding his assets; documents pertaining to his and his business's interactions with FBME Bank, which facilitated relevant wire transfers; and documents pertaining to a purported loan to Gennady Petelin. (Doc. No. 921-4; see also Doc. No. 919-10,182:04-183:05.) Ablyazov ignored these requests. Plaintiffs ultimately moved to compel Ablyazov to produce documents in August 2018. (Doc. No. 811.) Ablyazov failed to timely respond to the Motion and this Court ordered him to produce responsive documents. (Doc. No. 813.) However, instead of producing documents in compliance with this Court's Order, Ablyazov moved for reconsideration. (Doc. No. 814.) Although that Motion was denied, Ablyazov still failed to produce any documents. (Doc. No. 816)."

As a starting matter, with all due respect to Judge Parker, several of her findings are objectively factually incorrect:

> First, Plaintiffs have served their First Request for Documents on me on 26[th] August 2016. At the time, the parties in this case were discussing a protective order. Nevertheless, I responded to this document request through my counsel at the time on 6[th] October 2016 (See Exhibit 10). Therefore, Judge Parker has erred in finding that I "ignored those requests".

> Second, Judge Parker erred in finding that I "failed to produce any documents". After my US counsel (Kobre & Kim) withdrew from the case, I made every possible effort to continue participating in this action efficiently. I asked my French lawyer, Peter Sahlas (who is admitted to the bar in New York) to act as a channel of communication with the Court. Through him I produced a number of documents (for example my Judgement of Conseil d'Etat). However, the Plaintiffs decided to take every step to make my participation in this case as a Pro Se defendants as difficult as possible, no doubt to then use my ineffective communication as a basis for sanctions against me. The Plaintiffs convinced Judge Parker to deny me the use of Peter Sahlas as a person to convey my correspondence with Plaintiffs and the Court and struck off from the record whatever documents I had already produced through Sahlas (See ECF 469). I am now being sanctioned for failing to produce documents which the Plaintiffs have themselves asked to be struck from the record.

More generally, Judge Parker's logic in sanctioning me for failing to produce documents pursuant to her orders rests on the conclusion that I had responsive documents in my custody or control. The July 15 Opinion shows that in reaching this conclusion, Judge Parker took no note of my explanation that I simply had no documents to produce (ECF 949). I left the UK in beginning of 2012 to avoid being assassinated. Such a departure did not allow for an orderly packing of documents. Thereafter, I had to move around constantly for fear of being kidnapped or assassinated by the Nazarbayev regime. In July 2013 I was arrested in France. I was taken in what clothes I had on me, and I certainly had no chance to pack or save anything. At this time I lost access to the few documents I still had with me. I was then kept imprisoned in isolation for over 3 years, despite not being found guilty of any crime. I ask this Court to consider how reasonable is it to expect that someone who had to go through all of this should nevertheless maintain an orderly archive of documents? Where do the Plaintiffs presume I would have kept these "archives"? In my cell?

The Plaintiffs will no doubt argue that it was my discovery obligation, upon release from prison, to reach out to former employees, partners and colleagues in order to obtain those documents which the Plaintiffs were requesting of me in discovery. First of all, such an argument would fundamentally misapply the discovery standard, under which I can only be ordered to produce those documents which are in my custody and control. Second, whilst I was in the French prison, the Nazarbayev regime was applying enormous pressure on everyone that was close to me, especially those who were involved with BTA Bank, whilst I worked there.[3] Many of my ex-colleagues feared being targeted by Kazakhstan and extradited back to face torture if they cooperated with me in any way. As a result, I lost ties to people who may have had some information or documents about my previous activity.

### 5. Ablyazov's refusal to name close associates is justified

In the July 15 Opinion Judge Parker finds that:

> Ablyazov explains that he refused to provide the names of certain individuals who could be witnesses because they would be faced with risk of torture and detention in Kazakh prison if their names became public. This explanation is inadequate. As Ablyazov well knows, this case deals with voluminous amounts of sensitive information that has been kept out of the public record pursuant to this Court's Protective Order. To the extent Ablyazov had concerns about disclosing these names, he could have designated them Confidential or sought a separate protective order.

I am puzzled as to why Judge Parker considers that the physical safety, and very lives, of these individuals can be risked in order to advance a civil suit. I suspect that Judge Parker considered my explanations to be overdramatic or paranoid. I respectfully submit that this Court should consider the numerous reports on human rights abuses and corruption of the judiciary in Kazakhstan, including those from the U.S. Department of State. I also respectfully suggest that if the Court does not believe my word on these matters, it may give more credit to the opinion of 17 United States Senators[4] who have issued an open letter to the Kazakh regime just a few days ago (Exhibit 11). This letter makes clear what happens to people who are seen as being even tangentially linked to me. There is only one reason why the Plaintiffs have requested me to name these individuals. They wish to detain them, strip them of assets, torture them and force them to sign false allegations against me. No Protective Order would matter or deter such actions. I respectfully submit that protecting people's lives is not a sanctionable offense.

## CONCLUSION

For the reasons explained above, Mukhtar Ablyazov respectfully requests that the Court set aside the Magistrate Judge's order directing Ablyazov to pay Plaintiffs' attorneys' fees and costs associated with the various motions to compel discovery responses from Ablyazov and his appearance at a deposition, as well as the fees and costs associated with Plaintiffs' Motion for Sanctions. Mukhtar Ablyazov also respectfully requests that the Court rejects the Magistrate Judge's recommendation that Ablyazov be precluded from offering or referring to any

---

[3] https://en.odfoundation.eu/a/8092,report-kazakhstan-pursues-former-top-managers-of-bta-bank-in-order-to-obtain-their-testimonies-against-mukhtar-ablyazov
[4] Including Senators Rubio and Sanders

documents that he did not produce in discovery in opposition to any dispositive motion or at trial.

Dated: France
August 1, 2019

Mukhtar Ablyazov

# Exhibit 1



MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

August 21, 2017

**BY E-MAIL**

Mukhtar Ablyazov
c/o Jonathan Cogan
Kobre & Kim
800 3rd Avenue
New York, NY 10022
Jonathan.cogan@kobrekim.com

     Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
               *Case No. 15 Civ. 5345 (AJN) (KHP)*

Dear Mr. Ablyazov:

      We represent the City of Almaty and BTA Bank (the "Kazakh Entities" or "Plaintiffs"). We write to request your availability to sit for a deposition in the above captioned lawsuit in New York, London, or Spain. Please let us know when you are available to sit in one of those locations before September 30, 2017.

      If you do not provide us with a date and place for your deposition by Friday, August 25, we will move the court to compel your deposition.

      We have included a translation of this letter into Russian, but do not intend to translate all correspondence or pleadings to assist you in acting as your own attorney.

      Thank you for your prompt reply.

                      Regards,

                      /s/ Matthew L. Schwartz
                      Matthew L. Schwartz

# Exhibit 2

August 24, 2017

Matthew L. Schwartz
Boies Schiller Flexner LLP
575 Lexington Avenue
New York, NY 10022
E-mail: mlschwartz@bsfllp.com

c/o Jonathan Cogan
Kobre & Kim LLP
800 3rd Avenue
New York, NY 10022
E-mail : jonathan.cogan@kobrekim.com

Re:     **City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,**
        **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Mr. Schwartz,

I have been asked by Mr. Mukhtar Ablyazov to reply to your letter of August 21, 2017, regarding his availability to sit in New York, London or Spain for a deposition in the above-referenced lawsuit.

Mr. Ablyazov resides in France and has an application pending there for permanent residency based on political asylum. He is legally obliged to remain in France pending the processing of this application. He has been issued a temporary residency permit, but he does not have a passport, and cannot obtain one, or any form of travel document, until his application has been processed. I have been advised that the processing time for Mr. Ablyazov's application can stretch well into 2018.

Therefore, it is currently legally impossible for Mr. Ablyazov to sit for a deposition outside France.

Please be advised that I am serving as an intermediary as a courtesy to Mr. Ablyazov and your firm, and I do not represent him in the above-referenced lawsuit, nor as a service agent.

Best regards,

P. Sll.

Peter J. Sahlas
Attorney & Counselor at Law (New York)

# Exhibit 3



August 28, 2017

Matthew L. Schwartz
Boies Schiller Flexner LLP
575 Lexington Avenue
New York, NY 10022
E-mail: mischwartz@bsfllp.com

c/o Jonathan Cogan
Kobre & Kim LLP
800 3rd Avenue
New York, NY 10022
E-mail : jonathan.cogan@kobrekim.com

Re:     City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,
        Case No. 15 Civ. 5345 (AJN) (KHP)

Dear Mr. Schwartz,

I write in response to your letter of August 24, 2017.

Pursuant to France's *Code de l'entrée et du séjour des étrangers et du droit d'asile*, Mr. Ablyazov was required to surrender any travel documents in his possession at the outset of his application to reside in France as a refugee. A temporary residency permit that has been issued to him is not a travel document that he could use to leave the country or return. The restriction on travel outside France includes Spain, which is a part of the Schengen Area, and all other Schengen Area countries, irrespective of the fact that there are no systematic border controls between France and those countries.

Mr. Ablyazov has demonstrated that Kazakhstan is the persecuting state from which he seeks France's protection pursuant to the United Nations Convention relating to the Status of Refugees. Mr. Ablyazov's rights under international laws of political asylum grant him protections from the persecuting state, of which your clients appear to be an organ and instrumentality. Before providing additional details about Mr. Ablyazov's status in France, he would therefore seek an agreement on how your firm and your clients would deal with protected information.

Please be reminded that I do not represent Mr. Ablyazov in the above-referenced lawsuit, or as a service agent. I am merely acting as an intermediary with you, as he continues to seek legal counsel.

Best regards,

P. Sll

Peter J. Sahlas
Attorney & Counselor at Law (New York)

Peter J. Sahlas
10, place Vendome
75001 Paris

# Exhibit 4



MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

August 28, 2017

BY E-MAIL

Mukhtar Ablyazov
Peter J. Sahlas
c/o Jonathan Cogan
Kobre & Kim
800 3rd Avenue
New York, NY 10022
Jonathan.cogan@kobrekim.com

Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
Case No. 15 Civ. 5345 (AJN) (KHP)

Dear Messrs. Ablyazov and Sahlas:

We represent the City of Almaty and BTA Bank. We write in response to Mr. Sahlas's letter of today, which responded to our letter of August 24, 2017.

In that letter, Mr. Sahlas states that before Mr. Ablyazov will disclose information regarding his legal status in France, he seeks an agreement on the protection of this information. In response, we have attached the Court-ordered protective order in this case [ECF No. 253], which was agreed to by Mr. Ablyazov on November 25, 2016, and governs the treatment of confidential information in this action. We presume that Mr. Ablyazov is familiar with this order and has been obeying it throughout the course of the litigation.

