# Exhibit 1

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12   REPUBLIC OF KAZAKHSTAN,                    Case No. 17-CV-00246-LHK

13              Plaintiff,                      **ORDER DENYING MOTION TO
                                                TRANSFER; GRANTING MOTION TO**
14        v.                                    **DISMISS THIRD AMENDED
                                                COMPLAINT WITH PREJUDICE**
15   MURATBEK KETEBAEV, et al.,
                                                Re: Dkt. Nos. 70, 75
16              Defendants.

17

18        The Republic of Kazakhstan ("Kazakhstan") alleges that Defendants Muratbek Ketebaev

19   ("Ketebaev") and Ilyas Khrapunov ("Khrapunov"), Kazakh citizens who reside in Poland and

20   Switzerland, respectively, hacked Kazakh government email accounts and published the contents

21   of those accounts.  Kazakhstan filed this suit against Defendants for violations of the Computer

22   Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Stored Communications Act ("SCA"),

23   18 U.S.C. § 2701 *et seq.*  Before the Court is Kazakhstan's motion to transfer the case to the

24   Southern District of New York.  ECF No. 70.  Also before the Court is Defendant Khrapunov's

25   motion to dismiss the third amended complaint.  ECF No. 75.  Having considered the submissions

26   of the parties, the relevant law, and the record in this case, the Court DENIES the motion to

27                                          1

28   Case No. 17-CV-00246-LHK
     ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
     COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

transfer and GRANTS the motion to dismiss for lack of personal jurisdiction with prejudice.

## I.    BACKGROUND

### A.    Factual Background

#### 1.  Hacking of Kazakh Government Emails

Kazakhstan alleges that it directed various Kazakh government officials to conduct official business using Gmail and Hotmail email accounts.  Third Amended Complaint ("TAC"), ECF No. 69 ¶ 18.  In or around November 2013, Khrapunov, a Kazakh citizen who resides in Switzerland, allegedly retained an Israel-based hacking firm to target Kazakh government employee email accounts, among other targets.  *Id.* ¶¶ 7, 19, 21-23, 107, 109.  Kazakhstan alleges that during a meeting in Geneva, Switzerland in November 2013, Nicolas Bourg, a longtime business associate and confidant of Khrapunov's, heard Khrapunov admit to his alleged involvement in the hacking.  *Id.* ¶¶ 106-09.  Among the Kazakh government officials whose Gmail and Hotmail accounts were hacked is Executive Secretary of the Ministry of Justice Marat Beketayev.  *Id.* ¶ 21.

"In early August 2014, someone (upon information and belief, Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators) created an account with Mega," *id.* ¶ 53, a cloud-based service provider in New Zealand, *id.* ¶ 50.  Kazakhstan alleges upon information and belief that Ketebaev, Khrapunov, or one or more of their co-conspirators uploaded the hacked materials onto the Mega website (the "Mega Archive").  *Id.* ¶ 54.

On or about August 8, 2014, "[u]pon information and belief," "Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators" allegedly created the "Kazaword Website" at https://kazaword.wordpress.com.  *Id.* ¶ 58.  The Kazaword Website linked to the Mega Archive.  *Id.* ¶ 61.  Kazakhstan contends that Khrapunov filed an affidavit in another action of Khrapunov's agent, Andre Tronchet, "a Swiss bailiff hired by Defendant Khrapunov to attest to the printing and downloading of various documents from the internet," in which Tronchet associates the Kazaword Website with Khrapunov.  *Id.* ¶ 60.

Other websites that have posted or referenced the hacked materials are Ketebaev's personal

2

Facebook page, the website of the Kazakh newspaper Respublika, and Respublika's Facebook page. *Id.* ¶¶ 64-65. Irina Petrushova, the founder and editor-in-chief of the Respublika website, is married to Ketebaev. *Id.* ¶ 67. Some of the hacked materials posted by Respublika contain information from attorney-client email communications between Kazakh government officials and their attorneys at the New York-based firm Curtis, Mallet-Prevost, Colt & Mosle LLP. *Id.* ¶¶ 81-83.

### 2. The S.D.N.Y. Hacking Case

On March 12, 2015, Kazakhstan filed a lawsuit in the United States District Court for the Southern District of New York against fictitiously named Does 1-100.[1] *Id.* ¶ 87 (citing *The Republic of Kazakhstan v. Does 1-100, Inclusive*, 15 Civ. 1900 (ER) (S.D.N.Y.) (the "S.D.N.Y. hacking case")). On March 13, 2015, the court in the S.D.N.Y. hacking case granted an unopposed application for a temporary restraining order enjoining the unidentified hackers of the Kazakh government emails from using, disseminating, or posting the hacked materials. *Id.* ¶ 88. On March 20, 2015, the court in the S.D.N.Y. hacking case issued a preliminary injunction. *Id.* ¶ 90.

On August 4, 2015, Respublika filed a motion seeking clarification of the preliminary injunction. *See* ECF No. 40-1 at 2. Specifically, Respublika argued that the preliminary injunction should not apply to it because there was no allegation or proof that Respublika was involved in the hacking and because enforcing the preliminary injunction against Respublika would be an unconstitutional prior restraint of speech. *Id.* at 3. The court in the S.D.N.Y. hacking case agreed with Respublika and clarified that the preliminary injunction did not apply to Respublika. *Id.* at 5. The court's order was without prejudice to Kazakhstan reapplying for the

---

[1] A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992). A court may also take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689-90 (9th Cir. 2001). Accordingly, the Court takes judicial notice of the other cases referenced in this order, as well as the various filings in those cases.

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

1      imposition of an injunction if it obtained sufficient evidence to support such an order.  *Id.* at 5-6.

2           On October 28, 2015, the court in the S.D.N.Y. hacking case granted Kazakhstan's motion

3      for the issuance of a Letter of Request to depose Ketebaev in Poland.  TAC ¶¶ 93-94.  Kazakhstan

4      deposed Ketebaev on June 7, 2016.  *Id.* ¶ 95.  At the deposition, Ketebaev declined to testify based

5      on his right to avoid self-incrimination.  *Id.* ¶¶ 96-100.

6           On January 17, 2017, Kazakhstan voluntarily dismissed the S.D.N.Y. hacking case without

7      prejudice.  *Id.* ¶ 103.

8           **3.  Other Cases Against Khrapunov in the United States**

9           In addition to the S.D.N.Y. case, there are at least two cases brought by the City of Almaty

10     against Khrapunov, among other defendants.  The first case, *City of Almaty v. Khrapunov*, No.

11     2:14-cv-3650-FMO-CW (C.D. Cal.) ("the California RICO Action"), is a RICO action filed in the

12     Central District of California that seeks to recover funds allegedly stolen by Khrapunov's

13     stepfather when Khrapunov's stepfather was the mayor of Almaty.  TAC ¶¶ 71-72.  On October

14     25, 2017, Khrapunov moved to dismiss the RICO action for lack of personal jurisdiction.  *City of

15     Almaty v. Khrapunov*, No. CV-14-3650, Docket 164 (C.D. Cal. Oct. 25, 2017).  After granting the

16     City of Almaty leave to amend the complaint, the court denied Khrapunov's motion to dismiss as

17     moot.  *City of Almaty v. Khrapunov*, No. CV-14-3650, Docket 197 (C.D. Cal. Jan. 16, 2018).  The

18     City of Almaty filed a consolidated amended complaint on January 19, 2018, *id.* Docket 198, and

19     Khrapunov again moved to dismiss for lack of personal jurisdiction, *id.* Docket 214.  On March

20     29, 2018, the court took the motion to dismiss under submission and has not yet ruled on the

21     motion to dismiss.  *City of Almaty v. Khrapunov*, No. CV-14-3650, Docket 240 (C.D. Cal. Mar.

