UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAHKSTAN, and BTA BANK JSC,

        Movants,

v.

GENNADY PETELIN,

        Respondent.

No. 18 Misc. 227 (AJN) (KHP)
No. 15-cv-5345 (AJN) (KHP)

# MEMORANDUM OF LAW IN SUPPORT OF THE KAZAKH ENTITIES' MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 11, 2019 ORDER

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Movants*

## **TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT**............................................................................................................................ 2

      A.      Relevant Facts ................................................................................................... 2

      B.      The Legal Standard ........................................................................................... 3

            1.      Reconsideration..................................................................................... 3

            2.      Law of the Case .................................................................................... 4

      C.      Discussion ......................................................................................................... 4

**CONCLUSION** ........................................................................................................................ 7

The City of Almaty, Kazakhstan, and BTA Bank JSC (the "Kazakh Entities" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for reconsideration of the Court's September 11, 2019 Order cancelling the evidentiary hearing previously scheduled for September 24. [ECF No. 59 in 18 Misc. 227; ECF No. 1167 in 15-cv-5345.][1]

## INTRODUCTION

Gennady Petelin, in response to this Court's subpoenas and subsequent orders, provided demonstrably false testimony and fabricated documents. Faced with Plaintiffs' motion to hold him in contempt for his perjury and obstruction, and with this Court's order scheduling an evidentiary hearing, Petelin sought on two separate occasions to cancel or delay that hearing. The Court denied both requests.

In issuing the September 11, 2019 Order canceling the evidentiary hearing that was previously scheduled for September 24, 2019, and denying the Plaintiffs' motion for sanctions (without prejudice), the Court appears to have overlooked those prior orders, as well as some of the legal and practical consequences of delaying a hearing on Petelin's contempt, which the parties never had an opportunity to previously air. Because those orders constituted the law of the case, because neither Petelin nor the Court identified an intervening ruling by a higher court or cogent and compelling reasons for delay, and because delay will cause serious prejudice, the Kazakh Entities respectfully request that the Court reconsider its September 11 Order and set a new date for an evidentiary hearing on the Kazakh Entities' motion for contempt and sanctions against Petelin. In the alternative, the Kazakh Entities respectfully request that the Court permit

---

[1] All other citations to docket entries in this memorandum of law are to the docket in 18 Misc. 227.

1

a limited additional deposition of Petelin, in California, so that he can be confronted with the newly discovered evidence prior to trial.

## ARGUMENT

### A.    Relevant Facts

On April 17, 2019, the Kazakh Entities filed a letter requesting a conference in advance of a motion for contempt and sanctions against Petelin. [ECF No. 41.] As explained in that letter, materials received from SMP Partners demonstrated that Petelin had perjured himself and produced fake documents when he claimed that he had funded Northern Seas Waterage, the undisputed source of the funds at issue in the underlying case. On two separate occasions, Petelin sought to delay the hearing. The Court denied his request both times.

First, at the June 4, 2019 pre-motion conference, Petelin argued that the Kazakh Entities' sanctions motion "should be deferred until after the trial." Declaration of Matthew L. Schwartz ("Schwartz Decl.") Exhibit A at 9:22–23. The Court expressly rejected that argument, holding that it was "not going to defer the motion." *Id.* at 9:24–25. Instead, the Court granted Petelin an opportunity for discovery and time to prepare for the hearing. The Court then issued another Order on June 14 detailing the procedure for the hearing to be held on September 24. [ECF No. 50.] Following these orders, the parties engaged in robust pre-hearing discovery, with the Kazakh Entities producing to Petelin numerous relevant documents – including the entirety of the production from SMP Partners – as well as responses to his interrogatories.

Even as he obtained all of the evidence against him and a roadmap of the Plaintiffs' contempt case, Petelin moved for reconsideration of the Court's order establishing the procedure for the hearing. [*See* ECF No. 51.] Petelin requested full pre-hearing briefing, and then again requested a delay, arguing that discovery and any hearing should "be rescheduled as necessary to accommodate the motion and briefing." *Id.* On June 14, 2019, the Court denied this request as

2

well, noting that "Petelin has pointed to no legal error or other facts overlooked by this Court" in setting the September 24 hearing [ECF No. 53.]

