UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



City of Almaty, Kazakhstan and BTA
Bank JSC,

                Plaintiffs,

–v–

Mukhtar Ablyazov, Viktor Khrapunov, Ilyas
Khrapunov, and Triadou SPV S.A.,

                Defendants.

15-CV-5345 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    This litigation concerns an alleged conspiracy by which prominent citizens of Kazakhstan purportedly expropriated funds belonging to the City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA" and, together with Almaty, the "Kazakh Entities"), a formerly state-owned banking institution based in Kazakhstan, and laundered the stolen funds into New York City real estate investments. Now before the Court are two matters: (1) the question of whether the Kazakh Entities' fraudulent conveyance claims are moot, as raised in numerous filings before this Court; and (2) Defendant Viktor Khrapunov's motion to dismiss and, in the alternative, for judgment on the pleadings as to the Kazakh Entities' Third Amended Crossclaims, Dkt. No. 828, 1116. For the reasons set forth below, the Court DISMISSES the Kazakh Entities' fraudulent conveyance claims and DENIES Khrapunov's motion as moot.

I.     BACKGROUND

    The Court assumes the parties' familiarity with the factually and procedurally complex background of this case, which the Court has recounted in several prior substantive decisions. It elaborates here only those details necessary for the two matters presently before it.

1

## A. Factual Allegations

The Kazakh Entities filed their original crossclaims in this matter on October 12, 2015, and amended those crossclaims three times, on September 7, 2016, October 5, 2017, and June 28, 2019.[1] Dkt. Nos. 49, 219, 433, 1094. For purposes of the Rule 12(c) motion presently before the Court, the Court accepts the allegations in the crossclaims as true.

In brief, Almaty alleges that its former mayor Viktor Khrapunov and several of his associates and family members embezzled approximately $300 million from the city between approximately 1997 and 2004. Dkt. No. 426 at 2; Dkt. No. 1094 ¶¶ 3, 45-55. BTA claims that its former chairman Mukhtar Ablyazov siphoned more than $6 billion out of BTA between 2005 and 2009. Dkt. No. 426 at 2; Dkt. No. 1094 ¶¶ 2, 28-35. And the Kazakh Entities allege that Mukhtar Ablyazov, Viktor Khrapunov, and Ilyas Khrapunov joined together to launder both pools of stolen funds through a series of shell companies, sham transactions, and outwardly-legitimate investments. Dkt. No. 426 at 3; *see also, e.g.*, Dkt. No. 1094 ¶¶ 56-59, 68-72, 77-97. In one such effort, the Individual Defendants allegedly created and funneled proceeds into a Switzerland-based real estate investment vehicle called SDG Capital, S.A. ("SDG"), then engaged in a sham sale of SDG to conceal their control. Dkt. No. 426 at 3; Dkt. No. 1094 ¶¶ 58, 77-84. They then facilitated the creation of entities under Luxembourg law for the purpose of investing their stolen funds into United States-based real estate projects, including Triadou. Dkt. No. 426 at 3; Dkt. No. 1094 ¶¶ 85-87.

In 2012 and 2013, purportedly at the direction of the Individual Defendants, Triadou allegedly proceeded to invest funds embezzled from the Kazakh Entities into New York City real

---

[1] The Magistrate Judge granted the Kazakh Entities leave to file the Third Amended Crossclaims on May 29, 2019. Dkt. No. 1058. The Individual Defendants filed an objection to the magistrate judge's Opinion & Order, *see* Dkt. No. 1069. Because that objection does not implicate the instant motion, the Court assumes without deciding that leave to amend was not granted in error. The Court will resolve the pending objection in due course.

estate projects, including the Flatotel and the Cabrini Medical Center, with New York City real estate developer Joseph Chetrit and several of his corporate affiliates (the "Chetrit Entities"). Dkt. No. 1094 ¶¶ 88-97, 111-13. Funding for these investments was allegedly wired to escrow accounts maintained by counsel for the Chetrit Entities in the United States from accounts held by a Dubai-based private contracting entity called Telford International Limited ("Telford"), which the Individual Defendants allegedly controlled, and FBME, a Tanzanian-headquartered financial institution with operations primarily in Cyprus. Dkt. No. 426 at 3; Dkt. No. 1094 ¶¶ 21, 78, 98-106, 111-13.

