**BLANKROME**

The Chrysler Building
405 Lexington Avenue │New York, NY 10174-0208
blankrome.com

*Phone:*   *(212) 885-5148*
*Fax:*     *(917) 591-7897*
*Email:*   *dskakel@blankrome.com*

March 15, 2019

**VIA EMAIL & ECF**
The Honorable Katharine H. Parker
United States Magistrate Judge
United States District Court – S.D.N.Y.
500 Pearl Street, Room 750
New York, New York 10007

   Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
     No. 15-CV-5345 (AJN)(KHP)

Dear Judge Parker:

  We represent Triadou SPV S.A. ("Triadou") and submit this letter pursuant to the Court's March 1, 2019 Order requesting submissions on whether the settlement of the City of Almaty, Kazakhstan and BTA Bank JSC (together, "Almaty/BTA") with the Chetrits (former parties here) has mooted any of the claims remaining in this case. (ECF 978). This issue is ripe for consideration, and Almaty/BTA's fraudulent transfer claims should be dismissed as moot on two independent grounds. First, the settlement resulted in a dismissal of the Chetrits with prejudice and a release of Almaty/BTA's claims against them. As transferees, the Chetrits are necessary parties to the fraudulent transfer claims, and their dismissal renders those claims moot. Second, the settlement mooted the fraudulent transfer claims by providing Almaty/BTA the very relief they sought under those claims.

  **Relevant Background**. On October 12, 2015, Almaty/BTA filed their original counter- and cross-claims against Triadou and the Individual Defendants, as well as Joseph Chetrit and entities owned by or associated with him (collectively, the "Chetrits"). (ECF 49, ¶¶ 34-38). Those claims included two causes of action under New York's Debtor and Creditor Law ("NYDCL") for actual and constructive fraudulent transfer (the "Fraudulent Transfer Claims"). (ECF 49, ¶¶ 169-180). The Fraudulent Transfer Claims allege that Triadou's August 2014 assignment of its ownership interest in the Flatotel and Cabrini Medical Center (the "2014 Assignment") was fraudulent, and seek to recover that ownership interest. (*Id.*, ¶¶ 171-73, 178-79).

  In November 2015, Almaty/BTA settled with the Chetrits (the "2015 Settlement"), (Ex. 1), concomitantly submitting a notice of voluntary dismissal ***with prejudice*** of all claims against the Chetrits pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), (ECF 70). This is consistent with the 2015 Settlement, under which Almaty/BTA and the Chetrits agreed to "release all claims that they may have against" the other, (Ex. 1, § 7), which necessarily includes the Fraudulent Transfer Claims.

  Critically, in the 2015 Settlement, Almaty/BTA acquired the Chetrits' interest in the Flatotel, which was the *same* interest Triadou previously owned and the *same* interest underlying

**BLANKROME**

March 15, 2019
Page 2

Triadou's 2014 Assignment to the Chetrits–i.e., the *same* transaction underlying the Fraudulent Transfer Claims. (Ex. 1 at 1, § 4.b). The Chetrits agreed to treat Almaty/BTA "as if they were holders of the Flatotel Interest and members of CF 135 West Member LLC [(the "LLC")], as provided in the Operating Agreement," and to pay Almaty/BTA "37.5% of the profits of the project." (*Id.*, § 4.b). Under the settlement, Almaty/BTA replaced Triadou in the LLC, and received "all of Triadou's former 50% interest as a member in [the] LLC," including "the right to receive distributions of cash or property, including return of capital, and the right to participate in and receive profits and/or income from [the] LLC," as well as "any and all other rights which Triadou ever had … as a member of [the] LLC." (*Id.*, §§ 4.d-e). Almaty/BTA also agreed that "they have no interest in the Cabrini Hospital Property or any beneficial owner thereof and waive all claims thereto," and acknowledged that Triadou's note on the Cabrini property was repaid in full by the Chetrits in May 2014. (Ex. 1 at 1, § 4.a).

In the 2015 Settlement, the Chetrits also agreed to cooperate with Almaty/BTA in this action and others, including by attending interviews, providing documents, and testifying. (*Id.*, § 8). In exchange, Almaty/BTA indemnified the Chetrits for any losses or damages resulting from Triadou's state court actions and this action, and agreed to defend the Chetrits against any actions Triadou might file arising from its 2014 Assignment. (*Id.*, §§ 1-2).[1]

Following the Chetrits' dismissal, (ECF 221), Almaty/BTA filed Amended Crossclaims in September 2016 that retained the Fraudulent Transfer Claims against Triadou and the Individual Defendants, (ECF 219, ¶¶ 162-173). After the Court ruled on the Individual Defendants' motions to dismiss, Almaty/BTA filed their Second Amended Crossclaims ("SAC") in October 2016, which retained those same Fraudulent Transfer Claims. (ECF 433, ¶¶ 162-173). Three common law claims in the SAC are currently lodged against Triadou–unjust enrichment, conversion, and constructive trust–as is a claim under C.P.L.R. § 5239 (the "5239 Claim"). (ECF 433, ¶¶ 174-191).[2] The 5239 Claim specifically requests that the Court "direct that Triadou's interest in the Flatotel and Cabrini Medical Center be transferred to" Almaty/BTA. (*Id.*, ¶ 191).

