# Exhibit 1

EXECUTION COPY

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (hereinafter, the "Agreement") is made and entered into this ____ day of November, 2015 (the "Effective Date"), by and among JOSEPH CHETRIT, CF 135 FLAT LLC, CF 135 WEST MEMBER LLC, and THE CHETRIT GROUP LLC (hereinafter, collectively the "Plaintiffs") and JSC BTA BANK and the CITY OF ALMATY, KAZAKHSTAN (hereinafter, collectively, "Kazakhstan Entities"), all of whom are referred to collectively as the "Parties" and individually as a "Party."

WHEREAS, on August 4, 2014, Plaintiffs entered into an agreement and assignment (together, the "Assignment") with Triadou SPV S.A. (together with its successors and assignees, "Triadou") to assign to CF 135 FLAT LLC Triadou's 50% interest in CF 135 WEST MEMBER LLC, which is a member of and possesses a 75% ownership interest in 135 WEST 52ND STREET HOLDER LLC, which is the sole member of 135 WEST 52ND STREET MEZZ LLC, which in turn is the sole member of 135 WEST 52ND STREET OWNER LLC, the owner of the property located at 135 West 52nd Street, New York, New York (the "Property"). The 50% interest in CF 135 WEST MEMBER LLC that was the subject of the Assignment shall hereinafter be referred to as the "Flatotel Interest." The Assignment transferred the Flatotel Interest from Triadou to CF 135 FLAT LLC, and as consideration obligated Plaintiffs, among other things, to pay $21 million to Triadou in installments (following the Assignment's execution).

WHEREAS, on or about May 14, 2013, 227 EAST 19th HOLDER LLC ("Holder") executed a promissory note (the "Note") in favor of Triadou evidencing a loan from Triadou to Holder in the amount of $6 million in furtherance of the development of the former Cabrini Hospital property (the "Cabrini Hospital Property"), located at 227 East 19th Street in Manhattan. Under the terms of a related agreement, Holder agreed that Triadou could, at Triadou's election,

1

CONFIDENTIAL

Almaty-BTA0162920

exercised any time prior to repayment of the Note (the "Option") convert the Note to an equity participation in Holder, which was the beneficial owner of a 25% Tenancy in Common Interest in the Cabrini Hospital Property.

WHEREAS, Triadou did not exercise the Option and the Note was repaid in full in or about May, 2014.

WHEREAS, Triadou has instituted a series of proceedings (the "Proceedings") in the Supreme Court of the State of New York seeking payment of $21 million, plus interest, provided in the Assignment. A list of all of the Proceedings is attached hereto as Annex 1.

WHEREAS Plaintiffs filed a certain interpleader action captioned CF 135 FLAT LLC, CF 135 WEST MEMBER LLC and THE CHETRIT GROUP LLC v. TRIADOU SPV S.A., and CITY OF ALMATY, a Foreign City, in New York State Supreme Court, New York County, Index #156834/15 which the City of Almaty removed to the United States District Court for the Southern District of New York, and which was assigned case number 15-cv-05345 (AJN) (hereinafter, the "Lawsuit").

WHEREAS, in the Lawsuit, the Kazakhstan Entities raised certain counterclaims and cross-claims against, among others, Joseph Chetrit ("Chetrit"), Plaintiffs and Holder (the "Cross Claims").

NOW, THEREFORE, for good and valuable consideration as set forth herein, the Parties agree as follows: [for the purpose of this Agreement "Plaintiffs" shall include Chetrit and Holder]

1. <u>Indemnity</u>. The Kazakhstan Entities shall indemnify and hold Plaintiffs harmless from and against any loss, cost, damage or claim (including reasonable attorney's fees) arising out of any judgment entered against one or more of Plaintiffs arising out of claims of Triadou made in the Proceedings described in Annex 1 or the Lawsuit or arising out of the

2

CONFIDENTIAL

EXECUTION COPY

Assignment (the "Indemnity"). The Indemnity does not cover incidental or consequential damages, lost profits or revenues, or diminution in value arising out of claims by parties other than Triadou or persons claiming to act on behalf of the Kazakhstan Entities.

