UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/12/2020

CITY OF ALMATY, KAZAKHSTAN, and BTA BANK JSC,

                    Plaintiffs,

             -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

                    Defendants.

**OPINION & ORDER**

1:15-CV-05345 (AJN) (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Defendant Triadou SPV S.A. ("Triadou") moves pursuant to Federal Rule of Civil Procedure 37 ("Rule 37") for sanctions against Plaintiffs, the City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA Bank") (collectively, the "Kazakh Entities" or "Plaintiffs") for exceeding the scope of authorized deposition questioning of non-party witness Kairat Sadykov. (Doc. No. 1178.) Triadou requests that the Court strike Sadykov's deposition and preclude Plaintiffs from calling him as a witness at trial. It also seeks its reasonable attorneys' fees incurred in connection with preparing for and conducting the Sadykov deposition, which it contends was unnecessary because he was not competent to testify on the topics authorized by this Court, as well as its attorneys' fees and costs incurred in connection with the instant motion for sanctions.[1]

After careful consideration, Triadou's motion is granted in part and denied in part.

---

[1] The Court does not address Triadou's arguments about the deposition of a witness from SMP Partners or the authentication of documents produced by that entity because those arguments are irrelevant to the instant motion, which pertains solely to the conduct at Sadykov's deposition. The Court has already ruled that Triadou may depose a witness from SMP Partners and extended discovery for that purpose. Plaintiffs do not object to Triadou deposing a witness from SMP Partners. (Doc. No. 1151.)

## BACKGROUND

Last July, this Court permitted Plaintiffs to amend their Rule 26(a) disclosures after the close of discovery to add certain witnesses, including Kairat Sadykov, on whose testimony Plaintiffs intend to rely at trial to authenticate certain spreadsheets produced in discovery. These spreadsheets, referred to as the "Tradestock spreadsheets," reflect the transfer of money between and to various entities and, according to Plaintiffs, reflect what happened to the money Defendant Mukhtar Ablyazov stole from BTA Bank and how the money was laundered through various shell entities into Triadou's accounts. To mitigate any prejudice to Defendants from the decision permitting the late addition of these three witnesses, the Court allowed Defendants to depose the witnesses as to the meaning of the information in the spreadsheets. (Doc. No. 1101.)

Thereafter, Plaintiffs stated that they intended to question Sadykov at his deposition about communications he had with Yerzhan Tatishev (the former Chairman of BTA Bank, now deceased) and Defendant Mukhtar Ablyazov, as well as the authenticity and meaning of the spreadsheets. Triadou objected to Sadykov offering testimony on anything other than the authenticity and meaning of the spreadsheets. The Court then held a phone conference to discuss Triadou's objection and the scope of Sadykov's deposition testimony. After hearing from the parties, this Court clarified its prior discovery order and held that Plaintiffs' questioning of Sadykov at deposition must be limited to establishing the authenticity of the Tradestock spreadsheets and related foundational questions. It permitted defense counsel to ask questions about the meaning of the information in the spreadsheets. (Doc. No. 1160.)

The parties subsequently deposed Sadykov and the other two witnesses in Kazakhstan. Triadou objected to various questions posed by Plaintiffs' counsel during the deposition on the ground that they were unrelated to establishing the authenticity and meaning of the spreadsheets and, thus, exceeded the limitations this Court placed on the deposition. Plaintiffs contend they stayed within the boundaries of this Court's order and that their questions to Sadykov were designed to establish the trustworthiness and accuracy of the information in the spreadsheets, which they say is necessary to offer the spreadsheets and the information contained therein into evidence. Triadou requests that this Court sanction Plaintiffs for violating its order circumscribing the scope of the deposition by striking Sadykov's deposition testimony and precluding Plaintiffs from offering his testimony into evidence.

## SUMMARY OF DEPOSITION TESTIMONY

Because Triadou does not point to specific questions in the deposition for a ruling, the Court must first summarize the deposition testimony before addressing the substance of Triadou's motion. Triadou and the other Defendants' counsel objected throughout the entirety of the deposition, which was quite short. The transcript of Plaintiffs' questions to Sadykov is only 45 pages, and nearly half of it consists of colloquy of counsel about the objections, including their differing views on how to establish a foundation for Sadykov's testimony about the spreadsheets, the meaning of information in them, and whether the questions were truly aimed at authenticating the documents and related foundational questions.

