# BLANKROME

1271 Avenue of the Americas | New York, NY 10020
blankrome.com

*Phone:*   *(212) 885-5148*
*Fax:*   *(917) 591-7897*
*Email:*   *dskakel@blankrome.com*

March 31, 2020

**VIA ECF**

The Honorable Katharine H. Parker
United States Magistrate Judge
United States District Court – S.D.N.Y.
500 Pearl Street, Room 750
New York, New York 10007

Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
      **No. 15-CV-5345 (AJN)(KHP)**

Dear Judge Parker:

We represent Triadou SPV S.A. ("Triadou") and respectfully submit this letter, as the Court directed, to address the impact of the documents produced by Latham & Watkins LLP (the "Latham Documents") on defendants' motions for sanctions related to discovery concerning Litco LLC ("Litco"). (ECF 1223). The Latham Documents support and strengthen Triadou's motion for sanctions by revealing two important pieces of information of which the Court (and defendants) were previously unaware. First, the documents show that the City of Almaty ("Almaty") knew, before it entered into the June 2015 Litco Agreement, that entering into such an agreement to compensate Litco with a percentage of its recoveries was improper.[1] Second, the Latham Documents confirm the testimony of Robert Wolf (Litco's counsel) given during the August 8, 2019 evidentiary hearing (the "August 8 Hearing") concerning the timeline of events and substance of discussions between Litco and Almaty in 2015, and therefore bolster his credibility. Thus, while the Court already had sufficient evidence to grant Triadou's sanctions request, the Latham Documents provide even more evidence to support Triadou's motion.

**The Contents of the Latham Documents**. On March 24, 2020, counsel for Almaty/BTA forwarded to defendants 16 documents (39 pages)—all but one of the documents produced by Latham. The documents show that as of April 22, 2015, Almaty had agreed in principle to pay Litco 16% of Almaty's recoveries and a monthly retainer fee of $100,000 in exchange for assistance with Almaty's recovery efforts. (Ex. 1). On April 27, Almaty's counsel (David Schindler of Latham) and Litco's counsel (Wolf) were already discussing an "ethics memo." (Ex. 2). The discussion continued into May—and added Arcanum—along with an acknowledgement that the ownership of Litco was important to the ethical issues, (Ex. 3); and by mid-May, counsel exchanged drafts of a non-disclosure agreement that would allow Litco to share the identity of its members, (Ex. 4).

On May 26, a non-disclosure agreement between Litco and Latham (the "Latham NDA"), which Felix Sater signed as "Principal" of Litco, became effective. (Ex. 5 at LW000011, 13)).

---

[1] The capitalized, defined terms used herein have the same meaning as used throughout Triadou's sanctions briefing. (*See* ECF 967; ECF 968; ECF 1010).

BLANKROME

March 31, 2020
Page 2

The Latham NDA confirms that Latham sought information concerning Litco's ownership "for diligence and evaluating professional ethical obligation compliance purposes," and the document's operative terms prohibited Latham from sharing the identity of Litco's members with anyone, including Almaty. (*Id.* at LW000011). On the same day (May 26), at 7:05 PM, Schindler wrote to Wolf, informing him that (i) despite their clients' interest in cooperating, "the NY and California Bars have ethical rules that prohibit any arrangements with witnesses that provide for contingent payments," and (ii) Latham and Almaty could not "enter into any arrangements that might be construed as running afoul of the NY an[d] California rules. Therefore, our clients have both agreed that they cannot proceed under the terms set forth in my email of April 22." (Ex. 6).

On May 28, while discussing a potential alternative arrangement, Wolf confirmed for Schindler that Sater was Litco's "sole member." (Ex. 7). On May 29, Schindler requested more information about Sater's relationship with Bourg, a question that his "ethics folks" "repeatedly" had put to him. (*Id.*).[2] On May 31, in an email titled "Confidential – Cyprus," Wolf informed Schindler that neither Sater nor Bourg had anything to do with any issues in Cyprus, which Wolf claimed were distinct "from the New York real estate matters that have involved Nicolas Bourg, Chetrit, Flatotel, and Cabrini." (Ex. 8). Wolf then noted that he had not copied Arcanum's Peder Garske on his email because it discussed Litco's ownership, which information was protected by the Latham NDA; Wolf closed by stating that he hoped his email would "facilitate[] the consummation of the Assistance Agreement" between Almaty and Litco "as to Cyprus." (*Id.*). Schindler and Wolf then exchanged emails about whether a deal could be reached for assistance in the U.S. if Almaty and Litco could first agree as to Cyprus. (Ex. 9).

**The Latham Documents Confirm Almaty's Knowledge and Wolf's Testimony**. The Latham Documents add critical evidence that provide further support for Triadou's sanctions motion. First, the documents show that Almaty knew, weeks before it signed the June 2015 Litco Agreement, that agreeing to pay Litco 16% of Almaty's recoveries was improper. Despite that knowledge, Almaty chose to move forward with the Litco Agreement on the same payment terms. Second, the Latham Documents confirm Wolf's testimony of the timeline and substance of Litco's discussions with Latham about Sater's ownership of Litco.

Regarding the first point, the Latham NDA and Schindler's May 26 email to Wolf constitute ***direct evidence that Almaty knew*** its proposed payment terms with Litco were improper. The Latham NDA became effective on May 26, 2015, and the document includes Sater's signature as "Principal" of Litco. (Ex. 5 at LW000011, 13). Schindler wrote to Wolf that same evening, stating that "the NY and California Bars have ethical rules that prohibit any arrangements with witnesses that provide for contingent payments," and that, as a result, Latham and Almaty could not "enter into any arrangements that might be construed as running afoul of the NY an[d] California rules." (Ex. 6). Schindler's email closed by confirming that his and Wolf's "***clients have both agreed*** that they cannot proceed under the terms set forth in my email of April 22." (*Id.* (emphasis added)). This language reflects a mutual understanding at the client level and confirms that Almaty knew as of May 26, 2015 that it was improper to enter into an agreement to pay Litco

---

[2] Given the effective date of the Latham NDA and Schindler's follow-up about the relationship between Sater and Bourg, it appears that the May 28 email, in which Wolf describes Sater as the "sole member" of Litco, was a response to inquiries about Bourg's connection to Litco, (*see* Ex. 7)—which was reasonable to consider given Wolf's representation of both Litco and Bourg, (*see* Ex. 1).

**BLANKROME**

March 31, 2020
Page 3

16% of Almaty's asset recoveries, including with regard to this specific action (per the reference to the "NY…rules"). (*Id.*).

Even if the Court assumes that Schindler/Latham did not tell Almaty that Sater owned Litco, Schindler's May 26 email plainly evidences that Latham advised Almaty that entering into an agreement to provide contingent payments to Litco (whomever its owner) "could be construed as running afoul of the NY an[d] California rules." (*Id.*). Despite knowing it would be improper to do so, Almaty entered into an agreement with the very same counterparty (Litco) and the very same payment terms (16% of asset recoveries and a $100,000 monthly retainer fee) a mere three weeks later. (*See* Ex. 10). The Latham Documents are direct evidence that Almaty knew the Litco Agreement was an improper mechanism to provide contingent payments to witnesses.[3]

The Latham Documents also confirm Wolf's testimony, thereby bolstering his credibility. For example, the documents confirm Wolf's testimony about (i) when discussions about the Litco Agreement began, (*compare* Exs. 1-2, *with* (Ex. 11 at 81:3-19); (ii) the discussion of the ethical implications of the Litco Agreement, which included Schindler, Wolf, and their firms' respective ethics counsel, (*compare* Exs. 2-3, 5, *with* Ex. 11 at 84:9-23, 97:20-98:10); (iii) Sater signing the Latham NDA on Litco's behalf and being identified as Litco's sole member; and (iv) emails discussing Sater's ownership, (*compare* Ex. 5 at LW000011; Ex. 7; Ex. 9, *with* Ex. 11 at 82:8-83:21, 98:23-99:9). Further, the last exchange between Wolf and Schindler, on May 31, 2015, tracks Wolf's testimony that Arcanum's Garske stepped in shortly thereafter to finalize the Litco Agreement due to frustrations with the delays in Latham's negotiations. (*Compare* Ex. 9, *with* Ex. 11 at 88:20-89:9, 106:1-19; Ex. 12 at Almaty-BTA0396508 (evidentiary hearing exhibit DX 24, a Moses & Singer invoice reflecting June 3, 2015 Wolf meeting with Garske "in office")).

Beyond the above critical points, the Latham Documents underscore other issues that support Triadou's motion for sanctions. For example, as the Court recognized during the August 8 Hearing, (*see* Ex. 11 at 26:19-32:24, 37:22-38:21), the documents illustrate the difference between the diligent approach Latham undertook to maintain compliance with ethical rules and the approach taken by Almaty/BTA's current counsel. And while the previously adduced evidence and testimony shows that Arcanum knew the identity of Litco's owner, the Latham Documents confirm that Arcanum also knew that entering into the Litco Agreement was itself ethically improper as a mechanism to pay witnesses, (*see* Ex. 3; Ex. 6; Ex. 11 at 90:1-16 (Wolf testifying that Arcanum knew what was holding up Latham)—which bolsters the conclusion that the Litco Agreement and Arcanum-Litco NDA were artifices designed to provide deniability to Plaintiffs.

The Latham Documents thus (i) confirm that Almaty knew before it entered into the June 2015 Litco Agreement that the payment terms of that agreement were improper; indeed, Almaty determined three weeks earlier that it could not proceed on those terms; (ii) confirm Wolf's testimony concerning the timeline and substance of negotiations between Latham and Litco is accurate; and (iii) support the conclusion that Arcanum acted improperly and knew it was doing so. Because Plaintiffs have abused the judicial and discovery processes, Triadou respectfully requests that Court grant Triadou's sanctions motion and the relief requested therein, and award Triadou its attorneys' fees and costs, including as to this letter. Thank you for your consideration.

---

[3] Put simply, even if Almaty/BTA were correct (they are not) that Latham and Arcanum never shared with their clients that Sater owned Litco, the Latham Documents establish that Almaty knew entering into a contingent payment agreement with Litco was improper, regardless of Litco's owner.

BLANKROME

March 31, 2020
Page 4

Respectfully submitted,

_s/ Deborah A. Skakel_
Deborah A. Skakel