

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3654
E-mail:  mschwartz@bsfllp.com

March 31, 2020

**BY ECF**

Honorable Katharine H. Parker
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Suite 750
New York, New York 10007

      Re:   *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
            **Case No. 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

    We represent the City of Almaty and BTA Bank (the "Kazakh Entities") and respectfully submit this letter to discuss the impact of documents recently obtained from Latham & Watkins LLP on the defendants' pending sanctions motions.  The Latham documents provide compelling evidence that neither the Kazakh Entities nor their agents knew that Felix Sater owned Litco LLC prior to his September 2018 deposition, and further discredit Robert Wolf's testimony.

## BACKGROUND

    On August 8, 2019, this Court held a hearing at which representatives of BTA, Almaty, undersigned counsel, and Arcanum testified that they had no knowledge of Sater's ownership of Litco before his September 2018 deposition.  Aug. 8, 2019 Hr'g Tr. ("Tr.") 215-16 (BTA); 235 (Almaty); 15-17 (BSF); 183-84 (Arcanum).  Sater, who also testified, conceded that he had never disclosed his ownership of Litco to the Kazakh Entities or their counsel.  *Id.* at 148-51.

    Robert Wolf, Litco's counsel, also testified.  Wolf admitted that he told undersigned counsel *the day before Sater's deposition* that he did not know who owned Litco, even though he knew that Sater "was Litco."  *Id.* at 86-87.  Wolf also revealed that there was a nondisclosure agreement between Litco and Latham (the "Latham NDA" or "NDA"), under which Sater was identified as the sole owner of Litco.  *Id.* at 81-83 & 98-101.

## THE LATHAM PRODUCTION

    The Latham production proves that neither the Kazakh Entities, BSF, nor Arcanum knew that Sater was Litco's owner prior to his deposition.[1]  While Latham did learn that Sater owned Litco, that information was shared with Latham on its own behalf, *not* in its capacity as Almaty's counsel.  And the NDA prohibited Latham from sharing that information with anyone, including Almaty or Arcanum.  The production also shows that Wolf took steps to ensure that Arcanum did not learn of Sater's ownership. The Latham documents demonstrate the following:

    On April 22, 2015 – just weeks after their initial meeting and less than a month after Litco was formed, Tr. 94-96, 105 – Latham partner David Schindler e-mailed Wolf to confirm

---

[1]     The entire Latham production is attached as Exhibit A.  Latham produced one e-mail to the Kazakh Entities that was withheld as work-product, *cf.* Tr. 3-4, and which in any case does not concern the NDA, Litco's owner, or any other pertinent issue.  For the Court's convenience, a complete set of Plaintiffs' exhibits (1-21) admitted at the August 8 hearing is also attached.



that his client, Almaty, had tentatively agreed that Wolf's clients, "Litco, LLC and Nicolas Bourg," would assist with Almaty's asset recovery. Litco and Bourg were to be paid a contingency fee, subject to a "more complete agreement" that had yet to be drafted. Ex. A at 1.

On May 26, Schindler e-mailed "to follow-up." He wrote: "each of our clients have asserted claims against the Khrapanovs [*sic*] and, as a result, may be litigating over the same pool of money and/or may be asserting claims against each other." He added: "as we have discussed, the NY and California Bars each have ethical rules that prohibit any arrangements with witnesses that provide for contingent payments." Schindler concluded: "our clients have both agreed that they cannot proceed under the terms set forth in my email of April 22." *Id.* at 8.

As the Court may recall, Bourg was fired as Triadou's director in 2014. Wolf later represented Bourg in making a demand to The Chetrit Group for monies otherwise payable to Triadou. That letter was dated March 24, 2015, and was publicly filed a week later. ECF No. 993 at 3-4 & n.2; Ex. 14; *see also* Tr. 97. The Kazakh Entities were pursuing the same funds, which this Court ultimately attached. In context, therefore, the reference to "witnesses" in the May 26 e-mail was about Bourg, not Sater. That conclusion is supported by the facts that (1) Wolf did not disclose Sater's ownership of Litco until two days later, Ex. A at 9; (2) Bourg was Wolf's client who "asserted claims against the Khrapanovs," whereas Sater had resolved any such claims – unbeknownst to the Kazakh Entities or their agents – by the confidential Tri-County Mall settlement in 2013, *see* Ex. 16 § 2.2; and (3) Latham continued investigating the ethical implications of an agreement with Litco, including later obtaining a representation from Wolf that "there is no relationship between Mr. Sater and Mr. Bourg," Ex. A at 30.[2]

That continued investigation led directly to the Latham NDA, which Wolf e-mailed fully-executed on May 28. *Id.* at 9-13. The NDA was entered into "solely for the purpose of [Latham] evaluating its compliance with its professional ethical obligations in connection with" a possible "Assistance Agreement." *Id.* at 11 (§ 2); Tr. 100. It prevented Latham from disclosing Sater's role "to any person or entity, including, without limitation, Almaty." Ex. A at 11 (§ 2). Sater signed the NDA as Litco's "principal." *Id.* at 13. (In contrast, the so-called CAA between Litco and the Kazakh Entities was signed by Kalsom Kam, Litco's "director," and did not reference Sater. ECF No. 992-7; Ex. 7. Same for the NDA between Arcanum and Litco. ECF No. 992-9; Ex. 9.) In the same May 28 e-mail, Wolf disclosed that "Felix Sater is the sole member of Litco" and attached Litco's LLC Agreement (a non-public document). Ex. A. at 9 & 14-25.

On May 31, Wolf wrote Schindler about a potential agreement between Almaty and Litco as to a Cypriot matter, stressing that it was "entirely separate from the New York real estate matters that have involved Nicolas Bourg, Chetrit, Flatotel and Cabrini," and "Their [*sic*] is no set of facts that have been provided that would remotely contemplate either Bourg or Sater ever becoming witnesses in any related proceeding." *Id.* at 36. He added: "*I have not copied Peder Garske [of Arcanum] as this information, specifically the identity of Mr. Sater is protected by the Confidentiality Agreement.*"[3] *Id.* (emphasis added). There are no documents after May 31.

---

[2]     Any argument that the use of "our clients" in the May 26 e-mail means that Latham informed Almaty of Sater's ownership is incorrect. The only reading consistent with the facts is that Latham appropriately advised its client that an agreement with *Bourg* could not go forward.

[3]     Garske was copied on only one e-mail in the production, dated May 9, concerning scheduling witness interviews. Ex. A at 3. The e-mail does not mention Sater.



## DISCUSSION

The Latham production shows that the Kazakh Entities, BSF (which was not retained until later in June 2015, after the CAA was finalized, Tr. 92), and Arcanum did not learn about Sater's ownership of Litco. Latham was obviously attentive to its ethical obligations and refused to move ahead with an agreement that would have paid Bourg, a potential witness, any contingency fee. Before entering into any agreement with Litco, Latham insisted upon learning more about it – information that Wolf shared with Latham, in its capacity as principal rather than counsel to Almaty, only pursuant to the NDA.[4] The NDA, in turn, prohibited Latham from sharing anything it learned about Litco with Almaty or anyone else, including Arcanum. Wolf's subsequent conduct – most notably his May 31 e-mail that explicitly excluded Garske because he was discussing Sater's stake in Litco, as well as later having Kalsom Kam sign all agreements on Litco's behalf – makes clear that he was deliberately keeping Arcanum in the dark.

The documents also shed light on the CAA negotiations. After failing to get Latham comfortable, Wolf went to Arcanum to broker a deal. Having been bitten by disclosing Sater's ownership to Latham, he continued to conceal it from Arcanum and the Kazakh Entities, who signed the CAA on June 12, less than two weeks after Wolf's last attempt with Latham. With Arcanum, Wolf substituted a contractual representation – that Litco would not identify a witness with a financial interest – for actual identification of Sater as Litco's owner, which derailed the Latham negotiations. Later, Wolf/Litco identified Sater as a witness nonetheless. Tr. 97, 187.

Taken with the rest of the evidence on the motions, the Latham production compels the conclusion that neither the Kazakh Entities, Arcanum, nor BSF knew that Sater owned Litco. Wolf's diligent effort to shield Arcanum from such knowledge – evidenced by his direct statement to that effect – undercuts his (somewhat confused) testimony, Tr. 90, 106 & 110; *but cf. id.* at 127 (denying that Garske was "told explicitly"), that he wantonly revealed Sater's ownership to Garske shortly after breaking off communications with Latham.[5] Rather, these documents support the conclusion that Wolf and Sater took every precaution – down to having someone else sign the CAA on Litco's behalf, and requiring Arcanum to enter into an NDA prohibiting it from sharing information about Litco's owner with its clients or BSF *just in case* it should learn that information – to ensure that the Kazakh Entities, Arcanum, and undersigned counsel never learned of Sater's ownership, lest it undo their lucrative deal under the CAA.

---

[4]  Even if Latham had entered the NDA as Almaty's counsel, its knowledge of Sater's role could not be imputed to Almaty given the NDA's bar on disclosure. ECF No. 993 at 25 n.19.

[5]  The Latham documents undercut Wolf's testimony in other ways. For example, Wolf repeatedly testified that while Latham was doing its ethical due diligence, the CAA "was being negotiated, and drafts were going back and forth." Tr. 81-83; *also id.* at 91, 98, 125. But there are no drafts or discussions of drafts of the CAA in the production; to the contrary, Schindler wrote on May 9 that he would "not be able to draft an agreement with Litco." Ex. A at 3. Nor do the Latham documents support Wolf's (ethically dubious) testimony that so long as *Litco* didn't offer Sater as a witness, he could receive contingent compensation despite being a percipient witness that any party could have called. *Compare* Tr. 116-18 (Wolf's theory), *with id.* at 119-20 (Court's questioning). Wolf also never told BSF that Sater should not be called, *id.* at 120; *also id.* at 114 ("the whole point was to keep Sater at the furthest distance," "[i]ncluding from Plaintiffs' counsel"), and of course BSF did add Sater to Plaintiffs' Rule 26(a) disclosures.



Thank you for your consideration.

                                                  Respectfully,

                                                  /s/ Matthew L. Schwartz
                                                  Matthew L. Schwartz
                                                  BOIES SCHILLER FLEXNER LLP
                                                  55 Hudson Yards
                                                  New York, New York 10001