USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/14/2020

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CITY OF ALMATY, KAZAKHSTAN and BTA
BANK JSC,
                                    Plaintiffs,

            -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV,
ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

                                    Defendants.

-----------------------------------------------------------------X
```

**ORDER ON ATTORNEYS' FEES APPLICATION FROM TRIADOU**

**15-CV-05345 (AJN) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

This Court previously granted Defendant Triadou SPV S.A.'s ("Triadou") Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37 for Plaintiffs' conduct in discovery in connection with the deposition of Kairat Sadykov. (Dkt. No. 1221.) As a penalty, this Court held that Triadou was entitled to 50 percent of its attorneys' fees and costs incurred in connection of the Sadykov deposition. The deposition lasted two hours. Triadou then filed the instant application setting forth its fees and expenses. (Dkt. No. 1227.) The Court has reviewed Triadou's application and for the reasons set forth below, awards Triadou attorneys' fees in the amount of $6,350.75 and costs in the amount of $330.73.

**BACKGROUND**

Triadou seeks a total of $24,415.65 in attorneys' fees and $330.73 in costs, which represents half of the cost of the deposition transcript. The legal work was performed by Deborah Skakel, a partner with Blank Rome LLP ("Blank Rome"), Alex Hassid, also a Blank Rome partner, Robyn Michaelson, a senior associate at Blank Rome, and Shareen Sarwar, a junior

associate at Blank Rome.  Ms. Skakel has submitted a declaration affirming that this amount was actually billed to Triadou and providing a detailed accounting of the hours worked by each lawyer.  (Dkt. No. 1228 ("Skakel Decl.").)

Ms. Skakel has considerable experience representing clients in complex commercial disputes.  She received her J.D. from Cornell Law School and, after graduating, began working at Milbank, Tweed, Hadley & McCloy LLP.  Since working at Milbank, Ms. Skakel worked at several other firms, climbing to the rank of partner.  She joined Blank Rome in 2016, where she serves as co-chair of the firm's corporate litigation practice and co-chair of the New York office.  Ms. Skakel's hourly rate was $925 during the relevant period.  (*Id.* ¶ 3.)

Mr. Hassid also has substantial experience in complex commercial disputes involving fraud, breach of contract, and other issues.  He received his J.D. from George Washington University.  He joined the law firm Dickstein Shapiro LLP ("Dickstein Shapiro") after law school, where he remained until moving to Blank Rome in 2016.  His hourly rate was $710 during the relevant period.

Ms. Michaelson obtained her J.D. from Fordham University School of Law in 2014.  She started her career at Dickstein Shapiro and moved to Blank Rome in 2016.  Her hourly rate during the relevant period was $545. (*Id.* ¶ 5.)

Ms. Sarwar graduated from Georgetown University Law Center in 2018.  Her hourly rate during the relevant period was $390.  She is admitted to practice in Virginia and the District of Columbia, but performed work on this matter under the supervision of attorneys admitted to practice in New York.  (*Id.* ¶ 6.)

2

Detailed time records have been provided, with billing increments of 1/10th of an hour. (*Id.* ¶ 7 & Exs. 1-3.) The time reflects work spent researching and drafting a portion of a three-page letter motion concerning the Sadykov deposition and requesting sanctions, review of Plaintiffs' response letter, preparation of a reply letter, half the attorney time for the two-hour deposition, and time spent preparing the instant application for fees and costs. The rates charged were consistent with Blank Rome's regular rates, subject to a 10 percent discount that was extended to Triadou. (*Id.* ¶ 7.)

## **LEGAL STANDARD**

A district court exercises considerable discretion in awarding attorneys' fees. *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011), s*uperseded on other grounds as recognized in Acker v. General Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *TufAmerica Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016) (internal quotation marks omitted), *reconsideration granted in part in* 2016 WL 3866578 (S.D.N.Y. July 12, 2016) *and* 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018).

Attorneys' fees are awarded by determining a presumptively reasonable fee, or a "lodestar," reached by multiplying a reasonable hourly rate by the number of hours reasonably expended. *See TufAmerica Inc.*, 2016 WL 1029553, at *3 (citing *Millea*, 658 F.3d at 166); *see also Bergerson v. New York State Office of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289–90 (2d Cir. 2011). When evaluating hourly rates, the Court looks at "what a

3

reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson,* 652 F.3d at 289 (internal citations and quotation marks omitted). The Second Circuit's "forum rule generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* (internal citation and quotation marks omitted); *see also TufAmerica Inc.*, 2016 WL 1029553, at *5 (rates must be "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" (internal citation and quotation marks omitted)). Courts in this District also have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate. *See In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-cv-0962(RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006). Finally, the Court may adjust base hourly rates to account for "case-specific variables." *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 183–84.

When evaluating the number of hours expended, the Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted). In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of

hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord Alicea v. City of New York,* 272 F. Supp. 3d 603, 608–609 (S.D.N.Y. 2017); *see also TufAmerica Inc.*, 2016 WL 1029553, at *3.

The court also looks at the nature of the legal matter and reason for the fee award in considering what is a reasonable rate and reasonable time spent on a matter.  Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to prosecute a case effectively. *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 187.  Likewise, the Court may consider the purpose of the award; that is, a different presumptively reasonable fee may be warranted if the fee is being awarded as a sanction for misconduct than if the fee is being awarded in connection with a successful outcome in a statutory fee-shifting case.  *See Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 633–34 (2d Cir. 2018) (upholding trial court's imposition of more than $2.5 million in discovery sanctions in a case with only $20,000 in controversy, recognizing that "courts routinely award [discovery] sanctions without any discussion of the ultimate merits recovery").

## DISCUSSION

Because Triadou is seeking fees, it bears the burden of demonstrating that its counsel's rates are reasonable.  *See TufAmerica Inc.* 2016 WL 1029553, at *3.  There is no doubt that all of the individuals who performed work on this matter are highly competent.  The Blank Rome attorneys on this case have all acted with the utmost professionalism before this Court and have vigorously advocated on Triadou's behalf.  Ms. Skakel, who is lead counsel, has submitted

a declaration stating that the rates sought are the firms' regular rates, subject to a 10 percent discount. This is strong evidence that the rates requested are reasonable. *See In re Stock Exchanges Options Trading Antitrust Litig.*, 2006 WL 3498590, at *9 ; *see also Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For lawyers engaged in customary private practice, who at least in part charge their clients on an hourly basis regardless of the outcome, the marketplace has set that value." (internal citation and quotation marks omitted)).

Courts in this district have approved rates similar to those sought by Triadou. *See Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588–89 (S.D.N.Y. 2018) (in commercial litigation, court approved hourly rates for partners of $765 and for associates of up to $450), *aff'd sub nom. Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, 15–cv–02044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018), *aff'd*, 768 F. App'x 141 (2d Cir. 2019); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Markets*, No. 12 Civ. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (recognizing that partner rates of up to $1,000 per hour are not uncommon in this District for complex litigation matters); *TufAmerica*, 2016 WL 1029553, at *6 (reasonable rate for partners ranged from $572 to $715 per hour, for associates ranged from $476 to $560 per hour, for junior associates ranged from $375 to $425 per hour, and for paralegals ranged from $150 to $175 per hour); *Rubenstein v. Advanced Equities, Inc.*, No. 13 Civ. 1502(PGG), 2015 WL 585561, at *6–7 (S.D.N.Y. Feb. 10, 2015) (awarding requested rates of $525 for partners and $350 for an associate with four years of experience and another who was a recent law school graduate); *Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652(PAE), 2014 WL 4379100, at *6–7, *7 n.5 (S.D.N.Y. Sept. 4, 2014) (approving associate rates "from approximately $380 to $682" for

associates in case involving "difficult questions of law and fact"). More importantly, recognizing the complexity of this case, this Court previously approved similarly high hourly rates for Plaintiffs' counsel in connection with a different sanctions award against Defendant Mukhtar Ablyazov.[1] (Dkt. No. 1216.) Thus, I find that the hourly rates sought in the instant application are reasonable.

Turning to the hours worked, Triadou seeks reimbursement for the following hours and the following tasks:

- Deposition and Briefing Related to Plaintiffs' Conduct at the Deposition, totaling $18,774.90:

    - 2.8 hours for Ms. Skakel;
    - 9.5 hours for Mr. Hassid;
    - 18 hours for Ms. Michaelson; and
    - 5.2 hours for Ms. Sarwar.

- Attorneys' Fees Application, totaling $5,640.75:

    - 0.5 hours for Ms. Skakel;
    - 0.5 hours for Mr. Hassid; and
    - 10 hours for Ms. Michaelson.

Triadou represents that, prior to submitting its application, it reviewed its time records and reduced the requested time associated with the billing entries by 20 percent to account for drafting and revising portions of its submissions to the Court that were merely updates on other discovery matters. It also made other reductions. Finally, Triadou has capped its request for attorneys' fees in connection with preparation of the instant attorneys' fees application at 11 hours, although it took over 14 hours to complete.

---

[1] Although Ms. Sarwar's regular rate is higher than this Court found reasonable for junior associates, Triadou is seeking reimbursement of her time at a rate of $330 per hour—a rate previously approved by this Court in this matter for junior associates from Plaintiffs' counsel's firm. *Id.*

While the Court appreciates Triadou's efforts to scrub its billing records and submit a reasonable application, Triadou seeks reimbursement for more than this Court awarded. Triadou complained about Plaintiff's conduct at the deposition, and this Court agreed that Triadou was entitled to half the fees and costs associated with the conduct of the deposition. That amount is $1,040.73 (*i.e.*, one hour of Mr. Hassid's time and half the cost of the deposition transcript).

To obtain the award, Triadou necessarily had to make an application to the Court. Thus, it is reasonable to award Triadou its fees of $5,640.75 in connection with its fee application. *See LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-CV-7311 (JPO) (KNF), 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016). Most of the work on the instant application was performed by Ms. Michaelson—an associate. This was an appropriate delegation of work. Further, Ms. Michaelson spent a reasonable amount of time drafting the application, which included a notice of motion, affidavit, submission of records, and a memorandum of law, and Tridou has capped its time at 11 hours.

This Court, in its discretion, already found that it is not appropriate to award Triadou any amount for the preparation of the letters regarding the Sadykov deposition, and nothing in the instant application changes this Court's view. Further, and in any event, Triadou is certainly not entitled to an award of $18,774.90 in connection with the preparation of two short letters. All the lawyers in this case have acted as aggressive advocates, leading to numerous accusations of bad conduct and sanctions motions all around. What is good for the goose is good for the gander has been the prevailing philosophy in discovery in this case. This is not what the Federal Rules of Civil Procedure envision. While the Court appreciates Triadou's

desire to aggressively defend its client and its frustration with Plaintiffs' counsel's questioning during the deposition, requests for sanctions should be made sparingly. Plaintiffs' transgressions during the deposition simply do not warrant greater monetary sanctions than those awarded herein.

## **CONCLUSION**

Accordingly, the Court awards Triadou attorneys' fees in the amount of $6,350.75 and costs in the amount of $330.73. Plaintiffs have objected to this Court's decision on Triadou's Motion for Sanctions, and those objections remain pending. Accordingly, this award of attorneys' fees and costs will be payable only to the extent the Honorable Alison J. Nathan adopts this Court's decision on Triadou's Motion for Sanctions. If Judge Nathan adopts this Court's holding, Plaintiffs will be required to pay Triadou's fees and costs, as set forth above, within **30 days** after that ruling.

**SO ORDERED.**

Dated: May 14, 2020
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge