Case 1:15-cv-05345-AJN-KHP   Document 1249   Filed 05/26/20   Page 1 of 5
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/26/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| City of Almaty, Kazakhstan and BTA Bank JSC, | |
| Plaintiffs, | 15-CV-5345 (AJN) |
| –v– | MEMORANDUM & ORDER |
| Mukhtar Ablyazov, Ilyas Khrapunov, and Triadou SPV S.A., | |
| Defendants. | |

ALISON J. NATHAN, District Judge:

In its July 18, 2016 Memorandum and Order, the Court attached funds held in escrow by a monitor, the Honorable Herman Cahn, pursuant to a Monitorship Order in a related state court action. *See* Dkt. No. 192. Now before the Court is the Monitor's motion to withdraw $19,484.57 of the money held in escrow to pay his fee, to set aside another $100,000 in segregated non-interest bearing account to pay for future monitorship expenses, and to transfer the remaining funds into short-term United States Treasury Bills. For the following reasons, the motion is DENIED.

I. BACKGROUND

The Court assumes the parties' familiarity with this case. It reviews only the facts that are pertinent to this motion. In 2014, Defendant Triadou, SPV S.A. ("Triadou") engaged in a transaction with New York City real estate developer Joseph Chetrit and several of his corporate affiliates (the "Chetrit Entities") in which Triadou agreed to assign its interest in a real estate project to the Chetrit Entities in exchange for, among other things, $21 million in installments. Dkt. No. 1171 at 3. But the Chetrit Entities failed to make the required payments, and Triadou

1

sued them in state court, ultimately receiving judgments in its favor. Dkt. No. 175 at 1-2. But the Chetrit Entities continued to refuse to pay up, in part citing this litigation. On May 5, 2016, the state court approved a Monitorship Order to which Triadou and the Chetrit Entities had consented. *Id.* at 10. Pursuant to the Monitorship Order, the Honorable Herman Cahn was appointed as Monitor "for the sole purpose of monitoring the financial transactions of the [real estate] project and monitoring and collecting all distributions and any other funds to which [the Chetrit Entities] are entitled up to the amount so as to satisfy Triadou's judgments." Dkt. No. 132 Ex. 1, ¶ A. In this capacity, he has collected more than $23 million. The Monitor now seeks to withdraw from the monitorship account $19,484.57 in fees and expenses incurred in connection with the monitorship. He also seeks to move $100,000 into a segregated non-interest bearing account that would be used to pay future expenses incurred while attempting to collect additional funds for the monitorship account. Finally, the Monitor seeks to move the remaining funds into short term United States Treasury Bills. While the Chertrit Entities and the Triadou have agreed to these all of these requests, the City of Almaty and BTA Bank (the "Kazakh Entities") oppose the first two.

## II. DISCUSSION

The Kazakh Entities make a number of procedural arguments as to why the Monitor should not be permitted to move this Court for permission to withdraw money from the monitorship account. But even assuming that the Monitor has the authority and standing to make this motion, his request is still improper. The purpose of this Court's attachment order was to "secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The Court concluded that multiple criteria for attachment were satisfied under New York state law, such as a finding that "it appears likely that [the Kazakh Entities] will have difficulty enforcing a judgment" in the

absence of attachment. Dkt. No. 175 at 20 (quoting *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 586-87 (S.D.N.Y. 2012)); *see generally* N.Y. C.P.L.R. § 6201.

Accordingly, the Court granted the Kazakh Entities' motion for an order of attachment "directed to the assets of Triadou in New York" and specifically "[a]ny funds held in escrow by the Honorable Herman Cahn, pursuant to the Monitorship Agreement dated May 4, 2016 between CF 135 Flat LLC, CF 135 West Member LLC, the Chetrit Group LLC, and Triadou, or which may accumulate in such escrow pursuant to the Monitorship Agreement in the future." Dkt. No. 192 at 6-7. The Court ordered that the Monitor acknowledge that he "will refrain from directly or indirectly transferring, or ordering, directing, or requesting or assisting in the transfer, or in any other way affecting the value of, any such property or debt," and on September 19, 2016 he did so. *Id.* There is no dispute that Triadou had an interest in the money at issue at the time it was attached and that the funds at issue were therefore properly attached. Permitting the withdrawal of the roughly $120,000 is precisely what the attachment order aims to prevent. It makes no difference that the money would be used for a legitimate purpose. Those funds are reserved for a potential future judgment against Triadou. Accordingly, Triadou's interest in the money cannot be transferred to a third party.

What the monitor seeks is in effect a modification of the attachment order under N.Y. C.P.L.R. § 6223. The touchstone inquiry for modification under that statute is the "the need for continuing the levy and the probability that [the plaintiff] will succeed on the merits." *Id.* § 6223(b). These are the same criteria the Court considered in granting the attachment order in the first place. *See* Dkt. No. 175. And there is no contention that any of the underlying circumstances that initially made attachment both appropriate and necessary have changed such

that the attachment order should be modified.  *See Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006).

Additionally, the Monitor and Triadou are incorrect to suggest that this Court's attachment order somehow incorporated that the terms of Monitorship Order and created an exception to attachment for the Monitor's fees and expenses.  When the Court attached "[a]ny funds held in escrow by the Honorable Herman Cahn, pursuant to the Monitorship Agreement dated May 4, 2016," it was simply identifying the funds at issue.  Dkt. No. 192 at 7.  If the Court had attached funds held in a particular bank account and identified them as such, no one would contend that the Court's order had somehow incorporated the terms of service between the bank and the account holder.

While it may seem unfair to deny the Monitor the ability to be paid from the attached funds even as he works to augment them, the Court notes that he may seek appropriate relief from the state court.  *Cf. Amusement Distributors, Inc. v. Oz Forum, Inc.*, 493 N.Y.S.2d 791, 793 (N.Y. App. Div. 1985) (discussing the remedies of a receiver to obtain payment of her fee).  Indeed, there has already been a motion in the state court to modify the Monitorship Order such that the Chetrit Entities would be required to pay the Monitor's fees and expenses directly to the Monitor.  *See* Dkt. No. 1201.  The state court denied this motion without prejudice to renewal in the event that this Court denies the motion presently before it.  *Id.*

Finally, the Court turns to the Monitor's request to transfer the attached funds into short-term United States Treasury Bills.  Such a transfer would also violate the Attachment Order, which prohibits the Monitor from "directly or indirectly transferring, or ordering, directing, or requesting or assisting in the transfer, or in any other way affecting the value of, any such property or debt."  Dkt. No. 192 at 7.  However, the Kazakh Entities have indicated that they do

not oppose this request. If the parties and the Monitor submit a signed stipulation delineating the precise scope of agreement on this issue, the Court will permit the attached funds to be transferred into Treasury Bills.

### III.  CONCLUSION

For the foregoing reasons, the Monitor's motion is DENIED.

This resolves Dkt. No. 987.

SO ORDERED.

Dated: May 26, 2020
        New York, New York

_____
ALISON J. NATHAN
United States District Judge