USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

City of Almaty, Kazakhstan and BTA
Bank JSC,

                          Plaintiffs,

          –v–

Mukhtar Ablyazov, Ilyas Khrapunov, and Triadou
SPV S.A.,

                          Defendants.

15-CV-5345 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This litigation concerns an alleged conspiracy by which prominent citizens of Kazakhstan

purportedly expropriated funds belonging to the City of Almaty, Kazakhstan ("Almaty") and

BTA Bank JSC ("BTA" and, together with Almaty, the "Kazakh Entities"), a formerly state-

owned banking institution based in Kazakhstan, and laundered the stolen funds into New York

City real estate investments.  Now before the Court are: (1) Defendant Triadou's motion for

partial judgment on the pleadings, or, alternatively, motion for partial reconsideration of the

Court's March 29, 2019 Opinion and Order; and (2) Defendant Ilyas Khrapunov's motion to

dismiss the recently added foreign judgment claim against him, as well as his objections to

Magistrate Judge Parker's order permitting the Kazakh Entities to add this claim.  For the

reasons set forth below, the Court DENIES Triadou's motion, GRANTS Khrapunov's motion

and DENIES Khrapunov's objections as moot.

I.        BACKGROUND

The Court assumes the parties' familiarity with this long-running litigation.  It recounts

only the facts pertinent to the motions before it.

1

### A.  Factual Allegations

The Kazakh Entities filed their original crossclaims in this matter on October 12, 2015,

and amended those crossclaims three times, on September 7, 2016, October 5, 2017, and June

28, 2019.  Dkt. Nos. 49, 219, 433, 1094.  For purposes of the present motions, the Court accepts

the allegations in the crossclaims as true.

In brief, Almaty alleges that its former mayor Viktor Khrapunov and several of his

associates and family members embezzled roughly $300 million from the city between

approximately 1997 and 2004.  Dkt. No. 426 at 2; Dkt. No. 1094 ¶¶ 3, 45-55.  BTA claims that

its former chairman Mukhtar Ablyazov siphoned more than $6 billion out of BTA between 2005

and 2009.  Dkt. No. 426 at 2; Dkt. No. 1094 ¶¶ 2, 28-35.  And the Kazakh Entities allege that

Mukhtar Ablyazov, Viktor Khrapunov, and Ilyas Khrapunov joined together to launder both

pools of stolen funds through a series of shell companies, sham transactions, and outwardly-

legitimate investments.  Dkt. No. 426 at 3; *see also, e.g.*, Dkt. No. 1094 ¶¶ 56-59, 68-72, 77-97.

In one such effort, the Individual Defendants allegedly created and funneled proceeds into a

Switzerland-based real estate investment vehicle called SDG Capital, S.A. ("SDG"), then

engaged in a sham sale of SDG to conceal their control.  Dkt. No. 426 at 3; Dkt. No. 1094 ¶¶ 58,

77-84.  They then facilitated the creation of entities under Luxembourg law for the purpose of

investing their stolen funds into United States-based real estate projects, including Triadou.  Dkt.

No. 426 at 3; Dkt. No. 1094 ¶¶ 85-87.

In 2012 and 2013, purportedly at the direction of the Individual Defendants, Triadou

allegedly proceeded to invest funds embezzled from the Kazakh Entities into New York City real

estate projects, including the Flatotel and the Cabrini Medical Center, with New York City real

estate developer Joseph Chetrit and several of his corporate affiliates (the "Chetrit Entities").

Dkt. No. 1094 ¶¶ 88-97, 111-13.  Funding for these investments was allegedly wired to escrow

accounts maintained by counsel for the Chetrit Entities in the United States from accounts held

by a Dubai-based private contracting entity called Telford International Limited ("Telford"),

which the Individual Defendants allegedly controlled, and FBME, a Tanzanian-headquartered

financial institution with operations primarily in Cyprus.  Dkt. No. 426 at 3; Dkt. No. 1094 ¶¶ 21,

78, 98-106, 111-13.

In 2014, allegedly at the direction of the Individual Defendants, Triadou allegedly sought

to liquidate those assets at below-market value to attempt to prevent the Kazakh Entities from

accessing the funds.  Dkt. No. 1094 ¶¶ 114-25.  Accordingly, Triadou engaged in a sham

transaction with the Chetrit Entities whereby Triadou assigned its interest in the Flatotel to the

Chetrit Entities in exchange for $21 million to be paid in four installments, a "fraction of the fair

market value of the properties."  *Id.* ¶ 118; Dkt. No. 1171 at 3.  Further, the Kazakh Entities

allege that the Chetrit Entities made an upfront $6 million payment as repayment for a loan on

the Cabrini Medical Center project and a $1 million down payment on the Chetrit Group's

reacquisition of Triadou's interest in the Flatotel.  The $6 million and $1 million ended up

abroad with SDG, but the rest of the money became tied up in this litigation.  *See* Dkt. No. 1171

at 2.  The Court refers to this purported sham transaction as the 2014 Assignment.

Meanwhile, the Kazakh Entities were litigating claims against Ablyazov and Ilyas

Khrapunov in British Courts.  On June 21, 2018, Judge Waksman of the High Court of

Judgment, Business and Property Courts of England entered a judgment in favor of BTA Bank

against Ilyas Khrapunov in the amount of $424,110,000 plus $76,000,000 in prejudgment

interest.  Dkt. No. 1094 ¶ 202.  The judgment related to claims that Ilyas Khrapunov had

conspired with Ablyazov to violate receivership and freezing orders against Ablyazov due to his alleged theft from BTA Bank. *Id.* ¶ 200.

### B.     Procedural Background

This litigation began as an interpleader action against Triadou and Almaty brought in New York State Supreme Court by the Chetrit Entities, which claimed to face multiple liability under the 2014 Assignment. Dkt. No. 25 ¶¶ 11-17. Almaty removed the action to federal court and asserted counterclaims against the Chetrit Entities, crossclaims against Triadou, and third-party claims against Ablyazov, the Khrapunovs, and Joseph Chetrit. Dkt. No. 49. Over the course of the resulting litigation, the Kazakh Entities entered a settlement agreement with the Chetrit Entities and the Chetrit Entities were dismissed from the case with prejudice. As set out more fully in the Court's previous Opinions in this matter, the Court entertained various dispositive motions and dismissed several of the remaining claims against Triadou and the Individual Defendants.

In one of those Opinions, the Court dismissed as time-barred the Kazakh Entities' claims for conversion, unjust enrichment, and constructive trust against individual defendants Mukhtar Ablyazov, Viktor Khrapunov, and Ilyas Khrapunov. *See* Dkt. No. 592. Triadou then moved for judgment on the pleadings for the conversion, unjust enrichment, and constructive trust claims against it, arguing that those common law claims are also time-barred because the Kazakh Entities have alleged that Triadou is the alter ego of Ablyazov and the Khrapunovs. Dkt. No. 666. On March 29, 2019 the Court granted the motion in part and denied it in part. *See* Dkt. No. 996. It agreed that those three common law claims against Triadou were time-barred to the extent that the Kazakh Entities pursued them on the theory that Triadou was the alter ego of Ablyazov and the Khrapunovs. But the Court did not grant Triadou's motion in full, because it

4

concluded that the Kazakh Entities could still pursue these three claims on a theory that Triadou

is individually liable for them.  Triadou now once again moves for judgment on the pleadings

arguing that the now-Third Amended Crossclaims ("TAC") do not support pleading an

alternative theory of individual liability.[1]  It believes that the Court did not reach this issue in its

previous Opinion.  And if the Court did decide this issue, then Triadou seeks reconsideration of

that decision.

Separately, on January 7, 2019, the Kazakh Entities moved to add a new claim to

recognize the June 21, 2018 U.K. judgment against Ilyas Khrapunov, pursuant to N.Y. C.P.L.R.

§ 5303.  Magistrate Judge Parker granted the motion to amend in an Opinion and Order dated

May 29, 2019.  *See* Dkt. No. 1058.  Khrapunov subsequently filed objections to the May 29

Opinion and Order pursuant to Federal Rule of Civil Procedure Rule 72(a), arguing that the

amendment was futile because the Court lacked subject matter jurisdiction over the claim.  He

then filed a motion to dismiss the foreign judgment recognition claim, incorporating his subject

matter jurisdiction objections, while making an additional argument that the Court also lacked

personal jurisdiction over him for this claim.

## II.    TRIADOU'S MOTION IS DENIED

As an initial matter, the Court determines that Triadou's filing is properly viewed as a

motion for reconsideration.  Contrary to Triadou's suggestion, the Court did reach the issue of

whether the SAC supported pleading in the alternative.  As the Court's header for the relevant

section of the Opinion stated: "The Kazakh Entities Plead Theories of Individual and Alter Ego

Liability in the Alternative."  Dkt. No. 996 at 9.  The Court rejected Triadou's contention that

pleading in the alternative had to be done in a more "technical form," finding that what the

---

[1] The subsequent amendments to the crossclaims, which occurred after the Court's March 29, 2020 Opinion, were unrelated to this issue.  *See* Dkt. No. 1094

Kazakh Entities had provided was sufficient. *Id.* at 11. And it also rejected the argument that the Kazakh Entities could not plead allegations and pursue inferences in support of the alternative theory that were inconsistent with other parts of the SAC. *Id.* The Court did not reach the issue of whether the Kazakh Entities stated plausible claims because Triadou did not and does not challenge the *plausibility* the allegations supporting the alternative theory. Rather, it contests the existence and permissibility of the allegations.

Furthermore, this issue was properly before the Court. Triadou moved for judgment on the pleadings for the three common law claims in their entirety. The Kazakh Entities responded with, *inter alia*, an argument for why judgment on the pleadings for these claims in their entirety was improper—that they had pled an alternative theory that Triadou was individually liable for these claims. While the Court inferred the structure of the Kazakh Entities' argument, there can be no doubt that they made the argument. Indeed, although Triadou had apparently not anticipated this contention, Triadou still responded to it in its reply briefing, both in footnotes, *see* Dkt. No. 702 at 5 n.6, at 7 n.7, as well as in the body, *see id.* at 6-7 (contending that because of the alter ego allegations, the Kazakh Entities cannot also plead that Triadou had "committed a separate actionable wrong from the Individual Defendants") (quotation omitted). Accordingly, the reconsideration standard applies to Triadou's motion.

In any event, the Court's previous conclusion was clearly correct. Under the Federal Rules of Civil Procedure, a plaintiff need not set out alternative theories of liability as "specifically pleaded as 'in the alternative.'" *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999). Rather, the Federal Rules "offer[] sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party," as is appropriate on a motion for judgment on the pleadings. *Id.* Additionally, "a

plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994); *see also id.* ("[W]e may not construe [plaintiff's] first claim as an admission against another alternative or inconsistent claim.").

Here, in support of their unjust enrichment and conversion claims, the Kazakh Entities alleged that each of the defendants (including Triadou) "were unjustly enriched," and "wrongfully and without authorization exercised [] dominion and control over property" of the Kazakh Entities. Dkt. No. 1094 ¶¶ 175, 180.  In support of their constructive trust claim, the Kazakh Entities allege that each defendant engaged in a "knowingly fraudulent transfer." *Id.* ¶ 185.  The use of this construction stands in contrast to the Kazakh Entities' use of the "Ablyazov-Khrapunov group" to refer to the Individual Defendants and their broader criminal enterprise.  These are "separate allegations" from those describing the alleged alter ego relationship. *Adler*, 185 F.3d at 41.  The Kazakh Entities also plead numerous allegations that describe Triadou as an active participant in the alleged criminal enterprise. *See, e.g.*, ¶¶ 98, 103-104, 111-12, 118.  Thus, drawing all inferences in favor of the Kazakh Entities, the allegations in the TAC support and reflect an intent to plead an alternative theory of liability.  Triadou responds that this conclusion is untenable, because the allegations supporting the alternative theory must be read in conjunction with those alleging an alter ego relationship; that is, Triadou claims that the Court cannot interpret parts of the TAC to be inconsistent with other allegations in order to find that a theory of alternative liability is pled.  But even assuming that these theories of liability clash with each other, it is precisely this kind of inconsistent pleading that the Federal Rules and controlling Second Circuit precedent permit. *See Henry*, 42 F.3d at 95.

The Court's conclusion is further reinforced by its experience that plaintiffs often do not affirmatively allege that a corporation is not an alter ego other persons or entities, even if the plaintiff is pursuing a theory of individual liability for that corporation. Other courts in this District have, in circumstances similar to this case, found alternative theories of liability to be supported by complaints without such explicit allegations. *See, e.g.*, *Moses v. Martin*, 360 F. Supp. 2d 533, 545-47 (S.D.N.Y. 2004). Triadou's argument that the TAC does not support the Kazakh Entities' alternative theory of liability fails.

Finally, Triadou is wrong to argue that the Court overlooked an argument it made at the end of its opening brief for its initial motion for judgment on the pleadings, which it claims is separate from its alter ego arguments. In the paragraphs before this argument, Triadou contended that the conversion and constructive trust claims against Triadou were time-barred because they were untimely for alleged alter egos Viktor Khrapunov and Mukhtar Ablyazov and claims accrue against alter egos at the same time. Dkt. No. 667 at 13-14. In the next paragraph, it then "[s]eparately" made the same argument with respect to Ilyas Khrapunov. *Id.* at 14-15. Triadou looked at when the Court found the conversion and constructive trust claims to be time-barred against Ilyas. It then contended that, independent from arguments with respect to Viktor Khrapunov and Ablyazov, the untimeliness of these claims against Ilyas Khrapunov provided an additional ground for finding them time-barred against Triadou. While the reasoning was not spelled out, Triadou appeared to argue this was because of the alleged alter ego relationship between Triadou and Ilyas. Indeed, even though the paragraph at issue never used the phrase "alter ego," it was placed under the heading "Almaty/BTA's Claims against Triadou Are Time-Barred Based on the Allegations that Triadou Is an Alter Ego of the Individual Defendants." *Id.* at 9. Triadou's claim that the paragraph contained an argument separate from the alter ego issue

is further undermined by the fact that Triadou now claims that the Kazakh Entities failed to respond to this argument in their opposition to the initial motion, even though Triadou never pointed this out in their own reply brief at the time. *See* Dkt. No. 702. The argument Triadou made in this paragraph therefore was part and parcel of the alter ego arguments that the Court indisputably addressed in its March 2019 Opinion. Triadou's contention that the Court overlooked an argument fails. Accordingly, the motion for reconsideration is denied.

## III.   KHRAPUNOV'S MOTION IS GRANTED

Defendant Ilyas Khrapunov moves to dismiss the recently added § 5303 judgment recognition claim against him arguing both lack of subject matter jurisdiction and personal jurisdiction.[2] Ultimately, the Court agrees that it lacks subject matter jurisdiction over this claim.

The Court first reviews its previous Opinion on subject matter jurisdiction, dated September 26, 2017. *See* Dkt. No. 426. This Opinion ruled on what was in effect a motion to dismiss by Triadou for lack of subject matter jurisdiction. As a result, and although it was not explicit on this point, the Court did not address subject matter jurisdiction for claims pled solely against Defendants other than Triadou, such as the foreign judgment recognition claim against Ablyazov. In the Opinion, the Court held that "Sections 1330 and Section 1441(d) provide a basis for [subject matter] jurisdiction." *Id.* at 9. Section 1441(d) states that "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(d). And Section 1330 provides that "[t]he district courts shall have original jurisdiction without regard to amount in

---

[2] The portion of Khrapunov's motion seeking dismissal of the fraudulent conveyance claim against him was mooted by the Court's dismissal of that claim in its September 30, 2019 Opinion and Order. *See* Dkt. No. 1171.

controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title . . ." 28 U.S.C. § 1330(a).

The Court reasoned that the since Almaty (a foreign state under § 1603(a)) properly removed the interpleader action against it under § 1441(d), there was jurisdiction over the claims against Triadou.  Section 1441(d) has been described as "quite unusual."  14C Charles A. Wright et al., *Federal Practice and Procedure* § 3728.1 (Rev. 4th ed. 2019).  As the Court noted, its text and legislative history "demonstrate that, 'where a claim has been filed against a foreign state, Congress did not intend removal jurisdiction to be limited to some subset of the claims or parties involved in that action,' but rather 'clearly meant to grant removal jurisdiction over more than just the 'claims' asserted against a foreign state.'"  Dkt. No. 426 at 10 (quoting *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1258-59 (11th Cir. 1992)).

Accordingly, the Court concluded that § 1441(d) "authorizes the removal of the entire case, even if there are nonforeign defendants." *Davis v. McCourt*, 226 F.3d 506, 509-11 (6th Cir. 2000) (quotation marks and citation omitted).  This was true even for claims that were added post-removal.  They were no less part of the "civil action" for which § 1441(d) provides jurisdiction.  *See Suriname Airways*, 974 F.2d at 1260 ("[T]he words 'civil action' are synonymous with the concept of an entire case when those words are not otherwise limited by accompanying language, a companion statute, or legislative history."); *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1296 (2d Cir. 1990) (similarly worded admiralty statute "extends" jurisdiction "to an entire case, including non-admiralty claims against a second defendant").  Excluding such claims from § 1441(d)'s reach would defeat Congress' aim in enacting § 1441(d), "to give sovereign foreign defendants an absolute right to a federal forum coupled with an unusually strong preference for the consolidation of claims." *Teledyne, Inc. v.*

*Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989); *see also Suriname Airways*, 974 F.2d at 1260 ("[Section] 1441(d) was intended to give foreign states the discretion to use a federal forum to litigate civil actions into which they have been brought.").

Section 1441(d) thus provides a source of supplemental jurisdiction independent from § 1367. For purposes of this case, sections 1441(d) and 1367 have one important commonality and one important difference. The commonality is that jurisdiction under both is subject to the constitutional restriction that the supplemental claim be part of the same "case or controversy" as the claim for which there is original jurisdiction under Article III. This is true whether the original jurisdiction is founded on federal question jurisdiction, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), or diversity, *see Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 566 (2005); *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436-37 (2d Cir. 2000); *Sun Life & Health Ins. Co. (U.S.) v. Colavito*, 14 F. Supp. 3d 176, 183 (S.D.N.Y. 2014).

The most common formulation of the test for determining whether two claims are part of the same Article III case or controversy comes from *Gibbs*, which looks to whether the claims "derive from a common nucleus of operative fact." 383 U.S. at 725. The Second Circuit has at times described the question of whether *Gibbs* draws the boundary of what constitutes the same "case or controversy" as "unsettled." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212 n.5 (2d Cir. 2004). But for crossclaims or third party claims such as the ones here, "[i]t is apparent that *Gibbs* delineated the constitutional limits of federal judicial power." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 371 (1978). Thus, regardless of whether a court exercises supplemental jurisdiction through § 1441(d) or § 1367, the claims at issue must arise from the same common nucleus of operative fact as the claim for which there is original jurisdiction. The

Kazakh Entities have admitted as much in their briefing. *See* Dkt. No. 1086 at 7; Dkt. No. 278 at 3-4.

The relevant difference between the two statutes concerns the discretion of the Court to decline jurisdiction over supplemental claims. Unlike § 1367, when supplemental jurisdiction is founded on § 1441(d), the Court arguably lacks discretion to decline jurisdiction, so long as the claim against the foreign state remains in the case. *See Suriname Airways*, 974 F.2d at 1260. And while a court does have "discretion whether to remand the remaining claims to state court" if all claims against the foreign state are dismissed, that exercise of discretion appears to be more freewheeling compared to § 1367(c). *Id.*; *In re Asbestos Prods. Liab. Litig.*, 536 F. App'x 183, 190 n.15 (3d Cir. 2013). Although it is unclear whether this distinction between the two statutes in this respect is ever decisive, courts deciding whether to continue to exercise jurisdiction under § 1441(d) often base their decision on factors not listed in § 1367(c). *See Teledyne*, 892 F.2d at 1410 n.2 (exercise of § 1441(d) supplemental jurisdiction "even after dismissal of claims giving rise to federal jurisdiction" was "particularly appropriate" because a trial was unnecessary in the case and the district court's ultimate decision was based on federal law); *Moskovits v. Grigsby*, No. 19-cv-3991, 2020 U.S. Dist. LEXIS 29587, at *7-*8 (S.D.N.Y. Feb. 20, 2020) (declining to exercise § 1441(d) supplemental jurisdiction in part because of "Plaintiff's clear preference to litigate this case in state court").

In its September 26, 2017 Opinion, the Court concluded that Almaty had properly removed the interpleader action against it and that § 1441(d) authorized the Court to exercise jurisdiction over the claims against Triadou.[3]  Moreover, there was no Article III obstacle to

---

[3] The Court did not need to reach alternative arguments for jurisdiction, such as whether there was § 1367 supplemental jurisdiction over the claims against Triadou because of the Kazakh Entities' now-dismissed RICO claims.

supplemental jurisdiction over these claims.  Triadou did not dispute that the crossclaims against it derived from the same nucleus of operative fact as the interpleader.  Indeed, there can be no dispute that the question of the interpleader, whether the Chetrits should pay Triadou the money at issue, was deeply intertwined with the claims presently asserted against Triadou.  Moreover, although the interpleader claim was now dismissed, the Court properly decided to keep the remaining claims against Triadou because of the unusual complexity of the case and the substantial investment of judicial resources that had already occurred.  The Court's exercise of jurisdiction over the claims against Triadou was and is appropriate.

The § 5303 foreign judgment recognition claim against Ilyas Khrapunov, however, must suffer a different fate.  Unlike the claims against Triadou, the § 5303 claim against Khrapunov is not part of the same Article III case or controversy as the interpleader claim for which the Court had original jurisdiction.  In *Lyndonville Saving Bank & Trust Co. v. Lussier*, the Second Circuit confronted a case that is materially indistinguishable from the one here.  211 F.3d 697 (2d Cir. 2000).  The plaintiff, a victim of bank fraud and other white-collar crimes, attempted to enforce a federal restitution order against the defendant in a civil action in federal court.  *Id.* at 700.  The restitution order arose from the defendant's criminal conviction in federal court.  *Id.* at 699-700. The plaintiff also brought several state-law claims against the defendant seeking to recover damages for conduct on which the restitution order was based.  *Id.* at 700, 705.  Although there was federal question jurisdiction over the federal restitution claim, the defendant challenged the existence of supplemental jurisdiction over these state law claims, claiming that they were not part of the same Article III case or controversy.

The *Lyndonville* court first observed that supplemental jurisdiction has been "routinely upheld . . . where the facts underlying the federal and state claims substantially overlapped . . . or

where presentation of the federal claim necessarily brought the facts underlying the state claim before the court." *Id.* at 704.  But supplemental jurisdiction is "lacking when the federal and state claims rested on essentially unrelated facts."  *Id.*  The Second Circuit held that the restitution order and the state law claims did not form the same Article III case or controversy.  Although the "the restitution order was based on a particular loan (the Gray loan) for which Lyndonville sought damages under state law," that alone was not sufficient.  *Id.* at 705.  Evidence about the Gray loan was legally irrelevant to the restitution claim—only the restitution order's validity was it issue.  *Id.*  In other words, "the restitution count was 'just law,' with the existence of a prior valid order as the only operative fact."  *Id.*  The defendant's main argument against the restitution order, which was made in a collateral proceeding, was procedural in nature: that he was not actually convicted for the loan on which the restitution order was based, rendering the restitution order invalid.  *Id.*

*Lyndonville* controls this case.  Like in *Lyndonville*, the Kazakh Entities seek to enforce a judgment from another proceeding, and argue that the judgment enforcement claim forms the same Article III case or controversy with a claim based on conduct related to facts on which the judgment is based.  And like in *Lyndonville*, the only operative facts for the judgment recognition claim are whether the 2018 U.K. judgment is procedurally valid and enforceable, which is not relevant to the now-dismissed interpleader claim.  The judgment recognition claim is "just law."  *Id.*  The Kazakh Entities do not point to any facts that are legally relevant to both claims, but instead argue that the claims arise out of the same broader criminal conspiracy.  But that was true in *Lyndonville* as well, and supplemental jurisdiction was still found lacking.  The Second Circuit has already rejected this argument, and now so must this Court.  The § 5303 foreign judgment recognition claim against Ilyas Khrapunov is not part of the same Article III

14

case or controversy as any claim in this case for which the Court had original jurisdiction.

Therefore, this claim is dismissed without prejudice for lack of subject matter jurisdiction.

## IV.    ORDER TO SHOW CAUSE ON § 5303 FOREIGN JUDGMENT RECOGNITION CLAIM AGAINST MUKHTAR ABLYAZOV

As the Kazakh Entities have acknowledged, the foreign judgment recognition claim

against Ablyazov is "virtually identical" to the judgment recognition claim against Khrapunov.

Dkt. No. 1086 at 1.  Therefore, within three weeks of the date of this Opinion and Order, the

Kazakh Entities are hereby ordered to show cause why this claim should not also be dismissed

for lack of subject matter jurisdiction in light of the Court's decision.  Ablyazov may file a

response, if any, no later than three weeks after the Kazakh Entities' response is filed.

## V.    CONCLUSION

For the foregoing reasons, Triadou's motion in DENIED and Khrapunov's motion is

GRANTED.  Because the Court now dismisses the foreign judgment recognition claim against

Khrapunov, it DENIES his objections to the addition of this claim as moot.  Within three weeks

of the date of this Opinion and Order, the Kazakh Entities and Ablyazov are hereby ordered to

show cause why the foreign judgment enforcement claim against Ablyazov should not also be

dismissed for lack of subject matter jurisdiction.

Within two weeks of the date of this Opinion and Order, counsel for the Kazakh Entities

is hereby ordered to serve a copy of the Opinion and Order on Mukhtar Ablyazov and file an

affidavit of service on ECF.

This resolves Dkt. Nos. 1023, 1069, and 1105.

SO ORDERED.

Dated: June 1, 2020
       New York, New York

ALISON J. NATHAN
United States District Judge