UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
CITY OF ALMATY, KAZAKHSTAN, and BTA
BANK JSC,

                     Plaintiffs,

             v.

MUKHTAR ABLYAZOV, ILYAS
KHRAPUNOV, VIKTOR KHRAPUNOV and
TRIADOU SPV S.A.,

                   Defendants.
------------------------------------------------------------

No. 15-cv-05345 (AJN)(KHP)

 

**MEMORANDUM OF LAW OF ILYAS KHRAPUNOV IN OPPOSITION TO THE
MOTION BY BTA BANK FOR RECONSIDERATION OF THE JUNE 1 ORDER**

Date: July 13, 2020

Solomon & Cramer LLP
***Attorneys for Defendants Viktor
Khrapunov and Ilyas Khrapunov***
1441 Broadway, Suite 6026
New York, New York 10018
(t) (212) 884-9102
(f) (516) 368-3896

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION .................................................................................................... 1

II.     PROCEDURAL HISTORY ...................................................................................... 2

III.    SUMMARY OF THE ORDER ................................................................................. 5

IV.     ARGUMENT ............................................................................................................ 6

        A.      Standard for Reconsideration ....................................................................... 5

        B.      BTA's Argument That Gibbs Does Not Apply to Ancillary Jurisdiction Is not
                Properly Raised for the First Time on Reconsideration and Is Wrong In Any
                Event .............................................................................................................. 6

        C.      BTA's Argument that the Gibbs Test Is Inapplicable to Ancillary Jurisdiction is
                Wrong and Not Properly Raised on Reconsideration ..................................... 9

        D.      The Court Read and Applied *Lyndonville* Correctly ................................... 10

        E.      BTA Cannot Meet the Common Nucleus Test by Comparing the Attachment of
                the Monitorship Funds with the U.K. Judgment ........................................... 13

        F.      BTA's Suggestion of a Remand Must be Rejected ....................................... 14

        G.      The Court Should Not Accelerate Appellate Review .................................... 16

V.      THE JUDGMENT RECOGNITION CLAIM AGAINST ABLYAZOV ................... 16

VI.     CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Achtman v. Kirby, McInerney & Squire*, LLP,
    464 F.3d 328 (2d Cir. 2006) .......................................................................... 9, 10

*Alexander v. Turner Corp.*,
    No. 00 Civ. 4677 (HB), 2001 U.S. Dist. LEXIS 14559 (S.D.N.Y. Sep. 10, 2001)................. 6

*Aldinger v. Howard*,
    427 U.S. 1 (1976)............................................................................................ 8

*Arrow Trading Co. v. Sanyei Corp.*,
    No. 81 Civ. 1746 (CBM), 1983 U.S. Dist. LEXIS 11552 (S.D.N.Y. Nov. 18, 1983)............. 8

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*,
    952 F. Supp. 1399, 1404 (D. Neb. 1997) ............................................................... 8

*Burley v. City of N.Y.*,
    2005 U.S. Dist. LEXIS 16269 (S.D.N.Y. Aug. 10, 2005) ....................................... 6

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)....................................................................................... 19

*CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*,
    No. 10-4505, 2012 U.S. Dist. LEXIS 7015 (E.D. La. Jan. 23, 2012).................................. 11

*City of Almaty v. Khrapunov,*
    No. CV 14-3650 FMO (CWx), 2018 U.S. Dist. LEXIS 168271 (C.D. Cal. Sep. 27, 2018) .. 19

*City of Almaty v. Khrapunov*,
    956 F.3d 1129 (9th Cir. 2020) .......................................................................... 18

*Clapper v. Am. Realty Inv'rs Inc.*,
    No. 3:14-CV-2970-L, 2019 U.S. Dist. LEXIS 189547 (N.D. Tex. Oct. 31, 2019)............... 11

*City of Chi. v. Int'l Coll. of Surgeons*,
    522 U.S. 156 (1997)........................................................................................ 7

*Danner v. Himmelfarb*,
    858 F.2d 515, 523 (9th Cir. 1988) ..................................................................... 8

*Department of Corrections v. Schacht*,
    524 U.S. 381 (1998)....................................................................................... 15

*Dotson v. Griesa*
  No. 99 Civ. 11713 (RCC), 2001 U.S. Dist. LEXIS 9944 (S.D.N.Y. July 17, 2001)............... 9

*Exxon Mobil Corp. v. Allapattah Servs.*,
  545 U.S. 546 (2005).................................................................................................. 8

*Herrick Co. v. SCS Communs., Inc.*,
  251 F.3d 315 (2d Cir. 2001) ..................................................................................... 18

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
  113 F. Supp. 2d 613 (S.D.N.Y. 2000)......................................................................... 6

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994)................................................................................................ 10

*Lyndonville Savings Bank & Trust Co. v. Lussier*,
  211 F.3d 697 (2d Cir. 2000) ........................................................................... *passim*

*MacInness v. Metro. Transp. Auth.*,
  2013 U.S. Dist. LEXIS 21603 (S.D.N.Y. Feb. 8, 2013) ..................................... 14

*MDB LLC v. Hussain*,
  No. 14-CV-9281 (VEC), 2016 U.S. Dist. LEXIS 42329 (S.D.N.Y. Mar. 29, 2016) ............ 14

*Mendez v. K&Y Peace Corp.*,
  No. 16-CV-05562 (SN), 2019 U.S. Dist. LEXIS 87138 (S.D.N.Y. May 22, 2019) ............. 11

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003) ..................................................................................... 9

*Owen Equip. & Erection Co. v. Kroger*,
  437 U.S. 365 (1978)........................................................................................7, 8, 18

*Pannonia Farms, Inc. v. USA Cable*,
  2004 U.S. Dist. LEXIS 15737 (S.D.N.Y. Aug. 9, 2004) ....................................... 6

*Rosario v. Amalgamated Ladies' Garment Cutters Union*,
  605 F.2d 1228 (2d Cir. 1979) .................................................................................. 12

*Skevofilax v. Quigley*,
  810 F.2d 378 (3d Cir. 1987) ...................................................................................... 8

*Taggart v. Moody's Inv'rs Serv.*,
  2007 U.S. Dist. LEXIS 71254 (S.D.N.Y. Sep. 25, 2007) ....................................... 5

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)................................................................................................ *passim*

*Zanotti v. Invention Submission Corp.*,
    No. 18-cv-5893 (NSR), 2020 U.S. Dist. LEXIS 97040 (S.D.N.Y. June 2, 2020) ................ 15

**Rules**

CPLR § 5303 .......................................................................................................... *passim*

CPLR § 5304(b) ............................................................................................................ 17

Fed. R. Civ. P. 54(b) ................................................................................................... 5, 16

**Statutes**

28 U.S.C. § 1330 ........................................................................................................ 3, 4

28 U.S.C. § 1367 ........................................................................................................ 4, 8

28 U.S.C. § 1441 .....................................................................................................3, 4, 15

28 U.S.C. § 1447 ....................................................................................................... 14, 15

United States Constitution, Article III ....................................................................4, 5, 10, 11

Defendant Ilyas Khrapunov submits this memorandum of law in opposition to the motion of plaintiff BTA Bank JSC (BTA) for reconsideration of the Court's June 1, 2020 Opinion and Order (ECF 1254).[1]

## I.  INTRODUCTION

BTA has a short memory. Previously, the Court explained to BTA (using its own words) exactly what a litigant cannot do on reconsideration:

> Regardless of the merits of the Kazakh Entities' arguments, the Court is not inclined to reopen its past opinions in this longstanding litigation without a showing of good cause. As the Kazakh Entities themselves argue, "[r]econsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple . ...' ECF No. 696 at 6 (quoting *Hecklerco, LLC v. YuuZoo Corp.*, 258 F. Supp. 3d 350, 356 (S.D.N.Y. 2017)). Yet the Kazakh Entities attempt to do just this here, adopting a new theory predicated on longstanding precedent and never previously presented in this litigation, without any explanation for their failure to do so before now.

ECF 996 at 19-20; *see also* BTA's brief at ECF 396.

Apparently, the Court's mild chastisement went unheeded. BTA had three rounds of briefing to make its best case for subject matter jurisdiction.  Now, on reconsideration, BTA offers new arguments, a new spin on old arguments, and disagreements with matters that the Court considered and decided against BTA—in other words, precisely what it knows it should not do.

In dismissing the § 5303 foreign judgment recognition claim, the Court did not overlook any fact or controlling precedent or make an error (much less a *clear* error). And, since then, the law has not changed, the Constitution has not been amended, and the key cases upon which the Court relied, *Lyndonville Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000), and

---

[1] BTA Mem. refers to BTA's Memorandum of Law on this Motion (ECF 1270).

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), have not been overruled. As such, the Court should adhere to its ruling.

## II.     PROCEDURAL HISTORY

The City of Almaty, Kazakhstan (Almaty) removed the interpleader case to this Court on July 9, 2015. ECF 1. At the time of removal, the plaintiffs were CF 135 Flat LLC, CF 135 West Member LLC, and The Chetrit Group (collectively, the Chetrit Group) and the defendants were Triadou SPV S.A. and Almaty. *Id.* Neither BTA nor Ilyas Khrapunov was a party to the case.

The only claim at the time of removal, *i.e.,* the jurisdiction-invoking claim, was the interpleader claim over the $21 million that the Chetrit Group had agreed to pay Triadou based on the transfer of Triadou's interest in the Flatotel building. ECF 1 at ¶ 3. Almaty alleged that Viktor Khrapunov had "looted an estimated $300 million during his tenure as Mayor and that Triadou was one of the "shell companies" that Viktor used to launder his "ill gotten assets." *Id.* at ¶¶ 5-6.

Since removal, the case has grown far beyond its modest roots. On October 12, 2015, BTA moved to intervene and, simultaneously, Almaty moved to join BTA as a co-counterclaim-plaintiff, to join Joseph Chetrit and 227 East 19th Holder LLC as additional counterclaim defendants, and to join Viktor, Ilyas, and Mukhtar Ablyazov as additional crossclaim defendants. ECF 45. Almaty also filed its answer to the interpleader complaint, its counterclaims against the Chetrit Group, and its crossclaims against Triadou, Ablyazov, Viktor, and Ilyas.  ECF 49.

On March 18, 2016, the Court dismissed the only claim that supported original jurisdiction: the interpleader claim. ECF 103. Nevertheless, on June 21, 2016, the Court granted Almaty's motion to join BTA, Ablyazov, Viktor, and Ilyas under Rule 20 of the Federal Rules of Civil Procedure. ECF 174.

In joining the claims under the permissive joinder rule, the Court did not explicitly address its subject matter jurisdiction over the newly added claims and parties. But it did six months later, in its Amended Memorandum & Order (ECF 426), which decided Triadou's supplemental motion to dismiss. There, the Court held that it had original subject matter jurisdiction under 28 U.S.C. §§ 1330 and 1441(d), based on Almaty's status as a foreign state under the Foreign Sovereign Immunities Act of 1976, 94 P.L. 583, 90 Stat. 2891. ECF 426 at 9. The Court further held that its jurisdiction under those FSIA provisions also covered the affirmative claims of the Kazakh Entities (defined to include both Almaty and non-sovereign BTA), even though all were added post-removal. ECF 426 at 12.

The question of subject matter jurisdiction next arose on BTA's motion to Magistrate Judge Parker for leave to file Third Amended Crossclaims to assert a state law judgment recognition claim against Ilyas based on a U.K. Judgment issued against him in August 2018. ECF 914-916. Ilyas objected on the ground that the amendment would be futile because the Court did not have statutory or Constitutional subject matter jurisdiction over the proposed claim. ECF 931. BTA responded that subject matter jurisdiction did exist and, embracing the *Gibbs* test, proclaimed that the "'common nucleus of operative fact' test is easily satisfied here." ECF 950 at 6 (citing ECF 426). The Magistrate Judge granted the motion to amend. ECF 1058.

In response to the Magistrate Judge's order, Ilyas timely filed an objection and reiterated his futility argument based on a lack of subject matter jurisdiction. ECF 1069. In its response, BTA included an entire section under the heading, "Judge Parker Correctly Held that the Judgment-Recognition Claim Derives from a Common Nucleus of Operative Fact," ECF 1086 at 5-10, and declared with great assurance that there was "no serious question that the proposed new claim and the interpleader claim arise out of a common nucleus of fact." ECF 1086 at 9.

3

Finally, after BTA filed the Third Amended Crossclaims (ECF 1094), Ilyas moved to dismiss (ECF 1105-1109), raising again his statutory and constitutional objections to the Court's subject matter jurisdiction (ECF 1109). BTA again opposed, repeating its subject matter jurisdiction arguments (ECF 1125), and Ilyas replied (ECF 1132).

In total, BTA had *three* briefing opportunities to make its best arguments for why subject matter jurisdiction exists. After considering all the briefing, on June 1, 2020, the Court issued its Opinion and Order (the Opinion) dismissing the recently added § 5303 foreign judgment recognition claim. ECF 1254 at 9-15.

### III.   SUMMARY OF THE ORDER

In its Opinion, the Court first reviewed its prior ruling on subject matter jurisdiction (ECF 426), in which the Court had addressed Triadou's argument that the Court, having dismissed both the original interpleader claim and the RICO claim, should also dismiss under 28 U.S.C. § 1367(c) in its discretion. Ruling against Triadou, the Court noted that Almaty was a foreign state under the FSIA, so it had original subject matter jurisdiction under 28 U.S.C. § 1330 and § 1441(d) (not § 1367). That jurisdictional grant, the Court held, covered the "entire case," including claims involving non-FSIA defendants—and even post-removal claims added by a non-sovereign party. Finally, based on its familiarity with the case, the Court decided to retain jurisdiction in its discretion. ECF 1254 at 13.

But that prior holding did not resolve the question of whether the Court had subject matter jurisdiction over the § 5303 claim against Ilyas. The Court explained that supplemental jurisdiction under § 1441(d), like that under § 1367, is constrained by Article III of the United States Constitution. ECF 1254 at 11. "The most common formulation of the test for determining whether two claims are part of the same Article III case or controversy comes from [*United Mine*

4

*Workers v.*] *Gibbs*[, 383 U.S. 715 (1966)], which looks to whether the claims 'derive from a common nucleus of operative facts.'" ECF 1254 at 11.[2]

Guided by the *Gibbs* test, the Court held that, unlike the Kazakh Entities' claims against Triadou (which were "deeply intertwined" with those at issue in the interpleader claim, ECF 1254 at 13), the newly-added § 5303 judgment recognition claim against Ilyas is "not part of the same Article III case or controversy as the interpleader claim for which the Court had original jurisdiction." ECF 1254 at 13. In so finding, the Court relied principally on the Second Circuit's decision in *Lyndonville*, 211 F.2d 697. Here, like in *Lyndonville*, the operative facts relevant to the recognition of the 2018 U.K. judgment have no commonality or relevance to the "now dismissed interpleader claim." ECF 1254 at 14. Thus, Article III restricts the Court from exercising supplemental jurisdiction over the claim.

Because subject matter jurisdiction did not exist over the § 5303 foreign judgment recognition claim against Ilyas, the Court dismissed the claim without prejudice. ECF 1254 at 15.

## IV.   ARGUMENT

### A.   Standard for Reconsideration

BTA moves for reconsideration of the Opinion under Rule 54(b). BTA Mem. at 8. In doing so, BTA not only fails to address the relevant standards, but utterly disregards them.

Rule 54(b) does indeed authorize a court to revise its own rulings "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." But the proponent faces "a heavy burden," *Taggart v. Moody's Inv'rs Serv.*, 2007 U.S. Dist. LEXIS

---

[2] The second part of the *Gibbs* test requires a court to find that a "plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Lyndonville*, 211 F.3d at 704. Because, as discussed below, BTA failed on the "common nucleus" prong, the Court did not need to address that issue.

71254, at *1 (S.D.N.Y. Sep. 25, 2007), and the remedy is "employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citations and quotation marks omitted).

Considering its extraordinary nature, a party seeking reconsideration is precluded from advancing "new arguments," *Burley v. City of N.Y.*, 2005 U.S. Dist. LEXIS 16269 (S.D.N.Y. Aug. 10, 2005), or "craft[ing] new or previously untested legal theories," *Pannonia Farms, Inc. v. USA Cable*, 2004 U.S. Dist. LEXIS 15737, at *8 (S.D.N.Y. Aug. 9, 2004). Reconsideration is not a vehicle for "examining a decision and then plugging the gaps of the lost motion with additional matters." *Alexander v. Turner Corp.*, No. 00 Civ. 4677 (HB), 2001 U.S. Dist. LEXIS 14559, at *2 (S.D.N.Y. Sep. 10, 2001) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169 (S.D.N.Y. 1988)).

### B.    BTA's Argument That *Gibbs* Does Not Apply to Ancillary Jurisdiction Is not Properly Raised for the First Time on Reconsideration and Is Wrong In Any Event

BTA first argues that the *Gibbs* test does not apply to claims by "non-plaintiffs." ECF 1270 at 9-15. The argument is not correctly raised on reconsideration. *Gibbs* was extensively briefed by the parties, including by BTA,[3] which not only embraced the test, but said it was "easily satisfied" and questioned the seriousness of any challenge to it. BTA cannot now put a new spin on *Gibbs* after the fact. But if the Court considers BTA's *Gibbs* argument on reconsideration, it should adhere to it prior ruling.

According to BTA, the *Gibbs* test only applies to a pendent claim, *i.e.*, one brought by a plaintiff but not by other parties to the case. It claims that the *Gibbs* rationale is to prevent

---

[3] ECF 950 at 4; ECF 1086 at 7.

6

gamesmanship concerning federal judicial power, which, it surmises, is a concern only when exercised by the plaintiff, who is in the federal courts voluntarily, and not defendants.

But even if this distinction were valid and significant, BTA apparently forgets that it is in this case voluntarily. It was not "haled into court against … [its] will," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978), but joined the case by seeking intervention, and thus "cannot complain if ancillary jurisdiction does not encompass all of [its] … possible claims in a case such as this one, since it is [BTA] … who has chosen the federal rather than the state forum and must thus accept its limitations." *Id.*

Moreover, BTA's argument that the *Gibbs* test is limited to pendent jurisdiction is dead wrong. The *Gibbs* test applies to all matters of supplemental jurisdiction, whether historically pendent or ancillary. It is true that *Gibbs* involved a pendent claim. But it states a general rule about when non-federal claims can be added to a federal lawsuit consistent with the limitations set by the Constitution. *Gibbs*, 383 U.S. 715, 725. To exercise this form of jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact" and under circumstances "such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." 383 U.S. at 725.

That *Gibbs* applies generally is confirmed by the Supreme Court. *See, e.g., City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) ("this Court has long adhered to principles of *pendent and ancillary* jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'") (emphasis added); *Kroger*, 437 U.S. at 371 ("It is apparent that *Gibbs*

delineated the constitutional limits of federal judicial power."). Indeed, the point is so uncontroversial that BTA—with all its resources—cites no case where a federal court has held that the *Gibbs* test does not apply categorically to ancillary jurisdiction.[4]

That is not to say that the historical development of pendent and ancillary jurisdiction is the same, but as the Supreme Court has recognized, the doctrines are "two species of the same generic problem," *Kroger*, 437 U.S. at 370, that is, when can a federal court hear a state law claim. Moreover, any question as to whether a "principle distinction" exists between them, as posited in *Aldinger v. Howard*, 427 U.S. 1, 12 (1976), was resolved as a practical matter with the merger of the doctrines under 28 U.S.C. § 1367. This point is made explicitly by *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 559 (2005), where the Court explained:

> the terms of § 1367 do not acknowledge any distinction between pendent jurisdiction and the doctrine of so-called ancillary jurisdiction. Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary.

In opposing dismissal, BTA embraced *Gibbs* without reservation. Having lost, BTA now says *Gibbs* does not apply. Assuming that BTA is genuine in offering this new (but dubious) interpretation, the fact remains that it cannot make the argument for the first time on

---

[4] On the other hand, many cases have held that it does. *See, e.g., Skevofilax v. Quigley*, 810 F.2d 378, 389 (3d Cir. 1987) (citing *Gibbs*, "the first criterion for ancillary jurisdiction is always whether the ancillary and principal claims hinge on a 'common nucleus of operative fact.'"); *Arrow Trading Co. v. Sanyei Corp.*, No. 81 Civ. 1746 (CBM), 1983 U.S. Dist. LEXIS 11552, at *3 (S.D.N.Y. Nov. 18, 1983) ("the Supreme Court acknowledged that this constitutional threshold applied equally to ancillary claims since pendent and ancillary jurisdiction 'are two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?'"); *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D. Neb. 1997) ("Technically, *Gibbs* involved a 'pendent' claim rather than an 'ancillary' claim like the counterclaims at issue now. Nevertheless, as it related to the constitutional power to hear a claim lacking an independent federal jurisdictional predicate, *Gibbs* was subsequently applied by the Supreme Court to 'ancillary' jurisdiction disputes."); *Danner v. Himmelfarb*, 858 F.2d 515, 523 (9th Cir. 1988) ("Whether Davis's state law claims are pendent to his federal cross-claim or are ancillary to the original action is irrelevant because, viewed either way, identical considerations lead us to conclude that the court did not abuse its 'broad discretion' by dismissing the state law claims.").

reconsideration. The Court did not (and could not) "overlook" that which was not presented and, even if BTA has a valid point, it does not rise to the level of "clear error," as required on reconsideration. *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

### C.    BTA's Argument that the Gibbs Test Is Inapplicable to Ancillary Jurisdiction is Wrong and Not Properly Raised on Reconsideration

The principal case cited by the Court in dismissing the § 5303 foreign judgment recognition claim is *Lyndonville*, 211 F.3d 697. ECF 1254 at 13-15. BTA disagrees with the Court's interpretation of the case and argues that *Lyndonville* does not apply because it involved pendent jurisdiction. BTA Mem. at 11-15.

Absent "clear error," which is not credibly asserted here, a losing party cannot properly seek reconsideration based on a disagreement with the court's interpretation of the case law. *Dotson v. Griesa*, 99 Civ. 11713 (RCC), 2001 U.S. Dist. LEXIS 9944, at *5 (S.D.N.Y. July 17, 2001). Both parties extensively briefed *Lyndonville* (ECF 931 at 8; ECF 1069 at 5; ECF 1086 at 9; ECF 1097 at 8-9), yet BTA never argued that it is inapposite because it involved pendent rather than ancillary jurisdiction. To the contrary, BTA relied on *Lyndonville*. ECF 1086 at 9. Nor can it be said that the Court overlooked *Lyndonville*, as it was central to its holding. ECF 1254 at 13-15. For these reasons, BTA's argument must be rejected in the reconsideration context.

But does BTA have a point? Should *Lyndonville* be disregarded in light of *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328 (2d Cir. 2006), because the latter involved ancillary jurisdiction? Absolutely not. In *Achtman*, the Second Circuit found supplemental jurisdiction over class plaintiffs' claims against their former class counsel for not pursuing claims against an auditor as part of a securities class action. Applying *Gibbs* and *Lyndonville* (the

very cases BTA argues *do not* apply), *Achtman* held that the malpractice claim arose from a common nucleus of operative facts with the underlying class action claims, so supplemental jurisdiction existed.

Even though *Achtman* applied the *Gibbs* test, BTA contends that it should be read to exempt ancillary jurisdiction from it. BTA's argument is based on the faulty premise that in *Achtman* "there was *no* overlap between the facts needed to prove the original claims and those needed to prove the ancillary claims against the lawyers." ECF 1270 at 12 (emphasis in original). But that is not true. The Second Circuit did not find "no overlap"; rather, it found merely that "some facts" did *not* overlap. 464 F.3d at 336 (emphasis added). More to the point, the Second Circuit positively concluded that "the facts underlying the present malpractice claims and the underlying securities claim 'substantially overlap[],' creating a *common nucleus of operative facts.*" *Id.* (citing *Lyndonville* and emphasis added). Thus, contrary to BTA's characterization, *Achtman* subjected ancillary jurisdiction to the *Gibbs* test and did so following (not distinguishing) *Lyndonville.*

To the extent that *Achtman* applies the *Gibbs* test less rigidly, it is because it fits the second prong of ancillary jurisdiction described by Justice Scalia in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380 (1994) ("(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees"). BTA's assertion of ancillary jurisdiction, however, does not fall into that category.

### D.    The Court Read and Applied *Lyndonville* Correctly

BTA also does not agree with how the Court interpreted *Lyndonville*. BTA goes so far as to say that the "Court Clearly Misapplied *Lyndonville*." ECF 1270 at 15. It cites two points: the Court's supposed failure, first, to consider the "dismissed RICO claim as a source of Article III

jurisdiction" and, second, "to identify the overlap between facts supporting the dismissed interpleader and those underlying the Article 53 claim." (ECF 1270 at 15).

Placing the adverb "clearly" in front of "misapplied" does not talismanically elevate a disagreement over interpretation into a valid point for reconsideration. In any event, the "error" BTA perceives simply does not exist. For one thing, BTA cites no case holding that a federal claim that is added to the case after the original jurisdiction-conferring claim (and is then dismissed) can expand supplemental jurisdiction under Article III. In fact, as the Court found, the appropriate comparison is the jurisdiction-invoking claim (here, the interpleader) and the additional state law claim (the Article 53 foreign judgment recognition claim). ECF 1254 at 13. The jurisdiction-invoking claim is established at the time of filing of the case. *Mendez v. K&Y Peace Corp.*, No. 16-CV-05562 (SN), 2019 U.S. Dist. LEXIS 87138, at *3-7 (S.D.N.Y. May 22, 2019) (supplemental jurisdiction determined with reference to original jurisdiction invoking claims, even if dismissed); *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 10-4505, 2012 U.S. Dist. LEXIS 7015, at *12-13 (E.D. La. Jan. 23, 2012) ("[t]o determine whether defendants' counterclaims are within the Court's supplemental jurisdiction, the relevant question is whether defendants' counterclaims form part of the same common nucleus of operative fact as plaintiff's jurisdiction-invoking claims"); *Clapper v. Am. Realty Inv'rs Inc.*, No. 3:14-CV-2970-L, 2019 U.S. Dist. LEXIS 189547, at *18 (N.D. Tex. Oct. 31, 2019) (finding supplemental jurisdiction over amended state law claims based on dismissed RICO claim in original complaint).

Second, even if the RICO claims were relevant to the jurisdictional inquiry and if they had a common nucleus of operative facts with the § 5303 judgment recognition claim (which they don't under *Lyndonville*), the Court should still dismiss the judgment recognition claim, in its discretion, because the RICO claims were dismissed from this case—two years before the

judgment recognition claim was added. Thus, at the time that BTA sought to exercise supplemental jurisdiction over the new state law claim, no federal-jurisdiction-granting claim remained in the case to anchor an exercise of supplemental jurisdiction.

Moreover, as alluded to above, the RICO claim and the § 5303 foreign judgment recognition claim do not share a "common nucleus of operative facts." The former relates to the underlying conduct and the latter concerns the proceedings that resulted in a foreign judgment. Despite this, BTA argues that the "common nucleus" test is met because the "potential" judgment against Ilyas is "powerful motive evidence" that Triadou's assignment of the New York properties "was fraudulent in nature, in violation of RICO." ECF 1270 at 16. BTA then cites the supposedly "analogous" *Rosario v. Amalgamated Ladies' Garment Cutters Union,* 605 F.2d 1228 (2d Cir. 1979)—which BTA omitted from its prior papers (but is now claimed to have been overlooked). In fact, *Rosario* is of no consequence, as it did not involve the joinder of a judgment recognition claim. This is an important distinction because unlike the RICO claim— had it survived—the judgment recognition claim would not require proof of the underlying facts that might also concern motive and intent. Moreover, the inference that proof of a future potential judgment is evidence of prior intent is logically dubious (at best) and too attenuated to meet the "common nucleus" test.

Fourth, BTA argues that the Court overlooked the commonality between the foreign judgment recognition claim and this case because the former may involve a challenge to the U.K. Court's personal jurisdiction and those facts might relate to the interpleader claim. ECF 1270 at 17-18. BTA also argues that the (now-dismissed) RICO claims might involve factual issues that go to the U.K. court's jurisdiction. *Id.* These arguments, all hypothetical, are utterly strained. It is true that BTA will have to show that the U.K. court had jurisdiction to issue the U.K. judgments.

But that will require an inquiry into Ilyas's activities in the U.K., not New York. Perhaps some aspect of those U.K. activities might also have borne upon the RICO claim (had it survived), but any such theoretical overlap would fall far short of a "common nucleus of operative facts."

The rest of BTA's arguments under *Lyndonville* that supposedly link the U.K. judgment to the original interpleader are too tortured and tortuous to be summarized easily. It is enough to say that none meets the rigorous standards for reconsideration.

### E.   BTA Cannot Meet the Common Nucleus Test by Comparing the Attachment of the Monitorship Funds with the U.K. Judgment

BTA tries to bootstrap the Court's attachment of the Monitorship Funds into supplemental jurisdiction over Ilyas. This argument merits little consideration.

In the first instance, this argument, like BTA's other arguments, has no place on reconsideration, as it was not previously raised.

Moreover, the Monitorship Funds, which was established in 2016, has no connection to BTA's U.K. judgment against Ilyas, which was entered years later. BTA claims "the Article 53 claims help prove BTA's interest at trial" and will enable it to "claim a superior interest over the Monitorship Funds under Article 52." BTA, however, has not alleged that Ilyas has an interest in the Monitorship Funds, its earlier effort to prove that Ilyas and Triadou were *alter egos* was blocked by the Court (which BTA buries in footnote 11), and the Third Amended Complaint does not allege any linkage between the U.K. judgment and the funds held by Monitor.

Finally, the Court should disregard BTA's arguments in footnote 10. There, BTA argues that the Court should not dismiss the Article 53 claim because it has another claim under Article 62 of the CPLR, which is not in the case (but which it threatens to seek to leave to add), that could bolster its jurisdictional position. It is presumptuous for BTA to assume that it will receive another chance to amend its thrice-amended Crossclaims. But, even still, a threatened future

amendment is not a viable ground for reconsidering a past order of dismissal (particularly where, by definition, the Court cannot have overlooked the merely notional claim).

### F.    BTA's Suggestion of a Remand Must be Rejected

BTA ends with a Hail Mary. It beseeches the Court to remand the § 5303 foreign judgment enforcement claim against Ilyas to state court pursuant to 28 U.S.C. § 1447(c), while retaining the rest of the case.

The easy response is that it is too late. The time to seek remand was *before* the Court dismissed. Now, on reconsideration, it reeks of gamesmanship.

BTA also forgets that the Court's dismissal of the § 5303 foreign judgment recognition claim mooted Ilyas's objection to the Magistrate Judge's order permitting the amendment adding the claim in the first place. Had the Court considered that issue, it surely would have sustained the objection since the amendment was futile (for the same reason that the claim was dismissed: no subject matter jurisdiction). *See, e.g., MacInness v. Metro. Transp. Auth.*, 2013 U.S. Dist. LEXIS 21603 (S.D.N.Y. Feb. 8, 2013) (denying motion to amend where court lacked subject matter jurisdiction over the new claim); *MDB LLC v. Hussain*, No. 14-CV-9281 (VEC), 2016 U.S. Dist. LEXIS 42329 (S.D.N.Y. Mar. 29, 2016) (same). In that scenario, BTA's amendment would have been denied and the § 5303 foreign judgment recognition claim would never have been in the case, and as a result, remand would not be possible.

Apart from the above two issues, which are fatal to BTA's remand request, the motion does raise an interesting question about whether 28 U.S.C. § 1447(c) permits a "partial remand" when a court finds that it lacks subject matter jurisdiction over one but not all of the claims in the case. The language of the § 1447(c)[5] refers to the "case" being remanded, not an individual

---

[5] § 1447(d) provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, *the case shall be remanded*." (Emphasis added).

claim. By contrast, the remand provision in § 1441(c)(2)[6] refers to individual "claims" being severed and remanded.

Despite the seemingly clear language in § 1447(c), which limits a remand order to a "case," in *dicta,* the Supreme Court in *Department of Corrections v. Schacht*, 524 U.S. 381 (1998), offered a hypothetical construction that might allow for a "partial remand" under § 1447(c). There, the Court wrote: "*Conceivably*, one might also read the statute's reference to 'case,' to include a claim within a case as well as the entire case." 524 U.S. at 392 (emphasis added). But what is "conceivable" is not necessarily so, and neither the Supreme Court nor the Second Circuit has ever held that a "partial remand" is authorized by 28 U.S.C. § 1447(c). *See Zanotti v. Invention Submission Corp.*, No. 18-cv-5893 (NSR), 2020 U.S. Dist. LEXIS 97040 (S.D.N.Y. June 2, 2020).

The bottom line is that BTA has cited no case where a federal court has granted leave to amend a claim over which it lacked subject matter jurisdiction and then remanded that just-added claim (but not the entire case) to the state court. Is such a dubious maneuver even authorized? The answer need not come here because BTA's remand request is untimely. Nor should the Court give credence to BTA's argument about fairness and efficiency. Its hyper-aggressive litigation tactics have imposed massive costs on the Khrapunovs and have taxed the judicial system relentlessly. This motion is a perfect example. For less money, BTA could have filed its § 5303 claim in state court instead of burdening this Court and the parties with ill-conceived reconsideration arguments.

---

[6] § 1441(c)(2) provides: "Upon removal of an action described in paragraph (1), the district court shall *sever* from the action *all claims* described in paragraph (1)(B) and shall *remand the severed claims* to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1)." (Emphasis supplied).

### G.     The Court Should Not Accelerate Appellate Review

BTA asks the Court to enter judgment under Rule 54(b) of the Federal Rules of Civil Procedure, so that it can appeal immediately.

In assuring the Court that there is no "just reason for delay," BTA focuses the appeal on the dismissal of the § 5303 foreign judgment recognition claim. But BTA does not address the Court's dismissal of the other claims that it had asserted in the case against Ilyas and Viktor. Does BTA plan to appeal the Court's dismissal of those claims too? If so, a significant problem of overlap with the remaining claims against Triadou is presented.

Triadou, naturally, has an interest in the outcome of the appeal on those claims. Also, some of the claims were dismissed on statute of limitations grounds as against Ilyas and Viktor, but not as against Triadou. Were Triadou to prevail on summary judgment or trial on those claims, that resolution might provide an alternative ground for upholding the dismissal of those claims.

It is possible that BTA is not planning on appealing the Court's other dismissal rulings. After all, it was thumped by the Ninth Circuit on RICO, and its other common law claims are clearly barred by the statutes of limitation. But if BTA has other thoughts, it should have been candid about its intentions before seeking a Rule 54(b) certification.

### V.     <u>THE JUDGMENT RECOGNITION CLAIM AGAINST ABLYAZOV</u>

In its Opinion, the Court observed that the foreign judgment recognition claim against Ablyazov presents a question of subject matter jurisdiction "virtually identical" to the claim against Ilyas. ECF 1254 at 15 (*quoting* BTA). As a result, the Court ordered BTA to "show cause why this claim should not also be dismissed for lack of subject matter jurisdiction." *Id.* Because this is an issue that the Court would have to resolve for itself, regardless of the parties' positions, as officers of the Court, we offer the following:

In Section IV of its memorandum of law, BTA tries to show that the Court has subject matter jurisdiction over the judgment recognition claim over Ablyazov. ECF 1270 at 19-21. To contrast the judgments against Ablyazov with the one against Ilyas, BTA notes that the judgments against Ablyazov "preceded Triadou's 2014 fraudulent assignments of the Flatotel and Cabrini" and that the transaction at issue in this action were "motivated in part to avoid the U.K. orders." ECF 1270 at 20. BTA further argues that the judgments against Ablyazov "are relevant to numerous other issues," including, for example, that funds that made their way to Triadou were allegedly directed by Ablyazov through a nominee (Petelin)." ECF 1270 at 20.

In advancing these positions, the BTA fails to apply *Lyndonville* faithfully. As the Court stated, the inquiry under *Lyndonville* looks to whether the facts underlying the "the federal and state claims substantially overlapped … or where presentation of the federal claim necessarily brought facts underlying the state claim before the court." ECF 1254 (*quoting* 211 F.3d at 704). Neither is the case here. As the Kazakh Entities' recently filed brief in support their motion for partial summary judgment against Ablyazov (ECF 1294) demonstrates, the facts underlying the § 5303 foreign judgment recognition claim concern the U.K. legal system, personal jurisdiction in the U.K., and the non-recognition factors under § 5304(b). This is evident from their table of contents: Section I describes the legal standards, Section II describes the U.K. judgments as "final, conclusive, and enforceable," and Section III addresses non-recognition factors, which are procedural and jurisdictional, but do not concern the underlying events.

BTA also obfuscates the jurisdictional issues by presenting arguments collectively, on behalf of the "Kazakh Entities," when only BTA is a judgment creditor. ECF 1270 at 20. But given that the "common nucleus of operative facts" test assesses supplemental jurisdiction based on the original jurisdiction conferring claim (and not subsequently added and then dismissed

claims by new parties), BTA and Almaty must be separated. The jurisdiction conferring claim involved Almaty only (and had nothing to do with BTA). The interpleader was commenced by the Chetrit Group against Triadou and Almaty to determine "which of the defendants, Triadou SPV S.A. or the City of Almaty, Kazakhstan, should be paid the disputed sum of $21,000,000." ECF 1-1. Almaty's claims against those funds were based on its allegations in the "United States District Court for the Central District of California in an action entitled *City of Almaty v. Viktor Khrapunov et al.*" *Id.* That action, the allegations of which are summarized in *City of Almaty v. Khrapunov*, 956 F.3d 1129 (9th Cir. 2020) (dismissing case), concerned supposed actions by Viktor Khrapunov and his family. Neither Ablyazov nor BTA was a party to that suit, and BTA's judgments against Ablyazov were not alleged in the pleadings.

BTA wants to expand the scope of supplemental jurisdiction by including in the calculus its now-dismissed RICO claims. But those claims were not the claims upon which the Court obtained original jurisdiction. Nor can BTA, which willingly chose to join the case—which had been pending against Almaty and Triadou—complain that "ancillary jurisdiction does not encompass all of [its claims]." *Herrick Co. v. SCS Communs., Inc.*, 251 F.3d 315, 325 n.8 (2d Cir. 2001) (*quoting Kroger*, 437 U.S. at 376).

Finally, even if the Court had constitutional power over the § 5303 foreign judgment enforcement claim,[7] the decision to exercise that power is subject to the Court's discretion, *Gibbs*, 383 U.S. at 726, and it should be exercised in favor of dismissal. No federal claim remains in the case. Usually, "if the federal claims are dismissed before trial, even though not

---

[7] And what about statutory authorization? The Court found its statutory authority implied under the FSIA jurisdictional provisions. So, deciding whether statutory authority exists for BTA's state law claim would require the Court to look to legislative intent to ascertain the scope of supplemental jurisdiction under the FSIA. To be sure, Congress intended to confer broad statutory jurisdiction over claims against foreign sovereigns. But that interest would not be advanced by providing supplemental jurisdiction over a state law claim that neither involves the sovereign party nor forms a part of the same case or controversy as the claims against it.

insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* The

factors are "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v.*

*Cohill*, 484 U.S. 343, 350 n.7 (1988). Nor should BTA be advantaged by having joined this case

rather than commencing an independent federal lawsuit. Had BTA filed its own federal lawsuit,

the Court would have dismissed its RICO claim because of a lack of a "domestic injury," and, as

a matter of discretion, would have declined to exercise supplemental jurisdiction over the state

law claims. *Cf. City of Almaty v. Khrapunov,* No. CV 14-3650 FMO (CWx), 2018 U.S. Dist.

LEXIS 168271, *24 (C.D. Cal. Sep. 27, 2018) (dismissing state law claims after dismissing

RICO claim).

Previously, the Court retained jurisdiction over the state law claims against Triadou after

dismissing the federal claim "because of the unusual complexity of the case and the substantial

investment of judicial resources that had already occurred." ECF 1254 at 13. But the same

cannot be said of the § 5303 foreign judgment recognition claim against Ablyazov. There is

nothing unusual about the claim against Ablyazov. It is not notably complex and the Court has

not expended resources on its merits.

### VI.    <u>CONCLUSION</u>

For the foregoing reasons, BTA's motion to reconsider should be denied.

Dated: New York, New York
       July 13, 2020

                               SOLOMON & CRAMER LLP
                               *Attorneys for Defendants Viktor Khrapunov and*
                               *Ilyas Khrapunov*

                               By:<u>/s/Andrew T. Solomon</u>
                                  Andrew T. Solomon
                               1441 Broadway, Suite 6026
                               New York, NY 10018
                               (212) 884-9102
                               asolomon@solomoncramer.com