UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

City of Almaty, Kazakhstan, *et al.*,

                Plaintiffs,

         –v–

Mukhtar Ablyazov, *et al.*,

                Defendants.

15-cv-5345 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

BTA Bank JSC moves for reconsideration of the Court's June 1, 2020 Opinion and Order dismissing BTA's state-law judgment recognition claim against Ilyas Khrapunov for lack of subject matter jurisdiction. The Court denies the motion.

**I.    Background**

The Court assumes the parties' familiarity with this long-running litigation. In brief, the City of Almaty and BTA seek to recover funds allegedly embezzled in Kazakhstan and laundered in the United States. The suit began with a state interpleader action naming as defendants Almaty and Triadou SPV S.A., a company the Kazakh Entities accuse of participating in the money-laundering scheme. Dkt. No. 1. Almaty removed the action to federal court, and the Kazakh Entities asserted crossclaims against Triadou, Khrapunov, and Mukhtar Ablyazov. This Court held that it had subject matter jurisdiction over the action under 28 U.S.C. §§ 1330 and 1441(d), which confer on the district courts original and removal jurisdiction over actions brought against foreign states. *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 786 (S.D.N.Y. 2017).

In January 2019, the Kazakh entities sought to amend their crossclaims to add a new state-law claim for recognition of a United Kingdom judgment against Khrapunov and in favor of BTA. Dkt No. 914. Magistrate Judge Parker granted the motion. Dkt. No. 1058. Khrapunov objected to Judge Parker's Opinion and Order, contending that amendment was futile because the Court lacked subject matter jurisdiction over the claim. Dkt. No. 1069. He also filed a motion to dismiss the claim, which reiterated and incorporated his earlier objections that the Court lacked subject matter jurisdiction. Dkt. No. 1105.

The Court granted the motion to dismiss in June 2020. *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345 (AJN), 2020 WL 2896683, at *7 (S.D.N.Y. June 1, 2020). It held that it lacked supplemental jurisdiction over the judgment recognition claim under the standard in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), because the judgment recognition claim did not form part of the same Article III case as the claims giving rise to original jurisdiction. *Almaty*, 2020 WL 2896683, at *5–7. It also ordered the Kazakh Entities to show cause why another state-law judgment recognition claim against Ablyazov should not be dismissed for the same reason. *Id.* at *7. BTA moves for reconsideration of the June 2020 Opinion. It contends for the first time on reconsideration that a separate standard for ancillary jurisdiction governs its judgment recognition claim and that therefore *Gibbs* does not apply.

**II.     Legal Standard**

"In this district, motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Rule 6.3." *CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-cv-5345 (AJN), 2016 WL 3481061, at *1 (S.D.N.Y. June 21, 2016) (cleaned up). "The standard for granting such a motion is strict . . . ." *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "A motion for reconsideration should be granted only when the [moving

party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)). A motion for reconsideration is not a vehicle for parties to present arguments they could have raised earlier but did not. *Caribbean Trading & Fid. Corp. v. Nigerian Nat. Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991).

**III.     Discussion**

In its briefing, BTA repeatedly claims that the Court reached out "sua sponte" to decide whether the judgment recognition claim formed part of the same Article III case as the claims giving rise to original jurisdiction. *See* Opening Br., Dkt. No. 1270, at 1, 7–8; Reply Br., Dkt. No. 1323, at 1–3, 5. This is incorrect. BTA also claims—astonishingly—that Khrapunov forfeited his arguments on this issue. Opening Br. at 8. This, too, is incorrect. Unhappy with the Court's decision, BTA now seeks a second bite at the apple, drawing a distinction between pendent and ancillary jurisdiction that it never advanced before and repudiating the *Gibbs* test on which it relied in its briefing before Judge Parker. The Court concludes that these arguments have been waived, are without merit, and fall well short of the high bar for reconsideration.

**A.     BTA Waived the Argument that *Gibbs* Does Not Apply**

The question BTA now seeks to relitigate was well presented in both Khrapunov's objections to Judge Parker's Opinion and Order and his motion to dismiss. Khrapunov argued at length in his objections that the judgment recognition claims did not form part of the same Article III case as the claims giving rise to original jurisdiction. *See* Dkt. No. 1069, at 5–12. He incorporated those arguments in his motion to dismiss, in which he summarized them as follows:

3

"[T]he Court lacks supplemental jurisdiction because the claim to enforce the UK Judgment does not arise out of a common nucleus of operative facts with the interpleader claim (*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)), upon which this Court acquired removal and original jurisdiction." *See* Dkt. No. 1109, at 4.

BTA met this argument head on. It did not contend that *Gibbs* was inapplicable or that a different standard for ancillary jurisdiction should govern instead. In its opposition to Khrapunov's objections, it wrote that "the '*Gibbs* Test'" was "the applicable test." Dkt. No. 1086, at 7. It then devoted four pages to the argument that its judgment recognition claim formed part of the same case under the standard in *Gibbs*. *Id.* at 7–10. It cited and relied on *Lyndonville v. Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000), which it now protests has no bearing on the Court's supplemental jurisdiction in this case. Dkt. No. 1086, at 9; *see* Opening Br. at 9. In its opposition to Khrapunov's motion to dismiss, it again (briefly) referenced these arguments. *See* Dkt. No. 1125, at 6–7. The issues the Court decided in its June 2020 Opinion were thus presented and briefed by both parties. In that briefing, BTA elected to defend its judgment recognition claim under *Gibbs* rather than advance a different standard.

BTA now claims that it was blindsided because the Court reached out to decide a constitutional question (whether its claim formed part of the same case or controversy under Article III of the United States Constitution) rather than the statutory question that it says Khrapunov focused on in his papers (whether its claim "form[ed] part of the same case or controversy under Article III of the United States Constitution" within the meaning of 28 U.S.C. § 1367(a)). If that sounds pedantic, it's because it is. There may be some room for an academic discussion about whether, under controlling Supreme Court precedent, § 1367(a) is coextensive with Article III of the Constitution. *But see Owen Equip. & Erection Co. v. Kroger*, 437 U.S.

4

365, 371 (1978) ("It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power."). However, that question has nothing to do with the Court's Opinion in this case. The Court did not hold that BTA's claim squeaked by under § 1367(a) but ran afoul of some independent requirement under Article III. Rather, it applied the same authorities that BTA contended in its earlier briefing governed supplemental jurisdiction over its claim.

Hoping for a do-over, BTA now offers a new slate of arguments entirely absent from its earlier papers. In neither its briefing on Khrapunov's objections nor its briefing on the motion to dismiss did BTA raise the argument that *Gibbs* was not the controlling standard. In neither set of briefs did BTA advance a distinction between pendent and ancillary jurisdiction. In neither did it contend that its claim should survive even if § 1367(a) would bar it. "As the Kazakh Entities themselves [have] argue[d], 'reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345 (AJN), 2019 WL 1430155, at *9 (S.D.N.Y. Mar. 29, 2019) (some alternations and internal quotation marks omitted) (quoting Dkt. No. 696, at 6 (quoting *Hecklerco, LLC v. YuuZoo Corp.*, 258 F. Supp. 3d 350, 356 (S.D.N.Y. 2017))). The Court concludes that BTA has waived these arguments.[1]

### B. The Court Lacks Jurisdiction over the Claim Against Khrapunov

The Court need not—and does not—accept BTA's arguments that it raises for the first time in its motion for reconsideration. However, even considering BTA's latest round of briefing, the Court concludes that BTA's proposed distinction between pendent and ancillary

---

[1] While a *lack* of subject matter jurisdiction is not subject to waiver, a party may waive arguments in favor of jurisdiction. *See, e.g.*, *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 n.7 (2d Cir. 2019); *Williams v. Long Beach Mortg. Co.*, 709 F. App'x 92, 93 (2d Cir. 2018); *Larkins v. Gracia*, 379 F. App'x 17 (2d Cir. 2010).

jurisdiction is without merit and that the Court lacks jurisdiction over BTA's judgment recognition claim.

Article III of the Federal Constitution limits the jurisdiction of the federal courts to certain classes of cases and controversies. Thus, as a constitutional matter, a federal court may exercise jurisdiction over a claim outside its original jurisdiction only if that claim forms part of the same constitutional case as another claim within its original jurisdiction. Congress has codified this limitation in 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This Court has held that, to the extent 28 U.S.C. § 1441(d) provides a separate basis for supplemental jurisdiction, a similar limitation applies. *Almaty*, 2020 WL 2896683, at *5.

The Supreme Court's foundational case on supplemental jurisdiction is *Gibbs*. There, the Supreme Court held that a federal court may exercise jurisdiction over a plaintiff's state-law claims (absent diversity of citizenship) only if the state and federal claims "derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725. The rule in *Gibbs* was a constitutional holding. *See id.* ("Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim arising under the Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority, U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." (cleaned up)); *Kroger*, 437 U.S. at 371. There is no serious argument that the applicability of *Gibbs* turns on the statutory basis for supplemental jurisdiction. And so there is no serious basis for BTA's contention that the

applicability of *Gibbs* to its judgment recognition claim turns on whether the Court was evaluating supplemental jurisdiction under § 1367(a) or directly under the Constitution.

BTA also contends that the "common nucleus of operative fact" test does not apply to its judgment recognition claim because the Court has ancillary jurisdiction, rather than pendent jurisdiction, over that claim. That is not the law in the Second Circuit.

Historically, ancillary jurisdiction extends to claims that are "incidental" to other matters properly before a court. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). It serves to "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (internal citations omitted); *see also Peacock v. Thomas*, 516 U.S. 349, 356 (1996). Pendent jurisdiction, on the other hand, "involves claims asserted by the plaintiff which have no independent jurisdictional basis." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436 (2d Cir. 2000) (citation omitted).

While the Second Circuit has acknowledged the distinct origins of these doctrines, it has never held that ancillary claims are exempt from the test in *Gibbs*. *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004). To the contrary, it has held that a "basic requirement[] for ancillary jurisdiction" over a third-party claim is "that the main claim and the third-party claim must arise from a 'common nucleus of operative facts.'" *Bank of India*, 239 F.3d at 437 (quoting *Kroger*, 437 U.S. at 374–77); *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (holding that the court had ancillary jurisdiction over a fee dispute because the facts of the two claims "substantially overlapped" (quoting *Lyndonville*, 211 F.3d at 704)). Thus, while specific rules govern ancillary jurisdiction over

7

certain classes of claims, those rules accord with, rather than displace, the general rule in *Gibbs*. Courts have jurisdiction over third-party indemnification claims, for example, because *Gibbs* compels that result, not because *Gibbs* does not apply.  *See Bank of India*, 239 F.3d at 437.

Some Courts, while continuing to apply *Gibbs*, have formulated its test more leniently when considering defensive set-off counterclaims.  *See, e.g.*, *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996) (requiring only a "loose factual connection" for defensive set-off claims); *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 992 (3d Cir. 1984) (considering, among other factors, the federal policy interests in supplemental jurisdiction). Although the Second Circuit has acknowledged that the policy considerations may be different for a plaintiff's claims and a defendant's counterclaims, it has not followed this path.  *See Jones*, 358 F.3d at 213–14 & n.7.

Even accepting BTA's argument that the Court should scrutinize whether the policy rationale underlying *Gibbs* applies to its claim, the Court reaches the same result.  BTA was not "haled into court against [its] will" and faced no risk that its claims would be precluded if it did not assert them here.  *Kroger*, 437 U.S. at 376.  BTA was not named as a defendant in the underlying interpleader action; instead, it voluntarily intervened to pursue its own affirmative claims.  *See* Dkt. No. 45 (motion to intervene).  Though nominally a cross-claimant, the Court concludes that BTA's judgment recognition claim more closely resembles a pendent claim by a plaintiff than the sort of counterclaim to which some courts have applied a looser test for ancillary jurisdiction.  Considering these factors and the Second Circuit's precedent, BTA has not persuaded the Court that it clearly erred in analyzing BTA's jurisdictional claim under *Gibbs* and *Lyndonville*.

Applying these precedents, this is not a difficult case. *Gibbs* requires that a state-law claim arise from a common nucleus of operative fact with the claim giving rise to original jurisdiction. In *Lyndonville*, the Second Circuit held that a tort claim and a claim for enforcement of a judgment do not arise from a common nucleus of operative fact. *See Lyndonville*, 211 F.3d at 704. It reached this conclusion because the only facts relevant to a claim for recognition or enforcement of a judgment are the existence and validity of that judgment. Thus, even a tort claim relating to the same underlying wrongdoing does not form part of the same constitutional case. *See id.* The claims do not "substantially overlap[]." *Id.*; *see also Achtman*, 464 F.3d at 335.

BTA may disagree with *Lyndonville*, but it is binding on this Court. (Of course, BTA did not take issue with *Lyndonville*—and in fact relied on the case—in its earlier briefing. *See* Dkt. No. 1086, at 9.) The Court is also not persuaded by BTA's attempts—for the first time on reconsideration—to distinguish *Lyndonville*. BTA contends that because the judgment recognition claim requires this Court to ascertain that the U.K. court had personal jurisdiction over Khrapunov, there might have been some evidentiary overlap with the now-dismissed claims giving rise to original jurisdiction. The Court does not see any meaningful distinction between this case and *Lyndonville*. There too, the plaintiff would have needed to prove "the existence of a prior *valid* order." *Lyndonville*, 211 F.3d at 705 (emphasis added). Thus, BTA's argument that the mere possibility of a dispute as to an order's validity brings a judgment recognition claim within the ambit of *Gibbs* is inconsistent with *Lyndonville*. The Court concludes that the more faithful reading of *Lyndonville* is that claims for recognition of a judgment do not share a common nucleus of operative fact with claims that do not turn on the existence and validity of

that judgment. The Court therefore concludes that it did not clearly err in holding that it lacked supplemental jurisdiction over BTA's judgment recognition claim.

### C. The Court Lacks Jurisdiction over the Claim Against Ablyazov

In its June 2020 Opinion, the Court also ordered the Kazakh Entities to show cause why the judgment recognition claim against Ablyazov should not be dismissed for lack of jurisdiction. The Court applies *Gibbs* and *Lyndonville* to this question as the law of the case and because BTA waived its arguments that a different standard should apply. Upon consideration of BTA's briefing, the Court concludes that it lacks jurisdiction over the judgment recognition claim against Ablyazov for the same reasons it lacks jurisdiction over the claim against Khrapunov. The Court is not persuaded by BTA's attempts to distinguish these claims.

First, the possibility of any evidentiary overlap between the judgment recognition claim against Ablyazov and the other claims in this action is even more remote. As BTA's motion for partial summary judgment on this claim makes clear, the only facts relevant to the judgment recognition claim are the existence and validity of the U.K. judgments. *See* Dkt. No. 1294. Unlike for Khrapunov, personal jurisdiction is not in dispute, nor does it depend on conduct with any relationship to the other claims in this case. Ablyazov concedes that the U.K. court had personal jurisdiction over him because he was domiciled there. *See id.* at 12. The only non-jurisdictional argument Ablyazov advances in opposition to the motion for partial summary judgment is that BTA falsely represented its motivations in bringing suit to the U.K. court. *See* Dkt. No. 1365, at 2–3. There is simply no overlap in the facts relevant to the judgment recognition claim and the claims giving rise to original jurisdiction. *See Lyndonville*, 211 F.3d at 704.

Second, it is not enough to create supplemental jurisdiction that BTA alleges that the U.K. judgments may have motivated fraudulent transfers of funds to Triadou. These allegations primarily concern fraudulent conveyance claims that the Court has since dismissed and that did not independently support federal jurisdiction because they arose under state law. The Court concludes that this is insufficient to support supplemental jurisdiction under *Lyndonville* when the evidence required to prove the state and federal claims has essentially no overlap.

The Court thus concludes that it lacks subject matter jurisdiction over the judgment recognition claim against Ablyazov for substantially the same reasons it lacks jurisdiction over the claim against Khrapunov. Because it lacks subject matter jurisdiction, the Court denies BTA's motion for partial summary judgment on this claim.

        **D.**        **The Court Declines to Remand the State-Law Claims**

Until its motion for reconsideration, BTA did not seek remand as an alternative to dismissal in the event the Court determined it lacked supplemental jurisdiction. Given the serious questions about the Court's authority to order a partial remand in these circumstances, the Court declines to do so.

Subsection 1447(c) of title 28 sets out the procedures for remand after removal: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Neither the Second Circuit nor the Supreme Court has decided whether this provision authorizes remand of individual claims while the rest of the case proceeds in federal court. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391–92 (1998); *Zanotti v. Invention Submission Corp.*, No. 18-cv-5893 (NSR), 2020 WL 2857304, at *12 (S.D.N.Y. June 2, 2020). However the Supreme Court in *Schacht* strongly suggested that it does not. "An ordinary reading of the language indicates that the statute refers to an instance in which a federal

court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case." *Schacht*, 524 U.S. at 392 (quoting 28 U.S.C. § 1447(c)). Dicta or not, the Court agrees. Unlike 28 U.S.C. § 1441(c), which directs district courts to sever and remand individual "claims" upon removal, § 1447(c) refers to the entire "case." The Court sees no reason to disregard this distinction in the language of the two statutes. The provisions in § 1447 dealing with fee awards and appellate review further suggest that § 1447(c) contemplates remand of an entire case, not of individual claims for which jurisdiction is lacking.

The Court does not find BTA's arguments to the contrary persuasive. BTA points to a single 1931 Second Circuit case holding that a court "should" remand a cause of action upon removal if it lacks jurisdiction over that claim. *Tillman v. Russo Asiatic Bank*, 51 F.2d 1023, 1028 (2d Cir. 1931). Because § 1447(c) says that a case "shall" be remanded if the court lacks jurisdiction, BTA contends that *Tillman* must now stand for the proposition that partial remand under § 1447(c) is mandatory. This case is not on point. *Tillman* dealt with a claim that was improperly removed, not one where a jurisdictional defect arose later. *Id.* at 1027–28 ("In such a situation the entire suit should not have been removed to the United States court, as is done where a 'separable controversy' exists, but only the cause of action over which jurisdiction by reason of diversity of citizenship might be exercised." (internal citation omitted)). It held that the district court should sever and remand the improperly removed claim rather than remanding the whole case. *Id.* at 1028. Thus, it essentially states the rule in the current version of § 1441(c). *Tillman* said nothing about remand versus dismissal when a jurisdictional defect arises after removal. Nor did it hold that the word "case," as it is used in later-enacted jurisdictional statutes, refers to an individual claim.

Further complicating BTA's position is that its judgment recognition claims did not originate in state court. Thus, even accepting that § 1447 authorizes partial remand of claims removed from state court as a general matter, it is not clear that this authority would extend to claims that did not begin there. *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (noting that remand of state-law claims was not available when an action was originally filed in federal court). BTA essentially asks this court to accept that its judgment recognition claims constitute distinct "cases" for purposes of § 1447(c) but nonetheless form only part of a single "case" removed from state court under § 1447(a). The Court is unwilling to adopt this convoluted reading of the statute.

Considering these factors, as well as BTA's failure to seek remand prior to its motion for reconsideration, the Court concludes that BTA is not entitled to remand of its judgment recognition claims and that dismissal without prejudice for refiling in state court is appropriate.

### E. The Court Declines to Certify an Interlocutory Appeal

Finally, BTA asks the Court to enter a partial final judgment under Federal Rule of Civil Procedure 54(b) or certify an interlocutory appeal under 28 U.S.C. § 1292(b). The Court declines to do so.

Rule 54(b) permits, but does not require, a district court to enter a partial final judgment "when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination that there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (cleaned up). "Respect for the 'historic federal policy against piecemeal appeals' requires that such a certification not be granted routinely."

13

*L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998) (some internal quotation marks omitted) (quoting *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980)).

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory appeal from an order if it concludes that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (quoting 28 U.S.C. § 1292(b)). "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Id.*

The Court declines to exercise its discretion to expedite appellate review under either standard. The result in this Opinion flows largely from BTA's failure to timely raise the arguments it now contends present important questions worthy of interlocutory review. Aside from those late-raised legal arguments, the application of *Lyndonville* to the facts of this case does not present a "question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

The Court also finds that there are compelling reasons not to enter partial final judgment. The jurisdictional issues here are closely related to other questions likely to be presented for appellate review following final judgment, including the scope of removal jurisdiction under § 1441(d). These questions should be presented together, not piecemeal. This case began nearly six years ago. The Court does not believe it would be just to further delay final disposition of this case to allow for interlocutory review of essentially unrelated claims. These claims could— and should—proceed in state court.

## Conclusion

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction over BTA's judgment recognition claims and that dismissal of those claims without prejudice is appropriate. BTA's motion for reconsideration (Dkt. No. 1269) is DENIED. BTA's motion for partial summary judgment (Dkt. No. 1290) is DENIED. BTA's motion for oral argument (Dkt. No. 1271) is DENIED as moot. The Court dismisses without prejudice BTA's judgment recognition claim against Ablyazov.

This resolves Docket Numbers 1269, 1271, and 1290.

SO ORDERED.

Dated: March 29, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge