# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

            Crossclaim Plaintiffs,

      - against -

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

            Crossclaim Defendants.

ECF Case
No. 1:15-cv-05345 (AJN) (KHP)

**DEFENDANT TRIADOU SPV S.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LIMITED RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND ITS ANSWER TO ADD THE DEFENSE OF *IN PARI DELICTO***

Dated:  April 12, 2021

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Counsel for Crossclaim Defendant Triadou SPV S.A.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT BACKGROUND .......................................................................................... 2

ARGUMENT ....................................................................................................................... 6

I.  The March 29 Order Overlooks the Timeline Leading to Triadou's Assertion
    of the Defense and New York's Compelling Interest in Applying
    *In Pari Delicto*, and Creates Manifest Injustice........................................................ 7

    A.  The Legal Standard For Reconsideration ..................................................... 7

    B.  The Court Overlooked that Triadou's Late Discovery of the Relevant
        Facts Was Caused by BTA's Late Disclosures............................................. 7

    C.  Preventing Triadou From Relying on Post-Discovery Evidence
        While Permitting BTA To Rely on the Same Evidence Would
        Result in Manifest Injustice ........................................................................ 10

    D.  The Court Overlooked New York's Overriding Interest in Enforcing
        *In Pari Delicto* ........................................................................................... 11

II.  In The Alternative, The Court Should Permit Triadou To Amend To Add
     An *In Pari Delicto* Defense ..................................................................................... 12

    A.  The Legal Standard for Motions To Amend............................................... 12

    B.  Triadou Was Diligent and Acted in Good Faith in Asserting Its
        *In Pari Delicto* Defense on Summary Judgment and in Seeking
        To Amend Here............................................................................................. 13

    C.  BTA Cannot Demonstrate Prejudice .......................................................... 15

    D.  Amendment Would Not Be Futile Where the Court Has Already
        Found Disputes of Fact Sufficient To Preclude Summary Judgment......... 17

    E.  Good Cause Exists To Alter the Scheduling Order To Permit
        Triadou's Requested Amendment................................................................ 18

CONCLUSION.................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Ampal-Am. Israel Corp.*,
    545 B.R. 802 (Bankr. S.D.N.Y. 2016) ...................................................................................17

*Blagman v. Apple, Inc.*,
    307 F.R.D. 107 (S.D.N.Y. 2015) .........................................................................................14

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993) ...................................................................................15, 16, 17

*Commander Oil Corp. v. Barlo Equip. Corp.*,
    215 F.3d 321 (2d Cir. 2000) ...................................................................................13, 17, 18

*Emmpresa Cubana Del Tabaco v. Culbro Corp.*,
    213 F.R.D. 151 (S.D.N.Y. 2003) .....................................................................................16, 17

*In re Harbinger Cap. Partners Funds Inv'r Litig.*,
    No. 12 Civ. 1244 (AJN), 2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013) ................................7

*Kirschner v. KPMG*,
    15 N.Y.3d 446 (2010) ......................................................................................................11, 12

*McConnell v. Commonwealth Pictures Corp.*,
    7 N.Y.2d 465 (1960) ..............................................................................................................11

*Monahan v. New York City Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000) .......................................................................................9, 16, 17

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
    889 F. Supp. 2d 453 (S.D.N.Y. 2012) ..................................................................................16

*Scott v. Chipotle Mexican Grill, Inc.*,
    300 F.R.D. 193 (S.D.N.Y. 2014) .....................................................................................13, 18

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ......................................................................................................7

*Sotheby's Int'l Realty, Inc. v. Black*,
    No. 06 CIV 1725 (GEL), 2007 WL 4438145 (S.D.N.Y. Dec. 17, 2007) ........................13, 17

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) ..................................................................................................16

*Walker v. Carter*,
    No. 1:12-cv-05384, 2016 WL 6820554 (S.D.N.Y. Feb. 4, 2016) ............................................7

**Other Authorities**

L. Civ. R. 6.3.................................................................................................................................7

Fed. R. Civ. P. 15...............................................................................................................6, 12, 18

Fed. R. Civ. P.16................................................................................................................6, 13, 18

Fed. R. Civ. P. 56.....................................................................................................................17

Triadou SPV S.A. ("Triadou") respectfully submits this memorandum of law in support of its limited motion for reconsideration of the Court's March 29, 2021 Order (the "March 29 Order") to the extent it held that Triadou waived the defense of *in pari delicto* (ECF 1428), or, in the alternative, for leave to amend its Answer to add the affirmative defense of *in pari delicto*.[1]

## PRELIMINARY STATEMENT

Cognizant of the stringent standard for reconsideration, Triadou seeks only narrow relief in this limited motion: the opportunity to present its *in pari delicto* defense at trial. Triadou is not seeking reconsideration of whether *in pari delicto* bars BTA's claims at this time—only the chance to invoke the doctrine as part of its defense at trial.

While the Court held in the March 29 Order that Triadou "had waived" the defense, the abbreviated discussion leading to that determination appears to have overlooked, and did not address, important facts about what led Triadou to assert *in pari delicto* for the first time on summary judgment. (ECF 1428 at 21). Specifically, the timeline of events—beginning with BTA's post-discovery disclosure of new potential trial witnesses—explains and justifies Triadou's actions. The Court's silence and its citation to pleadings predating the depositions of BTA's belatedly disclosed witnesses suggest the Court may have overlooked these key facts. Reconsideration is also warranted because manifest injustice would result from allowing BTA to rely on post-discovery evidence—deposition testimony from its untimely disclosed witnesses— while barring Triadou from relying on that same evidence to establish a critical and significant defense. Combined with New York's compelling interest in applying the *in pari delicto* defense to ensure that wrongdoers do not benefit from their misconduct, there are ample grounds to

---

[1] A proposed amended answer is attached as Exhibit 1 to the Declaration of Deborah A. Skakel, dated April 12, 2021, filed in connection with the instant motion. The Declaration also attaches as Exhibit 2 a redlined copy of the proposed amended answer for the Court's convenience.

1

reconsider the Court's determination that Triadou waived its *in pari delicto* defense and to permit Triadou to prove the defense at trial.

Alternatively, Triadou seeks leave to amend its Answer to add the affirmative defense of *in pari delicto*. As the record reflects, Triadou did not learn of the facts supporting this defense until well after discovery closed, during depositions of belatedly disclosed BTA witnesses that were ordered by the Court to mitigate prejudice to Triadou resulting from BTA's late disclosure. Consequently, Triadou was not in a position to seek leave to amend to add an *in pari delicto* defense before the Court-imposed deadline of August 29, 2016 (ECF 205 at 2), or before fact discovery closed two years later. Leave to amend, even after summary judgment is decided, should be freely given as long as the amendment would not prejudice the non-moving party or be futile. Here, BTA cannot demonstrate any undue prejudice where no additional discovery and no alteration of the case management schedule are needed to accommodate the inclusion of the defense. Nor would amendment be futile where the Court has already found that genuine disputes of fact preclude determination of Triadou's *in pari delicto* defense at summary judgment.

Triadou was diligent in asserting its *in pari delicto* defense, particularly in light of how and when Triadou discovered the facts that support its defense. After years of litigation and zealous advocacy by all parties, the Court should permit Triadou the opportunity to present its defense at trial, whether by reconsidering the March 29 Order or granting Triadou leave to amend.

## RELEVANT BACKGROUND

For all intents and purposes, fact discovery in this matter closed on August 31, 2018. More than a month later, on October 5, 2018, in response to timely issued discovery requests from Triadou, BTA sought to amend its Rule 26(a) disclosures to identify two new trial witnesses, Zaure Junussova (also spelled Dzhunusova) and Gaini Duysenbina, both with ties to BTA's UKB6 division. (ECF 1384-9). BTA did this, ostensibly, to authenticate documents they claim reflect

funds transferred from BTA in 2004[2]—before Ablyazov became Chairman of BTA—to various other entities and which funds BTA asserts can be traced to Triadou's investments in the United States.  (*See* ECF 968 at 9-10; ECF 993 at 46; ECF 1101 at 20-21).

Triadou moved to preclude those late disclosed witnesses, and in March 2019, in opposition to Triadou's motion, BTA sought to substitute in place of Duysenbina two more new witnesses who were not included on its Rule 26(a) disclosures, including Akzhan Moldakhmet, another former BTA employee that worked in UKB6.  (ECF 993 at 45).  While the Court denied Triadou's motion in July 2019, it granted Triadou the right to depose those witnesses concerning the documents they were disclosed to authenticate so as to mitigate the prejudice to Triadou of BTA's late disclosures.  (ECF No. 1424 at 1-2 (citing ECF 1101 at 17-21)).[3]

The post-discovery depositions proceeded in Kazakhstan in September 2019.  On September 18, 2019, Junussova sat for deposition.  Junussova worked in BTA's UKB6 division from November 2005 until February 2009, and was twice promoted, first to head UKB6's department for documentation management in early 2006, and then to deputy head of UKB6 in early 2007.  (ECF 1283-11 at 10:6-7, 11:1-13:15).  Regarding UKB6, Junussova testified about the division's general activities, (*id.* at 24:18-22 ("UKB-6 dealt with filing, with handling documents to issue loans")), and the process by which UKB6 responded to loan applications it received (*id.* at 24:23-25:3 (after UKB6 received an application for a loan, "it prepared a set of documents in order to issue a loan to an offshore company.  Then this application would be

---

[2] The March 29 Order states that BTA alleges the transfers occurred in summer 2014.  (ECF 1428 at 21).  This appears to be a typographical error.

[3] When BTA revealed its intention to conduct trial depositions of these new witnesses on the grounds that they might not be available for trial, including as to subjects beyond the scope of what was previously disclosed, Triadou petitioned the Court for relief.  (*See* ECF 1146).  After lengthy argument, the Court carefully delineated the contours of how each party could examine the late-disclosed witnesses, including by granting Triadou a slightly broader scope to balance the equities.  (*See* ECF 1160; *see also* ECF 1424 at 2-3).

approved and a loan would be issued")).  In doing so, Junussova clarified that UKB6 could not act unilaterally to approve or issue loans—rather, only BTA's "credit committee and the leadership have the authority" to issue loans.  (*Id.* at 74:25-76:1 (UKB6 "never had the authority to issue loans on its own," nor did the head of UKB6)).  Importantly, Junussova explained that UKB6 purchased securities in BTA to allow the bank to continue growing while remaining in compliance with regulations, specifically by growing the equity of BTA's owner.  (*Id.* at 30:21-32:13 (UKB6 purchased "securities in the same BTA Bank" to grow "its owner's equity"; this was done "in order to meet the regulator's requirements"); *id.* at 80:19-81:18 ("[I]f a bank wants to retain its license [in Kazakhstan], it will need to meet a requirement of having a minimum level of owner's equity. Consequently, the bank had to grow its owner's equity.")).

On September 19, 2019, Akzhan Moldakhmet sat for deposition.  Moldakhmet began working at BTA in 2002 as a specialist in UKB6, before Ablyazov became Chairman.  (ECF 1283-17 at 8:12-9:1).  She corroborated Junussova's testimony that UKB6's purposes during the time before Ablyazov became Chairman included issuing loans to buy securities and growing the owner's equity in the bank.  (*Id.* at 8:23-9:4 (purposes of UKB6 included issuing loans "in order to buy securities, in order to grow owner's equity, and it provided loans to buy a stake or an ownership interest in other real projects"); *see also* ECF 1283-11 at 22:17-23:14, 66:23-67:2)).  Taken together, this testimony marked the first evidence of BTA management's broader involvement in UKB6's activities and revealed the benefits UKB6 afforded BTA.

Within three weeks of these depositions, the parties submitted proposed briefing schedules for summary judgment (ECF 1187), and on October 19, 2019, the Court ordered summary judgment motions to be filed in January 2020.  (ECF 1196).  Although this deadline was extended three times because then-pending dispositive motions might have affected the nature and scope of

the remaining claims (in addition to COVID-related considerations), (ECF 1210; ECF 1238; ECF 1245), Triadou promptly raised *in pari delicto* at the first available opportunity—in its motion for summary judgment, (ECF 1287 at 36-40).  Triadou referred the Court to case law demonstrating that *in pari delicto* could be raised and considered despite not being pled, (ECF 1287 at 37 n.24; ECF 1383 at 13-14), clarified why it had not raised the claim earlier (i.e., that BTA's complicity first became apparent well after fact discovery had closed), and dispelled the bank's speculative assertions of prejudice, (ECF 1383 at 14-15).

In ruling on Triadou's summary judgment motion, the Court acknowledged it "might have discretion to overlook" Triadou's failure to plead the defense, but "decline[d] to do so in this posture."  (ECF 1428 at 20 (citing ECF 1112)).  In connection with that ruling, the Court cited only to Triadou's most recent answer, filed two months ***before*** the relevant depositions occurred. (ECF 1112).[4]  The Court did not explicitly address the case law Triadou cited or the facts underlying Triadou's assertion of its *in pari delicto* defense for the first time in its summary judgment motion.  (*See* ECF 1428 at 20-21).  The Court did conclude, however, that "there are genuine factual disputes both as to the degree of BTA's participation in the alleged wrongdoing and the applicability of the adverse interest exception," including "Ablyazov's level of control over BTA at the time it transferred funds to Tradestock" and whether "Ablyazov alone benefited from the purported loans." (*Id.*).  "Thus, the Court conclude[d] that genuine factual disputes would preclude summary judgment on this defense even if Triadou had not waived it." (*Id.* at 21). Triadou seeks reconsideration only of the Court's finding of waiver.

---

[4] Triadou filed its most recent answer in response to the Court's order permitting BTA to add a judgment recognition claim against Ilyas Khrapunov; the new claim was not against Triadou.  (*See* ECF 1058 at 7 (granting leave to amend and noting the claim is not against Triadou)).

## ARGUMENT

Triadou seeks limited reconsideration of the Court's March 29 Order only insofar as it held that Triadou waived its *in pari delicto* defense.  Reconsideration is warranted for several reasons. First, the March 29 Order appears to have overlooked that Triadou did not learn of the facts underlying its defense until after fact discovery closed, during depositions of witnesses whom BTA identified after the close of fact discovery and who were the subject of motions to preclude. Second, and relatedly, it would be manifestly unjust to prevent Triadou from relying on this late-breaking evidence to establish an important defense while permitting BTA to rely on the same evidence to support BTA's modified and unpled theory of its case,[5] particularly where the testimony came about through depositions that were ordered for the purpose of mitigating prejudice to Triadou from late disclosures.  Finally, New York's compelling interest in applying the *in pari delicto* defense to bar wrongdoers from benefitting from their own misconduct–which the March 29 Order does not address–when combined with the above facts, supports Triadou's request for reconsideration.  Triadou thus respectfully requests the opportunity to present its *in pari delicto* defense at trial.

Alternatively, Triadou satisfies the lenient standard for amendment set forth in Federal Rule of Civil Procedure 15 and can establish good cause for deviating from the Court's scheduling order as required under Federal Rule of Civil Procedure 16.  The timeline of events reflects Triadou's diligence—it could not have amended by the deadline, or even during discovery; BTA cannot identify any prejudice, let alone undue prejudice, as a result of the amendment; and the proposed amendment is not futile or offered in bad faith.

---

[5] Triadou understands that the Court disagreed with Triadou's view of BTA's present factual theory, but as described below, (*see infra* Argument Section I.C), that theory still involves a number of issues and entities, as well as a different time period, that BTA did not plead in this case, (*see* ECF 1094).  Triadou does not seek reconsideration of the Court's decision on this point and highlights it only because it is germane to how Triadou's *in pari delicto* defense came about.

I.    **The March 29 Order Overlooks the Timeline Leading to Triadou's Assertion of the Defense and New York's Compelling Interest in Applying *In Pari Delicto*, and Creates Manifest Injustice**

A.    *The Legal Standard For Reconsideration*

Southern District Local Civil Rule 6.3 allows a party to move for reconsideration based on "matters or controlling decisions which counsel believes the Court has overlooked." L. Civ. R. 6.3. A motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Harbinger Cap. Partners Funds Inv'r Litig.*, No. 12 Civ. 1244 (AJN), 2013 WL 7121186, at *2 (S.D.N.Y. Dec. 16, 2013) (internal quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration motions also may be granted where the movant identifies "the need to correct a clear error or prevent manifest injustice," although such motions are not "an opportunity to take a second bite at the apple." *Walker v. Carter*, No. 1:12-cv-05384, 2016 WL 6820554, at *2 (S.D.N.Y. Feb. 4, 2016) (internal quotation marks and citations omitted).

B.    *The Court Overlooked that Triadou's Late Discovery of the Relevant Facts Was Caused by BTA's Late Disclosures*

In declining to exercise its discretion to allow Triadou to assert its *in pari delicto* defense on summary judgment, the Court found only that "Triadou did not raise the defense in its answer," and cited only to Triadou's Answer to BTA's Third Amended Crossclaims, filed in July 2019. (ECF 1428 at 20 (citing ECF 1112)). But the Court appears to have overlooked critical facts in the timeline that explain—and justify—Triadou's failure to plead *in pari delicto* before asserting the defense on summary judgment.

7

Initially, the March 29 Order does not in any way address how Triadou's *in pari delicto* defense came into the record.  The facts show that Triadou learned of the defense well after all discovery closed and acted promptly upon uncovering those facts by including the defense in its motion for summary judgment.  Specifically, in July 2019, the Magistrate Judge denied Triadou's motion to preclude multiple witnesses—former BTA employees—whom BTA had belatedly identified after the close of fact discovery in amended Rule 26(a) disclosures.  (ECF 1424 at 1 (citing ECF 1101 at 17-21)).  To mitigate the prejudice to Triadou from allowing these late disclosures, the Court allowed Triadou to depose the witnesses about the spreadsheets those witnesses had been disclosed to authenticate.  (*Id.* at 2 (citing ECF 1101 at 20)).  Additional motion practice became necessary after BTA revealed that it intended to take full trial depositions of these witnesses in Kazakhstan, at which time the Court limited the scope of the depositions to avoid further prejudice to Triadou.  (*See* ECF 1424 at 2-3).

The parties then deposed these former BTA employees in Kazakhstan on September 18 and 19, 2019, and it is during those depositions that Triadou learned that senior BTA personnel outside of UKB6 knew of UKB6's activities and that those activities benefitted the bank.  For instance, Junussova, a former deputy head of UKB6 during Ablyazov's time as Chairman, testified that the division "never had the authority to issue loans on its own," and that "[t]he head of UKB-6 has no personal authority to issue loans.  Only the credit committee and the leadership [of BTA] have the authority."  (ECF 1283-11 at 74:25-76:1).  Moldakhmet, another former UKB6 employee during *Ablyazov's predecessor's* time as Chairman, described the division's purposes as including issuing loans "to buy securities, in order to grow owner's equity, and it provided loans to buy a stake or an ownership interest in other real projects," (ECF 1283-17 at 8:23-9:4; ECF 1283-11 at 22:17-23:14,  66:23-67:2)), while Junussova explained this was done in part "to meet the

regulator's requirements," (ECF 1283-11 at 30:21-32:13)).   Junussova testified that "if a bank wants to retain its license [in Kazakhstan], it will need to meet a requirement of having a minimum level of owner's equity. Consequently, the bank had to grow its owner's equity."   (*Id.* at 80:19-81:18)).

Thus, Triadou did not learn of this important evidence until September 2019, during depositions ordered to prevent prejudice to Triadou—none of which the March 29 Order addresses.   (*See* ECF 1428 at 20-21).   In contrast, Triadou filed its Answer to BTA's Third Amended Crossclaims—the only thing cited in the March 29 Order regarding the case's posture and in support of the Court's decision not to allow Triadou to advance its *in pari delicto* defense— (*Id.* at 20 (citing ECF 1112))—on July 12, 2019, two months before the relevant depositions occurred.   Further, Triadou filed that iteration of its answer in response to an order by the Magistrate Judge allowing BTA to amend its own pleading to add a judgment enforcement claim against former defendant Ilyas Khrapunov.   (ECF 1058; ECF 1094).   The Magistrate's order did not contemplate additional amendment.   And, in any event, Triadou did not have the critical evidence underlying its *in pari delicto* defense at the time it filed that answer.

Once Triadou had this evidence, and based on Second Circuit law indicating that Triadou could raise *in pari delicto* without having pled it (*see, e.g.*, *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also* ECF 1287 at 37 n.24 (reviewing case law)), Triadou asserted the defense in its summary judgment motion.   To the extent the Court may be concerned that Triadou did not raise the defense quickly enough, it is notable that summary judgment briefing was ordered to proceed almost immediately after the September 2019 depositions.   On October 10, 2019, just three weeks after those depositions, the parties submitted briefing schedules for summary

judgment (ECF 1187), and nine days later, the Court set a briefing schedule requiring motions to be filed in January 2020 (ECF 1196). That deadline was ultimately extended three times to allow the Court to rule on then-pending, potentially dispositive motions that could have narrowed the scope of the case. (*See* ECF 1210). Accordingly, the same interest in judicial efficiency that led the Court to extend the summary judgment briefing schedule also supported Triadou's inclusion of its *in pari delicto* defense in its summary judgment motion. There was no bad faith or gamesmanship; Triadou asserted the defense at the first available opportunity.

C.       *Preventing Triadou From Relying on Post-Discovery Evidence While Permitting BTA To Rely on the Same Evidence Would Result in Manifest Injustice*

For many of the same reasons discussed above, it would be manifestly unjust to hold that Triadou waived its *in pari delicto* defense. Triadou's defense is based on evidence adduced after the close of fact discovery, during depositions intended to mitigate prejudice to Triadou from BTA's late witness disclosures. To preclude Triadou from advancing a defense based on such evidence would be unjust and inequitable, particularly where BTA is permitted to rely on that very same evidence to attempt to prove a factual theory it likewise did not plead.

Although the Court may disagree with Triadou as to the degree of the differences between what BTA pled and the factual theory it now seeks to prove, (ECF 1428 at 21-22), there is no question that BTA's Crossclaims do not reference UKB6, Ablyazov's activities prior to when he became Chairman in 2005, or the individuals and entities through which BTA now seeks to trace the funds Triadou invested, (*see* ECF 1094). The post-discovery testimony of the former BTA employees deposed in Kazakhstan in September 2019 addresses all of these issues in a significant way that the discovery record previously did not—particularly as to evidence from the 2004 time period. That is why BTA largely relied on the testimony from these witnesses to support its unpled factual theory and to argue against summary judgment. To deprive Triadou of the ability to rely

10

on the same evidence to defeat those claims—especially when the evidence was obtained to alleviate prejudice to Triadou and where the information was exclusively in BTA's possession before the September 2019 depositions—would be manifestly unjust. Indeed, doing so arguably leaves Triadou in a worse position than it would have been in had the Court not granted the September 2019 depositions at all. In effect, the March 29 Order permits BTA to conform its pleadings to the evidence, but refuses Triadou the same relief.

That Triadou was a third party that could not have been involved in events occurring in 2004 also bolsters the conclusion that it would be manifestly unjust to deprive Triadou of the chance to assert *in pari delicto* at trial, particularly where the Court found that questions of fact remain as to whether Triadou even knew it was involved in alleged money laundering nearly a decade later. (ECF 1428 at 18). That finding strongly supports that Triadou did not have the information needed for its defense before the September 2019 depositions. (*See id.*).

D.      *The Court Overlooked New York's Overriding Interest in Enforcing In Pari Delicto*

The Court also overlooked New York's strong interest in preventing wrongdoers from profiting from their own misconduct. In *McConnell v. Commonwealth Pictures Corp.*, the Court of Appeals held that "[p]roper and consistent application of a prime and long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption." 7 N.Y.2d 465, 469 (1960). *McConnell* further described the doctrine as "applying fundamental concepts of morality and fair dealing not to be weakened by exceptions." *Id.* at 470.

While *McConnell* addressed the question of the enforceability of a legal contract where the plaintiff performed via illegal conduct, the Court of Appeals later extended the primacy of this principle in *Kirschner v. KPMG*, 15 N.Y.3d 446 (2010). Citing *McConnell*, the Court of Appeals stressed that "the principle that a wrongdoer should not profit from his own misconduct is ***so strong in New York*** that we have said the defense [of *in pari delicto*] applies even in difficult cases and

11

should not be 'weakened by exceptions.'" *Kirschner*, 15 N.Y.3d at 464 (emphasis added).  The Court of Appeals therefore refused to limit the defense's applicability and rejected any requirement that the plaintiff's behavior be worse than the defendant's behavior.  Instead, the Court emphasized that *in pari delicto* barred recovery whether the defendant's conduct was willful or negligent.  *Id.*

While both decisions explicitly confirm New York's aversion to weakening *in pari delicto* through exceptions, they implicitly highlight New York's "strong" interest in applying the doctrine—an interest that is consistent with the cases Triadou cited on summary judgment demonstrating that courts may consider the defense even where it was not pled.  (ECF 1287 at 37 n.24).  The Court's finding that Triadou waived the defense—thereby precluding Triadou from trying the question of whether BTA seeks to benefit from its own misbehavior—appears to have overlooked New York's compelling interest in the application of *in pari delicto*.

For all of these reasons, Triadou respectfully requests that the Court reconsider its March 29 Order to the limited extent that it held that Triadou had waived its *in pari delicto* defense, and instead permit Triadou to assert and attempt to prove the defense at trial.

## II.     In The Alternative, The Court Should Permit Triadou To Amend To Add An *In Pari Delicto* Defense

In the alternative, the Court should grant Triadou leave to amend its answer to add *in pari delicto* as an affirmative defense.  Leave to amend should be freely given where, as here, there is no prejudice to BTA and amendment would not be futile.

### A.     *The Legal Standard for Motions To Amend*

Federal Rule of Civil Procedure 15(a) provides that "leave shall be freely given [to amend pleadings] when justice so requires."  For amendments made after rulings on summary judgment, leave should still be freely granted, although "the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the

opposing party." *Sotheby's Int'l Realty, Inc. v. Black*, No. 06 CIV. 1725 (GEL), 2007 WL 4438145, at *1 (S.D.N.Y. Dec. 17, 2007) (quoting *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)).  However, mere delay, absent bad faith or prejudice, generally is insufficient to deny a motion to amend.  *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (holding grant of motion to amend to assert a new affirmative defense after a seven-year delay was not an abuse of discretion absent prejudice).  The party opposing the amendment bears the burden of showing that amendment should not be granted.  *See, e.g.*, *Sotheby's Int'l Realty*, 2007 WL 4438145, at *6.

Further, where, as here, amendment requires altering an existing scheduling order, courts in this District also look to Rule 16, which generally requires "good cause" for a schedule to be amended.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent").  In such cases, "a finding of 'good cause' depends on the diligence of the moving party."  (*See* ECF 1058 at 5 (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *see also Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197-98 (S.D.N.Y. 2014) ("Plaintiffs have demonstrated diligence because, despite their best efforts, the deadline could not have been reasonably met")).  "While the movant's 'diligence' is the 'primary consideration,' the Court may also inquire whether the amendment will ***significantly prejudice*** the nonmoving party." *Scott*, 300 F.R.D. at 197 (emphasis added).

    B.    *Triadou Was Diligent and Acted in Good Faith in Asserting Its In Pari Delicto Defense on Summary Judgment and in Seeking To Amend Here*

As set forth above, the critical testimony underlying Triadou's *in pari delicto* defense first entered the record during the September 2019 depositions.  After researching and confirming legal authority permitted it to do so, Triadou asserted the defense at the first real opportunity to do so. *See supra*, Section I.B.  Although Triadou's submission of its opening summary judgment brief

was delayed, the delay was for judicial economy, as the Court recognized when it extended the filing deadline pending decision on Triadou's and the Khrapunovs' then-pending, potentially dispositive motions.[6]

Nor does Triadou's assertion of the defense constitute bad faith. Courts may find bad faith where the party seeking to amend makes allegations "that are contrary to facts of which he has personal knowledge or are verifiably false," or where the moving party seeks a "tactical advantage." *See Blagman v. Apple, Inc.*, 307 F.R.D. 107, 112-13 (S.D.N.Y. 2015). Neither applies here. The facts supporting Triadou's defense come from sworn testimony of witnesses BTA sponsored; BTA cannot reasonably accuse its own witnesses—whom it fought to add over Triadou's objection—of testifying falsely. Moreover, the Court held in addressing the merits of Triadou's *in pari delicto* defense that genuine disputes of fact remain as to Ablyazov's control of BTA in 2004 and the extent to which BTA (versus Ablyazov) benefitted from the conduct occurring during that time. (ECF 1428 at 20-21.) But Ablyazov was dismissed from the case; and it is indisputable that Triadou did not exist in 2004, and thus could not have played a role in such conduct. Triadou therefore had even less reason to know of the facts underlying its *in pari delicto* defense before BTA's witnesses testified in late 2019, and, as a result, an even stronger entitlement to assert the defense.

Likewise, Triadou's decision to assert the defense in its summary judgment motion rather than by seeking to amend was not an effort to obtain a tactical advantage. Triadou did not wait to assert *in pari delicto* for the first time in its reply brief to prevent BTA from responding or hide the defense until the present motion. BTA had full opportunity to see Triadou's formulation of

---

[6] Had Triadou sought to delay summary judgment by moving to amend, it would only have served to delay resolution of this case, and, given the law cited in Triadou's summary judgment papers allowing the Court to consider Triadou's *in pari delicto* defense without having been pled, unnecessarily so. (*See* ECF 1363 at 53 n.22).

the defense (which is more notice than Triadou received as to BTA's modified theory of the case), and the opportunity to respond with evidence and argument. In fact, BTA had more than 12 weeks to prepare its opposition to Triadou's summary judgment motion (including two extensions to which Triadou consented (ECF 1330, ECF 1335)). Further, because pretrial activities have just begun, if the Court permits Triadou to amend, the parties will have sufficient time to negotiate any jury charges for the *in pari delicto* defense. There is thus no credible argument that Triadou sought or obtained a tactical advantage.

C.      *BTA Cannot Demonstrate Prejudice*

If the Court grants Triadou's motion to amend, BTA will not suffer undue prejudice. Whether an amendment would result in undue prejudice depends upon whether it would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block,* 988 F.2d at 350.

Here, no additional discovery is needed, which means BTA will not incur any "significant" additional expense to conduct it. Indeed, the Court has already determined that a reasonable juror could find for BTA on this defense, which suggests the bank has sufficient evidence to respond to Triadou's defense. (ECF 1428 at 20-21). In response to Triadou's motion to amend, BTA will no doubt protest that it argued on summary judgment that it "would have created a more robust record" and sought third-party discovery of former employees (ECF 1363 at 44; ECF 1355, ¶¶ 221-29). But the proposed additional discovery was entirely speculative and a scattershot approach designed to defeat summary judgment—not a credible articulation of the necessary and specific

discovery without which it would suffer undue prejudice to establish grounds for reopening discovery.[7]

While courts are most hesitant to allow amendment where doing so unfairly surprises the non-movant because the party lacks knowledge of the facts giving rise to the new claim, (*see, e.g.*, ECF 1058 at 7; *Block*, 988 F.2d at 351), this is clearly not a concern here, as BTA cannot credibly claim surprise over its own conduct or internal workings. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 461 (S.D.N.Y. 2012) (finding no prejudice where sole new fact issue was non-movant's own intent and movant did not seek additional discovery); *see also Monahan*, 214 F.3d at 284 (2d Cir. 2000) (finding no prejudice where non-movant knew the relevant facts months before movant raised defense); *cf. State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (no undue prejudice where amendment "involved information better known to the" non-movants).

Nor will Triadou's requested amendment significantly delay the resolution of this matter. Where no additional discovery is needed, pretrial activities may proceed in the ordinary course, and the parties have already briefed the issue on summary judgment, so there will be no added costs or delays in that regard. *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 156 (S.D.N.Y. 2003) (permitting amendment almost a year after fact discovery closed and two months before trial). And as noted above, the parties will have ample time to negotiate any appropriate jury charge on the issue, especially given that no trial date has been set in this matter.

---

[7] Counsel for BTA previously declared that not a single potential witness from whom they might seek discovery "is currently a BTA employee or otherwise within the control of BTA." (ECF 1355, ¶ 224). If true, BTA therefore cannot guarantee that these witnesses would even cooperate in providing testimony, let alone that their testimony would bear out counsel's predictions. (*See id.*, ¶ 226-30 (proffering the expected testimony from unspecified "former BTA employees who were associated with the Credit Committee," but "who are not immediately available to BTA or the undersigned counsel"); *see also id.*, ¶ 228 (suggesting Zhaksylyk Zharimbetov as a witness who "could testify about the extent to which they deceived others within the Bank," even though he "is no longer with the bank and not under the Kazakh Entities' control.")).

Put simply, "the fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings." *Monahan*, 214 F.3d at 284; *see also Commander Oil Corp.*, 215 F.3d at 333 (no prejudice where non-movant fails to demonstrate additional incremental costs over normal trial preparation activities).

Finally, BTA would not have chosen another forum if Triadou had raised the defense earlier. *See Block*, 988 F.2d at 350-51(affirming grant of summary judgment construed as a motion to amend).[8]

BTA's inability to prove undue prejudice under Rule 15 weighs heavily in favor of granting amendment.

D.     *Amendment Would Not Be Futile Where the Court Has Already Found Disputes of Fact Sufficient To Preclude Summary Judgment*

Where the parties have engaged in discovery and the amendment relies on evidence outside the pleadings, futility is evaluated "under the standard of Rule 56 – *i.e.*, whether the proposed affirmative defense could survive a motion for summary judgment." *Sotheby's Int'l Realty*, 2007 WL 4438145, at *1. Here, the Court has already found the proposed amendment would survive under the Rule 56 standard, having concluded "that there are genuine factual disputes both as to the degree of BTA's participation in the alleged wrongdoing and the applicability of the adverse interest exception." (ECF 1428 at 20). "Because there remains a question of fact," the proposed amendment "is not futile and [should] be permitted." *Emmpresa Cubana del Tabaco*, 213 F.R.D. at 158.

---

[8] BTA also cannot demonstrate surprise or prejudice where Triadou asserted the defense of unclean hands—a similar doctrine—in its original answer. *See In re Ampal-Am. Israel Corp.*, 545 B.R. 802, 810-11 (Bankr. S.D.N.Y. 2016) ("However, unclean hands finds its legal counterpart in the doctrine of *in pari delicto*. … Perhaps reflecting the merger of law and equity, courts use unclean hands and *in pari delicto* interchangeably").

E.   *Good Cause Exists To Alter the Scheduling Order To Permit Triadou's Requested Amendment*

To alter a scheduling order, the moving party must show good cause.  *See* Fed. R. Civ. P. 16(b)(4).  Under Rule 16, that analysis "largely turns on the diligence of the moving party."  (ECF 1058 at 5).  Here, Triadou was diligent because, despite its best efforts, the original deadline to amend "could not have been reasonably met" here.  *Scott*, 300 F.R.D. at 197-98.  While the Court's July 29, 2016 case management plan and scheduling order required any amended pleadings be filed within thirty days, (ECF 205), the key evidence underlying Triadou's *in pari delicto* first came into the record in September 2019, more than three years later.

And while Triadou has acted diligently, even if it had not, the Court retains discretion to permit amendment so long as BTA cannot establish significant prejudice.  *Commander Oil Corp.*, 215 F.3d at 333 (holding amendment to assert additional affirmative defense after a seven-year delay does not constitute an abuse of discretion absent prejudice).  BTA cannot establish significant prejudice under Rule 16 for the same reasons it cannot prove undue prejudice, including that amendment will not delay resolution or substantially increase costs.  (*See, e.g.*, *Scott*, 300 F.R.D. at 199-200 (single prejudice analysis for Rule 15 and 16); ECF 1058 at 6 (same)).  Thus, under either Rule 15 or Rule 16, Triadou's motion to amend should be granted.

## CONCLUSION

For the reasons set forth above, the Court should reconsider its holding that Triadou waived the defense of *in pari delicto* and permit Triadou to seek to prove the defense at trial.  In the alternative, the Court should permit Triadou to amend its answer to add the defense of *in pari delicto*.

Dated: New York, New York
April 12, 2021

Respectfully submitted,

**BLANK ROME LLP**

By: ___*/s/ Deborah A. Skakel*___
Deborah A. Skakel
Alex E. Hassid
Robyn L. Michaelson
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
dskakel@blankrome.com
ahassid@blankrome.com
rmichaelson@blankrome.com

*Counsel for Crossclaim Defendant*
*Triadou SPV S.A.*