UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

      Crossclaim Plaintiffs,

  - against -

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

      Crossclaim Defendants.

ECF Case
No. 1:15-cv-05345 (AJN) (KHP)

---

**DEFENDANT TRIADOU SPV S.A.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LIMITED RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND ITS ANSWER TO ADD THE DEFENSE OF *IN PARI DELICTO***

---

Dated: May 3, 2021

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Counsel for Crossclaim Defendant Triadou SPV S.A.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.      Triadou's Reconsideration Motion Is Properly Before the Court ...................................... 2

       A.      Triadou's Reconsideration Motion Is Properly Based on Controlling Factual Matters that Triadou Believes the Court Has Overlooked .................................................. 2

       B.      BTA's Failure To Obtain Evidence About Its Operations Before Fact Discovery Closed Confirms That Triadou Was Not on Notice of Its In Pari Delicto Defense Before September 2019 ....................................................................................................... 3

       C.      It Would Be Manifestly Unjust To Bar Triadou from Pursuing In Pari Delicto .... 6

II.      Triadou Has Satisfied Rules 15 And 16 Because It Has Shown Good Cause to Amend, BTA Will Suffer No Prejudice, And Triadou's Defense Is Not Futile ........................................... 7

       A.      Triadou Was Diligent in Asserting In Pari Delicto and in Seeking To Amend ...... 7

       B.      Amendment Would Not Prejudice BTA, and Triadou's Defense Is Not Futile ..... 9

CONCLUSION ........................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*,
  No. 09-CV-889 (NGG) (JMA), 2012 WL 4174862 (E.D.N.Y. Sept. 18, 2012) ........................8

*Catalano v. BMW of N. Am., LLC*,
  No. 15-CV-4889 (KBF), 2016 WL 3406125 (S.D.N.Y. June 16, 2016)..................................7

*Clarendon Nat'l Ins. Co. v. Hartford Ins. Co.*,
  No 94 CIV. 5529 (AGS), 1998 WL 230936 (S.D.N.Y. May 8, 1998)......................................6

*Ferrand v. Credit Lyonnais*,
  292 F. Supp. 2d 518 (S.D.N.Y. 2002)......................................................................................2

*Fox v. SUNY @ Stonybrook*,
  No. 05CV2350, 2006 WL 8439707 (E.D.N.Y. Oct. 17, 2006) ................................................3

*Hilt Constr. & Mgmt. Corp. v. Permanent Mission of Chad to United Nations in N.Y.*,
  No. 16 CV 6421 (VB), 2019 WL 3564571 (S.D.N.Y. Aug. 6, 2019), *appeal dismissed*..........7

*iMedicor Inc. v. Access Pharm., Inc.*,
  290 F.R.D. 50 (S.D.N.Y. 2013) ............................................................................................8, 9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  336 F.R.D. 400 (S.D.N.Y. 2020) .............................................................................................8

*Lichtenberg v. Besicorp Grp. Inc.*,
  28 F. App'x 73 (2d Cir. 2003) .................................................................................................2

*Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*,
  280 F. Supp. 2d 184 (S.D.N.Y. 2003)......................................................................................5

*Parker v. Columbia Pictures, Indus.*,
  204 F.3d 326 (2d Cir. 2000).....................................................................................................8

*In re Payroll Express Corp.*,
  No. 95 Civ. 4385 (SAS), 1997 WL 539777 (S.D.N.Y. Aug. 28, 1997) ...................................2

*In re Salander*,
  503 B.R. 559 (S.D.N.Y. 2013).................................................................................................6

*The Apollo Theater Found., Inc. v. W. Int'l Syndication*,
  No. 02 Civ. 10037 (DLC), 2005 WL 1041141 (S.D.N.Y. May 5, 2005) .................................8

*Turkenitz v. Metromotion, Inc.*,
   No. 97CIV2513(AJP)(JGK), 1997 WL 773713 (S.D.N.Y. Dec. 12, 1997) ...............................9

*Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*,
   No. 18 CIV. 10110 (PAE), 2020 WL 7401735 (S.D.N.Y. Dec. 17, 2020) ..............................6

*United States v. N.Y. Metro. Transp. Auth.*,
   No. CV 2004-4237 (SLT)(MDG), 2006 WL 708672 (E.D.N.Y. Jan. 12, 2006).......................6

*Williams v. Town of Hempstead*,
   No. 16-cv-1992 (ADS)(AYS), 2017 WL 4712219 (E.D.N.Y. Oct. 18, 2017) ..........................8

**Other Authorities**

Local Civil Rule 6.3 ......................................................................................................................2

Federal Rule of Civil Procedure 15 ..............................................................................................7

Federal Rule of Civil Procedure 16(b)..........................................................................................7

Triadou SPV S.A. ("Triadou") respectfully submits this reply memorandum in support of its motion for limited reconsideration of the Court's March 29 Order (ECF 1428), or, in the alternative, for leave to amend, and in response to BTA Bank's opposition (ECF 1443).[1]

## PRELIMINARY STATEMENT

The fundamental question underlying Triadou's motion for reconsideration and for leave to amend is one of fairness. BTA has asserted—and the Court has accepted—that BTA was unable to uncover evidence it claims is critical to its current theory of the case, including evidence about BTA's own operations, until after the close of fact discovery. Yet BTA now contends that Triadou should have gleaned this same information years before. This argument is ridiculously unreasonable. Triadou had good cause for not pleading *in pari delicto* earlier where the defense is based on evidence BTA unearthed after fact discovery closed; precluding Triadou from asserting an *in pari delicto* defense at trial based on that same information would be manifestly unjust.

BTA's strategy is to deflect from its own failure to timely obtain this evidence by pointing to other evidence that supports Triadou's *in pari delicto* defense. But BTA ignores that the September 2019 deposition testimony of its former employees was essential for putting that earlier discovery in context to establish *in pari delicto*, and overstates the information that was actually available to Triadou. None of the pre-September 2019 evidence provided the proof necessary for Triadou's *in pari delicto* defense because that evidence did not connect BTA's conduct to the 2004 timeframe, illustrate the benefits BTA received from the alleged scheme in which it participated, or offer sufficient context to connect documents to BTA's role.

A rational and reasonable view of the parties' conduct reveals that Triadou was diligent both in asserting *in pari delicto* and in moving to amend; Triadou did not seek or obtain a tactical

---

[1] Triadou uses here the same defined terms as in its Opening Brief (ECF 1432).

1

advantage in proceeding this way, it has not delayed and will not delay trial in this matter, and BTA cannot claim prejudice for a host of reasons, not least of which is that it does not need additional discovery of its own operations for trial. Further, the Court's ruling on Triadou's summary judgment motion effectively confirms that Triadou's defense is not futile. The Court should therefore reconsider its decision that Triadou waived *in pari delicto* or permit Triadou to amend so it may pursue the defense at trial.

## ARGUMENT

I.   **Triadou's Reconsideration Motion Is Properly Before the Court**

   A.   *Triadou's Reconsideration Motion Is Properly Based on Controlling Factual Matters that Triadou Believes the Court Has Overlooked*

Triadou's reconsideration motion is premised on important factual matters—BTA's late disclosure of trial witnesses and the testimony they provided in deposition that revealed an *in pari delicto* defense—that the Court appears to have overlooked. (ECF 1428 at 20-21). In arguing to the contrary, BTA ignores the plain language of Local Civil Rule 6.3, which allows parties to raise matters that were "overlooked"—meaning issues previously presented to the Court that may have gone unnoticed. BTA's cited cases confirm as much. *See, e.g.*, *Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2002) (movant must "demonstrate controlling law or factual matters *put before the court on the underlying motion* that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision") (emphasis added); *see also Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2003) (same). The standard thus permits (indeed, requires) that parties will seek reconsideration of matters already "put before" the Court—which BTA acknowledges is exactly what Triadou did here. (ECF 1443 at 14).[2]

---

[2] BTA cites *In re Payroll Express Corp.*, No. 95 Civ. 4385 (SAS), 1997 WL 539777, at *1 (S.D.N.Y. Aug. 28, 1997), for the proposition that all materials submitted on a motion "are presumed to have been considered by the Court," (ECF 1443 at 13), but presumptions are rebuttable. Further, Local Civil Rule 6.3 requires only that counsel raise matters it "believes" may have been overlooked; the Court is best suited to

2

Further, Triadou's belief that the Court overlooked these important facts is reasonable based on the March 29 Order's limited discussion of the "posture" behind Triadou's assertion of *in pari delicto* and its lone citation to Triadou's most recent answer, which was filed months *before* the September 2019 depositions took place. (*See* ECF 1428 at 20).

    B.    *BTA's Failure To Obtain Evidence About Its Operations Before Fact Discovery Closed Confirms That Triadou Was Not on Notice of Its In Pari Delicto Defense Before September 2019*

Trying to rebut the significance of its post-discovery evidence to Triadou's *in pari delicto* defense, BTA points to its Crossclaims, a few documents out of the more than the 60,000 it produced, and single-spaced lists of nearly 200 witnesses—materials that contain little or no substantive information. (Perhaps that is why BTA did not raise these points originally.) Its argument that these materials somehow put Triadou on notice of its *in pari delicto* defense is also incorrect. Most importantly, the argument ignores that despite having even more information much earlier than Triadou, BTA itself failed to pinpoint that these documents and witnesses were key to its current theory of the case until after discovery closed. BTA did not make the connection until October 2018 in response to Triadou's final discovery demands (even though BTA long knew of those documents and witnesses), when it disclosed as trial witnesses two of the "very witnesses" in its discovery responses to explain the Tradestock Spreadsheets, the alleged roundtripping scheme, and UKB6. (*See* ECF 1146 at 1-2; ECF 1160; ECF 1443 at 16).[3] BTA even admitted that it had not realized "the importance" of its late-disclosed witnesses until late 2018, a representation

---

evaluate whether it overlooked any facts. And while any reconsideration motion reflects "disagreement" with a court, Triadou's disagreement is not the type prohibited under the reconsideration standard. *See Fox v. SUNY @ Stonybrook*, No. 05CV2350 (ADS), 2006 WL 8439707, at *2 (E.D.N.Y. Oct. 17, 2006) (rejecting motion as a mere "disagreement" where it disputed the district court's ruling on a legal issue that had not been addressed by the Supreme Court or the Second Circuit).

[3] BTA then substituted two *more* witnesses when they determined that one of their late-disclosed witnesses was unavailable; and later announced it planned to take trial depositions of these witnesses, despite having represented they would be available for trial. (*See* ECF 1146 at 1-2; ECF 1160).

3

Judge Parker credited. (ECF 1101 at 20). If, as BTA claims, it was diligent in pursuing this evidence but did not recognize the import of it earlier, how can Triadou be held to a different standard when (unlike BTA) Triadou did not have that information to begin with?

As to the Crossclaims, its allegations citing only a few paragraphs of an unspecified, undated, and unattached U.K. Judgment did not put Triadou on notice of its *in pari delicto* defense. (ECF 49, ¶¶ 51, 53, 55). Triadou was not a party to the U.K. proceedings that gave rise to the 351-paragraph decision, the Crossclaims do not mention the portions of the decision BTA admits merely "suggests the possibility" of a "possibility" of *in pari delicto* (ECF 1443 at 16), and Triadou lacks access to much of the evidence submitted in the U.K., (*see e.g.*, ECF 693 at 3 n.4 (filed under seal); ECF 1442-3 at 281 (evidence in U.K. proceedings subject to confidentiality restrictions). The actual allegations in BTA's pleading focus on Ablyazov's conduct, not BTA's involvement, (*see* ECF 1443 at 16), which was likely done to avoid being dismissed on *in pari delicto* grounds.

Next, BTA offers the non-sequitur that because Triadou's summary judgment argument concerning *in pari delicto* relied on documents that were produced as of August 2017, Triadou had notice of the defense at the time those documents were produced. (ECF 1443 at 15). But the substance of the documents—which encompass only a few of the more than 39,000 documents and 231,000 pages BTA produced through August 2017 (thousands of which were in a foreign language)—did not indicate that BTA was *in pari delicto* until its former employees explained the documents and BTA's processes in September 2019. The Tradestock Spreadsheets offer a good example of this; they list only transfers of funds, not information about BTA's activities. The September 2019 testimony explained how the documents were prepared and for what purposes, how UKB6 and Tradestock (and others) were connected, how transfers to those companies were authorized and tracked, and how BTA benefitted from UKB6's work. (*See* ECF 1432 at 4, 9-10).

4

Crucially, the September 2019 testimony also linked BTA's conduct to the 2004 transactions that are now the focus of this case by confirming that UKB6 was active in 2004 (before Ablyazov was Chairman) and by confirming that *BTA benefitted* from Ablyazov's alleged scheme.[4] Because *in pari delicto* "bars recovery for a plaintiff who is 'an active, voluntary participant in the unlawful activity that is the subject of the suit,'" *Nomura Securities International, Inc. v. E\*Trade Securities, Inc.*, 280 F. Supp. 2d 184, 200-01 (S.D.N.Y. 2003) (citation omitted), the September 2019 testimony was essential to establishing Triadou's defense.[5]

Nor did BTA's Rule 26 disclosures or October 2016 responses to an interrogatory by the Khrapunovs put Triadou on notice of its defense. BTA's initial disclosures identified 30 witnesses (amended up to 48 witnesses) with only the most meager statement of their knowledge, (ECF 1443-5 at 5 ("*Mukhtar Ablyazov's conduct* as Chair of BTA Bank.") (emphasis added)), while its interrogatory response listed 187 individuals with no substance whatsoever about what those individuals might know, (ECF 1443-6 at 5-10).[6] BTA's argument that these witnesses were "relevan[t] to the case" is immaterial because the question here is relevance to a potential defense.

---

[4] Other evidence that BTA cites, specifically the testimony of its Rule 30(b)(6) witness and Ablyazov, do not establish these important points, particularly as to the 2004 time period and the benefits that accrued to BTA (as opposed to Ablyazov). (*See* ECF 1442-3; ECF 1442-4). As Triadou noted in its opening brief, this was the first time such evidence came out in discovery.

[5] Triadou's reference to its unclean hands defense on summary judgment does not prove it had notice of the facts underlying *in pari delicto* before September 2019. BTA even admits that its argument speculates as to the basis for Triadou's unclean hands defense, (*see* ECF 1443 at 15-16 ("Triadou has never explained a different factual basis for its unclean hands defense"), which Triadou asserted based on publicly available information about BTA's (and Almaty's) political motivations in pursuing this lawsuit (and others). BTA never asked Triadou about the basis for its unclean hands defense. In any event, if BTA believed that Triadou's unclean hands defense applied to the same conduct implicated by Triadou's *in pari delicto* defense, then BTA cannot claim prejudice if *in pari delicto* is added.

[6] None of Judge Parker's findings concerning BTA's late-disclosed witnesses related to Triadou's *in pari delicto* defense. (*See* ECF 1443 at 22, 24). Judge Parker found that Triadou should have recognized the late disclosed witnesses were relevant—a conclusion with which Triadou continues to disagree—but the Magistrate Judge clearly recognized that Triadou lacked information about what relevant information those witnesses might have (nor was the question even before her whether those witnesses had information relevant to *in pari delicto*). (*See* ECF 1101 at 19, 21). Had Judge Parker believed Triadou would not be prejudiced by BTA's late disclosure, she would not have ordered the September 2019 depositions.

5

It would be unreasonable to blame Triadou for not ferreting out whom to depose from among 200 individuals to develop a defense that was not apparent in the Crossclaims.

C. *It Would Be Manifestly Unjust To Bar Triadou from Pursuing In Pari Delicto*

BTA's argument that allowing Triadou to amend would create (not prevent) manifest injustice rehashes its argument that Triadou "could have developed the facts underlying its *in pari delicto* defense much sooner than September 2019." (ECF 1443 at 16). But that implicitly concedes that the record did not contain the evidence needed for Triadou's defense before September 2019.[7]

Moreover, none of BTA's cited cases support barring Triadou from pursuing *in pari delicto*. While BTA posits that those cases reflect that courts in this Circuit "routinely uphold the general rule that an affirmative defense that is not pled is waived," (ECF 1443 at 18), they ignore that in each case, the court *also* found the unpled defense would have been futile.[8] In contrast, the March 29 Order did not find Triadou's defense was futile, and in fact found that questions of fact precluded summary judgment on it.

Moreover, BTA misses the mark in arguing that Triadou's cited cases are inapposite. (ECF 1443 at 19). While those cases do not address situations where the defense was not pled, they do confirm New York's strong interest in applying *in pari delicto*. If New York does not want the doctrine to be weakened by exceptions, it stands to reason that its interest in applying the

---

[7] BTA also points to Triadou's knowledge of individuals and entities that allegedly received BTA funds, such as Tradestock, Frank Monstrey, Zhaikmunai, and Northern Seas Waterage, (ECF 1443 at 17), but none could have alerted Triadou to *in pari delicto* because the defense is not based on what happened to the money after BTA loaned it.

[8] *Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, No. 18 CIV. 10110 (PAE), 2020 WL 7401735, at *22 (S.D.N.Y. Dec. 17, 2020) (finding plaintiff's alleged conduct did not "come close" to the level needed to support unpled unclean hands defense); *In re Salander*, 503 B.R. 559, 569-70 (S.D.N.Y. 2013) (order concerning unpled *in pari delicto* defense not on appeal, and in any event, debtor was not alleged to have "engaged in any misconduct" that would support the defense); *Clarendon Nat'l Ins. Co. v. Hartford Ins. Co.*, No 94 CIV. 5529 (AGS), 1998 WL 230936, at *2 (S.D.N.Y. May 8, 1998) (finding, in response to assertion of estoppel defense, that "insurance coverage cannot be created by estoppel"); *United States v. N.Y. Metro. Transp. Auth.*, No. CV 2004-4237 (SLT)(MDG), 2006 WL 708672, at *2 (E.D.N.Y. Jan. 12, 2006) (unpled affirmative defenses would not have applied against Government even if they had been pled).

6

doctrine is strong enough to permit a defendant to assert *in pari delicto* where the critical information relevant to the defense came into the record late due to the plaintiff's late disclosures.

**II.     Triadou Has Satisfied Rules 15 And 16 Because It Has Shown Good Cause to Amend, BTA Will Suffer No Prejudice, And Triadou's Defense Is Not Futile**

BTA's attempt to recast Triadou's motion to amend as an end run around reconsideration seeks to strip Triadou of its procedural rights under the Federal Rules of Civil Procedure. (*See* ECF 1443 at 20). In the March 29 Order, the Court acknowledged it "might have discretion" to overlook that Triadou did not plead *in pari delicto*, but declined to exercise that discretion to grant summary judgment on the basis of the defense. (ECF 1428 at 20). Unlike the cases BTA cited,[9] Triadou's motion to amend does not address the same legal issue the Court considered in finding that Triadou "waived" *in pari delicto*—i.e., whether Triadou could move on the unpled defense. Put another way, Triadou has not previously moved to amend, and the Court did not consider Rules 15 or 16 in the March 29 Order, so there can be no reconsideration of an issue that has yet to be considered.

   **A.     *Triadou Was Diligent in Asserting In Pari Delicto and in Seeking To Amend***

Triadou has carried its burden under Rule 16(b) to establish good cause for its requested amendment because Triadou was diligent in seeking to amend.

Initially, evidence adduced during discovery did not provide Triadou notice of its *in pari delicto* defense prior to September 2019. *See supra* pp.3-5, 6 n.7. BTA effectively admits that the evidence it now highlights merely "suggests the possibility" of a "possibility" that Triadou could pursue additional discovery, not that this evidence established that BTA was *in pari delicto*. (*See* ECF 1443 at 15-16, 22). In contrast, BTA's cited cases involve parties (mostly plaintiffs) who

---

[9] *Catalano v. BMW of N. Am., LLC*, No. 15-CV-4889 (KBF), 2016 WL 3406125, at *2 (S.D.N.Y. June 16, 2016) (treating a second motion to dismiss the same legal claim as a de facto reconsideration motion); *see also Hilt Constr. & Mgmt. Corp. v. Permanent Mission of Chad to United Nations in N.Y.*, No. 16 CV 6421 (VB), 2019 WL 3564571, at *2 (S.D.N.Y. Aug. 6, 2019), *appeal dismissed* (Oct. 28, 2019) (treating as a motion for reconsideration a post-trial motion seeking to revisit the admission of certain evidence).

7

sought to add claims based on information they possessed before they brought suit.[10] Even BTA's cited cases recognize there is good cause to allow amendment after a court-ordered deadline where "new information collected during discovery reveal[s] a new basis for bringing new or refined claims." *Williams v. Town of Hempstead*, No. 16-cv-1992 (ADS) (AYS), 2017 WL 4712219, at *3 (E.D.N.Y. Oct. 18, 2017) at *3.[11]

BTA's only new argument here is that Triadou was not diligent because it did not move to amend immediately after the September 2019 depositions. (ECF 1443 at 21-23). But Triadou already addressed this point in its Opening Brief. (*See* ECF 1432 at 4-5, 10). Shortly after the 2019 depositions, the parties requested and received a summary judgment briefing schedule, at which time Triadou planned to raise *in pari delicto* (based on law that permitted it to do so). Before that could happen, the Court, of its own accord, adjourned the summary judgment deadline because "the outcome of [then] pending motions may affect the nature and scope of the forthcoming [summary judgment] motions." (ECF 1210). Thus, unlike the situation in *iMedicor Inc. v. Access Pharmaceuticals, Inc.*, 290 F.R.D. 50, 52-53 (S.D.N.Y. 2013), the Court imposed the delay for judicial economy. After those pending motions were decided, Triadou filed its summary judgment

---

[10] *Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000) (denying plaintiff's motion to amend because he learned basis of his claim when he received documentation of the leave policy in question during his employment and again when his employment was terminated, both before his suit was filed); *Williams v. Town of Hempstead*, No. 16-cv-1992 (ADS)(AYS), 2017 WL 4712219, at *3 (E.D.N.Y. Oct. 18, 2017) (motion to amend denied where plaintiff sought to add a new party based on information already in his complaint); *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, No. 09-CV-889 (NGG) (JMA), 2012 WL 4174862, at *10 (E.D.N.Y. Sept. 18, 2012) (denying motion to amend where the basis for plaintiff's new claim was known to it years before litigation began through letters exchanged with defendant and where claim was futile); *The Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02 Civ. 10037 (DLC), 2005 WL 1041141, at *19 (S.D.N.Y. May 5, 2005) (denying motion to amend where plaintiff's complaint revealed it had the information underlying its new claim before the action began); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 407-08 (S.D.N.Y. 2020) (denying motion to amend where defendant knew of his unpled release defense years before litigation because defendant signed settlement agreement with the release).

[11] Even under BTA's framework, Triadou could not have amended by August 28, 2016 (the Court's scheduled deadline) because discovery had not even begun in earnest by that point. (*See, e.g.*, ECF 1443 at 5-8 (referring to discovery obtained after deadline)). The appropriate date to consider when evaluating Triadou's diligence is therefore September 2019.

motion (in which it asserted *in pari delicto*) consistent with the Court's deadline.[12]

Triadou did not take this approach to obtain a tactical advantage (and it did not receive one). Triadou's approach was legally supported, (ECF 1287 at 37 n.24), and allowed summary judgment to proceed on the Court's appointed schedule (Triadou twice agreed to extend BTA's time to oppose). While the Court chose not to exercise its discretion to allow Triadou to assert *in pari delicto* on summary judgment, doing so is not equivalent to finding a lack of diligence. And when summary judgment was denied, Triadou moved promptly for reconsideration and to amend. Triadou was diligent and, unlike the movants in BTA's cited cases, has a reasonable explanation for how it proceeded. *See, e.g.*, *Turkenitz v. Metromotion, Inc.*, No. 97CIV2513(AJP) (JGK), 1997 WL 773713, at *10 (S.D.N.Y. Dec. 12, 1997) (plaintiff provided no explanation for why her unjust enrichment claim could not have been pled when she filed her original complaint or her delay in moving to amend until after the court-imposed deadline).

> B.   *Amendment Would Not Prejudice BTA, and Triadou's Defense Is Not Futile*

At bottom, BTA's claim of prejudice is due more to the strength of Triadou's defense than any genuine concern about evidence it will want to develop to meet the defense. The sworn declaration of BTA's counsel, which it cites here in pointing to speculative discovery it would hope to obtain, (ECF 1443 at 24), puts the lie to BTA's prejudice arguments. Counsel argued that BTA "had no reason to develop the discovery record with respect to unclean hands," which Triadou did plead, because unclean hands was futile where all remaining claims are legal, not equitable. (ECF 1356, ¶ 221). This position is meritless. Two of BTA's remaining claims, unjust enrichment and constructive trust, either have equitable components or are equitable in nature, so unclean hands applies to both. BTA also admitted on summary judgment that it sought equitable

---

[12] The claims the plaintiff sought to add in *iMedicor* arose out of the same facts as those underlying the plaintiff's existing claim—i.e., the information was already in the plaintiff's possession. 290 F.R.D. at 53.

relief in connection with its fraudulent conveyance claims, (ECF 1363 at 44), which were not dismissed until September 30, 2019, *more than a year after fact discovery closed*. (ECF 1171). Further, if BTA interpreted Triadou's unclean hands defense as applying to the same conduct as its *in pari delicto* defense, then both defenses would have warranted similar investigation during fact discovery. BTA's failure to pursue that discovery is prejudice of its own making.

In any event, BTA cannot reasonably contend that it has no avenue to obtain additional testimony to defend against *in pari delicto* at trial where it has continually represented to the Court that Triadou could have obtained *in pari delicto*-related discovery from witnesses who are still on BTA's Rule 26 disclosures. (*See* ECF 1442-5 at 5). This same fact also confirms that no further discovery is required because, again, BTA can obtain the evidence from witnesses it has already disclosed for trial. Nor does BTA's inability to obtain discovery from former employees have anything to do with the timing of Triadou's motion to amend, (ECF 1443 at 24 (quoting *iMedicor*, 290 F.R.D. at 54)); even before the September 2019 depositions, BTA had to replace one of its late disclosed witnesses (Duysenbina) because she was unavailable for trial. (ECF 993 at 45). As a practical matter, that BTA could identify sufficient evidence to defeat summary judgment on *in pari delicto* grounds also undermines its claim of prejudice absent further discovery. And because no further discovery is required, BTA will suffer no prejudice if Triadou's motion is granted.

Perhaps sensing its futility argument is, well, futile, BTA spends a paragraph trying to predict the Court's ruling based on evidence that may not exist. This argument can be disregarded. In the March 29 Order, the Court considered the evidence on *in pari delicto* and found that genuine factual disputes preclude summary judgment. Taking that same evidence in the light most favorable to Triadou, as the futility analysis requires for a hypothetical motion by BTA for summary judgment, the March 29 Order's findings suggest the result would be the same.

## CONCLUSION

For the reasons set forth above and in Triadou's opening motion, the Court should reconsider its holding that Triadou waived its *in pari delicto* defense and permit Triadou to seek to prove the defense at trial. In the alternative, the Court should permit Triadou to amend its answer to add the defense of *in pari delicto*.

Dated: New York, New York
       May 3, 2021

Respectfully submitted,

**BLANK ROME LLP**

By:    */s/ Deborah A. Skakel*
       Deborah A. Skakel
       Alex E. Hassid
       Robyn L. Michaelson
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
dskakel@blankrome.com
ahassid@blankrome.com
rmichaelson@blankrome.com

*Counsel for Crossclaim Defendant Triadou SPV S.A.*