```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ____11/5/21____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

City of Almaty, Kazakhstan, *et al.*,

               Plaintiffs,

       –v–

Mukhtar Ablyazov, *et al.*,

             Defendants.

---

15-cv-5345 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

      Before the Court is Triadou's motion for reconsideration of the Court's Opinion and Order dated March 29, 2021. Specifically, Triadou requests reconsideration of the Court's conclusion that Triadou waived an *in pari delicto* defense to BTA's claims or, in the alternative, requests leave to amend its answer to include such a defense. For the following reasons, the Court DENIES Triadou's motion.

## I. Background

      The Court assumes the parties' familiarity with this long-running litigation. In brief, the City of Almaty and BTA Bank (collectively, "the Kazakh Entities") seek to recover funds allegedly embezzled in Kazakhstan and laundered in the United States. The Kazakh Entities allege that some of these funds went to Triadou SPV S.A., against whom the Kazakh Entities alleged claims for unjust enrichment and conversion, among other claims. Third Am. Crossclaims ¶¶ 141–47, Dkt. No. 1094. Many of the Kazakh Entities' allegations concern the Flatotel, "a project to convert a former hotel in Manhattan into luxury condominium apartments and office and retail space," in which Triadou invested approximately $35 million. Summary

Judgment Opinion and Order ("SJ Op.") at 9–10, Dkt. No. 1428.  According to the Kazakh

Entities, those funds were misappropriated from BTA through a fraudulent loan made at Mukhtar

Ablyazov's direction by a department of BTA known as UKB6 to a company named Tradestock,

which Ablyazov controlled.  *Id.* at 4, 6, 10.  From Tradestock, the funds were transferred through

a series of intermediaries to Triadou.  *Id.* at 6–7.

       The Court on March 29, 2021, granted Triadou's motion for summary judgment on the

City of Almaty's claims but denied summary judgment as to BTA's claims, which the Court

found were supported by sufficient evidence to raise a triable question of fact.  *Id.* at 25.  Triadou

had argued in its brief in support of summary judgment that the doctrine of *in parti delicto* barred

BTA's recovery because "BTA was 'an active, voluntary participant' in the alleged conduct

about which it now complaints."   Dkt. No. 1297 at 38–39 (quoting *Pinter v. Dahl*, 486 U.S.

622, 636 (1988)).  In support, Triadou pointed to deposition testimony that BTA officials were

aware of UKB6's activities, including the allegedly fraudulent loan to Tradestock.  *Id.* at 39.  The

Court denied this basis for summary judgment.  First, "Triadou did not raise this [*in pari delicto*]

defense in its answer" and the Court declined to exercise its discretion to overlook that waiver.

SJ Op. at 20 (citing Dkt. No. 1112).  Second, putting waiver aside, the Court found "genuine

factual disputes both as to the degree of BTA's participation in the alleged wrongdoing and the

applicability of the adverse interest exception" to the *in pari delicto* defense.  *Id.* at 20–21.

       In a separate order dated March 29, 2021, the Court administratively denied outstanding

motions to exclude expert testimony because there was significant doubt as to which, if any, of

BTA's claims against Triadou could be tried before a jury.  Dkt. No. 1421.  Upon additional

briefing from the parties, the Court on May 20, 2021, concluded that at least "BTA's claims for

conversion and unjust enrichment should be tried to a jury." Dkt. No. 1451. A jury trial is tentatively scheduled for February 7, 2022. Dkt. No. 1452.

Triadou on April 12, 2021, filed a motion for reconsideration of the Court's conclusion as to its *in parti delicto* defense. Triadou Br., Dkt. No. 1432. Triadou clarified that it did not seek reconsideration of the Court's denial of summary judgment but "only of the Court's finding of waiver" so that Triadou may argue the defense at trial. *Id.* at 5. In the alternative, Triadou requests leave to amend its answer to add an *in pari delicto* defense. *Id.* at 2. The motion is fully briefed. BTA Resp., Dkt. No. 1443; Schwartz Decl., Dkt. No. 1442; Triadou Reply, Dkt. No. 1445.

## II.   Legal standard

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3 govern motions for reconsideration. These rules are intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (citation and internal quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (citation and internal quotation marks omitted)). "A motion for

reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).  The decision whether to grant such a motion "rests within the sound discretion of the district court." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

Rule 15(a) provides that leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "the Court has broad discretion in deciding whether or not to grant such a request."  *St. Clair Shores Gen. Empls. Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010) (citations and quotation marks omitted).  Factors that are relevant to the exercise of the Court's discretion include: (1) the presence of bad faith, dilatory motives, or undue delay on the part of the movant; (2) the movant's repeated failure to cure deficiencies by amendments previously allowed; (3) the potential for undue prejudice to an opposing party; and (4) whether the sought-after amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Guan N. v. NYC Dep't of Educ.*, No. 11-CV-4299 (AJN), 2013 WL 3819609, at *1 (S.D.N.Y. July 23, 2013).

Additionally, when granting a motion to amend would also require altering an existing scheduling order, Rule 16(b) requires the moving party to demonstrate "good cause.".  Rule 16(b)(4); *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No. 08 CIV. 3697LTSFM, 2009 WL 2432729, at *2 (S.D.N.Y. July 31, 2009), *objections overruled*, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010) ("Rule 16(b) is designed to create certainty in pretrial proceedings and ensure that 'at some point both the parties and the pleadings will be fixed.'" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000))).  "Whether 'good cause' exists turns

4

primarily on the 'diligence' of the moving party in seeking to meet the deadline in the scheduling

order." *Id.* (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir.

2007)).  "Although a court also may consider whether the amendment will prejudice the non-

moving party, the mere absence of prejudice is not sufficient to satisfy the good cause

requirement of Rule 16(b)." *Id.*

## III.    Discussion

As a preliminary matter, Triadou in its motion does not dispute that it did not raise an *in*

*pari delicto* defense in its answer to BTA's third amended crossclaims.  Nor could it argue as

much.  Triadou's answer raised as an affirmative defense "the doctrine of unclean hands," Dkt.

No. 1112 ¶ 166, but did not mention the doctrine of *in pari dilecto*.  "Although the doctrines of

unclean hands and *in pari delicto* are often mentioned in the same breath, they are 'distinct terms

for . . . distinct situations.'"  *Republic of Iraq v. ABB AG*, 768 F.3d 145, 168 (2d Cir. 2014)

(quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 153 n.1 (1968) (Harlan, J.,

concurring in part and dissenting in part)); *accord* Triadou Br. at 17 n.8 (referring to the defense

of unclean hands as "a similar doctrine").

Rather, Triadou raises two bases for reconsideration.  First, it argues that the Court

overlooked critical facts behind "how Triadou's *in pari delicto* defense came into the record."

Triadou Br. at 8.  Second, it argues that "it would be manifestly unjust" to bar Triadou from

raising an *in pari delicto* defense based on the same facts that BTA used to defeat Triadou's

motion for summary judgment and that BTA will use at trial.  *Id.* at 10.  The Court, Triadou

continues, may consider an *in pari delicto* defense on summary judgment even if it is not pled in

the answer.  *Id.* at 9 (citing *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir.

2000)).  And, as an alternative form of relief, Triadou requests leave to amend its answer under

Federal Rule of Civil Procedure 15(a), arguing that it has acted diligently and in good faith and that BTA would not suffer any prejudice from amendment.  *Id.* at 12.

The Court first reiterates that it has discretion to consider Triadou's affirmative defense offered for the first time on summary judgment.  SJ Op. at 20.  But Triadou misstates the law in suggesting that leave to amend is an alternative means to excuse Triadou's waiver of an affirmative defense.  Instead, when a defendant fails to plead an affirmative defense in its answer, "the district court has the discretion to entertain the defense when it is raised in a motion for summary judgment, *by construing the motion as one to amend the defendant's answer*."  *Monahan*, 213 F.3d at 283 (emphasis added) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, No. 01-CV-1909 (KMW), 2009 WL 464946, at *6 (S.D.N.Y. Feb. 25, 2009).  In other words, Triadou's "alternative" request is its only basis of relief.  The Court therefore construes Triadou's motion as a request for reconsideration of the Court's denial of leave to amend to add an *in pari delicto* defense.  Upon careful reconsideration, the Court again denies that leave.

*First*, reconsideration is unjustified because the Court did not overlook any facts sufficient to justify reconsideration.  Triadou contends that the Court overlooked the fact that Triadou learned of the relevant facts only during depositions of BTA employees taken in September 2019, after it filed its answer to BTA's third amended crossclaims.  Triadou Br. at 2–5, 7–10.  It emphasizes, for example, that BTA's crossclaims do not reference UKB6, Tradestock, or Ablyazov's activities prior to becoming Chairman in 2005.  *Id.* at 10.  Triadou argues that BTA now seeks to advance at trial a new, "unpled theory of its case." *Id.* at 6.

But the Court already concluded that Triadou had "fair notice of BTA's claims" as presented at summary judgment.  SJ Op. at 21.  The major difference between BTA's third

amended crossclaims and its statement provided under Local Rule 56.1 is that its Rule 56.1 statement focused on a loan made in July and August 2004, before Ablyazov was Chairman of BTA.  *Id.* at 22.  The Court characterized this difference as a "minor factual discrepancy" that did not "deprive Triadou of fair notice."  *Id.*  Having reviewed Triadou's briefing, the Court reaffirms that conclusion.  And because the Court did not "overlook[ ]" these facts, they are an inadequate basis for reconsideration.  *Shrader*, 70 F.3d at 257.

Triadou responds that it could not have notice of its *in pari delicto* defense prior to the September 2019 depositions.  The Court disagrees.  First, the Court finds that the third amended crossclaims on their face provided Triadou adequate notice that it may have a viable *in pari delicto* defense, even if additional discovery was "essential to establishing Triadou's defense" for purposes of summary judgment and convincing a jury at trial.  Triadou Reply Br. at 5; *see Panzella v. Cnty. of Nassau*, No. 13-CV-5640 (SJF), 2015 WL 224967, at *3 n.2 (E.D.N.Y. Jan. 15, 2015) (stating that affirmative defenses may be "conclusory" and need not satisfy the plausibility standard required for plaintiffs' claims).  Second, as Judge Parker observed in July 2019, the witnesses deposed in September 2019 had been disclosed to Triadou as early as October 2016 and so were "not unknown to Triadou."  Dkt. No. 1101 at 19 ("To start, the witnesses were identified in Plaintiffs' responses to the Khrapunovs' interrogatories in October of 2016. . . . Triadou could have, and should have, determined who each person was.").  And third, the witnesses' description of BTA's internal procedures for making loans, including the Credit Committee's oversight of UKB6, was extensively detailed in a publicly available U.K. judgment in 2013.  *E.g.*, Schwartz Decl., Ex. A ¶¶ 184, 186, 257.  BTA quoted language from that judgment in its initial crossclaims against Triadou filed October 12, 2015, Dkt. No. 49, and its third amended crossclaims contained several block quotes from the judgment, Third Am.

Crossclaims ¶¶ 29, 31, 33.  This provided Triadou adequate notice of the facts necessary to raise

its *in pari delicto* defense prior to the September 2019 depositions.  *Cf. BankUnited, N.A. v.*

*Merritt Env't Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) ("To be incorporated

by reference, the complaint must make 'a clear, definite and substantial reference to the

documents.'" (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y.

2010))).[1]  And fourth, depositions taken prior to September 2019 established that UKB6 could

not have issued any fraudulent loans without the Cred Committee's approval, which similarly

provided Triadou notice of its potential *in pari delicto* defense.  *E.g.*, Schwartz Decl., Ex. C at

279–81 (deposition of BTA's Rule 30(b)(6) witness dated May 3, 2017) (describing UKB6's role

in the alleged fraud); Schwartz Decl., Ex. B at 144–45, 163, 167 (deposition of Ablyazov dated

October 30, 2018).[2]

      Nor has Triadou demonstrated that holding Triadou to its waiver would result in manifest

injustice.  Triadou had the opportunity to raise its defense in a timely manner but did not.  It may

of course at trial rely on facts obtained during the September 2019 depositions, just as BTA may,

those facts simply do not justify amending its answer.[3]

---

[1] Triadou's notice is not defeated by the fact that it was not a party to the U.K. adjudication and so lacked access to the evidence underlying the U.K. judgment.  *Contra* Triadou Reply Br. at 4.

[2] Triadou's apparent answer to this testimony is that ~~the testimony~~it did not expressly state that BTA benefitted from the UKB6 loans.  Triadou Reply Br. at 5 n.4.  The Court finds this fine distinction to be inadequate, as Triadou had available to it testimony that, for example, "at least 100 people" in BTA's management were involved in the decision to issue these loans, which plainly supports an inference of benefit to BTA.  Ablyazov Dep. at 167.

[3] Additionally, for the reasons that BTA would suffer prejudice from an amendment, the Court finds a significant risk of injustice if it did reconsider its prior order and permit Triadou to add the defense.

*Second*, Triadou argues that the Court should excuse its waiver and permit amendment because New York has a "strong interest in preventing wrongdoers from profiting from their own misconduct."  Triadou Br. at 11 (citing, e.g., *Kirschner v. KPMG*, 15 N.Y.3d 446 (2010)).  But the case law that Triadou cites stands for the principle that courts should not permit the *in pari delicto* defense to be "weakened by exceptions."  *Kirschner*, 15 N.Y.3d at 464 (quoting *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470 (1960)).  At issue here is not a substantive exception to the scope of the *in pari delicto* defense but instead a bedrock rule of civil procedure that affirmative defenses not raised in the answer are typically waived.  *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (citing Fed. R. Civ. P. 8(c)).  Enforcing that rule is not inconsistent with New York's interest in construing broadly the scope of the *in pari delicto* defense.

*Third*, granting Triadou leave to amend its answer would significantly prejudice BTA. This case was filed more than six years ago, fact discovery closed on October 31, 2018, and trial is scheduled for February 2022.  BTA, in a sworn affidavit, identified with particularity the additional third-party discovery it would have conducted had Triadou timely raised an *in pari delicto* defense and it explained why that discovery would now be difficult and time intensive to complete.  Schwartz Decl. ¶¶ 223–39, Dkt. No. 1356.  In particular, BTA avers that because it was nationalized in 2009, it no longer has control over any of the former BTA employees that would be relevant witnesses, such as former members of the Credit Committee.  *Id.* ¶¶ 224, 226. While delay "is generally not, in and of itself, a reason to deny a motion to amend," the Court may deny such a motion "when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed."  *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997).  An amendment that would require "significant additional resources

to conduct discovery" or "significantly delay the resolution of the dispute," as true here, supports a finding of prejudice. *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block*, 988 F.2d at 350). That is particularly so when, as here, "discovery has closed" and trial is "imminent." *Turkenitz v. Metromotion, Inc.*, No. 97-CIV.-2513 (AJP) (JGK), 1997 WL 773713, at *9 (S.D.N.Y. Dec. 12, 1997); *see also Ruotolo*, 514 F.3d at 192. Because of Triadou's undue delay in failing to raise its *in pari delicto* defense earlier and the prejudice that it would cause BTA, the Court again denies Triadou leave to add an *in pari delicto* defense. *See Guan N.*, 2013 WL 3819609, at *1.

*Fourth*, even if leave to amend under Rule 15(a) were proper, the Court would additionally deny Triadou relief because it has not satisfied Rule 16(b)'s stricter "good cause" standard necessary to alter the Court's existing scheduling order. *See Parker*, 204 F.3d at 340. Most importantly, the Court finds that "the primary consideration," whether Triadou can demonstrate its diligence, is not satisfied. *Kassner*, 496 F.3d at 244. As explained, the Court finds that Triadou "knew or should have known the facts" necessary to plead an *in pari delicto* defense prior to September 2019. *Cummins, Inc. v. N.Y. Life Ins.*, No. 10-CV-9252 (TPG), 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012). That Triadou later learned additional details that further support such a defense falls short of demonstrating good cause. *The Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02 CIV.10037(DLC), 2005 WL 1041141, at *19 (S.D.N.Y. May 5, 2005).

The Court also considers as part of good cause "the interests of justice to be served by the amendment, considerations of judicial efficiency, and any prejudice to the opposing side," *Hnot v. Willis Grp. Holding Ltd.*, No. 01 CIV. 6558 (GEL), 2004 WL 1794493, at *1 (S.D.N.Y. Aug. 10, 2004); *see also Kassner*, 496 F.3d at 244. As explained, BTA would suffer significant

10

prejudice because it has not been provided the opportunity to conduct discovery on Triadou's *in pari delicto* defense and reopening discovery now, as the parties prepare for trial, would entail significant costs and delay.  These costs and delays also implicate interest of justice and judicial efficiency.  The Court therefore concludes that Triadou has not demonstrated good cause necessary under Rule 16(b).

Putting Triadou's requests aside, the Court notes that BTA must still prove the elements of its claims against Triadou by a preponderance of the evidence.  To prove unjust enrichment under New York law, "a plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (cleaned up); *see also* N.Y. Pattern Jury Instrs. Civil § 4:2 ("Unjust enrichment occurs when one person has obtained money, property or a benefit from . . . another person under such circumstances that, in fairness and good conscience, the money, property or benefit should not be retained.").  While Triadou has waived *in pari delicto* as an affirmative defense, "the concept underlying the *in pari delicto* defense" may be "illuminating" to determine whether "equity and good conscience" require restitution.  *Cobalt Multifamily Invs. I, LLC v. Arden*, 857 F. Supp. 2d 349, 363–64 & n.9 (S.D.N.Y. 2011).

## IV.   Conclusion

For the reasons above, the Court DENIES Triadou's motion for reconsideration.  This resolves docket number 1431.

SO ORDERED.

Dated: November 5, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge