UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CITY OF ALMATY, KAZAKHSTAN and BTA
BANK JSC,

                                        Plaintiffs,

                        -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV,
ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

                                        Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/4/2022

**ORDER ON ATTORNEYS' FEES**

**15-CV-5345 (JGK) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

        This Court previously found that Defendant Ilyas Khrapunov engaged in discovery
misconduct and awarded Plaintiffs their attorneys' fees and costs associated with therewith.
(ECF No. 1248.)  Plaintiffs have submitted a fee application, consistent with the Court's prior
order, seeking $245,133.29 in fees for Khrapunov's discovery misconduct.  (ECF No. 1467.)  The
Court has reviewed Plaintiffs' application and for the reasons set forth below, awards Plaintiffs
attorneys' fees in the amount of $ 221,285.31.

**BACKGROUND**

        The Court assumes familiarity with its prior order finding that Ilyas Khrapunov engaged
in substantial discovery abuses.  (ECF No. 1248.)  Thereafter, the parties then disputed whether
the Court's prior opinion imposing monetary sanctions for discovery abuses could be enforced
in light of the fact that the District Judge, the Honorable Alison J. Nathan, dismissed all the
claims against the Khrapunovs.  The Court found that it did still have authority to impose
monetary sanctions against Ilyas Khrapunov notwithstanding that the claims were dismissed
against him.  (ECF Nos. 1333, 1461.)

1

The present application seeks fees incurred in connection with various motions to compel Ilyas Khrapunov to participate in discovery and related briefing and argument (ECF Nos. 419, 530, 616), a motion for sanctions (ECF Nos. 918, 1273, 1369), and the instant fee application.  The fees were incurred over a four-year period from September 2017 to November 2021.

The legal work was performed by three partners (Matthew Schwartz, Peter Skinner, and Craig Wenner), nine associates (Craig Wenner, Daniel Boyle, Andrew Chesley, Sabina Mariella, Erica Sweeting, Elise Milne, Valecia Battle, Brianna Hills, Alexandra Jumper, Lindsey Ruff), and two paralegals (Sophie Roytblat and Isaac Shapiro).  Craig Wenner submitted an affidavit setting forth the experience of each of the attorneys and staff mentioned above and attaching contemporaneous time records.  (ECF No. 1469, "Wenner Decl.")

The Court has previously recognized the qualifications of some of the attorneys and staff who worked on this action, which is a complex matter involving international discovery and alleged money laundering.  The following are highlights of the qualifications and experience of the timekeepers for whom fees are sought:

- Matthew Schwartz is a managing partner at Boies Schiller Flexner ("BSF") who received both his B.A. and J.D. from Columbia University.  He clerked in the Southern District of New York and the Second Circuit before becoming an Assistant U.S. Attorney in this District.
- Peter Skinner is a partner at BSF who received his J.D. from Boston College Law School.  He served as an Assistant U.S. Attorney in this District from 20014 to 2015.
- Craig Wenner received his J.D. from New York University Law School in 2011.  He clerked in this District and joined BSF in 2013.
- Daniel Boyle was an associate at BSF from 2013 to 2019, when he left to become an Assistant U.S. Attorney for the Central District of California.  He received his J.D. from Columbia University Law School in 2013.

- Andrew Chesley was an associate at BSF from 2017 to 2020, when he left to work at another firm.  He received his J.D. from Columbia University Law School in 2016 and clerked on the Tenth Circuit.
- Sabina Mariella is an associate at BSF.  She received her J.D. from Boston University School of Law in 2016 and thereafter served as a clerk in the Eastern District of Pennsylvania and the Sixth Circuit.  She joined BSF in 2019.
- Erica Sweeting is an associate at BSF.  She received her J.D. from Howard University School of Law in 2016 and thereafter clerked in the Eastern District of New York.  She joined BSF in 2019.
- Elise Milne received her J.D. from Vermont Law School in 2016.  She worked at BSF from 2016 to early 2018, when she left to clerk in the Second Circuit.
- Valecia Battle is an associate at BSF who received her J.D. from Howard University School of Law in 2017.  She clerked in the Fifth Circuit.
- Brianna Hills is an associate at BSF.  She received her J.D. from the University of Missouri School of Law in 2018 and clerked in the Eleventh Circuit.  She joined BSF in 2019.
- Alexandra Jumper received her J.D. from Harvard Law School in 2018 and worked at BSF from 2018 to 2020, when she left to clerk for the D.C. Circuit.
- Lindsey Ruff received her J.D. *magna cum laude* from Cornell Law School in 2019.  She joined BSF in 2019.
- Isaac Shapiro worked as a paralegal at BSF from 2018 to 2020 when he left to attend Stanford Law School.  He received his B.A. *magna cum laude* from University of Pennsylvania in 2019.
- Sophie Roytblat worked as a paralegal at BSF from 2017 to 2019 when she left to attend Fordham Law School.  She received her B.A. *cum laude* from New York University in 2017.  She is fluent in Russian and provided comprehensive support in this litigation including translation and research in Russian.

Detailed time charts have been provided, with billing increments of 1/10th of an hour. The time reflects work spent researching, drafting, editing, and preparing the motions mentioned above for filing with the court, as well as review of documents for purposes of preparing the motions and participating in court proceedings regarding same.  As discussed below, in addition to frequent conferences before the undersigned where discovery disputes were resolved without formal motion practice, Plaintiffs filed a number of formal motions pertaining to Ilyas Khrapunov.  In September 2018, Plaintiffs moved to force Khrapunov to

produce documents from personal email accounts he used to conduct business.  (ECF No. 419.)

The Court ordered production of emails from these accounts.

In January 2018, issues arose concerning the so-called "Kazaword" documents.  (ECF

Nos. 530, 616, 748.)  Briefly, the Khrapanovs produced 19 documents that Plaintiffs contended

were stolen from them by a computer hacker.  Plaintiffs moved to compel disclosure as to how

the Khrapanovs came to be in possession of the documents, which the Court granted.  (ECF No.

541.)  The Khrapanovs contended the documents were downloaded from the "Kazaword"

website that was established to, among other things, publish the hacked documents on the

internet.  After the Khrapunovs produced the documents downloaded from the Kazaword

website supposedly by a Swiss Bailiff working for Ilyas Khrapunov, the stolen documents were

not among them.  This raised additional issues and generated another letter motion.

Ultimately, the Khrapunovs changed their story, explaining that some of the documents were

downloaded by Ilyas's lawyer, some by Ilyas himself, and some were provided to Ilyas by two

other individuals not parties to the lawsuit.  Because Ilyas had not previously identified the

other sources of the documents, Plaintiff then moved to compel production of all documents

obtained through those sources relevant to the action, which the Court granted.  The issues

stemming from the Kazaword documents were resolved by in or about July 2018.[1]

In July 2018, it came to light that Ilyas Khrapunov was serving as a translator in

connection with responding to discovery requests and that he had possibly not fully discharged

---

[1] In the fall of 2017, an issue arose concerning questions at a deposition relating the Kazaword documents.  The Court limited questioning about the documents pursuant to a motion for a protective order filed by Plaintiffs. However, this motion practice is distinct from the motions to compel Ilyas Khrapanov to disclose information about the Kazaword documents and other emails.  (See ECF Nos. 369, 418.)

his obligations given the dearth of documents produced by him and his father.  This led to additional letter writing and arguments and ultimately an Order by this Court directing Khrapunov's attorney to engage a qualified translator and more closely and directly supervise the collection of documents because it was apparent that Khrapunov had not complied with his discovery obligations.  (ECF No. 800.)  In the same decision, the Court required Khrapunov to conduct a thorough search for documents.  Ilyas Khrapunov did not end up producing documents from his email and social media accounts on the grounds that they were lost or destroyed or inaccessible.

In November 2018, Plaintiffs sought leave to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 37 in connection with the Khrapunovs' and other defendants' discovery misconduct.  (ECF No. 879.)  Briefing ensued in January 2019 but due to certain revelations at an evidentiary hearing, the motion was not ripe for a ruling until nearly a year later.  (ECF Nos. 918-922.)  On May 19, 2020, the Court granted Plaintiffs' motion for sanctions against the Khrapunovs for discovery misconduct.  (ECF No. 1248.)  Defendants objected to the Court's Sanctions Order, but Judge Nathan ultimately affirmed this Court's Order on October 18, 2021.  (ECF No. 1461.)

Plaintiffs' application seeks $41,129.30 in fees for time incurred between September 2017 and May 2018 principally in connection with motions to compel related to the Kazaword documents.  They seek $176,812.99 in fees in connection with their sanctions motion.  The time

records submitted relate to the period October 2018 to October 2020.  They seek $27,191 in connection with the instant fee application.[2]

## LEGAL STANDARD

A district court exercises "considerable discretion" in awarding attorneys' fees.  *See Millea v. Metro-North R. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable."  *TufAmerica Inc. v. Diamond*, 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016), *reconsideration granted in part*, 2016 WL 3866578 (S.D.N.Y. July 12, 2016), *and on reconsideration in part*, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  Attorneys' fees are awarded by determining a presumptively reasonable fee, or a "lodestar," reached by multiplying a reasonable hourly rate by the number of hours reasonably expended.  *Id.* (citing *Millea*, 658 F.3d at 166); *see also Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011).  When evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  *Bergerson,* 652 F.3d at 289 (internal citations and quotation marks omitted).  The Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."  *Id.*

---

[2] Khrapunov claimed in his opposition that the Wenner Declaration did not contain specific language attesting to the truth of information in it.  Wenner submitted a Declaration on Reply curing this defect.  In any event, the Court is aware from its close supervision of this matter that Wenner is intimately familiar with all work performed in this litigation.  He is not only a partner but has participated in nearly 100% of the court conferences in this matter.

(internal citation and quotation marks omitted); *see also TufAmerica Inc.*, 2016 WL 1029553, at

*5 ("rate must be in line with those rates prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation").  Courts in this district also

have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the

best evidence of" a reasonable hourly rate.  *In re Stock Exchanges Options Trading Antitrust*

*Litig.*, 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006).  Finally, the Court may adjust base hourly

rates to account for case-specific variables.  *Arbor Hill Concerned Citizens Neighborhood Ass'n*,

522 F.3d at 183-84.

When evaluating hours expended, the Court must make "a conscientious and detailed

inquiry into the validity of the representations that a certain number of hours were usefully and

reasonably expended."  *Haley v.* Pataki, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City*

*of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).  In determining whether hours are excessive, "the

critical inquiry is whether, at the time the work was performed, a reasonable attorney would

have engaged in similar time expenditures."  *Samms v. Abrams*, 198 F.Supp. 3d 311, 322

(S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours that are

excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such

surplusage, the court has discretion simply to deduct a reasonable percentage of the number of

hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v. Fleet St.,*

*Ltd*., 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord*

*Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017); *TufAmerica Inc.*, 2016

WL 1029553, at *3.

The Court also looks at the nature of the legal matter and reason for the fee award in considering what is a reasonable rate and reasonable time spent on a matter.  Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to prosecute a case effectively. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 187.  Likewise, the Court may consider the purpose of the award; that is, a different presumptively reasonable fee may be warranted if the fee is being awarded as a sanction for misconduct than if the fee is being awarded in connection with a successful outcome in a statutory fee-shifting case.  *See Klipsch Grp., Inc. v. ePRO E-Commerce Ltd*., 880 F.3d 620, 633-34 (2d Cir. 2018).  The Second Circuit has recognized that "[d]iscovery sanctions are different" than fee awards in civil rights cases, because "a party that disregards its obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never have been incurred. . . . In that situation, the offended adversary's counsel is not being rewarded for its success in the litigation; rather, the adversary is simply being compensated for costs it should not have had to bear."  *Id*. at 634.

## DISCUSSION

Because Plaintiffs are seeking fees, they bear the burden of demonstrating that its counsel's rates are reasonable.  *Blum*, 465 U.S. at 895 n.11; *see also Reiter v. Metro. Transp. Auth. of State of New York*, 2007 WL 2775144, at *4 (S.D.N.Y. Sept. 25, 2007).  There is no doubt that all of the individuals who performed work are highly competent.  This Court is very familiar with the quality of advocacy in this matter and has at all times found the BSF team to be prepared and skilled advocates.  Further, this Court previously considered and approved most

8

of the hourly rates sought when awarding Plaintiffs' sanctions against another Defendant,

Mukhtar Ablyazov, who also engaged in discovery misconduct.  (ECF No. 1216, 1461.)  The rates

awarded there and sought again in this application are:

- Mr. Schwartz: $1,180
- Mr. Skinner: $1,150
- Mr. Wenner: $700 in 2017, $720 in 2018, and $740 in 2019
- Mr. Boyle: $660 in 2017, and $680 in 2018 and 2019
- Mr. Chesley: $375 in 2018 and 2019
- Ms. Battle: $330
- Ms. Jumper: $300
- Ms. Milne: $300
- Ms. Roytblat: $150 in 2017, and $155 in 2018 and 2019

For work performed in 2020 and 2021, Plaintiffs propose the following rates:

- Mr. Wenner: $760 in 2020 and $780 in 2021, consistent with this Court's finding that it was appropriate to increase the rates $20 per year to account for additional experience.
- Ms. Sweeting: $680 for 2021, consistent with this Court's prior approval of this rate for mid-level associates.
- Ms. Mariella: $660 in 2020, consistent with this Court's prior approval of this rate for a fourth-year associate.
- Ms. Hills: $375 in 2020, consistent with this Court's prior approval of this rate for junior associates.
- Ms. Ruff: $375 in 2021, consistent with this Court's prior approval of this rate for junior associates.
- Mr. Shapiro: $155, consistent with this Court's prior approval of this rate for paralegals.

Not only has this Court found the range of rates proposed to be appropriate in this

matter, these rates are consistent with those approved in this District.  *See, e.g., U.S. Bank Nat'l*

*Ass'n v. Dexia Real Estate Capital Markets*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016)

(quoting *Themis Capital v. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y.

Sept. 4, 2014)) (recognizing that partner rates of up to $1000 per hour are not uncommon in

this District for complex litigation matters); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 2017 WL 1294557, at \*10 (S.D.N.Y. Apr. 4, 2017) (in "complex" case, partner rate of $600 is reasonable; rate of $150 per hour for paralegals reasonable); *Themis Capital*, 2014 WL 4379100, at \*7 n.5 (approving associate rates "from approximately $380 to $682" for associates in case involving "difficult questions of law and fact"); *TufAmerica*, 2016 WL 1029553, at \*6 (reasonable rate for partners ranged from $572 to $715 per hour, for senior associates was $476 to $560 per hour, for junior associates was $375 to $425 per hours, and for paralegals was $150-175 per hour); *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018), aff'd sub nom. *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 2018 WL 3094913 (S.D.N.Y. June 21, 2018) (in commercial litigation, court approved hourly rates for partners of $765 and for associates of up to $450). Thus, I find that the hourly rates sought are reasonable.

Turning to the hours worked, Khrapunov complains that the records provided are insufficient insofar as they do not clearly reflect work performed on the motions to compel and are not contemporaneous. However, Wenner attested in his declaration that the nature of work and hours expended are extracts from contemporaneous time records and were prepared to segregate time spent on motions pertaining to Ilyas Khrapunov as opposed to other defendants against whom Plaintiffs also filed motions to compel. The Court finds that the method of submitting this time is appropriate for this case and aids the Court in evaluation of this application. Wenner's Declaration provides sufficient evidence of the validity of the information. See *United States v. Weisz*, 1996 WL 143945, at \*1 (S.D.N.Y. Mar. 29, 1996).

Having closely evaluated the time records submitted, the Court finds that not all of the hours are appropriately compensable.  First, to the extent Plaintiffs seek fees in connection with a protective order filed in 2017, that work was not within the scope of this Court's prior sanctions award.  This requires the Court to subtract a total of $18,361.20, leaving a total of $22,768.10 for work done in connection with the motion to compel information and additional documents from the Kazaword site.  The Court has reviewed the remaining time submitted and finds that it is appropriate in terms of the hours spent on this motion (a total of 37.72 hours) in relation to Ilyas Khrapunov.

Next, the Court reviewed the time spent on the sanctions motion.  Because the motion was directed at misconduct by all four defendants, Plaintiffs seek reimbursement for only 25% of the hours worked.  The Court finds that this allocation method is appropriate.  The Court has carefully reviewed the entries and, although the hours are significant (a total of 245.575 hours), the parties engaged in multiple rounds of briefing and an evidentiary hearing.  The Court found only a few entries that were not sufficiently discounted.  Matthew Schwartz's time at an evidentiary hearing on September 12, 2019 should not be attributed entirely to Ilyas Khrapunov.  Instead, the Court discounts it by 50%, since the hearing concerned principally Triadou and Ilyas Khrapunov's conduct.  Matthew Schwartz's time on July 17, 2020 working on a brief regarding both Viktor and Ilyas should be discounted 50%, because the fee award is solely against Ilyas.  Sophie Roytblat's time on January 9, 2019 should be discounted 50% to the extent it reflects work on both a motion to amend and a sanctions motion.  These small adjustments result in a total of $171,326.21 for a total of 240.45 hours work.

Finally, the Court has reviewed the time spent on the instant fee application.  A total of 52.5 hours was spent, mostly by associates and a legal assistant.  The Court finds the hours spent were reasonable and awards $27, 191.

No application for costs was made, so no costs are awarded.

To the extent Khrapunov suggests that this Court does not have authority to issue an award of fees in connection with discovery abuses like the ones committed here, he is incorrect.  It is well established that Magistrate Judges have authority to issue attorneys' fees awards for violations of discovery rules, as such motions are non-dispositive.  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d Cir. 1990) (upholding Magistrate Judge authority to issue monetary sanctions for discovery violations because matters concerning discovery are non-dispositive); *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*, 768 F. App'x 141 (2d Cir. 2019) (same)

Finally, to the extent Ilyas Khrapunov complains about the total amount of fees sought, this is a result of his own failures to comply with discovery, which spawned extensive motion practice.

### **CONCLUSION**

Accordingly, the Court awards Plaintiffs attorneys' fees in the amount of $ 221,285.31, which Defendant Ilyas Khrapunov shall remit within 30 days of this Order.  This terminates the motion at ECF No. 1467.

**SO ORDERED.**

Dated: May 4, 2022
      New York, New York

KATHARINE H. PARKER
United States Magistrate Judge