August 12, 2022

RECEIVED
SDNY PRO SE OFFICE

2022 AUG 24   PM 2: 37

The Honorable Katharine H. Parker
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re: City of Almaty v. Ablyazov, 15 Civ. 5345 (AJN) (KHP)**

Dear Judge Parker:

I was a Pro Se defendant in this case for almost all of the duration of the proceedings. I still represent myself to this day. The reason for it is simple. I could not afford to pay the legal fees. On August 8, 2017, the court allowed my then-law firm (Kobre & Kim) to withdraw from representing me for non-payment of legal fees (Annex 1). If I had the means to pay for the lawyers why would I stop? It would only be to my benefit to continue using a law firm to put up a good defense. The truth is that BTA Bank had a UK Court default judgments against me for around £4B, I believe since 2013, with default interests that almost match the principal amount and increasing yearly by £100s of millions a year. They also had a worldwide freezing order against me running since 2009 and a receivership order, I believe, since 2010. As a result, I could not have any funds at my disposal.

In March of 2022, BTA Bank obtained a default judgment in the Supreme Court of State of New York recognizing the UK default Judgments for more than $7.1B (Annex 2). The interest on that judgment runs 9% a year, which amounts to $1.75m a day.

I think there is something more sinister in the request of BTA Bank to hold me in contempt for not paying $140,115.60 and asking for a sanction of $1000 a day.

**The various characterizations by BTA Bank of my conduct at this court**

I do not wish to repeat the same answers that I made to every single insinuation of BTA Bank of my alleged conduct during this proceeding. I will refer to my previous answers. Please see Annex 3.

**Conclusion**

It is clear that I do not have the funds to pay for any of the sanctions fees and that is the only reason for the non-payment.

I understand that BTA Bank has been making many allegations regarding my alleged conduct in this case, however, I have meticulously answered to all of them in the Annex 3.

As I showed in Annex 2, BTA Bank is already accruing $1.75m in interests a day in the New York.

I believe, there is another reason for their aggressive actions in this court. It is of high importance to BTA Bank's "owner" to be seen in Kazakhstan as someone that pursues aggressively dictatorial regime's strongest opposition figure.

Respectfully yours,

Mukhtar Ablyazov

# ANNEX 1

# KOBRE & KIM

800 THIRD AVENUE
NEW YORK, NEW YORK 10022
WWW.KOBREKIM.COM
TEL +1 212 488 1200

January 25, 2021

**VIA ECF**

The Honorable Alison J. Nathan
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *City of Almaty, Kazakhstan et al.* v. *Mukhtar Ablyazov et al.*
No. 15-cv-05345-AJN-KHP

Dear Judge Nathan:

On August 8, 2017 [DE 393], the Court permitted Kobre & Kim LLP to withdraw as counsel of record for Defendant Mukhtar Ablyazov but required that Kobre & Kim LLP "remain Mr. Ablyazov's agent solely for the purpose of receiving service of Court papers in this litigation, which shall be accomplished by sending those papers via email to jonathan.cogan@kobrekim.com, beau.barnes@kobrekim.com and rebecca.mangold@kobrekim.com, unless and until Mr. Ablyazov has retained new counsel."

We write to inform the Court that Beau Barnes will no longer be employed by Kobre & Kim LLP after January 28, 2021, but pursuant to the Court's order, Jonathan D. Cogan and Rebecca G. Mangold will remain Mr. Ablyazov's agent solely for the purpose of receiving service of Court papers in this matter.

Respectfully submitted,

/s/ Jonathan D. Cogan
Jonathan D. Cogan
+1 212 488 1200

Cc:   Mukhtar Ablyazov
      All Counsel of Record (via ECF)

AMERICAS (NEW YORK, BUENOS AIRES, CHICAGO, DELAWARE, MIAMI, SAN FRANCISCO, SÃO PAULO, WASHINGTON DC)
ASIA-PACIFIC (HONG KONG, SEOUL, SHANGHAI), EMEA (LONDON, TEL AVIV), OFFSHORE (BVI, CAYMAN ISLANDS)

KOBRE & KIM REFERS TO KOBRE & KIM LLP, A NEW YORK LIMITED LIABILITY PARTNERSHIP.

# ANNEX 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN,
and BTA BANK JSC,

        Plaintiffs,

        v.

MUKHTAR ABLYAZOV, ILYAS
KHRAPUNOV, VIKTOR KHRAPUNOV, and
TRIADOU SPV S.A.,

        Defendants.

No. 15 Civ. 5345 (AJN) (KHP)

**MUKHTAR ABLYAZOV's OBJECTIONS TO HONOURABLE JUDGE PARKER's OPINION & ORDER & REPORT & RECOMMENDATION DATED JULY 3, 2019, AND TO OPINION ADDRESSING MOTION FOR RECONSIDERATION OF REPORT & RECOMMENDATION DATED JULY 15, 2019**

MUKHTAR ABLYAZOV
As Pro Se Defendant
France

I, the undersigned, defendant Mukhtar Ablyazov ("Ablyazov"), as a Pro Se defendant, submit these objections to the July 3rd Opinion & Order & Report & Recommendation of Magistrate Judge Katharine H. Parker granting Plaintiffs' motion for sanctions against me ("July 3 Opinion"), and against the July 15th Opinion of Magistrate Judge Katharine H. Parker rejecting my motion for Reconsideration ("July 15 Opinion")(jointly the "Opinions").

## INTRODUCTION

Plaintiffs, the City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA Bank") (collectively, the "Kazakh Entities") have moved pursuant to Federal Rule of Civil Procedure 37 ("Rule 37") for sanctions against me for failure to comply with discovery obligations. On 28th January 2019 I filed my Memorandum of Law in Opposition to the Kazakh Entities' Motion for Sanctions ("Opposition")(ECF 949). On July 3rd, 2019 Judge Parker issued her July 3 Opinion, in which she accepted all allegations made by the Plaintiffs without reading my Opposition at all. I then submitted a letter for reconsideration of the July 3 Opinion on the basis that Judge Parker had overlooked my Opposition (ECF 1104). Judge Parker then issued her July 15 Opinion, in which she corrected several sentences from the July 3 Opinion that were objectively erroneous, but otherwise left her findings and recommendations unchanged.

I respectfully submit to this Court that Judge Parker has made several substantial errors of both fact and law in her Opinions. Judge Parker has taken as true many conclusory statements made by the Plaintiffs, which are deliberately misleading and factually incorrect. Judge Parker has also either misunderstood or overlooked several major factual elements in my Opposition. When viewed fully and fairly, the record shows that I have not failed in my obligation to participate in the discovery process or to comply with the Court's orders. Therefore, Judge Parker has erred in her conclusions in the Opinions and has erred in ordering harsh sanctions against me.

## LEGAL STANDARD

I understand that since pro se parties are considered at a disadvantage when facing a party represented by counsel, various state and federal rules advocate treating self-represented litigants with greater accommodation than parties with professional representation. I feel that I have not been afforded such treatment by Magistrate Judge Parker, who has expected of me the same level of legal research and reference to case law as would be expected from a law firm. Moreover, Judge Parker did not even consider my I hope that this Court will accommodate any mistakes I may make in the structure or formatting of my objections, and will allow me to cure any deficiencies, if it finds them.

I further understand that the district judge can set aside a magistrate judge's order if it is "clearly erroneous or is contrary to law." I respectfully submit that this is the case here.

## ARGUMENT

1. **Ablyazov did not resist deposition in France. Delays caused entirely by Kazakh Entities**

In her 3 July Opinion, Judge Parker considers my alleged resistance to be deposed in France as a major factor for awarding monetary sanctions against me. In the July 15 Opinion Judge Parker finds that:

> Ablyazov argues that he did not try to resist his deposition in France. The argument is specious, as evidenced by the fact that his deposition was noticed in December of 2016, around the time he was released from prison (Doc. No. 949,1), and that, as of August of 2017, he had not consented to comply with the request. This necessitated motion practice to compel his attendance at a deposition.

This assessment is clearly erroneous because it ignores facts on the record, ignores contrary admissions by the Plaintiffs, ignores orders made by Judge Parker herself and ignores information in my brief in opposition to the Plaintiffs' sanctions motion (ECF 949).

Plaintiffs themselves admit that they first noticed my deposition on my then-counsel on 30 December 2016. Plaintiffs do not contest that my then-counsel responded in a timely manner that I could not travel for a deposition in New York, and that Plaintiffs would need to depose me in France pursuant to the Hague Convention (ECF 399). Notably, Plaintiffs took no steps to challenge these objections, thereby consenting that France was the proper venue for the deposition. In fact, Judge Parker herself agreed, stating that "while this Court previously declined to order Ablyazov to travel to the U.S. for his deposition, the Court did so because Ablyazov consented to sitting for a deposition in France [and] there appears to be no impediment to Plaintiffs proceeding with a deposition in France" (ECF No. 420, at 2).

However, Plaintiffs did not allow facts to deter them from making substantial misrepresentations in their sanctions motion. For example, Plaintiffs argued that the delay in scheduling my deposition in France was caused by my refusal to consent (ECF 399, page 3). This is patently untrue. The delay was in fact caused by the inaction of the Plaintiffs themselves. For months after receipt of my objection to their 30 Dec 2016 notice, the Plaintiffs took no action whatsoever to schedule my deposition in France via the Hague Convention. In fact, the Plaintiffs only sent the Hague deposition request for signature by this Court on 25th July 2017.

Just a week later, on 1st August 2017, my then-counsel Kobre & Kim informed the Plaintiffs that "Mr. Ablyazov has informed us that while he expects to consent to a deposition in France through The Hague Convention, he would like to confer with new counsel (once retained) before he formally consents to do so" (See ECF 386). On 8th August 2017, Judge Parker made an Order to grant Kobre & Kim's motion to withdraw as my counsel (See ECF 386-1). However, this order set no deadline for when I had to confirm my consent to be deposed in France. Given that the Plaintiffs had taken a voluntary half-year hiatus in scheduling my deposition, I interpreted Judge Parker's order as allowing me at least a month to answer fully once I could consult with my new counsel. It should be noted, that the Plaintiffs never challenged Judge Parker's order or asked her to set a deadline.

In the course of August 2017, counsel for the Plaintiffs sent several letters address to me and I responded through my lawyer Peter Sahlas (attached as exhibits 1-5). These letters clearly demonstrated two things. First, that I was actively participating in a reasonable discussion about the scheduling of my deposition. Second, that there were objective reasons why I could not sit for a deposition anywhere outside France because I have filed an application for political asylum in France and surrendered all my travel documents, making it impossible to legally

leave the country. Crucially, in none of these letters did I ever refuse to sit for a deposition in France.

The Plaintiffs disregarded this correspondence and filed a letter motion with Judge Parker to compel my deposition in New York, London or Spain by no later than 13th October 2017. If that application failed, the Court was asked to compel me to formally consent to be deposed in France. In making that motion, the Plaintiffs argue that I have refused so far to such a consent (See ECF 399). That statement was intentionally misleading, as I have conveyed through Kobre & Kim on the August 1st, 2017 (i.e. the same month) that I expected to consent to be deposed in France. I received a copy of Plaintiffs' letter motion on the 31st of August. I immediately proceeded to prepare and send to the Court a response letter through Peter Sahlas. This letter was sent on the 1st of September and in it I asked until 5th of September to answer the letter motion (See Exhibit 6). On the 5th of September, I did answer the Plaintiffs First Interrogatories and gave my formal consent to be deposed in France under Hague Convention (See Exhibit 7).

The above quoted passage from the 15 July Opinion strongly suggests that Judge Parker based her finding that I had resisted my deposition in France *solely* on the mistaken understanding that over 8 months had passed from when the Plaintiffs noticed my deposition to be held in New York (30 Dec 2016) and when I consented to my deposition to be held in France under the Hague Convention (5 Sept 2017). In reality, barely 6 weeks passed from when the Plaintiffs sent a Hague deposition request for signature by this Court on 25th July 2017, and when I consented to sit for the deposition in France on 5th September 2017. I am sure that this Court will agree that a 6-week delay in consenting to a Hague deposition does not warrant sanctions, especially when the Plaintiffs took no action in sending the Hague request for the previous 7 months.[1]

## 2.  Ablyazov did not resist or delay his attendance at the deposition in France

In their sanctions motion the Plaintiffs alleged that I resisted or delayed the organisation of my Hague deposition *after* consenting to it on 5th September 2017 and *after* the Hague deposition notice had been signed and sent by this Court. In her 3 July Opinion, Judge Parker appears to accept these allegations, without overtly explaining what evidence she has relied on and without considering my opposition (ECF 949). These conclusions by Judge Parker were clearly erroneous and should be set aside.

When this Court sent the Hague deposition request to France, it did not order me to take any action to advance the service of the Request or the organisation of my deposition. The obligation to take steps to check on the status of the Request and take steps to advance it were on the Plaintiffs. However, just as before, they took no action and have now convinced Judge Parker to sanction me for their own delay.

In December 2017 Plaintiffs asked me for an address in France to which the French authorities can send the Summons. I responded promptly by giving the only constant address that I used, my attorney's in France (See ECF 811-1).

---

[1] All the more so, since this was happening as my US counsel was withdrawing.

On 1st August 2018 the Plaintiffs made a letter motion to Judge Parker (ECF 811). In the letter, the Plaintiffs allege (without any proof) that I have been withholding information about having received a Summons by the Tribunal in France. Neither I, nor my French attorney, had received any such Summons at the time (see ECF 826). In the Order of Judge Parker dated 10th August 2018, I was for the first time asked to take certain steps to advance the deposition in France (See ECF 813). On 13th August 2018, I wrote a letter to the Court indicating that my attorney was on vacation and I asked two weeks' time until he returns to ask him to contact the French Court and to speed up the deposition. It was middle of August and it was customary that the judges and attorneys are on vacation during that time (See ECF 814). On 29th August I wrote to the Court, attaching a letter from my French attorney to me dated 27th August. In the letter, my French attorney confirms that he has contacted the French Court in relation to my Summonst and the Court has not yet received anything at that time. He also said that it did not conform with French law or practice to contact the French Tribunal regarding the advancement of a Hague Request. I also attached a letter that I have finally received from the Tribunal de Grande Instance the Summons to deposed on the 20th September 2018. I asked Judge Parker to confirm that having the deposition on the 20th of September instead of the deadline of the 17th September imposed by her will not be a violation. On 31st of August Judge Parker granted my request (See ECF 826).

As shown above, until 10 August 2018 I had no obligation to take steps to advance the scheduling of my Hague deposition with the French authorities. In fact, doing so would have not conformed with French law. However, as soon as I had been ordered by Judge Parker to take steps to assist, I immediately took all such possible steps, even though it was mid-August and my attorney was away on vacation and so was the French Court. There is absolutely no basis for Judge Parker to have considered that I tried to resist or delay my deposition in France. Whatever motion practice the Plaintiffs engaged in was, in the end, completely unnecessary and the scheduling of the deposition would have proceeded at the same pace (set by French authorities) without this briefing. It is wholly inequitable to sanction me for the procedures and pace of French authorities and French Courts. Especially when I took all necessary steps, even those beyond the requirements of the Hague Convention process.

3. **Plaintiffs never required Ablyazov's consent for access to the documents from the UK proceedings**

In the July 15 Opinion Judge Parker finds that:

> Ablyazov also refused to provide his consent to allow Plaintiffs' attorneys in the United Kingdom ("U.K.") to share documents he filed in the U.K. legal proceedings with Plaintiffs' counsel in the United States.

With respect, Judge Parker's finding is clearly erroneous because it is premised on the assumption that the Plaintiffs required my consent for access to these documents, or that I could obtain these documents myself. Judge Parker accepted (without proof or verification) the conclusory statements made to this effect by Plaintiffs in their sanctions motion. As I have outlined in my opposition brief (see ECF 949), these statements are completely false. The Plaintiffs never required my consent or cooperation to obtain any and all documents which they had an interest in from the UK proceedings.

First of all, BTA's UK counsel has access to absolutely all documents filed or produced in the course of the UK proceedings of BTA against me. BTA's UK counsel even managed to have access to some privileged correspondence between me and my UK lawyers. BTA have always been permitted to show any of these documents to their US counsel. The only restriction is that BSF would not be allowed to use any such documents in the present action without seeking permission from the UK Court.

Second, and crucial, BTA's counsel could have easily made an application to the UK Courts and requested the use of some or all of the UK documents in the present case. As I explained to Judge Parker in my opposition brief (ECF 949, page 4), BTA have already done this in another case in the US. On 5th of August 2016 BTA applied to the UK Court asking documents that are part of the UK proceedings to be used in the Virginia case against my sister. Without my consent and with opposition from a third party the Judge granted their order just 10 days later or 15th August 2016 (see Exhibit 8 and 9). Both the Application and Order confirm the fact that such a restriction as I mentioned does exist and the Judges authorization is required.[2]

Third, I could not make an application to the UK Court to release documents from UK proceedings for use in the present matter. I am in default of a "costs order" issued against me by the UK courts in May 2013. Upon my release from prison, I had no funds to either pay this costs order or hire UK counsel to make the application to the Court for release of the documents, because all of my assets were frozen, and a receivership was put over them. In such circumstances, the UK Court would not accept any request from me.

In her 3 July Opinion, Judge Parker points out that "prejudice to the party seeking sanctions may also be a significant consideration" *See Southern New England Tel. Co.*, 624 F.3d at 148–49 (movant suffered prejudice where it was deprived of evidence). In addition to everything stated above, this factor weighs heavily against imposing sanctions on me. As the application for the use of documents in the Virginia case clearly show, the Plaintiffs could have easily obtained any documents from the UK proceedings for use in the present case. The fact that the Plaintiffs made no effort during the 2+ years of discovery in this matter to request any of the documents from the UK proceedings proves that they saw no need for these documents in the present matter. Consequently, Plaintiffs cannot claim to have suffered any prejudice from the absence of these documents in the present matter.

In the end, Judge Parker erred in sanctioning me for failing to produce documents to which the Plaintiffs had easy access. Judge Parker also failed to consider that the Plaintiffs had clearly attempted to mislead her in claiming that they required my consent to obtain documents from the UK, while being perfectly aware (from their own actions in 2016) that they could obtain these documents without my consent. The Court should not countenance such obvious gamesmanship.

### 4: Ablyazov did not fail to produce documents ordered by the Court

In the July 3 Opinion Judge Parker finds that:

---

[2] It appears that Judge Parker did not take this important information into account when making her 15 July Opinion.

Plaintiffs' first request for documents, served in August 2016, requested documents concerning, among other things: Ablyazov's ownership and position as Chairman of BTA Bank; documents produced in the U.K. Proceedings regarding his assets; documents pertaining to his and his business's interactions with FBME Bank, which facilitated relevant wire transfers; and documents pertaining to a purported loan to Gennady Petelin. (Doc. No. 921-4; see also Doc. No. 919-10,182:04-183:05.) Ablyazov ignored these requests. Plaintiffs ultimately moved to compel Ablyazov to produce documents in August 2018. (Doc. No. 811.) Ablyazov failed to timely respond to the Motion and this Court ordered him to produce responsive documents. (Doc. No. 813.) However, instead of producing documents in compliance with this Court's Order, Ablyazov moved for reconsideration. (Doc. No. 814.) Although that Motion was denied, Ablyazov still failed to produce any documents. (Doc. No. 816)."

As a starting matter, with all due respect to Judge Parker, several of her findings are objectively factually incorrect:

First, Plaintiffs have served their First Request for Documents on me on 26th August 2016. At the time, the parties in this case were discussing a protective order. Nevertheless, I responded to this document request through my counsel at the time on 6th October 2016 (See Exhibit 10). Therefore, Judge Parker has erred in finding that I "ignored those requests".

Second, Judge Parker erred in finding that I "failed to produce any documents". After my US counsel (Kobre & Kim) withdrew from the case, I made every possible effort to continue participating in this action efficiently. I asked my French lawyer, Peter Sahlas (who is admitted to the bar in New York) to act as a channel of communication with the Court. Through him I produced a number of documents (for example my Judgement of Conseil d'Etat). However, the Plaintiffs decided to take every step to make my participation in this case as a Pro Se defendants as difficult as possible, no doubt to then use my ineffective communication as a basis for sanctions against me. The Plaintiffs convinced Judge Parker to deny me the use of Peter Sahlas as a person to convey my correspondence with Plaintiffs and the Court and struck off from the record whatever documents I had already produced through Sahlas (See ECF 469). I am now being sanctioned for failing to produce documents which the Plaintiffs have themselves asked to be struck from the record.

More generally, Judge Parker's logic in sanctioning me for failing to produce documents pursuant to her orders rests on the conclusion that I had responsive documents in my custody or control. The July 15 Opinion shows that in reaching this conclusion, Judge Parker took no note of my explanation that I simply had no documents to produce (ECF 949). I left the UK in beginning of 2012 to avoid being assassinated. Such a departure did not allow for an orderly packing of documents. Thereafter, I had to move around constantly for fear of being kidnapped or assassinated by the Nazarbayev regime. In July 2013 I was arrested in France. I was taken in what clothes I had on me, and I certainly had no chance to pack or save anything. At this time I lost access to the few documents I still had with me. I was then kept imprisoned in isolation for over 3 years, despite not being found guilty of any crime. I ask this Court to consider how reasonable is it to expect that someone who had to go through all of this should nevertheless maintain an orderly archive of documents? Where do the Plaintiffs presume I would have kept these "archives"? In my cell?

The Plaintiffs will no doubt argue that it was my discovery obligation, upon release from prison, to reach out to former employees, partners and colleagues in order to obtain those documents which the Plaintiffs were requesting of me in discovery. First of all, such an argument would fundamentally misapply the discovery standard, under which I can only be ordered to produce those documents which are in my custody and control. Second, whilst I was in the French prison, the Nazarbayev regime was applying enormous pressure on everyone that was close to me, especially those who were involved with BTA Bank, whilst I worked there.[3] Many of my ex-colleagues feared being targeted by Kazakhstan and extradited back to face torture if they cooperated with me in any way. As a result, I lost ties to people who may have had some information or documents about my previous activity.

### 5. Ablyazov's refusal to name close associates is justified

In the July 15 Opinion Judge Parker finds that:

> Ablyazov explains that he refused to provide the names of certain individuals who could be witnesses because they would be faced with risk of torture and detention in Kazakh prison if their names became public. This explanation is inadequate. As Ablyazov well knows, this case deals with voluminous amounts of sensitive information that has been kept out of the public record pursuant to this Court's Protective Order. To the extent Ablyazov had concerns about disclosing these names, he could have designated them Confidential or sought a separate protective order.

I am puzzled as to why Judge Parker considers that the physical safety, and very lives, of these individuals can be risked in order to advance a civil suit. I suspect that Judge Parker considered my explanations to be overdramatic or paranoid. I respectfully submit that this Court should consider the numerous reports on human rights abuses and corruption of the judiciary in Kazakhstan, including those from the U.S. Department of State. I also respectfully suggest that if the Court does not believe my word on these matters, it may give more credit to the opinion of 17 United States Senators[4] who have issued an open letter to the Kazakh regime just a few days ago (Exhibit 11). This letter makes clear what happens to people who are seen as being even tangentially linked to me. There is only one reason why the Plaintiffs have requested me to name these individuals. They wish to detain them, strip them of assets, torture them and force them to sign false allegations against me. No Protective Order would matter or deter such actions. I respectfully submit that protecting people's lives is not a sanctionable offense.

## CONCLUSION

For the reasons explained above, Mukhtar Ablyazov respectfully requests that the Court set aside the Magistrate Judge's order directing Ablyazov to pay Plaintiffs' attorneys' fees and costs associated with the various motions to compel discovery responses from Ablyazov and his appearance at a deposition, as well as the fees and costs associated with Plaintiffs' Motion for Sanctions. Mukhtar Ablyazov also respectfully requests that the Court rejects the Magistrate Judge's recommendation that Ablyazov be precluded from offering or referring to any

---

[3] https://en.odfoundation.eu/a/8092,report-kazakhstan-pursues-former-top-managers-of-bta-bank-in-order-to-obtain-their-testimonies-against-mukhtar-ablyazov
[4] Including Senators Rubio and Sanders

documents that he did not produce in discovery in opposition to any dispositive motion or at trial.

Dated: France
August 1, 2019

Mukhtar Ablyazov

# ANNEX 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**A**  BTA BANK JSC,

Plaintiff,

v.

**B**  MUKHTAR ABLYAZOV,

Defendant.

Index No. 155684/2021

ORDER and
~~PROPOSED JUDGMENT~~

**WHEREAS**, on June 14, 2021, Plaintiff BTA Bank JSC ("Plaintiff") instituted the above captioned matter by filing a Motion for Summary Judgment in Lieu of Complaint with the Clerk of the within Court pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 3213 (*see* NYSCEF Doc. 2); and

**WHEREAS**, on January 14, 2022, the Honorable Frank P. Nervo, J.S.C. issued an Order granting Plaintiff's motion for summary judgment in lieu of complaint in its entirety and disposed of the case; and

**WHEREAS**, Justice Nervo's Order further directed that the movant submit an order on or before February 18, 2022 for the Court's review and approval in favor of Plaintiff for the amount set forth in Plaintiff's Motion for Summary Judgment in Lieu of Complaint.

**UPON**, this Court's January 14, 2022 Order on Motion (NYSCEF Doc. 36), it is hereby

**ADJUDGED** that BTA Bank JSC's Motion for Summary Judgment in Lieu of Complaint pursuant to CPLR §§ 3213 and 5303, in recognition of four final and conclusive foreign country judgments rendered by the Commercial Court of the Queen's Bench Division and the Chancery Division located in the United Kingdom between November 23, 2012 and November 26, 2013, is granted; it is further

1

**A**

**ADJUDGED** that the Plaintiff, having an office at 97 Zholdasbekov Street Md Samal-2

Almaty, 050051 Kazakhstan, have judgment and shall recover against Mukhtar Ablyazov,

having his last known address at 11 Rue Emeric David, 13100 Aix-en-Provence, France, the sum

of $6,669,481,109.87 (six billion, six-hundred sixty-nine million, four-hundred eighty-one

thousand, one-hundred nine dollars and eighty seven cents), plus interest at the rate of 9% per

annum from the date of June 14, 2021 through the date of judgment, as computed by the Clerk in

the amount of $ __**430,866,752.25**__, for the sum total of

**X**

$ __**7,100,347,862.12**__, and that the Plaintiff has execution therefor; and it is further

**A**

**ADJUDGED** that Plaintiff, having an office at 97 Zholdasbekov Street Md Samal-2

**B**

Almaty, 050051 Kazakhstan, have judgment and recover against Defendant, having his last

known address at 11 Rue Emeric David, 13100 Aix-en-Provence, France, costs and

**X**

disbursements as taxed by the Clerk in the amount of $ __**505.00**__ and that Plaintiff

shall have execution thereof.

ORDERED that judgment shall be submitted to the Clerk of the Court, and not chambers
or the part, unless directed otherwise.

Enter:

_____
Honorable Frank P. Nervo, J.S.C.

Dated: February 24, 2022

3 rd     Mar.     2022

FILED
Mar 03 2022
NEW YORK
COUNTY CLERK'S OFFICE

Clerk

2

ADJUSTED THIS BILL OF COSTS AT
**$505.00**

*Milton Adam Tingling*   **CLERK**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BTA BANK JSC,

Plaintiff,

v.

MUKHTAR ABLYAZOV,

Defendant.

Index No. 155684/2021

**BILL OF COSTS**

## COSTS AND DISBURSEMENTS for:
### costs before NOI

200,00

Disbursement for Request for Judicial Intervention Fee – CPLR § 8301(13) ...........$95.00
Disbursement for Index Number Fee – CPLR § 8301(13) .....................................$210.00
Disbursement for Motion Fee – § CPLR 8301 (13) ....................................~~$45.00~~
Disbursement for Serving copy of summons & complaint –
      CPLR §§ 8011(h)(1), 8301(d).......................................................................~~$175.00~~

Total: ...........~~$525.00~~
**$505.00**

### Attorney's Affirmation

The undersigned, Matthew L. Schwartz, an attorney duly admitted to practice in the

courts of the State of New York, hereby affirms the following under penalty of perjury:

I am a partner at the law firm of Boies Schiller Flexner LLP representing Plaintiff BTA

Bank JSC, and, as such, I am fully familiar with the facts and circumstances of the above

captioned matter, that the foregoing costs were correct and necessarily incurred in this action and

are reasonable in amount.

Dated: New York, New York
      February 17, 2022

Respectfully submitted,

/s/ *Matthew L. Schwartz*
Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP

**FILED**
**Mar 03 2022**
NEW YORK
COUNTY CLERK'S OFFICE

1

21 15568

55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Plaintiff BTA Bank JSC*

JUDGMENT

1-1
FILED AND
DOCKETED
Mar 03 2022
AT        08:35 A        M
N.Y. CO. CLK'S OFFICE

**Boies Schiller Flexner LLP**
**55 Hudson Yards, New York, NY 10001**

**(212) 446-2300**

2

dhl.com

2022 AUG 24 PM 2:30

**EXPRESS EASY**  **DHL**  **XED**  **DHL**

From: MUKHTAR ABLYAZOV
80 RUE DE LA ROQUETTE BASTILLE
75011 PARIS
FRANCE

Origin:
**ORY**

To: PRO SE INTAKE UNIT U.S.DISTRICT COURT SDNY

Contact:
U.S U.S

40 FOLEY SQUARE
**10007 NEW YORK**
UNITED STATES OF AMERICA

**US – ZYP – ZY4**

| | Day | Time |

Ref Code N/A

Content Description | Pces/Shpt Weight | Piece
0.18/0.5 KG | 1/1

DOCUMENTS

SDNY
US10007

WAYBILL 19 9348 3955

(2L)US10007+60000000

Reference

(J) JD01 4600 0102 5094 5721

Insérez le b

et que les n

Veuillez vou

Colocar guí

Por favor as
necesaria es
empacado,
dhl.com



FOR CLIENT (PRINT NAME)
...PACKAGE HAVE BEEN CHECKED
...SES, BY THE PERSON(S) NAMED

**24** Y CHECKED

R

REPACKED

EASY-OPEN-STRIP

LB1026 (6/11) OMN

EASY-OPEN-STRIP