UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

     Plaintiffs,

 -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

     Defendants.

15 Civ. 5345 (JGK) (KHP)

# [~~PROPOSED~~] JOINT PRETRIAL ORDER

Pursuant to Rule IV(A) of this Court's Individual Practices, the parties hereby submit the following proposed Joint Pretrial Order.

1. **The Full Caption of the Action (Individual Practices, Rule IV(A)(1))**

The full caption of the case is shown above and included here: *City of Almaty, Kazakhstan and BTA Bank JSC v. Mukhtar Ablyazov, Viktor Khrapunov, Ilyas Khrapunov, and Triadou SPV S.A.* The case was originally captioned *CF 135 FLAT LLC, CF 135 WEST MEMBERS LLC, and THE CHETRIT GROUP LLC v. TRIADOU SPV S.A. and CITY OF ALMATY*, a foreign city, but after the Court dismissed the interpleader claim that gave rise to this action, it formally adopted the captain above. [ECF No. 221.]

2. **Trial Counsel (Individual Practices, Rule IV(A)(2))**

    A.    Trial Counsel for Plaintiff, BTA Bank JSC:

        Matthew L. Schwartz    Boies Schiller Flexner LLP
        Craig Wenner    55 Hudson Yards
        John Zach    New York, NY 10001
        Anastasia Cembrovska    Tel: 212-446-2300
        Sabina Mariella    Fax: 212 446 2350
        Erica Sweeting
        Valecia Battle
        Brianna Hills
        Lindsey Ruff

    B.    Trial Counsel for Defendant, Triadou SPV S.A.:

        Deborah A. Skakel    Blank Rome LLP
        Alex E. Hassid    1271 Avenue of the Americas
        Robyn L. Michaelson    New York, NY 10020
                Tel: 212-885-5000
                Fax: 212-885-5001

        Steven J. Roman    Blank Rome LLP
                1825 Eye Street, N.W.
                Washington, DC 20006
                Tel: 202-420-2200
                Fax: 202-420-2201

3.     **Subject Matter Jurisdiction (Individual Practices, Rule IV(A)(3))**

  A.     Plaintiff's Statement:

As the Court held on September 25, 2017, it has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(d). [ECF No. 426 at 9.] Under Section 1441(d), "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(d). This action was originally filed as an interpleader action by CF 135 Flat LLC, CF 135 West Member LLC, and the Chetrit Group LLC (the "Chetrit Entities"), against the City of Almaty, Kazakhstan, and Triadou SPV S.A. [ECF No. 1-1.] As the Court previously concluded, the City of Almaty is a foreign state as defined in § 1603(a) and thus properly removed the interpleader action against it to this Court. [ECF No. 426 at 9; *see also id.* at 12 ("[E]ven the outright departure from the entire lawsuit of the foreign-state party that originally effected removal . . . 'does not deprive the District Court of subject matter jurisdiction' over the remaining claims in the action, 'as long as jurisdiction existed at the time the action was removed from state court.'" (quoting *In re Asbestos Prod. Liab. Litig.*, 536 F. App'x 183, 190 n.15 (3d Cir. 2013)); ECF No. 1254 at 10 ("the Court concluded that § 1441(d) 'authorizes the removal of the entire case, even if there are nonforeign defendants.'")] With a properly removed federal action under 28 U.S.C. § 1441(d), the Court granted the City of Almaty's motion to join BTA as a plaintiff under Rule 20 of the Federal Rules of Civil Procedure. [ECF No. 174 at 3–6.]

This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because (i) at the time this action was filed there was complete diversity of citizenship between the parties, and (ii) more than $75,000, exclusive of interest and costs, is at stake. At the time this action was filed, there was complete diversity because the Chetrit Entities are incorporated in either New York or

2

Delaware and all have principal places of business in New York [ECF No. 1-1 ¶¶ 2–4]; Triadou SPV S.A. is a special purpose investment vehicle incorporated under the laws of Luxembourg, with a principal place of business in Switzerland [ECF Nos. 1094 ¶ 17; 1286 ¶ 6]; and the City of Almaty is a foreign city in the Republic of Kazakhstan [ECF Nos. 1 ¶ 16; 1361 ¶ 1.] The amount in controversy well exceeds $75,000, as the amount in controversy at the time the interpleader action was filed was $21 million. The later joinder of BTA, which was positioned similarly to the City of Almaty, had no impact on the Court's diversity jurisdiction. Accordingly, this Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). [*See* ECF No. 103 at 3 n.1 (holding that "the Amended Interpleader Complaint satisfies the diversity jurisdiction requirements of 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and there is more than $75,000 in controversy").]

Alternatively, the Court has supplemental jurisdiction over BTA's claims against Triadou. [*See* ECF No. 1254 at 12-13.] The Court noted that "Triadou did not dispute that the crossclaims against it derived from the same nucleus of operative fact as the interpleader." *Id.* at 13. And "there can be no dispute that the question of the interpleader, whether the Chetrits should pay Triadou the money at issue, was deeply intertwined with the claims presently asserted against Triadou." *Id.* Recognizing "the unusual complexity of the case and the substantial investment of judicial resources that had already occurred," the Court held that its exercise of supplemental jurisdiction under 28 U.S.C. §§ 1367, 1441(d) "over the claims against Triadou was and is appropriate." *Id.*

B. Defendant's Statement:

The Court determined that it had subject matter jurisdiction over the interpleader claim at the time the City of Almaty, Kazakhstan ("Almaty") removed the original action to federal court pursuant to 28 U.S.C. §§ 1330 and 1441(d). Almaty, together with BTA Bank JSC ("BTA"),

3

then filed counterclaims against the Chetrit Entities and crossclaims against Triadou and several individuals.

On March 18, 2016, the Court dismissed the Chetrit Entities' interpleader complaint, thereby eliminating the basis for original jurisdiction—for claims asserted against a foreign state—as there were no longer any claims pending against Almaty. [ECF No. 103; *see also* 28 U.S.C. § 1330 (granting original jurisdiction over nonjury civil actions "against a foreign state"); 28 U.S.C. § 1441(d) (permitting removal of any civil action "against a foreign state").] The dismissal of the interpleader complaint also eliminated diversity jurisdiction. Even before that time, on November 12, 2015, Almaty and BTA had voluntarily dismissed their counterclaims against the Chetrit Entities (the only domestic parties named in Almaty and BTA's claims), [ECF No. 70], and diversity jurisdiction had never attached to Almaty and BTA's crossclaims against aliens. *See Sun Life & Health Insurance Co. v. Colavito*, 14 F. Supp. 3d 176 (S.D.N.Y. 2014) (assessing jurisdiction for counterclaim and crossclaim separately from interpleader).

On December 23, 2016, the Court dismissed Almaty and BTA's claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, thereby eliminating federal question jurisdiction for the crossclaims against Triadou. [ECF No. 257.]

Given the elimination of all of the bases for original jurisdiction, on January 20, 2017, Triadou moved for lack of subject matter jurisdiction that included a request for the Court to decline to exercise supplemental jurisdiction and dismiss the then-remaining crossclaims. [ECF No. 268.] On September 25, 2017, the Court denied Triadou's motion and held that it retained jurisdiction over the entire action based on 28 U.S.C. § 1330 and 28 U.S.C. § 1441(d)

4

due to Almaty's removal of the original interpleader claim against it.[1] [ECF No. 426 at 9, 13.] The Court therefore declined to address supplemental jurisdiction under 28 U.S.C. § 1367 or to consider whether jurisdiction over the crossclaims existed separately from the original action. [*Id.* at 13.]

On June 1, 2020, in connection with granting former defendant Ilyas Khrapunov's motion to dismiss a judgment recognition claim against him (only), the Court noted that the question of the interpleader claim "was deeply intertwined with the claims presently asserted against Triadou." [ECF No. 1254 at 13.] The Court further held that it had "properly decided to keep the remaining claims against Triadou because of the unusual complexity of the case and the substantial investment of judicial resources that had already occurred." [*Id.*]

While Triadou agrees the Court had discretion to exercise supplemental jurisdiction over the remaining claims, Triadou reserves all rights and arguments on appeal regarding the existence of subject matter jurisdiction as to the crossclaims pursuant to 28 U.S.C. §§ 1330 and 1441(d) and the determinations regarding 28 U.S.C. §1367 jurisdiction.

4. **Claims and Defenses To Be Tried (Individual Practices, Rule IV(A)(4))**

A. Plaintiff's Statement:

The remaining claims to be tried are Plaintiff BTA Bank's claims against Defendant Triadou SPV S.A. for conversion, unjust enrichment, constructive trust, and pursuant to C.P.L.R. § 5239. [*See generally* ECF No. 1428 (Order denying Triadou's motion for summary judgment).] BTA's claim for conversion seeks damages for the amount of misappropriated money traceable to BTA that Triadou used to make investments in the United States. BTA's claim for unjust

---

[1] On March 29, 2021, the Court dismissed Almaty from the case altogether. [ECF No. 1428 at 25.]

5

enrichment seeks to recover from Triadou the proceeds of Triadou's sales of real estate investments that were made with money stolen from BTA. BTA seeks a constructive trust over any profits or proceeds that Triadou derived from its investments in real estate in the United States or may otherwise be owed to Triadou from the sale of Triadou's interest in the Flatotel, including the funds currently held by a court-appointed receiver. Similarly, BTA's claim under C.P.L.R. § 5239 seeks an order directing that any funds or property derived from Triadou's sale of its interest in the Flatotel and Cabrini Medical Center be paid to BTA, including any property subject to Triadou's state-court judgments against the Chetrit Entities, such as the funds held by the Honorable Herman Cahn pursuant to the Monitorship Agreement dated May 4, 2016, which is the subject of the Court's earlier attachment order in this case. [*See* ECF No. 192 at 7.]

The Court has dismissed the following claims asserted against Triadou, which therefore will not be tried: violations of RICO (18 U.S.C. §§ 1962(a), (c), (d)), which were dismissed in light of changes in law subsequent to the filing of this action; claims for actual and constructive fraudulent transfer, which were dismissed as moot after the Court held that BTA acquired the fraudulently-conveyed asset in its settlement with Chetrit; and judgment recognition claims pursuant to C.P.L.R. § 5303, which were dismissed as to Triadou because BTA holds no judgment in Triadou's name. Claims against other defendants have also since been dismissed, either voluntarily as a result of settlement or by virtue of the Court's orders.

BTA and Triadou agree that Triadou does not maintain any affirmative defense to BTA's conversion claim. The parties agree that Triadou may raise an unclean hands defense to BTA's unjust enrichment claim. However, that defense will be tried to the Court, and the jury need not be instructed on it. Unjust enrichment already entails the consideration of equitable principles, and asking the jury to separately apply an equitable defense for the purpose of obtaining an

6

advisory verdict that the Court will need to revisit in any event will needlessly complicate the jury charge and deliberations.

BTA disagrees that Triadou may raise a bona fide purchaser defense to BTA's unjust enrichment claim. Triadou raised the bona fide purchaser defense to BTA's claims for "Actual and Constructive Fraudulent Conveyance" concerning Triadou's sale of the Flatotel. [ECF No. 1112 ¶ 167 (Triadou Answer).] Those claims were dismissed as moot following BTA's settlement with the Chetrit Entities. To the extent Triadou contends that its ultimate owner purchased Triadou and its then-parent company for value, purportedly without knowledge of any alleged money laundering, that may be a factor Triadou can argue to the jury with respect to the equitable considerations for unjust enrichment, but it is not a standalone defense. [*See, e.g.*, ECF No. 1287 at 37 (Triadou brief at 31) (referring to the alleged "bona fide" purchase of SDG and arguing that "equity and good conscience do not support recovery by BTA").] BTA's fraudulent conveyance claim concerned the sale of Triadou's interest in the Flatotel for less than fair value. By now raising the bona fide purchaser defense against BTA's unjust enrichment claim, Triadou distorts the nature of that claim. The "bona fide purchaser" that Triadou now refers to is Philippe Glatz and his purported purchase of SDG Capital from Ilyas Khrapunov, while BTA's unjust enrichment claim concerns the benefit *Triadou* received from its investments in real estate with money stolen from BTA. Philippe Glatz – the purported bona fide purchaser – did not acquire the real estate investments, Triadou did. Triadou should not be permitted to confuse the jury with an unpled and misapplied defense.

Finally, the Court has declined to allow Triadou to assert the defense of *in pari delicto*, which as a result will not be tried. [ECF No. 1465.]

7

B.   Defendant's Statement:

Triadou agrees that the remaining claims to be tried are BTA's claims for conversion, unjust enrichment, constructive trust, and pursuant to C.P.L.R. § 5239. Triadou agrees that BTA's claims for conversion and unjust enrichment should be tried to a jury. With regard to BTA's constructive trust claim and its claim pursuant to N.Y. C.P.L.R. § 5239, as the Court previously held, both are derivative and only "serve to provide additional remedies for [BTA's] claims of conversion and unjust enrichment." [ECF No. 1428 at 18-21.] Those derivative claims therefore need not be tried separately to the jury in any capacity (and necessarily fail if BTA's conversion and unjust enrichment claims fail).

Triadou also has two affirmative defenses to BTA's unjust enrichment claim that remain to be tried. First, Triadou has asserted the affirmative defense of unclean hands, under which Triadou contends that BTA committed willful misconduct that pertains to the matters in the lawsuit. The parties agree that Triadou's unclean hands defense applies to both BTA's unjust enrichment claim and its claim for a constructive trust.

Second, Triadou has asserted a bona fide purchaser defense because its ultimate owner purchased Triadou and its then-parent company for value, without knowledge of any alleged money laundering. While Triadou originally pled the defense in connection with BTA's fraudulent conveyance claims, [ECF No. 1112, ¶ 167], the defense applies equally and in the same way to BTA's unjust enrichment claim. BTA recognized as much in its conclusions of law in support of the attachment in this case, in which it recognized Mr. Glatz's status as a bona fide purchase of SDG could be a defense against BTA's claims. [*See* ECF 166 at 7]. BTA cannot claim prejudice or surprise from Triadou's invocation of this defense, which Triadou also pointed to on summary judgment and BTA acknowledged without objection in its opposition brief thereto, [ECF No. 1364 at 4 (acknowledging Triadou's argument that "Glatz was an

8

innocent purchaser").] There is also no prejudice to BTA, given that it had a full opportunity to conduct discovery into the nature of Mr. Glatz's legitimate purchase of SDG before the Court dismissed BTA's fraudulent conveyance claims as moot on September 30, 2019. [ECF No. 1171 at 8-9.] The facts underlying Triadou's defense will be tried in any event, where the Court held on summary judgment that BTA must prove "knowing receipt of stolen funds" by Triadou's (and its former parent company's) purchaser. [ECF No. 1428 at 17-18.]

The parties disagree that Triadou's affirmative defenses of unclean hands and bona fide purchaser should be included in the proposed charge and on the verdict form, and tried to a jury for an advisory verdict pursuant to Federal Rule of Civil Procedure 39(c). Triadou's affirmative defenses involve evidence that Triadou will present during trial regardless of whether the Court allows the jurors to provide an advisory verdict on those defenses.

Finally, while the Court determined that Triadou could not pursue *in pari delicto* as an affirmative defense, it nonetheless held that Triadou may present the evidence it would have used to support that defense in connection with its defense to BTA's unjust enrichment claim, which the Court acknowledged "may be 'illuminating' to determine whether 'equity and good conscience' require restitution." (ECF No. 1465 at 11 (quoting *Cobalt Multifamily Invs. I, LLC v. Arden*, 857 F. Supp. 2d 349, 363-64 & n.9 (S.D.N.Y. 2011)).] Thus, the Court determined that evidence relevant to Triadou's *in pari delicto* defense may still be presented to the jury. BTA does not dispute this.

The following claims previously asserted by BTA will not be tried: claims for alter ego and replevin, which were dismissed by the Court on June 21, 2016, [ECF No. 174 at 28-30]; causes of action brought pursuant to the RICO Act, 18 U.S.C. §§ 1962(a), (c), and (d), which were dismissed by the Court on December 23, 2016, [ECF No. 257]; causes of action for actual

9

and constructive fraudulent transfer pursuant to New York Debtor and Creditor Law, which were dismissed by the Court on September 30, 2019, [ECF No. 1171]; and, to the extent BTA may seek to use the legal theory of alter ego to prove that Triadou is liable for the conduct of any of the former individual defendants, those claims were dismissed on March 29, 2019 as time barred, [ECF 996 at 20.] No claim pursuant to C.P.L.R. § 5303 will be tried, and no claim against any of the former individual defendants remains to be tried.

5.   **Trials Days Needed and Jury Trial (Individual Practices, Rule IV(A)(5))**

   A.   Plaintiff's Statement:

Pursuant to the Court's May 20, 2021 Order, Plaintiff's claims for conversion and unjust enrichment are to be tried to a jury. [ECF No. 1451.] The parties disagree that Triadou has any affirmative defenses that should be included in the proposed charge and on the verdict form. The parties agree that BTA's claims for constructive trust and C.P.L.R. § 5239 will be decided by the Court following the trial.

The parties agree that they should need no more than 15 trials days for this matter. To the extent that the Court intends to impose time limits on the presentation of evidence, the parties disagree as to whether the time should be divided evenly. BTA has the burden of proof and will be presenting many if not most of the same witnesses that Triadou intends to call.[2] A more

---

[2]   For example, many witnesses will be offered through deposition designations, with each such witness presented once, playing the video-taped deposition testimony as designated by both sides. In this way, part of Triadou's defense case will be presented during BTA's affirmative case, but it is not straightforward to determine the allocation of that time attributable to BTA and Triadou, respectively.

10

appropriate split of time is two-thirds for BTA's affirmative case and one-third for what remains of Triadou's defense case.

B. Defendant's Statement:

Pursuant to the Court's May 20, 2021 Order, Plaintiff's claims for conversion and unjust enrichment will be tried to a jury (assuming BTA's statements above do not reflect an intention to withdraw its unjust enrichment claim). [ECF No. 1451.] The parties agree that the Court will decide BTA's derivative claims for constructive trust and pursuant to C.P.L.R. § 5239 after trial. The parties also agree that they should need no more than fifteen (15) trials days for this matter, inclusive of jury selection, opening statements, and closing arguments. [ECF No. 1440 at 1 ("The parties estimate that a jury trial in this case will take approximately three weeks, or fifteen consecutive trial days"); ECF No. 1452 at 1.]

Triadou believes the Court should impose time limits on the presentation of evidence, and split the time evenly between the parties to ensure that each side has a fair opportunity to present its case. BTA's request for an uneven time split is likely premised on its excessive witness list (comprised of more than 40 witnesses) and its intention to present irrelevant evidence and testimony concerning dismissed parties and claims. Triadou will need to cross examine any witnesses BTA actually presents live, and has several experts it must present too. Moreover, counsel for the parties are sophisticated and can determine the length of time captured by their respective deposition designations, which is common practice.

## 6. Consent To Trial By a Magistrate Judge (Individual Practices, Rule IV(A)(6))

The parties do not all consent to trial of the case by the magistrate judge.

## 7. Stipulations (Individual Practices, Rule IV(A)(7))

The parties are continuing to discuss stipulations at this time and intend to submit any factual or evidentiary stipulations prior to trial.

11

## 8. Trial Witnesses (Individual Practices, Rule IV(A)(8))

Plaintiff's Witness List is attached as **Exhibit 1**.

Defendant's Witness List is attached as **Exhibit 2**.

## 9. Deposition Designations (Individual Practices, Rule IV(A)(9))

Plaintiff's Deposition Designations, which includes Plaintiff's counter-/completeness-designations, are attached as **Exhibit 3**.

Defendant's Deposition Designations, which includes Defendant's counter-/completeness-designations, are attached as **Exhibit 4**.

The parties' attached designation charts presently include only each side's affirmative, counter-, and completeness-designations. Pursuant to the Court's May 25, 2022 Order, the parties will submit by flash drive objections and responses to any designations, as well as color-coded PDF transcripts on July 29, 2022, the date the Court has set for submission for responses and objections. [ECF No. 1504]. In the interim, the parties are continuing to confer and resolve objections to limit the issues to present to the Court.

## 10. Exhibits (Individual Practices, Rule IV(A)(10))

Plaintiff's Exhibit List is attached as **Exhibit 5**.

Defendant's Exhibit List is attached as **Exhibit 6**.

The parties' attached Exhibit Lists presently include only exhibits. The parties continue to negotiate stipulating to the admissibility of exhibits and will submit revised Exhibit Lists on July 29, 2022 that include any unresolved objections and responses thereto, along with a flash drive containing each side's proposed trial exhibits.

Dated: July 8, 2022            Respectfully submitted,
     New York, N.Y.

By: /s/ *Deborah A. Skakel*            By: /s/ *Matthew L. Schwartz*
    Deborah A. Skakel                 Matthew L. Schwartz
    Alex E. Hassid                    Craig A. Wenner
    Robyn L. Michaelson

    Blank Rome LLP                    Boies Schiller Flexner LLP
    1271 Avenue of the Americas       55 Hudson Yards
    New York, NY 10020                New York, New York 10001
    Tel: 212-885-5000                 Telephone: (212) 446-2300
    Fax: 212-885-5001

                                         *Attorneys for Plaintiff BTA Bank JSC*

    Steven J. Roman (admitted *pro hac vice*)
    Blank Rome LLP
    1825 Eye Street NW
    Washington, DC 20006
    Tel: 202-420-2200
    Fax: 202-420-2201

    *Attorneys for Defendant Triadou SPV S.A.*

*[Handwritten:]* So ordered
*[Signature]* John G. Koeltl
U.S.D.J.
10/24/22

*[Handwritten:]* Because the Exhibits are subject to further modification, the Court is not approving the Exhibits that were attached to the Joint Pre-Trial Order at this time.
*[Signature]* John G. Koeltl
10/24/22  U.S.D.J.

13