

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

October 26, 2022

**BY ECF**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
            Case No. 15 Civ. 5345 (JGK) (KHP)

Dear Judge Koeltl:

      We represent plaintiff BTA Bank, JSC.  At Monday's conference, Your Honor indicated that it would be helpful to know which of the pending motions *in limine* are highest priority from the perspective of trial preparation logistics.  From plaintiff's perspective, the resolution of our motion *in limine* number 2 (ECF Nos. 1538, 1539, 1552) would be most useful in finalizing the parties' trial presentations.  The resolution of that motion will impact the admissibility of dozens of trial exhibits marked by both parties, as well as substantial deposition testimony from several witnesses.

      In connection with the outstanding motions, we also wish to call to the Court's attention an opinion and order issued last week by Magistrate Judge Parker in the related case (19 Civ. 2645), which is relevant to Triadou's pending motion *in limine* number 1 (ECF Nos. 1511, 1512, 1596).  Judge Parker's opinion (at pages 2 and 7) discusses the relevance and otherwise analyzes certain of the worldwide freezing orders that are the subject of Triadou's motion.  A copy of Judge Parker's order, which we provide without argument, is attached.

      Thank you for your consideration.

                                      Respectfully,

                                      /s/ Matthew L. Schwartz
                                      Matthew L. Schwartz

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

CITY OF ALMATY, KAZAKHSTAN and

BTA BANK JSC,

                                    Plaintiffs,

                 -against-

FELIX SATER, et al.,

                                    Defendants.

-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/18/2022
```

**19-CV-2645 (JGK) (KHP)**

**OPINION AND ORDER ON REQUEST FOR PROTECTIVE ORDER**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiffs City of Almaty, Kazakhstan ("Almaty") and BTA Bank JSC ("BTA") have moved for a protective order striking certain topics from Defendant Felix Sater's Notices of Rule 30(b)(6) Depositions to Plaintiffs and precluding Sater from deposing non-party Kenes Rakishev, former chairman of the board of directors of BTA and majority shareholder of BTA. (ECF No. 422.) For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

Plaintiffs brought this action against Felix Sater; two companies he owns, Bayrock Group Inc. ("Bayrock Inc.") and Global Habitat Solutions, Inc. ("Global Habitat"); Daniel Ridloff, a former business associate of Sater's; RRMI-DR LLC, a company owned by Ridloff; Ferrari Holdings LLC; and MEM Energy Partners LLC ("MEM Energy"). Plaintiffs allege that Sater and Ridloff assisted Mukhtar Ablyazov, former chair of BTA Bank, JSC ("BTA"), and Viktor

1

Khrapunov, former mayor of the City of Almaty, Kazakhstan, to launder money that Ablyazov and Khrapunov stole from Plaintiffs.

Plaintiffs engaged a company called Arcanum to assist them in developing evidence and intelligence about the whereabouts of their stolen funds and have initiated legal proceedings in an attempt to recover the stolen funds, including in this Court in a related 2015 action encaptioned *City of Almaty, Kazakhstan et al. v. Ablyazov et al*. (the "Triadou" case). In late 2009, a court in the United Kingdom ("U.K.") issued a worldwide freezing order against all of Ablyazov's assets. That order, in its amended form, covers multiple entities and offshore companies controlled by Ablyazov and other affiliated individuals.[1] The freezing order prohibits Ablyazov from diminishing or alienating any of his assets, including any held by nominees, agents, or shell companies, without consent of the U.K. courts and BTA Bank's counsel. The freezing order also prohibits third parties from aiding Ablyazov to violate its terms.

Plaintiffs allege that Ablyazov and Khrapunov co-mingled the stolen funds and, with assistance of Khrapunov's son Ilyas, laundered the money through thousands of shell entities, including in the U.S. In or about 2011, Ilyas allegedly asked Sater to help launder funds that were subject to the U.K. court's freezing orders. As part of the scheme, Sater entered into a personal consulting agreement with Swiss Promotion Group ("SPG"), another company owned and controlled by Ilyas. Sater allegedly assisted Ablyazov and the Khrapunovs in funneling

---

[1] For a description of the background of this case and the Triadou case, see generally *City of Almaty, Kazakhstan v. Ablyazov et al.*, 15-cv-5345, 2019 WL 4747654 (S.D.N.Y. Sept. 30, 2019); 2019 WL 4126445 (S.D.N.Y. Aug. 30, 2019); 2019 WL 1430155 (S.D.N.Y. March 29, 2019); 2018 WL 3579100 (S.D.N.Y. July 25, 2018); 2018 WL 1583293 (S.D.N.Y. March 27, 2018); 278 F. Supp. 3d 776 (S.D.N.Y. 2017); 226 F. Supp. 3d 272 (S.D.N.Y. 2016); 2016 WL 5945912 (S.D.N.Y. June 24, 2016). For more information on the background of this case see ECF Nos. 1, 61-70, 83, 120, 266, 267, 399.

stolen funds through entities that Sater and Ridloff control.  Plaintiffs also contend that Sater himself received some of the stolen funds in connection with his work for Ilyas.

Among other defenses, Sater asserts that Plaintiffs' claims against him are barred by a release.  The release in question is contained in an agreement (the so-called Confidential Assistance Agreement) between and among Plaintiffs, Kazakhstan and a company called Litco that is owned by Sater.  The agreement contains a broad release of claims against Litco and related entities and persons.  Plaintiffs contend that the agreement and the release in it are void ab inititio because Litco fraudulently induced them to enter into it by concealing that Sater was an owner of Litco.

## THE DEPOSITION NOTICES

Sater has served Rule 30(b)(6) deposition notices on Plaintiffs with nearly identical lists of topics with the exception of topics pertaining to Kenes Rakishev's relationship with various people that are included only on the BTA notice.  Rakishev is the majority shareholder of BTA.  The topics listed include:

- Evidence supporting Almaty's claim that the Sater Defendants (or any of them) received funds belonging to Almaty in connection to the World Health Networks Scheme.
- Evidence supporting Almaty's claim that the Sater Defendants (or any of them) received funds belonging to Almaty in connection to the Trump SoHo Scheme.
- Evidence supporting Almaty's claim that the Sater Defendants (or any of them) received funds belonging to Almaty in connection to the PCS Scheme.
- Evidence supporting Almaty's claim that the Sater Defendants (or any of them) received funds belonging to Almaty in connection to the Syracuse Center Scheme.
- Evidence supporting Almaty's claim that the Sater Defendants (or any of them) received funds belonging to Almaty in connection to the Tri-County Mall Scheme.
- Almaty's execution of the Confidential Assistance Agreement in or about June 2015, including the release provision therein.
- Almaty's/BTA's knowledge of Litco and Felix Sater's role with Litco.

- Assets recovered by Almaty/BTA in its worldwide effort to recover assets purportedly stolen by Ablyazov.
- Lawsuits prosecuted by Almaty/BTA in connection with its worldwide asset recovery efforts.
- Corruption and attempted bribery committed by agents of Almaty.
- Almaty's/BTA'sa knowledge of the FBI 302 and Arcanum's communications with Christopher Steele.
- Almaty's/BTA's relationship with Arcanum.
- Almaty's/BTA's relationship with BTA and Ablyazov.
- Almaty's/BTA's legal actions against Viktor Khrapunov and Ilyas Khrapunov.
- Almaty's/BTA's pleadings in this case.
- Almaty's/BTA's pleadings in the *Triadou* case, also pending before this court.
- BTA's relationship with Kenes Rakishev and Karim Massimov.
- Kenes Rakishev's relationship with Karim Massimov.
- Kenes Rakishev's relationship with Vladimir Putin.
- Kenes Rakishev's relationship with Hunter Biden.
- Kenes Rakishev's relationship with Ramzan Kadyrov.
- Kenes Rakishev's compensation received from BTA.
- Kenes Rakishev's personal net worth and the location of his assets.
- Misappropriation of assets from BTA by Ablyazov.

Plaintiffs object to most of the topics as being overly broad and vague and seeking information on irrelevant topics designed to purely harass Plaintiffs.

Sater also served a deposition notice on BTA for the deposition of Rakishev even though he is not currently employed by BTA and is located outside of the United States. BTA states it does not have control over Rakishev and that his deposition is not needed because he has no relevant information as evidenced from his deposition testimony in the *Triadou* case, which it produced to Sater.

## DISCUSSION

District courts have "broad discretion to manage the manner in which discovery proceeds." *Diamond v. 500 SLD LLC*, 2022 WL 956262, at *2 (S.D.N.Y. Mar. 30, 2022) (quoting *In re*

4

*Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003)).  A court may issue a protective order to safeguard a party or person "from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), "but the moving party bears the burden of establishing good cause for such a protective order." *Rekor Sys., Inc. v. Loughlin*, 2022 WL 488941, at *1 (S.D.N.Y. Feb. 17, 2022) (quoting *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015)).  "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted).  Ultimately, "[t]he grant and nature of protection is singularly within the discretion of the district court." *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

1. **Rule 30(b)(6) Depositions**

All 30(b)(6) deposition topics are constrained by Rule 26(b)(3)—meaning that they must seek information relevant to the claims and defenses that is proportional to the needs of the case.  Further, the party seeking the deposition must describe the deposition topics with "reasonable particularity."  Fed. R. Civ. P. 30(b)(6).  "Reasonable particularity" requires the topics listed to be specific as to subject area and to have discernible boundaries.  *Winfield v. City of New York*, 15-cv-5236, 2018 WL 840085, *5 (S.D.N.Y. Feb. 12, 2018).  Courts must scrutinize Rule 30(b)(6) deposition topics to ensure they are not a tool for abuse of the discovery process.

Provided the topics listed meet the above criteria, the corporate defendant must produce someone familiar with the topics listed and, if one person cannot address all the topics,

produce persons able to give complete, knowledgeable and binding answers on its behalf. *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 268-69 (2d Cir. 1999), *superseded by statute on other grounds as recognized by Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 328493, at *35 (S.D.N.Y. June 9, 2016). If a corporation genuinely cannot provide an appropriate designee because it does not have the information, cannot reasonably obtain it from other sources, and still lacks sufficient knowledge after reviewing all available information, then its obligations under Rule 30(b)(6) cease. *See, e.g.*, *Klorczyk v. Sears, Roebuck & Co.*, No. 13-cv-257 (JAM) (HBF), 2015 WL 1600299, at *5 (D. Conn. Apr. 9, 2015) (quoting *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012)); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 38-39 (D. Mass. 2001) (citing Fed. R. Civ. P. 30(b)(6) (requiring testimony only as to "matters known or *reasonably available* to the organization") (emphasis added)).

Plaintiffs object to a number of topics on the grounds of relevance, including the topics seeking information about Rakishev's relationship with various people unrelated to this action, Rakishev's compensation, personal net worth and location of his assets, Arcanum's communications with Christopher Steele and a specific FBI report, "corruption and attempted bribery committed by agents of Almaty," and assets recovered by Plaintiffs thus far through their worldwide investigation and litigations.[2] Sater argues he needs information bearing on whether Ablyazov and Khrapunov actually stole and laundered money to defend against the claim that he assisted them in laundering stolen funds and profited therefrom and that the topics are all designed to learn this information. This argument is not persuasive. The

---

[2] These topics are numbers 8, 10, 11, 12, 14, 15, 16 and 18 of the BTA notice and 8, 10 and 11 of the Almaty notice.

Amended Complaint sets forth detailed allegations about the stolen funds, including decisions from courts in the U.K., findings from the Organized Crime and Corruption Reporting Project[3] ("OCCRP") and other investigative journalist reports, and information from a financial advisor/accountant to Ablyazov and Khrapunov. It also names companies that received stolen funds and provides a flow chart of the movement of the funds into the real estate investments at issue. Sater does not need information on all of the money stolen—he only needs to understand why the money used for the investments in which he was involved is alleged to be stolen from Plaintiffs. The Complaint sets forth the factual basis for these allegations, and Sater may question Almaty about these specific allegations, but not more broadly. The deposition topics as written are far too broad and not focused on the flow of money into the investments at issue in this case. Thus, they are improper as written.

The Court also notes that all of the investments at issue occurred *after* the worldwide freezing order was in place. So, even if there were some argument that Ablyazov or Khrapunov did not steal funds, aid that circumvented the freezing order would still be improper. In other words, whether the funds subject to the freezing order are actually stolen is beyond the scope of this litigation. To be sure, Sater can seek information about why Plaintiffs believe the source of funds used for the real estate investments at issue in this were funds subject to the freezing order and originally from BTA or Almaty; however, he is not entitled to information about all of the assets recovered thus far or worldwide efforts to recover money. Sater's questions must

---

[3] The OCCRP is a non-profit organization and global network of investigative journalists that specializes in organized crime and corruption.  www.occrp.org.

7

focus solely on the source of the funds used for the specific investments in which he was involved--the only relevant inquiry for his defense.

Sater's explanation for questioning Plaintiffs about Rakishev and his relationships with various individuals who have no relationship to this case, his new worth and the FBI's interactions with Christopher Steele, and unspecified "corruption and attempted bribes" by unnamed Almaty-related individuals are based on speculation and are frivolous lines of inquiry. It is further unclear how BTA or Almaty would have knowledge of the personal relationships of Rakishev or the FBI's dealings with Christopher Steele. None of these topics has any bearing on whether the funds used for the real estate investments at issue are traceable to Ablyazov and Khrapunov and subject to the freezing orders. Nor do they have any bearing on the scope of the release that forms the basis for Sater's defense. Furthermore, the Court already took testimony from various parties regarding Plaintiffs' knowledge of Sater's ownership of Litco in the *Triadou* case, and Sater has full access to that testimony and the Court's prior decisions on this issue. Indeed, including these topics in the notice is an abuse of the judicial process and contrary to the mandate of Rule 1, which requires parties to utilize discovery with the goal of securing the just, speedy and inexpensive determination of every action and Rule 26(g), which requires attorneys to sign discovery requests and certify that they are, among other things, nonfrivolous and made with a proper purpose.

Plaintiffs object to other topics because they are not sufficiently specific, including topics regarding lawsuits filed in connection with Plaintiffs' asset recovery efforts, misappropriation of assets, their relationship with Arcanum, and lawsuits against the

8

Khrapunovs.[4] Sater contends that he listed these topics because he is "interested in finding out how and why 'thousands of shell entities' were formed, how Plaintiffs were able to uncover them and determine they were shells, and spend the resources to make such determinations[.]" (ECF No. 429.) Sater's explanation does little to cabin these broad topics in a way that would allow Plaintiffs to reasonably prepare for them. As such they are overly broad and non-compliant with the requirements and purpose of Rule 30(b)(6). *Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 410415, at *4 (S.D.N.Y. Aug. 28, 2008).

For the above reasons, the protective order is granted as to the above-discussed deposition topics.

### 2. Deposition of Non-Party Kenes Rakishev

Federal Rule of Civil Procedure 30 specifies when a deposition may be taken and the notice to be provided to the proposed witness and other parties. A party can be compelled to comply with a Rule 30 deposition notice. However, non-parties cannot be compelled to sit for a deposition unless they have been served a subpoena pursuant to Federal Rule of Civil Procedure 45. *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408 (S.D.N.Y. 1994). In either case, the topics of any deposition must be relevant to the claims and defenses, and the deposition itself should be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(3).

Plaintiffs argue that Rakishev has no information relevant to the claims and defenses in this matter and that the proposed topics, which largely mirror the Rakishev-related topics listed in

---

[4] These topics are numbers 9, 17, 19 and 21 of the BTA notice and 9, 12 and 14 of the Almaty notice.

9

the Rule 30(b)(6) deposition notice, are not relevant.  They also argue that they do not control Rakishev, who is not an employee or officer and merely a majority shareholder.  Thus, they contend any deposition cannot be compelled absent a subpoena or the Hague process.

The Court agrees that Rakishev is unlikely to have any personal knowledge relevant to the claims and defenses.  Rakishev testified in the *Triadou* case and had little personal knowledge to contribute.  Further, the information Sater seeks regarding BTA's knowledge of Sater's ownership of Litco also was addressed in the *Triadou* case – Sater testified that he purposefully hid his ownership of Litco from Plaintiffs, and his lawyer negotiated an agreement that prohibited Arcanum from divulging his ownership of Litco to Plaintiffs.  This Court also found that there was no evidence that Plaintiffs knew of Sater's ownership of Litco until he revealed it long after the agreement was signed.  *City of Almaty, Kazahkstan v. Ablyazov*, 15-cv-05345, 2018 WL 11270087 (S.D.N.Y. Dec. 3, 2018); *City of Almaty, Kazahkstan v. Ablyzaov*, 15-cv-05345, 2019 WL 2865102 (S.D.N.Y. July 3, 2019); *City of Almaty, Kazahkstan v. Ablyazov*, 15-cv-05345, 2020 WL 13558984 (S.D.N.Y. May 19, 2020).  To the extent there remain unanswered questions about BTA's knowledge that Sater owned Litco (which this Court doubts), they can be posed in the 30(b)(6) deposition.  A separate deposition of Rakishev is not necessary or proportional to the needs of the case, especially given the extensive testimony on this issue already.  Accordingly, assuming without deciding that Rakishev is subject to a Rule 30 deposition notice, the motion for a protective order is granted.  However, should Sater learn during the Rule 30(b)(6) deposition or other discovery that Rakishev may have personal knowledge of Sater's ownership of Litco at the time the Litco agreement was signed, he may then re-raise the possibility of deposing Rakishev.

Having found the deposition of Rakishev is not proportional to the needs of the case and unlikely to elicit relevant information, the Court does not address the separate issue of whether he is even subject to a Rule 30 notice.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a protective order (ECF No. 422) is GRANTED.

**SO ORDERED.**

Dated: October 18, 2022
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge