

CRAIG WENNER
Tel: (212) 909-7625
Email: cwenner@bsfllp.com

November 9, 2022

**BY ECF**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    **Re:**    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.,*
           **Case No. 15 Civ. 5345 (JGK) (KHP)**

Dear Judge Koeltl:

    We represent Plaintiff BTA Bank JSC in the above-captioned matter. As the Court is aware, trial is scheduled to begin on November 29, 2022 [ECF No. 1629]. BTA respectfully requests that the Court permit three trial witnesses who are unable to travel to New York, but who are willing to testify at trial, to provide live testimony via two-way videoconferencing, pursuant to Federal Rule of Civil Procedure 43(a). Triadou consents to this relief with respect to one witness, but as of the time of the filing of this letter, was still formulating its views as to the other two.

## LEGAL STANDARD

    The Court may "permit testimony in open court by contemporaneous transmission from a different location," for "good cause in compelling circumstances" and "with appropriate safeguards." Fed. R. Civ. P. 43(a); *see Rodriguez v. Gusman*, 974 F.3d 108, 114 (2d Cir. 2020) (under Rule 43(a), judges have "discretion to allow live testimony by video"). The Rule contemplates situations where "a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." Fed. R. Civ. P. 43(a) Advisory Committee's Note to 1996 Amendment. The Court has "wide latitude…in controlling the mode and order of [evidence's] presentation to promote the effective ascertainment of the truth." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006).

## ARGUMENT

    BTA will present its case principally through a combination of live witness testimony and, for witnesses who are outside of the subpoena power of the Court and unwilling to testify, deposition designations. Of the witnesses who BTA anticipates will testify live, all but three are able to travel to New York and appear in person. BTA therefore seeks permission for the live video testimony of the following witnesses: (i) John Hargett, (ii) Nurlan Mukhametzhanov, and (iii) Zaure Junussova (the "Witnesses"). As explained below, the relevance to trial of the Witnesses' testimony, their travel and health concerns, and the ready availability of effective live video conferencing equipment satisfy Rule 43(a)'s requirements for "good cause in compelling



circumstances" and "appropriate safeguards."

## I.   There is Good Cause in Compelling Circumstances To Allow The Witnesses To Testify By Live Remote Means

### A.  Plaintiff's Forensic Document Examiner, John Hargett

Mr. Hargett is a former Chief Document Examiner for the U.S. Secret Service and is one of BTA's expert witnesses, but is unable to travel to New York due to health concerns.

Mr. Hargett – who has both provided an expert report and been deposed by Triadou, and who was never the subject of any *Daubert* motion – opines on a very narrow but critical set of facts in the case. A key disputed issue in this case concerns whether the funding for Triadou's investments came from Mukhtar Ablyazov (as Plaintiff will prove) or Gennady Petelin (as various individuals associated with the Defendant have testified). The jury will be presented with competing versions of the same transaction documents: one set bearing the signature of Ablyazov and one set bearing the signature of Petelin. Both sets of documents bear the signature of Ilyas Khrapunov, a key co-conspirator and Ablyazov's son-in-law. Mr. Hargett conducted a handwriting analysis of the Ablyazov version of the documents and will opine that the documents were signed by Ablyazov and Ilyas Khrapunov based on known samples of their handwriting. Ablyazov—through deposition designations—denies that he signed the document.

Mr. Hargett is unable to travel due to his current health condition. In the past year, Mr. Hargett's health has severely deteriorated.[1] Absent these health issues, Mr. Hargett would willingly testify in person, but his physical movement is severely limited, and his health imposes a significant restriction on his ability to travel. "Serious health conditions inhibiting a witness's ability to travel constitute good cause and compelling circumstance to permit live testimony in open court via video conference." *Sawant v. Ramsey*, No. 07-cv-980, 2012 WL 1605450, at *3 (D. Conn. May 8, 2012). Mr. Hargett's inability to travel due to his medical condition warrants the use of contemporaneous testimony via video conference. After meeting and conferring with counsel for Triadou, our understanding is that Triadou does not oppose our application for Mr. Hargett to testify remotely. Fed R. Civ. P. 43(a) Advisory Committee's Note to 1996 Amendment ("Good cause and compelling circumstances may be established with relative ease if all parties agree that testimony should be presented by transmission.").

### B.  Former BTA Employee, Zaure Junussova

Ms. Junussova currently lives in Turkey and cannot travel both due to her health and her responsibilities in caring for her young child. She was previously deposed by both BTA and Triadou in Kazakhstan, where she lived at the time. Ms. Junussova is a former employee of BTA who left the bank in 2009. BTA has no means of compelling her to travel. Ms. Junussova will testify in Russian with a translator.

Her expected testimony is core to BTA's case because she was directly involved in the management and issuance of sham loans through BTA's former UKB6 division—the very funds

---

[1]     We can provide additional details under seal if it would be helpful to the Court.



that Ablyazov and Ilyas Khrapunov later laundered into the United States.  We expect that she will testify about how the scheme worked and authenticate records showing the flow of funds out of BTA and through a series of offshore companies controlled by Ablyazov and his co-conspirators.  Her testimony directly concerns the source of the ill-gotten funds that BTA will prove were converted by and unjustly enriched Triadou.

Ms. Junussova has informed us that she is unable to travel, citing her health and childcare needs.  She would face substantial hardship by traveling to New York, and BTA has no means of otherwise securing her live testimony.  Turkey is over 5,300 miles from New York, and the flight time between Turkey and New York City is at least 11 hours.  *See* Flight Distance and Time, TravelMath,  http://www.travelmath.com/from/Turkey/to/New+York,+NY (last visited Nov. 4, 2022).  In the time it takes Ms. Junussova to travel and testify, she would be away from her child for almost a week.  These difficulties constitute a compelling circumstance to permit her remote testimony at trial.  *See Castillo Frias v. Martinez*, 19-cv-2792 (RPK)(PK), 2021 WL 2661093, at *1 (E.D.N.Y. Jun. 28, 2021) (the "distant location of [] witnesses and the challenges of travel during the global COVID-19 pandemic present good cause in compelling circumstances for remote testimony"); *Virtual Architecture, Ltd. V. Rick*, 08 Civ. 5866 (SHS), 2012 WL 388507, at *2 (S.D.N.Y Feb. 7, 2012) (finding expense and inconvenience of international travel sufficient to permit witness to testify remotely from the Seychelles); *Rand Int'l Leisure Prods., LLC*, No. 10-71497 (Bankr. E.D.N.Y. 2010) ("To require these witnesses [in Taiwan and Canada] to travel to [New York] would be an undue burden on them and is a compelling circumstance"); *Dagen v. CFC Grp. Holdings*, 00 Civ. 5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003) (permitting testimony by telephone of witness based in Hong Kong where absence of testimony would cause incurable prejudice and international travel considerations were concern).  The value of Ms. Junussova's live testimony greatly outweighs any prejudice to Triadou (of which there is none).  For these reasons, Ms. Junussova should be permitted to testify remotely.

We conferred with Triadou, and our understanding is that Triadou was still considering its position and will be submitting a response to our application with regard to Ms. Junussova.

### C.  *Former BTA Head of Treasury, Nurlan Mukhametzhanov*

Finally, Mr. Mukhametzhanov currently resides in and cannot leave Russia.  He was identified in BTA's initial disclosures in discovery and is on BTA's trial witness list, though he was never deposed.  Mr. Mukhametzhanov previously worked as the head of the treasury department at BTA, where he was responsible for the bank's cash flow and credit.  He stopped working there in 2013, and BTA has no control over him presently.  Mr. Mukhametzhanov will testify in Russian.

Mr. Mukhametzhanov is expected to provide testimony that will help the jury understand what BTA Bank was, including its size and the scope of its financial services.  This context will help the jury understand how it was that a particular credit department within the bank—referred to as UKB6—could perpetuate a fraud that went undetected for a decade.  (BTA will prove that the money stolen from BTA through the UKB6 fraud are the same funds that were invested in the United States by Triadou.)  These facts are important to responding to Triadou's argument that BTA was complicit in the wrongdoing of UKB6—what Triadou claims is its "unclean hands" defense. Mr. Mukhametzhanov is also expected to testify concerning the circumstances of BTA's



insolvency and nationalization in 2009. It was after the nationalization that BTA obtained worldwide freezing orders against Ablyazov's assets from the U.K. courts. Defendant Triadou has designated testimony from Ablyazov contending that the nationalization was politically motivated—we anticipate this is part of the evidence from which Triadou will argue that BTA's claims are themselves motivated by the Republic of Kazakhstan's purported political persecution of Ablyazov, which is the subject of a BTA motion *in limine*. [*See* ECF No. 1548.] Mr. Mukhametzhanov will explain that the bank became insolvent *before* the nationalization, when it could not meet its financial obligations as the liquidity crisis reached Kazakhstan and Ablyazov's fraud was revealed. That insolvency is what led to the bank's nationalization and later default on other external debt. These facts are important evidence that directly refutes Ablyazov's claim.

Our understanding is that Mr. Mukhametzhanov cannot obtain a visa to travel outside Russia. Mr. Mukhametzhanov explained that due to outstanding civil money judgments entered against him, Russian government regulations prohibit him from crossing Russia's border. (BTA has no judgments against Mr. Mukhametzhanov.) Courts find good cause where it is legally infeasible for a witness to travel. *See Angamarca v. Da Ciro, Inc.*, 303 F.R.D. 445, 447 (S.D.N.Y. 2012) ("[t]he legal infeasibility of attending a deposition or trial in person because of one's immigration status rises to the level of compelling circumstances"); *see also Lopez v. Miller*, 915 F. Supp. 2d 373, 396 n.9 (E.D.N.Y. 2013) (allowing video testimony from a witness in a foreign country who could not legally enter the United States); *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 668-69 (D.C. Cir. 2007) (videoconference testimony from Egypt appropriate where the witness could not obtain a visa to enter the United States). Without video testimony, the jury will not receive the benefit of Mr. Mukhametzhanov's knowledge of BTA's operations and collapse—during a critical time in this case—because it is impossible for him to leave Russia.

We conferred with Triadou, and our understanding is that Triadou was still considering its position and will be submitting a response to our application with regard to Mr. Mukhametzhanov.

## II.   Appropriate Safeguards

The remaining consideration under Rule 43(a)—"appropriate safeguards"—is met. *See* Fed. R. Civ. P. 43(a) Advisory Committee's Note to 1996 Amendment (safeguards must be adopted to ensure the "accurate identification of the witness" and "accurate transmission" of witness testimony, and to ensure that "advance notice is given to all parties" so that "the opportunity to argue for attendance of the witness at trial is protected").

Plaintiff's counsel already provided sufficient advance notice of its request for the Witnesses to appear remotely, and will continue to coordinate with the Witnesses, the Court and its staff, and Defendant's attorneys to provide the same method and opportunity for examination as for in-court testimony. *See Rinaldi v. SCA La Goutte, D'Or*, 16-CV-1901 (VSB), 2022 WL 443779 at *2 (S.D.N.Y. Feb. 14, 2022) (finding "appropriate safeguards" where the cross-examining party is given full advance notice of all documents to be used on direct examination because "[m]odern videoconferencing technology does allow for contemporaneous presentation of exhibits."). Since the global COVID-19 pandemic began, video testimony has become routine and there is little to no risk of prejudice. *Castillo Frias*, 2020 WL 2661093, at *1 (minimal risk of prejudice where "videoconference technology allows for live synchronized audio and visual feeds"); *see also Flores v. Town of Islip*, 18-cv-3549, 2020 WL 5211052, at *2 (noting that even



"well before the pandemic, it had been increasingly the case that witnesses would appear via some form of video or electronic technology"). Plaintiff will adopt safeguards to ensure that the Witnesses can be placed under oath, Defendant has an opportunity to cross examine, exhibits are properly delivered and transmitted by video, and everyone in the courtroom is able to see and hear the witness.

## <u>CONCLUSION</u>

BTA respectfully requests that the Court grant this application pursuant to Rule 43(a) of the Federal Rules of Civil Procedure, finding good cause and compelling circumstances to warrant the Witnesses' live remote testimony, via videoconferencing technology that meets the appropriate safeguards.

We thank the Court for its attention to these matters.

Respectfully,

/s/ *Craig Wenner*
Craig Wenner