UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CITY OF ALMATY, KAZAKHSTAN, ET AL.,

                    Plaintiffs,

      - against -

MUKHTAR ABLYAZOV, ET AL.,

                    Defendants.
_____

15-cv-5345 (JGK)

MEMORANDUM
OPINION & ORDER

JOHN G. KOELTL, District Judge:

    This Memorandum Opinion & Order disposes of all but two of the various motions in limine made by the parties. The opinion considers first the motions by BTA Bank JSC ("BTA"), then the motions by Triadou SPV S.A. ("Triadou"). The Court assumes the parties' familiarity with the facts and procedural history of this case. The papers on BTA's third motion in limine, ECF No. 1540, and Triadou's fifth motion in limine, ECF No. 1523, were filed under seal because they concern testimony a third party designated as confidential. The Court's Memorandum Opinion & Order resolving those two motions therefore will also be filed under seal. Decisions on these motions in limine are subject to revision based on the evidence at trial, which is scheduled to begin on November 29, 2022.

**I.**

**A.**

BTA's first motion in limine sought to preclude or limit
Triadou's use of materials, known as the "Kazaword documents,"
stolen from officials of the Republic of Kazakhstan
("Kazakhstan"). ECF No. 1536. After the parties met and
conferred, BTA agreed to withdraw the motion based on Triadou's
representation that it would use the Kazaword documents only in
a manner consistent with Magistrate Judge Parker's prior order
restricting the use of these documents. ECF No. 1593; see also
ECF No. 369. Because BTA has withdrawn the motion, the motion is
**denied without prejudice as moot.**

**B.**

In its second motion in limine, BTA moves to exclude
evidence and argument that BTA's prosecution of civil cases
against Mukhtar Ablyazov ("Ablyazov") and his affiliates,
including but not limited to this case, were politically
motivated or controlled by the government of the Republic of
Kazakhstan. ECF No. 1538. BTA also moves to exclude evidence and
argument that the criminal investigation and prosecution of
Ablyazov by the government of Kazakhstan was politically
motivated or unjust.

The motion is **granted in part and denied without prejudice
in part.** The motion is granted to the extent that Triadou agrees

2

that it will not seek to admit any newspaper articles without raising them with BTA and the Court and establishing a proper evidentiary foundation. The motion is also granted in part to the extent that Triadou does not seek to admit any decisions of French courts that determined that Russia's request to extradite Ablyazov was politically motivated. See ECF No. 1568, at 3-4.

The motion is denied without prejudice in part because the Court could not issue a blanket exclusion for the rest of the evidence BTA moves to exclude. It is possible that some of that evidence could be relevant and that the relevance would not be substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. Evidence of persecution by the government of Kazakhstan may be admissible to show the reason that Ablyazov took certain actions, such as shielding assets in trusts. This evidence may also be relevant to the credibility of various witnesses who fear, or have reasons to cooperate with, the government of Kazakhstan, or as an equitable consideration in the jury's assessment of BTA's unjust enrichment claim.

The prejudicial effect of some of this evidence may ultimately outweigh the probative value depending on the specific relevance of the evidence and the witness's explanation of the relevance of that testimony to credibility or a fact in issue. But the Court cannot make such a generalized assessment on this motion. The parties should raise the issues with respect

3

to specific documents and testimony before offering the
testimony at trial.

For these reasons, BTA's second motion in limine is **granted
in part and denied without prejudice in part.**

**C.**

BTA's fourth motion in limine, ECF No. 1542, concerns
several hundred "Tracking Spreadsheets," prepared and maintained
by BTA's UKB6 division, that track the movement of funds from
BTA to other entities. The Tracking Spreadsheets have eleven
columns, one of which is titled "Purpose of Payment." See ECF
No. 1543, at 5. BTA seeks a ruling that the information in the
Purpose of Payment column, and only that column, will not be
admitted for its truth and therefore should be accompanied by a
limiting instruction. The motion is **denied** to the extent that it
seeks a limiting instruction.

The parties agree that the other ten columns in the
Tracking Spreadsheets – Date, Income, Expenses, Balance,
Issuer's Account, Recipient's Account, Issuer, Recipient, Bank
of Issuer, and Bank of Recipient – are admissible for their
truth because they fall under the business records exception to
the rule against hearsay. See Fed. R. Evid. 803(6). Neither
party has moved to exclude the spreadsheets generally.

BTA argues, however, that the Purpose of Payment column is
inadmissible hearsay outside the business records exception

4

because it provides false information that conceals the true purpose for each transaction. Hearsay may be admitted under the business records exception only if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). BTA cites the depositions of UKB6 employees who testified that the Purpose of Payment column for two transactions contained false information.

As an initial matter, if offered by Triadou, the spreadsheets are admissible in full as non-hearsay statements of the employees of a party-opponent. See Fed. R. Evid. 801(d)(2)(D). BTA does not dispute that the Purpose of Payment column, like the rest of the Tracking Spreadsheets, was prepared and completed by BTA employees working within UKB6.

The spreadsheets are also admissible in full as business records if offered by either party. BTA has failed to show that the few examples it points to indicate a lack of personal knowledge or trustworthiness across the thousands of entries throughout the Tracking Spreadsheets. Moreover, when a record is made in the regular and ordinary course of business, as these records undoubtedly were, the fact that some entries may have furthered a fraudulent purpose does not make the records any less admissible as business records. See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 528 F. Supp. 3d 219, 232

(S.D.N.Y. 2021), aff'd sub nom. Picard v. JABA Assocs. LP, 49 F.4th 170 (2d Cir. 2022). Indeed, "business records of entities engaged in fraud are commonly admitted into evidence." Id. BTA remains free to argue to the jury that the Purpose of Payment column documents a fraudulent paper trail intended to conceal Ablyazov's alleged theft, just as Triadou is free to argue that BTA's transfers were all legitimate loans.

Finally, it would be inappropriate to give a limiting instruction singling out specific entries. The parties can argue from the testimony of the witnesses what the particular entries show or do not show.

The motion for a limiting instruction is therefore **denied**.

### D.

In its fifth motion in limine, ECF No. 1544, BTA moves to admit the minutes of board meetings of Triadou and SDG Capital, but only if offered by BTA, and not if offered by Triadou. The motion is **denied** without prejudice to raising any individual arguments with respect to admissibility at trial.

The board meeting minutes are strong candidates for admission as business records by either party, provided the proper foundation has been laid. "Rule 803(6) favors the admission of records created and maintained by businesses rather than their exclusion if the records have any probative value at all." Fed. Trade Comm'n v. Vyera Pharms, LLC, No. 20-cv-706,

2021 WL 5236333, at *1 (S.D.N.Y. Nov. 10, 2021). As Triadou points out, courts routinely find that board meeting minutes are admissible as business records under Rule 803(6), and the board minutes in this case appear to be no different. See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 314 (2d Cir. 2008); United States v. DiPace, 203 F. App'x 368, 370 (2d Cir. 2006). Triadou represents that it will offer the necessary evidentiary foundation at trial.

In a footnote in its brief, BTA acknowledges that "it could possibly be argued that board minutes constitute business records and are admissible for that reason." ECF No. 1545, at 4 n.2. But BTA contends that the "meeting minutes lack trustworthiness" because, in one email in July 2012, Cesare Cerrito, SDG's then-Chief Executive Officer, wrote that draft SDG board minutes that had been circulated before one board meeting contained "misleading" information. Id.; see also ECF No. 1357-2 at TRIA0002290. This single email apparently relating to a preliminary draft does not even undermine the reliability of the final board minutes for that meeting, let alone the dozens of other board minutes that BTA seeks to exclude. Moreover, besides lack of trustworthiness, BTA offers no other reason why the board minutes would not be admissible as business records if the proper foundation were laid.

BTA further justifies its apparently one-sided, self-serving argument by arguing that the board minutes are statements of a party opponent, or an alter ego of a party opponent, and therefore not hearsay pursuant to Federal Rule of Evidence 801(d)(2), if offered by BTA. BTA also makes an elaborate argument that embedded hearsay in the documents can be admitted by BTA, but not by Triadou, because those statements are also statements of a party opponent, an alter ego or a party opponent, or a co-conspirator pursuant to Federal Rule of Evidence 801(d)(2)(E). These are determinations that the Court could not make prior to trial based on the parties' submissions.

Triadou's position is far more reasonable. Triadou argues that it will only seek to admit board minutes for which it will establish the necessary elements of the business records exception. Triadou also appreciates that it, like BTA, will have to establish the admissibility of any embedded hearsay within the minutes.

Because BTA's fifth motion in limine cannot be decided before trial, the motion is **denied without prejudice.**

## II.

### A.

In its first motion in limine, ECF No. 1511, Triadou moves to exclude references by BTA to judgments, orders, and findings from other judicial proceedings against Ablyazov and Ilyas

8

Khrapunov ("Ilyas") and certain of their family members. The motion is **denied without prejudice** to raising any specific objections at trial to any specific item, as explained below.

In general, this case involves claims that Ablyazov controlled BTA and, in July and August 2004, caused fraudulent loans to be made by BTA that eventually found their way into investments in Triadou and then into real estate ventures in the United States. BTA asserts various claims against Triadou, including a claim of unjust enrichment. Ablyazov has been the subject of massive judgments against him for fraud and contempt in the courts of the United Kingdom as well as freezing orders issued in the United Kingdom. Ilyas has also been subject to judgments in the United Kingdom, including for conspiring with Ablyazov to violate asset freezing orders. Triadou was not a party to any of those proceedings against Ablyazov or Ilyas, and the parties agree that the judgments have no preclusive effect against Triadou. There are no longer any claims against Ablyazov or Ilyas in this case. Triadou now moves to exclude any evidence or reference to the other judgments, orders, and findings against Ablyazov and Ilyas. See ECF No. 1512 at 6-9.

The judgments are relevant to various issues at trial. The existence of the massive judgments for fraud may be relevant to whether Triadou knew that the funds that it received were the proceeds of fraud perpetrated on BTA, which in turn may bear on

9

whether it would be against equity and good conscience for
Triadou to retain the funds. The evidence also provides
important background information to understanding the
transactions in which Triadou was involved and to complete the
story of the events, and the existence of the freezing orders
may help explain why Ablyazov was allegedly backdating documents
to make it appear that the funds were not subject to the
freezing orders.

Indeed, Triadou does not argue that this evidence is
irrelevant. Rather, Triadou argues that the relevance of the
evidence is substantially outweighed by the danger of unfair
prejudice under Federal Rule of Evidence 403. That argument is
not persuasive. The prior judgments were not made against
Triadou, which was not a party to any of those proceedings. The
jury is therefore unlikely to "defer to the earlier result and
thus . . . decide a case on evidence not before it." Cf. Coleman
Motor Co. v. Chrysler Corp., 525 F.2d 1338, 1351 (3d Cir. 1975).
Moreover, the existence of the judgments will not be admitted
for the truth of the actual findings in those judgments but for
the existence of the judgments themselves, namely to show that
Triadou was put on notice of the illicit source of funds and to
explain the efforts to avoid the freezing orders. Accordingly,
the jury will not "be bombarded with facts elicited and results
obtained from a foreign court, operating under unfamiliar

procedural circumstances." Cf. Guidi v. Inter-Cont'l Hotels
Corp., No. 95-cv-9006, 2003 WL 1907904, at *1 (S.D.N.Y. Apr. 16,
2003). Finally, any prejudice to Triadou can be resolved by
appropriate limiting instructions explaining that the prior
judgments and freezing orders did not involve Triadou and
explaining the purpose for which the prior judgments are being
offered. See United States v. Abu-Jihaad, 630 F.3d 102, 132-33
(2d Cir. 2010) (upholding a Rule 403 determination where the
district court "minimized the risk of unfair prejudice through
limiting instructions"). The parties are welcome to propose any
appropriate limiting instructions.

This motion in limine is directed to the broad array of the
prior judgments and freezing orders. Triadou can object to
specific judgments or orders. Similarly, it is unclear from the
motion what specific criminal conviction might be offered
pursuant to Federal Rule of Evidence 609 for purposes of
impeachment, and whether any specific instance of fraudulent
conduct is intended to be offered for impeachment pursuant to
Federal Rule of Evidence 608. Those issues can be raised prior
to the examination of specific witnesses.

Therefore, Triadou's first motion in limine is **denied
without prejudice** to raising specific objections to specific
orders and judgments at trial, and the parties are invited to
propose any appropriate limiting instructions.

**B.**

In its second motion in limine, ECF No. 1514, Triadou moves
to exclude evidence and argument concerning the alleged
misappropriation and sale of a kindergarten building located in
Almaty, Kazakhstan by Leila Khrapunova ("Leila") and Viktor
Khrapunov ("Viktor") between 2001 and 2003. Triadou argues that
the transaction is irrelevant under Federal Rule of Evidence 401
or should be excluded under Federal Rule of Evidence 403. BTA
responds that the evidence is important as background
information to show the relationship among the Khrapunovs and
the general scheme to launder funds. On balance, based on the
parties' submissions, evidence of the kindergarten transaction
has slight relevance as background, but any relevance is
substantially outweighed by the danger of unfair prejudice,
confusion, and waste of time. Triadou's second motion in limine
is therefore **granted**, but without prejudice to make any further
proffers at trial if the evidence should become relevant.

The gist of the proposed evidence is that, in April 2001,
Viktor, then the mayor of Almaty, issued a government decree
privatizing "Kindergarten Building No. 186," which was then
purchased in December 2001 for about $350,000 by a company
controlled by Leila. See ECF No. 1362, at ¶¶ 322-24. Leila
allegedly contributed the kindergarten building to another
company she controlled, which valued the building at around

12

$1.95 million. In October 2003, Leila allegedly sold her interest in that company to Stroytech, a company that in 2007 sold the property to a company allegedly controlled by Ablyazov. Id. ¶ 327-330. According to BTA, the Khrapunovs ultimately netted about $1.6 million in profits from the purchase and sale of the kindergarten building.

BTA claims that tracing the funds that the Khrapunovs received from the kindergarten transaction and its aftermath shows how the Khrapunovs used their ill-gotten wealth to fund Ilyas's money-laundering operations through Triadou. But the connections are too strained to make the evidence relevant under Federal Rules of Evidence 401 and 402 to the remaining claims in this case. BTA has acknowledged that none of the funds from the sale of the kindergarten building can be traced to Triadou's investments. See ECF No. 1428, at 22. In the summary judgment briefing, BTA argued that the kindergarten evidence substantiated claims brought by the City of Almaty, Kazakhstan against Ilyas and Viktor. See ECF No. 1362, at ¶ 319-330; ECF No. 1364 at 48-50. These claims have been dismissed, and BTA to this point has apparently not cited the kindergarten evidence in support of its own surviving claims. See, e.g., Hamza v. Saks Fifth Ave., No. 07-cv-5974, 2011 WL 6187078, at *6-7 (S.D.N.Y. Dec. 5, 2011) (excluding evidence that related only to dismissed claims).

13

Moreover, any relevance of the kindergarten evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. See Fed. R. Evid. 403. Through the kindergarten evidence, BTA's former co-plaintiff alleged that Triadou's former co-defendants misappropriated for their personal financial gain a building devoted to educating young children. The strategic value to BTA of connecting Triadou to those inflammatory allegations is clear. But introducing the testimony in this trial creates a substantial risk that the jury might think that Triadou was involved in misappropriating this emotionally charged asset from Almaty, or that the jury would seek to punish Triadou for conduct tangential to the transactions at issue in this case.

Introducing the testimony also bears a substantial risk of wasting time in this trial, which is already expected to last about three weeks. BTA maintains that it would take "approximately one hour of trial time" for BTA to introduce the kindergarten testimony. ECF No. 1584, at 6. But BTA's own description of the misappropriation of the kindergarten building takes up four pages of BTA's brief, and another two pages are needed to draw the connection between investments by the Khrapunovs and the money-laundering scheme at issue in this case. See ECF No. 1584 at 5-10. BTA has identified 29 documents, a photograph, and several pages of testimony to explain the

14

transaction and draw the connection to this case. It is unlikely that all this can be explained to the jury in an hour. To the contrary, admitting the kindergarten evidence risks creating a "multi-ringed sideshow of mini-trials on collateral issues . . . that may have only tangential bearing, if at all, to the issues and claims disputed in this case." Park W. Radiology v. CareCore Nat'l LLC, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009).

Triadou's second motion in limine is therefore **granted** without prejudice to the ability of BTA to explain in the context of trial why this evidence has more relevance than appears from the current papers.

### C.

In its third motion in limine, ECF No. 1517, Triadou moves to preclude various evidence most of which BTA agrees not to offer. The motion is **granted in part and denied in part**.

First, Triadou moves to exclude any references to the Court's attachment order and the related findings of fact and conclusions of law. BTA agrees that it will not offer this evidence. Triadou has not moved to exclude any of the underlying evidence introduced at the evidentiary hearing. This evidence is therefore not excluded.

Second, Triadou moves to exclude any mention of sanctions imposed by Magistrate Judge Parker on Ablyazov, Ilyas, and

15

Viktor, the former individual defendants in this case. BTA does not seek to offer the sanctions orders themselves, but rather evidence of the underlying misconduct by Ilyas and Ablyazov, including efforts to eliminate evidence and testify in a misleading fashion. This conduct is fair grounds for impeachment. See, e.g., Mueller v. Swift, No. 15-cv-1974, 2017 WL 3058027, at *5 (D. Colo. July 19, 2017); United States v. Hsia, No. 98-cr-57, 2000 WL 195068, at *2 (D.D.C. Feb. 2, 2000). BTA may therefore inquire into such conduct. The credibility of the former individual defendants will be important to this case and therefore inquiry into prior acts of deceptive conduct is relevant, and the relevance is not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403, 608(b). While Triadou argues that there is much more relevant information to be used for purposes of impeachment, Triadou does not point to that evidence or explain why it is more probative on the issue of credibility. In any event, the parties will have time limits at trial, and BTA will be well-advised to use its time judiciously so that it does not expend it on tangential materials.

Triadou's third motion in limine is therefore **granted in part and denied in part.**

16

**D.**

In its fourth motion in limine, ECF No. 1520, Triadou moves to limit the trial testimony of Kairat Sadykov and Akzhan Moldakhmet to the authentication of documents and to preclude BTA from calling at trial a representative of BTA who has not previously been deposed. The motion is **denied** subject to the conditions explained below.

Both Sadykov and Moldakhmet were employed at the time of the events in this case. Magistrate Judge Parker previously denied a motion to preclude their testimony but authorized their depositions to be taken with respect to the authentication of documents. Magistrate Judge Parker left the issue of the scope of their trial testimony to the trial judge. If Sadykov and Moldakhmet are unavailable for trial, BTA will be left with the pretrial depositions. Triadou argues that the witnesses should have been disclosed earlier, but that issue was resolved by the limitations placed by Magistrate Judge Parker on their depositions.

If, as BTA argues, these witnesses have relevant knowledge beyond the authentication of documents, they should be permitted to offer that testimony. It is also clear that if the testimony were limited to the authentication of documents, that testimony would be hampered by disputes as to the scope of the permissible testimony related to authentication, including the admissibility

17

of any knowledge the witnesses had about the authenticity of various items in the documents, and the knowledge the witnesses have about the alleged fraud in this case. Therefore, the scope of the witnesses' testimony should not be limited to authentication of documents. Rather, to the extent that BTA seeks to have the witnesses testify to any matters that exceed the scope of the witnesses' testimony in the prior depositions, BTA must designate those areas in detail within seven days of the date of this Opinion. Triadou can then depose either or both of these witnesses prior to the date that they are scheduled to testify. This will eliminate any possibility of prejudice to Triadou.

As to BTA's representative, BTA previously designated a representative of the bank who was deposed but is now unavailable. BTA indicated that it will designate another representative who will be available for trial. Within seven days of the date of this Opinion, BTA should designate any areas of testimony of the new representative that will differ from that of the prior representative, if any. Triadou can then depose the new representative solely on the new testimony that differs from the testimony of the prior representative. The testimony of the prior representative is of course still admissible against BTA.

18

Triadou's fourth motion in limine is therefore **denied** subject to the conditions described above.

**E.**

In its sixth motion in limine, ECF No. 1528, Triadou moves to exclude any evidence that, in 2018, Ablyazov was convicted in absentia in Kazakhstan for murder-for-hire and sentenced to life imprisonment. Triadou's motion to preclude is **granted.**

The basis for the conviction that Triadou seeks to preclude arises from the killing of BTA's former chairman, Yerzhan Tatishev. Tatishev was killed in December 2004 in what appeared to be a hunting accident. In 2007, Muratkhan Tokmadi, the man responsible for the hunting shooting, was sentenced to one year in prison for negligent killing. In 2017, Tokmadi allegedly confessed that Ablyazov had paid him $4 million to kill Tatishev deliberately and, in 2018, Tokmadi was sentenced to an additional 10½ years in prison for murder. In November 2018, Ablyazov, who was in France, was tried in absentia in Kazakhstan and found guilty of murder-for-hire and received a life sentence. In March 2022, Tokmadi issued an open letter to Kazakhstan's new president requesting a review of Tokmadi's 2018 murder conviction on the grounds that his confession had been obtained by torture and his confession implicating Ablyazov was false.

BTA argues that Ablyazov's conviction should be admitted to impeach Ablyazov's character for truthfulness. Evidence of "a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year . . . must be admitted, subject to Rule 403, in a civil case . . . in which the witness is not a defendant." Fed. R. Evid. 609(a)(1)(A). Because Ablyazov is no longer a defendant and because his murder-for-hire conviction resulted in a life sentence, this conviction must be admitted in this civil case, "subject to Rule 403," id., that is, unless "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

In this case, the relevance of the conviction is substantially outweighed by the danger of unfair prejudice, namely that the jury could determine that Ablyazov's alleged conduct was so heinous that it should be held against Triadou. When conducting the Rule 403 balancing test incorporated into Rule 609(a)(1), courts examine four factors: "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." Daniels v. Loizzo, 986 F. Supp. 245, 250 (S.D.N.Y. 1997).

The first factor weighs against admission. Crimes of
violence "rank[] low on the scale of probative worth on
credibility," Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 544
(E.D.N.Y. 2011), and murder-for-hire, while a brutal crime, does
not bear on honesty in the same way that crimes involving
deceit, fraud, and theft do. The other factors are insufficient
to justify admission of the conviction for purposes of
impeachment. As to the second factor, the conviction was
relatively recent, but the actual crime was committed nearly two
decades ago. As to the third factor, the murder-for-hire is
unlike the conduct at issue in this case – meaning that the jury
is unlikely to use the crime as improper propensity evidence –
but the inflammatory nature of a murder-for-hire raises
substantial countervailing concerns of unfair prejudice. And as
to the fourth factor, while Ablyazov's credibility is plainly
relevant, BTA has ample "other documentary or supporting
evidence" regarding his credibility, id., including the
substantial freezing orders against Ablyazov and his 2002
conviction and imprisonment in Kazakhstan for abuse of office
and illegal commercial activity, which BTA has not moved to
exclude. Taken together, the Rule 609 factors counsel that
Ablyazov's murder-for-hire conviction should not be admitted for
impeachment purposes.

BTA separately argues that the conviction is relevant to show how Ablyazov maintained control over BTA and this should be admissible as prior bad act evidence. See Fed. R. Evid. 404(b). But the entire story of how Tatishev was killed and how Ablyazov gained control over Tatishev's assets can be told without reference to the murder-for-hire. BTA also argues that the murder-for-hire "should be admissible at the very least to give coherence to the timeline of events." ECF No. 1590, at 12. But the timeline of events depends solely on the date of Tatishev's death, not the manner of his death.

The prejudicial effect of the testimony is substantial. The violent nature of Ablyazov's murder-for-hire risks unfairly prejudicing the jury against Triadou, the company with which Ablyazov is aligned. Admitting evidence of the conviction also risks creating a mini-trial about not only the circumstances surrounding Tatishev's death, but also the legitimacy of the Kazakh judicial system – the subject of significant dispute between the parties – and the circumstances of Tokmadi's confession and recantation. These risks of undue delay and confusion substantially outweigh the relevance of the testimony for to impeach Ablyazov or for any other purpose.

Therefore, that evidence is precluded and Triadou's sixth motion in limine is granted.

22

**CONCLUSION**

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the parties' motions in limine are **denied in part and granted in part** as explained above. The Clerk is directed to close ECF Nos. 1511, 1514, 1517, 1520, 1528, 1536, 1538, 1542, and 1544.

**SO ORDERED.**

Dated:      New York, New York
            November 11, 2022

                                        _____
                                             John G. Koeltl
                                    United States District Judge

23