

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

November 27, 2022

**BY ECF**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
        **Case No. 15 Civ. 5345 (JGK) (KHP)**

Dear Judge Koeltl:

      Pursuant to the Court's November 14, 2022, order, I attach BTA's fourth list of exhibits, along with Triadou's objections and BTA's responses for the Court's consideration.

      Thank you for your consideration.

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

                  Crossclaim Plaintiffs,

     - against -

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

                  Crossclaim Defendants.

ECF Case

No. 1:15-cv-05345 (JGK) (KHP)

## PLAINTIFF BTA BANK JSC'S FOURTH LIST OF EXHIBITS, TRIADOU SPV S.A.'S OBJECTIONS, AND BTA'S RESPONSES

    Plaintiff BTA Bank JSC ("BTA") and Defendant Triadou SPV S.A. ("Triadou") respectfully submit the following fourth list of exhibits to potentially be offered by BTA during the trial in this case presently scheduled to begin on November 29, 2022; Triadou's objections to those exhibits; and BTA's responses.

## I.   Exhibits Shared by BTA on November 25, 2022

| BTA's Proposed Exhibits | Triadou's Objections | BTA's Response |
|---|---|---|
| **Frank Monstrey** | | |
| PTX 250 | | |
| PTX 251 | | |
| PTX 252 | | |
| PTX 253 | | |
| PTX 254 | | |
| PTX 255 | | |
| PTX 256 | | |
| PTX 257 | | |
| PTX 258 | | |
| PTX 259 | | |
| PTX 260 | | |
| PTX 262 | | |
| PTX 267 | | |
| PTX 290 | | |
| PTX 291 | | |
| PTX 292 | | |
| PTX 294 | | |
| PTX 353 | Foundation (the witness lacks foundation to testify regarding this document and acknowledges as much in the testimony BTA has designated.  The witness did not create the document and acknowledges only that it reconciles with another document he did not create.) | Triadou itself relied on this document at summary judgment, waiving any objections to admissibility.  ECF No. 1296 ¶ 64 ("A document titled 'N Project – Cash movements 02.10.2013' indicates that after NSW received the approximately $440 million USD from Monstrey's companies, those funds were divided and transferred to and through several different entities, including Fairlean, Alkine, Crownway, Speville, and Darwin." (citing ECF No. 1283-52)); *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (defendants waived objection to admissibility of documents they relied on in seeking summary judgment). <br><br>Although the witness did not create this document, he testified that the numbers in the document were |

| | | |
|---|---|---|
| | | accurate based on transactions he claimed he was involved in. 7/17/18 Monstrey Dep. at 98–99.<br><br>In any event, this document will be authenticated by a subsequent witness, and can be admitted subject to that testimony, if necessary. |
| Baurzhan Kurmanov[1] | | |
| PTX-95 | | |
| PTX-97 | | |
| PTX 113 | | |
| PTX 114 | | |
| PTX 115 | | |
| PTX 116 | | |
| PTX 119 | | |
| PTX 126 | | |
| PTX 132 | | |
| PTX 134 | FRE 802, FRE 805 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. |

---

[1]    Triadou objects to numerous exhibits to be offered through this witness, principally on hearsay and authenticity grounds.  While BTA responds to each specific objection below, it may be useful to the Court to understand that this witness will authenticate essentially two sets of documents:  one set obtained from SMP Partners, a corporate services provider located in the Isle of Man that administered many of the shell companies involved in the money laundering scheme at issue in this case particularly as it relates to the laundering of funds through the oil and gas company Zhaikmunai; and the other set obtained from Azure Consultants, a corporate services provider and money manager located in the United Arab Emirates that handled the movement of money through numerous shell companies especially through FBME Bank, including the movement of money through Telford International that was invested in the United States on Triadou's behalf.  These documents are therefore highly relevant and all admissible for the non-hearsay purpose of demonstrating what was said and done as part of the money laundering scheme at the heart of this case.  Further, because the documents were all obtained in accordance with valid bilateral or multilateral Mutual Legal Assistant Treaties, they are authentic.

| | | |
|---|---|---|
| | | 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating what was said, as it provides essential background to Mukhtar Ablyazov's ownership of BTA Bank following the death of Mr. Tatishev. |
| PTX 145 | | |
| PTX 146 | FRE 403, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This is a set of documents signed by Mukhtar Ablyazov and Frank Monstrey from the records of SMP Partners, an Isle of Man corporate services provider for various shell companies used in the money laundering scheme at issue in this case, that relate directly to Ablyazov's control over Zhaikmunai (and its holding companies, Scoulton, Jubilata, Calydon, and Thyler), and demonstrates that Frank Monstrey was obligated to run Zhaikmunai at Ablyazov's direction, contrary to Triadou's theory that Zhaikmunai was Monstrey's project and not Ablyazov's. ECF No. 1296 ¶¶ 8–17 (contending that Monstrey bought Zhaikmunai and "Ablyazov played no role"). Whatever prejudicial value this document could arguably have does not "substantially outweigh" its probative value. |

4

| | | |
|---|---|---|
| | | Foundation:  It is unclear what Triadou means by "foundation." If it means authenticity, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the Isle of Man, and therefore "is what its proponent claims." Fed. R. Evid. 901.  *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>If Triadou means something else by "Foundation," BTA respectfully reserves the right to supplement its response. |
| PTX 151 | FRE 802, FRE 805 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at |

| | | |
|---|---|---|
| | | Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating what was said, including Frank Monstrey's extensive description of Mukhtar Ablyazov's business activities, which is probative of the relationship between Monstrey and Ablyazov. |
| PTX 159 | FRE 802, FRE 805 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that the |

| | | |
|---|---|---|
| | | document existed in SMP Partners' files, and that it associated Mukhtar Ablyazov with the entities Harrison Limited and Lineford Limited. |
| PTX 165 | FRE 802, FRE 805 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files. Among other things, this exhibit involves Ablyazov signing on behalf of the entity Lineford, and being associated with numerous other relevant entities, including Harrison Limited. It also is relevant for the non-hearsay purpose of demonstrating who Ablyazov worked with in carrying out the affairs of those companies. |
| PTX 186 | FRE 403 (confusing and misleading to the extent such memos are inconsistent); FRE 802, FRE 805 | FRE 403: This is an SMP Partners "client explanation memo" setting out the information SMP Partners was provided about certain clients, including Zhaikmunai and various shell companies involved in the money laundering scheme at issue |

here, such as Thyler, Scoultron, Sartfield, and Claremont. It is therefore highly probative of the information provided to SMP Partners by the conspirators or otherwise in its possession about which individuals and entities were involved with and controlled the Zhaikmunai project, including Frank Monstrey, Gennady Petelin, and Mukhtar Ablyazov. To the extent the memos are inconsistent, that fact is probative of the conspirators' failure to keep their stories straight. Any alleged confusion this might cause does not "substantially outweigh" the exhibit's probative value.

FRE 802 & 805: This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.

Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).

In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files, and of which individuals—particularly, Mukhtar Ablyazov—were

| | | |
|---|---|---|
| | | associated with the Zhaikmunai project. The document also impeaches the testimony of Frank Monstrey, who has testified that Thyler Holdings was his company, not Ablyazov's (7/17/18 Monstrey Dep. at 31:11–12; *see also* ECF No. 1296 ¶ 11), and the testimony of Gennady Petelin, who has testified that Lineford Limited was his company, not Ablyazov's. 8/21/18 Petelin Dep. at 114:18–25. |
| PTX 194 | | |
| PTX 197 | | |
| PTX 201 | | |
| PTX 206 | FRE 802 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files, and purports to identify the registered members of various entities relevant to the money laundering scheme at issue in this case. |
| PTX 224 | FRE 802, FRE 805 | This exhibit is a business record that was kept as part of SMP |

| | | |
|---|---|---|
| | | Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files, and that SMP identified the client, which owned Zhaikmunai, as "high risk." |
| PTX 226 | FRE 802, FRE 805 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D). |

| | | |
|---|---|---|
| | | In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files and reflects information provided to SMP Partners or otherwise obtained by it about Sartfield, one of the entities involved in the money laundering scheme at issue in this case. |
| PTX 227 | FRE 802 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files, and purported to show that Ablyazov's entity Lineford had been struck off. |
| PTX 229 | FRE 403 (to the extent it is unclear who completed this form), FRE 802, FRE 805 | FRE 403: This is a "principal acceptance form" maintained by SMP Partners concerning Mukhtar Ablyazov, reflecting that Frank Monstrey was an "authorized person" on his behalf. Regardless of who completed this form, the highly probative value of that fact |

| | | |
|---|---|---|
| | | is not "substantially outweighed" by any conceivable confusion. Further, page two of the exhibit says it was "completed by" "Grant Taylor."<br><br>FRE 802 & 805: This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12).  *See* ECF No. 1356-19 at 3, 11.<br><br>Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files and identified Monstrey as authorized to act on behalf of Ablyazov. |
| PTX 236 | | |
| PTX 242 | FRE 802 | This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12).  *See* ECF No. 1356-19 at 3, 11. |

|  |  | Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D). In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files, and reflected that Thyler (a holding company of Zhaikmunai) belonged to Yerzhan Tatishev and then Mukhtar Ablyazov, not to Frank Monstrey. |
|---|---|---|
| PTX 244 | FRE 403, FRE 802, FRE 805, Foundation Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This memorandum is highly probative of which individuals and entities were involved with and controlled the Zhaikmunai project, which BTA alleges was used to launder its money and is a key step in the asset tracing. Multiple witnesses who are testifying by designation—including Frank Monstrey, Gennady Petelin, and Mukhtar Ablyazov—testified extensively about Zhaikmunai and its ownership, and all provided conflicting testimony. BTA should be permitted to submit the records of the corporate services provider that kept the business records for the entities involved. FRE 802 & 805: This exhibit is a business record that was kept as part of SMP Partners' client files in the ordinary course of business, as reflected in the certification of a Compliance Officer of SMP Partners sworn before the Deputy High Bailiff at The High Bailiff's |

Court sitting at Douglas, in the Isle of Man, which complies with Fed. R. Evid. 902(11)-(12). *See* ECF No. 1356-19 at 3, 11.

Triadou has had fair notice of BTA's intent to offer this exhibit and of the certification as required by Rule 902(11), and therefore the exhibit is a self-authenticating business record under Rule 803(6)(D).

In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in SMP Partners' files, and of which individuals—particularly, Mukhtar Ablyazov—were associated with the Zhaikmunai project. The document also impeaches the testimony of Frank Monstrey, who has testified that Thyler Holdings was his company, not Ablyazov's (7/17/18 Monstrey Dep. at 31:11–12; *see also* ECF No. 1296 ¶ 11), and the testimony of Gennady Petelin, who has testified that Lineford Limited was his company, not Ablyazov's. 8/21/18 Petelin Dep. at 114:18–25.

Foundation: It is unclear what Triadou means by "foundation." If it means authenticity, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the Isle of Man, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th

| | | |
|---|---|---|
| | | Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>If Triadou means something else by "Foundation," BTA respectfully reserves the right to supplement its response. |
| PTX-300 | FRE 402, FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 402 & 403: This document is a ledger and underlying compilation of bank records from FBME Bank as maintained Azure Consultants and its principal, Eesh Aggarwal. It documents the transfer of hundreds of millions of dollars through Northern Seas Waterage, which was the undisputed source of funds invested by Triadou. These transfers are highly probative of the money laundering at issue in this case. They occurred after BTA Bank began obtaining freezing orders and judgments against Mukhtar Ablyazov, which caused him to begin moving his money around. Further, although the parties dispute who controlled Northern Seas Waterage and the purpose of these payments, the |

transfers to Northern Seas Waterage themselves are not in dispute. Triadou itself explained the transfers in its summary judgment papers (ECF No. 1296 ¶ 63) and they are supported by independent bank records to which Triadou has not objected below (PTX-268–PTX-270). The bank records do not contain any prejudicial information about the transfers—they simply document their occurrence.

FRE 802 & 805: This exhibit is a compilation of bank records that are plainly business records. Further, given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.

In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in Aggarwal's files, and provides important context to his role in moving funds on behalf of NSW as part of the money laundering conspiracy at issue in this case.

FRE 901: Again, the document is a compilation of bank records whose authenticity is not seriously in dispute.

Further, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United

| | | |
|---|---|---|
| | | Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at \*5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |
| PTX-302 | FRE 901 | BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at \*5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor |

17

| | | |
|---|---|---|
| | | of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |
| PTX-324 | | |
| PTX-325 | FRE 403, FRE 901 | FRE 403: The exhibit is a nominee services agreement for Toplink Ltd., an entity allegedly beneficially owned by Phillipe Gatz, whom Triadou argues purchased Triadou's parent company from Ilyas Khrapunov. Toplink, however, received funds from an entity controlled by Ilyas Khrapunov to finance that purchase; that is, Ilyas Khrapunov purchased Triadou from himself. The agreement shows that Glatz was the beneficial owner of Toplink. Accordingly, it is probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues— or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing prejudicial about the straightforward nominee services agreement. Further, the document is relevant to demonstrate that Azure Consultings/Eesh Aggarwal, who was in charge of laundering funds for Ilyas Khrapunov, was also a service provider for Glatz, an allegedly arm's length purchaser.<br><br>FRE 901: BTA will call a witness who will testify that this document |

| | | |
|---|---|---|
| | | was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |
| PTX-327 | Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | Triadou itself relied on this document at summary judgment for the truth of the statements therein, waiving any objection to admission at trial. ECF No. 1296 ¶ 64 ("A document titled 'N Project – Cash movements 02.10.2013' indicates that after NSW received the approximately $440 million USD from Monstrey's companies, those funds were divided and transferred to and through several different entities, including Fairlean, Alkine, Crownway, Speville, and Darwin." (citing ECF No. 1283-51)); *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) |

| | | |
|---|---|---|
| | | (defendants waived objection to admissibility of documents they relied on in seeking summary judgment).<br><br>BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at \*5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-330 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | 403: As explained above, Toplink Ltd. is an entity allegedly beneficially owned by Phillipe Gatz, whom Triadou argues purchased Triadou's parent company from Ilyas Khrapunov. This email demonstrates that Philippe Glatz was working with Ilyas Khrapunov and his money manager, Eesh Aggarwal at Azure Consultants, to open a bank account for Toplink. Accordingly, it is probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing prejudicial about |

the email in which Azure is arranging to open a bank account.

FRE 802 & 805:  Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.

In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal and Ilyas to open a Toplink bank account.

FRE 901:  BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901.  *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder."

| | | |
|---|---|---|
| | | *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-331 | FRE 802 (as to statements purportedly by Azure), 805 | This is another e-mail exchange in which Glatz was working with Ilyas Khrapunov and Eesh Aggarwal to open a bank account for Toplink.  Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal and Ilyas to open a Toplink bank account. |
| PTX-333 | FRE 802 (as to statements purportedly by Azure), 805 | This is another e-mail exchange in which Glatz was working with Ilyas Khrapunov and Eesh Aggarwal to open a bank account for Toplink.  Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal and Ilyas to open a Toplink bank account. |

| PTX-334 | FRE 403, FRE 802, FRE 805, FRE 901 | 403: As explained above, Toplink Ltd. is an entity allegedly beneficially owned by Phillipe Gatz, whom Triadou argues purchased Triadou's parent company from Ilyas Khrapunov. This email demonstrates that Philippe Glatz was working with Ilyas Khrapunov and his money manager, Eesh Aggarwal at Azure Consultants, to open a bank account for Toplink. Accordingly, it is probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues— or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing prejudicial about the email in which Azure is arranging to open a bank account.<br><br>FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal and Ilyas to open a Toplink bank account.<br><br>FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. |

| | | |
|---|---|---|
| | | Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |
| PTX-335 | FRE 403, FRE 802, FRE 805, FRE 901 | 403: As explained above, Toplink Ltd. is an entity allegedly beneficially owned by Phillipe Gatz, whom Triadou argues purchased Triadou's parent company from Ilyas Khrapunov. This email demonstrates that Philippe Glatz was working with Ilyas Khrapunov and his money manager, Eesh Aggarwal at Azure Consultants, to open a bank account for Toplink. Accordingly, it is probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing prejudicial about the email in which Azure is arranging to open a bank account. |

|  |  |  | FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.

In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal and Ilyas to open a Toplink bank account.

FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |

| PTX-336 | FRE 802, FRE 901, Foundation | FRE 802: This is an e-mail providing an account number at ABN AMRO for Toplink. It is admissible for that purpose, and to show that Aggarwal (who possessed this document) was working with Ilyas Khrapunov and Phillipe Glatz to open an account for Toplink. It is also important to complete the story of the exhibits immediately preceding this one. |
|---|---|---|
| | Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | |
| | | FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). |
| | | "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |
| | | Foundation: It is not clear what foundation objection, apart from |

| | | |
|---|---|---|
| | | the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-337 | | |
| PTX-338 | FRE 402, FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 402 & 403:  This e-mail to Eesh Aggarwal from his assistant attaches diagrams that track the flow of funds for various projects for "Elvis," which is Ilyas Khrapunov.  ECF No. 1552-56 ¶ 23.   One  of  the  diagrams demonstrates  how  funds originating  from  a  company controlled by Ilyas were used to fund Philippe Glatz's purchase of SDG.   Accordingly, it is highly probative  of  whether  Philippe Glatz's purchase of SDG was a legitimate,         arms-length transaction—as Triadou argues— or  whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders.  Other  charts  contained  in  this exhibit reference the flow of funds or  structure of Triadou itself, as well as Telford International Ltd. (which  provided  the  funding  for Triadou's U.S. investments).   An attachment  called  "list  of outstanding items" includes items such as "New UBOs for D and Telford."   In other words, these documents     demonstrate     the operation of the money laundering conspiracy,   and   are   highly probative of BTA's claims in this case.    There  is  nothing  unduly prejudicial about these documents.<br><br>FRE 802 & 805:  Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are |

27

admissible as co-conspirator statements.

In any event, this exhibit is admissible to demonstrate that it was in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, including that Aggarwal was specifically involved in the purported acquisition of SDG by Glatz, as well as the management and change in UBO for Telford.

FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).

| | | |
|---|---|---|
| | | Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-340 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 402 & 403:  This e-mail to Eesh Aggarwal from his assistant attaches diagrams relating to Toplink's involvement in the acquisition of SDG, Triadou's parent, and is highly probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders.  There is nothing unduly prejudicial about this document.<br><br>FRE 802 & 805:  Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible to demonstrate that it was in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, and that Aggarwal was specifically involved in the purported acquisition of SDG by Glatz.<br><br>FRE 901:  BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. |

29

| | | |
|---|---|---|
| | | Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-341 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This is an e-mail from Aggarwal to his assistant identifying various items to do following a meeting between Aggarwal and "Elvis," or Ilyas Khrapunov, about Philippe Glatz's planned purchase of SDG.  The email specifically discussed a loan from Khrapunov's entity Telford ("T") to Glatz's entity ("Brazil") of 3.7 million swiss francs, to finance the purchase of SDG. The email demonstrates that Ilyas and Aggarwal were working together to effectuate Glatz's purchase, and that it was not actually a legitimate, |

|  |  |  | arms-length transaction—as Triadou argues. The email is probative of whether, instead, Ilyas instead planned out the transaction with his co-conspirators to cover up his association with SDG due to BTA's freezing orders. There is nothing unduly prejudicial about the exhibit.

FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.

In any event, this exhibit is admissible to demonstrate that it was in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, and that Aggarwal was specifically involved in the purported acquisition of SDG by Glatz.

FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient |

| | | |
|---|---|---|
| | | proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-342 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This is an email from Eesh Aggarwal's assistant to Phillipe Glatz himself and Aggarwal containing various documents related to Toplink. Toplink Ltd. is an entity allegedly beneficially owned by Phillipe Gatz, whom Triadou argues purchased Triadou's parent company from Ilyas Khrapunov. This email demonstrates that Philippe Glatz was working with Ilyas Khrapunov and his money manager, Eesh Aggarwal at Azure Consultants, to open a bank account for Toplink. Accordingly, it is probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing prejudicial about the email in which Azure is arranging to open a bank account. |

|  |  |  | FRE 802 & 805:  Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.

In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal and Ilyas to open a Toplink bank account.

FRE 901:  BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901.  *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). |
|---|---|---|---|

| | | |
|---|---|---|
| | | Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-343 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This is an email from Eesh Aggarwal's assistant to Phillipe Glatz himself and Aggarwal containing various documents related to Toplink. Toplink Ltd. is an entity allegedly beneficially owned by Phillipe Gatz, whom Triadou argues purchased Triadou's parent company from Ilyas Khrapunov. This email demonstrates that Philippe Glatz was working with Ilyas Khrapunov and his money manager, Eesh Aggarwal at Azure Consultants, to open a bank account for Toplink. Accordingly, it is probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing prejudicial about the email in which Azure is arranging to open a bank account.<br><br>FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that Glatz was working with Aggarwal |

| | | |
|---|---|---|
| | | and Ilyas to open a Toplink bank account.<br><br>FRE 901:  BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901.  *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-347 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents | FRE 403:  This document is an email attaching accounting documents and diagrams created by Ilyas Khrapunov's money manager at Azure Consulting, Eesh Aggarwal, which track the flow of |

| | |
|---|---|
| and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | funds in the money laundering scheme from Northern Seas Waterage ("Northern" in the diagram) all the way to Tridaou. It is thus indisputably highly probative of whether Triadou received tainted funds stolen from BTA. It is simple and straightforward—it will simplify the issues in this case, rather than complicate them. Further, although the parties dispute who controlled these entities and the sources of the funds that were moved between them, there is no real dispute that this flow of funds occurred. In fact, Triadou itself relied on a version of one of the charts attached to the email at summary judgment for the truth of the statements therein. ECF No. 1296 ¶ 64 (citing ECF No. 1283-51)).<br><br>FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements. This particular document is also admissible as a business record, under Rule 803(6).<br><br>Further, this document is admissible under FRE 807. It is supported by sufficient guarantees of trustworthiness because witnesses have verified the information in the diagram. Frank Monstrey, for example, testified that the portion of the diagram showing how much money was transferred to "Northern" was correct, and bank records to which Triadou does not object confirm as much as well. (*See, e.g.*, 7/17/18 |

| | | | Monstrey Dep. at 98–99; PTX-267–PTX-270 (Triadou lists no objection below)). Testimony and documentary evidence, again including records to which Triadou has not objected and cited at summary judgment, also support the diagram's depiction of the funds that went from Telford to Triadou. (PTX-597 (cited by Triadou at ECF No. 1269 ¶ 155); PTX-582 (cited by Triadou at ECF No. 1269 ¶ 155); PTX-676 (records from Deutsche Bank); PTX-375 (FBME reports)). The diagram is also the most probative and helpful evidence of the flow of funds from Northern Seas Waterage to Triadou, as it will allow the jury to clearly see the flow of funds rather than needing to waste time pouring over bank records.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, including tracking the movement of stolen and laundered funds.<br><br>FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting |

| | | |
|---|---|---|
| | | evidence obtained via MLAT over authenticity objection).<br><br>"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-349 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This is an email in which Ilyas Khrapunov (theuraniumguy@gmail.com) directs Eesh Aggarwal to create a fake loan contract between Triadou and Telford, directly contradicting Triadou's theory that the loan between Telford and Triadou was an arms-length transaction between Triadou and Gennady Petelin's company Telford. ECF No. 1296 ¶ 139. The email is thus highly probative of the true nature of the "loan" between Triadou and Telford, which was actually just a step in the money laundering scheme that Ilyas and Aggarwal oversaw.<br><br>FRE 802 & 805: The email contains statements by Ilyas Khrapunov, and any such |

statements are admissible for their truth pursuant to FRE 801(d)(2). Further, the attachments are Triadou's Statutes and Trade Register Extract and other Triadou corporate documents, which are statements of a party opponent under 801(d)(2) if offered for their truth.

Further, Ilyas's statement in the email is admissible for the non-hearsay purpose of showing that Ilyas himself directed Aggarwal to create the loan agreement between Telford and Triadou, contradicting Triadou's argument that the loan was an arms-length transaction between Triadou and Telford/Petelin.

FRE 901:  BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be

| | | |
|---|---|---|
| | | admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-350 | FRE 403, FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | This exhibit will have already been admitted during the testimony of Ilyas Khrapunov, who authenticated and discussed the content of this e-mail. *See* 2/1/18 Ilyas Khrapunov Dep. at 249-252 (discussing this e-mail, including confirming that their relationship manager at FBME was "Charles"; e-mail says that "C" informed Aggarwal about the freeze at FBME).<br><br>FRE 403: This is an e-mail chain between Ilyas Khrapunov using his thenickelguy@gmail.com address to Eesh Aggarwal, who handled the offshore movement of money on behalf of Khrapunov/Ablyazov, which refers to the fact that "all funds are frozen with immediate effect." In this chain, Aggarwal also informs Khrapunov that "no further communication with us" should be made in writing, and the two would meet in person at the end of the month. This e-mail chain was dated August 19, 2013, immediately after Mukhtar Ablyazov's arrest in France. The timing of this e-mail, and Triadou's and Ilyas's responses, are probative of whether Triadou and Ilyas were dealing with Ablyazov's frozen |

funds (which were stolen from BTA).

FRE 802 & 805: This e-mail between Triadou's owner, Ilyas Khrapunov, and Aggarwal, who was helping move money on behalf of Triadou, are admissible if offered by BTA as either a party admission or a co-conspirator statement.

In any event, the e-mail is admissible for the non-hearsay purpose of demonstrating what was said, to demonstrate the timing of this "freeze [on] our money," Ilyas's reaction, and to demonstrate Ilyas and Aggarwal's awareness of Ablyazov's arrest.

FRE 901: BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection).

"This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be

| | | |
|---|---|---|
| | | admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-359 | | |
| PTX-360 | FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 802 & 805: This exhibit is a FBME bank record for Telford International Ltd., the entity that funded Triadou's U.S. investments, and is plainly a business record. Further, given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in Aggarwal's files, and provides important context to his role in moving funds on behalf of Telford as part of the money laundering conspiracy at issue in this case.<br><br>FRE 901:  Again, the document is bank statement whose authenticity is not seriously in dispute.<br><br>Further, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United |

| | | |
|---|---|---|
| | | Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). <br><br> "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). <br><br> Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here.  BTA reserves the right to supplement its responses. |
| PTX-361 | FRE 802, FRE 805, FRE 901, Foundation <br><br> Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | This is another FBME bank statement for Telford International. It is admissible for the reasons stated above as to PTX-360. |
| PTX-362 | FRE 802, FRE 805, FRE 901, Foundation <br><br> Triadou understands Kurmanov will testify as how the Ministry of | This is another FBME bank statement for Telford International. It is admissible for the reasons stated above as to PTX-360. |

| | | |
|---|---|---|
| | Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | |
| PTX-363 | FRE 802, FRE 805, FRE 901, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | This is another FBME bank statement for Telford International. It is admissible for the reasons stated above as to PTX-360. |
| PTX-369 | FRE 403, FRE 802, FRE 805, Foundation<br><br>Triadou understands Kurmanov will testify as how the Ministry of Justice obtained these documents and provided them to BTA; he lacks personal knowledge of the documents themselves and cannot lay foundation. | FRE 403: This is a document prepared by Azure Consultants summarizing the accounts and funds Aggarwal administered for Ilyas Khrapunov. The entities and funds summarized in the document were each involved in the scheme Ilyas and Aggarwal carried out in order to launder BTA's funds, which ultimately ended up in Triadou's hands. Accordingly, it is highly probative and although the parties dispute the purpose of the investments and transfers listed, Triadou does not seriously dispute that they occurred as depicted in the document.<br><br>802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements.<br><br>In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in Aggarwal's files, and provides important context to his |

role in moving funds on Ilyas
Khrapunov, including through
Triadou and many of the other
entities involved in this case.

FRE 901: BTA will call a witness
who will testify that this document
was one of many received in
response to a request under a
Mutual Legal Assistance Treaty
from Kazakhstan to the United
Arab Emirates, and therefore "is
what its proponent claims." Fed. R.
Evid. 901.  *See also United States
v. Odeh*, No. 13-CR-20772, 2014
WL 5473042, at *5 (E.D. Mich.
Oct. 27, 2014), *aff'd*, 815 F.3d 968,
981 (6th Cir. 2016) (admitting
evidence obtained via MLAT over
authenticity objection).

"This threshold determination is
relatively low, as evidence is
admissible as authentic if sufficient
proof has been introduced so that a
reasonable juror could find in favor
of authenticity or identification. . . .
Once the court determines that the
proponent of the evidence meets
the threshold, the evidence may be
admitted and any outstanding
issues regarding its authenticity are
to be resolved by the fact-finder."
*Bazak Int'l Corp. v. Tarrant
Apparel Grp.*, 378 F. Supp. 2d 377,
391 (S.D.N.Y. 2005) (cleaned up).

Foundation: It is not clear what
foundation objection, apart from
the above, Triadou intends to assert
here.  BTA reserves the right to
supplement its responses.

**Tarig Kozouz**

| *Bank Records* | | |
|---|---|---|
| PTX-448 | | |

| | | |
|---|---|---|
| PTX-661 | | |
| PTX-662 | | |
| PTX-664 | | |
| PTX-667 | | |
| PTX-673 | | |
| PTX-676 | | |
| PTX-875 | | |
| PTX-876 | | |
| PTX-877 | | |
| PTX-878 | | |
| PTX-879 | | |
| PTX-880 | | |
| PTX-881 | | |
| PTX-882 | | |
| PTX-883 | | |
| PTX-884 | | |
| PTX-885 | | |
| PTX-886 | | |
| PTX-887 | | |
| PTX-888 | | |
| PTX-889 | | |
| PTX-890 | | |
| PTX-891 | | |
| PTX-892 | | |
| PTX-893 | | |
| PTX-894 | | |
| PTX-895 | | |
| *Other Documents* | | |
| PTX-295 | | |
| PTX-441 | | |
| PTX-442 | | |
| PTX-449 | | |
| PTX-480 | | |
| PTX-656 | | |
| PTX-504 | | |
| PTX-509 | | |
| PTX-531 | | |
| PTX-543 | | |
| PTX-561 | | |
| PTX-562 | | |
| PTX-581 | | |
| PTX-597 | | |
| PTX-628 | | |
| PTX-636 | | |
| PTX-637 | | |

| | | |
|---|---|---|
| PTX-653 | | |
| PTX-654 | | |
| PTX-660 | | |
| PTX-691 | | |
| PTX-897 | | |
| *Kozouz's summary charts* | | |
| Condensed Organization Chart | FRE 403 (misleading as to Flatotel entities); Incomplete; Vague as to timing | There is nothing misleading about this chart. It is precisely what it purports to be—a condensed organizational chart of Triadou investments and ownership. |
| Funding for Triadou's Transactions: Telford Payments | | |
| Funding for Triadou's Transactions: Adlux Payment | | |
| Telford and Adlux Fund Triadou Transactions | FRE 1006 (no evidence summarized) | This summary chart synthesizes information found in the following documents:<br><br>PTX 295; PTX 504; PTX 597; PTX 628; PTX 676.<br><br>BTA will revise this summary chart to cite these exhibits. |
| Telford and Adlux "Loans" | | |
| **Exhibits Without Sponsoring Witness** | | |
| PTX-268 | | |
| PTX-269 | | |
| PTX-270 | | |
| PTX-677 | | |

47