

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

December 3, 2022

**BY ECF**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   **Re:** *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
      Case No. 15 Civ. 5345 (JGK) (KHP)

Dear Judge Koeltl:

  Pursuant to the Court's November 14, 2022, order, I attach BTA's sixth list of exhibits, along with Triadou's objections and BTA's responses for the Court's consideration.

  Thank you for your consideration.

              Respectfully,

              /s/ Matthew L. Schwartz
              Matthew L. Schwartz

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC, <br><br> Crossclaim Plaintiffs, <br><br> - against - <br><br> MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A., <br><br> Crossclaim Defendants. | ECF Case <br><br> No. 1:15-cv-05345 (JGK) (KHP) |

**PLAINTIFF BTA BANK JSC'S SIXTH LIST OF EXHIBITS, TRIADOU SPV S.A.'S OBJECTIONS, AND BTA'S RESPONSES**

Plaintiff BTA Bank JSC ("BTA") and Defendant Triadou SPV S.A. ("Triadou") respectfully submit the following sixth list of exhibits to potentially be offered by BTA during the trial in this case; Triadou's objections to those exhibits; and BTA's responses.

I.   **Exhibits Shared by BTA on December 1, 2022**

| BTA's Proposed Exhibits | Triadou's Objections | BTA's Response |
|---|---|---|
| **Philippe Glatz** | | |
| PTX-324 | | |
| PTX-325 | Foundation (BTA references an "unexecuted version," but the version at PTX-325 is itself unexecuted, as there is no signature by Mr. Glatz. Nor does any such signed document exist.<br><br>Triadou has not objected on authenticity grounds, so BTA's response to a FRE 901 objection is moot. | This exhibit is a nominee services agreement for Toplink Ltd., and it states that the beneficial owner of Toplink Ltd. is Phillipe Glatz. An unexecuted version of this document was sent to Phillipe Glatz via email. *See* PTX-343 (email from Azure Consultants to philippe.glatz@pidji.ch stating, "[i]n respect of your above mentioned company and trust [Toplink Ltd. and Toplink Trust], please find the following attached statutory documents together with the structure"). The witness will lay the foundation for the admission of this document at trial, should Triadou stand on its objection.<br><br>Additionally, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at \*5 (E.D. Mich. Oct. 27, 2014), aff'd, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if |

| | | |
|---|---|---|
| | | sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-329 | FRE 403 (confusing, and misleading where no witness can testify to the meaning of the hearsay and embedded hearsay), FRE 802, FRE 805, Foundation<br><br>BTA's responses concerning hearsay reflect that it seeks admission of the document for the truth of its contents and not for any non-hearsay purpose.<br><br>Triadou has not objected on authenticity grounds, so BTA's response to a FRE 901 objection is moot. | FRE 403: This is an e-mail chain between Ilyas Khrapunov, using his thenickelguy@gmail.com address, and Eesh Aggarwal, who handled the offshore movement of money on behalf of Khrapunov/Ablyazov. In this e-mail chain, dated March 3, 2013, Ilyas Khrapunov writes, "meeting with glatz tonight." Eesh Aggarwal responds, "Glatz - bank can proceed with account opening without meeting him but he needs to send his cv and financials - proofs of ownership of companies or other assets and related financial accounts." Finally, Ilyas Khrapunov replies, "pls send him the list that bank requires." This email chain is relevant to demonstrate that Eesh Aggarwal was a service provider for Phillipe Glatz, and that Ilyas Khrapunov directed Eesh Aggarwal's communications with Phillipe |

3

|  |  | Glatz—as supposedly arms'-length purchaser of SDG. Accordingly, this email chain is highly probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing unduly prejudicial about this document.

FRE 802 & 805: This e-mail between Triadou's owner, Ilyas Khrapunov, and Aggarwal, who was helping move money on behalf of Triadou, is admissible if offered by BTA as either a party admission or a co-conspirator statement.

In any event, the e-mail is admissible for the non-hearsay purpose of demonstrating what was said, including to demonstrate the date that Ilyas Khrapunov directed Aggarwal to "send [Glatz] the list that bank requires," which gives context to PTX-331, a March 3, 2013, email where Azure Consultants asks Phillipe Glatz "for an update regarding the documents requested by ABN AMRO to open a bank account for the Dubai Company."

Additionally, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. |

4

| | | |
|---|---|---|
| | | 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), aff'd, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-331 | | |
| PTX-333 | | |
| PTX-334 | | |
| PTX-335 | | |
| PTX-336 | FRE 802, Foundation<br><br>There is no indication Mr. Glatz received this email or has personal knowledge of it in order to lay foundation.<br><br>Triadou has not objected on authenticity grounds, so BTA's response to a FRE 901 objection is moot. | FRE 802: This is an April 2, 2013, e-mail providing an account number at ABN AMRO for Toplink, an entity allegedly beneficially owned by Phillipe Glatz. It is admissible for that purpose, and to show that Aggarwal (who possessed this document) was working with Ilyas Khrapunov and Phillipe Glatz to open an account for Toplink. It is also important to complete the |

| | | |
|---|---|---|
| | | story of the exhibits immediately preceding this one, including PTX-334, which is a March 25, 2013 email from Azure Consultants to Phillipe Glatz, which states "Further to your meeting with Mr Aggarwal and Mr Bhatia of ABN AMRO last Friday, 22 March 2013, please find attached personal bank application forms."<br><br>Foundation: The witness will lay the foundation for the admission of this document at trial, should Triadou stand on its objection.<br><br>Additionally, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), aff'd, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v.* |

| | | |
|---|---|---|
| | | *Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-340 | FRE 403 (confusing, misleading where no witness can testify to the creation or contents of the email or attachment), FRE 802, FRE 805, Foundation<br><br>BTA's responses concerning hearsay reflect that it seeks admission of the document for the truth of its contents and not for any non-hearsay purpose. There is no basis to treat an internal email from a Dubai corporate services provider as subject to a "co-conspirator" admission, which BTA will be unable to connect up.<br><br>There is no indication Mr. Glatz received this email or attachments or has personal knowledge of it in order to lay foundation.<br><br>Triadou has not objected on authenticity grounds, so BTA's response to a FRE 901 objection is moot. | FRE 403: This e-mail to Eesh Aggarwal from his assistant attaches diagrams relating to Toplink's involvement in the acquisition of SDG, Triadou's parent, and is highly probative of whether Philippe Glatz's purchase of SDG was a legitimate, arms'-length transaction—as Triadou argues—or whether it was merely meant to cover up Ilyas's association with SDG due to BTA's freezing orders. There is nothing unduly prejudicial about this document.<br><br>FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements. In any event, this exhibit is admissible to demonstrate that it was in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, and that Aggarwal was specifically involved in the purported acquisition of SDG by Glatz.<br><br>BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal |

7

| | | |
|---|---|---|
| | | Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), *aff'd*, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up). Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses.<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-341 | FRE 802, FRE 805, Foundation<br><br>BTA's responses concerning hearsay reflect that it seeks admission of the document for the truth of its contents and not for any | FRE 802 & 805: This is an e-mail from Aggarwal to his assistant identifying various items to do following a meeting between Aggarwal and "Elvis," or Ilyas Khrapunov, about Philippe Glatz's |

8

| | |
|---|---|
| non-hearsay purpose. There is no basis to treat an internal email from a Dubai corporate services provider as subject to a "co-conspirator" admission, which BTA will be unable to connect up.<br><br>There is no indication Mr. Glatz received this email or has personal knowledge of it in order to lay foundation.<br><br>Triadou has not objected on authenticity grounds, so BTA's response to a FRE 901 objection is moot. | planned purchase of SDG. The email specifically discussed a loan from Khrapunov's entity Telford ("T") to Glatz's entity ("Brazil") of 3.7 million swiss francs, to finance the purchase of SDG. Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements. In any event, this exhibit is admissible to demonstrate that it was in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, and that Aggarwal was specifically involved in the purported acquisition of SDG by Glatz.<br><br>Foundation: The witness will lay the foundation for the admission of this document at trial, should Triadou stand on its objection.<br><br>Additionally, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), aff'd, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if |

9

| | | |
|---|---|---|
| | | sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-342 | | |
| PTX-343 | | |
| PTX-347 | FRE 403 (confusing and misleading where no witness with personal knowledge will testify regarding the creation or contents of the email or attachment), FRE 802, FRE 805, Foundation<br><br>BTA's responses concerning hearsay reflect that it seeks admission of the document for the truth of its contents and not for any non-hearsay purpose.  There is no basis to treat an internal email from a Dubai corporate services provider as subject to a "co-conspirator" admission, which BTA will be unable to connect<br><br>There is no indication Mr. Glatz received this email or has personal knowledge of it in order to lay foundation. | FRE 403: This document is an email attaching accounting documents and diagrams created by Ilyas Khrapunov's money manager at Azure Consulting, Eesh Aggarwal, which track the flow of funds in the money laundering scheme from Northern Seas Waterage ("Northern" in the diagram) all the way to Triadou. It is thus indisputably highly probative of whether Triadou received tainted funds stolen from BTA. It is simple and straightforward—it will simplify the issues in this case, rather than complicate them. Further, although the parties dispute who controlled these entities and the sources of the funds that were moved between them, there is no real dispute that this flow of funds occurred. In fact, Triadou itself |

10

| | | |
|---|---|---|
| | Triadou has not objected on authenticity grounds, so BTA's response to a FRE 901 objection is moot. | relied on a version of one of the charts attached to the email at summary judgment for the truth of the statements therein. ECF No. 1296 ¶ 64 (citing ECF No. 1283-51)). *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (defendants waived objection to admissibility of documents they relied on in seeking summary judgment).<br><br>FRE 802 & 805: Given his role in knowingly moving funds after the date of the English freezing orders (among other things), documents maintained by Azure/Aggarwal are admissible as co-conspirator statements. This particular document is also admissible as a business record, under Rule 803(6). Further, this document is admissible under FRE 807. It is supported by sufficient guarantees of trustworthiness because witnesses have verified the information in the diagram. Frank Monstrey, for example, testified that the portion of the diagram showing how much money was transferred to "Northern" was correct, and bank records to which Triadou does not object confirm as much as well. (*See, e.g.*, 7/17/18 Monstrey Dep. at 98–99; PTX267–PTX-270 (Triadou lists no objection below)). Testimony and documentary evidence, again including records to which Triadou has not objected and cited at summary judgment, also support the diagram's depiction of the funds that went from Telford to Triadou. (PTX-597 (cited by Triadou at ECF No. 1269 ¶ 155); PTX-582 (cited by Triadou at ECF |

|  |  | No. 1269 ¶ 155); PTX-676 (records from Deutsche Bank); PTX-375 (FBME reports)). The diagram is also the most probative and helpful evidence of the flow of funds from Northern Seas Waterage to Triadou, as it will allow the jury to clearly see the flow of funds rather than needing to waste time pouring over bank records. In any event, this exhibit is admissible for the non-hearsay purpose of demonstrating that it existed in Aggarwal's files, and to show the means and methods of the money laundering conspiracy, including tracking the movement of stolen and laundered funds.<br><br>Additionally, BTA will call a witness who will testify that this document was one of many received in response to a request under a Mutual Legal Assistance Treaty from Kazakhstan to the United Arab Emirates, and therefore "is what its proponent claims." Fed. R. Evid. 901. *See also United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042, at *5 (E.D. Mich. Oct. 27, 2014), aff'd, 815 F.3d 968, 981 (6th Cir. 2016) (admitting evidence obtained via MLAT over authenticity objection). "This threshold determination is relatively low, as evidence is admissible as authentic if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. . . . Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding |

| | | |
|---|---|---|
| | | issues regarding its authenticity are to be resolved by the fact-finder." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) (cleaned up).<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-412 | | |
| PTX-414 | | |
| PTX-416 | | |
| PTX-425 | | |
| PTX-427 | This is admitted subject to connection; we maintain our objection subject to connection. | This document is board meeting minutes of the investment fund through which Ilyas Khrapunov and Nicolas Bourg directly managed Triadou's assets. The minutes discuss the purported sale of Triadou from the Khrapunov family to Philippe Glatz, which is a highly disputed factual issue in this case. The witness will lay the foundation for the admission of this document at trial, should Triadou stand on its objection. |
| PTX-433 | | |
| PTX-454 | | |
| PTX-458 | FRE 805 (objection is to embedded hearsay by third-party within a business record) | FRE 805: This exhibit contains an email chain between Effi Shaked, a representative of Deutsche Bank, and Cesare Cerrito. In relevant part, Effi Shaked writes, "We are now confident that we can issue to SDG a satisfactory confirmation of facility approval subject to . . . SDG/owner will issue an indemnity to DB that will confirm that the previous owner (or any affiliate or family member) has no involvement with SDG on any |

13

| Exhibit | Objection | Response |
|---|---|---|
| | | level." This exhibit is admissible for the non-hearsay purpose of establishing what was said, and to demonstrate that Deutsche Bank, sought assurances that Ilyas Khrapunov was no longer affiliated with SDG as of July 18, 2014, which was after Phillipe Glatz purportedly acquired SDG. It is also important to complete the story of the exhibit immediately following this one (PTX-464.) |
| PTX-464 | FRE 805 (objection is to embedded hearsay by third-party within a business record) | FRE 805: This exhibit contains an email from Katie Oneill, a representative of Deutsche Bank, to Cesare Cerrito, which was forwarded to Phillipe Glatz. In relevant part, Katie Oneill writes, "As you know, it has been important for Deutsche Bank to establish that the Borrower/SDG/their affiliates have no business dealings with Iliyas Khrapounov, his family or his affiliates. We have received assurances and sought to agree the terms of a letter setting out representations and an indemnity regarding this issue. Unfortunately, however, our due diligence has not been completed to our satisfaction. Last week we finally received a copy of the French SPA by which Greencos acquired the share capital of SDG in March 2013. The SPA revealed an agreement that Mr Khrapounov's connection with SDG continued until at least March 2014. This is a significant matter which was not previously disclosed to us. Deutsche Bank has considered the position carefully. Our conclusion. in light of the non-fulfilment of conditions |

| | | |
|---|---|---|
| | | included in the letter dated 21 August 2014, is that the bank will not proceed to make available the proposed facility." This exhibit is admissible for the non-hearsay purpose of establishing what was said, and to demonstrate that Deutsche Bank declined to grant SDG a loan facility because it was not satisfied that SDG did not have business dealings with Ilyas Khrapunov after Phillipe Glatz purportedly acquired SDG. |
| PTX-486 | | |
| PTX-505 | FRE 805 (objection only to embedded hearsay by third-parties within a business record) | FRE 805: This exhibit contains SDG Board Minutes. In several entries, Mr. Glatz is marked as a participant. The minutes are admissible if offered by BTA as either a party admission or a coconspirator statement. In any event, the minutes are admissible for the non-hearsay purpose of demonstrating what was said. |
| PTX-524 | | |
| PTX-531 | | |
| PTX-581 | | |
| PTX-626 | FRE 805 (objection only to embedded hearsay by third-parties within a business record) | FRE 805: This exhibit contains an email from Alexey Alekseev, a representative of Black Sea Trade and Development Bank, which states in pertinent part, "The new ultimate owner of SDG is said to be Mr. Philippe Glatz. Greencos S.A., the company through which Mr. Glatz acquired SDG, has a charter capital of CHF 100,000 and its financial strength is estimated by D&B at CHF 90,000. How and where Greencos and Mr. Glatz found the CHF 10 million that was used to recapitalize SDG is unclear. I am not persuaded that there's been any real change in the |

15

| | | |
|---|---|---|
| | | ownership of SDG." This email is admissible for the non-hearsay purpose of establishing what was said. Additionally, the top of this email chain contains emails from Ilyas Khrapunov and Nicholas Bourg, which are admissible if offered by BTA as either a party admission or a coconspirator statement. Further, as this Court has observed, hearsay within a business record is admissible because it was relied on for the business. |
| PTX-632 | FRE 403 (unfair prejudice as to unsubstantiated allegations; unfair prejudice, confusing, and misleading where it discusses Viktor Khrapunov's alleged misconduct); FRE 802; FRE 805; Foundation | FRE 802, 805: Not offered for its truth. This document demonstrates that following the purported sale to Phillippe Glatz, SDG was aware of serious concerns about the Khrapunov and Ablyazov family's source of wealth, and the legitimacy of the sale of SDG to Glatz. This document further demonstrates that any third party who conducted basic due diligence on Triadou and SDG would have been aware of these concerns.<br><br>FRE 403: For the reasons just given, this document is highly relevant. This document does not appear to contain information different in kind about Ablyazov, Khrapunov, or Glatz than that which has already been admitted in evidence, so it is unclear how it could be unfairly prejudicial.<br><br>Foundation: It is not clear what foundation objection, apart from the above, Triadou intends to assert here. BTA reserves the right to supplement its responses. |
| PTX-639 | | |

16

| | | |
|---|---|---|
| PTX-644 | | |
| PTX-645 | | |
| PTX-646 | | |
| PTX-647 | | |
| PTX-648 | | |
| PTX-649 | | |
| PTX-650 | | |
| PTX-652 | | |
| PTX-691 | | |
| PTX-707 | | |
| PTX-859 | | |