

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

December 11, 2022

**BY ECF**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
    **Case No. 15 Civ. 5345 (JGK) (KHP)**

Dear Judge Koeltl:

  We write in advance of the charging conference on Monday, December 12, 2022, to supplement BTA's proposed jury instructions [ECF No. 1548] and BTA's responses to Triadou's proposed jury instructions [ECF No. 1595.]

  First, BTA respectfully requests that the jury receive the following instruction on Triadou's knowledge:

> The defendant in this case, Triadou, is a company.  A company may only act through real people who are its agents or employees.  In this case, you have heard evidence that Ilyas Khrapunov, Nicholas Bourg, Marc Gillieron, and Cesare Cerrito were agents and employees of Triadou.  I instruct you that if you find that one of Triadou's agents or employees took an action, or had knowledge of a fact, during a time when that person was acting on behalf of Triadou, then you should consider it as if Triadou itself took that action or knew that fact.  I further instruct you that the subsequent sale of Triadou, whether or not you find it was legitimate, does not erase Triadou's knowledge obtained earlier.

  "Bedrock principles of agency law provide that the knowledge of an agent, acquired while acting within the scope of employment, is imputed to his principal." *In re: Lyondell Chem. Co.*, No. 16CV518 (DLC), 2016 WL 5818591, at *3 (S.D.N.Y. Oct. 5, 2016) (citing Restatement (Third) of Agency § 5.03 and Restatement (Second) of Agency § 272); *accord, e.g.*, *Carrion v. 605 Realty Assocs. Ltd.*, No. 02 CIV. 2166(DC), 2004 WL 1562815, at *4 (S.D.N.Y. July 13, 2004).  Here, the evidence clearly shows that Ilyas Khrapunov, Nicholas Bourg, Cesare Cerrito, Marc Gillieron, and Arnie Herz were agents of Triadou and were acting within the scope of their employment for the benefit of Triadou during the relevant period.

  As an initial matter, each of them had official positions.  Khrapunov owned Triadou for a period of time; Bourg and Cerrito were both its directors; Gillieron and Herz were Triadou's lawyers; and Gillieron was also Chairman of SDG's board of directors.

  There is also no dispute that each of them was an agent-in-fact for Triadou.  For instance, Phillipe Glatz testified that even after his purported acquisition of SDG, he permitted Ilyas



Khrapunov and Nicholas Bourg to manage Triadou's U.S. investments:

> Q. In late 2013, Mr. Khrapunov, along with Mr. Bourg, were supervising Triadou's investments in the United States. Correct?
> A. I cannot tell you if it was until the late 2013. But I can tell you that at a certain point, he was supervising the investments here.
> Q. And when you say you can't tell me if it's late, is that because at some point in 2013, he stopped supervising Triadou's investments in the United States?
> A. I cannot tell you just because I don't recall with a lot of detail and it's been like over ten years, but I was sure that at a certain point, he was supervising.
> Q. And during the time that he was supervising Triadou's investments in the United States, you trusted both Mr. Khrapunov and Mr. Bourg to do that. Correct?
> A. Yes. That is true, that at a certain point, I did trust both of them.
> **Q. And you permitted them, as the owner of SDG, to manage Triadou's operations in the United States during that time period.**
> **A. Yes. Yes. For a certain period of time, I did trust them.**
> Q. And what is your recollection of when Mr. Khrapunov was no longer managing Triadou's activities in the United States?
> A. As I recall, it was after the sale of three country.

Trial Tr. at 526:12 (emphasis added); *see, e.g.*, Trial Tr. 467:1–4 ("I do own Triadou since 2013. However, I'm not the one in charge of supervising it. It has its own team, its own management team."); *id.* at 547:13–17 (Glatz testifying that he instructed Ilyas to withdraw from his duties "in the spring or the summer of 2014").

Further, the March 12, 2013, Share Purchase Agreement that Mr. Glatz signed specifically states that Ilyas Khrapunov is "to be considered as a key man for the development of the SDG Group" and requires Mr. Glatz to maintain Ilyas Khrapunov's employment as SDG "for a minimum period of 12 months." DTX-1 at 33. Additionally, Martin Dowd's testimony shows that Ilyas managed at least one of Triadou's U.S. investments, the Syracuse Development Center, until as late as 2016. *See* Trial Tr. at 289:4–290:17; 293:20–294:9.

Second, relatedly, while Triadou confirmed earlier today that it does not seek a jury instruction or finding by the jury on affirmative defenses, BTA respectfully requests that Triadou be precluded from arguing its bona fide purchaser defense to the jury. As explained more fully in BTA's responses to Triadou's proposed jury instructions [ECF No. 1595], the bona fide purchaser defense is inapplicable here. That defense applies when a defendant innocently acquires the asset sought to be recovered. But here, the defendant is Triadou—not Phillipe Glatz—and the asset sought to be recovered is BTA's stolen funds and the investments Triadou acquired with those funds—not Triadou itself. The real defendant—Triadou—cannot escape liability for its own wrongdoing by alleging that the new beneficial owner of its parent company was a bona fide purchaser. SDG and its subsidiaries retained their own liabilities after Mr. Glatz's purported acquisition. *See, e.g.*, *Ostashko v. Ostashko*, No. 00-CV-7162 (ARR), 2002 WL 32068357, at *27 (E.D.N.Y. Dec. 12, 2002) (holding that where bank "could not have claimed bona fide purchaser status," corporation, as bank's assignee, "steps into the banks shoes" and "too cannot invoke the defense" even though corporation "may not have been privy to" bank's "knowledge" of wrongdoer's "actual intent to defraud"), *aff'd sub nom. Ostashko v. Zuritta-Teks, Ltd.*, 79 F. App'x



492 (2d Cir. 2003); *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126 ("It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more ... than his assignor.").

Further, as Triadou now concedes, it is the Court, not the jury, who will decide the application of any equitable defenses, including Triadou's bona fide purchaser defense. *Price v. Fox Ent. Grp., Inc.*, No. 05 CIV. 5259 (SAS), 2007 WL 1498321, at *1 (S.D.N.Y. May 22, 2007). Any attempt to argue that Mr. Glatz's acquisition of SDG is relevant to Triadou's liability would misstate the law, confuse the jury, and prejudice BTA.

Thank you for your consideration.

Respectfully,

 /s/ Matthew L. Schwartz
Matthew L. Schwartz