UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN, ET AL.,

                Plaintiffs,

    - against -

MUKHTAR ABLYAZOV, ET AL.,

                Defendants.

15-cv-5345 (JGK)

ORDER

---

JOHN G. KOELTL, District Judge:

    The Court received the attached document, which the Court now forwards to the parties.

SO ORDERED.

Dated:    New York, New York
           February 14, 2023

                                        John G. Koeltl
                                  United States District Judge

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

Tribunal de première instance
Rue de l'Athénée 6-8
Case postale 3736
1211 GENEVE 3

Réf : **CR/47/2020 - XCR - 5**

à rappeler lors de toute communication

# ORDONNANCE DU
# 24 JANVIER 2023

Rendue dans le cadre de l'entraide judiciaire internationale CR/47/2020 - 5

requise par the Honorable Alison J. Nathan, Juge auprès de la UNITED STATES DISTICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Vu la requête d'entraide internationale émise par le juge cité en marge le 13 novembre 2020 dans le cadre de l'affaire opposant LA VILLE D'ALMATY, KAZAKHSTAN et BTA BANK JSC à Félix SATER, Daniel RIDLOFF, BAYROCK GROUP INC., GLOBAL HABITAT SOLUTIONS INC., RRMI-DR LLC, FERRARI HOLDINGS LLC, MeM ENERGY PARTNERS LLC visant à l'audition en qualité de témoins de Leila KHRAPUNOVA et d'Iliyas KHRAPUNOV, domiciliés dans le canton de Genève.

Que cette procédure civile américaine concerne une demande de dommages-intérêts pour des préjudices résultant de vol et blanchiment d'argent présumés de fonds appartenant aux demandeurs. Que les demandeurs allèguent notamment que les défendeurs auraient conspiré avec Mukhtar ABLYAZOV, Viktor KHRAPUNOV, Leila KHRAPUNOVA et Iliyas KHRAPUNOV afin d'échapper aux ordonnances de gel des avoirs prononcées par les tribunaux anglais à l'encontre de Mukhtar ABLYAZOV et de dissimuler des avoirs volés. Que les défendeurs auraient ainsi participé au blanchiment du produit des fonds détournés de BTA BANK et d'Almaty par Mukhtar ABLYAZOV et Viktor KHRUPANOV en les transférant vers les Etats-Unis. Que les demandeurs ont précisé qu'Iliyas KRHAPUNOV avait déjà été amené à témoigner dans le cadre d'une action en justice connexe ouverte aux Etats-Unis, à la suite d'une commission rogatoire exécutée par le Tribunal de Genève en février 2018.

Vu la procédure CR/47/2020 – 5 inscrite suite à cette requête auprès du Tribunal de première instance de Genève.

Attendu que le 17 février 2022, les demandeurs ont transmis au Tribunal de céans une liste de questions à poser aux témoins.

Qu'une audience a été fixée au 18 mai 2022 pour entendre Leila KHRAPUNOVA.

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

Que cette audience a toutefois été annulée par courrier du 9 mai 2022, pour des raisons d'organisation.

Que par écriture du 13 mai 2022, le conseil des deux témoins précités s'est opposé à l'exécution de la requête d'entraide.

Qu'il a d'abord rappelé que Leila KHRAPUNOVA et Iliyas KHRAPUNOV étaient l'ex-épouse respectivement le fils de Viktor KHRAPUNOV, ancien membre du gouvernement de la République du Kazakhstan et important opposant politique au régime kazakh en place. Que Leila KHRAPUNOVA et Viktor KHRAPUNOV s'étaient vus reconnaître le statut de réfugiés en Suisse en décembre 2000 en raison notamment des persécutions tant judicaires qu'extra-judiciaires dont ils faisaient l'objet de la part des autorités kazakhes. Que des décisions suisses et françaises avaient confirmé l'emprise des autorités kazakhes sur son appareil judiciaire, les leviers importants que l'ancien président kazakh avaient encore sur la justice de ce pays, l'existence d'une pratique répandue dans ce pays de poursuites de droit commun contre les opposants politiques et enfin les motivations politiques qui contaminaient les différentes procédures et poursuites engagées tant contre la famille KHRAPUNOV que contre Mukhtar ABLYAZOV et ses proches (pièces 1.6, 1.7 et 3 annexées à l'écriture du 13 mai 2022).

Que le conseil des témoins a ensuite rappelé qu'en 2012, la République du Kazakhstan avait adressé à la Suisse une demande d'entraide visant notamment à localiser en Suisse les avoirs de Viktor KHRAPUNOV, Leila KHRAPUNOVA et Iliyas KHRAPUNOV, conduisant le Ministère public genevois à ouvrir une procédure d'entraide. Que cette entraide avait été refusée par la Suisse en ce qui concerne la documentation bancaire, la procédure à l'étranger ne satisfaisant pas aux exigences de l'art. 6 CEDH mais que l'entraide avait par contre été accordée pour la transmission de procès-verbaux, d'ordonnances et d'actes procéduraux aux avocats des autorités kazakhes. Qu'en 2012 également, le Ministère public genevois avait ouvert une procédure pénale distincte pour blanchiment d'argent à l'encontre d'Iliyas KHRAPUNOV et de ses parents. Que dans le cadre de cette procédure, la ville d'Almaty s'était constituée partie plaignante et avait demandé accès au dossier. Que le Ministère public genevois avait reconnu la qualité de partie plaignante à la ville d'Almaty mais avait fortement restreint son droit d'accès au dossier au motif notamment que "*la ville d'Almaty et la République du Kazakhstan sont étroitement liées, la ville d'Almaty étant une entité constituante de l'Etat kazakh et que partant il existe un risque manifeste, dans l'hypothèse où la ville d'Almaty se verrait accorder le droit d'accéder à de la documentation dont les autorités suisses ont considéré qu'elle ne devait pas être transmise aux autorités kazakhes dans le cadre de la procédure d'entraide, que la documentation ainsi obtenue dans le cadre de la présente procédure soit néanmoins transmise et que les règles de l'entraide soient ainsi contournées*". Que cette argumentation avait été reprise tant par la Chambre pénale de recours genevoise que par le Tribunal fédéral (pièces 1.3, 1.4 et 1.5 annexées au courrier du 13 mai 2022). Que finalement, en 2018, BTA BANK avait déposé une plainte pénale à l'encontre d'Iliyas KHRAPUNOV et de Mukhtar ABLYATOV pour des faits de blanchiment d'argent en lien avec les fonds que ce dernier aurait détourné au



République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

sein de la banque. Que cette plainte pénale avait fait l'objet d'une ordonnance de classement du Ministère public genevois, confirmé par le Tribunal fédéral, au motif que les mouvements de fonds dénoncés ne pouvaient être rattachés à une infraction préalable, de sorte que l'éventuelle commission d'une infraction de blanchiment d'argent n'apparaissait pas (pièce 4 annexée au courrier du 13 mai 2022).

Que le conseil des témoins considère donc d'une part que la requête, sollicitée en réalité au profit de l'Etat du Kazakhstan, était constitutive d'un abus de droit car elle viserait à obtenir des informations que le Kazakhstan ne pourrait pas obtenir par le biais de demandes d'entraide pénales qui lui seraient très vraisemblablement refusées et que son exécution serait dès lors contraire aux principes fondamentaux du droit de procédure civile suisse. Que d'autre part, il a fait valoir le droit des deux témoins précités de refuser de répondre au sens des articles 11 CLaH 70 et 166 CPC, au vu du risque que l'Etat du Kazakhstan utilise leurs réponses à leur encontre.

Que par ordonnance du 1er juin 2022, le Tribunal de céans a interpellé le Juge requérant afin qu'il se prononce sur les motifs de refus de collaborer présentés par les témoins et indique s'il persiste dans sa requête.

Que le 13 juin 2022, les conseils des demandeurs ont informé le Tribunal qui ni eux ni le juge requérant n'avait reçu la requête du 13 mai 2022 des témoins alors qu'ils avaient besoin d'en prendre connaissance pour pouvoir se prononcer sur les motifs de refus de témoigner invoqués.

Que par ordonnance du 24 juin 2022, le Tribunal de céans a refusé de transmettre la requête du 13 mai 2022 aux conseils des demandeurs.

Que le même jour, le Tribunal de céans a fait parvenir au juge requérant la requête du 13 mai 2022 et ses annexes.

Que par ordonnance du 13 juillet 2022, transmise au Tribunal de céans par le conseil américain des deux parties demanderesses le 25 juillet 2022, the Honorable John G. KOELTL a persisté dans la demande d'entraide et a considéré qu'il appartenait au Tribunal genevois de se prononcer sur toute objection soulevée par Leila KHRAPUNOVA et Iliyas KHRAPUNOV.

Que par ordonnance du 12 août 2022, le Tribunal de céans a transmis aux conseils des parties des copies de l'écriture et le bordereau de pièces du 13 mai 2022 et leur a imparti un délai d'un mois dès la réception de l'ordonnance pour se déterminer sur les motifs de refus de témoigner de Leila KHRAPUNOVA et Iliyas KHRAPUNOV.

Que le 20 septembre 2022, les conseils des demandeurs ont rejeté les conclusions prises par les témoins et ont persisté à réclamer l'exécution de la commission rogatoire.



République et canton de Genève
**POUVOIR JUDICIAIRE**
Tribunal civil

Qu'ils ont soulevé dans un premier temps que la requête n'était pas abusive car la demande d'entraide en matière civile émanait d'un tribunal américain dans le contexte d'une procédure civile dirigée contre un citoyen américain, à savoir Félix SATER. Que les témoins n'étaient pas parties à cette procédure. Qu'il n'existait en outre pas de procédure d'entraide pénale ayant comme objet semblable dans laquelle leur audition serait demandée. Qu'il n'y avait jamais eu de demande d'entraide pénale internationale entre les Etats-Unis et la Suisse concernant cette même affaire civile qui aurait été refusée par les autorités suisses et qui pourrait être contournée par la présente procédure d'entraide civile. Que l'argument des témoins selon lequel une requête d'extradition et une procédure d'entraide pénale concernant la production de documents bancaires auraient été initiées par l'Etat du Kazakhstan n'était pas pertinent car aucune de ces procédures n'était en rapport avec la procédure civile. Qu'en outre, les témoins auraient les droits découlant de l'article 11 CLaH 70 et de l'article 166 CPC lors de leur audition et que l'autorité requérante avait de plus rendu une ordonnance de protection qui leur permettait de déclarer que toute information révélée lors de leur audition devrait être traitée de manière confidentielle et ne pourrait être utilisée en dehors de la procédure civile. Que finalement, Iliyas KHRAPUNOV avait déjà fait l'objet d'une audition dans le cadre d'une procédure d'entraide civile réglée par le chapitre II de la CLaH 70, portant sur des faits similaires et dans laquelle il était lui-même défendeur.

Qu'ils ont dans un deuxième temps soulevé que l'article 166 CPC permettait à un tiers appelé à collaborer de s'y refuser à raison de faits spécifiques qu'il ne pouvait être tenu de révéler compte tenu des risques d'une action pénale ou en responsabilité civile. Que la portée de ce droit de refus se limitait aux faits qui exposeraient le tiers ou l'un de ses proches à ces risques et était un droit de refus restreint. Que partant, le tiers ne pouvait refuser de collaborer sur des faits non couverts par les risques susmentionnés. Que les témoins ne pouvaient donc se soustraire à leur obligation de collaborer mais qu'ils pourraient lister les questions pour lesquelles ils invoquent un éventuel droit de refus de collaborer et pour quels motifs.

Que par courriers des 7 et 10 octobre 2022, le Tribunal de céans a informé les parties que la cause serait gardée à juger sur l'existence de justes motifs de refus invoqués par les témoins dans un délai de 15 jours dès notification des courriers.

Que le 26 octobre 2022, le conseil des témoins a déposé des observations. Qu'il a rappelé que la ville d'Almaty et la BTA BANK ne pouvaient être distinguées de l'Etat du Kazakhstan. Que la procédure civile américaine s'inscrivait dans un seul et même complexe de faits que les procédures pénales déjà diligentées à savoir celui d'une persécution politique et judiciaire à l'échelle mondiale de Viktor KHRAPUNOV et Mukhtar ABLYAZOV et de tous ceux qui leur étaient proches. Que la Cour de justice de Genève avait dans un arrêt récent ACJC/1005/2022 du 22 juillet 2022 reconnu que le contournement de l'entraide pénale par l'entraide civile était constitutif d'abus de droit et justifiait le rejet de la demande d'entraide civile. Qu'accepter la présente demande d'entraide civile reviendrait en l'espèce à transmettre au Kazakhstan et aux différentes entités qui lui étaient affiliées des informations qui devraient être sollicitées par


République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

l'entraide pénale laquelle serait vraisemblablement refusée compte tenu des différentes décisions déjà rendues. Qu'au surplus, il a ajouté que l'ordonnance de protection des autorités américaines ne protégeait en rien ses mandants. Que dans ce sens, BTA BANK avait déjà produit des procès-verbaux établis dans le cadre de la procédure civile dans laquelle Iliyas KHRAPUNOV avait été entendu à l'appui d'une requête de reconnaissance d'une décision anglaise par la justice américaine ce qui démontrait que BTA BANK se servait de procès-verbaux obtenus par la voie de l'entraide civile internationale dans le cadre d'autres procédures, ce qui justifiait d'autant plus les craintes de ses mandants.

Que le 25 novembre 2022, les conseils des demandeurs se sont déterminés sur les observations des témoins du 26 octobre 2022. Qu'ils ont notamment allégué que si l'on tenait compte du raisonnement des témoins, qu'importe la procédure, qu'importe l'état de fait, qu'importe les parties ou l'Etat requérant, les KHRAPUNOVS auraient à chaque fois un droit inconditionnel de refuser de collaborer à une procédure d'entraide. Que les témoins faisaient un amalgame inadmissible entre les procédures d'extradition et d'entraide pénales de la part de l'Etat du Kazakhstan et une procédure civile par devant un tribunal américain entamée contre des tiers. Que dans le cadre de l'arrêt ACJC/1005/2022, c'était l'identité de l'objet de la demande d'entraide, à savoir les documents bancaires, qui était la base sur laquelle la Cour de justice avait qualifié d'abusive la procédure d'entraide civile. Qu'en l'espèce, les témoins ne savaient même pas encore quelles questions allaient leurs être posées et qu'ils n'expliquaient pas dans leurs écritures en quoi leur audition toucherait à leurs droits. Que finalement, il était relevé que les témoins n'étaient parties ni à la procédure civile devant le tribunal américain ni à la procédure d'entraide, ce qui était un fait important qui distinguait le cas d'espèce de celui ayant mené à l'arrêt ACJC/1005/2022. Que les témoins ne pouvaient donc se prononcer sur l'existence d'un motif de refus d'entraide au sens de l'article 12 al. 1 let. b CLaH 70 mais uniquement sur la possibilité d'être dispensé de témoigner au sens de l'article 11 let. a CLaH 70, étant précisé qu'il fallait distinguer la possibilité d'être dispensé de collaborer de celle d'être dispenser de comparaître, non couverte par les articles 11 let. a CLaH 70 et 166 CPC.

Attendu **en droit** que l'entraide requise est régie par la Convention de La Haye du 18 mars 1970 sur l'obtention des preuves à l'étranger en matière civile et commerciale (CLaH70, RS 0.274.132), à laquelle la Suisse et les Etats-Unis ont adhéré.

Que l'autorité judiciaire qui procède à l'exécution d'une commission rogatoire applique les lois de son pays en ce qui concerne les formes à suivre (art. 9 al. 1 CLaH70).

Que le conseil des témoins soulève deux arguments à l'appui de ses conclusions. Le premier concerne le droit de refuser l'exécution d'une commission rogatoire si cette dernière porte atteinte à la souveraineté ou la sécurité de l'Etat requis.

Que l'Etat requis - en l'occurrence la Suisse - peut refuser d'exécuter la commission rogatoire, notamment s'il existe un motif de refus admis par la CLaH70.

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

Qu'aux termes de l'art. 12 al. 1 let. b CLaH70, l'exécution de la commission rogatoire peut être refusée dans la mesure où l'Etat requis la juge de nature à porter atteinte à sa souveraineté ou à sa sécurité.

Que les notions d'atteinte à la souveraineté ou à la sécurité doivent être interprétées de manière étroite. Qu'elles ne correspondent pas à la notion interne d'ordre public, qui est plus large (GAUTHEY/MARKUS, *L'entraide judiciaire internationale en matière civile*, n° 299). Qu'on détermine s'il y a une telle atteinte en se basant sur les principes fondamentaux de l'ordre juridique de l'Etat requis. Qu'il y a atteinte à la souveraineté ou à la sécurité de la Suisse lorsque l'exécution de la requête porte atteinte aux droits fondamentaux des personnes concernées, respectivement aux principes fondamentaux du droit de procédure civile suisse (ATF 142 III 116 consid. 3.2).

Que l'Etat requis doit donc refuser l'entraide judiciaire lorsque celle-ci s'avère impossible dans les faits, ou qu'elle est incompatible avec sa politique législative ou gouvernementale; il peut en outre protéger plus particulièrement sa souveraineté (arrêt du Tribunal fédéral 5P.267/2005 du 21 décembre 2005, in JdT 2007 I p. 3 ss, p. 16).

Qu'à teneur de l'art. 5 al. 3 de la Constitution fédérale de la Confédération suisse, les organes de l'État et les particuliers doivent agir de manière conforme aux règles de la bonne foi.

Que l'art. 52 CPC prévoit également que quiconque participe à la procédure doit se conformer aux règles de la bonne foi.

Que selon l'art. 2 al. 1 CC, chacun est tenu d'exercer ses droits et d'exécuter ses obligations selon les règles de la bonne foi. L'abus manifeste d'un droit n'est pas protégé par la loi (al. 2).

Que l'abus de droit consiste à se prévaloir d'un droit dans des circonstances telles que le résultat serait inadmissible. Qu'il est difficile de donner une définition générale de l'abus de droit du fait que l'art. 2 al. 2 CC est formulé comme une clause générale nécessitant concrétisation. Que dans une première approche, l'on s'attachera à la conséquence qui est de rendre inopérant un droit formellement existant. Que même s'il faut partir du principe dura lex sed lex, l'art. 2 al. 1 CC permet au juge de ne pas donner effet au droit invoqué dans des circonstances exceptionnelles. Que cette disposition introduit un paramètre éthique dans l'ordre juridique conduisant à une distinction entre l'existence formelle d'un droit et sa justification matérielle. Que l'importance de la primauté exceptionnelle de l'ordre public et des bonnes mœurs sur un droit formellement existant se manifeste par le fait que le Tribunal fédéral classe l'interdiction de l'abus de droit comme un élément de l'ordre public positif suisse (CHAPUIS, *Commentaire romand CC I*, 2010, n° 24 ad art. 2 CC).

Que selon le Tribunal fédéral, "*il y a fraude à la loi – forme particulière d'abus de droit – lorsqu'un justiciable évite l'application d'une norme imposant ou interdisant un certain résultat (norme éludée) par le biais d'une autre norme permettant d'aboutir à ce résultat de manière*



*appartement conforme au droit (norme éludante). Pour décider s'il y a fraude à la loi, il faut interpréter la norme d'interdiction en recherchant si, selon son sens t son but, elle s'applique aussi à l'opération litigieux, ou si cette dernière est exclue du champ d'application de la norme d'interdiction et est ainsi valable. Il convient d'examiner si la norme éludée entend uniquement prohiber une certaine manière de procéder, ou si elle veut interdire un résultat en soi. Dans cette seconde hypothèse, la norme éludée doit être appliquée nonobstant la construction destinée à la contourner"* (arrêt du TF 2C_751/2014 du 23 février 2015 et références citées).

Que dans un arrêt récent ACJC/1005/2022 du 22 juillet 2022, la Cour de justice de Genève a jugé que les juridictions civiles suisses ne pouvaient pas statuer sur la demande d'entraide civile internationale litigeuse sous peine de vider de sa substance la procédure d'entraide pénale antérieure et de contourner celle-ci, ce qui serait vraisemblablement contraire aux principes fondamentaux du droit de procédure suisse. Dans le cas ayant mené à cet arrêt, le Ministère public de la Confédération (ci-après: MPC) avait ouvert en 2012 une procédure pénale à l'encontre de l'ancien directeur d'une entité ayant porté plainte pour notamment soupçons de blanchiment d'argent et de gestion déloyale, procédure dans laquelle l'entité s'était constituée partie plaignante. Dans le cadre de cette procédure pénale, une banque suisse avait transmis toute la documentation bancaire relative à un compte ouvert par une société ayant son siège en Suisse. Le 10 janvier 2017, le Tribunal pénal fédéral avait considéré que l'entité était une entité de nature quasi-étatique, de sorte qu'il existait un risque concret de "transmission intempestive" à l'Etat dont elle dépendait de tous documents obtenus dans la procédure pénale. Le Tribunal pénal fédéral avait donc limité l'accès au dossier de cette entité, en ce sens qu'elle pouvait uniquement consulter celui-ci dans les locaux du MPC, sans possibilité d'en lever des copies. En 2019, une procédure pénale avait été initiée dans l'Etat concerné à l'encontre de l'ancien directeur. Le 4 janvier 2021, les autorités de cet Etat avaient déposé auprès du MPC une requête d'entraide judiciaire internationale en matière pénale visant l'obtention des documents bancaires produits dans la procédure pénale suisse. En 2019, l'entité quasi-étatique avait initié une action civile au Royaume-Uni à l'encontre de l'ancien directeur. Le 7 février 2022, le Tribunal de première instance avait reçu du Tribunal anglais saisi une demande d'entraide judiciaire internationale en matière civile, formée le 17 janvier 2022, tendant à la fourniture par la banque suisse des documents relatifs au compte détenu par l'ancien directeur. La Cour de justice a dans son arrêt ainsi retenu que dans ces circonstances particulières, autoriser la transmission des documents bancaires dans le cadre de l'entraide civile aurait pour conséquence que l'entité quasi-étatique aurait vraisemblablement pleinement accès à ceux-ci dans le cadre de la procédure anglaise, alors même que le Tribunal pénal fédéral avait limité cet accès dans le cadre de la procédure pénale suisse, compte tenu du risque concret de transfert des informations et documents à l'Etat dont elle dépendait. La Cour de justice a donc retenu que tant que les juridictions pénales suisses ne s'étaient pas définitivement prononcées sur l'octroi ou le refus de la remise à l'Etat de la documentation concernant les comptes bancaires concernés, les instances civiles suisses ne pouvaient pas octroyer l'entraide judiciaire requise visant la transmission de ces mêmes documents dans le cadre d'une procédure au fond

République et canton de Genève
**POUVOIR JUDICIAIRE**
Tribunal civil

opposant également l'entité quasi-étatique à l'ancien directeur et portant sur un complexe de faits identique, au risque de rendre une décision contradictoire aux conséquences irréparables. La Cour de justice a conclu qu'il apparaissait ainsi, sous l'angle de la vraisemblance, inadmissible d'exécuter, en l'état, la commission rogatoire litigieuse, alors même que la procédure d'entraide pénale était encore pendante par-devant les instances pénales fédérales suisses.

Qu'en l'espèce, le Tribunal retiendra que contrairement à ce qu'allègue le conseil des témoins, le cas d'espèce diverge de celui ayant mené à l'arrêt de la Cour de justice ACJC/1005/2022.

Qu'en effet, il n'existe dans le présent cas d'espèce aucune procédure pénale pendante dirigée à l'encontre des témoins. Que leur témoignage n'a pas été refusé dans le cadre d'une demande d'entraide pénale internationale ou dans le cadre d'une procédure pénale, suisse ou étrangère. Qu'il n'existe donc pas en l'espèce un risque, contrairement au cas de l'ACJC/1005/2022, que la ville d'Almaty, et partant l'Etat du Kazakhstan, obtienne par le biais de la procédure d'entraide civile, des informations dont on lui aurait refusé l'accès dans le cadre d'autres procédures.

Qu'en outre, le cas d'espèce diffère du cas ayant mené à l'ACJC/1005/2020 dans ce sens que Leila KHRAPUNOVA et Iliyas KHRAPUNOV ne sont pas parties à la procédure civile américaine et à la présente procédure mais sont uniquement entendus en tant que témoins.

Qu'il est vrai que l'Etat kazakh, soit directement, soit par l'intermédiaire d'entités dépendantes de lui, a initié plusieurs procédures pénales à l'encontre d'Iliyas KHRAPUNOV, dont trois en Suisse. Toutes les procédures initiées en Suisse ont été classées. Dans le cadre de ces procédures, l'accès au dossier a été restreint à la ville d'Almaty afin que certains documents bancaires ne lui soient pas transmis, compte tenu du risque majeur qu'elle les transmette à l'Etat du Kazakhstan afin que ce dernier puisse s'en servir contre la famille KHRAPUNOV notamment. Toutefois, dans aucune de ces procédures passées, un autorité judiciaire a refusé d'entendre Iliyas KHRUPANOV et Leila KHRUPANOVA. Au contraire, Iliyas KHRUPANOV a été entendu dans le cadre d'une procédure d'entraide civile déposée devant le Tribunal de céans. Il a été entendu en qualité de partie et n'a alors fait valoir aucun motif de refus d'être auditionné.

Que partant, il n'existe *in casu* par de risque concret que des informations dont l'accès aurait été refusé à l'Etat du Kazakhstan lui soit tout de même transmises par le biais de la présente demande d'entraide civile.

Qu'il n'y a donc pas d'abus de droit dans le cadre de la demande d'entraide.

Que partant, le Tribunal ne peut retenir que la présente demande d'entraide contreviendrait à sa souveraineté.



République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

Que dans son deuxième argument, le conseil des témoins allègue que ses mandants sont en droit d'être dispensés de leur devoir de collaborer, au sens des articles 11 al. 1 CLaH 70 et 166 CPC.

Qu'aux termes de l'art. 11 al. 1 CLaH70, la commission rogatoire n'est pas exécutée pour autant que la personne qu'elle vise invoque une dispense ou une interdiction de déposer, établies soit par la loi de l'Etat requis (let. a), soit par la loi de l'Etat requérant et spécifiées dans la commission rogatoire ou, le cas échéant, attestées par l'autorité requérante à la demande de l'autorité requise (let. b).

Que selon la jurisprudence, les dispenses visées par le droit de l'Etat requis (art. 11 al. 1 let. a CLaH70), en l'occurrence le droit suisse, comprennent non seulement les dispenses découlant du droit de procédure civile – depuis le 1er janvier 2011, l'art. 166 CPC –, mais également celles du droit matériel (arrêts du Tribunal fédéral 4A_340/2015 précité consid. 3.1.1; 5A_284/2013 du 20 août 2013 consid. 4.1, SJ 2014 I p. 13).

Que les tiers ont l'obligation de collaborer à l'administration des preuves (art. 160 al. 1 CPC), sous réserve des cas prévus aux art. 165 et 166 CPC.

Que selon l'art. 166 al. 1 let. a CPC, tout tiers peut refuser de collaborer à l'établissement de faits qui risquerait de l'exposer ou d'exposer un de ses proches au sens de l'art. 165 CPC à une poursuite pénale ou d'engager sa responsabilité civile ou celle de ses proches; que ce danger existe en cas de risque d'ouverture, d'extension ou de reprise d'une procédure pénale (RUETSCHI, *Berner Kommentar, Schweizerische Zivilprozessordnung*, 2012, n. 6 ad art. 166 CPC).

Que l'art. 166 CPC octroie au tiers à la procédure un droit restreint de refuser de collaborer. Qu'il est restreint en ce sens qu'il ne permet pas au tiers qui s'en prévaut de refuser totalement de collaborer. Que le refus de collaborer envisagé par cette disposition ne peut être invoqué qu'en lien avec des faits au sujet desquels le tiers est tenu à un devoir de discrétion. Que ce droit prévient les conflits de conscience ou d'intérêt et protège certaines institutions d'intérêt public ou jouissant d'une confiance particulière (Message CPC [2006], 6927). Partant, un tiers n'est en principe pas autorisé à refuser de collaborer. Il ne peut refuser que ponctuellement, aux conditions de l'art. 166 CPC. Qu'au contraire du droit absolu prévu à l'art. 165 CPC, le refus doit être motivé. Que cependant, la vraisemblance suffit; une exigence plus élevée viderait cette disposition de sa substance (Message CPC [2006], 6927; NUSSBAUMER, *Petit commentaire Code de procédure civile*, ad. art. 166 CPC, n°1 et suivants et références citées).

Que le tribunal peut prendre des mesures de sauvegarde d'intérêts dignes de protection (art. 156) pour éviter qu'un tiers ne refuse de collaborer (CR CPC-JEANDIN, ad. art. 166 CPC; n° 3a).



République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

Que dans un arrêt ACJC/567/2018 du 30 avril 2018, la Cour de justice de Genève a retenu que le Tribunal n'avait pas violé le droit en considérant que le recourant n'avait pas de motif valable de refuser de témoigner. Dans le cas ayant mené à l'arrêt, le recourant avait refusé de répondre à toute question, sans même en connaître le sujet et, par conséquent, si elle portait sur des faits susceptibles d'avoir potentiellement une influence sur son sort dans le cadre de la procédure pénale; que sans connaître les questions qui lui seraient posées, il ne pouvait valablement et de manière fondée craindre que les réponses qu'il pourrait fournir seraient de nature à avoir une telle influence; que n'importe quelle question n'était pas susceptible, *per se*, de l'exposer dans le cadre de la procédure pénale; que le seul fait qu'il se trouvait dans une situation "inconfortable" ou qu'il n'était pas "rassuré" par l'attitude des défendeurs n'était pas suffisant pour qu'il puisse refuser de témoigner.

Qu'en l'espèce, les témoins se prévalent d'un droit absolu à ne pas témoigner sans motiver les raisons pour lesquelles ils estiment qu'ils s'exposeraient à des poursuites pénales en cas de témoignage, ne se référant qu'à l'imbroglio de procédures menées par l'Etat du Kazakhstan et ses entités soumises à l'encontre de leur famille et d'autres opposants au régime kazakh.

Que bien qu'il ressort des faits présentés ci-dessus que la justice de l'Etat du Kazakhstan ne semble pas offrir les garanties couvertes par la CEDH et semble être dirigée par le pouvoir politique, cela n'a pas comme conséquence de permettre à Leila KHRAPUNOVA et Iliyas KHRAPUNOV de se soustraire automatiquement à toute demande de coopération dans le cadre de n'importe quelle procédure ayant trait à des affaires les concernant.

Qu'il est rappelé ici que Leila KHRAPUNOVA et Iliyas KHRAPUNOV ne sont ni parties à la procédure d'entraide ni à la procédure civile menée aux Etats-Unis.

Que leur audition est prévue à Genève en Suisse, Etat dans lequel ils ont obtenu le droit d'asile.

Que comme le prévoit le CPC, ils sont en mesure de refuser de répondre aux questions qui sont susceptibles de leur nuire, en rendant vraisemblables leurs motifs de refus.

Que partant, les arguments de refus de collaborer des témoins seront rejetés et que leur audition peut donc être requise.

Qu'il convient préalablement de transmettre la liste des questions aux témoins et de leur fixer un délai pour qu'ils se déterminent par écrit sur les questions auxquelles ils ne souhaitent pas répondre en exposant leur motif de refus.

**Par ces motifs,**
**LE TRIBUNAL :**

1. Rejette les arguments de refus de collaborer soutenus par Leila KHRAPUNOVA et Iliyas KHRAPUNOV les 13 mai et 26 octobre 2022.

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

2. Transmet la liste des questions à Leila KHRAPUNOVA et Iliyas KHRAPUNOV et leur impartit un délai au **27 février 2023** pour cas échéant faire valoir leur motif de refus de répondre pour chaque question concernée.

3. Réserve la suite de la procédure.

Catherine HEKIMI
Juge

**Indication des voies de recours :**

*Conformément aux articles 319 ss du Code de procédure civile (CPC), la présente décision peut faire l'objet d'un recours par devant la Cour de justice, Place du Bourg-de-Four, case postale 3108, 1211 Genève 3, dans les **10 jours** qui suivent sa notification (art. 321 al. 2 CPC).*

La présente ordonnance est communiquée pour notification à Me Fanny MARGAIRAZ, Mes Balz GROSS et Claudio BAZZANI, Me Craig WENNER et Me Jill LEVI par le greffe le  2 4 JAN. 2023

Copie en est transmise le même jour à The Honorable Alison J. NATHAN, Juge auprès de United States District Court for the Southern District of New York.