UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CITY OF ALMATY, KAZAHKSTAN, and
BTA BANK JSC,

                                Plaintiffs,

             -against-

MUKHTAR ABLYAZOV, ILYAS KHRAPUNOV,
VIKTOR KHRAPUNOV and TRIADOU SPV S.A.,

                                Defendants.

-----------------------------------------------------------------X

**REPORT AND RECOMMENBDATION ON MOTION TO HOLD ILYAS KHRAPUNOV IN CONTEMPT**

15-CV-05345 (JGK) (KHP)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/15/2023

TO: HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE
FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

      Plaintiffs have moved for a finding of contempt against Ilyas Khrapunov for failing to pay sanctions previously imposed by the Court. (ECF No. 1713.) Khrapunov opposes the motion and presented evidence demonstrating an inability to pay both in the form of a declaration with documents and testimony at a hearing before this Court on March 10, 2023. For the reasons set forth below, I recommend Plaintiffs' motion be denied at this time, but I also recommend additional conditions be imposed on Khrapunov as set forth below.

## LEGAL STANDARD

      Under 28 U.S.C. 636(e)(6), a federal Magistrate Judge may certify facts constituting contempt to a district judge and issue an order to show cause why that person should not be adjudged in contempt of court by the facts so certified. The Magistrate Judge's role is "to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. 2008)

1

(internal quotations omitted). Upon certification of the facts supporting a finding of contempt, the District Judge is then required to conduct a de novo hearing at which issues of fact and credibility determinations are to be made. *Id.*

The party moving for contempt must demonstrate that the contemnor failed to comply with a clear and unambiguous order of the Court by clear and convincing evidence and that the contemnor has not attempted to comply in a reasonable and diligent manner. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). However, the alleged contemnor may assert that he is unable to comply as a defense to civil contempt. *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). It is the alleged contemnor's burden to produce evidence that plainly and unmistakably shows that he is unable to apply. *Id.*

## CERTIFIED FACTS

The Court hereby certifies that Plaintiffs have set forth a prima facie case for contempt based on the following facts:

1. This Court issued imposed sanctions on Ilyas Khrapunov for engaging in discovery misconduct, awarding Plaintiffs fees and costs in the amount incurred in connection with filing numerous motions to compel under Federal Rule of Civil Procedure 37. (ECF Nos. 1248; 1260; 1333.)

2. The Honorable Alison J. Nathan rejected Khrapunov's objections to this Court's imposition of discovery sanctions. (ECF No. 1461.)

3. Thereafter, Plaintiffs' counsel submitted an application for fees in connection with the Court's prior orders. (ECF No. 1467.) On May 4, 2022, the Court ultimately awarded Plaintiffs $221,285.31 after review of the application. (ECF No. 1494.) The Court ordered Khrapunov to pay this amount within 30 days of the order. *Id*.

4. Khrapunov failed to pay the amount ordered.

5. On January 9, 2023, Plaintiffs moved for an Order holding Khrapunov in contempt for failure to comply with this Court's Order. (ECF No. 1713.)

6.      Khrapunov, through his counsel, opposed the motion, contending inability to pay. He also re-raised objections to the Court's prior sanctions order. (ECF No. 1721.)

7.      Khrapunov submitted a declaration concerning his current financial status and attached certified translations of documents from Swiss Tax authorities (where Khrapunov resides) showing that he had no taxable income for the years 2015 through 2022. He also attached documents from the Swiss debt collection agency, which investigated whether Khrapunov had the ability to pay several debts to creditors, and ultimately found that Khrapunov did not have sufficient assets to satisfy the debts. (ECF Nos. 1722, 1736.)

8.      On March 10, 2023, the Court held a hearing to give Khrapunov an opportunity to further explain his objection. The hearing was held over Microsoft Teams, and Khrapunov testified from France (where he traveled for purposes of attending the hearing). Khrapunov was placed under oath prior to giving testimony.

9.      Khrapunov was thoroughly questioned by his counsel and testified in sum and substance that he has no bank accounts in his name in any country, he has no bank accounts in the names of his spouse or children in any country, he has no significant assets in any country in his name or the name of his wife or children, he is not employed and has no source of income, his wife is not employed, and he relies on his mother to pay his rent and all other costs of living.

10.     At the hearing, Khrapunov further explained the investigations conducted by the Swiss Tax authorities and debt collection agency. Both agencies questioned Khrapunov extensively about his finances, had access to bank records and, he believes, a criminal investigation file from Swiss authorities conducting an investigation into whether he assisted his father and Mukhtar Ablyazov with laundering money stolen from Plaintiffs more than a decade ago. After thorough investigation, the Swiss authorities determined Khrapunov did not have income or assets sufficient to pay any tax or repay debts.

10.     Plaintiffs' counsel cross examined Khrapunov, but the cross-examination did not result in any testimony that contradicted Khrapunov's testimony that he presently lacks resources to pay the sanctions and has not had the resources to pay them since the sanctions award was issued.

11.     Khrapunov testified that he intends to pay the sanctions, just has he paid a prior sanctions award. He testified that he has a pending suit in Switzerland based on criminal proceedings the Swiss government initiated against Khrapunov and then dropped. According to Khrapunov, he has presented evidence showing that the Swiss criminal case substantially interfered with his ability to work and forced him to sell his prior business at a steep discount, resulting in approximately $3.8 million in damages. He testified that if he is successful in that suit, he will use some of the proceeds to pay the sanctions in this case.

12.     Khrapunov also testified that he continues to look for work and may begin a consulting practice, which, if successful, will result in income which could be used to pay the sanctions.

**ANALYSIS**

Turning to the three elements that must be established before an Order of contempt issues, this Court finds that the order requiring Mr. Khrapunov to pay Plaintiffs $221,285.31 in fees based on his discovery misconduct was "clear and unambiguous" as this Court stated that Plaintiffs are awarded a total of $221,285.31 in attorneys' fees and that Mr. Khrapunov was required to pay this amount to Plaintiffs by no later than thirty days from the date of the Order. (ECF No. 1494.)

Furthermore, Judge Nathan unambiguously held that this Court did not "clearly err" in imposing sanctions and overruling Khrapunov's objections. (ECF No. 1461.) Thus, the first element necessary to certify a finding of contempt has been established.

With respect to the proof of non-compliance, it must be "clear and convincing." Here, Mr. Khrapunov admitted to his non-compliance in his opposition to the motion and at the hearing. Plaintiffs have also submitted a declaration confirming Mr. Khrapunov's non-compliance. (Schwartz Decl., ECF No. 1724.) Thus, the second element for finding contempt has been met.

Finally, with respect to the third element necessary for civil contempt—whether the alleged contemnor has been diligent in attempting to comply with the court's order—Mr. Khrapunov has not complied. However, Mr. Khrapunov argues the reason he has not paid is that he has been unable to pay the fees.

As to his inability to pay, Mr. Khrapunov submitted a sworn Declaration stating he has no assets and significant liabilities and testified persuasively that he has been unable to pay the sanctions since they were imposed and still is unable to pay the sanctions at the present time.

(ECF No. 1736.)  He attests he has no access to the banking system and submitted documents from authorities in Switzerland showing he has no taxable income from 2015 to the present.  He also attests he was adjudged through a Swiss administrative proceeding to lack the ability to satisfy his debt obligations.  Finally, he attests that he is being supported by his mother.

      Mr. Khrapunov's testimony and evidence of inability to pay is convincing.  It is no secret that he has been the subject of multiple lawsuits and investigations brought in multiple countries, including the United States, the United Kingdom, and Switzerland.  Governmental authorities have used criminal processes to investigate Khrapunov's former businesses, connections, and family members to locate assets.  Plaintiffs here have been able to conduct extensive discovery in this Court and in other countries to learn about Khrapunov's assets in pursuit of the stolen money.  At this point, after over a decade of investigations and scrutiny, it is not hard to conclude that if Khrapunov had funds/assets, they would have been located by now.  It is also undisputed that Khrapunov lacks access to the banking system due to the various lawsuits and criminal actions against him and that he is unemployed.

      Mr. Khrapunov also has demonstrated a willingness to submit to the orders of this Court by previously paying a sanctions award in installments and by traveling to France to testify under oath for purposes of opposing the instant contempt motion.

      For the above reasons, Khrapunov has demonstrated an inability to pay the sanctions at this time.  He offered to provide sworn declarations every quarter concerning his financial resources, including the outcome of the pending Swiss action that may result in a monetary award.

**CONCLUSION**

For the above reasons, I recommend that no order of contempt be issued.  However, I recommend that a judgment be issued against Khrapunov in the amount of $221,285.31 and that federal post-judgment interest rates be applied to that judgment.  I also recommend that Khrapunov be required to submit a sworn declaration quarterly updating the Court on his ability to pay/payment of the judgment.  I recommend that such sworn declarations be submitted commencing June 30, 2023 and at the end of each quarter thereafter (i.e., September 30, December 31, March 31 and June 30) until the judgment is paid.

Date:  March 15, 2023  
New York, New York

Respectfully submitted,

*Katharine H Parker*

Katharine H. Parker  
United States Magistrate Judge