

CRAIG WENNER
Tel: (212) 909-7625
Email: cwenner@bsfllp.com

April 28, 2023

**BY ECF**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
            Case No. 15 Civ. 5345 (JGK) (KHP)

Dear Judge Koeltl:

    We represent Plaintiff BTA Bank JSC ("BTA") in the above-captioned matter and write in response to the Court's April 17, 2023 Order, [ECF No. 1746], permitting "a statement of position" regarding the Motion to Withdraw as Counsel to Defendant Triadou SPV S.A. filed by Blank Rome LLP, [ECF No. 1744].

    BTA does not object in principle to Blank Rome's motion to withdraw from this case, in light of non-payment. However, we respectfully request that if Blank Rome's motion is granted, the Court permit withdrawal only on terms that do not prejudice BTA given the advanced stage of the case and the unchallenged jury verdict that has already been rendered in BTA's favor. Triadou's decision to cease directing and paying its lawyers immediately following an unfavorable outcome is strategic and intended to delay and frustrate BTA's enforcement of the judgment. We therefore respectfully request (1) that the motion to withdraw be granted only after a final (or at least a partial) judgment has been entered in this case and funds held in escrow have been paid to BTA, (2) that Blank Rome be required—as it already indicated it is willing to do—to act as an agent for service on Triadou, and (3) that Blank Rome disclose financial information concerning Triadou, contact information for Philippe Glatz and Petr Krasnov, and the identity of, communications with, and contact information for the unidentified intermediary who is now communicating with Blank Rome on Triadou's behalf.

**Relevant Background**

    Triadou vigorously defended this lawsuit for over seven years, since it was first filed in mid-2015 and through the end of 2022. Early on, then-District Judge Nathan held an evidentiary hearing and granted the City of Almaty and BTA's motion to attach Triadou's assets, finding "that it is probable that they will prevail on the merits of their unjust enrichment claims[.]" [ECF No. 175 at 23–24]. Judge Nathan subsequently entered an Order of Attachment over any property in New York "in which Triadou has an interest," including "[a]ny funds held in escrow by the Honorable Herman Cahn, pursuant to the Monitorship Agreement" that had been entered into on Triadou's consent, reflecting funds that were to be paid to Triadou. [ECF No. 192 at 6–7]. The Monitor filed an acknowledgement that he "will hold all property subject to the Monitorship Order



on behalf of the U.S. Marshal," and that he "will refrain from directly or indirectly transferring, . . . or in any other way affecting the value of, any such property or debt." [ECF No. 235-1]. As of December 8, 2022, the Monitor held approximately $27.5 million in a non-interest-bearing account. [ECF No. 1734-46 (Trial Stipulation marked PTX 5001)].

On December 14, 2022, after a twelve-day trial, a jury returned a verdict in BTA's favor on its conversion and unjust enrichment claims, "for total damages of $100,600,000 against Triadou SPV S.A.," with substantial prejudgment interest. *See* Dec. 14, 2022 Minute Entry. BTA has two remaining claims to be decided by the Court, seeking additional remedies. The Court has not entered judgment yet on BTA's conversion and unjust enrichment claims.

Following the verdict, the Court instructed BTA and Triadou to confer and propose a post-trial briefing schedule for any motions Triadou might file, as well as any submissions concerning BTA's remaining claims. On December 23, 2022, Triadou requested, on consent, additional time to propose a schedule, writing, "Triadou intends to use the additional time to better evaluate which post-trial motions, if any, it may pursue." [ECF No. 1711]. The parties then proposed a schedule with opening submissions due on March 2, responses on April 4, and replies on May 5, which the Court so ordered. [ECF No. 1717]. BTA filed its post-trial proposed findings of fact and conclusions of law on March 2, along with a proposed judgment. [ECF Nos. 1730-1, 1731]. Triadou did not file any post-trial motion challenging the verdict. Then on March 28, one week before its response deadline, Triadou moved on consent for a 30-day extension, citing "the breadth of the trial record" and Blank Rome's "pressing obligations" on "other matters," but did not mention the circumstances giving rise to its motion to withdraw (which, if BTA had been made aware of, would have impacted BTA's decision to consent to an adjournment). [ECF No. 1740].

On April 13, Blank Rome moved to withdraw. [ECF Nos. 1744, 1745]. In a declaration supporting that motion (the "Hassid Decl."), Blank Rome represented that since the verdict, it has not been able to "schedule any meeting or call" with Glatz to discuss "Triadou's next steps" and "has not been paid in several months and has learned that Mr. Glatz and Triadou will not arrange for us to be paid going forward." Hassid Decl. ¶ 3. (Blank Rome had previously received monthly payments "by wire transfer from one of Mr. Glatz's companies (other than Triadou)," which Triadou does not identify. *Id.* ¶ 6.) Blank Rome explains that it normally communicated with Triadou not through Glatz but "primarily through two individuals: Petr Krasnov, a consultant from the firm Fiscus, S.A., who had been retained by Mr. Glatz, and Cesare Cerrito, Triadou's former (sole) manager." *Id.* ¶ 5. Blank Rome explains that it "contacted Mr. Glatz directly, by phone and by email, several times" regarding the litigation and past due invoices, and that Mr. Krasnov has purportedly "been unable to meet with Mr. Glatz since December 2022 and has no[t] received any instructions from Mr. Glatz regarding Triadou." Hassid Decl. ¶ 9.[1]

---

[1]   During this several-month period when Blank Rome was not receiving instructions "regarding Triadou," Blank Rome continued to represent individuals associated with Triadou in the related litigation against Felix Sater, Case No. 19 Civ. 2645 (S.D.N.Y.). Blank Rome appeared in a deposition on behalf of Triadou's former U.S. counsel, Arnie Herz, and filed a motion to quash a subpoena directed at Mr. Glatz. Blank Rome's declaration does not explain whether or how it received instructions and payments for these related services.



Blank Rome informed Mr. Krasnov and emailed Mr. Glatz "that unless he communicates with us, Blank Rome would move to withdraw." *Id.* ¶ 10. The only information Blank Rome learned in response to these efforts was from an unidentified intermediary who informed Blank Rome "that Mr. Glatz and Triadou do not intend to make further payments to Blank Rome." *Id.* ¶ 9. In a footnote, Blank Rome explained that it omitted details of how it learned it would not be paid going forward "to preserve confidentiality" but does not mention privilege. *Id.* at 3 n.1. After Blank Rome filed its motion to withdraw, Blank Rome served the motion on Mr. Glatz and Mr. Krasnov by email, and Mr. Krasnov acknowledged receipt. [ECF No. 1747].

**Argument**

**I.    The Court Should Enter Partial Judgment Immediately (and Prior to Blank Rome's Withdrawal) on the Unchallenged Jury Verdict, and Direct that the Monitorship Funds Be Released to BTA.**

Triadou's decision to cease paying and communicating with its trial counsel is clearly strategic and aimed at frustrating BTA's ability to litigate this case and enforce a judgment. Because Triadou has not challenged the jury's verdict, it is inevitable that a judgment will be entered on at least those two claims. The Court should enter that judgment now before Triadou is in default and direct the funds held by the Monitor to be paid to BTA. *Cf. S.E.C. v. Great Am. Techs., Inc.*, No. 07 CIV. 10694 (DC), 2009 WL 4885153, at *5 (S.D.N.Y. Dec. 15, 2009) (denying motion where, "if [counsel] were to withdraw, [the defendant] would be at serious risk of default because a corporation may not represent itself.").

If the Court were to permit withdrawal now, Triadou may later try to mischaracterize the *judgment* as a default judgment (notwithstanding the jury trial and verdict) and claim the case was not resolved on the merits, which could impact BTA's enforcement efforts here or abroad.

**A.    Triadou's Decision to Stop Paying Blank Rome Is Strategic.**

To start, Triadou voluntarily ceased to participate in the case. Triadou stopped instructing Blank Rome immediately following the jury verdict in December. Hassid Decl. ¶ 8. Blank Rome repeatedly communicated to Triadou the consequences of its non-cooperation, including that Blank Rome "would not be in a position to submit a response" to the verdict and BTA's post-trial submission. *Id.* ¶ 10. And rather than facing an inability to pay, Triadou and Glatz both affirmatively communicated to Blank Rome—through an undisclosed intermediary—that they "do not intend to make further payments to Blank Rome." *Id.* ¶ 9. The fact that Triadou's non-payment is voluntary is further demonstrated by Triadou's otherwise unbroken, *seven*-year track record of paying its bills. There is also no evidence in the record that Triadou is unable to pay.

Triadou's decision to hamstring the litigation at this critical stage through non-payment of fees follows a familiar pattern set by its co-conspirators in this and related cases. For example, defendant Ablyazov's lawyers moved to withdraw when he stopped paying them after they briefed his unsuccessful motion to dismiss. [*See* ECF No. 352 ¶ 4]. Ilyas Khrapunov's counsel moved to withdraw in the middle of discovery after he was sanctioned and just before critical depositions. [*See* ECF No. 620]. It was of course a matter of public record that Ablyazov and Ilyas were paying for counsel in numerous other lawsuits in the United States and abroad at the time their counsel



moved to withdraw here.[2] And earlier this month, just one week before Blank Rome filed its motion to withdraw, Ilyas Khrapunov filed a notice of appeal in his personal capacity in New York state court where BTA had obtained a judgment against him for over $500 million.[3]

### B.  The Court Should Enter Judgment on the Unchallenged Jury Verdict and Direct the Monitor to Pay BTA.

The verdict is unchallenged. Triadou's deadline to move for a new trial under Rules 50 or 59 or for relief under any other rule has long-since passed. Triadou was required to make a motion by March 2, 2023, [ECF No. 1717], a date that had already been needlessly delayed by Triadou while Blank Rome tried to receive instructions—a fact that had not been brought to either BTA's or the Court's attention. And any further delay in entering a judgment on BTA's unjust enrichment and conversion claims substantially prejudices BTA. Each day that passes deprives BTA of the use of a substantial amount of funds that are currently held in escrow, victimizing BTA all over again, particularly at today's significant interest rates.

There is also no impediment to the Court directing that the Monitorship funds be released to BTA upon entry of the judgment. The purpose of the Monitorship Agreement was to receive funds owed to Triadou and to hold those funds "until the pending motion for a preliminary injunction [and attachment] submitted by the City of Almaty and BTA Bank in the Federal action [Case No. 15 Civ. 5345] has been decided." [ECF No. 989-01 at 4]. Triadou has represented to this Court that the funds held by the Monitor are due to be paid to Triadou, but for the Order of Attachment. [*See, e.g.*, ECF No. 189 ("Triadou knows of no funds so held in New York other than those in the monitor's account."); ECF No. 1734-46 (Triadou was "paid the amounts owed under the Agreement into an escrow account . . . pursuant to judgments in four New York State court cases filed by Triadou"). In six years, neither Triadou nor anyone else ever moved to discharge the Order of Attachment or determine an adverse claim to the funds under CPLR §§ 6221, 6222.

The only person who might, in other words, challenge BTA's entitlement to the Monitorship funds is Triadou, and Triadou is not challenging the verdict and so would have no basis to challenge the application of the Monitorship funds to the satisfaction of that judgment. No further submissions are required for the Court to direct the garnishee, the Monitor, to pay the funds to BTA pursuant to the judgment. This is distinct from BTA's claims under CPLR § 5239 to vacate Triadou's state court judgments and to create a constructive trust—discussed below—which are the subject of BTA's proposed findings of fact and conclusions of law, as the Monitorship account simply reflects funds held in escrow that would otherwise be paid immediately to Triadou.

---

[2]  Ilyas also ceased paying his lawyers in other cases as well when it suited him. *See, e.g.*, Notice of Motion and Motion for Leave to Withdraw as Counsel at 1, *City of Almaty v. Khrapunov*, No. 15-cv-02628-FMO-CW (ECF No. 32) (C.D. Cal. Aug. 31, 2015); Request for Approval of Substitution or Withdrawal of Counsel, *City of Almaty v. Khrapunov*, No. 14-cv-03650-FMO-FFM (ECF No. 151) (C.D. Cal. Sept. 6, 2017).

[3]  Notice of Appeal (Apr. 7, 2023), *BTA Bank JSC v. Ilyas Khrapunov*, Index No. 154972/2022 (Sup. Ct. N.Y. Cnty.) [NYSCEF Doc. No. 51].



Courts regularly deny motions to withdraw to prevent a disruption to the prosecution of a case, or to permit withdrawal only after the entry of a judgment. The Court should do so here. *See Mario Valente Collezioni*, No. 02 CIV. 196 (SHS), 2004 WL 1057790, at *1 (S.D.N.Y. May 10, 2004) (considering "protracted history of this litigation" and apparent unwillingness of defendant to "defend against this action further," conditioning withdrawal "on the entry of final judgment in plaintiff's favor" including the "submission of an agreed upon judgment" by counsel); *Diaz v. Scores Holding Co.*, No. 07 CIV 8718 RMB THK, 2009 WL 6539954, at *1 (S.D.N.Y. Mar. 2, 2009) (denying withdrawal for counsel of corporate defendants that had no replacement counsel "without prejudice to renewal in order to further assist the Court in resolving this case"); *Patel v. Baluchi's Indian Rest.*, No. 08 CIV. 9985 (RJS), 2012 WL 13209853, at *1 (S.D.N.Y. Nov. 26, 2012) (denying a motion to withdraw "without prejudice to renewal following the fulfillment of the payment installment plan set forth in the settlement agreement" because the defendants were "corporations" and "are prohibited from proceeding *pro se*, and there is no indication that any of them have obtained replacement counsel").

If the Court conditions Blank Rome's withdrawal on the entry of a judgment, BTA can submit a proposed judgment on the verdict for entry by the Clerk, along with a proposed order directing the Monitor to release funds to Boies Schiller Flexner LLP on behalf of BTA.

**II.   The Court Should Also Enter Judgment on BTA's Remaining Claims Based on BTA's Unopposed Findings of Fact and Conclusions of Law Before Blank Rome Withdraws.**

The Court should not wait for the post-trial motion briefing schedule to expire before entering judgment on BTA's remaining claims, or the Court should deny Blank Rome's motion without prejudice to renew after the entry of judgment. The only reason Triadou's deadline to respond to BTA's proposed findings of fact and conclusions of law has not yet passed is that Blank Rome requested a protracted schedule to buy Triadou more time to instruct and pay Blank Rome. For example, when Blank Rome asked the Court in December for more time to submit a proposed schedule, it explained that "*Triadou* intends to use the additional time to better evaluate which post-trial motions, if any, it may pursue." [ECF No. 1711 (emphasis added)]. In fact, Blank Rome had no idea what Triadou's intentions were at that time, since as Blank Rome now admits, it was not receiving *any* instructions regarding Triadou since the jury verdict on December 14. Blank Rome never explained to the Court or BTA that Triadou had effectively ceased participating in the litigation.

BTA ultimately filed its proposed findings of fact and conclusions of law and proposed judgment on March 2, 2023. [ECF Nos. 1730-1, 1731]. As explained above, one week before its response deadline, Blank Rome moved for an extension but never explained that Triadou had gone dark months earlier.

Any further delay is unwarranted. Triadou's liability has already been determined by the jury, and Triadou will not be opposing the remedies BTA seeks in its additional claims. Conditioning withdrawal on the entry of a judgment—and the limited disclosures requested below—would be fair to both Blank Rome and Triadou. Like the defendants' counsel in *S.E.C. v. Pentagon Capital Management PLC*, Blank Rome knew from the beginning of this case, which began with an attachment hearing, that the plaintiffs in this litigation "would be attempting to effectuate the final judgment." No. 08 CIV. 3324 RWS, 2012 WL 3065981, at *4 (S.D.N.Y. July



25, 2012). Blank Rome knew that if Triadou lost, Triadou "would be facing a substantial judgment, which might require post-trial discovery." *Id.* "It is not unfair" for Blank Rome "to continue to represent [Triadou] regarding post-judgment discovery matters." *Id.* And Blank Rome warned Glatz and Krasnov that if Blank Rome had not received instructions and payment from Triadou, "we would not be in a position to submit a response on behalf of Triadou" with respect to the "post-trial briefing in this matter[.]" Hassid Decl. ¶ 10.

The Court should therefore adopt BTA's proposed findings of fact and conclusions of law prior to Blank Rome's withdrawal and issue a judgment on BTA's remaining claims.

### III. The Court Should Require that Blank Rome Remain a Service Agent and Disclose Information that Will Aid in BTA's Judgment Enforcement.

To ensure that Triadou is not using Blank Rome as a pawn in its effort to delay or undermine this litigation now that it has turned against it, the Court must require a robust evidentiary disclosure with respect to Triadou's nonpayment of fees. This is information that BTA will be entitled to in any event under Rule 69(a)(2), which, "[i]n aid of the judgment or execution," allows "the judgment creditor [to] obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Judgment creditors have "wide latitude in using the discovery devices provided by the Federal Rules in post-judgment proceedings." *Donoghe v. Astro Aerospace Ltd.*, 19-CV-7991 (JPO), 2022 WL 17095249, at *1 (S.D.N.Y. Nov. 21, 2022).

Blank Rome should disclose information about Triadou's finances and its client's purported inability to pay, such as the outstanding balance, Triadou's (or Glatz's) current financial resources, how much Triadou and Glatz's companies have paid in the past, and the companies and individuals that previously made those payments and through which accounts. *See Ellis v. Jean*, No. 10 CIV. 8837 AJN KNF, 2013 WL 662454, at *1 (S.D.N.Y. Feb. 20, 2013) (denying motion to withdraw where no affidavit "showing [client's] financial resources and demonstrating his inability to pay for legal services was submitted to the Court"); *Rophaiel v. Alken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 306457, at *1–2 (S.D.N.Y. June 7, 1996) (requiring financial statements from corporate client and tax returns from individual clients demonstrating inability to pay before considering withdrawal motion).

It is also not enough that Blank Rome has agreed "to act solely as agent for service on Triadou until it retains new counsel." Hassid Decl. ¶17. Courts recognize that prejudice to the plaintiff "in his collection efforts on his judgments" is "a legitimate concern" on a motion to withdraw representation of a foreign defendant. *de Jesus Rosario v. Mis Hijos Deli Corp.*, 491 F. Supp. 3d 8, 11–12 (S.D.N.Y. 2020) ("impos[ing] as a condition precedent to such withdrawal that Defense Counsel provide the Court and plaintiff with email and physical address information at which individual defendants have agreed to accept service of all papers."). In addition to remaining an agent for service of process, Blank Rome should disclose any email addresses, phone numbers, usernames, contact information, and physical addresses for Glatz, Krasnov, Cerrito, Ilyas, and anyone else associated with Triadou, directly or indirectly. Blank Rome should also be required to disclose the individual who informed Blank Rome that "Glatz and Triadou do not intend to make further payments to Blank Rome," Hassid Decl. ¶ 9, including communications with that individual concerning Triadou's finances or fees.



\*   \*   \*

For these reasons, BTA respectfully requests that the Court condition Blank Rome's withdrawal on (1) the entry of a judgment against Triadou and the release of the Monitorship funds to BTA, (2) Blank Rome's continued role as an agent for service of process on Triadou, and (3) the disclosure by Blank Rome of information relevant to its motion to withdraw and BTA's judgment enforcement efforts.

Respectfully,

*/s/ Craig Wenner*
Craig Wenner