**BLANKROME**

1271 Avenue of the Americas | New York, NY 10020
blankrome.com

Phone:  (212) 885-5268
Fax:    (212) 202-3932
Email:  alex.hassid@blankrome.com

May 5, 2023

**VIA ECF**

The Honorable John G. Koeltl
United States District Judge
United States District Court – S.D.N.Y.
500 Pearl Street
New York, New York 10007

      Re:    *City of Almaty, Kazakhstan, et ano. v. Mukhtar Ablyazov, et al.*,
             No. 1:15-cv-05345 (JGK) (KHP)

Dear Judge Koeltl:

      We write for Blank Rome LLP ("Blank Rome") in reply to the April 28, 2023 statement of position of BTA Bank JSC ("BTA") regarding Blank Rome's motion to withdraw as Triadou SPV S.A.'s counsel, (ECF 1748), and as permitted by this Court's April 15, 2023 Order, (ECF 1746). BTA's so-called position statement confirms that it "does not object in principle" to Blank Rome's withdrawal, but opportunistically asks the Court to impose several prejudicial conditions that would eliminate Triadou's right to defend itself and force disclosure of protected information properly sought, if at all, during post-*judgment* proceedings.  Nor does any of BTA's conjecture provide sufficient reason to deny Blank Rome's withdrawal request—which is based not just on Triadou's refusal to make further payments, but also on its owner's continuing, months' long refusal to communicate with Blank Rome regarding Triadou's defense.  The Court should not allow BTA to use Blank Rome's legitimate withdrawal request as leverage to prejudice Triadou.

      While BTA speculates that Triadou is acting strategically and has "voluntarily ceased to participate in this case," (*see* ECF 1748 at 3), there is no evidence of either.  We noted in Blank Rome's opening submission that we omitted confidential information surrounding the motion to withdraw (some of which is privileged) that can be shared with the Court *in camera* if the Court desires clarification on any specific issue.  That approach would be more appropriate than compelling Blank Rome to reveal protected client or non-party information, especially where Triadou has not waived privilege.[1]  Nor is the withdrawal of attorneys who represented the former

---

[1] BTA's characterization of the timing of communications, the nature of the communications between Blank Rome and Triadou's representatives, and how that connects to the parties' requests for extensions is simply wrong, but Blank Rome cannot address BTA's erroneous narrative without revealing privileged information.  Blank Rome can confirm, however, that it has not communicated directly with any intermediary—rather, the intermediary, whom Blank Rome can identify by name (and who is not a witness in this case) works for Mr. Glatz's company Pidji Holdings, S.A., and communicated Triadou's and Mr. Glatz's refusal to pay Blank Rome to Mr. Krasnov, who in turn relayed that position to Blank Rome.

individual defendants relevant here—Blank Rome does not represent and has never represented those individuals and, as counsel for Triadou, had nothing to do with the withdrawal motions of the individual defendants' counsel.

Second, BTA's request for the Court to enter judgment on the jury verdict, to enter judgment on BTA's remaining claims that have not been fully briefed, and to direct payment by the Monitor to BTA of Triadou's attached funds, are premature. Triadou still may retain new counsel to (i) respond to BTA's proposed findings of fact and conclusions of law; (ii) oppose BTA's proposed judgment (which goes far beyond what BTA is entitled to and seeks impermissible double recovery of amounts BTA has already obtained); and (iii) seek to prove Triadou's affirmative defense of unclean hands, which, if successful, could affect the jury's verdict on the unjust enrichment claim. BTA's assertion that "Triadou will not be opposing the remedies BTA seeks in its additional claims," (ECF 1748 at 5), is unfounded because even Blank Rome does not have that information. The Court should not allow BTA to use Blank Rome's motion to withdraw as an opportunity to secure greater rights than BTA ordinarily would have or to obtain post-judgment discovery before judgment is entered.

Third, the cases BTA cites in support of its request that the Court enter judgment before granting Blank Rome's withdrawal request involve readily distinguishable circumstances or a starkly different posture. For example, in *S.E.C. v. Great American Technologies, Inc.*, No. 07 Civ. 10694 (DC), 2009 WL 4885153 (S.D.N.Y. Dec. 15, 2009), the lawyer who sought to withdraw represented an individual defendant whose noncompliance with discovery orders had "been repeated and willful"; the Court struck the individual's answer and entered a default judgment against him as sanctions for his noncompliance under Rule 37. *Id.* at *4-5. The Court then denied the attorney's motion to withdraw from representing that individual because (i) the attorney was the second to seek to withdraw from representing the defendant; (ii) the first withdrawal delayed discovery for six months while the individual searched for new counsel; (iii) the lawyer knew at the time he began representing the defendant that the defendant had not complied with his discovery obligations and that the defendant's prior lawyer had withdrawn. *Id.* at *5. None of those facts are present here. The same attorneys have represented Triadou since this case began, Triadou has not been recalcitrant during any stage of this litigation, and until now, Triadou had consistently paid its bills for more than seven years. (ECF 1745, ¶ 6). In other words, there was no basis for Blank Rome, the other parties, or the Court to anticipate this situation.

BTA's other cited cases are similarly inapposite. In *Mario Valente Collezioni, Ltd. v. Semeraro*, No. 02 Civ. 196 (SHS), 2004 WL 1057790, at *1 (S.D.N.Y. May 10, 2004), the defendants affirmatively represented that they no longer wished to defend the action. Triadou has made no such representation here. In *Diaz v. Scores Holding Co.*, No. 07 Civ. 8718 (RMB) (THK), 2009 WL 6539954, at *1 (S.D.N.Y. Mar. 2, 2009), discovery remained ongoing, unlike here. And in *Patel v. Baluchi's Indian Restaurant*, No. 08 Civ. 9985 (RJS), 2012 WL 13209853, at *1 (S.D.N.Y. Nov. 26, 2012), all that remained was the administration of a settlement agreement requiring the defendant to make five installment payments. In contrast, a good deal of litigation remains before judgment can be entered here. Further, all three of the above-cited cases focused on *nonpayment of fees*—none involve a client's complete refusal to communicate with its lawyer.

This fact renders the instant situation critically different. *See Rophaiel v. Alken Murray Corp.*, No. 94 CIV. 9064, 1996 WL 306457, at *1 (S.D.N.Y. June 7, 1996) (distinguishing cases in which a client merely does not pay a lawyer from those where the client does not pay *and* the client refuses to cooperate with his attorney, the latter of which supports withdrawal). Even if the Court were to require Blank Rome to continue representing Triadou (it should not), Blank Rome cannot defend a client without knowing how the client wishes to proceed.[2]

BTA also cites *S.E.C. v. Pentagon Capital Management PLC*, No. 08 CIV. 3324 (RWS), 2012 WL 3065981, at *4 (S.D.N.Y. July 25, 2012), in support of its contention that it would not be unfair for Blank Rome to continue representing Triadou in post-judgment discovery because the firm knew BTA would try to "effectuate" its judgment. (ECF 1748 at 5-6). Again, the case is wholly distinguishable. In *Pentagon Capital Management*, the law firm sought to withdraw from representing an entity during post-judgment proceedings after the entity went bankrupt and the entity's administrators said they would no longer pay the law firm for post-judgment proceedings, but while the firm simultaneously continued to represent the same entity in appellate proceedings and was paid for it. *Id.* at *4. Here, Blank Rome is not representing Triadou in any other proceedings or otherwise continuing work for the company elsewhere.[3]

As a last request, BTA seeks a "robust evidentiary disclosure" with respect to Triadou's "nonpayment of fees" and the imposition of conditions beyond Blank Rome's offer to act as a designated agent for service on Triadou. (ECF 1748 at 6). The Court should reject all of BTA's requests. Initially, this lawsuit is not in the post-judgment phase, so Federal Rule of Civil Procedure 69 does not apply. Even if it did, BTA knows well that Triadou has no assets beyond those already disclosed in this litigation (BTA even identified an expert, Tarig Kozouz, to present that opinion to the jury). BTA also lacks any legal basis to try to enforce the judgment against non-parties like Mr. Glatz—whom BTA's own counsel acknowledged at trial is not a party to this suit and has not been sued. (*See, e.g.*, Trial Tr. at 467:8-16) (questions by BTA counsel to Mr. Glatz confirming that he had not been sued)).

The cases BTA cites likewise do not support conditioning Blank Rome's withdrawal on the provision of financial disclosures regarding its client. (*See* ECF 1748 at 6). BTA's cited cases

---

[2] Blank Rome would face significant hardship if it were forced to continue representing Triadou. Preparing a response to BTA's proposed findings of fact, conclusions of law, and proposed judgment would be time consuming and costly, and as indicated in Blank Rome's opening submission, Blank Rome would not be paid for that work. The history of this protracted eight-year litigation also suggests that post-judgment proceedings would be onerous and costly.

[3] The work Blank Rome performed in connection with the related *Sater* action between the close of trial in this case and the filing of Blank Rome's motion to withdraw concluded before Blank Rome filed its motion. Moreover, Blank Rome moved to quash a subpoena that BTA served on Mr. Glatz during the trial of this case based on Mr. Glatz's personal request to object to the subpoena. Likewise, Blank Rome represented non-party witness Arnie Herz in deposition after he engaged the firm in November 2022, before trial.

involve only the "nonpayment of fees"—they did not involve the client's *refusal* to pay and *refusal* to communicate with its lawyer, which are the circumstances here.  See *Ellis v. Jean*, No. 10 CIV. 8837 (AJN) (KNF), 2013 WL 662454, at *1 (S.D.N.Y. Feb. 20, 2013) (requiring a disclosure as to the client's inability to pay where there was no evidence of a refusal to pay or lack of cooperation); *Rophaiel*, 1996 WL 306457, at *1 (distinguishing cases granting withdrawal from the one before it because those cases involved the client's refusal to cooperate with the lawyer). Blank Rome's initial submission in support of withdrawal confirms that "Mr. Glatz and Triadou *do not intend* to make further payments to Blank Rome." (ECF 1745, ¶ 9).  And while Blank Rome did not specify the amount outstanding, it made plain that the work for which the firm has not been paid includes the two-week trial in this matter and the lead-up thereto, activities that make clear the magnitude of Triadou's arrears.  (*Id.* ¶ 7).

Finally, the Court should reject BTA's request for broad informational disclosures concerning non-party witnesses.  Although the court in *de Jesus Rosario v. Mis Hijos Deli Corp.* acknowledged that concern over a lawyer's withdrawal from representing a foreign client was legitimate, it held the concern "does not warrant denying [the lawyer's] well supported motion to withdraw." 491 F. Supp. 3d 8, 11 (S.D.N.Y. 2020).  Instead, the court required the withdrawing attorney to provide only email and physical address information at which individual defendants—*parties*—had agreed to accept service. *Id.* at 11-12.  Here, however, BTA requests a slew of information about *non-parties* (Glatz, Krasnov, and Cesare Cerrito), including "email addresses, phone numbers, usernames, contact information, and physical addresses," and information about a former defendant (Ilyas Khrapunov) who is represented by other counsel in connection with this case, (ECF 1748 at 6; ECF 1735).[4]

At bottom, BTA offers no basis to deny Blank Rome's withdrawal request or to impose the severe, almost-punitive conditions the Bank seeks.  The Court should therefore grant Blank Rome's motion and reject BTA's requested conditions except as to Blank Rome's willingness to act as a designated agent for service on Triadou.  Thank you for your consideration.

Respectfully submitted,

  /s/ Alex E. Hassid
Alex E. Hassid

---

[4] The Court may recall that Mr. Cerrito resigned as Triadou's director before trial. (ECF 1630).