UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF ALMATY, KAZAKHSTAN and BTA BANK JSC,

        Plaintiffs,

  -against-

MUKHTAR ABLYAZOV, VIKTOR KHRAPUNOV, ILYAS KHRAPUNOV, and TRIADOU SPV S.A.,

        Defendants.

15 Civ. 5345 (JGK) (KHP)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF APPLICATION FOR ATTORNEYS' FEES AND COSTS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT BACKGROUND ................................................................................................. 2

PLAINTIFFS' REQUEST FOR FEES ...................................................................................... 4
  1.  Attorney Qualifications and Hourly Rates ......................................................................... 5
  2.  Fees Associated with Moving for Contempt and Sanctions Against Khrapunov ................ 7

DISCUSSION ............................................................................................................................ 9
  1.  The Hourly Rates Are Reasonable ..................................................................................... 9
  2.  The Hours Expended in Seeking to Hold Khrapunov Accountable Are Reasonable ........ 12

CONCLUSION ........................................................................................................................ 15


# **TABLE OF AUTHORITIES**

**Cases**

*Alicea v. City of New York*,
  272 F. Supp. 3d 603 (S.D.N.Y. 2017) ............................................................................... 12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008) ........................................................................................ 9, 10

*Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center*,
  652 F.3d 277 (2d Cir. 2011) ........................................................................................ 9, 10

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................ 9

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992) ............................................................................................... 12

*In re Relativity Fashion*, LLC,
  565 B.R. 50 (Bankr. S.D.N.Y. 2017) ................................................................................ 11

*In re Stock Exchanges Options Trading Antitrust Litig.*,
  2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ..................................................................... 10

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ............................................................................................. 12

*Robinson v. City of New York*,
  2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009) .................................................................. 12

*Samms v. Abrams*,
  198 F. Supp. 3d 311 (S.D.N.Y. 2016) .............................................................................. 12

*TufAmerica Inc. v. Diamond*,
  No. 12-CV-3529, 2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) .................................... 9, 12

Plaintiffs the City of Almaty, Kazakhstan, and BTA Bank JSC respectfully submit this memorandum of law in support of their application for attorneys' fees and costs pursuant to the Court's August 6, 2025 Memorandum Opinion and Order holding Ilyas Khrapunov in contempt. [ECF No. 1820].

## PRELIMINARY STATEMENT

Ilyas Khrapunov defied a clear and unambiguous court order, and admitted he had no excuse for doing so. The Court correctly held him in contempt. This is now the third time Ilyas Khrapunov has been ordered to compensate Plaintiffs for their attorneys' fees and costs. Khrapunov was first held in contempt for willfully violating a court order when he leaked a confidential deposition transcript. [ECF No. 564]. He was then sanctioned for severe discovery misconduct, including, among other abuses, testifying falsely, withholding responsive documents and information, and intentionally destroying evidence. [*See, e.g.*, ECF No. 1248 at 23-27 (finding that Ilyas approached discovery as "a game of cat and mouse" and that his noncompliance "has been complete")]. Most recently, and the basis for the instant application, Khrapunov was held in contempt for willfully violating a court order that required him to submit quarterly updates to the Court regarding his ability to satisfy an outstanding judgment against him. [ECF No. 1820].

Plaintiffs seek a total of $123,141.00 in fees and nothing for their costs they incurred for legal services provided by Boies Schiller Flexner in connection with the contempt motion. The work done by counsel included briefing the initial application for contempt, preparing for and attending two separate evidentiary hearings, drafting post-hearing briefing, and drafting this fee application itself. This request is clearly reasonable. The Court has already considered and approved the applicable fee rates in the context of previous sanctions awards against Khrapunov, Mukhtar Ablyazov, and Khrapunov's company, Triadou SPV S.A. [*See* ECF Nos. 1216, 1461,

1

1494, 1779]. And Plaintiffs have substantially discounted the time for which they seek compensation from the time that they actually spent seeking to hold Khrapunov accountable for his contemptuous behavior. The Court should exercise its discretion to grant Plaintiffs' reasonable request.

**RELEVANT BACKGROUND**

After the Court sanctioned Khrapunov for his earlier discovery misconduct, the Court ordered him to pay $221,285.31 to Plaintiffs. Khrapunov failed to pay the sanction, and Plaintiffs moved for contempt. The Court then held a hearing and determined that Khrapunov had satisfied his burden to show an inability to pay. The Court then issued a money judgment in the amount of the sanctions award with post-judgment interest. [*See generally* ECF Nos. 1810 (Order certifying contempt facts), 1820 (Order holding Khrapunov in contempt)]. But the Court also ordered Khrapunov to submit quarterly declarations regarding his financial status. [ECF No. 1810 at 4-5]. Khrapunov initially complied, but he failed to submit updates "for approximately one year." *Id.*

Plaintiffs moved for contempt against Khrapunov to ensure that the Court's order was enforced and that he was not allowed to simply ignore it. Magistrate Judge Parker held an evidentiary hearing on April 10, 2025, at which Judge Parker "considered evidence and took testimony. Khrapunov testified by video and was cross-examined by Plaintiffs' counsel." *Id.* Judge Parker then received post-hearing briefing from both sides and issued a Report and Recommendation to hold Khrapunov in contempt. *Id.*

Specifically, Judge Parker found that the Order requiring Khrapunov to submit quarterly updates was "clear and unambiguous" and that Khrapunov "understood the order because he initially complied with it and then ceased submitting quarterly declarations." [ECF No. 1810 at 6]. Khrapunov "failed to comply with the Court order to provide quarterly updates for four quarters."

*Id.* Khrapunov admitted his non-compliance and even testified "that he had no proper reason or excuse. He simply stopped submitting the quarterly declarations." *Id.* at 6-7. Judge Parker considered the evidence of his ongoing inability to pay the judgment and determined that "Khrapunov has demonstrated an inability to pay the sanctions at this time." *Id.* Judge Parker also granted Plaintiffs' motion to compel Khrapunov's counsel to produce documents evidencing how Khrapunov was paying his current legal fees, which was filed with the same contempt motion. *Id.* at 9. Neither Plaintiffs nor Khrapunov objected to Judge Parker's Report and Recommendation.

This Court then issued an Order directing the parties "to appear for a de novo hearing on the motion for contempt on August 6, 2025." [ECF No. 1812]. Leading up to that hearing, Khrapunov maintained his position that the Court should not hold him in contempt. Khrapunov argued in a letter before the *de novo* hearing that the contempt order should not have been entered because "his violation was de minimis, inconsequential, and not worthy of a civil contempt sanction." [ECF No. 1814 at 2]. Then, Khrapunov argued in a second letter before the *de novo* hearing that he disagrees "with the conclusion of contempt (for the reasons largely stated in ECF 1808)." [ECF No. 1817]. The filing at ECF No. 1808 was his post-hearing brief before Judge Parker in which Khrapunov argued that contempt was not warranted because he "substantially complied" with the Order and his "failure to file update reports amounts to a defect in form, not substance." [ECF No. 1808 at 3-4].

It was in this context—facing Khrapunov's stated intention to contest the entry of a contempt order and his persistent argument that he substantially complied with the original Order—that Plaintiffs prepared for the second, *de novo* hearing at which this Court would make its own independent determination. Only then, *at* the hearing and under questions by the Court, did Khrapunov's counsel finally admit that there was no dispute that a finding of contempt was

3

appropriate. *See* Aug. 6, 2025 Hr'g Tr. at 4:23-5:4 ("THE COURT: "As I've just heard from counsel for Mr. Khrapunov, there is no dispute with respect to the facts. There's no dispute with respect to a finding of contempt is appropriate. The dispute is the penalty for the finding of contempt. Is that right, Mr. Solomon? MR. SOLOMON: That's correct, your Honor."). Only at that point was it no longer necessary for Plaintiffs to present any additional evidence of Khrapunov's contempt, and counsel simply argued the proper remedy.

Following the *de novo* hearing, the Court issued its Order holding Khrapunov in contempt and awarding Plaintiffs' their reasonable fees and costs. [ECF No. 1820]. The Court also modified Khrapunov's reporting requirement to require him to "indicate what efforts Khrapunov has made to obtain the funds to pay the outstanding judgment against him." *Id.* at 3. And if Khrapunov fails to submit his next quarterly update, he will be fined an additional $1,000. *Id.*

## **PLAINTIFFS' REQUEST FOR FEES**

Plaintiffs seek fees for several categories of legal work that were undertaken in connection with seeking an order holding Khrapunov in contempt. Specifically, Plaintiffs seek fees incurred in connection with: (1) the initial motion for contempt that was referred to Judge Parker; (2) preparation for and attendance at the evidentiary hearing before Judge Parker at which Khrapunov was cross examined; (3) the post-hearing briefing submitted to Judge Parker; (4) letter briefing submitted to the Court in response to Khrapunov's suggestion that this Court need not hold a *de novo* hearing nor hold him in contempt; (5) preparation for and attendance at the *de novo* hearing before this Court; and (6) this fee application. *See* Aug. 20, 2025 Declaration of Craig Wenner ("Wenner Decl."), Ex. 1.

The fees and expenses Plaintiffs seek are substantially discounted. To start, the hourly rates that Plaintiffs seek compensation for are based on rates the Court approved many years ago in the

4

context with earlier fee applications and are heavily discounted from the rates the firm actually charges. And while more than one partner attended the evidentiary hearings—given that different members of the team have familiarity with different aspects of the ten-plus years litigating against Khrapunov—Plaintiffs seek compensation only for the attendance of the partner examining Khrapunov at the first hearing (Craig Wenner) and the partner arguing at the second hearing (Peter Skinner), along with the associate working the case (Sophie Roytblat). Plaintiffs further are not seeking any compensation for costs, which included printing costs for documents at the hearings and legal research.

   1. **Attorney Qualifications and Hourly Rates**

Plaintiffs seek fees for the work of the following individuals:

<u>Matthew Schwartz</u>. Mr. Schwartz is the Chaiman and a Managing Partner at Boies Schiller Flexner, specializing in government and internal investigations, white collar defense, regulatory compliance, and complex civil litigation. He received both his B.A. and J.D. from Columbia University; he graduated from Columbia Law School as a Harlan Fiske Stone scholar. He clerked for the Honorable Shira A. Scheindlin on the United States District Court for the Southern District of New York in 2002-04, and for the Honorable Thomas J. Meskill on the United States Court of Appeals for the Second Circuit in 2004-05. Between 2005 and 2015, he was an Assistant United States Attorney for the Southern District of New York, where as a member of that office's Securities and Commodities Task Force he handled numerous investigations involving fraud, money laundering, and violations of the Bank Secrecy Act, including leading all aspects of the government's investigation and asset recovery effort arising from the fraud at Bernard L. Madoff Investment Securities. He joined Boies Schiller Flexner as a partner in January 2015, and is admitted to the bar in New York and in this Court, among other places. As the Court is aware, he has been the lead lawyer on this case on behalf of Plaintiffs since it was filed. As of 2025, Mr.

Schwartz's normal hourly rate is $1,710.00.

Peter Skinner. Mr. Skinner is a partner at Boies Schiller Flexner. He received a B.A. from the University of Notre Dame and a J.D. from Boston College Law School. Mr. Skinner served from 2004 until 2015 as an Assistant United States Attorney for the Southern District of New York, where he was a senior prosecutor in the Terrorism and International Narcotics Unit and the Organized Crime Unit and handled numerous investigations involving fraud and money laundering. In addition to his work as a criminal prosecutor, Mr. Skinner served for four years in the Civil Division of the U.S. Attorney's Office, where he advised the intelligence community on litigation affecting national security and handled a variety of complicated civil matters. Mr. Skinner also joined Boies Schiller Flexner in 2015 and is admitted to both the bars of New York and this Court, among other places. As of 2025, Mr. Skinner's normal hourly rate is $1,530.00.

Craig Wenner. Mr. Wenner is a partner at Boies Schiller Flexner. He received his J.D. from New York University School of Law in 2011. He obtained his bachelor's degree from Tufts University. After graduating from law school, Mr. Wenner served as a law clerk to the Honorable Harold Baer, Jr. on the United States District Court for the Southern District of New York, and as a postgraduate fellow in the Frank J. Guarini Center on Environmental and Land Use Law at N.Y.U. School of Law. Mr. Wenner joined Boies Schiller Flexner in 2013 as an associate and was elected to the partnership effective January 2020. Mr. Wenner's litigation experience is varied, having represented both plaintiffs and defendants in a wide array of complex commercial disputes, regulatory investigations, and white-collar criminal defense matters. He is admitted to practice in the State of New York, and before this Court. Mr. Wenner managed all aspects of this litigation. As of 2025, Mr. Wenner's normal hourly rate is $1,270.00.

Sophie Roytblat. Ms. Roytblat is an associate at Boies Schiller Flexner. She obtained her

B.S. *cum laude* from New York University in 2017, and her J.D. from Fordham University School of Law in 2022. Between 2017 and 2019, Ms. Roytblat was a paralegal at Boies Schiller Flexner, where she worked on this case. She rejoined the Firm in 2022, immediately after law school. She is admitted to practice in the state of New York, and before this Court. As of 2025, Ms. Roytblat's normal hourly rate is $860.00.

The attorneys were assisted by a paralegal. Plaintiffs are not seeking reimbursement for the paralegal's time.

Among other things, the professional qualifications above are provided in support of the hourly rates requested by Plaintiffs. Boies Schiller Flexner is representing Plaintiffs in this action on a billable-hour basis. The Firm provides an hourly rate for each attorney and legal staff member based on their function, title, and years of experience. Unless otherwise noted below, the rates set forth in this fee application are those previously approved by the Court in this matter and are substantially lower than the fees charged to Plaintiffs. [*See, e.g.*, ECF Nos. 1216, 1494].

### 2. Fees Associated with Moving for Contempt and Sanctions Against Khrapunov

Khrapunov's intentional misconduct undisputedly violated a clear order of the Court and was a part of his long pattern of frustrating Plaintiff's asset recovery and judgment enforcement efforts. Plaintiffs seek attorneys' fees in connection with the following work:

- Drafting Plaintiff's initial motion for contempt and to compel, which the Court referred to Judge Parker.

- Preparing for the evidentiary hearing before Judge Parker.

- Attending the hearing at which Khrapunov was cross examined. For this Court appearance, Plaintiffs seek reimbursement only for Craig Wenner, who examined Khrapunov, and Sophie Roytblat, the associate assisting with the case.

7

- Drafting the post-hearing brief submitted to Judge Parker.

- Preparing for the *de novo* hearing ordered by this Court.

- Responding to letters to the Court from Khrapunov's counsel concerning the possible scope of the hearing and the appropriate remedies.

- Arguing the motion at the *de novo* hearing. For this Court appearance, Plaintiffs seek reimbursement only for Peter Skinner, who argued the motion, and associate Sophie Roytblat.

- Preparing the instant fee application.

Plaintiffs do not seek reimbursement for fees for paralegal assistance or costs associated with printing documents and conducting legal research.

Certain time entries were block-billed. In those instances, Plaintiffs divided the total time by the number of individual items in the block bill and rounded down, and only seek fees for the portion of the block bill that can be readily apportioned to a compensable task. This approach is reasonable considering the excluded tasks are comparable to the compensable tasks, and thus likely required substantially similar amounts of time. Further, this approach is similar to the way the Court has treated block billing previously in this case. [*See* ECF No. 1334 at 9–10 (approving adjustments made to block bills and noting courts "routinely adjust time" for block billing)]. Plaintiffs note where these reductions are applied in the time entries attached to the accompanying declaration of Craig Wenner. *See* Wenner Decl., Ex. 1.

<p style="text-align:center">* * *</p>

The total fees incurred by Plaintiffs in connection with the contempt motion at their regular hourly rates and with no other discounts were $221,726.00, although Plaintiffs seek reimbursement after discounting as described above only in the amount of $123,141.00.

<p style="text-align:center">8</p>

**DISCUSSION**

This Court has already determined that an award of fees and costs in connection with the contempt motion is appropriate. The sole issue before the Court is the amount of Plaintiffs' reasonable fees and expenses.

A district court possesses "considerable discretion" in awarding attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *TufAmerica Inc. v. Diamond*, No. 12-CV-3529, 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016), *reconsideration granted in part*, No. 12-CV-3529 (AJN), 2016 WL 3866578 (S.D.N.Y. July 12, 2016), *and on reconsideration in part*, No. 12-CV-3529 (AJN), 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (Nathan, *J.*) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Two inquiries are relevant: the reasonableness of the rates charged and the number of hours spent. The fees submitted by Plaintiffs are reasonable on both fronts.

1. **The Hourly Rates Are Reasonable**

When evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center*, 652 F.3d 277, 289 (2d Cir. 2011) (internal citations and quotation marks omitted). The Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* (internal citation and quotation marks omitted); *see also TufAmerica Inc.*, 2016 WL 1029553, at *5 ("rate must be in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Courts in this district also

9

have recognized that an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate. *In re Stock Exchanges Options Trading Antitrust Litig.*, 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006). Finally, the Court may adjust base hourly rates to account for case-specific variables. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 183-84.

The rates Plaintiffs seek are presumptively reasonable because the Court has repeatedly considered and approved the applicable fee rates in the context of sanctions awards against Khrapunov, Mukhtar Ablyazov, and Triadou SPV S.A. [*See* ECF Nos. 628 at 6, 1216 at 5–8, 1494 at 9, 1779 at 9]. The Court found that Matthew Schwartz, Peter Skinner, Craig Wenner, and Sophie Roytblat are all "highly competent" and that the team were "prepared and skilled advocates." [ECF No. 1494 at 8]. Nonetheless, the Court ordered certain downward adjustments of the rates that were actually charged. [ECF No. 1216 at 5–8]. We believe the skill of all of the lawyers justifies the rates actually charged and billed, and that the rates are comparable to those charged by firms of similar caliber in this District. *See, e.g.*, *Bergerson*, 652 F.3d at 289 ("[W]hat a reasonable, paying client would be willing to pay" is evidence of a reasonable rate). In an effort to streamline this application and present a conservative lodestar, however, we have reduced our rates consistent with the Court's previous rulings for purposes of this application.

The rates proposed below are also especially conservative because the rates for Mr. Schwartz and Mr. Skinner are based on the Court's first fee application order from 2018, over seven years ago. [ECF No. 628 at 5-6]. Though their rates have increased steadily since then, commensurate with inflation and the increased experience of the lawyers, we have not sought to apply their current rates to this application, which reflects a substantial discount over the amount actually billed to Plaintiffs.

The hourly rates requested by Plaintiffs are:

- Matthew Schwartz: $1,180. [*See* ECF Nos. 628 at 12; 1216 at 5-8; 1494 at 9; 1779 at 10].

- Peter Skinner: $1,150. [*See* ECF Nos. 1216 at 5-8; 1494 at 9].

- Craig Wenner: $840, consistent with Judge Parker's previous approval of Mr. Wenner's rate of $780 in 2021 and "finding it was appropriate to increase the rates $20 to account for additional experience." [1] [ECF No. 1494 at 9; *see also* ECF No. 1216 at 5-8].

- Sophie Roytblat: $375, consistent with Judge Parker's previous approval of this rate for junior associates. [*See* ECF Nos. 1216 at 8; 1494 at 9-10].

As Judge Parker observed when granting the above rates, "[i]t is not uncommon for partners at large firms in New York City who litigate complex matters, particularly matters like this involving navigation of the Hague Convention and the Federal Rules of Civil Procedure, coordination with other related pending domestic and international litigations, and fact intensive forensic investigation, to charge over $1,000 per hour." [*See* ECF 628 at 12; *see also In re Relativity Fashion, LLC*, 565 B.R. 50, 71 (Bankr. S.D.N.Y. 2017) (approving partner rates of over $1000 for a "bet-the-company" litigation)]. The Court has similarly observed that the rates

---

[1] During the pendency of this case, Mr. Wenner was elected partner. His actual rate billed to the clients in this matter in 2025 was $1,270 per hour, but Plaintiffs have not sought to increase his rate for the purpose of the fee application beyond the modest $20 per year increase previously applied by Judge Parker in earlier fee applications. [*See* ECF Nos. 1216 at 8; 1494 at 9].

11

Plaintiffs seek for mid-level associates at Boies Schiller Flexner are "common in large firms in this District, not only because of the need to attract and pay for the highest quality lawyers, but also because of the significant overhead of operating a firm in Manhattan." [ECF No. 628 at 12]. Given these considerations, the rates sought here are reasonable.

### 2. The Hours Expended in Seeking to Hold Khrapunov Accountable Are Reasonable

The amount of hours identified in the application are reasonable because they indicate the actual number of hours spent briefing the motion and preparing for and attending two hearings resulted in the contempt finding – with certain downward adjustments, as discussed above. *See Robinson v. City of New York*, 2009 WL 3109846, at *2 (S.D.N.Y. Sept. 29, 2009) ("[H]ours 'reasonably expended' are those actually expended by counsel minus 'excessive, redundant, or otherwise unnecessary' hours." (quoting *Hensley*, 461 U.S. at 434)).

In determining whether hours are excessive, "the critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017); *TufAmerica Inc.*, 2016 WL 1029553, at *3.

The hours would not have been incurred at all if Khrapunov had continued to provide quarterly updates. He had no excuse for his repeated non-compliance. He did not forget. He did not get sick nor face some other obstacle that made it impossible to comply. He simply chose to

ignore the Court's Order, likely with the hope that Plaintiffs and the Court would simply move on. Indeed, based on another outstanding judgment against him, Khrapunov first argued in response to the contempt motion that his contempt was insignificant "in light of this existing financial obligation." [ECF No. 1792 at 1]. But ignoring Khrapunov's willful contempt undermines this Court's authority, particularly as the judgment here was based on his early discovery misconduct. In other words, neither Plaintiffs — nor the Court — could permit Khrapunov to double down on contempt with further contempt. As with his contemptuous discovery behavior, Khrapunov was again making Plaintiffs play cat and mouse with his updates on his efforts to pay the judgment rather than just providing them.

The effort Plaintiffs undertook to enforce the Order were also appropriate in light of the two separate hearings held in connection with the application. At the first hearing, Khrapunov was cross-examined and forced to admit that his non-compliance was willful. The effort expended to establish this record was appropriate and ultimately necessary in hindsight as Khrapunov argued in his post-hearing briefing that contempt was not warranted because he "substantially complied" with the Order and his "failure to file update reports amounts to a defect in form, not substance." [ECF No. 1808 at 3-4]. Judge Parker outright rejected this position. [ECF No. 1810 at 6-7 (finding Khrapunov was not "diligent in attempting to comply with the court's order" because he admitted under cross examination that he "had no proper reason or excuse" and he "simply stopped submitting the quarterly declarations.")].

Then, the Court ordered a *de novo* hearing at which Khrapunov was to appear again. While the scope of that second hearing was ultimately narrow and limited to argument, it was only *at* the hearing itself that Khrapunov's counsel conceded that a finding of contempt was appropriate. Before the hearing, Khrapunov had continued to argue that his violation was merely "de minimis,

13

inconsequential, and not worthy of a civil contempt sanction." [ECF No. 1814 at 2]. To help narrow the scope of the second hearing, Plaintiffs invited Khrapunov to simply "consent to the entry of the contempt order," which would have mooted the second hearing. [ECF No. 1816 at 3]. But Khrapunov doubled down on his position again in another letter before the hearing, arguing that he disagrees "with the conclusion of contempt (for the reasons largely stated in ECF 1808)." [ECF No. 1817]. As quoted above, in his post-hearing brief at ECF No. 1808, Khrapunov argued he had substantially complied with the Order.

Plaintiffs accordingly prepared for a *de novo* hearing that could include a second cross-examination of Khrapunov so that the Court could evaluate firsthand Khrapunov's demeanor that led Judge Parker to find that he had not "substantially complied" with the Order, that his conduct was not "de minimis," and that he should be held in contempt. Only then, *at* the hearing and under questions by the Court, did Khrapunov's counsel finally admit that there was no dispute that a finding of contempt was appropriate. *See* Aug. 6, 2025 Hr'g Tr. at 4:23-5:4 ("THE COURT: "As I've just heard from counsel for Mr. Khrapunov, there is no dispute with respect to the facts. There's no dispute with respect to a finding of contempt is appropriate. The dispute is the penalty for the finding of contempt. Is that right, Mr. Solomon? MR. SOLOMON: That's correct, your Honor."). It was only at that point that Plaintiffs were able to proceed with the *de novo* hearing without providing additional evidence to establish his contempt.

From the first time Plaintiffs filed their motion for contempt, Khrapunov could have simply admitted he failed to comply with the Order and that a finding of contempt was appropriate. Multiple rounds of briefing, an evidentiary hearing, and a Report and Recommendation from Judge Parker were not enough for Khrapunov to conceded contempt. It was only under this Court's direct questioning at the second hearing that Khrapunov finally admitted he was in the wrong. The fees

14

Plaintiffs incurred were a result of Khrapunov's intransigence, and he should bear that cost.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve their application for $123,141.00 in fees.

Plaintiffs further request that the Court direct the Clerk of Court to enter an updated judgment against Khrapunov, reflecting the $221,285.31 originally awarded, plus post-judgment interest at $54.56 per day running from April 5, 2023 [ECF No. 1743][2] and the additional fee award in connection with this motion.

Dated:  August 20, 2025
             New York, NY

Respectfully,

/s/     Craig Wenner
Matthew L. Schwartz
Peter Skinner
Craig Wenner
Sophie Roytblat
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs*

---

[2]    As of August 20, 2025, the total amount of post-judgment interest owed is $47,358.08 (which is $54.56 per day for 868 days).

15

## **CERTIFICATION OF COUNSEL**

I hereby state that the foregoing Memorandum was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the Memorandum, excluding the caption, signature block, and this certification is 4,527.

Dated: August 20, 2025
       New York, NY

                                                /s/    *Craig Wenner*
                                                       Craig Wenner