In addition, we note that under Section 6(b), confidential information in this action may only be disclosed to counsel "retained specifically for this action." Based upon Mr. Sahlas' repeated representations that he does not represent Mr. Ablyazov in this action, we ask that Mr. Ablyazov and Mr. Sahlas confirm that Mr. Sahlas has not been given access to any information designated as confidential in this action.

Regards,

/s/ Matthew L. Schwartz
Matthew L. Schwartz

# Exhibit 5



August 29, 2017

Matthew L. Schwartz
Boies Schiller Flexner LLP
575 Lexington Avenue
New York, NY 10022
E-mail: mlschwartz@bsfllp.com

c/o Jonathan Cogan
Kobre & Kim LLP
800 3rd Avenue
New York, NY 10022
E-mail : jonathan.cogan@kobrekim.com

Re:     **City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,**
        **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Mr. Schwartz,

In response to your letter of August 28, 2017, i confirm that i have not been given access to any information designated as confidential in the above-referenced action.

Best regards,

*P.Sll*

Peter J. Sahlas
Attorney & Counselor at Law (New York)

# Exhibit 6



September 1, 2017

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

c/o Jonathan Cogan
Kobre & Kim LLP
800 3rd Avenue
New York, NY 10022
E-mail : jonathan.cogan@kobrekim.com

Re:     **City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,**
        **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker,

I am writing on behalf of Mr. Mukhtar Ablyazov regarding the above-referenced matter.

Mr. Ablyazov asked me to inform you that he wishes to reply to the motion filed by Boies Schiller Flexner on Wednesday, August 29, 2017. He became aware of this motion only yesterday, Thursday, August 31, 2017, and he requests until Tuesday, September 5, 2017 to send his communication to you. Please note that he is currently unrepresented in this matter, and, because he does not understand English, he requests this time for translations from English to Russian, and back to English.

He wishes to emphasize that he is seeking a mutually workable solution and notes that there is at least one factual error in the Boies Schiller Flexner motion that must be corrected.

Please be advised that I am serving as an intermediary as a courtesy to Boies Schiller Flexner and the court, and I do not represent Mr. Ablyazov in the above-referenced lawsuit.

Respectfully,

P. Sll.

Peter J. Sahlas
Attorney & Counselor at Law (New York)


Peter J. Sahlas
10, place Vendôme
75001 Paris

# Exhibit 7



September 5, 2017

Honorable Katherine H. Parker
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re:     City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,
        Case No. 15 Civ. 5345 (AJN) (KHP)

Dear Judge Parker,

Following upon my letter of September 1, 2017, I write again on behalf of Mr. Mukhtar Ablyazov regarding the above-referenced matter.

Mr. Ablyazov is still unrepresented by any attorney in this matter, and he faces the additional challenge of a language barrier because he is not fluent in English. In these circumstances I have agreed to relay the following information to you on his behalf:

**1.  Voluntary Agreement to be Deposed Under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters**

Mr. Ablyazov declares that he voluntary agrees to be deposed in France pursuant to a request for international judicial assistance under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. He understands that he cannot be subjected to any coercive measures, that he cannot be forced to participate or to appear, and that he has the right to invoke any exemption or prohibition to give evidence provided by the laws of France or of the United States of America.[1]

**2.  Response to Crossclaim-Plaintiffs' First Set of Interrogatories to Defendant Mukhtar Ablyazov**

Please find attached Mr. Ablyazov's response to the Crossclaim Plaintiffs' First Interrogatories of Mukhtar Ablyazov, served on counsel of record for Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov and Triadou SPV S.A., on June 29, 2017.[2]

**3.  Factual Error in Motion Filed by Boies Schiller Flexner on August 29, 2017**

The Boies Schiller Flexner motion of August 29, 2017 states at page 3 that the French Interior Ministry's "Guide for Asylum Seekers in France" at Section 7.5, describes, in Boies Schiller Flexner's words, "how stateless asylum seekers holding a temporary residence permit may obtain temporary travel documents, so long as they do not travel to their country of origin".

---

[1] Exhibit 1.
[2] Exhibit 2.

Peter J. Sahlas
10, place Vendôme
75001 Paris



Mr. Ablyazov insists that this is incorrect. Section 7 of that document is entitled: "The rights of beneficiaries of protection". This clearly means that Section 7.5, "Travelling abroad", applies not to asylum _seekers_, as stated by Boies Schiller Flexner, but rather to individuals _who have been granted protection_ in France under the United Nations Convention Relating to the Status of Refugees (either asylum or subsidiary protection). The French authorities must approve Mr. Ablyazov's application for the recognition of his right to such protection in France, and the permanent residency permit associated with it, before he can avail himself of the possibility to travel abroad.

As stated in my letter of August 28, 2017 to Boies Schiller Flexner (Exhibit 5 of the Boies Schiller Flexner motion of August 29, 2017), pursuant to France's _Code de l'entrée et du séjour des étrangers et du droit d'asile_, Mr. Ablyazov was required to surrender any travel documents in his possession at the outset of his application to reside in France as a refugee. The temporary residency permit that has been issued to him is not a travel document that he could use to leave the country or return. The restriction on travel outside France includes Spain, which is a part of the Schengen Area, and all other Schengen Area countries, irrespective of the fact that there are no systematic border controls between France and those countries.

## 4. Confidentiality of Asylum Matters

As also stated in my letter of August 28, 2017 to Boies Schiller Flexner (Exhibit 5 of the Boies Schiller Flexner motion of August 29, 2017), Mr. Ablyazov has demonstrated that the Republic of Kazakhstan is the persecuting state from which he seeks France's protection pursuant to the United Nations Convention Relating to the Status of Refugees.[3]

---

[3] Most recently, on July 10, 2017, following an application from Mr. Ablyazov, INTERPOL cancelled Red Notices that had been issued against Mr. Ablyazov at the request of Kazakhstan, Ukraine and Russia based upon allegations of harm to BTA Bank. The basis for cancellation of these Red Notices was non-compliance with INTERPOL's rules on _political abuses_ of the organization.

Previously, on December 9, 2016, France's supreme administrative court – the _Conseil d'État_ – halted Mr. Ablyazov's extradition to Russia after almost three and a half years of extradition proceedings, during which Mr. Ablyazov had remained in detention. The decision of December 9, 2016, which is final and not subject to appeal, stated the following regarding the BTA Bank-related allegations that were the basis of the extradition case:

> …Whereas, **by virtue of a fundamental principle recognised by the laws of the Republic, the State shall refuse the extradition of a foreigner when it is requested for a political purpose**; whereas, according to Article 3 (§2) of the European Convention on Extradition, **extradition shall not be granted** _**"if the requested Party has substantial grounds for believing that a request for extradition for an ordinary criminal offence has been made for the purpose of prosecuting or punishing a person on account of his** race, religion, nationality or **political opinion, or that that person's position may be prejudiced for any of these reasons"**…_

> …**the evidence brought forth shows that the Kazakh authorities, who had previously pressured the Ukrainian authorities to request the extradition of Mr Ablyazov sought to pressure Russia to initiate criminal prosecution against Mr Ablyazov and pressure the Russian authorities to request the applicant's extradition to Russia**; that it is also clear from the evidence brought forth that the extradition procedure was monitored by the Kazakh authorities and was the subject of repeated exchanges between the Russian and Kazakh authorities during the investigation; **whereas all circumstances in this case show clearly that Mr Ablyazov's extradition to Russia was sought for a political purpose; therefore, such extradition could not be lawfully granted**… [Emphasis added]

Mr. Ablyazov's case was considered by a fifteen-judge panel of a chamber of France's supreme administrative court that is reserved for cases deemed to be of extraordinary importance. In proceedings that ran for over a year (from November 2015 to December 2016), France's supreme administrative court therefore concluded that Kazakhstan, Ukraine and Russia had acted in concert seeking to prosecute Mr. Ablyazov for a _political purpose_. See Exhibit 3: English translation and French original of the _Conseil d'État_ decision of December 9, 2016.

Mr. Ablyazov's rights under international laws of political asylum grant him protections from the persecuting state, of which the so-called "Kazakh Entities" (Crossclaim Plaintiffs City of Almaty, Kazakhstan and BTA Bank JSC), are very arguably an organ and instrumentality.

Asylum-related applications are confidential processes between an applicant and the country where the applicant is seeking refuge. There are serious reasons to be cautious about the porousness of the lines between the "Kazakh Entities" and the Republic of Kazakhstan itself.

Before providing additional details about his status in France, Mr. Ablyazov posits that it is therefore important for the parties and/or the Court to determine how Boies Schiller Flexner and the "Kazakh Entities" are to deal with information that Mr. Ablyazov may be entitled to have withheld from the persecuting state, namely the Republic of Kazakhstan, specifically related to Mr. Ablyazov's status in France.

### 5. Possible Ulterior Purposes of Crossclaim Defendants

Mr. Ablyazov respectfully wishes to underline that he is making every effort to participate meaningfully in these proceedings, in what are very challenging circumstances.

Further to his argument, accepted among others by France's supreme administrative court and by INTERPOL, that the Republic of Kazakhstan is using BTA Bank-related claims against him as a pretext for predominantly political purposes, he wishes to underline to this Court that he is suspicious of the Crossclaim Defendants' choices of Spain and the United Kingdom as possible venues for a deposition. Mr. Ablyazov argues that the Crossclaim Defendants must know that both Spain and the United Kingdom are countries with which the Republic of Kazakhstan either has concluded or has been working on concluding bilateral extradition agreements, and that if Mr. Ablyazov visits either country for a deposition, there is a serious risk that he will be detained for extradition pursuant to a request from the Republic of Kazakhstan, irrespective of the cancellation by INTERPOL of the Red Notices against him. The serious risk that Mr. Ablyazov could spend several more years in detention, repeating the process that he just went through in France, must be balanced against the Crossclaim Defendants' purposes in deposing Mr. Ablyazov in either of those two countries, even if he was able to travel outside France.

Mr. Ablyazov therefore submits that the Crossclaim Defendants are themselves not following Your Honor's guidance that the parties be practical and work in tandem on discovery.

I reiterate that I am serving as an intermediary as a courtesy to the parties and the Court, and I do not represent Mr. Ablyazov in the above-referenced lawsuit.

Respectfully,

P. Sll.

Peter J. Sahlas
Attorney & Counselor at Law (New York)

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC, | |
| Crossclaim Plaintiffs, | |
| -against- | No. 15-CV-05345 (AJN) (KHP) |
| MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A., | |
| Crossclaim Defendants. | |

## DECLARATION OF MUKHTAR ABLYAZOV

I, Mukhtar Ablyazov, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I submit this declaration in connection with the request by the plaintiffs for international judicial assistance in the above-captioned case under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

2. I voluntarily agree to be deposed under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters in connection with the above-captioned case, and know that I cannot be subjected to any coercive measures, that I cannot be forced to participate or to appear, and that I have the right to invoke any exemption or prohibition to give evidence provided for by the laws of France or of the United States of America.

3. This declaration was translated to me in its entirety in the Russian language and I thereafter authorized the insertion of my scanned signature below.

Dated: September 4, 2017

_Ablyazov_

Mukhtar Ablyazov

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

Crossclaim Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV,
ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

Crossclaim Defendants.

No. 15-CV-05345 (AJN) (KHP)

---

## DEFENDANT MUKHTAR ABLYAZOV'S RESPONSE TO CROSSCLAIM-PLAINTIFFS' FIRST SET OF INTERROGATORIES

I, Mukhtar Ablyazov, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

### Response to Interrogatory No. 1

I do not have, and have never had, any kind of legal, financial, advisory, consultancy or business relationship, whether formal or informal, with Mr. Peter Sztyk. No documents exist that would reflect any such relationship.

### Response to Interrogatory No. 2

Botagoz Dzhardemali worked at BTA Bank in the role of Managing Director between 2005 and 2009. Following the illegal nationalization of BTA Bank, she provided assistance from time to time to my legal team on a *pro bono* basis. This was done without any contract or agreement, and pertained mostly to political issues in Kazakhstan, matters of extradition, asylum applications, the cancellation of INTERPOL Red Notices, and human rights issues in

general. Ms. Dzhardemali continues to this day to do such work on a *pro bono* basis. I have no documents reflecting this informal relationship.

This document was translated to me in its entirety in the Russian language and I thereafter authorized the insertion of my scanned signature below.

Dated: September 4, 2017

_____
Mukhtar Ablyazov

EXHIBIT 3

# THE FRENCH *CONSEIL D'ETAT* (COUNCIL OF STATE)
in a final decision

N° 394399, 400239

Mr ABLYAZOV

Mr Clement Malverti
Rapporteur

Ms Beatrice Bourgeois-Machureau
Public rapporteur

Session of December 9, 2016

Reading on December 9, 2016

**FRENCH REPUBLIC**

IN THE NAME OF THE PEOPLE

The *Conseil d'Etat* in a final decision
(Claims Department)

On the report of the 2nd Chamber
of the Claims Department

Considering the following procedures:

1° Under ref. N°394399, Mr. Ablyazov filed a summary application, a supplementary brief, a reply brief and three new briefs on November 4, 2015. February 4, May 10, July 5, July 7 and October 21, 2016, requesting that the *Conseil d'Etat* annul a September 17, 2015 decree granting his extradition to the Russian authorities, on the grounds of *ultra vires*.

It sustains that

- the contested decree is vitiated for want of form in that the ampliation which is given to it is not signed by the Prime Minister or by the Minister of Justice, and it has not been established that the original act was signed.

- the contested decree is lacking in comprehension of the specialty principle and the favorable opinion of the examining chamber of the Court of Appeal of Lyon on October 24, 2014;

- the contested decree is vitiated by an error of law and an error of legal qualification when extradition is request for a political aim, in misunderstanding the stipulations of paragraph 2 of Article 3 of the European Extradition Convention of December 13, 1957;

- the contested decree was taken in the misunderstanding of Article 6 of the European Convention for the protection of the fundamental human rights and freedom of December 13, 1957 and the 7° of Article 696-4 of the French Code of Criminal Procedure, in that there are substantial ground to fear that he will not benefit from a fair trial once extradited to Russia;

- the contested decree was taken in the misunderstanding of Articles 2 and 3 of the European Convention for the protection of the fundamental human rights and freedom, of Article 3 of the Convention against torture and other penalties of cruel, inhuman or degrading treatment and Article 3 and 15 of the European Extradition Convention, in that, on the one hand, there are substantial reasons to think that, once extradited to Russia, he will be subject to treatment banned by these texts and, on the other hand, that the guarantees given by the Russian authorities in the matter are insufficient;

- the contested decree was taken in the misunderstanding of Article 3 of the European Convention for the protection of the fundamental human rights and freedom, of Article 3 of the Convention against torture and other penalties of cruel, inhuman or degrading treatment, of Article 18 and 19 of the Chart for fundamental rights of the European Union and Article 33 of the Geneva Convention relative to the status of refugees, in that there are substantial grounds of refoulement to Kazakhstan, the country in which he could be subject to torture and other degrading treatment; that, to rule on these grounds, the *Conseil d'Etat* shall refer to the European Union's Court of Justice a prejudicial question relative to the respective scope of protection from which a refugee or an asylum seeker may benefit in a member State and the protection conferred by Article 3 of the European Convention for the protection of the fundamental human rights and freedom;

- the contested decree is vitiated by an error of law and a violation of the principle of the separation of powers in that it provides that the Russian authorities shall not extradite him to third State without the authorization of the competent French legal authorities, even though in the matter of extradition, the executive is solely competent to take a decision relative to the execution of the specialty principle;

- the contested decree was taken in the misunderstanding of the principle of the ban on inhuman or degrading penalties or treatment taking into account the insufficient character of the guarantee given by Russia that no unconsented work penalty would to given and executed against him;

- the contested decree was taken in the misunderstanding of the second paragraph of Article 1 of the reserves issued by France and Article 8 of the European Convention for the protection of the fundamental human rights and freedom in that his extradition would have the effect of infringing disproportionately on the rights in respect to his private and family life;

- the contested decree was taken on the grounds of a request which does not meet the requirements of Article 12 of the European Extradition Convention and Article 696-8 of the French Code of Criminal Procedure, in the translation of the documents of the procedure present numerous imperfections;

- the contested decree was taken in the misunderstanding of Article 10 of the European Extradition Convention and the 5° of Article 696-4 of the French Code of Criminal Procedure in that certain facts for which extradition was granted are prescribed.

In four defense briefs registered on April 8, June 8, July 29 and November 18, 2016, the Minister of Justice filed a rejection of the petition. He sustained that the grounds raised by the applicant were unfounded.

2° Under ref. N°400239, Mr Ablyazov filed an application, a supplementary brief and a new brief on May 30, July 7 and October 21, 2016, requesting that the *Conseil d'Etat*:

1°) annul the Prime Minister's implied refusal to withdraw the decree of September 17, 2015, granting his extradition to the Russian authorities on the grounds of *ultra vires*;



2°) order the State to pay the sum of 5,000 Euros pursuant to Article L. 761-1 of the French Code of Administrative Justice

It is sustained that:

- the decision refusing to withdraw the decree of September 17, 2015 granting his extradition to the Russian authorities misunderstands Article 6 of the European Convention for the protection of the fundamental human rights and freedom, the reserves issued by France at the signing of the European Extradition Convention of December 13, 1957 and the 7° of Article 696-4 of the French Code of Criminal Procedure, in that, taking into account the conversion of the order by the Constitutional Court of the Russian Federation on July 14, 2015 and the constitutional revision of December 14, 2015, there is substantial cause to fear that he shall not benefit from a fair trial once extradited to Russia;

- the contested decision misunderstands Article 2 and 3 of the European Convention for the protection of the fundamental human rights and freedom and Article 3 of the Convention against torture and other penalties of cruel, inhuman or degrading treatment, in that, on the one hand, there are substantial reasons to think that, once extradited to Russia, he will be subject to treatment banned by these texts and, on the other hand, that the guarantees given by the Russian authorities in the matter are insufficient;

- the contested decision misunderstands the stipulations of paragraph 2 of Article 3 of the European Extradition Convention of December 13, 1957, in that there are substantial reasons to fear that his situation risks to be worsened with the consideration of political opinions.

In two defense briefs registered on, July 29 and November 18, 2016, the Minister of Justice filed a rejection of the petition. He sustained that the grounds raised by the applicant were unfounded.

Given the other supporting documents provided:

Considering :

- The Constitution, including its Preamble;

- The European Convention for the Protection of Human Rights and Fundamental Freedoms;

- The European Convention on Extradition of December 13, 1957;

- The Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment of December 10, 1984;

- The Criminal Code;

- The Code of Criminal Procedure;

- The Code of Administrative Justice;

After hearing in open session:



- A report by Mr. Clément Malverti . "auditeur".


- Conclusions by Ms Béatrice Bourgeois-Machureau, public rapporteur:


   and counsel for Mr Ablyazov from the Waquet, Farge, Hazan, law firm who spoke before and after the conclusions.



   1. Whereas, by decree of September 17, 2015, the Prime Minister granted to the Russian authorities the extradition of Mr. Ablyazov., a Kazakh national, on the basis of an order dated October 7, 2010 by a judge of the Tver District Court demanding his detention in connection with an investigation for acts of fraud and breach of trust on a large scale in an organized group, laundering on a large scale in an organized group, with prior agreement, attempted *ultra vires* by a person in a management position in a trading company with serious consequences and large-scale subtraction by fraud and breach of trust, falsification of official documents with intention to grant a right or release from an obligation in order to conceal another crime; that the applications filed by Mr. Ablyazov request the annulment for excess of power of such decree and implicit refusal to withdraw it; whereas it is necessary to combine those two applications in order to render a single decision;


   2. Whereas, by virtue of a fundamental principle recognized by the laws of the Republic, the State shall refuse the extradition of a foreigner when it is requested for a political purpose; whereas, according to Article 3 (§2) of the European Convention on Extradition, extradition shall not be granted *"if the requested Party has substantial grounds for believing that a request for extradition for an ordinary criminal offence has been made for the purpose of prosecuting or punishing a person on account of his race, religion, nationality or political opinion, or that that person's position may be prejudiced for any of these reasons"* ;


   3. Whereas it appears from the documents brought before this Court that Mr Ablyazov is an opponent of the political regime in Kazakhstan and that he has been recognized as a political refugee by the British authorities to protect him against the risks he would incur in his homeland : that the evidence brought forth shows that the Kazakh authorities, who had previously pressured the Ukrainian authorities to request the extradition of Mr Ablyazov sought to pressure Russia to initiate criminal prosecution against Mr Ablyazov and pressure the Russian authorities to request the applicant's extradition to Russia; that it is also clear from the evidence brought forth that the extradition procedure was monitored by the Kazakh authorities and was the subject of repeated exchanges between the Russian and Kazakh authorities during the investigation; whereas all circumstances in this case show clearly that Mr Ablyazov's extradition to Russia was sought for a political purpose; therefore, such extradition could not be lawfully granted; whereas, without need to further examine the other pleas in the applications, Mr Ablyazov is justified in seeking the annulment, on the grounds of *ultra vires*, of the decree of September 17, 2015 by which the Prime Minister granted his extradition to the Russian authorities and of the PM's implied refusal to withdraw it.

Official Translation
Certified True Copy

4. Whereas there is cause, in the circumstances of the present case, to order the State to pay the sum of € 3,000 to Mr Ablyazov under the provisions of Article L. 761- 1 of the Code of Administrative Justice:

## THE COURT RENDERS THE FOLLOWING DECISION:

-------------------------------------

Article 1: The decree of September 17, 2015 granting the extradition of Mr Mukhtar Ablyazov to the Russian authorities and the implied refusal to withdraw it are annulled.

Article 2: The State shall pay Mr Ablyazov a sum of € 3,000 under Article L. 761-1 of the Code of Administrative Justice.

Article 3: This decision shall be notified to Mr Mukhtar Ablyazov and to the French Minister of Justice.

Deliberated after the session of December 9, 2016 with the following present: Mr Bernard Stirn, President of the Claims Department, presiding; Mr Edmond Honorat, Mr Alain Ménéménis, Mr Rémy Schwartz, deputy Presidents of the Claims Department; Mr Didier Chauvaux, Mr Jacques-Henri Stahl, Mr Jean Courtial, Ms Pascale Fombeur, Mr Denis Piveteau, Mr Guillaume Goulard, Mr Mattias Guyomar, Presidents of Chambers, Ms Célia Vérot, Counselor of State and Mr Clément Malverti, auditeur-rapporteur.

Read at the hearing on December 9, 2016.

Signed by the President: Mr Bernard Stirn

Signed by the rapporteur: Mr Clément Malverti

Signed by the secretary: Ms Nabila Ammar-Khodja

The Republic commands and orders the Minister of Justice, where it concerns him or all bailiffs on this requirement, concerning the rights of common law, to put the present decision to execution.

True certified copy,

Signed by the secretary of the Claims Department, by delegation

**CONSEIL D'ETAT**
statuant
au contentieux

Nos 394399, 400239

_____

M. ABLYAZOV

_____

M. Clément Malverti
Rapporteur

_____

Mme Béatrice Bourgeois-Machureau
Rapporteur public

_____

Séance du 9 décembre 2016
Lecture du 9 décembre 2016

_____

**REPUBLIQUE FRANÇAISE**

**AU NOM DU PEUPLE FRANÇAIS**

Le Conseil d'Etat statuant au contentieux
(Section du contentieux)

Sur le rapport de la 2ème chambre
de la section du contentieux

Vu les procédures suivantes :

1° Sous le n° 394399, par une requête sommaire, un mémoire complémentaire, un mémoire en réplique et trois nouveaux mémoires, enregistrés les 4 novembre 2015, 4 février, 10 mai, 5 juillet, 7 juillet et 21 octobre 2016, M. Mukhtar Ablyazov demande au Conseil d'Etat d'annuler pour excès de pouvoir le décret du 17 septembre 2015 accordant son extradition aux autorités russes.

Il soutient que :
- le décret attaqué est entaché d'un vice de forme dans la mesure où l'ampliation qui lui a été remise n'est pas revêtue de la signature du Premier ministre et de celle de la garde des sceaux, ministre de la justice et qu'il n'est pas établi que l'original de l'acte le soit ;
- le décret attaqué a été pris en méconnaissance du principe de spécialité et de l'avis favorable de la chambre de l'instruction de la cour d'appel de Lyon du 24 octobre 2014 ;
- le décret attaqué est entaché d'erreur de droit et d'erreur de qualification juridique dès lors que l'extradition a été demandée dans un but politique, en méconnaissance des stipulations du paragraphe 2 de l'article 3 de la convention européenne d'extradition du 13 décembre 1957 ;
- le décret attaqué a été pris en méconnaissance de l'article 6 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, des réserves émises par la France lors de la ratification de la convention européenne d'extradition du 13 décembre 1957 et du 7° de l'article 696-4 du code de procédure pénale, dans la mesure où il existe des motifs sérieux de craindre qu'il ne bénéficiera pas, une fois extradé en Russie, d'un procès équitable ;
- le décret attaqué a été pris en méconnaissance des articles 2 et 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, de l'article 3 de la convention contre la torture et autres peines ou traitement cruels, inhumains ou

9C52Sl6H

dégradants et des articles 3 et 15 de la convention européenne d'extradition, dès lors, d'une part, qu'il existe des raisons sérieuses de penser qu'il sera soumis, une fois extradé en Russie, à des traitements prohibés par ces textes et, d'autre part, que les garanties fournies par les autorités russes en la matière sont insuffisantes ;

- le décret attaqué a été pris en méconnaissance de l'article 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, de l'article 3 de la convention contre la torture et autres peines ou traitements cruels, inhumains ou dégradants, des articles 18 et 19 de la Charte des droits fondamentaux de l'Union européenne et de l'article 33 de la convention de Genève relative au statut des réfugiés en ce qu'il existe des motifs sérieux de refoulement vers le Kazakhstan, pays dans lequel il risque d'être soumis à la torture et à d'autres traitements dégradants ; que le Conseil d'Etat doit, pour se prononcer sur ce moyen, renvoyer à la Cour de justice de l'Union européenne une question préjudicielle relative aux portées respectives de la protection dont bénéficie un réfugié ou un demandeur d'asile dans un Etat membre et de la protection conférée par l'article 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales ;

- le décret attaqué est entaché d'une erreur de droit et d'une violation du principe de la séparation des pouvoirs en ce qu'il prévoit que les autorités russes ne l'extraderont pas vers un Etat tiers sans l'autorisation des autorités judiciaires françaises compétentes, alors même qu'en matière d'extradition, l'exécutif est seul compétent pour prendre une décision relative à l'exécution du principe de spécialité ;

- le décret attaqué a été pris en méconnaissance du principe d'interdiction des peines ou traitements inhumains ou dégradants eu égard au caractère insuffisant de la garantie donnée par la Russie qu'aucune peine de travail non consenti ne sera prononcée et exécutée à son encontre ;

- le décret attaqué a été pris en méconnaissance du second alinéa de l'article 1er des réserves émises par la France et de l'article 8 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales en ce que son extradition aurait pour effet de porter une atteinte disproportionnée au droit au respect de sa vie privée et familiale ;

- le décret attaqué a été pris sur la base d'une demande qui ne satisfait pas aux exigences des articles 12 de la convention européenne d'extradition et de l'article 696-8 du code de procédure pénale, dès lors que la traduction des pièces de la procédure présente de nombreuses imperfections ;

- le décret attaqué a été pris en méconnaissance de l'article 10 de la convention européenne d'extradition et du 5° de l'article 696-4 du code de procédure pénale dès lors que certains faits pour lesquels son extradition a été accordée sont prescrits.

Par quatre mémoires en défense, enregistrés les 8 avril, 8 juin, 29 juillet et 18 novembre 2016, le garde des sceaux, ministre de la justice, conclut au rejet de la requête. Il soutient que les moyens soulevés par le requérant ne sont pas fondés.

2° Sous le n° 400239, par une requête, un mémoire complémentaire et un nouveau mémoire, enregistrés les 30 mai, 7 juillet et 21 octobre 2016, M. Ablyazov demande au Conseil d'Etat :

1°) d'annuler pour excès de pouvoir le refus implicite du Premier ministre de retirer le décret du 17 septembre 2015 accordant son extradition aux autorités russes ;

2°) de mettre à la charge de l'Etat la somme de 5 000 euros au titre de l'article L. 761-1 du code de justice administrative.

Il soutient que :

- la décision refusant de retirer le décret du 17 septembre 2015 accordant son extradition aux autorités russes méconnaît l'article 6 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales, les réserves émises par la France lors de la ratification de la convention européenne d'extradition du 13 décembre 1957 et le 7° de l'article 696-4 du code de procédure pénale, dans la mesure où, compte tenu de la novation résultant d'un arrêt de la Cour constitutionnelle de la Fédération de Russie du 14 juillet 2015 et de la révision constitutionnelle du 14 décembre 2015, il existe des motifs sérieux de craindre qu'il ne bénéficiera pas, une fois extradé en Russie, d'un procès équitable ;

- la décision attaquée méconnaît les articles 2 et 3 de la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales et l'article 3 de la convention contre la torture et autres peines ou traitement cruels, inhumains ou dégradants dès lors, d'une part, qu'il existe des raisons sérieuses de penser qu'il sera soumis, une fois extradé en Russie, à des traitements prohibés par ces textes et, d'autre part, que les garanties fournies par les autorités russes en la matière sont insuffisantes ;

- la décision attaquée méconnaît les stipulations du paragraphe 2 de l'article 3 de la convention européenne d'extradition du 13 décembre 1957 dès lors qu'il existe des raisons sérieuses de craindre que sa situation risque d'être aggravée pour des considérations d'opinions politiques.

Par deux mémoires en défense, enregistré les 29 juillet et 18 novembre 2016, le garde des sceaux, ministre de la justice, conclut au rejet de la requête. Il soutient que les moyens soulevés par le requérant ne sont pas fondés.

Vu les autres pièces des dossiers ;

Vu :

- la Constitution, notamment son Préambule ;
- la convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales ;
- la convention européenne d'extradition du 13 décembre 1957 ;
- la convention contre la torture et autres peines ou traitements cruels, inhumains ou dégradants du 10 décembre 1984 ;
- le code pénal ;
- le code de procédure pénale ;
- le code de justice administrative ;

Après avoir entendu en séance publique :

- le rapport de M. Clément Malverti, auditeur,

- les conclusions de Mme Béatrice Bourgeois-Machureau, rapporteur public ;

La parole ayant été donnée, avant et après les conclusions, à la SCP Waquet, Farge, Hazan, avocat de M. Ablyazov ;

1. Considérant que, par décret du 17 septembre 2015, le Premier ministre a accordé aux autorités russes l'extradition de M. Mukhtar Ablyazov, ressortissant kazakh, sur le fondement d'une ordonnance du 7 octobre 2010 d'un juge du tribunal de district de Tver le plaçant en détention dans le cadre d'une enquête pour des faits qualifiés d'escroquerie à vaste échelle par fraude et abus de confiance en groupe organisé, de blanchiment à vaste échelle en groupe organisé, avec entente préalable, de tentative d'abus de pouvoir commise par une personne exerçant la gestion dans une société commerciale ayant entraîné des conséquences graves et soustraction à vaste échelle par fraude et abus de confiance, falsification de documents officiels destinés à accorder un droit ou à libérer d'une obligation en vue de dissimuler un autre crime ; que les requêtes de M. Ablyazov tendent à l'annulation pour excès de pouvoir de ce décret et de la décision implicite refusant de le retirer ; qu'il y a lieu de joindre ces deux requêtes pour statuer par une seule décision ;

2. Considérant qu'en vertu d'un principe fondamental reconnu par les lois de la République, l'Etat doit refuser l'extradition d'un étranger lorsqu'elle est demandée dans un but politique ; que, selon le paragraphe 2 de l'article 3 de la convention européenne d'extradition, l'extradition n'est pas accordée « *si la Partie requise a des raisons sérieuses de croire que la demande d'extradition motivée par une infraction de droit commun a été présentée aux fins de poursuivre ou de punir un individu pour des considérations de race, de religion, de nationalité ou d'opinions politiques ou que la situation de cet individu risque d'être aggravée pour l'une ou l'autre de ces raisons* » ;

3. Considérant qu'il ressort des pièces du dossier que M. Ablyazov est un opposant au régime politique du Kazakhstan et s'est vu reconnaître, en raison des risques qu'il encourt à ce titre, la qualité de réfugié politique à l'égard de ce pays par les autorités britanniques ; que les éléments versés au dossier font apparaître que les autorités kazakhes, qui avaient précédemment fait pression sur les autorités ukrainiennes pour qu'elles demandent l'extradition de M. Ablyazov, ont cherché à exercer une influence sur l'engagement en Russie de poursuites pénales contre M. Ablyazov et sur la présentation, par les autorités russes, de la demande d'extradition de l'intéressé vers la Russie ; qu'il ressort également des éléments versés au dossier que la procédure d'extradition a été suivie par les autorités kazakhes et a fait l'objet d'une concertation réitérée entre les autorités russes et kazakhes au cours de son instruction ; qu'il résulte de l'ensemble des circonstances de l'affaire que l'extradition vers la Russie de M. Ablyazov a été demandée dans un but politique ; qu'ainsi cette extradition ne pouvait être légalement accordée ; que, dès lors, sans qu'il soit besoin d'examiner les autres moyens des requêtes, M. Ablyazov est fondé à demander l'annulation pour excès de pouvoir du décret du 17 septembre 2015 par lequel le Premier ministre a accordé son extradition aux autorités russes et de la décision implicite refusant de le rapporter ;

4. Considérant qu'il y a lieu, dans les circonstances de l'espèce, de mettre à la charge de l'Etat la somme de 3 000 euros à verser à M. Ablyazov, au titre des dispositions de l'article L. 761-1 du code de justice administrative ;

DECIDE:
--------------

Article 1er : Le décret du 17 septembre 2015 accordant l'extradition de M. Mukhtar Ablyazov aux autorités russes et la décision implicite refusant de le rapporter sont annulés.

Article 2 : L'Etat versera à M. Ablyazov une somme de 3 000 euros au titre de l'article L. 761-1 du code de justice administrative.

Article 3 : La présente décision sera notifiée à M. Mukhtar Ablyazov et au garde des sceaux, ministre de la justice.

Délibéré à l'issue de la séance du 9 décembre 2016 où siégeaient : M. Bernard Stirn, président de la section du contentieux, présidant ; M. Edmond Honorat, M. Alain Ménéménis, M. Rémy Schwartz, présidents-adjoints de la section du contentieux ; M. Didier Chauvaux, M. Jacques-Henri Stahl, M. Jean Courtial, Mme Pascale Fombeur, M. Denis Piveteau, M. Guillaume Goulard, M. Mattias Guyomar, présidents de chambre, Mme Célia Vérot, conseiller d'Etat et M. Clément Malverti, auditeur-rapporteur.

Lu en séance publique le 9 décembre 2016.

Le Président :
Signé : M. Bernard Stirn

Le rapporteur :
Signé : M. Clément Malverti

Le secrétaire :
Signé : Mme Nabila Ammar-Khodja

La République mande et ordonne au garde des sceaux, ministre de la justice, en ce qui le concerne ou à tous huissiers de justice à ce requis en ce qui concerne les voies de droit commun contre les parties privées, de pourvoir à l'exécution de la présente décision.

Pour expédition conforme,

Pour le secrétaire du contentieux, par délégation :

# Exhibit 8

# Application notice

For help in completing this form please read the notes for guidance form N244 Notes.

| In the High Court of Justice | |
|---|---|
| Chancery Division | |
| Claim no. | HC-2010-000020 |
| Fee Account no. | |
| Warrant no. (if applicable) | |
| Claimant's name (including ref.) | JSC BTA Bank |
| Defendant's name (including ref.) | Salim Shalabayev, Mukhtar Ablyazov & Ors |
| Date | 5 August 2016 |

1. **What is your name or, if you are a legal representative, the name of your firm?**

   Hogan Lovells International LLP

2. **Are you a** ☐ Claimant    ☐ Defendant    ☒ Legal Representative

   ☐ Other (please specify)

   If you are a legal representative whom do you represent?   The Claimant

3. **What order are you asking the court to make and why?**

   The Claimant respectfully invites the Court to make an order in the form set out in the draft appended to this application notice: (i) varying an undertaking given to the Court and recorded in an order dated 3 February 2011 regarding the use of documents obtained by execution of a search order and (ii) further and to the extent necessary, releasing the Claimant from the implied undertaking in CPR 31.22. The reasons why this order is sought are fully explained in Part 10 of this application notice.
   The Claimant further seeks an order that service on Withers LLP shall (retrospectively) be deemed good service on Salim Shalabayev in respect of this application and any order made thereon.

4. **Have you attached a draft of the order you are applying for?**  ☒ Yes    ☐ No

5. **How do you want to have this application dealt with?**  ☐ at a hearing    ☒ without a hearing

   ☐ at a telephone hearing

6. **How long do you think the hearing will last?**  ☐ Hours    ☐ Minutes

   Is this time estimate agreed by all parties?  ☐ Yes    ☐ No

7. **Give details of any fixed trial date or period**   N/A

8. **What level of Judge does your hearing need?**   High Court Judge

9.  Who should be served with this application?

<div style="border:1px solid">Salim Shalabayev and Mukhtar Ablyazov</div>

9a. Please give the service address, (other than details of the claimant or defendant) of any party named in question 9.

10. What information will you be relying on, in support of your application?

☐ the attached witness statement

☐ the statement of case

☒ the evidence set out in the box below

If necessary, please continue on a separate sheet.

1.  References to page numbers in this Section 10 are to the pages of the exhibit marked **"RIL7"**, a copy of which is attached to this application notice.

2.  The Claimant seeks an order varying an undertaking (the **"Undertaking"**) given by the Claimant in respect of the use of information and documents obtained by the Claimant pursuant to an order of Mr Justice Henderson dated 3 February 2011 (the **"Search Order"**), such that certain documents so obtained may be used by the Claimant in proceedings brought in the Circuit Court of Fairfax County, Virginia, USA (the **"Virginia Court"**) by the Claimant under Case Number 2016 08335 against Gaukhar Kussainova (who is the sister of Mr Ablyazov) (the **"Virginia Proceedings"**).

3.  The background to these proceedings is a wide-ranging fraud which has been found in multiple sets of proceedings to have been perpetrated on the Claimant by certain members of its former management, in particular the former Chairman of its Board of Directors, Mukhtar Ablyazov. The Claimant's various proceedings have sought compensation of many billions of dollars against Mr Ablyazov and others. To date, money judgments in an amount (with interest) exceeding US$4.8 billion have been entered against Mr Ablyazov in four of these claims. Those judgments remain unsatisfied.

4.  The Search Order related to a storage unit in a self-storage facility known as the Big Yellow Self Storage Company at Finchley in North London (**"Big Yellow"**). The Claimant obtained a large quantity of documents upon execution of the Search Order at Big Yellow, including documents found stored on various pieces of IT equipment. Most of this documentation derived from Eastbridge Capital Limited, a company that had been used by Mr Ablyazov to administer his complex network of assets prior to and during the English High Court litigation commenced against him by the Claimant. One of the items of IT equipment was an iMac computer (the **"iMac"**), which, as is explained below, was said to belong to Mr Ablyazov's brother-in-law Salim Shalabayev. On the iMac were found scans of three letters dated 14 January 2006, 10 April 2007 and 30 September 2008, addressed from Mr Ablyazov to his sister Ms Kussainova (the **"Ablyazov Letters"**, **pages 1-3**). The Ablyazov Letters are the subject of the present application.

5.  On the making of the Search Order, the Claimant gave the Undertaking (recorded at paragraph 3 of Schedule C to the Search Order), which provided that any information or documents obtained as a result of the Search Order would not be used, without the permission of the Court, for the purpose of any proceedings other than these proceedings or in relation to the order of Mr Justice Teare dated 6 August 2010 (as amended from time to time) in Claim No 2009 Folio 1099 in the Commercial Court (the **"Drey Proceedings"**, the **"Receivership Order"**).

6.  Ms Kussainova is Mr Ablyazov's sister. In the Virginia Proceedings, the Claimant seeks to recover damages of US$4,000,000 from Ms Kussainova in respect of receipt by her of money that it is claimed represented part of the proceeds of Mr Ablyazov's fraud against the Claimant. It is the

2

Claimant's case in those proceedings that Ms Kussainova has received substantial sums deriving from funds misappropriated from BTA from Mr Ablyazov and/or from companies owned and/or controlled by him in the form of purported gifts, salaries or other payments.

7. The Claimant claims under four heads of relief in the Virginia Proceedings: (i) Mr Ablyazov's transfer of funds to Ms Kussainova with the intention to delay, hinder and/or defraud his creditor (ie the Claimant); (ii) Mr Ablyazov's transfer of funds to Ms Kussainova for no valuable consideration in circumstances where he was insolvent by reason of the very substantial liabilities he owed to the Claimant; (iii) wrongful conversion of the Claimant's property for Ms Kussainova's own use to her benefit and the Claimant's detriment; and (iv) Ms Kussainova's unjust enrichment in receiving funds misappropriated from the Claimant.

8. The Claimant's complaint in the Virginia Proceedings (**pages 4-15**) was served on Ms Kussainova. In response, on 27 July 2016 Ms Kussainova filed a demurrer seeking the dismissal of the Virginia Proceedings (the **"Demurrer"**, **pages 16-22**). By this motion Ms Kussainova invites the US court to dismiss the Virginia Proceedings on the basis that it allegedly fails to state facts upon which the relief demanded can be granted.

9. It is understood from counsel acting for the Claimant in the Virginia Proceedings that the Demurrer is listed to be heard on 19 August 2016.

10. The Claimant believes that the Ablyazov Letters would be of material assistance to the court in considering and determining the Demurrer, since they go to substantiating the facts of the Claimant's case in the Virginia Proceedings, in particular that monies or monies' worth were transferred from Mr Ablyazov to Ms Kussainova by way of purported gifts for no valuable consideration. If it is unable to present the Ablyazov Letters to the Virginia Court, the Claimant is concerned that its ability to successfully to resist the Demurrer will be compromised, and, accordingly, the Claimant's ability to prosecute its claim for the recovery of funds or their value defrauded from it will be stifled. This would cause serious prejudice to the Claimant.

11. Clearly, the short timescale within which the Demurrer is listed to be heard by the Virginia Court means that there is some urgency to this application, because of the risk of that motion being heard by the Virginia Court without regard to material documents. The Claimant intends to serve this application as soon as possible to facilitate its consideration by this court at the earliest opportunity, as described further below.

12. As matters stand, the Claimant considers that it is not able to produce the Ablyazov Letters in the Virginia Proceedings because to do so would conflict with the Undertaking given to this Court.

13. In addition, the restriction contained in CPR 31.22 may apply to the Ablyazov Letters. Assessing whether or not the Ablyazov Letters have been referred to in open court (such that this restriction has ceased to apply) would be a time-consuming and therefore costly exercise, which the Claimant respectfully submits would be disproportionate. Accordingly, and out of an abundance of caution, the Claimant seeks also to release the restriction under CPR 31.22 to the extent necessary.

14. Accordingly, the Claimant respectfully submits that it should be granted a variation of the Undertaking and the release of any applicable restriction under CPR 31.22 to allow it to use the Ablyazov Letters in the course of the Virginia Proceedings and to permit inspection of the same by Ms Kussainova. In addition to permitting the Claimant to mount a proper defence to the Demurrer (and therefore not allow its claim to be stifled), the Claimant believes that it is appropriate for the Court to permit such a variation for the following reasons.

   (a) The purpose of the Search Order and the Receivership Order was to identify and preserve Mr Ablyazov's assets and to help bring about the satisfaction of the judgments against him. Through the Virginia Proceedings the Claimant is challenging and seeking to thwart Mr Ablyazov's unlawful efforts to put his assets beyond the reach of the Claimant and thereby render otiose the judgments of this and other courts. That purpose and aim is entirely in line with the purpose for which these documents were originally obtained.

   (b) The Ablyazov Letters, since they are addressed to Ms Kussainova and relate in each case to transfers or promises in her favour, are on their face documents which one can expect Ms

3

Kussainova to have seen and possessed in any case. It is difficult to see how any third party could be prejudiced by the disclosure of letters to the addressee of those letters.

15. There is precedent for the Court permitting a variation of the Undertaking to allow the use of documents in new claims brought against Mr Ablyazov's family members, for instance in the proceedings brought by the Claimant in the Commercial Court under Claim No CL-2015-000549 against Mr Ablyazov and Ilyas Khrapunov, Mr Ablyazov's son-in-law (the **"Khrapunov Proceedings"**). The Khrapunov Proceedings relate to an alleged conspiracy between Mr Ablyazov and Mr Khrapunov to cause damage to the Claimant by dealing with and/or concealing assets belonging to Mr Ablyazov in breach of the English Court's freezing orders against him. Mr Justice Males varied the Undertaking in July 2015 to permit use of material obtained as a result of the Search Order in the Khrapunov Proceedings on the basis that the Search Order and the Khrapunov Proceedings share the same purpose.

16. More recently, Mr Justice Henderson varied the Undertaking in June 2016 to permit the use of documents obtained as a result of the Search Order in the context of a claim brought in the Commercial Court under Claim No CL-2015-000872 against Mr Ablyazov and his son, Madiyar Ablyazov (**"Madiyar"**, the **"Madiyar Proceedings"**). The Madiyar Proceedings relate to a fund of approximately £1.1 million that, the Claimant says, was either transferred by Mr Ablyazov for the purpose of defrauding his creditors contrary to the Insolvency Act 1986, or, alternatively, has always been held on trust for Mr Ablyazov or been under Mr Ablyazov's control. Again, the variation was made on the basis that the purpose of the Search Order (and the Receivership Order) was aligned with the purpose of the Madiyar Proceedings.

17. The Claimant is also making an equivalent application in the Commercial Court for permission to use documents obtained by the receivers appointed under the Receivership Order pursuant to that order in connection with the Virginia Proceedings.

18. The Search Order was made against (inter alios) the licensee of the relevant unit at Big Yellow. The records provided by the operator of Big Yellow indicated that the licensee was Salim Shalabayev, Mr Ablyazov's brother-in-law, whom I shall refer to as **"Salim"** to distinguish him from his brother Syrym Shalabayev (**"Syrym"**). Salim swore an affidavit in these proceedings confirming that he was the licensee of the Big Yellow unit, in which Syrym and Mr Ablyazov had asked him to store some boxes on their behalf. Salim stated in his affidavit that he had also used the Big Yellow unit for storing the iMac, which belonged to him. It had, he said, been left in his house by Syrym and was used by Salim and his family.

19. Prior to being released to my firm, the documents recovered by the Court-appointed IT consultant from the iMac were reviewed for privilege by the Supervising Solicitors appointed under the Search Order. The Supervising Solicitors, as they detail in their second supplemental report to this Court dated 12 April 2011 (**pages 23-30**), afforded Salim's English solicitors (Kingsley Napley LLP, **"Kingsley Napley"**) the opportunity to review the recovered files and object to their provision to my firm if it were said that Salim had a right or duty to withhold production of them. On review, Kingsley Napley raised concerns on behalf of Salim regarding personal and irrelevant documents stored on the iMac. The Supervising Solicitors agreed that such documents would not be produced to my firm. Accordingly, the Ablyazov Letters were not considered personal, irrelevant or privileged.

20. Given that Salim has asserted in sworn evidence in these proceedings that the iMac belonged to him, the Claimant proposes to serve a copy of this application on Salim, even though the Ablyazov Letters do not appear to concern him. The Claimant is uncertain of Salim's current whereabouts, although it has previously been told that he is not in the UK. The Claimant's understanding is that Kingsley Napley no longer acts for Salim, and as far as the Claimant is aware Salim is not presently represented in these proceedings. He is, however, represented by English solicitors in the Drey Proceedings in the Commercial Court. His solicitors, Withers LLP (**"Withers"**), have been actively participating in those proceedings on Salim's behalf as recently as April of this year, before the Court of Appeal. Accordingly, the Claimant respectfully asks the Court to make an order permitting substituted service of this application, any order the Court might make, and any related materials, on Salim through his English solicitors, Withers.

21. Given the pressing timetable of the Demurrer (which is listed to be heard on 19 August), the Claimant intends to serve this application and the accompanying draft order on Salim via Withers today, inviting

Salim to confirm within 7 days whether he intends to oppose this application. The Claimant will inform the court of Salim's position as soon as it is known, or, as the case may be, confirm to the court if Salim has not responded upon the expiry of that 7 day period, and ask the court to determine the application on paper or at a hearing on short notice.

22. In light of the ownership of the iMac asserted by Salim, it would seem that he is the only proper respondent to this Application. However, out of an abundance of caution, the Claimant has also named Mr Ablyazov as a respondent (albeit that it does not consider him, technically at least, to be a proper respondent to it), and intends to serve a copy of it and the draft order attached hereto on Mr Ablyazov in accordance with the order of Master Teverson dated 5 November 2014 (the "**Substituted Service Order**"). It is noted, as the Claimant has previously done, that Mr Ablyazov has not engaged in the Claimant's recent applications in these proceedings, or indeed in the Madiyar or Khrapunov Proceedings at any stage, and has failed to respond to communications from the Claimant.

23. The Substituted Service Order was made because, when Mr Ablyazov's former solicitors came off the record, Mr Ablyazov failed to provide an address for service in accordance with the rules. The Substituted Service Order therefore provided that service on the email address of Mr Ablyazov's French lawyer, marked for his French lawyer's attention, would be deemed good service. Recently, however, emails sent to that address have been returned with a delivery failure notification. The Claimant believes that Mr Ablyazov and/or his French lawyer disabled the email address in an attempt to avoid service. The Claimant did for some time seek to effect service on Mr Ablyazov by delivering documents to him at the prison in France where he is incarcerated. This is a time-consuming and costly process, in particular because to comply with local law all documents to be served in this way must be translated into French. However, Mr Ablyazov repeatedly refused to accept delivery of such documents, and they have repeatedly been returned unopened. Accordingly, the Claimant proposes to serve this application notice and accompanying draft order in accordance with the Substituted Service Order. The Claimant will, similarly, communicate to the court any indication by Mr Ablyazov that he intends to oppose this application (without prejudice to the Claimant's position that it is not his proper place to do so).

24. In line with paragraph 16.7 of the Chancery Guide, the Claimant respectfully submits that (at least in the absence of any substantive opposition to it) this application is appropriate for determination by the Court on the papers in light of the nature of the relief sought and Mr Ablyazov's persistent failure to engage in these proceedings.

**Statement of Truth**

The applicant believes that the facts stated in this section (and any continuation sheets) are true.

Signed _____

Applicant's legal representative

Dated: 5 August 2016

Full name: Richard Ian Lewis

Name of applicant's legal representative's firm: Hogan Lovells International LLP

Position or office held: Partner
(if signing on behalf of firm or company)

11. Signature and address details

Signed: _____   Dated: <u>5 August 2016</u>
       Applicant's legal representative

Position or office held: <u>Partner, Hogan Lovells International LLP</u>
(if signing on behalf of firm or company)

Applicant's address to which documents about this application should be sent

| Hogan Lovells International LLP |
|---|
| Atlantic House |
| Holborn Viaduct |
| London |

Postcode: | E | C | 1 | A | | 2 | F | G |

| If applicable | |
|---|---|
| Phone no. | +44 (0)20 7296 2000 |
| Fax no. | +44 (0)20 7296 2001 |
| DX no. | 57 Chancery Lane |
| Ref no. | D3/TD/RIL |

| E-mail address | richard.i.lewis@hoganlovells.com |
|---|---|

6

Claim No: HC-2010-000020

Before
Dated

**B E T W E E N:**

**JSC BTA BANK**

**Claimant / Applicant**

and

**MUKHTAR ABLYAZOV**

**SALIM SHALABAYEV**

**Defendants/Respondents**

---

*draft* ORDER

---

**UPON** the application of the Claimant by application notice dated 5 August 2016 (the "**Application**")

**AND UPON** reading the evidence filed

**IT IS ORDERED THAT:**

1. The Claimant shall have permission to use the evidence, documentation and information disclosed pursuant to the Order of Mr Justice Henderson dated 3 February 2011 (the "**Order**") and identified in Schedule 1 to this Order (the "**Disclosed Material**") in its proceedings issued in the Circuit Court of Fairfax County, Virginia under claim number 2016 08335 (the "Virginia Proceedings") against Gaukhar Kussainova (and any other relevant defendant), the sister of Mukhtar Ablyazov.

2. To the extent provided for in paragraph 1 above, the Claimant is released from the undertakings, restrictions and obligations in relation to the Disclosed Material imposed by the Order, CPR r. 31.22, and any like undertaking, restriction or obligation.

3. Costs reserved.

4. As to service:
   a. Service of the Application by email to the addresses at Schedule 2 is deemed to have been good service on Salim Shalabayev;
   b. This order shall be served by the Claimant on the Defendants/Respondents;
   c. Service of this Order by email to the addresses at Schedule 2 shall be deemed service on Salim Shalabayev.

Service of the order:
The court has provided a sealed copy of this order to the serving party:
Hogan Lovells International LLP at Hogan Lovells International LLP at Atlantic House, Holborn Viaduct, London, EC1A 2FG.

**SCHEDULE 1**

1. Letter dated 14 January 2006 from Mukhtar Ablyazov to Gaukhar Kussainova.

2. Letter dated 10 April 2007 from Mukhtar Ablyazov to Gaukhar Kussainova.

3. Letter dated 30 September 2008 from Mukhtar Ablyazov to Gaukhar Kussainova.

## SCHEDULE 2

1. Tatiana.Menshenina@withersworldwide.com;

2. Julia.Schtulman@withersworldwide.com.

# Exhibit 9

Claim No: HC-2010-000020g 2016



HC-2010-000020

Before the Honourable Mr Justice Snowden
Dated 15 August 2016

B E T W E E N:

JSC BTA BANK

**Claimant / Applicant**

and

MUKHTAR ABLYAZOV

SALIM SHALABAYEV

**Defendants/Respondents**

---

### ORDER

**UPON** the application of the Claimant by application notice dated 5 August 2016 (the "**Application**")

**AND UPON** reading the evidence filed

**AND UPON** the Claimant serving the Application on Mukhtar Ablyazov by email pursuant to the order of Master Teverson dated 5 November 2014 (the "**Service Order**") and receiving no response from Mr Ablyazov.

**AND UPON** the Claimant notifying Withers LLP of the Application by letter dated 5 August 2016 and Withers LLP responding on behalf of Salim Shalabayev by letter on 12 August 2016 stating (i) that they were authorised to respond on behalf of Salim Shalabayev although not instructed to accept service of the Application and (ii) that Mr Shalabayev neither consented to nor objected to the Application

**IT IS ORDERED THAT:**

1. The Claimant shall have permission to use the evidence, documentation and information disclosed pursuant to the Order of Mr Justice Henderson dated 3 February 2011 (the "**Order**") and identified in the Schedule to this Order (the "**Disclosed Material**") in its proceedings issued in the Circuit Court of Fairfax County, Virginia under claim number 2016 08335 (the "**Virginia Proceedings**") against Gaukhar Kussainova (and any other relevant defendant), the sister of Mr Ablyazov.

2. To the extent provided for in paragraph 1 above, the Claimant is released from the undertakings, restrictions and obligations in relation to the Disclosed Material imposed by the Order, CPR r. 31.22, and any like undertaking, restriction or obligation.

3. Costs reserved, with liberty to apply.

1

4. This order shall be served by the Claimant on Mr Ablyazov by email pursuant to the Service Order.

Service of the order:
The court has provided a sealed copy of this order to the serving party:
Hogan Lovells International LLP at Hogan Lovells International LLP at Atlantic House, Holborn Viaduct, London, EC1A 2FG.

## SCHEDULE

1. Letter dated 14 January 2006 from Mukhtar Ablyazov to Gaukhar Kussainova.

2. Letter dated 10 April 2007 from Mukhtar Ablyazov to Gaukhar Kussainova.

3. Letter dated 30 September 2008 from Mukhtar Ablyazov to Gaukhar Kussainova

# Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN,
and BTA BANK JSC,

                Plaintiffs,

-against-

MUKHTAR ABLYAZOV, VIKTOR
KHRAPUNOV, ILYAS KHRAPUNOV, and
TRIADOU SPV S.A.,

                Defendants.

No. 15-cv-05345-AJN

## DEFENDANT MUKHTAR ABLYAZOV'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF DOCUMENT REQUESTS[1]

Defendant Mukhtar Ablyazov ("Ablyazov"), by and through his attorneys, Kobre & Kim LLP, hereby responds and objects pursuant to Rule 34 of the Federal Rules of Civil Procedure to the first set of document requests (the "Requests") by Plaintiffs BTA Bank ("BTA") and City of Almaty ("Almaty") (collectively, "Plaintiffs").

## GENERAL OBJECTIONS

The following General Objections apply to each of the Requests propounded by Plaintiffs and, unless otherwise stated, shall have the same force and effect as if set forth in full in response to each of the separate numbered Requests.

1.       Ablyazov objects to all instructions, definitions, and Requests to the extent that they call for Ablyazov to do more than is required under the Federal Rules of Civil Procedure,

---

[1]       By participating in discovery in this case, Defendant Mukhtar Ablyazov does not intend to waive any defenses, including but not limited to defenses based on the lack of personal jurisdiction, all of which are expressly reserved.

the Local Civil Rules of this Court, and/or this Judge's Individual Rules and Practices in Civil Cases (together, the "Civil Rules"), or purport to impose obligations or conditions on Ablyazov that are otherwise inconsistent with the Civil Rules. Ablyazov will not produce documents other than as required by the Civil Rules.

2. Ablyazov objects to each Request to the extent that it purports to require Ablyazov to seek documents in the possession of other persons or entities or to create documents not presently in his possession, custody, or control. Ablyazov will produce documents only to the extent they are within Ablyazov's possession, custody, or control.

3. Ablyazov objects to each Request to the extent that it seeks documents not relevant to the claims or defenses of any party in this action or not proportional to the needs of the case.

4. Ablyazov objects to each Request to the extent that it is unreasonably cumulative or duplicative.

5. Ablyazov objects to each Request to the extent it is not reasonably limited in time.

6. Ablyazov objects to each Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity from production (collectively, "Privileged Material"). Privileged Material will not be produced.

7. Ablyazov reserves all objections that may be available to Ablyazov at any hearing or trial or on any motion to the use or admissibility of any material produced. The production of any material is not an admission by Ablyazov that such material or the information contained therein is relevant to this action or admissible as evidence.

8. Inadvertent production of any Privileged Material shall not constitute a waiver of any privilege, or of any other ground for objecting to discovery of such materials, its subject matter, or information contained therein, or of Ablyazov's right to object to the use of such material during any later proceeding or to seek return of the material.

9. Ablyazov objects to any Requests to the extent that they call for Ablyazov to transmit information to the United States in violation of the data protection laws and regulations of any country where such documents are stored, including the General Data Protection Regulation of the European Union.

10. Ablyazov reserves the right to supplement or amend these responses and objections.

11. The failure of Ablyazov to object to any individual Request, or any statement herein that Ablyazov will produce any documents in response to any individual Request or that Ablyazov will search any file maintained by any person, is not an admission that any responsive material exists, but instead reflects the intention of Ablyazov, subject to his objections, to conduct a reasonable search for responsive documents.

12. Ablyazov objects to each Request to the extent that it requires Ablyazov to search for and produce documents that are not reasonably accessible because of undue burden and/or cost.

13. Ablyazov objects to each Request to the extent that it requests information that is in the public domain, in Plaintiffs' possession, custody, or control, or otherwise available to Plaintiffs.

14. Ablyazov objects to each Request to the extent it seeks information of a confidential or proprietary nature, including without limitation personal financial information,

sensitive and competitive business information, and trade secrets ("Confidential Information"). Ablyazov will only produce documents and information after an appropriate order of confidentiality is entered and will produce such information only to the extent that such information does not infringe upon legal obligations to maintain the privacy and confidentiality of information pertaining to non-parties to this litigation.

15. Ablyazov objects to each Request to the extent it uses terminology that is vague and/or ambiguous.

16. Ablyazov objects to each Request to the extent it is overly broad and unduly burdensome.

17. Ablyazov's investigation and search for documents pertaining to this matter is ongoing. Subject to his responses and objections herein, Ablyazov will produce documents on a rolling basis as those documents are identified and collected.

## SPECIFIC RESPONSES AND OBJECTIONS

The following responses are made subject to the foregoing General Objections which apply to each of the separately numbered Requests as if set forth in full in response to each of them.

### Request No. 1:

All documents and communications concerning the acquisition, transfer, or sale of any real property located in the Republic of Kazakhstan by Defendants Viktor Khrapunov or any immediate family members, including but not limited to his spouse Leila Khrapunova, or anyone acting on behalf of the foregoing, between June 1, 1997 and December 1, 2004.

### Response to Request No. 1:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 2:

All documents and communications concerning the formation or establishment of SDG.

### Response to Request No. 2:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 3:

All documents and communications concerning any source of funding, assets, or capital for SDG, including but not limited to any debt, loans, joint-ventures, equity, or any other source of financial support for SDG's operations and/or investments.

### Response to Request No. 3:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 4:**

All documents and communications concerning Mukhtar Ablyazov's ownership and/or position as Chairman of BTA Bank

### Response to Request No. 4:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense or proportional to the needs of the case and based on the fact that Plaintiff BTA has equal or greater access to the information requested. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 5:**

All documents produced by Mukhtar Ablyazov in any litigation or investigation in Switzerland or the United Kingdom.

### Response to Request No. 5:

In addition to the General Objections, Ablyazov objects to this request to the extent that Plaintiff BTA has equal or greater access to the information requested. Ablyazov further objects to the request on the ground that it is overbroad. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 6:

All documents produced by Viktor Khrapunov in any litigation or investigation in Switzerland or the United Kingdom.

### Response to Request No. 6:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 7:

All documents produced by Ilyas Khrapunov in any litigation or investigation in Switzerland or the United Kingdom.

### Response to Request No. 7:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 8:

All documents and communications concerning the formation or establishment of Triadou.

### Response to Request No. 8:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is overbroad. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody,

or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 9:

All documents and communications sufficient to show Triadou's corporate structure and legal and/or beneficial ownership.

#### Response to Request No. 9:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 10:

All documents and communications concerning any source of funding, assets, or capital for Triadou, including but not limited to any debt, loans, joint-ventures, equity, or any other source of financial support for Triadou's operations and/or investments.

#### Response to Request No. 10:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is overbroad. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 11:**

All documents and communications concerning Triadou's investments with or other transfer of capital or assets of any kind to the Chetrit Entities, including but not limited to the 2013 assignment agreement between the Chetrit Entities and Triadou.

> **Response to Request No. 11:**
>
> Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 12:**

All documents and communications concerning Triadou's investment in the Tri-County Mall, including but not limited to the disposition or use of any funds or other assets received from the sale of the same.

> **Response to Request No. 12:**
>
> In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 13:**

All documents and communications concerning any other investment or other transfer of capital or assets of any kind by Triadou within the United States, including but not limited to any investment in the Syracuse Mixed Use Complex in Syracuse, New York.

**Response to Request No. 13:**

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 14:**

All business plans, pro formas, road show or other presentations, or projections prepared in connection with any investment or other transfer of capital or assets of any kind, or potential investment or transfer of capital or assets, regardless of whether consummated, by or through Triadou.

**Response to Request No. 14:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 15:**

All meeting minutes of Triadou.

### Response to Request No. 15:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is overbroad. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 16:**

All meeting minutes of SDG.

### Response to Request No. 16:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is overbroad. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 17:**

All documents and communications concerning any wire or other electronic transfers of funds by or for the benefit of Triadou.

### Response to Request No. 17:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 18:

All documents and communications concerning any corporate checks, cashier's checks, IOUs, or any other physical transfers of funds by or for the benefit of Triadou.

### Response to Request No. 18:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 19:

All documents and communications concerning Telford, including but not limited to any debt financing provided by Telford, any and all due diligence efforts, and the sources of funds held or transferred by Telford.

### Response to Request No. 19:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is overbroad. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 20:**

All documents and communications concerning Ilyas Khrapunov's control of, management of, or relationship with Triadou, whether formal or informal.

**Response to Request No. 20:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 21:**

All documents and communications concerning Ilyas Khrapunov's control of, management of, or relationship with SDG, whether formal or informal.

**Response to Request No. 21:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 22:**

All documents and communications concerning Ablyazov's investment in, management of, or relationship with SDG, whether formal or informal.

### Response to Request No. 22:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 23:

All documents and communications concerning Ablyazov's investment in, management of, or relationship with Triadou, whether formal or informal.

### Response to Request No. 23:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 24:

All Documents sufficient to show all persons and entities who advised Triadou concerning any investments in the United States.

### Response to Request No. 24:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 25:

All communications between Triadou and Mukhtar Ablyazov.

### Response to Request No. 25:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 26:

All communications between Triadou and Viktor Khrapunov.

### Response to Request No. 26:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 27:

All communications between Triadou and Philippe Glatz before April 1, 2013.

### Response to Request No. 27:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 28:

All communications between Triadou and Eesh Aggerwal.

### Response to Request No. 28:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-

privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 29:

All communications between Triadou and Gennady Petelin.

#### Response to Request No. 29:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 30:

All communications between Triadou and Elena Petelin.

#### Response to Request No. 30:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 31:

All communications between Triadou and FBME Bank.

**Response to Request No. 31:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 32:**

All communications between Triadou and Black Sea Trade & Development Bank.

**Response to Request No. 32:**

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

**Request No. 33:**

All communications between Triadou and the Chetrit Entities between 2011 and the commencement of this litigation.

**Response to Request No. 33:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 34:**

All documents and communications concerning Harlem Securities.

### Response to Request No. 34:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

## Request No. 35:

All documents and communications concerning Argon Holding, Corp.

### Response to Request No. 35:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

## Request No. 36:

All documents and communications concerning SDG-US Holdings, Corp.

### Response to Request No. 36:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

## Request No. 37:

All documents and communications concerning Syracuse Center, LLC.

**Response to Request No. 37:**

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

**Request No. 38:**

All documents and communications concerning Nicolas Bourg.

**Response to Request No. 38:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 39:**

All documents and communications concerning Gennady Petelin.

**Response to Request No. 39:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 40:**

All documents and communications concerning Elena Petelin.

### Response to Request No. 40:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

### Request No. 41:

All documents and communications concerning Peter Sztyk (a/k/a Petro Sztyk, a/k/a Petr Sztyk).

### Response to Request No. 41:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

### Request No. 42:

All documents and communications concerning Eesh Aggerwal.

### Response to Request No. 42:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 43:

All documents and communications concerning the Azure Group, including but not limited to any communications regarding Azure Consultants, JLT and/or Azure Consultants DMCC.

### Response to Request No. 43:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 44:

All documents and communications concerning the Niel Group, including but not limited to Niel Telekom, S.A.

### Response to Request No. 44:

In addition to the General Objections, Ablyazov objects to this request to the extent it is overly broad and seeks the production of Documents not relevant to any party's claim or defense.

### Request No. 45:

All documents and communications concerning Green Life International S.A., including but not limited to any loans and/or transfers of funds for the benefit of Mukhtar Ablyazov.

### Response to Request No. 45:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 46:**

All documents and communications concerning any payment of legal fees or expenses of Ablyazov, including but not limited to any payments or transfers for Ablyazov's benefit by any parties to this Action, third parties, or third party entities.

**Response to Request No. 46:**

In addition to the General Objections, Ablyazov objects to this request because it seeks the production of privileged attorney-client communications. Ablyazov further objects because this request is vague, overly broad, and unduly burdensome, and seeks the production of Documents not relevant to any party's claim or defense or proportional to the needs of the case.

**Request No. 47:**

All document [sic] and communications concerning the sale or purchase of any interest in SDG, including but not limited to the purported sale of SDG to Phillipe Glatz in 2013.

**Response to Request No. 47:**

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 48:**

All documents and communications concerning any valuation of Triadou or its parent, SDG, including but not limited to any valuation of SDG related to the purported sale of SDG to Phillipe Glatz in 2013.

### Response to Request No. 53:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 54:

All documents and communications You contend support the allegations in Paragraph 9 of the Cerrito Affidavit, specifically that "one of the investors Ilyas Khrapunov identified for the Fund was his sister's father-in-law, Mr. Petelin, who expressed an interest in the project. In October 2012, Ilyas Khrapunov and Mr. Petelin agreed that Mr. Petelin would provide debt financing to Triadou to invest in U.S. real estate projects."

### Response to Request No. 54:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 55:**

All documents and communications You contend support the allegations in Paragraph 10 of the Cerrito Affidavit, specifically that "[Cerrito] reviewed documents demonstrating several transactions engaged in by companies owned by Mr. Petelin, one of which was an investment in a significant oil-and-gas asset from which Mr. Petelin netted several hundred million USD. Based on the documents [Cerrito] reviewed, [Cerrito] independently verified through the Internet that the named companies were engaged in real transactions with major international investors. Finally, [Cerrito] reviewed documents on the entity that would provide the funding to Triadou, known as Telford International Limited ("Telford"). These documents showed that Telford was 100% owned by Telford Trust, which in turn belonged to Mr. Petelin's wife, Elena Petelina."

**Response to Request No. 55:**

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

**Request No. 56:**

All documents and communications reviewed by Cerrito regarding Genady Petelin or Elena Petelin, as referenced in Paragraph 10 of the Cerrito Affidavit.

### Response to Request No. 56:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 57:

All documents and communications reflecting any internet searches performed by Cerrito regarding Genady Petelin or Elena Petelin, as referenced in Paragraph 10 of the Cerrito Affidavit.

### Response to Request No. 57:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 58:

All documents and communications You contend support the allegations in Paragraph 12 of the Cerrito Affidavit, specifically that "Mr. Bourg was going to receive some form of direct payment from the Chetrits for the Flatotel project."

### Response to Request No. 58:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 59:

All documents and communications You contend support the allegations in Paragraph 15 of the Cerrito Affidavit, specifically that "Ilyas Khrapunov formally made the offer to sell SDG and its subsidiaries to Mr. Glatz in late December 2012. Mr. Glatz expressed interest, and the due diligence and deal negotiation process commenced in early January 2013 and closed on 25 March 2013. Mr. Glatz hired an investment bank to conduct the due diligence and prepare a valuation, and retained his own lawyers to work on the deal documents."

### Response to Request No. 59:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General

Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 60:

All documents and communications concerning the purported December 2012 offer to sell SDG, including any document reviewed or relied on in the negotiation or acceptance of that offer, as referenced in Paragraph 15 of the Cerrito Affidavit.

### Response to Request No. 60:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 61:

All documents and communications reflecting any due diligence relating to the purported sale of SDG, including any due diligence by any third party, as referenced in Paragraph 15 of the Cerrito Affidavit.

### Response to Request No. 61:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such

contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 62:

All documents and communications You contend support the allegations in Paragraph 16 of the Cerrito Affidavit, specifically that "The purchase of SDG by Mr. Glatz involved the purchase of 100% of the equity in SDG Capital SA by Mr. Glatz's company, Greencos S.A. . . . [Cerrito] know[s] that the sale to Mr. Glatz received intense scrutiny from the Geneva Prosecutor and the Swiss banks investing with SDG, and the purchase was allowed to proceed."

### Response to Request No. 62:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

## Request No. 63:

All documents and communications reflecting any meeting minutes as referenced in Paragraph 21 of the Cerrito Affidavit.

### Response to Request No. 63:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 64:

All documents and communications You contend support the allegations in Paragraph 25 of the Cerrito Affidavit, specifically that "[i]n March and April 2014, the Chetrits informed Triadou that a further capital call was needed from all equity partners in the Flatotel project. . . . Shortly thereafter, Triadou informed the Chetrits that it did not wish to participate in this capital call. As a result, the Chetrits offered to buy out Triadou's membership interest in CF 135 West Member LLC."

### Response to Request No. 64:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 65:

All documents and communications reflecting any capital calls regarding the Flatotel, as referenced in Paragraph 25 of the Cerrito Affidavit.

### Response to Request No. 65:

Subject to, and without waiving, the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 66:

All documents and communications You contend support the allegations in Paragraph 27 of the Cerrito Affidavit, specifically that "While working for Triadou, however, Mr. Bourg improperly spent SDG's money."

### Response to Request No. 66:

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

### Request No. 67:

All documents and communications You contend support the allegations in Paragraph 27 of the Cerrito Affidavit, specifically that "Mr. Bourg was fired as a result of Mr. Glatz's lack of confidence in him resulting from Mr. Bourg's failure to timely register the Fund, his improper expenditures, and other concerns. I understand that it was Mr. Glatz who decided to fire Mr. Bourg, not Ilyas Khrapunov."

**<u>Response to Request No. 67:</u>**

In addition to the General Objections, Ablyazov objects to this request on the ground that it is vague and ambiguous in light of the fact that Ablyazov has not made any such contentions. Subject to and without waiving the foregoing objections and the General Objections, Ablyazov will produce non-privileged Documents in his possession, custody, or control responsive to this request, if any, on a rolling basis after entry of an appropriate protective order.

Dated: October 6, 2016
New York, New York

KOBRE & KIM LLP

/s/ Jonathan D. Cogan
Jonathan D. Cogan
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
jonathan.cogan@kobrekim.com

*Counsel for Mukhtar Ablyazov*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Mukhtar Ablyazov's responses and objections to Plaintiffs' first set of document requests was served via electronic mail on this 6th day of October 2016, upon the following:

Matthew L. Schwartz
Randall Jackson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
mlschwartz@BSFLLP.com
RJackson@BSFLLP.com

*Counsel for Almaty/BTA*

John J. Kenney
John P. Curley
HOGUET NEWMAN REGAL &
KENNEDY LLP
10 East 40th Street
New York, NY 10016
jkenney@hnrklaw.com
jcurley@hnrklaw.com

*Counsel for Viktor and Ilyas
Khrapunov*

Deborah A. Skakel
Alex E. Hassid
Robyn L. Michaelson
BLANK ROME LLP
405 Lexington Avenue
New York, NY 10174-0208
DSkakel@BlankRome.com
AHassid@BlankRome.com
RMichaelson@BlankRome.com

*Counsel for Triadou*

/s/ Jonathan D. Cogan
Jonathan D. Cogan