22     29, 2018).  Kazakhstan alleges that "[a]mong the hacked emails were privileged attorney-client

23     email communications between lawyers at Latham [& Watkins'] Los Angeles, CA office and

24     Latham's clients," presumably the City of Almaty.  TAC ¶ 74.

25          The second case, *City of Almaty v. Ablyazov*, No. 1:15-cv-5345-AJN-KHP (S.D.N.Y.)

26     ("the New York RICO Action"), was filed by the City of Almaty and the leading bank in

27

28     Case No. 17-CV-00246-LHK
       ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
       COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

Kazakhstan to recover money allegedly stolen by Khrapunov's stepfather, Viktor, among others. Khrapunov and Viktor filed a motion to dismiss, in which Viktor argued that Viktor was not subject to personal jurisdiction in New York and Khrapunov "request[ed] permission to address a jurisdiction defense after discovery." *City of Almaty v. Ablyazov*, No. 1:15-cv-5345-AJN-KHP, Docket 232 at 5, 12-13 (S.D.N.Y. Sept. 26, 2016). The court's order resolving the motion to dismiss did not specifically address Khrapunov's request to raise a personal jurisdiction defense after discovery, but it did deny Viktor's motion without prejudice to Viktor re-raising it after discovery. *City of Almaty v. Ablyazov*, No. 1:15-cv-5345-AJN-KHP, Docket 426 at 50-51, 53 (S.D.N.Y. Sept. 26, 2017). Khrapunov has otherwise actively litigated the case. *See, e.g.*, Docket 503, The Khrapunovs' Proposed Finding of Facts in Support of Their Post-Hearing Brief (S.D.N.Y. Dec. 16, 2017); Docket 441, Supplemental Reply Memorandum in Further Support of Viktor and Ilyas Khrapunovs' Motion to Dismiss (S.D.N.Y. Oct. 11, 2017).

### 4. Khrapunov's Real Estate Interests in the United States

In support of its contention that Khrapunov is subject to nationwide general jurisdiction under Federal Rule of Civil Procedure 4(k)(2), Kazakhstan alleges that Khrapunov has "engag[ed], through controlled alter ego entities, in purchases and sales of tens of millions of dollars of U.S. real estate, including purchases and sales in California, New York, and Ohio." TAC ¶¶ 14, 114. Kazakhstan alleges "[u]pon information and belief" that "there is such a unity of interest and ownership between Defendant Khrapunov and the alter ego entities that separate personalities do not exist[,] and the failure to disregard their separate identities would result in fraud or injustice." *Id.* ¶ 115. The real estate transactions include:

- Candian International Ltd.'s March 2012 purchase and July 2013 sale of a home in Beverly Hills, CA;
- 628 Holdings LLC's January 2012 purchase and March 2016 sale of a home in Beverly Hills, CA;
- Triadou SPV's 2012 purchase and 2014 sale of an interest in the Flatotel condominium project in New York;
- Tri-County Mall Investors, LLC's April 2013 purchase and July 2013 sale of an interest in a shopping mall in Ohio;

5

United States District Court
Northern District of California

- Argon Holding, Corp.'s 2013 purchase and 2014 sale of an interest in the Cabrini condominium project in New York; and
- Syracuse Center, LLC's 2013 purchase of the Syracuse Mixed-Use Complex in New York.

*See* TAC ¶¶ 116-48; ECF No. 69-2. Kazakhstan alleges that Nicolas Bourg, the sole Director of Triadou, stated under oath that "at the direction of Defendant Khrapunov, he formed a series of entities under the laws of Luxembourg for the purpose of investing Khrapunov and Ablyazov funds in real estate." TAC ¶ 126. Kazakhstan alleges that Bourg further stated under oath that "Triadou is a shell entity for SDG [Swiss Development Group], and has no corporate presence separate from SDG." *Id.* ¶ 127. Furthermore, Bourg stated that "any funds transferred for Triadou's benefit would immediately be moved overseas through a chain of other Ablyazov- or Khrapunov-controlled entities." *Id.* ¶ 128. Kazakhstan alleges that the other entities were similarly operated shell entities that were beneficially owned and controlled by Khrapunov and his family. *Id.* ¶¶ 135, 140, 146.

Judge Alison Nathan presided over an evidentiary hearing on May 19, 2016 during which Bourg testified in the New York RICO Action. Judge Nathan found Bourg's testimony credible. *Id.* ¶ 149. On June 24, 2016, Judge Nathan issued an order of attachment in favor of the City of Almaty and BTA Bank against Triadou's assets in the United States. *Id.* ¶ 150. In addition, Magistrate Judge Katharine H. Parker found in the New York RICO Action that Khrapunov funded the Flatotel and Cabrini investments through Triadou and that Triadou and SDG are alter egos for the purpose of the discovery motions before the court. *Id.* ¶¶ 152-54.

## B. Procedural History

On January 18, 2017—one day after dismissing the S.D.N.Y. hacking case—Kazakhstan filed a complaint in the Northern District of California against Ketebaev. ECF No. 1. On January 20, 2017, Kazakhstan filed a first amended complaint adding Khrapunov as a defendant. ECF No. 8. On June 9, 2017, Kazakhstan filed a certificate of service as to Khrapunov. ECF No. 24. On June 30, 2017, Khrapunov filed a motion to dismiss the first amended complaint. ECF No. 27. On August 15, 2017, Kazakhstan filed a certificate of service as to Ketebaev. ECF No. 29.

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

On August 21, 2017, Kazakhstan and Khrapunov filed a stipulation allowing Kazakhstan to file a second amended complaint. ECF No. 31. On August 22, 2017, the Court granted the stipulation allowing Kazakhstan to file a second amended complaint and denied the motion to dismiss the first amended complaint as moot. ECF No. 32. Also on August 22, 2017, Kazakhstan filed its second amended complaint. ECF No. 33.

On October 9, 2017, Khrapunov filed a motion to dismiss the second amended complaint. ECF No. 40. On November 9, 2017, Kazakhstan filed an opposition to the motion to dismiss. ECF No. 62. On November 29, 2017, Khrapunov filed a reply. ECF No. 65. On December 21, 2017, the Court granted Khrapunov's motion to dismiss the second amended complaint for lack of personal jurisdiction. ECF No. 67. The Court granted Kazakhstan leave to file a third amended complaint. *Id.*

On January 19, 2018, Kazakhstan filed a third amended complaint. ECF No. 69 ("TAC"). On January 25, 2018, Kazakhstan filed the instant motion to transfer the case to the Southern District of New York. ECF No. 70 ("Transfer Mot."). On February 7, 2018, Khrapunov filed the instant motion to dismiss the TAC. ECF No. 75 ("MTD"). On February 8, 2018, Khrapunov filed an opposition to the motion to transfer. ECF No. 77 ("Transfer Opp'n"). On February 15, 2018, Kazakhstan filed a reply in support of the motion to transfer. ECF No. 78 ("Transfer Reply"). On February 21, 2018, Kazakhstan filed an opposition to the motion to dismiss. ECF No. 79 ("MTD Opp'n"). On February 27, 2018, the Court granted the parties' stipulation to consolidate the hearings on the pending motion to transfer and motion to dismiss. ECF No. 80. On February 28, 2018, Khrapunov filed a reply in support of the motion to dismiss. ECF No. 81 ("MTD Reply").

Ketebaev has not yet appeared in this case.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Personal Jurisdiction

Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that

7

1    jurisdiction is proper. *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir.2008). Where, as here,

2    the defendant's motion is based on written materials rather than an evidentiary hearing, the

3    plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to

4    dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218,

5    1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127

6    (9th Cir. 2010)). At this stage of the proceeding, "uncontroverted allegations in plaintiff's

7    complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits

8    must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127 (internal quotation

9    marks, citations, and alterations omitted).

10   **B.      Motion to Transfer Pursuant to 28 U.S.C. § 1631**

11              "Under a provision of the Federal Courts Improvement Act, 28 U.S.C. § 1631, if a court

12   finds that there is a want of jurisdiction the court shall transfer the action to any other such court in

13   which the action could have been brought 'if it is in the interest of justice.'" *Miller v. Hambrick*,

14   905 F.2d 259, 262 (9th Cir. 1990). "In such an instance, the first federal court must transfer the

15   case to the proper court, if transfer is in the interest of justice." *In re McCauley*, 814 F.2d 1350,

16   1351 (9th Cir. 1987). Although there is a circuit split whether § 1631 applies when a court lacks

17   personal jurisdiction, *see* Wright et al., 15 Fed. Practice & Procedure, Jurisdiction § 3842 & nn.

18   19-21 (4th ed.), the Ninth Circuit appears to have adopted the view that transfer under § 1631 can

19   be appropriate to cure lack of personal jurisdiction. *See, e.g.*, *Gray & Co. v. Firstenberg*

20   *Machinery Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990) (vacating judgment entered by district court

21   that lacked personal jurisdiction and directing district court to transfer the case pursuant to § 1631

22   if it is in the interest of justice).

23   **C.      Leave to Amend**

24              Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

25   granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

26   decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

27

28   Case No. 17-CV-00246-LHK
     ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
     COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  However, a court "may exercise its

discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*,

629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)).

## III.     DISCUSSION

Because the parties base their arguments on both pending motions in part on the Court's

December 21, 2017 order granting Khrapunov's motion to dismiss for lack of personal

jurisdiction, the Court first summarizes the December 21, 2017 order.  The Court then turns to

Khrapunov's motion to dismiss the TAC and the motion to transfer.

### A.     The Court's December 21, 2017 Order Dismissing for Lack of Personal Jurisdiction

In the December 21, 2017 order, the Court first determined that it did not have general

personal jurisdiction over Khrapunov.  ECF No. 67 at 7.  Specifically, the Court found that "[t]he

SAC does not allege that Khrapunov is or was domiciled in California," nor did the SAC "allege

that Khrapunov has the level of continuous and systematic contacts with California that would

support a finding of general jurisdiction."  *Id.*

The Court then analyzed whether Kazakhstan had sufficiently established that the Court

had specific personal jurisdiction over Khrapunov.  *Id.* at 7-9.  To do so, the Court applied the

Ninth Circuit's three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform
> some act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice,
> i.e. it must be reasonable.

9

United States District Court
Northern District of California

*Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

With respect to the first prong, the Court determined that Kazakhstan's claims sounded in tort, and that as a result the purposeful direction test, rather than the purposeful availment test, applied. ECF No. 67 at 9. The purposeful direction test, "often referred to as the 'effects' test, derives from *Calder v. Jones*, 465 U.S. 783 (1984)." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). To satisfy the *Calder* purposeful direction test, "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks omitted). Because Khrapunov conceded that Kazakhstan had alleged an intentional act, the Court turned to the second prong of the *Calder* effects test: whether Khrapunov expressly aimed his challenged acts at the forum state. ECF No. 67 at 9.

To be satisfied, the "express aiming" inquiry requires "something more" than "a foreign act with foreseeable effects in the forum state." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000)), *abrogated on other grounds by Walden v. Fiore*, 134 S. Ct. 1115 (2014). The Court summarized the United States Supreme Court's 2014 decision in *Walden v. Fiore*, 134 S. Ct. 1115, the Ninth Circuit's application of *Walden* in *Axiom Foods*, and several district court decisions that considered whether purely online activity satisfied the express aiming prong of the *Calder* effects test. *Id.* at 11. The Court then applied these precedents to the instant case:

> In the instant case, Kazakhstan alleges that Khrapunov expressly aimed actions at California by hacking the Gmail accounts. *See* SAC ¶ 27; Opp. at 22. Specifically, Kazakhstan alleges that Google, which provides Gmail as a cloud-based email service, is headquartered in Mountain View, California. SAC ¶ 27. Kazakhstan does not allege that Khrapunov hacked any particular server in any particular location. Rather, Kazakhstan acknowledges that Google's servers that store its users' emails "can be located anywhere in the world." *Id.* ¶ 30. Kazakhstan also states that "the majority of [Google's] data centers (where its servers are located) are in the United States" without further specifying the

10

United States District Court
Northern District of California

location of any of the servers, let alone the location of the servers alleged to have been hacked by Khrapunov, who resides in Switzerland. *Id.* ¶ 29. Nevertheless, Kazakhstan contends that Khrapunov expressly aimed his actions at California because Google maintains control of Gmail data in California, even if the data are located throughout the world. *See* Opp. at 22 & n.13.

The Court finds that Kazakhstan has not sufficiently established that the hacking involved "entering California, contacting anyone in California, or otherwise reaching out to California." *Erickson*, 2015 WL 4089849, at *4. In fact, based on the allegations of the SAC, the servers containing the hacked information could "be located anywhere in the world." SAC ¶ 30. There is no allegation that Khrapunov believed the servers to be located in California, nor is there an allegation that the servers were actually located in California. The mere fact that Google—the company that owns the servers—is headquartered in California is not enough to establish that Khrapunov, a Kazakh citizen who resides in Switzerland, expressly aimed his alleged conduct at California. *See NexGen HBM*, 2017 WL 4040808, at *10-14; *Caracal Enterprises*, 2017 WL 446313, at *2-3. Indeed, in *Walden*, the United States Supreme Court reiterated that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." 134 S. Ct. at 1123. Applied to the instant case, *Walden* makes clear that Google's relationship with California is not enough to confer personal jurisdiction over Khrapunov, who resides in Switzerland and whose personal actions, based on the allegations in the SAC, appear to have occurred entirely outside California.

Indeed, "[i]t can hardly be said that California was the focal point" of the hacking. *Axiom Foods*, 874 F.3d at 1070-71. If anything, the location of Google's corporate headquarters appears to be "random," "fortuitous," or "attenuated" to Khrapunov's alleged actions and intent: hiring an Israeli company to hack Kazakh government emails stored on a server in an unknown location and posting those hacked emails for consumption by people in Kazakhstan. *See Mavrix Photo*, 647 F.3d at 1230; *see also Morrill*, 873 F.3d at 1145 (stating that the foreseeability of some incidental harm in the forum state does not show express targeting and "obscures the reality that none of [the] challenged conduct has anything to do with [the forum state] itself" (alterations in original)); *Doe v. Geller*, 533 F. Supp. 2d 996, 1007 (N.D. Cal. 2008) ("although the takedown notice was sent to [YouTube in] California, it was not aimed at any California resident").

ECF No. 67 at 12-13.

Even though the Court determined that Kazakhstan had not established the second prong of the *Calder* effects test, the Court nevertheless went on to analyze the third prong, foreseeable harm. *Id.* at 13. The Court found that "Kazakhstan has not carried its burden of showing that

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
COMPLAINT WITH PREJUDICE

Khrapunov's alleged hiring of an Israeli firm to hack Kazakh officials' email accounts caused harm to Kazakhstan in California, let alone that Khrapunov knew that any such harm would occur in California." *Id.* at 16.  The Court also "decline[d] to allow Kazakhstan to rely on some alleged de minimis injury to Google—which is not a party to this suit—to establish personal jurisdiction over a Kazakh citizen defendant who resides in Switzerland and who has no other alleged contacts to California." *Id.*  The Court explained that "[i]f such a theory of injury were permitted, than this Court would have jurisdiction over any case arising from any wrongful conduct on Gmail, Google, Facebook, Twitter, or YouTube, to name just a few of the technology companies headquartered in this district, whether or not those companies are parties to the dispute and whether or not the defendants in such cases have any other contacts to California." *Id.*

The Court thus concluded that "Kazakhstan has not shown that Khrapunov foresaw that the alleged hacking would cause harm in California.  As such, Kazakhstan has not satisfied the second or third prongs of the *Calder* purposeful direction test, and thus Kazakhstan has failed to meet the first part of the Ninth Circuit's three-part test for specific jurisdiction." *Id.* at 16.  The Court then reasoned that it need not decide whether the second prong of the Ninth Circuit's test for specific jurisdiction was met because the first and third prongs were not met.  *Id.* at 16-17.

With respect to the third prong, which examines whether the exercise of personal jurisdiction would be reasonable, the Court analyzed each of the seven factors that make up the Ninth Circuit's reasonableness inquiry: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)).  ECF No. 67 at 17.

Specifically, the Court found that first factor weighed against exercising jurisdiction

12

United States District Court
Northern District of California

because the extent of the purposeful interjection into California was not substantial.  ECF No. 67 at 17.  The second factor, the burden on the defendant, weighed slightly against exercising jurisdiction because the burden on Khrapunov of litigating in California would be significant in terms of travel, transportation of witnesses, and translation of evidence.  In addition, the Court found that Khrapunov would be burdened by adding another forum in addition to the cases he is already defending against Kazakhstan or its political subdivisions in New York and the Central District of California.  *Id.* at 18.  The third factor, sovereignty, also weighed slightly against exercising jurisdiction because Switzerland presumably has a sovereign interest in adjudicating a dispute involving one of its residents.  *Id.* at 19.  The fourth factor, the forum state's interest, weighed against exercising jurisdiction because no California resident is a party to the suit.  *Id.*

The Court found that the fifth factor, efficient resolution, weighed strongly against exercising jurisdiction, because Kazakhstan previously litigated the same hacking for two years in the Southern District of New York before voluntarily dismissing that case and filing the instant case the next day.  *Id.* at 20.  The only reason that Kazakhstan offered for preferring California with respect to the sixth factor, convenient and effective relief for the plaintiff, is that a U.S. court is best positioned to enforce the CFAA and SCA.  However, because the Southern District of New York, where Kazakhstan previously litigating this hacking, was just as well positioned to enforce the CFAA and SCA, the Court found that this factor was neutral.  Finally, with respect to the seventh factor, which looks to whether there is an adequate alternative forum, the Court noted that Khrapunov offered Switzerland as an adequate alternative forum.  However, the Court stated that "the parties do not address why the Southern District of New York would not be an adequate alternative forum."  *Id.* at 21.  Specifically, the Court noted that Kazakhstan originally brought suit related to the same hacking in the Southern District of New York and litigated the case there for two years.  The Court also noted that "as Kazakhstan itself acknowledges, Khrapunov has been actively litigating cases in the Southern District of New York, which shows that he is subject to personal jurisdiction in New York."  *Id.*  The Court thus determined that the seventh factor

13

weighed strongly against exercising jurisdiction. *Id.*

Having determined that the Court did not have specific personal jurisdiction over Khrapunov, the Court then turned to Kazakhstan's argument that Khrapunov is subject to personal jurisdiction in California based on Khrapunov's contacts with the United States as a whole. "This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2)." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006). "Rule 4(k)(2) imposes three requirements: First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Axiom Foods*, 874 F.3d at 1072 (citing *Pebble Beach*, 453 F.3d at 1159).

The Court found that "Kazakhstan's claims arise under the CFAA and SCA, satisfying the first requirement." ECF No. 67 at 22. However, the Court found that the second requirement was not met, based on the Court's understanding that Khrapunov was subject to personal jurisdiction in New York. *Id.* Thus, the Court found that Kazakhstan could not invoke jurisdiction under Rule 4(k)(2). Accordingly, the Court dismissed the SAC with leave to amend. *Id.* at 23.

## B.    Khrapunov's Motion to Dismiss the TAC

In the instant motion to dismiss the TAC, Khrapunov first argues that Kazakhstan's motion to transfer pursuant to 28 U.S.C. § 1361 constitutes a concession that the Court does not have personal jurisdiction over Khrapunov, because § 1361 only applies when the transferor court lacks jurisdiction. MTD at 7. Second, Khrapunov argues that the TAC has not cured the jurisdictional deficiencies identified in the Court's December 21, 2017 order dismissing the SAC. *Id.* Third, Khrapunov argues that Kazakhstan's allegation that Khrapunov is subject to personal jurisdiction in New York bars Kazakhstan from relying on Rule 4(k)(2) to establish personal jurisdiction. *Id.* at 14. The Court addresses these arguments in turn.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 1.  Kazakhstan's Motion to Transfer Pursuant to § 1361 Does Not Constitute a Concession

Khrapunov argues that Kazakhstan's reliance on § 1631 as the sole basis for its transfer motion constitutes a concession that the Court does not have personal jurisdiction over Khrapunov.  MTD at 7.  Khrapunov reasons that three conditions must be met in order for a court to transfer a case under § 1631: (1) the transferor court lacks jurisdiction, (2) the case could have been filed in the transferee court, and (3) transfer is in the interest of justice.  Because the Court's lack of jurisdiction is thus a requirement for transfer under § 1631, Khrapunov argues that Kazakhstan's reliance on § 1631—as opposed to § 1404(a), for example—effectively concedes that this Court lacks jurisdiction.  In its opposition, Kazakhstan explains that its motion to transfer under § 1631 is based on the Court's December 21, 2017 order, in which the Court found that it lacked personal jurisdiction over Khrapunov and stated that "Khrapunov is subject to personal jurisdiction in New York."  MTD Opp'n at 1.  Kazakhstan argues that it has not conceded that this Court lacks personal jurisdiction over Khrapunov.  To the contrary, Kazakhstan devotes nearly its entire opposition to arguing that this Court has jurisdiction under Rule 4(k)(2).  *See id.* at 1-3, 5-24.

Nowhere in Kazakhstan's motion to transfer does Kazakhstan explicitly concede that this Court lacks jurisdiction over Khrapunov.  Rather, Kazakhstan argues that the first requirement of § 1631 is satisfied because "this Court determined that it lacks general jurisdiction, specific jurisdiction, and jurisdiction under Fed. R. Civ. P. 4(k)(2) over Defendant Khrapunov, satisfying the first condition."  Transfer Mot. at 7; *see also id.* at 1 ("On December 21, 2017, this Court determined that it lacked personal jurisdiction over Defendant Khrapunov, and further held that jurisdiction and venue are proper in another forum—the United States District Court for the Southern District of New York.").  The Court declines to read Kazakhstan's motion to transfer, which Kazakhstan explicitly based on the Court's December 21, 2017 order finding a lack of jurisdiction, as a concession.  Indeed, reading the motion to transfer as a concession would make little sense in the light of the fact that Kazakhstan filed its third amended complaint, in which

15

1    Kazakhstan reasserted that Khrapunov is subject to personal jurisdiction in California under

2    specific jurisdiction and Rule 4(k)(2), less than a week before filing the motion to transfer.  The

3    Court thus declines to interpret Kazakhstan's motion to transfer as a concession that this Court

4    lacks personal jurisdiction.

5         **2.  Kazakhstan Has Not Cured the Previously Identified Jurisdictional Deficiencies**

6         Khrapunov next argues that Kazakhstan has not cured the jurisdictional deficiencies

7    identified in the Court's December 21, 2017 order dismissing the SAC.  MTD at 7.

8              **a.  General Jurisdiction Based on California Contacts**

9         Turning first to general jurisdiction based on contacts with California, Khrapunov contends

10   that Kazakhstan has not added any allegations in the TAC that Khrapunov was ever domiciled in

11   California or that Khrapunov has the level of continuous and systematic contacts with California

12   that would support a finding of general jurisdiction.  *Id.* at 8.  In its opposition, Kazakhstan does

13   not argue that the TAC establishes general jurisdiction over Khrapunov based on Khrapunov's

14   contacts with California.  Instead, Kazakhstan argues only that Khrapunov is subject to general

15   jurisdiction based on his country-wide contacts pursuant to Rule 4(k)(2).  *See* MTD Opp'n at 5-24.

16   Thus, by failing to respond to Khrapunov's argument, Kazakhstan has effectively conceded that

17   this Court does not have general jurisdiction over Khrapunov based on Khrapunov's contacts with

18   California.  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017)

19   (finding that plaintiff waived claim by failing to defend the claim in opposition to a motion to

20   dismiss).  In any event, the Court has independently reviewed the TAC and finds that the TAC still

21   fails to allege that Khrapunov was ever domiciled in California or that Khrapunov has the level of

22   continuous and systematic contacts with California that would support general jurisdiction.  Thus,

23   the Court lacks general jurisdiction over Khrapunov based on Khrapunov's contacts with

24   California.  *See Schwarzenegger,* 374 F.3d at 801; *Panavision*, 141 F.3d at 1320.

25              **b.  Specific Jurisdiction**

26         Khrapunov next argues that Kazakhstan fails to establish specific personal jurisdiction over

27                                              16

United States District Court
Northern District of California

Khrapunov.  As the Court explained in greater detail in its December 21, 2017 order, the Ninth

Circuit uses a three-part test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802); *see* ECF No. 67 at 7-9.

Because the CFAA and SCA causes of action sound in tort, the Court analyzes whether

Khrapunov purposefully directed his activities at the forum.  *See Axiom Foods*, 874 F.3d at 1069

("Where, as here, a case sounds in tort, we employ the purposeful direction test."); ECF No. 67 at

9.  When analyzing purposeful direction, the Ninth Circuit uses the *Calder* effects test: "[t]he

defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3)

causing harm that the defendant knows is likely to be suffered in the forum state."  *Axiom Foods*,

874 F.3d at 1069.

    In its December 21, 2017 order dismissing the SAC, the Court found that Kazakhstan had

not established the second or third prongs of the *Calder* effects test.  ECF No. 67 at 9-16.

Specifically, the Court rejected Kazakhstan's theory that Khrapunov, a Kazakh citizen living in

Switzerland, expressly aimed his actions at California by hiring an Israeli firm to hack Kazakh

officials' email accounts and posting the hacked emails online for consumption in Kazakhstan.  *Id.*

at 16.  The Court found that, "based on the allegations of the SAC, the servers containing the

hacked information could 'be located anywhere in the world.'  SAC ¶ 30.  There is no allegation

that Khrapunov believed the servers to be located in California, nor is there an allegation that the

servers were actually located in California."  ECF No. 67 at 12.  "The mere fact that Google—the

company that owns the servers—is headquartered in California is not enough to establish that

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

Khrapunov, a Kazakh citizen who resides in Switzerland, expressly aimed his alleged conduct at California. *See NexGen HBM*, 2017 WL 4040808, at *10-14; *Caracal Enterprises*, 2017 WL 446313, at *2-3.” ECF No. 67 at 12. Similarly, the Court found that Kazakhstan had not explained how it suffered harm in California. The Court also “decline[d] to allow Kazakhstan to rely on some alleged de minimis injury to Google—which is not a party to this suit—to establish personal jurisdiction over a Kazakh citizen defendant who resides in Switzerland” because the practical implication of such a ruling would be to give this Court jurisdiction over any case arising from any wrongful conduct on most major internet sites. *Id.* at 16.

Khrapunov argues that Kazakhstan has not added any relevant factual allegations in the TAC that would cure the deficiencies previously identified by the Court. MTD at 9-11. As with general jurisdiction, Kazakhstan fails to respond to this argument in its opposition. MTD Opp’n at 5-24. Instead, Kazakhstan states in a footnote that Kazakhstan recognizes that the Court previously found that it lacked specific jurisdiction over Khrapunov. *Id.* at 2 n.1. Kazakhstan states that it “respectfully reserves, and does not waive, its rights in that regard. Accordingly, Plaintiff respectfully adopts the arguments set forth in Plaintiff’s Opposition to Khrapunov’s motion to dismiss the SAC as if fully set forth herein.” *Id.* While such a statement may be sufficient to preserve the specific jurisdiction issue for appeal, incorporating by reference the identical argument that the Court has already considered and rejected in the previous motion to dismiss is not sufficient to carry Kazakhstan’s burden to establish personal jurisdiction. Moreover, inclusion of the pages Kazakhstan purports to incorporate by reference would cause Kazakhstan’s opposition to exceed the page limits set forth in Civil Local Rules 7-3(a) and 7-4(b).

In addition, the Court has independently reviewed the TAC and concludes that the TAC fails to adequately allege specific jurisdiction. The only relevant allegations that Kazakhstan added to the TAC relate to (1) the alleged hacking of privileged and confidential communications between a California office of Latham & Watkins (“Latham”) and the City of Almaty, (2) the fact that Wordpress, which hosts the Kazaword Website, is operated by Automattic, Inc., which is

United States District Court
Northern District of California

based in San Francisco, and (3) more detail on the modus operandi of the hackers, including that the hackers allegedly impersonated Google in order to gain access to the target accounts.

First, Kazakhstan alleges that Latham represents the City of Almaty in its suit against Khrapunov in the Central District of California. TAC ¶¶ 27-28. Kazakhstan alleges upon information and belief that "Defendants and/or their co-conspirators directed their actions toward and intended to cause harm in California by obtaining without authorization and improperly using privileged and confidential attorney-client communications between Latham and its clients." *Id.* ¶ 28; *see also id.* ¶¶ 46-47, 74-75. Neither Latham nor the City of Almaty is a party to the instant suit. Nor does Kazakhstan explain why a hacking allegedly aimed at two non-parties is relevant to the Court's specific jurisdiction analysis in the instant case, where the causes of action arise out of an alleged hacking of Kazakh government officials' emails. *See Axiom Foods*, 874 F.3d at 1068 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." (quoting *Walden*, 134 S. Ct. at 1121)); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("Unlike general jurisdiction, specific jurisdiction is tethered to a relationship between the forum and the claim."); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-32 (9th Cir. 2003) (employing "but for" test to determine whether claims arise out of specific activities); TAC ¶ 158 (alleging that Defendants violated 18 U.S.C. § 1050(a)(5)(B) by using a "'phishing' technique to steal the account names and passwords used by officials of the government of the Republic of Kazakhstan" and using that information to intentionally access the hacked accounts without authorization).

Second, Kazakhstan alleges that Automattic, a San Francisco-based company, runs Wordpress, which in turn hosts the Kazaword Website. *Id.* ¶¶ 56-58. However, Kazakhstan does not elaborate on how use of a publicly available online platform run by a California-based company constitutes express aiming or causes foreseeable harm in California. As the Court previously explained with respect to Google, Wordpress's relationship with California is not

19

United States District Court
Northern District of California

enough to confer personal jurisdiction over Khrapunov, a Kazakh citizen who resides in Switzerland. *See* ECF No. 67 at 12-15; *id.* at 15 (collecting cases holding that contacts with California-based technology companies that are not parties to the litigation are not enough to confer personal jurisdiction).

Finally, Kazakhstan provides more insight into the modus operandi of the alleged hackers, including that the hackers allegedly impersonated Google to gain access to the target email accounts. TAC ¶¶ 32-33. However, this detail does not change the Court's previous determination that some de minimis harm to Google, which is based in California, does not confer jurisdiction over Khrapunov, a Kazakh citizen who resides in Switzerland. *See* ECF No. 67 at 15-16.

Accordingly, the Court concludes that it does not have specific personal jurisdiction over Khrapunov. The Court next considers whether Khrapunov is subject to general jurisdiction based on his contacts with the United States as a whole under Federal Rule of Civil Procedure 4(k)(2).

### 3. Khrapunov is Not Subject to General Personal Jurisdiction Under Rule 4(k)(2)

Kazakhstan argues that Khrapunov is subject to general personal jurisdiction in California based on Khrapunov's contacts with the United States as a whole. MTD Opp'n at 5-24. "This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2)." *Pebble Beach*, 453 F.3d at 1158. "Thus, the rule provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002).

Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

20

United States District Court
Northern District of California

In other words, "Rule 4(k)(2) imposes three requirements: First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Axiom Foods*, 874 F.3d at 1072 (citing *Pebble Beach*, 453 F.3d at 1159). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Id.* (quoting *Holland Am. Line*, 485 F.3d at 462) (alteration in *Axiom Foods*).

Kazakhstan's claims arise under the CFAA and SCA and thus satisfy the first requirement.

The second requirement, that the defendant not be subject to personal jurisdiction in any state, is more complicated. The Court previously stated that Khrapunov was subject to personal jurisdiction in New York, which meant that Kazakhstan had not satisfied the second requirement for invoking jurisdiction under Rule 4(k)(2). *See* ECF No. 67 at 22-23. Neither party had made this specific argument. *See* ECF Nos. 40 (motion to dismiss), 62 (opposition), 65 (reply). Instead, the Court based this observation on Kazakhstan's discussion of the New York RICO Action, in which Khrapunov had appeared and actively litigated. *Id.* The Court assumed—wrongly, it now appears—based on the advanced stage of the New York RICO Action and Khrapunov's continued involvement in that case that Khrapunov had either consented to jurisdiction in New York or that a court in New York had found that Khrapunov was subject to personal jurisdiction in New York.

Contrary to the Court's previous understanding, Khrapunov makes clear in his opposition to the motion to transfer that he has not consented to jurisdiction in New York, nor has the court in the New York RICO Action explicitly found personal jurisdiction over Khrapunov. *See* Transfer Opp'n at 1-2, 8-14. Khrapunov explains for the first time in his opposition to the instant motion to transfer that Khrapunov requested that he be allowed to raise a personal jurisdiction defense at the close of discovery in the New York RICO Action. *Id.* at 9 (citing *City of Almaty v. Ablyazov*, No. 1:15-cv-5345-AJN-KHP, Docket 207 at 11-12 (S.D.N.Y.)). The court in the New York RICO

21

United States District Court
Northern District of California

Action did not explicitly rule on this request. *Id.* (citing *City of Almaty v. Ablyazov*, No. 1:15-cv-5345-AJN-KHP, Docket 423 at 45-52 (S.D.N.Y.)). Khrapunov also argues that even if the court in the New York RICO Action found that it had specific personal jurisdiction over Khrapunov, that would not mean that Khrapunov would be subject to specific personal jurisdiction in New York in the instant case. *Id.* Khrapunov's point is well taken. Accordingly, the Court now analyzes the second requirement of Rule 4(k)(2), whether Khrapunov is subject to personal jurisdiction in any other state.

Kazakhstan asserts that Khrapunov bears the burden of identifying a state in which Khrapunov is subject to personal jurisdiction. MTD Opp'n at 6. Because Khrapunov has not identified such a state, Kazakhstan contends that Rule 4(k)(2)'s second requirement is met. *Id.* at 7. Khrapunov argues that Kazakhstan's allegation in the TAC that Khrapunov is subject to personal jurisdiction in New York—an allegation Khrapunov disputes, as discussed above—is enough to prevent Kazakhstan from invoking Rule 4(k)(2). MTD at 14; MTD Reply at 6.

In *Holland America Line*, 485 F.3d 450, the Ninth Circuit explicitly assigned the defendant the burden to identify another state in which the defendant would be subject to personal jurisdiction. The Ninth Circuit explained, "Ordinarily, the plaintiff bears the burden of proving personal jurisdiction over the defendant. However, proving the lack of personal jurisdiction in every state could be quite onerous, and it is the defendant, not the plaintiff, that likely possesses most of the information necessary to do so." *Id.* at 461. The Ninth Circuit went on to hold that:

> [a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain suit.

*Id.* (quoting *ISI Int'l v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).

Accordingly, under *Holland America Line*, Khrapunov bears the burden of identifying a state in which he would be subject to personal jurisdiction. Khrapunov has not done so. Instead,

22

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
COMPLAINT WITH PREJUDICE

to defeat jurisdiction under Rule 4(k)(2), Khrapunov relies on Kazakhstan's allegation—which Khrapunov disputes—that Khrapunov is subject to personal jurisdiction in New York.  However, this argument is not persuasive.  First, Khrapunov ignores the Ninth Circuit's explicit assignment of the burden to identify a state in which he is subject to personal jurisdiction to the defendant, not the plaintiff.  *See id.*  Crediting Khrapunov's argument would allow Khrapunov to defeat jurisdiction under Rule 4(k)(2) while sidestepping his burden of "[n]aming a more appropriate state[, which] would amount to a consent to personal jurisdiction there."  *Id.* (quoting *ISI Int'l*, 256 F.3d at 552).  Moreover, Khrapunov's position ignores the well-established rule that plaintiffs can plead contradictory theories in the alternative.  *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("[W]e allow pleadings in the alternative—even if the alternatives are mutually exclusive.").  Here, the rule allowing contradictory pleading means that Kazakhstan's allegation in the alternative that Khrapunov is subject to personal jurisdiction in New York does not prevent Kazakhstan from also advancing a theory of personal jurisdiction under Rule 4(k)(2).

Accordingly, because Khrapunov has not satisfied his burden to identify another state in which he would be subject to personal jurisdiction, Rule 4(k)(2)'s second requirement is satisfied.  *See Holland Am. Line*, 485 F.3d at 462 ("Thus, absent any statement from either Wartsila or Wartsila Finland that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met.").

Thus, the Court must examine the third requirement of Rule 4(k)(2): whether the exercise of personal jurisdiction would comport with due process.  "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Mavrix Photo*, 647 F.3d at 1223 (internal quotation marks omitted).  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

nation as a whole." *Axiom Foods*, 874 F.3d at 1072 (quoting *Holland Am. Line*, 485 F.3d at 462) (alteration in *Axiom Foods*).

Kazakhstan does not argue that Khrapunov is subject to specific jurisdiction under Rule 4(k)(2). Rather, Kazakhstan asserts that Khrapunov is subject to general jurisdiction under Rule 4(k)(2). *See* MTD Opp'n at 2 ("As set forth below, Khrapunov's purchases and sales of more than $80 million in U.S. real estate over a six-year period meet the standard for general jurisdiction under Rule 4(k)(2)."). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State"; however, "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *Mavrix Photo*, 647 F.3d at 1224 (quoting *Schwarzenegger*, 374 F.3d at 801).

Although the U.S. Supreme Court and the Ninth Circuit have examined the standard for general jurisdiction over corporations in recent years, there is relatively sparse U.S. Supreme Court and Ninth Circuit authority interpreting the standard for general jurisdiction over individuals. *Cf. Daimler*, 571 U.S. at 128 ("Our post-*International Shoe* opinions on general jurisdiction, by comparison [to specific jurisdiction], are few."). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). "The 'paradigm' forums in which a

24

corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 137); *see Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) ("in the paradigmatic circumstance for exercising general jurisdiction, the corporate defendant is incorporated or has its principal place of business in the forum state").

"The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). The U.S. Supreme Court has also described the "exceptional case" of general jurisdiction over a foreign corporation as one in which a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919); *see also Williams*, 851 F.3d at 1020 (quoting *Goodyear*). The Ninth Circuit has also described the level of contacts required for general jurisdiction as "'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." *Mavrix Photo*, 647 F.3d at 1223-24 (first quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), then quoting *Bancroft & Masters*, 223 F.3d at 1086).

Although the U.S. Supreme Court has not explicitly applied the "continuous and systematic" contacts framework to determining general jurisdiction over an individual, as opposed to a corporation, the Court assumes that the same standard would apply to an individual. *See Silva v. Gonzales*, 667 F. App'x 967, 968 (9th Cir. 2016) (unpublished) (analyzing whether individual defendants had continuous and systematic contacts with California that approximate physical presence); *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1378 (9th Cir. 1981) ("It is clear that appellee Markwitz has not engaged in 'substantial' or 'continuous and systematic' activities in California so as to invoke general jurisdiction."); Charles Alan Wright et al., 4A Fed. Practice & Procedure § 1069.5 (4th ed.) ("Although both types of defendants are presumably subject to the

25

same requirement that their contacts with the forum state must be so continuous and systematic as to render them essentially at home there, the paradigm locations for general jurisdiction over a corporation are its state of incorporation and its principal place of business, while the paradigm forum for an individual is his or her state of domicile." (footnotes omitted)).

Here, Kazakhstan asserts that "Khrapunov's U.S. contacts between 2012 and the present constitute continuous and systematic U.S. contacts that approximate physical presence." MTD Opp'n at 9. Specifically, Kazakhstan contends that "[b]etween 2012 and the present, Khrapunov engaged in the purchase of six U.S. properties, and the sale of five of those properties. (He continues to own the sixth property.)." *Id.* at 10 (citing TAC ¶ 116). "Khrapunov's purchases totaled over $80 million, while his sales totaled over $90 million." *Id.* (citing TAC ¶¶ 118-22, 129-48). Kazakhstan alleges that Khrapunov made each of these purchases through shell corporations that should be considered Khrapunov's alter egos for the purposes of the instant jurisdictional analysis. *Id.* at 10-20.

Khrapunov does not dispute that the shell corporations' contacts should be attributable to Khrapunov, and so the Court assumes without deciding that the TAC sufficiently alleges that the shell corporations are Khrapunov's alter egos for the purposes of the instant analysis. *See generally Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (stating test for analyzing alter ego allegations). However, even imputing the shell corporations' transactions to Khrapunov, the Court finds that six real estate transactions over six years is not sufficient to support the exercise of nationwide general jurisdiction over a foreign individual. Specifically, the U.S. Supreme Court in recent years has stressed that the exercise of general jurisdiction over a non-resident is reserved for "exceptional case[s]" where a defendant is essentially at home in the forum state, *BNSF Ry. Co.*, 137 S. Ct. at 1558, and has cautioned against adopting a "sprawling view of general jurisdiction," *Goodyear*, 564 U.S. at 929. The Ninth Circuit has echoed that general jurisdiction is only available outside the paradigmatic forums in an "exceptional case" where the defendant's contacts are so "constant and pervasive" that the defendant is essentially at home in the forum

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE

United States District Court
Northern District of California

state.  *See Williams*, 851 F.3d at 1020-21; *Ranza*, 793 F.3d at 1068-69; *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014); *Mavrix Photo*, 647 F.3d at 1223-24.  Under this "exacting standard," Khrapunov's real estate transactions do not render him essentially at home in the United States.  *See Mavrix Photo*, 647 F.3d at 1224; *Schwarzenegger*, 374 F.3d at 801.

For example, in *Goodyear*, 564 U.S. 915, the U.S. Supreme Court observed that "[a] corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"  *Id.* at 927 (quoting 326 U.S. at 318).  Similarly, in *Daimler*, 571 U.S. 117, the U.S. Supreme Court rejected as "unacceptably grasping" the argument that a corporation should be subject to general jurisdiction in every state in which the corporation "engages in a substantial, continuous, and systematic course of business."  *Id.* at 137-38.  The U.S. Supreme Court explained that "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"  *Id.* at 138-39 (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks omitted) (alteration in *Daimler*); *see also Williams*, 851 F.3d at 1020 (citing same standard).  Thus, the U.S. Supreme Court found that the California-based facilities and substantial California sales of a Delaware subsidiary based in New Jersey did not support the exercise of general jurisdiction in California.  *See id.* at 123 (stating that subsidiary had multiple California-based facilities, subsidiary was the largest supplier of luxury vehicles to the California market, and subsidiary's California sales accounted for 2.4% of Daimler's worldwide sales), 136-37 (holding that the California contacts "hardly render [Daimler] at home [in California]").  In so holding, the U.S. Supreme Court stressed the need to limit the exercise of general jurisdiction:

> If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable.  Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that

27

United States District Court
Northern District of California

conduct will and will not render them liable to suit.' *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks omitted). *Id.* at 139. Also relevant to the instant case, the U.S. Supreme Court observed that "the transnational context of th[e] dispute bears attention" and criticized the Ninth Circuit for paying "little heed to the risks to international comity its expansive view of general jurisdiction posed." *Id.* at 140.

Moreover, in *BNSF Railway*, 137 S. Ct. 1549, the U.S. Supreme Court again rejected the exercise of general jurisdiction over a foreign corporation. Even though BNSF had "over 2,000 miles of railroad track and more than 2,000 employees in Montana," the U.S. Supreme Court cautioned that "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.'" *Id.* at 1559 (quoting *Daimler*, 571 U.S. at 139 n.20). "Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.20) (alteration in *BNSF Ry.*). Thus, the U.S. Supreme Court found that BNSF, which was not incorporated in Montana and does not maintain its principal place of business in Montana, was not subject to general personal jurisdiction in Montana because BNSF was not "so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State." *Id.*

Similarly, in *Williams*, the Ninth Circuit recently applied similar reasoning to reject the exercise of general jurisdiction in California over a Japanese corporation whose principal place of business was in Japan. 851 F.3d at 1021-22. The Ninth Circuit stated that "the general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can be rightly considered at home." *Id.* (quoting *Ranza*, 793 F.3d at 1071). Because the evidence in *Williams* indicated that the defendant had "109 consolidated subsidiaries located in at least 26 different countries and spanning five continents" and that net sales in North America as a whole accounted for 17% of the defendant's total net sales, the California market "may be important" for the defendant, but there was insufficient evidence that the defendant was "at home" in California. *Id.* at 1022.

28

Thus, the U.S. Supreme Court and Ninth Circuit have made clear that general jurisdiction must be limited to the paradigmatic forums—an individual's state of domicile or a corporation's state of incorporation or principal place of business—or the "exceptional case" where the defendant's contacts are so substantial to render the defendant essentially at home in the forum.

Kazakhstan argues that "[i]n the Ninth Circuit, the standard for general jurisdiction over an *individual* remains unchanged by the Supreme Court's ruling in [*Daimler*], which refined the test for general jurisdiction over a *corporation*." MTD Opp'n at 9-10. Kazakhstan's argument is not persuasive. First, the only authority Kazakhstan cites in support is an unpublished Ninth Circuit decision that affirmed a district court's finding that it lacked general jurisdiction over individual defendants who did not have "continuous and systematic" contacts with the forum that "approximate physical presence." *Id.* at 10 (citing *Silva*, 667 F. App'x at 968). In addition to being unpublished, and thus non-binding, there is nothing about *Silva* to suggest that that case presented the question of *Daimler*'s effect on general jurisdiction over an individual. Nor does *Silva* suggest that the "approximat[ing] physical presence" standard that it applied is inconsistent with *Daimler*. *See generally Mavrix Photo*, 647 F.3d at 1224 (stating same standard in a case decided after *Goodyear*, which contained many of the same principles as *Daimler*). Second, even though the U.S. Supreme Court's recent general jurisdiction cases have concerned corporations, Kazakhstan has identified no reason why the U.S Supreme Court's reasoning in those decisions would not apply with equal force to general jurisdiction over individuals. To the contrary, the U.S. Supreme Court's insistence on limiting general jurisdiction to forums where a defendant is essentially at home seems equally applicable to individuals, as does the concern about international comity in the case of a foreign national individual defendant. Thus, because Kazakhstan has not alleged that Khrapunov is domiciled anywhere in the United States, the Court must analyze whether the real estate transactions identified in the TAC represent such systematic and continuous contacts with the United States as to render Khrapunov essentially at home in the United States.

United States District Court
Northern District of California

Case 5:17-cv-00246-LHK Document 113 Filed 06/08/18 Page 31 of 37

Besides stressing the dates and dollar amounts of the sales, Kazakhstan offers little argument or authority in support of its contention that the real estate transactions approximate physical presence or render Khrapunov essentially at home in the United States. Although not briefed by the parties, the U.S. Supreme Court has repeatedly identified *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as a case where the exercise of general jurisdiction over a foreign corporation was appropriate. *See BNSF Ry.*, 137 S. Ct. at 1558 (stating that *Perkins* "exemplified" the "exceptional case"); *Daimler*, 571 U.S. at 129-30 (discussing *Perkins*); *Goodyear*, 564 U.S. at 927-28 (calling *Perkins* the "textbook case of general jurisdiction appropriately exercised over a foreign corporation"); *see also Martinez*, 764 F.3d at 1068-69 (recognizing that the U.S. Supreme Court identified *Perkins* as a "textbook case of general jurisdiction"). In *Helicopteros*, 466 U.S. 408, the U.S. Supreme Court summarized the facts of *Perkins*:

> During the Japanese occupation of the Philippine Islands, the president and general manager of a Philippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company. He kept company files and held directors' meetings in the office, carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines. In short, the foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business," and the exercise of general jurisdiction over the Philippine corporation by an Ohio court was "reasonable and just."

*Id.* at 414-15 (quoting *Perkins*, 342 U.S. at 438, 445).

Unlike *Perkins*, there is no allegation in the instant case that Khrapunov has ever been physically present in the United States, let alone that he has spent significant amounts of time here. Needless to say, there is no allegation that Khrapunov has lived in the United States or established a domicile here. There also is no allegation that Khrapunov's shell corporations had a physical presence or any staff in the United States. *See, e.g.*, *Martinez*, 764 F.3d at 1070 ("This is not such an exceptional case. ATR is organized and has its principal place of business in France.

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
COMPLAINT WITH PREJUDICE

It has no offices, staff, or other physical presence of California, and it is not licensed to do business in the state.").

There is no allegation that the profits from the real estate sales remained in the United States—in fact, to the contrary, Kazakhstan alleges that funds owed to Triadou, one of the shell corporations, never "remained in the United States." MTD Opp'n at 14 (citing ECF No. 62-4 ¶ 43; TAC ¶ 128). Kazakhstan states that "[p]ayments owed to Triadou from its sale of its interest in the Flatotel project in New York City, for instance, were wired to a different entity in Geneva Switzerland." *Id.* (internal quotation marks omitted) (citing ECF No. 62-4 ¶ 45; TAC ¶ 137). Kazakhstan similarly alleges that the proceeds from the sale of the Tri-County Mall were moved outside the United States. *Id.* In addition, besides alleging that Khrapunov has been personally involved in trying to sell the sole remaining New York property, *see* MTD Opp'n at 15, Kazakhstan does not allege that Khrapunov or his shell corporations were actively involved in managing or developing any of the properties that the shell corporations owned. Although Kazakhstan does reference in passing the fact that the shell corporations have brought several lawsuits—presumably related to the real estate investments—in New York state courts, such contacts do not add enough to the real estate transactions themselves to render Khrapunov essentially at home in the United States, nor do they amount to a consent to personal jurisdiction in other, unrelated cases. *See generally AM Trust v. UBS AG*, 681 F. App'x 587, 589 (9th Cir. 2017) (unpublished) ("AM Trust has cited nothing to support its contention that any consent UBS may have given to personal jurisdiction in California in other cases would amount to consent to personal jurisdiction in this case."); *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 834-35 (9th Cir. 2005) (doubting whether a party could demonstrate consent to jurisdiction even through the more case-specific act of "seek[ing] affirmative relief in a separate action before the same court concerning the same transaction or occurrence").

Although the real estate transactions account for a significant amount of money—tens of millions of dollars—the U.S. Supreme Court has instructed that "the general jurisdiction inquiry

31

United States District Court
Northern District of California

does not focus solely on the magnitude of the defendant's in-state contacts" and that the inquiry "calls for an appraisal of [the defendant's] activities in their entirety." *BNSF Ry.*, 137 S. Ct. at 1559 (quoting *Daimler*, 571 U.S. at 139 n.20); *see also Williams*, 851 F.3d at 1021-22 (same); *Martinez*, 764 F.3d at 1070 (finding general jurisdiction inappropriate in part because the defendant's "California contacts are minor compared to its other worldwide contacts"). Thus, without any allegations as to the magnitude or location of Khrapunov's other assets and investments throughout the world, the Court cannot say that the real estate transactions alleged in this case are so significant as to render Khrapunov essentially at home in the United States. If Khrapunov invests in real estate in many countries, for example, Khrapunov "can scarcely be deemed at home in all of them." *BNSF Ry.*, 137 S. Ct. at 1559. In addition, the Court notes that Kazakhstan offers evidence in the context of argument on a separate issue that the U.K. High Court of Justice entered money judgments against Khrapunov's father-in-law for more than $4.6 billion, which suggests that the $80 million in real estate transactions at issue here may represent only a fraction of Khrapunov's total wealth. *See* Transfer Mtn. at 1-2.

Moreover, the fact that Khrapunov's contacts with the United States take the form of ownership of property in the United States rather than some other type of contact is not determinative for the purposes of the instant analysis. As the U.S. Supreme Court explained in *Rush v. Savchuk*, 444 U.S. 320 (1980), "the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action." *Id.* at 328. "The ownership of property in the State is *a* contact between the defendant and the forum, and it may suggest the presence of other ties." *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 209 (1977)). "Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe*." *Id.*; *see also OOO Brunswick Rail Mgmt. v. Sultanov*, 17-cv-17-EJD, 2017 WL 2438562, at *1 (N.D. Cal. June 6, 2017) ("frequent visits to a forum, [or] owning property in a forum, do not, alone, justify the exercise of general jurisdiction" (quoting *Hendricks v. New Video Channel Am., LLC*, No. 14-

32

1   CV-2989-RSWL-S, 2015 WL 3616983, at *4 (C.D. Cal. June 8, 2015)); *Cobalt Grp., Inc. v.*

2   *Spangenberg*, No. CV 08-1195-GHK, 2008 WL 11338435, at *4 (C.D. Cal. June 10, 2008)

3   ("Although property ownership may give rise to the inference that other contacts with California

4   exist, it is Plaintiff's burden to show those contacts.").

5          The Court is also mindful of the concerns about international comity that the U.S. Supreme

6   Court expressed in *Daimler*. Ruling that investment in the United States or ownership of property

7   in the United States alone were enough to confer general jurisdiction over a foreign individual

8   under Rule 4(k)(2) would potentially have far-reaching effects that would expand the concept of

9   general jurisdiction in a way that conflicts with the U.S. Supreme Court's recent decisions on

10  general jurisdiction.

11         For all of these reasons, the Court concludes that the exercise of general jurisdiction under

12  Rule 4(k)(2) based on Khrapunov's contacts with the United States as a whole would not comport

13  with due process. As the Ninth Circuit stated in another case, "while it is clear that [Khrapunov]

14  has stepped through the door, there is no indication that [he] has sat down and made [him]self at

15  home" in the United States. *Glencore Grain*, 284 F.3d at 1125. Thus, Kazakhstan has not

16  established that the Court has personal jurisdiction over Khrapunov under Rule 4(k)(2).

17  Accordingly, the Court turns to Kazakhstan's motion to transfer to the Southern District of New

18  York to determine whether the case should be transferred or dismissed.

19  **C.     Kazakhstan's Motion to Transfer**

20         Pursuant to 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that

21  court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice,

22  transfer such an action . . . to any other such court in which the action or appeal could have been

23  brought at the time it was filed." Thus, "[t]ransfer is appropriate under § 1631 if three conditions

24  are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised

25  jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-*

26  *Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001). "When determining whether transfer is in

27

28  Case No. 17-CV-00246-LHK
    ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
    COMPLAINT WITH PREJUDICE

the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors." *Id.*

As discussed above and in the Court's December 21, 2017 order, the Court lacks personal jurisdiction over Khrapunov. The first condition of § 1631 is thus satisfied.

With respect to the second condition of § 1631, whether the transferee court could have exercised jurisdiction at the time the action was filed, Kazakhstan relies on the Court's statement in the December 21, 2017 order that Khrapunov is subject to personal jurisdiction in New York. *See* Transfer Mtn. at 7-8; Transfer Reply at 6-7. As the Court explained above, however, further information from Khrapunov about the status of the New York RICO Action shows that the Court's previous statement was incorrect.

Indeed, the Court's Rule 4(k)(2) analysis, above, confirms that Khrapunov would not be subject to general jurisdiction in New York based on the allegations in the TAC. If Khrapunov's contacts with the United States as a whole are insufficient to confer general jurisdiction under Rule 4(k)(2) consistent with due process, then some lesser subset of contacts would also be insufficient to confer general jurisdiction in New York. *See generally Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016) ("A court may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render [it] essentially at home in the forum State.'" (quoting *Daimler*, 571 U.S. at 122 (internal quotation marks omitted))).

With respect to specific jurisdiction, Kazakhstan has similarly failed to establish that Khrapunov would be subject to specific jurisdiction in New York in the instant case. "The exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Id.* (quoting *Goodyear*, 564 U.S. at 923) (emphasis in original). The only connection between the hacking that gave rise to this case and New York is the location of Kazakhstan's counsel, some of whose communications with Kazakhstan were published as a result of the hacking. *See* TAC ¶ 25-

34

United States District Court
Northern District of California

26, 86. Specifically, Kazakhstan alleges that Defendants "specifically selected some of these privileged and confidential emails between Plaintiff and the Curtis law firm as among the very first hacked emails to single out for publication on the internet." *Id.* ¶ 26. "In doing so, Defendants caused harm to the Plaintiff in the United States (including in New York) and elsewhere by breaching the attorney-client privilege between Plaintiff and its New York-based counsel." *Id.* However, even assuming that the harm of a breach of the attorney-client privilege was felt in New York—as opposed to in Kazakhstan—the foreseeability of harm in the forum state is not sufficient to establish specific jurisdiction, particularly when the plaintiff or a third party is the only tie between the forum and the defendant's action. *See Walden*, 571 U.S. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) ("The 'foreseeability of causing injury in another State,' however, will not suffice." (quoting *Burger King Corp.*, 471 U.S. at 474)).

As the U.S. Supreme Court has instructed, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 1125. Kazakhstan has failed to establish that this case, which involves a Kazakh citizen who resides in Switzerland allegedly hiring an Israeli firm to hack the email accounts of Kazakh government officials for publication in Kazakhstan, is connected to New York in any meaningful way. Thus, while the Southern District of New York may have specific jurisdiction over Khrapunov for causes of action arising out of Khrapunov's New York real estate holdings, Kazakhstan has not established that the Southern District of New York would have specific jurisdiction in the instant case. Accordingly, the second requirement of § 1631 is not satisfied.

The Court thus DENIES the motion to transfer and DISMISSES the case for lack of personal jurisdiction. In its December 21, 2017 order dismissing the case for lack of personal

Case No. 17-CV-00246-LHK
ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS THIRD AMENDED
COMPLAINT WITH PREJUDICE

jurisdiction, the Court cautioned Kazakhstan that failure to cure the deficiencies identified in that order would result in dismissal of the case with prejudice as to Khrapunov.  ECF No. 67 at 23.  As explained in this order, Kazakhstan has failed to cure the jurisdictional deficiencies previously identified by the Court.  In addition, the instant complaint is Kazakhstan's fourth complaint in this Court, which in turn follows two years of litigation, including discovery, in the Southern District of New York related to the same hacking.  Moreover, Kazakhstan has apparently sought discovery against Khrapunov through subpoena enforcement proceedings in Washington state court and the Eastern District of California.  Transfer Opp'n at 16; Transfer Reply at 2.  Court proceedings in the New York RICO Action and the California RICO Action have provided additional information about Khrapunov's contacts with the United States, and Kazakhstan has already availed itself of that information in the instant case.  Thus, the Court finds that Kazakhstan has failed to cure deficiencies by amendments previously allowed and that allowing further leave to amend would be futile.  The case is thus dismissed with prejudice as to Khrapunov.  *See Carvalho*, 629 F.3d at 892-93.

Moreover, because Kazakhstan concedes in its motion to transfer that non-appearing defendant Ketebaev "has no greater jurisdictional ties to the Northern District of California than does Khrapunov," Transfer Mot. at 1 n.1, the Court also finds that it lacks personal jurisdiction over Ketebaev.

## IV.    CONCLUSION

For the foregoing reasons, the motion to transfer is DENIED and the motion to dismiss is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: June 8, 2018

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

36

United States District Court
Northern District of California