After having failed twice to delay the hearing, Petelin tried to avoid appearing at it. On September 3, 2019, Petelin wrote to the Court to seek "clarification" of, among other things, whether the Court was ordering him to appear personally in New York. Petelin did not ask that the Court cancel the hearing or renew his prior, rejected request to defer a hearing until after trial. [ECF No. 56.] The Kazakh Entities responded, explaining that Petelin's perjury at his deposition was squarely before the Court, and that the Court had multiple independent bases on which it could order Petelin's personal appearance. [ECF No. 57.]

On September 11, 2019, after the parties had engaged in extensive discovery and preparations for the hearing and without addressing Petelin's September 3 letter seeking clarification, the Court entered an order cancelling the September 24 hearing. [ECF No. 59.] The Court further denied the Kazakh Entities' motion for sanctions without prejudice, noting that the Kazakh Entities "may re-request permission to file a motion for sanctions against Petelin after a trial on the merits in *City of Almaty et. ano. v. Ablyazov, et al.*, 15-CV-05345 (AJN) (KHP), to the extent proof is established that Petelin, in fact, lied during his deposition and produced false documents." *Id.*

B.   **The Legal Standard**

   1.   **Reconsideration**

Under Local Civil Rule 6.3, "a notice of motion for reconsideration" "shall be served within fourteen (14) days after the entry of the Court's determination of the original motion". S.D.N.Y. L.R. 6.3. "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." *Id.*; *see also CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-CV-5345 (AJN), 2016 WL 3481061,

at *1 (S.D.N.Y. June 21, 2016).

### 2. Law of the Case

The law of the case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations and quotation marks omitted). This branch of the doctrine "is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court." *Id.*

### C. Discussion

Reconsideration is warranted because it appears the Court overlooked its prior orders rejecting Petelin's earlier requests for delay when it entered the September 11 Order canceling the September 24 hearing. Aside from Petelin's September 3 request for "clarification," nothing had changed factually or legally between the September 11 Order canceling the hearing and the Court's June 7 and June 14 rejections of Petelin's earlier requests for delay. Petelin's September 3 request for clarification did not even seek to cancel the hearing. And the Court's September 11 Order did not explain why the hearing was canceled or why there was a cogent and compelling reason for the Court not to adhere to its June 7 and June 14 rulings with respect to the hearing. Reconsideration is thus warranted because it appears that the Court overlooked its earlier orders with respect to the hearing, and the reliance placed by the Plaintiffs on those orders in (for example) producing voluminous information to Petelin and responding to his interrogatories, in express preparation for the hearing.

Reconsideration is also warranted because the Court appears to have overlooked the serious practical, procedural, and legal consequences of deferring consideration of the sanctions motion. Indeed, Plaintiffs never had an opportunity to present those prejudicial consequences to

4

the Court because the Court initially denied Petelin's request to defer the hearing until after trial out of hand, Schwartz Decl. Ex. A at 9:18-24, and then issued its September 11 Order *sua sponte*, and without advance notice to the parties.  The real prejudice to the Kazakh Entities from deferring consideration of the sanctions issue is an additional, independent basis on which to grant reconsideration – particularly when there is no good reason for delay.

*First*, the question of Petelin's perjury may not be resolved at trial in the main action. Depending on how the Kazakh Entities present their affirmative case and how the Defendants choose to present their defense, Petelin's perjury may not come up at all, and certainly may not be front-and-center in the presentation of evidence. The existence of the SMP Partners documents is compelling proof of the falsity of the Defendants' counter-narrative that the money came from Petelin. Rather than presenting a provably false counter-narrative that will fundamentally undermine their credibility with the jury, Defendants are more likely to employ a different trial strategy, such as arguing that the Kazakh Entities have not met their burden by a preponderance of the evidence.  Indeed, the Defendants may well – and probably should – decide that it would be ethically problematic to tender Petelin's testimony at trial, given its obvious falsity.  N.Y. Rule of Prof. Conduct 3.3(a)(3), (b).  The question of Petelin's perjury therefore may not be resolved at trial.

*Second*, relying on the trial in the main action to determine the reliability of Petelin's evidence runs the risk of knowingly tainting the jury with false evidence, and also of creating a trial-within-a-trial on issues that may or may not be central to the proof. In a trial on the merits, the Kazakh Entities may have limited leeway to prove Petelin's perjury — any judge, mindful of the demands placed on a jury, may be reluctant to permit a full trial of Petelin within the trial, no matter how central his testimony to the case. The Kazakh Entities should not have to hope for the

5

opportunity to prove Petelin's lies during trial and risk that Petelin's lies make their way to the jury without a full challenge when they ordinarily would be able to do so through discovery — which, conveniently for Petelin, expired at the same time that his lies were revealed — or a contempt hearing.  If nothing else, the Court should issue a revised Order that reopens Petelin's deposition and permits the Kazakh Entities to confront him on the record in California with the newly discovered evidence. That way, Judge Nathan will be in a better position to determine whether and how to permit Petelin's testimony and documents to be submitted to the jury.[2]

*Third*, delaying the resolution of the sanctions motion until after trial may actually have the unintended effect of altering the trial evidence.  With a sanctions motion hanging over his head and a standing objection to (or at least question about) the ability of this Court to compel him to appear in New York, Petelin will presumably not appear at trial.  As a result, the parties will be forced to use his deposition testimony in lieu of live testimony.  That means that the jury in this case will be shown only Petelin's perjured testimony, and that he will never be confronted with the documents that prove his lies and forced to reconcile the two.  On the other hand, if he does appear at trial, Petelin will have had the opportunity to sit with the SMP Partners documents and interrogatories that provide a roadmap of his contempt for months and months, to try to somehow craft a story that is consistent with the other proof.

*Fourth*, if the Court were to defer a hearing on Petelin's contempt, the trial evidence would likely be unusable against him in any event, meaning that there is absolutely no efficiency to deferring the hearing.  Due process requires that Petelin have an opportunity to defend himself against the contempt charge – which is why the Court permitted, at his request, such robust pre-

---

[2] For example, if Petelin declines to answer questions on Fifth Amendment grounds, that fact would be highly material to the admissibility of his prior evidence.

6

hearing discovery. *In re Kitchen*, 706 F.2d 1266, 1272-73 (2d Cir. 1983) (holding witness entitled to right to confront evidence against him before being held in civil contempt). But Petelin will not be a party to the trial, so any testimony adduced at trial arguably could not be used against him. As a result, even if the Kazakh Entities were to prove uncontrovertibly at trial that Petelin perjured himself at his deposition and submitted false documents, (1) the jury would still be exposed to Petelin's perjured deposition testimony without benefit of seeing him confronted with the strongest countervailing evidence, and (2) Petelin would get a free preview of all of the evidence against him at a later sanctions hearing. The trial evidence would therefore only serve to create additional prior statements by the witnesses against Petelin, which he could exploit at a later contempt hearing. That is, the trial evidence would likely be unusable against Petelin (because he will not be a party to those proceedings), while at the same time available to be used *by* Petelin against the Kazakh Entities to his advantage. On the other hand, if the sanctions hearing goes first, Petelin will be forced to explain his prior testimony.

*Finally*, the Kazakh Entities should not have to wait until after trial to recover the costs they incurred seeking discovery from Petelin, a self-professed (but unproven) near-billionaire. The Kazakh Entities should be permitted to reallocate those funds, which were wasted as a result of Petelin's fraud, to defer the costs of litigating this case through trial. Any sanctions order against Petelin will also have an important deterrent effect, both for Petelin and the other Defendants, going forward. Cancelling the hearing sends the opposite message.

## CONCLUSION

For the reasons just given, the Court should reconsider its September 11, 2019 Order and hold an evidentiary hearing before trial to determine whether Petelin provided false testimony and documents in discovery concerning his funding of Northern Seas Waterage. In the alternative, the Court should afford the Kazakh Entities the opportunity to re-depose Petelin (in

California) to confront him on the record with the newly discovered evidence.

Dated: September 25, 2019
                                         Respectfully submitted,

                                         /s/ Matthew L. Schwartz
                                         Matthew L. Schwartz
                                         Peter M. Skinner
                                         Craig Wenner
                                         BOIES SCHILLER FLEXNER LLP
                                         55 Hudson Yards
                                         New York, NY 10001
                                         (t) +1 212 446 2300
                                         (f) +1 212 446 2380

                                         *Attorneys for Movants*