In 2014, allegedly at the direction of the Individual Defendants, Triadou allegedly sought to liquidate those assets at below-market value to attempt to prevent the Kazakh Entities from accessing the funds. Dkt. No. 1094 ¶¶ 114-25. Accordingly, Triadou engaged in a sham transaction with the Chetrit Entities whereby Triadou assigned its interest in the Flatotel to the Chetrit Entities in exchange for $21 million to be paid in four installments, a "fraction of the fair market value of the properties." Id. ¶ 118; Dkt. No. 1064 at 2. Further, the Kazakh Entities allege that the Chetrit Entities made an upfront $6 million payment as repayment for a loan on the Cabrini Medical Center project and a $1 million down payment on the Chetrit Group's reacquisition of Triadou's interest in the Flatotel. The $6 million and $1 million ended up abroad with SDG, but the rest of the money became tied up in this litigation. *See* Dkt. No. 1064 at 2. The Court refers to this purported sham transaction as the 2014 Assignment.

B.   **Procedural Background**

This litigation began as an interpleader action against Triadou and Almaty brought in New York State Supreme Court by the Chetrit Entities, which claimed to face multiple liability under the 2014 Assignment. Dkt. No. 25 ¶¶ 11-17. Almaty removed the action to federal court

and asserted counterclaims against the Chetrit Entities, crossclaims against Triadou, and third-party claims against Ablyazov, the Khrapunovs, and Joseph Chetrit. Dkt. No. 49. Over the course of the resulting litigation, the Kazakh Entities entered a settlement agreement with the Chetrit Entities and the Chetrit Entities were dismissed from the case with prejudice. Further, as set out more fully in the Court's previous Opinions in this matter, the Court entertained various dispositive motions and dismissed several of the remaining claims against Triadou and the Individual Defendants.

The present issues were presented to the Court as follows. First, on their own and in response to the Court's order calling for further briefing, Triadou and the Khrapunov Defendants have raised the question of whether the Kazakh Entities' fraudulent conveyance claims are now moot. *See* Dkt. Nos. 978, 981, 983, 998, 1006, 1014, 1055, 1059, 1062, 1064. Second, following the jurisdictional discovery approved in the Court's September 2017 Opinion and Order, *see* Dkt. No. 426, Defendant Viktor Khrapunov has renewed his motion to dismiss the claims against him for lack of personal jurisdiction, and in the alternative for judgment on the pleadings, Dkt. No. 828. That motion was fully briefed on October 1, 2018. *See* Dkt. Nos. 850, 853. After Magistrate Judge Parker granted the Kazakh Entities permission to file Third Amended Crossclaims, Defendant Viktor Khrapunov requested permission to apply his motion to dismiss to the newly filed crossclaims. Dkt. No. 1113. The Court granted this request. Dkt. No. 1116.

## II. THE KAZAKH ENTITIES' FRAUDULENT CONVEYANCE CLAIMS ARE MOOT

The Court turns to the contention that the Kazakh Entities' fraudulent conveyance claims are moot.

4

Mootness is a question of subject-matter jurisdiction which the Court may evaluate at any time, including *sua sponte*. *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001). A claim becomes moot when "the parties have no legally cognizable interest or practical personal stake in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007) (internal quotation marks omitted); *see also Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (explaining that a case becomes moot "when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury"). When a case becomes moot, "the Constitution's case or controversy requirement . . . is not satisfied" and the action "must be dismissed." *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992).

The argument that the claims are moot, as presented in numerous rounds of the parties' briefing and in response to the Court's *sua sponte* order, is as follows.

The Kazakh Entities' fraudulent conveyance claims arise out of the 2014 Assignment, in which Triadou allegedly transferred to the Chetrit Group its 50% interest in CF 135 West Member LLC (the "Flatotel interest") and its interest in the Cabrini Medical Center. Dkt. No. 1094 ¶ 11; 2014 Assignment, Dkt. No. 161-1 ¶ 1. In exchange, the Chetrit Entities agreed to pay four installment payments of $21 million, a repayment of a $6 million loan for the Cabrini project without interest and another $1 million in upfront cash, and a residual profits interest. 2014 Assignment ¶ 1. The Kazakh Entities alleged this assignment was a sham transaction made for the specific purpose of liquidating Triadou's interest in the Flatotel and Cabrini Medical Center Projects for a fraction of their fair market value in order to hide and move their illicit assets offshore and out of the Kazakh Entities' reach. Dkt. No. 1094 ¶¶ 114-25, 162-73.

5

Accordingly, they alleged that Triadou and the Individual Defendants were liable for actual and constructive fraudulent transfer. *Id.* ¶¶ 162-73.

In 2015, the Kazakh Entities and the Chetrit Entities reached a settlement agreement that resulted in dismissal with prejudice for all of the claims against the Chetrit Entities, including those for fraudulent conveyance. Triadou and the Khrapunov Defendants argue that the 2015 Settlement Agreement mooted the Kazakh Entities' fraudulent conveyance claims, because the Chetrit Entities were the only parties capable of providing the proper remedy, the return of the Flatotel interest.[2] The Court agrees.

Under the New York Debtor and Creditor Law, if a debtor makes a transfer that is not for fair consideration and is either insolvent "at the time of the transaction or rendered insolvent by the transaction, its creditor may cause the transfer to be rescinded." *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 736 (S.D.N.Y. 1993); N.Y. Debt. & Cred. L. § 273. The purpose of such a claim is "to force the debtor to recover property transferred for inadequate consideration so *that the property can be used to satisfy the debt owed to the creditor.*" *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 189 (2d Cir. 2006) (emphasis added) (quoting *Geren*, 832 F. Supp. at 736-37); *see also Hearn 45 St. Corp. v. Jano*, 27 N.E.2d 814, 817 (N.Y. 1940) ("The gravamen of the cause of action is the right of the creditor to be paid out of assets to which [it] is actually entitled and to set aside the indicia of ownership which apparently contradict that right."). The goal of a fraudulent conveyance claim is not to increase the debtor's liability but

---

[2] The Court notes that, at an earlier point in this litigation, Triadou took a position opposite to its present one, arguing that while the Kazakh Entities might have a claim against it for fraudulent conveyance, it had no such claim against the Chetrit Group. *See* Dkt. No. 31 at 9. Triadou did not "succeed[ ] in maintaining that position," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), however, so the Court declines to exercise its discretion to judicially estop Triadou from bringing such argument now.

rather to increase the pool of assets that could be used to satisfy that liability. *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) (affirming this principle).

The creditor's remedy is therefore "limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance and requiring that it be restored to the debtor's possession." *Grace*, 443 F.3d at 189 (quotation omitted). In other words, a party who successfully makes out a fraudulent conveyance claim is entitled, as a remedy, to nullify the transfer, set aside the conveyance of the property, and return the property to the transferor; to restore the *status quo ante* as if there had "been no conveyance at all." *Paradigm BioDevices, Inc. v. Viscogliosi Bros.*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012). As the Court has previously explained, "a money judgment may only be granted in lieu of setting aside the conveyance if 'the transferee has disposed of the wrongfully conveyed property in some manner which makes it impossible to return.'" Dkt. No. 103 at 8-9 (quoting *Joslin v. Lopez*, 765 N.Y.S. 2d 895, 898 (App. Div. 2003)). This remedy lies only "against . . . the transferees of the assets and beneficiaries of the conveyance." *Stochastic Decisions*, 995 F.2d at 1172.

It follows from the above that settlement with the Chetrit Entities mooted the fraudulent conveyance claim. The point of the fraudulent conveyance claim was to make the Flatotel interest available to satisfy a judgment against Triadou. The only remedy that the Kazakh Entities ask for in connection with their fraudulent conveyance claims is for the 2014 Assignment to "be set aside." Dkt. No. 1094 ¶¶ 167, 173. In order for the Kazakh Entities to set aside the assignment and deprive the Chetrit Entities of their property, they would need to sue the Chetrit Entities for fraudulent conveyance. *See Menorah Home & Hosp. for Aged & Infirm v. Jelks*, 876 N.Y.S.2d 502, 504 (App. Div. 2009) (holding as a matter of due process that a

plaintiff in a fraudulent conveyance action must join all parties who would be deprived of a property interest if the claim succeeded). Given that the Kazakh Entities have settled with Chetrit Entities, this is not an option. And while the Kazakh Entities may have sought a monetary judgment, if necessary, against the Chetrit Entities, as transferees, the settlement blocks that route as well. The fraudulent conveyance claims are moot and therefore dismissed.

Sensing this infirmity, the Kazakh Entities instead seek money judgments against Triadou and the Individual Defendants. The Kazakh Entities argue that Triadou and the Individual Defendants are "transferees" or "beneficiaries" of 2014 Assignment and that a monetary remedy is proper. Without deciding the propriety of a monetary remedy, the Court concludes that neither Triadou nor the Individual Defendants are "transferees" or "beneficiaries" in the relevant senses of those words.

Triadou is not a transferee or beneficiary because it was the transferor in the allegedly fraudulent conveyance. *Lippe v. Bairnco Corp.*, 229 B.R. 598, 601 (S.D.N.Y. 1999) (Chin, J.) ("the transferor . . . would not be a proper defendant in a fraudulent conveyance claim under [New York law]"). The Kazakh Entities argue to the contrary that Triadou is a proper defendant because the 2014 Assignment aimed to prevent the Kazakh Entities from receiving assets of Triadou. But this argument misunderstands the purpose of a fraudulent conveyance action. As discussed above, the goal of a fraudulent conveyance claim is to allow creditors to increase the pool of assets that can be used to satisfy the liabilities of the transferor debtor, not to increase the liability of the transferor debtor. *See Stochastic Decisions*, 995 F.2d at 1172. Of course, Triadou's assets are already available to satisfy Triadou's liabilities.

As to the Individual Defendants, they are not "transferees" or "beneficiaries" either. To the extent that the Kazakh Entities argue that the Individual Defendants benefitted, because an

8

entity they controlled, Triadou, benefitted, they are incorrect. First, as discussed above, Triadou itself did not benefit in a manner that is cognizable in a fraudulent conveyance claim. In order for a party to be held liable on a fraudulent conveyance claim, where the only benefit to the party was that a corporation the party controlled gained from the transaction, the party must be the alter ego of the corporation. *See Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 539-40 (S.D.N.Y. 2011); *TLC Merch. Bankers, Inc. v. Brauser*, No. 01-cv-3044, 2003 U.S. Dist. LEXIS 3564, at *14-*16 (S.D.N.Y. Mar. 6, 2003) (Lynch, J.). Previously, the Court held that the Kazakh Entities had stated a claim for fraudulent conveyance against the Individual Defendants on this theory. Dkt. No. 426 at 29-34. That conclusion was premised on the idea that Triadou could be held liable for a fraudulent conveyance claim and the Individual Defendants were alleged to be Triadou's alter ego. *Id.* at 32-34. Since the Court now dismisses the fraudulent conveyance claim against Triadou, the claims against the Individual Defendants must likewise fall.

Second, the role of alter ego liability highlights why there is no fraudulent conveyance claim against the Individual Defendants. Recall that the only purpose of a fraudulent conveyance claim in this case would be to hold the Individual Defendants liable for Triadou's alleged transgression. Doing so would requires the Kazakh Entities to succeed on an alter ego theory, with or without a fraudulent conveyance claim.

The Kazakh Entities further contend that the Individual Defendants benefitted because the 2014 Assignment was designed to prevent Triadou's assets from being used to satisfy the Individual Defendants' liabilities. This contention suffers a similar fate. As is the case with Triadou, the Individual Defendants' assets are already available to satisfy their liabilities. A fraudulent conveyance judgment against them would add nothing. That SDG ended up with $7

million of the proceeds of the assignment also cannot serve as a benefit to the Individual Defendants. Even though the Kazakh Entities point out that SDG is alleged to be "controlled by Ilyas Khrapunov," Dkt. No. 998 at 2, simply controlling a transferee corporation, without being the alter ego of the corporation, does not automatically make a party a beneficiary for purposes of a fraudulent conveyance claim. *See Amusement Indus., Inc.*, 820 F. Supp. 2d at 539-40.

Triadou additionally argues that the 2015 Settlement moots other claims in the action. *See, e.g.*, Dkt No. 1059 at 10-11. However, the Court only raised the issue of mootness for the fraudulent conveyance claim. Dkt. No. 1055. Accordingly, the Court will not address these arguments at this time.

### III. KHRAPUNOV'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS IS DENIED AS MOOT

The fraudulent conveyance claims were the only remaining claims against Viktor Khrapunov. Because the Court now dismisses them, it denies his motion as moot.

### IV. SEALING REQUESTS

The parties have submitted redaction requests as part of their briefing on both matters addressed in this Opinion and Order. These applications are denied.

The purported rationale for all of the sealing requests is that they relate to material designated as confidential pursuant to the Stipulated Protective Order. *See* Dkt. Nos. 830, 1060, 1063, 1065. Under *Lugosch v. Pyramid Co.*, a presumption of public access attaches to judicial documents. 435 F.3d 110, 119-20 (2d Cir. 2006). In order to overcome the presumption, there must be "specific, on the record findings." *Id.* at 120 (quotation omitted). "[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152,

155 (S.D.N.Y. 2015); *see also Newsday LLC v. County of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013) ("[T]he facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents."). Documents submitted in support or opposition to a motion to dismiss are judicial documents. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018). However, the parties have not provided the Court with sufficiently particularized justifications, which would enable the Court to determine whether such specific findings are warranted. Accordingly, the motions to seal are denied without prejudice.

Within ten business days of the date of this Order, the parties may resubmit their denied redaction request. In addition, the parties shall support their application for redactions and/or sealing with authority and articulated reasoning that is specific to the content that they seek to keep under seal. If no further application is made within this time frame, the unredacted materials must be filed on the public docket.

## V. CONCLUSION

For the foregoing reasons, the fraudulent conveyance claims are DISMISSED as moot. In light of this conclusion, no claims remain against Viktor Khrapunov and his motion to dismissed is therefore DENIED as moot. The sealing requests are DENIED with leave to refile as directed.

This resolves Dkt. Nos. 828, 830, 1060, 1063, and 1065.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge

12