Subsequently, in opposing Almaty/BTA's motions for leave to amend and for sanctions against the defendants, the Khrapunov Defendants asserted that the Fraudulent Transfer Claims were mooted by Almaty/BTA's settlements with the Chetrits. (ECF 931 at 3, 14-16; ECF 942 at 10-11). After preliminary argument on this issue at the parties' case management conference on February 26, 2019, the Court requested this briefing. (ECF 978).

**Ripeness**. As a matter of law, the issue of mootness is always ripe for adjudication. *Van Gorder v. Lira*, No. 9:08-cv-281 (NAM) (ATB), 2010 WL 1235328, at *3 (N.D.N.Y. Mar. 15, 2010), *report & recommendation adopted* 2010 WL 1235283 (N.D.N.Y. Mar. 30, 2010) (noting that "[r]egardless of the basis for defendants' motion, this court may always review any action for mootness," and dismissing claims as moot and for failure to state a claim). "Because mootness is

---

[1] In March 2018, the Chetrits and Almaty/BTA executed another settlement agreement (the "2018 Settlement") in which Almaty/BTA exchanged the Flatotel interest they had received under the 2015 Settlement for alternate consideration "in full satisfaction of [Almaty/BTA's] rights to the Flatotel interest under the [2015] Settlement Agreement, and any amounts they would be entitled to as a Member of [the] LLC." (Ex. 2, § 2).

[2] Triadou's May 2018 motion for judgment on the pleadings, which is pending before Judge Nathan, seeks dismissal of the three common law claims on statute of limitations grounds. (ECF 666).

BLANKROME

March 15, 2019
Page 3

jurisdictional, the court may even consider it *sua sponte.*" *Id.*; *see also McGinty v. N.Y.*, 251 F.3d 84, 90 (2d Cir. 2001) (holding that subject matter jurisdiction may be raised at any time, including *sua sponte* by the court). The Court thus may consider whether Almaty/BTA's Fraudulent Conveyance Claims are moot, and no further discovery or development of the factual record is required to evaluate the issue.[3]

**The Fraudulent Transfer Claims Are Moot**. Because the "gravamen" of a fraudulent transfer claim "is the ordinary right of a creditor to receive payment," the laws have been implemented to enable the creditor to reach assets "the debtor has transferred to others." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, No. 91-cv-3451 (SWK), 1994 WL 722675, at *5 (S.D.N.Y. Dec. 30, 1994) (internal quotation marks and citation omitted). The NYDCL is designed to enable creditors to sue entities other than the alleged debtor to reach assets the debtor transferred out of its possession. This purpose confirms that the Fraudulent Transfer Claims are moot because: (1) the Chetrits, as transferees, are necessary parties, but are no longer in—and cannot be added back to—this action; and (2) Almaty/BTA have obtained the very asset that is the target of their claims.[4]

First, Almaty/BTA cannot prosecute their Fraudulent Transfer Claims where the alleged transferees, the Chetrits, have been dismissed with prejudice, (ECF 70), ***and*** released from all claims against them, (Ex. 1, § 7). As transferees, the Chetrits are the only necessary parties to the Fraudulent Transfer Claims. *Lyman Commerce Solutions, Inc. v. Lung*, No. 12-cv-4398, 2013 WL 4734898, at *8 (S.D.N.Y. Aug. 30, 2013); *United States v. Mazzeo*, No. 98-cv-3060, 2001 WL 393671, at *5 (E.D.N.Y. Jan. 10, 2001) (only necessary parties are transferee and "any other party who may claim an interest in the property conveyed"). Those claims cannot be asserted solely against Triadou, because "the transferor … would not be a proper defendant in a fraudulent conveyance claim under [the NYDCL] … which lies only against the transferees and beneficiaries of the challenged conveyance." *Lippe v. Bairnco Corp.*, 229 B.R. 598, 601 (Bankr. S.D.N.Y. 1999). Where Almaty/BTA allege that Triadou fraudulently transferred its ownership interest in Flatotel and Cabrini to the Chetrits, the Chetrits are the proper subjects of the Fraudulent Transfer Claims, and their absence and release require dismissal of those claims. *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 736 (S.D.N.Y. 1993) (dismissing fraudulent transfer claim for failure to name transferee).

Second, the Fraudulent Transfer Claims also must be dismissed because Almaty/BTA have already recovered the asset that is the subject of their claims. A "creditor's remedy in a fraudulent

---

[3] While Almaty/BTA may argue, as they did at the February 26 conference, that expert discovery is needed to assess the Fraudulent Transfer Claims, (Ex. 3 at 63:25-64:22), such discovery relates to whether the 2014 Assignment was made for fair value—not whether those claims are mooted by the 2015 Settlement and Almaty/BTA's recovery of the very relief sought in those claims. These facts will not change, regardless of how expert discovery proceeds. Conversely, if the Fraudulent Transfer Claims are mooted, certain expert discovery may also be mooted.

[4] Although Almaty/BTA base their Fraudulent Transfer Claims on the assumption that, at some point, they will be creditors of Triadou (through their efforts to obtain a judgment), they have no judgment against Triadou to date; and, if the Court grants Triadou's motion for judgment on the pleadings, Almaty/BTA will have no prospect of a judgment against Triadou in this case. As a result, the dismissal of the common law claims also would moot the Fraudulent Transfer Claims because Almaty/BTA would lack creditor status. *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008) (to set aside a fraudulent conveyance, "one must be a creditor of the transferor").

**BLANKROME**

March 15, 2019
Page 4

conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 133 (2d Dep't 1986); *see also Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012) (*citing Murkoff*, 120 A.D.2d 122, 123) (relief available "is limited to what [the creditor] could have obtained had there been no conveyance at all"). Courts have found that fraudulent transfer claims are moot where the transferee reconveyed the asset in question back to the transferor. *See, e.g., Bombardier Capital, Inc. v. Richfield Housing Ctr., Inc.*, Nos. 91-cv-750 & 91-cv-502, 1994 WL 118294, *12 (N.D.N.Y. Mar. 21, 1994) (fraudulent transfer claim mooted by reconveyance of property to debtor); *Colombo v. Caiati*, 131 A.D.2d 532, 533 (N.Y. App. Div. 1987) (same). Almaty/BTA achieved an even better result here; they obtained the Flatotel interest directly from the transferees (the Chetrits) without having to prove that Triadou is a debtor. (Ex. 1, §§ 4.b-4.i). Similarly, where Almaty/BTA are not entitled to, and have released, any further damages under their Fraudulent Transfer Claims, those claims are moot. *Cf. Murphy v. RMTS Assocs., LLC*, 71 A.D.3d 582, 582-83 (N.Y. App. Div. 2010) (dismissing fraudulent transfer claims as moot where plaintiffs obtained, in another action, agreed-upon value of the transferred assets, and thus could not "recover any additional damages"); *Sygrove v. Sygrove*, 15 A.D.3d 291, 291-92 (N.Y. App. Div. 2005) (dismissing claim as moot where plaintiff recovered value of transferred asset in prior suit).[5]

Although Almaty/BTA may argue that the Flatotel interest they received in the 2015 Settlement is less valuable than what they would have received if they prevailed on their claims, the value of the Flatotel interest is irrelevant to the question of mootness.[6] Even if Almaty/BTA acquired a less-valuable version of the Flatotel interest in the 2015 Settlement, by dismissing the Chetrits with prejudice and releasing them, Almaty/BTA foreclosed any ability to remedy that diminution in value through the Fraudulent Transfer Claims.

The 2015 Settlement also resolved the Fraudulent Transfer Claims to the extent they seek recovery of Triadou's former Cabrini interest. Almaty/BTA agreed that "they have no interest in the Cabrini Hospital Property or any beneficial owner thereof and waive all claims thereto," and acknowledged that Triadou's note on Cabrini was repaid in full by the Chetrits in May 2014. (Ex. 1

---

[5] During the February 26 conference, Almaty/BTA's counsel referenced the 1995 decision in *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913 (S.D.N.Y. 1995), but that decision is inapposite here. There, the Court was confronted with the question of whether a settlement between a creditor and a debtor extinguished the creditor's fraudulent transfer claims against the transferee where those claims were expressly preserved. *Id.* at 931-32. In contrast, the 2015 Settlement was between the alleged creditors (Almaty/BTA) and transferees (the Chetrits); released all claims against the transferees, (Ex. 1, § 7); and preserved only the underlying claims against the alleged debtors (Triadou and the Individual Defendants), (*id.*).

[6] Almaty/BTA's argument that the Flatotel interest they acquired is less valuable is also meritless. The 2015 Settlement provided them with the same interest in the Flatotel that Triadou held, but with the improved position that Almaty/BTA's interest could not be diluted. (Ex. 1, §§ 4.b, 4.i). That the 2015 Settlement also required Almaty/BTA to indemnify the Chetrits does not affect the value of the Flatotel interest, which relates to the property itself; and, even if it did, the indemnity obligation is counter-balanced by the Chetrits' agreement to cooperate with Almaty/BTA, (Ex. 1, § 8), which Almaty/BTA could not have obtained through the Fraudulent Transfer Claims. Likewise, the express terms of the 2018 Settlement—under which Almaty/BTA received alternate consideration "in full satisfaction of [their] rights to the Flatotel interest under the [2015] Settlement Agreement," (Ex. 2, § 2)—preclude any argument that the 2018 Settlement diminished the value of Almaty/BTA's recovery. In any event, Almaty/BTA appear to have disavowed that position at the February 26 conference. (Ex. 3 at 63:11-23).

**BLANKROME**

March 15, 2019
Page 5

at 1; *id.*, § 4.a). Cabrini thus cannot be the subject of a fraudulent transfer claim because Almaty/BTA have already released that claim against the transferee. (*See id.* at 1, § 4.a).[7]

With respect to Almaty/BTA's remaining claims against Triadou, the 2015 Settlement mooted the 5239 Claim because, again, Almaty/BTA have already obtained the relief sought under that claim. (ECF 433, ¶ 191 (asking the Court to "direct that Triadou's interest in the Flatotel and Cabrini Medical Center be transferred to" Almaty/BTA)).[8] To the extent Almaty/BTA also allege that they are "the rightful owners of … any funds derived from the sale of" the Flatotel interest, (ECF 433, ¶ 189), this Court rejected that position in dismissing the Chetrits' interpleader claim, (*see* ECF 103 at 9-11). For the same reason, Almaty/BTA are not "interested part[ies]" under § 5239 because the statute requires such parties to have a right in the specific property covered by the judgment in question, *see* C.P.L.R. § 5239; 11 N.Y. Civ. Prac., CPLR § 5239.01 (section 5239 "applies by its terms only to property or a debt under the control of a sheriff or receiver"); Almaty/BTA have no such rights to the specific money awarded by the state court for Triadou's assignment of its Flatotel interest, (*see* ECF 103 at 9-11).

Likewise, if the three remaining common law claims are not dismissed in response to Triadou's motion for judgment on the pleadings, Almaty/BTA's potential recovery for those claims must be offset by their recovery of the Flatotel interest in the 2015 Settlement. *See, e.g.*, *Whalen v. Kawasaki Motors Corp.*, 92 N.Y.2d 288, 292 (1998) (New York General Obligations Law § 15-108(a) permits non-settling defendants to offset damages based on amounts plaintiff received in settlement from other alleged tortfeasors).

Accordingly, Almaty/BTA's Fraudulent Transfer Claims should be dismissed as moot, as should their 5239 Claim. Further, if Almaty/BTA's common law claims are not dismissed pursuant to Triadou's May 2018 motion for judgment on the pleadings pending before the Court, then Almaty/BTA's recovery should be offset by their recovery of the Flatotel interest.[9]

Respectfully submitted,

*s/ Deborah A. Skakel*
Deborah A. Skakel

---

[7] While Almaty/BTA's Fraudulent Transfer Claims also seek to recover attorneys' fees, that alone cannot sustain an otherwise moot claim. *See Excelsior Capital LLC v. Allen*, 536 F. App'x 58, 61 (2d Cir. 2013) (affirming holding that plaintiff had no fraudulent transfer claim where transferee re-conveyed asset to debtor's estate after claims were filed, and holding that such claims cannot be prosecuted solely to obtain attorneys' fees, which by themselves, are "'insufficient to create an Article III case or controversy'") (citations omitted).

[8] Part of Almaty/BTA's 5239 Claim was likely always moot: the state court judgments awarded only money owed to Triadou under the 2014 Assignment Agreement. Ownership of the Flatotel interest was not at issue in the state court actions. Thus, even if Triadou's state court judgments were vacated pursuant to § 5239, that statute would not bring the Flatotel ownership interest within the state court's jurisdiction or, by extension, this Court's jurisdiction.

[9] Although the Court's Order requesting this briefing did not discuss reply letters, (ECF 978), Triadou respectfully requests permission to submit a reply of three (3) pages. Triadou would have received a reply if this dispositive matter was briefed on summary judgment, and Triadou cannot predict every argument Almaty/BTA may advance in opposition to this letter-motion.