2. Triadou Claims. The Kazakhstan Entities at their sole cost and expense shall defend Plaintiffs in the Proceedings and the Lawsuit and any other action of Triadou against Plaintiffs arising out of the Assignment, including, but not limited to, any future action by Triadou seeking any profit distribution under the Assignment. The Parties acknowledge that one or more judgments have been entered in the Proceedings against Plaintiffs. In connection with the Indemnity, the Kazakhstan Entities shall either (a) obtain a stay of the collection or enforcement of such judgments, or (b) pay or bond such judgments.

3. Compliance with Indemnity. The Kazakhstan Entities shall be deemed to have fully complied with the Indemnity upon the delivery to Plaintiffs of either:

   a. A full release by Triadou of (i) all claims raised or which could have been raised in the Proceedings and the Lawsuit and (ii) any and all claims that Triadou may have against Plaintiffs under the Assignment; or

   b. Both (i) a final non-appealable judgment dismissing any and all claims of Triadou against Plaintiffs (A) raised in the Proceedings or the Lawsuit and (B) arising under the Assignment and (ii) vacating or satisfying, all judgments entered in the Proceedings.

4. Agreement Related to the Interests. The Parties agree to the following with respect to the Flatotel Interest and the Cabrini Interest:

   a. Kazakhstan Entities acknowledge and agree that the Note was paid in full and they have no interest in the Cabrini Hospital Property or any beneficial owner thereof and waive all claims thereto.

3

CONFIDENTIAL

Almaty-BTA0162922

EXECUTION COPY

b. No later than 10 days following the receipt of written consent from the holders of any mortgage or mezzanine loan encumbering the Property or any interest therein, Plaintiffs shall, or shall cause any of their respective affiliates or related entities to, assign to the Kazakhstan Entities, or such other entity or person that JSC BTA Bank may designate in writing, the Flatotel Interest, by executing the assignment in the form annexed hereto as Annex 2 (the "Flatotel Interest"). The parties acknowledge and agree that the assignment of the Flatotel Interest is subject to obtaining the prior written consent thereto of mortgage and mezzanine lenders (the "Lenders") holding a lien against the Property or membership interests in the owner of the Property. Prior to obtaining the consent of the Lenders, any funds that would have been paid to the Kazakhstan Entities pursuant to such assignment shall be held in escrow. Plaintiffs shall use commercially reasonable efforts to obtain the above referenced consent and approval. If this consent and approval is not obtained within 60 days of the Effective Date, Plaintiffs shall treat the Kazakhstan Entities as if they were holders of the Flatotel Interest and members of CF 135 West Member LLC, as provided in the Operating Agreement and pursuant to the terms of this Agreement as if consent and approval had been obtained, including (a) paying to the Kazakhstan Entities the amount of the Flatotel Interest Capital Account and 37.5 % of the profits of the project, which they would have received as members, in accordance with the terms of this Agreement, and (b) affording to the Kazakhstan Entities all audit and inspection rights. The above referenced consent and approval shall be waived if and when all obligations to the Lenders have been satisfied.

c. Simultaneously with the assignment of the Flatotel Interest, the Parties (or, on behalf of the Kazakhstan Entities, such other entity or person as shall have been designated pursuant to section 4.b. above) shall execute an amended and restated limited

4

EXECUTION COPY

liability company agreement of CF 135 WEST MEMBER LLC (hereinafter, the "Company LLC Agreement").

d. Subject to obtaining the consent of the Lenders, the Company LLC Agreement shall be in the form of the Operating Agreement executed by CF 135 FLAT LLC and Triadou, effective November 7, 2012, a copy of which is attached hereto as Annex 3, but with the Kazakhstan Entities, or such other entity or person that JSC BTA Bank may designate in writing, replacing Triadou for all purposes thereunder. To the extent there is any conflict between the Operating Agreement and this Agreement, this Agreement shall govern.

e. With respect to the Flatotel Interest, the interests assigned to the Kazakhstan Entities, or such other entity or person that JSC BTA Bank may designate in writing, shall include all accompanying right, title and interest in and to CF 135 WEST MEMBER LLC, including, without limitation, all of Triadou's former 50% interest as a member in CF 135 WEST MEMBER LLC, (the "Membership Interest") which it is agreed constitutes 37.5% of the entire Flatotel Project, all voting rights, if any, rights to distributions, and capital accounts in CF 135 WEST MEMBER LLC prior to the Assignment, any sums that may be reflected on the CF 135 WEST MEMBER LLC's books otherwise as a loan made by Triadou or any affiliate of Triadou, the right to receive distributions of cash or property, including return of capital, and the right to participate in and receive profits and/or income from CF 135 WEST MEMBER LLC, together with any and all other rights which Triadou ever had or to which it may hereafter be entitled as a member of CF 135 WEST MEMBER LLC as set forth in the Company LLC Agreement or pursuant to applicable law or otherwise, including the right to conduct an audit.

5

CONFIDENTIAL
Almaty-BTA0162924

EXECUTION COPY

  f. The Capital Account of the Kazakhstan Entities Membership Interest pursuant to Article III, Section 3.4 of the CF 135 WEST MEMBER LLC Operating agreement, executed on or about November 7, 2012 (the "Operating Agreement"), attached as Annex 3, is, as of the date this Settlement Agreement is executed, $27,885,753.76. This has been computed as follows: Triadou contributed a total of $40,885,753.76 toward the Note and the Flatotel Interest. $6,000,000.00 was paid in full repayment of the Note, and $1,000,000.00 in cash and $6,000,000.00 was repaid in assets pursuant to the Assignment.

  g. Any Capital Contributions or loans heretofore made or that may be made in the future by Plaintiffs under Article III, Section 3.5 of the Operating Agreement, shall be treated as Loans under Section 3.5 (4)(i) and (4)(iii) and shall bear interest as set forth in the Operating Agreement. All Loans together with interest thereon at 13.25% per annum shall be repaid before any distributions of capital. Thereafter, distributions of capital shall be made. After all Loans, together with interest, and all capital has been repaid as set forth herein, profits shall be distributed.

  h. Under no circumstances shall Plaintiffs be entitled to seek dilution of the Kazakhstan Entities Membership Interest in CF 135 WEST MEMBER LLC, it being expressly understood that Plaintiffs waive any and all claims to seek dilution of the Membership Interest under Article III, Section 3.5 of the Operating Agreement or otherwise.

  i. The Parties shall execute for themselves and any assignee any and all additional agreements or documents and shall take any and all actions necessary to promptly assign the Flatotel Interest to the Kazakhstan Entities, or such other entity or person that JSC BTA Bank may designate in writing as set forth herein, and subject to

6

CONFIDENTIAL

obtaining the Lenders' consent, including any Know-Your-Customer or FIRPTA certifications required.

5. <u>Distributions into Escrow</u>. Any profit distribution amounts to which the Kazakhstan Entities may be entitled pursuant to the Operating Agreement for the Flatotel Interest up to $21 million, plus interest as demanded in the Proceedings and an amount representing Triadou's claim under the Assignment for future profits, shall be paid into an escrow account established for such purpose (the "Kazakhstan Escrow") until the Kazakhstan Entities have complied with the Indemnity, at which point the escrow balance and any future payments owed to the Kazakhstan Entities will be paid to an account designated by the Kazakhstan Entities. The Parties agree that any Indemnity amounts shall only be paid from the Kazakhstan Escrow and no other source.

6. <u>Breach of Indemnity</u>. If the Kazakhstan Entities are in breach of the Indemnity, Plaintiffs shall have the right to deduct from the Kazakhstan Escrow an amount equal to the amount Plaintiffs paid in connection with liability in the Proceedings described in Annex I or the Lawsuit or other claims arising out of the Assignment that should have been indemnified hereunder by the Kazakhstan Entities. For the avoidance of doubt, Plaintiffs shall not be entitled to interest on any such amount. In the event of any breach of Indemnity, the Kazakhstan Entities shall have fifteen (15) days as of the date the Kazakhstan Entities receive notice of any such breach, to cure any such breach.

7. <u>Releases</u>. (a) Except for claims arising out of this Agreement, (A) the Kazakhstan Entities release all claims that they may have against Plaintiffs, and (B) Plaintiffs release all claims that they may have against the Kazakhstan Entities. Upon execution of this Agreement, the Parties shall execute and file all required court documents pursuant to which the Kazakhstan Entities shall discontinue with prejudice all cross claims and counterclaims against Plaintiffs.

7

EXECUTION COPY

For the avoidance of doubt, no claim against Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov, or Triadou is discontinued or waived, nor is any claim to the interpleaded fund in the Lawsuit discontinued or waived.

(b) Upon execution of this Agreement, the Parties shall issue a joint press release stating:

> "A civil dispute arose between the City of Almaty, Kazakhstan and JSC BTA Bank on one side and The Chetrit Group LLC and its affiliates on the other side. This dispute has been amicably resolved after cooperation by The Chetrit Group LLC and its affiliates and further evaluation by the City of Almaty and JSC BTA Bank. The City of Almaty, Kazakhstan and JSC BTA Bank have voluntarily dismissed with prejudice all claims against Joseph Chetrit, The Chetrit Group LLC and its affiliates. The City of Almaty, Kazakhstan and JSC BTA Bank will continue to pursue claims against Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov, and Triadou SPV S.A."

8. Cooperation. The Parties shall cooperate in good faith to effectuate this Agreement and in the prosecution or defense of the Proceedings described in Annex 1, the Lawsuit, or any other proceedings to which the Indemnity might apply. Specifically, Plaintiffs agree to cooperate with the Kazakhstan Entities including by (a) attending meetings and participating in interviews as requested by the Kazakhstan Entities, at reasonable times convenient to both Parties, (b) providing to the Kazakhstan Entities, upon written request, any document, record, or other tangible evidence in their possession relating to the Proceedings described in Annex 1, the Lawsuit, or any other proceedings to which the Indemnity might apply, or the subject matter thereof; (c) providing to the Kazakhstan Entities, upon written request, any truthful testimony, whether in the form of affidavit or live testimony at deposition, hearing, trial, or other legal proceeding; and (d) providing written notice to the Kazakhstan Entities before discussing the

8

CONFIDENTIAL

subject matter of the Proceedings described in Annex 1, the Lawsuit, or any other proceedings to which the Indemnity might apply, with anyone other than the Kazakhstan Entities or Plaintiffs' counsel, lenders, prospective lenders, brokers, joint venturers, or proposed joint venturers. Written notice under this paragraph may be made by electronic mail to the e-mail address(es) set forth in paragraph 10 of this Agreement, with all such written notices kept confidential by the Parties.

9. Authority. Simultaneously with the execution of this Agreement, the Kazakhstan Entities shall provide to Plaintiffs the opinion of their attorneys unconditionally opining that the individuals executing this Agreement on behalf of the Kazakhstan Entities have the power and authority to execute this Agreement and bind the Kazakhstan Entities and that the Kazakhstan Entities are bound by the terms of this Agreement.

10. Time is of the Essence. With regard to all acts set forth or referred to in this Agreement, time is of the essence.

11. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without regard to any applicable conflicts of law principles. The prevailing party shall have the right to collect from the other party its reasonable costs and necessary disbursements and attorneys' fees incurred in enforcing this Agreement. This also includes any costs, disbursements and fees incurred by the prevailing party in its collection of such fees. Any action or proceeding between one or more of the Parties shall be brought in the United States District Court for the Southern District of New York or, if unavailable because of a lack of jurisdiction, New York State Supreme Court, and the Parties consent to the jurisdiction of such courts. Service on Plaintiffs may be made by mail to Sukenik, Segal & Graff, P.C., Attn: David Segal, Esq., at 404 Fifth Avenue, 5th floor, New York, New York, 10018, with a copy by e-mail to davidsegal@ssglaw.com. Service on the Kazakhstan Entities may be made by mail to

CONFIDENTIAL

Almaty-BTA0162928

EXECUTION COPY

Boies, Schiller & Flexner, LLP, 575 Lexington Avenue, New York, New York, 10022, Attn: Matthew L. Schwartz and Randall Jackson, Esq., with a copy by e-mail to MLSchwartz@BSFLLP.com and RJackson@BSFLLP.com.

12. Complete Agreement. The Parties acknowledge that this Agreement, including all accompanying Annexes, contains the full and complete agreement between and among them, and that there are no written, oral or implied agreements or understandings not specifically set forth herein. Each Party acknowledges that no other Party, or agent or attorney of any other Party, or any person, firm, corporation, trust, or any other entity has made any promise, representation, or warranty, whatsoever, express, implied, or statutory, not contained herein, concerning the subject matter hereof, to induce the execution of this Agreement. Each signatory also hereby acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation, or warranty not contained herein.

13. Amendments. This Agreement may not be amended except by a written agreement signed by the Party to be charged.

14. Faxed, Electronic, and Duplicates of Originals. This Agreement may be executed in two or more counterparts. The execution pages may contain original, scanned, or photocopied signatures and may be delivered to the Parties by U.S. mail, facsimile, e-mail, or electronically, and each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Third parties may rely on a photocopy of the fully executed Agreement or the counterpart signature pages.

15. Construction of Agreement. This Agreement shall not be construed more strictly against one Party than against any other Party merely by virtue of the fact that it might be prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Agreement.

10

CONFIDENTIAL

Almaty-BTA0162929

EXECUTION COPY

16. <u>Notice</u>. All notices to be given hereunder shall be made to the mail and email addresses set forth in paragraph 10 hereof.

*[signatures on following page]*

11

CONFIDENTIAL Almaty-BTA0162930

EXECUTION COPY

WHEREFORE, the Parties intending to be legally bound execute this Agreement as of the Effective Date.

JOSEPH CHETRIT

By: _____
Name: Joseph Chetrit

CF 135 FLAT LLC

By: _____
Name: Joseph Chetrit
Title: Authorized Signatory

CF 135 WEST MEMBER LLC

By: _____
Name: Joseph Chetrit
Title: Authorized Signatory

THE CHETRIT GROUP LLC

By: _____
Name: Joseph Chetrit
Title: Authorized Signatory

JSC BTA BANK

By: _____
Name: _____
Title: Deputy Chairman

CITY OF ALMATY, KAZAKHSTAN

By: _____
Name: A. Hodykpedreeva
Title: Head of Finance Agreement

APPROVED AS TO FORM BY:

SUKENIK, SEGAL & GRAFF, P.C.
Attorneys for Joseph Chetrit, The Chetrit Group LLC, CF 135 Flat LLC, and CF 135 West Member LLC

By: _____
David C. Segal, Esq.
Josh Graff, Esq.
404 Fifth Avenue, 5th Floor
New York, New York 10018
E-mail:   davidsegal@ssglaw.com
          jgraff@ssglaw.com

APPROVED AS TO FORM BY:

BOIES, SCHILLER & FLEXNER LLP
Attorneys for JSC BTA Bank and the City of Almaty, Kazakhstan

By: _____
Matthew L. Schwartz
Randall W. Jackson
575 Lexington Avenue
New York, New York 10022
E-mail:   mlschwartz@bsfllp.com
          rjackson@bsfllp.com

12

CONFIDENTIAL

Almaty-BTA0162931

EXECUTION COPY

### Annex 1

### List of Proceedings brought by Triadou

1. *Triadou SPV S.A. v. CF 135 FLAT LLC, et al.*, No. 653462/2014 (Sup. Ct. N.Y. Cnty, Nov. 10, 2014)

2. *Triadou SPV S.A. v. CF 135 FLAT LLC, et al.*, No. 650239/2015 (Sup. Ct. N.Y. Cnty, Jan. 26, 2015)

3. *Triadou SPV S.A. v. CF 135 FLAT LLC, et al.*, No. 154681/2015 (Sup. Ct. N.Y. Cnty, May 11, 2015)

4. *Triadou SPV S.A. v. CF 135 FLAT LLC, et al.*, No. 156907/2015 (Sup. Ct. N.Y. Cnty, July 9, 2015).

13

CONFIDENTIAL

Almaty-BTA0162932

EXECUTION COPY

## Annex 2

Flatotel Interest Assignment Agreement

14

CONFIDENTIAL

Almaty-BTA0162933

EXECUTION COPY

## Annex 3

CF 135 WEST MEMBER LLC Operating Agreement effective November 7, 2012

15

CONFIDENTIAL

Almaty-BTA0162934