Plaintiffs' counsel started the deposition by asking general questions about Sadykov's background and relationship to BTA Bank, including his various roles and responsibilities there. Counsel quickly zeroed in on Sadykov's responsibilities for and to a unit of the bank called

"UKB-6" to establish that he had personal knowledge about how UKB-6 conducted its operations. Plaintiffs' counsel then showed Sadykov an email with a bank statement from Trasta Komerc Bank attached, and asked questions about the email and bank statement and a question about who within UKB-6 had access to Trasta Komerc Bank records. Defense counsel objected to these questions.

Plaintiffs' counsel then asked Sadykov if he knew what Tradestock is and showed him the Tradestock spreadsheets and asked him to explain what the chart shows. Defense counsel then objected to these questions on the ground that Plaintiffs' counsel had not established the foundation for how or why the witness was able to answer questions about the spreadsheet. The witness went on to explain that the names listed in the "Issuer" and "Recipient" columns on the chart are offshore companies affiliated with BTA Bank, something the witness knew because he worked directly with the offshore companies when he worked at BTA Bank supervising the operations of UKB-6. The witness further explained that UKB-6 had been directed to engage in the various transactions reflected on the chart, such as issuing loans and transferring funds. Defense counsel objected again on the ground that the testimony elicited was beyond the scope of the Court's order.

Plaintiffs' counsel then asked Sadykov to explain what the meaning of the information in the "purpose of payment" column was, which elicited another objection. Plaintiffs' counsel then asked Sadykov to look at a particular transaction noted on the spreadsheets involving a transfer of $4.1 million from a company called "Anital" to Tradestock for the purchase of soy flour. The witness discussed the transaction and stated that no soy flour was bought, even though the "purpose of payment" column stated that soy flour was purchased. Defense

counsel again objected to the testimony as beyond the scope of this Court's order and lacking in foundation. Plaintiffs' counsel then attempted to establish foundation and asked the witness how he knew about the information reflected on the chart. Although it is not entirely clear from the testimony, the witness appeared to answer that he conveyed instructions to the author of the chart as to what information to include in the chart. Defense counsel again objected.

Plaintiffs' counsel then asked Sadykov about another transaction reflected on the chart showing Tradestock transferring funds to Trasta Bank. Sadykov explained that the companies listed as issuers and recipients on the chart were all affiliated with BTA Bank, except for Theyler Holding. Plaintiffs' counsel directed Sadykov to a transaction shown on the chart reflecting a payment of $96 million from Tradestock to Theyler Holding, and asked the witness whether Tradestock received funds from any other companies in order to make the transfer to Theyler Holding. Sadykov responded by stating the Tradestock received funds from United Clearing, Balgaven, Comwork and Imex Management, all of which had received the funds in the form of loans issued by Bank TuranAlem. Plaintiffs' counsel then asked who had issued the letters of credit/loans. Sadykov responded that the letters of credit were provided by a foreign financial organization in Russia. Defense counsel again objected to all of these questions based on form and foundation. Plaintiffs' counsel went on to ask Sadykov to identify some of the entities listed in the "Issuer" and "Recipient" columns by initials. Sadykov identified "TKB" as Traska Komerc Bank and "BTA" and Bank TuranAlem and "BTB" as Balticums Bank. When asked the basis for his knowledge, Sadykov stated that offshore companies affiliated with Bank TuranAlem first had accounts with Trasta Bank and then had accounts with Balticums Bank.

Plaintiffs' counsel asked Sadykov whether he recognized the name "Banque MeesPierson" listed on the chart in a column labeled "Bank of Recipient."  Sadykov stated that it was a bank where MeesPierson had an account and went on to explain in response to another question that he met with representatives of MeesPierson at the direction of Tatishev.  Defense counsel again objected to the line of questioning as outside the scope of the Court's order.

After the questions about the spreadsheets were completed, Plaintiffs' counsel showed Sadykov another document entitled "Client Agreement Theyler Holdings Limited MeesPierson Intertrust" and asked him if his signature appeared on the document.  The witness answered in the affirmative.  Defense counsel objected to the line of questions and answers on the basis that the exhibit is beyond the scope of this Court's order.

Plaintiff's counsel then showed Sadykov another Tradestock spreadsheet and asked the witness about it.  Sadykov testified that he did not create the document and did not see it before his deposition preparation.  Plaintiffs' counsel asked Sadykov if he nevertheless understood the information reflected on the multi-page document.  The witness answered in the affirmative and explained that the first column showed offshore companies affiliated with BTA Bank, the second column showed people authorized to act on behalf of those offshore companies, the third column showed nominee directors of those companies, and the fourth column showed signatories who signed contracts on behalf of those companies.  The witness explained he knew this information based on his time as a supervisor for UKB-6 and elaborated that the people listed as having power of attorney for those companies were Tatishev or his close associates.  Plaintiffs' counsel then asked how Sadykov knew about Tatishev's relationship with various people listed on the chart.  The witness again explained he learned about this

when he supervised the operations of UKB-6. Plaintiffs' counsel asked Sadykov to explain the difference between "nominee directors" and "directors." Sadykov explained that nominee directors do not have any authority to act for a company. Defense counsel objected to this whole line of questions, again, as being beyond the scope of this Court's order.

Plaintiffs' counsel then asked Sadykov about records maintained by BTA Bank and UKB-6 at the time Sadykov advised Tatishev on UKB-6. Sadykov explained that the bank maintained records concerning loans during that time, but did not know who maintained records about transfer of funds between offshore companies. However, he explained that a person named Mira Zhaksylykova at a separate company maintained documents about the transfer of funds between offshore companies. Plaintiffs' counsel also asked Sadykov whether loans issued by UKB-6 were ever in default and whether Tradestock had ever repaid UKB-6 loans. Sadykov stated that the loans were repaid and not in default. Defense counsel also objected to this line of questions as beyond the scope of this Court's order.

## LEGAL STANDARD FOR DISCOVERY SANCTIONS

A magistrate judge has broad authority to impose discovery sanctions. Orders imposing sanctions "are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), 'unless the sanction employed disposes of a claim.'" *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15–CV–01095 (PKC)(BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (quoting *Lan v. Time Warner, Inc.*, 11 Civ. 2870(AT)(JCF), 2016 WL 928731, at *1 (S.D.N.Y. Feb. 9, 2016)). This rule extends to orders precluding the introduction of specified evidence, which are "properly characterized as non-dispositive," so long as "the order does not wholly dispose of a party's claim or defense . . . ." *Seena Int'l Inc.*, 2016 WL 2865350, at *10.

Where, as here, sanctions are sought because a party has "fail[ed] to obey an order to provide or permit discovery," the motion is ordinarily analyzed under Rule 37(b)(2)(A), which permits the court to "issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The court must also consider whether to order the disobedient party to pay the "reasonable expenses, including attorney's fees" incurred by the moving party, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The only predicates to the imposition of sanctions under Rule 37(b) are a "court order directing compliance with discovery requests" and "non-compliance with that order." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 15-CV-3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017) (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986)). Rule 37(b) applies "notwithstanding a lack of wilfulness or bad faith, although such factors are relevant . . . to the sanction to be imposed for the failure." *Oz v. Lorowitz*, No. 09 Civ.

5532(RJH)(HBP), 2011 WL 803077, at *2 (S.D.N.Y. Mar. 7, 2011) (alteration in original) (internal quotation marks and citation omitted).

## DISCUSSION

The instant dispute has arisen because the parties disagree with respect to the precise meaning of this Court's order limiting questions to those related to the authentication of the Tradestock spreadsheets and related foundational questions. It also arises out of a dispute about the testimony needed to enter the Tradestock spreadsheets into evidence under the residual hearsay rule so the jury may consider the information in the spreadsheets for its truth.[2]

Federal Rule of Evidence 901 ("FRE 901") addresses the authentication and identification of evidence. It states that the party offering a document "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This may be done by, among other things, offering the testimony of a witness with knowledge that the "item is what it is claimed to be." Fed. R. Evid. 901(b)(1). When the item is a writing, the "best evidence rule" requires the original document or a duplicate produced by a process or technique that accurately reproduces the original, absent genuine questions about the original's authenticity or circumstances that would otherwise make it unfair to admit the duplicate. *See* Fed. R. Evid. 1001, 1002, and 1003.

An authentic document is not necessarily admissible if it constitutes hearsay. Federal Rule of Evidence 807 ("FRE 807"), amended effective December 1, 2019, addresses when an out-of-court statement may be admitted for its truth if the statement is not otherwise

---

[2] Importantly, if a statement is admitted into evidence, the jury does not assume the statement to be true, but evaluates the statement in the context of other evidence and testimony. Fed. R. Evid. 807 advisory committee's note to 2019 amendments.

admissible under Federal Rules of Evidence 803 or 804.  Fed. R. Evid. 807.  FRE 807 permits the

admission of a statement if it "is supported by sufficient guarantees of trustworthiness—after

considering the totality of circumstances under which it was made and evidence, if any,

corroborating the statement; and . . . is more probative on the point for which it is offered than

any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid.

807(a).  The rule "provides that the focus for trustworthiness is on circumstantial guarantees

surrounding the making of the statement itself, as well as any independent evidence

corroborating the statement."  Fed. R. Evid. 807 advisory committee's note to 2019

amendments.

Triadou contends that Plaintiffs' identification of Sadykov was a ruse to elicit testimony

Plaintiffs otherwise failed to obtain during discovery.  In support of its motion, Triadou points to

portions of Sadykov's deposition testimony showing that Sadykov had never seen the

spreadsheets before being shown them by Plaintiffs' counsel in preparation for his deposition.

Thus, according to Triadou, Sadykov was not competent to authenticate the documents or the

information within them.  Triadou also complains that Plaintiffs showed Sadykov other

documents in addition to the Tradestock spreadsheets and, thus, their questioning went

beyond the scope of this Court's order.  Triadou argues that it is clear from the deposition

transcript that the only purpose of Sadykov's deposition was to elicit information that has

nothing to do with the Tradestock spreadsheets.  Defendants say little about whether the

questions posed to Sadykov would assist Plaintiffs in establishing the trustworthiness of the

information in the spreadsheets for purposes of FRE 807, except to say that Sadykov did not

explain the basis for his knowledge or recollection of specific transactions set forth in the

spreadsheets. Accordingly, Triadou contends that Sadykov is not competent to testify that the spreadsheets are what they purport to be, as required by FRE 901.

Plaintiffs' counsel contend that their questions were within the scope of the Court's order because they were designed to elicit information needed to admit the information contained in the spreadsheets for its truth under FRE 807. They argue that they needed to evince the basis for Sadykov's knowledge about the information in the spreadsheets so they could ask him questions about the meaning of the information and the truthfulness of the information. In other words, they sought his testimony not to authenticate the spreadsheets, but rather, to discuss the meaning and authenticity of the information in the spreadsheets. In particular, they say the amounts of money and entities that transferred and received those amounts are accurate, but that the purpose of payment information on the spreadsheets is false. Another witness who was deposed prepared the spreadsheets and testified that the information was derived from bank statements but, according to Plaintiffs' counsel, "arguably" could not establish the embedded information describing the purpose of the transactions. Plaintiffs' counsel contend that Sadykov, who supervised UKB-6 when Tradestock provided funds for the acquisition of a company called Zhaikmunai, could testify about the trustworthiness and accuracy of the information describing the transactions reflected on the spreadsheets and the meaning of the information generally. They also contend that defense counsel's repeated objections for lack of foundation forced the scope of questioning to broaden.

The Court agrees with Triadou. The Court's prior order contemplated that a witness with knowledge about how the spreadsheets were prepared would testify that the

spreadsheets are what they purport to be—a record of financial transactions.  Foundational questions should have focused on the witnesses' background and knowledge about how the spreadsheets were prepared, including the source of the information and whether the witness knew about the reliability of the information on the spreadsheets and the basis for such knowledge.  The questions Plaintiffs' counsel posed to Sadykov were not so focused.  The most egregious examples of Plaintiffs' counsel going beyond the scope of this Court's order were their questions to the witness about documents other than the Tradestock spreadsheets and their questions about Sadykov's interactions with representatives of MeesPierson.  Their questions about the meaning of the underlying information and details of certain transactions reflected on the spreadsheets were also beyond the scope of this Court's order.  Defense counsel could have questioned Sadykov about the meaning of the information on the spreadsheets but decided not to, presumably for strategic reasons.

To the extent Plaintiffs wish to introduce evidence about the purpose of the transactions, that testimony should have been elicited from other witnesses during discovery. The Court permitted the late addition of witnesses because Plaintiffs stated they were needed for authentication purposes.  The Court did not extend discovery for purposes of Plaintiffs obtaining additional testimony about details of the transactions on the spreadsheets, the operations of UKB-6 generally, or the relationship between and among companies listed on the spreadsheets.  Thus, Plaintiffs' counsel exceeded the scope of this Court's order.

To the extent Triadou requests that Sadykov be barred from testifying at trial, that request is denied.  Whether and for what purpose he will be permitted to testify will be decided by the Honorable Alison Nathan, who is the trial judge.  Triadou's request that Sadykov's

deposition testimony be stricken as a sanction is granted, except as to the following portions of the deposition transcript: (1) the questions and answers at 1:01-10:23 and 12:06-23, as these are simply background questions that are appropriate for any witness in a deposition; (2) the questions and answers at 40:05-41:17, as these questions pertain to the nature of records maintained by UKB-6 generally and relate to whether the Tradestock spreadsheets are business records; and (3) the questions at 24:21-26:02, as these were directed at a particular transaction reflected on a Tradestock spreadsheet and the source of information about the purpose of the transaction.[3]  Additionally, because the motion does not pertain to questions posed by defense counsel to Sadykov, the testimony on pages 45 through 46 of the deposition transcript is not stricken.  This sanction is appropriate because the Court circumscribed the scope of deposition questioning and Plaintiffs' counsel disregarded that order.

   To the extent Triadou seeks attorneys' fees and costs associated with the preparation for and conduct of Sadykov's deposition, their request is denied.  Although Plaintiffs' counsel did not specifically question the witness about the information he provided and how he provided it to the author of the spreadsheets, based on the testimony elicited by Plaintiffs' counsel from Sadykov, he appears to have had some basis for knowledge about the meaning and source of the information on the spreadsheets because he appears to have stated that he provided the information to another individual to include on the spreadsheets.  (*See* Sadykov Dep. Tr. 24:21-26:02.)  Triadou requested the opportunity to depose Sadykov and could have

---

[3] Plaintiffs' counsel did a poor job of eliciting information about the authenticity of the information on the spreadsheet about this transaction.  Plaintiffs' counsel were permitted to, and could have asked the witness: whether he knew how the spreadsheets were prepared; whether he provided information about particular transactions on the spreadsheets to the persons who prepared the spreadsheet; and whether he knew the source and accuracy of the information he provided for inclusion on the spreadsheets.  However, Plaintiffs' counsel never asked these questions.  Judge Nathan will determine if the non-stricken deposition testimony is admissible at trial.

asked him about the meaning of certain information in the chart. Because Triadou wanted the deposition and chose not to take the opportunity to explore the witness's knowledge about the source and authenticity of information on the spreadsheet, it is inappropriate to award Triadou the full costs of preparing for and conducting Sadykov's deposition. Triadou was going to prepare for the deposition it requested regardless. Likewise, it had the opportunity to develop more information about the spreadsheets, but chose not to develop such testimony. Plaintiffs are not responsible for Triadou's strategic choices about the questions Triadou chose to ask the witness. However, the Court finds that it is appropriate to award Triadou attorneys' fees and costs associated with the conduct of 50 percent of the deposition because it is clear that Plaintiffs' counsel exceeded the permissible scope of questioning and wasted the witness's and defense counsel's time with inappropriate questions during the deposition. Accordingly, Triadou's request for attorneys' fees and costs associated with this sanctions motion is granted.

## CONCLUSION

For the reasons set forth above, Triadou's motion for sanctions (Doc. No. 1178) is granted in part and denied in part. Triadou shall submit its application for attorneys' fees and costs consistent with this Order by **March 20, 2020**. Plaintiffs' opposition to the application is due **March 27, 2020**. No reply will be permitted.

The motions to seal at Doc. Nos. 1179, 1189 and 1191 are granted in part. The letter briefs and Exhibit 1 to Triadou's moving letter brief, which is the Sadykov deposition transcript, may not be filed under seal, except that portions of these documents discussing specific information on the Exhibit labeled PX252 pertaining to an ongoing criminal investigation may be redacted and filed under seal. The Clerk of Court is respectfully requested to terminate the

Motions at Doc. Nos. 1178, 1179, 1189, and 1191.  The parties are directed to review this

Court's revised rules concerning filing documents under seal (which now may be done on ECF)

and to file redacted versions of their letter briefs and the Sadykov deposition transcript on ECF

**within seven days of this Order**.


**SO ORDERED.**

Dated: March 12, 2020
       New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge